D. GEORGE SWEIGERT, C/O
GENERAL DELIVERY
MOUNT SHASTA, CALIF  96067

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

D. GEORGE SWEIGERT

        Plaintiff,

vs.

JASON GOODMAN

        Defendant

Case No.:  **2:18-cv-01633-RMG-BM**

**PLAINTIFF'S REPLY TO DEFENDANT'S
MEMORANDUM IN SUPPORT OF MOTION TO
DISMISS (DOC. 9-1, 08/03/2018)**

## PLAINTIFF'S REPLY TO

## DEFENDANT'S MEMORANDUM TO SUPPORT MOTION TO DISMISS

NOW COMES THE PRO SE plaintiff, a layman non-attorney acting in the public interest as a private attorney general, to submit this **REPLY** to Defendant Goodman's MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (Entry 9-1, 08/03/2018).

### INTRODUCTION

The avowed conspiracy theorist Jason Goodman operates several social media outlets that form a constellation of business enterprises known as "CrowdSource The Truth" (CSTT).  On June 14, 2017 the CSTT team (comprising **Goodman, George Webb Sweigert, Okey Marshall Richards and Joe Napoli**) orchestrated an on-air live broadcast to 2,000+ viewers on the YouTube channel known as "Jason Goodman".  The series of cascading events triggered by this YouTube broadcast led to the closure of the Port of Charleston due to a radiological bomb threat.  The radiological emergency response to the bomb threat was a multi-jurisdiction and multi-agency response similar to that for a crashed jet airliner.  This is the underlying controversy which this litigation rests.

1

**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**FACTS**

The focus of the 06/14/2017 YouTube broadcast was the container ship known as the MEMPHIS MAERSK and its alleged cargo of a radiological dispersion device (**R.D.D.**) commonly known as a "dirty bomb". The dirty bomb concept is a favorite of terrorist organizations as the dirty bomb has the potential to terrorize a population do to the nature of the explosion shrouded with radiological materials (usually Cesium 137).

Goodman and his employee, room-mate, co-anchor and fellow associate George Webb Sweigert developed an interest in the MEMPHIS MARSK three weeks prior to the closure of the Wando marine terminal in the Port of Charleston, S.C.

As cited in the Plaintiff's Amended Complaint (Entry 5, 06/29/2018): "In the YouTube video entitled, "George Webb Continues the Deep Dive Into Pakistanti ISI - NATO Rat Line", **5/27/2017**, (three weeks before the "dirty bomb hoax" of 06/14/2017) Goodman is holding the camera and interviewing "George Webb" [Sweigert].

02:50: WEBB. There is also going to be a ship involved. It is going to be **Maersk Shipping Lines.** [he spells] M A E R S K. And it is also going to be this … special focus – the **Memphis**."

03:00: WEBB. The Memphis. The ship **Memphis**. Don't know why. My contact [Deep Uranium] has about five (5) U.S. intelligence sources that worked in drug interdiction.

03:11: WEBB. The Maersk is going to be. We want to track the **Maersk**. Every day, since the last … since 1999 basically."

Based on the foregoing, both Webb and Goodman showed concerns (in their **5/27/2017** video) for the clandestine activities purportedly surrounding the "Memphis Maersk". This video was recorded and published (by both Goodman and Webb [Sweigert] on their respective YouTube channels) three weeks prior to the Wando Welch terminal closure."

"As seen in the video entitled, "Clear and Present Danger (Calm Before the Storm?) #maerskmemphis", **6/14/2017**, several MDSI/CSTT racketeering enterprise players make their appearance (59K+ views).

During the "Clear and Present Danger" video.

At 49:00. WEBB. "The fact that, we were giving the warning for the next 9/11. [GOODMAN. That's right]. To the members of Congress. So they are now forewarned.

2
**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

1    At 49:20.  WEBB.  There is a plan under foot right now, again from the Intelligence Community, dirty

2  bomb is being thrown around. Quite a bit. There is a dirty bomb plan for a major U.S. city.  [GOODMAN.

3  Unintelligible]  … I believe it is going to be Memphis.  [GOODMAN.  Whoa}.  I will just say that right now.”

4    1:50:34:  GOODMAN.  **JOE NAPOLI** says eight minutes.

5    1:50:37:  WEBB.  What?

6    1:50:38:  GOODMAN.  **JOE NAPOLI** says eight minutes.  Joe, is that two clicks.  GW.

7    1:50:50:  GOODMAN.  OK, you can find the Maersk live.  OK, I've got a .. I've got a thing here that's

8  going to give us the Maersk live.

9    1:51:04:  GOODMAN.  What I can do is once it goes live on the iPad …

10    1:51:06:  WEBB.  Did he say it's going to be there in eight minutes?

11    1:52:50:  WEBB.  Is the Maersk on the move?  Is the Maersk on the move?  Is the Memphis on the move?

12  Or is it stationary?

13    1:52:56:  GOODMAN.  [Looking at VesselFinder.Com as display is broadcast to audience] Well, we've

14  got a live map of the position of the Maersk Memphis right here, up on the screen.

