1

D. GEORGE SWEIGERT, C/O
P.O. BOX 152
MESA, AZ 85211



2

3

4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
(FOLEY SQUARE)

5

6 | D. GEORGE SWEIGERT

Case No.:  1:18-cv-08653-UA

7 |                    Plaintiff,

8 | vs.

**SECOND AMENDED COMPLAINT PURSUANT
TO FEDERAL RACKETEER INFLUENCED AND
CORRUPT ORGANIZATIONS ACT**

9 | JASON GOODMAN

**\* \* JURY TRIAL DEMANDED \* \***

10 | And

11 | PATREON, INC.

12 |                    Defendant

13

14 |                    **VERIFIED AMENDED COMPLAINT**

15 |        Now comes D. George Sweigert, pro se plaintiff and a non-attorney layman who is a California licensed

16 | Emergency Medical Technician with specialized training in critical infrastructure protection (CIP), to complain of

17 | the racketeering activities of the **CROWDSOURCE THE TRUTH** fraudulent social media enterprise.  Mr.

18 | Sweigert approaches this Court standing in the doctrine of the private attorney general to advance this public-interest

19 | lawsuit.

20

21 |        The plaintiff alleges violations of **18 U.S.C. § 1962(a), (b), (c), and (d)** (Federal RICO Act) and New York

22 | Consolidated Laws, **Penal Law - PEN § 460.00** (N.Y. RICO Act) by the defendants and racketeering co-

23 | conspirators described herein.  This complaint is necessarily lengthy as allegations must be pled to the stringent

24 | standards of **Fed. R. Civ. P. 9(b)**, to include descriptions of predicate offenses of wire fraud (see "circumstances

25 | constituting fraud or mistake shall [have] be stated with particularity," **Fed. R. Civ. P. 9(b)**).  See *In re Crazy Eddie*

26 | *Securities Litigation,* 1989 Fed.Sec.L.Rep. (CCH) 94,507, 1989 WL 56142 (E.D.N.Y. 1989).  These pleading

27 | standard are also driven by **CPLR 3016(b)**, entitled "Particularity in specific actions".

28 |                                    1

## CASE HISTORY

1.      The Plaintiff hereby incorporates the decision of the U.S. District Judge (Doc. No. 27, 09/17/2018) and the recommendation of the U.S. Magistrate (Doc. No. 22, 08/29/2018) as if fully restated herein.  This present case at bar was filed in the venue serving the jurisdiction of the Port Charleston, South Carolina.  The Wando maritime terminal at the Port was closed due to a "dirty bomb hoax" on 06/14/2017 perpetrated by role players of the social media confederation known as "CrowdSource The Truth" (**CSTT**) controlled, supervised and operated by the individual Defendant Jason David Goodman of New York, New York, 10001.

2.      The Plaintiff was drawn into this controversy on 06/10/2017 when a social media personality named "DEFANGO" (Manual Chaves, III of Tempe, Arizona) linked the Plaintiff as the brother of Goodman's room-mate -- "GEORGE WEBB" (George Webb Sweigert).  Both Goodman and Webb maintain extensive social media accounts on YouTube.Com, Twitter.Com, PATREON.Com, Facebnook.Com, etc.

3.      Prior to this time the Plaintiff portrayed himself in social media as "Dave Acton" and produced disaster recovery, emergency medical service, mass casualty response and Emergency Medical Technician (EMT) training videos on a YouTube social media channel known as "EMT-BASIC".  The Plaintiff become estranged from his brother George Webb sometime in 2012 due to Webb's insistence that he was a "Targeted Individual" and the associated fantastical gang-stalking stories that accompanied this designation.  Goodman also claims to be a Targeted Individual or "T.I.".

4.      On 06/10/2017, hours after the "DEFANGO" revelation of the relationship between the two brothers, the Plaintiff published a video disavowing any connection with George Webb and labeling him as a "useful idiot".  The video was widely watched with nearly 5,000 views.  Three days thereafter, as reported by the N.Y. Times and CNN, both Webb and Goodman caused the Port of Charleston "dirty bomb hoax" occurred on 06/14/2017.  This bomb hoax forced the closure of a marine terminal for eight (8) hours.

5.      The Plaintiff immediately published a white paper about the Port of Charleston event with the premise that the CSTT role players (Goodman/Webb) should be considered as cyber threat actors that pose a potential threat to the critical infrastructure of the United States.  In August 2017 Webb / Goodman split the partnership.

6.      The publishing of the Plaintiff's white paper (read by more than 2,600 persons) spawned an on-going and never ending smear campaign by CSTT owner/operator Goodman and newly recruited / rotated CSTT role players. Goodman's goal is to publically destroy George Webb, Manual Chavez, III, the Plaintiff and a host of other critics.

7.      Simultaneous with the illegal and unethical activities perpetrated by Goodman, and his new CSTT role players, is the constant fund-raising activities conducted via the wires of the Internet – which the Plaintiff contends represents wire fraud.  Goodman's racketeering activity (wire fraud, coercion, extortion) is on-going and appears to never cease – to include violations of a host of federal and state laws.

8.      To help the Court understand the personality of the Goodman this is how Goodman described this present lawsuit to his YouTube audience of thousands on 10/02/2018:

**46:37 GOODMAN**:  "The other lawsuit just got thrown out of court in South Carolina."

Video broadcast entitled, "The Politics of Personal Destruction with Special Guest Larry Nichols", 10/02/2018, (https://www.youtube.com/watch?v=-Mt-sf7bUSw )

9.      The Court will learn how Goodman (via the CSTT enterprise) has used the Plaintiff's name, photograph, picture, portrait and/or likeness, in numerous perverted ways, to advertise, solicit, and promote the CSTT business to tens of thousands of listeners, viewers, fans and consumers in a variety of formats, and popular social media platforms, including, but not limited to: PATREON, Facebook, YouTube, Twitter, Periscope, merchandise such as tote bags, coffee cups, T-shirts on RedBubble.Com, etc.



**Figure 1.  Plaintiff depicted on CSTT RedBubble coffee cup**

(https://www.redbubble.com/people/csthetruth/works/29102359-deep-state-dunces?p=mug)

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

## Contents

**DEFENDANTS' COURSE OF CONDUCT** .................................................................. 11

*SUMMARY* .......................................................................................................... 11

*RECRUITMENT OF RICO DISINFO AGENTS INTO ENTERPRISE* ................ 13

*PATREON AIDING AND ABETTING THE CSTT ENTERPRISE* ...................... 18

*ILLEGAL WIRE TRANSFERS* ......................................................................... 20

**JURISDICTION** ...................................................................................................... 20

*STANDING ISSUES OF THE PLAINTIFF* ....................................................... 21

*ESTABLISHING TWO PREDICATE ACTS OF WIRE FRAUD* ...................... 22

**PARTIES** ................................................................................................................. 25

*JASON D. GOODMAN* ....................................................................................... 25

*MULTIMEDIA SYSTEM DESIGN, INC.* ......................................................... 27

*PATREON, INC.* ............................................................................................... 28

*PLAINTIFF* ...................................................................................................... 31

**FACTUAL ALLEGATIONS** .................................................................................. 32

**SPECIFIC ALLEGATIONS** ................................................................................... 34

**I.  CSTT OPERATES AS A RACKETEERING ENTERPRISE THRU THE ABUSE OF MDSI BY GOODMAN** ..................................................................... 34

II. COMPUTER FRAUDS RELIED UPON BY MDSI / CSTT FOR CLOSURE OF THE PORT OF CHARLESTON .................................................................................................................36

III.    FRAUDULENT PRESENTMENT OF THE "HUDSON INTELLIGENCE GROUP" TO THE PUBLIC FOR THE PURPOSE OF ILLEGITIMATE FUND-RAISING ...................................40

IV.    CONSPIRACY TO DEFRAUD THE UNITED STATES THROUGH THE USE OF THE INTERSTATE WIRES .........................................................................................................42

V: TRANSMISSION OF MURDER FOR HIRE DISCUSSIONS ON THE DARKNET ..................44

VI:    TRANSMISSION OF HOAX ASASSINATION PLOTS FOR THE PURPOSE OF DEFRAUDING THE PUBLIC ......................................................................................................................45

VII:    CSTT RELIANCE ON MALICIOUS STATE ACTORS TO DENY THE CIVIL RIGHTS OF THE PLAINTIFF ........................................................................................................................47

VIII:    TRAFFICKING IN PERSONALLY IDENTIFIABLE INFORMATION FOR THE PURPOSE OF DEFRAUDING THE PUBLIC .............................................................................................49

XI:    TAMPERING WITH A WITNESS ......................................................................................51

X. ACTS OF CONTINUED CRIMINAL ACTIVITY - FALSE REPORT MADE TO MARYLAND LAW ENFORCEMENT .................................................................................................................53

XI.    CRIMINAL VIOLATIONS OF U.S. COPYRIGHT LAWS .................................................54

XII.    UNFAIR OR DECEPTIVE ACTS OR PRACTICES AFFECTING COMMERCE ....................55

PENDENT STATE CLAIMS ............................................................................................................57

XIII:    CREATING A SCHEME TO DEFRAUD MORE THAN TEN PERSONS IN VIOLATION OF N.Y. PENAL CODE § 190.65(1)(A) .............................................................................................57

XIV:    MAKING A TERRORIST THREAT IN VIOLATION OF N.Y. PENAL CODE § 490.20 MAKING A TERRORISTIC THREAT ...............................................................................................58

6

**XV:**   **VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§349-350 (CONSUMER**

   **PROTECTION ACT)** ............................................................................................... 58

**XVI:**   **FRAUD** ................................................................................................................ 59

**XVII:**  **NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** ........................ 60

**XVIII: TRADE LIBEL UNDER NEW YORK LAW** .............................................................. 60

**XIX:**   **INVASION OF PRIVACY, AND FOR INJUNCTIVE RELIEF PURSUANT TO CIVIL RIGHTS**

   **LAW § 50 and 51** ................................................................................................. 61

**DAMAGES** .................................................................................................................... 63

*RECKLESS DAMAGES INFLICTED UPON PLAINTIFF* .................................................................. 63

7

**TABLE OF AUTHORITIES**

### Cases

*Accord Petro-Tech, Inc. v. Western Co. of North America,* 824 F.2d 1349 (3rd Cir. *1204 1987)..............................29

*Anderson v. New York Tel. Co.,* 320 n.e.2d 647, 649 (N.Y. 1974).............................................................28

*Associate Industries v. Ickes* (2d Cir. 1943) 134 F.2d 694, 704 (2d Cir.); Comment (1974) Note 144 U.Pa.L.Rev.

   636, 658 )..............................................................................................................................22

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,* No. 93 CIV 6876 LMM, 2000 WL 1694322 ...................30

*County of Inyo v. City of Los Angeles* (1978) 78 Cal.App.3d 82, 88.............................................22

*Crawford v. Franklin Credit Mgmt. Corp.,* 758 F.3d 473, 489 (2d Cir. 2014)...............................12

Hass v. Henkel, 216 U.S. 462 (1910) .......................................................................................42

*J.I. Case Co. v. Borak,* 377 U.S. 426, 432 (1964) ......................................................................22

*McNally v. United States,* 483 U.S. 350, 358 (1987)...................................................................66

*Morrow v. Black,* 742 F.Supp. 1199 (E.D.N.Y. 1990) ...............................................................29

*Moss v. Morgan Stanley,* 719 F.2d 5 (2d Cir. 1983) ....................................................................22

No. 31063/94, 1995 WL 323710 (N.Y. Sup. Ct. 1995 ................................................................30

*Pereira v. United States,* 347 U.S. 1, 8-9, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954) ..........................29

*Pulte Homes, Inc. v. Laborers' Intern. Union of North America,* 648 F.3d 295 (6th Cir. 2011)...............................38

*Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.,* 119 F. Supp. 2d 1121, 1123 (W.D. Wash...............39

*Stratton Oakmont, Inc. v. Prodigy Services Co.,* 1995 WL 323710 (N.Y. Sup. Ct. 1995).............................29

*United States v. Burden,* 600 F.3d 204, 216 (2d Cir. 2010) ...........................................................24

*United States v. Czubinski,* 106 F.3d 1069, 1078 (1st Cir. 1997)....................................................39

United States v. Faulkner, 17 F.3d 745, 771 (5th Cir. 1994)...........................................................23

United States v. Maxwell, 920 F.2d 1028, 1035 (D.C. Cir. 1990) ....................................................23

United States v. Pecora, 693 F.2d 421 (5th Cir. 1982) .................................................................45

United States v. Perrin, 580 F.2d 730, 733 (5th Cir. 1978), aff'd, 444 U.S. 37 (1979)............................45

United States v. Vinyard, 266 F.3d 320 (4th Cir. 2001)................................................................41

**Statutes**

15 U.S.C. § 45(a)................................................................................................................55

**17 U.S.C. § 506(a)**..........................................................................................................55

**18 U.S. Code § 1343**.......................................................................................................49

18 U.S.C. § 1030.........................................................................................................24, 37

**18 U.S.C. § 1030 (5) (A)**.................................................................................................37

**18 U.S.C. § 1030(a)(4)**.........................................................................................39, 43, 44

**18 U.S.C. § 1038**.............................................................................................................39

18 U.S.C. § 1367...............................................................................................................21

**18 U.S.C. § 1958**.............................................................................................................45

**18 U.S.C. § 1962(a)**.........................................................................................................30

**18 U.S.C. § 1962(a), (b), (c), and (d)**...............................................................................1

**18 U.S.C. § 1962(d)**.........................................................................................................35

18 U.S.C. § 1965(b) and (d)..............................................................................................21

**18 U.S.C. § 2319**.............................................................................................................55

**18 U.S.C. § 371**.........................................................................................................42, 44

28 U.S.C. § 1331...............................................................................................................21

28 U.S.C. § 1332...............................................................................................................20

28 U.S.C. § 1367...............................................................................................................21

28 U.S.C. § 1391...............................................................................................................21

**42 U.S.C. § 1985(2)**.........................................................................................................49

47 U.S.C. § 230.................................................................................................................29

Allow States and Victims to Fight Online Sex Trafficking Act (FOSTA).........................30

N.Y. GENERAL BUSINESS LAW §§349-350.................................................................58

N.Y. Penal Code § 490.20.................................................................................................58

N.Y. Penal Law § 190.65(1)(a).........................................................................................57

New York Consolidated Laws, Penal Law - **PEN § 460.00**.............................................21

New York Penal Law § 460.00 ................................................................................57

**Penal Law - PEN § 460.00**...............................................................................1

Stop Enabling Sex Traffickers Act (SESTA) ...................................................30

## Rules

**Fed. R. Civ. P. 11** ............................................................................................67

**Fed. R. Civ. P. 9(b)** .........................................................................................1

## Treatises

Danielle Citron & Benjamin Wittes, *The Internet Won't Break*, 86 Fordham L. Rev. 401, 404 (2017) (quoting S. Rep. No. 104-23 (1995))/ note 35, at 403 (emphasis added)........................................30

Jack M. Balkin, Media Access: *A Question Of Design, 76 Geo. Wash. L. Rev.* 933. 936-38 (2008)........................28

## DEFENDANTS' COURSE OF CONDUCT

### *SUMMARY*

10.    Goodman is a social media profiteer who enjoys the benefits of an easy money fund-raising scheme that defrauds misguided patriotic Americans out of hundreds of thousands of dollars.  CSTT financial "sponsors" and "patrons" have been placed in fear and alarm by ominous warnings and false news spread by Goodman's fraudulent CSTT social media content.  Goodman's disinformation alternative media echo chamber is designed to frighten and distress his ALT-RIGHT terrorist-fringe audience.  Goodman employs a phony Twitter bot network ("botnet"), artificial YouTube subscribers, and CSTT disinformation agents that claim to be "independent researchers" and falsely accuse people like the Plaintiff of plotting a soft coup d'état of the present government and must be stopped – by any means necessary; to include inciting violence, extortion, coercion, murder for hire threats, public shaming, smear campaigns and professional reputation destruction, etc.  The end game is to collect more fund-raising monies by wire.

11.    Devoid of any real news content, Goodman poisons his audience against anyone attempting public debate of fake narratives that CSTT pushes via Twitter, Facebook, YouTube, PATREON, Periscope, etc.  The CSTT "vilify and amplify" technique destroys anyone that questions Goodman's disinformation ("disinfo") while simultaneous propping up the phony hoax narrative.  For over a year Goodman has centered CSTT's extensive social media empire on smear campaigns launched against the Plaintiff.   Using the Plaintiff's name, photograph, picture, portrait and/or likeness, without Plaintiff's written consent, Goodman (via the CSTT social media empire) profits off the perverted warnings he issues concerning the Plaintiff.  In fact, it has been informally estimated that 30-35% of Goodman's CSTT social media shows/podcasts (to include PATREON, YouTube, Twitter, Periscope, etc.) include some mention of the Plaintiff and his "deep state connections" to include five to seven (5 – 7) million social media impressions.

