D. GEORGE SWEIGERT, C/O
P.O. BOX 152
MESA, AZ 85211

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK
### (FOLEY SQUARE)

D. GEORGE SWEIGERT

      Plaintiff,

vs.

JASON GOODMAN

      Defendant

**Case No.:  1:18-cv-08653-UA**

**JURY TRIAL DEMANDED**

**PLAINTIFF'S REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

---

### PLAINTIFF'S REPLY TO DEFENDANT'S "COUNTER-CLAIM"

NOW COMES THE PRO SE plaintiff, a layman non-attorney who is acting in the capacity of private attorney general in a public interest lawsuit, to respectfully serve a **REPLY** to the Defendant's "COUNTER-CLAIM", appearing as Doc. No. 44, filed 10/22/2018 (herein **COUNTER-CLAIM**").

1.      Plaintiff asserts that this instant REPLY is provided only as a courtesy to the Court for the purposes for foreclosing a potential default by the Defendant on his illegitimate bifurcated counterclaims (See N.Y. Civil Practice Law and Rules (**CPLR**) § 3011).  The Plaintiff reserves his rights to treat this COUNTER-CLAIM as a bifurcated pleading that is fatally flawed ancillary attachment to a legal nullity (As Defendant's ANSWER (Doc. No. 35, 10/10/2018) not in conformance with CPLR § 3011 as discussed in the pleadings listed below).

2.      To support the claim of illegitimacy of Defendant's ANSWER and COUNTER-CLAIM pursuant to CPLR § 3011 and §3022, the Plaintiff hereby incorporates the following documents as if fully restated herein (all are hereby incorporated by reference).

- Docket No. 41, filed 10/19/2018
- Docket No. 42, filed 10/19/2018
- Docket No. 43, filed 10/22/2018
- Docket No. 8, filed 07/09/2018

1

### PLAINTIFF'S ANSWER TO DEFENDANT'S "COUNTER-CLAIM"

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10-26-18

3.      In sum, the totality of the above cited pleadings indicate that the Defendant's ANSWER and COUNTER-CLAIM are fatally flawed, in error, and legally insufficient to be further considered by the Court, see CPLR § 3022.

4.      The Plaintiff herein reserves his right to file a new **Amended Complaint** in response to the Defendant's COUNTER-CLAIM as a precautionary mitigation (by leave of the Court) pursuant to **CPLR § 3025** (see, Siegel, NY Prac § 229 [3d ed]).  *Green Point Sav. Bank v Pagano*, 103 AD2d 735 [1984]).

5.      In general terms the bulk of the "COUNTER-CLAIM" should be dismissed pursuant to **CPLR § 3211(a)** on the grounds of (1) lack of documentary evidence, (2) statute of limitations and (3) failure to state a cause of action, etc.  The entire "COUNTER-CLAIM" when treated as a complaint lacks legal sufficiency – especially in the area of defamation – fails to state a cause of action.  *Morone v. Morone*, 50 N.Y.2d (1980).

6.      As the Court will learn, Defendant has publically complained of the exact same allegations cited in the "COUNTER-CLAIM" in a YouTube video production released nearly a year ago (12/11/2017 [**Exhibit One [Exh.1]**).  Further, Defendant this present litigation in an e-mail message nearly six (6) months ago (03/30/2018 e-mail [**Exhibit Three [Exh.3]**) "**If you'd like to challenge me in civil court, I invite you to file your complaint**".  Therefore, the Defendant is without excuse as to why he has provided NO documentary evidence with his "COUNTER-CLAIM", which should be dismissed, ignored, or treated as a legal nullity.  *Goshen v. Mutual Life Ins. Co. of New York*, 98 N.Y. 2d 314 (2002).  Moreover, the Defendant's conclusory allegations, vague accusations and references to ambiguous "co-conspirators" provides no smoking gun of evidence and is a completely insufficient pleading of this nature.  Goodman has failed to allege specific actions taken by the Plaintiff to injure the Defendant to support any of Goodman's claims.

7.      Not unsurprisingly, again, Defendant Goodman has NOT filed an appropriate Certificate of Service with his latest "COUNTER-CLAIM" pleading.  This sloppy conduct is inexcusable following the transmission of the electronic "Certificate of Service" by Goodman on 08/11/2018 to the Plaintiff's e-mail account.  For unknown reasons Goodman sought fit to transmit an electronic "Certificate of Service" on 08/11/2018 (infected with a malware virus); but, no longer sees the need to follow such judicial formalities with the Clerk of the Court (no service attestation accompanying the flawed "COUNTER-CLAIM").

2

**PLAINTIFF'S ANSWER TO DEFENDANT'S "COUNTER-CLAIM"**

**DENIALS**

8.      Pursuant to **CPLR § 3018** the Plaintiff includes the following denials as a mitigation against any attempt by the Defendant to seek a default judgment. These denials are asserted as a precautionary move to protect the Plaintiff's rights. The Plaintiff asserts he is responding to a legal nullity.

