D. GEORGE SWEIGERT, C/O
P.O. BOX 152
MESA, AZ 8521

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: _10-31-18_

RECEIVED
SDNY DOCKET CLK'T

2018 OCT 31   PM 4:18

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK
### (FOLEY SQUARE)

D. GEORGE SWEIGERT

      Plaintiff,

vs.

JASON GOODMAN

      Defendant

Case No.: 1:18-cv-08653-UA

**JURY TRIAL DEMANDED**

**NOTICE OF PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM PER FRCP RULE 12(B)(6) AND CPLR 3211(A)**

---

### NOTICE OF PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM PER FRCP RULE 12(B)(6) AND CPLR 3211(A)

      NOW COMES THE PRO SE plaintiff, a layman non-attorney who is acting in the capacity of private attorney general in a public interest lawsuit, to respectfully serve this NOTICE OF MOTION TO DISMISS upon the Clerk of the Court pursuant to **Local Rule 7.1.**  The Plaintiff hereby claims that the Defendant's "**COUNTER-CLAIM**", appearing as Doc. No. 44, filed 10/22/2018 (herein "**COUNTER-CLAIM**"), should be dismissed for failure to state an actionable claim pursuant to F.R.C.P. **Rule 12(b)(6)** and New York Civil practice laws and Rules **(CPLR) § 3211(a)(1) and (7).**

1.     Service) underscores Goodman's contempt for the entire federal judicial framework.  In fact, if someone does bring an action against Goodman – which he himself invited on 3/30/2018 **[Exh.3]**.

1

**ATTESTATION**

I hereby attest that the foregoing is accurate and true under the penalties of perjury.  Further, I hereby attest that the attached exhibits are accurate and true copies of source documents located on the Internet.

Signed this _28_ day of October, 2018

Plaintiff, D. George Sweigert
Pro se plaintiff acting as private attorney general

2

**NOTICE OF PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S
COUNTERCLAIM PER FRCP RULE 12(B)(6) AND CPLR 3211(A)**

D. GEORGE SWEIGERT, C/O
P.O. BOX 152
MESA, AZ 85211

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
(FOLEY SQUARE)**

D. GEORGE SWEIGERT

       Plaintiff,

vs.

JASON GOODMAN

       Defendant

**Case No.:  1:18-cv-08653-UA**

**JURY TRIAL DEMANDED**

**PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES TO ACCOMPANY PLAINTIFF'S
MOTION TO DISMISS PER FRCP RULE 12(B)(6)**

---

<u>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
TO ACCOMPANY PLAINTIFF'S MOTION TO DISMISS PER FRCP RULE 12(B)(6)**</u>

    NOW COMES THE PRO SE plaintiff, a layman non-attorney who is acting in the capacity of private attorney general in a public interest lawsuit, to respectfully serve this MEMORANDUM OF POINTS AND AUTHORITIES upon the Clerk of the Court pursuant to **Local Rule 7.1.**  The Plaintiff hereby claims that the Defendant's "**COUNTER-CLAIM**", appearing as Doc. No. 44, filed 10/22/2018 (herein "**COUNTER-CLAIM**"), should be dismissed for failure to state an actionable claim pursuant to F.R.C.P. **Rule 12(b)(6)** and New York Civil practice laws and Rules **(CPLR) § 3211(a)(1) and (7).**

1

## BACKGROUND

1.      Plaintiff servers this MOTION TO DISMISS upon the Clerk of the Court only as a courtesy to the Court for the purposes for foreclosing a potential default action or motion by the Defendant which may rely on his illegitimate "**COUNTER-CLAIM**" (see N.Y. Civil Practice Law and Rules (**CPLR**) § 3011).  The Plaintiff reserves his rights to treat this fatally flawed COUNTER-CLAIM as a bifurcated pleading that is illegitimately linked as an ancillary attachment to the Defendant's unverified ANSWER, which is in of itself a legal nullity (see Defendant's unverified ANSWER (Doc. No. 35, 10/10/2018)).  Both the ANSWER and COUNTER-CLAIM are not in conformance with **CPLR § 3011** as discussed in the pleadings listed below.

2.      To support the claim of illegitimacy of Defendant's ANSWER and COUNTER-CLAIM pursuant to **CPLR § 3011 and §3022**, the Plaintiff hereby incorporates the following documents as if fully restated herein (all are hereby incorporated by reference).

- Docket No. 41, filed 10/19/2018
- Docket No. 42, filed 10/19/2018
- Docket No. 43, filed 10/22/2018
- Docket No. 8, filed 07/09/2018

3.      In sum, the totality of the above cited pleadings indicate that the Defendant's ANSWER and COUNTER-CLAIM are fatally flawed, in error, and legally insufficient to be further considered by the Court, see **CPLR § 3022.**

4.      Not unsurprisingly, again, Defendant Goodman has NOT filed an appropriate Certificate of Service with his latest "COUNTER-CLAIM" pleading.  This sloppy conduct is inexcusable following the transmission of the electronic "Certificate of Service" by Goodman on **10/11/2018** to the Plaintiff's e-mail account.

5.      The Plaintiff herein reserves his right to file a new **Amended Complaint** in response to the Defendant's COUNTER-CLAIM as a precautionary mitigation (by leave of the Court) pursuant to **CPLR § 3025** (see, Siegel, NY Prac § 229 [3d ed]).  *Green Point Sav. Bank v Pagano*, 103 AD2d 735 [1984]).

2

**LAW AND ARGUMENT**

6.      In general terms the bulk of the "COUNTER-CLAIM" should be dismissed pursuant to **CPLR §
3211(a)** on the grounds of (1) lack of documentary evidence, (2) statute of limitations and (3) failure to state a cause
of action, etc.  The entire "COUNTER-CLAIM" when treated as a complaint lacks legal sufficiency – especially in
the area of defamation – and fails to state a cause of action.  *Morone v. Morone*, 50 N.Y.2d (1980).

