

1  D. GEORGE SWEIGERT, C/O
   P.O. BOX 152
2  MESA, AZ 85211

3            IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF NEW YORK
4                       (FOLEY SQUARE)

5  D. GEORGE SWEIGERT                    Case No.:  1:18-cv-08653-UA

6            Plaintiff,

7  vs.                                   MEMORANDUM OF POINTS AND
                                         AUTHORITIES TO SUPPORT PLAINTIFF'S
8  JASON GOODMAN                         AMENDED MOTION FOR GAG ORDER
                                         PURSUANT TO NY CPLR § 6301
9            Defendant

10
                    MEMORANDUM OF POINTS AND AUTHORITIES
11                 TO SUPPORT PLAINTIFF'S MOTION FOR GAG ORDER

12         PURUSANT TO LOCAL RULE 7.1, NOW COMES THE PRO SE plaintiff, a layman non-attorney who

13  is acting in the capacity of private attorney general in a public interest lawsuit, to respectfully PRAY THIS Court

14  rely on its inherent judicial power and issue an appropriate gag order against Defendant Jason Goodman.  This

15  request is sought pursuant to the Court's inherent powers, N.Y. Civil Practice Law and Rules (C.P.L.R.) § 6301 and

16  §6313, Civil Rights Law §§ 50-51, General Business Law §§ 349-350.

17              DECLARATION / ATTESTATION PURSUANT TO LOCAL RULE 7.1

18

19  I hereby attest that the information stated herein is true and correct to the best of my ability under penalties of

20  perjury.   Signed this 4 day of November, 2018

21

22                                              D. George Sweigert, pro se plaintiff

23

24  

25

26

27

28         MEMORANDUM OF POINTS AND AUTHORITIES TO SUPPORT PLAINTIFF'S
            AMENDED MOTION FOR GAG ORDER PURSUANT TO NY CPLR § 6301

# Contents

I.      PRELIMINARY STATEMENT ................................................................. 7

II.     STATEMENT OF APPLICABLE FACTS ................................................ 8

III.    A TEMPORARY RESTRAINING ORDER (OR PROTECTIVE ORDER)
        AGAINST DEFEDSANT GOODMAN, RESTRAINING HIM FROM MAKING
        EXTRA JUDICIAL STATEMENTS ABOUT THIS CASE, OR ABOUT THE
        PLAINTIFF, OR REFERRING TO PLAINTIFF, OR POSTING ANY
        INFORMATION, DOCUMENTS, OR STATEMENTS ABOUT THE
        PLAINTIFF ON ANY OF THE DEFENDANT'S SOCIAL MEDIA OUTLETS
        (TO INCLUDE ACTING AS AN INTERVIEWEE ON OTHER PODCASTS)... 12

IV.     PLAINTIFF MEETS THE REQUIREMENT FOR THE ISSUANCE OF A
        PRELIMINARY INJUNCTION UNDER SECTIONS 349 AND 350 OF THE
        GENERAL BUSINESS LAW ...................................................................... 15

V.      THE NEED FOR A NY CPLR § 6301 PRELIMINARY INJUNCTION............... 16

VI.     PLAINTIFF ALSO SEEKS INJUNCTIVE RELIEF FOR GOODMAN'S
        VIOLATIONS OF N.Y. CIVIL LAW §§ 50-51 ....................................... 17

VII.    SUMMARY / RELIEF REQUESTED................................................... 19

MEMORANDUM OF POINTS AND AUTHORITIES TO SUPPORT PLAINTIFF'S
AMENDED MOTION FOR GAG ORDER PURSUANT TO NY CPLR § 6301

**Cases**

*Branzberg v. Hayes,* 408 US 665, 691-692 ................................................................. 13

*Blumenthal v. Picture Classics, Inc.* 257 N.Y.S. 800 (1st Dept. 1932) ........................ 17

*Cox v. State of Louisiana,* 379 U.S. 559, 583 (1965)(Black, J., dissenting) ................. 11

*Craig v. Harney,* 331 U.S. 367, 394 (1947) .................................................................. 11

*Dennis v. United States,* 341 U.S. 494, 508 .................................................................. 13

*Doe v. Axelrod,* 73 N.Y.2d 748, 750 (1988) .................................................................. 14

*In re Application of Dow Jones & Company, Inc. et. al.* 842 F.2d 603, 607 (2nd Cir. 1988) ....... 13

*Jiggets v. Perales,* 202 A.D.2d 341, 342 (1st Dep't 1994) ............................................ 14

*Leviston v. Jackson,* 980 N.Y.S.2d 716, 719 (1st Dept. 2013) ...................................... 17

*Leviston,* 980 N.Y.S.2d at 719-720 .............................................................................. 17

*Loftus v. Greenwich Lithographing Co.,* 182 N.Y.S. 428 (1st Dept. 1920); Durgom v. CBS, 214

    N.Y.S.2d 752 (1st Dept. 1961) ............................................................................... 17

*Marcus v. Jewish Nat'l Fund,* 158 A.D.2d 101, 105-06 (1st Dept. 1990) ..................... 14

*Marcus,* 158 A.D.2d at 105-106 .................................................................................... 16

*New York State Broadcasters Assn. v. United States,* 414 F.2d 990, 997 (2nd Cir.1969) ............ 13

*Nobu Next Door LLC v. Fine Arts Hous., Inc.* 4 N.Y.3d 839, 840 (2005) ..................... 14

*Ohralik v. Ohio State Bar Ass'n,* 436 US 447, 456 (1978) ........................................... 12

*Ohralik,* 436 U.S. at 456 ............................................................................................... 12

*Ohralik,* 436 U.S. at 462 ............................................................................................... 13

*Onassis v. Christian Dior-New York.,* 472 N.Y.S.2d 254, 258 (NY.Sup.Ct. 1984) ....... 17

*Onassis,* 472 N.Y.S.2d at 258 ....................................................................................... 17

MEMORANDUM OF POINTS AND AUTHORITIES TO SUPPORT PLAINTIFF'S
AMENDED MOTION FOR GAG ORDER PURSUANT TO NY CPLR § 6301

*Onassis*, 472 N.Y.S.2d at 260. ..................................................................................... 17

*Onassis*, 472 N.Y.S.2d at 263 ...................................................................................... 18

*Patterson v. State of Colorado ex. Rel. Attorney General*, 205 U.S. 454, 462 (1907) ................ 11

*Pennekamp v. State of Florida*, 328 U.S. 331, 347 (1946) ............................................... 11

*People v. Apple Card Systems, Inc.* 27 A.D.3d 104, 107 (3d Dep't 2005), aff'd on other ground,

   11 N.Y. 3d 105 (2008) ............................................................................................. 15

*People v. Apple Health & Sports Clubs, Ltd.*, 206 A.D.2d 266, 267 (App. Dep't 1994) appeal

   denied 84 N.Y.2d 1004 (1994) ................................................................................. 15

*People v. Romero*, 91 N.Y.2d 750, 756 (1998)............................................................... 16

*Quinn* supra at 556 ...................................................................................................... 13

*Quinn v. Aetna Life and Cas. Co.,* 96 Misc.2d 545, 554 (Queens.Cty.Sup.Ct.1978)................... 12

*Ryan v. Volpone Stamp Co.,* 107 F.Supp.2d 369, 391 (S.D.N.Y. 2000)...................................... 17

*Sheppard v. Maxwell*, 384 US 333, 351 (1966) ............................................................... 11

*Sheppard*, 384 U.S. at 350-351 ..................................................................................... 11

*State v. Colo. St. Christian College of the Church of the Inner Power*, 346 N.Y.S.2d 482, 487

   (Sup. Ct. N.Y. Cty. 1973) ......................................................................................... 16

*State v. Van Duyne,* 43 NJ 369 (1964)............................................................................ 11

*Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000)...................................................... 14

*The People of the State of New York (by Eric T. Schneiderman) v. FanDual, Inc.,* New York

   County Clerk's Index No. 453056/15.......................................................................... 15

