D. GEORGE SWEIGERT, C/O
P.O. BOX 152
MESA, AZ 85211

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
(FOLEY SQUARE)**

D. GEORGE SWEIGERT

        Plaintiff,

vs.

JASON GOODMAN

        Defendant

Case No.:  1:18-cv-08653-UA

**PLAINTIFF'S AMENDED REPLY TO
DEFENDANT'S "COUNTER-CLAIM"**

**PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

        TO THE CLERK OF THE COURT AND ALL INTERESTED PARTIES.  NOW COMES THE PRO SE

Plaintiff (Counter Defendant Sweigert), a layman non-attorney who is acting in the capacity of private attorney

general in a public interest lawsuit, to respectfully serve a **REPLY** to the Defendant's "COUNTER-CLAIM",

appearing as Doc. No. 44, filed 10/22/2018 (herein "**COUNTER-CLAIM**").  This present pleading supersedes the

prior **REPLY** (as shown below).

| | | |
|---|---|---|
| 10/26/2018 | 48 | **PLAINTIFF'S REPLY TO DEFENDANT'S COUNTERCLAIM; re: 44 Counterclaim. Document filed by D George Sweigert. (sc) (Entered: 10/29/2018)** |

I hereby attest that the foregoing is accurate and true under the penalties of perjury.  Further, I hereby attest that the

attached exhibits are accurate and true copies of source documents located on the Internet.

Signed this _____ day of November, 2018

Plaintiff, D. George Sweigert
Pro se plaintiff acting as private attorney general

1

**PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

1
2

## Contents

3
4

**BACKGROUND** ..................................................................................................5

5

**DENIALS** .............................................................................................................7

6

**AFFIRMATIVE DEFENSES** .......................................................................... 10

7

**ATTESTATION** ................................................................................................24

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

## Cases

*Beck v. Prupis*, 529 U.S. 494 (2000) .................................................................................21

*Bridges v. Wagner*, 80 A.D.3d 528, 528 (1st Dep't 2011) .............................................14

*Cohn v National Broadcasting Co.*, 50 NY2d 885, 887 [1980] .....................................13

*Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) ........................................11

*Daulat v. Helms Bros., Inc.* 18 AD3d 802, 803 [2 Dept 2005] .....................................21

*Demas v. Levitsky*, 291 A.D.2d 653, 660 (3d Dep't 2002) ............................................14

*Dillon v City of New York*, 260 AD2d 34, 38 [1st Dept. 1999] .....................................13

*Gardner v. St. Bonaventure Univ.*, 171 F.Supp.2d 118, 128 (W.D.N.Y. 2001) ...........14

*Glazier v. Harris*, 99 A.D.3d 403, 404 (1st Dep't 2012) ..............................................13

*Goshen v. Mutual Life Ins. Co. of New York*, 98 N.Y. 2d 314 (2002) ..........................23

*Green Point Sav. Bank v Pagano*, 103 AD2d 735 [1984] ...............................................5

*Grynberg v. Alexander's, Inc.*, 133 AD2d 667, 668 [2 Dept 1987] ...............................21

*Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983) ...........................................21

*Herlily v. Metro. Museum of Art*, 214 A.D.2d 250, 263 (1st Dep't 1995) .....................14

*Hirschfeld v. Daily News*, 269 A.D.2d 248, 249 (1st Dep't 2000) .................................14

*Holley v. Cty. of Orange, NY*, 625 F.Supp.2d 131, 141 (S.D.N.Y. 2009) .....................11

*Liberman v Gelstein*, 80 NY2d 429 [1992] ...................................................................13

*Marcus*, 158 A.D.2d at 105-106 ...................................................................................12

*Morone v. Morone*, 50 N.Y.2d (1980) ..............................................................................6

NY Court of Appeals case People v. Stuart, 100 N.Y.2d 412 .......................................15

*Ohralik v. Ohio State Bar Ass'n*, 436 US 447, 456 (1978) ...........................................11

*Quinn v. Aetna Life and Cas. Co.*, 96 Misc.2d 545, 554 (Queens.Cty.Sup.Ct.1978) ...11

*Rossi v. Attansio*, 48 A.D.3d 1025 (3d Dep't 2008) ......................................................23

*Salvatore v Kumar*, 45 AD3d 560, 563 ........................................................................13

3

**PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

*State v. Colo. St. Christian College of the Church of the Inner Power*, 346 N.Y.S.2d 482, 487 (Sup. Ct. N.Y. Cty. 1973)...................................................................................................................................................12

## Statutes

18 U.S.C. § 2261A ...............................................................................................................................16

N.Y. General Business Law §§ 349 and 350.......................................................................................12

N.Y. Penal Code (P.C.) 120.45 ...........................................................................................................16

## Other Authorities

<u>An Act to Amend the Penal Law, in Relation to Stalking in the Fourth Degree</u>, ch. 184, § 1, 2014 N.Y. Laws 922, 922........................................................................................................................................................15

## Rules

CPLR § 215(3) ..........................................................................................................................12, 13, 14

CPLR § 3016 ..................................................................................................................................13, 21

**CPLR § 3018** ......................................................................................................................................7

CPLR § 3022 .........................................................................................................................................5

**CPLR § 3025** ....................................................................................................................................5

**CPLR § 3211(a)** ...............................................................................................................................5

CPLR §§ 3011 and 3022 .......................................................................................................................5

F.R.C.P. Rule 12(f)................................................................................................................................7

N.Y. Civil Practice Law and Rules (**CPLR**) § 3011 .......................................................................5

## Treatises

Siegel, NY Prac § 229 [3d ed].............................................................................................................5

4

**PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

## BACKGROUND

1.    The Plaintiff (Counter Defendant Sweigert) asserts he is responding to a legal nullity created by Defendant Goodman.  This instant AMENDED REPLY is provided only as a courtesy to the Court for the purposes for foreclosing a potential default action that might be attempted by the Defendant Counterclaimant.  The Plaintiff (Counter Defendant Sweigert) reserves his rights to treat Goodman's COUNTER-CLAIM (Doc. No. 44, 10/22/2018) as a bifurcated pleading that is a fatally flawed amputated ancillary attachment to another legal nullity (the Defendant's ANSWER (Doc. No. 35, 10/10/2018).   Neither of the Defendant's pleadings (ANSWER / COUNTER-CLAIM) are in conformance with N.Y. Civil Practice Law and Rules (**CPLR**) § 3011 "There shall be a complaint and an answer.  An Answer may include a counterclaim against plaintiff …".  The COUNTER-CLAIM was filed twelve (12) days after the ANSWER (bifurcated).

2.    To support the claim of illegitimacy of Defendant's ANSWER (Doc. No. 35, 10/10/2018) and COUNTER-CLAIM (Doc. No. 44, 10/22/2018) pursuant to CPLR §§ 3011 and 3022, the Plaintiff (Counter Defendant Sweigert) hereby incorporates the following documents as if fully restated herein (all are hereby incorporated by reference).

- Docket No. 8, filed 07/09/2018, Motion to Show Cause
- Docket No. 41, 10/19/2018, Motion to Strike Defendant's ANSWER
- Docket No. 42, 10/19/2018, Memorandum to support the above
- Docket No. 55, 10/31/2018, Motion to Dismiss Counter-Claim
- Docket No. 57, 11/01/2018, Amended Motion to Strike Defendant's ANSWER

3.    In sum, the totality of the above cited pleadings indicate that the Defendant's ANSWER and COUNTER-CLAIM are fatally flawed, in error, and legally insufficient to be further considered by the Court, see CPLR § 3022.

4.    The Plaintiff (Counter Defendant Sweigert) has previously reserved his right to file a new **Amended Complaint** (now filed as Docket No. 56, 11/01/2018 "SECOND AMENDED COMPLAINT") in response to the Defendant's COUNTER-CLAIM (Doc. No. 44, 10/22/2018) as a precautionary mitigation.  By **Doc. No. 56, 11/01/2018** the Plaintiff seeks the leave of the Court to file the **Second Amended Complaint**

**PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

pursuant to **CPLR § 3025** (see, Siegel, NY Prac § 229 [3d ed]).  *Green Point Sav. Bank v Pagano*, 103 AD2d 735 [1984]).

