D. GEORGE SWEIGERT, C/O
P.O. BOX 152
MESA, AZ 85211

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
(FOLEY SQUARE)

D. GEORGE SWEIGERT

       Plaintiff,

vs.

JASON GOODMAN

       Defendant

Case No.:  **1:18-cv-08653-VEC**

Judge Valerie E. Caproni
Magistrate Judge Stewart D. Aaron

**NOTICE OF PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION AGAINST THE DEFENDANT PURSUANT TO NY CPLR § 6301**

---

**NOTICE OF PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION
AGAINST THE DEFENDANT PURSUANT TO NY CPLR § 6301**

ATTENTION TO THE CLERK OF THE COURT AND ALL INTERESTED PARTIES (**LOCAL RULE 7.1**):  NOW COMES THE PRO SE plaintiff, a layman non-attorney who is acting in the capacity of private attorney general in a public interest lawsuit, to respectfully **MOTION** this Court for a preliminary injunction.

This **MOTION** seeks this Court to use its inherent judicial power and provide **INJUNCTIVE RELIEF** and cause to be issued a **PRELIMINARY INJUNCTIVE ORDER** to cause the take-down of illegal video productions pursuant to N.Y. Civil Practice Law and Rules (C.P.L.R.) **§ 6301**

The supporting rationale for this proposed action is contained in the accompanying pleading **MEMORANDUM OF POINTS AND AUTHORITIES TO SUPPORT PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION PER NY CPLR § 6301** which is filed contemporaneously with this notice.

1

1

2
The Plaintiff hereby attests to the foregoing as being truthful and accurate pursuant to Local Rule 7.1.

3

4    Signed this 18 day of November, 2018

5

6    Plaintiff, D. George Sweigert
     Pro se plaintiff acting as private attorney general

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                    2

28    **NOTICE OF PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION
      AGAINST THE DEFENDANT PURSUANT TO NY CPLR § 6301**

