Sweigert v. Goodman, USDC for the SDNY



D. George Sweigert, c/o
P.O. Box 152
Mesa, AZ 85211

December 19, 2018

PRO SE DIVISION, ROOM 200
U.S. District Court
Southern District of New York (Foley Square)
500 Pearl Street
New York, N.Y. 10007-1312

**SUBJECT: CORRECTION AND CERTIFICATE OF SERVICE**
**U.S.D.C. for the S.D.N.Y.**
**CASE #: 1:18-cv-08653-VEC, Judge Valerie E. Caproni**

Ladies and Gentlemen:

1.      It appears a harmless error or mistake has occurred.  Docket no. 72 in this present lawsuit contains a pleading from the following individual (see attached):

**Thomas Marmolejos**
**#48376-054**
**F.C.I. - Otisville**
**P.O. Box 1000**
**Otisville, NY 10963**

2.      This is the docket entry with the incorrect pleading (see attached):

| 12/18/2018 | 72 | PLAINTIFF'S REPLY TO ORDER TO SHOW CAUSE; re: 65 Order to Show Cause, Set Deadlines. Document filed by D George Sweigert. (sc) (Entered: 12/19/2018) |
|---|---|---|

3.      An additional unaltered copy of the previously mailed pleading is enclosed so that the court docket can be corrected.  This should NOT be considered an AMENDED pleading.  It is only sent as a courtesy to the Court.  This is an identical copy of the pleading sent 12/14/2018 (delivered to the Court on 12/18/2018 [see attached]).

1

CASE #: 1:18-cv-08653-VEC, Judge Valerie E. Caproni

## CERTIFICATE OF SERVICE

I hereby swear under the penalties of perjury that a correct copy of the additional back-up pleading and this letter has been provided to Jason Goodman on December 19th, 2018 via U.S. Postal Service First Class Mail.

**Jason Goodman, CEO**
**Multimedia Systems Designs, Inc.**
**252 7th Avenue, APT #6S**
**New York, NY 10001**

Hereby sworn,

D. G. Sweigert

Copies provided:

**(Letter only provided to the below addressees – no pleading)**

**Office of the General Counsel**
**Administrative Office of the United States Courts**
**Thurgood Marshall Federal Judiciary Building**
**One Columbus Circle, N.E.**
**Washington, D.C. 20544**

**Judge Valerie E. Caproni**
**Thurgood Marshall Courtroom 443**
**United States Courthouse**
**40 Foley Square**
**New York, NY 10007**

**Thomas Marmolejos**
**#48376-054**
**F.C.I. - Otisville**
**P.O. Box 1000**
**Otisville, NY 10963**

**CASE #: 1:18-cv-08653-VEC, Judge Valerie E. Caproni**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

THOMAS MARMOLEJOS,
    Petitioner,

                         Civil No. 05-CV-10693 (DC)

                         Crim. No. 99-CR-1048 (DC)

v.

UNITED STATES OF AMERICA,
Respondent.

| | | |
|---|---|---|
| | | CPLR 6301. Document filed by D George Sweigert.(sc) (Entered: 11/26/2018) |
| 12/18/2018 | 72 | PLAINTIFF'S REPLY TO ORDER TO SHOW CAUSE; re: 65 Order to Show Cause, Set Deadlines. Document filed by D George Sweigert. (sc) (Entered: 12/19/2018) |

# USPS Tracking®   FAQs   (https://www.usps.com/faqs/uspstracking-faqs.htm)

## Track Another Package ✚

**Tracking Number:** 9505506708118348019662

Remove

Your item was delivered to the front desk, reception area, or mail room at 2:11 pm on December 18, 2018 in NEW YORK, NY 10002.

## Delivered

December 18, 2018 at 2:11 pm
Delivered, Front Desk/Reception/Mail Room
NEW YORK, NY 10002

**Get Updates**

Feedback

**Text & Email Updates**

**Tracking History**

**Product Information**

**See Less**

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| D. GEORGE SWEIGERT, | |
| Plaintiff, | **18-CV-8653 (VEC)** |
| -against- | **PLAINTIFF'S REPLY TO ORDER TO SHOW CAUSE** |
| JASON GOODMAN, | |
| Defendant. | |

## PLAINTIFF'S REPLY TO ORDER TO SHOW CAUSE

1.     The District Court has ordered the Plaintiff to show cause why the amended complaint (Dkt. 5) should not be dismissed (in general terms) for (1) lack of standing, (2) failure to state a claim, (3) jurisdiction of state law claims and (4) potential futility of second amended complaint (Dkt. 56).

### I.     BACKGROUND

2.     To provide some context of proportionality, the Defendant is an individual that caused the closure of one of the busiest maritime ports in the world with a "dirty bomb threat" and now blames the Plaintiff for that event.  In the amended complaint (Dkt. 5) Plaintiff invoked the Racketeering Influenced and Corrupt Organizations Act (RICO), a criminal statute with a private right of action, as the Defendant's offense was of "a degree sufficiently serious not only to inflict injury upon its immediate private victims, <u>but also to cause harm to significant public processes or institutions,</u> or otherwise pose threats to larger societal interests worthy of the severe punitive and deterrent purposes embodied in the statute." [emphasis added] *Gross v. Waywell*, 628 F. Supp. 2d 475 (S.D.N.Y.  2009).  This is not a garden variety state common law case, as the closure of the Port of Charleston on 06/14/2017 demonstrates.

3.      "The racketeering activities alleged should be of sufficiently serious dimensions and degree, both qualitatively and quantitatively, not only to cause the private injury the victim claims, but to <u>produce some public harm or pose a societal threat</u> that extends beyond the narrow interests of a few victims or the limited scope of some RICO predicate acts." [emphasis added]  *Gross v. Waywell,* 628 F. Supp. 2d 475 (S.D.N.Y. 2009).

4.      RICO serves as a law enforcement tool supplementing the government's efforts to protect the <u>general public</u> and the <u>common good</u> from felonious conduct by encouraging and enlisting the civil litigation services of "private attorneys general." *Agency Holdg. Corp. v. Malley-Duff & Assocs.,* 483 U.S. 143, 151, 107 S. Ct. 2759, 97 L. Ed. 2d 121 (1987).

