

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| D. GEORGE SWEIGERT,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　-against-<br><br>JASON GOODMAN,<br><br>　　　　　　　　　　　Defendant. | 18-CV-8653 (VEC)<br><br>**PLAINTIFF'S REPLY TO<br>DEFENDANT'S OPPOSITION** |

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION

### PRELIMINARY STATEMENT

1. *Background.* As a leading *alt-right* media star and all-purpose public figure, Defendant (herein Def) (1) operates CrowdSource The Truth (CSTT) on several social media platforms, and (2) publicly proclaims to have substantial law enforcement contacts ("tremendous amount of … uh .. very well vetted law enforcement active law enforcement sources.  And these people have assisted me and guided me…"[Dkt. 45,pg.6-7] ". . .Moore/Paine previously worked for the FBI, White House, DEA.." [Dkt. 45,pg.10]).  See *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342 (1974) for all purpose public figure.

2. CSTT claims to be a news service, but operates akin to a methodology used in nation state cyber conflict known as "Information Operations [Info Ops]".  The Def's proficiency at sowing deceptive falsehoods, mixed with a few grains of truth, into CSTT *news* podcasts accomplishes the Info Ops objectives of disempowerment, disruption, degrading and de-personage of a target (like the Plaintiff).  Innocent parties (collateral damage) become CSTT on-line punching bags to increase Def's personal profits while he recklessly deflects blame, ownership and responsibility of his acts onto these innocents (see Port dirty bomb hoax).

1

3.  Purportedly over 1,111 dubious paying "patrons" (*Patreon.Com*) transmit via the global payment system between $10K and $15K monthly to fund CSTT *investigation podcasts* – which can be categorically characterized as false, distortions of reality, deceptive and often resembling screaming "fire" in a crowded theater (Port dirty bomb hoax). In these pay-for-view podcasts deceptive and defamatory statements are made continuously by the Def in his private social media war against CSTT enemies. This includes Def's perverted insinuations the that Plaintiff is (1) protecting pedophiles, (2) practicing ritualistic satanic torture, (3) stalking CSTT reporters with death squads, (4) was a planner of the Port hoax (Dkt. 75) and (5) is a drug smuggler. Def insists that all of these slurs are based on the *evidence* that *resulted* from CSTT *investigations*. This explains why it is, and was, so damaging and dangerous, when Def defames and incites on-line calls to violence and intimidation and CSTT targets (like Plaintiff).

4.  *Defendant fails to comply with Dkt. 65 ORDER*. All responses to Dkt. 64 had to be "double-spaced, 12-point font". Not surprisingly, the Def violated this stipulation by providing single spaced arguments (Dkt. 75) [pg.6, ln.21-25]. Dkt. 65 stated, "Defendant may.. file a brief .. that responds to any arguments made in Plaintiff's response." [emphasis added]. Instead, Def provides a jumble of conclusory, extraneous and contradictory statements in his reply (Dkt. 75); e.g. "[t]he core accusations of his complaint are false and have no merit ...")[ln.2, pg.2].

5.  Def claims "Sweigert also fails to mention that the complaint filed with the AZ State Bar Association .. was in fact filed by Plaintiff AFTER the court's Order." (Dkt. 75,pg.4,ln.23-24). Dkt. 61 [herein incorporated as if fully restated] contains a copy of the Arizona State Bar complaint for the Unauthorized Practice of Law [pg.37-44] docketed **11/8/18.** Not only is the *allegation* of Plaintiff violating Dkt. 65 (docketed **11/16/18** – six days after Dkt. 61) extraneous, and frivolous, it is also in gross error, misleading, prejudicial and false.

2

6. Def accuses Plaintiff of violating Dkt. 65 ("neither party is permitted to file any further motions or pleadings") with a letter (Dkt. 74) answering Def's vile allegations made by Def in several CSTT videos released 1/9/19 (herein 1/9/19 post office videos as they were recorded at the Mesa, Arizona post office). Contrary to Def's unfounded and meritless allegations, the letter in question (Dkt. 74 [herein incorporated as if fully restated]) was **not** a *motion or pleading* and it does not violate Dkt. 65. See S.D.N.Y. "Motions Guide for Pro Se Handbook" **"[a] motion is a formal way for a party to ask the <u>court</u> to do something."** [emphasis added] [http://www.nysd.uscourts.gov/file/forms/motions-guide-for-pro-se-litigants].

