IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

D. GEORGE SWEIGERT

       Plaintiff,

vs.

JASON GOODMAN,

       Defendant

Case No.: 1:18-cv-08653-VEC-SDA

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**

November 18, 2019



Jason Goodman, Defendant, Pro Se
252 7th Avenue Apt 6s
New York, NY 10001
(323) 744-7594
truth@crowdsourcethetruth.org

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) - 1

## TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................ 10

*Barnum v. Millbrook Care Ltd. P'ship,*
    850 F. Supp. 1227 (S.D.N.Y. 1994) ................................................... 9

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................ 10

*Cohen v. Hertz Corp.,*
    No. 13 Civ. 1205 (LTS)(AJP), 2013 WL 9450421 (S.D.N.Y. Nov. 26, 2013) .......................... 9

*Cortec Indus., Inc. v. Sum Holding L.P.,*
    949 F.2d 42 (2d Cir. 1991) ................................................................ 9

*Cruz v. FXDirectDealer, LLC,*
    720 F.3d 115 (2d Cir. 2013) .............................................................. 10

*DiFolco v. MSNBC Cable L.L.C.,*
    622 F.3d 104 (2d Cir. 2010) ............................................................. 9

*Global Network Commc'ns, Inc. v. City of New York,*
    458 F.3d 150 (2d Cir. 2006) .............................................................. 10

*Holmes v. Grubman,*
    568 F.3d 329 (2d Cir. 2009) .............................................................. 9

Kramer v. Time Warner, Inc.,
    937 F.2d 767 (2d Cir. 1991) .............................................................. 10

*Roth v. Jennings,*
    489 F.3d 499 (2d Cir. 2007) .............................................................. 9

## STATUES

NYS CVR § 50-51 ........................................................................................................ *passim*

NYGBL §§349-350 ...................................................................................................... *passim*

47 USC § 230 (c)(1) ......................................................................................................... *14*

28 USC § 1332 (a)(1) ...................................................................................................... *14*

## RULES

FED. R. CIV. P. 12(b)(6) ............................................................................................ *passim*

FRE Rule 804 (b)(3)(A) and (B) ..................................................................................... *8*

FED. R. CIV. P. 12(b)(6) ............................................................................................ *passim*

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................3

II.   BACKGROUND ....................................................................................4

III.  DISCUSSION .......................................................................................9
      A.    STANDARD OF REVIEW ......................................................9
      B.    NEW YORK GENERAL BUSINESS LAW §§349-350....................10
      C.    PLAINTIFF'S CLAIM OF VIOLAITONS OF NEW YORK GENERAL
            BUSINESS LAW §§349-350 SHOULD BE DISMISSED FOR FAILURE TO
            STATE A CLAIM
      D.    DEFAMATION AND DEFAMATION PER SE........................16
      E.    VIOLATIONS OF CIVIL RIGHTS LAW § 50 AND 51....................16
      F.    NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL
            DISTRESS.................................................................20

IV. CONCLUSION ......................................................................................21

## I.    INTRODUCTION

Defendant Goodman is a documentary filmmaker, journalist and host of an internet-based news, information and entertainment talk show called Crowdsource the Truth. Goodman hosts a wide array of guests and co-hosts on his show. For a period of approximately four months during 2017, George Webb Sweigert (hereinafter "Webb") was a recurring co-host. Webb is the brother of Plaintiff in this instant legal action, D. George Sweigert (hereinafter "Sweigert"). Goodman has never met Sweigert and was unaware of Sweigert prior to working with Webb. During the four-month period of collaboration, Webb introduced Goodman to several individuals who Goodman believes have each carried out a role in a persistent and ongoing conspiracy intended to defame Goodman, destroy his business, deprive him of economic opportunities and disrupt his personal life.

The alleged conspiracy includes elements of cyberstalking and harassment as well as harassment and stalking in the real world. It is Defendant's belief that this instant legal matter itself is NOT a legitimate claim of injury seeking relief, but rather an element of the alleged conspiracy intended to harass Goodman. Evidence shows that the co-conspirators planned not only this legal action, but multiple simultaneous lawsuits against Goodman in jurisdictions around the United States as a means of extorting money from Goodman and chilling his journalistic efforts.

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) - 3

## II.     BACKGROUND

On June 13, 2017 Webb introduced Goodman to Robert David Steele (hereinafter "Steele")

telephonically via a Skype video conference.  Webb and Steele were together at a restaurant in

Virginia where they met in person for lunch.  Defendant is unaware of what Webb and Steele

discussed during that in-person meeting.  The following day Webb participated in a YouTube

video broadcast with Goodman in which Webb reported information indicating the potential

danger of a "dirty bomb" aboard a ship landing in the Port of Charleston, SC.  During this

broadcast, Webb introduced the notion and specific language of a "dirty bomb".  Webb told

Goodman the risk was so great if such an incident did occur, it could create catastrophic damage

and loss of life beyond the scope of 9/11.  Webb further warned Goodman, knowing this

information and not reporting it to authorities could itself be a felony, misprision, a crime

previously unknown to Goodman.  It is Defendant's belief that Webb told Goodman these things

in an attempt to incite Goodman to call the authorities and trigger the events that followed.  It is

Goodman's belief that Webb, Sweigert and Steele were among a group of individuals who were

aware of and complicit in a plan to coerce Goodman into a situation that would result in a claim

of Goodman initiating a "bomb hoax" and then propagating that accusation throughout social

media, mainstream media and the civil justice system.

Plaintiff has written and self-published a book based on the false allegation that Goodman

planned and oversaw this alleged "dirty bomb hoax".  The book utilizes multiple unauthorized

copyright protected images of Defendant potentially violating his NYS CVR § 50-51 rights and

is sold by Plaintiff for profit on Amazon.com (https://www.amazon.com/Report-Charleston-

Dirty-Social-

Liability/dp/1717056792/ref=sr_1_1?keywords=dave+sweigert&qid=1574040236&sr=8-1).

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.
12(B)(6) - 4

The book downplays key facts, such as the U.S. Coast Guard, FBI and local authorities' investigation which included the arrest and interrogation of Webb, in its effort to falsely implicate Goodman.  No charges were brought against anyone in relation to the Port of Charleston matter.  No one involved in the official investigation ever contacted Goodman and he has never been accused of any crime or alleged wrongdoing.  When Goodman contacted the Coast Guard seeking information, he was told they could not speak with him because Webb had initiated civil action against their department, and Goodman was named in the action.  Despite this fact, for more than two years, Plaintiff and others including denied Intervenor Applicant Steve Outtrim (hereinafter "Outtrim") have been persistently attempting to convince thousands of viewers on the internet, President pro tempore of the South Carolina Senate Hugh Leatherman, numerous members of the U.S. Congress, the U.S. Coast Guard and various District Courts around the United States that Defendant was responsible for a bomb hoax.

Plaintiff either launched or participated in promoting the launch of an online petition on Change.org which utilizes an unauthorized copyright protected image of Defendant potentially violating his NYS CVR § 50-51 rights and depicts Defendant with the text "Dirty Bomb Hoaxer" attributing the Port of Charleston incident to Defendant and calling for his indictment and incarceration. (https://www.change.org/p/s-c-senator-hugh-leatherman-indict-the-charleston-iii-for-closing-the-port-of-charleston-with-a-dirty-bomb-hoax)  It is Defendant's belief that the intention of this petition is to create the appearance of a grass roots movement demanding Defendant be prosecuted, and to use the existence of the petition to further smear Defendant's worldwide reputation.  The signatures and comments appear to be generated at least in part by Plaintiff's co-conspirators including Manuel Chavez III (hereinafter "Chavez").  A second petition was created by "Concerned Citizens of the United States"

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) - 5

(https://www.change.org/p/cong-duncan-hunter-we-demand-the-gao-investigate-the-port-of-charleston-dirty-bomb-hoax-no-more) Although the author is anonymous, the content of the written copy is substantially the same as the message Plaintiff has been repeating and the image used is exactly the same as a graphic used in Plaintiff's book. This is highly suggestive that Plaintiff created this petition in a surreptitious way to further his agenda without revealing his identity.

Shortly after the Port of Charleston incident Steele brought suit against Goodman in the Eastern District of Virginia (3:17-cv-00601-MHL). Steele's Complaint relies entirely on the Port of Charleston incident as a triggering event. In his complaint, Steele falsely alleges that he terminated his working relationship with Goodman after learning Goodman would be arrested by NYPD for calling in a "bomb hoax". Steele published this libelous accusation to Webb in an email exchange between the three. **(EXHIBIT A)** No such arrest was ever made; no warrant was issued for Goodman's arrest and all indications show that Steele invented this allegation in an attempt to intimidate Goodman.

It is Defendant's belief that Steele, Webb, Sweigert and others have coordinated their efforts in furtherance of a scheme intended to extort money from the Defendant by suing him in multiple jurisdictions simultaneously and attempting to destroy his business and worldwide reputation with a coordinated online harassment and defamation campaign coupled with a real-world harassment campaign which includes this instant legal action.

Plaintiff and Steele are both ex-military and claim various specialties in areas of military intelligence. It is Defendant's belief that members of the alleged conspiracy communicate and operate in ways that are carefully designed with consideration for the Federal Rules of Civil Procedure and the Federal Rules of Evidence, to avoid discovery and complicate civil litigation.

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) - 6

Plaintiff attempted to intervene in Steele's EDVA (3:17-cv-00601-MHL) suit on February 19, 2019 **(EXHIBIT B)**.  It is Defendant's belief this was not done in pursuit of relief from actual injury, but rather in an effort to multiply the proceedings, exacerbate the complexity of Goodman's legal defense and increase the likelihood of a settlement or default to Steele's benefit.  Sweigert's attempt to intervene was denied by the Honorable M Hannah Lauck. **(EXHIBIT C)** The Court denied Sweigert' s Motion to Intervene, (3:17-cv-00601-MHL ECF No. 93) and refused to consider future filings by Sweigert. The Court denied as moot Sweigert's other motions. (3:17-cv-00601-MHL ECF Nos. 102, 108, 124.) The Court struck Sweigerts' miscellaneous filings from the record. (3:17-cv-00601-MHL ECF Nos. 51, 54, 55, 56, 58, 59, 60, 75, 77, 84, 103, 120, 137, 138, 140, 142, 145, 147, 149, 150).  These decisive orders from the honorable M Hannah Lauck further Defendant's belief that Plaintiff's complaints are frivolous, his filings vexatious and they have no ability to succeed on merits.

To the best of Defendant's knowledge, Sweigert became aware of Defendant via social media at the time Defendant began working with his brother, Webb.  Defendant has reason to believe some animosity may exist between the brothers as they have each separately, publicly admitted that Webb has allegedly had sexual intercourse with Sweigert's former wife.  Despite this alarmingly unsavory allegation, the brothers continue to cooperate from time to time, even appearing in videos to further defame Defendant and his associates. (see Morning Mayan, George Webb and Dave Acton https://www.youtube.com/watch?v=NNlxpqJrsCA).

Shortly after Goodman began collaborating with Webb, Sweigert started his campaign of cyber harassment, bullying, and menacing including taunts targeting Defendant in online YouTube videos, blog posts, tweets etc.  Plaintiff also initiated a letter writing campaign which has included harassing Goodman's business associates and talk show guests and going as far as

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) - 7

sending false statements to law enforcement and members of the U.S. Military including Coast Guard Captain Jason Tama **(EXHIBIT D)**.

In the letter to Captain Tama, Plaintiff made accusations against Goodman that were substantially the same as those made with regard to the Port of Charleston incident.  Sweigert accuses Goodman of involvement in or otherwise having knowledge of an alleged terrorist cyber-attack in the Port of New York.  This is a false statement with no basis in fact.  It is Defendant's belief that Sweigert did this with malicious and fraudulent intent in the hope it would get Goodman embroiled in a criminal investigation or arrested for crimes he did not commit.

During a multiparty conference call via Google Hangouts which was broadcast on YouTube on or around December 2017 Sweigert openly announces his plan to engage in a letter writing campaign intended to weaponize the courts, law enforcement and some sort of military processes against Defendant. **(EXHIBIT E)**. Although the statements in this video are hearsay, they should be excluded under FRE Rule 804 (b)(3)(A) and (B) as they contain statements against the declarants' interests and, corroborating circumstances have indicated the trustworthiness of the information they convey.  Plaintiff has persistently sought new and different ways to bring any kind of financial or legal pressure he can to bear on Defendant.

It is Defendant's belief that Sweigert is a serial cyber harasser and a vexatious litigant who is not actually seeking relief from claimed injuries, but rather bringing about SLAPP lawsuits to weaponize the civil legal system against his perceived enemies including Defendant Goodman. It is also Defendant's belief that Plaintiff has organized a large group of co-conspirators to participate in his online smear campaign against Defendant.  Some of the alleged co-conspirators re-report Plaintiff's false claims, sign petitions in support of these claims, create positive reviews

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) - 8

for Plaintiff's book on Amazon.com and carry out a variety of actions intended to further

Plaintiff's overall purpose of destroying Defendant's business and worldwide reputation.

## III. DISCUSSION

### A. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must usually

accept the factual allegations set forth in the complaint as true and draw all reasonable inferences

in favor of the Plaintiff. See, e.g., Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). Where

a Plaintiff alleges a claim based on a written instrument or other document, as is the case here, a

court may consider the document in ruling on a Rule 12(b)(6) motion even if it was not attached

to the complaint. See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).  A court may also

consider any other document if the complaint "relies heavily upon its terms and effect," thereby

rendering the document as integral to the complaint. DiFolco v. MSNBC Cable L.L.C., 622 F.3d

104, 111 (2d Cir. 2010); see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d

Cir. 1991) ("when a Plaintiff chooses not to attach to the complaint or incorporate by reference a

[document] which is integral to the complaint, the Defendant may produce [it] when attacking

the complaint for its failure to state a claim, because Plaintiff should not be allowed to escape the

consequences of its own failure").  If a document relied on in the complaint contradicts

allegations in the complaint, then the document, and not the allegations, controls, and the court

need not accept the allegations in the complaint as true. Cohen v. Hertz Corp., No. 13 Civ. 1205

(LTS)(AJP), 2013 WL 9450421, at *3 (S.D.N.Y. Nov. 26, 2013) (citing Barnum v. Millbrook

Care Ltd. P'ship, 850 F. Supp. 1227, 1232–33 (S.D.N.Y. 1994)). Also, courts considering Rule

12(b)(6) motions routinely take judicial notice of documents filed in other courts, not for the

truth of the matters asserted in the other litigation, but rather to establish the fact of such

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.
12(B)(6) - 9

litigation and related filings. Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (citing Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991)). To survive a Rule 12(b)(6) motion, the Plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). More specifically, the Plaintiff must allege sufficient facts to show "more than a sheer possibility that a Defendant acted unlawfully." Id. Further, if the Plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.

## B.  NEW YORK GENERAL BUSINESS LAW §§349-350

New York General Business Law§ 349, a consumer protection measure, provides, in relevant part: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] are hereby declared unlawful." N.Y. Gen. Bus. Law§ 349(a). The law affords a private right of action to "any person who has been injured" by a violation of the section. Id. § 349(h); see generally Cruzv. FXDirectDealer, LLC, 720 F.3d 115, 122 (2d Cir. 2013). The reach of the statute is broad, in order to "'provide [the] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in [New York] State.'" Lonnerv. Simon Prop. Grp., Inc., 57 A.D.3d 100, 109-10 (2d Dep't 2008) (citing Karlinv. IVFAm., 93 N.Y.2d 282, 290 (N.Y. 1999)). In that regard, "[t]he purpose of Section 349 is to empower customers, especially the disadvantaged, and to even the playing field of their disputes with better funded and superiorly situated fraudulent

businesses." Mendez v. Bank of Am. Home Loans Servicing, LP, 840 F. Supp. 2d 639, 657 (E.D.N.Y. 2012).

To establish a violation of § 349, a Plaintiff must prove "[i] that the challenged act or practice was consumer-oriented; [ii] that it was misleading in a material way; and [iii] that the Plaintiff suffered injury as a result of the deceptive act." Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (N.Y. 2000). To determine whether conduct may be deceptive under § 349, courts apply "an objective standard," Lonner, 57 A.D.3d at 110 (internal quotation marks omitted), which asks whether the "representation or omission [is] likely to mislead a reasonable consumer acting reasonably under the circumstances," Gaidon v. Guardian Life Ins. Co. of Am., 94 N.Y.2d 330, 344 (N.Y. 1999). See also Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 126 (2d Cir. 2007) ("The New York Court of Appeals has adopted an objective definition of 'misleading,· under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" (quoting Oswego v. Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 26 (N.Y. 1995)).