15    The chronological events that initiated the Port Hoax on 6/14/2017 are as follows:

16    **Incident A.**  Mr. Goodman's phone call to the U.S. Coast Guard Charleston Section duty officer at **843-**

17  **740-7050** while broadcasting LIVE to 2,117 audience members, and

18    **Incident B.**   A request by Mr. Goodman, three (3) minutes after the call to **843-740-7050**, to tweet to the

19  U.S. Coast Guard 7ᵗʰ District Headquarters **Twitter account** the following message "**DIRTY BOMB – PLEASE**

20  **INVESTIGATE – MAERSK MEMPHIS**".  Subsequently a purported 8,000 Twitter impressions were made of

21  that message (tweet).

22    A few days after the 06/14/2017 Wando terminal closure the Plaintiff published a white paper about the

23  Port of Charleston incident, entitled  "A study of the Port of Charleston evacuation and closure: How Live Action

24  Role Play (LARP) Simulations create Cognitive Threat Vectors", June, 2017, viewed **2,511** times.

25  (https://www.slideshare.net/dgsweigert/port-of-charleston-evacuation-case-study-the-cognitive-threat-of-conspiracy-

26  theorists)

27

28
                                                            3
**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

1

## LAW AND ARGUMENT

2 *PLAINTIFF'S STANDING AS PRIVATE ATTORNEY GENERAL*

3          In the Defendant's MEMORANDUM (Entry 9-1, 08/03/2018) Goodman asserts "Plaintiff's has not

4 standing, is not a resident of South Carolina and was not impacted by the alleged action, which evidence indicates,

5 he and his associates deliberately caused to occur [sic]". NOTE: as a matter of legal record, the undersigned

6 DENIES the notion of Goodman's baseless allegation in all its forms.

7          Defendant Goodman does not address the private attorney general provisions of the federal Racketeer

8 Influenced and Corrupt Organizations (**RICO**) Act.

9          As cited in the Plaintiff's Amended Complaint (Entry 5, 06/29/2018):

10          "In the shadow of **CIKR CIP** [Critical Infrastructure and Key Resource -- Critical Infrastructure

11 Protection] this suit is brought by the plaintiff who has invoked the Private Attorney General (**PAG**) doctrine

12 allowing the plaintiff to augment limited resources of the U.S.G. and augment their prosecutorial gaps.

13          "In the role of **PAG** the plaintiff is seeking enforcement of the applicable statues and laws that have been

14 violated by the wrong-doers in the past and the present. The **PAG** doctrine is intrinsically baked-in to federal

15 racketeering laws and allows augmentation of prosecutorial gaps (see: a private citizen's standing to sue for

16 vindication of a public objective. Associate Industries v. Ickes (2d Cir. 1943) 134 F.2d 694, 704 (2d

17 Cir.); Comment (1974) Note 144 U.Pa.L.Rev. 636, 658 ).

18          The private citizen plaintiff has a **judicially cognizable interest** in rights protected by federal statutes – an

19 interest sufficient to constitute standing to enforce these statutes as they are a matter of public interest. County of

20 Inyo v. City of Los Angeles (1978) 78 Cal.App.3d 82, 88, fn. 1, citing Associated Industries v. Ickes.

21          The plaintiff relies on the wisdom of the U.S. Supreme Court to amplify the **PAG** standing to seek

22 enforcement of applicable laws, statutes, regulations and policy, noting that "private enforcement . . . provides a

23 necessary supplement" **prosecutorial gaps** in public law enforcement. J.I. Case Co. v. Borak, 377 U.S. 426, 432

24 (1964)."

25          As seen from the foregoing excerpts from the Amended Complaint (Entry 5, 06/29/2018) the plaintiff has

26 invoked in the private attorney general (**PAG**) doctrine of the RICO Act. To amplify West's Encyclopedia of

27

28                                                      4
**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

1  American Law, edition 2 defines Private Attorney General as "A private citizen who commences a lawsuit to

2  enforce a legal right that benefits the community as a whole".

3        The U.S. Supreme Court has addressed the doctrine of the **PAG** in ROTELLA V. WOOD (98-896) 528

4  U.S. 549 (2000) 147 F.3d 438, affirmed.  Quoted in relevant part:

5

6        "The object of civil RICO is thus not merely to compensate victims but to turn them into prosecutors,
         "private attorneys general," dedicated to eliminating racketeering activity. [3] *Id.*, at 187 (citing *Malley-
         Duff*, 483 U.S., at 151 ) (civil RICO specifically has a "further purpose [of] encouraging potential private

7        plaintiffs diligently to investigate")."

8

9        Indeed, in Sedima v. Imrex Co., 473 U.S. 479, 497-98 (1985) the high court Court cited that "RICO is to be

10  read broadly.  This is the lesson not only of Congress' self-consciously expansive language and overall approach,

    but also of its express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes'".

11        Caveat: it is instructive to note remedial aspects of PAG suits, as noted in the article "Private Attorneys

12  General and the First Amendment", by Trevor W. Morrison of the Cornell Law School; "That remedial breadth,

13  more than the presence or absence of individualized injury, is the critical ingredient in private attorney general

14  litigation."  Page 604, Vol. 103:589, 103 Mich. L. Rev. 589 (2005).