12.    To maintain a state of fear amongst naïve CSTT followers, Goodman and his CSTT role players (disinfo agents and proxies) continuously reconstruct and publish false allegations to fuel a fraudulent narrative – known to be false to Goodman.  These fake claims push CSTT viewers and "sponsors/patrons" into believing they are being attacked, monitored, and surveilled by the Plaintiff and others.  Goodman and his CSTT role players (disinfo agents

11

and proxies) proclaim to be "independent researchers" and claim to have "evidence" that the Plaintiff (and others

similar situated) are literally evil Satan worshippers that protect powerful pedophiles to maintain a secret

government control organization that spies on private individuals with the aim to destroy them if necessary.

Goodman continually tweaks and updates such scam narratives with new false allegations depending on whatever

"guest" independent research (disinfo agent) he is interviewing on a CSTT "news program" podcast.  These

podcasts pose a continuous threat of violence, economic ruin and humiliation to the Plaintiff and others.

13.     Based on information and belief, the operation described above is nothing more than a criminal RICO

enterprise with a pattern of racketeering activity that includes substantial predicate acts of wire fraud and other

violations of federal and state law.  These acts continue, are open-ended and are on-going.   CSTT racketeering

activities involve different New York state licensed corporation, under Goodman's control, that are presumably

operating with "doing business as" (DBA) monikers issued by local municipalities (which appear to have been

fraudulently obtained).  These predicate acts are described in exact detail in this complaint as required by *Crawford

v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014).

14.     The laws of the United States and New York State declare that these CSTT anti-government violent

extremists are NOT entitled to pursue the following actions (all alleged and supported in the complaint and the

accompanying court docket): (1) to receive and widely distribute stolen confidential electronic files of Democratic-

party political donors depicting their Personally Identifiably Information (P.I.I.), (2) to file false and misleading law

enforcement reports (see  Capitol Heights Police Department, Maryland), (3) to publish false statements to

thousands that Plaintiff was attempting to assassinate a CSTT role player with a directed energy weapon (D.E.W.),

(4) to masquerade as a public interest "news" channel to distribute hoaxes and scams, (5) to fraudulently conduct

illegitimate fund-raising activities, (6) to defraud the general public of funds and financial donations via hundreds of

instances of the transmission of false "news stories" as part of a wire fraud scheme, (7) to orchestrate violations of

the constitutional civil rights of the organizations and individuals CSTT/Goodman target, (8) to physically threaten

critics (see Casey Whalen), and(9) to destroy reputations with trade libel with the sensationalist supermarket tabloid

style one-sided depictions of victims (to name a few).  These are not isolated, rare or occasional acts.  This

misconduct represents the CSTT norm and is the on-going and open-ended conduct of CSTT.

12

## *RECRUITMENT OF RICO DISINFO AGENTS INTO ENTERPRISE*

15.    To recruit and defraud his audience Goodman offers a number of claims concerning his victimhood; such as being a targeted truth researcher, persecuted conspiracy theorist, targeted individual (T.I.), attacked 9/11 truther, harassed citizen investigative journalist and any other title that will attract gullible, naïve and militant ALT-RIGHT followers willing to wage war against "the swamp" and/or the "deep state" (euphemism to describe career public servants that are plotting a take-over) with financial contributions.

16.    To recruit CSTT enforcers, "goons", role players, disinfo agents, proxies and hostile foreign nationals Goodman provides pecuniary benefits by the cross-promotion of social media channels belonging to this celebrity misfits.  CSTT role players (disinfo agents and proxies) participate in alleged news interviews and news oriented broadcasts, constructed to act as individual "honey-traps" and/or "watering-holes" to attract gullible, naïve and dangerous anti-government viewers to watch.

17.    To understand the RICO enterprise consider that CSTT recruiting seeks audience viewers that have a predisposition to anti-social paranoid fantasies and violent tendencies (see Michael Barden (Avondale, AZ)). Goodman uses victimization glorification techniques to "interview" CSTT proxies with staged and scripted "interviews".  Then the glorified victims are cross-promoted by Goodman to develop the fake narrative in the CSTT "echo chamber" with other role players and proxies.  These interviews are also used to "double team" innocent victims with "vilify and amplify" tactics.  For example, Michael Barden's PATREON account is heavily promoted by Goodman during "interviews".  Barden's PATREON account exists at Internet URL: ( https://www.patreon.com/MichaelJBarden/overview )  Caveat: the Court's attention is directed to the Plaintiff's Eighth (8th) Request for Judicial Notice [**8-RJN, Doc. No. 32, 10/01/18**]).



Figure 2.  Screen-shot of PATREON account of Michael Barden of Avondale, AZ

Other CSTT cross-promoted goons, role players, disinfo agents and proxies include Joe Napoli, aka Casey Whalen (Orange County, CA), "Chinada3" (Montreal, Canada), Robyn Laird Gritz (Gurnee, IL), Harmon Wilfred (New Zealand), "True Pundit / Thomas Paine", aka Michael D. Moore (West Chester, PA), etc.  These cross-promotional CSTT proxies and role players amplify and continue false narratives and fake news stories within the CSTT echo chamber by constant repetition amongst themselves.  [For Chinada3 see Plaintiff's Sixth (6th) Request for Judicial Notice [6-RJN], Doc. 18, -1, 08/28/2018).

| Michael D. Moore "True Pundit" | **https://www.patreon.com/truepundit**<br>"We established this Patreon campaign because readers have asked: How can we help? **Where can we send money? This is where you can help contribute to investigative journalists,** intelligence veterans, and truth tellers who risk their safety and that of their families to bring you the truth. Free from corporate media manipulation and falsehoods." |
|---|---|
| Kevin Shipp | **https://www.patreon.com/Kevin_Shipp**<br>Kevin Shipp, former Central Intelligence Agency (CIA) Officer, intelligence and counter terrorism expert, held several high-level positions in the CIA.<br>*He is the only CIA officer in history to publicly expose government illegal activity and cover up, stand up against the state secrets privilege at great personal risk, and build a secret code in the manuscript of his book.* |
| Jason Goodman and CSTT | **https://www.patreon.com/crowdsourcethetruth**<br>Crowdsource the Truth focuses on examining current events, public policy, history, truth in media and other topics of interest.  Members work together to collect and analyze data from around the web and around the world. Together, we will do our best to determine what is fact and what is fiction. Everyone is invited to participate but of course no one is required to. |

**TABLE 1.  Examples of PATREON links and introductions**

18.     CSTT echo chamber role players, disinfo agents and proxies receive countless of hours of CSTT broadcast time and include:  disgruntled former F.B.I. special agent Robyn Gritz (now a Macy's make-up counter sales lady) [see Plaintiff's Fourth (4th) Request for Judicial Notice [4-RJN], Doc. No. 13, -1, -2, 08/17/18], disgruntled former C.I.A. officer Kevin Shipp (vexatious litigant against the C.I.A.), former F.B.I. informant Okey Marshall Richards (original source of "dirty bomb" intelligence), and those arrested and/or held by the F.B.I. for various crimes (Pete Santilli and Michael D. Moore), etc.  Most CSTT echo chamber role players claim special connections with law enforcement and proclaim their assistance to "bring down" the Plaintiff "for his illegal conduct".

14

19.     To falsely identify with freshly recruited and defrauded victims (victimization glorification), it is Goodman's intent (acting as an apologist for the militant ALT-RIGHT movement) that CSTT role players (disinfo agents and proxies) pretend to act as victims themselves (victimization glorification technique). These individuals are then deputized as "White Hats" and subsequently exert coercion and threats against Goodman's enemies (see recent threat of Casey Whalen against Brooklyn resident Andre Conte. YouTube video: "Closing In On JASON GOODMAN And His BUTT BUDDY Casey Whalen In JEN MOORE Murder Mystery", 09/29/2018, https://www.youtube.com/watch?v=k6As_kC8MEM ).

20.     The common racketeering purpose amongst the CSTT role players is the need to create a perceived deep state swamp "bogey man" that drives audience members to donate huge amounts of funds to Goodman and his ilk. Examples include:

- **Okey Marshall Richards** (North Carolina) a former West Virginia F.B.I. informant that broadcasted approximately thirty (30) one hour long CSTT shows using the false name Rock Hudson of the Hudson Intelligence Group. Richards was the key player in CSTT plot close the Port of Charleston, S.C. on 06/14/2017 (original jurisdiction of this lawsuit) with a "dirty bomb hoax". This required a major law enforcement multi-jurisdictional and multi-agency response costing millions to clear the Port.

- **Michael D. Moore,** (West Chester, Pennsylvania) known as "Thomas Paine" of the ALT-RIGHT hate speech web-site "True Pundit", which published an unsubstantiated story that former President William J. Clinton sexually molested and raped a teenage boy on a yacht in New Port, Rhode Island. Other hoax news stories have included purported leaks from the New York F.B.I. field office concerning "deep state" operatives planning assassinations, evidence destruction, server investigations of Hillary Clinton, etc. Moore has a criminal record for criminal conspiracy to violate U.S. copyright laws (arrested by the F.B.I. in 2013 – Philadelphia, PA). See Plaintiff's Fourth (4th) Request for Judicial Notice **[4-RJN]**, Doc. No. 13, -1, -2, 08/17/18).

    **Moore's PATREON account: https://www.patreon.com/truepundit**

- **Field McConnell,** (North Dakota) known as "Abel Danger", a "911 truther" who (amongst other things) (1) posits Boeing Aerospace engineered planes to strike the World Trade Center via remote control, and (2) that his half-sister, Kristen Marci, is the founder of the U.S. Senior Executive Service (**SES**) which covertly acts as a witches' coven to form a gynocracy capturing their power from the sacrifice of children in an operation code-named "PEDOCATE". Openly publishes YouTube content that claims McConnell's sister works for the "one world order" who is a creator of snuff films used to extort political favors. (https://www.youtube.com/watch?v=L2lCj_WAB_Y )

    **McConnell's PATREON account:  https://www.patreon.com/abeldanger**

15



**Field McConnell appears with sniper's rifle on the right with Senator Chuck Schumer on the left. Posted 09/10/2018**
**(https://www.bitchute.com/video/46moda4AMqk/ )**
**Figure 3. Field McConnell**

- **David 'Sherlock' Hawkins,** (United Kingdom) co-founder of the web-site "Abel Danger" with Field McConnell. Promotes "dead-pool operations on the **federal bridge** certification authority **(FBCA)**". Dead poll is apparently a betting game in which the super rich and elite place bets on the number of human causalities that are the outcome of pre-design horrific events – such as the attack on the World Trade Center on 09/11/2001.

- **Quinn Michaels (aka Korey Atkin)** (Las Vegas, Nevada) the technical architect of the CSTT software exploits and bot network, who is active in harassing the family of his estranged son via social media public shaming and the unauthorized release of their individual P.I.I. Michaels/Atkin is the main technical creator of the CSTT "black bot" network which attacks individuals on Twitter and YouTube with fake accounts. Goodman and Michaels claimed in YouTube content that they had "evidence" that Plaintiff was tracking Michaels in a black van in New Mexico and made an assassination attempt on Michaels via a D.E.W. (directed energy weapon). Goodman/Michaels also slandered the distinguished jurist U.S. District Judge the Hon. William T. Sweigert, of Sacramento, Ca., with their "research" that allegedly proved the Hon. Judge Sweigert was a member of a secret blood sacrifice cabal that organized the Patty Hearst kidnapping. Michaels also claims the Plaintiff and Judge Sweigert are members of the PEDOGATE group described above (see Abel Danger) based on his "significant research". (https://www.youtube.com/watch?v=PVeYSidcKkw )

- **George Webb Sweigert,** (Capitol Heights, Maryland) aka George Webb (Plaintiff's brother and useful idiot) shares Abel Danger's view of the S.E.S. and claims it operates as a compromise service with brown-stone houses set-up with low-light cameras to create clandestine films of politicians for extortion and compromise. Webb advocates for the immediate firing of all 10,000 career SES civil service individuals. Webb coordinated the release of "intelligence" with CSTT "Director of Intelligence" (Rock Hudson) to force closure of the Port of Charleston with a "dirty bomb hoax" on 06/14/2017. Abel Danger often publishes Webb's videos on the Abel Danger YouTube channel. (https://www.youtube.com/watch?v=KgQpY9F2a2I&t=158s )

16

- **Douglas Gabriel** of American Intelligence Media shares the claims that the SES is a criminal organization and all SES civil servants should be fired and tried in military tribunals. Additionally Gabriel shares the view with Abel Danger (McConnell) and George Webb that the U.S. Government's Federal Bridge Certification Authority (FBCA) is the hub of a deep state criminal network and must be forcefully dismantled. Goodman knowingly promotes the fraudulent theory that as a former consultant to the U.S. National Security Agency to assist in the establishment of the FBCA, the Plaintiff is a member of the secret criminal cabal arranging for blood sacrifices at the behest of Hillary R. Clinton via communications on the **FBCA**.

- **Pete Santilli,** (location unknown) a radio broadcaster held by federal authorities in Oregon and Nevada for allegedly inciting violence and provoking armed resistance against law enforcement as a result of the perceived injustices visited upon the Cliven Bundy family in Bunkerville, Nevada by the U.S. Bureau of Land Management. Regarding critics of Santilli Goodman cites, "I think we need to put some of these people in jail to teach them not only a lesson but other people who would endeavor to do this type of malicious character attack and destruction maybe have a second thought about it," cited Goodman in an interview with Santilli.
( https://www.youtube.com/watch?v=FB0A-9dP5Eo&t=10s )

- **Larry Klaman**, (Florida) a social media personality that posits the formation of "citizen grand juries" to indict "deep state operatives", an instantiation of the dangerous sovereign citizen movement that promotes anti-government extremism. "Short of that we are looking at a civil war here. . .the American people need to rise up ..," Klaman told Goodman on a CSTT YouTube show. (https://www.youtube.com/watch?v=LLReMSWaHow&t=116s )

- **Harmon Wilfred** (New Zealand) a supposed a "CIA whistle-blower" in possession of "testimony that would convict Bill and Hillary Clinton." Wilfred has renounced his U.S. citizenship due to enormous tax liens and lives in a palatial mansion in New Zealand. He and Goodman insinuated the Plaintiff was involved in money laundering operations in Nicaragua while the Plaintiff was serving honorably in the U.S. Air Force in the Republic of Panama (1979 to 1983). Wilfred vowed in a broadcast to help Goodman jail the Plaintiff.
(https://www.youtube.com/watch?v=qyg9YejHy0k )

- **Michael Barden** (Avondale, Arizona) publishes dozens of videos per week as a "Targeted Individual" and has spent two hours reviewing his court-ordered psychological examination for the crime of aggravated assault with a deadly weapon (see Eighth Request for Judicial Notice [**8-RJN, Doc. No. 32, 10/01/18**]). As the current state judge of the Barden case is a nominee to the federal bench, Goodman displayed her photograph prominently during a CSTT interview in the style of a veiled threat.
(https://www.youtube.com/watch?v=anJMtPhp4pI&t=1049s )

21.     Working together, the above listed CSTT disinfo agents and proxies can create a false story and ensures it reaches the segment population most likely to be influenced by the story via Facebook, Twitter, YouTube, Periscope, PATREON, etc. These and other notorious disinfo agents and proxies cooperate with Goodman to appear to corroborate the phony story by featuring phony experts, forged documents, doctored photos and videos, etc. The CSTT disinfo agents and proxies help in the distribution of the latest CSTT anti-government and pro-

17

revolution fake news story as part of Goodman's overall influence and recruitment of disenfranchised and naïve followers that believe in such theories (vilify and amplify).

22.     To illustrate.  Retired Lt. Gen. Michael Flynn (formerly Presidential National Security Advisor and presently indicated by the Office of Special Counsel, U.S. Department of Justice) sent a Twitter tweet on 11/02/2016 that linked to an article on the True Pundit (Michael D. Moore) ALT-RIGHT web-site (shown below).  This article was later discredited as entirely false.  Michael "Tue Pundit" Moore is a weekly "guest" with Goodman on the CSTT YouTube and PATREON shows.



**Figure 4.  True Pundit article Internet URL: https://t.co/O0bVJT3QDr**

## *PATREON AIDING AND ABETTING THE CSTT ENTERPRISE*

22.     CSTT recruitment and cross-promotion activities continuously operate on PATREON.COM, which corporately actively aids and abets Goodman and the CSTT enterprise ignoring repeated warnings to cease and desist.  Goodman exploits the PATREON "pay-wall" (a play on the word "firewall") to avoid widespread public detection to conduct wire fraud.   The PATREON "pay-wall" is a scheme developed by Goodman and PATREON to hide acts of civil conspiracy that take place during two-exchanges between Goodman and his operatives via the CHAT function.  In this manner, the false information cannot be vetted or denounced by public debate as with other traditional "crowdsourced" social media outlets such as YouTube.Com.  Goodman designs the rhetoric to incite the

18

PATREON mob into action – shielded from public scrutiny by the PATREON pay-wall.  The objective is to plan and conduct coercive and extortive smear campaigns against targets to ensure their compliance with Goodman's demands of silence.