9.      DENIED THAT Plaintiff is a participant in "an organized defamation, slander, harassment, cyber stalking, and actual stalking campaign (The Campaign)" as stated in lines 14,15 (ln.14,15) page 1 (pg.1) of ANSWER. Plaintiff has no knowledge about such activities described by the Defendant. Plaintiff has no knowledge of any goals, plans, objectives or methods of a group of individuals that would intend to harm the Plaintiff or his business by the torts described by the Defendant. Plaintiff has no knowledge of the intent, desire or motivation of independent actors that may appear on social media. Plaintiff has no knowledge of the specific details of the torts complained of by the Defendant.

10.      DENIED THAT Plaintiff is part of "The Campaign". Plaintiff has no knowledge about the purported activities of "spreading known defamatory information about Goodman." Plaintiff, further DENIES any knowledge of "willful and wanton malicious intent" that would "damage Goodman's reputation in a public worldwide forum". (lns.15,16,pg.1). Plaintiff has no knowledge as to what would constitute "defamatory" information about the Defendant. Plaintiff has no knowledge as to the desires and/or motivations of independent actors that may appear on social media. Plaintiff has no knowledge of what is considered "known defamatory information".

11.      DENIED THAT Plaintiff has any knowledge of "actions taken in concert with a group of individuals who acted against Goodman for the purpose of wanton and willful tortious interference, defamation, slander, harassment, invasion of privacy, infringement of first amendment rights, menacing and stalking both online and in the real world". (lns.16-19,pg.1). Plaintiff has no knowledge of a group, confederation or cartel that would attempt to "menace" the Defendant. Plaintiff has no knowledge as to what "tortious interference" the Defendant may be referring to. Plaintiff has no knowledge as to the entire list of torts that is provided by the

3

**PLAINTIFF'S ANSWER TO DEFENDANT'S "COUNTER-CLAIM"**

Defendant (invasion of privacy, stalking, etc.).  Plaintiff has no knowledge of the desires or motivations of other independent actors that may, or may not, be present on social media.

12.     DENIED THAT Plaintiff has any knowledge of any "financial damages" or "emotional distress" or "loss of enjoyment of life" suffered by the Plaintiff.  Plaintiff denies that any of his conduct is implicitly, explicitly, directly, and/or indirectly responsible for this purported sufferings of the Defendant. (lns.19-21,pg.1). Plaintiff has no knowledge as to what "emotional distress" the Defendant may, or may not have, suffered.  The Plaintiff denies that his intentionally, or unintentionally, attempted to inflict emotional distress on the Defendant. Plaintiff is unaware of any financial damages or loss of the enjoyment of life that has been purportedly been experienced by the defendant and how the Plaintiff's alleged conduct would create such actionable torts (if they were indeed valid).

13.     DENIED THAT any activity or behavior of the Plaintiff is "reckless, willful and wanton". (ln.24-25,pg.1).  .  Plaintiff has no knowledge of any goals, plans, objectives or methods of a group of individuals that would intend to harm the Plaintiff or his business by the torts described by the Defendant.  Plaintiff has no knowledge of the intent, desire or motivation of independent actors that may appear on social media.  Plaintiff has no knowledge of the specific details of the torts complained of by the Defendant.  Plaintiff denies that he has acted in a "reckless, willful or wanton" manner.

14.     DENIED THAT the Plaintiff was a participant in, had knowledge of, or supported the objectives of an effort to defame, harass or injure the Defendant.  Plaintiff has no knowledge of such a scheme, plan, objective or any other instantiation of an effort to injure the Defendant with the participation of other known, or unknown actors.  The Plaintiff has no knowledge of any such wrongful plans.

15.     RESTATED:  The Plaintiff has no knowledge of any goals, plans, objectives or methods of a group of individuals that would intend to harm the Plaintiff or his business by the torts described by the Defendant. Plaintiff has no knowledge of the intent, desire or motivation of independent actors that may appear on social media.  Plaintiff has no knowledge of the specific details of the torts complained of by the Defendant.  Plaintiff is not a participant in any such group, cartel or confederation.

4

**PLAINTIFF'S ANSWER TO DEFENDANT'S "COUNTER-CLAIM"**

16.     In sum, the totality of the vague and ambiguous slurs, stunning insinuations and smears labeled as "allegations" are hereby denied in every form in the Defendant's moot "COUNTER-CLAIM". The Plaintiff denies – in totality – the notion that he is a part of an organized group of individuals, confederation, cartel or any other coordinated activity to injure or harm the Defendant.

## AFFIRMATIVE DEFENSES

17.     The Plaintiff herein provides these AFFIRMATIVE DEFENSES as a courtesy to this Court. The Plaintiff believes he is under no obligation to provide such defenses in response to the fatally flawed, moot and bifurcated "COUNTER-CLAIM"; however, the Plaintiff has undertaken this task as a mitigation against any attempts by Defendant to seek a default judgment.