### ALLEGATIONS OF AN ORGANIZED DEFAMATION, SLANDER, HARASSMENT, CYBER STALKING, AND ACTUAL STALKING CAMPAIGN (THE CAMPAIGN) FAILS UNDER CPLR 3211(a)(7)

7.      It is well settled that, pursuant to **CPLR § 3211(a)(7)**, on a motion to dismiss for failure to state a
cause of action, the movant has the burden to demonstrate that, based upon the four corners of the complaint
liberally construed in favor of the plaintiff, the pleading states no legally cognizable cause of action. *Leon v
Martinez*, 84 NY2d 83, 87-88 (1994). A motion to dismiss the complaint for failure to state a cause of action "will
generally depend upon whether or not there was substantial compliance with CPLR 3013." *Catlin v Lindenman*, 40
AD2d 714, 715 (2d Dep't 1972).  If the allegations are not "sufficiently particular to give the court and parties
notice of the transactions or occurrences intended to be proved and the material elements of each cause of action",
the cause of action will be dismissed. *Id.* CPLR 3013 provides that "[s]tatements in a pleading shall be sufficiently
particular to give the court and parties notice of the transactions, occurrences, or series of transactions or
occurrences, intended to be proved and the material elements of each cause of action or defense." In determining
whether to grant a motion to dismiss, the court accepts the facts alleged in a complaint as true, and determines
whether the facts as alleged fit within any cognizable theory of law. *See Morone v Morone*, 50 NY2d 481, 484
(1980); *Guggenheimer v Ginzburg*, 43 NY2d 268, 275 (1977). Additionally, all such facts must be accorded every
favorable inference. *Beattie v Brown & Wood*, 243 AD2d 395, 395 (1st Dep't 1997).

8.      Defendant—Counterclaimant Goodman has alleged Plaintiff is part of "an organized defamation, slander, harassment, cyber stalking, and actual stalking campaign (The Campaign)" as stated in lines 14,15 (ln.14,15) page 1 (pg.1) of COUNTER-CLAIM.

9.      **CIVIL CONSPIRACY**.  If "The Campaign" is an organized civil conspiracy Counterclaimant Goodman has provided no evidence of such a confederation, cartel, or group.  No individuals, entities or persons are named that are alleged to be participants in "The Campaign".  New York does not recognize civil conspiracy to commit a tort as an independent cause of action (see *Alexander & Alexander of N.Y. v Fritzen*, 68 NY2d 968, 969; *Brackett v Griswold*, 112 NY 454, 466-467; *Blanco v Polano*, 116 AD3d 892, 895-896; *Dickinson v Igoni*, 76 AD3d 943, 945). However, a plaintiff may plead the existence of a conspiracy in order to connect the actions of the underlying defendants with an actionable, underlying tort, and establish that those actions were part of a common scheme (see *Alexander & Alexander of N.Y. v Fritzen*, 68 NY2d at 969; *Blanco v Polano*, 116 AD3d at 896). Under New York law, "[i]n order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement" (*Perez v Lopez*, 97 AD3d 558, 560; see 1766-68 Assoc., *LP v City of New York*, 91 AD3d 519, 520; *Abacus Fed. Sav. Bank v Lim*, 75 AD3d 472, 474).  Counterclaimant Goodman has **NOT** named co-conspirators, additional defendants, or other individuals that would be part of this civil conspiracy.  This cause of action has failed as an independent tort and is not associated with any other actionable tort.

10.     **CYBER-STALKING**.  Counterclaimant Goodman fails to cite any New York or Federal law that would be provide a private right of action and a colorable claim against the Counterclaim Defendant (Sweigert).  It is believed that Goodman may be referring to the publication by Sweigert of details contained within several "DECLARATIONS" filed by the Counterclaimant Defendant (Sweigert) in related litigation in the U.S.D.C. for the eastern District of Virginia. (Steele v. Goodman, 3:17-cv-00601-MHL).  However, New York's Civil Rights Law § 74 states, in pertinent part, as follows: "A civil action **cannot** be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published.

4

1  [emphasis added]"  Counterclaimant Goodman states "no allegations from which damages attributable to the

2  defendant's (Sweigert) conduct may be reasonably inferred".  (see *Lappin v Greenberg*, 34 AD3d 277, 279 [2006]).

3  Goodman merely states ambiguous and vague terms; such as "spreading known false defamatory information" and

4  "stalking both online and in the real world".  There is little information to allow this Court to infer anything from

5  these vague and conclusory statements.  No examples, no incidents and/or no occurrences of "stalking" are

6  provided by Goodman.  The Court must rely on the phrase "spreading known false defamatory information", which

7  certainly would not be considered an act of stalking.  Although the Counterclaimant Goodman is entitled "to all

8  favorable inferences to be drawn from the pleadings", there is nothing to draw from (see *Aristy-Farer v. State of*

9  *New York*, 29 NY3d 501, 509).  Goodman fails to allege how the "spreading [of] known false defamatory

10  information" can be considered a threat to "kill, injure, harass, intimidate, or place [him] under surveillance".  18

11  U.S.C. § 2261A.  There is a complete lack of any specific allegations, or evidence that would indicate

12  Counterclaimant Goodman was the victim of stalking or cyber-stalking; except for his overly broad use of these

13  terms such as "spreading".

14      11.   **HARASSMENT**.  New York does not recognize a common-law cause of action for harassment.

15  *Edelstein v Farber*, 27 AD3d 202, 202 (1st Dep't 2006).  Aside from Counterclaimant Goodman's conclusory

16  statements, he has provided no statutory or case law to support his argument that his claims for harassment are

17  properly plead and recognized under New York law.  Whether or not Goodman's claims are true, even if he can

18  prove them, they are not relevant.  Counterclaimant Goodman contends that Counterclaim Defendant Sweigert (and

19  other unknown parties) engaged in "willful and wanton actions" (ln.19,pg1).  However, even accepting his

20  conclusory claims (i.e. spreading of defamatory information) as true, they do not rise to the rigorous level of being

21  extreme and outrageous, even when the "spreading" is viewed cumulatively.  *Graupner v. Roth*, 293 AD2d 408, 410

22  (1st Dep't 2002).  Extreme and outrageous conduct is measured by the reasonable bounds of decency tolerated by a

23  decent society.  *Marmelstein v. Kehillat New Hempstead*, 11 NY3d 15 (2008).  It is a rigorous standard that is

24  difficult to satisfy because it is designed to filter out trivial complaints and assure that a claim of severe emotional

25  distress is genuine.  *Howell, Seltzer v. Bayer*, 272 AD2d 263 (1st Dept. 2000).