*Woody Allen v. National Video, Inc.* 610 F.Supp 612 (SDNY 1985)........................................... 18

4

**MEMORANDUM OF POINTS AND AUTHORITIES TO SUPPORT PLAINTIFF'S**
**AMENDED MOTION FOR GAG ORDER PURSUANT TO NY CPLR § 6301**

## Statutes

Civil Rights Law §§ 50-51 ............................................................................................... 1

General Business Law §§ 349-350 .................................................................................... 1

N.Y. Civil Rights Law §§ 50 – 51 .................................................................................... 17

N.Y. Civil Rights Law §§ 50-51 ................................................................................. 6, 17

N.Y. Executive Law § 63 ................................................................................................ 15

N.Y. GBL § 349(h) ................................................................................................... 14, 15

N.Y. GBL §§ 349 and 350 .............................................................................................. 16

N.Y. GBL §§ 349 or 350 ................................................................................................ 14

N.Y. GBL Section 349 .................................................................................................... 14

N.Y. General Business Law (GBL) §§ 349-350 ............................................................... 6

N.Y. General Business Law §§ 349 and 350 ................................................................... 14

N.Y. Penal Law § 215.25 ................................................................................................ 13

N.Y. Penal Law 135.60(5) .............................................................................................. 14

New York's Civil Rights Law §§ 50-51 .......................................................................... 17

## Other Authorities

(C.P.L.R.) § 6301 and §6313 ............................................................................................ 1

CPLR § 3113 .................................................................................................................... 8

CPLR § 6301 ................................................................................................................... 15

CPLR §§ 6301 and 6313 ................................................................................................. 15

**MEMORANDUM OF POINTS AND AUTHORITIES TO SUPPORT PLAINTIFF'S
AMENDED MOTION FOR GAG ORDER PURSUANT TO NY CPLR § 6301**

6

**MEMORANDUM OF POINTS AND AUTHORITIES TO SUPPORT PLAINTIFF'S
AMENDED MOTION FOR GAG ORDER PURSUANT TO NY CPLR § 6301**

## I.    PRELIMINARY STATEMENT

1.    As set forth in the attached affidavits and exhibits annexed thereto, there has been unquestionably been violations of N.Y. Civil Rights Law §§ 50-51 and N.Y. General Business Law (GBL) §§ 349-350 by Defendant Goodman against the Plaintiff which requires court intervention and a temporary restraining order.

2.    Defendant Goodman (self-identified as the "Chief executive Officer" [**CEO**] of Multi-Media Systems (aka Software) Design, Inc. [**MDSI**] and 21st Century 3D [**21stc3D**]) has continued with the widely disseminated and pervasive distribution of vindictive and hateful smear campaigns, threats and other tortious and defamatory actions taken against the Plaintiff using his commercial social media empire.  Mr. Goodman has enlarged his attacks on the Plaintiff with the creation of a new social media podcast entitled "**COUNTER LAWFARE**", released to the "**CROWDSOURCE THE TRUTH**" (**CSTT**) worldwide audience via YouTube, PATREON, Facebook, Twitter, Periscope, GAB.AI, Twitch, etc.  It appears obvious that **MDSI/21stc3D** CEO Goodman is attempting to humiliate, retaliate and damage the reputation of the Plaintiff with new allegations against the Plaintiff (such as "mail fraud" and "fraud upon the court") which are broadcasted to 30,000 to 45,000 viewers (cumulative) in a deceptive and fraudulent manner.

3.    Defendant (CEO) Goodman – through his companies (**MDSI, 21stc3D**) -- continues his on-going, open ended mockery of the Plaintiff, this lawsuit, the judiciary and the courts in general with the "**COUNTER LAWFARE**" podcast.  As the Court will learn, Goodman wallows on camera about this present lawsuit and sees it as a source of comedy for snarky remarks and an opportunity to create more slanderous trade libel and per se defamation against the Plaintiff (using terms such as "Clintonesque lawsuits", "fake lawsuits", "mail fraud", etc.).  CEO Goodman's on-going prima facia tortious conduct (defamation per se, trade libel, misappropriation of copyrighted material, etc.) through his companies only exacerbates the adjudication of this controversy before the Court.  Goodman's present misconduct has now been institutionalized on the weekly podcast "COUNTER LAWFARE" which dispenses advice for pro se litigants.  The very nature of the MDSI/21stc3D "COUNTER LAWFARE" podcasts smacks of the Unauthorized Practice of Law (UPL) as Goodman dispenses legal advice and

1  opinion.  As "COUNTER LAWFARE" smacks of a UPL institution, acting in his scope of a private attorney

2  general, the Plaintiff has reported the UPL podcast to the Supreme Court of the State of Arizona (the latest victim of

3  Goodman).  The obvious purpose of the "COUNTER LAWFARE" podcast is to incite mob rule action against

4  members of the state and federal judiciary, bar associations and the Plaintiff for the benefit of Defendant (CEO)

5  Goodman's sidekicks (like Michael J. Barden).

6

7  ## II.      STATEMENT OF APPLICABLE FACTS

8

9      1.      As depicted in **EXHIBIT ONE [Exh.1]**, of the attached verified exhibits list, Goodman describes

10  his expansive social media empire at **time mark 01:52**.

11  01:52  GOODMAN:   As well as all the platforms we're on, that's gonna be YouTube, Facebook, GAB.AI,
                     DLive, VK.com, Twitch – **trying to spread the word as far and wide as possible.**
12                   **[emphasis added]**

13                   (see YouTube video production at Internet URL
                     https://www.youtube.com/watch?v=hnqaTubTLlw&t=1s ) entitled "Tonight Only ON
14                   Patreon The Intelligence Assessment with Kevin Shipp – Targeted Individuals", posted
                     10/25/2018 viewed 1,422 times at the time of this writing.  **[Exh.1]**

15

16      2.      Goodman then continues in the video (**[Exh.1]**) to state that the Plaintiff is harassing one of his

17  sidekicks – alleged white nationalist Michael J. Bardon, of Avondale, AZ, -- who has recently pled guilty to the

18  charge of Disorderly Conduct with a Firearm (court record attached as **EXHIBIT TWO [Exh.2]**) and has appeared

19  on at least six (6) Goodman podcasts.  Goodman and his latest sidekick (Brian Vukadinovich of Valparaiso, Indiana)

20  have been providing with Mr. Barden quasi-legal advice via the "COUNTER LAWFARE" podcast.  As always, the

21  conversation is turned on the Plaintiff.

22

23

24  04:17  GOODMAN:   I invite people to visit Michael Barden's page at PATREON.COM/MichaelJBarden.
                     Michael has done a number of shows here at CrowdSource The Truth and he actually has
25                   come under fire by an individual who lives in Mountain Town [implied to be the
                     Plaintiff] and is the brother of another very popular YouTuber, together the two of them
26                   are over 13 feet tall.  That's a number that's unlucky for sum.  I don't know why this

27

28  **MEMORANDUM OF POINTS AND AUTHORITIES TO SUPPORT PLAINTIFF'S
AMENDED MOTION FOR GAG ORDER PURSUANT TO NY CPLR § 6301**

'actor' – he's actin all the time – **but, he's now targeting Michael**. Why would he do that?  He claims there is no such thing as targeted individuals **yet he himself is engaging in harassment. Opps, did you get that?** [points to camera, shown below]. **Did you get that Dave?  Transcribe it, put it in a lawsuit. [emphasis added] [Exh.1]**



3.    The "harassment" that Goodman is complaining about (with regards to Mr. Barden) is the transmission of a pre-witness evidence preservation notice sent to Mr. Barden's criminal defense attorney in Arizona, attached as **EXHIBIT THREE [Exh.3].**  The pre-witness evidence preservation e-mail message **[Exh.3]** was sent as a standard extra-judicial precaution to a potential witness (via his attorney) to this present litigation pursuant to New York Civil Practice Law and Rules **(CPLR) § 3113.**  CPLR § 3113 is specifically referenced in the preservation notice sent to Mr. Barden's attorney – which was NOT sent to Mr. Barden.  This pre-witness evidence preservation notice would seem like a prudent undertaken considering that Mr. Barden has participated in at least six (6) podcasts with **MDSI/21ˢᵗc3D CEO Goodman.**

4.    Mr. Barden has even produced his own YouTube video production describing this event (see Internet URL: https://www.youtube.com/watch?v=Ifan8-b2mFw&t=7s; entitled,  Targeted Individual Michael Barden weird day before court.", 10/15/2018, 1,687 views. [Attached as EXHIBIT FOUR **Exh.4**]).