5.       In general terms, the bulk of the "COUNTER-CLAIM" should be dismissed pursuant to **CPLR § 3211(a)** on the grounds of (1) lack of documentary evidence, (2) statute of limitations and (3) failure to state a cause of action, etc.  The entire "COUNTER-CLAIM" when treated as a complaint lacks legal sufficiency – especially in the area of defamation – fails to state a cause of action.  *Morone v. Morone*, 50 N.Y.2d (1980).

### *COMMERCIAL LITIGANT GOODMAN HAS HAD MONTHS TO PREPARE A PROPER COUNTERCLAIM AND SECURE APPROPRIATE LEGAL COUNSEL*

6.       As the Court will learn, Defendant Goodman has slept on his rights to bring any colorable claim against the Plaintiff (Counter Defendant Sweigert).  Further, as Defendant Goodman proudly proclaims in a widely disseminated and pervasive manner his social media expressions support a privately owned corporate interest – and nothing more.  Goodman's supposed "freedom of speech" is severely curtailed by a host of New York State laws (see trade / commercial speech restrictions) as Goodman operates as a privately-owned corporate concern on social media (see Multimedia System Design, Inc. and 21st Century 3D [**MDSI/21st c3D**].  The Defendant's (Counterclaimant Goodman) injuries and attempts to recover damages are clothed in a commercial and trade enterprise

7.       The commercial / trade Defendant publically complained of a set of stunningly similar allegations as cited in the "COUNTER-CLAIM" in a YouTube video published more than a year ago.  In said YouTube video production (12/11/2017 [**Exhibit One [Exh.1]**]) not only does the Defendant widely disseminate in a pervasive manner a litany of allegations against unknown individuals; but, proclaims he is operating under the aegis of his commercial enterprise.

Relevant section of "video information" section published to accompany video.

"Crowdsource the Truth has been exposing fraud, corruption and crime for more than one year. As we grow in viewership and effectiveness, **our effort has come under consistent heavy attack by a determined group of misguided individuals.**

**PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

**These are truly despicable people who rely on spin, speculation, intimidation, exaggeration, fabrication, and malicious lies.** They have concentrated their efforts to conceal the truth and present a manufactured, patently false narrative and fraudulent conclusions.

And

The attacks are focused not only on **the privately owned corporation under which I create the video and social media content for Crowdsource the Truth**, but also on me personally, assailing my physical characteristics and religious heritage in a way that can only be described as hateful and un-American.    **[emphasis added][Exh.1]**

8.        . Further, Defendant Goodman invited litigation in an e-mail message sent to the Plaintiff (Counter Defendant Sweigert) nearly six (6) months ago (03/30/2018 e-mail **[Exhibit Three [Exh.3]**]) stating:

"**If you'd like to challenge me in civil court, I invite you to file your complaint**"

9.        Therefore, the Defendant is without excuse as to why he has provided NO documentary evidence with his "COUNTER-CLAIM". The Court should not casually condone Goodman's failure to provide any evidentiary support for his outlandish claims against the Plaintiff (Counter Defendant Sweigert) for purported misconduct that Goodman has had knowledge of for almost a year.

10.        Not unsurprisingly, again, Defendant Goodman has NOT filed an appropriate Certificate of Service with his latest "COUNTER-CLAIM" (Doc. No. 44, 10/22/2018) pleading. This sloppy conduct is inexcusable following the transmission of the electronic "Certificate of Service" by Goodman on 08/11/2018 to the Plaintiff's e-mail account. For unknown reasons Goodman sought fit to transmit an electronic "Certificate of Service" on 08/11/2018 (allegedly infected with a malware virus as more fully detailed in the Plaintiff's Amended Motion pursuant to F.R.C.P. Rule 12(f) in Docket No. 57, 11/01/2018 ); but, no longer sees the need to concurrently file a Certificate of Service and follow judicial formalities.

**DENIALS**

11.        Pursuant to **CPLR § 3018** the Plaintiff (Counter Defendant Sweigert) includes the following denials as a mitigation against any attempt by the Defendant to seek a default judgment based on the bifurcated "COUNTER-CLAIM". These denials are asserted as a precautionary move to protect the Plaintiff's rights.

**PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

12.     DENIED THAT Plaintiff (Counter Defendant Sweigert) is a participant in "an organized defamation, slander, harassment, cyber stalking, and actual stalking campaign (The Campaign)" as stated in lines 13-15 (**ln.13-15**) page 1 (**pg.1**) of ANSWER. Plaintiff (Counter Defendant Sweigert) has no knowledge about such activities described by the Defendant-Counterclaimant. Plaintiff (Counter Defendant Sweigert) has no knowledge of any goals, plans, objectives or methods of a group of individuals that would intend to harm the Plaintiff or his business by the torts described by the Defendant. Plaintiff (Counter Defendant Sweigert) has no knowledge of the intent, desire or motivation of independent actors that may appear on social media. Plaintiff (Counter Defendant Sweigert) has no knowledge of the specific details of the torts complained of by the Defendant. Plaintiff (Counter Defendant Sweigert) is not a participant in such a scheme, cartel or confederation. Plaintiff (Counter Defendant Sweigert) knowns of no such organized attempt to harm Defendant (Counterclaimant) Goodman.

13.     DENIED THAT Plaintiff is part of "The Campaign". Plaintiff has no knowledge about the purported activities of "spreading known defamatory information about Goodman." Plaintiff (Counter Defendant Sweigert), further DENIES any knowledge of any "willful and wanton malicious intent" that would "damage Goodman's reputation in a public worldwide forum". [**lns.15,16,pg.1**]. Plaintiff (Counter Defendant Sweigert) has no knowledge as to what would constitute "defamatory" information about the Defendant (Counterclaimant). Plaintiff (Counter Defendant Sweigert) has no knowledge as to the desires and/or motivations of independent actors that may appear on social media. Plaintiff (Counter Defendant Sweigert) has no knowledge of what is considered "known defamatory information". Plaintiff (Counter Defendant Sweigert) admits that Goodman operates a "**business**" as stated at [**ln.16,pg.1**]. Plaintiff (Counter Defendant Sweigert) has knowledge that Goodman operates his "**business**" "in a public worldwide forum".

14.     DENIED THAT Plaintiff (Counter Defendant Sweigert) has any knowledge of "actions taken in concert with a group of individuals who acted against Goodman for the purpose of wanton and willful tortious interference, defamation, slander, harassment, invasion of privacy, infringement of first amendment rights, menacing and stalking both online and in the real world". [**lns.16-19,pg.1**]. Plaintiff (Counter Defendant Sweigert) has no knowledge of a group, confederation or cartel that would attempt to "menace" the Defendant. Plaintiff (Counter Defendant Sweigert) has no knowledge as to what "tortious interference" the Defendant may be

**PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

referring to.  Plaintiff (Counter Defendant Sweigert) has no knowledge as to the entire list of torts that is provided by the Defendant (invasion of privacy, stalking, etc.).  Plaintiff (Counter Defendant Sweigert) has no knowledge of the desires or motivations of other independent actors that may, or may not, be present on social media.  Plaintiff (Counter Defendant Sweigert) has no knowledge of any such organized or group activity that has purportedly caused Defendant (Counterclaimant) these purported injuries.

15.    DENIED THAT Plaintiff (Counter Defendant Sweigert) has any knowledge of any "financial damages" or "emotional distress" or "loss of enjoyment of life" suffered by the Plaintiff.  Plaintiff denies that any of his conduct is implicitly, explicitly, directly, and/or indirectly responsible for this purported sufferings of the Defendant. [lns.19-21,pg.1].  Plaintiff has no knowledge as to what "emotional distress" the Defendant may, or may not have, suffered.  The Plaintiff (Counter Defendant Sweigert) denies that his intentionally, or unintentionally, attempted to inflict emotional distress on the Defendant.  Plaintiff (Counter Defendant Sweigert) is unaware of any financial damages or loss of the enjoyment of life that has been purportedly been experienced by the defendant and how the Plaintiff's (Sweigert) alleged conduct would create such actionable torts (if they were indeed valid).  Plaintiff (Counter Defendant Sweigert) has no knowledge of "co-conspirators" and what such an alleged civil conspiracy would look like, how it would operate or what objectives such a purported civil conspiracy might have.