D. GEORGE SWEIGERT, C/O
P.O. BOX 152
MESA, AZ 85211

RECEIVED
~~~~~~~~~~~~

2018 NOV 26  AM 11: 0?

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK
### (FOLEY SQUARE)

D. GEORGE SWEIGERT

   Plaintiff,

vs.

JASON GOODMAN

   Defendant

Case No.: 1:18-cv-08653-UA

**CERTIFICATE OF SERVICE**

## CERTIFICATE OF SERVICE

  The Plaintiff certifies under penalties of perjury that the enclosed documents have been sent via First Class postage paid U.S. Mail to:

     Jason Goodman
     252 7th Avenue #6S
     New York, NY 10001

     PRO SE DIVISION -- 200
     Clerk of the Court
     U.S. District Court for the SDNY
     (FOLEY SQUARE)
     500 Pearl Street
     New York, New York 10007-1312

    Respectfully dated this day_____18_____November, 2018,

     *D. S~~~~*

     D. GEORGE SWEIGERT

## CERTIFICATE OF SERVICE

D. GEORGE SWEIGERT, C/O
P.O. BOX 152
MESA, AZ 85211



RECEIVED
SOUTHERN ... U. ...
2018 NOV 26   AM 11: 04

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK
### (FOLEY SQUARE)

| | |
|---|---|
| D. GEORGE SWEIGERT | **Case No.:  1:18-cv-08653-VEC** |
|        Plaintiff, | |
| vs. | Judge Valerie E. Caproni |
| | Magistrate Judge Stewart D. Aaron |
| JASON GOODMAN | |
|        Defendant | **MEMORANDUM OF POINTS AND AUTHORITIES TO SUPPORT PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION PER NY CPLR § 6301** |

### MEMORANDUM OF POINTS AND AUTHORITIES
### TO SUPPORT PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION

PURUSUANT TO LOCAL **RULE 7.1**, NOW COMES THE PRO SE plaintiff, a layman non-attorney who is acting in the capacity of private attorney general in a public interest lawsuit, to respectfully PRAY THIS Court rely on its inherent judicial power and issue an appropriate gag order against Defendant Jason Goodman.  This request is sought pursuant to the Court's inherent powers, N.Y. Civil Practice Law and Rules (C.P.L.R.) § 6301 and §6313, Civil Rights Law §§ 50-51, General Business Law §§ 349-350 and N.Y. Penal Law § 135.60.

### DECLARATION / ATTESTATION PURSUANT TO LOCAL RULE 7.1

I hereby attest that the information stated herein is true and correct to the best of my ability under penalties of perjury.   Signed this _____ *18* day of November, 2018

                                              D. George Sweigert, pro se plaintiff

## Contents

I.   PRELIMINARY STATEMENT ................................................................6

II.  STATEMENT OF APPLICABLE FACTS ..........................................7

III. LAW AND ARGUMENT .....................................................................12

IV.  SUMMARY / RELIEF REQUESTED ...............................................20

MEMORANDUM OF POINTS AND AUTHORITIES
TO SUPPORT PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION

TABLE OF AUTHORITIES

## Cases

; *Branzberg v. Hayes*, 408 US 665, 691-692 ........................................................................... 17

*Binns v. Vitagraph Co.*, 210 N.Y. 51 ..................................................................................... 16

*Blumenthal v. Picture Classics*, 235 App. Div. 570, affd.  261 N.Y. 504 ............................ 16

*Blumenthal v. Picture Classics, Inc.* 257 N.Y.S. 800 (1st Dept. 1932) ................................ 15

*Dennis v. United States*, 341 U.S. 494, 508 ........................................................................... 17

*Doe v. Axelrod*, 73 N.Y.2d 748, 750 (1988) ........................................................................... 18

*Gautier v. Pro-Football*, 278 App. Div. 431, 434-435, aff'd.  304 N.Y. 354 ....................... 16

*In re Application of Dow Jones & Company, Inc. et. al.* 842 F.2d 603, 607 (2nd Cir. 1988) ..................... 17

*Jiggets v. Perales*, 202 A.D.2d 341, 342 (1st Dep't 1994) ..................................................... 18

*Leviston v. Jackson*, 980 N.Y.S.2d 716, 719 (1st Dept. 2013) .............................................. 15

*Leviston*, 980 N.Y.S.2d at 719-720 ....................................................................................... 15

*Loftus v. Greenwich Lithographing Co.*, 182 N.Y.S. 428 (1st Dept. 1920); Durgom v. CBS, 214 N.Y.S.2d 752 (1st Dept. 1961) ........................................................................................................... 15

*Ma v. Lien*, 198 A.D.2d 186, 187 (1st Dep't 1993) ................................................................ 19

*Marcus v. Jewish Nat'l Fund*, 158 A.D.2d 101, 105-06 (1st Dept. 1990) .............................. 18

*Marcus*, 158 A.D.2d at 105-106 ............................................................................................ 19

*New York State Broadcasters Assn. v. United States*, 414 F.2d 990, 997 (2nd Cir.1969) ............... 17

*Nobu Next Door LLC v. Fine Arts Hous., Inc.* 4 N.Y.3d 839, 840 (2005) .............................. 18

*Ohralik v. Ohio State Bar Ass'n*, 436 US 447, 456 (1978) ..................................................... 16

*Ohralik*, 436 U.S. at 456 ........................................................................................................ 17

*Ohralik*, 436 U.S. at 462 ........................................................................................................ 17

*Onassis v. Christian Dior-New York.*, 472 N.Y.S.2d 254, 258 (NY.Sup.Ct. 1984) ............... 15

3

**MEMORANDUM OF POINTS AND AUTHORITIES**
**TO SUPPORT PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION**

*Onassis,* 472 N.Y.S.2d at 258..................................................................................................15

*Onassis,* 472 N.Y.S.2d at 260..................................................................................................15

*Onassis,* 472 N.Y.S.2d at 263..................................................................................................16

*People v. Romero,* 91 N.Y.2d 750, 756 (1998) ......................................................................19

*Quinn* supra at 556 .................................................................................................................17

*Quinn v. Aetna Life and Cas. Co.,* 96 Misc.2d 545, 554 (Queens.Cty.Sup.Ct.1978)..............16

*Ryan v. Volpone Stamp Co.,* 107 F.Supp.2d 369, 391 (S.D.N.Y. 2000)...................................15

*State v. Colo. St. Christian College of the Church of the Inner Power,* 346 N.Y.S.2d 482, 487 (Sup. Ct. N.Y. Cty.

1973))......................................................................................................................................19

*Stutman v. Chemical Bank,* 95 N.Y.2d 24, 29 (2000).............................................................18

*Sutton v. Hearst.,* 277 App.Div.155 .......................................................................................16

*The People of the State of New York (by Eric T. Schneiderman) v. FanDual, Inc.,* New York County Clerk's Index

No. 453056/15 ........................................................................................................................19

*Woody Allen v. National Video, Inc.* 610 F.Supp 612 (SDNY 1985).......................................16

## Statutes

§§ 50-51 ..................................................................................................................................16

**18 U.S.C. § 1001** ............................................................................................................9, 10, 13, 15

Civil Rights law §§ 50-51 ..........................................................................................................1

General Business Law §§ 349-350..............................................................................................1

N.Y. Civil Rights Law §§ 50 – 51 ............................................................................................15

N.Y. Civil Rights Law §§ 50-51 .....................................................................................6, 18, 20

N.Y. GBL § 349(h).................................................................................................................18

N.Y. GBL §§ 349 and 350 ......................................................................................................19

N.Y. GBL §§ 349 or 350 .........................................................................................................18

N.Y. GBL §§ 349-350.............................................................................................................20

**MEMORANDUM OF POINTS AND AUTHORITIES**
**TO SUPPORT PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION**

N.Y. GBL Section 349 ........................................................................................................... 18

N.Y. General Business Law (GBL) §§ 349-350 ................................................................... 6

N.Y. General Business Law §§ 349 and 350 ....................................................................... 18

N.Y. Penal Law § 135.60 ........................................................................................... 1, 6, 12

N.Y. Penal law § 135.60(4) ................................................................................................ 13

N.Y. Penal law § 135.60(5) ................................................................................................ 13

N.Y. Penal Law § 135.60(5) ............................................................................................... 14

N.Y. Penal Law § 215.25 .................................................................................................... 17

New York's Civil Rights Law §§ 50-51 .............................................................................. 16