5.      Because the Plaintiff is functioning as a private attorney general, he is broadly empowered to protect the general public against deceptive acts and practices by a deceitful commercial / trade enterprise such as CSTT.  See *Marcus,* 158 A.D.2d at 105-106, *State by Lefkowitz v. Colo. St. Christian College of the Church of the Inner Power*, 346 N.Y.S.2d 482, 487 (Sup. Ct. N.Y. Cty. 1973).

6.      Defendant's invasions of protected rights include (but are not limited to): (1) federal laws and rights (such as Copyright Infringement (17 U.S.C. § 506 and 18 U.S.C. § 2319), Anti-Ku Klux Klan Act (42 U.S.C. § 1985(2) clause one (i), 42 U.S.C. § 1985(3) clause three (iii)), Tampering with a witness, victim or informant (18 U.S.C. § 1512(a)(2)(c)), and (2) New York State (NYS) laws (N.Y. Civil Rights Law §§ 50 – 51, G.B.L. §§ 349 - 350) , etc.

## II.      QUESTIONS BEFORE THE COURT

7.      The questions presented by the Court Dkt. 65 are hereby addressed herein.

### A. Show cause why his claims asserting violations of criminal law should not be dismissed for lack of standing (Dkt. 65.pg. 2)

8.      As a preliminary matter, the Plaintiff is a *pro se* litigant, accordingly, the Court when interpreting the Amended Complaint (Dkt. 5) (**AC**) or proposed second amended complaint (Dkt. 56) (**SAC**), needs "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006).

9.      RICO is a criminal statute with a private right of action.  18 U.S.C. §§ 1961-1969 (1990). Thus, consistent with its primary purpose, a plaintiff must always prove that a crime was committed, even when RICO is used for civil redress.  See 18 U.S.C. § 1964(c).  In a RICO complaint, the plaintiff must only demonstrate two or more predicate acts of unlawful "racketeering activity".  18 U.S.C. § 1962(a).  Under §1961(1), the term "racketeering activity" includes a broad assortment of state and federal crimes.

10.     The Plaintiff in meeting his burden to demonstrate a racketeering "pattern and practice" of the Defendant's Crowdsource The Truth (**CSTT**) enterprise (Dkt. 56) must make the Court aware of alleged unlawful activity.  But, this does not necessarily mean that such predicate acts are not the basis for actionable remedies.

11.     To state a claim for a violation of § 1962(c), a plaintiff must show: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima S.P.R.L. v. Imex Co.,* 473 U.S. 479, 496 (1985).  A pattern is shown by criminal conduct that "embraces criminal acts having the same or similar purposes, results, participants, victims or methods of commission and are not isolated events." *Sedime,* 473 U.S. at 497 n.14.

12.     Private remedies are available to provide relief for the unlawful acts and practices alleged by the Plaintiff (Dkt. 5, 56).  To continue this argument, Section 5 of the FTC Act states: "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared <u>unlawful</u>". [emphasis added] 15 U.S.C. § 45(a)(1) (1964).

13.     While the FTC Act does not have a private right of action for violation of its rules, New York has implemented a "mini-FTC Act" against deceptive and unfair trade practices act (which <u>does</u> have private right of action) and makes violations of the federal act a violation of state law. This is an example of a state private right of action that orbits (nexus) around federal criminal statutes.

14.     In fact, the FTC has won lawsuits against the purveyors of "fake news" and "hoax news" operators – exactly identical to the CSTT social media racketeering enterprise.  See *FTC v. Clickbooth.com, LLC et al*, No. 1:2012cv09087 (N.D. Ill. 2012).  Indeed, in a remarkably similar case to CSTT, the FTC filed federal charges against a firm that <u>threatened baseless and groundless criminal prosecution</u> against unhappy customers.  See *FTC v. World Patent Marketing,* 2017-cv-20848, S.D. of Florida.  (Dkt. 56,pgs.37-38; ,pgs.66-68).

15.     To this end, and in the interests of judicial efficiency, one could argue that only COUNTS VI, VII and XI of the SAC (Dkt. 56) would survive this level of scrutiny as they support a private right of action.  COUNTS I, II, III, IV, V, VII, and IX can be viewed as illustrative for the purposes of demonstrating alleged unlawful misconduct.

### *Standard of Review*

16.     Public interest litigation remains a gravaman principle of the RICO statutes.  "[T]the congressional objective of a civil enforcement scheme parallel to the Clayton Act regime, aimed at rewarding the swift who undertake litigation in the public good." *Rotella v. Wood* (98-896) 528 U.S. 549 (2000) 147 F.3d 438, affirmed.  The Congressional objective of Civil RICO is to turn victims into prosecutors, or "private attorneys general" and dedicated to eliminating racketeering. *Rotella v. Wood.*  This is a public interest lawsuit and the *pro se* Plaintiff is a private attorney general.

17.     The Plaintiff has cited the private attorney general doctrine (Dkt. 5, Dkt. 56, pg.22-23)

for matters of standing (see "and there is nothing constitutionally prohibiting Congress from

empowering <u>any person, official or not, to institute a proceeding</u> involving such a controversy,

even if the <u>sole purpose is to vindicate the public interest</u>. Such persons, so authorized, are, so to

speak, private Attorney Generals."; [emphasis added] *Associate Industries v. Ickes* (2d Cir. 1943)

134 F.2d 694, 704 (2d Cir.); Comment (1974) Note 144 U.Pa.L.Rev. 636,658).

18.     RICO permits a private right of action -- 18 U.S.C. § 1964(b) -- by the Attorney General

or a private plaintiff attorney general --  18 U.S.C. 1964(c).  This dual purpose demonstrates a

design not only to compensate victims, but also to punish and deter criminal offenses.

19.     "In a number of settings, conduct that can be punished as criminal only upon proof

beyond a reasonable doubt will support civil sanctions under a preponderance of evidence

standard".  See, e.g. *United States v. One Assortment of 89 Firearms,* 465 U.S. 354 (1984)…."