7. Def states in his 1/9/19 post office videos that he is conducting an *investigation* "to determine the true legal ownership of PO Box 152. [Plaintiff's address]" (Dkt. 75) [ln.7,pg.2]. Def then demands the unauthorized release of postal boxholder information by federal employees under threat of video social media exposure, which smacks of coercion, as postal boxholder information is <u>protected by the federal Privacy Act</u> (5 U.S. Code § 552a). "Information relating to boxholders ... may only be disclosed as permitted by the Privacy Act". <u>Privacy Act Issuances</u> (1999), 59 FR 37161, July 21, 1994. Based only on this *information,* Def fabricates allegations of *conspiracy to commit mail fraud* in the face of known facts (docket address: D. George Sweigert <u>**c/o**</u> P.O. Box 152). "C/O" commonly refers to "in care of". This speaks to malice and the Fed. R. Civ. Proc. 12(b)(6) plausibility test (addressed below). "[A]n inference of actual malice can be drawn when a defendant publishes a defamatory statement that contradicts information known to him", *Harte-Hanks Comm., Inc. v. Connaughton,* 491 U.S. 657, 692-93 (1989). Def's mail fraud allegation over a "c/o" address is, therefore, malicious. Continuing his extraneous accusations Def (Dkt. 75) states, "[t]his would explain why five separate articles were returned as undeliverable", while Def conceals the fact that four of the five

3

(4/5) articles were mis-addressed to "David George Acton Sweigert" by Def (not the proper docket name). Def's own actions to mis-address official court correspondence obviously contributed to the return of this mail (4/5). These same flawed *false address* and *fraud on the court* arguments have already appeared in Def's Dkts. 49 & 59; which were thoroughly answered with Plaintiff's Dkts. 63 (pg.16, Exh.1 & pg.20,Exh.3) and 70 [herein incorporated as if both fully restated]. The inflammatory and prejudicial nature of Def's irrelevant declarations warrants that they not only be disregarded but stricken from the record entirely. *Goodyear Tire & Rubber Co. v. Haeger,* 137 S. Ct. 1178, 1186 (2017) (relying *Link v. Wabash R. Co.,* 370 U.S. 626, 630-631 (1962).

8. <u>Defendant continues to injure Plaintiff.</u> In the 1/9/19 post office videos Def clearly displays the methodology of his Info Ops tactics by accusing the Plaintiff of felony crimes. Plaintiff continues to be horrified, appalled and deeply concerned by the Def's longstanding Info Op style smear campaigns (e.g. see Dkt. 71) that support incitement. <u>None</u> of the Def's statements can be construed as mere opinion or hyperbole as they can all be proven false and designed to incite. *United States v. Turner*, 720 F.3d 411 (2d Cir. 2013).

9. <u>Def fails to understand jurisdictional boundaries of the federal Courts.</u> In an act of final desperation, Def seeks to sanction the Plaintiff for a letter (Dkt. 75,pg.11,Exh.D) that clearly suggests that the U.S.D.C. for the District of **Maryland** might be the site for future litigation that would include the Plaintiff's brother – George Webb Sweigert -- and the Def.

## LEGAL ARUGMENT

I.     A MOTION TO DISMISS UNDER RULE 12(B)(6) TESTS LEGAL FEASIBILITY AND SUFFICIENCY OF THE PLEADINGS – FRCP RULES 8 AND 9(B), TWOMBLY & IQBAL, PLAUSIBILITY

4

10. The focus in ruling on a Motion to Dismiss is not on resolving the merits of the dispute. No discovery has taken place. Thereby, Def's irrelevant counter allegations (Dkt. 75) must play no role in the Court's decision to dismiss. As the Court is bound by the "four corners rule" it must limit its consideration of issues only to the complaint and not the Def's jumble of irrelevant untested allegations (Dkt. 75). *Guggenheimer v. Ginzburg,* 43 N.Y.2d 268, 275, 372 N.E.2d 17, 20, 401 N.Y.S.2d 182, 185 (1977) (stating that sole determining factor in deciding motion to dismiss is whether allegations in complaint state cause of action); *Foley v. D'Agostino,* 21 A.D.2d 60, 64-65, 248 N.Y.S2d 121, 126-127 (1st Dep't 1964).