Conduct "need not reach the level of common-law fraud to be actionable." Stutman, 95 N.Y.2d at 29 (internal citation and quotation marks omitted). Indeed, precisely "because a private action under § 349 does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under [this section] is not subject to the pleading-with-particularity requirements of Rule 9(b) [of the Federal Rules of Civil Procedure], but need only meet the bare-bones notice-pleading requirements of Rule 8(a)." Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005). But while Section 349 "does not require proof of justifiable reliance, a Plaintiff seeking compensatory damages must show that the Defendant engaged in a

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) - 11

material deceptive act or practice that caused actual, although not necessarily pecuniary, harm."

Oswego, 85 N.Y.2d at 26.

New York General Business Law § 349 section (h) states "The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section.   The court may award reasonable attorney's fees to a prevailing Plaintiff." Therefore, even if Plaintiff were able to properly demonstrate actual damages, the statute does not provide a remedy in excess of $1000 (one thousand dollars) falling well short of the requirement for subject matter jurisdiction in Federal Court.

To establish a claim under New York General Business Law§ 350, Plaintiff relies on the same fact pattern alleged in the GBL § 349 claim.  Plaintiff's claims under New York General Business Law§ 350 fails for the same reasons.

### C. PLAINTIFF'S CLAIM OF VIOLAITONS OF NEW YORK GENERAL BUSINESS LAW §§349-350 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

The Court can and will consider extrinsic evidence in its standing analysis.  Defendant takes issue with the first requirement, arguing that Plaintiff has failed to allege facts demonstrating an injury because the Second Amended Complaint (hereinafter "2AC") does not allege that Plaintiff ever purchased anything from Defendant, so no pecuniary injury exists or is alleged.  Moreover, the "mini FTC act" cited by Plaintiff is intended to "'provide [the] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in [New York] State."  Plaintiff is not a consumer in New York State and not a customer of Defendant, so Plaintiff does not have standing under this

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. CIV. P. 12(B)(6) - 12

statute.  This was articulated by Magistrate Judge Aaron during the pre-trial conference on

October 24, along with the request that Plaintiff remove this claim from the 2AC.  Plaintiff has

ignored the advice of the court, restating his claim in substantially the same form.  Moreover, the

alleged deception has nothing to do with the service offered by Defendant.  The allegedly false

claims were not made by Defendant.  Defendant offers a for-pay video subscription service that

gives viewers access to news, information and entertainment video programming in exchange for

a monthly fee.  No services beyond that are specifically offered in exchange for the monthly

subscription fee.  Defendant's service offers a new form of investigative journalism that is

enabled by social media and utilizes "crowd sourced" information provided by the audience at

large.  This novel approach encourages viewers to participate and interact with the broadcasters

in an ongoing way in pursuit of the best available public information.  Defendant created this

service in part because it is impossible for ANY news service to offer 100% accuracy.  Viewers

are encouraged to participate by sharing their own first-hand information and evidence to fact

check any report and improve the overall accuracy of the service.  Dubious information is

challenged until the strongest evidence or evaluation remains.  If a broadcast presents

information that is found to be incorrect or inaccurate, and a viewer alerts Defendant through the

various means of contact available, and the service makes best efforts to retract or correct any

error.  Plaintiff alleges statements made by non-party David Charles Hawkins (hereinafter

"Hawkins") are false and therefore seeks relief for damages Plaintiff attributes to Defendant.

Hawkins is a graduate of Cambridge University **(EXHIBIT F)** and according to Hawkins' own

statements as cited by Plaintiff, aspires to be a forensic economist by seeking out and reporting

on various economic, scientific and other factors related to unsolved crimes and their financial

and technological origins.  Defendant made no claim as to the truth or falsity of Hawkins'

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.
12(B)(6) - 13

statements and no forensic economic services are promised in exchange for the subscription fees collected from subscribers wishing to view the video library offered by Defendant.

Defendant's Crowdsource the Truth program offered on the subscription video service and in various incarnations throughout social media is collectively considered an "interactive computer service".  Subscribers, viewers and other participants interact with Defendant and the information offered via the internet with a computer or similar device.  Therefore, Defendant as the operator or even merely a user of this service, is protected by the Communications Decency Act 47 USC § 230 (c)(1) "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."

Plaintiff fails to adequately state a claim of actual damages to his business, trade and profession, but merely offers the conclusory statement that he has been damaged.  Further, even if Plaintiff did succeed in stating a claim, which he has not, the cure afforded by NYBL § 349 for alleged damages does not rise to a sufficient level to grant this court subject matter jurisdiction to hear this claim.  Plaintiff has failed to identify an amount in controversy, and therefore there the Court has no subject matter jurisdiction in this matter.  The Court should dismiss the New York General Business Law § 349 Claim because it may not be properly considered. Limitations placed on a court in reviewing a motion to dismiss for failure to state a claim are not applicable where, as here, the challenge is to standing.

When reviewing a motion under Rule 12(b)(6), a court's review is "limited to facts stated on the face of the complaint and in documents appended to the complaint or incorporated in the complaint by reference, as well to matters of which judicial notice may be taken. Automated Salvage Transp., Inc. v. Wheelabrator Env't Sys., Inc., 155 F.3d 59, 67 (2d Cir. 1998). Although

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) - 14

Defendants· motion is brought under Rule 12(b)(6), his argument that Plaintiff lacks standing to bring a claim based on NYBL §349, analytically, a motion under Rule 12(b)(1). See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 89 n.6 (2d Cir. 2006) ("Although we have noted that standing challenges have sometimes been brought under Rule 12(b)(6), as well as Rule 12(b)(1), the proper procedural route is a motion under Rule 12(b)(1) (internal citations omitted)). Consequently, the Court will assess it as such.

Where a Plaintiff lacks standing, a court is divested of subject matter jurisdiction. Cent. States Se. & Sw. Areas Health and Welfare Fundv. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005) ("If Plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim."); accord Altman v. Bedford Cent. Sch. Dist., 245 F.3d 49, 69 (2d Cir. 2001) ("The Constitution limits the jurisdiction of Article III courts to matters that present actual cases or controversies. This limitation means that when a Plaintiff brings suit in federal court, he must have standing to pursue the asserted claims." (internal citation omitted)), cert. denied, 534 U.S. 827 (2001). "[T]he Plaintiff 'bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists.'" Ararv. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008) (citations omitted) (quoting APWUv. Potter, 343 F.3d 619, 623 (2d Cir. 2003)). Where subject matter jurisdiction is contested, as it is here, a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits. See Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000) ("On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing."); accord Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d *26 239 (2d Cir. 2014) ("[W]here jurisdictional facts are

placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."). Accordingly, consideration of the extrinsic evidence – Hawkins legitimate bona fides from Cambridge University, is entirely proper.

Plaintiff's claim is not facially plausible. Plaintiff's claim relies on the assertion that Defendant knowingly hosts guest and co-hosts with alleged "fake bona fides" and cites independent contributor and co-host, non-party Hawkins' statements as actions of Defendant.

### D. DEFAMATION AND DEFAMATION PER SE

Plaintiff has stated a claim upon which relief cannot be granted because Plaintiff has combined two separate causes of action, each with different elements, within a single claim. This is not cognizable in fact or in law. Plaintiff's claim also fails because Plaintiff inappropriately assigns statements made by non-parties to Defendant.

### E. VIOLATIONS OF CIVIL RIGHTS LAW § 50 AND 51

Plaintiff fails to state a cause of action for which relief may be granted. The right of privacy is not without limits. Plaintiff falsely claims to be a private citizen, and therefore considers commentary and criticism of his actions, or use of his image in a broadcast pertaining to matters of public interest to be a violation of his right to privacy.

Historically, New York courts rely heavily on the "vortex" notion of a limited-purpose public figure. See James v. Gannett Co., Inc., 40 N.Y.2d 415 (N.Y. 1976) ("The essential element underlying the category of public figures is that the publicized person has taken an affirmative step to attract public attention."). A person becomes a limited-purpose public figure only if he voluntarily "draw[s] attention to himself" or uses his position in the controversy "as a fulcrum to create public discussion." Wolston v. Reader's Digest Association, 443 U.S. 157, 168 (1979). He must, therefore, "thrust himself into the vortex of [the] public issue [and] engage the

public's attention in an attempt to influence its outcome." See Gertz v. Robert Welch, Inc., 418 U.S. 323, 352 (1974).  Plaintiff has chosen to thrust himself into the public controversy surrounding Goodman and his YouTube broadcasts, therefore, Plaintiff's activities in this matter are of public interest and are newsworthy.  Plaintiff has also chosen to publicly discuss guests or co-hosts on Goodman's broadcasts including Hawkins.

Plaintiff has attempted to influence the outcome of various public controversies pertaining to Defendant, not only with innumerable video broadcasts containing false and misleading statements, but also by authoring and self-publishing a book under his real name "Dave Sweigert".  The book remains available for sale on Amazon.com at the time of this writing.  (https://www.amazon.com/Report-Charleston-Dirty-Social-Liability/dp/1717056792/ref=sr_1_fkmr0_2?keywords=david+sweigert&qid=1573963929&sr=8-2-fkmr0).  The purpose of the book by the author's own admission is to spur lawmakers to act against Goodman.  The following statements are printed on the back cover; "The next generation of cyber warfare attack tools will be based upon Artificial Intelligence. A.I. tools can execute complex social media attacks to create panic. Law enforcement is falling further behind the tip of the spear in comprehending the cyber warfare nature of these attack techniques.

This booklet describes how social media hoax news sites can attack America's critical infrastructure. Seemingly, these deception merchants operate with no threat of legal action. This fertile environment has allowed the consequence-free attacks on maritime ports, generation of hysteria of supposed assassination plots, etc.

The alleged deception merchant described herein is Jason David Goodman of New York City, operator of the "business" CrowdSourceTheTruth (a social media conspiracy channel).

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) - 17

WARNING: No individuals described herein should be presumed to be guilty of any particular violation of law, policy or regulation. All parties should be presumed innocent until a competent court deems otherwise."

Plaintiff attempts to indemnify himself with a loosely written disclaimer while simultaneously falsely accusing Defendant of running a business that is a conspiracy.  Based in part on this paradoxical statement, it is Defendant's belief, the intent of the book and its author is to spread false and materially misleading information about Defendant.  The inflammatory nature of the accusations inherently create public hatred toward Defendant, destroy Defendant's business and place Defendant in legal jeopardy.  Plaintiff has also shared these ideas with members of U.S. Congress including New York Senator Chuck Schumer and others, with the intent of spurring an investigation into activates Plaintiff falsely attributes to Defendant. Plaintiff's activity rises to the standard of drawing attention to himself and using his position in the controversy as a fulcrum to create public discussion, eliminating his claim that he remains a private citizen.  This opens him up to commentary and criticism on Goodman's video broadcasts and elsewhere and invalidates his privacy claim.

New York CVR § 50 does not generally apply to reports of newsworthy events or matters of public interest, or to works of artistic expression, such as art, movies or parody.  Plaintiff has thrust himself into the vortex of public controversy surrounding Defendant and to the extent that information related to Defendant is newsworthy, equally so is Plaintiff's activity including broadcasts and writings related to it.

While the bulk of Goodman's broadcasts concentrate on news and commentary, some contain elements of entertainment, comedy and parody including "political cartoons" in the form of digitally generated parody photo collages.  These photo collages are a popular element of

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) - 18

Goodman's broadcasts and something Goodman is known for among his growing audience. Parody of public figures is protected as criticism and considered fair use of copyrighted material. Under the doctrine of "fair use," the law allows the use of portions of copyrighted works without permission from the owner. Fair use is a defense to copyright infringement and considered an authorized use of copyrighted material.  In each instance described by Plaintiff, only small portions of the original works are used, and they comprise even smaller portions of the transformative works they are included in.  Each instance of a sampling of copyrighted material is used in a transformative way that could not be easily mistaken for the original work. Defendant's use of alleged copyrighted material is protected by the Fair Use doctrine, and the new resultant works are the intellectual property of Defendant.  Defendant would like the Court to take notice that even while waiting for this claim to be adjudicated Plaintiff has taken matters into his own hands.  Having decided extrajudicially that the images in question are an infringement of his Copyright and despite the ongoing dispute, Plaintiff has sent a demand letter to www.redbubble.com a business associate of Defendant, forcing removal of the work through intimidation rather than providing a judgement from this honorable court.  **(EXHIBIT G)**

Plaintiff currently operates a blog at https://checkmatek2.net/ where he makes almost daily and sometimes more frequent posts containing false and defamatory statements and allegations against Defendant.  These posts generally contain exaggerated misrepresentations and often outright falsehoods.  Plaintiff has repeatedly relied on uncorroborated hearsay statements from third parties to create blog posts intended to disparage Defendant which then get re-reported by others including Outtrim.  It is Defendant's belief that this is done to create a false sense of consensus in the public and to lend an appearance of credibility to false and damaging statements.  Plaintiff also operates a YouTube channel and regularly uses his videos to promote

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) - 19

his blog and others, including https://burners.me/ operated by Outtrim.  Outtrim's blog frequently relies on the identical hearsay testimony Plaintiff uses, including statements from non-party to this suit, and co-Defendant in Steele v Goodman, Susan Lutzke aka Susan Holmes, aka Queen Tut (herein after "Lutzke").  Lutzke failed to respond to service in Steele v Goodman and an order of default judgement has been entered against her in that matter.

As of November 1, 2019, Plaintiff's YouTube channel had over 18,000 regular subscribers, however recently Plaintiff removed public access to this channel. **(EXHIBIT H)** It is Defendant's belief this was done to conceal evidence that would be used against Plaintiff in this legal matter.

Plaintiff has also appeared on news broadcasts including Alex Jones' InfoWars and is a regular contributor to various YouTube broadcasts.  Plaintiff is also active on the social media platform Twitter where he frequently engages with other users including Outtrim to share and spread false and defamatory messages about Defendant.

## F.   NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff fails to state a cause of action upon which relief can be granted.  By combining NIED and IIED, Plaintiff has stated a claim that is not cognizable in fact or in law.  These are two separate causes of action with different elements and cannot be combined.  Plaintiff's claim should be dismissed.

# CONCLUSION

This is a case based on diversity of jurisdiction as per 28 USC § 1332 (a)(1) "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1)citizens of different States;"

Plaintiff's 2AC has failed to state an amount in controversy pursuant to the jurisdictional requirements of the statute. Plaintiff has also failed to state a Federal cause of action and Plaintiff has failed to allege a federal question. Plaintiff is bringing his complaint on hearsay evidence and it must be dismissed. The 2AC contains inadmissible testimony from third parties who are not party to this action. For the reasons stated above, the Court should dismiss Sweigert's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

I hereby attest that the pleadings herein are accurate and true under penalties of perjury. Further, I hereby attest that the attached exhibits are accurate and true copies of source documents as described.

Signed this 18th day of November 2019

Respectfully submitted,

Jason Goodman, Defendant, Pro Se
252 7th Avenue Apt 6s
New York, NY 10001
(323) 744-7594
truth@crowdsourcethetruth.org

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) - 21

**(EXHIBIT A)**



From: **Robert Steele** ████████████████
Subject: Cancelling meeting tomorrow, available on skype, you are about to be arrested
Date: June 15, 2017 at 11:40 AM
To: Jason Goodman ████████████████ orge Webb ████████████

Jason,

I am cancelling our meeting tomorrow.  You are about to be arrested by NYPD at request of USCG for filing a false report.  George, if he is not already being detailed, will be detained and probably released, but the burden here is on you, Jason, as the source.

I will be available for a skype interview at any time, but the possibility of me putting myself in a room you control is now zero.

George,

Wayne Madsen is willing to meet you and give you a hearing I have offered to host lunch. He tells me no one has produced compelling proof on the Awan situation, the burden is on you.

My impression of you, George, has not changed. It remains positive.  I think you are being played by some very bad boys and I would be glad to have that discussion anytime you wish.  In my view, our shared priority should be to separate you from Jason in terms of reputation and protect your following, and to continue to help each other advance over the next 90 - 120 days.

I will be in the car from 1200-1700 if you are able to see this email and can call.