15        The remedial nature of PAG provisions advances public interest lawsuits.  This is amplified by

16  ALTMANN v. CITY OF AGOURA HILLS CITY COUNCIL, Court of Appeals of California, Second Appellate

17  District, Division Four (2008)[unpublished].  Quoted in relevant part:

18

19        The term private attorney general was coined by Judge Jerome Frank in the context of a challenge to a
         private persons standing to bring a lawsuit to vindicate the public interest.  (County of Inyo v. City of Los
         Angeles (1978) 78 Cal.App.3d 82, 88, fn. 1, citing Associated Industries v. Ickes (2d Cir. 1943) 134 F.2d

20       694, 704.)  It is meant to convey the concept that a private citizen may stand in the shoes of the Attorney
         General, not in the sense of an attorney representing a party in court, but in the sense of a government

21       official advancing the public interest in a **lawsuit**.  Indeed, in most instances, a private attorney general is a
         private citizen represented by counsel in court.  [emphasis added]

22

23

24        As the underlying controversy on this lawsuit, the public distress, alarm and business disruption caused the

25  "dirty bomb hoax" of 06/14/2017 (which impacted a dozen law enforcement agencies, the Port of Charleston and

26  surrounding communities) this is a matter of public concern.  It has been alleged that this sensationalized publicity

27  stunt was orchestrated to increase the opportunities for economic growth for Goodman and his CSTT team mates.

28

**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

1  The entire fraudulent publicity stunt is alleged to be an artifact of fraudulent messaging (for profit) that traversed the

2  interstate wires of the Internet.

3        The racketeering accusations against Goodman's and his CSTT team's on-going efforts to defraud

4  members of the public of credit card transaction via the wires of the interstate Internet demonstrate an on-going

5  public interest in this matter.  These on-going efforts mimic the fraud perpetrated on the U.S. Coast Guard for the

6  purposes of gaining publicity and other pecuniary benefits.

7        **This is a public interest lawsuit.**  It matters not if the Plaintiff has been personally injured by the

8  underlying controversy or is the undersigned is resident of South Carolina.

9

10  *CLAIMS STATED AND RELIEF SOUGHT IN PLAINTIFF'S COMPLAINT*

11        In essence, filing a motion to dismiss alleges there is some sort of critical deficiency with the

12  plaintiff's complaint, the claims alleged in the complaint, or the actual procedure of how the lawsuit was

13  initiated and, correspondingly, requests that specific claims alleged or the entire lawsuit be dismissed.

14        Defendant Goodman apparently asserts is his so-called "motion" (unlabeled as such) that the Plaintiff has

15  failed to state any actionable claims in the Amended Complaint (Entry 5, 06/29/2018).  "Plaintiff's claim must be

16  dismissed with prejudice because his legal claims are without merit".  See Defendant's MEMORANDUM IN

17  SUPPORT OF MOTION TO DISMISS (Entry 9-1, 08/03/2018).  This is the totality of Goodman's argument

18  concerning the issue of supposedly "failure to state a claim" as the heading of the MEMORANDOM (Entry 5,

19  06/29/2018) indicates.

20        A motion requesting dismissal based on failure to state a claim is alleging that under no circumstances

21  could the claim for relief be granted against the defending party.  It is "only the extraordinary case in which a

22  dismissal is proper" for failure to state a claim.  See United States v. City of Redwood City, 640 F.2d 963, 966

23  (9th Cir. 1981).  A court may dismiss a complaint as a matter of law only if the complaint: (1) lacks a

24  cognizable legal theory; or (2) fails to contain sufficient facts to support a cognizable legal claim.  Robertson v.

25  Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

26        Defendant's conclusory, vague and ambiguous statements in the so-called "motion" offer no support of his

27  argument or claim.  Defendant's proposition is that the Court dismiss this action based on wild accusation of some

28
**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

1   conspiracy involving the undersigned.  NOTE:  For the record the undersigned denies any and all allegations,

2   insinuations and accusations made by Goodman in the MEMORANDUM (Entry 5, 06/29/2018).

3           Assuming *arguendo* that Goodman's malformed pleading is some type of **FRCP Rule 12(b)(6)** request

4   then the "[c]ourts must consider the complaint in its entirety, as well as other sources courts ordinary examine when

5   ruling on Rule 12(b(6) motion to dismiss [.]" Dunn v. Castro, 621 F.3d 1196, 1206 n.6 (quoting Tellabs, Inc. v.

6   Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  See also Magulta v. Samples, 375 F.3d 1269, 1274-75 (11th

7   Cir. 2004) (when reviewing a motion to dismiss for failure to state a claim, courts should read the complaint in its

8   entirety); 5 Wright & Miller, Federal practice and Procedure § 1286 (3d ed. 2004).

9           Usually when a court is asked to weigh a motion filed pursuant to Rule 12(b)(6) it is generally confined to

10  the four corners of the pleadings.  See Wilchombe v. TeeVee Toons, Inc. 555 F.3d 949, 959 (11th Cir. 2009).

11          Apparently the Defendant expects this Court to conduct his legal research by a legal review of the totality

12  of the Amended Complaint (Entry 5, 06/29/2018) while simultaneously providing no legal support for the

13  proposition that the Plaintiff has failed to state an actionable claim.