23.    The CSTT/PATREON confederation of role players/proxies, and Goodman in particular, adopt a peremptory, Grand Inquisitor tone towards CSTT's targeted true victims.  CSTT's targeted true victims (such as the Plaintiff) are subjected to public ritualistic defamation and stochastic terrorism and labeled as "deep state affiliates" identified by Goodman [see Plaintiff's Fifth (5th) Request for Judicial Notice [5-RJN], Doc. No. 14-1, 08/24/18]. Goodman demands immediate and satisfactory "justice" from the CSTT audience (naïve followers and proxies) against these "deep state operatives".  Goodman's intent of these secretive "pay-wall" planning sessions with CSTT patrons and sponsors is to present fraudulent allegations (known to Goodman as fake)) to a captive PATREON audience of gullible and naïve social misfits.  In this sense, CSTT role players and proxies are nothing more than weaponized agents that are ordered to slander and dismantle the legitimacy of CSTT critics to serve Goodman's financial interests.

24.    Goodman's CTAs (calls to action) and have included: (1) open recruitment of new CSTT players and proxies to participate in reputation destruction and smear campaigns to demonize and economically ruin critics, (2) acquisition of clandestine computer and Internet hacker tools that can be used to help "crash the system" (see trafficking in passwords – Federal Computer Fraud and Abuse Act) and attack opposition web-sites and to disrupt the operation of the Federal Bridge Certification Authority (FBCA), (3) transmission of frivolous complaints to the Bar Association of the District of Columbia to attack attorneys that represent clients targeted by CSTT, (4) public shaming of former federal Inspector Generals at their private offices and private industry conferences for "treason" and "dereliction of duty" accompanied by coercive threats, (5) obstructing justice by the interference with the evidence collection processes of potential federal computer fraud cases, (6) staging attempted assassinations of CSTT players with social media hoaxes, (7) transmission of fake "attempted murder" police complaints to the home-town Sheriff of the Plaintiff's recreational residence, etc.  All these deplorable activities rely on the interstate wires of the Internet.

25.    After new CSTT "goons" are incited, Goodman employs a technique known as "ritual defamation" and/or "stochastic terrorism" as a way of isolating and harming people by denying their humanity and

trying to convert them into something that deserves to be hated and eliminated.  CSTT/Goodman fraudulently accuses other innocent individuals of the exact same activities utilized by the enormous CSTT network of affiliates that have access to considerable resources (several dozen web-sites, social media channels, paid services (PATREON.COM) etc.).

### ILLEGAL WIRE TRANSFERS

26.     Goodman's unethical, fraudulent and criminal activities are conducted via the interstate wires of the Internet and violates federal wire fraud statutes.  As CSTT is nothing more than a scheme devised by Goodman with the intent to defraud more than ten (10) individuals it is also a scheme to defraud under N.Y. state law (**N.Y. Penal Law § 190.65(1)(a)**).

27.     CSTT community "patrons" on the PATREON.COM network provide financial resources to the senior Goodman via **wire transfer** of funds, interstate **credit card processing**, Bitcoin transfers, **crypto-currency** transfers, etc.  Open source intelligence (**OSINT**) indicates funds as much as $20,000 a month may have been raised via these methods.  These PATREON.COM "patrons" are either (1) being defraud by CSTT senior leadership with fake and fraudulent "newsgathering", or in the alternative (2) are accomplices by aiding and abetting the racketeering activities of Goodman and his CSTT role players.

28.     Goodman and his CSTT role players are profit-motivated parties, involved in a fraudulent "ends justify the means" social media deception network, for fund-raising purposes.  To help perpetrate the fraudulent scheme CSTT role players (having no legitimate journalistic credentials) insist that they are respectable "journalists", "researchers", "investigative journalists", etc.  This is an attempt to hide their ritualistic defamation and stochastic terrorism behind the cloak of respectability and AMENDMENT I to the U.S. Constitution.

### JURISDICTION

29.     This Court has diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332 because the allegations of the complaint establish that this controversy exceeds $75,000, exclusive of interest and costs and that such allegations demonstrate divergent citizenship: Plaintiff is a citizen of California; Defendant Goodman is a citizen of New York and Defendant PATREON, LLC is a California licensed corporation.

30.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because Plaintiff's claims have a common nucleus of operative facts that arise from the same occurrences.

31.     The Court's exercise of personal jurisdiction over Jason D. Goodman comports with Constitutional due process standards.

32.     The Court's exercise of personal jurisdiction over PATREON, INC. (a California corporation) comports with Constitutional due process standards.  The Court has general and personal jurisdiction over Defendant PATREON, INC. pursuant to the New York long-arm statute, as codified as New York Consolidated Laws **CPLR 302(a)(1).**

33.     This Court also has personal jurisdiction over Goodman as to this complaint's Federal RICO claim pursuant to 18 U.S.C. § 1965(b) and (d), and supplemental jurisdiction over all defendants as to the pendent state law claims pursuant to 18 U.S.C. § 1367.

34.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or missions giving rise to this action occurred in this judicial district and the defendants are subject to personal jurisdiction here.

35.     Other claims articulated in this complaint other than the Federal RICO Act include violations of: the federal Computer Fraud and Abuse Act (**CFAA**), the federal Terrorist Hoax Improvements Act (**THIA**), the federal Civil Rights Act of 1871 (**Ku Klux Klan Act**), and the New York state RICO Act (New York Consolidated Laws, Penal Law - **PEN § 460.00**).

### *STANDING ISSUES OF THE PLAINTIFF*

36.     In the public interest of protecting critical infrastructure and key resources (CIKR) and as part of critical infrastructure protection (CIP) this suit is brought by the Plaintiff acting under the Private Attorney General (**PAG**) doctrine.  In the role of **PAG** the plaintiff is seeking enforcement of the applicable statues and laws that have been violated by the Goodman and his CSTT role players.

37.     The Court should take judicial notice of the present efforts of Goodman and CSTT players to disrupt, obstruct, and target the efficient operation of the Federal Bridge Certification Authority (FBCA).  Goodman

21

and his ilk view the FBCA as a tool to expedite the kidnapping, torture and human trafficking of children.  Again, as with the Port of Charleston, this represents a direct, indirect and/or implied threat to **CIKR** of the United States.

38.     The **PAG** doctrine is intrinsically baked-in to federal racketeering laws and allows augmentation of prosecutorial gaps (see: a private citizen's standing to sue for vindication of a public objective.  *Associate Industries v. Ickes* (2d Cir. 1943) 134 F.2d 694, 704 (2d Cir.); Comment (1974) Note 144 U.Pa.L.Rev. 636, 658 ).

39.     The private citizen plaintiff has a judicially cognizable interest in rights protected by federal statutes – an interest sufficient to constitute standing to enforce these statutes as they are a matter of public interest. *County of Inyo v. City of Los Angeles* (1978) 78 Cal.App.3d 82, 88, fn. 1, citing *Associated Industries v. Ickes*.

40.     The U.S. Supreme Court has addressed **PAG** standing for those that seek enforcement of applicable laws, statutes, regulations and policy, noting that "*private enforcement . . . provides a necessary supplement*" to prosecutorial gaps in public law enforcement.  *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964).

### *ESTABLISHING TWO PREDICATE ACTS OF WIRE FRAUD*

41.     As a preliminary matter, to establish jurisdiction under the Federal RICO Act, two predicate acts of wire fraud are described below.  *Moss v. Morgan Stanley,* 719 F.2d 5 (2d Cir. 1983).  An example of one racketeering pattern is provided below to illustrate the deceptive nature of the CSTT schemes.

### *RACKETEERING PATTERN (EXAMPLE OF ONE PREDICATE ACT OF WIRE FRAUD)*

a.   CSTT "Citizen Journalist" (Goodman) identifies him/herself as a member of a victim class with reasonable foresight that he can recruit anti-government "goons" that feel victimized and display a sense of outrage against the swamp or deep state.  Victim classes include: targeted individual, harassed citizen journalist, targeted truth seeker, etc.  Entitlement classes include: sovereign citizens, anti-government revolutionaries, persons favoring military tribunals and execution of government employees, (suspension of civil law and the federal courts), etc.

b.   Goodman can reasonably foresee that the CSTT "Journalist" that claims to have obtained specialized access to sensationalized information from anonymous sources that exposes government corruption will be held out as heroic for their "research" as part of their activities that are "draining the swamp" to expose "deep state operatives"

c.   Goodman then reasonable can foresee that the distribution of claims that the researcher/reporter is now in danger of losing their life for their "research" efforts (to include staged deceptive hoax assassination attempts) will outrage the audience.

d.   Goodman with fraudulent intent then issues deceptive claims (known to be false) that deep state operatives are following, surveilling, orbiting and "closing in" on the supposed endangered researcher – who is on the run for his/her life (see Quinn Michaels, aka Korey Atkin, Harmon Wilfred, George Webb, Pete Santilli, etc.).

22

e. Goodman's intent at this point is to collect fund-raising monies as these supposed fearless CSTT researchers/reporters now require monies, cash wire transfers, financial support, patrons, sponsors, etc. to flee for their lives, go into hiding, continue their "important research" and "fight the deep state" (amounts of $17K have been raised in a single occurrence), etc.

f. Goodman then conducts an ever present and on-going fraudulent fund-raising plea and invitation to join PATREAON.COM is broadcast daily by CSTT senior leadership (Goodman) on social media platforms to raise funds via wire transfers to Goodman's unregistered corporations, legally nullified companies, unregistered "DBAs" and other non-legal tradenames.

g. Persons who question the above need for funds, narratives, research or other CSTT claims are targeted for reputation destruction, smear campaigns, public shaming, falsified police reports, etc. designed to damage and defraud CSTT targeted individuals of their property interest in employment, business activities and professional reputations.

h. The CSTT role players and "goons" that participate in the racketeering enterprise gain financial and pecuniary benefits via the process of silencing critics described above.  This flippant demonization of critics is design to economically ruin them.

42.    Two elements alone can comprise the crime of wire fraud: (1) a scheme or artifice to defraud; and (2) use of interstate wire communication to facilitate that scheme); *United States v. Faulkner*, 17 F.3d 745, 771 (5th Cir. 1994).  The entire process described above is fraudulent on its face.  There are no legitimate CSTT researchers, they are not in danger of assassination, evidence offered of that danger is fake and/or forged, these researchers are not in danger and are not being chased by the Plaintiff, a secret microwave directed energy weapon has not been used in assassination attempts, etc.  It is Goodman's intent to manufacture synthetic drama and angst to drive the illegitimate fund-raising activities via the electronic wires of the Internet (thru PATREON).

43.    To satisfy the jurisdiction requirements of the Federal RICO Act and associated wire fraud violations the Plaintiff only must show (1) scheme to defraud by means of false pretenses, (described above) (2) defendant's knowing and willful participation in scheme with intent to defraud (devised and promoted by Goodman via CSTT), and (3) use of interstate wire communications in furtherance of scheme (use of PATREON credit card transfers); *United States v. Maxwell*, 920 F.2d 1028, 1035 (D.C. Cir. 1990) ("Wire fraud requires proof of (1) a scheme to defraud; and (2) the use of an interstate wire communication to further the scheme.").

### PORT OF CHARLESTON "DIRTY BOMB HOAX" (EXAMPLE OF A SECOND PREDICATE ACT OF WIRE FRAUD)

23

45.     The Port "dirty bomb hoax" incident (06/14/2017) is offered as a typical example of Goodman's activities to create undue alarm and distress for audience members to drive them to actions (CTAs).  The CSTT role players handsomely profited via pecuniary benefits by the national publicity given the mainstream media attention given to CSTT (by N.Y. Times, CNN, etc.).

46.     Goodman and CSTT role players relied upon their fraudulent narratives to form a hoax and scam narrative which was directly responsible on 06/14/2017 for the closure of the Wando maritime marine terminal at one of the world's largest seaports -- the Port of Charleston.

47.     The Court may want to take judicial notice of the several national media outlets that carried the story; which included the N.Y. Times, N.Y. Post, CNBC, ABC News 4, Time, etc.  As reported by Time, "The Coast Guard responded to the port's Wando Welch terminal after they received two calls around 8 p.m. on Wednesday notifying them of a possible dirty bomb — an explosive containing radioactive material — on the container ship Maersk Memphis, according to the New York *Times*."
(http://time.com/4820968/port-of-charleston-bomb-threat-conspiracy-theorist/)

48.     For a more complete analysis see the article entitled "False claims lead to real problems Conspiracy theory shuts down port," 6/20/2017, The Journal Gazette
(http://www.journalgazette.net/news/local/frank-gray/20170620/false-claims-lead-to-real-problems ) See also ( https://www.fitsnews.com/2017/06/15/dirty-bomb-scare-at-port-of-charleston/ )

49.     Goodman's public call to action (CTA) for persons to call the U.S. Coast Guard and to send Twitter tweets to the U.S. Coast Guard 7th District headquarters was based completely on the fraudulent CSTT scheme that a bomb threat existed on a MAERSK container ship.  A twitter storm of 8,000 impressions resulted from Goodman's direct CTA to over 2,000 audience members of a YouTube live-stream broadcast.  This incident demonstrates the vertical relatedness of criminal activity to the enterprise by Goodman. *United States v. Burden*, 600 F.3d 204, 216 (2d Cir. 2010)

50.     The Port hoax relied upon Goodman's violations of several statutes related to the Federal Computer Fraud and Abuse Act (18 U.S.C. § 1030) to compile the position report of the MAERSK MEMPHIS

24

container ship.  Goodman violated the Terms of Use (ToU) of VESSELFINDER.COM to illegitimately misuse the service as part of the bomb threat scheme.  This incident is described in detail later in the complaint.

## PARTIES

### *JASON D. GOODMAN*

51.     **Goodman and CSTT Affiliates are Remarkably Arrogant.**  Goodman is an individual person apart from the CSTT enterprise and maintains several corporate entities that are presumably registered in the State of New York.  As Goodman sees himself as not only equal but superior to the U.S. Government and its judicial system (see comments about "fake lawsuits"), Goodman may believe he does not to obtain proper DBA or corporation registration.

52.     As Goodman was a room-mate for about five (5) months in 2017 with the Plaintiff's brother – George Webb Sweigert -- the Plaintiff has unique insight into Goodman's nefarious behavior.  Goodman himself – as an individual -- has publically declared he has distributed YouTube video content to thousands of viewers describing his habit of creating video recordings of his masturbation activities via the CSTT enterprise.  Goodman openly stated in YouTube video content that he feared a hacker obtained some 500 photos of Goodman's sexual anatomy stored on his CSTT owned laptop computer.  These claims are made in a humorous and boastful manner on a public social media platform with no age restrictions.

53.     Goodman is a former Hollywood feature film 3-D graphics photographer who makes appearances in another YouTube channel operated by Goodman ("21stCENTURY3D" **[21c3D]**) see video entitled, "Jason Goodman on 3D at the 66th Cannes Film Festival", dated 05/26/2013. (https://www.youtube.com/watch?v=789p9gPO3MA )

54.     Goodman is fond of calling attention to another (apparently an individually controlled) YouTube channel entitled 21st CENTRURY 3D **[21c3D]**.  This account features a B-LIST portfolio of bikini clad women washing cars, bending over, and other sexualized and provocative gestures.  This behavior represents Goodman the individual, apart from the enterprise.  All of the Defendant Goodman's actions described above has taken place in the State of New York.

### *GOODMAN AS INDIVIDUAL VS. CSTT AS ENTERPRISE*

55.     Goodman has publically proclaimed that he studies his "targets" and looks for emotional vulnerabilities that can be exploited.  Goodman then relies on his ritualistic defamation to exploit specific weakness to inflict the maximum of emotional distress on the intended targets.  Then he uses the perceived legitimacy of the CSTT "news organization" to attack the target.

56.     For example, in a moment of candor Goodman has publically broadcast to tens of thousands of viewers that via the CSTT platform that the Plaintiff is "*a worm*" and should sleep on "*newspapers filled with dog sh_t*" a reference to child abuse the Plaintiff suffered.  Further, Goodman (as an individual) claims the Plaintiff should be arrested for merely filing this present lawsuit, which he has characterized as a "fake lawsuit" (see Plaintiff's Sixth (6th) Request for Judicial Notice [**6-RJN**], Doc. 18, -1, -2, 08/28/2018), along with other related federal litigation against Goodman filed by other victims.

57.     Goodman [ believed to communicate with his associates via e-mail addresses: truth@crowdsourcethetruth.org  and/or  jasongoodman72@protonmail.com ] is fond of proclaiming contacts with individuals that have significant F.B.I. experience to justify his claims that the F.B.I. has joined him in investigations against "deep state operatives" such as the Plaintiff.