18.     **DEFENDANT'S FIRST AMENDMENT RIGHTS**. The Plaintiff requests that the Court take Judicial Notice that the Plaintiff is a private party and not a public employee. As a private party, the Plaintiff does not represent the interests of any government, quasi-government entity, bureau, regulatory body, etc. The Plaintiff is not clothed with any authority to act on behalf of any such governmental body and is not a public employee. Therefore, the limitations and constraints that may be applied to such governmental organizations by AMENDMENT I of the U.S. Constitution would not apply to a private party plaintiff. The Second Circuit has made it clear that plaintiffs [Defendant as counter-claim plaintiff] making First Amendment retaliation claims must substantiate their allegations of being chilled with specific and objective evidence. See *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir.2001) (plaintiff must show that First Amendment rights were "actually chilled") (quoting *Davis v. Vill. Park II Realty Co.*, 578 F.2d 461, 464 (2d Cir.1978)). The Defendant has provided no such evidence. Apparently, as the Defendant is not a graduate of any journalistic training and may not understand the complexities of AMENDMENT I protections he has proceeded at his own reckless peril with a flawed assumption of Constitutional protections. Nonetheless, Goodman provides no examples of how his "free speech" has been effectively chilled the Plaintiff in the "COUNTER-CLAIM" – NONE. See *Holley v. Cty. of Orange, NY*, 625 F.Supp.2d 131, 141 (S.D.N.Y. 2009) (citing *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)). Such First Amendment tutorials and discussions would have been provided in any first year college course or vocational journalism training course. Goodman has entered the world of public debate, journalism and discourse and at his

5

**PLAINTIFF'S ANSWER TO DEFENDANT'S "COUNTER-CLAIM"**

own risk and peril.  The Plaintiff is not responsible for any of the Defendant's perceived grievances concerning the chilling of Goodman's First Amendment rights.

19.    **DEFAMATION CLAIMS HAVE EXPIRED.**  Defendant makes no attempt to provide any date or occurrence as to when any defamatory statements were made by the Plaintiff and in what form.  Under New York law, claims for defamation and defamation per se are governed by a one-year statute of limitations.  CPLR § 215(3). The one year limitation has most likely estopped the bulk of Goodman's illusionary defamation claims.  Indeed, Goodman has shown a stunning lack of due diligence in pursuing any sort of legal remedy, other than his own public on-line social media threats to contact the F.B.I. with his sidekicks former F.B.I. Special Agent Robyn Gritz (Gurnee, Illinois), Michael D. Moore, Certified Fraud Examiner (West Chester, PA) and current F.B.I. Special Agent Brittany Custer , etc. (see Plaintiff's Twelfth (12th) Request for Judicial Notice (herein incorporated by reference as if fully restated) **[12-RJN]**, Doc. 45, 10/22/2018).  In fact, it is telling that there has been NO activity from the N.Y.P.D. or the F.B.I. regarding the phantom players involved in the alleged smear campaign; which Goodman claims is a "distributed, de-centralized defamation campaign".  Goodman has negligently slept on his legal rights while he was under a duty to make a reasonable inquiry into the matters that he is now complaining of. Based upon Goodman's online threats to speak with the F.B.I. and N.Y.P.D. (April, 2018, **[12-RJN]**) he could have commenced a legal action then.  However, Goodman elected to drain the valuable resources of law enforcement and this Court to pursue these phantom allegations.

20.    **VAGUE INTENTIONAL INFLICTION OF EMOTION DISTRESS (IIED)**.  The law is clear that a claim for IIED and prima facie tort will be dismissed as duplicative when the "underlying allegations fall within the ambit of other traditional tort liability, namely, the plaintiff's [here Defendant's] causes of action sounding in defamation." *Fleischer v. NYP Holdings, Inc.* 104 A.Dd.3d 536, 539 (1st Dept. 2013).  See also *Hirschfield v. Daily News*, 269 A.D.2d 248, 249 (1st Dept. 2000).  Goodman's vague and ambiguous allegations are duplicative of his other claims related to "cyber harassment", "slander", etc.  The co-mingling of these allegations into a jumble places an unnecessary burden upon the Plaintiff to untangle inter-locking web of vague accusations, insinuations and innuendo.  Additionally, the bulk of Goodman's defamation claims are time barred as they occurred more than one year ago.  The Court and the Plaintiff will be forced to use a crystal ball and attempt to determine the

**PLAINTIFF'S ANSWER TO DEFENDANT'S "COUNTER-CLAIM"**

1  date when these IIED sufferings began – a duty of the Defendant.  Goodman has failed to establish any timelines,

2  dates, occurrences or when an actionable event took place.  In sum, Goodman has utterly failed to state an actionable

3  claim for IIED.

4      21.      **STALKING "IN THE REAL-WORLD"**.  To help the Court understand the futility of

5  Goodman's vague and ambiguous "real world stalking" allegations and insinuations, the Plaintiff relies on the

6  wisdom of the New York Legislature when that body amended the N.Y. Anti-Stalking law.  See An Act to Amend

7  the Penal Law, in Relation to Stalking in the Fourth Degree, ch. 184, § 1, 2014 N.Y. Laws 922, 922 (codified at

8  Penal § 120.45).  As defined by the legislature, stalking in the "real world" with respect to the second criminal

9  element of "no legitimate purpose" the Court of Appeals in *NY Court of Appeals case People v. Stuart, 100 N.Y.2d*

10  *412* defined this term to mean "the absence of a reason or justification to engage someone, other than to hound,

11  frighten, intimidate or threaten."  The Plaintiff has not physically been in the State of New York since 1999 when he

12  worked as a consultant to Chase Manhattan bank, Wall Street, New York City.  The Plaintiff made a short business