12.     **DEFAMATION.**  The elements of a prima facie cause of action for defamation are: "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se (citations omitted)." *Dillon v. City of New York*, 261 AD2d 34, 37-38 (1st Dept. 1999).  **CPLR § 3016(a)** mandates that "the particular words complained of shall be set forth in the complaint . . ."  Plaintiff must also clearly allege the time, place and manner in which the words were stated.  *Rosenberg v. Home Box Office, Inc.,* 33 AD3d 550 (1st Dept. 2006). These [*5]requirements are strictly construed. *Ma as v. VMS Assocs., LLC,* 53 AD3d 451 (1st Dept. 2008). Since Counterclaimant Goodman has not provided the defamatory statements complained of, there is no remaining ability to analyze such statements as to truth, falsity, opinions, fact, etc.  The elements of defamatory slander are: (1) a false statement, (2) published without privilege or authorization, (3) to a third party, (4) causing special harm. *Dillion v. City of New York*, 261 A.D.2d 34, 38, 704 N.Y.S.2d 1, 5 (1st Dep't 1999).  None of these standards can be applied to Goodman's conclusory claims.  In order to plead a slander claim, the complaint must set forth the details of the alleged slander and must plead special damages with sufficient particularity. *Id.*  Special damages under New York law are out-of-pocket losses that have an economic or pecuniary value and flow directly from the injury caused by the defamation. *Celle v. Filipino Reporter Enters, Inc.,* 209 F.3d 163, 179 (2d Cir. 2000) (citing *Matherson v. Marchello,* 100 A.D.2d 233, 235, 473 N.Y.S.2d. 998, 1000 (2d Dep't 1984).

13.     **TORTIOUS INTERFERENCE.**  The elements of a tortious interference (assuming with a contract – as Goodman does not articulate further) cause of action are: (1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff. *Kronos, Inc. v. AVX Corp.,* 81 NY2d 90, 94 (1993).  The requisite elements of a cause of action for prima facie tort are: (1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful. *Freihofer v. Hearst Corp.*, 65 NY2d 135, 142-43 (1985); *Curiano v. Suozzi,* 63 NY2d 113, 117 (1984); *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 NY2d 314, 332 (1983).  Plaintiffs must allege that the defendants' allegedly tortious conduct consisted of an otherwise lawful

6

act that was performed with the intent to injure or with a "disinterested malevolence." *Curiano v. Suozzi, supra* at

117, *citing Burns Jackson Miller Summit & Spitzer v. Lindner, supra* at 333; *see also Gold v. East Ramapo Central*

*School Dist.*, 115 AD2d 636 (2d Dept. 1985) (a necessary element for prima facie tort is a desire to harm).

Counterclaimant Goodman fails to meet these basic elements of a prima facie tort cause of action of action.

Goodman does not claim that Counterclaim Defendant's (Sweigert) sole motivation was either due to his

"disinterested malevolence". Goodman has failed to state a viable cause of action for a prima facie tort or for the

tort of tortious interference. Assuming, arguendo, that Goodman is referring to the self-interest, good-faith, pre-

litigation e-mail messages sent to companies such as RedBubble, these communications are privileged and not

subject to allegations of tortious interference. *Caplan v Winslett, et al.*, 218 AD2d 148, 152-153 (1st Dep't

1996)(internal citations omitted). In so holding, the *Caplan* court made clear that statements made in open court,

and out-of-court, are protected by an absolute privilege when such statements relate to the pending litigation or a

judicial proceeding; quoting in relevant part:

> The Appellate Division, First Department, has held that:
>
> [a]n absolute privilege is based upon a communicator's official participation in the
> process of government[, and]...is intended to insulate him from any inhibitions in
> carrying out that function. ...[A]ttorneys are considered as much protected participants in
> this process as are Judges, jurors, parties and witnesses. ...Furthermore, the privilege is
> not limited to statements made in open court, but also embraces communications between
> attorneys...[a]s long as the subject of an out-of-court communication relates to pending or
> contemplated litigation, and is made in connection with a judicial proceeding.

14.   **FIRST AMENDMENT RIGHTS**. The Counterclaim Defendant (Sweigert) requests that the

Court take Judicial Notice that the Counterclaim Defendant is a private party and not a public employee. As a

private party, the Counterclaim Defendant does not represent the interests of any government, quasi-government

entity, bureau, regulatory body, etc. The Counterclaim Defendant is **NOT** clothed with any authority to act on

behalf of any such governmental body and is not a public employee. Therefore, the limitations and constraints that

may be applied to such governmental organizations by AMENDMENT I of the U.S. Constitution would not apply

7

to a private party plaintiff.  The Second Circuit has made it clear that plaintiffs [Counterclaimant plaintiff Goodman] making First Amendment retaliation claims must substantiate their allegations of being chilled with specific and objective evidence.  See *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir.2001) (plaintiff must show that First Amendment rights were "actually chilled") (quoting *Davis v. Vill. Park II Realty Co.*, 578 F.2d 461, 464 (2d Cir.1978)).  The Counterclaimant (Goodman) has provided no such evidence.  Apparently, as the Counterclaimant (Goodman) is not a graduate of any journalistic training and may not understand the complexities of AMENDMENT I protections he has proceeded at his own reckless peril with a flawed assumption of Constitutional protections.  Nonetheless, Goodman provides no examples of how his "free speech" has been effectively chilled the Counterclaim Defendant in the "COUNTER-CLAIM" – **NONE**.  See *Holley v. Cty. of Orange, NY*, 625 F.Supp.2d 131, 141 (S.D.N.Y. 2009) (citing *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)).