04:19  BARDEN:    **I got a call from my attorney today.  Notifying me that this guy Dave Sweigert,** who I have never even seen his face before, never talked to the guy, never met him in my life, he is making YouTube videos about me I guess.  Trying to discredit me.  Which is interesting because we have never had any interaction in our life.  He must be doing some kind of intel about me, otherwise how would he know anything about me.  **Uh, but this guy sent my attorney some kind of letter saying that they want me to retain all my YouTube videos, all of my contact with Jason Goodman.  To be a witness in their , their case.  Their civil suit against Jason Goodman. [emphasis added] [Exh.4]**

MEMORANDUM OF POINTS AND AUTHORITIES TO SUPPORT PLAINTIFF'S
AMENDED MOTION FOR GAG ORDER PURSUANT TO NY CPLR § 6301

5.      For the record, Mr. Goodman's other guest in the 10/25/2018 triangulation interview (ex-CIA

disgruntled employee Kevin Shipp see **[Exh.1]**) also received a nearly identical pre-witness evidence preservation

notice; attached as EXHIBIT 5 **[Exh.5]**.

6.      Only two days before the 10/25/2018 triangulation interview to double-team the Plaintiff with

more prima facia tortious conduct (Barden/Shipp **[Exh.1]**), Mr. Goodman interviewed self-professed serial killer

Larry Nichols to again discuss this present lawsuit, which he described as "Clintonesque".

> 05:15  GOODMAN:   There are two lawsuits pending against me, one from Robert David Steele and one from **David Sweigert the brother of George Webb Sweigert**.  I wonder if these are not intended to put the type of **reputation destruction and financial destruction** on me that is the **classic hallmark of these Clintonesque tactics that you** [Larry Nichols] now say have permeated the entire Democratic party.  **[emphasis added] EXHIBIT SIX [Exh.6]**

7.      In a video production distributed to the Defendant's entire social media empire on 10/26/2018

(EXHIBIT SEVEN **[Exh.7]**) the Defendant accuses the Plaintiff of **mail fraud and fraud upon the court.**  This

information was presented to a reporter of the Kremlin-friendly podcast network known as "Sputnik" named Lee

Stranahan.  Presumably Mr. Stranahan is yet another sidekick of CEO Goodman (Defendant).

> 1.04:52  GOODMAN:   I have been busy with my own things.  Talking about lawsuits I have been answering lawsuits from Dave Sweigert – **we are going to be doing some more talking about that.**  I was just down at the .. uh.. 500 Pearl Street [laugh] at the Federal Court building submitting a document [Doc. No. 49, 10/26/2018**].  It appears Dave Sweigert may – not sure – but there's evidence that indicates that he may be .. uh .. submitting fraudulent documents.  Mail fraud.  [emphasis added][Exh.7]**
>
> (see YouTube video production at Internet URL https://www.youtube.com/watch?v=E3auCQb4o0A ) entitled " #MAGA Bomber Goes Postal with Special Guest Lee Stranahan", posted 10/26/2018 viewed 8,971 times at the time of this writing.  **[Exh.7]**

8.      In a video production widely disseminated in a pervasive manner on 10/29/2018 (**EXHIBIT**

**EIGHT [Exh.8]**), Mr. Goodman devotes nearly thirty (30) minutes to a discussion about the evidence preservation

spoliation notice sent to Mr. Barden's attorney in Arizona **[Exh.3]**.  Again, Mr. Goodman engages in his review of

this present lawsuit on his YouTube podcast (distributed on other social media platforms).  CEO Goodman also

displays the Plaintiff's photograph with the sub-caption "DAVE SWEIGERT, EXPERT WITNESS."

29:03  GOODMAN:       Now I have been extensively reviewing **Mr. Sweigert's [laugh] civil suit against me and I find it to be totally frivolous and without merit**; but of course, even if Michael [Barden] were a legitimate witness in that civil action – what –does Michael's opinion of his criminal attorney have to do with that?

29:43  VUKADIN:       [Brian Vukadinovich of Indiana speaking] As you can see here in the letter "as you are well aware Mr. Goodman has earnestly advised your client not to accept a plea bargain offered by the State of Arizona in Mr. Barden's criminal case.  See attached.  Further, Mr. Barden has told this worldwide audience that he does not trust you as an attorney." **[emphasis added]**

(see YouTube video production at Internet URL https://www.youtube.com/watch?v=GaqBL7PlK8E) entitled " The Counterlawfare Report with Brian Vukadinovich – Outside Interference in Barden Criminal Trial", posted 10/29/2018 viewed 2,575 times at the time of this writing. **EXHIBIT EIGHT [Exh.8]**

9.      Attached as **EXHIBIT NINE [Exh.9]** is a complaint filed by the Plaintiff (relying on private attorney general (**PAG**) powers) with the Arizona Supreme Court that address alleged **UPL** practices of Defendant Goodman on his "COUNTER LAWFARE" social media podcast, with respects to Michael J. Barden's criminal case in the State of Arizona.  This evidence attached within the UPL complaint demonstrates Goodman's obsession with the Plaintiff and his vindictive obsession with attacking the Plaintiff in a continuous, open-ended smear campaign.

10.      The implied defamation, trade libel, per se libel, and prima facia tortious conduct described above appear to be obvious.  Goodman apparently is (1) attempting to litigate this present controversy via his vast social media empire, and (2) stand in the shoes of a quasi-attorney and dispense legal advice to third parties in a cavalier manner with little respect or due regard for the courts of the United States and its judicial protocols.

11.      Further, Goodman and his sidekicks are now dispensing harmful legal advice to members of the general public.  CEO Goodman presumes to be standing in the shoes as a member of the bar and operates a commercial profit-driven enterprise that receives pecuniary benefits for dispensing legal advice and opinions with non-licensed non-attorneys.

**MEMORANDUM OF POINTS AND AUTHORITIES TO SUPPORT PLAINTIFF'S AMENDED MOTION FOR GAG ORDER PURSUANT TO NY CPLR § 6301**

**III.     A TEMPORARY RESTRAINING ORDER (OR PROTECTIVE ORDER) AGAINST DEFEDSANT GOODMAN, RESTRAINING HIM FROM MAKING EXTRA JUDICIAL STATEMENTS ABOUT THIS CASE, OR ABOUT THE PLAINTIFF, OR REFERRING TO PLAINTIFF, OR POSTING ANY INFORMATION, DOCUMENTS, OR STATEMENTS ABOUT THE PLAINTIFF ON ANY OF THE DEFENDANT'S SOCIAL MEDIA OUTLETS (TO INCLUDE ACTING AS AN INTERVIEWEE ON OTHER PODCASTS).**

12.     It has long been settled that the federal courts retain their inherited judicial power to compel the behavior of parties to litigation and to compel orders to cease the type of misconduct described above.  The federal Courts can exercise their inherent power in an independent manner to support judicial efficiency and the expeditious flow of litigation.  As more fully explained below, the time is ripe for this Court to curtail Defendant Goodman's out-of-control retaliation and vindictive attacks on the Plaintiff and his general pollution of social media with his legal advice and opinions about criminal cases.