16.    DENIED THAT any activity or behavior of the Plaintiff (Counter Defendant Sweigert) is "reckless, willful and wanton". [ln.24-25,pg.1].  Plaintiff (Counter Defendant Sweigert) has no knowledge of any goals, plans, objectives or methods of a group of individuals that would intend to harm the Plaintiff or his business by the torts described by the Defendant.  Plaintiff (Counter Defendant Sweigert) has no knowledge of the intent, desire or motivation of independent actors that may appear on social media.  Plaintiff (Counter Defendant Sweigert) has no knowledge of the specific details of the torts complained of by the Defendant Counterclaimant. Plaintiff (Counter Defendant Sweigert) denies that he has acted in a "reckless, willful or wanton" manner with regards to the Defendant Counterclaimant.

17.    DENIED THAT the Plaintiff (Counter Defendant Sweigert) was a participant in, had knowledge of, or supported the objectives of an effort to defame, harass or injure the Defendant (Counterclaimant).  Plaintiff

**PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

(Counter Defendant Sweigert) has no knowledge of such a scheme, plan, objectives or any other instantiation of an effort to injure the Defendant with the participation of other known, or unknown actors.  The Plaintiff (Counter Defendant Sweigert) has no knowledge of any such wrongful plans, organized, taken in concert with others, or aligned with other purported unnamed co-conspirators.

18.      RESTATED:  The Plaintiff (Counter Defendant Sweigert) has no knowledge of any goals, plans, objectives or methods of a group of individuals that would intend to harm the Plaintiff or his business by the torts described by the Defendant.  Plaintiff (Counter Defendant Sweigert) has no knowledge of the intent, desire or motivation of independent actors that may appear on social media.  Plaintiff (Counter Defendant Sweigert) has no knowledge of the specific details of the torts complained of by the Defendant.  Plaintiff (Counter Defendant Sweigert) is not a participant in any such group, cartel or confederation.  All such inferences, insinuations, implications and allegations made by the Defendant Counterclaimant are hereby denied.

19.      In sum, the totality of the vague and ambiguous slurs, stunning insinuations and smears labeled as "allegations" are hereby denied in every form by the Plaintiff (Counter Defendant Sweigert).  The Plaintiff denies – in totality – the notion that he is a part of an organized group of individuals, confederation, cartel or any other coordinated activity to injure or harm the Defendant Claimant through alleged tortious conduct..

## AFFIRMATIVE DEFENSES

20.      The Plaintiff (Counter Defendant Sweigert) herein provides these AFFIRMATIVE DEFENSES as a courtesy to this Court.  The Plaintiff believes he is under no obligation to provide such defenses in response to the fatally flawed, moot and bifurcated "COUNTER-CLAIM"; however, the Plaintiff (Counter Defendant Sweigert) has undertaken this task as a mitigation against any attempts by Defendant to seek a default judgment.

### *DEFENDANT'S FIRST AMENDMENT RIGHTS*

21.      The Plaintiff requests that the Court take Judicial Notice that the Plaintiff is a private party and not a public employee.  As a private party, the Plaintiff does not represent the interests of any government, quasi-government entity, bureau, regulatory body, etc.  The Plaintiff is not clothed with any authority to act on behalf of any such governmental body and is not a public employee.  Therefore, the limitations and constraints that may be

PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"

applied to such governmental organizations by AMENDMENT I of the U.S. Constitution would not apply to a

private party plaintiff.  The Second Circuit has made it clear that plaintiffs [Defendant Goodman as counter-claim

plaintiff] making First Amendment retaliation claims must substantiate their allegations of being chilled with

specific and objective evidence.  See *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir.2001) (plaintiff must show

that First Amendment rights were "actually chilled") (quoting *Davis v. Vill. Park II Realty Co.*, 578 F.2d 461, 464

(2d Cir.1978)).  The Defendant has provided no such evidence.  Apparently, as the Defendant is not a graduate of

any journalistic training and may not understand the complexities of AMENDMENT I protections he has proceeded

at his own reckless peril with a flawed assumption of Constitutional protections.  Nonetheless, Goodman provides

no examples of how his "free speech" has been effectively chilled the Plaintiff in the "COUNTER-CLAIM" –

NONE.  See *Holley v. Cty. of Orange, NY,* 625 F.Supp.2d 131, 141 (S.D.N.Y. 2009) (citing *Curley v. Village of*

*Suffern,* 268 F.3d 65, 73 (2d Cir. 2001)).

22.       Defendant Goodman (self-identified as the "Chief executive Officer" [**CEO**] of Multi-Media

Systems (aka Software) Design, Inc. [**MDSI**] and 21st Century 3D [**21stc3D**]) as fully depicted in the Plaintiff's

(Sweigert) TENTH (10th) REQUEST FOR JUDICIAL NOTICE [**10-RJN**], Doc. No.37, 10/12/2018, herein

incorporated by reference as if fully restated.

23.       It is again instructive to note the video description that has been cited from **EXHIBIT ONE**

[**Exh.1**], cited below:

> The attacks are focused not only on **the privately owned corporation under which I create the video
> and social media content for Crowdsource the Truth,**

*24.*       The Court will recall that Defendant Goodman has asserted that "CrowdSource The Truth"

[**CSTT**] is a commercial enterprise and collects funds via the wires of the Internet to support a New York charted

corporation and a presumed licensed DBA moniker (see Multimedia System (Software) Design, Inc, (**MDSI**) and/or

21st Century 3D (**21c3D**)) [**10-RJN**].  Therefore, at best Defendant Goodman's **MDSI/21stc3D** CSTT broadcasts are

a form of "trade/commercial speech" and are entitled less protection than the speech of a natural person, per se.

> "From this line of reasoning, it is clear that while commercial speech is "protected" under the First
> Amendment from prior restraint, the protection afforded is less than that provided for noncommercial
> speech, so that when commercial expression is false or misleading it is afforded no protection whatsoever".

**PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

See *Quinn v. Aetna Life and Cas. Co.,* 96 Misc.2d 545, 554 (Queens.Cty.Sup.Ct.1978); *Ohralik v. Ohio State Bar Ass'n*, 436 US 447, 456 (1978).

25.     Therefore, in theory, if individual social media broadcasters disagreed with alleged deception widely disseminated in a pervasive manner by CSTT such commercial speech could be criticized, critiques and receive editorial treatment.

26.     Even if Defendant Goodman could state a colorable claim that his personal First Amendment rights were infringed, his allegations against a private individual (such as the Plaintiff (Sweigert)) are again a legal nullity as the conduct is not alleged against a state actor.

27.     Goodman launched his <u>CSTT commercial enterprise</u> into the world of public debate, journalistic editorializing and rancorous discourse at his own risk and peril.  Presumably, if anyone disagrees with the alleged deception that is widely disseminated by CSTT in a pervasive manner upon members of the public that is an abridgement of Defendant Goodman's "free Speech" and "First Amendment" rights.  This is a flawed argument.

28.     As stated (several times) in the operative South Carolina Amended Complaint (Doc. No. 5, 06/29/2018) Plaintiff (Sweigert) is functioning as a private attorney general (**PAG**), he is broadly empowered to protect the general public against deceptive acts and practices, and false advertising.  See *Marcus,* 158 A.D.2d at 105-106, *State v. Colo. St. Christian College of the Church of the Inner Power*, 346 N.Y.S.2d 482, 487 (Sup. Ct. N.Y. Cty. 1973).  These decisions stand against the Defendant Goodman (Counterclaimant), who would be permitted to continue CSTT deceptive practices and false advertising, in violation of N.Y. General Business Law §§ 349 and 350 causing the public would suffer irreparable harm.

### *DEFAMATION CLAIMS ARE NOT STATED IN HAEC VERBA AND ARE TIME BARRED*

29.     Defendant Counterclaimant (Goodman) makes no attempt to provide any date or occurrence as to when any defamatory statements were made by the Plaintiff (Sweigert) and in what form.  Further, the Defendant Counterclaimant has specified no amount of specific compensatory damages sought in his counterclaims.