U.S. Federal Trade Commission Act .................................................................................. 20

## Other Authorities

(C.P.L.R.) § 6301 and §6313 ................................................................................................ 1

## Rules

CPLR § 6301 ....................................................................................................................... 19

CPLR §§ 6301 and 6313 ..................................................................................................... 19

MEMORANDUM OF POINTS AND AUTHORITIES
TO SUPPORT PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION

## I.    PRELIMINARY STATEMENT

1.      As set forth in the attached affidavits and exhibits annexed thereto, there has unquestionably been violations of N.Y. Civil Rights Law §§ 50-51, N.Y. Penal Law § 135.60 and N.Y. General Business Law (GBL) §§ 349-350 by Defendant/tortfeasor Goodman against the Plaintiff which requires court intervention and an order for a temporary injunction and/or a temporary restraining order.

2.      This instant request for injunctive relief (Plaintiff's SECOND motion) is more serious than that a previous request, as there are apparent criminal violations of N.Y. Penal Law § 135.60 by Defendant/tortfeasor Goodman.  The previous motion for such relief focused on the Plaintiff's image, likeness, photograph, portrait and/or visual representation on merchandise marketed by the Defendant on RedBubble.Com.  This (second) motion focuses on the outrageous threats and intimidation hurled at the Plaintiff by the Defendant on several social media video content forums.  Defendant/tortfeaor Goodman's threats include criminal prosecutions, accusations that the plaintiff violated 18 U.S.C. § 1001 and the revelations of private facts that the Plaintiff's wife (at the time) slept with his brother and that the Plaintiff's father made him sleep on newspapers covered with dog sh_t when Plaintiff was a small child.  All broadcast by Defendant Goodman to his world wide audience.

3.      Although the Defendant (tortfeasor) has accused the Plaintiff of filing "excessive motions" [see Doc. No. 64, 11/14/2018] the foregoing laws REQUIRE the Plaintiff to take litigation action now to protect his rights prior to a one year tolling period of the alleged offensive misconduct.  The operative date in this case is November 27, 2017 when the Defendant/tortfeasor (acting through his companies) distributed the Plaintiff's likeness, image, photograph, portrait and/or visual representation in a wholly unauthorized manner on several video broadcast platforms, for example: YouTube, PATREON, Facebook, etc.  Defendant/tortfeasor Goodman has **never** obtained written permission from the Plaintiff to distribute these materials.

4.      Nevertheless, Defendant Goodman widely disseminated these materials in a pervasive manner to commercialize and exploit the Plaintiff's personality and ignore his rights as protected by the foregoing cited laws.

**MEMORANDUM OF POINTS AND AUTHORITIES**
**TO SUPPORT PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION**

1  In fact, tortfeasor Goodman has singled-out and unduly exploited the Plaintiff as a central character to the

2  Defendant's commercial operations ("Crowdsource the Truth" (**CSTT**) video distribution).

3      5.      The Plaintiff now seeks relief from this Court in the form of a temporary injunction and/or

4  restraining order to enable a "take-down notice" to cease the broadcast of video content that violates various N.Y.

5  laws.

6                 **II.**      **STATEMENT OF APPLICABLE FACTS**

7

8      6.      Defendant Goodman is self-identified as the "Chief executive Officer" [**CEO**] of Multi-Media

9  Systems (aka Software) Design, Inc. [**MDSI**] and 21st Century 3D [**21stc3D**].  **MDSI** is a N.Y. chartered corporation

10  (as shown in **EXHIBIT ONE [Exh.1]**) that has purportedly secured the trademark "Crowdsource the Truth"

11  (**CSTT**) registered to the address that Mr. Goodman has used in this instant litigation (see Defendant's address in

12  Court docket).  The U.S. Patent and Trademark Office (USPTO) trademark application lists Mr. Goodman as

13  **"CEO" of MDSI.**  Depicted in **EXHIBIT TWO [Exh.2]** is the registration of the trademark of "Crowdsource The

14  Truth" (**CSTT**) with the USPTO, shown in **EXHIBIT THREE [Exh.3]**.  As shown in **EXHIBIT FOUR [Exh.4]**

15  the e-mail address used in the original USPTO application of January 12, 2018 is truth@crowdsourcethetruth.org,

16  which is also listed for the Defendant in the Court docket.  On the USPTO application under "TYPE" the term

17  "CORPORATION" is listed [**Exh.4**].  A specimen exhibit was attached to the original 01/12/2018 USPTO

18  application, which includes a screen shot of the **CSTT** YouTube channel (attached as **EXHIBIT FIVE [Exh.5]**).  It

19  is curious to note that the telephone number **212-244-8585** is used on the USPTO application [**Exh.4**].  A website

20  for the Chamber of Commerce for New York City includes this phone number (**212-244-8585**) and the MDSI

21  corporate name with a notation "Jason Goodman, President" (**EXHIBIT SIX [Exh.6]**).  An identical business

22  address and phone number appear for a California business directory listing of **21st CENTURY 3D [21stc3D]**

23  (**EXHIBIT SEVEN [Exh.7]**) related to **MDSI**.

24      7.      In a video productions widely disseminated in a pervasive manner on December 11, 2017

25  [12/11/2017] (**EXHIBIT EIGHT [Exh.8]**) Mr. Goodman states in the "information" section of the video that he

26  believes his private corporation is under attack.

<div align="center">7</div>

27

28

The attacks are focused not only on **the privately owned corporation under which I create the video and social media content for Crowdsource the Truth**, but also on me personally, assailing my physical characteristics and religious heritage in a way that can only be described as hateful and un-American. They target even those brave, honest, hard working patriots who have defied corrupt authority to step forward and expose crimes that impact us all. [emphasis added]

8.      The foregoing facts indicate that "Crowdsource The Truth" (**CSTT**) is a mercantile, commercial and trade operation which is profit focused.  CSTT relies on the use of a N.Y. state charted corporation (**MDSI**) to conduct business.  Mr. Goodman has identified himself as the **CEO of MDSI**.  It is clear that Mr. Goodman holds himself out as the President and/or CEO of a commercial concern known as **MDSI** and/or **21ˢᵗc3D** to facilitate the **CSTT** media empire.

9.      Defendant/tortfeasor (CEO) Goodman – through his companies (**MDSI, 21ˢᵗc3D**) – has been warned (over a year ago) to remove the portrait, image, likeness, and/or visual representation of the Plaintiff from merchandise marketed by CSTT.  Attached as **EXHIBIT NINE [Exh.9]** is a pre-litigation evidence preservation notice sent via electronic message to the California company "RedBubble" (see e-mail dated November 27, 2017 [11/27/2017]).  The RedBubble.Com situation is the subject of a **previous motion** for injunctive relief.

10.     Attached as **EXHIBIT TEN [Exh.10]** is the **CSTT (MDSI/21ˢᵗc3D)** video production that was widely disseminated in a pervasive manner on November 27, 2017 [11/27/2017] (**[Exh.10]**).  Tortfeasor Goodman included the likeness, portrait, photograph, image or visual representation of the Plaintiff in a dunce cap and straight jacket for this video production.

11.     Attached as **EXHIBIT ELEVEN [Exh.11]** is the **CSTT (MDSI/21ˢᵗc3D)** video production that was widely disseminated in a pervasive manner.  This video production is entitled "The Trolls of Mount Shasta", published 05/04/2018.  The information block of the video includes this phrase, "**Dave Acton has officially gone too far. He is a public menace and he should be prosecuted**".  This video features: Jason Goodman, Joe Napoli of Orange County, California, Harmon Wilfred of New Zealand, and Harmon Wilfred's estranged wife of Toronto, Canada.  (**EXHIBIT TWELVE [Exh.12]** contains a press release issued by the Wilfred's to discuss the renouncement of U.S. Citizenship).  The following relevant remarks are made in the video:

| | | |
|---|---|---|
| 05:44 | GOODMAN: | I've got with me today Joe Napoli and Harmon and Carolyn Wilfred.  Because there is someone I am really loathe to even mention and he is the brother of George Webb Sweeeiiiggeert [satire] as I am apt to say.  It is Dave Acton I am talking about. |
| 01:45 | GOODMAN: | Dave has become super interested in talking about this and I find it strange because it really does seem to coincide with me contacting the F.B.I.  About his aggressive cyber harassment.  **You see, I think David is engaged in a crime.**  I think using the Internet to tell lies about people – to accuse people of crimes – and he has told lies.  **I have got the evidence of it.** |
| 02:22 | GOODMAN: | **He has told people that I am paid by Mossad.  [Note: flatly denied by Plaintiff]** |
| 02:50 | GOODMAN: | It is important that Dave Acton be shut down from this activity – now!  Dave Acton is a coward and Dave Acton is a liar. |
| 03:17 | GOODMAN: | I would like Dave to go away and stop broadcasting.  **But, you see, he resists that.  And there is a little something called 18 U.S.C. § 1001 and that is a law that makes it illegal to knowingly make a false statement.**  For instance, when Dave goes and contacts the police in South Dakota and tells them that Quinn Michaels and I are a danger to infrastructure. |