See *Sedima, S.P.R.L. v. Imex Co.,* 473 U.S. 479 (1985)

**B. Show cause why his RICO and related fraud claims should not be dismissed for lack
of standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6)
(Dkt. 65,pg. 3)**

<u>**Standing issues related to injury-in-fact per Rule 12(b)(1)**</u>

20.     Plaintiff has met the injuries-in-fact requirement as to the constitutional component of

Article III of the U.S. Constitution in COUNTS VI, VII, and XI of the SAC (Dkt. 56)  *Warth v.*

*Seldin*, 422 U.S. 490, 498 (1975); see also *City of Los Angeles v. Lyons,* 461 U.S. 95, 105 (1983).

At a constitutional minimum, standing only requires a plaintiff to show that he has "suffered

some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and

that the injury can be traced to the challenged action and is likely to be redressed by a favorable

decision." *Valley Forge Christian Coll. V. Ams. United for Separation of Church and State, Inc.,*

454 U.S. 464, 472 (1982). Plaintiff's (1) "injuries-in-fact", are (2) "fairly traceable" to the actions of the Defendant, and (3) these injuries are likely to be "redressed by a favorable decision" of this Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) at 560-61.

21.     As relevant here, an injury-in-fact is one which stems from a "legally protected interest" and is both "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560-61. To satisfy the injury-in-fact requirement, the harm must be an "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." [emphasis added] *Lujan*, 504 U.S. at 560-61.

22.     In *Leach v FDIC*, 860 F2d 1266 (5th Cir 1988) the Court found that in the RICO context "[a]ny definition of the term "property," an inherently state law-related term, should look to state law. *See Reconstruction Finance Corp. v. Beaver County*, 328 U.S. 204, 66 S.Ct. 992, 90 L.Ed. 1172 (1946)." [emphasis added] *Leach*, 860 F2d at 1274 n 14. Thus, to demonstrate standing the Plaintiff can articulate invasions of rights and injuries from those laws that have created individual rights and protections. *Leach*, 860 F2d at 1274 n 14, citing *Reconstruction Finance Corp v. Beaver County*, 328 US 204 (1946).

23.     "The hallmark of property, the Court emphasized, is an individual entitlement grounded in state law," [emphasis added] *Logan v. Zimmerman Brush Co.*, 455 US 422, 430 (1982). It is instructive to note the wisdom of *Milens of California v. Richmond Redevelopment Agency*, 665 F2d 906, 909 (9th Cir 1982) ("We look to local state law to determine what property rights exist and who is entitled to recovery for a taking"). [emphasis added].

24.     Injury-in-fact example no. 1. Under N.Y. Civil Rights Law §§ 50 – 51 if a plaintiff demonstrates unauthorized use of the plaintiff's name, portrait, picture or voice (Dkt. 56, pgs.4-

5) in the State of New York for purposes of advertising or trade, without the plaintiff's expressed written permission it is unlawful. See *Leviston v. Jackson,* 980 N.Y.S.2d 716, 719 (1st Dept. 2013). "Civil rights Law § 51 authorizes a civil action for injunctive relief and damages, including exemplary damages if a defendant acts knowingly in violation of that protection." *Leviston*, 980 N.Y.S.2d at 719-720; *Ryan v. Volpone Stamp Co.,* 107 F.Supp.2d 369, 391 (S.D.N.Y. 2000). These violations have already been established in a series of motions for injunctive relief that the Court has temporarily stayed (Dkts. 68 and 71 [mailed prior to the ORDER Dkt. 65]).

25.     Additionally, the Plaintiff is a consumer that has been injured by the CSTT racketeering scheme. To prove that a practice was deceptive within the meaning of N.Y. G.B.L. Section 349, a harmed consumer must show that (1) the act or practice was "consumer-focused," (CSTT video productions broadcast to thousands) (2) the act or practice was misleading in a material way, (fraudulent statements and deception) and (3) they suffered an injury as a result of the deceptive act (smear campaign). *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000). Plaintiff's allegations (Dkt. 56) easily satisfy all three elements.

26.     Injury-in-fact example no. 2. As alleged, the Defendant used the CSTT enterprise to tarnish the Plaintiff with public disgrace, ill fame and public opprobrium, when the Plaintiff became a witness to related federal litigation (involving the Defendant). These CSTT smear campaigns (attempts at corrupted persuasion) were conducted in violation of 42 U.S.C. § 1985(2) clause one (i), which allows a civil remedy under § 1985(3) clause three (iii). The direct attack on the property interests of the Plaintiff is an invasion of an individual right and is an actionable federal tort. *Haddle v. Garrison*, 525 U.S. 121.

27.     <u>Injury-in-fact example no. 3</u>.  As more fully explained in Plaintiff's Mot. to. Show Cause

(Dkt. 8), the Defendant's commercial / trade / mercantile enterprise abused the Plaintiff's rights

and privileges under U.S. copyright laws were invaded by the Defendant with his wholesale

industrial transfer of protected works to social media channels controlled by the Defendant

(criminal infringement of a copyright (18 U.S.C. § 2319)).  Defendant had no authorization from

Plaintiff to undertake such actions, which subsequently (1) violated the Terms of Service of the

social media provider and (2) violate the U.S. Copyright Act.  (17 U.S.C. § 506 and 18 U.S.C.

§ 2319). (Dkt. 8-2, Dkt. 56-1, pg.62).

28.     The Defendant and his sidekicks <u>targeted</u> the Plaintiff for public disgrace, ill fame and

public opprobrium to create economic injury to the Plaintiff by severely damaging his public

reputation as a critical infrastructure protection (CIP) consultant.  "<u>First</u>, in order for a plaintiff

to have standing in RICO's zone of interests, he must be "the target of the racketeering

enterprise." [emphasis added] *Id. Baisch v. Gallina,* 346 F.3d 366 (2d Cir. 2003).  Plaintiff was

the CSTT target.

29.     Plaintiff's injuries (invasion of state protected property rights) were the direct and

proximate cause of the CSTT continuous open-ended deceptive smear campaign over the

interstate wires to create (1) a direct injury to the Plaintiff's "business or property" (2) that was

"caused by the Defendant's racketeering activity".  "<u>Second</u>, the plaintiff's injury must "flow

from the harms that the predicate acts ... were intended to cause and the laws against them were

intended to prevent." [emphasis added] *Id. Baisch v. Gallina.*  Plaintiff's injuries directly

attributed to Defendant (CSTT) actions.