11. "It is well settled that pursuant to C.P.L.R .3211(a)(7) The court must afford the pleading a liberal construction, accept the facts alleged in the pleading as true, accord the plaintiff the benefit of every possible inference, and determine only whether the facts as alleged fit within any cognizable legal theory"[FN1] (Esposito v Noto, 90 AD3d 825 [2d Dept 2011]" *Ruffalo v Ackerman* 2014 NY Slip Op 51744(U). "The issue is not whether the plaintiff will ultimately prevail but whether [it] is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

12. *Plaintiff's Injuries.* Amongst other things, the Plaintiff has alleged (Dkt. 5 & 56) that the Def intentionally, willfully and with actual malice, spread false, and heinous statements regarding him to irreparably harm his reputation for the rest of his life (which damaged him personally and professionally). *Bingham v. Struve,* 184 A.D.2d 85, 89-90 (1st Dep't 1992). Plaintiff's articulated injuries have met the test of U.S. Constitution Article III standing. The Second Circuit noted that selective reporting, particularly where it tends to lend credence to a predetermined result, is a factor to be considered in the issue of malice. *Goldwater v. Ginzburg,* 414 F.2d 324, 337 (2d Cir. 1969), cert denied, 396 U.S. 1049 (1970). Def's statements are not

privileged and have resulted in both actual monetary damages ("the loss of something having economic or pecuniary value") and an injury that "impugns the basic integrity or creditworthiness of a business." *Celle v. Filipino Reporter Enterprises, Inc.* 209 F.3d 163, 179-180 (2d Cir. 2000). This amplifies the Article III standing of the Plaintiff.

13. A court may not properly dismiss a complaint that states a plausible version of events merely because the court finds a different version more plausible. Even if the truth of a plaintiff's allegations seems doubtful, "Rule 12(b)(6) does not countenance … dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007).

14. <u>*Defendant's Intimidation of a Federal Witness.*</u> As alleged, and assumed to be true, Def's Info Op smear campaigns only increased in intensity after the Plaintiff became a witness in federal litigation in the Eastern District of Virginia where the Def is being sued for libel, defamation, etc. *Robert David Steele v. Jason Goodman,* 3:17-cv-00601. These intimidation tactics violated 42 U.S.C. § 1985(3) and the supporting allegations are not conclusory (Dkt. 5 & 56). Def himself made several on-line videos claiming he was engaged with *law enforcement sources that guided him* to file unfounded and meritless reports to the F.B.I against the Plaintiff (Dkt. 45 [herein incorporated as if fully restated]). On their face, these allegations must be taken as true and plausible. Plaintiff only needs "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face" *Wacker v. JP Morgan Chase,* 16-2482-cv(L) (2d Cir. Feb. 1, 2017). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Starr v. Sony BMG Music,* 592 F.3d 314, 321 (2d Cir. 2010). Plaintiff's specific allegations are sufficiently detailed "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "Fact-specific

6

questions <u>cannot</u> be resolved on the pleadings." *Anderson News, LLC v. Am. Media, Inc.* 680 F.3d 162, 185 (2 Cir. 2012). [emphasis added]

15. <u>*Defendant's incitement of violence against Plaintiff.*</u> The Def has broadcast *investigation results* to accuse the Plaintiff of murdering hitchhikers as part of witchcraft practices, protecting pedophiles, coordinating satanic ritualistic abuse on victims, etc. These deceptive and vile accusations were passed off as the *results of investigative research* for the purpose of inciting a digital lynch mob to harm the Plaintiff. Defaming and inciting violence against the Plaintiff was not done in the public's interest. In fact, none of Def's infringing content has been removed (<u>nearly 14 months later and counting</u>), and remains available to the <u>public worldwide</u>. "[I]ncitement creates a risk that <u>third parties</u> will inflict violence on the victim, whereas threats engender fear and intimidation that usually reach the victim directly." *United States v. Turner*, 720 F.3d 411 (2d Cir. 2013). [emphasis added] "It rarely has been suggested that the constitution freedom for speech … extends immunity to speech or writing used as an integral part of conduct in violation of a valid … statute." *United States v. Rowlee II*, 899 F.2d 1275, 1278 (2d Cir. 1990).