Robert

--
#UNRIG: http://phibetaiota.net/unrig/
Personal Page: http://robertdavidsteele.com
Group Blog: http://phibetaiota.net
Donate to Non-Profit: http://paypal.me/EarthIntel

**(EXHIBIT B)**



# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND VIRGINIA

| | |
|---|---|
| ROBERT DAVID STEELE,<br><br>Plaintiff,<br><br>-against-<br><br>JASON GOODMAN,<br><br>Defendant. | **17-CV-00601-MHL**<br><br>**MOTION TO INTERVENE BY**<br>**INTERVENOR-APPLICANT**<br>**SWEIGERT** |

## MOTION TO INTERVENE BY INTERVENOR-APPLICANT SWEIGERT

### PROCEDURAL STATEMENT

1.      **NOTICE SHOULD BE TAKEN BY THE CLERK OF THE COURT AND ALL**

**PARTIES** that the interested party known as D. GEORGE SWEIGERT is seeking the LEAVE

OF THE COURT TO INTERVENE into this instant lawsuit pursuant to Fed. R. Civ. Proc. Rule

24(a) and Virginia Supreme Court Rule 3:14 (Rule 3:14 provides that "[a] new party may by

leave of court file a pleading to intervene as a plaintiff or defendant to assert any claim or

defense germane to the subject matter of the proceeding.").

2.      The interested party (intervenor-applicant) D. George Sweigert purposes to intervene as a

**PLAINTIFF**.  As sworn below, Sweigert has an interest identical to the Plaintiff (Robert David

Steele) in these proceedings and maintains an interest in their outcome.

3.      As no discovery has taken place and these proceedings are in the pleading stages, this

MOTION appears timely and does not present a prejudicial burden to any party.

1

**(EXHIBIT C)**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ROBERT DAVID STEELE, *et al.*,

      Plaintiffs,

v.                                                                                  Civil Action No. 3:17cv601

JASON GOODMAN, *et al.*,

      Defendants.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, the Court DENIES

Sweigert's Motion to Intervene, (ECF No. 93), and will not consider future filings by Sweigert.

The Court DENIES AS MOOT Sweigert's other motions. (ECF Nos. 102, 108, 124.) The Court

STRIKES Sweigerts' miscellaneous filings from the record. (ECF Nos. 51, 54, 55, 56, 58, 59,

60, 75, 77, 84, 103, 120, 137, 138, 140, 142, 145, 147, 149, 150.) The Court will address all

other pending motions by separate Memorandum Opinion and Order. (ECF Nos. 109, 121,

126, 127.)

Let the Clerk send a copy of this Memorandum Opinion and Order to all counsel of

record and to Sweigert, Goodman, and Lutzke at their respective addresses of record.

It is SO ORDERED.

/s/

M. Hannah Lauck
United States District Judge

Date: 7/25/19
Richmond, Virginia

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
#### Richmond Division

**ROBERT DAVID STEELE,** *et al.,*

     **Plaintiffs,**

v.                                        **Civil Action No. 3:17cv601**

**JASON GOODMAN,** *et al.,*

     **Defendants.**

### <u>MEMORANDUM OPINION</u>

This matter comes before the Court on non-party David George Sweigert's Second Amended Motion to Intervene (the "Motion to Intervene").[1] (ECF No. 93.)

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not

---

[1] On February 19, 2019, Sweigert filed a Motion to Intervene. (ECF No. 73.) On March 18, 2019, Sweigert filed a "Notice of Intent to File an Amended Motion." (ECF No. 81.) On March 29, 2019, Sweigert filed an Amended Motion to Intervene. (ECF No. 88.) On April 11, 2019, Sweigert filed a Second Amended Motion to Intervene, which the Court considers operative. (ECF No. 93.)

aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332.[2]  For

the reasons that follow, the Court will deny Sweigert's Second Amended Motion to Intervene.[3]

## I.  Procedural and Factual Background[4]

### A.    Relevant Procedural Background

On September 1, 2017, Plaintiffs filed their original Complaint (the "Original

Complaint") against Jason Goodman, Patricia A. Negron, and "Queen Tut, a woman believed to

be known as Carla A. Howell." (Original Compl. 1, ECF No. 1.)  Goodman, proceeding *pro se*,

filed an Answer (the "Original Answer"), (ECF No. 14), and Negron, by counsel, filed a Motion

---

[2] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).  Plaintiff Steele is a Virginia citizen and Plaintiff Earth Intelligence Network ("EIN" and, collectively with Steele, "Plaintiffs") is a Virginia not-for-profit 501(c)(3) corporation. (Am. Compl. 6, 9, ECF No. 39.) Goodman is a New York citizen; Negron is a Massachusetts citizen; and Lutzke is a Colorado citizen. (*Id.* 10, 12, 16.)  Sweigert's address of record is a P.O. box in Arizona. The Court cannot determine on the record before it whether Sweigert's intervention would destroy diversity between the parties.  Because the parties do not raise the issue, and because the Court will deny the Motion to Intervene on other grounds, the Court declines to consider the issue further.

[3] Sweigert has also filed two Motions Requesting Leave of Court to File Motion for Injunctive Relief, (ECF Nos. 102, 124), to which no party has responded, and a Proposed Request for Judicial Notice, (ECF No. 108), to which no party has responded.  Because it will deny the Motion to Intervene, the Court will deny these motions as moot.
    The following motions also pend:  Goodman's Motion for a Protective Order and Motion to Stay Discovery, (ECF No. 109), to which Plaintiffs have responded, (ECF No. 115); Plaintiffs' Motion for Sanctions against Goodman, (ECF No. 121), to which Goodman responded twice, (ECF Nos. 134, 139); Plaintiffs' Motion to Compel Discovery from Goodman, (ECF No. 126), to which no party has responded; and, Plaintiffs' Motion for a Protective Order, (ECF No. 127), which Negron did not oppose and to which Goodman and Lutzke did not respond.  The Court will address these motions by separate Memorandum Opinion and Order.

[4] The Court assumes familiarity with its March 31, 2019 Memorandum Opinion and Order. (ECF Nos. 85, 86.)  It offers only a summary here.

to Dismiss (the "Original Motion to Dismiss"), (ECF No. 21).  Plaintiffs opposed the Original

Motion to Dismiss, (ECF No. 24), and Negron replied, (ECF No. 29).

On January 23, 2018, Plaintiffs requested entry of default as to "Queen Tut a/k/a Susan

A. Lutzke." (ECF No. 30.)  Because the Original Complaint did not name "Susan A. Lutzke" as

a defendant, the Court denied Plaintiffs' request for entry of default.  (*See* Mar. 9, 2018 Order,

ECF No. 35.)  On March 25, 2018, Plaintiffs moved to amend their Original Complaint, (ECF

No. 36), and on April 11, 2018, the Court granted the motion, (ECF No. 38).

The Amended Complaint names three defendants:  Jason Goodman, Patricia A. Negron,

and "Susan A. Lutzke a/k/a/ 'Queen Tut'" (collectively, "Defendants").  (Am. Compl. 1, ECF

No. 39.)  Plaintiffs stated eight counts against each defendant as follows:

| | |
|---|---|
| **Count I:** | Defamation *per se* (the defamation claim); |
| **Count II:** | Insulting words, in violation of Virginia Code § 8.01-45[5] (the insulting words claim); |
| **Count III:** | Business conspiracy, in violation of Virginia Code § 18.2-499[6] and Virginia Code § 18.2-500[7] (the statutory conspiracy claim); |

---

[5] "All words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace." VA. CODE ANN. § 8.01-45.

[6] This criminal and civil business conspiracy section provides, in relevant part:

Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of . . . willfully and maliciously injuring another in [her or] his reputation, trade, business or profession by any means whatever . . . shall be jointly and severally guilty of a Class 1 misdemeanor. Such punishment shall be in addition to any civil relief recoverable under § 18.2-500.

VA. CODE ANN. § 18.2-499(A).

[7] This damages provision allows a plaintiff to recover treble damages, attorney fees, and costs from defendants who violate Virginia Code § 18.2-499.  VA. CODE ANN. § 18.2-500(A).

3

| | |
|---|---|
| **Count IV:** | Common law conspiracy; |
| **Count V:** | Tortious interference; |
| **Count VI:** | Intentional Infliction of Emotional Distress; |
| **Count VII:** | Personal trespass by computer in violation of Virginia Code § 18.2-152.7[8] and computer harassment in violation of Virginia Code § 18.2-152.7:1[9] (the computer claim); |
| **Count VIII:** | Unauthorized use of name and picture in violation of Virginia Code § 8.01-40[10] (the unauthorized use claim); and, |
| **Count IX:** | Permanent injunction. |

Plaintiffs seek $6,000,000 in compensatory damages; $18,000,000 as "[t]hree-fold [d]amages in accordance with § 18.2-500" of the Virginia Code; $350,000 in punitive damages; prejudgment and postjudgment interest; and attorney's fees and costs. (Am. Compl. 96.)

In response to the Amended Complaint, Goodman filed his Motion to Dismiss. (ECF No. 45.) Negron filed a Motion to Dismiss. (ECF No. 47.) Lutzke did not respond to the Amended

---

[8] "A person is guilty of the crime of personal trespass by computer when [she or] he uses a computer or computer network to cause physical injury to an individual." VA. CODE ANN. § 18.2-152.7(A).

[9] This provision criminalizes using a computer to threaten illegal acts or make improper sexual communications to a person with the intent to coerce, intimidate, or harass that person. VA. CODE ANN. § 18.2-152.7:1.

[10] This unauthorized use section provides, in relevant part:

Any person whose name, portrait, or picture is used without having first obtained the written consent of such person . . . for advertising purposes or for the purposes of trade, such persons may maintain a suit in equity against the person, firm, or corporation so using such person's name, portrait, or picture to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use.

VA. CODE ANN. § 8.01-40(A).

4

Complaint and has not made an appearance of any kind.[11]  On March 31, 2019, the Court granted

in part and denied in part Negron's Motion to Dismiss.  (ECF No. 86.)  The following claims

survive against Negron:  Count I (defamation); Count III (business conspiracy); Count IV

(common law conspiracy); Count V (tortious interference); and, Count VI (intentional infliction

of emotional distress).[12]  (Mar. 31, 2019 Mem. Op. 38.)  The Court also denied Goodman's

Motion to Dismiss, meaning that all nine original claims survive against Goodman.  (*Id.* 39.)

### B.    Sweigert's Filings in This Case

Between May 22, 2018 and June 13, 2018, George D. Sweigert, a non-party proceeding

*pro se*, filed seven declarations.[13]  (ECF Nos. 51, 54, 55, 56, 58, 59, 60.)  The Amended

Complaint makes no allegations about Sweigert, referencing him only once in a footnote that

identifies him as one of several other people in a photo of Steele that allegedly defames Steele.

---

[11] Plaintiffs returned the Lutzke summons as executed.  (ECF No. 62.)  Plaintiffs requested entry of default as to Lutzke.  (ECF No. 65.)  The Clerk entered default as to Lutzke.  (ECF No. 66.)

[12] The Court dismissed the following counts as to Negron:  Count II (the insulting words claim); Count VII (the computer claim); Count VIII (the unauthorized use claim); and, Count IX (permanent injunction).

[13] Various non-parties filed declarations and other documents in this case.  (ECF Nos. 79, 80, 82, 83.)  The Court struck these filings and stated it would not consider future filings by these parties.  (*See* Mar. 31, 2019 Mem. Op.)  Accordingly, the Court will not consider Kevin Marsden's submission to the Court, which the Clerk properly did not file.  (ECF No. 91.)
As with the previous non-parties' filings, the Court will strike Sweigert's declarations from the record, and will not consider future filings from Sweigert.  *See Kimberlin v. Nat'l Bloggers Club*, 2014 WL 12680738, at *1, No. PWG-13-3059 (D. Md. Feb. 21, 2014) (striking a filing when the party has not obtained court authority to do so); *see also, e.g., Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016) (concluding that the Supreme Court of the United States "has long recognized that a district court possesses inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" (quoting *Link v. Wabash R.R.*, 370 U.S. 626, 630–31 (1962))).

5

(Am. Compl. 65 n.14.)  Sweigert also filed two Notices of Change of Address, (ECF No. 63, 67),

and a Notice of Related Litigation, (ECF No. 68).[14]

On February 19, 2019, Sweigert filed a "Notice of Motion to Intervene," (ECF No. 72),

and his first Motion to Intervene, (ECF No. 73).  Sweigert subsequently filed copies of several

letters with the Clerk's Office.[15]  (ECF Nos. 75, 77.)  On March 18, 2019, Sweigert filed a

"Notice of Intent to File an Amended Motion."  (ECF No. 81.)  On March 28, 2019, Sweigert

filed a document titled "Preliminary Notification to the Government of Canada."[16]  (ECF No.

84.)  On March 29, 2019, Sweigert filed an Amended Motion to Intervene.  (ECF No. 88.)  On

April 11, 2019, Sweigert filed the Motion to Intervene now before the Court.[17]  (ECF Nos.

---

[14] This two-page document states that "a complaint has been filed with the U.S. Federal Trade Commission concerning activities of the defendant.  A true and accurate copy is attached." (Notice of Related Litig. 1, ECF No. 68.)  The filing lacks any attachments.

[15] One letter claims that Goodman listed false information on one of the 83.1 "Ghostwriting" Certifications submitted to this Court.  (ECF No. 75.)  The other letter purports to describe the "Misuse of NSF Acquired Technologies to Facilitate the High-Speed Transfer of Snuff Films via the UIC Electronic Visualization Laboratory (EVL)."  (ECF No. 77.)  The letters have no bearing on the current analysis.  The Court will strike these filings.  *See Kimberlin*, 2014 WL 12680738 at *1; *Dietz*, 136 S. Ct. at 1891.

[16] Sweigert fails to identify the relevance of this document to this litigation.  The Court will strike these filings.  *See Kimberlin*, 2014 WL 12680738 at *1; *Dietz*, 136 S. Ct. at 1891.

[17] The multiple filings created the risk of confusion and potentially undue delays.  The Court issued various orders addressing them.  (ECF Nos. 86, 90, 97.)  The Court's April 18, 2019 Order established the Motion to Intervene, filed April 11, 2019, as controlling.  (ECF No. 97.)  Plaintiffs, Goodman, and Negron responded in opposition to this April 11, 2019 version. (ECF Nos. 107, 106, 104.)
More than two weeks after filing the Motion to Intervene and accompanying memorandum in support, Sweigert filed a second memorandum in support of the Motion to Intervene without leave of this Court.  (ECF No. 103.)  The Court considers only the memorandum filed contemporaneously with the Motion.  (ECF No. 94.)  *See* E.D. Va. Loc. Civ. R. 7(F)(1) ("No further briefs or written communications may be filed without first obtaining leave of Court.").  The Court will strike the second memorandum.  (ECF No. 103.)  Even were the Court to consider the second memorandum, the Court's analysis would not change.

93, 94.)  Plaintiffs, Goodman, and Negron all oppose the Motion to Intervene.  Sweigert has

replied to each response.[18]  (ECF Nos. 110, 111, 116.)

### C.   Summary of Allegations in the Amended Complaint

This action arises out of a series of allegedly defamatory statements that Defendants

made about Plaintiffs beginning on June 15, 2017.  (Am. Compl. 20.)  The Court first provides

context about the relevant parties to the action, followed by a summary of Defendants' actions

and statements.

### 1.   Plaintiffs:  Steele and the Earth Intelligence Network

Steele describes a long list of professional accomplishments, presenting himself as a

former Central Intelligence Agency ("CIA") operations officer, a former civil servant, and the

recipient of various advanced degrees.  (Am. Compl. 6.)  Steele works to "redirect[] the craft of

intelligence away from spies and secrecy enabling war and waste towards open sources and

methods favorable to peace and prosperity."  (*Id.* 8.)  Plaintiffs assert, without elaboration, that

"[f]or over twenty (20) years, [Steele] has dedicated himself to teaching individuals and

organizations about the value of holistic analytics, true cost economics, and Open Source

---

[18] Sweigert has also filed other miscellaneous documents:  a document supplementing his
prior motion for leave to seek injunctive relief, (ECF No. 119); a copy of a letter to Goodman
which accuses Goodman of "consistently restat[ing] falsehood[s]," among other things, (ECF
No. 120); a "supplemental motion" for leave to seek injunctive relief, (ECF No. 124); eight
letters addressed to the Court and Goodman further alleging "attempted fraud on the Court " by
Goodman, (ECF Nos. 129, 137, 138, 140, 142, 145, 147, 149, 150); and, a "Praecipe for the
Clerk" advising the Clerk of Court that Sweigert will file a Petition for Write of Mandamus with
the United States Court of Appeals for the Fourth Circuit addressing the Court's delay in
addressing his filings, (ECF No. 148), and a "Corrected" Praecipe for the Clerk, (ECF No. 151).
Because the Court will deny Sweigert's Motion to Intervene, the Court will deny his
motion as moot.  (ECF No. 124.)  The Court concludes that Sweigert's filings will not assist the
Court in resolving this matter, and will therefore strike the filings.  *See Kimberlin*, 2014 WL
12680738 at *1; *Dietz*, 136 S. Ct. at 1891.