14          Consideration of the Amended Complaint (Entry 5, 06/29/2018) as a whole demonstrates that it meets the

15  requirements established under the Federal Rules.  "[A] complaint must contain sufficient factual matter … to 'state

16  a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell

17  Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

18          The Plaintiff's Amended Complaint (Entry 5, 06/29/2018) presents a detailed recitation of Defendant's

19  alleged racketeering activities, violations of the **Computer Fraud and Abuse Act** (CFAA), attempts to defraud the

20  U.S. government, issuance of threats that violate the **Terrorist Hoax Improvement Act**, etc.  These recitations

21  more than satisfy federal pleading requirements.  A review of the entire Amended Complaint (Entry 5, 06/29/2018)

22  demonstrates that in no way or manner has the Plaintiff upon mere legal conclusions but contains a detailed account

23  of the Defendant's illegal practices which establish liability under the federal **RICO Act** (at a minimum).

24          "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

25  reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 566 U.S. 662, 678,

26  129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

27

28
                                        7
     **PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

1    Under FRCP Rule 8(a)(2), a pleading must contain "' a short and plain statement of the claim showing that

2    the pleader is entitled to relief' in order to 'give the defendant fair notice of what the … claim is and grounds upon

3    which it rests.'" Twombly, 550 U.S. at 555 (citations omitted),  In Twombly, the U.S. Supreme Court explained that

4    "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

5    claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (citation omitted).

6    As the Eleventh Circuit has explained, *Twombly / Iqbal* principles require that a complaint's allegations be

7    "enough to raise to relief above the speculative level." Speaker v. U.S. Dep't of Health and Human Services Centers

8    for Disease Control and Prevention, 623 F.3d 1371, 1380 (11th Cir. 2010).  Plaintiff has far exceed his

9    responsibilities articulated by the Eleventh Circuit *Twombly / Iqbal* principles.

10    The federal rules only require that the plaintiff put the defendant on notice as to what the legal claim is and

11    the grounds upon which the claim rests.  Ascon Properties, Inc. v. Mobile Oil Co., 866 F.2d 1149, 115 (9th Cir.

12    1989).

13    The Defendant's so-called "motion" is silent on all the matters that are required in such motions.  In fact,

14    the pleading (MEMORANDUM (Entry 9-1, 08/03/2018)) is little more than a Post-It Note type of response.  A fair

15    reading of the Defendant's "motion" gives no inkling as to what legal standards are relied upon by Goodman.

16    The Defendant cannot and does not explicitly contend that the theories, facts and/or allegations presented in

17    the Amended Complaint (Entry 5, 06/29/2018) are defective.  Rather, Defendant makes stunningly overly broad

18    conclusory assertions devoid of any concrete rationale that would to support the insinuations in the Defendant's

19    "motion".

20    ### CONCLUSION

21    Defendant's so-called "motion" (MEMORANDUM (Entry 9-1, 08/03/2018)) is defective and should be

22    rejected as it fails to comply with **FRCP Rule 12(b)**.  Nonetheless, if the Court elects to consider the motion it

23    should be rejected as it only presents conclusory, vague and ambiguous statements that are devoid of legal argument

24    and justification for such a heavy sanction as dismissal.  Almost the entirety of the Defendant's so-called "motion"

25    contains unfounded, baseless, meritless and vexatious slurs, insinuations and slanderous allegations.

26    **Defendant's "motion" must be denied.**

27

28
                                              8
**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

If the Court entertains the Defendant's "motion" then the Plaintiff should be allowed to amend the complaint by leave of the court.  Where the defendant merely files a motion to dismiss for failure to state a claim without an answer, plaintiff then would be entitled to amend his complaint as a matter of right.

### PRAYER

For the reasons described above Mr. Goodman's MEMORANDUM pleading (Doc. 9-1, 08/03/2018) should **denied** as it provides an insufficient defense, within a document that is redundant, immaterial, impertinent and scandalous in nature.

Dated this day of August ____, 2018

D. GEORGE SWEIGERT

**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

1  D. GEORGE SWEIGERT, C/O
   GENERAL DELIVERY
2  MOUNT SHASTA, CALIF  96067

3                        IN THE UNITED STATES DISTRICT COURT
4                        FOR THE DISTRICT OF SOUTH CAROLINA

5
   D. GEORGE SWEIGERT                        Case No.: 2:18-cv-01633-RMG-BM
6
             Plaintiff,
7
   vs.
8                                            **CERTIFICATE OF SERVICE**

   JASON GOODMAN
9
             Defendant
10

11

12                    **CERTIFICATE OF SERVICE**

13  On this day, August _10_, 2018, I have caused to be placed into the U.S. Postal Service true copies of the

14  attached pleadings (with First Class postage affixed) to the following parties.