58.     Goodman, acting as an individual, has released video content publically that proclaimed he personally telephoned several ambulance services in the Mount Shasta, California area (Plaintiff is a California licensed Emergency Medical Technician with professional contacts in the Mount Shasta area).  Goodman then advised these companies that Goodman was a "reporter" (CSTT enterprise) and that the Plaintiff was the target of an F.B.I. investigation that he apparently initiated with the cooperation of Special Agent Brittany Custer of the New York F.B.I. field office.  Goodman also contacted the Chief of Police of the City of Mount Shasta and advised him of the same allegations – to include that there was an active F.B.I. investigation against the Plaintiff.

59.     Goodman has publically stated he has enlisted the help of former F.B.I. Special Agent Robyn Gritz (Chicago, IL area) to also target the Plaintiff.  Gritz has appeared on a dozen CSTT shows to plea for monies and foment anti-government unrest and plea for donations to her GoFundMe.Com donation account.

60.     Goodman, as an individual, has also enlisted the help of "deep cover" journalist "Thomas Paine" (Michael D. Moore of West Chester, PA) of the "True Pundit" alt-right hate speech social media site.  "Thomas

Paine's" true identity was outed in July 2018 as a man arrested in 2013 by the F.B.I. for criminal copyright infringement.

61.     Prior the revelation of Moore's criminal history, Goodman informed CSTT audience members on a dozen occasions that Moore was a former F.B.I. agent with significant Bureau contacts.  See Mr. Goodman's video entitled "Retired FBI Special Agent Robyn Gritz and True Pundit's Thomas Paine On the OIG Report", 6/23/2018 (18.9K+ views) (https://www.youtube.com/watch?v=ZTDa7w4koko&t=1524s )

62.     Defendant Goodman has also falsely claimed that the New York City field office of the F.B.I. was considering criminal charges against the Plaintiff/undersigned for the crime of operating "a decentralized distributed defamation network".  See the YouTube video production "Jason Goodman Calls Lift the Veil", 4/6/2018 (13.2K+ views).

63.     Goodman has specifically reported that F.B.I. Special Agent Brittany Custer is an active agent in this CSTT "investigation".  All the foregoing is believed to be false and fraudulent and the basis for CSTT's continued deceptions.  All of the Defendant Goodman's actions described above has taken place in the State of New York.

## *MULTIMEDIA SYSTEM DESIGN, INC.*

64.     Defendant Goodman publicly discusses a variety of companies and entities – and often interchanges the parent/child relationship of such entities (e.g. subsidiary, parent-corporation, etc.).  One of these shell entities is "MULTIMEDIA SYSTEM DESIGN, INC." (MSDI) (aka Multimedia Software Design, Inc.), which has been a New York State corporation since 1994.  MSDI "headquarters" is located apparently in the apartment of Defendant Goodman.  Therefore, Goodman uses MDSI as an integral part of the extended social media confederation (racketeering enterprise) that apparently operate in alignment with MSDI via MSDI's non-registered tradename "Crowd Source The Truth" (CSTT)".  (Trademark application pending).

65.     On trademark registration application (filed 1/10/2018) for the mark "Crowdsource The Truth" (**CSTT**), the applicant **MSDI**, via Jason Goodman, provided the address "6s 252 7th Avenue New York NEW YORK 10001" to the U.S. Patent and Trademark Office (USPTO).  (USPTO serial number 87752970).

27

66.     The following entry is made in a federal court pleading in the signature block: "Jason Goodman, 252 7th Avenue #6S, New York, N.Y. Telephone (323) 744-7594, Facsimilia (917) 591-6370, Email: truth@crowdsourcethetruth.org, Pro Se." (page 7 of 8 in the document "DEFENDANT JASON GOODMAN'S ORIGINAL ANSWER", Doc. 14, Filed 10/06/17 in civil case Steele vs. Goodman, 3:17-cv-00601-MHL, in the U.S.D.C. for the Eastern District of Virginia (Richmond)).

## *PATREON, INC.*

67.     After suffering Community "strikes" on YouTube for the dissemination of inflammatory and mean-spirited videos on that platform, Goodman announced the formation of a "payment firewall". Goodman would no longer broadcast his instructions to CSTT role players and "goons" on publically accessed social media – such as YouTube. To learn of new instructions, discussions of attacks on CSTT targets, etc., persons would need to become "patrons" on the PATREON.COM platform.

68.     PATREON, INC. acts as an online Internet private intermediary for Defendant Goodman's CSTT content. PATREON, INC. assumes they can stand in the shadow of the limited immunity afforded by Section 230 clause of the Communications Decency Act (CDA) with a "hear no evil, see no evil" approach to content providers like Goodman. PATREON, INC. has thus granted Goodman's CSTT a free-pass as a third-party content provider to publish anything on the PATREON hosting service. Hosting service is a distinct term of art apart from communications conduit and/or search/application providers. (See *Anderson v. New York Tel. Co.,* 320 n.e.2d 647, 649 (N.Y. 1974) ) PATREON, INC. acts as a "content host" that stores, provides a cache, or otherwise provides access to third-party content. ( See Jack M. Balkin, Media Access: *A Question Of Design, 76 Geo. Wash. L. Rev.* 933. 936-38 (2008) ).

69.     Commencing in early December 2017 a dozen CEASE AND DESIST [**C&D**] demands were delivered by electronic messaging to Goodman and the General Counsel of PATREON, INC. complaining of Goodman's CSTT content. In these C&D demands Goodman and PATREON were noticed that Goodman was distributing fraudulent and deceptive information about the Plaintiff on the PATREON platform. Again and again, PATREON was noticed that Goodman was distributing false information about the Plaintiff that Goodman knew was false, but nevertheless proceeded in reckless disregard to the truth. This has established the direct and constructive knowledge of Goodman's misconduct with the private intermediary PATREON, INC.

70.     PATREON mistakenly believes that they are universally shielded from liability by Section 230 of the Communications Decency Act (47 U.S.C. § 230).  PATREON nevertheless is liable for the aiding and abetting of the wire fraud racketeering activates of Goodman and his CSTT players.  As PATREON maintains relationships with credit card processors that facilitate the wire transfers of monies to Goodman from so-called patrons, they are facilitating Goodman's CSTT racketeering enterprise.

71.     Caveat: "Wire fraud is committed by a person who: having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice." *People v Alba* 2014 NY Slip Op 24090 Decided on April 3, 2014.

72.     To amplify in *Morrow v. Black, 742 F.Supp.* 1199 (E.D.N.Y. 1990) the court held the opinion that a person who aids or abets in the commission of two or more acts may be held to have committed the acts.  Relying on *Accord Petro-Tech, Inc. v. Western Co. of North America,* 824 F.2d 1349 (3rd Cir. *1204 1987).

73.     The PATREON credit card wire transfers are not incidental to the Goodman scheme but are the integral part of it.  *Pereira v. United States,* 347 U.S. 1, 8-9, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954).

74.     Although repeatedly noticed with C&Ds, spoliation notices and other para-legal communications, PATREON continues to allow Goodman to spread his smear campaigns and conduct his clandestine meetings with CSTT players behind the "pay-wall", away from the scrutiny and vetting of the general public.  The secrecy PATREON provides Goodman and CSTT proxies allows for confidential synchronization of smear campaigns and distribution of fake narratives.  PATREON profits from the facilitation of these activities.

75.     The Court should consider that PATREON employs a content filtering system similar to the concepts articulated in *Stratton Oakmont, Inc. v. Prodigy Services Co.*, 1995 WL 323710 (N.Y. Sup. Ct. 1995).  The significance of *Stratton v. Prodigy* is that private intermediaries that have a content filtering system have less of a claim to Section 230 immunity.

76.     PATREON can suspend accounts, when it wants to, based upon obscenity.  This logic can be extended to cyber harassment and racketeering (wire fraud) in Goodman's case.  The Court's attention is directed towards PATREON's suspension of accounts as part of their compliance with the recent amendments to the CDA by

29

the Stop Enabling Sex Traffickers Act (SESTA) and Allow States and Victims to Fight Online Sex Trafficking Act

(FOSTA), which became law 04/11/2018.



Rolling Stone   ≡ Menu   *Read Next*   **Fox News and the GOP Seem to Have Forgotten Who the President Is**

prostitution," vastly expanding liability for sites that host any content on which **sexuality** may be discussed.

Because the law vaguely defines what speech can be interpreted as "supporting" prostitution, websites like Craigslist have already chosen to remove their personals section rather than face liability. Others such as Instagram have increased scrutiny of hashtags such as #yesastripper, while Reddit has outright banned subreddits including r/Sexworkers. Just this week, fundraising host Patreon **suspended** the accounts of numerous adult-themed creators. Any discussion of sex work, or even sex in general, could potentially make a third-party host – from Twitter to Google – liable for their users' posts.

Although its stated purpose is the prevention of sexual abuse by means of cutting off access to communication tools used by traffickers, SESTA-FOSTA has been widely **criticized** for disregarding the needs of the communities it seeks to protect. Organizations that provide services to people in the sex trades have **reported** an increase in harm since Congress passed the bill in March. That harm is largely coming from traffickers, who accurately see sex workers as newly vulnerable without online resources such as Craigslist or Backpage.com.

**Figure 5.  Suspension of accounts by PATREON**
(https://www.rollingstone.com/culture/culture-features/sex-worker-advocates-lawsuit-internet-censorship-sesta-fosta-666783/ )

75.     In *Oakmont v. Prodigy* the N.Y. Supreme Court found Prodigy responsible for offensive content in

part because of its active role in screening out material it found inappropriate (No. 31063/94, 1995 WL 323710

(N.Y. Sup. Ct. 1995) at *4).  The decision of the N.Y. Supreme Court in *Prodigy* forced the passage of Section 230

to the CDA to override *Prodigy's* practical effects.  However, nothing in the language of Section 230 indicates that

Congress contemplated any type of absolute immunity.  Congress enacted Section 230 believing that it was

"devising a *limited* safe harbor from liability" (Danielle Citron & Benjamin Wittes, *The Internet Won't Break*, 86

Fordham L. Rev. 401, 404 (2017) (quoting S. Rep. No. 104-23 (1995))/ note 35, at 403 (emphasis added) ).

76.     The behavior of PATREON, INC. has placed vicarious liability upon their enterprise via direct

and constructive knowledge of the Goodman and CSTT situation.  Prevailing court decisions indicate that

PATREON can be held liable for aiding and abetting Goodman's wire fraud racketeering scheme.  The Plaintiff

claims that civil aiding and abetting applies to **18 U.S.C. § 1962(a)** predicate acts (to include wire fraud).  See *Bank*

*Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, No. 93 CIV 6876 LMM, 2000 WL 1694322.

*PLAINTIFF*

77.     The Plaintiff is a critical infrastructure protection (**CIP**) professional who obtained a stellar reputation by performing ethical and competent work in critical infrastructure protection projects over decades  The Plaintiff [aka the undersigned] has been trained in the field of **CIP** as defined by Executive Order 13636, 2/12/2013, "Improving Critical Infrastructure Cybersecurity".  In this regard the plaintiff holds specialized credentials, to include: (1) California State certified Emergency Management Specialist, (2) Certified Homeland Protection Associate III (Homeland Protection Professional Certification Board), (3) Certified in Homeland Security – III (American Board for Certification in Homeland Security), etc.

78.     A partial education record for the plaintiff's studies in **CIP** is attached (courses offered by the Federal Emergency Management Agency (FEMA) to include: Threat & Risk Assessment Course (4/2012), Enhanced Threat and Risk Assessment (4/2012) and Critical Infrastructure Key Resources (CIKR) Awareness Course (1/2013).

79.     Shortly after the Port hoax the Plaintiff became publically critical of the actions of CSTT participating partners, "A study of the Port of Charleston evacuation and closure: How Live Action Role Play (LARP) Simulations create Cognitive Threat Vectors", June, 2017, viewed **2,511** times. (https://www.slideshare.net/dgsweigert/port-of-charleston-evacuation-case-study-the-cognitive-threat-of-conspiracy-theorists)

80.     The constant barrage of deceptive CSTT YouTube broadcasts that are directed at the plaintiff (some with over 40,000+ views) have forced the plaintiff to publish a book entitled, "Report: The Port of Charleston Dirty Bomb Hoax and Social Media Liability", 4/14/18, **ISBN-10:** 1717056792.

81.     Goodman and CSTT role players have presented so-called "evidence" to the CSTT audience that the Plaintiff:

- Is engaged in a pedophile network and has set up communication processes to enable human trafficking of children,

- Is an operative of the "Covenant Church" and participates in a hitchhiker stalking network to procure victims for human sacrifices,

- Is the son of an inventor that was working for deep state intelligence organizations to implement technology that would facilitate the clandestine take-over of the U.S. government,

- While in the service of the U.S. Air Force established cocaine money laundering networks in Nicaragua as part of the Iran-Contra scandal,

- While consulting to the U.S. National Security Agency established secret communications networks to facilitate human trafficking amongst NATO general in Europe,

- Planned and executed the "dirty bomb hoax" at the Port of Charleston, S.C. for the purpose of obtaining a lucrative contract from the U.S. Department of Homeland Security.

- Etc.

82.     The Plaintiff has a property interest in his professional reputation and to be free of interference of the likes of the defendants, CSTT role players and "goons" that delight in injecting themselves into the plaintiff's affairs.

83.     Note: a more exhaustive introduction of the plaintiff is provided in the damages section of this complaint. Suffice to say the injuries sustained by the plaintiff as a direct and proximate cause of CSTT provide standing pursuant to **Article III** of the U.S. Constitution (see **DAMAGES**).

# FACTUAL ALLEGATIONS

84.     The CSTT enterprise is separate and apart from Goodman, and although the CSTT confederation portrays itself as a benevolent social movement dedicated to discovering the truth related to conspiracy theories and to neutralize "deep state operatives", it has nonetheless broken several federal and state laws in an open and continuous fashion (see Plaintiff's Sixth (6th) Request for Judicial Notice [**6-RJN**], Doc. 18, -1, -2, 08/28/2018).

85.     It is believed that the moniker CrowdSource The Truth may have had a DBA record fraudulent assigned. As discussed below, the myriad of corporate entities operated by Goodman has created confusion as to the exact nature of the purported DBA.obtained by Goodman assigned as a DBA

86.     **CSTT's Aim Is Not Merely to Act as a "News Channel" or "Journalistic Investigation Source" but to Destroy Individuals It Targets and Disrupt CIKR.** Goodman and his CSTT aligned confederates seek to destroy the persons it targets and ensure their silence with compliance to Goodman's coercion. These attempts include inciting CSTT social media followers and proxies to file false police reports, "shut down" (terminate) targeted social media channels, contact of places of employment of CSTT critics, having critics fired

32

from lucrative jobs, etc. The same techniques (which were employed with the Port of Charleston) are designed to disrupt the efficient operation of CIRK (as with the FBCA).

87.    **CSTT Confederates and Goodman Engage in Actions that Are Illegal, Tortious, Unethical, and Violate of Federal Wire Fraud Statutes.** CSTT, and its confederates, not only commit illegal, tortious, and unethical actions but boast about them. These include:

- The closure of the Port of Charleston, South Carolina by a CSTT directed "dirty bomb hoax" perpetrated directly by Goodman and his CSTT affiliates on 06/14/2017 relying on the spread of frightening and destabilizing scam and hoax narratives.

- Making false statements to law enforcement to entangle Goodman enemies into unnecessary police inquiries. This includes Goodman's constant threats to see that people are arrested. The most recent example the Capitol Heights Police Department, Maryland (see Plaintiff's Seventh (7th) Request for Judicial Notice **[7-RJN]**, Doc. 26, -1, -2, 08/31/2018.)

- Inciting CSTT followers and proxies via Twitter to file false police statements to the Siskiyou County Sheriff's Department, California.

- Soliciting members of the public to "download" the confidential files of the Democratic national Committee containing the P.I.I. of significant donors. This action violated the laws of the State of New Jersey.

- Inciting CSTT followers with fraudulent reports that the Plaintiff attempted to assassinate a CSTT role players with a Magic Chef Microwave Oven at a New Mexico hotel room.

- Tortuously interfering with the evidence collection process of a criminal investigation in the courts of the District of Columbia.

- Etc.

88.    **CSTT's Dominant Objective Is Lucrative Fundraising.** Goodman and his CSTT affiliates have developed highly remunerative fund-raising techniques using several credit card wire transfer platforms; to include: PATREON, Inc., PayPal, BitCoin, etc. These funds have provided Goodman with lavish trips to London, England, New Zealand, Las Vegas, Nevada, Hollywood, California, Sanford, Florida, Washington, D.C., New Mexico, etc.

89.    The lavish moniker and graphic "CrowdSource The Truth" appears on two YouTube social media channels and the PATREON.COM channel. These channels post instructions on how to wire funds to the YouTube channel moderator "Jason Goodman" of "CSTT". One CSTT channel is listed under the name YouTube name "Jason Goodman" and carries the CSTT banner.