13  trip to the New York City area in 2000.  Suffice to say the Plaintiff has not been in the New York City area for at

14  least a decade, making any "real world" stalking attempts by the Plaintiff impossible.  What remains perplexing is

15  why the Defendant did not contact law enforcement to report this stalking activity in December 2017 when he

16  claims to have become aware of these "stalking activities".  Attached as **Exhibit One [Exh.1]** is a YouTube video

17  production by Goodman posted on 12/11/2017 concerning the "fear" Goodman experienced when an explosive

18  device detonated at the N.Y. Port Authority.  The Plaintiff's MOTION seeking injunctive relief is also illustrative

19  (along with all associated evidence) and is hereby incorporated by reference as if fully restated herein (Doc. No. 8,

20  07/09/2018).  Quoting the Goodman 12/11/2017 video information description in relevant part:

- I've posted this video to let everyone know that although the explosion this morning was very close to **my home and Crowdsource the Truth headquarters,** I was not injured.   Thanks to those who have inquired.
- **The latest efforts of this nefarious group have graduated to a level that demands action. Their malicious attacks have gone too far. Their deception must be exposed. They must face justice for their acts.**  [emphasis added] **[Exh.1]**

22.      **CYBER STALKING ISSUES TRUMPED BY LEGITIMATE PURPOSE IMMUNITY.**

Without developing definitive allegations, accusations or even specific actionable events, Goodman is fond of

7

**PLAINTIFF'S ANSWER TO DEFENDANT'S "COUNTER-CLAIM"**

1  relying on vague and ambiguous insinuations – such as "cyber stalking".  Assuming, arguendo, that Goodman is

2  referring to N.Y. Penal Code (P.C.) 120.45 his reliance is misplaced.  As the Court is aware, providing notifications

3  to a party "for a legitimate purpose" trumps the standards of criminal (and potentially civil) conduct needed for an

4  actionable N.Y. P.C. 120.45 claim.  The Plaintiff has stated several times, within the context of the Second

5  Amended Complaint (Doc. No. 39, 10/17/2018) that both (1) Goodman and (2) PATREON.COM were notified on

6  several occasions of pre-litigation cease and desist notices, anti-spoliation of evidence notices and other legal good

7  faith attempts at resolving this present controversy.  An example of these pre-litigation warning communications is

8  attached as **Exhibit Two [Exh.2]**, e-mail message of 11/30/2017.  Goodman/PATREON were continuously notified

9  in a non-malicious manner of the on-going tortious conduct of Goodman and of specific events of libel and slander

10  directed at the Plaintiff by Goodman.  Further, **Exh.2** indicates that both Goodman and PATREON were advised of

11  the potential of civil litigation related to racketeering and wire fraud.  Such legal and pre-litigation related e-mails

12  **[Exh.2]** were sent to the normal business e-mail addressed that is often publically advertised by Goodman to his

13  worldwide audience.  Further, these legal communications are clothed in the immunity of the litigation privilege

14  doctrine (discussed below).  The conduct alleged in the "COUNTER-CLAIM" fails to make out the statutory

15  requirement that the conduct is even criminal or tortious in nature, or what the purported misconduct is exactly.

16  Thus, the Court and the Plaintiff are once again left to rely on the litigation crystal ball to understand the

17  Defendant's ramblings in his moot "COUNTER-CLAIM".

18       23.    **TORTIOUS INTERFERENCE (T.I.) CLAIMS TRUMPED BY LITIGATION**

19  **PRIVILEGE**.  The Defendant is effectively hiding any actionable misconduct that rises to a T.I. claim in his

20  "COUNTER-CLAIM".  Again, the Plaintiff must guess or speculate as to what the Defendant is actually

21  complaining about.  Assuming, arguendo that the Defendant is complaining about the private dispute resolution

22  based good-faith, non-malicious cease and desist (C&D) requests, anti-evidence destruction notices and other legal

23  pre-litigation privileged correspondence **[Exh.2]** sent to (1) Defendant and (2) PATREON; then, once again the

24  "COUNTER-CLAIM" is fatally flawed.  Private dispute resolution via demand letters, C&Ds, evidence

25  preservation notices and other pre-litigation private dispute resolution communications have long been held to be

26  protected under the broad scope of litigation privilege; which is memorialized in the Restatement (Second) of Torts

8

**PLAINTIFF'S ANSWER TO DEFENDANT'S "COUNTER-CLAIM"**

at 586-87 (1977) ("reaffirming absolute privilege of parties and their attorneys if the defamatory statements have "some relation to the proceeding"). Litigation privilege is in accord with the public interest of granting citizens the utmost freedom to the courts of justice in their efforts to attain settlement.   The Plaintiff's communications to (1) Goodman and (2) PATREON, INC. **[Exh.2]** are protected by absolute and qualified immunity.   It is instructive to note that under New Jersey law, there is a litigation privilege that is an absolute privilege to any communication: "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins v. Harris*, 141 N.J. 207 (1995).   Further, the New York State Court of Appeals has resolved this issue in *Front, Inc., v. Philip Khalil*, No. 19, 2015 WL 750965 (N.Y. Feb. 24, 2015).   The *Front, Inc.* court answered the "open question" concerning what, if any, privilege attaches to pre-litigation statements.   The *Front, Inc.* court ruled that communications made in anticipation of litigation are subject to a qualified privilege and thus protected against claims for defamation.   Therefore, the Plaintiff's pre-litigation, private dispute resolution centered, C&Ds, evidence preservations letters, etc. are exempt from the Defendant's illusionary T.I. claims.   Provided as an example of Plaintiff's e-mail to Goodman/PATREON is attached as **[Exh.2]**, a typical response from Goodman is attached as **[Exh.3]**.