15. **INTENTIONAL INFLICTION OF EMOTION DISTRESS (IIED)**.  The law is clear that a claim for IIED and prima facie tort will be dismissed as duplicative when the "underlying allegations fall within the ambit of other traditional tort liability, namely, the plaintiff's [here Defendant's] causes of action sounding in defamation." *Fleischer v. NYP Holdings, Inc.* 104 A.Dd.3d 536, 539 (1st Dept. 2013).  See also *Hirschfield v. Daily News*, 269 A.D.2d 248, 249 (1st Dept. 2000).  Goodman's vague and ambiguous allegations are duplicative of his other claims related to "cyber harassment", "slander", etc.  The co-mingling of these allegations into a jumble places an unnecessary burden upon the Counterclaim Defendant to untangle the inter-locking web of vague accusations, insinuations, conclusory statements and innuendo.  Additionally, the bulk of Counterclaimant Goodman's defamation claims are time barred as they occurred more than one year ago.  The Court and the Plaintiff will be forced to use a crystal ball and attempt to determine the date when these IIED sufferings began.. It is the duty of the Counterclaimant Goodman to establish the damages he may have suffered as a result of the IIED allegations – he has not.  Goodman has failed to establish any timelines, dates, occurrences or other information as to when an actionable event took place that caused the Counterclaimant emotional damage.  In sum, Goodman's COUNTER-CLAIM has again failed to state an actionable, colorable claim.

16.     **FINANCIAL DAMAGES.**  The Court should take Judicial Notice that the growth of Counterclaimant Goodman's social media empire can almost be described as "meteoric".  Every week Goodman gains additional PATREON.COM "patrons", YouTube subscribers, and other social media followers.  At the time of this writing Goodman has nearly **70,000** YouTube subscribers and over **1,000** PATREON.COM "patrons".  It is difficult to imagine exactly how Goodman has suffered during periods of such outlandish growth (all in the past twelve months).  In fact, Goodman has conducted lavish overseas trips in his "pursuit" of journalistic stories.  His most recent trip was to **Sweden and Copenhagen** to "interview" guests.  Such "guests can easily be interviewed with the use of Skype technologies, as Goodman has down with a myriad of other "guests".

**ALLEGATIONS OF AN ORGANIZED DEFAMATION, SLANDER, HARASSMENT, CYBER STALKING, AND ACTUAL STALKING CAMPAIGN (THE CAMPAIGN) FAILS UNDER CPLR 3211(a)(1)**

17.     **CPLR 3211(a)(1)** allows a defendant to "move for judgment dismissing one or more causes of action asserted against him on the ground that … a defense is founded upon documentary evidence."   A claim will be dismissed under CPLR 3211(a)(1) where "documentary evidence submitted conclusively establishe[s] a defense to the asserted claims as a matter of law."

18.     **DEFAMATION CLAIMS HAVE EXPIRED.**  Defendant makes no attempt to provide any date or occurrence as to when any defamatory statements were made by the Plaintiff and in what form.  Under New York law, claims for defamation and defamation per se are governed by a one-year statute of limitations.  **CPLR § 215(3).** The one year limitation has most likely estopped the bulk of Counterclaimant Goodman's illusionary defamation claims.  Indeed, Goodman has shown a stunning lack of due diligence in pursuing any sort of legal remedy, other than his own public on-line social media threats to contact the F.B.I. with his sidekicks former F.B.I. Special Agent Robyn Gritz (Gurnee, Illinois), Michael D. Moore, Certified Fraud Examiner (West Chester, PA) and current F.B.I. Special Agent Brittany Custer , etc. (see Plaintiff's Twelfth (12th) Request for Judicial Notice (herein incorporated by reference as if fully restated) **[12-RJN]**, Doc. 45, 10/22/2018).  In fact, it is telling that there has been NO activity from the N.Y.P.D. or the F.B.I. regarding the phantom players involved in the alleged smear campaign (The

9

Campaign).  Counterclaimant Goodman has negligently slept on his legal rights while he was under a duty to make a

reasonable inquiry into the matters that he is now complaining of.  Based upon Goodman's online threats to speak

with the F.B.I. and N.Y.P.D. (April, 2018, **[12-RJN]**) he could have commenced a legal action then.  However,

Goodman elected to drain the valuable resources of law enforcement and this Court to pursue these phantom

allegations that have been provided with NO documentation or evidence (supposed the same evidence Goodman

handed over to the N.Y.P.D. and the F.B.I.).

19.     **STALKING "IN THE REAL-WORLD"**.  To help the Court understand the futility of

Goodman's vague and ambiguous "real world stalking" allegations and insinuations, the Counterclaim Defendant

(Sweigert) relies on the wisdom of the New York Legislature when that body amended the N.Y. Anti-Stalking law.

See An Act to Amend the Penal Law, in Relation to Stalking in the Fourth Degree, ch. 184, § 1, 2014 N.Y. Laws

922, 922 (codified at  Penal § 120.45).  As defined by the legislature, stalking in the "real world" with respect to the

second criminal element of "no legitimate purpose" the Court of Appeals in *NY Court of Appeals case People v.*

*Stuart, 100 N.Y.2d 412* defined this term to mean "the absence of a reason or justification to engage someone, other

than to hound, frighten, intimidate or threaten."  The Counterclaim Defendant has not physically been in the State of

New York since 1999 when he worked as a consultant to Chase Manhattan bank, Wall Street, New York City.  The

Counterclaim Defendant made a short business trip to the New York City area in 2000.  Suffice to say the

Counterclaim Defendant has not been in the New York City area for at least a decade, making any "real world"

stalking attempts by the Counterclaim Defendant  impossible.  What remains perplexing is why the Defendant did

not contact law enforcement to report this stalking activity in December 2017 when he claims to have become aware

of these "stalking activities".  Attached as **Exhibit One [Exh.1]** is a YouTube video production by Goodman posted

on 12/11/2017 concerning the "fear" Goodman experienced when an explosive device detonated at the N.Y. Port

Authority.  The Counterclaim Defendant 's MOTION seeking injunctive relief is also illustrative (along with all

associated evidence) and is hereby incorporated by reference as if fully restated herein (Doc. No. 8, 07/09/2018).