### *THIS IS NOT PRIOR RESTRAINT*

13.     The undeviating rule of this Court was expressed by Mr. Justice Holmes over a half century ago in *Patterson v. State of Colorado ex. Rel. Attorney General*, 205 U.S. 454, 462 (1907):

> 'The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print.' See *Sheppard v. Maxwell*, 384 US 333, 351 (1966)

14.     Freedom of discussion should be given the widest range compatible with the essential requirement of the fair and orderly administration of justice. See *Pennekamp v. State of Florida*, 328 U.S. 331, 347 (1946); *Sheppard*, 384 U.S. at 350-351.  But it must not be allowed to divert the trial from the 'very purpose of a court system * * * to adjudicate controversies, both criminal and civil, in the calmness and solemnity of the courtroom and legal procedures.' *Id* citing *Cox v. State of Louisiana,* 379 U.S. 559, 583 (1965)(Black, J., dissenting).

> 'The right of the people to have a free press is a vital one, but so is the right to have a calm and fair trial free from outside pressures and influences.  Every other right, including the right of a free press itself, may depend on the ability to get judicial hearing as a dispassionate and impartial as the weakness inherent in men will permit'.  *State v. Van Duyne,* 43 NJ 369 (1964) citing *Craig v. Harney,* 331 U.S. 367, 394 (1947) .

*15.*     In the instant case, the Plaintiff is not seeking a protective order (or "gag order") to restrain the press, or any news media coverage of this case.  Further, the Plaintiff is not requesting that any pleadings or motions, or any other document filed with the Court be sealed.  Instead, the Plaintiff is seeking a gag order to restrain Defendant CEO Goodman (by and through the use of MDSI/21$^{st}$c3D) from making and encouraging any extra-judicial statements about this case, or about the Plaintiff, or discussing this case, referring to the Plaintiff on MDSI/21$^{st}$c3D podcasts or any other type of social media outlet and restraining Goodman from posting and encouraging the publication of any information about the Plaintiff in social media outlets.

*16.*     Defendant (CEO) Goodman is targeting the Plaintiff, harassing him, constantly making defamatory statements against the Plaintiff on a myriad of CSTT social media outlets and platforms.  Goodman's misconduct of the previous months indicates he is clearly a vindictive person dead set on retaliating against the Plaintiff, for a legal action that Goodman himself encouraged via the 3/30/2018 e-mail message contained in **EXHIBIT TEN [Exh.10].**

*17.*     The Court will recall that Goodman has asserted that CSTT is a commercial enterprise and collects funds via the wires of the Internet via a New York charted corporation and a presumed licensed DBA moniker (see Multimedia System (Software) Design, Inc, (**MDSI**) and/or 21st Century 3D (**21c3D**)).  Therefore, at best Defendant Goodman's **MDSI/21$^{st}$c3D** broadcasts are a form of "trade/commercial speech" and are entitled less protection than the speech of a natural person, per se.

> "From this line of reasoning, it is clear that while commercial speech is "protected" under the First Amendment from prior restraint, the protection afforded is less than that provided for noncommercial speech, so that when commercial expression is false or misleading it is afforded no protection whatsoever".  See *Quinn v. Aetna Life and Cas. Co.,* 96 Misc.2d 545, 554 (Queens.Cty.Sup.Ct.1978); *Ohralik v. Ohio State Bar Ass'n,* 436 US 447, 456 (1978).

*18.*     Numerous examples could be cited of communications that are regulated without offending the First Amendment, such as employers' threats of retaliation for the labor activities of employees.  *Ohralik,* 436 U.S. at 456.  Further, a protective order in this case restraining the Defendant's speech, is not a prior restraint of the media or press coverage.  Instead, it is simply a protective order restraining a future trial participant from making

13

any extra-judicial statements about this case, or speaking about the Plaintiff, whatsoever.  See *In re Application of Dow Jones & Company, Inc. et. al.* 842 F.2d 603, 607 (2nd Cir. 1988) ("Gag" order restraining trial participants from speaking to the press in criminal case from alleged corruption of public officials).

19.    The court again enunciated the principle that the State may intervene to protect the public from harmful commercial speech in *Ohralik,* 436 U.S. at 462, by stating that:

> "the State has a legitimate and indeed 'compelling' interest in preventing those aspects of solicitation that involve fraud, undue influence, intimidation, overreaching, and other forms of 'vexatious conduct'".

20.    As the *Quinn* court found that aspects of commercial speech can violate the State's public policy as expressed in N.Y. Penal Law § 215.25 relative to jury tampering.

> "For that reason alone, the speech might properly be restrained as it has been held that the press is not immune from statutes of general applicability." *Quinn* supra at 556 citing *Dennis v. United States*, 341 U.S. 494, 508, supra ; *Branzberg v. Hayes,* 408 US 665, 691-692 .

21.    More to the point is the reasoning stated in *New York State Broadcasters Assn. v. United States,* 414 F.2d 990, 997 (2nd Cir.1969) .

> "The real point here is that we are not primarily in the realm of ideas at all but are chiefly concerned with speech closely allied with the putting into effect of prohibited conduct".

22.    Here the Court clearly has the authority to make such an order restraining Goodman from making any extra-judicial statements about the Plaintiff.  The Court also has a duty to take precautionary safeguards, to prohibit such conduct from further infecting this litigation, but also to protect the sanctity, of this court, and litigates that have the honor of bringing a claim before this Court, without fear that by doing so, they may face threats, retaliation, and on-line harassment campaigns, waged by an opposing party and his fans, without any fear of facing consequences for his profit-driven behavior.

23.    Goodman's vindictiveness and misconduct (through his commercial companies), against another party to litigation, has no room in this Court, and is reprehensible under our civil legal system and cannot be tolerated by this Court, and should be sanctioned and restrained accordingly.  Further, Goodman's threats that he will expose the Plaintiff to further "crowdsource investigations" and encouraging his fans to do the same, is not only

14

vindictive and retaliatory, but is tantamount to extortion or coercion in the 2nd Degree under N.Y. Penal Law 135.60(5) ("Expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule.").

## IV.    PLAINTIFF MEETS THE REQUIREMENT FOR THE ISSUANCE OF A PRELIMINARY INJUNCTION UNDER SECTIONS 349 AND 350 OF THE GENERAL BUSINESS LAW

24.    The decision to grant a motion for a preliminary injunction is committed to the discretion of the court. *Doe v. Axelrod*, 73 N.Y.2d 748, 750 (1988); *Jiggets v. Perales*, 202 A.D.2d 341, 342 (1st Dep't 1994) . Preliminary relief is only appropriate where (1) the moving party is likely to succeed ultimately on the merits of its claim; (2) there exists the prospect of irreparable injury if the provisional relief is withheld; and (3) the balance of equities tips in the moving party's favor. *Nobu Next Door LLC v. Fine Arts Hous., Inc.* 4 N.Y.3d 839, 840 (2005).

25.    Because the Plaintiff is seeking a preliminary injunction pursuant to N.Y. General Business Law §§ 349 and 350 (GBL), the irreparable harm analysis in this case differs from a traditional preliminary injunction analysis. Sections 349 and 350 on their face entitle private plaintiffs to seek injunctive relief so long as they have suffered an injury as a result of the defendant's deceptive acts or false advertising. See N.Y. GBL § 349(h).

26.    Accordingly, courts have treated future irreparable harm to the public as sufficient to obtain a preliminary injunction order under N.Y. GBL §§ 349 or 350. See *Marcus v. Jewish Nat'l Fund,* 158 A.D.2d 101, 105-06 (1st Dept. 1990). Regardless of whether the Plaintiff can in fact be required to prove irreparable harm in this case, the Plaintiff can make such a showing. As demonstrated herein, consumers and the public will suffer irreparable injuries unless Defendant's deceptive acts, UPL opinions and false advertising are enjoined. To prove that a practice was deceptive within the meaning of N.Y. GBL Section 349, harmed consumers must show that (1) the act or practice was "consumer-focused," (2) the act or practice was misleading in a material way, and (3) they suffered an injury as a result of the deceptive act. *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000). Plaintiff's claims easily satisfy all three elements.