30.     Under New York law, claims for defamation and defamation per se are governed by a one-year statute of limitations.  CPLR § 215(3) .  The one year limitation has most likely estopped the bulk of Goodman's

12

**PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

undefined defamation claims. Indeed, Goodman has shown a stunning lack of due diligence in pursuing any sort of legal remedy, other than his own public on-line social media threats to contact the F.B.I. with his sidekicks former F.B.I. Special Agent Robyn Gritz (Gurnee, Illinois), Michael D. Moore, Certified Fraud Examiner (West Chester, PA) and current F.B.I. Special Agent Brittany Custer , etc. (see Plaintiff's Twelfth (12th) Request for Judicial Notice (herein incorporated by reference as if fully restated) **[12-RJN]**, Doc. 45, 10/22/2018). In fact, it is telling that there has been NO activity from the N.Y.P.D. or the F.B.I. regarding the phantom players involved in the alleged smear campaign; which Goodman claims is a "distributed, de-centralized defamation campaign". It should be a relatively simple matter for Defendant Counterclaimant Goodman to produce for this Court the "evidence" that he provided to the F.B.I. and N.Y.P.D. which explains the operations of "The Campaign". Meanwhile, based upon Goodman's online threats to speak with the F.B.I. and N.Y.P.D. (April, 2018, **[12-RJN]**) he could have commenced a legal action then.

31.     The elements of a defamation cause of action are a "false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard and it must either cause special harm or constitute defamation per se" (*Salvatore v Kumar,* 45 AD3d 560, 563, quoting *Dillon v City of New York*, 260 AD2d 34, 38 [1st Dept. 1999]). Special harm or special damage means the loss of something having economic or pecuniary value (see, *Liberman v Gelstein,* 80 NY2d 429 [1992]). Defendant Counterclaimant Goodman has not met this test in the "COUNTER-CLAIM". Any references to defamation in the "COUNTER-CLAIM" should be ignored, as "Courts will not strain to find a defamatory interpretation where none exists" (*Cohn v National Broadcasting Co.*, 50 NY2d 885, 887 [1980]).

32.     Pursuant to CPLR § 215(3) Defendant Goodman has lost the right and time is barred to bring and libel or defamation action that is older than one year. Additionally, Defendant Counterclaimant has failed to allege what defamatory words *in haec verba* created the purported injury, and as such the Goodman has failed to meet the requisite specificity under CPLR § 3016. Considering the status of Goodman's trade / commercial speech issues of CSTT the alleged defamatory statements (none specified) may merely be non-actionable opinions. See *Glazier v. Harris*, 99 A.D.3d 403, 404 (1st Dep't 2012) (dismissing defamation claim where plaintiff failed to specify particular words used.)

**PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

33.     Defendant Counterclaimant Goodman has also failed to explain how any of the non-articulated defamatory statements may be proven by him to be false and not privileged.  Such statements could in themselves be constitutionally protected statements made by the Plaintiff and other parties.

### *VAGUE INTENTIONAL INFLICTION OF EMOTION DISTRESS (IIED) CLAIMS*

34.     The law is clear that a claim for **IIED** and a prima facie tort will be dismissed as duplicative when the "underlying allegations fall within the ambit of other traditional tort liability, namely, the plaintiff's [here Defendant's Counterclaimant's] causes of action sounding in defamation." *Fleischer v. NYP Holdings, Inc.*  104 A.Dd.3d 536, 539 (1st Dept. 2013).  See also *Hirschfield v. Daily News,* 269 A.D.2d 248, 249 (1st Dept. 2000). Counterclaimant Goodman's vague and ambiguous **IIED** allegations are duplicative of his other foggy and unsubstantiated claims related to "cyber harassment", "slander", "defamation", "spreading", etc.  The co-mingling of these IIED allegations into a jumble with other alleged torts (defamation, cyber-staking, libel, etc.) places an unnecessary burden upon the Plaintiff (Sweigert) to untangle inter-locking web of vague accusations, insinuations and innuendo.  Clearly the Plaintiff (Sweigert) is well within his rights to demand a more definitive, articulated and refined claim.

35.     Additionally, the bulk of Defendant Goodman's claims sounding in defamation are time barred as they occurred more than one year ago.  The IIED allegations cannot be "bolted on" to other legally insufficient claims (as with the defamation allegations).  The Court and the Plaintiff will be forced to use a crystal ball and attempt to determine the date and occurrence when these IIED sufferings began – a duty of the Defendant to present his evidence to the Court.  Defendant Goodman has failed to establish any timelines, dates, occurrences or when an actionable event took place.  In sum, Goodman has utterly failed to state an actionable claim for IIED.

36.     New York law is clear that where a cause of action for IIED is based on allegations that support a traditional tort, such as defamation, then the IIED cause of action must be dismissed as duplicative. *Hirschfield v. Daily News,* 269 A.D.2d 248, 249 (1st Dep't 2000) (dismissing claims for emotional distress where they "fall[] within the ambit of other traditional tort liability which, in this case, is reflected in plaintiff's [Counterclaimant Goodman's] causes of action sounding in defamation"); *Herlily v. Metro. Museum of Art,* 214 A.D.2d 250, 263 (1st

14

**PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

Dep't 1995)(same); *Demas v. Levitsky*, 291 A.D.2d 653, 660 (3d Dep't 2002) (dismissing an IIED claim where "the conduct alleged in the subject cause of action falls squarely within the scope of the plaintiff's defamation claim").

37.     Here Counterclaimant Goodman's IIED claims are duplicative of his defamation claims in substantial part – even though Goodman has articulated only vague and ambiguous references to the "spreading" of "knowingly false information", etc.

38.     Like Goodman's defamation claims, his IIED claims are also time barred by CPLR § 215(3); *Bridges v. Wagner*, 80 A.D.3d 528, 528 (1st Dep't 2011).  Claims of IIED accrue "at the time of injury, i.e. when the emotional distress is suffered."  *Gardner v. St. Bonaventure Univ.*, 171 F.Supp. 2d 118, 128 (W.D.N.Y. 2001).

### *STALKING "IN THE REAL-WORLD"*

39.     To help the Court understand the futility of Goodman's vague and ambiguous "real world stalking" allegations and insinuations, the Plaintiff relies on the wisdom of the New York Legislature when that body amended the N.Y. Anti-Stalking law.  See An Act to Amend the Penal Law, in Relation to Stalking in the Fourth Degree, ch. 184, § 1, 2014 N.Y. Laws 922, 922 (codified at  Penal § 120.45).  As defined by the legislature, stalking in the "real world" with respect to the second criminal element of "no legitimate purpose" the Court of Appeals in *NY Court of Appeals case People v. Stuart, 100 N.Y.2d 412* defined this term to mean "the absence of a reason or justification to engage someone, other than to hound, frighten, intimidate or threaten."  The Plaintiff has not physically been in the State of New York since 1999 when he worked as a consultant to Chase Manhattan bank, Wall Street, New York City.  The Plaintiff made a short business trip to the New York City area in 2000.  Suffice to say the Plaintiff has not been in the New York City area for at least a decade, making any "real world" stalking attempts by the Plaintiff impossible.  What remains perplexing is why the Defendant did not contact law enforcement to report this stalking activity in December 2017 when he claims to have become aware of these "stalking activities".  Attached as **Exhibit One [Exh.1]** is a YouTube video production by Goodman posted on 12/11/2017 concerning the "fear" Goodman experienced when an explosive device detonated at the N.Y. Port Authority.  The Plaintiff's MOTION seeking injunctive relief is also illustrative (along with all associated evidence)

and is hereby incorporated by reference as if fully restated herein (Doc. No. 8, 07/09/2018).  Quoting the Goodman

12/11/2017 video information description in relevant part:

- I've posted this video to let everyone know that although the explosion this morning was very close to **my home and Crowdsource the Truth headquarters,** I was not injured.   Thanks to those who have inquired.
- **The latest efforts of this nefarious group have graduated to a level that demands action. Their malicious attacks have gone too far. Their deception must be exposed. They must face justice for their acts.**  [emphasis added] **[Exh.1]**

### *PURPORTED CYBER STALKING ISSUES TRUMPED BY LEGITIMATE PURPOSE IMMUNITY*

40.     Counterclaimant Goodman fails to cite any New York or Federal law that would be provide a

private right of action and a colorable claim against the Counterclaim Defendant (Sweigert).  It is believed that

Goodman may be referring to the publication by Sweigert of details contained within several "DECLARATIONS"

filed by the Counterclaimant Defendant (Sweigert) in related litigation in the U.S.D.C. for the eastern District of

Virginia. (Steele v. Goodman, 3:17-cv-00601-MHL).  However, New York's Civil Rights Law § 74 states, in

pertinent part, as follows: "A civil action **cannot** be maintained against any person, firm or corporation, for the

publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or

for any heading of the report which is a fair and true headnote of the statement published. [emphasis added]"

Counterclaimant Goodman states "no allegations from which damages attributable to the defendant's (Sweigert)

conduct may be reasonably inferred".  (see *Lappin v Greenberg,* 34 AD3d 277, 279 [2006]).  Goodman merely

states ambiguous and vague terms; such as "spreading known false defamatory information" and "stalking both

online and in the real world".  There is little information to allow this Court to infer anything from these vague and

conclusory statements.  No examples, no incidents and/or no occurrences of "stalking" are provided by Goodman.