| 03:58 | GOODMAN: | This information about depleted uranium on the Maersk Memphis that came to me from George Webb, George Sweigert.  **David Sweigert's brother.**  Clearly those two are affiliated in that they're brothers. |
| 04:30 | GOODMAN: | **I believe they planned that incident at the Port of Charleston.** |
| 04:37 | GOODMAN: | I believe they are in league with Robert David Steele.  [see USDC for the ED Virginia (Richmond) CASE #: 3:17-cv-00601-MHL, District Judge M. Hannah Lauck, Robert David Steele v. Jason Goodman] |
| 05:05 | GOODMAN: | **Right now Joe, he [Sweigert] is trying to frame you and I for crimes of terrorism.**  Related to that incident at the Port of Charleston.  He has tried to malign Mr. Hudson, who we have learned is Marshall Richards. |
| 06:37 | GOODMAN: | George is a con-man. |
| 06:46 | GOODMAN: | I don't know if Dave is stupid.  I don't know if Dave has some mental disability.  That is for an expert to determine. |
| 07:02 | GOODMAN: | He [Sweigert] said he was captured by the Sandinistas.  From those two statements, I am extrapolating that his interactions with the CIA and the Sandinistas could indicate involvement in a criminal operation of Iran-Contra.  Now, that led to discussions, once we met Harmon and Carolyn, where I inquired if Harmon felt that .. uh.  If Dave might have known anything about these "bearer bonds" etc.  [reference to bank bonds] |
| 08:08 | GOODMAN: | **Now I don't want to speak about Dave's own brother having sex with his wife, which is disgusting.  I want to speak about how Dave is disgusting.** |

**MEMORANDUM OF POINTS AND AUTHORITIES
TO SUPPORT PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION**

08:40  GOODMAN:        And that's what has to happen to Dave now.  I am not going to punch Dave in the nose.  I am not going to do violence against Dave.  I am going to use the law.  **Dave needs to be prosecuted.  I think he is a menace.  Dave is a public menace.**

09:45  GOODMAN:        And now, this disgusting troll.  This wretch of a man.  This horrible potato adled [?] moron – David Sweigert   [cut to graphic, see below]





10:32  GOODMAN:        Here is what we are going to do Joe.  **We are going to start to assemble the evidence that we have.  Evidence that is going to link Dave and George and Robert David Steele and Manual Chavez and is it Eric O'Conner [?], Pete Seagate [?] that helped George with his legal case in Zanesville.**

13:10  GOODMAN:        This network of YouTube influencers that Dave has organized.

13:22  GOODMAN:        Dave is assembling a crew.

13:26  GOODMAN:        Any woman that would support Dave Acton, **Dave Sweigert**, and his disgusting actions.

14:11  GOODMAN:        **But the point is Dave, you behavior is unacceptable and I do believe it has risen to the level of criminality.  Making false statements to the authorities, and sending reports to senators, and all the things that you are doing.  And publishing a book, filled with these false statements.**

19:32  GOODMAN:        **What Dave is doing right now is hoaxing.  That law 18 U.S.C. § 1001 that is making a false statement.  This is what they used to charge General Michael Flynn.  This is what** they used to charge our friend Scott Bennet [see USSOCOM, Tampa, Florida].  And I am going to make it my business to find a prosecutor to charge Dave Sweigert and his accomplices with that crime.  Because I do believe that Dave is engaged in a crime.

20:24 GOODMAN: Dave is obviously vastly removed from reality so he needs to create his own reality. I don't know if that is because he is out of his mind.

26:17 GOODMAN: I have decided that it is time for this to end. **And you know what, Dave could choose to go away voluntarily. That would be nice. I would love to never see him, or hear him again. But, at this point I am pursuing legal action. As aggressively as I possibly can.**

28:46 GOODMAN: The game is over for these losers. **I really do hope that Dave brings this to some federal body that has the jurisdiction over criminal prosecution in this matter. Because I will see to it that that man is put in jail.** ["And however we can help we will help you" Harmon Wilfred] Thank you Harmon. HE is a cyber terrorist. HE is the one writing threat assessments from threat vectors coming from social media. And he is demonstrating that by creating those threats himself.

32:03 GOODMAN: **What's going to happen now is ... if there is any law enforcement getting involved in this they are going to come down with both feet on top of Dave and crush him and all of his co-conspirators. And if that man had any integrity and any courage, if he wasn't the worm that he is – the waist of oxygen, the disgusting human being. Who's own father knew that the proper place for him was to sleep on a newspaper with dog shit [Harmon smiles]. [emphasis added]**



**The Trolls of Mount Shasta**

Crowdsource the Truth 2

**MEMORANDUM OF POINTS AND AUTHORITIES
TO SUPPORT PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION**

### III.    LAW AND ARGUMENT

*DEFENDANT'S ACTIONS ARE CRIMINAL AND THIS VIDEO CONTENT IS ILLEGITIMATE AND SHOULD BE IMMEDIATELY REMOVED*

12.    Defendant/tortfeasor Goodman's speech in the "Trolls of Mt. Shasta" video production [**Exh.11**] is obviously designed as an artifice of coercion to silence the public discourse of the Plaintiff concerning the events that led up to the closure of the Wando marine Terminal at the Port of Charleston, S.C. on June 14, 2017.  Defendant Goodman wants the Plaintiff to surrender his rights to publish books about Critical Infrastructure Protection (CIP) and the Port of Charleston "dirty bomb hoax".  For example:

03:17  GOODMAN:        I would like Dave to go away and stop broadcasting.

And

26:17  GOODMAN:        I have decided that it is time for this to end.  **And you know what, Dave could choose to go away voluntarily.  That would be nice.  I would love to never see him, or hear him again.  But, at this point I am pursuing legal action.  As aggressively as I possibly can.**

13.    New York recognizes that such speech is a criminal act.  This is characterized as coercion in the second degree.  The only predicate requirement to establish "coercion" is that the actor (tortfeasor) must compel or induce the victim (Plaintiff) to engage in a certain conduct by installing fear.  In this statute (N.Y. Penal Law § 135.60) the actor (Goodman) must be "using force or engaging in any scheme, plan or pattern" to "compel or induce".  Quoting in relevant part:

**S 135.60 Coercion in the second degree.**

A person is guilty of coercion in the second degree when he or she compels or induces a person to engage in conduct which the latter has a legal right to abstain from engaging in, **or to abstain from engaging in conduct in which he or she has a legal right to engage**, or compels or induces a person to join a group, organization or criminal enterprise which such latter person has a right to abstain from joining, by means of instilling in him or her a fear that, if the demand is not complied with, the actor or another will:
   **4. Accuse some person of a crime or cause criminal charges to be instituted against him or her; or**
   **5. Expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule;**
   [emphasis added]

12

**MEMORANDUM OF POINTS AND AUTHORITIES**
**TO SUPPORT PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION**

14.     Defendant/tortfeasor Goodman's conduct in the "Trolls of Mount Shasta" video [Exh.11] is almost a textbook example of a gross violation of the foregoing cited N.Y. penal law.  To satisfy the requirement of N.Y. Penal law § 135.60(4)

15.     Defendant Goodman (under the watchful eye of Joe Napoli of Orange County, CA) accused the Plaintiff of violating 18 U.S.C. § 1001 in a widely disseminated and pervasive manner.  Goodman even insinuated he was compiling evidence for a criminal prosecution.  N.Y. Penal law § 135.60(4).

16.     Meanwhile, Goodman's misconduct fulfills the requisite requirement of N.Y. Penal law § 135.60(5) as Goodman makes the announcements to the public that (1) Plaintiff's brother slept with his wife and that (2) Plaintiff's father forced Plaintiff to sleep on newspaper covered in dog sh_t when the Plaintiff was a child.  The only purpose of these public announcements was to gain the Plaintiff's compliance and surrender his rights to public discourse.

17.     Caveat: the Plaintiff and this Court have labored through the unverified legal nullities passed off as "pleadings" by Defendant Goodman (see DEFENDANT'S ANSWER TO AMENDED COMPLAINT (Doc. No. 35, 10/10/2018) and COUNTERCLAIM TO AMENDED COMPLAINT (Doc. No. 44, 10/22/2018)).  These legal nullities (filled with conclusory allegations, slurs and insinuations) have **NO evidence attached.**  Yet, in the "Trolls of Mount Shasta" video [Exh.11] Defendant Goodman proclaims:

| | |
|---|---|
| 01:45  GOODMAN: | Dave has become super interested in talking about this and I find it strange because it really does seem to coincide with me contacting the F.B.I.  About his aggressive cyber harassment.  **You see, I think David is engaged in a crime.**  I think using the Internet to tell lies about people – to accuse people of crimes – and he has told lies.  **I have got the evidence of it.** |
| 10:32  GOODMAN: | Here is what we are going to do Joe.  **We are going to start to assemble the evidence that we have.  Evidence that is going to link Dave and George and Robert David Steele and Manual Chavez and is it Eric O'Conner** [?], Pete Seagate [?] that helped George with his legal case in Zanesville. |

18.     The centerpiece of Defendant Goodman's stunning attack on the Plaintiff appears to be the Plaintiff's two (2) book (attached as **EXHIBIT THIRTEEN [Exh.13]**) that address Critical Infrastructure Protection (CIP) and the Port of Charleston "dirty bomb hoax".