30.     In the SAC (Dkt. 56) Plaintiff has appropriately described "a group of persons associated

together for a common purpose of engaging in a course of conduct," proven by "evidence of an

ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

31.     The Plaintiff has alleged that these CSTT "sidekicks" of the Defendant associated together for the common purpose of engaging in the sort of misconduct described in the SAC (Dkt. 56).  See *First Capital Asset Mgmt. v. Saitwood, Inc.*, 385 F.3d 159 at 174-75 (2d Cir. 2004).  The CSTT RICO association-in-fact (Dkt. 56, pgs.13-19) is comprised of the Defendant and various "sidekicks" (malevolent actors), that "are associated together for a common purpose" "conduct[ed] or participate[d], directly or indirectly, in the scope of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c); see also *Reves v. Ernst & Young*, 507 U.S. 170, 177-79 (1993).

*Standard of Review*

32.     In analyzing the standing issue, the Second Circuit first emphasized that "[t]he Supreme Court has advised 'RICO is to be read broadly [and] liberally construed to effectuate its remedial purposes'" (citing *Sedima, S.P.R.L. v. Imex Co.,* 473 US 479, 497-98 (1985).  Relying on its prior decision in *Lerner v. Fleet Bank, N.A.,* 318 F3d 113, 120-24 (2d Cir. 2003), the Second Circuit held that to demonstrate standing, a plaintiff must plead at a minimum: (1) defendant's violation of 18 USC § 1962(c); (2) an injury to the plaintiff's business or property; and (3) causation of the injury to defendant's violation.  The court explained that the third prong is satisfied if the defendant's "injurious conduct is both the factual and the proximate cause of the injury alleged." (citing *Lerner,* 318 F3d at 120).

33.     Starting with its decision in *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992), the court has construed the "by reason of" language to <u>incorporate common law principles of proximate cause</u>". [emphasis added] In *Bridge v. Phoenix Bond and Indemnity Co.*,

553 U.S. 639 (2008) the court held that as long as the theory of causation is "straightforward", there are "no independent factors that account for the injury".

34.     The Supreme Court has held that "the words 'to defraud' commonly refer to wronging one in his property rights by <u>dishonest methods or schemes,</u> and usually signify the deprivation of something of value by trick, deceit, chicane or overreaching." [emphasis added] *McNally v. United States,* 483 U.S. 350, 358 (1987), superseded by statute on other grounds by *Skilling,* 561 U.S. 358 (2010) see also *United States v. Lew,* 875 F.2 219, 221 (9th Cir. 1989). The scope of the *McNally* decision was clarified in *Carpenter v. United States*, 484 U.S. 19, 108 S. Ct. 316, 98 L. Ed. 2d 275 (1987). The Supreme Court, which explained "McNally did not limit the scope of Sec. 1341 to tangible as distinguished from <u>intangible property rights</u>." [emphasis added] *Carpenter.* at 25, 108 S. Ct. at 320.

35.     "Indeed, in *Carpenter,* the release to defendants of the Wall Street Journal's confidential information of the schedule and contents of the columns "did not interfere with the Journal's use of the information ... and [did not] deprive the Journal of the first public use of it." *Carpenter,* 484 U.S. at 26, 108 S. Ct. at 320. <u>Despite this lack of a tangible deprivation,</u> the Court held the mail fraud act encompassed the scheme, saying "<u>it is sufficient that the Journal has been deprived of its right to exclusive use of the information.</u>" Id." [emphasis added] *United States of America, Appellant v. Gilberto Martinez,* 905 F.2d 709 (3d Cir. 1990).

### Stating a claim of injury-in-fact per Rule 12(b)(6)

36.     <u>Injury-in-fact example no. 5.</u> Defendant's commercial merchandising of Plaintiff's likeness, portrait, and/or photograph to market and sell "Deep State Dunce" merchandise (coffee mugs, tote bags, etc. bearing the Plaintiff's portrait, likeness, and/or photograph) without permission is unlawful in New York. Such reprehensible conduct is in no way newsworthy, or

entitled to protection; §§ 50-51 provides a civil remedy for such conduct.  The Defendant's

merchandising of the Plaintiff's likeness, photograph and/or portrait is in a form separate and

distinct from the dissemination of any valid news or information.  (see *Binns v. Vitagraph Co.*,

210 N.Y. 51; *Sutton v. Hearst.*, 277 App.Div.155).  The interstate wires of the Internet have been

used to market, promote and sell these unauthorized merchandising products by the Defendant in

an unlawful manner.

37.     The Plaintiff has been unduly featured and exploited by the Defendant's so-called

podcast "interviews".  (*Blumenthal v. Picture Classics*, 235 App. Div. 570, affd.  261 N.Y. 504).

To be sure, in the case of these podcasts, the likeness, portrait and/or photograph of the Plaintiff

is used without authorization to the sale of "Deep State Dunce" coffee cups and tote bags on

RedBubble.COM.  (see *Gautier v. Pro-Football,* 278 App. Div. 431, 434-435, aff'd.  304 N.Y.

354).

38.     The character of such direct injuries sustained by Plaintiff remain consistent with an act

that is analogous to an "ac[t] of a tortious character," see 4 Restatement (Second) of Torts § 876,

Comment b, meaning an act that is independently wrongful under RICO.  *Beck v. Prupis* (98-

1480) 529 U.S. 494 (2000).

39.     "If the defendant engages in a pattern of racketeering activity in a manner forbidden by

these provisions, and the racketeering activities injure the plaintiff in his business or property, the

plaintiff has a claim under § 1964 (c)."  *Sedima, S.P.R.L.* v. *Imrex Co.*, 473 U.S. 479, 495 (1985).

In *United States v. Weisman,* 624 F.2d 1118 (2d Cir.), *cert. denied,* 449 U.S. 871, 101 S. Ct. 209,

66 L. Ed. 2d 91 (1980), the Court of Appeals indicated that *any* two acts of racketeering by the

same enterprise, no matter how unrelated, can establish a "pattern." *Id.* at 1121-23.

40.     <u>Injury-in-fact example no. 6</u>.  An example of the literally hundreds of predicate unlawful acts perpetrated on the Plaintiff by the Defendant can be found in the video production "The Trolls of Mt. Shasta" (Dkt. 71) (Internet URL: https://www.youtube.com/watch?v=qyg9YejHy0k) (May 5, 2018).  This video includes the Defendant and three (3) CSTT fake news sidekicks.