16. <u>*Defendant is a Public Figure while Plaintiff is not*</u>. In *New York Times Co. v. Sullivan,* the Supreme Court defined rules of defamatory publication that apply not only to public officials but to any public figure (like the Def). *Gertz v. Welch, Inc.* 418 U.S. 323, 342. Def is clearly a public figure who has inserted himself into major national political controversies with his *right-wing* sidekicks like Jerome Corsi, Larry Klayman (Dkt. 54, pg.10,Exh.4 & pg.12,Exh.5) and Laura Loomer (all of whom are monitored and watched by the Southern Poverty Law Center (S.P.L.C.) for hate speech). Mr. Klayman, esq. represents both Loomer and Corsi in outlandish lawsuits (*Loomer vs. Twitter.Com* and *Corsi vs. Robert S. Mueller, III, Office of the Special*

7

*Counsel*) which are extensively promoted by the Def with a constant stream of anti-government chatter to *echo chamber* these *lawsuits* with presumed *evidence* "[i]mplicated too here are U.S. Special Counsel Robert Mueller [in a] Criminal conspiracy... [Dkt. 45,pg.11]."

17. Plaintiff arguably is not such a public figure. Plaintiff had only used a stage name ("Dave Acton") to create educational videos on a YouTube channel that catered to disaster preparedness and medical first-aid as a licensed Emergency Medical Technician. The Plaintiff became a tangential unwitting participant in the acrimonious feud between Def and his former room-mate and sidekick George Webb Sweigert (Plaintiff's brother). Plaintiff was dragged into this controversy and is only defending himself against the Def who drew first blood.

18. In context of only the Port dirty bomb incident debate, the Plaintiff is at most a limited public figure and more probably a private citizen that was involuntarily drug into this ugly situation and is acting in self-defense against the Def. See *Biro v. Conde Nast,* 807 F.3d 541 (2d Cir. 2015). Even if this Court finds the Plaintiff as a limited public figure, the Def's speech would have to be necessarily limited to the scope of that public controversy (Port hoax incident). *Gertz v. Welch, Inc.* 418 U.S. 323, 345. The Def would be prohibited from the broadcast of extraneous attacks and unfounded accusations of criminal conduct (implied defamation and slander per se). A person acts with <u>malice</u> if the publication was made with knowledge that the statement was false or with reckless disregard for its truth. *Gertz v. Welch, Inc.,* 418 U.S. 323. This demonstrates injury and Article III standing of Plaintiff by meeting the "plausibility test" created by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and relied upon by *Biro v. Condé Nast, et al.* when considering a Fed. R. Civ. Proc. Rule 12(b)(6) question.

19. Def cannot justify airing of Plaintiff's fabricated private mail fraud dirty laundry before the public, as seen in the 1/9/19 post office videos (which are a direct attack on the integrity of

8

this Court (see Dkt. 50, 51, 60, 61 [herein incorporated as if fully restated]). The 1/9/19 post office videos accuse Plaintiff of *mail fraud, interference with a criminal prosecution* and *stalking* of a potential witness. "A false accusation of serious crime constitutes slander per se". *Boyd v. Nationwide Mutual Insurance Co.,* 208 F.3d 406 (2d Cir. 2000). In New York "[d]efamation is 'the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.'" *Stepanov v. Dow Jones & Co.,* 987 N.Y.S.2d 37, 41 (1st Dep't 2014) (quoting *Foster v. Churchill,* 87 N.Y.2d 774, 751 (1996)). See also *St. Amant v. Thompson,* 390 U.S. 727, 732 (1968)

## II. COURT SHOULD ALLOW PLAINTIFF TO RESUBMIT NEW AMENDED COMPLAINT PURSUANT TO FRCP RULE 15(D)

20. As the Court will recall, the Def served an "answer" to the amended complaint (Dkt. 5) which was <u>unverified and considered a legal nullity</u> under C.P.L.R. § 3022 (Dkt. 35). Plaintiff warned Def several times of this problem (Dkts. 41, 42, 43, 57 [herein incorporated as if fully restated]). The Def was given ample opportunity to correct this deficiency and never did. To wit, the operative complaint (Dkt. 5) has <u>never been answered</u>. The Def would not be prejudiced by allowing the Plaintiff to amend and/or supplement the operative complaint. There has been no (1) undue delay in filing the motion to amend, (2) the adverse party has been noticed, (3) the Plaintiff is acting in good faith without a dilatory motive, (4) it is not a failure to cure deficiencies of previous pleadings, (5) there is no undue prejudice to the Def, and (6) the proposed second amended complaint is not futile. *Forman v. Davis,* 371 U.S. 178, 182 (1962).