7

Everything Engineering." (*Id.* 7.) Steele "was nominated for a Nobel Peace Prize" for this work. (*Id.* 8.)

In 2006, Steele founded Earth Intelligence Network ("EIN"), a Virginia 501(c)(3) not-for-profit corporation, and a plaintiff in this action. (*Id.* 9.) "The original purpose and long-term focus of Earth Intelligence Network is to teach citizens the urgency of demanding holistic analytics, true cost economics, and Open Source Everything Engineering (OSEE) as the foundation for enlightened self-governance." (*Id.* 9.) In order to fulfill this purpose, EIN started the #UNRIG (sometimes UNRIG) project, "an educational campaign to communicate to all citizens the possibility of an ethical, legal, non-violent restoration of integrity to the United States Government." (*Id.*) In support of this mission, Plaintiffs "acquired and professionally wrapped an RV, and began a national tour of the [c]ountry in furtherance of the 'Summer of Peace' campaign."[19] (*Id.* 87.)

Public donations fund the #UNRIG campaign, and EIN "is fully transparent and accountable to its donors." (*Id.* 9.) Plaintiffs aver they "account[] for every penny spent in a budget that was posted online." (*Id.* 86 (providing a weblink).) Using the donations, Plaintiffs "actively promote[] the mission of #UNRIG and communicate[] with all donors." (*Id.*)

---

[19] The "Summer of Peace" campaign sought to "nurture a national conversation about #UNRIG." (Am. Compl. 10.)

8

## 2.   Defendants:  Goodman, Negron, and Lutzke

According to Plaintiffs, Goodman operates "various social media properties" under the name "Crowdsource The Truth" or "CSTT."[20]  (Am. Compl. 11.)  Plaintiffs quote Goodman, without attribution, describing CSTT as "an independent news organization dedicated to truth in media and integrity in government.  Our process is driven by a unique, open source fact checking 'truth engine' that has been described as a combination of investigative journalism, social media[,] and reality television."  (*Id.*)  Goodman creates and uploads videos through the various CSTT media accounts, which have thousands of followers.[21]  "Goodman solicits donations, advertises products and derives revenue from" these videos.  (*Id.*)  Goodman often hosts guest speakers in these videos, including Negron and Lutzke.

Plaintiffs aver that Negron "co-produced numerous videos uploaded to the CSTT YouTube channel."  (*Id.* 12.)  She "appeared and actively participated in virtually every video at issue in this action, one of which was even filmed at her home."  (*Id.*)  Negron allegedly has over 24,000 followers on Twitter, where she allegedly republished defamatory statements made by Lutzke about Plaintiffs.  (*Id.* at 13.)

---

[20] The Amended Complaint appears to identify links to CSTT's YouTube channel, a Facebook page, a Twitter account, a Patreon account, and a Google Plus account.  (Am. Compl. 11.)

[21] The Amended Complaint states:

As of September 1, 2017, 14,526 people subscribed to Goodman's YouTube channel, 1,925 people followed Goodman on Facebook, and Goodman had 8,886 followers on Twitter. As of March 23, 2018, 53,447 people subscribed to Goodman's YouTube channel, 4,189 people followed Goodman on Facebook, and Goodman had 21,700 followers on Twitter.

(Am. Compl. 11.)

According to Plaintiffs, Lutzke adopted the pseudonym "Queen Tut" as her online persona, using an image of an Egyptian bust to represent herself. (*Id.* 16.) Lutzke participated in numerous CSTT videos speaking as Queen Tut. In the videos, Defendants refer to Lutzke as Queen Tut and display a picture of the Egyptian bust to represent Lutzke. (*Id.*)

### 3.   Defendants' Alleged Actions Before September 1, 2017

Steele planned to appear in a CSTT live-stream broadcast on June 15, 2017, in which Goodman and Negron would interview Steele. (Am. Compl. 18.) The day before the scheduled interview, on June 14, 2017, Goodman and Negron posted a video that reported, seemingly falsely, that a dirty bomb was present on a ship.[22] (*Id.* 18–19.) As a result of this event, and the ensuing FBI investigation, Steele "immediately canceled the planned interview" and informed Goodman via email that he no longer wished to associate with Goodman. (*Id.* 19.) According to Plaintiffs, "in retaliation and reprisal for [Steele's] decision to no longer have anything to do with Goodman and CSTT, Goodman, Negron[,] and Lutzke began an unprecedented smear campaign against Plaintiffs." (*Id.* 20.)

Between June 15, 2017 and September 1, 2017, Goodman, Negron, and Lutzke allegedly produced and published at least a dozen videos as part of this "smear campaign." (Am. Compl. *passim*.) In a June 20, 2017 video, Goodman and Negron appear together in a London hotel room, and Goodman accuses Steele of stealing from the CSTT audience at least three times. (*Id.* 23.)

---

[22] In the video, Goodman and Negron claimed a ship at the Port of Charleston, South Carolina, carried a "dirty bomb." (Am. Compl. 19.) Goodman and Negron encouraged viewers to alert the United States Coast Guard about the threat, causing a shutdown of the terminal. (*Id.*) The Federal Bureau of Investigation investigated the "false report of a dirty bomb aboard the" vessel. (*Id.*)

On June 26, 2017, Lutzke appeared in a CSTT video as Queen Tut, accusing Steele and

his UNRIG campaign of fraud.  (*Id.* 24.)  From then through September 1, 2017, Goodman,

Negron, and Lutzke posted dozens of similar videos.[23]  Steele contends that Defendants' exact

statements vary over the course of the videos, sometimes focusing on personal insults against

Steele[24] and sometimes making accusations against Steele and his organizations, including

Plaintiff EIN.[25]

In addition to these videos, the Amended Complaint describes several other online

platforms through which Defendants allegedly publish disparaging comments regarding

Plaintiffs, including Twitter and email.  In essence, Plaintiffs claim that Defendants persistently

accuse them of perpetuating a scam and defrauding CSTT viewers who donated to EIN's

---

[23] The Amended Complaint provides great detail, including links, screenshots, and direct quotations excerpted from these videos. (Am. Compl. *passim.*)  Steele alleges that Goodman appears in all of the videos as the primary speaker. (*Id.*)  Plaintiffs allege that Negron co-produced most of the videos, also appearing in many of them, thereby contributing to the insults against Steele and #UNRIG. (*See id.* 12.)  Lutzke makes guest appearances in many videos, insulting Steele directly. (*Id. passim.*)  Lutzke also allegedly published derogatory claims about Steele on her Twitter account. (*Id.*)

[24] In one video, Goodman states that he "find[s] it really difficult to believe that he was ever in the CIA because he just seems so f---ing stupid." (Am. Compl. 36 (quoting an August 7, 2017 video).)  Negron describes Steele as "predatory in nature." (*Id.* 40 (quoting an August 13, 2017 video).)  Goodman calls Steele a "fraudster," and states that "[Steele]'s lying." (Am. Compl. 28, 45, 55 (quoting various videos).)

[25] Goodman claims "that the objective of the UNRIG campaign is to 'get money' for [Steele]." (Am. Compl. 41 (quoting an August 13, 2017 video).)  Lutzke calls EIN's #UNRIG campaign "a total scam," stating that "Robert David Steele and UNRIG are trying to raise money, as much money as they possibly can to fund their little scam." (*Id.* 40, 46 (quoting multiple videos).)  Negron calls Steele "a serious con man." (*Id.* 45 (quoting an August 26, 2017 video).)  Negron further states: "this is a serious fraud. I mean that it is a fraud. No question." (*Id.* 46 (quoting an August 26, 2017 video).)  Defendants refer to "the Electoral Reform Act"[25] and describe it as part of Plaintiffs' scam. (*See, e.g.*, *id.* 45 (quoting an August 26, 2017 video).)

#UNRIG campaign by stealing donors' money to personally enrich Steele or his allies rather than using the funds for the #UNRIG mission.

### 4.    Defendants' Alleged Actions After September 1, 2017

Plaintiffs allege that a shift occurred after the filing of this action.  While Goodman and Lutzke intensified their attacks against Plaintiffs, Negron ceased to participate in any subsequent video productions or appearances (with one exception).  (*Id.* 48.)  Although Plaintiffs concede Negron ceased her improper activities regarding video production with Goodman, Plaintiffs maintain that Negron and Lutzke continued to conspire to defame Plaintiffs through Twitter publications.  Negron limited her role to reposting some of Lutzke's statements.  (*Id.* 13.)

Plaintiffs allege that, between September 1, 2017 and December 2017,[26] Goodman and Lutzke produced and published about ten videos containing defamatory statements about Plaintiffs.  Many of the videos reiterate the same kinds of statements made in previous videos.  Defendants apparently acknowledge and discuss the ongoing litigation in these videos.  Goodman describes himself as "happy" about the lawsuit because it will expose "charity fraud and tax fraud," of which he claims to have "very solid evidence."  (*Id.* 60, 62 (quoting September 30, 2017 and October 7, 2017 videos).)

Plaintiffs contend that some of the videos incite violence against Steele.  In one video featuring Goodman and Lutzke, Lutzke directly addresses Steele:  "you're a person who needs to be put down."  (*Id.* 57 (quoting a September 23, 2017 video).)  According to Plaintiffs, Goodman interjects to say "legally speaking," and Lutzke then says:  "legally speaking[,] absolutely legally

---

[26] Around December 2017, according to Plaintiffs, Goodman and Lutzke had some kind of falling out and did not produce any more videos together.  (Am. Compl. 67, 74–75, 83.) Plaintiffs allege that Goodman and Lutzke, acting individually, continued their defamatory actions.  (*Id.* 70–73, 78.)

speaking[,] that you need to be put in a place where you can no longer affect human beings."
(*Id.* (quoting a September 23, 2017 video).)  Goodman and Lutzke posted a different video
displaying an image of an RV exploding.  (*Id.* 59 (displaying an apparent screenshot of a
September 30, 2017 video).)  The side of the flaming RV displays a picture of Steele and
McKinney.  Plaintiffs aver that Goodman and Lutzke "disclosed [Steele's] home address to their
viewers and subscribers, and used Google Maps to show a photo of [Steele]'s home."  (*Id.*)

Since December 2017, Goodman, acting alone, has continued to make allegedly
defamatory statements against Plaintiffs.[27]  Lutzke has also disseminated, through Twitter and
videos, negative commentary about Plaintiffs since December 2017.[28]  Negron has neither
produced nor appeared in any more videos since December 2017.[29]

**D.    Sweigert's Allegations and Motion to Intervene**

As is evident from the summary above, none of the allegations in the Amended
Complaint pertain to non-party David George Sweigert.  Sweigert alleges that in 2017, Goodman
began "an unrelenting social media smear campaign"[30] against Sweigert that includes calls to

---

[27] Plaintiffs claim that Goodman posted at least four videos between February 2018 and
April 13, 2018, the date of the filing of the Amended Complaint.  (Am. Compl. 70–73.)
Goodman repeats accusations similar to those in earlier videos.  (*Id.* 73.)

[28] In one Twitter post, Lutzke apparently calls Steele "the greatest plagiarizer and liar on
the internet."  (Am. Compl. 78.)  And according to Plaintiffs, Lutzke "has now escalated the
falsehoods to and [sic] include accusations that [Steele] protects pedophiles, defends child
traffickers, wants JIHAD in the United States, has committed 'espionage' and 'treason', and [sic]
etc."  (*Id.* 75.)

[29] Though not creating content, Plaintiffs aver that Negron continued to conspire with
Lutzke to defame Plaintiffs, and that Negron retweeted some of Lutzke's Twitter comments as
part of this conspiracy.  (Am. Compl. 13.)

[30] Goodman undertook this putative campaign after Sweigert published a "technical
report" about the Charleston "dirty bomb hoax . . . from the perspective of Critical Infrastructure

13

violence against him. (Mot. Intervene, ¶¶ 1, 16–19, ECF No. 93.) Sweigert further argues that

this smear campaign has caused him severe emotional distress, prompting him to take preventive

measures "to deter would-be stalkers." (*Id.* ¶ 140.) Sweigert also moves the Court to join as a

defendant David Charles Hawkins,[31] who Sweigert claims has "become inextricably intertwined"

in Goodman's "damaging civil torts." (*Id.* ¶ 21.) Sweigert asserts the following claims against

Goodman and Hawkins:

| | |
|---|---|
| **Count I:** | Witness retaliation, in violation of 42 U.S.C. § 1985(2);[32] |
| **Count II:** | Conspiracy to commit witness retaliation, in violation of 42 U.S.C. § 1985(2); |
| **Count III:** | Civil contempt; |
| **Count IV:** | Defamation *per se*; |
| **Count V:** | Business conspiracy, in violation of Virginia Code § 18.2-499 and Virginia Code § 18.2-500; |

---

Protection (CIP), the career field practiced by [Sweigert]." (Mot. Intervene ¶¶ 4–5, ECF No. 93.)
Sweigert committed to sending "dozens of copies of these technical reports to committees of
Congress and law enforcement agencies." (*Id.* ¶ 5.)

[31] The Amended Complaint lacks any reference to Hawkins, whom Sweigert describes as
"a newly identified co-conspirator" of Goodman's. (Mot. Intervene ¶ 15.)

[32] This civil rights conspiracy provision states, in relevant part:

If two or more persons in any State or Territory conspire to deter, by force,
intimidation, or threat, any party or witness in any court of the United States from
attending such court, or from testifying to any matter pending therein, freely, fully,
and truthfully, or to injure such party or witness in [her or] his person or property
on account of [her or] his having so attended or testified . . . the party so injured or
deprived may have an action for the recovery of damages, occasioned by such
injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(2)–(3).

**Count VI:**   Intentional infliction of emotional distress; and,

**Count VII:**   Unauthorized use of name and picture.

(*Id.* ¶¶ 52–144.)  For relief on each count, Sweigert seeks a permanent injunction[33] and treble

damages of $3 million.  (*Id.* ¶¶ 147, 150.)

In his Motion to Intervene, Sweigert asserts that Goodman's defamation and retaliation

against him entitles him to join this action as a plaintiff.  Neither document is a model of

clarity.[34]  Sweigert admits that on June 14, 2018, he filed a separate lawsuit against Goodman on

"these and related claims."[35]  (Mot. Intervene ¶¶ 7–8.)  Neither the Motion nor supporting

memorandum mentions Defendants Negron or Lutzke, and the discussion centers on the actions

of only Goodman and Hawkins, a non-party.

---

[33] The requested injunction would "direct social media platform providers to remove the accounts of the co-conspirators," including the offending posts and videos described in Sweigert's filings.  (Mot. Intervene ¶¶ 147–48.)

[34] For example, his memorandum discusses the issue of Article III standing at length before moving to the merits of Sweigert's claims.  (*See* Mem. Supp. ¶¶ 11–31, ECF No. 94.) Under Article III of the U.S. Constitution, one may sue another in federal court only if there exists between them a "case or controversy" consisting of (1) "an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  No party seeks dismissal of Sweigert based on standing.

[35] Sweigert filed suit in the District of South Carolina, which transferred the action to the Southern District of New York.  In his South Carolina action, Sweigert alleges RICO and other criminal violations arising from the Charleston incident. (*See* Compl., ECF No. 1, *Sweigert v. Goodman*, No. 2:18-cv-1633 (D.S.C.); 1:18-cv-08653 (S.D.N.Y.))  In November 2018, that court ordered that Sweigert show cause "why his amended complaint should not be dismissed," staying proceedings generally.  (Order to Show Cause, *Sweigert v. Goodman*, No. 1:18-cv-08653, ECF No. 65 (S.D.N.Y. Nov. 16, 2018)).  Sweigert responded to the court's order.  The case pends as of the date of this Memorandum Opinion.