15

16                        **Clerk of the Court**
                          **U.S. District Court**
                          **Matthew J. Perry, Jr. Courthouse**
17                        **901 Richland Street**
                          **Columbia, South Carolina 29201**
18
                          **Jason Goodman**
19                        **252 7th Avenue #6S**
                          **New York, NY 10001**
20

21  I hereby attest under the penalties of perjury that the foregoing is true and accurate.

22

23                                         D. GEORGE SWEIGERT

24

25

26

27

28

   CERTIFICATE OF SERVICE - 1

1  D. GEORGE SWEIGERT, C/O
   GENERAL DELIVERY
2  MOUNT SHASTA, CALIF  96067

3

4                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF SOUTH CAROLINA
5

6  D. GEORGE SWEIGERT                    Case No.:  2:18-cv-01633-RMG-BM

7            Plaintiff,

   vs.                                   **PLAINTIFF'S REPLY TO DEFENDANT'S**
8                                         **MEMORANDUM IN SUPPORT OF MOTION TO**
   JASON GOODMAN                         **DISMISS (DOC. 9-1, 08/03/2018)**
9
            Defendant
10

11

12                      **PLAINTIFF'S REPLY TO**

13      **DEFENDANT'S MEMORANDUM TO SUPPORT MOTION TO DISMISS**

14
        NOW COMES THE PRO SE plaintiff, a layman non-attorney acting in the public interest as a private
15
   attorney general, to submit this **REPLY** to Defendant Goodman's MEMORANDUM IN SUPPORT OF MOTION
16
   TO DISMISS (Entry 9-1, 08/03/2018).
17

18                            **INTRODUCTION**

19      The avowed conspiracy theorist Jason Goodman operates several social media outlets that form a

20 constellation of business enterprises known as "CrowdSource The Truth" (CSTT).  On June 14, 2017 the CSTT

21 team (comprising **Goodman, George Webb Sweigert, Okey Marshall Richards and Joe Napoli**) orchestrated an

22 on-air live broadcast to 2,000+ viewers on the YouTube channel known as "Jason Goodman".  The series of

23 cascading events triggered by this YouTube broadcast led to the closure of the Port of Charleston due to a

24 radiological bomb threat.  The radiological emergency response to the bomb threat was a multi-jurisdiction and

25 multi-agency response similar to that for a crashed jet airliner.  This is the underlying controversy which this

26 litigation rests.

27

28                                          1
        **PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**FACTS**

The focus of the 06/14/2017 YouTube broadcast was the container ship known as the MEMPHIS

MAERSK and its alleged cargo of a radiological dispersion device (**R.D.D.**) commonly known as a "dirty bomb".

The dirty bomb concept is a favorite of terrorist organizations as the dirty bomb has the potential to terrorize a

population do to the nature of the explosion shrouded with radiological materials (usually Cesium 137).

Goodman and his employee, room-mate, co-anchor and fellow associate George Webb Sweigert developed

an interest in the MEMPHIS MARSK three weeks prior to the closure of the Wando marine terminal in the Port of

Charleston, S.C.

As cited in the Plaintiff's Amended Complaint (Entry 5, 06/29/2018): "In the YouTube video entitled,

"George Webb Continues the Deep Dive Into Pakistanti ISI - NATO Rat Line", **5/27/2017**, (three weeks before the

"dirty bomb hoax" of 06/14/2017) Goodman is holding the camera and interviewing "George Webb" [Sweigert].

02:50: WEBB. There is also going to be a ship involved. It is going to be **Maersk Shipping Lines.** [he

spells] M A E R S K. And it is also going to be this ... special focus – the **Memphis**."

03:00: WEBB. The Memphis. The ship **Memphis**. Don't know why. My contact [Deep Uranium] has

about five (5) U.S. intelligence sources that worked in drug interdiction.

03:11: WEBB. The Maersk is going to be. We want to track the **Maersk**. Every day, since the last ...

since 1999 basically."

Based on the foregoing, both Webb and Goodman showed concerns (in their **5/27/2017** video) for the

clandestine activities purportedly surrounding the "Memphis Maersk". This video was recorded and published (by

both Goodman and Webb [Sweigert] on their respective YouTube channels) three weeks prior to the Wando Welch

terminal closure."

"As seen in the video entitled, "Clear and Present Danger (Calm Before the Storm?) #maerskmemphis",

**6/14/2017**, several MDSI/CSTT racketeering enterprise players make their appearance (59K+ views).

During the "Clear and Present Danger" video.

At 49:00. WEBB. "The fact that, we were giving the warning for the next 9/11. [GOODMAN. That's

right]. To the members of Congress. So they are now forewarned.

**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

1    At 49:20.  WEBB.  There is a plan under foot right now, again from the Intelligence Community, dirty

2  bomb is being thrown around. Quite a bit. There is a dirty bomb plan for a major U.S. city.  [GOODMAN.

3  Unintelligible] … I believe it is going to be Memphis.  [GOODMAN.  Whoa}.  I will just say that right now."

4    1:50:34:  GOODMAN.  **JOE NAPOLI** says eight minutes.

5    1:50:37:  WEBB.  What?

6    1:50:38:  GOODMAN.  **JOE NAPOLI** says eight minutes.  Joe, is that two clicks.  GW.

7    1:50:50:  GOODMAN.  OK, you can find the Maersk live.  OK, I've got a .. I've got a thing here that's

8  going to give us the Maersk live.

9    1:51:04:  GOODMAN.  What I can do is once it goes live on the iPad …

10    1:51:06:  WEBB.  Did he say it's going to be there in eight minutes?