(https://www.youtube.com/channel/UC8Cl9QaRtuW9CNjP7pP4BBQ)

33

90.     Wire transfer instructions encouraging the use of crypto currencies (increasing difficult in tracking of such funds), are published for the general public on these social media channels.  The CSTT YouTube channel solicitation proclaims:

> Become a Sponsor of Crowdsource the Truth
> http://paypal.me/crowdsourcethetruth
> monthly sponsorship on Patreon
> https://www.patreon.com/crowdsourceth...
> BTC - 14y2bEJ484DTbQwthX51VWpcRtk9Q7kmQQ   [BitCoin]
> ETH - 0x07a23Ac0EBb5936d60A8cBfE07D64A579Cc756c9   [Etherum]
> LTC - LVP2d143QjPv1JaJpqgPHzQzv2qSQCDnbd   [Litecoin]
> email truth@crowdsourcethetruth.org

## SPECIFIC ALLEGATIONS

### I.    CSTT OPERATES AS A RACKETEERING ENTERPRISE THRU THE ABUSE OF MDSI BY GOODMAN

91.     Plaintiff repeats, replead and incorporate by reference each and every allegation of paragraphs 1 through 90 of this Complaint as though set forth in full herein.

92.     Based on the foregoing it is hereby alleged that defendant **Jason Goodman** is an owner, agent, and authorized representative, employee, managing director or manager of MDSI and/or CSTT.  Defendant Goodman is a culpable party separate and apart from MDSI / CSTT enterprises and receives financial benefit from engaging CSTT in wire fraud through the use of non-legal entities (legal nullities) to finance the dissemination of materials that impact interstate and foreign commerce.  Mr. Goodman maintains an address at: #6s, 252 7th Avenue New York, N.Y. 10001.  Goodman coordinates these activities via his New York City apartment described as the "CSTT HQ [Headquarters] communications hub".

93.     The common racketeering purpose amongst the CSTT role players is the need to create a perceived deep state swamp "bogey man" that drives audience members to donate huge amounts of funds to Goodman and his ilk.  Goodman maintains the structure of the enterprise through the use of CSTT affiliates and role players that come and go; such as: George Webb Sweigert ("George Webb") of Maryland, Quinn Michaels (aka Korey Atkin) of Nevada, Marshall Richards (aka Rock Hudson and Deep Uranium) of North Carolina, Dr. Jerome Corsi of Virginia, Joe Napoli of Orange County, California, acting presumably with the alias "Casey Whalen"

34

(W/D), etc. [ joe@launchpathes.com, Joseph M. Napoli Executive Search, dba LaunchPath, and/or

jmartinnapoli@gmail.com , and/or Twitter: @joenapoli7 ], Robyn Gritz, Michael Moore (aka Thomas Paine), etc.

94.     All of these partners contributed to the acquisition of monies derived from the pattern of ongoing

racketeering activity to invest in the enterprise, to acquire control of the enterprise through a pattern of racketeering

activity, or to conduct an enterprise through a pattern of racketeering activity. §§ 1962(a)-(c).

95.     The CSTT enterprise, under Goodman's active direction and participation, operates to (1)

transmit, distribute and publish false narratives which amount to propaganda and to (2) terminate, squelch, quash

any opposing views by rivals, third parties or other victims.  This is a form of on-going racketeering activity.

96.     Defendant Goodman is the chief benefactor of the financial remuneration and monies collected

from public solicitation and appeals for sponsorships, gifts and tributes.  In many respects Goodman is both a liable

"person" and the "enterprise" itself.  **18 U.S.C. § 1962(d).**  Such solicitations occur on a daily basis on the CSTT

YouTube.Com channel and represent on-going racketeering activity.

97.     Goodman relies upon MDSI, a New York registered cooperation, via the use of an unregistered

fictitious name (CSTT), that has not complied with state business regulations regarding the solicitation of funds

from the general public by corporations with fictitious names.  Failure to follow state corporate regulatory

compliance is an instantiation of the pattern and practice of this RICO enterprise.

98.     As stated on the web-site for the State of New York Department of State, Division of

Corporations, "Certificate of Assumed Name Domestic and Foreign Corporations: A domestic or foreign

corporation may conduct or transact business under an assumed name (commonly referred to as a D/B/A) by filing

a Certificate of Assumed Name pursuant to Section 130 of the General Business Law."  MDSI has apparently never

attempted to comply with this law, although Mr. Goodman informed the public to the contrary in a YouTube video

broadcast.

99.     In the YouTube video broadcast, featuring Goodman, entitled, "Wall Street Puppetmaster?"

appearing on the "Jason Goodman" channel, published 12/6/2017.

(https://www.youtube.com/watch?v=p1dS5plxO6o)

Mr. Goodman comments:

35

01:03:   GOODMAN.  "Because these are the same people that have been telling you that I have a fake corporation.  I guess they have never heard of a D/B/A?  21ˢᵗ Century 3D?  I might have another corporation that's "doing business as" 21ˢᵗ Century 3D?  Is that possible? ".

100.     A YouTube channel entitled, "21ˢᵗ Century 3D", or "21c3D" does carry content from Mr. Goodman.  However, records checks in the State of New York have not turned up any D/B/A (doing business as) for 21c3D or 21ˢᵗ Century 3D (assuming a Section 130 Certificate of Assumed Name has been filed).

101.     As stated by Mr. Goodman's fraudulent representations in the 12/6/2017 YouTube video broadcast (Wall Street Puppermaster?) he had the ability to legally collect funds from sources such as PayPal and PATREON.  Mr. Goodman insisted that he indeed had legal authority that allowed the solicitation of funds from the pubic – whether from CSTT or 21c3D.  Apparently, both entities are a legal nullity and are not authorized to transact business in the State of New York pursuant to Section 130.

102.     CSTT's wire transfer financial intermediaries PATREON and PayPal (credit card payment transactions processors) have allegedly been provided fake and fraudulent information by Goodman on PATREON/Paypal subscriber agreements.

103.     Members of the public that were solicited by Goodman and have contributed funds to CSTT (via PayPal and PATREON) have allegedly detrimentally relied on Goodman's fraudulent assertions and promises as to the legality of his businesses (MDSI, 21c3D, DBAs, etc.).  Further, it is alleged the name "CrowdSource The Truth" is a legal nullity and has no legal significance with the State of New York.  Caveat: Goodman has apparently submitted CSTT artwork to the Patent and Trademark Office for trademark protection.

104.     The use of non-legal names that are a legal nullity, to solicit funds from the general public, reflects a predicate act of wire fraud pursuant to **18 U.S. Code § 1343** - Fraud by wire, radio, or television.  The activities described in Count One represent a pattern and practice of the RICO enterprise and unmistakably constitute the kind of conduct Congress sought to deter.

## II.      COMPUTER FRAUDS RELIED UPON BY MDSI / CSTT FOR CLOSURE OF THE PORT OF CHARLESTON

105.     Plaintiff repeats, replead and incorporate by reference each and every allegation of paragraphs 1 through 104 of this Complaint as though set forth in full herein.

36

106.     The closure of the Port of Charleston, South Carolina by Goodman and his CSTT role players is itself a predicate act of several wires frauds.  The chronological events that initiated the Port Hoax on 6/14/2017 are as follows:

- **Incident A.**  Mr. Goodman's phone call to the U.S. Coast Guard Charleston Section duty officer at **843-740-7050** while broadcasting LIVE to 2,117 audience members, and

- **Incident B.**  A request by Mr. Goodman, three (3) minutes after the call to **843-740-7050**, to tweet to the U.S. Coast Guard 7th District Headquarters **Twitter account** the following message **"DIRTY BOMB – PLEASE INVESTIGATE – MAERSK MEMPHIS"**.  Subsequently a purported 8,000 Twitter impressions were made of that message (tweet).

107.     Goodman insisted on the tweet (creating 8,000 Twitter impressions [aka "Twitter Storm"]) to ensure the Memphis Maersk would – indeed – be stopped an inspected.  As seen on video, when Goodman was unsatisfied with the level of commitment by the U.S.C.G. Charleston Section duty officer and the apparent lack of a dramatic incident response, he then waited three (3) minutes and induced his audience to create a foreseeable "Twitter Storm" to "drive home" the point for the U.S.C.G. 7th District Headquarters (for 2K+ "live" viewers).

108.     The primary purpose of the "dirty bomb warning" tweets to the 7th District Headquarters Twitter account was to force the illegitimate search of diplomatic containers on the Maersk Memphis.  The CSTT sponsored radiological device warning was a ruse to accomplish the goal of obtaining illegitimate publicity to grow the CSTT social media channels.  This was accomplished via widespread media coverage (see N.Y. Times and C.N.N. articles).

109.     Goodman crafted the message "DIRTY BOMB – PLEASE INVESTIGATE – MAERSK MEMPHIS", which was fraudulent on its face and was transmitted by CSTT role players for the sole purpose to defraud the government as explained below.

### *VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT (CFAA), 18 U.S.C. 1030*

110.     The actions of MDSI/CSTT coordinator Goodman during Incident (B) violated the provisions of the Computer Fraud and Abuse Act (**CFAA**), **18 U.S.C. § 1030**, which states in relevant part:

**18 U.S.C. § 1030 (5) (A)**
**knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;**

111.     The admonishing, solicitation and inducement of 2K+ audience members (LIVE on air) to transmit the Twitter message "DIRTY BOMB – PLEASE INVESTIGATE – MAERSK MEMPHIS" is a soft-style

cognitive distributed denial of service attack (**DDoS attack**).  This is similar to a mass phishing e-mail attack (cognitive deception).  This is a mass deception perpetrated upon the public for the purposes to defraud those taking action.

112.    To amplify, in 2011 the Sixth Circuit Court of Appeals addressed DDoS-style attacks in *Pulte Homes, Inc. v. Laborers' Intern. Union of North America*, 648 F.3d 295 (6th Cir. 2011).  The *Pulte Homes* case did not use the same terminology per se (**DDoS attack**); but, did deal with a labor union's concerted denial of a targeted company's use of phone systems and e-mail limiting the ability to do business[1].

113.    Suffice to say, that the 8,000 CSTT inspired tweets to the 7th District Headquarters, insisted upon by Goodman, were unnecessary as Goodman had already confirmed that the Charleston Sector duty officer was aware of the "dirty bomb" threat three (3) minutes prior to Goodman's twitter storm inducement.

114.    As seen in the video entitled, "Clear and Present Danger (Calm Before the Storm?) #maerskmemphis", **6/14/2017**, several MDSI/CSTT racketeering enterprise players make their appearance (59K+ views).

During the "Clear and Present Danger" video.

At 49:00.  WEBB.  "The fact that, we were giving the warning for the next 9/11. [GOODMAN.  That's right].  To the members of Congress.  So they are now forewarned.

At 49:20.  WEBB.  There is a plan under foot right now, again from the Intelligence Community, dirty bomb is being thrown around. Quite a bit. There is a dirty bomb plan for a major U.S. city.  [GOODMAN. Unintelligible] … I believe it is going to be Memphis. [GOODMAN. Whoa}.  I will just say that right now."

115.    The premeditated character of this cognitive cyber-attack is illustrated in the YouTube video entitled, "George Webb Continues the Deep Dive Into Pakistani ISI - NATO Rat Line", **5/27/2017**, (three weeks before the "dirty bomb hoax") Goodman is holding the camera and interviewing "George Webb" [Sweigert].

116.    This indicates an intent to defraud – three (3) weeks prior to the 6/14/2017 incident.

02:50:  WEBB.  There is also going to be a ship involved.  It is going to be **Maersk Shipping Lines.**  [he spells] M A E R S K.  And it is also going to be this … special focus – the **Memphis.**"

03:00:  WEBB.  The Memphis.  The ship **Memphis**.  Don't know why.  My contact [Deep Uranium] has about five (5) U.S. intelligence sources that worked in drug interdiction.

---

[1] https://shawnetuma.com/2013/10/09/yes-case-law-says-it-really-is-a-cfaa-violation-to-ddos-a-website/

03:11:  WEBB.  The Maersk is going to be.  We want to track the **Maersk**.  Every day, since the last … since 1999 basically."

(  https://www.youtube.com/watch?v=ekr5cw2WAbU&t=6726s  )

117.      It is a crime to utilize a protected interest computers (such as those connected to the Internet) for the facilitation of a fraud.  Quoting the **CFAA** (in relevant part:

> **18 U.S.C. § 1030(a)(4);**
> **knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period . ..**

118.      In *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121, 1123 (W.D. Wash. 2000), a civil case involving section 1030(a)(4), the court favored an expansive interpretation of "**intent to defraud**."  In denying the defendant's motion to dismiss, the court held that the word "fraud" as used in section 1030(a)(4) simply means "**wrongdoing**" and does not require proof of the common law elements of fraud. *Id.* at 1126 (construing *United States v. Czubinski*, 106 F.3d 1069, 1078 (1st Cir. 1997)).  Thus, the plaintiff in *Shurgard* stated a sufficient cause of action under section **1030(a)(4)** by alleging that the defendant participated in "dishonest methods to obtain the plaintiff's secret information." *Id. Shurgard.*  Quoted in relevant part from *Prosecuting Computer Crimes,* Computer Crime and Intellectual Property Section, Criminal Division, Published by Office of Legal Education Executive Office for United States Attorneys (page 29) (https://www.justice.gov/sites/default/files/criminal-ccips/legacy/2015/01/14/ccmanual.pdf).

### *VIOLATIONS OF THE TERRORIST HOAX IMPROVEMENTS ACT OF 2007, 18 U.S.C. § 1038*

119.      The content of the warning tweet crafted by Goodman ("**DIRTY BOMB – PLEASE INVESTIGATE – MEMPHIS MAERSK**") was itself a violation of **18 U.S.C. § 1038**, Terrorist Hoax Improvements Act of 2007.  The tweets (creating 8,000 impressions for the 7th District) transported a false message designed to force an illegitimate search of the Memphis Maersk by the U.S. Coast Guard.

120.      The Plaintiff has reason to believe, based on the totality of CSTT shows (30+) featuring Rock Hudson (aka Okey Marshall Richards) that the "dirty bomb" warning was a ruse created by Richards / Webb and Goodman to force the illegitimate inspection of the Memphis Maersk to bring applause and audience approval to CSTT role players.

121.     The foregoing reflects a predicate act of wire fraud in violation of **18 U.S. Code § 1343** - Fraud by wire, radio, or television, **18 U.S. Code § 1030** and **18 U.S. Code § 1038**.  The activities described in Count Two represent a pattern and practice of the RICO enterprise and unmistakably constitute the kind of conduct Congress sought to deter.

### III.   FRAUDULENT PRESENTMENT OF THE "HUDSON INTELLIGENCE GROUP" TO THE PUBLIC FOR THE PURPOSE OF ILLEGITIMATE FUND-RAISING

122.     Plaintiff repeats, replead and incorporate by reference each and every allegation of paragraphs 1 through 121 of this Complaint as though set forth in full herein.

Six weeks after the 6/14/2017 Port of Charleston debacle, Goodman commissioned a CSTT special service known as the "Hudson Intelligence Group".  A renamed character "Rock Hudson" was introduced, which was Okey Marsall Richards (the source of the dirty bomb hoax).

123.     In a YouTube video, entitled "Hudson Revealed", 8/14/2017, (on the Jason Goodman channel), (20K+ views) the following description is provided:

> Published on Aug 14, 2017
> With over 40 years of military, intelligence and clandestine experience, confidential Crowdsource operative codename: HUDSON steps forward after months in the shadows.
>
> While operating in the background, Mr. Hudson has provided guidance and information assisting George and Jason daily for the past several months.
>
> Pressure mounts as the real possibility of a coup d'etat in America grows each day.

***CONTINUED INTEREST IN THE PORT TO SUPPORT FUND-RAISING***

124.     During the interview between Goodman and Rock Hudson (Marshal Richards), Hudson proclaims:

> 39:18.   HUDSON.  [Source of dirty bomb hoax tip]  In regards to George Webb, I have a tremendous respect for Webb.
>
> 39:33.   HUDSON.  George is just an amazing … what a mind.
>
> 39:39.   GOODMAN.  Yeah.
>
> 40:20.   HUDSON.  We have documents from the United Nations – UNODC.  [United Nations Office on Drugs and Crime]  And so here is what we know – not, not from us.  But, from what we have been able to find out using their own documentation.  I am sure that they are not going to like the idea that we have them.  [Laughter]

40

40:40:   HUDSON.   They need to keep things more secure.  Is all I can say.  [Goodman laughs]

40:47:   HUDSON.   We know for a fact that 425 million cargo containers are transported each year – in the world --   [Goodman – uh huh] that represents over 90% of the world's total trade.  [Goodman – Amazing]

41:18:   HUDSON.   Charleston, South Carolina is a port hub.  [Goodman – right].  These hubs, depending on the security protocols that they are using that, that day for that ship.  They can process 1,500 to 50,000 containers per day.