    24.   **INVASION OF PRIVACY**.   The Plaintiff requests that the Court take Judicial Notice of the (a) myriad of public documents created by the Defendant with his home address and the (b) bizarre public behavior displayed on countless social media broadcasts.

    (a)   By his own volition, the Defendant has included his personal home address in many corporate, trademark and other public documents.   For example:

- On trademark registration application (filed 1/10/2018) for the mark "Crowdsource The Truth" (**CSTT**), the applicant **MSDI**, via Jason Goodman, provided the address "6s 252 7th Avenue New York NEW YORK 10001" to the U.S. Patent and Trademark Office (USPTO).   (USPTO serial number 87752970).

- The following entry is made in a federal court pleading in the signature block:  "Jason Goodman, 252 7th Avenue #6S, New York, N.Y.   Telephone (323) 744-7594, Facsimilia (917) 591-6370, Email: truth@crowdsourcethetruth.org, Pro Se." (page 7 of 8 in the document "DEFENDANT JASON GOODMAN'S ORIGINAL ANSWER", Doc. 14, Filed 10/06/17 in civil case Steele vs. Goodman, 3:17-cv-00601-MHL, in the U.S.D.C. for the Eastern District of Virginia (Richmond)).

9

PLAINTIFF'S ANSWER TO DEFENDANT'S "COUNTER-CLAIM"

- For other examples see Plaintiff's Tenth Request for Judicial Notice (herein incorporated by reference) **[10-RJN]**, Doc. 37, 10/12/2018).

(b)     Attached as Exhibit Four **[Exh.4]** is an instantiation of the YouTube video production distributed on 06/03/2017 entitled, "Who Is Spoofing the #SethRichFiles". In this video **[Exh.4]** Defendant Goodman takes his audience of 13,000+ viewers on a tour of his New York City apartment, which he fondly refers to as "HQ", as in Headquarters. Goodman films his apartment, his personal cell phone and the plaintiff's brother (George Webb Sweigert) sleeping on Goodman's couch. It would appear that Goodman waived his rights to any expectation of privacy with such intimate scenes openly distributed to a worldwide social media audience.

(c)     On his social media platforms (YouTube, Periscope, etc.) Goodman has openly discussed such issues as the (1) production of pornographic self-photography, the (2) creation of videos that may indicate acts of masturbation, his (3) dating activities related to the dating platform "TINDER.COM", his (4) emotional outbursts in the video series "Who Spoofed the Seth Rich Files", his display of his home in over 1,000 video broadcasts to a worldwide audience, etc. See Exhibit Four **[Exh.4]**  Further, Mr. Goodman is fond of airing "dirty laundry" and personal grudges to his worldwide social media audiences. **[Exh.4]**

25.     **FINANCIAL DAMAGES**.  The Court should take Judicial Notice that the growth of Goodman's social media empire can almost be described as "meteoric". Every week Goodman gains additional PATREON.COM "patrons", YouTube subscribers, and other social media followers. At the time of this writing Goodman has nearly 70,000K YouTube subscribers and over 1,000 PATREON.COM "patrons". It is difficult to imagine exactly how Goodman has suffered during periods of such outlandish growth (all in the past twelve months). In fact, Goodman has conducted lavish overseas trips in his "pursuit" of journalistic stories. His most recent trip was to **Sweden and Copenhagen** to "interview" guests. Such "guests can easily be interviewed with the use of Skype technologies, as Goodman has down with a myriad of other "guests".

26.     .**UNNAMED CO-CONSPIRATORS (CONSPIRACY)**.  It is instructive to note that Goodman provides no names, or identification, of the mysterious group of "co-conspirators". This vague and ambiguous claim

**PLAINTIFF'S ANSWER TO DEFENDANT'S "COUNTER-CLAIM"**

("co-conspirators") does not address exactly what conspiracy these parties are members of. Assuming, arguendo, that these "co-conspirators" are participating in "The Campaign", there are no further details given. Assuming, arguendo, that Goodman is attempting to fashion a claim for civil conspiracy, again he fails completely. It is well settled law that liability for a civil conspiracy depends on the performance of some underlying tortious act, the conspiracy is not independently action; rather, it is a means for establishing vicarious liability for the underlying tort. *Beck v. Prupis*, 529 U.S. 494 (2000). A civil conspiracy is not an independent wrong but rather "a means for establishing vicarious liability for the underlying tort." *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983), see also *Beck*. In order to sustain a claim for conspiracy, the plaintiff [Defendant counter-claim plaintiff] must prove that "(1) two or more persons agreed to commit a wrongful act, (2) [the defendant] (in this case Plaintiff) joined the conspiracy knowing of at least one of the goals of the conspiracy and intending to help accomplish it, and 93) one or more of the violations was committed by someone who was a member of the conspiracy and acted in furtherance of the conspiracy." *Cabello v. Fernandez-Larios*, 402 F.3d 1148 at 1159. In view of the foregoing, it appears there are no surviving underlying torts that the Defendant can pursue. Furthermore, Defendant has proffered no artifacts or evidence of damages that resulted from the illusionary civil conspiracy. This would make the allegation of a civil conspiracy moot. A civil conspiracy claim is not actionable without damages.