Quoting the Goodman 12/11/2017 video information description in relevant part:

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES TO ACCOMPANY**
**PLAINTIFF'S MOTION TO DISMISS PER FRCP RULE 12(B)(6)**

- I've posted this video to let everyone know that although the explosion this morning was very close to **my home and Crowdsource the Truth headquarters,** I was not injured.   Thanks to those who have inquired.
- **The latest efforts of this nefarious group have graduated to a level that demands action. Their malicious attacks have gone too far. Their deception must be exposed. They must face justice for their acts.**  [emphasis added] **[Exh.1]**

20.     **CYBER STALKING ISSUES TRUMPED BY LEGITIMATE PURPOSE IMMUNITY.**

Without developing definitive allegations, accusations or even specific actionable events, Goodman is fond of relying on vague and ambiguous insinuations – such as "cyber stalking".   Assuming, arguendo, that Goodman is referring to N.Y. Penal Code (P.C.) 120.45 his reliance is misplaced.   As the Court is aware, providing notifications to a party "for a legitimate purpose" trumps the standards of criminal (and potentially civil) conduct needed for an actionable N.Y. P.C. 120.45 claim.   The Counterclaim Defendant  has stated several times, within the context of the Second Amended Complaint (Doc. No. 39, 10/17/2018) that both (1) Goodman and (2) PATREON.COM were notified on several occasions of pre-litigation cease and desist notices, anti-spoliation of evidence notices and other legal good faith attempts at resolving this present controversy.   An example of these pre-litigation warning communications is attached as **Exhibit Two [Exh.2],** e-mail message of 11/30/2017.  Goodman/PATREON were continuously notified in a non-malicious manner of the on-going tortious conduct of Goodman and of specific events of libel and slander directed at the Counterclaim Defendant by Goodman.   Further, **Exh.2** indicates that both Goodman and PATREON were advised of the potential of civil litigation related to racketeering and wire fraud.   Such legal and pre-litigation related e-mails **[Exh.2]** were sent to the normal business e-mail addressed that is often publically advertised by Goodman to his worldwide audience.   Further, these legal communications are clothed in the immunity of the litigation privilege doctrine (discussed below).   The conduct alleged in the "COUNTER-CLAIM" fails to make out the statutory requirement that the conduct is even criminal or tortious in nature, or what the purported misconduct is exactly.   Thus, the Court and the Counterclaim Defendant are once again left to rely on the litigation crystal ball to understand the Defendant's ramblings in his moot "COUNTER-CLAIM".

21.     **TORTIOUS INTERFERENCE (T.I.) CLAIMS TRUMPED BY LITIGATION PRIVILEGE.**  Advancing his interests, Counterclaimant Defendant (Sweigert) sought to have (1) third-party

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES TO ACCOMPANY
PLAINTIFF'S MOTION TO DISMISS PER FRCP RULE 12(B)(6)**

1   merchandising services such as Redbubble remove unauthorized copyrighted artwork that was illegitimately

2   hijacked by Goodman to make a profit at the expense of the Counterclaim Defendant (Sweigert); and (2) to serve

3   NOTICE on PATREON that the Counterclaimant Goodman was broadcasting false, misleading, slanderous and

4   defamatory information about Sweigert on the PATREON platform.  Assuming, arguendo, that the

5   Counterclaimant is referring to Sweigert's communications to Redbubble and PATREON as tortious (see

6   Goodman e-mail of 03/30/2018 [**Exh. 3**]]) again Goodman's allegations fail.  As compared to tortious interference

7   with an existing contract, more culpable conduct must be alleged to maintain a cause of action for <u>tortious</u>

8   <u>interference with prospective rights</u>. *Carvel Corp. v. Noonan*, 3 NY3d 182, 190 (2004). Citing its holding in *NBT*

9   *Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.,* 87 NY2d 614 (1996), the Court of Appeals in Carvel reiterated that

10  "defendant's conduct must amount to a crime or an independent tort". Id. An exception to this rule is recognized

11  where the "defendant engages in conduct for the sole purpose of inflicting intentional harm on plaintiffs' (citation

12  omitted)." Id. Thus, if the defendant shows that the interference is intended, at least in part, *to advance its own*

13  *interests, then it was not acting solely to harm plaintiff. Id.*  Assuming, arguendo that the Counterclaimant

14  Goodman is complaining about the private dispute resolution based good-faith, non-malicious cease and desist

15  (C&D) requests, anti-evidence destruction notices and other legal pre-litigation privileged correspondence [**Exh.2**]

16  sent to (1) Redbubble and (2) PATREON; then, once again the "COUNTER-CLAIM" is fatally flawed.  Private

17  dispute resolution via demand letters, C&Ds, evidence preservation notices and other pre-litigation private dispute

18  resolution communications have long been held to be protected under the broad scope of litigation privilege; which

19  is memorialized in the Restatement (Second) of Torts at 586-87 (1977) ("reaffirming absolute privilege of parties

20  and their attorneys if the defamatory statements have "some relation to the proceeding").  Litigation privilege is in

21  accord with the public interest of granting citizens the utmost freedom to the courts of justice in their efforts to

22  attain settlement.  The Counterclaim Defendant's communications to (1) Redbubble and (2) PATREON, INC.