15

*ISSUES RELATED TO ON-GOING MISREPRESTANTION BY MDSI/21ˢᵗc3D PODCASTS*

27.     As the Court is aware, N.Y. Executive Law § 63 authorizes the N.Y. Attorney General to investigate such issues as fraud directed at consumers in violation of N.Y. GBL § 349(h).  Pursuant to N.Y. Executive Law § 63(12) the term "fraud" includes "any device, scheme or artifice to defraud and any deceptions, misrepresentations, concealment, suppression, false pretense, false promise or unconscionable contractual provision."  Under the provisions of N.Y. Executive Law §63(12) it is not necessary to establish the elements of common law fraud, such as reliance and intent to deceive, in order to establish liability for statutory fraud.  *People v. Apple Health & Sports Clubs, Ltd.*, 206 A.D.2d 266, 267 (App. Dep't 1994) appeal denied 84 N.Y.2d 1004 (1994). The test of fraudulent conduct under Executive Law § 63(12) is whether the act "has the capacity or tendency to deceive, or creates an atmosphere conducive to fraud".  *People v. Apple Card Systems, Inc.* 27 A.D.3d 104, 107 (3d Dep't 2005), aff'd on other ground, 11 N.Y. 3d 105 (2008).

## V.     THE NEED FOR A NY CPLR § 6301 PRELIMINARY INJUNCTION

28.     N.Y. CPLR § 6301 augments the power of the federal judiciary to rely on its inherent power to issue injunctive relief.  Orders issued pursuant to N.Y. CPLR §§ 6301 and 6313 are commonly used to protect consumers that are harmed by the deceptive practices that violate N.Y. GBL § 349(h).  See *The People of the State of New York (by Eric T. Schneiderman) v. FanDual, Inc.*, New York County Clerk's Index No. 453056/15.

29.     A preliminary injunction is available when plaintiffs can show that a defendant "threatens or is about to do, or is procuring or suffering to be done, an act in violation of the plaintiff's rights respecting the subject of the action." CPLR § 6301.  Presently irreparable harm to the Plaintiff's professional reputation continues. Notice that CEO Goodman includes the screen shot "David Sweigert, Expert Witness" [**Exh.8**] as a direct assault on the Plaintiff's background as a cyber security expert witness.  This is yet another instantiation of the trade libel that CEO Goodman inflicts upon the Plaintiff.  Allowing Defendant Goodman to continue this course of action

1   (through his companies MDSI/21st c3D) of unlawful conduct (e.g. UPL, trade libel, wire fraud, etc.) will not only

2   irreparably harm the Plaintiff, but injure citizens both inside and outside of the State of New York.  See *People v.*

3   *Romero*, 91 N.Y.2d 750, 756 (1998) ("the Legislature by statute has authorized equity to act and enjoin criminal

4   behavior without the necessity of showing, in the individual case, that the public health or welfare was in danger").

5         30.    Because Plaintiff is functioning as a private attorney general (**PAG**), he is broadly empowered to

6   protect the general public against deceptive acts and practices, and false advertising.  See *Marcus*, 158 A.D.2d at

7   105-106, *State v. Colo. St. Christian College of the Church of the Inner Power*, 346 N.Y.S.2d 482, 487 (Sup. Ct.

8   N.Y. Cty. 1973).  These decisions stand against defendants – like CEO Goodman and his UPL sidekicks  – who

9   would be permitted to continue their deceptive practices and false advertising, in violation of N.Y. GBL §§ 349 and

10   350, the public would suffer irreparable harm.

11         31.    Over the course of this litigation Defendant Goodman (using his companies MDSI/21st c3D) has

12   demonstrated over and over that he will not stop attacking the Plaintiff.  Goodman has only increased the frequency

13   and severity of these intimidation, defamation, UPL opinions, trade libel and per se libel attacks on the Plaintiff

14   through the use of deceptive business practices that are unlawful on their face (see Arizona UPL rules).

15         32.    Balancing the equities "simply requires the court to look to the relative prejudice to each party

16   accruing from a rant or denial of the requested relief."  Ma v. Lien, 198 A.D.2d 186, 187 (1st Dep't 1993).  Here,

17   the prejudice that the Plaintiff – and the public at large – will suffer absent a preliminary injunction is all too clear.

18   Defendant Goodman's entire operation is illegal, and in violation of numerous civil and criminal statutes, including

19   N.Y. GBL §§ 349-350, N.Y. Civil Rights Law §§ 50-51, the penal laws described above, the U.S. Federal trade

20   Commission Act, and the common law (to name a few).  There is simply no reason to allow Defendant (CEO)

21   Goodman to continue exploiting the Plaintiff, nor is there any reason to allow Goodman (through his companies) to

22   act in open defiance of the foregoing cited laws.  Allowing Goodman's business to continue in any capacity creates

23   imminent risk of harm to the Plaintiff and consumers in general (see UPL antics).

24

25   **VI.**    **PLAINTIFF ALSO SEEKS INJUNCTIVE RELIEF FOR GOODMAN'S VIOLATIONS OF**

26            **N.Y. CIVIL LAW §§ 50-51**

27

28   **MEMORANDUM OF POINTS AND AUTHORITIES TO SUPPORT PLAINTIFF'S**
     **AMENDED MOTION FOR GAG ORDER PURSUANT TO NY CPLR § 6301**

33.     Section 50 of the New York Civil Rights Law provides:

> "A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such a person .... Is guilty of a misdemeanor."

34.     Having defined the offense, and declaring it to be illegal, § 51 of the Civil Rights law goes on to provide civil remedies for the violation as well, including injunction and damages.  Once the violation is established, the plaintiff may have an absolute right to an injunction, regardless of the relative damage to the parties.  *Onassis v. Christian Dior-New York., 472 N.Y.S.2d 254, 258 (NY.Sup.Ct. 1984). See Blumenthal v. Picture Classics, Inc.* 257 N.Y.S. 800 (1st Dept. 1932), *Loftus v. Greenwich Lithographing Co., 182 N.Y.S. 428 (1st Dept. 1920); Durgom v. CBS, 214 N.Y.S.2d 752 (1st Dept. 1961).  In *Onassis*, the Court posed a simple question "Is there a violation?" *Onassis,* 472 N.Y.S.2d at 258.

35.     In order to establish a violation under N.Y. Civil Rights Law §§ 50 – 51, a plaintiff must demonstrate that the defendant used the plaintiff's name, portrait, picture or voice in the State of new York for purposes of advertising or trade, without the plaintiff's expressed written permission.  See *Leviston v. Jackson,* 980 N.Y.S.2d 716, 719 (1st Dept. 2013). "Civil rights Law § 51 authorizes a civil action for injunctive relief and damages, including exemplary damages if a defendant acts knowingly in violation of that protection." *Leviston*, 980 N.Y.S.2d at 719-720; *Ryan v. Volpone Stamp Co., 107 F.Supp.2d 369, 391 (S.D.N.Y. 2000).*

> "The principle to be distilled from a study of statute and of cases construing it is that all persons, of whatever station in life, from the relatively unknown to the world famous, are to be secured against rapacious commercial exploitation ... [I]t is intended to protect the essence of the person, his or her identity or persona from being unwillingly or unknowingly misappropriated for the profit of another." *Onassis,* 472 N.Y.S.2d at 260.

36.     Accordingly, Plaintiff seeks redress under N.Y. Civil Rights Law §§ 50-51 for Defendant (CEO) Goodman's "rapacious commercial exploitation" of his name, image, photograph, and likeness.

37.     The content created by Defendant (CEO) Goodman and his sidekicks is meant solely to harass, injure and intimidate the Plaintiff.  Such reprehensible conduct, and potentially criminal actions alleged herein, are in no way newsworthy, or entitled to protection under New York's Civil Rights Law §§ 50-51.  Instead, Defendant

18

Goodman (and his trade/commercial enterprises [MDSI/21$^{st}$c3D]) conduct is exactly the type of conduct forbidden by §§ 50-51. In the case of a former first lady (Mrs. John F. Kennedy) the court was clear "**as a public figure she has not forfeited her right of privacy and does not become a subject for commercial exploitation.**" *Onassis*, 472 N.Y.S.2d at 263. See *Woody Allen v. National Video, Inc.* 610 F.Supp 612 (SDNY 1985).