The Court must rely on the phrase "spreading known false defamatory information", which certainly would not be

considered an act of stalking or cyber stalking.  Although the Counterclaimant is entitled "to all favorable inferences

to be drawn from the pleadings", there is nothing to draw from (see *Aristy-Farer v. State of New York*, 29 NY3d

501, 509).  Goodman fails to allege how the "spreading [of] known false defamatory information" can be considered

a threat to "kill, injure, harass, intimidate, or place [him] under surveillance".  18 U.S.C. § 2261A.  There is a

16

**PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

1  complete lack of any specific allegations, or evidence that would indicate Counterclaimant Goodman was the victim

2  of stalking or cyber-stalking; except for his overly broad use of these terms such as "spreading".

3      41.    Without developing definitive allegations, accusations or even specific actionable events,

4  Goodman is fond of relying on vague and ambiguous insinuations – such as "cyber stalking". Assuming, arguendo,

5  that Goodman is referring to N.Y. Penal Code (P.C.) 120.45 his reliance is misplaced. As the Court is aware,

6  providing notifications to a party "for a legitimate purpose" trumps the standards of criminal (and potentially civil)

7  conduct needed for an actionable N.Y. P.C. 120.45 claim. The Plaintiff has stated several times, within the context

8  of the Second Amended Complaint (Doc. No. 39, 10/17/2018) that both (1) Goodman and (2) PATREON.COM

9  were notified on several occasions of pre-litigation cease and desist notices, anti-spoliation of evidence notices and

10  other legal good faith attempts at resolving this present controversy. An example of these pre-litigation warning

11  communications is attached as **Exhibit Two [Exh.2],** e-mail message of 11/30/2017. Goodman/PATREON were

12  continuously notified in a non-malicious manner of the on-going tortious conduct of Goodman and of specific

13  events of libel and slander directed at the Plaintiff by Goodman. Further, **Exh.2** indicates that both Goodman and

14  PATREON were advised of the potential of civil litigation related to racketeering and wire fraud. Such legal and

15  pre-litigation related e-mails **[Exh.2]** were sent to the normal business e-mail addressed that is often publically

16  advertised by Goodman to his worldwide audience. Further, these legal communications are clothed in the

17  immunity of the litigation privilege doctrine (discussed below). The conduct alleged in the "COUNTER-CLAIM"

18  fails to make out the statutory requirement that the conduct is even criminal or tortious in nature, or what the

19  purported misconduct is exactly. Thus, the Court and the Plaintiff are once again left to rely on the litigation crystal

20  ball to understand the Defendant's ramblings in his moot "COUNTER-CLAIM".

***PURPORTED TORTIOUS INTERFERENCE (T.I.) CLAIMS TRUMPED BY LITIGATION
PRIVILEGE***

    42.    The Defendant Counterclaimant (Goodman) is effectively hiding any actionable misconduct that

rises to a T.I. claim in his "COUNTER-CLAIM". Again, the Plaintiff must guess or speculate as to what the

Defendant is actually complaining about. Assuming, arguendo that the Defendant is complaining about the private

dispute resolution based good-faith, non-malicious cease and desist (C&D) requests, anti-evidence destruction

17

**PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

notices and other legal pre-litigation privileged correspondence [Exh.2] sent to (1) Defendant and (2) PATREON; then, once again the "COUNTER-CLAIM" is fatally flawed.  Private dispute resolution via demand letters, C&Ds, evidence preservation notices and other pre-litigation private dispute resolution communications have long been held to be protected under the broad scope of litigation privilege; which is memorialized in the Restatement (Second) of Torts at 586-87 (1977) ("reaffirming absolute privilege of parties and their attorneys if the defamatory statements have "some relation to the proceeding").  Litigation privilege is in accord with the public interest of granting citizens the utmost freedom to the courts of justice in their efforts to attain settlement.  The Plaintiff's communications to (1) Goodman and (2) PATREON, INC. [Exh.2] are protected by absolute and qualified immunity.  It is instructive to note that under New Jersey law, there is a litigation privilege that is an absolute privilege to any communication: "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins v. Harris*, 141 N.J. 207 (1995).  Further, the New York State Court of Appeals has resolved this issue in *Front, Inc., v. Philip Khalil*, No. 19, 2015 WL 750965 (N.Y. Feb. 24, 2015).  The *Front, Inc.* court answered the "open question" concerning what, if any, privilege attaches to pre-litigation statements.  The *Front, Inc.* court ruled that communications made in anticipation of litigation are subject to a qualified privilege and thus protected against claims for defamation.  Therefore, the Plaintiff's pre-litigation, private dispute resolution centered, C&Ds, evidence preservations letters, etc. are exempt from the Defendant's illusionary T.I. claims.  Provided as an example of Plaintiff's e-mail to Goodman/PATREON is attached as [Exh.2], a typical response from Goodman is attached as [Exh.3].

43.     The elements of tortious interference (assuming with a contract – as Goodman does not articulate further) cause of action are: (1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff.  *Kronos, Inc. v. AVX Corp.*, 81 NY2d 90, 94 (1993).   The requisite elements of a cause of action for prima facie tort are: (1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful.  *Freihofer v. Hearst Corp.*, 65 NY2d 135, 142-43 (1985); *Curiano v. Suozzi*, 63 NY2d 113,

18

**PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

117 (1984); *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 NY2d 314, 332 (1983). Plaintiffs must allege

that the defendants' allegedly tortious conduct consisted of an otherwise lawful act that was performed with the

intent to injure or with a "disinterested malevolence." *Curiano v. Suozzi, supra* at 117, *citing Burns Jackson Miller*

*Summit & Spitzer v. Lindner, supra* at 333; *see also Gold v. East Ramapo Central School Dist.*, 115 AD2d 636 (2d

Dept. 1985) (a necessary element for prima facie tort is a desire to harm). Counterclaimant Goodman fails to meet

these basic elements of a prima facie tort cause of action of action. Goodman does not claim that Counterclaim

Defendant's (Sweigert) sole motivation was either due to his "disinterested malevolence". Goodman has failed to

state a viable cause of action for a prima facie tort or for the tort of tortious interference. Assuming, arguendo, that

Goodman is referring to the self-interest, good-faith, pre-litigation e-mail messages sent to companies such as

RedBubble, these communications are privileged and not subject to allegations of tortious interference. *Caplan v*

*Winslett, et al.*, 218 AD2d 148, 152-153 (1st Dep't 1996)(internal citations omitted). In so holding, the *Caplan*

court made clear that statements made in open court, and out-of-court, are protected by an absolute privilege when

such statements relate to the pending litigation or a judicial proceeding; quoting in relevant part:

> The Appellate Division, First Department, has held that:
>
> [a]n absolute privilege is based upon a communicator's official participation in the
> process of government[, and]...is intended to insulate him from any inhibitions in
> carrying out that function. ...[A]ttorneys are considered as much protected participants in
> this process as are Judges, jurors, parties and witnesses. ...Furthermore, the privilege is
> not limited to statements made in open court, but also embraces communications between
> attorneys...[a]s long as the subject of an out-of-court communication relates to pending or
> contemplated litigation, and is made in connection with a judicial proceeding.

## INVASION OF PRIVACY

44.   The Plaintiff (Sweigert) requests that the Court take Judicial Notice of the (a) myriad of public

documents created by the Defendant with his home address and the (b) bizarre public behavior displayed on

countless social media broadcasts.