19.     Defendant/tortfeasor Goodman likes to get his way.  As the books in **EXHIBIT 13 [Exh.13]** point out, when Goodman did not receive a satisfactory answers from the Port of Charleston U.S. Coast Guard duty officer on June 14, 2017, he arranged for the transmission of 8,800 tweets and retweets to the U.S. Coast Guard District Headquarters on June 14, 2017.

20.     In much the same way, Defendant Goodman has widely disseminated in a pervasive manner video content to cast the Plaintiff has having committed crimes for which Goodman has "evidence".  The Plaintiff and this Court are patiently waiting for Defendant Goodman to produce this "evidence".  There is a growing cloud of suspicion that Defendant Goodman's numerous claims in dozens of video productions that he has **"evidence of crimes"** is a false attestation.  This is the means that Goodman purportedly instills fear – his claims to possessing **"evidence"** that he will provide to **"law enforcement"** to see the Plaintiff **"prosecuted"**.

21.     To ensure compliance, Defendant Goodman exposed or publicized a secret or asserted fact (see adultery and dog sh_t newspaper bed).  These statements were accompanied by Goodman's commentary to hold the Plaintiff up to "hatred, contempt and ridicule."  N.Y. Penal Law § 135.60(5).

22.     The bulk of the "Trolls of Mount Shasta" video **[Exh.11]** demonstrates how Defendant Goodman employs wrongful means to get HIS way, regardless if the course of conduct is malicious.  Here Goodman is attempting to pressure the Plaintiff to "go away", not "submit reports" to "government agencies" to stop speaking about the Defendant, and on and on.  Defendant Goodman wants the Plaintiff to surrender his rights – **or else.**

23.     Further, it appears Goodman conspired with **Joe Napoli** (of Orange County, CA) to carry out this scheme.  The Goodman/Napoli scheme seems to be to accuse the Plaintiff of immoral behavior and have him ridiculed in the community (adultery/dog sh_t newspaper bed).  The entire scheme seems designed to raise questions about the Plaintiff's professional work product and at the very least is yet another example of the professional trade libel that Goodman is so fond of.  Both Goodman and Napoli attempt to draw a nexus between some kind of disgusting behavior (suffered by the Plaintiff as a victim [adultery, and newspapers]) and the Plaintiff's professional

14

work product.  Both (Goodman/Napoli) insinuating that the Plaintiff is guilty of a crime (18 U.S.C. § 1001).  The

outcome is another Goodman demanded "Call To Action" [CTA] to have the Plaintiff jailed.

*PLAINTIFF SEEKS INJUNCTIVE RELIEF FOR VIOLATIONS OF N.Y. CIVIL LAW §§ 50-51*

    24.    Section 50 of the New York Civil Rights Law provides:

> "A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the
> name, portrait or picture of any living person without having first obtained the written consent of such a
> person …. Is guilty of a misdemeanor."

    25.    Having defined the offense, and declaring it to be illegal, § 51 of the Civil Rights law goes on to

provide civil remedies for the violation as well, including injunction and damages.  Once the violation is established,

the plaintiff may have an absolute right to an injunction, regardless of the relative damage to the parties.  *Onassis v.*

*Christian Dior-New York.,* 472 N.Y.S.2d 254, 258 (NY.Sup.Ct. 1984).  See *Blumenthal v. Picture Classics, Inc.* 257

N.Y.S. 800 (1st Dept. 1932), *Loftus v. Greenwich Lithographing Co.,* 182 N.Y.S. 428 (1st Dept. 1920); Durgom v.

CBS, 214 N.Y.S.2d 752 (1st Dept. 1961).  In *Onassis*, the Court posed a simple question "Is there a violation?"

*Onassis,* 472 N.Y.S.2d at 258.

    26.    In order to establish a violation under N.Y. Civil Rights Law §§ 50 – 51, a plaintiff must

demonstrate that the defendant used the plaintiff's name, portrait, picture or voice in the State of new York for

purposes of advertising or trade, without the plaintiff's expressed written permission.  See *Leviston v. Jackson,* 980

N.Y.S.2d 716, 719 (1st Dept. 2013).  "Civil rights Law § 51 authorizes a civil action for injunctive relief and

damages, including exemplary damages if a defendant acts knowingly in violation of that protection."  *Leviston,* 980

N.Y.S.2d at 719-720; *Ryan v. Volpone Stamp Co.,* 107 F.Supp.2d 369, 391 (S.D.N.Y. 2000).

> "The principle to be distilled from a study of statute and of cases construing it is that all persons,
> of whatever station in life, from the relatively unknown to the world famous, are to be secured against
> rapacious commercial exploitation … [I]t is intended to protect the essence of the person, his or her identity
> or persona from being unwillingly or unknowingly misappropriated for the profit of another."  *Onassis,* 472
> N.Y.S.2d at 260.

**MEMORANDUM OF POINTS AND AUTHORITIES**
**TO SUPPORT PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION**

27.     Insofar as trade purposes are concerned, the Plaintiff's situation is not where there was some incidental exposure. The reverse is true. The Plaintiff has been unduly featured and exploited by tortfeasor Goodman. (*Blumenthal v. Picture Classics*, 235 App. Div. 570, affd. 261 N.Y. 504). To be sure, in the case of these YouTube video productions, the likeness, portrait or photograph is directly tied to the product itself (see coffee cups and tote bags [**Exh.10-11**]). (see *Gautier v. Pro-Football*, 278 App. Div. 431, 434-435, aff'd. 304 N.Y. 354). Further, these YouTube attack videos (with **Joe Napoli** of Orange County, CA) is in a form separate and distinct from the dissemination of any valid news or information. (see *Binns v. Vitagraph Co.*, 210 N.Y. 51; *Sutton v. Hearst.*, 277 App.Div.155).

28.     Both the video productions described in **EXHIBITS TEN and ELEVEN [Exh.10 and 11]** include the image, portrait, likeness, visual representation and/or photograph of the Plaintiff. These video productions (widely disseminated in a pervasive manner) were created by Defendant/tortfeasor Goodman solely to harass, injure and intimidate the Plaintiff and to commercially exploit his personality as a "Deep State Dunce". Such reprehensible conduct is in no way newsworthy, or entitled to protection under New York's Civil Rights Law §§ 50-51. Instead, Defendant/tortfeasor Goodman's conduct (and his **CSTT** trade/commercial enterprises [**MDSI/21stc3D**]) is exactly the type of conduct forbidden by §§ 50-51. In the case of a former first lady (Mrs. John F. Kennedy) the court was clear "**as a public figure she has not forfeited her right of privacy and does not become a subject for commercial exploitation.**" *Onassis*, 472 N.Y.S.2d at 263. See *Woody Allen v. National Video, Inc.* 610 F.Supp 612 (SDNY 1985).

*29.*     The Court will recall that Goodman has asserted that CSTT is a commercial enterprise and collects funds via the wires of the Internet via a New York charted corporation and a presumed licensed DBA moniker (see **MDSI** and **21stc3D**). Therefore, at best Defendant Goodman's **MDSI/21stc3D** and **CSTT** broadcasts to drive traffic to RedBubble to purchase CSTT merchandise is at best a form of "trade/commercial speech" and are entitled less protection than the speech of a natural person, per se.

> "From this line of reasoning, it is clear that while commercial speech is "protected" under the First Amendment from prior restraint, the protection afforded is less than that provided for noncommercial speech, so that when commercial expression is false or misleading it is afforded no protection whatsoever". See *Quinn v. Aetna Life and Cas. Co.,* 96 Misc.2d 545, 554 (Queens.Cty.Sup.Ct.1978); *Ohralik v. Ohio State Bar Ass'n*, 436 US 447, 456 (1978).

*30.*     Numerous examples could be cited of communications that are regulated without offending the First Amendment, such as employers' threats of retaliation for the labor activities of employees. *Ohralik,* 436 U.S. at 456. Further, a protective order in this case restraining the Defendant's use of the Plaintiff's portrait, photograph, likeness and/or visual representation is not a prior restraint of the media or press coverage. Instead, it is simply a protective order restraining a tortfeasor from the unauthorized use of the Plaintiff's portrait, photograph, likeness and/or visual representation. See *In re Application of Dow Jones & Company, Inc. et. al*. 842 F.2d 603, 607 (2nd Cir. 1988)

*31.*     The court again enunciated the principle that the State may intervene to protect the public from harmful commercial speech in *Ohralik,* 436 U.S. at 462, by stating that:

> "the State has a legitimate and indeed 'compelling' interest in preventing those aspects of solicitation that involve fraud, undue influence, intimidation, overreaching, and other forms of 'vexatious conduct'".

*32.*     As the *Quinn* court found that aspects of commercial speech can violate the State's public policy as expressed in N.Y. Penal Law § 215.25 relative to jury tampering.

> "For that reason alone, the speech might properly be restrained as it has been held that the press is not immune from statutes of general applicability." *Quinn* supra at 556 citing *Dennis v. United States*, 341 U.S. 494, 508, supra ; *Branzberg v. Hayes,* 408 US 665, 691-692 .

*33.*     More to the point is the reasoning stated in *New York State Broadcasters Assn. v. United States,* 414 F.2d 990, 997 (2nd Cir.1969) .

> "The real point here is that we are not primarily in the realm of ideas at all but are chiefly concerned with speech closely allied with the putting into effect of prohibited conduct".