41.     Defendant speaks, "[w]e are going to start to **assemble the evidence that we have. Evidence that is going to link Dave and George and Robert David Steele and Manual Chavez** " (time mark **@10:32,** Jason Goodman).  At time **@14:11** Defendant states, "But the point is Dave, you behavior is unacceptable and I do believe it has risen to the **level of criminality**.  Making false statements to the authorities, and sending reports to senators, and all the things that you are doing.  **And publishing a book, filled with these false statements**."  Defendant has no such evidence in his possession and his statements to the contrary are deceitful and based in fraud.

42.     The published "book" referred to by Defendant above is the Plaintiff's technical report entitled "Report: The Port of Charleston Dirty Bomb Hoax and Social Media Liability", April 14, 2018, ISBN-10: 9781717056795, Amazon.Com.  (Dkt. 33)  Dozens of copies of this published work were sent to U.S. Coast Guard authorities, subcommittees of Congress, South Carolina –based federal law enforcement authorities, etc.

43.     To amplify the above, New York recognizes that coercive and intimidating speech (as articulated in the foregoing referenced video production "The Trolls of Mount Shasta") is an unlawful act.  This is characterized as coercion in the second degree by New York (a criminal act).  The only predicate requirement to establish "coercion" is that the actor (tortfeasor) must compel or induce the victim (Plaintiff) to engage in a certain conduct by installing fear.  In this

12

statute (N.Y. Penal Law § 135.60) the actor (Defendant) must be "using force or engaging in any scheme, plan or pattern" to "compel or induce".

44.    It was observed in *People v. Fort,* 138 Mich. App. 322 (Mich. Ct. App. 1984) that the elements of extortion are: Communication; Threatening accusation of any crime or offense or any injury to the person or property; With intent to extort money or <u>pecuniary advantage</u> as to compel the person so threatened to do or refrain from doing an act against his/her will. [emphasis added].

45.    The "Trolls of Mount Shasta" video is just one example of corrupt persuasion designed to intimidate the Plaintiff in violation of 18 U.S.C. § 1512(a)(2)(C) (Tampering with a Witness, Victim or Informant"). Section 1512 applies to all federal proceedings; including those recipients of the technical report. Obstructing the flow of information to any such federal body (judicial, congressional or executive) is a violation of § 1512(b)(3) and represents a predicate offense under RICO. See 18 U.S.C. 1515(a)(1) ("As used in sections 1512 and 1513 of this title and in this section---(1) the term "official proceeding" means---(A) … before a judge or court of the United States ; (B) a proceeding before the Congress; (C) a proceeding before a Federal Government agency which is authorized by law …"). Regrettably, this allegation (violations of § 1512(a)(2)(C)) was not inserted into the SAC (Dkt. 56) and is provided here only to illustrative another invasion into the Plaintiff's rights.

46.    Here the injury is damage to a professional reputation by the widely disseminated deceptive claim that "evidence" was in the possession of the Defendant to justify the CSTT false statements and smear campaigns, as no such evidence exists. This is the very definition of fake news cited by the FTC in *FTC v. Clickbooth.com, LLC et al* and *FTC v. World Patent Marketing.*

These fraudulent acts of wire fraud are clearly deception (fake news) intended to cause economic damage to the Plaintiff.

47.    The Defendant's claim to have so-called "evidence" (fraudulent deception) was also used for the initiation of baseless and groundless investigations with the N.Y.P.D. and/or F.B.I. (Dkt. 45), exactly like conduct in *FTC v. World Patent Marketing*. Further, Defendant personally contacted ambulance services in the Plaintiff's home community to report that the F.B.I. (Dkt. 56,pg.29) was seeking the Plaintiff (note: Plaintiff is a California licensed Emergency Medical Technician). Defendant could foresee the future economic harm that would be visited upon the Plaintiff and future employment opportunities for the "reporting" of such deceitful and derogatory information to small hometown potential employers. See *Brandt v. Board of Cooperative Education Services,* 820 F.2d 41, 44 (2d Cir. 1987). These types of malevolent deceptive schemes, engineered by the Defendant for his profit via the CSTT fake news cartel, engineered to deprive the Plaintiff of his property rights, have consistently relied upon the use of the interstate wires and are in violation of 18 USC § 1343.

48.    The Plaintiff has pled that the Defendant deprived him of his property interests in good business relations, a good reputation and career potential etc. (Dkt. 5 and 56, pg.40, 47) using deception and deceit. The Plaintiff has been denied tangible property rights (as defined by state law) via the trick and deceit of the Defendant's use of the interstate wires. *United States v. Evans,* 844 F.2d 36, 39 (2d Cir. 1988).

**49.**    "While property interests are constitutionally protected, they are not generally constitutionally established; rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those

benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).   Thus, only where a plaintiff can demonstrate that state law confers "a legitimate claim of entitlement" to a particular position will a property interest in that position arise." [emphasis added]  See *Velez v. Levy,* 401 F.3d 75 (2d Cir. 2005).

**50.**     Congress has determined that the use of false statements (wire fraud) can support a civil remedy for loss of intangible rights.  Section 1346 of Title 18, United States Code, which provides that "For the purposes of this Chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." [emphasis added]

*Standard of Review*

51.     Once it has been established that a person has a reasonable expectation of entitlement, "the types of interests protected as "property" are varied, and, often as not, intangible, relating to "the whole domain of social and economic fact."  *Logan* quoting *Nat'l Mutual Ins. Co. v. Tidewater Transfer Co.*, 337 U.S. 582, 646, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949).

52.     The Plaintiff has a property interest in the legal entitlement to business relations unhampered by the Defendant's schemes prohibited by the RICO predicate statutes.  *Mendoza v. Zirkle Fruit Co.,* 301 F.3d 1163 (9th Cir. 2002).