21. The Court can greatly increase the efficiency of justice by allowing the Plaintiff to proceed to re-file an updated amended complaint created pursuant to Fed. R. Civ. Proc. 15(d). Rule 15(d) is the appropriate mechanism to set forth "transactions or occurrences or events

9

which have happened since the date of the pleading sought to be supplemented". Rule 15(d). See also, *Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 88 (2d Cir. 2001) (noting that supplemental pleadings relate to events that "have transpired since the date of the party's most recent pleading"). Supplements therefore contrast with amendments, which typically rest on matters in <u>place prior to the filing of the original pleading.</u> See 6A Wright & Miller § 1504 at 184. [emphasis added] See also, *Gillihan v. Shillinger*, 872 F.2d 935, 941 (10th Cir.1989) ("The supplement concerned events which took place <u>after</u> he filed the complaint, …). [emphasis added]

22. As Rule 15(d) <u>does not allow the addition of new parties</u> this would necessitate the Plaintiff dropping all proposed new parties (Def's companies and PATREON, Inc.). This action would reduce the burden on the Court by sweeping away the previous patch work of previous pleadings and reset this lawsuit and set it on a new course. This allows for a fresh start and consolidation of the controversy into one document (new complaint) and eliminates even the remote possibility of thorny abuse of discretion appeals.

## CONCLUSION

23. Plaintiff's pleading burden has not only met, but, has exceeded the pleadings threshold, particularly as no discovery has occurred, and he has established standing. Thereby, it would be premature to dismiss any causes of action. The Court should recognize that the Plaintiff will not oppose any direction to create a new complaint pursuant to Fed. R. Civ. Proc. Rule 15(d).

Signed: 1/17/19                    Respectfully submitted,

/D. George Sweigert, *pro se*/

Plaintiff reserves his right to file an amended pleading per Fed. R. Civ. Proc. Rule 15(a)

10

1  D. GEORGE SWEIGERT, C/O
2  P.O. BOX 152
   MESA, AZ 85211
3

4         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF NEW YORK
5                    (FOLEY SQUARE)

6

7  D. GEORGE SWEIGERT              Case No.: 1:18-cv-08653-VEC

8         Plaintiff,

9  vs.

10
   JASON GOODMAN
11                                 CERTIFICATE OF SERVICE

12        Defendant

13

14              CERTIFICATE OF SERVICE

15

16    The Plaintiff certifies under penalties of perjury that the enclosed documents have been

17 sent via First Class postage paid U.S. Mail to:

18

19        Jason Goodman
          252 7th Avenue #6S
20        New York, NY 10001

21        PRO SE DIVISION -- 200
22        U.S. District Court for the SDNY
          500 Pearl Street
23        New York, New York 10007-1312

24                    Respectfully dated this day __19__ January 2019

25

26 

27
                            D. GEORGE SWEIGERT
28
                       CERTIFICATE OF SERVICE




**USPS PRIORITY MAIL**

Flat Rate Mailing Envelope

Visit us at usps.com

INTERNATIONAL RESTRICTIONS APPLY:
Customs forms are required. Consult the International Mail Manual (IMM) at pe.usps.com or ask a retail associate for details.

SDNY PRO SE OFFICE
2019 JAN 23 AM 11:57

USM P3 SDNY

From/Expéditeur:
D. GEORGE SWEIGERT, C/O
P.O. BOX 152
MESA, AZ 85211

To/Destinataire:
PRO SE DIVISION -- 200
U.S. District Court for the SDNY
500 Pearl Street
New York, New York 10007-1312

SUITE 200

Country of Destination/Pays de destination:

US POSTAGE PAID
$6.70
PRIORITY MAIL 2-Day

EXPECTED DELIVERY DAY: 01/22/19

SHIP TO:
500 PEARL ST
NEW YORK NY 10007-1316

USPS TRACKING NUMBER
9505 5158 1611 9018 1731 72