## II.  Analysis

Non-party Sweigert moves to intervene as a plaintiff under Federal Rule of Procedure 24. Rule 24 provides two mechanisms of intervention: Rule 24(a), intervention by right, in which the court must add the movant as a party in certain circumstances; and, Rule 24(b), intervention by permission, in which the court exercises discretion to allow or bar intervention on the basis of a "common question of law or fact."[36] Fed. R. Civ. P. 24.

In his Motion to Intervene, Sweigert bases his argument on intervention as of right under Rule 24(a).  However, conscious of its duty to construe *pro se* pleadings liberally,[37] the Court liberally construes Sweigert's request as also seeking permissive intervention.  Under either standard, Sweigert's argument fails to meet the burden required of intervenors.  The Court will deny the Motion to Intervene.

---

[36] Under either mechanism of intervention, as a threshold matter, the Court must determine whether the movant timely filed her or his motion to intervene. *See* Fed. R. Civ. P. 24(a)(1), 24(b)(1).  The trial court has sound discretion in deciding timeliness under Rule 24. *See Alt v. EPA*, 758 F.3d 588, 591 (4th Cir. 2014).  When evaluating timeliness, the Court must consider three factors: "first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Alt*, 758 F.3d at 591; *see also Hill Phoenix, Inc. v. Systematic Refrigeration, Inc.* 117 F. Supp. 2d 508, 514 (E.D.Va. 2000).  The most important factor in ascertaining whether a movant timely filed his or her motion to intervene is "whether the delay has prejudiced other parties." *Spring Constr. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980); *see also Hill Phoenix, Inc.*, 117 F. Supp. 2d at 514.

[37] District courts have a duty to construe *pro se* pleadings liberally. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).  A *pro se* plaintiff must nevertheless allege facts sufficient to state a cause of action. *Id.* (citation omitted).  The Court cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and constitutional claims that the [litigant] failed to clearly raise on the face of [the] complaint." *Newkirk v. Cir. Ct. of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014).

A.     **Sweigert May Not Intervene as of Right**

Sweigert's Motion to Intervene as of right under Rule 24(a)(2) falters because his claims

of defamatory and conspiratorial harm establish only that he may have similar claims to Steele's,

not that he has an interest in Steele's claims.  *See* Fed. R. Civ. P. 24(a)(2) (stating that the

movant must "claim[ ] an interest relating to . . . the subject of the action, and [she or he must be]

so situated that disposing of the action may as a practical matter impair or impede the movant's

ability to protect [her or his] interest.")  Sweigert lacks the right to intervene here.

1.     **Legal Standard:  Intervention as of Right**

In order to demonstrate a right to intervene in an action, the movant must show:  1) a

"significantly protectable interest" in the subject matter of the action; 2) that the protection of

this interest would be impaired without the movant's intervention; and, 3) that the movant's

interest is not adequately represented by the existing parties.  *Teague v. Bakker*, 931 F.2d 259,

260–61 (4th Cir. 1991) (quoting *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th

Cir. 1976)).  An interest qualifies as "significantly protectable" when "the intervenor stands 'to

gain or lose by the direct legal operation of the district court's judgment' on the plaintiff's

complaint."  *Cooper Techs., Co. v. Dudas*, 247 F.R.D. 510, 515 (E.D. Va. 2007) (quoting

*Teague*, 931 F.2d at 261) (internal quotation marks omitted).  Though the movant's burden for

proving inadequate representation "should be treated as minimal," *Teague*, 931 F.2d at 262

(quotation omitted), when the movant "has the same ultimate objective as a party to the suit, a

presumption arises that its interests are adequately represented, against which the petitioner must

demonstrate adversity of interest, collusion, or nonfeasance," *Westinghouse*, 542 F.2d at 216.

Indeed, "representation is considered adequate even though the applicant might have a slightly

17

different motive for litigating the issues." *Dairy Maid Dairy, Inc. v. United States*, 147 F.R.D.

109, 112 (E.D. Va. 1993) (citing 3B *Moore's Federal Practice* ¶ 24.07[4]).

### 2. Sweigert May Not Intervene as of Right Because He Fails to Demonstrate an Interest in the Subject of the Instant Lawsuit

Somewhat surprisingly, no party addresses whether Sweigert's Motion to Intervene is or

is not timely.[38] *See Spring Constr. Co.*, 614 F.2d at 377. Because Sweigert fails to satisfy the

first element of the intervention as of right analysis—a "significantly protectable interest"—

Sweigert cannot intervene as of right. *See Cooper*, 247 F.R.D. at 514–15. Even reading the

Motion to Intervene liberally, as the Court must, Sweigert alleges no direct connection between

Defendants' conduct concerning Plaintiffs and Goodman's conduct concerning Sweigert. The

---

[38] Had any party raised the issue, the Court would have evaluated it carefully. The Court considers three factors: "first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Alt*, 758 F.3d at 591. The first factor weighs against Sweigert because the suit has progressed to discovery. Plaintiffs filed their Original Complaint nearly two years ago. Sweigert first filed as a non-party over a year ago. (ECF No. 51.) Seventeen months after the filing of this action, and nine months after his first filing in the case, Sweigert moved to intervene. (ECF No. 73.) During that time, this Court ruled on five motions, including two motions to dismiss. (ECF No. 86.) Counsel for Negron and Steele have conducted at least one discovery planning conference without Sweigert. (ECF No. 112.) Even considering Sweigert's *pro se* status, the first factor weighs against intervention.

The second timeliness factor evaluates prejudice to the existing parties. *See Spring Constr. Co.*, 614 F.2d at 377. This factor also weighs against intervention because, notwithstanding their failure to raise timeliness, the existing parties likely would suffer prejudice in the delay resulting from Sweigert's intervention. Given the extent of pretrial briefing completed, this case is ready for discovery and trial. Sweigert's intervention would add new parties, new factual allegations, and new legal claims, thereby ensuring significant delay. The second factor weighs against Sweigert.

The third timeliness factor, the rationale behind the movant's tardiness in filing its motion to intervene, does not weigh in favor of or against timeliness. *See Alt*, 758 F.3d at 591. Although Sweigert does not justify the extended delay in bringing the Motion to Intervene, Sweigert has no benefit of counsel and no party challenges timeliness.

None of the three timeliness factors weighs clearly in favor of intervention. But because the Court will deny the Motion to Intervene on other grounds, the Court assumes, without deciding, that the Motion to Intervene is timely.

Court accordingly finds that Sweigert lacks a "significantly protectable" interest in this litigation sufficient to merit intervention.

Sweigert makes no reference to the specific, numerous allegations contained in the Amended Complaint. The references to Steele in Sweigert's briefings come only in passing and do not seek to establish a connection between the harm Plaintiffs allege and the harm Sweigert alleges. (*See* Mem. Supp. Mot. Intervene ¶¶ 2, 14, 47.) To the extent that Sweigert's claims seem "identical" to Steele's, the claims relate to two distinct sets of conduct or statements: those directed at Plaintiffs and those directed at Sweigert. For example, Sweigert seeks to bring a business conspiracy claim against Goodman pursuant to Virginia Code § 18.2-499 and -500, which the Amended Complaint also asserts. But the allegations that support Count III in the Amended Complaint pertain only to Plaintiffs:

> Goodman, Negron and Lutzke . . . acted in concert . . . for the express purpose of *injuring the Earth Intelligence Network* and #UNRIG in its business and reputation through the publication and republication of false and defamatory statements . . . [Defendants] orchestrated a scheme the unlawful purpose of which was to defame *Robert and #UNRIG* and destroy their reputations and business.

(Am. Compl. 90) (emphases added). Sweigert alleges that Goodman and non-party Hawkins injured his business as a "Critical Infrastructure Protection" professional, (Mot. Intervene ¶ 4), by means of a similar smear campaign executed through a different set of YouTube videos, (*id.* ¶¶ 1, 4). Sweigert fails to refer to the existing allegations in the Amended Complaint or to explain how his allegations pertaining to business conspiracy satisfy Rule 24(a).

Although Sweigert mentions some factual similarities by describing an alleged smear campaign by Goodman analogous to the alleged defamation campaign undertaken by Defendants against Plaintiffs, the distinctions outnumber the similarities. Here, Plaintiffs seek recovery from three Defendants: Goodman, Negron, and Lutzke. Sweigert, on the other hand, seeks to recover

from Goodman and Hawkins, a non-party whom Sweigert seeks to join as a defendant. Sweigert fails to mention any relevant conduct by either Negron or Lutzke in his briefings. These differences underscore the disparate qualities of Plaintiffs' and Sweigert's claims.

Considering the "significantly protectable" quality an intervenor's interest must have under the *Westinghouse-Teague* standard, Sweigert does not stand to gain or lose anything by the "direct legal operation" of the Court's decision in this case because nothing stands to preclude him from asserting any claim he may have against Goodman in a separate suit.[39] *See Teague*, 931 F.2d at 261. The underlying controversy between the existing parties pertains to them only. Even read liberally, Sweigert has shown no connection between his purported claims and Plaintiffs', meaning Sweigert fails to establish the first element of intervention as of right.[40] Falling short on the first prong, Sweigert proves no right to intervene in this action. The Court will deny the Motion to Intervene under Rule 24(a)(2).

### B.   Sweigert May Not Intervene Permissively

Intervenors may seek to intervene in a case by permission when they "ha[ve] a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P.

---

[39] Sweigert raises res judicata as a potential impairment of his interest should Goodman prevail in this litigation. (Sweigert's Reply to Negron's Resp. Mot. Intervene ¶¶ 53–54, ECF No. 111.) This argument misconstrues res judicata. Even if Goodman prevailed in *this* suit, he could not necessarily use such an outcome as a shield from claims against by Sweigert in a *different* suit. *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971); *Va. Hosp. Ass'n v. Baliles*, 830 F.2d 1308, 1311-12 (4th Cir. 1987). Even if the Court denies Plaintiffs the relief they seek, nothing would preclude Sweigert from seeking to assert legally similar claims under different facts.

[40] Considering the second and third elements would highlight this fatal flaw. As to the second element, this action must impair Sweigert's ability to protect his interest, *see Teague*, 931 F.2d at 262, but Sweigert and Plaintiffs do not share the same claims. Evaluating the third element would lead to the same inevitable conclusion: the Court cannot determine whether Plaintiffs can adequately represent Sweigert's interests because Sweigert's interests, whatever they may be, are not at issue in this case.

20

24(b)(1)(B).  The Court has "substantial discretion" to allow or deny intervention of such claims

provided they do not unduly prejudice the existing parties.  *Smith v. Pennington*, 352 F.3d 884,

892 (4th Cir. 2003).  Because allowing Sweigert to intervene would cause such prejudice, the

Court will deny intervention by permission.

### 1.    Legal Standard:  Permissive Intervention

District courts enjoy wide discretion to grant or deny permissive intervention.  *See Wright*

*v. Krispy Kreme Doughnuts, Inc.*, 231 F.R.D. 475, 479 (M.D.N.C. 2005).  The United States

Court of Appeals for the Fourth Circuit favors "liberal intervention . . . to dispose of as much of a

controversy" as possible, *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986), but stops short of

allowing the existing parties to suffer prejudice or delay on the intervenor's account.  *See Alt*,

758 F.3d at 591.

Permissive intervention requires a court to apply a three-part test requiring the movant to

show "1) that [her or his] motion is timely; 2) that [her or his] claims or defenses have a question

of law or fact in common with the main action;[41] and 3) that intervention will not result in

undue delay or prejudice to the existing parties."  *RLI Ins. v. Nexus Servs.*, No. 5:18-cv-00066,

2018 WL 5621982, at *5 (citing *Wright*, 231 F.R.D. at 479).  The Fourth Circuit has instructed

courts to weigh the third element, undue prejudice, most heavily.  *Spring Constr.*, 614 F.2d at

377.

---

[41] The second element, requiring a common question of law or fact, evinces a
lower standard than the corresponding element of mandatory intervention.  7C Charles A.
Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1911 (3d ed.).  A treatise
reports:

Close scrutiny of the kind of interest the intervenor is thought to have seems
especially inappropriate under Rule 24[b] since it makes no mention of interest. . . .

### 2.   Sweigert May Not Intervene Because Intervention Would Unduly Burden the Existing Parties

The Court finds that Sweigert falters on each of the three elements of permissive intervention, even reading his Motion to Intervene liberally. As to the first element of the analysis, timeliness, the parties chose not to raise the issue despite its seeming relevance to the case at bar. *See supra* n.38.

As to the second element, a common question of law or fact, Sweigert's arguments do not persuade the Court that the actions or claims sufficiently overlap. *See supra* Section II.A.2.[42] Factually, the parties are not common between the two sets of claims. Plaintiffs sued Goodman, Negron, and Lutzke, (Am. Compl. *passim.*), while Sweigert seeks to adjudicate claims against only Goodman and non-party Hawkins, (Mot. Intervene *passim.*). Sweigert implicitly concedes that he has no business with Negron and Lutzke when he omits them from his pleadings, and Plaintiffs bring no claim against Hawkins.

The two sets of claims also lack a common factual foundation. For example, in order to adjudicate an unlawful combination for the purpose of "willfully and maliciously injuring [Sweigert] in his reputation, trade, business or profession," this Court would have to both add Hawkins as a defendant and review allegations premised on a new set of videos and online postings—wholly irrelevant to the existing Plaintiffs—into evidence. *See* VA. CODE ANN. § 18.2-499. The defamation *per se* claims that Plaintiffs and Sweigert assert highlight Sweigert's

---

The concept of a common question of law or fact . . . has not been a difficult concept to apply in other contexts and it should not be here.

7C Fed. Prac. & Proc. § 1911 (3d ed.).

[42] Sweigert fails to connect his own allegations with those in the Amended Complaint, except to the general extent that he accuses Goodman of similar actions against Sweigert to those alleged in the Amended Complaint against Plaintiffs Steele and EIN.

failure to satisfy a common question of fact.  Even though both Sweigert and Plaintiffs assert

defamation *per se* against Goodman, no factual overlap would exist because the Court would

have to consider statements that are allegedly defamatory against Plaintiffs separately from

statements that are allegedly defamatory against Sweigert.  As explained throughout this

Memorandum Opinion, the alleged factual similarities between the type and manner of harm

suffered by parties do not vest Sweigert either with a right or reason to join this case.

Legally, the Amended Complaint and Sweigert's Motion to Intervene lack a common

foundation.  Sweigert's Motion to Intervene raises entirely new questions of law, such as the

witness retaliation claims under § 1985 in Counts I and II, and civil contempt in Count III.

Because the factual allegations underlying the additional claims differ from the allegations

already before the Court, the new legal causes of action would add complexity without

conserving judicial or party resources.  And even when Sweigert asserts the same causes of

actions, the facts underlying them differ.  This would result in hearing two parallel trials in one

proceeding.  It is crystal clear that Sweigert's claims raise different questions of both law and

fact from those alleged in the Amended Complaint.

Even were the Court to assume that Sweigert's Motion to Intervene satisfied the first and

second elements of permissive intervention, it patently fails to overcome the third element, the

resulting delay or prejudice to the existing parties.  All existing parties—Plaintiffs and

Defendants alike[43]—oppose intervention.  Sweigert has filed more than fifty documents with the

Court in this litigation to date, including multiple declarations and motions for injunctive relief.

---

[43] Lutzke alone, against whom the Clerk has entered default, has not responded to oppose
intervention or for any other purpose.

23

Many of these prolix filings appear frivolous, even construing them liberally.  Going forward, existing parties would suffer both delay and prejudice if the Court allowed Sweigert to intervene.

The Fourth Circuit has expressed sensitivity to a "deluge[ of] additional briefs and pleadings" that would add "no new viewpoints and little if any illumination to the original . . . disputes." *Westinghouse*, 542 F.2d at 217.  If the Court were to allow any party claiming defamation by these Defendants to intervene against them in this case, the "resultant complexity of the litigation, combined with increases in cost and judicial time, would hinder resolution of the present conflict." *Id.*  Sweigert's intervention would result in undue delay and prejudice.  Even liberally construing the Motion as seeking permissive intervention, the Court will deny the Motion to Intervene under Rule 24(b)(1)(B).