11    1:52:50:  WEBB.  Is the Maersk on the move?  Is the Maersk on the move?  Is the Memphis on the move?

12  Or is it stationary?

13    1:52:56:   GOODMAN.  [Looking at VesselFinder.Com as display is broadcast to audience] Well, we've

14  got a live map of the position of the Maersk Memphis right here, up on the screen.

15    The chronological events that initiated the Port Hoax on 6/14/2017 are as follows:

16    **Incident A.**  Mr. Goodman's phone call to the U.S. Coast Guard Charleston Section duty officer at **843-**

17  **740-7050** while broadcasting LIVE to 2,117 audience members, and

18    **Incident B.**   A request by Mr. Goodman, three (3) minutes after the call to **843-740-7050**, to tweet to the

19  U.S. Coast Guard 7th District Headquarters **Twitter account** the following message "**DIRTY BOMB – PLEASE**

20  **INVESTIGATE – MAERSK MEMPHIS**".  Subsequently a purported 8,000 Twitter impressions were made of

21  that message (tweet).

22    A few days after the 06/14/2017 Wando terminal closure the Plaintiff published a white paper about the

23  Port of Charleston incident, entitled  "A study of the Port of Charleston evacuation and closure: How Live Action

24  Role Play (LARP) Simulations create Cognitive Threat Vectors", June, 2017, viewed **2,511** times.

25  (https://www.slideshare.net/dgsweigert/port-of-charleston-evacuation-case-study-the-cognitive-threat-of-conspiracy-

26  theorists)

27

28                                                3
       **PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

1          **LAW AND ARGUMENT**

2    *PLAINTIFF'S STANDING AS PRIVATE ATTORNEY GENERAL*

3          In the Defendant's MEMORANDUM (Entry 9-1, 08/03/2018) Goodman asserts "Plaintiff's has not

4    standing, is not a resident of South Carolina and was not impacted by the alleged action, which evidence indicates,

5    he and his associates deliberately caused to occur [sic]".  NOTE: as a matter of legal record, the undersigned

6    DENIES the notion of Goodman's baseless allegation in all its forms.

7          Defendant Goodman does not address the private attorney general provisions of the federal Racketeer

8    Influenced and Corrupt Organizations (**RICO**) Act.

9          As cited in the Plaintiff's Amended Complaint (Entry 5, 06/29/2018):

10         "In the shadow of **CIKR CIP** [Critical Infrastructure and Key Resource -- Critical Infrastructure

11   Protection] this suit is brought by the plaintiff who has invoked the Private Attorney General (**PAG**) doctrine

12   allowing the plaintiff to augment limited resources of the U.S.G. and augment their prosecutorial gaps.

13          "In the role of **PAG** the plaintiff is seeking enforcement of the applicable statues and laws that have been

14   violated by the wrong-doers in the past and the present.  The **PAG** doctrine is intrinsically baked-in to federal

15   racketeering laws and allows augmentation of prosecutorial gaps (see: a private citizen's standing to sue for

16   vindication of a public objective.  Associate Industries v. Ickes (2d Cir. 1943) 134 F.2d 694, 704 (2d

17   Cir.); Comment (1974) Note 144 U.Pa.L.Rev. 636, 658 ).

18         The private citizen plaintiff has a **judicially cognizable interest** in rights protected by federal statutes – an

19   interest sufficient to constitute standing to enforce these statutes as they are a matter of public interest.  County of

20   Inyo v. City of Los Angeles (1978) 78 Cal.App.3d 82, 88, fn. 1, citing Associated Industries v. Ickes.

21         The plaintiff relies on the wisdom of the U.S. Supreme Court to amplify the **PAG** standing to seek

22   enforcement of applicable laws, statutes, regulations and policy, noting that "private enforcement . . . provides a

23   necessary supplement" **prosecutorial gaps** in public law enforcement.  J.I. Case Co. v. Borak, 377 U.S. 426, 432

24   (1964)."

25         As seen from the foregoing excerpts from the Amended Complaint (Entry 5, 06/29/2018) the plaintiff has

26   invoked in the private attorney general (**PAG**) doctrine of the RICO Act.  To amplify West's Encyclopedia of

27

28                                          4
     **PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

American Law, edition 2 defines Private Attorney General as "A private citizen who commences a lawsuit to enforce a legal right that benefits the community as a whole".

The U.S. Supreme Court has addressed the doctrine of the **PAG** in <u>ROTELLA V. WOOD</u> (98-896) 528 U.S. 549 (2000) 147 F.3d 438, affirmed.  Quoted in relevant part:

> "The object of civil RICO is thus not merely to compensate victims but to turn them into prosecutors, "<u>private attorneys general</u>," dedicated to eliminating racketeering activity. [3] *Id.*, at 187 (citing *Malley-Duff*, <u>483 U.S., at 151</u> ) (civil RICO specifically has a "further purpose [of] encouraging potential private plaintiffs diligently to investigate")."

Indeed, in <u>Sedima v. Imrex Co.</u>, 473 U.S. 479, 497-98 (1985) the high court Court cited that "RICO is to be read broadly.  This is the lesson not only of Congress' self-consciously expansive language and overall approach, but also of its express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes'".