41:48:   HUDSON.   Based on the United Nations own meta-data in order for a port hub to process 50,000 containers in a 24 hour period is 2,083 containers per hour.  [Goodman – seems like a lot].  [Laughter] Well, let's break it down further – 35 containers per minute.  [Goodman – wow].

42:33:   HUDSON.   Because they are making such an effort to determine if a container is safe or not safe.  They ought to be ashamed of themselves.

(  https://www.youtube.com/watch?v=TWUI8gDPFx0  )

125.     The aforementioned video is one of thirty plus (30+) videos that attempt to incite unnecessary angst, fear and concern with the general public at large for the main purpose of collecting funds, donations, tributes and gifts to "continue on the work of bringing you the truth".  The premise that Mr. Goodman is somehow a qualified "investigative journalist" interviewing an "intelligence expert" with five (5) other intelligence affiliates (see Hudson Group) is fraudulent on its face.

126.     To quote Mr. Goodman from the YouTube video "Sunday with Charles - (Special Wednesday Hammer Drop Edition) Bonnie and Clyde, 12/6/2017 (21K+ views):

2:32:00  GOODMAN.   And you know, as I have said, we have gotten over the past several months a lot of news from Mr. Hudson and the various members of the Hudson Group – **that I am in touch with.**  While he is not broadcasting with us.  And, uh. [emphasis added]

127.     Using such fraudulent video content to solicit funds from the public is an honest services fraud.  **18 U.S. Code § 1343** - Fraud by wire, radio, or television.  The activities described in Count Three represent a pattern and practice of the RICO enterprise.

128.     Note: In this regard, the "materiality" test, requires that the defendant possessed a fraudulent intent and made "any misrepresentation that has the natural tendency to influence or is capable of influencing" the victim to change his behavior. *United States v. Vinyard*, 266 F.3d 320 (4th Cir. 2001).

129.     As the four essential elements of the crime of wire fraud are: (1) that the defendant voluntarily and intentionally devised or participated in a scheme to defraud another out of money (creation of the hoax and scam

41

Hudson Intelligence Group); (2) that the defendant did so with the intent to defraud (Goodman knew H.I.G. was a sham consisting only of Okey Marshall Richards); (3) that it was reasonably foreseeable that interstate wire communications would be used (fund-raising pleas via PATREON); and (4) that interstate wire communications were in fact used (use of PATREON credit card transfers).) *Citing* Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit 6.18.1341 (West 1994)),

130.    These CSTT / Goodman public assertions are fraudulent and based are illegitimate data to produce unnecessary public alarm and concern about maritime container safety.

131.    These deceptive assertions are yet another instantiation of a fraudulent publicly distributed deception to defraud CSTT patrons and sponsors (PATREON/PayPal).

132.    The use of fraudulent deceptions disguised as news reports to solicit funds from the general public reflects a predicate act of wire fraud pursuant to **18 U.S. Code § 1343** - Fraud by wire, radio, or television.  The activities described in Count Three represent a pattern and practice of the RICO enterprise and unmistakably constitute the kind of conduct Congress sought to deter.

## IV.    CONSPIRACY TO DEFRAUD THE UNITED STATES THROUGH THE USE OF THE INTERSTATE WIRES

133.    Plaintiff repeats, replead and incorporate by reference each and every allegation of paragraphs 1 through 132 of this Complaint as though set forth in full herein.

134.    The actions of Goodman and CSTT role layers (Webb-Sweigert / Richards) on 6/14/2017 significantly disrupted the operations of the U.S.C.G., F.B.I., National Guard, Sheriff's Department, etc. at the Charleston Sector and the 7th District Headquarters (aka Unified Command).  Such actions by this trio were fraudulent on their face and in violation of **18 U.S.C. § 371.**

135.    This CSTT publicity stunt had the effect of "impairing, obstructing or defeating the lawful function of a government department".  *Hass v. Henkel*, 216 U.S. 462 (1910) .  The CSTT conspirators of 6/14/2017 also interfered with and obstructed one of the lawful government functions by deceit, craft or trickery.  As noted in *Hammerschmidt v. United States*, 265 U.S. 182 (1924) "It is not necessary that the Government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane or the overreaching charged…".

42

136.     In violation of **18 U.S.C. § 1030(a)(4)** Goodman relied upon a third-party computer to commit the fraudulent misrepresentation.  Goodman used his personal computer to access the wires of the Internet and access the third party Web site known as "**VESSELFINDER.COM**".  In the video, entitled "Clear and Present Danger (Calm before the Storm?) #maerskmemphis", 6/14/2017 (59.5K+ views), Goodman is seen accessing "VESSELFINDER.COM" on a large format television screen completely exposed to the 2K+ audience members.  Goodman displays the "VESSELFINDER.COM" web-site to the audience beginning at time marker 1:53:15.  Goodman then begins tracking the **Memphis Maersk.**

1:50:34:  GOODMAN.  **JOE NAPOLI** says eight minutes.

1:50:37:  WEBB.  What?

1:50:38:  GOODMAN.  **JOE NAPOLI** says eight minutes.  Joe, is that two clicks.  GW.

1:50:50:  GOODMAN.  OK, you can find the Maersk live.  OK, I've got a .. I've got a thing here that's going to give us the Maersk live.

1:51:04:  GOODMAN.  What I can do is once it goes live on the iPad …

1:51:06:  WEBB.  Did he say it's going to be there in eight minutes?

1:52:50:  WEBB.  Is the Maersk on the move?  Is the Maersk on the move?  Is the Memphis on the move?  Or is it stationary?

1:52:56:  GOODMAN.  [Looking at VesselFinder.Com as display is broadcast to audience] Well, we've got a live map of the position of the Maersk Memphis right here, up on the screen.

137.     Goodman exceeded the authorization provided by VesselFinder.Com once he rebroadcast the vessel tracker display to his 2K+ audience members.  The terms and conditions of the VesselFinder.com web-site state in relevant part:

**(https://www.vesselfinder.com/terms)**

**(3) Licence to use website**
Unless otherwise stated, we or our licensors own the intellectual property rights in the Service and material on VesselFinder. Subject to the licence below, all these intellectual property rights are reserved. You may view, download for caching purposes only, and print pages, photos, news, data and all other information from the Service for your own personal use, subject to the restrictions set out below and elsewhere in these Terms. You must not:

- republish material from this website (including republication on another website) without appropriate accreditation to VesselFinder.com or a backlink to www.vesselfinder.com;
- sell, rent or sub-license material from the website;
- show any material from the website in public without mentioning VesselFinder.com as a source;
- reproduce, duplicate, copy or otherwise exploit material on our website for a commercial purpose;

43

- redistribute material from this website except for content specifically and expressly made available for redistribution.

138.     When Goodman re-broadcast the VesselFinder.Com display for commercial purposes (to the CSTT 2k+ audience) Goodman exceeded the license of the web-site and its grant of authorized use (see: "You must not: reproduce, duplicate, copy or otherwise exploit material on our website for a commercial purpose").

139.     It was a violation of 18 U.S.C. § 1030(a)(4) to **exceed the privileges** of the VesselTracker.Com web-site to use the content in a rebroadcast format.  Further, it was a violation of 18 U.S.C. § 1030(a)(4) for Goodman to have used the wires of the Internet to access the protected computer (VesselTracker.Com) and to retrieve information that **would be used in a fraudulent presentation made to the government.**

140.     The use of a CFAA protected computer (VesselTracker.Com) to fashion the fraudulent message was **intrinsic** to the offense – not some ancillary system that was indirectly accessed.  To the contrary, the location of the Memphis Maersk was the integral piece of the fraudulent narrative that a radiological explosive threat presumably existed for the citizens of the City of Charleston, requiring CSTT notifications and warnings to the U.S. Coast Guard.

141.     The foregoing information indicates that Goodman violated (1) **18 U.S.C. § 1030(a)(4)** to obtain information intrinsic to the creation of a fraudulent representation and (2) that Goodman violated **18 U.S.C. § 371** when this fraudulent representation was transmitted to the U.S. government.  The activities described in Count Four represent a pattern and practice of the RICO enterprise.

142.     It is alleged that all wrong-doers and/or defendants (Goodman) did unlawfully, willfully and knowingly attempt to commit an offense against the United States, that is, wire fraud, in violation of **18 U.S. Code § 1343.**

## V:     TRANSMISSION OF MURDER FOR HIRE DISCUSSIONS ON THE DARKNET

143.     Plaintiff repeats, replead and incorporate by reference each and every allegation of paragraphs 1 through 142 of this Complaint as though set forth in full herein.

44

144.    In a video production of a discussion group posted on the YouTube channel "Defango", entitled "After Hours | Danger Zone Quinn Exposed + goodman Darknet woes", 12/10/2017 (@.7K+ views) a discussion member ("Billy Bob") claims that Quinn Michaels (Korey Atkin) lived in his garage for three (3) weeks.

145.    An exchange takes place between "Defango" and "Billy Bob" (landlord to Quinn Michaels).

7:00 DEFANGO. "Is this the same Quinn Michaels that has been going on CrowdSource The Truth?

07:03 BILLY BOB. Yeah, man. And while he was here (Quinn Michaels) he was actually talking to Jason Goodman. That Jason Goodman guy, that you always talk about on your show.

07:11 DEFANGO. Yeah

07:12 BILLY BOB. And they were, like, talking about putting bounties on you and all kinds of stuff, man. They really don't like you. I don't know why. Looks like you guys are both, you know, "CrowdSourcing the truth". I don't get why you guys are fighting, man. You know. It's kinda weird.

07:28 DEFANGO.    Yeah. Did you said [sic]. You said putting … you said they were trying to put out .. what on me?

07:32 BILLY BOB. They were trying to like put out hits on the dark web .. and they were trying to put hits on you … try to offer bounties. There's like bounty rewards right now for information on you.."

( https://www.youtube.com/watch?v=w9qfq_IjYss&t=446s )

146.    This type of information regarding Quinn Michaels and the alleged use of the DarkNet is troubling. Mr. Michaels-Atkin has made dozens (50+) of YouTube video productions that address doomsday cult like subject matter with a moniker known as "**#TeamTyler**".

147.    The foregoing activities discussed in Count Five represent violation of **18 U.S.C. § 1958**, Murder for Hire. A single interstate telephone call will furnish Federal jurisdiction. *United States v. Perrin*, 580 F.2d 730, 733 (5th Cir. 1978), *aff'd*, 444 U.S. 37 (1979); *United States v. Pecora*, 693 F.2d 421 (5th Cir. 1982).

148.    The activities described in Count Five represent the transmission of information via the interstate wires which contains prohibited content and is a pattern and practice of the RICO enterprise. It is the type of conduct Congress sought to prevent with the Federal RICO Act.

## VI:    TRANSMISSION OF HOAX ASASSINATION PLOTS FOR THE PURPOSE OF DEFRAUDING THE PUBLIC

### *QUINN MICHAELS MICROWAVE ATTACK IN NEW MEXICO*

45

149.     Plaintiff repeats, replead and incorporate by reference each and every allegation of paragraphs 1 through 148 of this Complaint as though set forth in full herein.

150.     Defendant Goodman maintains close contact with Mr. Michaels-Atkin, as noted in the YouTube video production "Jason Goodman Calls Lift the Veil", 4/6/2018 (13.2K+ views).

1:01:28 GOODMAN. "He [the undersigned] somehow knew that Quinn Michaels was in Vaughn, New Mexico. How did he know that, Nathan? Unless he, or someone he is communicating with, is following Quinn. Quinn was shocked to learn that Dave Acton Sweigert knew his location [Michaels]. Because I didn't even know his location and I had just left hanging out with him in South Dakota. He [Michaels] **and I were in close communications every day**. Quinn has become a very close friend of mine. And **I speak to him all the time**. I care about Quinn, I don't want anything bad to happen to him. He is a nice guy. I don't want anything bad to happen to anybody. I want the people that we are talking about to meet justice. Whether that is going to jail or stripped financially penalty or losing the ability to do the malicious acts their doing." [emphasis added]

151.     Plaintiff's <u>affirmative defense</u>: as a preliminary matter the plaintiff **denies** – in its entirety – that the undersigned knew of the location of Mr. Michaels in Vaughn, New Mexico. Defendants Goodman/Michaels have continually pushed this fraudulent narrative that the undersigned is somehow involved in an attempted "assassination plot" as Mr. Michaels suffered the explosion of a bleb attached to his lung in Vaughn, New Mexico.

152.     In YouTube video, entitled, "Serco's Four Horsemen and the North Tower on 9/11 with Special Guest David Hawkins", May 29, 2018, at 1.00:01 Goodman proclaims:

01.00:01: GOODMAN. I do want to come back to one topic, though, can I? So you spoke about the magnatron and this is amazingly coincidental. That you would bring this up in our conversation, today. I have mentioned to you in the past … uh … my associate Quinn Michaels. And in about December Quinn suffered a spontaneous collapse of his lung…..

01.00:37: GOODMAN. But, we speculated at the time .. uh .. that it could have been caused by a microwave weapon.

153.     Plaintiff <u>affirmative defense</u>: Again, the undersigned denies any notion – in its entirety – that he has some knowledge about microwave weaponry, has used such weaponry, has become familiar with such weaponry or has any operational weaponry. The notion that the undersigned is involved in microwave weapons, uses such weapons, has a background in such weapons, or any other extrapolation of this notion is hereby denied.

154.     In the YouTube production "The Anonymous DarkNet Cult of Michael", March 29, 2018, (32.5K+ views) Mr. Goodman proclaims:

14:52. GOODMAN. And I would recommend that the people that may or may not be pursuing Quinn should do the same thing.

46

15:00: GOODMAN.  You and I saw some evidence that indicated that David Sweigert [the undersigned] was aware of your [Quinn] location in Vaughn, New Mexico.  How could he have possibly known that?

155. Plaintiff affirmative defense:  Once again, the Plaintiff **denies** all insinuations, allegations and accusations that I had any knowledge of the whereabouts of Quinn Michaels (Korey Atkin) when Mr. Michaels suffered the ruptured bleb on his lung which occurred near Vaughn, New Mexico in December 2017.

156. The entire narrative described above is fraudulent and designed to increase angst amongst CSTT community members that somehow Quinn Michaels was in danger of death and/or series bodily injury because of action undertaken by the plaintiff.  This narrative was designed to increase donations, contributions, increase sponsorships and drive further views and viewership – all at the plaintiff's expense who suffered great damage to his property interest in a professional reputation.

157. The foregoing reflects a **predicate act of wire fraud** in violation of **18 U.S. Code § 1343** - Fraud by wire, radio, or television. The activities described in Count Six represent a pattern and practice of the RICO enterprise and unmistakably constitute the kind of conduct Congress sought to deter.

## VII:   CSTT RELIANCE ON MALICIOUS STATE ACTORS TO DENY THE CIVIL RIGHTS OF THE PLAINTIFF

158. Plaintiff repeats, replead and incorporate by reference each and every allegation of paragraphs 1 through 157 of this Complaint as though set forth in full herein.

159. Based on the totality of broadcasts conducted by Mr. Goodman and disgruntled ex-F.B.I. special agent Robyn Gritz and "deep cover" ex-F.B.I. source "Thomas Paine" (Michael D. More) of the alt-right social media site "True Pundit", there appears to be evidence that official computer resources (Criminal Justice Information System [**CJIS**]) of the F.B.I. New York field office have been used to conduct intelligence research on CSTT targets; such as the Plaintiff [see Plaintiff's Fifth (5th) Request for Judicial Notice [**5-RJN**], Doc. No. 14-1, 08/24/18].

160. If true, a conspiracy would exist to deny the Plaintiff his AMENDMENT IV right to privacy and his AMENDMENT V right to a secure property interest in his professional reputation.  Based on the totality of facts it is alleged that (1) former F.B.I. employee Gritz and her alleged (2) former F.B.I. agent co-role CSTT player Paine

1 (Moore) and (3) current F.B.I. Special Agent Brittany Custer clandestinely used State-owned computer systems
2 (CJIS) to illegitimately gather intelligence on the Plaintiff.

3     161.    It has been stated on several YouTube videos by CSTT role player Webb-Sweigert and Goodman
4 that Gritz / Paine (Moore) have significant contacts within the F.B.I.  Goodman has insinuated that he has very close
5 law F.B.I. contacts (presumably Special Agent Brittany Custer) that have "guided" him in obtaining evidence
6 against the undersigned – and others.

7     162.    Goodman's bold statements that he allegedly (presumed to be another falsehood) engaged the
8 New York City field office of the F.B.I. to investigate the Plaintiff are another public deception.  Goodman's
9 statements that the F.B.I. was "extremely interested" in the Plaintiff for the purported crimes of "distributed
10 defamation" is another public deception.

11     163.    Public insinuations have been made by Goodman that "evidence" and "proof" are in his
12 possession that seemingly only the F.B.I. could provide– e.g. the purported cell-phone position reporting of the
13 Plaintiff's location prior to the Quinn Michaels (aka Korey Atkin) assassination attempt near Vaugh, New Mexico.