## SUMMARY

27.     Goodman offers a jumble of irrelevances, smears and unsubstantiated insinuations without a shred of evidence in his legally nullified and moot "COUNTER-CLAIM" (filed without an accompanying Certificate of Service). The bulk of Goodman's illusionary allegations have been purportedly referred to the N.Y.P.D. and the F.B.I. by Goodman and his sidekicks. These law enforcement agencies, just as this Court, have had to suffer with Goodman the self-professed "911 truther" and "targeted individual". In his "COUNTER-CLAIM" Goodman now expects this Court to behave like his naïve audience and accept his stunning delusional conspiracy theories that Goodman presents on his CrowdSource The Truth social media podcasts .   Goodman lives in a world riddled with paranoia as evidenced by his 12/11/2017 YouTube video production [**Exh.1**], believing himself to be the target of an explosive device that detonated 23 city blocks from his high rise apartment.

11

**PLAINTIFF'S ANSWER TO DEFENDANT'S "COUNTER-CLAIM"**

28.     Goodman should be held in contempt for his obvious mockery of the federal judiciary and his fondness for the use of the term "fake lawsuits". At the time of this writing Goodman is busy shrouding himself in the cloak of a martyr, comparing this lawsuit to a Clintonesque attack on himself. Goodman makes these remarks (in his 10/23/2018 video production) while interviewing self-professed serial killer Larry Nichols.

29.     Goodman cannot correct the fatal procedural flaws and insufficiencies that are embedded in his pleadings. In fact, the sloppy and cavalier manner in which Goodman approaches this Court (no filing of a Certificate of Service) underscores Goodman's contempt for the entire federal judicial framework. In fact, if someone does bring an action against Goodman – which he himself invited on 3/30/2018 [Exh.2] – Goodman accuses them of behaving in a Clintonesque manner by indulging in a "fake lawsuit". The utter contempt that Goodman displays, lack of adherence to even basic procedures of the federal courts, and the filing of vague and ambiguous (wishy washy) claims demand that this Court deny all relief requested by Goodman in the legally moot "COUNTER-CLAIM".

## ATTESTATION

I hereby attest that the foregoing is accurate and true under the penalties of perjury. Further, I hereby attest that the attached exhibits are accurate and true copies of source documents located on the Internet.

Signed this ____ day of October, 2018



Plaintiff, D. George Sweigert
Pro se plaintiff acting as private attorney general

12

**PLAINTIFF'S ANSWER TO DEFENDANT'S "COUNTER-CLAIM"**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBITS

**PLAINTIFF'S ANSWER TO DEFENDANT'S "COUNTER-CLAIM"**

# EXHIBIT ONE

YouTube video production appearing on the Jason Goodman" channel.

https://www.youtube.com/watch?v=gqwV8UfBd5g

12/11/2017





**Port Authority Bus Terminal Explosion Deemed 'Botched Terror Attempt' By NYPD**

Jason Goodman

▶ Subscribe  86K

4,455 views

+ Add to      ↪ Share    ••• More                    👍 222   👎 55

Published on Dec 11, 2017
I've posted this video to let everyone know that although the explosion this morning was very close to my home and Crowdsource the Truth headquarters, I was not injured. Thanks to those who have inquired.

SHOW MORE

I've posted this video to let everyone know that although the explosion this morning was very close to **my home and Crowdsource the Truth headquarters,** I was not injured.   Thanks to those who have inquired.

Linked to ISIS, this seems to have been a scare tactic by an impotent terrorist, similar in scope to explosions that took place on 23rd Street in Chelsea (**also very near my home**) just over one year ago. Fortunately no serious injuries have been reported.

Crowdsource the Truth has been exposing fraud, corruption and crime for more than one year. As we grow in viewership and effectiveness, **our effort has come under consistent heavy attack by a determined group of misguided individuals.**

**These are truly despicable people who rely on spin, speculation, intimidation, exaggeration, fabrication, and malicious lies.** They have concentrated their efforts to conceal the truth and present a manufactured, patently false narrative and fraudulent conclusions.

While they do this, they attempt to **achieve financial gain** through a wide range of methods including monetized YouTube channels, Patreon solicitations, blockchain driven sites, fraudulent charity fundraising efforts, **baseless fake lawsuits** that abuse civil legal procedure and other methods.

The attacks are focused not only on **the privately owned corporation under which I create the video and social media content for Crowdsource the Truth,** but also on me personally, assailing my physical characteristics and religious heritage in a way that can only be described as hateful and un-American. They target even those brave, honest, hard working patriots who have defied corrupt authority to step forward and expose crimes that impact us all.