23  [**Exh.2**] are protected by absolute and qualified immunity.  It is instructive to note that under New Jersey law, there

24  is a litigation privilege that is an absolute privilege to any communication: "(1) made in judicial or quasi-judicial

25  proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and

26                                                        12

27  **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES TO ACCOMPANY**
    **PLAINTIFF'S MOTION TO DISMISS PER FRCP RULE 12(B)(6)**

28

(4) that have some connection or logical relation to the action." *Hawkins v. Harris*, 141 N.J. 207 (1995).  Further, the New York State Court of Appeals has resolved this issue in *Front, Inc., v. Philip Khalil*, No. 19, 2015 WL 750965 (N.Y. Feb. 24, 2015).  The *Front, Inc.* court answered the "open question" concerning what, if any, privilege attaches to pre-litigation statements.  The *Front, Inc.* court ruled that communications made in anticipation of litigation are subject to a qualified privilege and thus protected against claims for defamation.  Therefore, the Plaintiff's pre-litigation, private dispute resolution centered, C&Ds, evidence preservations letters, etc. are exempt from the Defendant's illusionary T.I. claims.  Provided as an example of Counterclaimant Defendant's e-mail to Goodman/PATREON is attached as **[Exh.2]**, a typical response from Counterclaimant Goodman is attached as **[Exh.3]**.  In Goodman's 03/30/2018 he complains about Sweigert contacting "**Redbubble**".  Attached as EXHIBIT FIVE **[Exh.5]** is a sampling of products sold by Goodman's "CrowdSource The Truth" at the Redbubble merchandising web-site that contain the copyrighted photographs of the Counterclaimant defendant.  Sweigert now avers and states that Goodman has no authorization to use these images, and same was communicated to **Redbubble** nearly a year ago.

  22.  **INVASION OF PRIVACY**.  The Plaintiff requests that the Court take Judicial Notice of the (a) myriad of public documents created by the Defendant with his home address and the (b) bizarre public behavior displayed on countless social media broadcasts.

  (a) By his own volition, the Defendant has included his personal home address in many corporate, trademark and other public documents.  For example:

- On trademark registration application (filed 1/10/2018) for the mark "Crowdsource The Truth" (**CSTT**), the applicant **MSDI**, via Jason Goodman, provided the address "6s 252 7th Avenue New York NEW YORK 10001" to the U.S. Patent and Trademark Office (USPTO).  (USPTO serial number 87752970).

- The following entry is made in a federal court pleading in the signature block: "Jason Goodman, 252 7th Avenue #6S, New York, N.Y. Telephone (323) 744-7594, Facsimilia (917) 591-6370, Email: truth@crowdsourcethetruth.org, Pro Se." (page 7 of 8 in the document "DEFENDANT JASON GOODMAN'S ORIGINAL ANSWER", Doc. 14, Filed 10/06/17 in civil case Steele vs. Goodman, 3:17-cv-00601-MHL, in the U.S.D.C. for the Eastern District of Virginia (Richmond)).

- For other examples see Plaintiff's Tenth Request for Judicial Notice (herein incorporated by reference) **[10-RJN]**, Doc. 37, 10/12/2018).

13

(b)     Attached as Exhibit Four **[Exh.4]** is an instantiation of the YouTube video production distributed on 06/03/2017 entitled, "Who Is Spoofing the #SethRichFiles". In this video **[Exh.4]** Defendant Goodman takes his audience of 13,000+ viewers on a tour of his New York City apartment, which he fondly refers to as "HQ", as in Headquarters. Goodman films his apartment, his personal cell phone and the plaintiff's brother (George Webb Sweigert) sleeping on Goodman's couch. It would appear that Goodman waived his rights to any expectation of privacy with such intimate scenes openly distributed to a worldwide social media audience.

(c)     On his social media platforms (YouTube, Periscope, etc.) Goodman has openly discussed such issues as the (1) production of pornographic self-photography, the (2) creation of videos that may indicate acts of masturbation, his (3) dating activities related to the dating platform "TINDER.COM", his (4) emotional outbursts in the video series "Who Spoofed the Seth Rich Files", his display of his home in over 1,000 video broadcasts to a worldwide audience, etc. See Exhibit Four **[Exh.4]**   Further, Mr. Goodman is fond of airing "dirty laundry" and personal grudges to his worldwide social media audiences. **[Exh.4]**

## SUMMARY

23.     Counterclaimant Goodman offers a jumble of irrelevances, smears and unsubstantiated insinuations without a shred of evidence in his legally nullified and moot "COUNTER-CLAIM" (filed without an accompanying Certificate of Service). The bulk of Goodman's illusionary allegations have been purportedly referred to the N.Y.P.D. and the F.B.I. by Goodman and his sidekicks. These law enforcement agencies, just as this Court, have had to suffer with Goodman the self-professed "911 truther" and "targeted individual". In his "COUNTER-CLAIM" Goodman now expects this Court to behave like his naïve conspiracy theory audience and accept his stunningly vague and ambiguous allegations that Goodman presents on his CrowdSource The Truth social media podcasts . Goodman lives in a world riddled with paranoia as evidenced by his 12/11/2017 YouTube video

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES TO ACCOMPANY
PLAINTIFF'S MOTION TO DISMISS PER FRCP RULE 12(B)(6)**

production [**Exh.1**], believing himself to be the target of an explosive device that detonated 23 city blocks from his high rise apartment.

24.     Goodman cannot correct the fatal procedural flaws and insufficiencies that are embedded in his pleadings. In fact, the sloppy and cavalier manner in which Goodman approaches this Court (no filing of a Certificate of Service) underscores Goodman's contempt for the entire federal judicial framework.  In fact, if someone does bring an action against Goodman – which he himself invited on 3/30/2018 [**Exh.3**].

**ATTESTATION**

I hereby attest that the foregoing is accurate and true under the penalties of perjury.  Further, I hereby attest that the attached exhibits are accurate and true copies of source documents located on the Internet.

Signed this __28__ day of October, 2018

Plaintiff, D. George Sweigert
Pro se plaintiff acting as private attorney general

15

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES TO ACCOMPANY
PLAINTIFF'S MOTION TO DISMISS PER FRCP RULE 12(B)(6)**

RECEIVED
IN THY DOCKET CLERK

2018 OCT 31  PM 4: 18

# EXHIBITS

### ATTESTATION / DECLARATION

Pursuant to Local Rule 7.1, I hereby attest that the foregoing is accurate and true under the penalties of perjury. Further, I hereby attest that the attached exhibits are accurate and true copies of source documents located on the Internet.