VII.     **SUMMARY / RELIEF REQUESTED**

38.     As has been demonstrated above, Defendant (CEO) Godman's entire organization is a sham. Accordingly, the prejudice that he will suffer as a result of an injunction is minimal. Because CEO Goodman's entire operation is per se illegal, the only harm that will directly accrue to Defendant (CEO) Goodman as a result of an injunction is that he will be restrained from doing what is already forbidden: operating an illegal company whose entire business model relies on defaming, harassing, misappropriating, UPL opinion making, threatening, and using, Plaintiff's name, image, likeness, photographs, private information, interfering with business associates, and worst, for Goodman's own perverse financial gain.

39.     Plaintiff knows all too well the personal and financial pain wrought by Defendant (CEO) Goodman, and his co-conspirator sidekicks, and the Plaintiff now seeks an injunction in the hopes of preventing any future injuries, to himself, or others, and so that the Plaintiff can fairly litigate this case, and continue his business, and his life without fear of reprisals or retaliation from the likes of Defendant (CEO) Goodman.

40.     A gag order against Goodman to prohibit any further discussions of this honorable Court, the present lawsuit and/or the Plaintiff is not only warranted, but imperative to remedy the damage caused by the Defendant's rolling intrinsic misconduct concerning the Court's processes, and Goodman's continuous extrinsic tortious conduct of implied libel, trade label and defamation per se against the plaintiff and open mockery of the Court.

41.     The Plaintiff claims there is a need to preserve the fairness of the adjudicatory process and that the federal courts may rely on their inherent power in correcting the totality of abusive behavior that is presented to them (Goodman's intrinsic and extrinsic misconduct). Here, Goodman's continued social media misconduct has a

19

**MEMORANDUM OF POINTS AND AUTHORITIES TO SUPPORT PLAINTIFF'S
AMENDED MOTION FOR GAG ORDER PURSUANT TO NY CPLR § 6301**

direct, indirect, explicit and implicit impact on these proceedings. By its own inherent powers of discretion this Court may apply a **gag order** upon Goodman; a party to this present lawsuit.

42.     The bulk of evidence that has been presented to this Court thus far by the Plaintiff, indicates that Defendant Goodman is creating a social media circus and attempting to make the Plaintiff appear as a Dr. Sam Sheppard (The Fugitive) type of character for Goodman's personal profit driven motivations. The carnival atmosphere of "CrowdSource The Truth" (complete with self-professed serial killers (Nichols), disorderly citizens armed with weapons (Barden), and ex-CIA disgruntled employees (Shipp)) makes the judicial processes of this Court vulnerable to continued open mockery by injecting prejudicial publicity into these proceedings. Enough is enough.

43.     In normal circumstances a court would be loath to command prior restraint on expression by the news media. However, Goodman is a party to this litigation, a direct participant. The Defendant is not a local newspaper interested in a trial at the county courthouse. Here, Goodman's tortious "expression" is the core of this litigation.

### DECLARATION / ATTESTATION PURSUANT TO LOCAL RULE 7.1

I hereby attest that the foregoing is accurate and true under the penalties of perjury. Further, I hereby attest that the attached exhibits are accurate and true copies of source documents located on the Internet.

Signed this ___ day of November, 2018

Plaintiff, D. George Sweigert
Pro se plaintiff acting as private attorney general

20

21

**MEMORANDUM OF POINTS AND AUTHORITIES TO SUPPORT PLAINTIFF'S
AMENDED MOTION FOR GAG ORDER PURSUANT TO NY CPLR § 6301**

# EXHIBITS

**DECLARATION / ATTESTATION PURSUANT TO LOCAL RULE 7.1**

I hereby attest that the attached exhibits are accurate and true copies of source documents located on the Internet. There has been no alteration of the source content.

Signed this _____ day of October, 2018

_____
Plaintiff, D. George Sweigert
Pro se plaintiff acting as private attorney general

**MEMORANDUM OF POINTS AND AUTHORITIES TO SUPPORT PLAINTIFF'S
AMENDED MOTION FOR GAG ORDER PURSUANT TO NY CPLR § 6301**

# EXHIBITS

**DECLARATION / ATTESTATION PURSUANT TO LOCAL RULE 7.1**

I hereby attest that the information stated herein is true and correct to the best of my ability under penalties of perjury.   Contained herein are unaltered screen captures of Internet images.

Signed this ___ day of November, 2018

D. George Sweigert, pro se plaintiff

# EXHIBITS

# EXHIBIT ONE

**Internet URL:  https://www.youtube.com/watch?v=hnqaTubTLlw&t=1s**





**Tonight Only ON Patreon The Intelligence Assessment with Kevin
Shipp – Targeted Individuals**

Jason Goodman

Subscribe   68K

1,422 views

Ella Free and Michael Barden join Kevin and me to discuss the growing problems facing
targeted individuals.

Become a Sponsor of Crowdsource the Truth and enjoy exclusive content Only ON Patreon

http://www.patreon.com/crowdsourcethe...
https://www.patreon.com/kevin_shipp

# EXHIBIT TWO

## Party Information

| Party Name - Number | Relationship | Sex | Attorney | Judge | Case # |
|---|---|---|---|---|---|
| State Of Arizona - (1) | Plaintiff | N/A | Vaitkus, Michelle | | |
| Michael Barden - (2) | Defendant | M | Victor, Marc | Master Calendar | CR2018-100874-001 |

## Disposition Information

| Party Name | ARSCode | Description | Crime Date | Disposition Code | Disposition | Date |
|---|---|---|---|---|---|---|
| Michael Barden | 13-1204A2 (F3) | AGG ASLT-DEADLY WPN/DANG INST | 1/4/2018 | | | |
| Michael Barden | 13-2904A6 (F6) | DISORD CONDUCT-WEAPON/INSTR | 1/4/2018 | Pled Guilty As Charged | Pled Guilty As Charged | 10/16/2018 |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 10/22/2018 | 105 - ME: Plea Agreement/Change Of Plea - Party (001) | 10/22/2018 | |
| 10/16/2018 | PAG - Plea Agreement - Party (001) | 10/17/2018 | |
| 10/5/2018 | 331 - ME: Settlement Conference - Party (001) | 10/5/2018 | |
| 9/12/2018 | 070 - ME: Settlement Conference Set - Party (001) | 9/12/2018 | |
| 9/6/2018 | PRA - Praecipe - Party (001) | 9/10/2018 | |
| 8/23/2018 | 598 - ME: Continuance Past last Day - Party (001) | 8/23/2018 | |
| 7/24/2018 | 027 - ME: Pretrial Conference - Party (001) | 7/24/2018 | |
| 7/18/2018 | STA - Statement - Party (001) | 7/23/2018 | |
| NOTE: COMPREHENSIVE PRETRIAL CONFERENCE | | | |
| 5/21/2018 | 598 - ME: Continuance Past last Day - Party (001) | 5/21/2018 | |
| 5/3/2018 | MCO - Motion To Continue - Party (001) | 5/14/2018 | |
| NOTE: TRIAL | | | |
| 4/26/2018 | ALG - Allegation - Party (001) | 4/26/2018 | |
| NOTE: STATE'S ALLEGATION OF AGGRAVATING CIRCUMSTANCES | | | |

# EXHIBIT THREE

---------- Original Message ----------

From: Spoliation Notice <spoliation-notice@mailbox.org>

To: Marc@AttorneysForFreedom.com, Howard@AttorneysForFreedom.com

Cc: Spoliation Notice <spoliation-notice@mailbox.org>

Date: October 14, 2018 at 12:33 AM

Subject: Spoliation and evidence preservation notice -- Michael J. Barden, Avondale, AZ, DOB: March 2, 1975

REF:  (a)  https://www.youtube.com/watch?v=Zf-oA4v03z8

   (b)  Patreon account:  https://www.patreon.com/MichaelJBarden

   (C)  https://www.didntdoitbailbonds.com/maricopa-county-inmate-search/michael-barden-t425290/


Marc@AttorneysForFreedom.com

480-725-3929


Dear Sir,

We understand that you represent Michael J. Barden as legal counsel.  Please advise your client that he shall be called as a witness in the litigation pending against Jason Goodman (see attached) per N.Y. CPLR 3113.