(a)   By his own volition, the Defendant has included his personal home address in many corporate,

trademark and other public documents. For example:

19

**PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

- On trademark registration application (filed 1/10/2018) for the mark "Crowdsource The Truth" (**CSTT**), the applicant **MSDI**, via Jason Goodman, provided the address "6s 252 7th Avenue New York NEW YORK 10001" to the U.S. Patent and Trademark Office (USPTO).  (USPTO serial number 87752970).

- The following entry is made in a federal court pleading in the signature block:  "Jason Goodman, 252 7th Avenue #6S, New York, N.Y. Telephone (323) 744-7594, Facsimilia (917) 591-6370, Email: truth@crowdsourcethetruth.org, Pro Se." (page 7 of 8 in the document "DEFENDANT JASON GOODMAN'S ORIGINAL ANSWER", Doc. 14, Filed 10/06/17 in civil case Steele vs. Goodman, 3:17-cv-00601-MHL, in the U.S.D.C. for the Eastern District of Virginia (Richmond)).

- For other examples see Plaintiff's Tenth Request for Judicial Notice (herein incorporated by reference) [**10-RJN**], Doc. 37, 10/12/2018).

(b)     Attached as Exhibit Four [**Exh.4**] is an instantiation of the YouTube video production distributed on 06/03/2017 entitled, "Who Is Spoofing the #SethRichFiles".  In this video [**Exh.4**] Defendant Goodman takes his audience of 13,000+ viewers on a tour of his New York City apartment, which he fondly refers to as "HQ", as in Headquarters.  Goodman films his apartment, his personal cell phone and the plaintiff's brother (George Webb Sweigert) sleeping on Goodman's couch.  It would appear that Goodman waived his rights to any expectation of privacy with such intimate scenes openly distributed to a worldwide social media audience.

(c)     On his social media platforms (YouTube, Periscope, etc.) Goodman has openly discussed such issues as the (1) production of pornographic self-photography, the (2) creation of videos that may indicate acts of masturbation, his (3) dating activities related to the dating platform "TINDER.COM", his (4) emotional outbursts in the video series "Who Spoofed the Seth Rich Files", his display of his home in over 1,000 video broadcasts to a worldwide audience, etc.  See Exhibit Four [**Exh.4**]   Further, Mr. Goodman is fond of airing "dirty laundry" and personal grudges to his worldwide social media audiences. [**Exh.4**]

### PURPORTED FINANCIAL DAMAGES

45.     The Court should take Judicial Notice that the growth of Goodman's social media empire can almost be described as "meteoric".  Every week Goodman gains additional PATREON.COM "patrons", YouTube

PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"

subscribers, and other social media followers.  At the time of this writing Goodman has nearly 70,000K YouTube subscribers and over 1,000 PATREON.COM "patrons".  It is difficult to imagine exactly how Goodman has suffered during periods of such outlandish growth (all in the past twelve months).  In fact, Goodman has conducted lavish overseas trips in his "pursuit" of journalistic stories.  His most recent trip was to **Sweden and Copenhagen** to "interview" guests.  Such "guests can easily be interviewed with the use of Skype technologies, as Goodman has down with a myriad of other "guests".

46.        The Counterclaimant has not offered a particularized set of injuries and damages that he has suffered.  Goodman must show that he (or more correctly his corporations [**MDSI/21$^{st}$c3D**]) have suffered some injury-in-fact.  Goodman has failed to set forth any actual injuries that he has suffered as a result of the Plaintiff's (Sweigert) conduct.  The existence of a measurable losses has not been alleged by Goodman.  It appears the opposite is true, Counterclaimant Goodman is enjoining measurable prosperity (overseas trips).

47.        New York does not recognize a common-law cause of action to recover damages for harassment". *Daulat v. Helms Bros., Inc.* 18 AD3d 802, 803 [2 Dept 2005].  Meanwhile, a claim for defamation must not only contain the "particular words complained of," but it must "provide the time, place and manner of the purported defamatory statement".  *Grynberg v. Alexander's, Inc.,* 133 AD2d 667, 668 [2 Dept 1987].

48.        As Counterclaimant Goodman has not the special pleading requirements of CPLR § 3016 to state a cause sounding in defamation, Goodman has no standing to discuss his claims of vague and conclusory "damages".

### *UNNAMED CO-CONSPIRATORS (CIVIL CONSPIRACY)*

49.        It is instructive to note that Goodman provides no names, or identification, of the mysterious group of "co-conspirators".  This vague and ambiguous claim ("co-conspirators") does not address exactly what conspiracy these parties are members of.  Assuming, arguendo, that these "co-conspirators" are participating in "The Campaign", there are no further details given.  Assuming, arguendo, that Goodman is attempting to fashion a claim for civil conspiracy, again he fails completely.  It is well settled law that liability for a civil conspiracy depends on the performance of some underlying tortious act, the conspiracy is not independently action; rather, it is a means for

**PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

establishing vicarious liability for the underlying tort. *Beck v. Prupis*, 529 U.S. 494 (2000). A civil conspiracy is not an independent wrong but rather "a means for establishing vicarious liability for the underlying tort." *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983), see also *Beck*. In order to sustain a claim for conspiracy, the plaintiff [Defendant counter-claim plaintiff] must prove that "(1) two or more persons agreed to commit a wrongful act, (2) [the defendant] (in this case Plaintiff) joined the conspiracy knowing of at least one of the goals of the conspiracy and intending to help accomplish it, and 93) one or more of the violations was committed by someone who was a member of the conspiracy and acted in furtherance of the conspiracy." *Cabello v. Fernandez-Larios*, 402 F.3d 1148 at 1159. In view of the foregoing, it appears there are no surviving underlying torts that the Defendant can pursue. Furthermore, Defendant has proffered no artifacts or evidence of damages that resulted from the illusionary civil conspiracy. This would make the allegation of a civil conspiracy moot. A civil conspiracy claim is not actionable without damages.

50.     New York does not recognize civil conspiracy to commit a tort as an independent cause of action (see *Alexander & Alexander of N.Y. v Fritzen*, 68 NY2d 968, 969; *Brackett v Griswold*, 112 NY 454, 466-467; *Blanco v Polano*, 116 AD3d 892, 895-896; *Dickinson v Igoni*, 76 AD3d 943, 945). However, a plaintiff may plead the existence of a conspiracy in order to connect the actions of the <u>individual defendants</u> with an actionable, underlying tort, and establish that those actions were part of a common scheme (see *Alexander & Alexander of N.Y. v Fritzen*, 68 NY2d at 969; *Blanco v Polano*, 116 AD3d at 896). Under New York law, "[i]n order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a cognizable tort, coupled with an <u>agreement between the conspirators</u> regarding the tort, and an overt action in furtherance of the agreement" (*Perez v Lopez*, 97 AD3d 558, 560; see *1766-68 Assoc., LP v City of New York*, 91 AD3d 519, 520; *Abacus Fed. Sav. Bank v Lim*, 75 AD3d 472, 474). Counterclaimant Goodman has **NOT** named co-conspirators, additional defendants, or other individuals that would be part of this civil conspiracy. This cause of action has failed as an independent tort and is not associated with any other actionable tort.

**SUMMARY**

22

**PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

51.    Defendant Counterclaimant Goodman offers a jumble of irrelevances, smears and unsubstantiated insinuations without a shred of evidence in his legally nullified and moot "COUNTER-CLAIM" (filed without an accompanying Certificate of Service). The entire pleading is little more than an angry missive directed at the Plaintiff (Sweigert) for daring to act on Goodman's 3/30/2018 invitation to bring a lawsuit.

52.    The bulk of Goodman's "libel and defamation" allegations have been purportedly referred to the N.Y.P.D. and the F.B.I. by Goodman and his sidekicks. Goodman should be able to present the evidence to this Court that was presented to the F.B.I. and the N.Y.P.D. These law enforcement agencies, just as this Court, have had to suffer with Goodman the self-professed "911 truther" and "targeted individual". See *Rossi v. Attansio*, 48 A.D.3d 1025 (3d Dep't 2008). Here, as in Rossi, the victim (like Plaintiff Sweigert) was accused of criminal conduct (as with Goodman's allegations). Suddenly, Goodman has no evidence to provide this Court of the alleged criminal conduct of the Plaintiff (Counterclaim defendant Sweigert).