*34.*     Defendant/tortfeasor Goodman (CEO of **MDSI/21stc3D** and **CSTT**) is commercially exploiting the Plaintiff by making him the central character in the CSTT "deep state" fairy tale. These artifacts (contained in the accompanying exhibits [**Exh.10-11**]) are an attempt to link the Plaintiff with money laundering operations in Nicaragua as part of the Iran-Contra affair (as pushed by Harmon Wilfred and Goodman).

35.    Accordingly, Plaintiff seeks redress to have his image, likeness, photograph, portrait and/or visual representation removed with a "take-down notice" [**Exh.s.10-11**] under N.Y. Civil Rights Law §§ 50-51 for Defendant (CEO) Goodman's "rapacious commercial exploitation" of his name, image, photograph, and likeness.

*PLAINTIFF MEETS THE REQUIREMENT FOR THE ISSUANCE OF A PRELIMINARY INJUNCTION UNDER SECTIONS 349 AND 350 OF THE GENERAL BUSINESS LAW*

36.    The decision to grant a motion for a preliminary injunction is committed to the discretion of the court. *Doe v. Axelrod*, 73 N.Y.2d 748, 750 (1988); *Jiggets v. Perales*, 202 A.D.2d 341, 342 (1st Dep't 1994) . Preliminary relief is only appropriate where (1) the moving party is likely to succeed ultimately on the merits of its claim; (2) there exists the prospect of irreparable injury if the provisional relief is withheld; and (3) the balance of equities tips in the moving party's favor. *Nobu Next Door LLC v. Fine Arts Hous., Inc.* 4 N.Y.3d 839, 840 (2005).

37.    Because the Plaintiff is seeking a preliminary injunction pursuant to N.Y. General Business Law §§ 349 and 350 (GBL), the irreparable harm analysis in this case differs from a traditional preliminary injunction analysis.  Sections 349 and 350 on their face entitle private plaintiffs to seek injunctive relief so long as they have suffered an injury as a result of the defendant's deceptive acts or false advertising.  See N.Y. GBL § 349(h).

38.    Accordingly, courts have treated future irreparable harm to the public as sufficient to obtain a preliminary injunction order under N.Y. GBL §§ 349 or 350.  See *Marcus v. Jewish Nat'l Fund,* 158 A.D.2d 101, 105-06 (1st Dept. 1990).  Regardless of whether the Plaintiff can in fact be required to prove irreparable harm in this case, the Plaintiff can make such a showing.  To prove that a practice was deceptive within the meaning of N.Y. GBL Section 349, harmed consumers must show that (1) the act or practice was "consumer-focused," ["news program" pushed on social media with **Joe Napoli** of Orange County, CA] (2) the act or practice was misleading in a material way, [Plaintiff falsely cast as a "deep state dunce", or some kind of deep state operative] and (3) they suffered an injury as a result of the deceptive act [viewers deceived with false and misleading narratives and stories about Plaintiff's involvement in Iran-Contra money laundering]. *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000).  Plaintiff's claims easily satisfy all three elements.

*THE NEED FOR A NY CPLR § 6301 PRELIMINARY INJUNCTION*

39.     N.Y. CPLR § 6301 augments the power of the federal judiciary to rely on its inherent power to issue injunctive relief.  Orders issued pursuant to N.Y. CPLR §§ 6301 and 6313 are commonly used to protect consumers that are harmed by the deceptive practices that violate N.Y. GBL § 349(h).  See *The People of the State of New York (by Eric T. Schneiderman) v. FanDual, Inc.*, New York County Clerk's Index No. 453056/15.

40.     A preliminary injunction is available when plaintiffs can show that a defendant "threatens or is about to do, or is procuring or suffering to be done, an act in violation of the plaintiff's rights respecting the subject of the action."  CPLR § 6301.  Presently irreparable harm to the Plaintiff's professional reputation continues.  Allowing Defendant Goodman to continue this course of action (through his companies **MDSI/21ˢᵗc3D**) will not only irreparably harm the Plaintiff, but injure citizens both inside and outside of the State of New York.  See *People v. Romero*, 91 N.Y.2d 750, 756 (1998) ("the Legislature by statute has authorized equity to act and enjoin criminal behavior without the necessity of showing, in the individual case, that the public health or welfare was in danger").

41.     Because Plaintiff is functioning as a private attorney general (**PAG**), he is broadly empowered to protect the general public against deceptive acts and practices, and false advertising.  See *Marcus*, 158 A.D.2d at 105-106, *State v. Colo. St. Christian College of the Church of the Inner Power*, 346 N.Y.S.2d 482, 487 (Sup. Ct. N.Y. Cty. 1973).  These decisions stand against defendants – like tortfeasor CEO Goodman  – who would be permitted to continue their deceptive practices and false advertising, in violation of N.Y. GBL §§ 349 and 350.

42.     Over the course of this litigation Defendant Goodman (using his companies **MDSI/21ˢᵗc3D**) has demonstrated over and over that he will not stop attacking the Plaintiff.  Tortfeasor Goodman has only increased the frequency and severity of these intimidation, defamation, trade libel and per se libel attacks on the Plaintiff through the use of deceptive business practices and unlawful merchandising.

43.     Balancing the equities "simply requires the court to look to the relative prejudice to each party accruing from a rant or denial of the requested relief." *Ma v. Lien*, 198 A.D.2d 186, 187 (1ˢᵗ Dep't 1993).  Here, the prejudice that the Plaintiff – and the public at large – will suffer absent a preliminary injunction is all too clear.

**MEMORANDUM OF POINTS AND AUTHORITIES**
**TO SUPPORT PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION**

1    Defendant/tortfeasor Goodman's entire operation is illegal, and in violation of numerous civil and criminal statutes,

2    including N.Y. GBL §§ 349-350 , N.Y. Civil Rights Law §§ 50-51, the penal laws described above, the U.S.

3    Federal Trade Commission Act, and the common law (to name a few).  There is simply no reason to allow

4    Defendant/tortfeasor (CEO) Goodman to continue exploiting the Plaintiff, nor is there any reason to allow

5    tortfeasor Goodman (through his companies) to act in open defiance of the foregoing cited laws.  Allowing

6    Goodman's business to continue in any capacity creates imminent risk of harm to the Plaintiff and consumers in

7    general.

8        44.

## IV.    SUMMARY / RELIEF REQUESTED

11       45.      As has been demonstrated above, Defendant (CEO) Godman's entire merchandising of the

12   Plaintiff's image on coffee cups and tote bags is a sham.  Accordingly, the prejudice that he will suffer as a result

13   of an injunction is minimal.  Because tortfeasor's CEO Goodman's merchandising operation is per se illegal, the

14   only harm that will directly accrue to Defendant/tortfeasor (CEO) Goodman as a result of an injunction is that he

15   will be restrained from doing what is already forbidden: operating an illegal merchandising outlet whose entire

16   business model relies on defaming, harassing, misappropriating, threatening, and using, Plaintiff's name, image,

17   likeness, photographs and images for tortfeasor Goodman's own perverse financial gain.

## DECLARATION / ATTESTATION PURSUANT TO LOCAL RULE 7.1

20   I hereby attest that the foregoing is accurate and true under the penalties of perjury.  Further, I hereby attest that the

21   attached exhibits are accurate and true copies of source documents located on the Internet.

22       Signed this____day of November, 2018

Plaintiff, D. George Sweigert
Pro se plaintiff acting as private attorney general

**20**

**MEMORANDUM OF POINTS AND AUTHORITIES
TO SUPPORT PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION**

**MEMORANDUM OF POINTS AND AUTHORITIES**
**TO SUPPORT PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION**

# EXHIBITS

## DECLARATION / ATTESTATION PURSUANT TO LOCAL RULE 7.1

I hereby attest that the attached exhibits are accurate and true copies of source documents located on the Internet.

There has been no alteration of the source content.

Signed this _____ day of October, 2018

Plaintiff, D. George Sweigert
Pro se plaintiff acting as private attorney general

22

MEMORANDUM OF POINTS AND AUTHORITIES
TO SUPPORT PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION

# EXHIBITS

# TO ACCOMPANY PLAINTIFF'S

# MOTION FOR INJUNCTIVE RELIEF

I hereby attest that the foregoing is accurate and true under the penalties of perjury.  Further, I hereby attest that the attached exhibits are accurate and true copies of source documents located on the Internet.

Signed this _____ day of November, 2018

_____

Plaintiff, D. George Sweigert

Pro se plaintiff acting as private attorney general

# EXHIBIT ONE

**Selected Entity Name: MULTIMEDIA SYSTEM DESIGN, INC.**

**Selected Entity Status Information**

**Current Entity Name:** MULTIMEDIA SYSTEM DESIGN, INC.

**DOS ID #:** 1830828

**Initial DOS Filing Date:** JUNE 21, 1994

**County:** NEW YORK

**Jurisdiction:** NEW YORK

**Entity Type:** DOMESTIC BUSINESS CORPORATION

**Current Entity Status:** ACTIVE

**Selected Entity Address Information**

**DOS Process** (Address to which DOS will mail process if accepted on behalf of the entity)

% RANDY S. NEWMAN, ESQ.
208 EAST 51ST STREET
SUITE 200
NEW YORK, NEW YORK, 10022

**Registered Agent**

NONE

https://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_INFORMATION?p_to
ken=73AF9A3A2F18A3D9F88633B9E967A9CBB5DE8F0224CE1826334909D82A3E50FF
E414D6DA888368571C46ADD6FA5E0BE9&p_nameid=E60C09CCBFDE7E73&p_corpid
=0643A2DBA93C8E2C&p_captcha=14375&p_captcha_check=73AF9A3A2F18A3D9F8863
3B9E967A9CBB5DE8F0224CE1826334909D82A3E50FF568A2B65A8F4B5E0FABF8040A
58D3065&p_entity_name=%6D%75%6C%74%69%6D%65%64%69%61%20%73%79
%73%74%65%6D%20%64%65%73%69%67%6E&p_name_type=%41&p_search_type