53.     The objective standard for determining whether acts or practices are deceptive or misleading is whether those acts or practices are "likely to mislead a reasonable consumer acting under reasonably under the circumstances."  *Oswego Laborers' Local 214 Pension Fund v. marine Midland Bank, N.A.*, 85 N.Y. 2d 20, 26, 623 N.Y.S. 2d 529, 532, 647 N.E.2d 741, 744 (1995).  Usually that determination is a question of fact, not to be made at the motion to dismiss stage.  *Goldberg v. Johnson & Johnson Consumer Cos.,* 8 F. Sup. 3d 467, 478 (S.D.N.Y. 2014), citing *Quinn v. Walgreen Co.,* 985 F. Supp. 2d 533, 543 (S.D.N.Y. 2013).

54.     To this end, the totality of the various CSTT racketeering schemes rely on wire fraud.  18 U.S.C. §1964(c) (wire fraud, ""scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.")  Note: Pursuant to N.Y. Executive Law § 63(12) the term "fraud" includes "any device, scheme or artifice to defraud and any deceptions, misrepresentations, concealment, suppression, false pretense, false promise or unconscionable contractual provision."

55.     "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to <u>determine whether the complaint itself is legally sufficient</u>." [emphasis added]  E.g., *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir.1984)." *Goldman v. Belden, 754 F.2d 1059,* Second Circuit (1985).  The *pro se* Plaintiff has met this burden.

56.     The Supreme Court has affirmed its reliance on the "liberal construction" clause of RICO. *See Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993)(relying on Congress's intent to construe RICO broadly to resolve ambiguities).

   **C.  Show cause why his abuse of process claim should not be dismissed for lack of standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).**

57.     Plaintiff defers to the wisdom of the Court.

   **D.   Show cause why the Court should not dismiss his 42 U.S.C. § 1985 claim for failure to state a claim under Rule 12(b)(6).**

58.     This section addresses two major issues: (1) the foundation for a 42 U.S.C. § 1985(2) section one claim, and (2) 42 U.S.C. § 1985(3) section three civil recovery.

   *Discussion of 42 U.S.C. 1985(2) section one (COUNT VII SAC [Dkt. 56, pg.s53-56])*

59.     Between May – June 2017 Plaintiff seven (7) declarations in *Robert David Steele, et. al. vs. Jason Goodman*, U.S.D.C. for the Eastern District of Virginia (Richmond), CASE #: 3:17-cv-

00601-MHL). (Virginia lawsuit) (Dkt. 8).  In open defiance of 42 U.S.C. §§ 1985(2) clause one

the Defendant calculated to economically injure, intimidate, coerce and humiliate the Plaintiff to

dampen, obstruct and/or retaliate against the Plaintiff for (1) the submission of documents in the

Virginia lawsuit and (2) continued with the filing of this instant lawsuit.

60.     The bright line threshold of § 1985(2) (clause one) was crossed by the Defendant's

continuing malevolent acts (Dkt. 45, Dkt. 56, pg. 53) which allows for a private remedy under

Section 1985(3)(clause iii).

61.     As alleged in the SAC when the Defendant engaged in his civil conspiracy with F.B.I.

personnel (Dkt. 56, pg.54) the Defendant was made a state actor.  Therefore, these malevolent

smear campaigns invade Plaintiff's liberty interest in a good reputation and future employment,

and thus created an actionable federal offense.  "Such property interests are "created and their

dimensions are defined by existing rules or understandings that stem from an independent source

such as state law." [emphasis added] Footnote 75, *White Plains Towing Corp. v. Patterson*, 991

F.2d 1049 (2d Cir.)

62.     In *Farese v. Scherer* [342 F.3d 1223, 1229 (11th Cir. 2003)], the court noted that §

1985(2) prohibits conspiracies to intimidate parties or witnesses to federal lawsuits.  The statute

proscribes "conspiracies that interfere with * * * the administration of justice in federal courts".

63.     Both the AC (Dkt. 5) and SAC (Dkt. 56) cite § 1985(2) (inferring 1985(2) (clause one or

"i") which provides this Court applicable federal jurisdiction.  A *per se* violation of § 1985(2)

(clause one/i) ("Obstructing Justice; Intimidating Party, Witness, or Juror") exists when two or

more persons (the Defendant and his numerous sidekicks [Dkt. 56,pg.30]) conspire to deter, by

force, intimidation, or threat any party or witness in any court of the United States from attending

to the matters of the court.  (See tweets of Kevin Shipp [Dkt. 47, 66 for background on Shipp]
"you shall reap what you sow").

*Discussion of 42 U.S.C. § 1985(3) (clause iii) civil remedy*

64.    Section 1985(3)(clause iii) provides a remedy for damages to anyone "injured in his
person or property" or deprived of a federal right or privilege as a result of a conspiracy
proscribed by Section 1985(2) (clause i).

65.    In *Haddle v. Garrison*, 525 U.S. 121, the Supreme Court held that tort injuries (similar to
the Plaintiff's described in the previous section) are cognizable under § 1985(3)(clause iii).  See
to "injure [petitioner] in his person or property".  Further, "[t]he statute provides that if one or
more persons engaged in such a conspiracy 'do, or cause to be done, any act in furtherance of the
object of such conspiracy, whereby another is injured in his person or property', . . . the party so
injured ... may have an action for the recovery of damages occasioned by such injury ... against
any one or more of the conspirators. § 1985(3)."  See footnote no. 2:  "Section 1985(3) contains
the remedial provision granting a cause of action for damages to those harmed by any of the
conspiracies prohibited in §1985. See *Kush* v. *Rutledge* , 460 U. S. at 724-725 (listing the various
conspiracies that §1985 prohibits).

66.    It is instructive to note the U.S. Department of Justice Amicus Brief (1998), submitted to
the *Haddle v. Garrison* court, which summarizes the property issues under consideration by the
Court, "[t]he statute provides a remedy in damages to anyone who is injured in his person or
property or deprived of a federal right or privilege as a result of an act in furtherance of a
conspiracy prohibited under any part of Section 1985, including clause one of Section 1985(2)
emphasis added] [Internet URL: https://www.justice.gov/osg/brief/haddle-v-garrison-amicus-

merits ]. To summarize, § 1985(3) class-based animus limitations cannot be used to narrow the scope of a § 1985(2) (clause one) claim.

*Standard of Review*

67.      "*Held:* No allegations of racial or class-based invidiously discriminatory animus are required to establish a cause of action under the first part of § 1985(2). The statutory provisions now codified at § 1985 were originally enacted as § 2 of the Civil Rights Act of 1871, and the substantive meaning of the 1871 Act has not been changed.