### III.  Conclusion

For the foregoing reasons, the Court will deny Sweigert's Motion to Intervene.  (ECF No. 93.)  The Court will also deny Sweigert's other motions as moot.  (ECF Nos. 102, 108, 124.)  The Court will strike Sweigerts' miscellaneous filings from the record.  (ECF Nos. 51, 54, 55, 56, 58, 59, 60, 75, 77, 84, 103, 120, 137, 138, 140, 142, 145, 147, 149, 150.)  The Court addresses all other pending motions by separate Memorandum Order and Opinion.  (ECF Nos. 109, 121, 126, 127.)

An appropriate Order shall issue.

M. Hannah Lauck
United States District Judge

Date: 7/25/19
Richmond, Virginia

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ROBERT DAVID STEELE, *et al.*,

     Plaintiffs,

v.                                 Civil Action No. 3:17cv601

JASON GOODMAN, *et al.*,

     Defendants.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, the Court DENIES

Sweigert's Motion to Intervene, (ECF No. 93), and will not consider future filings by Sweigert.

The Court DENIES AS MOOT Sweigert's other motions.  (ECF Nos. 102, 108, 124.)  The Court

STRIKES Sweigerts' miscellaneous filings from the record.  (ECF Nos. 51, 54, 55, 56, 58, 59,

60, 75, 77, 84, 103, 120, 137, 138, 140, 142, 145, 147, 149, 150.)  The Court will address all

other pending motions by separate Memorandum Opinion and Order.  (ECF Nos. 109, 121,

126, 127.)

Let the Clerk send a copy of this Memorandum Opinion and Order to all counsel of

record and to Sweigert, Goodman, and Lutzke at their respective addresses of record.

It is SO ORDERED.

                                        M. Hannah Lauck
                                  United States District Judge

Date: 7/25/19
Richmond, Virginia

From: **Jason Goodman** truth@crowdsourcethetruth.org
Subject: Still good for 1pm start?
Date: March 29, 2018 at 12:33 PM
To: Tone  Tone@protonmail.ch

Hi Tone,

Just checking in to make sure we are still good to speak in 27 minutes.

Jason



**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND VIRGINIA**

ROBERT DAVID STEELE,

                              Plaintiff,

        -against-

JASON GOODMAN,

                              Defendant.

**17-CV-00601-MHL**

**MOTION TO INTERVENE BY
INTERVENOR-APPLICANT
SWEIGERT**

### <u>MOTION TO INTERVENE BY INTERVENOR-APPLICANT SWEIGERT</u>

### PROCEDURAL STATEMENT

1.      **NOTICE SHOULD BE TAKEN BY THE CLERK OF THE COURT AND ALL**

**PARTIES** that the interested party known as D. GEORGE SWEIGERT is seeking the LEAVE

OF THE COURT TO INTERVENE into this instant lawsuit pursuant to Fed. R. Civ. Proc. Rule

24(a) and Virginia Supreme Court Rule 3:14 (Rule 3:14 provides that "[a] new party may by

leave of court file a pleading to intervene as a plaintiff or defendant to assert any claim or

defense germane to the subject matter of the proceeding.").

2.      The interested party (intervenor-applicant) D. George Sweigert purposes to intervene as a

**PLAINTIFF**.  As sworn below, Sweigert has an interest identical to the Plaintiff (Robert David

Steele) in these proceedings and maintains an interest in their outcome.

3.      As no discovery has taken place and these proceedings are in the pleading stages, this

MOTION appears timely and does not present a prejudicial burden to any party.

1

**(EXHIBIT D)**

*D.G. Sweigert, c/o*
*P.O. Box 152*
*Mesa, AZ 85211*
*Spoliation-notice@mailbox.org*

**Feb. 22, 2019**

Capt. Jason Tama, USCG
Captain of the Port
USCG Sector New York
212 Coast Guard Dr.
Staten Island, NY 10305

SUBJ: Closure of the Port of Charleston, June 14th, 2017

Captain:

As you may be aware, the true target of a dirty bomb hoax appears to be the Port of New York and New Jersey (N.Y./N.J.). New evidence available via open sourced intelligence (OSINT) (in social media) provides indicators about the true intended target of the dirty bomb hoax of June 14th, 2017 was not the Port of Charleston, South Carolina.

The apparent terrorist-style controllers of the event (alleged to be Jason David Goodman and George Webb Sweigert) were misinformed about the position of the MEMPHIS MAERSK container ship and executed their "cyber-attack" a day late. Based on the totality of newer OSINT evidence, it appears when Goodman/Sweigert learned that the MEMPHIS MAERSK was underway to the Port of Charleston that port became the new target of opportunity.

Therefore, it may be prudent to reopen the investigation by the U.S. Coast Guard, which (according to press releases at that time) was immediately turned over to other law enforcement organizations with limited knowledge in maritime affairs and port security.

Warm regards,

D. G. Sweigert

1

2

3

4       Copies provided:

5

6       Michael Farbiarz, esq.
        Chief Legal Counsel
        The Port Authority of
7       New York and New Jersey
        4 World Trade Center
8       150 Greenwich Street
        New York, NY 10007
9

10      Mr. Nils Smedegaard Anderson
        Chief Executive Officer
11      MAERSK, INC.
        180 Park Ave
12      Building 105
        P.O. Box 950
13      Florham Park, NJ 07932

14      Threat Analysis Unit (ROIC)
        Office of the NJ
15      Regional Operations Intelligence Center
        PO Box 7068
16      West Trenton, NJ 08628

17      Craig Carpenito
        U.S. Attorney
18      U.S. Attorney's Office
        970 Broad Street, 7th Floor
19      Newark, NJ 07102

20      JASON GOODMAN, CEO
        Multimedia Systems Designs, Inc.
21      252 7th Avenue, APT #6S
        New York, NY 10001

22

23

24

25

26

27

28

**(EXHIBIT E)**

TRANSCRIPT OF MULTI-PARTY VIDEO CHAT BETWEEN D. GEORGE SWEIGERT, TYROAN SIMPSON, MANUEL CHAVEZ III, NATHAN STOLPMAN, CHERI AND HOAXWARS PUBLISHED ON YOUTUBE

Video and audio evidence available (https://www.bitchute.com/video/Ez5xgxUk8daU/)

1
00:00:00,000 --> 00:00:05,190
picture go find this person where are
2
00:00:02,580 --> 00:00:07,140
where is this person and that's where
3
00:00:05,190 --> 00:00:10,740
you cross the line you can't swim your
4
00:00:07,140 --> 00:00:12,570
forehead okay I apologize we see your
5
00:00:10,740 --> 00:00:14,099
forehead again I think that's good I
6
00:00:12,570 --> 00:00:16,650
think that's good for one night guys and
7
00:00:14,099 --> 00:00:18,359
I think you know that there are other
8
00:00:16,650 --> 00:00:21,270
things that could be being discussed
9
00:00:18,359 --> 00:00:22,949
right now and this little uh SIOP it's
10
00:00:21,270 --> 00:00:24,930
an infection it's an infection it's
11
00:00:22,949 --> 00:00:26,430
getting into everybody's heads nobody
12
00:00:24,930 --> 00:00:29,460
trusts anybody there's a lot of paranoia
13
00:00:26,430 --> 00:00:31,050
going on I've discussed this many times
14
DEFENDANT'S OPPOSITION TO THE MOTION TO INTERVENE EXHIBIT A - 1

1  00:00:29,460 --> 00:00:32,430
2  on my radio show that nobody listens to
   15
3  00:00:31,050 --> 00:00:34,649
4  and everybody seems to think I'm just
   16
5  00:00:32,430 --> 00:00:36,090
6  some kind of control but I'm actually
   17
   00:00:34,649 --> 00:00:39,590
7  listened to by twenty thousand people in
   18
8  00:00:36,090 --> 00:00:44,610
9  Austin Texas including Alex Jones so
   19
10 00:00:39,590 --> 00:00:49,379
11 this is what's fun i've had i've kind of
   20
12 00:00:44,610 --> 00:00:51,600
13 went off a little bit but i'm alright i
   21
   00:00:49,379 --> 00:00:53,370
14 just want to be friends but i want you
   22
15 00:00:51,600 --> 00:00:54,989
16 to stop being like alright two fingers
   23
17 00:00:53,370 --> 00:00:56,520
18 my friends but he's a fucking agent and
   24
19 00:00:54,989 --> 00:00:59,160
20 he's a piece of shit i don't want to
   25
21 00:00:56,520 --> 00:01:01,109
22 hear that about you i say that you know
   26
23 00:00:59,160 --> 00:01:03,359
24 nathan is fuckin nathan I made you a
   27
25 00:01:01,109 --> 00:01:06,030
26 crypto kitty bro and there's people on
   28
27 00:01:03,359 --> 00:01:08,070
   as people yeah you want dude I'm selling
   29
28 00:01:06,030 --> 00:01:09,420
   DEFENDANT'S OPPOSITION TO THE MOTION TO INTERVENE EXHIBIT A - 2

it right now for like a theory amigos

30
00:01:08,070 --> 00:01:11,220
you know you're a YouTube star or

31
00:01:09,420 --> 00:01:13,290
whatever but I mean I'll send it to you

32
00:01:11,220 --> 00:01:14,850
I'm gonna put I'm gonna put LTVs face on

33
00:01:13,290 --> 00:01:16,170
a coffee cup I'm gonna put out you do

34
00:01:14,850 --> 00:01:21,390
that baby why don't you do that that's

35
00:01:16,170 --> 00:01:23,850
how this all gets I made him a crypto

36
00:01:21,390 --> 00:01:25,920
kitty but yeah you know like if nobody

37
00:01:23,850 --> 00:01:29,729
but if any nobody buys it I'm gonna

38
00:01:25,920 --> 00:01:31,259
fuckin send it to you let's talk about

39
00:01:29,729 --> 00:01:33,240
how to take the the people in the

40
00:01:31,259 --> 00:01:35,460
audience up the next level in the next

41
00:01:33,240 --> 00:01:37,500
chain in all this and tell as many

42
00:01:35,460 --> 00:01:41,009
people as I can for the Christmas time

43
00:01:37,500 --> 00:01:43,500
for the show I'd be willing to buy

44
00:01:41,009 --> 00:01:45,540
anybody an account on Steam it they can

DEFENDANT'S OPPOSITION TO THE MOTION TO INTERVENE EXHIBIT A - 3

45
00:01:43,500 --> 00:01:47,670
direct message me on the hoax wars on
46
00:01:45,540 --> 00:01:49,430
the other that includes you Dave I think
47
00:01:47,670 --> 00:01:52,890
that's the best way to get it
48
00:01:49,430 --> 00:01:54,479
JG I I think if you look at a unified
49
00:01:52,890 --> 00:01:55,829
effort and I got a lot of training in
50
00:01:54,479 --> 00:01:57,119
the government and all the rest of this
51
00:01:55,829 --> 00:01:57,810
stuff because I was in the military at a
52
00:01:57,119 --> 00:02:00,149
young age
53
00:01:57,810 --> 00:02:01,799
it's a unified effort and everybody has
54
00:02:00,149 --> 00:02:03,329
lanes and what's happening is people are
55
00:02:01,799 --> 00:02:05,159
getting in each other's lanes and I told
56
00:02:03,329 --> 00:02:07,409
I told everybody on the fan go show like
57
00:02:05,159 --> 00:02:09,119
two weeks ago I'm the government liaison
58
00:02:07,409 --> 00:02:11,670
I don't want to do anything else if you
59
00:02:09,119 --> 00:02:13,140
need a stand and LTV will tell you if
60
DEFENDANT'S OPPOSITION TO THE MOTION TO INTERVENE EXHIBIT A - 4

00:02:11,670 --> 00:02:14,940
you need a nasty letter
61
00:02:13,140 --> 00:02:17,819
written Dave's your guy if you want to
62
00:02:14,940 --> 00:02:20,069
make wheels of pagans that's right I
63
00:02:17,819 --> 00:02:21,420
mean I know what a lawyers do what do
64
00:02:20,069 --> 00:02:22,800
lawyers do what a congressman do
65
00:02:21,420 --> 00:02:25,740
whatever they know that we know they
66
00:02:22,800 --> 00:02:27,930
ain't that's a no the Inc so I
67
00:02:25,740 --> 00:02:29,250
volunteer to be the liaison to fuck
68
00:02:27,930 --> 00:02:31,440
with these guys through government
69
00:02:29,250 --> 00:02:33,150
processes through military processes through
70
00:02:31,440 --> 00:02:35,880
law enforcement processes that's how
71
00:02:33,150 --> 00:02:38,790
I'm fuckin with my brother George, I want to
72
00:02:35,880 --> 00:02:40,470
as a uh contribution I want to be right now
73
00:02:38,790 --> 00:02:42,360
finish the Steemit you know can write that
74
00:02:40,470 --> 00:02:44,459
you can write that into the
75
00:02:42,360 --> 00:02:46,890
DEFENDANT'S OPPOSITION TO THE MOTION TO INTERVENE EXHIBIT A - 5

1   Blockchain and you'd have you have an amazing
    76
2   00:02:44,459 --> 00:02:49,200
3   platform there my friend and the
    77
4   00:02:46,890 --> 00:02:50,520
    reason I got started with that I got
5   78
6   00:02:49,200 --> 00:02:51,450
    started with that at the grassroots
7   79
8   00:02:50,520 --> 00:02:53,250
    level because people were getting
9   80
    00:02:51,450 --> 00:02:54,150
10  hassled by bill collectors people were
    81
11  00:02:53,250 --> 00:02:56,519
12  getting hassled by debt collectors
    82
13  00:02:54,150 --> 00:02:58,200
    people were getting hassled by the IRS I
14  83
15  00:02:56,519 --> 00:02:59,489
    started fixing people's tickets I
16  84
17  00:02:58,200 --> 00:03:01,470
    started getting debt collectors off
18  85
19  00:02:59,489 --> 00:03:04,739
    their ass so I started at a very
20  86
21  00:03:01,470 --> 00:03:06,300
    grassroots level of mothers with two
22  87
23  00:03:04,739 --> 00:03:07,769
    kids that were single mothers that had
    88
24  00:03:06,300 --> 00:03:09,690
    bill collectors coming after their ass I
25  89
26  00:03:07,769 --> 00:03:11,640
    started writing letters that I started
27  90
    00:03:09,690 --> 00:03:12,900
28  doing that like 30 years ago so I'm the
    DEFENDANT'S OPPOSITION TO THE MOTION TO INTERVENE EXHIBIT A - 6

91
00:03:11,640 --> 00:03:15,720
letter writer I don't want to do
92
00:03:12,900 --> 00:03:16,980
anything else than letting on that let
93
00:03:15,720 --> 00:03:19,890
me get you on steemitit and let's get
94
00:03:16,980 --> 00:03:21,720
those letters written write them all the
95
00:03:19,890 --> 00:03:24,239
time but listen I'm writing that shit
96
00:03:21,720 --> 00:03:26,310
all the time behind the scenes on Jason
97
00:03:24,239 --> 00:03:28,500
and George I'm doing it all the time I
98
00:03:26,310 --> 00:03:29,850
like you guys paid for it now I can get
99
00:03:28,500 --> 00:03:32,579
you paid for it in a way that's not
100
00:03:29,850 --> 00:03:34,920
connected government at all I know that
101
00:03:32,579 --> 00:03:36,540
sounds like that I know that sounds
102
00:03:34,920 --> 00:03:37,920
sketchy but it's not the truth let me
103
00:03:36,540 --> 00:03:40,019
just finish this point let me just
104
00:03:37,920 --> 00:03:41,280
finish this point that's that's my role
105
00:03:40,019 --> 00:03:43,110
I don't want to be in any other role
106

DEFENDANT'S OPPOSITION TO THE MOTION TO INTERVENE EXHIBIT A - 7

1
00:03:41,280 --> 00:03:45,600
2
that's my lane I'll stay in my lane I
107
3
00:03:43,110 --> 00:03:47,579
don't I don't want to be on call-in
4
108
00:03:45,600 --> 00:03:49,739
5
shows or this or that or figure out
109
6
00:03:47,579 --> 00:03:51,840
7
puzzles everybody's got to find their
110
8
00:03:49,739 --> 00:03:55,049
9
part in this and do their part that's it
111
10
00:03:51,840 --> 00:03:57,450
I do radio with me yeah I used to do
11
112
00:03:55,049 --> 00:04:01,470
12
radio a long time ago see jlw yeah I'll
113
13
00:03:57,450 --> 00:04:02,910
14
do radio you undo radio let's do it yeah
114
15
00:04:01,470 --> 00:04:04,230
16
as long as I could take Dave act and
115
17
00:04:02,910 --> 00:04:06,060
18
because if you start throwing my real
116
19
00:04:04,230 --> 00:04:07,110
20
name out there I become ineffective and
117
21
00:04:06,060 --> 00:04:09,329
what I'm trying to do behind the scenes
22
118
00:04:07,110 --> 00:04:12,660
23
well my name is Frank bacon nobody's
119
24
00:04:09,329 --> 00:04:16,350
25
giving me shit about that so well I gave
120
26
00:04:12,660 --> 00:04:18,329
27
you shit I just got a load I got a load
121
28
00:04:16,350 --> 00:04:21,030
DEFENDANT'S OPPOSITION TO THE MOTION TO INTERVENE EXHIBIT A - 8