Caveat: it is instructive to note remedial aspects of PAG suits, as noted in the article "Private Attorneys General and the First Amendment", by Trevor W. Morrison of the Cornell Law School; "That remedial breadth, more than the presence or absence of individualized injury, is the critical ingredient in private attorney general litigation."  Page 604, Vol. 103:589, 103 Mich. L. Rev. 589 (2005).

The remedial nature of PAG provisions advances public interest lawsuits.  This is amplified by <u>ALTMANN v. CITY OF AGOURA HILLS CITY COUNCIL</u>, Court of Appeals of California, Second Appellate District, Division Four (2008)[unpublished].  Quoted in relevant part:

> The term private attorney general was coined by Judge Jerome Frank in the context of a challenge to a private persons standing to bring a lawsuit to vindicate the public interest.  (<u>County of Inyo v. City of Los Angeles</u> (1978) 78 Cal.App.3d 82, 88, fn. 1, citing <u>Associated Industries v. Ickes</u> (2d Cir. 1943) 134 F.2d 694, 704.)  It is meant to convey the concept that a private citizen may stand in the shoes of the Attorney General, not in the sense of an attorney representing a party in court, but <u>in the sense of a government official advancing the public interest</u> in a **lawsuit**.  Indeed, in most instances, a private attorney general is a private citizen represented by counsel in court.  [emphasis added]

As the underlying controversy on this lawsuit, the public distress, alarm and business disruption caused the "dirty bomb hoax" of 06/14/2017 (which impacted a dozen law enforcement agencies, the Port of Charleston and surrounding communities) this is a matter of public concern.  It has been alleged that this sensationalized publicity stunt was orchestrated to increase the opportunities for economic growth for Goodman and his CSTT team mates.

5

**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

1    The entire fraudulent publicity stunt is alleged to be an artifact of fraudulent messaging (for profit) that traversed the

2    interstate wires of the Internet.

3         The racketeering accusations against Goodman's and his CSTT team's on-going efforts to defraud

4    members of the public of credit card transaction via the wires of the interstate Internet demonstrate an on-going

5    public interest in this matter.  These on-going efforts mimic the fraud perpetrated on the U.S. Coast Guard for the

6    purposes of gaining publicity and other pecuniary benefits.

7         **This is a public interest lawsuit.**  It matters not if the Plaintiff has been personally injured by the

8    underlying controversy or is the undersigned is resident of South Carolina.

9

10   *CLAIMS STATED AND RELIEF SOUGHT IN PLAINTIFF'S COMPLAINT*

11        In essence, filing a motion to dismiss alleges there is some sort of critical deficiency with the

12   plaintiff's complaint, the claims alleged in the complaint, or the actual procedure of how the lawsuit was

13   initiated and, correspondingly, requests that specific claims alleged or the entire lawsuit be dismissed.

14        Defendant Goodman apparently asserts is his so-called "motion" (unlabeled as such) that the Plaintiff has

15   failed to state any actionable claims in the Amended Complaint (Entry 5, 06/29/2018).  "Plaintiff's claim must be

16   dismissed with prejudice because his legal claims are without merit".  See Defendant's MEMORANDUM IN

17   SUPPORT OF MOTION TO DISMISS (Entry 9-1, 08/03/2018).  This is the totality of Goodman's argument

18   concerning the issue of supposedly "failure to state a claim" as the heading of the MEMORANDOM (Entry 5,

19   06/29/2018) indicates.

20        A motion requesting dismissal based on failure to state a claim is alleging that under no circumstances

21   could the claim for relief be granted against the defending party.  It is "only the extraordinary case in which a

22   dismissal is proper" for failure to state a claim.  See United States v. City of Redwood City, 640 F.2d 963, 966

23   (9th Cir. 1981).  A court may dismiss a complaint as a matter of law only if the complaint: (1) lacks a

24   cognizable legal theory; or (2) fails to contain sufficient facts to support a cognizable legal claim.  Robertson v.

25   Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

26        Defendant's conclusory, vague and ambiguous statements in the so-called "motion" offer no support of his

27   argument or claim.  Defendant's proposition is that the Court dismiss this action based on wild accusation of some

28
                                           6
         **PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

conspiracy involving the undersigned.  NOTE:  For the record the undersigned denies any and all allegations, insinuations and accusations made by Goodman in the MEMORANDUM (Entry 5, 06/29/2018).

Assuming *arguendo* that Goodman's malformed pleading is some type of **FRCP Rule 12(b)(6)** request then the "[c]ourts must consider the complaint in its entirety, as well as other sources courts ordinary examine when ruling on Rule 12(b(6) motion to dismiss [.]"  Dunn v. Castro, 621 F.3d 1196, 1206 n.6 (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  See also Magulta v. Samples, 375 F.3d 1269, 1274-75 (11th Cir. 2004) (when reviewing a motion to dismiss for failure to state a claim, courts should read the complaint in its entirety); 5 Wright & Miller, Federal practice and Procedure § 1286 (3d ed. 2004).

Usually when a court is asked to weigh a motion filed pursuant to Rule 12(b)(6) it is generally confined to the four corners of the pleadings.  See Wilchombe v. TeeVee Toons, Inc. 555 F.3d 949, 959 (11th Cir. 2009).