14     164.    To this point, the situation has become so infamous that a law professor and licensed attorney,
15 with a Twitter following of 501K followers, has publically called for the investigation of Gritz, Paine, Goodman and
16 Webb-Sweigert.  Quoting recent tweets in relevant part:

17 **Seth Abramson** @SethAbramson Jun 21

19 19/ **Robyn Gritz**—a disgruntled former FBI employee who describes herself as a good friend of Flynn—
has been cited by True Pundit, co-interviewed with **"Thomas Paine"** (True Pundit editor-in-chief) and says
20 she's met "Thomas Paine" through a mutual acquaintance, **George Webb Sweigert**.

21 NOTE10/ If the media or FBI wants to investigate, here's an interview list: Bannon Flynn Giuliani
22 Goodman, **Jason (Sweigert co-host)** Gritz Kallstrom Osgood, Michael * **Paine** ** Prince Trump Jr.
**Sweigert** * Led Weiner probe at NYPD *while donating to Donald Trump*. ** Identity TBA.

24     165.    Gritz , Paine and Goodman discussed (at length) the tweets of Mr. Abrahasom in a YouTube video
25 entitled, "Retired FBI Special Agent Robyn Gritz and True Pundit's Thomas Paine On the OIG Report", 6/23/2018
26 (18.9K+ views) (  https://www.youtube.com/watch?v=ZTDa7w4koko&t=1526s  ).  It was noted by the group that

48

Goodman could plausibly hide behind the F.B.I. policy requiring written approval by the U.S. Attorney General to question "journalists", as Goodman is fond of calling himself.

166.     Mr. Abramson has averred that resources within the New York City F.B.I. field office maintain a "cozy" relationship with some of these entities – such as Goodman, Webb-Sweigert, Gritz or Paine (Moore).  If active duty F.B.I. agents – such as Special Agent Brittany Custer -- are assisting any of the aforementioned individuals with the results of queries and results from official databases, networks or CJIS then the aforementioned individuals have been clothed as state actors.

167.     The misuse of official F.B.I. resources (databases, networks, CJIS, etc.) to further the Goodman, Webb-Sweigert, Gritz and Paine (Moore) conspiracy violates the anti-conspiracy sections of **42 U.S.C. § 1985(2)** (Obstructing justice; intimidating party, witness, or juror**) and § 1985(3) (**Depriving persons of rights or privileges**)**.

168.     Additionally, the foregoing reflects a predicate act of wire fraud pursuant to **18 U.S. Code § 1343** - Fraud by wire, radio, or television.  The activities described in Count Seven represent a pattern and practice of the RICO enterprise and unmistakably constitute the kind of conduct Congress sought to deter.

## VIII:   TRAFFICKING IN PERSONALLY IDENTIFIABLE INFORMATION FOR THE PURPOSE OF DEFRAUDING THE PUBLIC

169.     Plaintiff repeats, replead and incorporate by reference each and every allegation of paragraphs 1 through 168 of this Complaint as though set forth in full herein.

170.     In early June, 2017 Goodman was personally involved in the possession, distribution and possible alteration of files which were the stolen property of the Democratic National Committee (DNC).  In social media circles this incident became known as "Who Spoofed the Seth Rich files?".  Seth Rich was a DNC staffer allegedly murdered while attempting to transfer the files in question to the whistleblower outlet known on social media as "Wikileaks".

171.     A Goodman associate known as Patricia Negron obtained the stolen DNC files from an individual with the code name "White Rabbit" in the vicinity of Boston, MA (the home of Negron).  After she obtained possession of the files on a USB thumb drive she drove from Boston to New York City to meet with Goodman and Webb-Sweigert.  The three then colluded to make the files available on the Internet, induced CSTT community of

naïve followers to "download the files" and to request the CSTT community perform an analysis of the files in question.

Ms. Negron describes the events in her social media blog:

"Given the serious risk associated with handling the contents, they were uploaded immediately to Google Drive and shared far and wide to help ensure those involved in the disclosure would have their best shot at surviving it. Shortly thereafter, Jason Goodman became the first self-identified whistleblower to submit documents to Wikileaks."
"The events of the past week drove a significant escalation in exposing D.C. corruption, at long last. The data on the thumb drive produced by @W4BB17 ["white rabbit"] is the most damning evidence exposed thus far, according to the initial analysis of Webb's field of skilled researchers who are the engine behind his investigation."
( https://medium.com/@panegron/the-accidental-journalist-part-vi-stuffformike-f8e6027f0234 )



**Figure 6.  The Accidental Journalist**

172.     The files apparently were lists of donors of the DNC and included Personally Identifiable Information (P.I.I.).  P.I.I. is classified as data such as names, addresses, hometowns, phone numbers, amounts donated, etc.  Quoting the web-site "Search Financial Security":

"Sensitive PII is information which, when disclosed, could result in harm to the individual whose privacy has been breached. Sensitive PII should therefore be encrypted in transit and when data is at rest. Such information includes biometric information, medical information, personally identifiable financial information (PIFI) and unique identifiers such as passport or Social Security numbers."
(https://searchfinancialsecurity.techtarget.com/definition/personally-identifiable-information )

173.     Such activities as a violation of several various state laws.  For instance, in New Jersey under N.J.S.A. 2C:21-17.3, Trafficking in Personal Identifying Information of Another, it is a crime of the fourth degree to possess, distribute, or manufacture items containing personal identifying information about another, without that

person's authorization, and with knowledge that you are engaging in fraud or your conduct will cause harm to another.

174.    Nevertheless, the CSTT community proceeded with reckless disregard to widely distribute the P.I.I. of DNC donors as it was part of a "crowdsource investigation" led by "journalist" Goodman.  Again, the very act of inducing the CSTT community to take possession of the DNC P.I.I. files via the interstate wires of the Internet is fraudulent on its face.

175.    Goodman confesses to the foregoing parameters in a YouTube video entitled, "John Mark Dougan Helps Unravel the Mystery of "Who Spoofed the Seth Rich Files", 6/25/18, (1.5K+ views) (  https://www.youtube.com/watch?v=FW3zw5vS6mQ&t=2258s  ).  The video carries the following description:

> "Just a little more than one year ago, Crowdsource the Truth and its viewers were subjected to a hoax involving a thumb drive alleged to contain digital clones of the data Seth Rich intended to transfer to Wikileaks. The perpetrators of the hoax have attempted to hinder the progress of this effort since then and have forever emblazoned the mantra of "Who Spoofed The Seth Rich Files" in the minds of thousands of YouTube viewers. Can our newfound witness John Mark Dougan help us solve this year old mystery?

176.    The foregoing reflects a **predicate act of wire fraud** (also referred to as a "badge of fraud").  **18 U.S. Code § 1343** - Fraud by wire, radio, or television.  The activities described in Count Eight represent a pattern and practice of the RICO enterprise and unmistakably constitute the kind of conduct Congress sought to deter.

## XI:    TAMPERING WITH A WITNESS

177.    Plaintiff repeats, replead and incorporate by reference each and every allegation of paragraphs 1 through 176 of this Complaint as though set forth in full herein.

178.    Another joint Goodman/Webb operation was the deliberate intervention of the two in the incident referred to on social media as the "Laurel Everly laptop destruction".  The circumstances surrounding these events are described at least seven (7) YouTube videos by Mr. Goodman's, to include:

Laurel Everly In Her Own Words, 9/14/2017 (17.3K+ views)

(https://www.youtube.com/watch?v=gRHxZDqevlQ )

Laurel Responds (1 of 3), 9/16/2017, 9/16/2017 (5K+ views)

(https://www.youtube.com/watch?v=N4Dtj22AOJc )

51

Etc.

179.    In sum, Ms. Everly was in possession of a personal laptop that had thought to have been seized by a defendant in a federal banking fraud criminal case. See: SWEIGERT, GEORGE WEBB, USA v. IMRAN AWAN et al, 1:2017-cr-00161. Apparently, the laptop was missing for a few days from Ms. Everly's home. Everly was purportedly a tenant in a home owned by the subject of the criminal case cited above (acting as landlord).

180.    Theories circulated that the laptop may have been used to transmit classified information between the defendants in the federal bank fraud case as other operatives in the "spy ring in Congress". In fact, both Goodman and Webb-Sweigert created a "smoking gun" narrative that the missing laptop could prove the existence of the "spy ring in Congress.

181.    The YouTube videos made by both Goodamn and Webb put Ms. Everly under a social media microscope, which included accusations she was using fake identification, fake names, was tied to government operations, etc. In fact, it is believed (and will be demonstrated at trial) that Goodman personally met with Everly for several days. During this time it is alleged that Goodman pressured Everly to surrender the laptop to a private attorney and not law enforcement authorities. It is alleged that Everly – more or less – had to resist the social media pressure, and Goodman's insistence that she provide the laptop to a private attorney.

182.    Nevertheless, Everly finally persuaded Goodman that the two of them should provide the laptop to the U.S. Capitol Police Department. The two surrendered the laptop to that agency, which subsequently forwarded the laptop (property of Everly) to the defense attorney for the landlord/defendant (see case cited above).

183.    In fact, Mr. Goodman distributed a video of an "ambush journalism" sidewalk interview of the defense attorney for the landlord/defendant – Chris Gowen, esq. of Washington, D.C. [GOWEN, RHOADES, WINOGRAD & SILVA PLLC , 513 Capitol Court NE , Suite 100 , Washington, DC 20002]

184.    In the YouTube video entitled, "Chris Gowen Ducks Imran Questions", 10/9/2017 (2.7K+ views), Gowen comments on the surrender of the laptop to the U.S. Capitol Police.

0:13    GOWEN.   What I do know Jason, is that – um – there's a United States attorney on this case [Goodman: uh-huh]. That's called a prosecutor. And, um, what this prosecutor does he investigates crimes.

01:06   GOWEN.   Jason, there are no charges against him [Gowen's client] except for .. stating one property wasn't his primary residence.

01:28   GOWEN.   You have recorded me, without talking to me .. you've done all these stupid things.

52

01:45  GOWEN  [unintelligible] your fake news stories [addressing Goodman].

01:48  GOODMAN.  Fake news?  Is it fake news … why was he visiting the shed?

01:52  GOWEN.  What you should be asking about .. [Goodman: tell me?] what you should be asking about … is that whole .. that … the last thing the Government brought up was all about you.  You don't even realize that.  Do you?

02:00  GOODMAN.  How is it about me Chris?  Tell me.

02:06  GOODMAN.  The inadvertent disclosure has something to do with you, pal.  (https://www.youtube.com/watch?v=MO1mBa8X9I0 )

185.    Again, driven by profit, Goodman / Webb inserted themselves into the midst of a federal case brought by the U.S. Attorney.  As will be demonstrated, Goodman's initial insistence that the laptop NOT be given to law enforcement – but to a private attorney – speaks to witness tampering.

186.    **18 U.S. Code § 1512 - Tampering with a witness, victim, or an informant** forbids such conduct as Goodman's.  Quoting § 1512(b)(3) in relevant part:

**(3)**

hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation [1] supervised release,,[1] parole, or release pending judicial proceedings; shall be fined under this title or imprisoned not more than 20 years, or both.

## X.    ACTS OF CONTINUED CRIMINAL ACTIVITY - FALSE REPORT MADE TO MARYLAND LAW ENFORCEMENT

187.    Plaintiff repeats, replead and incorporate by reference each and every allegation of paragraphs 1 through 186 of this Complaint as though set forth in full herein.

188.    Goodman intends to continue the criminality of CSTT as often as needed to continue his smear campaign against the Plaintiff.  As more fully depicted in the Plaintiff's seventh (7th) Request for Judicial Notice [7-**RJN**], Doc. No. 26, 08/31/2018, Goodman provided information to the Capitol Heights Police Department, Maryland with the intent to have police investigative resources unnecessarily redirected towards the Plaintiff and George Webb.  In his assertions to the police officer (as recorded and publicly distributed on Goodman's CSTT YouTube channel) Goodman falsely states that this present lawsuit at bar contained allegations that Goodman was accused of the murder of Jenny "Task Force" Moore (deceased discovered 08/13/2018).

53

189.    As Goodman has received ALL court pleadings in this matter, Goodman knowingly provided false information to Maryland law enforcement, a crime. See Md. Code Ann., Cts. & Jud. Proc. § 9-501. False statement - To law enforcement officer.  Quoting in relevant part:

(a) Prohibited.- A person may not make, or cause to be made, a statement, report, or complaint that the person knows to be false as a whole or in material part, to a law enforcement officer of the State, of a county, municipal corporation, or other political subdivision of the State, or of the Maryland-National Capital Park and Planning Police with intent to deceive and to cause an investigation or other action to be taken as a result of the statement, report, or complaint.

(b) Penalty.- A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 6 months or a fine not exceeding $500 or both.

190.    Further, it is a felony in Maryland to make such recordings without the consent of the parties being recorded. See Md. Code Ann., Cts. & Jud. Proc. § 10-402.  Quoted in relevant part:

(a)    Except as otherwise specifically provided in this subtitle it is unlawful for any person to:

(2) Willfully disclose, or endeavor to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subtitle;

## XI.    CRIMINAL VIOLATIONS OF U.S. COPYRIGHT LAWS

191.    Plaintiff repeats, replead and incorporate by reference each and every allegation of paragraphs 1 through 190 of this Complaint as though set forth in full herein.

192.    Plaintiff inserts the conduct of the Plaintiff's MOTION (Doc. No. 8, 07/09/2018) and supporting materials (Doc. Nos. 8-1, 8-2, and 8-3, 07/09/2018) as if fully restated herein (see Plaintiff's Second Request for Judicial Notice [2-RJN], Doc. 8-2).  These pleadings described the self-professed activities of Goodman to violate the Copyright laws of the United States on an industrial scale.

193.    These pleadings describe how Goodman created two (2) hoax YouTube channels "CRAZY DAVE" and "EXPOSING THE CHAVEZ HOAX" (referring to Manual Chavez, III).  Goodman then proceeded to advertise these channels via the "Jason Goodman" CSTT YouTube channel, bringing the CSTT confederation into the scheme.  This demonstrates how Goodman, acting as an individual, can abuse the CSTT logo and "business" confederation to further the racketeering scheme.

54

194.     Relying on CSTT resources, Goodman "bulk uploaded" over 80 copyrighted works (videos) that were the exclusive property of the Plaintiff.  Without authorization of any kind, Goodman uploaded these videos to both channels (CRAZY DAVE/CHAVEZ HOAX) and confessed to this activity on CSTT video content.  This indicates the use of CSTT by Goodman to violate U.S. Copyright laws as articulated at **17 U.S.C. § 506(a)** and **18 U.S.C. § 2319**.

195.     Such over the top unethical behavior is typical of Goodman's lawless attitude and how he uses the mechanism of CSTT to wield his destructive power to do as he pleases.  This is yet another example of Goodman's on-going reckless attitude towards the laws of the United States.

196.     The allegations and material contained in this complaint, as well as in the supporting documents (Doc. Nos. 8, 8-1, 8-2, and 8-3, 07/09/2018) clearly indicate another predicate act of wire fraud as the interstate wires were used to transfer and illegally upload these copyrighted productions in an industrial wholesale manner.

## XII.   UNFAIR OR DECEPTIVE ACTS OR PRACTICES AFFECTING COMMERCE

197.     Plaintiff repeats, replead and incorporate by reference each and every allegation of paragraphs 1 through 196 of this Complaint as though set forth in full herein.

198.     As set forth above, Defendants' PATREON and Goodman's representations, or practices, were (and continue to be) deceptive and likely to mislead consumers acting reasonably.

199.     Defendants' PATREON and Goodman engaged (and continue to engage) in deceptive practices or acts, with knowledge of the deception, and directly participated in a deceptive scheme against the Plaintiff.

200.     Section 5(a) of the Federal Trade Commission (FTC) Act, 15 U.S.C. § 45(a), prohibits unfair or deceptive acts or practices in or affecting commerce.  Section 12(a) of the FTC Act, 15 U.S.C. § 52(a), prohibits the dissemination of any false advertisement in or affecting commerce for the purpose of inducing, or which is likely to induce, the purchase "services".  For the purpose of Section 12 of the FTC Act, in this context the CSTT "Intelligence Reports", "Intelligence Assessments" and other "intelligence" products are considered to be services that CSTT/Goodman is offering to the public.

201.     The Court will recall that both (1) former F.B.I. whistle-blower Okey Marshall Richards (aka Rock Hudson) and (2) former C.I.A. officer Kevin Shipp, produce/produced these <u>intelligence assessment reports</u>.

The on-going telethon-style fund-raising theme publically distributed by CSTT/Goodman and CSTT role players

(disinfo agents) is that there is an immediate need to collect monies and funds to produce more "high quality"

intelligence assessments for the viewers of the PATREON and YouTube broadcasts.