**The latest efforts of this nefarious group have graduated to a level that demands action. Their malicious attacks have gone too far. Their deception must be exposed. They must face justice for their acts.**

They mask their method as childish antics and "troll" behavior but this is a charade to hide their true, far more sinister purpose. They antagonize targets to elicit engagement and perpetuate discord. They aim to make the very act of addressing their claims or actions appear to bring down the value of the content here. When lies go unchallenged, some may begin to believe them.

This group also aims to raise their profile and profits by exploiting the explosive growth of the fantastic audience here, while they continue to deceive and attempt to take advantage of the Crowdsource community. To more effectively neutralize their efforts, **Crowdsource the Truth will go back to ignoring them and remain dedicated to investigative journalism,** crowdsource fact checking and the serious work we have all set out to do. If you also wish to ignore these individuals, please continue to enjoy that effort here.

Those interested in learning how the misguided, malignant personnel are carrying out their nefarious plans and help put an end to their wrongdoing may do so at a new YouTube channel "Exposing the Chavez Hoax" with content coming soon, link below:

https://www.youtube.com/channel/UCE7t...

Thank you for your ongoing support. Sponsor Crowdsource the Truth
http://paypal.me/crowdsourcethetruth https://www.patreon.com/crowdsourceth...

BTC - 14y2bEJ484DTbQwthX51VWpcRtk9Q7kmQQ

ETH - 0x07a23Ac0EBb5936d60A8cBfE07D64A579Cc756c9

LTC - LVP2d143QjPv1JaJpqgPHzQzv2qSQCDnbd

email truth@crowdsourcethetruth.org

merchandise - https://www.redbubble.com/people/csth...

**Legal Disclaimer: Sponsorship of Crowdsource the Truth is made at the sponsor's sole discretion. Sponsorship funds are not tax-deductible, are non-refundable, and do not represent any ownership, equity interest or decision-making authority in the organization.

[emphasis added]

# EXHIBIT TWO

---------- Original Message ----------

From: Spoliation Notice <spoliation-notice@mailbox.org>

To: Jason Goodman <truth@crowdsourcethetruth.org>, colin@patreon.com, feedback <feedback@calbar.ca.gov>, georg.webb@gmail.com

Cc: dutyofficer@ncric.ca.gov, msp.hq@maryland.gov, OFL@usdoj.gov, msp.superintendent@maryland.gov, Spoliation Notice <spoliation-notice@mailbox.org>

Date: November 30, 2017 at 6:06 PM

Subject: Re: I spoke with the lawyer at patreon

To:

Corporate Counsel

PATREON, INC.


Dear Mr. Sullivan:

As a courtesy to you we have provided the e-mail message we received from Mr. Goodman of New York City. He states in the subject of his e-mail "I spoke with the lawyer at patreon ..." then in the message "He says your an idiot."

So we shall proceed in an aggressive manner as you think the requestors seeking evidence preservation are idiots.

The terms and conditions of the previous litigation hold and anti-spoliation notice for Mr. Goodman are hereby applied to this message as if fully restated for the Patreon account:

    GEORGWEBB, account holder George Webb Sweigert (included in e-mail)

    Currently Mr. Sweigert is a resident of Capitol Heights, Maryland

Restated, we expect the same due diligence in the preservation of electronic evidence be applied to the above named account (GEORGEWEBB) as was requested for Mr. Goodman.

This notice is also your pre-litigation notice that PATREON will be named as a co-defendant in a federal lawsuit pursuant to federal and State of California racketeering laws.

Both Mr. Goodman and Mr. Sweigert have acknowledged receipt of an evidence preservation letter on July 5th, 2017 that specifically addressed issues related to wire fraud and racketeering concerning issues related to a "dirty bomb hoax" in June, 2017.

Both of these individuals came to the attention of the Federal Bureau of Investigation as persons of interest related to the closure of the Port of Charleston, S.C. due to a "dirty bomb hoax" attributed to the Goodman/Sweigert YouTube news show.  The wide-spread reporting of this hoax was reported in the New York Times and CNN. It has been alleged that the creation of panic on the Goodman/Sweigert new show was intentional and designed to drive traffic/views to the YouTube news show operated by Mr. Goodman and Mr. Sweigert)

Now, allegedly, Goodman/Sweigert have brought their brand of wire fraud to Patreon.

If Patreon desires to be uncooperative in these simple requests to preserve evidence, then Patreon can answer in federal and state court regarding your company's involvement in the alleged Goodman/Sweigert wire fraud scheme.  By cooperating with the distribution of fraudulent information over the wires of the Internet for profit and gain you have become, allegedly, a racketeering enterprise associate of Goodman/Sweigert.

As Mr. Sweigert, Mr. Goodman's partner, has filed federal lawsuits against the U.S. Department of Justice and the FBI in Washington, D.C., so as a courtesy to you, those agencies have been included in this communication.  In this manner, they can monitor the situation and update appropriate case files.

As you appear uncooperative, relevant agencies in San Francisco have been provided copies of this message to help ensure your compliance with evidence laws.

Warm regards,

"Idiot" Evidence Preservation Team

---

> On November 30, 2017 at 3:00 AM Jason Goodman <truth@crowdsourcethetruth.org> wrote:
>
>
> He said you're an idiot. Hahahaha.