Signed this _____ day of October, 2018

Plaintiff, D. George Sweigert
Pro se plaintiff acting as private attorney general

16

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES TO ACCOMPANY
PLAINTIFF'S MOTION TO DISMISS PER FRCP RULE 12(B)(6)**

# EXHIBIT ONE

YouTube video production appearing on the Jason Goodman" channel.

https://www.youtube.com/watch?v=gqwV8UfBd5g

12/11/2017





Port Authority Bus Terminal Explosion Deemed 'Botched Terror Attempt' By NYPD

Jason Goodman
▶ Subscribe 66K

4,455 views

╋ Add to    ➤ Share    •••  More                    👍 202    👎 35

Published on Dec 11, 2017
I've posted this video to let everyone know that although the explosion this morning was very close to my home and Crowdsource the Truth headquarters, I was not injured. Thanks to those who have inquired.

SHOW MORE

I've posted this video to let everyone know that although the explosion this morning was very close to **my home and Crowdsource the Truth headquarters,** I was not injured.   Thanks to those who have inquired.

Linked to ISIS, this seems to have been a scare tactic by an impotent terrorist, similar in scope to explosions that took place on 23rd Street in Chelsea (**also very near my home**) just over one year ago. Fortunately no serious injuries have been reported.

Crowdsource the Truth has been exposing fraud, corruption and crime for more than one year. As we grow in viewership and effectiveness, **our effort has come under consistent heavy attack by a determined group of misguided individuals.**

**These are truly despicable people who rely on spin, speculation, intimidation, exaggeration, fabrication, and malicious lies.** They have concentrated their efforts to conceal the truth and present a manufactured, patently false narrative and fraudulent conclusions.

While they do this, they attempt to **achieve financial gain** through a wide range of methods including monetized YouTube channels, Patreon solicitations, blockchain driven sites, fraudulent charity fundraising efforts, **baseless fake lawsuits** that abuse civil legal procedure and other methods.

The attacks are focused not only on **the privately owned corporation under which I create the video and social media content for Crowdsource the Truth,** but also on me personally, assailing my physical characteristics and religious heritage in a way that can only be described as hateful and un-American. They target even those brave, honest, hard working patriots who have defied corrupt authority to step forward and expose crimes that impact us all.

**The latest efforts of this nefarious group have graduated to a level that demands action. Their malicious attacks have gone too far. Their deception must be exposed. They must face justice for their acts.**

They mask their method as childish antics and "troll" behavior but this is a charade to hide their true, far more sinister purpose. They antagonize targets to elicit engagement and perpetuate

discord. They aim to make the very act of addressing their claims or actions appear to bring down the value of the content here. When lies go unchallenged, some may begin to believe them.

This group also aims to raise their profile and profits by exploiting the explosive growth of the fantastic audience here, while they continue to deceive and attempt to take advantage of the Crowdsource community. To more effectively neutralize their efforts, **Crowdsource the Truth will go back to ignoring them and remain dedicated to investigative journalism,** crowdsource fact checking and the serious work we have all set out to do. If you also wish to ignore these individuals, please continue to enjoy that effort here.

Those interested in learning how the misguided, malignant personnel are carrying out their nefarious plans and help put an end to their wrongdoing may do so at a new YouTube channel "Exposing the Chavez Hoax" with content coming soon, link below:

https://www.youtube.com/channel/UCE7t...

Thank you for your ongoing support. Sponsor Crowdsource the Truth
http://paypal.me/crowdsourcethetruth https://www.patreon.com/crowdsourceth...

BTC - 14y2bEJ484DTbQwthX51VWpcRtk9Q7kmQQ

ETH - 0x07a23Ac0EBb5936d60A8cBfE07D64A579Cc756c9

LTC - LVP2d143QjPv1JaJpqgPHzQzv2qSQCDnbd

email truth@crowdsourcethetruth.org

merchandise - https://www.redbubble.com/people/csth...

**Legal Disclaimer: Sponsorship of Crowdsource the Truth is made at the sponsor's sole discretion. Sponsorship funds are not tax-deductible, are non-refundable, and do not represent any ownership, equity interest or decision-making authority in the organization.

[emphasis added]

# EXHIBIT TWO

---------- Original Message ----------

From: Spoliation Notice <spoliation-notice@mailbox.org>

To: Jason Goodman <truth@crowdsourcethetruth.org>, colin@patreon.com, feedback <feedback@calbar.ca.gov>, georg.webb@gmail.com

Cc: dutyofficer@ncric.ca.gov, msp.hq@maryland.gov, OFL@usdoj.gov, msp.superintendent@maryland.gov, Spoliation Notice <spoliation-notice@mailbox.org>

Date: November 30, 2017 at 6:06 PM

Subject: Re: I spoke with the lawyer at patreon

To:

Corporate Counsel

PATREON, INC.


Dear Mr. Sullivan:

As a courtesy to you we have provided the e-mail message we received from Mr. Goodman of New York City.  He states in the subject of his e-mail "I spoke with the lawyer at patreon ..." then in the message "He says your an idiot."

So we shall proceed in an aggressive manner as you think the requestors seeking evidence preservation are idiots.

The terms and conditions of the previous litigation hold and anti-spoliation notice for Mr. Goodman are hereby applied to this message as if fully restated for the Patreon account:

GEORGWEBB, account holder George Webb Sweigert (included in e-mail)

Currently Mr. Sweigert is a resident of Capitol Heights, Maryland

Restated, we expect the same due diligence in the preservation of electronic evidence be applied to the above named account (GEORGEWEBB) as was requested for Mr. Goodman.

This notice is also your pre-litigation notice that PATREON will be named as a co-defendant in a federal lawsuit pursuant to federal and State of California racketeering laws.