Mr. Goodman has distributed to his worldwide audience a dozen videos of your client with day by day updates on his criminal case.  Estimated views are between 30,000 and 35,000 YouTube, Facebook, Twitter and other social media impressions.

As you are well aware, Mr. Goodman has earnestly advised your client NOT to accept the plea bargain offered by the State of Arizona in Mr. Barden's criminal case (see attached).  Further, Mr. Barden has told this worldwide audience that he does not trust you as an attorney.

Mr. Barden will be called as a witness and should be advised to safely protect, safeguard and archive all electronic media evidence in his possession.  To include e-mail messages exchanged with Goodman, Twitter tweets, Facebook updates, phone records, etc.  In short, all evidence of Internet activity for the previous two (2) years, October 1, 2016 to the present.  This include any eBay transactions, all systems and computer activity, AOL.COM messages, etc.

Warm regards,


Evidence Collection Team

Marc@AttorneysForFreedom.com
480-725-3929

# EXHIBIT FOUR

**Internet URL:  https://www.youtube.com/watch?v=Ifan8-b2mFw&t=7s**



**Targeted Individual Michael Barden weird day before court.**



1,687 views

Published on Oct 15, 2018

# EXHIBIT FIVE

---------- Original Message ----------

From: Spoliation Notice <spoliation-notice@mailbox.org>

To: Spoliation Notice <spoliation-notice@mailbox.org>, johnhclarke@earthlink.net

Date: October 18, 2018 at 5:58 AM

Subject: REF: Update on Kevin Shipp exhibits

Law Office of John H Clarke

1629 K Street, NW Suite 300

Washington, DC 20006

Phone/Fax (202) 332-3030

Cell (202) 344-0776

Dear Sir,

We understand that you represent Kevin Shipp as legal counsel. Please advise your client that he shall be called as a witness in the litigation pending against Jason Goodman (see attached) per N.Y. CPLR 3113.

Mr. Goodman has distributed to his worldwide audience a dozen videos of your client. Estimated views are between 40,000 and 55,000 YouTube, Facebook, Twitter and other social media impressions.

Mr. Shipp will be called as a witness and should be advised to safely protect, safeguard and archive all electronic media evidence in his possession. To include e-mail messages exchanged with Goodman, Twitter tweets, Facebook updates, phone records, cell phone texts, etc. In short, all evidence of Internet or cell phone activity for the previous two (2) years, October 1, 2016 to the present.

Warm regards,

Evidence Collection Team

# EXHIBIT SIX

YouTube video production on the "Jason Goodman" channel

https://www.youtube.com/watch?v=DCzjIueasRE

10/23/2018



**David Brock, Peter W Smith and Arkansas – Larry Nichols Remembers "Troopergate"**

Jason Goodman

Subscribe 68K

4,857 views

## VIDEO TRANSCRIPT

05:15  GOODMAN:  There are two lawsuits pending against me, one from Robert David Steele and one from David Sweigert the brother of George Webb Sweigert.  I wonder if these are not intended to put the type of reputation destruction and financial destruction on me that is the classic hallmark of these Clintonesque tactics that you [Larry Nichols] now say have permeated the entire Democratic party.

[10/23/2018]

As Robert Mueller's Special Counsel's Office nears the end of its rope, he and his cohorts grasp desperately for anything that can remotely resemble evidence of wrongdoing. The May 2017 death of Peter Smith has come back into the news cycle as the "Russia Collusion" narrative gets sloppily pinned on a dead man. Peter's history investigating criminal activity by Bill and Hillary Clinton is worthy of additional review. Larry joins me to share his first hand experience and recollections of Troppergate, a Clinton scandal Peter W Smith was directly linked to.

Visit Larry's website – http://nicholslive.com/

# EXHIBIT SEVEN

YouTube video production on the "Jason Goodman" channel

https://www.youtube.com/watch?v=E3auCQb4o0A

10/26/2018



#MAGA Bomber Goes Postal with Special Guest Lee Stranahan

Jason Goodman

Subscribe 89K

8,971 views

👍 514   👎 44

1.04:52  GOODMAN:     I have been busy with my own things.  Talking about lawsuits I
have been answering lawsuits from Dave Sweigert – **we are going to be
doing some more talking about that**.  I was just down at the .. uh.. 500
Pearl Street [laugh] at the Federal Court building submitting a document
[Doc. No. 49, 10/26/2018].  **It appears Dave Sweigert may – not sure –
but there's evidence that indicates that he may be .. uh .. submitting
fraudulent documents.  Mail fraud.  [emphasis added][Exh.7]**

# EXHIBIT EIGHT

YouTube video production on the "Jason Goodman" channel

https://www.youtube.com/watch?v=GaqBL7PlK8E

10/29/2018



**The Counterlawfare Report with Brian Vukadinovich – Outside
Interference in Barden Criminal Trial**

 Jason Goodman
▶ Subscribe  69K

2,581 views

29:03  GOODMAN:   Now I have been extensively reviewing **Mr. Sweigert's [laugh] civil suit against me and I find it to be totally frivolous and without merit;** but of course, even if Michael [Barden] were a legitimate witness in that civil action – what –does Michael's opinion of his criminal attorney have to do with that?

29:43  VUKADIN:   [Brian Vukadinovich of Indiana speaking] As you can see here in the letter "as you are well aware Mr. Goodman has earnestly advised your client not to accept a plea bargain offered by the State of Arizona in Mr. Barden's criminal case.  See attached.  Further, Mr. Barden has told this worldwide audience that he does not trust you as an attorney."  **[emphasis added]**

# EXHIBIT NINE

## Complaint of the Unauthorized Practice of Law submitted to the Arizona Supreme Count

IN THE

## Supreme Court of the State of Arizona

---

### D. George Sweigert

### Petitioner

### v.

### Jason D. Goodman

### Respondent

### In the matter of the

### Unauthorized Practice of Law

# BACKGROUND

This matter is brought before the Supreme Court of the State of Arizona to provide relevant notification of the alleged unauthorized practice of law (UPL) by a social media broadcaster known as "JASON GOODMAN". The specific activities complained of below have been widely disseminated to the public via video broadcasts to a worldwide social media estimated audience of 40,000 social media impressions.

# FACTS

Jason Goodman broadcasts a social media show known as "LAWFARE" on the YouTube and PATREON social media platforms. During the last month, the focus of the show has been a criminal case presently under adjudication in Maricopa County, AZ: State of Arizona vs. Michael J. Barden (see below).

**Party Information**

| Party Name - Number | Relationship | Sex | Attorney | Judge | Case # |
|---|---|---|---|---|---|
| State Of Arizona - (1) | Plaintiff | N/A | Vaitkus, Michelle | | |
| Michael Barden - (2) | Defendant | M | Victor, Marc | Master Calendar | CR2018-100874-001 |

**Disposition Information**

| Party Name | ARSCode | Description | Crime Date | Disposition Code | Disposition | Date |
|---|---|---|---|---|---|---|
| Michael Barden | 13-1204A2 (F3) | AGG ASLT-DEADLY WPN/DANG INST | 1/4/2018 | | | |
| Michael Barden | 13-2904A6 (F6) | DISORD CONDUCT-WEAPON/INSTR | 1/4/2018 | Pled Guilty As Charged | Pled Guilty As Charged | 10/16/2018 |

The social media broadcasts (available on YouTube and PATREON) can be summarized as follows:



The Counterlawfare Report with Brian Vukadinovich – Outside Interference in Barden   ...
Jason Goodman
Streamed 1 day ago • 2,414 views
Brian analyzes reckless interference by a third party in an already questionable criminal proceeding. Purchase Brian's Book ...
NEW



The Counterlawfare Report with Brian Vukadinovich – Premiere Episode
Jason Goodman
Streamed 1 week ago • 3,427 views
Pro Se advocate Brian Vukadinovich joins me for a new weekly series in which we explore corruption and abuse within the U.S. ...