53.    In his "COUNTER-CLAIM" Goodman now expects this Court to behave like his naïve audience and accept his stunningly delusional conspiracy theories which is the grist in the mill of the CrowdSource The Truth social media podcast empire. Goodman lives in a world riddled with paranoia as evidenced by his 12/11/2017 YouTube video production [**Exh.1**], believing himself to be the target of an explosive device that detonated 23 city blocks from his high rise apartment.

54.    Moreover, the Defendant's (Counterclaimant's) conclusory allegations, vague accusations and references to ambiguous "co-conspirators" provides no smoking gun of evidence and is a completely insufficient pleading of this nature. Goodman has failed to allege specific actions taken by the Plaintiff to injure the Defendant to support any of Goodman's claims. The entire "COUNTER-CLAIM" should be dismissed, ignored, or treated as a legal nullity. *Goshen v. Mutual Life Ins. Co. of New York*, 98 N.Y. 2d 314 (2002).

55.    Goodman should be held in contempt for his obvious mockery of the federal judiciary and his fondness for the use of the term "**fake lawsuits**" [**Exh.1**]. At the time of this writing Goodman is busy shrouding himself in the cloak of a martyrdom, comparing this present lawsuit to a Clintonesque attack on himself. Goodman makes these remarks (in his 10/23/2018 video production) while interviewing self-professed serial killer Larry Nichols.

[EXHIBIT FIVE [**Exh.5**]]

**PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

56.     Goodman cannot correct the fatal procedural flaws and insufficiencies that are embedded in his pleadings. In fact, the sloppy and cavalier manner in which Goodman approaches this Court (no filing of a Certificate of Service) underscores Goodman's contempt for the entire federal judicial framework.  In fact, if someone does bring an action against Goodman – which he himself invited on 3/30/2018 [Exh.2] – Goodman accuses them of behaving in a Clintonesque manner by indulging in a "fake lawsuit".  The utter contempt that Goodman displays, lack of adherence to even basic procedures of the federal courts, and the filing of vague and ambiguous (wishy washy) claims demand that this Court deny all relief requested by Goodman in the legally moot "COUNTER-CLAIM".

### ATTESTATION

I hereby attest that the foregoing is accurate and true under the penalties of perjury.  Further, I hereby attest that the attached exhibits are accurate and true copies of source documents located on the Internet.

Signed this _____ day of November, 2018

_____
Plaintiff, D. George Sweigert
Pro se plaintiff acting as private attorney general

PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"

# EXHIBITS

I hereby attest that the foregoing is accurate and true under the penalties of perjury.  Further, I hereby attest that the attached exhibits are accurate and true copies of source documents located on the Internet.

Signed this _____ day of November, 2018

_____
Plaintiff, D. George Sweigert
Pro se plaintiff acting as private attorney general

**PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S "COUNTER-CLAIM"**

**EXHIBITS**

**To accompany Plaintiff's**

**AMENDED REPLY**

**to Defendant's "COUNTER-CLAIM"**

I hereby attest that the foregoing is accurate and true under the penalties of perjury.  Further, I hereby attest that the attached exhibits are accurate and true copies of source documents located on the Internet.

Signed this ___6___ day of November, 2018

Plaintiff, D. George Sweigert

Pro se plaintiff acting as private attorney general

# EXHIBIT ONE

YouTube video production appearing on the Jason Goodman" channel.

https://www.youtube.com/watch?v=gqwV8UfBd5g

12/11/2017



Port Authority Bus Terminal Explosion Deemed 'Botched Terror Attempt' By NYPD

Jason Goodman



4,455 views

Published on Dec 11, 2017

I've posted this video to let everyone know that although the explosion this morning was very close to my home and Crowdsource the Truth headquarters, I was not injured. Thanks to those who have inquired.

SHOW MORE

I've posted this video to let everyone know that although the explosion this morning was very close to **my home and Crowdsource the Truth headquarters,** I was not injured.   Thanks to those who have inquired.

Linked to ISIS, this seems to have been a scare tactic by an impotent terrorist, similar in scope to explosions that took place on 23rd Street in Chelsea (**also very near my home**) just over one year ago. Fortunately no serious injuries have been reported.

Crowdsource the Truth has been exposing fraud, corruption and crime for more than one year. As we grow in viewership and effectiveness, **our effort has come under consistent heavy attack by a determined group of misguided individuals.**

**These are truly despicable people who rely on spin, speculation, intimidation, exaggeration, fabrication, and malicious lies.** They have concentrated their efforts to conceal the truth and present a manufactured, patently false narrative and fraudulent conclusions.

While they do this, they attempt to **achieve financial gain** through a wide range of methods including monetized YouTube channels, Patreon solicitations, blockchain driven sites, fraudulent charity fundraising efforts, **baseless fake lawsuits** that abuse civil legal procedure and other methods.

The attacks are focused not only on **the privately owned corporation under which I create the video and social media content for Crowdsource the Truth,** but also on me personally, assailing my physical characteristics and religious heritage in a way that can only be described as hateful and un-American. They target even those brave, honest, hard working patriots who have defied corrupt authority to step forward and expose crimes that impact us all.

**The latest efforts of this nefarious group have graduated to a level that demands action. Their malicious attacks have gone too far. Their deception must be exposed. They must face justice for their acts.**

They mask their method as childish antics and "troll" behavior but this is a charade to hide their true, far more sinister purpose. They antagonize targets to elicit engagement and perpetuate

discord. They aim to make the very act of addressing their claims or actions appear to bring down the value of the content here. When lies go unchallenged, some may begin to believe them.

This group also aims to raise their profile and profits by exploiting the explosive growth of the fantastic audience here, while they continue to deceive and attempt to take advantage of the Crowdsource community. To more effectively neutralize their efforts, **Crowdsource the Truth will go back to ignoring them and remain dedicated to investigative journalism,** crowdsource fact checking and the serious work we have all set out to do. If you also wish to ignore these individuals, please continue to enjoy that effort here.

Those interested in learning how the misguided, malignant personnel are carrying out their nefarious plans and help put an end to their wrongdoing may do so at a new YouTube channel "Exposing the Chavez Hoax" with content coming soon, link below:

https://www.youtube.com/channel/UCE7t...

Thank you for your ongoing support. Sponsor Crowdsource the Truth
http://paypal.me/crowdsourcethetruth https://www.patreon.com/crowdsourceth...

BTC - 14y2bEJ484DTbQwthX51VWpcRtk9Q7kmQQ

ETH - 0x07a23Ac0EBb5936d60A8cBfE07D64A579Cc756c9

LTC - LVP2d143QjPv1JaJpqgPHzQzv2qSQCDnbd

email truth@crowdsourcethetruth.org

merchandise - https://www.redbubble.com/people/csth...

**Legal Disclaimer: Sponsorship of Crowdsource the Truth is made at the sponsor's sole discretion. Sponsorship funds are not tax-deductible, are non-refundable, and do not represent any ownership, equity interest or decision-making authority in the organization.

[emphasis added]

# EXHIBIT TWO

---------- Original Message ----------

From: Spoliation Notice <spoliation-notice@mailbox.org>

To: Jason Goodman <truth@crowdsourcethetruth.org>, colin@patreon.com, feedback <feedback@calbar.ca.gov>, georg.webb@gmail.com

Cc: dutyofficer@ncric.ca.gov, msp.hq@maryland.gov, OFL@usdoj.gov, msp.superintendent@maryland.gov, Spoliation Notice <spoliation-notice@mailbox.org>

Date: November 30, 2017 at 6:06 PM

Subject: Re: I spoke with the lawyer at patreon

To:

Corporate Counsel

PATREON, INC.


Dear Mr. Sullivan:

As a courtesy to you we have provided the e-mail message we received from Mr. Goodman of New York City. He states in the subject of his e-mail "I spoke with the lawyer at patreon ..." then in the message "He says your an idiot."

So we shall proceed in an aggressive manner as you think the requestors seeking evidence preservation are idiots.

The terms and conditions of the previous litigation hold and anti-spoliation notice for Mr. Goodman are hereby applied to this message as if fully restated for the Patreon account:

GEORGWEBB, account holder George Webb Sweigert (included in e-mail)

Currently Mr. Sweigert is a resident of Capitol Heights, Maryland

Restated, we expect the same due diligence in the preservation of electronic evidence be applied to the above named account (GEORGEWEBB) as was requested for Mr. Goodman.