=%42%45%47%49%4E%53&p_srch_results_page=0

# EXHIBIT TWO

| | Serial Number | Reg. Number | Word Mark | Check Status | Live/Dead |
|---|---|---|---|---|---|
| 1 | 87752970 | 5544901 | **CROWDSOURCE** THE TRUTH | TSDR | LIVE |

| | |
|---|---|
| Word Mark | CROWDSOURCE THE TRUTH |
| Goods and Services | IC 041. US 100 101 107. G & S: Providing on-line videos featuring news in the nature of current event reporting, not downloadable. |
| Standard Characters Claimed | |
| Mark Drawing Code | (4) STANDARD CHARACTER MARK |
| Serial Number | 87752970 |
| Filing Date | January 12, 2018 |
| Current Basis | 1A |
| Original Filing Basis | 1A |
| Published for Opposition | June 5, 2018 |
| Registration Number | 5544901 |
| Registration Date | August 21, 2018 |
| Owner | (REGISTRANT) Multimedia System Design, Inc CORPORATION NEW YORK 6s 252 7th Avenue New York NEW YORK 10001 |
| Disclaimer | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CROWDSOURCE" APART FROM THE MARK AS SHOWN |
| Type of Mark | SERVICE MARK |
| Register | PRINCIPAL |
| Live/Dead Indicator | LIVE |

**Internet URL:** http://tmsearch.uspto.gov/bin/showfield?f=doc&state=4804:7ytrd4.2.1

| | |
|---|---|
| **Word Mark** | **CROWDSOURCE THE** TRUTH |
| **Registration Date** | August 21, 2018 |
| **Owner** | **(REGISTRANT) Multimedia System Design, Inc CORPORATION NEW YORK 6s 252 7th Avenue New York NEW YORK 10001** |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CROWDSOURCE" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| | |
|---|---|
| Word Mark | CROWDSOURCE THE TRUTH |
| Goods and Services | IC 041. US 100 101 107 . G & S: Providing on-line videos featuring news in the nature of current event reporting, not downloadable. |
| Standard Characters Claimed | |
| Mark Drawing Code | (4) STANDARD CHARACTER MARK |
| Serial Number | 87752970 |
| Filing Date | January 12, 2018 |
| Current Basis | 1A |
| Original Filing Basis | 1A |
| Published for Opposition | June 5, 2018 |
| Registration Number | 5544901 |
| Registration Date | August 21, 2018 |
| Owner | (REGISTRANT) Multimedia System Design, Inc CORPORATION NEW YORK 6s 252 7th Avenue New York NEW YORK 10001 |
| Disclaimer | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CROWDSOURCE" APART FROM THE MARK AS SHOWN |
| Type of Mark | SERVICE MARK |
| Register | PRINCIPAL |
| Live/Dead Indicator | LIVE |

# EXHIBIT THREE

# United States of America

## United States Patent and Trademark Office

## Crowdsource the Truth

**Reg. No. 5,544,901**

**Registered Aug. 21, 2018**

**Int. Cl.: 41**

**Service Mark**

**Principal Register**

Multimedia System Design, Inc (NEW YORK CORPORATION)
6s
252 7th Avenue
New York, NEW YORK 10001

CLASS 41: Providing on-line videos featuring news in the nature of current event reporting, not downloadable

FIRST USE 10-1-2016; IN COMMERCE 8-1-2017

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "CROWDSOURCE"

SER. NO. 87-752,970, FILED 01-12-2018

http://tsdr.uspto.gov/documentviewer?caseId=sn87752970&docId=ORC20180805025238#docIndex=0&page=1

# EXHIBIT FOUR

| REGISTER | Principal |
|---|---|
| APPLICANT INFORMATION | |
| *OWNER OF MARK | Multimedia System Design, Inc |
| INTERVAL ADDRESS | 6s |
| *STREET | 252 7th Avenue |
| *CITY | New York |
| *STATE (Required for U.S. applicants) | New York |
| *COUNTRY | United States |
| *ZIP/POSTAL CODE (Required for U.S. and certain international addresses) | 10001 |
| PHONE | 212-244-8585 |
| FAX | 212244858S |
| EMAIL ADDRESS | truth@crowdsourcethetruth.org |
| AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |
| LEGAL ENTITY INFORMATION | |
| *TYPE | CORPORATION |

http://tsdr.uspto.gov/documentviewer?caseId=sn87752970&docId=ORC20180805025238#docIndex=8&page=1

# EXHIBIT FIVE



http://tsdr.uspto.gov/documentviewer?caseId=sn87752970&docId=ORC20180805025238#docIndex=8&page=1

# EXHIBIT SIX



**Multimedia System Design Inc**
★ ★ ★ ★ ★ *0 Reviews*

**505 8th Ave Rm 1006**
**New York, New York 10018**
**(212) 244-8585** ☏

[ Claim this Business ]

Print | Save | Directions

## About

Multimedia System Design Inc is located at the address 505 8th Ave Rm 1006 in New York, New York 10018.
They can be contacted via phone at (212) 244-8585 ☏ for pricing, hours and directions.

Multimedia System Design Inc has an annual sales volume of 501K - 999,999. .For more information contact
Jason Goodman, President

For maps and directions to Multimedia System Design Inc view the map to the right. For reviews of Multimedia
System Design Inc see below.

**https://www.chamberofcommerce.com/new-york-ny/7529885-multimedia-system-design-inc**

# EXHIBIT SEVEN



## 21ST CENTURY 3D
New York, NY  ·  Los Angeles, CA

| | |
|---|---|
| Industry: | Motion Pictures and Film, Computer Related Services Motion Picture/Video Production, Video Production, Motion Picture & Video Production |
| Doing business as: | Multimedia Software Design Inc<br>21st Century 3D<br>M S D |
| Site: | 21stcentury3d.com |
| Phone: | ☎ (212) 244-8585 ☏ |
| Description: | 21st Century 3D is a full-service stereoscopic 3D motion picture production company with offices in New York City and Los Angeles. We provide cutting edge live-action and computer generated... |
| Addresses: | 505 8 Ave #1006, New York, NY 10018<br>3450 Cahuenga Blvd W, Los Angeles, CA 90068 |
| Members (2): | Jason Goodman (President)<br>Stephen Baker (Operations Manager) |
| SIC: | 7812 - Motion Picture and Video Tape Production |
| Company size: | 1-10 employees |

**Business Background Report**

https://bizstanding.com/directory/CA/MU/440/

# EXHIBIT EIGHT

YouTube video production appearing on the Jason Goodman" channel.

https://www.youtube.com/watch?v=gqwV8UfBd5g

12/11/2017



**Port Authority Bus Terminal Explosion Deemed 'Botched Terror Attempt' By NYPD**



Jason Goodman
▶ Subscribe   68K

4,455 views

+ Add to    ➤ Share   ••• More

👍 202   👎 39

Published on Dec 11, 2017
I've posted this video to let everyone know that although the explosion this morning was very close to my home and Crowdsource the Truth headquarters, I was not injured. Thanks to those who have inquired.

SHOW MORE

I've posted this video to let everyone know that although the explosion this morning was very close to **my home and Crowdsource the Truth headquarters,** I was not injured.   Thanks to those who have inquired.

Linked to ISIS, this seems to have been a scare tactic by an impotent terrorist, similar in scope to explosions that took place on 23rd Street in Chelsea (**also very near my home**) just over one year ago. Fortunately no serious injuries have been reported.

Crowdsource the Truth has been exposing fraud, corruption and crime for more than one year. As we grow in viewership and effectiveness, **our effort has come under consistent heavy attack by a determined group of misguided individuals.**

**These are truly despicable people who rely on spin, speculation, intimidation, exaggeration, fabrication, and malicious lies.** They have concentrated their efforts to conceal the truth and present a manufactured, patently false narrative and fraudulent conclusions.

While they do this, they attempt to **achieve financial gain** through a wide range of methods including monetized YouTube channels, Patreon solicitations, blockchain driven sites, fraudulent charity fundraising efforts, **baseless fake lawsuits** that abuse civil legal procedure and other methods.

The attacks are focused not only on **the privately owned corporation under which I create the video and social media content for Crowdsource the Truth,** but also on me personally, assailing my physical characteristics and religious heritage in a way that can only be described as hateful and un-American. They target even those brave, honest, hard working patriots who have defied corrupt authority to step forward and expose crimes that impact us all.

**The latest efforts of this nefarious group have graduated to a level that demands action. Their malicious attacks have gone too far. Their deception must be exposed. They must face justice for their acts.**

They mask their method as childish antics and "troll" behavior but this is a charade to hide their true, far more sinister purpose. They antagonize targets to elicit engagement and perpetuate

discord. They aim to make the very act of addressing their claims or actions appear to bring down the value of the content here. When lies go unchallenged, some may begin to believe them.

This group also aims to raise their profile and profits by exploiting the explosive growth of the fantastic audience here, while they continue to deceive and attempt to take advantage of the Crowdsource community. To more effectively neutralize their efforts, **Crowdsource the Truth will go back to ignoring them and remain dedicated to investigative journalism,** crowdsource fact checking and the serious work we have all set out to do. If you also wish to ignore these individuals, please continue to enjoy that effort here.

Those interested in learning how the misguided, malignant personnel are carrying out their nefarious plans and help put an end to their wrongdoing may do so at a new YouTube channel "Exposing the Chavez Hoax" with content coming soon, link below:

https://www.youtube.com/channel/UCE7t...

Thank you for your ongoing support. Sponsor Crowdsource the Truth
http://paypal.me/crowdsourcethetruth https://www.patreon.com/crowdsourceth...

BTC - 14y2bEJ484DTbQwthX51VWpcRtk9Q7kmQQ

ETH - 0x07a23Ac0EBb5936d60A8cBfE07D64A579Cc756c9

LTC - LVP2d143QjPv1JaJpqgPHzQzv2qSQCDnbd

email truth@crowdsourcethetruth.org

merchandise - https://www.redbubble.com/people/csth...

**Legal Disclaimer: Sponsorship of Crowdsource the Truth is made at the sponsor's sole discretion. Sponsorship funds are not tax-deductible, are non-refundable, and do not represent any ownership, equity interest or decision-making authority in the organization.

[emphasis added]