68.      "The provisions relating to institutions and processes of the Federal Government (including the first part (clause one) of § 1985(2)) … contain no language requiring that the conspirators act with intent to deprive their victims of the equal protection of the laws. Thus, the reasoning of *Griffin* is not applicable here, and, given the structure of § 2 of the 1871 Act, it is clear " *Kush v. Rutledge*, 460 U.S. 719 (1983)

**E. Show cause why the Court should not decline to exercise jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367(c)(2)-(3) in the event the federal claims are dismissed.**

69.      If the Court determines a dismissal under Rule 12(b)(1) it would signify that the Court never had original jurisdiction over any claims, so exercising supplemental jurisdiction over state claims would be improper. "The standard of review for determinations regarding subject–matter jurisdiction is clear error for factual findings, and de novo for the legal conclusion as to whether subject matter jurisdiction exists." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 701 (2d Cir. 2000)." *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 400 (2d Cir. 2017).

70.      In such a case the Court could not dismiss with prejudice, as such a characterization is not applicable to dismissals for lack of federal jurisdiction. See *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016).  This would require remand to state court. "If at any

time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996).

71.    However, "[w]hen a district court dismisses, pursuant to Rule 12(b)(6), all claims over which it properly has original subject–matter jurisdiction, the district court may still, under § 1367(c), exercise its discretion to retain supplemental jurisdiction over related state–law claims. *Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 305 (2d Cir. 2003)." *Cohen v. Postal Holdings, LLC*.

72.    "There are many reasons why supplemental jurisdiction may appropriately be retained, however, and the presence of such reasons may on occasion justify the exercise of supplemental jurisdiction even when the district court dismisses the federal claims. See *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n.7 (1988) (listing "judicial economy, convenience, fairness, and comity" as "factors to be considered under the [supplemental] jurisdiction doctrine"); *Nowak,* 81 F.3d at 1187 (determining that the district court did not abuse its discretion in exercising supplemental jurisdiction over state–law claims because the federal claim was dismissed close to the trial date and after the court and parties had invested significant energy preparing for trial); *Raucci v. Town of Rotterdam,* 902 F.2d 1050, 1055 (2d Cir. 1990) (same)." *Cohen v. Postal Holdings, LLC*.

73.    The Court should consider that there is solid legal ground for comparing the deception CSTT enterprise to a fake hoax news service.  This deception hurt consumers.  The baseline for such deception-based consumer injury is provided by *FTC v. Clickbooth.com, LLC et al* and *FTC v. World Patent Marketing*.  Therefore, an objective legal standard exists to hold the Defendant and his CSTT enterprise accountable – even if only under state law for gross violations of the

FTC Act. As the federal FTC Act and the N.Y. state "min-FTC" Act are legislative cousins, such supplemental jurisdiction appears completely justified and appropriate.

74.     The S.D.N.Y. District Court has exercised supplemental jurisdiction in similar deceptive consumer cases that are solely grounded in state law. In *Braynina and Gurevich v. TJX Companies, Inc.,* USDC for SDNY, 15 Civ. 5897 (Dkt. 37, 09/26/16) the Hon. Katherine Polk Failla, District Judge (S.D.N.Y.) heard an analogous state law controversy relying on the "mini FTC Act" theory. In her OPINION AND ORDER Judge Failla provides an analysis of N.Y. G.B.L. §§ 349 and 350 at pgs. 8-9. It should be assumed that the *Braynina* court also recognized the federal FTC Act and N.Y. state "mini-FTC" Act nexus, as there appears to be no federal jurisdiction or federal statute cited in the ORDER (*Braynina and Gurevich v. TJX Companies, Inc.*).

75.     Indeed, § 349 was enacted "to follow in the steps of the [FTC] with respect to the interpretation of deceptive acts and practices outlawed in Section 5 of the [FTC] Act." *State by Lefkowitz v. Colo. St. Christian College of the Church of the Inner Power*, 346 N.Y.S.2d 482, 487 (Sup. Ct. N.Y. Cty. 1973) (pg. 15). By adjudicating this controversy in the interest of protecting the public under the New York "mini-FTC Act" a private right of action will be available to the Plaintiff that will advance federal principles of curtailing commercial consumer-directed deceptive activity Congress deemed unlawful. N.Y. G.B.L. §§ 349 and 350 are modeled after § 5 of the FTC Act. *Applied Card Sys., Inc.*, 11 N.Y.3d at 120.; see also *Bildstein v. Mastercard Int'l Inc.,* 329 F. Supp. 2d 410, 414 (S.D.N.Y.).

76.     As the foregoing has demonstrated, Plaintiff has met his burden under §§ 349-350 as (1) the CSTT deceptions are aimed at consumers (CSTT video productions range from 3K to 100K views), (2) CSTT acts are materially misleading (see fraudulent pronouncements of "evidence"

obtained by CSTT), and (3) "the plaintiff suffered injury as a result of the deceptive act".  See

*Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000).

77.    Plaintiffs are not required to show actual pecuniary harm, "but instead must demonstrate

that the acts or practices have a broader impact on consumers at large."  See *Oswego Laborers'*

*Local 214 Pension Fund v. Marine Midland Bank, N.A., ,* 647 N.E.d 741, 744 at 744-75 (N.Y.

1995).

**F.  Show cause why leave to file a second amended complaint should not be denied on the basis of futility.**

78.    This Court seeks to address whether the proposed amendments (Dkt. 56) would be futile.

See, e.g., *Ronzani v. Sanofi S.A.,* 899 F.2d 195, 198-99 (2d Cir. 1990).  The Second Circuit has

made it clear that leave to amend is to be freely given (pending in Dkt. 56).  *See, e.g.,*

*Richardson Greenshields Securities, Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir. 1987).  In *Lau,*

the Court stated that a motion to amend should be denied only for such reasons as bad faith,

futility of amendment and prejudice to the opposing party.  As discussed below, when the Court

considers the four corners of the SAC (Dkt. 56) it will learn it will not be necessarily be futile.

See. *Ellis v. Chao, 336,* F.3d 114, 127 (2d Cir.2003).