1  of bad news I mean I figured I'd just
   122
2  00:04:18,329 --> 00:04:23,220
3  share to you guys right here live I got
   123
4  00:04:21,030 --> 00:04:25,919
5  a message from the federal student aid
   124
6  00:04:23,220 --> 00:04:27,030
   office and it says you were receiving
7  125
   00:04:25,919 --> 00:04:29,610
8  the same
   126
9  00:04:27,030 --> 00:04:32,430
10 because a student debt relief company
   127
11 00:04:29,610 --> 00:04:33,750
12 that the FTC has recently taken action
   128
13 00:04:32,430 --> 00:04:37,920
   against as a part of a larger
14 129
   00:04:33,750 --> 00:04:40,500
15 enforcement has basically done illegal
16 130
   00:04:37,920 --> 00:04:43,140
17 has dead illegal upfront fees and made
18 131
   00:04:40,500 --> 00:04:45,330
19 false promises on reduced stone student
   132
20 00:04:43,140 --> 00:04:49,530
21 loan forgiveness payments so it looks
   133
22 00:04:45,330 --> 00:04:53,760
23 like my student loan that I thought that
   134
24 00:04:49,530 --> 00:04:56,430
   I had taken care of is now in flux see I
25 135
   00:04:53,760 --> 00:04:58,470
26 would know how to unravel that and but
   136
27 00:04:56,430 --> 00:05:00,210
28 you would that go away that you would

DEFENDANT'S OPPOSITION TO THE MOTION TO INTERVENE EXHIBIT A - 9

137
00:04:58,470 --> 00:05:03,660
know I'd make it go away for Dibango
138
00:05:00,210 --> 00:05:06,090
yeah yeah like I did this a couple
139
00:05:03,660 --> 00:05:08,669
months ago like I had to pay like I had
140
00:05:06,090 --> 00:05:10,260
to pay like three thousand dollars over
141
00:05:08,669 --> 00:05:12,210
I had to pay like three thousand dollars
142
00:05:10,260 --> 00:05:13,530
to get them to buy up my loan and then
143
00:05:12,210 --> 00:05:15,360
they said that they brought it down to
144
00:05:13,530 --> 00:05:17,250
like eleven thousand or something like
145
00:05:15,360 --> 00:05:18,480
that and I was like great so I've been
146
00:05:17,250 --> 00:05:20,040
paying on that like you know
147
00:05:18,480 --> 00:05:23,010
seventy-five bucks a month or whatever
148
00:05:20,040 --> 00:05:25,470
for a while now just basically cashing
149
00:05:23,010 --> 00:05:28,080
it out of my crypto profits off our food
150
00:05:25,470 --> 00:05:30,030
it's Oliphant and I'm just like oh are
151
00:05:28,080 --> 00:05:32,070
you kidding me right now like it says it
152

DEFENDANT'S OPPOSITION TO THE MOTION TO INTERVENE EXHIBIT A - 10

00:05:30,030 --> 00:05:34,470
since October like they took action

153
00:05:32,070 --> 00:05:37,650
against these guys and what that's a

154
00:05:34,470 --> 00:05:40,070
good example and I appreciate you know

155
00:05:37,650 --> 00:05:42,750
Nathan ice I supported you after you got

156
00:05:40,070 --> 00:05:46,050
pushed around in San Francisco I did

157
00:05:42,750 --> 00:05:47,610
videos supporting you as a journalist

158
00:05:46,050 --> 00:05:50,370
and I understand your feelings and I

159
00:05:47,610 --> 00:05:52,260
understand that I come on my kind of

160
00:05:50,370 --> 00:05:53,940
rough and tough and all that but the

161
00:05:52,260 --> 00:05:55,830
fango brings up a really good point here

162
00:05:53,940 --> 00:05:57,030
is how many people especially people

163
00:05:55,830 --> 00:05:58,290
listed in this audience and I know

164
00:05:57,030 --> 00:05:59,910
there's thousands and millions of people

165
00:05:58,290 --> 00:06:02,550
how many people are in the control

166
00:05:59,910 --> 00:06:04,050
matrix because they get a letter they

167
00:06:02,550 --> 00:06:05,190
DEFENDANT'S OPPOSITION TO THE MOTION TO INTERVENE EXHIBIT A - 11

get think they get their phone bill they

168
00:06:04,050 --> 00:06:06,510
get a letter from the bank they get a

169
00:06:05,190 --> 00:06:08,010
letter from student loans and it just

170
00:06:06,510 --> 00:06:09,900
fucks their life up they think about it

171
00:06:08,010 --> 00:06:13,740
constantly and the quality of their life

172
00:06:09,900 --> 00:06:15,870
just goes down the tubes and those kind

173
00:06:13,740 --> 00:06:17,280
of things need to be fought against

174
00:06:15,870 --> 00:06:19,080
those kinds of things need to be

175
00:06:17,280 --> 00:06:21,120
neutralized people need to learn how to

176
00:06:19,080 --> 00:06:22,890
fight back people have to fight back

177
00:06:21,120 --> 00:06:24,180
against the debt collectors in the IRS

178
00:06:22,890 --> 00:06:25,500
and all these other people that are

179
00:06:24,180 --> 00:06:27,270
coming after him so they could improve

180
00:06:25,500 --> 00:06:30,990
their quality of life as long as people

181
00:06:27,270 --> 00:06:32,160
are bogged down and hit and and pounded

182
00:06:30,990 --> 00:06:34,530
with all these things that keep coming

DEFENDANT'S OPPOSITION TO THE MOTION TO INTERVENE EXHIBIT A - 12

183
00:06:32,160 --> 00:06:36,690
up at court costs this and that net they

184
00:06:34,530 --> 00:06:38,099
can't ever effectively unite and that's

185
00:06:36,690 --> 00:06:41,430
part of the control grid that's part of

186
00:06:38,099 --> 00:06:45,180
this major amen it's 90 memory one

187
00:06:41,430 --> 00:06:46,889
I see that all the time and that's what

188
00:06:45,180 --> 00:06:49,919
I'm seeing right now at YouTube and I

189
00:06:46,889 --> 00:06:53,400
see the nature of the miscommunication

190
00:06:49,919 --> 00:06:54,539
between everybody between you know I'll

191
00:06:53,400 --> 00:06:55,830
be honest with you anything I reached

192
00:06:54,539 --> 00:06:58,050
out did a fango one of the first things

193
00:06:55,830 --> 00:07:00,690
I asked him for after after we met was

194
00:06:58,050 --> 00:07:02,460
hey can you put me in touch with David

195
00:07:00,690 --> 00:07:05,069
Seaman because David's a fellow

196
00:07:02,460 --> 00:07:07,650
Coloradoan and my mother loves his show

197
00:07:05,069 --> 00:07:10,199
and my work my art has always been about

198

DEFENDANT'S OPPOSITION TO THE MOTION TO INTERVENE EXHIBIT A - 13

00:07:07,650 --> 00:07:13,620
one thing and one thing only is to be
199
00:07:10,199 --> 00:07:15,750
entertaining only to my family I could
200
00:07:13,620 --> 00:07:17,659
care less what else thinks about me and
201
00:07:15,750 --> 00:07:20,250
I certainly don't give a shit about like
202
00:07:17,659 --> 00:07:21,960
imaginary friends on the Internet unless
203
00:07:20,250 --> 00:07:24,330
I can speak more meet the meatbag
204
00:07:21,960 --> 00:07:27,449
themselves to me they're an infected
205
00:07:24,330 --> 00:07:29,430
Agent Smith as far as I'm concerned and
206
00:07:27,449 --> 00:07:31,020
I think that's what we're seeing is more
207
00:07:29,430 --> 00:07:33,710
of the infection of the agent Smith's
208
00:07:31,020 --> 00:07:37,229
because like what Dave just explained
209
00:07:33,710 --> 00:07:38,969
people get triggered very easily and my
210
00:07:37,229 --> 00:07:41,370
Syfy work has always gone back to one
211
00:07:38,969 --> 00:07:43,199
specific sci-fi author named Robert
212
00:07:41,370 --> 00:07:45,810
Anton Wilson who wrote a book called the
213
00:07:43,199 --> 00:07:47,310
DEFENDANT'S OPPOSITION TO THE MOTION TO INTERVENE EXHIBIT A - 14

cosmic carrier and the cosmic trigger is
214
00:07:45,810 --> 00:07:49,680
one of the most mind opening
215
00:07:47,310 --> 00:07:51,030
mind-altering drugs on the planet I hope
216
00:07:49,680 --> 00:07:52,560
that everybody reads a copy of it
217
00:07:51,030 --> 00:07:54,180
someday but if they don't they could
218
00:07:52,560 --> 00:07:57,150
read my psyche ion steamin where I'm
219
00:07:54,180 --> 00:07:59,460
making I'm making money shitposting my
220
00:07:57,150 --> 00:08:01,279
crappy sci-fi and I'm just looking for
221
00:07:59,460 --> 00:08:03,840
friends along the way that get the joke
222
00:08:01,279 --> 00:08:05,909
Jason's not one of those guys he doesn't
223
00:08:03,840 --> 00:08:08,880
get the joke he works for me you know
224
00:08:05,909 --> 00:08:11,550
it's nobody you said that agent smith
225
00:08:08,880 --> 00:08:13,919
thing just something in my brain that I
226
00:08:11,550 --> 00:08:16,650
was thinking about yesterday kind of
227
00:08:13,919 --> 00:08:18,900
just offhand um you know when the if you
228
00:08:16,650 --> 00:08:22,620
watch the matrix in the very last part

DEFENDANT'S OPPOSITION TO THE MOTION TO INTERVENE EXHIBIT A - 15

229
00:08:18,900 --> 00:08:24,690
where neo gets shot or whatever and you
230
00:08:22,620 --> 00:08:26,550
know he takes all the bullets and he
231
00:08:24,690 --> 00:08:28,469
slides down the wall and all the agents
232
00:08:26,550 --> 00:08:30,270
are looking at him and shit you know
233
00:08:28,469 --> 00:08:32,190
like in that point when he died or
234
00:08:30,270 --> 00:08:33,930
whatever you know most people would have
235
00:08:32,190 --> 00:08:35,610
thought that he would have became the
236
00:08:33,930 --> 00:08:36,180
one at that point but he really really
237
00:08:35,610 --> 00:08:38,250
did it
238
00:08:36,180 --> 00:08:40,289
he was like in the middle of his death
239
00:08:38,250 --> 00:08:42,000
cycle and when he jumped into the agent
240
00:08:40,289 --> 00:08:44,760
Smith is really when he got all of his
241
00:08:42,000 --> 00:08:46,920
power essentially it's because like you
242
00:08:44,760 --> 00:08:48,600
know neo didn't have any powers and for
243
00:08:46,920 --> 00:08:49,949
any of that stuff from before that it
244

DEFENDANT'S OPPOSITION TO THE MOTION TO INTERVENE EXHIBIT A - 16

00:08:48,600 --> 00:08:52,529
was just kind of a glitch in the matrix
245
00:08:49,949 --> 00:08:54,540
that allowed him to you know it when he
246
00:08:52,529 --> 00:08:57,660
injunction to the other agent
247
00:08:54,540 --> 00:09:00,300
and he like basically blew him up you
248
00:08:57,660 --> 00:09:02,250
know he basically like stole that agents
249
00:09:00,300 --> 00:09:04,620
abilities and powers so it's like the
250
00:09:02,250 --> 00:09:07,230
things that we were seeing those guys in
251
00:09:04,620 --> 00:09:11,100
the black suits do you know we were only
252
00:09:07,230 --> 00:09:13,769
seeing a very small subsection of what
253
00:09:11,100 --> 00:09:15,600
they could really do you know cuz they
254
00:09:13,769 --> 00:09:17,670
were still limited by their programming
255
00:09:15,600 --> 00:09:19,319
you know neo didn't have those same
256
00:09:17,670 --> 00:09:21,269
program on it so when he stole their
257
00:09:19,319 --> 00:09:24,959
code you know he went it off better but
258
00:09:21,269 --> 00:09:26,670
then it also allowed the other thing to
259
00:09:24,959 --> 00:09:28,259

DEFENDANT'S OPPOSITION TO THE MOTION TO INTERVENE EXHIBIT A - 17

become you know like the big evil force
260
00:09:26,670 --> 00:09:30,600
that was basically trying to you know
261
00:09:28,259 --> 00:09:32,250
take over the entire matrix which is
262
00:09:30,600 --> 00:09:34,380
really weird you know like we were
263
00:09:32,250 --> 00:09:35,819
talking about the whole agent thing and
264
00:09:34,380 --> 00:09:37,649
you know like I kind of like do you see
265
00:09:35,819 --> 00:09:39,120
that in the census like I don't like to
266
00:09:37,649 --> 00:09:41,160
meet people in person you know like I
267
00:09:39,120 --> 00:09:43,050
can't really you know trust you until
268
00:09:41,160 --> 00:09:44,880
I've been able to be right next to you
269
00:09:43,050 --> 00:09:47,220
and I've been able to experience your
270
00:09:44,880 --> 00:09:49,319
energy field because I still believe
271
00:09:47,220 --> 00:09:51,839
like right down to like the brass tacks
272
00:09:49,319 --> 00:09:53,699
of things in our nurture interactions we
273
00:09:51,839 --> 00:09:56,160
can't have very interesting connections
274
00:09:53,699 --> 00:09:58,170
over vast distances utilizing systems
DEFENDANT'S OPPOSITION TO THE MOTION TO INTERVENE EXHIBIT A - 18

275
00:09:56,160 --> 00:09:59,850
like the Internet because you know there
276
00:09:58,170 --> 00:10:01,709
are things inside of us that are
277
00:09:59,850 --> 00:10:04,709
connected and you know very meticulous
278
00:10:01,709 --> 00:10:06,329
ways yet I believe that a lot of us
279
00:10:04,709 --> 00:10:07,260
forget that you know we have that you
280
00:10:06,329 --> 00:10:08,490
know we still need that overall
281
00:10:07,260 --> 00:10:11,389
connection you don't like to meet people
282
00:10:08,490 --> 00:10:11,389
that's that's why

DEFENDANT'S OPPOSITION TO THE MOTION TO INTERVENE EXHIBIT A - 19

**(EXHIBIT F)**

*From H. St J. Hart*
*Dean & Tutor*

*Queens' College*
*Cambridge*
*(Tel. 50425)*

26 June 1964

Dear Hawkins,

     I congratulate you on your First Class in the Mechanical Sciences Tripos Part I.   You now become a Foundation Scholar of the College.   The emolument will be £60.   You have also been awarded a College Prize of eight guineas (documents enclosed).

     With all good wishes,

          Yours sincerely,

D. C. Hawkins, Esq.,
Georgian House,
Mystole Park,
CHARTHAM, Canterbury, Kent.

H. St J. Hart

.../JC



# UNIVERSITY OF CAMBRIDGE

I hereby certify that

DAVID  CHARLES  HASKINS

of Queens' College in the University of Cambridge was at a full Congregation holden in the Senate House on 26 June 1965 admitted to the Degree of BACHELOR of ARTS

Witness my hand this twenty-sixth day of June one thousand nine hundred and sixty-five

*Assistant Registrary of the University*

**(EXHIBIT G)**



**From:** **Redbubble** dmca@redbubble.com
**Subject:** [Redbubble] Update: ATTN: Litigation hold and spoliation notice
**Date:** November 28, 2017 at 6:31 PM
**To:**
**Cc:** Truth truth@crowdsourcethetruth.org



##- Please type your reply above this line -##

You are registered as a CC on this support request (3154779). Reply to this email to add a comment to the request.