Apparently the Defendant expects this Court to conduct his legal research by a legal review of the totality of the Amended Complaint (Entry 5, 06/29/2018) while simultaneously providing no legal support for the proposition that the Plaintiff has failed to state an actionable claim.

Consideration of the Amended Complaint (Entry 5, 06/29/2018) as a whole demonstrates that it meets the requirements established under the Federal Rules.  "[A] complaint must contain sufficient factual matter … to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Plaintiff's Amended Complaint (Entry 5, 06/29/2018) presents a detailed recitation of Defendant's alleged racketeering activities, violations of the **Computer Fraud and Abuse Act** (CFAA), attempts to defraud the U.S. government, issuance of threats that violate the **Terrorist Hoax Improvement Act**, etc.  These recitations more than satisfy federal pleading requirements.  A review of the entire Amended Complaint (Entry 5, 06/29/2018) demonstrates that in no way or manner has the Plaintiff upon mere legal conclusions but contains a detailed account of the Defendant's illegal practices which establish liability under the federal **RICO Act** (at a minimum).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 566 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Under FRCP Rule 8(a)(2), a pleading must contain "' a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the … claim is and grounds upon which it rests.'" <u>Twombly</u>, 550 U.S. at 555 (citations omitted),  In <u>Twombly</u>, the U.S. Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (citation omitted).

As the Eleventh Circuit has explained, *Twombly / Iqbal* principles require that a complaint's allegations be "enough to raise to relief above the speculative level." <u>Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention</u>, 623 F.3d 1371, 1380 (11th Cir. 2010).  Plaintiff has far exceed his responsibilities articulated by the Eleventh Circuit *Twombly / Iqbal* principles.

The federal rules only require that the plaintiff put the defendant on notice as to what the legal claim is and the grounds upon which the claim rests.  <u>Ascon Properties, Inc. v. Mobile Oil Co.</u>, 866 F.2d 1149, 115 (9th Cir. 1989).

The Defendant's so-called "motion" is silent on all the matters that are required in such motions.  In fact, the pleading (MEMORANDUM (Entry 9-1, 08/03/2018)) is little more than a Post-It Note type of response.  A fair reading of the Defendant's "motion" gives no inkling as to what legal standards are relied upon by Goodman.

The Defendant cannot and does not explicitly contend that the theories, facts and/or allegations presented in the Amended Complaint (Entry 5, 06/29/2018) are defective.  Rather, Defendant makes stunningly overly broad conclusory assertions devoid of any concrete rationale that would to support the insinuations in the Defendant's "motion".

## CONCLUSION

Defendant's so-called "motion" (MEMORANDUM (Entry 9-1, 08/03/2018)) is defective and should be rejected as it fails to comply with **FRCP Rule 12(b)**.  Nonetheless, if the Court elects to consider the motion it should be rejected as it only presents conclusory, vague and ambiguous statements that are devoid of legal argument and justification for such a heavy sanction as dismissal.  Almost the entirety of the Defendant's so-called "motion" contains unfounded, baseless, meritless and vexatious slurs, insinuations and slanderous allegations.

**Defendant's "motion" must be denied.**

8

**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

1    If the Court entertains the Defendant's "motion" then the Plaintiff should be allowed to amend the

2  complaint by leave of the court.  Where the defendant merely files a motion to dismiss for failure to state a claim

3  without an answer, plaintiff then would be entitled to amend his complaint as a matter of right.

4

5                                    **PRAYER**

6

7    For the reasons described above Mr. Goodman's MEMORANDUM pleading (Doc. 9-1, 08/03/2018)

8  should **denied** as it provides an insufficient defense, within a document that is redundant, immaterial, impertinent

9  and scandalous in nature.

10

11

12        Dated this day of August ____, 2018

13

14                                    D. GEORGE SWEIGERT

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    9
**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

1   D. GEORGE SWEIGERT, C/O
    GENERAL DELIVERY
2   MOUNT SHASTA, CALIF  96067

RECEIVED
USDC CLERK, COLUMBIA, SC

2018 AUG 13  AM 11: 19

3                    IN THE UNITED STATES DISTRICT COURT
4                    FOR THE DISTRICT OF SOUTH CAROLINA

5   D. GEORGE SWEIGERT                    Case No.: 2:18-cv-01633-RMG-BM

6            Plaintiff,

7                                         CERTIFICATE OF SERVICE
    vs.
8
    JASON GOODMAN
9
            Defendant
10

11

12                        CERTIFICATE OF SERVICE

13  On this day, August ___10___, 2018, I have caused to be placed into the U.S. Postal Service true copies of the

14  attached pleadings (with First Class postage affixed) to the following parties.

15
                        Clerk of the Court
16                      U.S. District Court
                        Matthew J. Perry, Jr. Courthouse
17                      901 Richland Street
                        Columbia, South Carolina 29201
18
                        Jason Goodman
19                      252 7th Avenue #6S
                        New York, NY 10001
20

21  I hereby attest under the penalties of perjury that the foregoing is true and accurate.

22

23                      D. GEORGE SWEIGERT

24

25

26

27

28

    CERTIFICATE OF SERVICE - 1