202.     These "intelligence assessments" represent a tangible product, for which Goodman collects

monies (via PATREON).  For example, the definition of "intelligence assessment" incudes:

> **Intelligence assessment** is the development of behavior forecasts or recommended courses of
> action to the leadership of an organisation, based on wide ranges of available overt and covert
> information. Assessments develop in response to leadership declaration requirements to inform
> decision making. Assessment may be executed on behalf of a state, military or commercial
> organisation with ranges of information sources available to each.
> An intelligence assessment reviews available information and previous assessments for relevance
> and currency. Where there requires additional information, the analyst may direct some collection.
> Intelligence studies is the academic field concerning intelligence assessment, especially relating to
> international relations and military science.
>
> https://en.wikipedia.org/wiki/Intelligence_assessment

203.     In this context, the CSTT "intelligence assessments" can be classified under Standard Industrial

Classification (**SIC**) Code 4841: Cable and Other Pay Television Services; quoting the U.S. Department of labor,

Occupational Safety and Health Administration 13 C.F.R. §121.201 (**SIC 4841**):

> **4841 Cable and Other Pay Television Services**
> **Establishments primarily engaged in the dissemination** of visual and textual television
> programs, **on a subscription or fee basis**. Included in this industry are establishments which are
> primarily engaged **in cablecasting and which also produce taped program materials**. Separate
> establishments primarily engaged in producing taped television or motion picture program
> materials are classified in Services, Industry 7812. [emphasis added]
>
> - Cable television services
> - Closed circuit television services
> - Direct broadcast satellite (DBS) services
> - Multipoint distribution systems (MDS) services
> - Satellite master antenna systems (SMATV) services
> - Subscription television services

204.     These "intelligence assessments" are alleged to be a product and/or service as defined by the FTC

Act.  These products/services are deceptive and based on fraud.  These "intelligence reports" are designed with the

full intent to be unfair and damaging to the Plaintiff and other CSTT targets.  These "intelligence assessments"

create a false impression that best-industry practices are used to develop this "intelligence". These products/service are misleading, in error and represent a fraud.

205.     The activities described in Count Twelve are the type that Congress desired to be prohibited by the U.S. Federal Trade Commission.

## PENDENT STATE CLAIMS

206.     New York Penal Law § 460.00 addresses enterprise corruption and is viewed by many as the N.Y. State equivalent to the Federal RICO Act.  N.Y. Penal Law § 460.00 encompasses other areas of infractions that augment and amplify the Federal RICO act.

## XIII:   CREATING A SCHEME TO DEFRAUD MORE THAN TEN PERSONS IN VIOLATION OF N.Y. PENAL CODE § 190.65(1)(A)

207.     Plaintiff repeats, replead and incorporate by reference each and every allegation of paragraphs 1 through 206 of this Complaint as though set forth in full herein.

208.     N.Y. Penal Law § 190.65(1)(a) provides that the crime of scheme to defraud in the first degree is committed by a person who: engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud ten or more persons or to obtain property from ten or more persons by false or fraudulent pretenses, representations or promises, and so obtains property from one or more of such persons.

209.     The bulk of posts, Internet communications, public descriptions, YouTube video productions, PATREON discussions, etc. concerning the Plaintiff are purposefully fraudulent and deceitful.  These artifices of fraud and designed to (1) severely injure the Plaintiff's reputation, business, economic opportunities, etc., while (2) simultaneously advancing the narrative that deep state operatives (including the Plaintiff) are attempting to silence Goodman for his gallant exposure of corruption and pursuit of truth.

210.     Goodman has knowingly disseminated public broadcasts concerning the Plaintiff that he knows to be inaccurate, misleading, in error and false.  Nevertheless, Goodman proceeds in reckless disregard of the truth to

57

continue the public narrative that he is under attack for exposing corruption from the likes of the Plaintiff.  These narratives are false and deceitful.

211.    Goodman's YouTube channel boasts over 68,000 "subscribers", while Goodman's PATREON channel boasts over 1,100 "patrons".  It can be safely assume that ten (10) or more people have relied on Goodman's deceitful and false misrepresentations concerning the Plaintiff.  Many of these "subscribers" are believed to fake "bot" accounts.

212.    The Federal RICO statute states that "pattern of racketeering activity" requires at least two acts of racketeering activity committed within ten years of each other. This is not required under New York law for a charge of Scheme to Defraud. Under New York statutes, the charge of Scheme to Defraud only requires that the intent to defraud be shown and not the actual act of fraud.  All of the Defendant Goodman's actions described above has taken place in the State of New York.

## XIV:    MAKING A TERRORIST THREAT IN VIOLATION OF N.Y. PENAL CODE § 490.20 MAKING A TERRORISTIC THREAT

213.    Plaintiff repeats, replead and incorporate by reference each and every allegation of paragraphs 1 through 212 of this Complaint as though set forth in full herein.  All allegations pleaded concerning the Port of Charleston "dirty bomb hoax" are considered a violation of N.Y. Penal Code § 490.20.  These allegation are not herein repeated for the purposes of judicial economy.

## XV:    VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§349-350 (CONSUMER PROTECTION ACT)

214.    Plaintiff repeats, replead and incorporate by reference each and every allegation of paragraphs 1 through 213 of this Complaint as though set forth in full herein.

215.    As set forth above, Defendants' PATREON and Goodman's representations, or practices, were (and continue to be) deceptive and likely to mislead consumers acting reasonably.  These actions by Goodman violated N.Y. GENERAL BUSINESS LAW §§349-350.

58

216.     Defendants' PATREON and Goodman engaged (and continue to engage) in deceptive practices or acts, with knowledge of the deception, and directly participated in a deceptive scheme against the Plaintiff. Plaintiff has used deceptive business practices as part of his ruthless quest to harass, threaten, defame and embarrass the Plaintiff.

217.     Defendant Goodman intentionally used the CSTT enterprise (see MDSI, 21c3D, role players, proxies, hostile foreign nationals, etc.) to disrupt every aspect of the Plaintiff's life. Goodman directed CSTT followers, role players, proxies and hostile foreign nationals to find private information that could be used to harass the Plaintiff.

218.     Goodman falsely claimed to his audience, and used same as rationale to recruit role players and proxies, that Plaintiff belonged in jail, committed crimes, was a ring-leader for a "well organized and well-funded" harassment campaign, etc.

219.     Defendant Goodman's campaigns, and incitement, has not stopped, and only continues to generate continued substantial income for Goodman through his racketeering companies and business entities (MDSI, 21c3D, etc.). All of the Defendant Goodman's actions described above has taken place in the State of New York. Further, Goodman willfully and knowingly committed deceptive acts and unlawful practices in violation of General Business law 349, entitling the Plaintiff to treble damages.

220.     Defendant Goodman receives substantial income and other pecuniary benefits from encouraging CSTT followers, role players, proxies and hostile foreign nationals to stalk, defame, threaten, incite and harass Plaintiff in his personal and professional life. Defendant Goodman's actions plainly violate the consumer protection laws of the State of New York.

221.     Defendant Goodman and his agents, employees, CSTT role players, proxies and hostile foreign nationals, have disrupted every aspect of Plaintiff's life, causing extreme mental anguish and unfathomable emotional distress. Further, Goodman's conduct (and that of his agents) has interrupted the Plaintiff's professional life and decimated the Plaintiff's professional reputation.

## XVI:   FRAUD

212.     Plaintiff repeats, replead and incorporate by reference each and every allegation of paragraphs 1 through 221 of this Complaint as though set forth in full herein.

222.     In addition to the foregoing outlined above, Goodman has (and continues to) made multiple material misrepresentations, or omissions, of fact, to the general public and specifically to the Plaintiff.  Goodman has distributed to third parties via e-mail statements that the Plaintiff has been diagnosed with Post-Traumatic Stress Syndrome (**PTSD**), that Plaintiff was involved in money laundering operations in Latin America while Plaintiff honorably served in the U.S. Air Force, that Plaintiff has been determined to be a danger to the public, etc.  All of the Defendant Goodman's actions described above has taken place in the State of New York.

## XVII:  NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

223.     Plaintiff repeats, replead and incorporate by reference each and every allegation of paragraphs 1 through 222 of this Complaint as though set forth in full herein.

224.     All of the Defendant Goodman's actions described above has taken place in the State of New York.

## XVIII:   TRADE LIBEL UNDER NEW YORK LAW

225.     Plaintiff repeats, replead and incorporate by reference each and every allegation of paragraphs X through 224 of this Complaint as though set forth in full herein.

226.     The Court will kindly forgive the Plaintiff for the lengthy allegation; but, Plaintiff must comply with CPLR 3016(a).

227.     Goodman's and his CSTT role players (disinfo agents) continue to libel and defame the Plaintiff and his reputation.  Goodman's intent is to issue false and femmatory social media statements to tens of thousands of viewers regarding the Plaintiff.  Goodman's intent is to inflict damage upon the Plaintiff and his professional reputation.

228.     Goodman's has insinuated in the CSTT social media broadcasts that the Plaintiff should be charged with a serious criminal crime, which has injured the Plaintiff's professional reputation.  Goodman's intent

60

was to injure the Plaintiff's business affairs and professional standing.  Further, Goodman has broadcast that the Plaintiff suffers from Post-Traumatic Stress Syndrome (PTSD) and is a danger and threat to the general public.

229.   Goodman's intent is to use CSTT and his CSTT role players (disinfo agents) to cripple anyone engaged in free public debate regarding Goodman's activities.  Goodman's activities should be noted in the case of Manual Chavez, III, (Tempe, Arizona) who Goodman contacted at his place of business.  Goodman spoke with the supervisor of Manual Chaves, III and insinuated that Mr. Chavez had committed a nefarious crime.

230.   Goodman has admitted to telephoning Emergency Medical Systems (E.M.S.) in the Mount Shasta, California are to accuse the Plaintiff of similar allegations.  Goodman insinuated (by his own admission) that the Plaintiff was the target of an F.B.I. investigation.  Goodman also proclaimed that he telephoned the Chief of Police for Mount Shasta, California and had similar discussions.  Goodman's intent was to damage the Plaintiff's standing in the E.M.S. community to injure the Plaintiff's reputation.

## XIX:  INVASION OF PRIVACY, AND FOR INJUNCTIVE RELIEF PURSUANT TO CIVIL RIGHTS LAW § 50 and 51

231.   Plaintiff repeats, replead and incorporate by reference each and every allegation of paragraphs 1 through 230 of this Complaint as though set forth in full herein.

232.   Goodman (via the CSTT enterprise) has used Plaintiff's name, photograph, picture, portrait and/or likeness, without his written consent, within the state of New York, for the purposes of advertising or trade.

233.   Goodman's (via the CSTT enterprise) use of the Plaintiff's name, photograph, picture, portrait and/or likeness, was a use in, or as part of, an advertisement or solicitation for patronage.

234.   As set forth more fully above, Goodman's entire CSTT business is based around the Goodman/CSTT harassment and smear campaigns against the Plaintiff, and creating content around the use of Plaintiff's name, photograph, picture, portrait and/or likeness, to solicit patronage by CSTT followers and PATREON "patrons".

235.   Goodman's most lucrative use (via the CSTT enterprise) of the Plaintiff's name, photograph, picture, portrait and/or likeness, appears to be through Goodman's podcast, on PATREAON.COM, wherein Defendant Goodman solicits fees from PATREON "patrons", to access their podcasts, which are principally based

on using Plaintiff's name, photographs, pictures, portraits and/or likenesses, as punching bags, and the basis of

CSTT shows, and the content therein.  It is believed that Goodman's CSTT broadcasts generate over $20,000 a

month based on this model.

236.    In addition, Goodman specifically used the Plaintiff's name, photographs, pictures, portraits,

and/or likeness in advertising and selling items on REDBUBBLE.COM such as coffee cups, T-Shirts, tote bags, etc.

Goodman profits off the perverted use of Plaintiff's name, photographs, picture, portraits, and/or likenesses.

237.    As demonstrated above, Goodman (via the CSTT enterprise) used the Plaintiff's name,

photograph, picture, portrait and/or likeness, in numerous ways, to advertise, solicit, and promote the CSTT business

to tens of thousands of listeners, viewers, fans and consumers in a variety of formats, and popular social media

platforms, including, but not limited to: PATREON, Facebook, YouTube, Twitter, Periscope, merchandise such as

tote bags, coffee cups, T-shirts on RedBubble.Com, etc.

238.    Goodman (via the CSTT enterprise) published and republished the Plaintiff's name, photograph,

picture, portrait and/or likeness, in multiple formats, including in CSTT's own promotions, websites, advertisements

and social media platforms.

239.    Goodman's use (via the CSTT enterprise) of the Plaintiff's name, photograph, picture, portrait

and/or likeness, -- on countless occasions and in numerous formats – is clearly a recognizable likeness of the

Plaintiff, and is readily identifiable by someone familiar with the Plaintiff.

240.    As demonstrated by the foregoing, there is a direct and substantial connection between the

appearance of Plaintiff's name, photograph, picture, portrait and/or likeness, and the main purpose and subject of

Goodman's (CSTT's) advertisement and the commercial exploitation of the Plaintiff.

241.    Defendant's actions (Goodman and PATREON) against the Plaintiff has grossly invaded his

privacy, and violated the Civil Rights statutes in egregious and unconscionable ways, which included publishing

Plaintiff's recreational community in Mount Shasta, California and inciting fans to invade the Plaintiff's privacy

with horrifying threats and appalling harassment campaigns – all for the commercial gain of both Defendants.

242.    Plaintiff's entire life has been disrupted by the actions of both Defendants, and as a result the

Plaintiff has consequently suffered severe mental anguish, emotional distress, and extreme humiliation and

embarrassment from the reprehensible actions of both Defendants.

62

258.     The Plaintiff's compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise and are the type of acts that Congress sought to deter.

259.     "[T]he words 'to defraud' in the mail fraud statute have the 'common understanding' of "'wrongdoing one in his property rights by dishonest methods or schemes," and "usually signify the deprivation of something of value by trick, chicane, or overreaching."'" Carpenter, 484 U.S. at 27 (quoting *McNally v. United States*, 483 U.S. 350, 358 (1987) (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924))).

260.     THEREFORE, the plaintiff seeks $1,000K (U.S.) in compensatory damages, $1,000K (U.S.) in punitive damages, all court costs, attorney's fees and all other equitable relief that this Court deems appropriate.

## **RELIEF REQUESTED**

261.     The plaintiff seeks all equitable and punitive damages to be made whole and all other relief as this Court deems appropriate.  Such relief as is necessary to end the harassment and humiliation [H/H] campaign directed towards the plaintiff by the foregoing described wrong-doers.

262.     Prohibition against using social media.  This Court should consider limiting, curtailing, reducing and ceasing the use of the interstate wires of the Internet by the wrong-doers described above.  This would include the de-establishment of all YouTube video accounts operated by the wrong-doers.

263.     Return of monies to defrauded patrons, sponsors and donors that have used the interstate wires of the Internet to distribute, transmit or otherwise transfer monies and credit card payments to the wrong-doers described above.

264.     Cessation, termination, reeducation and/or elimination of mechanisms that allows these wrong-doers to collect funds via the interstate wires of the Internet via financial credit card processors such as PayPal and PATREON.

## **JURY TRIAL DEMANDED**

265.     The undersigned demands a jury trial.

## **ATTESTATION**

66

266.    The undersigned hereby attests that all exhibits are accurate and true reproductions of their source appearance (from Internet web-sites, e-mail messages, etc.).

267.    The undersigned hereby attests that the foregoing statements have been made under penalties of perjury.

The **pro se** plaintiff has alleged facts to initiate these claims pursuant to the federal Racketeer Influenced and Corrupt Organizations (**RICO**) as a result of plaintiff's "reasonable inquiry" as required by **Fed. R. Civ. P. 11**.

Dated this day of October ____, 2018

D. GEORGE SWEIGERT
Pro se non-attorney acting as a private attorney general
for this public interest lawsuit

67

U.S. POSTAGE
$12.90
PRML      0006
Orig: 95835      23
Dest: 10007      90
10/12/18
11113386
R2307M1S2931

PRIORITY MAIL 2-Day ®

1 Lb 8.30 Oz

0006
C014

EXPECTED DELIVERY DAY: 10/15/2018

USPS TRACKING NUMBER

9505 5265 4437 8285 3026 98

FIRST · CLASS
FIRST · CLASS
FIRST · CLASS
FIRST · CLASS
FIRST · CLASS

PRO SE DIVISION
Clerk of the Court
U.S. District Court for the SDNY
(FOLEY SQUARE)
500 Pearl Street
New York, New York 10007-1312

200

T. SWEIGERT, C/O

X 152

SA, AZ 85211

4

6

PRIORITY
★ MAIL ★

★★ TRACKED ★★
★ INSURED ★

UNITED STATES
POSTAL SERVICE®

For Domestic and International Use

Label 107R, May 2014

PRIORITY
★ MAIL ★

★★ TRACKED ★★
★ INSURED ★

UNITED STATES
POSTAL SERVICE®

For Domestic and International Use

Label 107R, May 2014