# EXHIBIT THREE

**Re: Warning and Caution Notice**

Jason Goodman<truth@crowdsourcethetruth.org>

3/30/2018 4:36 PM

To Spoliation
Notice   Copy corina.davis@redbubble.com,   colin@patreon.com,   lawenforcement@paypal.c
om,   George Webb

Mr. David George Sweigert,

Mental illness is a serious matter, you need to seek help. You are hurting yourself by generating
a growing collection of evidence that indicates very strongly that you are engaged in an
organized criminal harassment campaign against me personally as well as other serious
potentially criminal offenses. Every person you have CC'd on this message fully realizes that no
actual lawyer would send anonymous messages from the "Evidence Collection" department and
the messages themselves represent harassment as I have instructed you to terminate
communications with me.

**I have submitted my evidence against you to the NY FBI field office** and anticipate they will
contact you soon. **If you'd like to challenge me in civil court, I invite you to file your
complaint.** It will merely save me the filing fees when I counter sue you for the well
documented slander and defamation campaign you have been waging which includes per se libel
among other civil torts and potential criminal actions on your part.

You are making matters far worse for yourself every day. My friendly advice is that you cease
and desist and discontinue your harassment and / or any mention of me or my company moving
forward.

Jason Goodman


[emphasis added]

# EXHIBIT FOUR

YouTube video production appearing on the Jason Goodman" channel.

https://www.youtube.com/watch?v=7mMoUgXCPBM

06/03/2017





Who is Spoofing the #SethRichFiles

Jason Goodman

Subscribe 88K

13,871 views

Streamed live on Jun 3, 2017

Category          News & Politics



Who is Spoofing the #SethRichFiles

Jason Goodman

Subscribe 88K

13,871 views

# EXHIBIT FIVE

YouTube video production on the "Jason Goodman" channel

https://www.youtube.com/watch?v=DCzjIueasRE

10/23/2018



David Brock, Peter W Smith and Arkansas – Larry Nichols Remembers "Troopergate"

Jason Goodman

4,857 views

VIDEO TRANSCRIPT

05:15  GOODMAN:  There are two lawsuits pending against me, one from Robert David Steele and one from David Sweigert the brother of George Webb Sweigert.  I wonder if these are not intended to put the type of reputation destruction and financial destruction on me that is the classic hallmark of these Clintonesque tactics that you [Larry Nichols] now say have permeated the entire Democratic party.

Streamed live 22 hours ago [10/23/2018]
As Robert Mueller's Special Counsel's Office nears the end of its rope, he and his cohorts grasp desperately for anything that can remotely resemble evidence of wrongdoing. The May 2017 death of Peter Smith has come back into the news cycle as the "Russia Collusion" narrative gets sloppily pinned on a dead man. Peter's history investigating criminal activity by Bill and Hillary Clinton is worthy of additional review. Larry joins me to share his first hand experience and recollections of Troppergate, a Clinton scandal Peter W Smith was directly linked to.

Visit Larry's website – http://nicholslive.com/

**D. GEORGE SWEIGERT, C/O**
**P.O. BOX 152**
**MESA, AZ 85211**

RECEIVED
[stamp illegible]
2018 OCT 25  PM 3: 58

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
(FOLEY SQUARE)

D. GEORGE SWEIGERT                           Case No.: 1:18-cv-08653-UA

          Plaintiff,

vs.

JASON GOODMAN

          Defendant                         **CERTIFICATE OF SERVICE**

**CERTIFICATE OF SERVICE**

          The Plaintiff certifies under penalties of perjury that the enclosed documents have been sent via First Class

postage paid U.S. Mail to:

                    **Jason Goodman**
                    **252 7th Avenue #6S**
                    **New York, NY 10001**

                    **PRO SE DIVISION -- 200**
                    **Clerk of the Court**
                    **U.S. District Court for the SDNY**
                    **(FOLEY SQUARE)**
                    **500 Pearl Street**
                    **New York, New York 10007-1312**

                    Respectfully dated this day ____ 24 October, 2018,


                    D. GEORGE SWEIGERT


**CERTIFICATE OF SERVICE**

**$6.70**

Origin: 95682
Destination: 10007
0 Lb 9.40 Oz
Oct 24, 18
0556740882-04

1006

**PRIORITY MAIL 2-Day ®**

C014

EXPECTED DELIVERY DAY: 10/26/2018

USPS TRACKING NUMBER

9505 5158 1612 8297 2502 52

TO:

**PRO SE DIVISION**
**Clerk of the Court**
**U.S. District Court for the SDNY**
**(FOLEY SQUARE)**
**500 Pearl Street**
**New York, New York 10007-1312**

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

VI:

4   D. GEORGE SWEIGERT, C/O
5   P.O. BOX 152
    MESA, AZ 85211

$ INSURANCE INCLUDED *

PICKUP AVAILABLE

* Domestic only

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

#260
PRO SE
OFFICE

UGNMP3
USPX
SG

UNITED STATES
POSTAL SERVICE

**VISIT US AT USPS.COM**®
ORDER FREE SUPPLIES ONLINE

EP14F July 2013
OD: 12.5 x 9.5

PS00001000016