Both Mr. Goodman and Mr. Sweigert have acknowledged receipt of an evidence preservation letter on July 5th, 2017 that specifically addressed issues related to wire fraud and racketeering concerning issues related to a "dirty bomb hoax" in June, 2017.

Both of these individuals came to the attention of the Federal Bureau of Investigation as persons of interest related to the closure of the Port of Charleston, S.C. due to a "dirty bomb hoax" attributed to the Goodman/Sweigert YouTube news show.  The wide-spread reporting of this hoax was reported in the New York Times and CNN. It has been alleged that the creation of panic on the Goodman/Sweigert new show was intentional and designed to drive traffic/views to the YouTube news show operated by Mr. Goodman and Mr. Sweigert)

Now, allegedly, Goodman/Sweigert have brought their brand of wire fraud to Patreon.

If Patreon desires to be uncooperative in these simple requests to preserve evidence, then Patreon can answer in federal and state court regarding your company's involvement in the alleged Goodman/Sweigert wire fraud scheme.  By cooperating with the distribution of fraudulent information over the wires of the Internet for profit and gain you have become, allegedly, a racketeering enterprise associate of Goodman/Sweigert.

As Mr. Sweigert, Mr. Goodman's partner, has filed federal lawsuits against the U.S. Department of Justice and the FBI in Washington, D.C., so as a courtesy to you, those agencies have been included in this communication.  In this manner, they can monitor the situation and update appropriate case

files.

As you appear uncooperative, relevant agencies in San Francisco have been provided copies of this message to help ensure your compliance with evidence laws.

Warm regards,

"Idiot" Evidence Preservation Team

---

> On November 30, 2017 at 3:00 AM Jason Goodman <truth@crowdsourcethetruth.org> wrote:
>
>
> He said you're an idiot. Hahahaha.

# EXHIBIT THREE

**Re: Warning and Caution Notice**

Jason Goodman<truth@crowdsourcethetruth.org>

3/30/2018 4:36 PM

To  Spoliation
Notice   Copy  corina.davis@redbubble.com,    colin@patreon.com,    lawenforcement@paypal.c
om,    George Webb

Mr. David George Sweigert,

Mental illness is a serious matter, you need to seek help. You are hurting yourself by generating a growing collection of evidence that indicates very strongly that you are engaged in an organized criminal harassment campaign against me personally as well as other serious potentially criminal offenses. Every person you have CC'd on this message fully realizes that no actual lawyer would send anonymous messages from the "Evidence Collection" department and the messages themselves represent harassment as I have instructed you to terminate communications with me.

**I have submitted my evidence against you to the NY FBI field office** and anticipate they will contact you soon. **If you'd like to challenge me in civil court, I invite you to file your complaint.** It will merely save me the filing fees when I counter sue you for the well documented slander and defamation campaign you have been waging which includes per se libel among other civil torts and potential criminal actions on your part.

You are making matters far worse for yourself every day. My friendly advice is that you cease and desist and discontinue your harassment and / or any mention of me or my company moving forward.

Jason Goodman

[emphasis added]

# EXHIBIT FOUR

YouTube video production appearing on the Jason Goodman" channel.

https://www.youtube.com/watch?v=7mMoUgXCPBM

06/03/2017



Who is Spoofing the #SethRichFiles
13,871 views

Jason Goodman
Streamed live on Jun 3, 2017

Category    News & Politics

SUBSCRIBE 68K



Who is Spoofing the #SethRichFiles
13,871 views

Jason Goodman
Streamed live on Jun 3, 2017

Category    News & Politics

SUBSCRIBE 68K





Who is Spoofing the #SethRichFiles

Jason Goodman

13,871 views

Streamed live on Jun 9, 2017

Category    News & Politics





Who is Spoofing the #SethRichFiles

Jason Goodman

13,871 views

# EXHIBIT FIVE

## https://www.redbubble.com/shop/crowdsource+the+truth

## Crowdsource the Truth 31 Results

**Department** ⌃

**All Departments**

Men's

Women's

Kids

Device Cases



$16.90



### Deep State Dunces

Mugs



Style:

Standard

**$16·⁹⁰**

**Buy any 2 and get 15% off.**
Buy any 4 and get 20% off.

Add to Cart







**Iran Contra Crazies**

Tote Bags

♡

**Small (13" x 13")**

$21.⁶⁷

**Buy any 2 and get 15% off.**

Add to Cart

■ Delivery
Express by 5 November
Standard between 5 - 7 November



D. GEORGE SWEIGERT, C/O
P.O. BOX 152
MESA, AZ 85211

RECEIVED
PRO SE DOCKET UNIT

2018 OCT 31  PM 4: 18

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
(FOLEY SQUARE)

D. GEORGE SWEIGERT                                  Case No.: 1:18-cv-08653-UA

            Plaintiff,

vs.

JASON GOODMAN

            Defendant                               **CERTIFICATE OF SERVICE**

**CERTIFICATE OF SERVICE**

The Plaintiff certifies under penalties of perjury that the enclosed documents have been sent via First Class

postage paid U.S. Mail to:

> Jason Goodman
> 252 7th Avenue #6S
> New York, NY 10001
>
> PRO SE DIVISION -- 200
> Clerk of the Court
> U.S. District Court for the SDNY
> (FOLEY SQUARE)
> 500 Pearl Street
> New York, New York 10007-1312

Respectfully dated this day **28** October, 2018,


D. GEORGE SWEIGERT

**CERTIFICATE OF SERVICE**

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

PRIORITY
★ MAIL ★

D. GEORGE SWEIGERT, C/O
P.O. BOX 152
MESA, AZ 85211

$ INSURANCE INCLUDED*

PICKUP AVAILABLE
* Domestic only

#200
PRO SE

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

PRIOR

EXPECTED DELIVERY

SHIP
TO:

500 PEARL
NEW YO

USPS

FROM:

PRO SE DIVISION
Clerk of the Court
U.S. District Court for the SDNY
(FOLEY SQUARE)
500 Pearl Street
New York, New York 10007-1312

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

Legal Flat Rate Envelope
EP14L February 2014