Motion for Justice – Preserving Due Process with Pro Se Plaintiff Brian Vukadinovich
Jason Goodman
Streamed 3 weeks ago • 3,660 views
Brian Vukadinovich stood up for his rights and won. As a Pro Se Plaintiff, Brian represented himself in a Federal civil lawsuit ...



Michael Barden – Targeted Individual Plea Deals, Salvation or Road to Hell? with Brian Vukadinovic...
Jason Goodman
Streamed 2 weeks ago • 3,739 views
As the deadline draws near, Michael is faced with the decision of accepting a deal to plead guilty to a crime he hasn't committed ...

Pictured below are (left to right) Brian Vukadinovich, Michaeal J. Barden, Jason Goodman (lower right box).





( Internet IRL: https://www.youtube.com/watch?v=Zf-oA4v03z8&t=745s )

There appears to be a prima facìa concern for the programming of these social media videos, as apparent legal opinions are expressed by Mr. Vukadinovich and Mr. Goodman, that may rise to the level of "expressing legal opinions", see Rule 31, Arizona Supreme Court.





( Internet IRL:  https://www.youtube.com/watch?v=Zf-oA4v03z8&t=745s )

## Partial transcript in the above cited video:

| | | |
|---|---|---|
| 0:29:50 | BARDEN: | The advice you're giving me right now is good advice and I have really thought that through over and over and over. |
| 0:33:17 | VUKADIN: | One thing that you need to think about is this .. in terms of your plea .. you plea negotiations is this.  If you don't have a jury trial , demand right now , they know , they know that you have a better chance of .. you know .. to get acquitted with a jury.  And I am a little worried you may have waived that right and there may be a rule in that court on a certain time period that you have to assert that right.  So you should actually assert your right to a jury trial.  Whether or not you end up … you know … taking the case to trial.  Cause you may have waived that right. |
| 0:41:53 | GOODMAN: | Perhaps, perhaps, that's not what you need to do.  Uh, one thing we hear very often in legal matters … you don't want to .. we have heard Larry Klayman say .. that judges don't give opinions unless they need to.  So, perhaps all you need to do is to present the evidence that you never wielded a gun and stick to that. |
| 0:42:30 | GOODMAN: | If the lawyer is telling you all this stuff, perhaps the lawyer is running interference between you and the judge. |
| 0:42:38 | BARDEN: | It really does feel like it. |



Michael Barden Targeted Individual – Psychological Assault and
Weaponized Mental Health Evaluation



Jason Goodman

▶ Subscribe 69K                                      2,740 views

( Internet URL: https://www.youtube.com/watch?v=anJMtPhp4pI&t=44s )


## Partial transcript in the above cited video:


| | | |
|---|---|---|
| 0:51:00 | GOODMAN: | Once you start making deals with them .. then .. you rights and the law go out the window.  You're adhering to a deal. |
| 0:51:08 | BARDEN: | Yeah, I can't revisit the case.  I can't go back to these people. |
| 0:51:10 | GOODMAN: | I do not think you should take a plea deal Michael.  I think that's the way they are trying to … |
| 0:52:34 | GOODMAN: | I say .. you know what ..it's like playing Black Jack, if you play by the rules that the dealer plays by you seem to do better.  So, do what they do, delay it, you know, do whatever you can to make the hearing happen later … |
| 0:52:58 | GOODMAN: | I think you have to avoid the plea deal.  I think they are trying to box you into a corner to force you to accept a plea deal .. and look at everything you told me.  The lawyer tricked you into taking this psychological evaluation, the lawyer is sorta .. maybe encouraging you to take this plea deal.  I don't think you should. |
| 0:53:17 | BARDEN: | I don't think I should either.  And it feel like I never got any kind of .. not head start … from the time this started I have been spinning my wheels already. |



The Counterlawfare Report with Brian Vukadinovich – Outside
Interference in Barden Criminal Trial

 Jason Goodman

2,477 views

( Internet URL: https://www.youtube.com/watch?v=GaqBL7PlK8E )

| 0:48:22 | VUKADIN: | In Michael's case, just ask yourself one quest.  Why won't the Maricopa prosecutor's office produce those tapes to him?  Just ask yourself that question.  The answer is very obvious, there is something on those tapes that clears Michael of the charge they filed against him.  That's why it is inappropriate for the prosecutor to be trying to force, to shove, a plea bargain down Michael's throat, while at the same time withholding that potential exculpatory evidence.  So, if anybody watching this show tonight takes away anything at all, and I said this once statement in my book, keep an eye on your lawyers and don't blink. |
| 0:49:20 | GOODMAN: | Interesting.  Why hasn't the judge said where is this exculpatory evidence Brian?  It's just not the judge's job? |

# CONCLUSION

The foregoing information is submitted for your consideration.

_____/signed/_____

D. George Sweigert

# EXHIBIT TEN

**Re: Warning and Caution Notice**

Jason Goodman<truth@crowdsourcethetruth.org>

3/30/2018 4:36 PM

To Spoliation
Notice  Copy corina.davis@redbubble.com,   colin@patreon.com,   lawenforcement@paypal.c
om,   George Webb

Mr. David George Sweigert,

Mental illness is a serious matter, you need to seek help. You are hurting yourself by generating a growing collection of evidence that indicates very strongly that you are engaged in an organized criminal harassment campaign against me personally as well as other serious potentially criminal offenses. Every person you have CC'd on this message fully realizes that no actual lawyer would send anonymous messages from the "Evidence Collection" department and the messages themselves represent harassment as I have instructed you to terminate communications with me.

**I have submitted my evidence against you to the NY FBI field office** and anticipate they will contact you soon. **If you'd like to challenge me in civil court, I invite you to file your complaint.** It will merely save me the filing fees when I counter sue you for the well documented slander and defamation campaign you have been waging which includes per se libel among other civil torts and potential criminal actions on your part.

You are making matters far worse for yourself every day. My friendly advice is that you cease and desist and discontinue your harassment and / or any mention of me or my company moving forward.

Jason Goodman

[emphasis added]

1  D. GEORGE SWEIGERT, C/O
   P.O. BOX 152
2  MESA, AZ 85211

3

4

5

6       IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF NEW YORK
7                  (FOLEY SQUARE)

8  D. GEORGE SWEIGERT            Case No.:  1:18-cv-08653-UA

9            Plaintiff,

10  vs.

11  JASON GOODMAN

12            Defendant        CERTIFICATE OF SERVICE

13

14            CERTIFICATE OF SERVICE

15

16      The Plaintiff certifies under penalties of perjury that the enclosed documents have been sent via First Class

17  postage paid U.S. Mail to:

18

19          Jason Goodman
            252 7th Avenue #6S
            New York, NY 10001

20

21          PRO SE DIVISION -- 200
            Clerk of the Court
22          U.S. District Court for the SDNY
            (FOLEY SQUARE)
23          500 Pearl Street
            New York, New York 10007-1312

24      Respectfully dated this day ___ November, 2018,

25

26

27          D. GEORGE SWEIGERT

28

            CERTIFICATE OF SERVICE

**P**

PRIOR

EXPECTED DELIVER
SHIP
TO:

NEW YORK,

USPS 1

9965

**PRESS FIRMLY TO SEAL**

FROM:

USM P3
SDNY!

TO:

PRO SE DIVISION
Clerk of the Court
U.S. District Court for the SDNY
(FOLEY SQUARE)
500 Pearl Street
New York, New York 10007-1312

**PRIORITY®**
**★ MAIL ★**

D. GEORGE SWEIGERT, C/O
P.O. BOX 152
MESA, AZ 85211

PICKUP AVAILABLE

* Domestic only

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

Legal Flat Rate Envelope
EP14L February 2014

PS00001000060