This notice is also your pre-litigation notice that PATREON will be named as a co-defendant in a federal lawsuit pursuant to federal and State of California racketeering laws.

Both Mr. Goodman and Mr. Sweigert have acknowledged receipt of an evidence preservation letter on July 5th, 2017 that specifically addressed issues related to wire fraud and racketeering concerning issues related to a "dirty bomb hoax" in June, 2017.

Both of these individuals came to the attention of the Federal Bureau of Investigation as persons of interest related to the closure of the Port of Charleston, S.C. due to a "dirty bomb hoax" attributed to the Goodman/Sweigert YouTube news show.  The wide-spread reporting of this hoax was reported in the New York Times and CNN. It has been alleged that the creation of panic on the Goodman/Sweigert new show was intentional and designed to drive traffic/views to the YouTube news show operated by Mr. Goodman and Mr. Sweigert)

Now, allegedly, Goodman/Sweigert have brought their brand of wire fraud to Patreon.

If Patreon desires to be uncooperative in these simple requests to preserve evidence, then Patreon can answer in federal and state court regarding your company's involvement in the alleged Goodman/Sweigert wire fraud scheme.  By cooperating with the distribution of fraudulent information over the wires of the Internet for profit and gain you have become, allegedly, a racketeering enterprise associate of Goodman/Sweigert.

As Mr. Sweigert, Mr. Goodman's partner, has filed federal lawsuits against the U.S. Department of Justice and the FBI in Washington, D.C., so as a courtesy to you, those agencies have been included in this communication.  In this manner, they can monitor the situation and update appropriate case

files.

As you appear uncooperative, relevant agencies in San Francisco have been provided copies of this message to help ensure your compliance with evidence laws.

Warm regards,

"Idiot" Evidence Preservation Team

---

> On November 30, 2017 at 3:00 AM Jason Goodman <truth@crowdsourcethetruth.org> wrote:

>

>

> He said you're an idiot. Hahahaha.

# EXHIBIT THREE

**Re: Warning and Caution Notice**

Jason Goodman<truth@crowdsourcethetruth.org>

3/30/2018 4:36 PM

To Spoliation
Notice  Copy corina.davis@redbubble.com,   colin@patreon.com,   lawenforcement@paypal.c
om,   George Webb

Mr. David George Sweigert,

Mental illness is a serious matter, you need to seek help. You are hurting yourself by generating
a growing collection of evidence that indicates very strongly that you are engaged in an
organized criminal harassment campaign against me personally as well as other serious
potentially criminal offenses. Every person you have CC'd on this message fully realizes that no
actual lawyer would send anonymous messages from the "Evidence Collection" department and
the messages themselves represent harassment as I have instructed you to terminate
communications with me.

**I have submitted my evidence against you to the NY FBI field office** and anticipate they will
contact you soon. **If you'd like to challenge me in civil court, I invite you to file your
complaint.** It will merely save me the filing fees when I counter sue you for the well
documented slander and defamation campaign you have been waging which includes per se libel
among other civil torts and potential criminal actions on your part.

You are making matters far worse for yourself every day. My friendly advice is that you cease
and desist and discontinue your harassment and / or any mention of me or my company moving
forward.

Jason Goodman

[emphasis added]

# EXHIBIT FOUR

YouTube video production appearing on the Jason Goodman" channel.

https://www.youtube.com/watch?v=7mMoUgXCPBM

06/03/2017





Who is Spoofing the #SethRichFiles

 Jason Goodman


13,871 views

+ Add to    Share    ... More

Streamed live on Jun 3, 2017
Category    News & Politics



Who is Spoofing the #SethRichFiles

 Jason Goodman

13,871 views

+ Add to    Share    ... More

# EXHIBIT FIVE

YouTube video production on the "Jason Goodman" channel

https://www.youtube.com/watch?v=DCzjIueasRE

10/23/2018



**David Brock, Peter W Smith and Arkansas – Larry Nichols Remembers "Troopergate"**

Jason Goodman

Subscribe 68K

4,857 views

VIDEO TRANSCRIPT

05:15  GOODMAN: There are two lawsuits pending against me, one from Robert David Steele and one from David Sweigert the brother of George Webb Sweigert.  I wonder if these are not intended to put the type of reputation destruction and financial destruction on me that is the classic hallmark of these Clintonesque tactics that you [Larry Nichols] now say have permeated the entire Democratic party.

Streamed live 22 hours ago [10/23/2018]
As Robert Mueller's Special Counsel's Office nears the end of its rope, he and his cohorts grasp desperately for anything that can remotely resemble evidence of wrongdoing. The May 2017 death of Peter Smith has come back into the news cycle as the "Russia Collusion" narrative gets sloppily pinned on a dead man. Peter's history investigating criminal activity by Bill and Hillary Clinton is worthy of additional review. Larry joins me to share his first hand experience and recollections of Troppergate, a Clinton scandal Peter W Smith was directly linked to.

Visit Larry's website – http://nicholslive.com/

D. GEORGE SWEIGERT, C/O
P.O. BOX 152
MESA, AZ 85211

November 6, 2018

PRO SE DIVISION
Clerk of the Court
U.S. District Court for the SDNY
(FOLEY SQUARE)
500 Pearl Street
New York, New York 10007-1312

SUBJECT:     Legal deficiencies of Docket no. 49, filed 10/26/2018

REF:     (a)     Local Rule 7.1

TO WHOM IT MAY CONCERN:

The Defendant (Goodman) has caused to be filed another legal nullity in the form of the subject docketed pleading, styled as the following:

> MOTION FOR RULING TO SHOW CAUSE FOR DEFENDANT'S CONDUCT OF PROVIDING FALSE ADDRESS & PERSISTENT EFFORTS TO AVOID SERVICE

This pleading utterly fails to comply with ref: (a) in that it is not a verified pleading and offers no verification under the penalties of perjury for the attached exhibits.  Further, the Defendant is making a motion against the Defendant which is a circular error.

Defendant Goodman is complaining about "non-service" of the ANSWER (Doc. No. 35, 10/10/2018) which has been answered several times by the undersigned.  Constructive service is complete.

For the foregoing reasons the undersigned shall treat this pleading as a legal nullity.

Respectfully,

D. George Sweigert

Copy furnished

Jason Goodman
252 7th Avenue #6S
New York, NY 10001

1  D. GEORGE SWEIGERT, C/O
   P.O. BOX 152
2  MESA, AZ 85211

3

4

5

6          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF NEW YORK
7                   (FOLEY SQUARE)

8  D. GEORGE SWEIGERT                    Case No.:  1:18-cv-08653-UA

9          Plaintiff,

10 vs.

11 JASON GOODMAN

12          Defendant               CERTIFICATE OF SERVICE

13

14              CERTIFICATE OF SERVICE

15

16      The Plaintiff certifies under penalties of perjury that the enclosed documents have been sent via First Class

17 postage paid U.S. Mail to:

18
                    Jason Goodman
19                  252 7th Avenue #6S
                    New York, NY 10001
20
                    PRO SE DIVISION -- 200
21                  Clerk of the Court
                    U.S. District Court for the SDNY
22                  (FOLEY SQUARE)
                    500 Pearl Street
23                  New York, New York 10007-1312

24                  Respectfully dated this day _6_ November, 2018,

25

26                  _____

27                  D. GEORGE SWEIGERT

28
                    CERTIFICATE OF SERVICE

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

# PRIORITY MAIL 2-Da

EXPECTED DELIVERY DAY: 11/08/18

SHIP
TO:

NEW YORK, NY 10007

USPS TRACKING NUMBE



9505 5067 1231 8310 0006 26

**PRIORITY**
**★ MAIL ★**

📅 DATE OF DELIVERY SPECIFIED *

* Domestic only

FROM:

USM_P3
SDNY,

TO:

D. GEORGE SWEIGERT, C/O
P.O. BOX 152
MESA, AZ 85211

PRO SE DIVISION
Clerk of the Court
U.S. District Court for the SDNY
(FOLEY SQUARE)
500 Pearl Street
New York, New York 10007-1312

*Suite 200 Pro Se*

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

**VISIT US AT USPS.COM®**

EP14F July 2013



UNITED STATES