# EXHIBIT NINE

---------- Original Message ----------

From: Spoliation Notice <spoliation-notice@mailbox.org>

To: dmca@redbubble.com, georg.webb@gmail.com, email@redbubble.com, truth@crowdsourcethetruth.org, Spoliation Notice <spoliation-notice@mailbox.org>

Date: November 28, 2017 at 11:34 AM

Subject: ATTN: Litigation hold and spoliation notice

ATTN: Legal Counsel

A lawsuit shall be commenced upon your corporation in the courts form the State of California for the publication of the attached artwork, sponsored by "csthetruth".

This is your spoliation and litigation hold notice.  As this artwork violates various privacy laws in the State of California a complaint shall be lodged with the State Attorney General.  Additionally, civil sanctions will be pursued.

ALL records associated with "csthetruth" MUST be safely archived and preserved.  This includes all materials related to "csthetruth"; such as, financial records, user applications, previously submitted artwork, invoices, e-mail exchanges, etc.

This "cdthetruth" artwork displays a copyright protected photo of our client, David George Sweigert.  He is depicted wearing a dunce cap in a straight

jacket.  This appears to be the work of George Webb Sweigert and Jason Goodman, both copied on this message.

We believe this is a gross violation of your corporate community standards policy as it holds our client (a private citizen) up to public ridicule and mockery.  Additionally, "csthetruth" does not have permission to use this photograph.

Respectfully,

Evidence Collection Team

**[Attached artwork show below]**



https://www.redbubble.com/p

4 / 4





**Designed by csthetruth**
**New York, United States**

A portion of your purchase goes directly to this artist

# EXHIBIT TEN

Internet URL:  https://www.youtube.com/watch?v=GNxCk6nqFJg



## Deep State Dunces Attack George Webb & CSTT - Bitcoin Challenge Response



Jason Goodman

Subscribe 70K

15,220 views

**Unauthorized portrait on YouTube thumb-nail**

**Streamed live on Nov 27, 2017**
The dumbest affiliates of the Deep State simply will not give up their ludicrous attacks on the truth, while simultaneously offering no evidence to support their claims.

Become a sponsor of Crowdsource the Truth and support the effort

http://paypal.me/crowdsourcethetruth

https://www.patreon.com/crowdsourceth...

**Buy Crowdsource the Truth merchandise in the on-line store**
**https://www.redbubble.com/people/csth...**

**Buy Crowdsource the Truth merchandise in the on-line store**
**https://www.redbubble.com/people/csth...**

# EXHIBIT ELEVEN

Internet URL: https://www.youtube.com/watch?v=qyg9YejHy0k



### The Trolls of Mount Shasta

Crowdsource the Truth 2

▶️ Subscribe   9K

10,334 views

➕ Add to   ↪ Share   ••• More                     👍 270   👎 123

Streamed live on May 4, 2018
**Dave Acton has officially gone too far. He is a public menace and he should be prosecuted.**

Become a Sponsor of Crowdsource the Truth

http://paypal.me/crowdsourcethetruth

monthly sponsorship on Patreon
https://www.patreon.com/crowdsourceth...

email truth@crowdsourcethetruth.org

**merchandise - https://www.redbubble.com/people/csth...**

[emphasis added]

# EXHIBIT TWELVE

https://www.prweb.com/releases/cra/oh-canada/prweb2615234.htm

Sunday, November 18, 2018                                    ◯RSS   ◯Email New

## Canada Revenue Freezes Assets of Prominent Canadian Wife of UN Human Rights Plaintiff

On February 13, 2009, the Canadian Revenue Authority (CRA) served a Notice of Enforcement No 708575 upon Canadian Dare Foods heiress, Carolyn Dare Wilfred's family Holding Company freezing the entirety of her Canadian related assets and demanding 15 million dollars in reassessed taxes. This tax action came at a critical time during her financial support of her husband, Harmon Wilfred's unprecedented UN Human Rights case against Canada.

**TORONTO, CANADA (PRWEB) JULY 12, 2009**

Former CIA financial contractor and whistleblower, Harmon Wilfred filed for a Judicial Review at the UN Human Rights Commission (UNHRC) on January 7, 2009 to further support his Petition No 1638/2007 against the government of Canada. The grounds of Wilfred's latest pleading is based on the premise that although the United States, named as a co-defendant with Canada in the original case, refuses to accept the



**Canada Revenue Freezes Assets of Prominent Canadian Wife of UN Human Rights Plaintiff**

**On February 13, 2009, the Canadian Revenue Authority (CRA) served a Notice of Enforcement No 708575 upon Canadian Dare Foods heiress, Carolyn Dare Wilfred's family Holding Company freezing the entirety of her Canadian related assets and demanding 15 million dollars in reassessed taxes. This tax action came at a critical time during her financial support of her husband, Harmon Wilfred's unprecedented UN Human Rights case against Canada.**

**TORONTO, CANADA (PRWEB) JULY 12, 2009**

Former CIA financial contractor and whistleblower, Harmon Wilfred filed for a Judicial Review at the UN Human Rights Commission (UNHRC) on January 7, 2009 to further support his Petition No 1638/2007 against the government of Canada. The grounds of Wilfred's latest pleading is based on the premise that although the United States, named as a co-defendant with

Canada in the original case, refuses to accept the competence of the UN Human Rights Committee; this does not disqualify Canada as the continuing and sole defendant. Although the Canadian government has yet to answer Wilfred's UNHRC complaint, this latest action by the CRA in the wake of his request for a Judicial Review of his Human Rights Petition against Canada would appear to be more than a coincidence, says Harmon Wilfred. The Order of Enforcement has also cited facts directly relating to Wilfred's UN case. The CRA justified the reassessment by a retroactive disqualification of Carolyn's lawfully permitted 2001 tax strategy. This overall action was further reinforced on June 12, 2009 by the CRA's outright dismissal of Carolyn's objection filed against the Enforcement Order. As a result, her entire Canadian estate has been made unavailable even for legal expenses until the matter is resolved.

The Wilfreds departed North America in June of 2001 under duress for fear of Mr Wilfred's personal safety and freedom during the midst of continuous alleged violations of his human rights by the United States and Canada. Mrs. Dare Wilfred's tax planning at that time, necessitated and designed around their urgent relocation off shore, was completed by Alberta tax attorney Richard DeVries under the advice of prominent Canadian legal and accounting consultants Fraser Milner and BDO Dunwoody. Even though Carolyn's advisors are adamant in maintaining that her tax planning according to court documents was and continues to be lawful and valid, the CRA has persisted in retroactively excluding the 2001 strategy. Although Carolyn and her legal counsel insist that this action must be challenged, "How does one mount a formidable legal action against the CRA, or continue to confront the Canadian government for alleged human rights violations if your opponents are permitted to freeze all financial ability to fund the challenges?" asks Harmon Wilfred. As founder, director and trustee of their New Zealand international IT business, ITtelenet Limited and charitable trust, La Famia Foundation NZ. Mr. Wilfred has been residing in New Zealand as a stateless person without the legal right to work or earn an income since the US State Department formally accepted the renouncement of his US citizenship in 2005. He is currently seeking New Zealand citizenship.

As a loyal Canadian and member of the Dare family, Carolyn has written an open letter to the Prime Minister of Canada, Stephen Harper and the citizen's of Canada entitled OH Canada telling her story and appealing to the PM for justice. "I believe I am being deliberately bullied by my own country for supporting my husband on a compelling UN human rights complaint; which is nothing less than government condoned extortion!" says Carolyn Dare Wilfred.

The material evidence of Wilfred's UN Petition against Canada allegedly involves prominent individuals in the current US Obama administration, including Secretary of State Hillary Clinton and White House Counsel Gregory Craig; as well as former President Bill Clinton and Colorado State Attorney General, John Suthers.
# # #

# EXHIBIT THIRTEEN





# AFFADIVAT OF PLAINTIFF

I have never given Jason Goodman of New York City permission to use my name, image, photograph or likeness in any form or manner whatsoever.

When Jason Goodman published the video "Trolls of Mount Shasta" I was in considerable fear. I was aware that Quinn Michaels (Korey Atkin) was in the area searching for me. The video (published May 8, 2018) seem to indicate that Goodman and Michaels would stage an arrest of me by the Mount Shasta Police Department, CA.

Signed this _18_ day of November, 2018

Plaintiff, D. George Sweigert

Pro se plaintiff acting as private attorney general

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

# PRIORITY
# ★ MAIL ★

USPS TRACKING™ INCLUDED*

DATE OF DELIVERY SPECIFIED*

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

D. GEORGE SWEIGERT, C/O
P.O. BOX 152
MESA, AZ 85211

FROM:

PRO SE DIVISION, ROOM #200
Clerk of the Court
U.S. District Court for the SDNY
(FOLEY SQUARE)
500 Pearl Street
New York, New York 10007-1312

EP14F July 2013

VISIT US AT USPS.COM®

NEW YORK, NY 10007

USPS TRACKING NUMBER

9505 5067 0811 8322 0034 27

PRIORITY MAIL 2-D

P

EXPECTED DELIVERY DAY: 11/21/18

SHIP
TO:

054981118141837



UNITED STAT