79.    As enumerated in **COUNT VI** (Dkt 56.,pgs.52-53) the Defendant and his sidekick Korey

Atkin disseminated fraudulent information that they had "evidence" to assign public disgrace, ill

fame and public opprobrium to the Plaintiff, as he purportedly had actual knowledge of the

location of Mr. Atkin in New Mexico when his lung bleb exploded (aka Microwave Oven Hoax).

The Defendant stated in a video production, "[h]e (Plaintiff) somehow knew that Quinn Michaels

(Mr. Atkin) was in Vaughn, New Mexico."  This is a lie, deception and a deceitful assertion that

injured the Plaintiff's professional reputation.

80.    As enumerated in **COUNT VII** (Dkt. 56,pgs.53-57) Defendant and his sidekicks schemed to intimidate the Plaintiff for acting as a witness in the Virginia lawsuit and for filing this instant lawsuit.

81.    As enumerated in **COUNT XI** (Dkt. 56,pgs-62-63) the Defendant violated the copy right of the Plaintiff by the industrial scale infringement over 200 video works of the Plaintiff (an on-going practice by the Defendant at the time of this writing).  Section 504(c) states that a copyright owner may "recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action."  This COUNT does not appear futile.

82.    Like a determination of futility, when considering a motion to dismiss, a court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-moving party, *Trs. Of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt*, 843 F.3d at 566 (2d Cir 2016).  If a complaint is dismissed, the court must grant plaintiff leave to amend. *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016).  Unless the court determines that the pleading could not possibly be cured by the allegations of other facts. *F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017).

83.    Such claims can only be dismissed if it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner*, 404 U.S. 519, 520-521(1972).

84.    In the Second Circuit it is well established that: "the court should not dismiss the complaint unless it appears `beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985) (quoting *Conley v. Gibson,* *311 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)).

**CONCLUSION**

85.     Generally, a plaintiff's burden at the pleading stage is relatively light.  Fed. R. Civ. Proc.

8(a) states that "[a] pleading which sets forth a claim for relief … shall contain … a short and

plain statement of the claim showing the pleader is entitled to relief." Rule 8(a).  Rule 9(b)

imposes a heighted pleading standard for fraud claims (such as RICO), requiring that "[i]n

alleging fraud or mistake, a party must state with particularity the circumstances constituting

fraud or mistake."  Fully complying with Rule 9 can be a tall order for a *pro se* plaintiff and the

Court's indulgence is requested.

86.     "A Rule 12(b)(6) motion is addressed to the face of the pleading. The pleading is deemed

to include any document attached to it as an exhibit, Fed.R.Civ.P. 10(c), or any document

incorporated 754 F.2d 1066 in it by reference. *Denton Construction Co. v. Missouri Portland*

*Cement Co.,* 507 F.Supp. 53, 54 (E.D.Mo.), vacated on other grounds, 659 F.2d 873 (8th

Cir.1981) (per curiam); see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1327, at

490-91 n. 18 (1969); id. § 1327, at 125 n. 18 (Supp.1984) (citing *Denton Construction Co. v.*

*Missouri Portland Cement Co. and Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 113 (2d

Cir.1982))." *Goldman v. Belden,* 754 F.2d 1059, Second Circuit (1985).

87.     A Rule 12(b)(6) motion tests the legal sufficiency of a complaint.  To survive a motion to

dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient to

"state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A claim is plausible on its face when the factual allegations allow a court to

infer the defendant's liability based on alleged conduct. *Ashcroft v. Iqbal, 556,* U.S. 662, 663

(2009)(quoting Bell. Atl Corp.).  This has created what some appellate courts refer to as the

*Twombly* and *Iqbal* pleading standard framework which supports the concept that Fed. R. Civ. P.

8(a) pleadings must state a plausible cause of action to survive a motion to dismiss under Rule

12(b)(6).  A. Benjamin Spencer, *Plausibility Pleading*, 49 B. C. L. Rev. 431 (2008)

88.     Not to over-simplify; but, it appears that the *Twombly* and *Iqbal* framework encourages

amendment pleadings to overcome perceived difficulties with the previous "notice pleading"

requirements promulgated by *Conley v. Gibson*, 355 U.S. 41, 45-46(1957).  Hence, a complaint

which is plausible "on the whole" may serve to vindicate interrelated portions of the complaint

that would otherwise be prone to dismissal.

89.     Even after the decisions in *Twombly* and *Iqbal*, the general spirit of accommodation for

*pro se* litigants has survived.  As the Second Circuit recently held, "[e]ven after Twombly … we

remain obligated to construe a pro se complaint liberally."  *Harris v. Mills*, 572 F.3d 66, 72 (2d

Cir. 2009).

90.     The Plaintiff has alleged the necessary facts in the Second Amended Complaint (Dkt. 56

[**SAC**]) to allege "the specific intent to deceive necessary to support the predicate acts".  *McRae*

*v. Norton*, 2011 WL 3625569, at *3 (E.D.N.Y. Apr. 11, 2011).

91.     Consumers and the public will suffer irreparable injuries unless Defendant's deceptive

acts are judicially adjudicated.  Another egregious closure of a maritime port is even possible.

I hereby attest that the foregoing is true and accurate under the penalties of perjury on this 19

day of December, 2018.

*Pro se* plaintiff D. George Sweigert

**D. GEORGE SWEIGERT, C/O**
**P.O. BOX 152**
**MESA, AZ 85211**

25

PRIORITY MAIL
POSTAGE REQUIRED

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

UNITED STATES
USPS
SDNY

VISIT US AT USPS.COM®

TO:

D. George Sweigert, c/o
P.O. Box 152
Mesa, AZ 85211

PRO SE DIVISION, ROOM 200
U.S. District Court
Southern District of New York (Foley Square)
500 Pearl Street
New York, N.Y. 10007-1312

PRIORITY®
★ MAIL ★

P

PRIORITY MAIL 2-Day®

U.S. POSTAGE
$8.45
PM 2-Day
95621 0021
Date of sale
12/19/18
06   2S
11488361
0546981219163146

6.20 oz
0021

C014

EXPECTED DELIVERY DAY: 12/24/18

SHIP
TO:
500 PEARL ST
NEW YORK NY 10007-1316

USPS TRACKING NUMBER

9505 5067 0811 8353 0280 24