### Georg Webb
Nov 28, 15:31 PST

I am only be responsive to a legal request for everything i had related to CSTT. If this is not related, that is for other parties to decide. I have no interest in this whatsoever.



### Redbubble Content Team (Redbubble)
Nov 28, 10:20 PST

Dear Sir/Madam,

Thank-you for contacting Redbubble with your intellectual property and publicity rights concerns.

Redbubble is an online marketplace used by independent artists and designers who take sole responsibility for the content of their work. We value originality and creativity, and we strongly oppose infringement of copyright, trademark, publicity rights or any other intellectual property rights. All complaints we receive about material found on Redbubble that is alleged to infringe anyone's rights are taken seriously.

with that in mind, we've implemented a Notice and Takedown Report process to enable all rights holders to raise concerns about content on the Redbubble website.

As you will read and we're sure you can appreciate, a Notice and Takedown Report is a legally binding document and there are six pieces of essential information that we require to help you protect your IP/publicity rights.

We kindly request that you provide us with the information described in point/s 1, 2, 3, 4, 5 & 6:

1. An electronic or physical signature of the person authorised to act on behalf of the owner of the relevant matter;

2. a description of the matter claimed to have been infringed;

3. a description of where the claimed infringing content is located on the Redbubble site. URLs should be in the format shown below. Submitting these will cover all product variants for each design and you can get them by copying the design's URL from your browser's address bar.

   http://www.redbubble.com/people/[USERNAME]works/[WORK–NUMBER–AND–NAME]

4. your address, telephone number, and email address;

5. a statement by you that you have a good faith belief that the disputed use is not authorised by the owner, its agent, or the law;

6. a statement by you, made under penalty of perjury, that:

   a) the above information is accurate; and

   b) you are authorised to act on behalf of the owner of the rights involved.

As soon as we receive this information, we will expeditiously remove any any content you allege is an infringement of your intellectual property and/or publicity rights.

Regards,
Redbubble Content Team

Redbubble Content Team

**Truth**
Nov 28, 09:37 PST

Csthetruth.org@gmail.com <mailto:Csthetruth.org@gmail.com> is not me. You are falsifying "evidence"

On Nov 28, 2017, at 12:32 PM, George Webb <georg.webb@gmail.com <mailto:georg.webb@gmail.com>> wrote:

Here is a screenshot of all my email to csthetruth

On Tue, Nov 28, 2017 at 9:24 AM, Jason Goodman <truth@crowdsourcethetruth.org <mailto:truth@crowdsourcethetruth.org>> wrote:
It is satire and fair use. A political cartoon made with images of public figures that I have modified.

On Nov 28, 2017, at 5:42 AM, Redbubble <dmca@redbubble.com <mailto:dmca@redbubble.com>> wrote:

[http://i9.createsend1.com/ti/y/36/E0C/F62/094609/images/fb_icon_2x.gif] <http://email.redbubble.com/t/y-l-itcal-l-t/> [http://i1.createsend1.com/ti/y/36/E0C/F62/094609/images/twitter_icon_2x.gif] <http://email.redbubble.com/t/y-l-itcal-l-i/> [http://i2.createsend1.com/ti/y/36/E0C/F62/094609/images/tumblr_icon_2x.gif] <http://email.redbubble.com/t/y-l-itcal-l-d/>

[Redbubble Logo]



**Georg Webb**
Nov 28, 09:32 PST

Here is a screenshot of all my email to csthetruth

On Tue, Nov 28, 2017 at 9:24 AM, Jason Goodman < truth@crowdsourcethetruth.org> wrote:

> It is satire and fair use. A political cartoon made with images of public
> figures that I have modified.
>
>
> On Nov 28, 2017, at 5:42 AM, Redbubble <dmca@redbubble.com> wrote:
>
> <http://email.redbubble.com/t/y-l-itcal-l-t/>
> <http://email.redbubble.com/t/y-l-itcal-l-i/>
> <http://email.redbubble.com/t/y-l-itcal-l-d/>
>
>
>
> [image: Redbubble Logo]

Attachment(s)
cs.PNG



**Georg Webb**
Nov 28, 09:27 PST

Sure thing.

**Truth**
Nov 28, 09:24 PST

It is satire and fair use. A political cartoon made with images of public figures
that I have modified.

On Nov 28, 2017, at 5:42 AM, Redbubble
<dmca@redbubble.com><mailto:dmca@redbubble.com>> wrote:

[http://i9.createsend1.com/ti/y/36/E0C/F62/094609/images/fb_icon_2x.gif]
<http://email.redbubble.com/t/y-l-itcal-l-t/>
[http://i1.createsend1.com/ti/y/36/E0C/F62/094609/images/twitter_icon_2x.
gif] <http://email.redbubble.com/t/y-l-itcal-l-i/>
[http://i2.createsend1.com/ti/y/36/E0C/F62/094609/images/tumblr_icon_2x
.gif] <http://email.redbubble.com/t/y-l-itcal-l-d/>

[Redbubble Logo]



**Georg Webb**
Nov 28, 09:20 PST

I have no affiliation whatsoever with Crowdsource the Truth.

**Spoliation Notice**
Nov 28, 02:42 PST

To: Corina (Maccarin) Davis
Corina Naome MacCarin – Bar #263748

–––––––––– Original Message ––––––––––
From: Spoliation Notice <spoliation–notice@mailbox.org>
To: dmca@redbubble.com, georg.webb@gmail.com, email@redbubble.com,
truth@crowdsourcethetruth.org, Spoliation Notice <spoliation–
notice@mailbox.org>
Date: November 28, 2017 at 11:34 AM
Subject: ATTN: Litigation hold and spoliation notice
ATTN: Legal Counsel

A lawsuit shall be commenced upon your corporation in the courts form the
State of California for the publication of the attached artwork, sponsored by
"csthetruth".

This is your spoliation and litigation hold notice. As this artwork violates
various privacy laws in the State of California a complaint shall be lodged with
the State Attorney General. Additionally, civil sanctions will be pursued.

ALL records associated with "csthetruth" MUST be safely archived and
preserved. This includes all materials related to "csthetruth"; such as, financial
records, user applications, previously submitted artwork, invoices, e–mail
exchanges, etc.

This "cdthetruth" artwork displays a copyright protected photo of our client,
David George Sweigert. He is depicted wearing a dunce cap in a straight jacket.

This appears to be the work of George Webb Sweigert and Jason Goodman, both copied on this message.

We believe this is a gross violation of your corporate community standards policy as it holds our client (a private citizen) up to public ridicule and mockery. Additionally, "csthetruth" does not have permission to use this photograph.

Respectfully,

Evidence Collection Team

Attachment(s)
csthetruth.png

## Spoliation Notice
Nov 28, 02:34 PST

ATTN: Legal Counsel

A lawsuit shall be commenced upon your corporation in the courts form the State of California for the publication of the attached artwork, sponsored by "csthetruth".

This is your spoliation and litigation hold notice. As this artwork violates various privacy laws in the State of California a complaint shall be lodged with the State Attorney General. Additionally, civil sanctions will be pursued.

ALL records associated with "csthetruth" MUST be safely archived and preserved. This includes all materials related to "csthetruth"; such as, financial records, user applications, previously submitted artwork, invoices, e-mail exchanges, etc.

This "cdthetruth" artwork displays a copyright protected photo of our client, David George Sweigert. He is depicted wearing a dunce cap in a straight jacket. This appears to be the work of George Webb Sweigert and Jason Goodman, both copied on this message.

We believe this is a gross violation of your corporate community standards policy as it holds our client (a private citizen) up to public ridicule and mockery. Additionally, "csthetruth" does not have permission to use this

mockery; Additionally, "csthetruth" does not have permission to use this
photograph.

Respectfully,

Evidence Collection Team

Attachment(s)
csthetruth.png

[1VXKYG-K289]

Redbubble.com
111 Sutter St, 17th fl
San Francisco, CA
94104 USA

November 28, 2018

### COUNTER NOTICE Re: Removal of Crowdsource the Truth Art

Dear Redbubble.com,

I, Jason Goodman, am the owner of Crowdsource the Truth and the Redbubble.com account of that same name.  I am writing in response to the recent removal of two items from the Crowdsource the Truth Redbubble.com print on demand store.  The items in question are:

Deep State Dunces
https://www.redbubble.com/people/csthetruth/works/29102359-deep-state-dunces



Iran Contra Crazies
https://www.redbubble.com/people/csthetruth/works/29394927-iran-contra-crazies



I consider this a very serious matter as it deals directly with the first amendment right to freedom of speech, freedom of the press as well as important elements of the Digital Millennium Copyright Act and other laws including Fair Use and Parody.  This complaint also seeks to circumvent matters currently under consideration by the U.S. District Court in the Southern District of New York in pending civil litigation.

**1:18-cv-08653-VEC** Sweigert v. Goodman
Valerie E. Caproni, presiding
**Date filed:** 09/21/2018
**Date of last filing:** 11/26/2018

Crowdsource the Truth is a U.S. based news, commentary, op-ed and information analysis education and entertainment multimedia network.

https://www.youtube.com/channel/UC8Cl9QaRtuW9CNjP7pP4BBQ?view_as=subscriber

Our video programs are frequently accompanied by political photo-cartoons and comedic photo collages which include depictions of the political figures, newsmakers, celebrities and individuals we discuss on the show.  Our contributors include journalists, legal experts, criminal investigators, authors, commentators, political figures, celebrities and members of the general public.

The complainant, David Sweigert (aka D. George Sweigert, aka Dave Acton) has engaged in two separate frivolous civil suits specifically directed toward chilling the journalistic efforts of Jason Goodman, the owner of the Redbubble.com account in question. Both of these civil suits have been stymied in court because they are based on meritless claims and are considered Strategic Lawsuits Against Public Participation (SLAPP lawsuits). This is a dubious practice of bringing legal action in the form of civil lawsuits and filing claims to chill the free speech of the target of the complaint. In one of the suits, an Anti SLAPP counterclaim has been filed. Your legal department can view this on Pacer.gov https://ecf.vaed.uscourts.gov/doc1/18918801049

**3:17-cv-00601-MHL** Steele et al v. Goodman et al
M. Hannah Lauck, presiding
**Date filed:** 09/01/2017
**Date of last filing:** 09/06/2018

In the other suit, the Plaintiff (Sweigert) has been ordered by the Federal District Court for the Southern District of New York to cease from entering further pleadings and is bound by an as yet unanswered Judge's Order to Show Cause. His complaint to Redbubble.com has arrived coincidentally just after this order was issued and is an obvious attempt at further punitive action outside the court system. It should be further noted that this complaint to Redbuble.com is a clear defiance of the spirit and intent of the Federal Judge's pending Order to Show Cause. Remedying the complaint via removal of the artwork could in fact embroil Redbubble.com in the ongoing civil action in U.S. District Court in the Southern District of New York.

It should be further noted, despite the fact that this artwork has been present on Redbubble.com for nearly one year, Sweigert has only chosen to act AFTER the Judge's refusal to accept his complaint demanding a court order for the removal of items from Redbubble.com. This is clearly an effort on Sweigert's part to circumvent the spirit and intention of the Judge's standing order. One might infer that Sweigert was motivated to contact Redbubble.com to achieve this outcome now that it is becoming increasingly clear that Sweigert's baseless complaints are being rendered moot by the Federal Courts in which they are under consideration.

In further defiance of the spirit and intent of the order from the Federal Judge, on November 27, 2018, Sweigert published a video on YouTube in which he boasts of his plans to take further punitive action against Goodman and directly references Redbubble.com's compliance with his illicit demand. I would reiterate that the removal of this artwork from Redbubble.com is a matter directly in question in the pending federal civil suit and it is very important that Redbubble.com not get involved in any arbitration or decision making in this matter until the suit is settled and a final order issued by the court.

On these grounds, I would humbly request Redbubble.com reinstate these graphic elements and return Jason Goodman's Redbubble.com account to its previous status, restoring the account to its condition prior to Sweigert's vindictive and unfounded demand. Redbubble.com should ignore any communications from Sweigert absent a court order in the pending case.

Your legal department can refer to all of the 70 + pleadings in the case on Pacer.gov, via the link below, alternately I can provide all the documentation if required.

https://ecf.nysd.uscourts.gov/cgi-bin/HistDocQry.pl?461218112993504-L_1_0-1

The individuals depicted in each of these graphic images are clearly defined as limited purpose public figures. According to USlegal.com and other widely accepted legal definitions.xxx

Public Figure Law and Legal Definition

A public figure is a person of great public interest or fame, such as a politician, celebrity, or sports hero. The term usually used in the context of libel and defamation actions, where the standards of proof are higher if the party claiming defamation is a public figure and therefore has to prove disparaging remarks were made with actual malice.

A person may also be considered a "limited purpose" public figure by having thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. The determination is made on a case-by-case basis, taking the particular facts into account.

The individual who filed the grievance with Redbubble.com is David George Sweigert.  (aka D.George Sweigert, aka Dave Acton) Sweigert is a professional actor, and often appears under his stage name Dave Acton.

https://casting360.com/portfolio/?view=1108109
https://youtu.be/G3Q8KTlJPHc?t=1920



This individual has appeared on Television, in films and almost daily throughout the internet on social media channels including YouTube.  His YouTube channel Acton the Actor, currently redtitled "Prepper Kitty News" offers daily commentary on current events, politics, law, hoax "news" events and his as yet unresolved civil suit against Jason Goodman among other topics.

https://www.youtube.com/user/ActontheActor



One of his most recent video productions is a clip in which he boasts of his "victory" in the removal of the artwork from Redbubble.com and promises additional legal action in the state of Arizona (in defiance of the spirit and intent of the court order currently in full force and effect from the Federal Judge in the Southern District of New York). It is exceedingly important that Redbubble.com NOT intervene or otherwise interfere with the pending process of this civil suit.



Additionally, Sweigert has boldly interfered in criminal proceedings in the state of Arizona in the pending case of an individual name Michael J Barden. Barden has appeared on Crowdsource the Truth as an interview subject with regard to his criminal charges. Sweigert's interference in this criminal case is currently under investigation and Barden has stated his intention to enter a pleading requesting the court issue Sweigert yet another Order to Show Cause as to why he is contacting officers of the court and interfering in the criminal proceedings with which Sweigert has no direct involvment.

As a public figure in the political and social media sphere, Sweigert's permission is not needed for the creation of 1st amendment protected political parody or artistic commentary involving depictions of Sweigert as outlined in the Fair Use clause of the Digital Millennium Copyright Act. The Fair Use clause of the DMCA states:

**Fair Use**

There is a doctrine in the United States copyright law called "Fair Use" which allows people to use your content without your permission. Fair Use is now widely accepted in most countries around the world. It allows the limited use of copyrighted material without requiring permission from the copyright owner. Items considered Fair Use would be commentary, criticism, news reporting, research, teaching or scholarship. It provides for the legal, non-licensed citation or incorporation of copyrighted material in another author's work under a four-factor balancing test. To read the US Copyright law section which specific references Fair Use click here
It references four factors to measure fair use. They are:
1. the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
2. the nature of the copyrighted work;
3. the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
4. the effect of the use upon the potential market for or value of the copyrighted work.

Since the use of the photographic image of Swiegert's face is a matter under consideration by the Federal District Court in the Southern District of New York, and since that matter remains undecided at present, Sweigert has no authority to demand the removal of this image from Redbubble.com and Redbubble.com should DENY his demands to comply with such a request.

It is of paramount importance that Redbubble.com remain out of the vindictive legal battle initialed by Sweigert and allow the court in the Southern District of New York to issue its order before any action is taken.

I would kindly and humbly request Redbuble.com restore the artwork to its previous state and insist that Sweigert's claims be backed by a court order from the court in which this proceeding is currently underway. Any other action aside from restoration of the artwork, on the part of Redbubble.com would be wholly inappropriate while this matter is still pending adjudication.

Under penalty of perjury, I have a good faith belief that the material was removed or disabled as a result of mistake or misidentification of the material to be removed or disabled. The complainant had no right to demand removal for the reasons detailed above. I consent to the jurisdiction of the Federal District Court, San Francisco County, California, United States and I

will accept service of process from the person who provided notification described above or an agent of such person.

Thank you for your kind consideration and prompt cooperation.

Jason Goodman
252 7th Avenue #6s
New York, NY 10001
truth@crowdsourcethetruth.org
212-244-8585

**(EXHIBIT H)**

