

**U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
(FOLEY SQUARE)**

| | |
|---|---|
| D George Sweigert<br><br>__Plaintiff__<br><br>v.<br><br>Jason Goodman<br><br>__Defendant__ | **CIVIL CASE #: 1:18-CV-08653-VEC**<br><br>**JUDGE VALERIE E. CAPRONI**<br><br>**MAGISTRATE STEWART D. AARON** |

<u>PLAINTIFF'S NOTICE OF MOTION
IN OPPOSITION TO DEFENDANT'S COUNTER-CLAIM PAPERS (DOC. No. 122)
PURSUANT TO RULE 12(b)(6) FAILURE TO STATE A CAUSE, OR, IN THE
ALTERNATIVE, RULE 12(b)(1) LACK OF JURISDICTION</u>

This **NOTICE OF MOTION** is submitted pursuant to **Local Rule 7.1 (a)(2) and 7.1 (b)** and is

in response to the Defendant's pleading papers **(Dkt. No. 122)** which are styled as a

"**COUNTER-CLAIM**"

I hereby certify that the attached pleadings are truthful and accurate (to the best of my

knowledge) and are not submitted for the purposes of oppression of the Defendant. A certificate

of service is included on the last page of this document.

Signed this _/2_ day of December, 2019.

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

12.12.19

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

## CERTIFICATE OF SERVICE

**I HEREBY ATTEST that a true copy of the attached pleadings have been sent to the**

**following addressees on the 12th day of December 2019 via prepaid First Class U.S. Mail.**

**Jason Goodman, CEO**
**Multi-media Design Systems, Inc.**
**252 7th Avenue, Apart. #6S**
**New York, NY 10001**

**PRO SE OFFICE, Room 200**
**U.S. District Court**
**500 Pearl Street**
**New York, New York 10007-1312**

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

12 · 12 · 19

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

**U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
(FOLEY SQUARE)**



| D George Sweigert | **CIVIL CASE #: 1:18-CV-08653-VEC** |
|---|---|
| **Plaintiff** | **JUDGE VALERIE E. CAPRONI** |
| v. | **MAGISTRATE STEWART D. AARON** |
| **Jason Goodman** | |
| **Defendant** | |

**PLAINTIFF'S MEMORANDUM OF LAW
TO SUPPORT MOTION IN OPPOSITION TO DEFENDANT'S COUNTER-CLAIM
PAPERS (DOC. No. 122) PURSUANT TO RULE 12(b)(6) FAILURE TO STATE A
CAUSE, OR, IN THE ALTERNATIVE, RULE 12(b)(1) LACK OF JURISDICTION**

This Memorandum of Law is submitted pursuant to **Local Rule 7.1 (a)(2) and 7.1 (b)** and is in

response to the Defendant's pleading papers **(Dkt. No. 122)** which are styled as a

"**COUNTER-CLAIM**"

I hereby certify that the attached pleadings are truthful and accurate (to the best of my

knowledge) and are not submitted for the purposes of oppression of the Defendant. A certificate

of service is included on the last page of this document.

Signed this 12 day of December, 2019.

*D. G. SWEIGERT, C/O
GENERAL DELIVERY
ROUGH AND READY, CA 95975
Spoliation-notice@mailbox.org*

12.12.19

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

**<u>TABLE OF CONTENTS</u>**

**Contents**

TABLE OF CONTENTS ................................................................ 2

LIST OF AUTHORITIES ............................................................. 3

PROCEDURAL BACKGROUND ................................................. 6

INTRODUCTION ....................................................................... 6

LAW AND DISCUSSION ............................................................ 7

CONCLUSION .......................................................................... 30

CERTIFICATE OF SERVICE ................................................... 32

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

## LIST OF AUTHORITIES

**Cases**

*Biro v. Condé Nast*, 963 F. Supp. 2d 255 (S.D.N.Y. 2013) ......………................................. 12

*Black Car and Livery Ins. v. HW Brokerage*, 28 A.D.3d 595 (N.Y. App. Div. 2006) .......... 14, 18

*Bloom v. Morley*, 10-CV-1473(JS)(ETB) (E.D.N.Y. Aug. 21, 2012) ......................................... 16

*Castro v. Cusack*, 15-cv-6714 (ENV) (LB) (E.D.N.Y. Jul. 16, 2019)......................................... 28

*Collier v. Boymelgreen Developers*, 06 CV 5425 (SJ) (E.D.N.Y. May. 17, 2007) ....................... 7

*Deaton v. Napoli*, 17-CV-4592 (RRM) (GRB) (E.D.N.Y. Sep. 27, 2019).................................. 15

*Discover Group, Inc. v. Lexmark International, Inc.*, 333 F. Supp. 2d 78 (E.D.N.Y. 2004) ....... 17

*Etheredge-Brown v. Am. Media, Inc.*, 13 F. Supp. 3d 303 (S.D.N.Y. 2014)............................... 12

*Front, Inc. v. Khalil*, 28 N.E.3d 15 (N.Y. 2015)................................................................... 15

*Gladden v. City of N.Y.*, 12 Civ. 7822 (PKC) (S.D.N.Y. Aug. 29, 2013)...................................... 7

*Goonewardena v. New York*, 475 F. Supp. 2d 310 (S.D.N.Y. 2007) ........................................ 20

*Grennan v. Nassau County*, Civil Action No. 04-2158 (DRH) (WDW) (E.D.N.Y. Mar. 29, 2007)
.................................................................................................................................... 13

*Gristede's Foods v. Poospatuck*, 06-cv-1260 (KAM) (E.D.N.Y. Dec. 1, 2009) .......................... 19

*Hammer v. Trendl*, CV 02-2462 (ADS) (E.D.N.Y. Oct. 10, 2002) .............................................. 14

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ......................................................................... 19

*Katz v. Travelers*, 16-cv-4389 (ADS) (SIL) (E.D.N.Y. Sep. 20, 2017) ....................................... 12

*Leeke v. Timmerman*, 454 U.S. 83, 86 (1981) (per curiam) ......…................................................ 20

*Menaker v. C.D.*, 2:17-cv-5840 (DRH)(AYS) (E.D.N.Y. Nov. 1, 2018) ................................... 9, 10

*Murray v. City of N.Y.*, 16-cv-8072 (PKC) (S.D.N.Y. Aug. 16, 2017) ......................................... 26

*Nanney v. Hooks*, 1:19-cv-215-FDW (W.D.N.C. Aug. 7, 2019)......................................................... 19

*Neilson v. D'Angelis*, CV-00-6106 (CPS) (E.D.N.Y. Dec. 20, 2002) ............................................ 9

*NEM Re Receivables, LLC v. Fortress Re, Inc.*, 173 F. Supp. 3d 1 (S.D.N.Y. 2016) .................. 28

*Nevin v. Citibank, N.A.*, 00 Civ. 0029 (CM) (S.D.N.Y. Jul. 14, 2000).......................................... 8

*Nevin v. Citibank, N.A.,* 107 F. Supp. 2d 333, 343 (S.D.N.Y. 2000) .......................................... 8

*Procter Gamble Company v. Xetal, Inc.*, 04-CV-2820 (DRH) (WDW), 04-CV-5225 (DRH)
    (WDW) (E.D.N.Y. Mar. 23, 2006) ......................................................................................... 7

*Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008) ......................................................... 7

*Samuel v. Bellevue Hospital Center*, 07 Civ. 6321 (NRB) (S.D.N.Y. Aug. 21, 2008) ............... 19

*Sebastiani v. Brooklyn Hosp. Ctr.*, 19-CV-253 (PKC) (ST) (E.D.N.Y. Jul. 19, 2019) ............... 19

*Seghers v. Morgan Stanley DW, Inc.*, 06 Civ. 4639 (GEL) (S.D.N.Y. May. 10, 2007)............... 13

*Sepenuk v. Marshall*, No. 98 Civ. 1569 (RCC) (S.D.N.Y. Dec. 8, 2000) .................................... 20

*Tehrani v. Town of Oyster Bay Hous. Auth.*, 18-cv-2450 (BMC) (LB) (E.D.N.Y. Apr. 9, 2019) 30

*Van Buskirk v. N.Y. Times Co.,* 325 F.3d 87, 89 (2d Cir.2003) .................................................... 12

*Williams v. Metro N. R.R.*, 16 Civ. 1141 (LAK) (JCF) (S.D.N.Y. Aug. 17, 2016)...................... 26

## Statutes

40 N.Y. Con. Laws Ann. § 240.30 ...................................................................................... 24, 25

New York Penal Law § 240.30............................................................................................. 20

## Rules

CPLR § 215(3)......................................................................................................................... 12

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 7

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

Fed. R. Civ. Proc. 12(b)(1) ................................................................ 6, 20

Fed. R. Civ. Proc. 12(b)(6) ................................................................ 5

Fed. R. Civ. Proc. Rule 8(a)(2) ......................................................... 19

Fed.R.Civ.Proc. 12(b)(6) ................................................................. 30

Fed.R.Civ.Proc. 8(a)(2) .................................................................... 7

Rule 12(b)(6) ....................................................................................... 7

**Treatises**

Report: The Port of Charleston Dirty Bomb Hoax and Social Media Liability Paperback .......... 12

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

## PROCEDURAL BACKGROUND

1.      Presiding Judge Valeria Caproni issued an ORDER permitting the filing of a Second

Amended Complaint (ECF Doc. No. 87).  *Pro Se* Defendant Goodman (acting as a Counter-

Claim Plaintiff) has provided a "COUNTER CLAIM VERIFIED COMPLAINT" to the Court,

(Doc. No. 122).  By endorsement to the *pro se* Plaintiff/Counter-Defendant's request for

additional time to respond to the Defendant/Counter-Plaintiff's "Counter Claim" papers,

Magistrate Judge Stewart D. Aaron granted a deadline for the filing of this instant document by

12/31/2019 (Doc. 126).  This document is hereby filed in compliance with Doc. 126 (# 126).  In

this pleading the Plaintiff/Counter-Defendant, (undersigned) MOVES this Court to deny the

practical effects of Defendant Goodman's Counter-Claim papers (# 122) pursuant to Fed. R. Civ.

Proc. 12(b)(6) for failure to state a claim.

## INTRODUCTION

2.      The Defendant/Counter-Plaintiff Jason Goodman is a public figure that operates a

podcast social media conspiracy brand known as "CrowdSource The Truth".  Goodman's

CrowdSource The Truth is presented as a news, research and public affairs platform which

collects subscriber fees.  Goodman's daily podcasts are viewed by thousands of people, many of

whom contribute money.  The present social media footprint for CrowdSource The Truth

includes thirteen (13) individual social media platforms (Facebook, YouTube, PATREON,

Periscope, SubscribeStar, etc.).  Defendant/Counter-Plaintiff insists that he is an "investigative

reporter" while not tolerating even the most innocent criticism of his "*news service*".  In fact, the

Defendant/Counter-Plaintiff complains of damage to his "*world wide reputation*" (see COUNT

1, para. 77, # 122) by a vast conspiracy of players (to include former podcast sidekicks).

3.      Unfortunately, the Counter-Claim papers (# 122) are another example of a tortured attempt to re-litigate a jumble of irrelevancies from the federal court in Richmond, Virginia – where the Defendant faces nearly identical causes of action for defamation, libel and slander (*Steele v. Goodman*, Civil Action No. 3:17cv601 (E.D. Va. Jul. 25, 2019)), herein referred to as the Virginia lawsuits. For clarity purposes the Court should image a troupe of players associated with this Virginia lawsuit. Goodman unsuccessfully attempts to "shoe horn" the Plaintiff (undersigned) into this Virginia lawsuit troupe of players.

4.      The Court will learn that the meager factual allegations included in the Counter-Claim papers (# 122) do not create any inference supporting the allegation that the Plaintiff/Counter-Defendant is a ring-leader of some vast conspiracy of "operators" (Virginia lawsuit troupe), and as such these allegations are not enough to state a facially plausible claim.

5.      The Court will learn that all the claims in the Counter-Claim (# 122) are not factually based and will not survive a motion to dismiss (Rule 12(b)(6). For instance, the claims of tortious interference are not applicable to an at will contract, baseless claims of defamation are not applicable t public interest communications, claims of defamation can not attach to the mere pointing to an article and the lack of any evidence to create a connection between the Plaintiff/Counter-Defendant (undersigned) and the Virginia lawsuit troupe.

## LAW AND DISCUSSION

6.      The Court may observe issues presented herein that indicate the Court has no jurisdiction in certain matters. In the event of such adjudication, the Counter-Defendant also involved Fed. R. Civ. Proc. 12(b)(1) for lack of jurisdiction.

7.      Although the Court must accept all factual allegations set forth in the complaint and view them in the light most favorable to the pro se Defendant/Counter-Plaintiff, it should also note

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

that conclusory allegations, unwarranted factual deductions, and legal conclusions will not prevent dismissal under Rule 12(b)(6).

### CONCLUSORY AND VAGUE STATEMENTS

8.      Generally, when considering a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), non-conclusory allegations in the complaint are deemed true. See *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). [emphasis added]

> "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)." *Procter Gamble Company v. Xetal, Inc.*, 04-CV-2820 (DRH) (WDW), 04-CV-5225 (DRH) (WDW) (E.D.N.Y. Mar. 23, 2006)

9.      The Counter-Claim papers (# 122) proffer only a few non-conclusory allegations, which could possibly be accepted as true by this Court.  "In considering a Rule 12(b)(6) motion, all non-conclusory factual allegations are accepted as true and all reasonable inferences are drawn in favor of the plaintiff.  See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir 2007) (per curiam)".  *Gladden v. City of N.Y.*, 12 Civ. 7822 (PKC) (S.D.N.Y. Aug. 29, 2013) [emphasis added]

> "Even under the lenient pleading requirement of Fed.R.Civ.Proc. 8(a)(2), conclusory allegations are insufficient to withstand a motion to dismiss. See *Manos v. Geissler*, 377 F.Supp.2d 422, 425 (S.D.N.Y. 2005). Moreover, courts need not accept as true pleadings expressing legal conclusions, speculation and unsubstantiated allegations "so broad and conclusory as to be meaningless." *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 120 (2d Cir. 1982); see also *Smith v. Local 819 I.B.T.  Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (while the court must construe factual allegations in the light most favorable to the plaintiff, the court is not required to accept plaintiff's legal conclusions)."

> *Collier v. Boymelgreen Developers*, 06 CV 5425 (SJ) (E.D.N.Y. May. 17, 2007)

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

### COUNTER-PLAINTIFF'S COUNT 1 DEFAMATION

10.     At paras. 75 through 77 (# 122) the Defendant/Counter-Plaintiff articulates his COUNT 1

DEFAMATION claim (pg. 18).  Specifically, Goodman applies the threshold standard of

"*Defamation Per Se*" concerning "several occasions" when "false statements were published".

11.     After a careful reading of Goodman's Counter-Claim papers (# 122), it appears that only

**four (4)** specific allegations of "*Defamation Per Se*" – which are articulated in a non-conclusory

manner – have been proffered by Goodman.   They are presented below.

*Letter to the U.S. Coast Guard (EXHIBIT D)*
*is privileged communications (Para. 18)*

12.     Goodman complains about a letter written to the U.S. Coast Guard Captain of the Port of

New York and New Jersey (N.Y./N.J.) (**EXHIBIT D, #122**).  Under New York defamation law,

statements made to law enforcement (such as the undersigned's letter to the U.S. Coast Guard, a

law enforcement division of the U.S. Department of Homeland Security) in a reasonable manner

for a proper purpose are entitled to qualified privilege.  See *Nevin v. Citibank, N.A.*, 00 Civ. 0029

(CM) (S.D.N.Y. Jul. 14, 2000).

13.     "[U]nder New York law, "[p]ublic policy demands that certain communications, although

defamatory, cannot serve as the basis for the imposition of liability in a defamation action."

*Nevin v. Citibank, N.A.,* 107 F. Supp. 2d 333, 343 (S.D.N.Y. 2000) (citing Toker v. Pollak, 44

N.Y.2d 211, 218 (1978)).

14.     Certain communications made in the discharge of public functions are entitled to an

"absolute" privilege, which means that the communications are privileged regardless of the

speaker's motive. Nevin, 107 F. Supp. 2d at 343-44." *Menaker v. C.D.*, 2:17-cv-5840

(DRH)(AYS) (E.D.N.Y. Nov. 1, 2018)

15.     The Plaintiff/Counter-Defendant's letter to the U.S. Coast Guard Port Captain (**EXH. D,**

**# 122**) represents a **communication of public interest** and is shielded from a defamation claim.

"A plaintiff's speech is only protected where it can be "fairly characterized as constituting speech

on a **matter of public concern**." Frank v. Relin, 1 F.3d 1317, 1328-29 (2d Cir. 1993)."

[emphasis added] *Neilson v. D'Angelis*, CV-00-6106 (CPS) (E.D.N.Y. Dec. 20, 2002).

16.     The Plaintiff/Counter-Defendant statements of public concern have substantial immunity

as they were providing intelligence to a law enforcement agency in good faith.  In the letter in

question (EXH. D, #122), the Port Captain of the U.S. Coast Guard was made aware that social

media "open intelligence sources" indicated that the Defendant/Counter-Plaintiff and George

Webb Sweigert were not initially UNAWARE that the container ship M/V MEMPHIS

MAERSK was *en route* to the Port of Charleston, S.C. on the day in question.  Said open source

intelligence indicated that both Goodman and George Webb Sweigert believed that the M/V

MEMPHIS MAERSK was in the Port of New York and New Jersey, indicating that the infamous

CrowdSource The Truth podcast of June 14th, 2017 could have had a direct impact on the Port in

N.Y./N.J. and not Charleston.  The Port Captain has a right and need for such information to

update appropriate port security and maritime intelligence.

> "Other communications enjoy a "qualified" privilege, when it is "fairly made by a
> person in the discharge of some public or private duty, legal or moral, or in the
> conduct of his own affairs in a matter where his interest is concerned." Id. (citing
> Toker v. Pollak, 44 N.Y.2d 211, 219 (1978))".

> *Menaker v. C.D.*, 2:17-cv-5840 (DRH)(AYS) (E.D.N.Y. Nov. 1, 2018)

17.     At para. 19 the Counter-Claim papers proffer that the Coast Guard letter is "false" without specifying what exactly is false about the statements in letter.  It is claimed in the papers (# 122) that the Coast Guard letter "was sent with actual malice and deliberate intent to harass and defame Goodman".  It should be noted that the Coast Guard letter in question not only included Goodman's name, but George Webb Sweigert's (brother of undersigned) name as well.

18.     Goodman does not explain how any statement of the letter was defaming.  "[A] threshold issue for resolution by the court is whether the statement alleged to have caused plaintiff an injury is reasonably susceptible to the defamatory meaning imputed to it." Burton, 2018 WL 4759735, at *11 (quoting Levin v. McPhee, 119 F.3d 189, 195 (2d Cir. 1997))".  *Menaker v. C.D.*, 2:17-cv-5840 (DRH)(AYS) (E.D.N.Y. Nov. 1, 2018).

19.     Goodman must demonstrate that his allegations of malice associated with the Coast Guard letter.  He has not.  The Court may not accept his conclusory allegations in this matter.

> ""Constitutional or actual malice means publication with [a] high degree of awareness of [the publication's] probable falsity or while the defendant in fact **entertained serious doubts as to the truth of [the] publication**." Id. As the Second Circuit has explained, "[t]he critical difference between common-law malice and constitutional malice . . . is that the former focuses on the defendant's attitude toward the plaintiff, the latter on the defendant's attitude toward the truth." Chandok v. Klessig, 632 F.3d 803, 815 (2d Cir. 2011) (quoting Liberman v. Gelstein, 80 N.Y.2d 429, 437 (1992)).
>
> To overcome the common interest privilege, "mere conclusory allegations, or charges based upon surmise, conjecture, and suspicion are insufficient[.]" Fuji, 669 F. Supp. 2d at 412 (quoting Golden v. Stiso, 279 A.D.2d 607, 608 (2d Dep't 2001)) (internal quotation marks omitted); see also Panghat v. New York Downtown Hosp., 85 A.D.3d 473, 474 (1st Dep't 2011) (finding that defendants statements were "protected by the common interest privilege," since "[p]laintiff merely asserted in conclusory fashion that the statements at issue were made with malice, which is insufficient to overcome the privilege")." [emphasis added]
>
> *Menaker v. C.D.*, 2:17-cv-5840 (DRH)(AYS) (E.D.N.Y. Nov. 1, 2018)

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

*Reblogging Steve Outtrim's article*
*is not a defamatory act (Para. 31)*

20.     Goodman complains about an Internet blog article posted by Steve Outtrim about Goodman's experiences as Chief Executive Officer (CEO) of a heavy lift drone company. Goodman accuses the Plaintiff/Counter-Defendant (undersigned) of defaming Goodman with this article. The issue here is the act of "reblogging" – which is not republishing under the **single publication rule**. Reblogging is a <u>delayed circulation of the original edition</u>. The "reblogging" feature on a WordPress.COM blog allows the headline of an original article at the origin blog site (parent site) to be "highlighted" on another – secondary -- blog site (child site). The entirety of the article on the parent site is NOT republished, only a headline teaser and pointer is published on the child site. Once a user clicks on the reblogged headline pointer teaser (child site), the user is redirected by Internet Protocols to the origin site (parent) to see a full display of the article. The reblogged headline on the child site stated:

> **Insane in the Ukraine: J.Go Like You've Never Seen Him Before [UPDATES] —**
> **Burners.Me: Me, Burners and The Man**
>
> The text that accompanied the headline:
> *Recognize this guy? Jason Goodman, CEO of Aerocine, the first company to fly a*
> *full-size RED EPIC camera on a "heavy payload" micro-hexacopter drone. It's*
> *almost like we're watching an actor playing a different character. 3,200*
> *more words*

21.     The totality of the information published on the child site appears above; it is the entirety of the reblogged headline. Clicking on the headline activates an Internet Protocol Uniform Resource Locator (URL) redirection to the parent site operated by Steve Outtrim (BURNERS.ME).

> "Republication, retriggering the period of limitations, occurs upon a separate aggregate publication from the original, on a different occasion, which is not merely "a delayed circulation of the original edition."

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

See *Biro v. Condé Nast*, 963 F. Supp. 2d 255 (S.D.N.Y. 2013)

22.        The original article on Steve Outtrim's "BURNERS.ME" WordPress.COM blog

entitled "*Insane in the Ukraine: J.Go Like You've Never Seen Him Before [UPDATES]*" was

published on December 3, 2018 over a year after the Defendant docketed his papers (# 122) on

December 5, 2019.

23.     "New York imposes a one-year statute of limitations on defamation claims. CPLR §

215(3). Under the "single publication" rule, the statute of limitations ordinarily begins to run at

the time of the "first publication"—that is, "the earliest date on which the work was placed on

sale or became generally available to the public." *Van Buskirk v. N.Y. Times Co.,* 325 F.3d 87, 89

(2d Cir.2003)." See *Etheredge-Brown v. Am. Media, Inc.*, 13 F. Supp. 3d 303 (S.D.N.Y. 2014).

24.     It is a stretch of logic to hold the Plaintiff/Counter-Defendant liable for pointer to an

article that was first published on a different blog site over a year ago.

### *Statute of limitations has tolled concerning Plaintiff book about the "dirty bomb hoax" (Para. 70/71)*

25.     Goodman complains of false and defamatory information in a book published by the

Plaintiff/Counter-Defendant.  The book in question (EXH. F, #122), entitled "Report: The Port

of Charleston Dirty Bomb Hoax and Social Media Liability Paperback" was released on

AMAZON on **April 14, 2018**, prior to the filing of this instant lawsuit on June 14th, 2018 in the

U.S. District Court for the District of South Carolina.

26.     Any claims for damages for the truthfulness of statements made in the "dirty bomb hoax"

book are now time barred.  "See N.Y. C.P.L.R. 215-4 (stating that actions to recover damages for

libel, slander, false words causing special damages, inter alia, shall be commenced within one

year)." *Katz v. Travelers*, 16-cv-4389 (ADS) (SIL) (E.D.N.Y. Sep. 20, 2017).

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

> "New York law establishes a one-year statute of limitations on defamation claims,
> which begins to run from the time of the utterance. N.Y. C.P.L.R. § 215(3); see
> Vasile v. Dean Witter Reynolds Inc., 20 F. Supp. 2d 465, 495 (E.D.N.Y. 1998) (the
> limitations period commences "on the day the statements at issue were made, not . . .
> when the plaintiff learns of them")."

> *Seghers v. Morgan Stanley DW, Inc.*, 06 Civ. 4639 (GEL) (S.D.N.Y. May. 10, 2007)

27.     The "dirty bomb hoax" book (EXH. F, #122), like the letter to the U.S. Coast Guard Port

Captain, address matters of public concern.  The contents of the book in question is focused on

the deficiencies of current laws and statutes that could not apparently address fake hoaxes and

false alerts of this type for which CrowdSource The Truth is famous for.  "Whether a statement

involves a "matter of public concern" has been given an "extremely broad interpretation," but

"publications directed only to a limited, private audience are matters of purely private concern."

*Aslin v. Univ. of Rochester*, 6:17-CV-06847 (W.D.N.Y. Aug. 28, 2019).

> "Plaintiff's communication with the District Attorney … satisfies the requirement of
> being a **matter of public concern**. See, e.g., Burkybile v. Bd. of Educ. of Hastings-
> on-Hudson Union Free Sch. Dist., 411 F.3d 306, 313 (2d Cir. 2005) ("Public
> accusations of improper governmental actions are clearly matters of public concern,
> regardless of whether the accuser is **motivated by personal reasons**."); Bernheim v.
> Litt, 79 F.3d 318, 325 (2d Cir. 1996) (plaintiff's statements to authorities regarding
> principal's falsification of test scores and of student achievement were matters "of
> serious interest to the community")" [emphasis added]

> *Grennan v. Nassau County*, Civil Action No. 04-2158 (DRH) (WDW) (E.D.N.Y.
> Mar. 29, 2007)

28.     Goodman needs to specifically state what statements in the book are false and how the

alleged falsity could trump the statements of public concern doctrine.

> ""Under New York law, in order to state a claim for defamation, the claimant must
> allege facts sufficient to support a finding of a published statement concerning the
> claimant that is both **false and defamatory**." Belly Basics, Inc. v. Mothers Work,
> Inc., 95 Supp.2d 144, 145 (S.D.N.Y. 2000) (internal quotation marks and citation
> omitted); see 600 West 115th Street Corp. v. Von Gutfeld, 80 N.Y.2d 130, 139, 598

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

N.Y.S.2d 825 (1992) (stating that "[b]ecause falsity is a necessary element in a defamation claim involving **statements of public concern** . . . only statements alleging facts can properly be the subject of a defamation action")." [emphasis added]

*Hammer v. Trendl*, CV 02-2462 (ADS) (E.D.N.Y. Oct. 10, 2002)

> ***"Sweigert has written numerous emails and letters to key business associates of Goodman…" is a moot point (Para. 72)***

29.     In this section of the Counter-Claim papers (# 122) the Defendant/Counter-Plaintiff (Goodman) appears to be stating a tortious interference claim.  However, because of the conclusory, vague and baseless allegations this claim fails.  See *Black Car and Livery Ins. v. HW Brokerage*, 28 A.D.3d 595 (N.Y. App. Div. 2006)

> "..The cause of action alleging tortious interference with a contract was properly dismissed as to the respondent, as the allegations in support of this cause of action "are devoid of a factual basis and are vague and conclusory" ( Schuckman Realty v. Marine Midland Bank, 244 AD2d 400, 401; see Washington Ave. Assoc. v. Euclid Equip., 229 AD2d 486, 487)…"

30.     Defendant/Counter-Plaintiff proffers, "Sweigert has written numerous emails and letters to key business associates of Goodman including the chief legal counsel and Chief executive officer of Patreon, Goodman's primary source of income.  These letters contain false allegations against Goodman and threaten Patreon with legal action should they continue to allow Goodman to transact business with Patreon."  The Defendant/Counter-Plaintiff fails to provide any documentation or elaboration of his claims to overcome the appearance of "conclusory, vague and baseless allegations".

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

31.    As the Defendant/Counter-Plaintiff points out "the letters … threaten Patreon with legal

action..".  Therefore, such "emails" and "letters" fall within the scope of pre-litigaton

communications, which attach to a qualified privilege.

> "Alternatively, a statement is "subject to a qualified privilege when it is fairly made
> by a person in the discharge of some public or private duty, legal or moral, or in the
> conduct of his [or her] own affairs, in a matter where his [or her] interest is
> concerned" (Rosenberg v. MetLife, Inc., 8 N.Y.3d 359, 365, 834 N.Y.S.2d 494, 866
> N.E.2d 439 [2007] [internal quotation marks omitted] ). In general, if the privilege is
> "qualified, it can be lost by plaintiff's proof that defendant acted out of malice" (Park
> Knoll, 59 N.Y.2d at 209, 464 N.Y.S.2d 424, 451 N.E.2d 182 )."

> *Front, Inc. v. Khalil*, 28 N.E.3d 15 (N.Y. 2015)

> "One of the requisite elements of a defamation claim is the publication of a false
> statement made without privilege or authorization. New York law "accord[s] an
> absolute privilege" to statements made "in the course of judicial proceedings and
> which relate to the litigation." D'Annunzio v. Ayken, Inc., 876 F. Supp. 2d 211, 216
> (E.D.N.Y. 2012). A statement made in the course of a judicial proceeding is
> absolutely privileged, "so long as it is considered material and pertinent to the
> litigation." Id. (citations omitted); see also Weinstock v. Sanders, 42 N.Y.S.3d  205,
> 207-08 (2d Dep't 2016) (noting that the privilege applies "at all stages" of litigation).
> "The test of pertinency . . . is extremely liberal, so as to embrace anything that may
> possibly or plausibly be relevant or pertinent." Weinstock, 42 N.Y.S.3d at 208 (citing
> cases). While the Second Circuit recently emphasized that pertinence is "an important
> (if rarely implemented) limitation on [the] scope" of the litigation privilege, Brown v.
> Maxwell, 929 F.3d 41, 53 n.47 (2d Cir. 2019), it is generally considered "the broadest
> possible of privileges," covering "any matter which, by any possibility, under any
> circumstances, at any stage of the proceeding, may be or may become material or
> pertinent." Kelly v. Albarino, 485 F.3d 664, 666 (2d Cir. 2007) (per curiam) (internal
> quotation marks omitted) (citations omitted)."

> *Deaton v. Napoli*, 17-CV-4592 (RRM) (GRB) (E.D.N.Y. Sep. 27, 2019)

32.    Defendant/Counter-Plaintiff Goodman provides no information about these "emails" or

"letters" written to "key business associates".  No dates, times, names, organizations or

relevancy is provided – simply that they "contain false allegation against Goodman".

16

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

33.    This claim (para. 72, # 122) is problematic for Goodman as the PATREON contract was undoubtedly executed in the State of California where PATREON is headquartered – and not New York State.  As the Plaintiff/Counter-Defendant presently resides in California, where PATREON is headquartered, no substantial part of these events (emails and letters) occurred in New York.

> "Defendant argues that California law governs this case because Plaintiff's allegations grow out of steps that Defendant took to investigate and prosecute the California Action. (See Def. Reply 2.) This is an important point because California's judicial proceeding privilege might protect Defendant from all claims arising from this conduct. See, e.g., AroChem Int'l, Inc. v. Buirkle, 968 F.2d 266, 269-70 (2d Cir. 1992). Plaintiff, not surprisingly, views the case differently. He frames this action as arising virtually exclusively out of Defendant's communicating with municipal officials in an effort to freeze Plaintiff out of the Project. (See Pl. Opp.)"

> *Bloom v. Morley*, 10-CV-1473(JS)(ETB) (E.D.N.Y. Aug. 21, 2012)

34.    The Defendant/Counter-Plaintiff neglects to inform this Court that the purported contract with PATREON in California is a "termination at will" contract.  Nor does the Defendant/Counter-Plaintiff acknowledge that many of these purported "emails" and "letters" complained of long-term infractions of the PATREON Terms and Conditions by Goodman.  As the PATREON "contract" or Terms of Service state:

> "Abusive conduct
>
> TLDR: Be responsible and don't violate our policies.
>
> You are responsible for all activity on your account. **If you violate our policies we may terminate your account.**
>
> And
>
> Account deletion
>
> TLDR: You can delete your account here. **We can disable your account at our discretion.**

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

You can permanently delete your account at any time by going to our Privacy Policy. On that page you can also see what information is deleted and what we continue to store after the account is deleted.

**We can terminate or suspend your account at any time at our discretion.** We can also cancel any membership subscriptions and remove any descriptions, posts or benefits at our discretion.

These terms remain in effect even if you no longer have an account." [emphasis added]

**https://www.patreon.com/policy/legal**

"It is  well-settled in New York that "[a] **contract terminable at will** cannot be the basis for a tortious interference with contract claim" because "there can be no breach of contract, a necessary element for tortious interference with contract, when the contract may be terminated at will." AIM, 2003 WL 21203503, at *5 (citing Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 406 N.E.2d 445, 450 (1980); World Wide Communications, Inc. v. Rozar, 1997 WL 795750, at *7 (S.D.N.Y. Dec. 30, 1997); Coliniatis v. Dimas, 848 F. Supp. 462, 470 (S.D.N.Y. 1994); Miller v. Mount Sinai Med. Ctr., 288 A.D.2d 72, 733 N.Y.S.2d 26 (1st Dep't 2001); Snyder v. Sony Music Entm't, Inc., 252 A.D.2d 294, 299, 684 N.Y.S.2d 235 (1st Dep't 1999); Am. Preferred Prescription, Inc. v. Health Mgmt., Inc., 252 A.D.2d 414, 417, 678 N.Y.S.2d 1 (1st Dep't 1998))." [emphasis added]

*Discover Group, Inc. v. Lexmark International, Inc.*, 333 F. Supp. 2d 78 (E.D.N.Y. 2004)

*"Goodman had foreknowledge and / or some involvement in explosions at a Texas LNG facility" claim devoid of fact (Para. 73)*

35.    The Defendant has expressed in the Counter-Claim papers (# 122) a complete lack of understanding and ignorance of the incident in Texas (Port Neches, Texas explosion – which had nothing to do with Liquefied Natural Gas (LNG) tanks).  News media reports indicate the following:

PORT NECHES, Texas — Small fires from inside the TPC Group plant in Port Neches continues to burn 10 days after massive explosions, according to a Saturday morning news release from the Port Neches Response team.

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

https://www.12newsnow.com/article/news/local/saturday-morning-update-on-tpc-explosion/502-79eeb225-8ebd-4a43-ac18-71f7f8083b6a

The city of Port Neches and Jefferson County lifted a voluntary evacuation order Thursday afternoon, less than 24 hours after residents who were displaced for days last week amid a fire and multiple explosions at a local chemical plant were again asked to leave their homes Wednesday night.

https://www.texastribune.org/2019/12/05/port-neches-plant-explosion-prompts-evacuation-order-one-week-later/

TPC Group is a leading producer of value-added products derived from petrochemical raw materials such as C4 hydrocarbons, and provider of critical infrastructure and logistics services along the Gulf Coast. Our products are sold into a wide range of performance, specialty and intermediate segments, including synthetic rubber, fuels, lubricant additives, plastics and surfactants. Headquartered in Houston, Texas, with an operating history of 75 years, TPC Group has manufacturing facilities in the industrial corridor adjacent to the Houston Ship Channel and Port Neches, Texas, and operates a product terminal in Lake Charles, Louisiana.

https://www.tpcgrp.com/about

36.     Plaintiff/Counter-Defendant (undersigned) made no statements implicating the Defendant

in this highly illogical and incomprehensible conspiracy theory.  Nor can Goodman point to any

statements made by the undersigned accusing Goodman of such an allegation.

Defendant/Counter-Plaintiff (Goodman) has provided no proof of such statements, no dates and

times of such statements, no identification of any kind except for conclusionary statements

which appear baseless with no factual foundation (LNG tanks vs. TPC chemical plant).

37.     The Defendant's statements about his "Texas LNG facility theory" are too conclusory,

vague and lacking in a factual basis to make out the Defendant's defamation *per se* claim.  See

*Black Car and Livery Ins. v. HW Brokerage*, 28 A.D.3d 595 (N.Y. App. Div. 2006).  "[B]eyond

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

bare conclusory allegations that, on a Rule 12(b)(6) motion, the court need not assume the truth

of," *Gristede's Foods v. Poospatuck*, 06-cv-1260 (KAM) (E.D.N.Y. Dec. 1, 2009).

38.     Even if true, such vague and conclusory LNG tank explosion statements about the

Plaintiff/Counter-Defendant's purported liability do not provide the undersigned with adequate

notice as required by Fed. R. Civ. Proc. Rule 8(a)(2). "The mere allegation that defamatory

statements were made to another unidentified residency program is too indeterminate to provide

sufficient notice of Plaintiff/Counter-Defendant's claim so that Defendants can prepare their

defense," *Sebastiani v. Brooklyn Hosp. Ctr.*, 19-CV-253 (PKC) (ST) (E.D.N.Y. Jul. 19, 2019).

> "The Federal Rules of Civil Procedure require a short and plain statement of the claim.
> Fed. R. Civ. P. 8(a)(2). Conclusory allegations, unsupported by specific allegations of
> material fact are not sufficient. Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990). A
> pleader must allege facts, directly or indirectly, that support each element of the claim.
> Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002)."
>
> *Nanney v. Hooks*, 1:19-cv-215-FDW (W.D.N.C. Aug. 7, 2019).

> "Under Rule 8(a)(2) and the Second Circuit's opinion in *Igbal,* speculative or conclusory
> claims included in a complaint must be supported by sufficient factual allegations to
> render them plausible, and to inform a defendant of the accusations brought against him.
> 490 F.3d at 157-58." [ *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ]
>
> *Samuel v. Bellevue Hospital Center*, 07 Civ. 6321 (NRB) (S.D.N.Y. Aug. 21, 2008)

### COUNTER-PLAINTIFF'S COUNT 2
### AGGRIVATED [sic] HARASSMENT

39.     As expressed by the presiding judge, Hon. Valerie Caproni, in Doc. 87 pg. 6, Goodman,

acting as a private citizen, cannot bring criminal claims, or private actions sounding in criminal

claims, against the undersigned.

40.    "A private citizen may not prosecute a criminal action in federal court.  See *Leeke v.*

*Timmerman*, 454 U.S. 83, 86 (1981) (per curiam). (reaffirming that "a private citizen lacks a

judicially cognizable interest in the prosecution or nonprosecution of another").

41.    The Defendant cites New York Penal Law § 240.30 against the Plaintiff/Counter-

Defendant which is a criminal statute and offers no private right of action to recover damages.

There are no civil remedies available to the Defendant in this regard.

42.    In sum, the Court may have no jurisdiction over this claim invoking a criminal statute and

should consider dismissal pursuant to Fed. R. Civ. Proc. 12(b)(1).

***COUNTER-PLAINTIFF'S***
***COUNT 3 CIVIL CONSPIRACY***

43.    The Defendant is left without a primary tort – defamation and/or defamation per se.  By

his own admission, *Sepenuk v. Marshall*, No. 98 Civ. 1569 (RCC) (S.D.N.Y. Dec. 8, 2000)

forecloses the Defendant's "civil conspiracy" claim.

> "It is textbook law that New York does not recognize an independent tort of
> conspiracy. See Sado v. Ellis, 882 F. Supp. 1401, 1408 (S.D.N Y 1995). **If an**
> **underlying, actionable tort is established**, however, plaintiff may plead the
> existence of a conspiracy in order to demonstrate that each defendant's conduct was
> part of a common scheme. See AM Cosmetics Inc. v. Solomon, 67 F. Supp.2d 312,
> 322 (S.D.N.Y. 1999); Litras v. Litras, 254 A.D.2d 395, 681 N.Y.S.2d 545, 546 (2d
> Dep't 1998)." [emphasis added]

44.    ""[C]onclusory allegations are insufficient to withstand a motion to dismiss." See

*Giaccio v. City of New York*, 2005 WL 95733, *5, (S.D.N.Y. Jan. 19, 2005) (citing *Straker v.*

*Metro. Transit Auth.,* 333 F.Supp.2d 91, 102 (E.D.N.Y. 2004)," *Goonewardena v. New York*, 475

F. Supp. 2d 310 (S.D.N.Y. 2007).

***COUNTER-PLAINTIFF'S EXTRANEOUS***
***ALLEGATIONS AND COMMENTARY***

45.     In several introductory paragraphs (see para. 4 to 8, # 122) Goodman accuses the
Plaintiff/Counter-Defendant of "entering into a verbal agreement" with a multitude of parties
generally related to the Virginia lawsuit troupe of characters.  This troupe includes: Manuel
Chavez, III of Carson City, Nevada, Tyrone Simpson (believed to be the brother-in-law of legal
counsel of the plaintiff's attorney in the Virginia lawsuit and Nathan Stolpman.  The
Defendant/Counter-Plaintiff continues beat this "dead horse" of the Virginia lawsuit troupe
conspiracy theory that has been refuted time and time again.

46.     In his Counter-Claim [# 122] papers Goodman continues to complain of some conspiracy
to interfere with his business, and personal life, etc.  Once again, this "dead horse conspiracy" –
which has nothing to do with the Plaintiff/Counter-Defendant (undersigned) --  was determined
to be the paid centered on a political operative who is well known to Goodman -- Manuel
Chavez, III of Carson City, Nevada (aka "DEFANGO").

47.     This conspiracy of "filing simultaneous lawsuits" against Goodman was openly admitted
to by Mr. Chavez and orbits around the involvement of Mr. Chavez with the Virginia lawsuit
troupe of players – which includes: Virginia federal lawsuit plaintiff (Robert David Steele),
plaintiff's attorney (Steven Scott Biss) and several others.  As publicly stated by Chavez the
Virginia attorney had authored a draft complaint on behalf of Chavez for filing in the courts of
the State of Arizona in October 2017 – to coincide with the federal lawsuit in Virginia lawsuit.
Chavez has transmitted e-mail messages to the Defendant/Counter-Plaintiff to demonstrate this
confederation.  None of these e-mail messages indicate the undersigned's involvement.

48.     These electronic mail messages have demonstrated that the Plaintiff/Counter-Defendant
(undersigned) had no relationship with Mr. Chavez in this regard, nor with the plaintiff (Steele)

or the plaintiff's lawyer (Steven Scott Biss, 300 West Main St, Ste 102, Charlottesville, VA

22903, 804-501-8272, Fax: 202-318-4098, Email: stevenbiss@earthlink.net), or the spouse of

Mr. Biss (Tanya Biss aka Tanya Cornwell) or the purported brother-in-law of Mr. Biss (Tyrone

Simpson aka "Frank Bacon").  Sworn statements have been produced in the Virginia lawsuit by

the plaintiff and his attorney attesting to this fact.  Goodman knows this; but, nonetheless has

proffered these worn out "dead horse" theories and beliefs upon this Court in an act of **bad faith**.

The latest DECLARATION (one of nearly dozens) from the Virginia lawsuit is attached as

**EXHIBIT ONE** to this pleading.

49.     Defendant/Counter-Plaintiff Goodman has engaged in extensive e-mail and telephone

communication with Manual Chavez, III as reported by Chavez on social media (Chavez aka

"DEFANGO" who is presently associated with something known as the "MAGA Coalition").

The Defendant/Counter-Plaintiff was recorded discussing litigation strategy with Mr. Chavez as

described in **para.s 20 to 23** in the attached **EXHIBIT TWO** to this pleading.

> **GOODMAN**:  "He's been working with Robert David Steele, you were working for
> Robert David Steel, at the time, Sweigert (Plaintiff) was working with you, Tyrone
> Simpson was working with you and Sweigert and these are the elements of the
> conspiracy."

> **CHAVEZ**:  "Yeah, I mean you got the conspiracy down pretty well.  I mean.  I will send
> you everything that shows my Patreon and she (attorney's wife) was paying me on
> Patreon for sure.  But, was I working in concert with Dave Acton (Plaintiff) and those
> guys, yeah, f_ck it, why not.  I will say whatever. (Laughter)."

50.     In fact, via public announcements by Chavez, he has  forwarded to Goodman AND the

Plaintiff/Counter-Defendant ALL electronic mail messages in his possession that demonstrated

communications between Chavez and other Virginia lawsuit troupe players; such as: Simpson

(aka "Frank Bacon"), the plaintiff's attorney (Biss, esq.), Mr. Biss's wife (Tanya Cornwell) and

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

the plaintiff (Steele).  Strangely the name of Thomas Schoenberger (an associate of Manuel

Chaves, III) has been dropped from the Defendant/Counter-Plaintiff's list of co-conspirators.

This set of Chavez e-mail communications contains no references to the undersigned, nor

includes an e-mail address for the undersigned nor presents any other plausible connection.

51.     For clarity the Court is reminded of **EXH. C** to his papers (# 122) to the Counter-Claim

papers that provides the "dead horse conspiracy of players" (pg. 50, # 122):

> "Robert David Steele, (hereinafter "Plaintiff" or "Steele") Counsel for Plaintiff,
> Steven S. Biss, (hereinafter "Biss") his paralegal wife Tanya Cornwell (hereinafter
> "Cornwell"), denied intervenor applicant David George Sweigert (herein after
> "Sweigert"), his brother George Webb Sweigert (herein after "Webb") and an
> individual named Manuel Chavez, III (hereinafter "Chavez") have conspired with one
> another as well as others to bring this instant legal matter in conjunction with
> additional lawsuits in foreign jurisdictions in order to harass, defame and otherwise
> disrupt the business and day to day activities of the Defendant Goodman."

52.     The only proof of any connection between the Plaintiff/Counter-Defendant and any of

these parties associated with the Virginia lawsuit troupe of players is a chance "multi-party call"

from an Internet radio call-in show that is attached as **EXH. A** (# 122) to the Counter Claim

papers.  Supposedly, this "video call" is a record of an Internet call-in show discussing matters of

public concern which supposedly took place sometime in December 2017 (according to the

Defendant/Counter-Plaintiff).  During this "call-in" show matters were discussed – apparently –

about the lack of accountability attributed to Defendant/Counter-Plaintiff and George Webb

Sweigert for the June 14th, 2017 Port of Charleston, S.C. "dirty bomb hoax".  These remarks

seem to include George Webb Sweigert as much as Jason Goodman.

53.     According to Defendant/Counter-Plaintiff a "verbal agreement" was entered into by

Sweigert and Simpson (para. 8, # 122) during this alleged Internet radio call-in show.  There is

no reference by the Defendant/Counter-Plaintiff to any part of this "call-in show" where this

purported verbal agreement was discussed, negotiated, accepted or ratified.  Indeed, EXHIBIT A

is a jumble of call-in show remarks which appear to contain numerous errors and omissions

created by the translation software.  Goodman cites "[d]uring the call, Simpson suggests the

social media network Steemit.com as the "best way to get JG"" (para. 8, #122).

54.     The Defendant/Counter-Plaintiff must demonstrate that such remarks during a call-in

show discussing matters of public concern have caused him some harm.  He has not.

55.     The Defendant/Counter-Plaintiff proffers, "Sweigert agrees, responding to Simpson's

offer "[a]lright, ok we can do that.""  Thus, according to the Goodman, one Tyrone Simpson

(Biss, esq. brother-in-law) is offering the use of the social media platform Steemit.Com to

somehow reward, compensate or pay the Plaintiff/Counter-Defendant for his alleged role in

writing letters with "Steemit" dollars, which the undersigned has never received.  Further, the so-

called "Steemit" account created by Simpson for the undersigned has been inactive for almost

two years.

56.     The Defendant continues "[t]his is an open admission of his eagerness to violate 40 N.Y.

Con. Laws Ann. § 240.30 Aggravated harassment in the second degree, and his commitment to

doing so is shown by his overt actions over the months that followed." (para. 8, #122).

Defendant Goodman provides no details on these mysterious *"overt acts"*.

57.     Even if the Court assumes this allegation to be true, it places the issue squarely back into

the private enforcement of criminal statutes.  The Defendant / Counter-Plaintiff believes that

these call-in show remarks (para. 8, #122) are of a criminal nature and violate aggravated

harassment laws.  If so, this is a matter for law enforcement, and it is telling that Defendant

Goodman appears to have made no contact with law enforcement about these issues – except for

his purported contact with the New York field office of the Federal Bureau of Investigation

(F.B.I.) and/or the New York City Police Department (N.Y.P.D.).  If true, then

Defendant/Counter-Plaintiff Goodman has exhausted his remedies for seeking satisfaction of a

purported criminal charge and cannot attempt to litigate these criminal issues in this Court.

58.     At paras. 13 – 14 (# 122), Goodman recites a completely irrelevant phone message left by

Simpson – an individual who has no connection with the undersigned save for participating in a

chance encounter on an Internet call in show "sometime in December 2017".  Again, Defendant

Goodman asserts that the phone call is a "direct violation of 40 N.Y. Con. Laws Ann. § 240.30

Aggravated harassment in the second degree.".

59.     In an astonishing stretch of logic, para. 18 (# 122) of the Counter-Claim papers condemns

the Plaintiff/Counter-Defendant for reporting crimes to appropriate law enforcement agencies

such as the U.S. Coast Guard.  This is the exact behavior that the Defendant/Counter-Plaintiff

purportedly had undertaken to contact the **F.B.I./N.Y.P.D.** about the Plaintiff/Counter-Defendant

(and others in the "vast conspiracy" of the Virginia lawsuit troupe of players) in April 2018.

Again, no specific instances are provided except for a letter to the U.S. Coast Guard Captain of

the Port for the Port of New Jersey and New York **(EXH. D, #122).**

60.     Paragraphs **20 thru 26** are highly speculative theories and conclusions proffered by the

Defendant / Counter-Plaintiff.  These paragraphs offer no actionable allegations under any

cognizable law and are conclusory in nature.  These paragraphs include statements such as

"Sweigert attempts to pass off his false and defamatory statements as legitimate "news"" (para.

20), "[i]t is Counter – Plaintiff's belief .. cause him to do this in an effort to avoid disclosing

information during discovery" (para. 21), "[w]hile Goodman's process is open, honest and

unwavering, Sweigert relies on deception, hiding information and frequent changes of names,

addresses and tactics to confuse others and complicate civil litigation related to the information"

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

(para. 21), "Sweigert is in a regular practice of deleting, destroying, hiding or otherwise

removing public access to recordings or records of his false and defamatory statements against

Goodman" (para. 22), etc.  All these statements offer a conclusory determination with no factual

foundation.

> "To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain
> sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on
> its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S.
> 544, 570 (2007)). Legal conclusions are not entitled to the presumption of truth, and a
> court assessing the sufficiency of a complaint disregards them. Id. Instead, the Court
> must examine only the well-pleaded factual allegations, if any, "and then determine
> whether they plausibly give rise to an entitlement to relief." Id. at 679. The Complaint
> must include non-conclusory factual allegations that "nudge[ ]" its claims "across the
> line from conceivable to plausible." Id. at 680 (quoting Twombly, 550 U.S. at 570)."
> *Murray v. City of N.Y.*, 16-cv-8072 (PKC) (S.D.N.Y. Aug. 16, 2017)

61.     In **para. 20** Defendant Goodman claims that "Sweigert continues to make false

statements and false accusations nearly daily on a newly launched blog …".  Yet, the Defendant

cannot provide this Court one example of these "*daily false statements*", making this allegation

non-actionable under New York law.

> "To state a claim for defamation, a plaintiff must allege: (1) a false and defamatory
> statement, (2) published without authorization to a third party, (3) constituting fault as
> judged at minimum by a negligence standard, and (4) causing special damages or
> constituting defamation per se. Bernstein v. Seeman, 593 F. Supp. 2d 630, 635
> (S.D.N.Y. 2009)."
>
> *Williams v. Metro N. R.R.*, 16 Civ. 1141 (LAK) (JCF) (S.D.N.Y. Aug. 17, 2016)

62.     **In para. 21** Goodman accuses Plaintiff/Counter-Defendant (undersigned) of things that

are simply not actionable in a court of law.  The issue of frequent moving and changes in mailing

addresses are proffered by the Defendant without the accompanying explanation that the

Plaintiff/Counter-Defendant finds this conduct justifiable as Goodman has issued several calls to

physically find the Plaintiff/Counter-Defendant while he resided in Mount Shasta, California (see period of April – May, 2018).

63.     As fully explained in the Virginia litigation Goodman issued several social media podcasts with his sidekick Quinn Michaels (aka Korey Atkin) to physically locate the Plaintiff/Counter-Defendant and thus "**#STOPTHESACRIFICE**".  This widely disseminated social media meme narrative (#StopTheSacrifice) pushed by the Defendant and his sidekick Quinn Michaels accused the Plaintiff/Counter-Defendant of participating in a Satanic cult that was about to sacrifice children on June 14, 2018 (the original filing data of this instant litigation and the one-year anniversary of the Port of Charleston, S.C. "dirty bomb hoax") unless the undersigned was forcibly stopped.  A general "*Call To Action*" (CTA) was pushed by Quinn Michaels – acting as an agent of the Defendant (who ratified the CTA calls) – to recruit volunteers to locate the physical whereabouts of the Plaintiff/Counter-Defendant.  At the time Mr. Michaels / Atkin was in the Mount Shasta, California vicinity conducting interviews of residents in attempts to locate the Plaintiff/Counter-Defendant.

64.     Quinn Michaels was successful in locating a volunteer fire fighter ("Kyle") that the undersigned had worked with and attempted to have him enrolled in Emergency Medical Technician training in Mount Shasta, California.  Michaels then made a series of broadcasts divulging information about the undersigned based on information provided by "Kyle".  Again, Goodman ratified and endorsed this level of conduct by his agents and proxies – like Quinn Michaels (presently under a "keep away" restraining order to protect his teenage son who Michaels has threatened over the Internet on dozens of occasions).

65.     During this time period (April – May 2018) "Queen Tut", aka Susan B. Homes aka Susan Lutzke of Fort Collins, Colorado has contacted the undersigned and advised him that his life was

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

in danger and that Goodman was attempting to locate his physical whereabouts to have a "hit" arranged on the Dark Web. "Queen Tut" is a former CrowdSource The Truth podcast sidekick who is also a co-defendant in the Virginia lawsuit.

66.     Paragraph 24 (# 122) is a further continuation of Goodman's conclusory statements. "Sweigert utilizes, intelligence and other deceptive tactics to communicate with an active dynamic network of co-conspirators who have themselves engaged in overt acts in the furtherance of this conspiracy.  This is done while deliberating creating the illusion that these co-conspirators are independent operators."  In all this hyperbole there is no underlying tort cited by the Defendant / Counter-Plaintiff.  "New York law does not recognize a right of civil action for conspiracy. See *Dickinson v. Igoni,* 76 A.D.3d 943, 945, 908 N.Y.S.2d 85, 88 (2d Dep't 2010) ("[A] claim alleging conspiracy to commit a tort stands or falls with the underlying tort."). *Castro v. Cusack*, 15-cv-6714 (ENV) (LB) (E.D.N.Y. Jul. 16, 2019).

67.     In paragraph 25 (# 122) it is more of the same.  "Sweigert's overt actions in spoliating evidence and removal of public social media posts or communications is intended to complicate civil litigation and to frustrate Goodman's attempts to counteract Sweigert's devious and damaging actions."  Here the Defendant / Counter-Plaintiff "is simply "rely[ing] on conclusory allegations or unsubstantiated speculation." In re Celestica Inc. Sec. Litig., 2014 WL 4160216, at *4." *NEM Re Receivables, LLC v. Fortress Re, Inc.*, 173 F. Supp. 3d 1 (S.D.N.Y. 2016).

68.     Paragraphs 28 through 33 have nothing to do with the Plaintiff/Counter-Defendant – perhaps except for para. 31.  The bulk of this section of the Counter-Claim papers makes allegations against Steve Outtrim, a third party to this litigation.

69.     Paragraphs 38 through 52 contain a breathtaking list of "co-conspirators" to include "Queen Tut" and the Virginia lawsuit troupe of players.  The usual suspects have been included

by Goodman: George Webb Sweigert, Steele, Biss, esq., Patricia Negron (a former CrowdSource The Truth" sidekick and defendant in the Virginia litigation), Oakey Marshall Richards, aka Deep Uranium, aka Rock Hudson of Hudson Intelligence Group (a former CrowdSource The Truth" sidekick), Cornwell, Chavez, Steve Outtrim, Simpson, Stolpman, Marion Rapp, Dean Fougere, aka "TITUS FROST", etc.. In sum, this is the implausible vast conspiracy of individuals that are working against the Defendant Counter-Plaintiff.

70.     Paragraphs 58 through 68 contain another ad nauseam retelling of irrelevant events related to the Port of Charleston, S.C. "dirty bomb hoax" on June 14th, 2017. There is no cognizable action that this Court could take based on this section of the Counter-Claim papers.

## CONCLUSION

71.     The Defendant/Counter-Plaintiff has presented non-meritorious claims that should be dismissed. The Defendant's attempt to introduce issues orbiting the New York Penal Code (considering the presiding judge's ORDER (# 87)) speaks to bad faith, as the Goodman has already had adequate notice that private citizens can not seek a private remedy for the alleged commission of crimes via the presiding judge's ORDER (# 87).

72.     This Court need not credit Defendant/Counter-Plaintiff "conclusory allegations [and] unsubstantiated speculation" that something more nefarious has occurred than a private party (undersigned) has engaged in counter-speech to protect his business, trade and technical reputation.

73.     The Defendant's unclear and disjointed descriptions of the implausible vast conspiracy of the Virginia lawsuit troupe of players does not lead this Court to any actionable issues. There are brief portions of the Counter-Claim papers (# 122) that, construed very liberally, could

conceivably give rise to discrete claims against any person on social media that publicly criticizes Goodman in any manner.

74.     Despite multiple attempts in this Court, and the Virginia court, to properly plead his "vast conspiracy theory", nothing in the Counter-Claim papers (# 122) can support any conclusion other than the conclusory allegations in the Counter-Claim papers are baseless.  Although the Defendant very likely believes that he is a victim of a vast conspiracy involving the Plaintiff/Counter-Defendant (undersigned) that claim is utterly implausible, which is no doubt why there are no – or very little – facts pleaded which could support it.

75.     ""A finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible whether or not there are judicially noticeable facts available to contradict them." Denton v. Hernandez, 504 U.S. 25 (1992)." *Tehrani v. Town of Oyster Bay Hous. Auth.*, 18-cv-2450 (BMC) (LB) (E.D.N.Y. Apr. 9, 2019).

76.     Taken as a whole, the conspiracy allegations in the Defendant's/Counter-Plaintiff's Cross-Claim papers (complaint [# 122]) are too vague, disjointed, and implausible to state a plausible claim for relief as required by Fed.R.Civ.Proc. 12(b)(6).

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

12 . 12 . 19

31

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

## CERTIFICATE OF SERVICE

I HEREBY ATTEST that a true copy of the attached pleadings have been sent to the

following addressees on the 12th day of December 2019 via prepaid First Class U.S. Mail.

**Jason Goodman, CEO**
**Multi-media Design Systems, Inc.**
**252 7th Avenue, Apart. #6S**
**New York, NY 10001**

**PRO SE OFFICE, Room 200**
**U.S. District Court**
**500 Pearl Street**
**New York, New York 10007-1312**

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

12·12·19

32

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

**U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
(FOLEY SQUARE)**

| | |
|---|---|
| D George Sweigert<br><br>**Plaintiff**<br><br>v.<br><br>**Jason Goodman**<br><br>**Defendant** | **CIVIL CASE #: 1:18-CV-08653-VEC**<br><br>**JUDGE VALERIE E. CAPRONI**<br><br>**MAGISTRATE STEWART D. AARON** |

# <u>EXHIBITS</u>

**<u>TO ACCOMPANY PLAINTIFF'S MEMORANDUM OF LAW
TO SUPPORT MOTION IN OPPOSITION TO DEFENDANT'S COUNTER-CLAIM
PAPERS (DOC. No. 122) PURSUANT TO RULE 12(b)(6) FAILURE TO STATE A
CAUSE, OR, IN THE ALTERNATIVE, RULE 12(b)(1) LACK OF JURISDICTION</u>**

These **EXHIBITS** are submitted in response to the Defendant's pleading papers **(Dkt. No. 122)** which is styled as a "**COUNTER-CLAIM**"

I hereby certify that the attached pleadings are truthful and accurate (to the best of my knowledge) and are not submitted for the purposes of oppression of the Defendant.  Signed this *12* day of December, 2019.

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
<u>*Spoliation-notice@mailbox.org*</u>

12·12·19

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

# EXHIBIT ONE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ROBERT DAVID STEELE                    )
    <u>et al</u>                                     )
                        )
    Plaintiffs,                            )
                        )
v.                                     )        Case 3:17-cv-601-MHL
                        )
JASON GOODMAN                          )
    <u>et al</u>                                     )
                        )
    Defendants.                            )
_____)

# <u>DECLARATION OF ROBERT DAVID STEELE</u>

Robert David Steele, under penalty of perjury, states as follows:

1.     I am over 21 years of age and otherwise competent to make this Declaration. I have personal knowledge of the statements contained herein based upon (a) documents and information in my possession and control, (b) my personal observations, memory, and experiences, (c) public information and statements by Defendant, Jason Goodman, on YouTube and on Twitter, and (d) documents known or reasonably believed to be in the possession, custody and control of others. The statements in this Declaration are true and accurate to the best of my knowledge, information and belief.

2.     I am one of the Plaintiffs in this action. I engaged Steven S. Biss to be Plaintiffs' counsel in this action.

3.      I have reviewed Defendant Goodman's motion to disqualify Plaintiffs' counsel.  In absolutely deny his "statement of facts" or that there is any basis to disqualify my counsel of choice.  In response, I state as follows:

a.      There is no conspiracy to bring any legal action against Goodman;

b.      I have never agreed, combined or acted in concert with anyone to extort, harass, defame or disrupt Goodman's business and day-to-day activities;

c.      There is no plan to bring multiple lawsuits against Goodman;

d.      I have never spoken to my counsel or his wife about bringing multiple lawsuits against Goodman;

e.      I am not in contact and have no relationship of any kind with any of my counsel's other clients;

f.      My counsel's wife played no part in drafting the complaint or amended complaint in this case, and has played no role on this litigation;

g.      I did not pay any money to Chavez while encouraging him to bring a lawsuit against Goodman;

h.      I did not ever ask or encourage Chavez to produce false evidence about Goodman or supply any such evidence to my attorney;

i.      I did not ever received any false or fabricated evidence from Chavez or offer him a percentage of any recovery in this case if he provided such evidence;

j.      I have no knowledge and was not involved in any way in drafting Chavez' lawsuit against Goodman, and I was not aware that Chavez allowed the statute of limitations to expire;

k.      I have never seen EXHIBITS A, D, E, F or G to Goodman's motion, and do not know if these documents are authentic;

l.      I was not involved in drafting and have no first-hand knowledge of the document attached to Goodman's motion as EXHIBIT H.

2

4.      I have reviewed Plaintiffs' memorandum in opposition to Mr. Goodman's motion to disqualify, and I swear or affirm that the factual statements contained in the memorandum are truthful and accurate to the best of my knowledge and belief.

In accordance with 28 U.S.C. § 1746, I declare, certify, verify, and state under penalty of perjury that the foregoing is true and correct.

Executed in Oakton, Virginia, on December 9, 2019.


_____/s/_____
ROBERT DAVID STEELE

3

# EXHIBIT TWO

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER:  STEELE v. GOODMAN, 17-CV-00601-MHL

*D.G. Sweigert, c/o*
*P.O. Box 152*
*Mesa, AZ 85211*
*Spoliation-notice@mailbox.org*

July 11, 2019

Jason Goodman, CEO
Multimedia Systems Design, Inc.
252 7th Avenue
Suite 6-S
New York, NY 10001

Clerk of the Court, Room 3000
U.S. District Court
701 E. Broad St.
Richmond, VA 23219

MATTER:          **STEELE v. GOODMAN, 17-CV-00601-MHL**

                 **District Judge M. Hannah Lauck**


SUBJECT:         **PART ONE:**  ATTEMPTED FRAUD ON THE COURT BY
                 DEFENDANT GOODMAN VIA **ECF DOC. NO. 139**


REF: (a)         MANUAL CHAVEZ, III (DOB 03/21/1986), AZ DL DO1566834


Good Morning:


1.      This letter addresses the false misrepresentations that you continue to present to this
honorable Court based on insufficient tainted evidence that has been created with the cooperation
of your CrowdSource The Truth (CSTT) side kick, see ref: (a), known as "DEFANGO".

1

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER: STEELE v. GOODMAN, 17-CV-00601-MHL

2.      Your attention is kindly directed to <u>ECF Doc. No. 139, para. 20</u>, shown below.

---

24   Key themes propagated by various members of ...

25   20. As previously submitted in these proceedings, (ECF No. 78 EXHIBIT I) Intervenor

26       Application D. George Sweigert, telephone Manuel Chavez III, making substantially the

27       same claim, falsely stating that Defendant Goodman was paid by Black Cube

28   DEFENDANT'S AMENDED RESPONSE TO PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS - 11

---

Case 3:17-cv-00601-MHL   Document 139   Filed 07/08/19   Page 12 of 119 PageID# 2376

1       (http://www.blackcube.com) a private intelligence firm in the UK comprised of former

2       Mossad agents and operatives, according to their own public website.

3    21. On or around June 2019, Manuel Chavez III voluntarily shared some of his personal

---

3.      Please take note of the following litigation in which ref: (a) (DEFANGO) is a witness:

               **U.S. District Court**
               **for the District of Columbia**
               **RICH v. BUTOWSKY et al**
               **CASE #: 1:18-cv-00681-RJL**
               **Judge Richard J. Leon**

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER: STEELE v. GOODMAN, 17-CV-00601-MHL

4.      In recent YouTube video productions distributed by ref: (a) (DEFANGO) it has been clearly stated by ref: (a) that he was a member of a group of "reputation protection" operatives allegedly directed by Matt Couch (defendant in the above cited action). Ref: (a) has distributed in a widely pervasive manner, electronic messages from Matt Couch to support his testimony in the above cited litigation. Ref: (a) has also been vocal about evidence that he has furnished to you as well. See below:

 subpoena compliance - Aaron Rich Lawsuit - defango tv 6/22/2019
Defango TV
Streamed 1 week ago • 1,632 views
Well it's time do Comply with this Aaron Rich Lawsuit Subpoena. I think a few people are going to really dislike this stream but it's ...

Streamed live on Jun 22, 2019
Well it's time do Comply with this Aaron Rich Lawsuit Subpoena. I think a few people are going to really dislike this stream but it's for Court Records and whatnot. So we are getting everything on the table and building the files to FTP to the Lawyer. Any striking or anything is going to be interfering with a federal case.

Internet URL: https://www.youtube.com/watch?v=pB7NjF1ApZg&t=7427s

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER:  STEELE v. GOODMAN, 17-CV-00601-MHL



Matt Couch ◆ sent you a
Direct Message.

You didn't get this from me, from a
Source. Jason Goodman is on the
payroll of a man named Arnan
Milchan. Arnan has Jason doing work
partly out of blackmail. Jason was at
parties with a producer named Brian
Singer and there were underaged
boys and girls. Jason was being paid
$1,758 a week and its now up to
$3,500 a week. Laura Loomer is
making $7,000 a week from Milchan.
Black Cube feed them info. Jason
found out that Milchan is paying

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER:  STEELE v. GOODMAN, 17-CV-00601-MHL

do not tell anyone how you got this
info. Goodman's job is to deflect
attention from Rahm Emanuel,
Chuck Schumer and DWS. Rahm
secretly paid Pakistani prosecutors 3
million in hush money in March 2009
to make a ton of fraud charges go
away. The money came from Israel.
The Awan's have been spying for
Israel since 2007-2008 with Schumer
as the king pin. Now Milchan works
with a guy named Avi Hersh. I know
you and T and others know some of
this stuff, but now you know the full
story. Also, Alan Dershowitz has over
7 hours of Orgy Island vid hidden and
his vid file is called Insurance, the
same name as Schumer's boy
Anthony Wiener. Please keep my
name out of this. I focus on Vegas
and **Seth**. But this is blow away stuff.
Goodman will freak when you expose
this. It comes directly from a CIA guy
on our team.

5.      The enlarged video screen-shot from the above video content demonstrates that the
source of the "Black Cube rumor" was apparently Matt Couch – and NOT the undersigned as
you continuously report.  As discussed in the previous letter on this subject, dated June 30th,
2019, you have implicated the undersigned as the source of the "Black Cube" rumor.  To refresh
your memory the rumor states that you and Laura Loomer were being paid by a Black Cube
operative, stated by ref: (a) (DEFANGO) and NOT by the undersigned.

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER:  STEELE v. GOODMAN, 17-CV-00601-MHL

6.       As you can see by the above screen-shot evidence, Matt Couch was the source of this
"Black Cube" rumor.  This rumor was distributed by ref: (a) (DEFANGO) on his own volition.
The undersigned has nothing to do with the promulgation of this "Black Cube" rumor.  The
reverse is true, the entire matter was the sole responsibility of ref: (a), who is your CSTT side-
kick.  Your insinuations in ECF Doc. No. 139, para. 20 that the undersigned promulgated this
rumor are false and an example of your unrelenting fraud.

7.       Recall that the offending "Black Cube" rumor remarks were made by ref: (a), reported by
you in EXHIBIT I (no. 9 in ECF) of ECF Doc. No. 78, which is cited by you in para. 30 of ECF
Doc. No. 139 (see video entitled *11.25.17.Solving.rar* ).  These remarks were NOT made by the
undersigned.



UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER:  STEELE v. GOODMAN, 17-CV-00601-MHL



11.25.17.Solving.rar
Defango TV
Streamed 1 year ago • 3,880 views
Long day of puzzling and work Read More @steemit ...

Streamed live on Nov 25, 2017
Long day of puzzling and work

Internet URL:  https://www.youtube.com/watch?v=jK73oCxCGOE&t=4363s

8.     Ref: (a) (DEFANGO) promulgates the *Black Cube rumor* as seen in the video that appears below.

     REF: (A).     01.12.22.  It's really crazy to me too .. I was picking up on something .. uh .. **Black Cube**.  And, like I had gotten some information about . like .. some information from quote unquote "CIA source" that was talking about how Loomer and – what's his name – **Goodman were getting paid by some Black Cube, some Black Cube operative.**  And then it started clicking in my head.
     [emphasis added]

9.     It is instructive to note that you specifically featured the Black Cube corporate web-site in your video production distributed in a widely pervasive manner two (2) days after these *Black Cube rumor* remarks were made public by ref: (a) on 11/25/2017 (see below).

**UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**
**MATTER:  STEELE v. GOODMAN, 17-CV-00601-MHL**



Deep State Dunces Attack George Webb & CSTT - Bitcoin Challenge Response
15,317 views



Deep State Dunces Attack George Webb & CSTT
- Bitcoin Challenge Response
Jason Goodman
Streamed 1 year ago • 15,315 views
The dumbest affiliates of the Deep State simply will not give up their
ludicrous attacks on the truth, while simultaneously offering ...

Streamed live on Nov 27, 2017
The dumbest affiliates of the Deep State simply will not give up their ludicrous attacks on the truth, while simultaneously offering no evidence to support their claims.

Internet URL:  https://www.youtube.com/watch?v=GNxCk6nqFJg

10.    Below is a transcript of your comments as recorded in the above cited video.

GOODMAN.  07:57.  They'll put out a video that where they'll say 'oh yeah, Jason Goodman is working for **Black Cube.**  Now I will tell you something.  I had no idea what Black Cube was, before these guys made a video about it.

[emphasis added]

8

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER:  STEELE v. GOODMAN, 17-CV-00601-MHL

11.     Your CSTT side-kick DEFANGO (ref: (a)) is the sole purveyor of this *Black Cube rumor* – NOT the undersigned.  This point is amplified in the STEEMIT post created during the time period in question by ref: (a) (DEFANGO) (see below).

# Black CUBE Jason Goodman

 **defango** (64) ▾  in **news** • 2 years ago

Jason Goodman, you want to play old west gunslinger with peoples reputations? Been building a case on you since you asked me to look you up. , and your connections to child pedophiles, and Mossad.

CIA SOURCE: Deep Throat confirmed by @frankbacon

Jason Goodman is on the payroll of a man named Arnan Milchan. Arnan has Jason doing work partly out of blackmail. Jason was at parties with a producer named Brian Singer and there were underaged boys and girls. Jason was being paid $2.788 a week and its now up to $3500 a week. Laura Loomer is making $7000 a week from Milchan. Black Cube feed them info. Jason found out that Milchan is paying Loomer twice as much as him and thats why they had this fight. Please do not tell anyone how you got this info. Goodman's job is to deflect attention from Rahm Emanuel , Chuck Schumer and DWS. Rahm secretly paid Pakistani prosecutors 3 million in hush money in March 2009 to make a ton of fraud charges go away. The money came from Israel. The Awan's have been spying for Israel since 2007-2008 with Schumer as the king pin. Now Milchan works with a guy named Avi Hersh. I know you and T and others know some of this stuff, but now you know the full story. Also, Alan Dershowitz has over 7 hours of Orgy Island

Internet URL:  https://steemit.com/news/@defango/black-cube-jason-goodman

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER:  STEELE v. GOODMAN, 17-CV-00601-MHL

12.     Your attention is directed to para. 32 of ECF Doc. No. 139 (shown below).

32. Chavez is an associate of Intervenor Applicant and has been paid by Intervenor Applicant and has received direct instructions from Intervenor Applicant.  Intervenor Applicant operates a YouTube channel under the account name "Prepper Kitty Intel PKI".  Many exhibits in this instant legal matter have referenced this YouTube account.  YouTube username Prepper Kitty Intel has paid Chavez via YouTube Superchat **(EXHIBIT I)**

13.     Show below is EXHIBIT I, that is attached to ECF Doc. No. 139.



Case 3:17-cv-00601-MHL   Document 139   Filed 07/08/19   Page 112 of 119 PageID# 2476

**EXHIBIT I**

10

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER:  STEELE v. GOODMAN, 17-CV-00601-MHL

14.     **EXHIBIT I** (ECF Doc. No. 139) is a screen shot of an apparent DEFANGO TV

YouTube podcast (see above).  The "super-chat" portion of the video screen shot appears below.



15.     According to your pleading, you want this Court to believe that the alleged illustrated

$20.00 "super chat" donation to DEFANGO TV (displayed in the unauthenticated exhibit – see

above), with the text "Check Mate King Two this is White Rook OVER", provides evidence that

"Chavez is an associate.."[ of undersigned]  and "Prepper Kitty Intel has paid Chavez…".

[$20.00].

16.     At the outset, there is no Internet URL Internet address provided in **EXHIBIT I**, ECF

Doc. No. 139.  By NOT providing the correct evidentiary basis for this "exhibit" (which has

been explained to you via letters in this litigation and other litigation) this exhibit is moot.

17.     There are other issues associated with your ECF Doc. No. 139, para. 20 (see above).

There are legal insufficiencies associated with your "evidence", for example: (i) whether or not

the purported *evidence* you propound rises to the level of sufficiency in the light of the Federal

Rules of Evidence (F.R.E.), and (ii) your use of hearsay and guilt by association in an attempt to

attribute *Black Cube rumor* comments to the undersigned and NOT to ref: (a) (DEFANGO) (as

broadcast in the video you have described as **EXHIBIT I**, to ECF Doc. No. 78).  This is a

falsehood and an attempt to mislead the Court.

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER: STEELE v. GOODMAN, 17-CV-00601-MHL

18.     In sum, you expect the Court to believe that an alleged public "super-chat" donation of a
$20.00 donation to ref: (a) (DEFANGO) 30-45 days ago is the equivalent of the alleged private
(non-public) $1,500.00 PATREON donation made by "AMABISS" to ref: (a) (DEFANGO)
purportedly made 18 months ago.  You have misrepresented these facts to the Court to Y
promote the fallacy that the undersigned is working with members of the DEFANGO conspiracy.

19.     Caveat: for your information "**Check Mate King Two this is White Rook OVER**"
(which appears in the above illustrate "super-chat" text) is a comical reference to the radio call
signs used in the 1960's World War II drama television series "COMBAT" staring Rick Jason
and Vic Morrow.  Below is an example of the television show.



COMBAT! s.1 ep.3: "Lost Sheep, Lost
Shepherd" (1962)

Internet URL:  https://www.youtube.com/watch?v=r35lw9CWk-g&t=24s

20.     Your attention is directed to the following YouTube channel named "MERLIN
DEFANGO", which is maintained by ref: (a) (see below).

**UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**
**MATTER:  STEELE v. GOODMAN, 17-CV-00601-MHL**



21.    As you are well aware, you placed a telephone call to ref: (a) (DEFANGO) while he was conducting a livestream YouTube broadcast (similar to your use of livestream technology during the closure of the Port of Charleston on June 14, 2017).  Your conversation you're your CSTT side-kick is available within the YouTube video content (see below) posted by ref: (a) (DEFANGO).



Streamed live on Jun 26, 2019
VAPORTUBE. WERE ya Been defango????

**Internet URL:  <u>https://www.youtube.com/watch?v=11dhF6m1-9g&t=7523s</u>**

13

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER:  STEELE v. GOODMAN, 17-CV-00601-MHL

    

The Joyride Vampire and PsyOpera Bats - BreakfastClub ...
588 views • 1 week ago

Late Night with Merlin Defango - Isotopium: Chernobyl Robots
184 views • 1 week ago

Homeward Bound and Trouble in Larptown- Merlin defango 6-30-...
932 views • 1 week ago

Viva las Trump Drivetime to vegas - Merlin defango 6-30-20'...
548 views • 1 week ago

Viva las Trump Drivetime to vegas - Merlin defango 6-30
70 views • 1 week ago

    

New surface go Day 2 D R I V E W A V E merlin defango
568 views • 1 week ago

Day 1 - D R I V E W A V E VIVA MERLIN Defango 6-26-2019
931 views • 1 week ago

Daywave Florida defango
533 views • 3 weeks ago

Daywave defango nightwave Florida meetup
632 views • 3 weeks ago

#doxgate Reloaded- Revenge the Unirock #BlueAvians #S
1,077 views • 4 weeks ago

22.     Your conversation commences at time-mark 42:35 and is as follows (excerpts):

TRANSCRIPT OF DISCUSSION

REF: (A):          Oh, Jason Goodman is calling me.  Hello Jason Goodman.

GOODMAN:          Manual Chavez, how are you.

REF: (A):          I am doing alright, just heading to Arizona right now.

GOODMAN:          OH, ok.  So I guess you are in a bit of a drive.  I don't know if you had a
chance to see my messages, but one thing I would really like to get – if
your able to send it – is either a screen capture from Patreon of . uh .. the
dash board, or the initial e-mail Patreon that sends you that says
AMABISS has become a Patreon and shows an e-mail of that account.

…

REF: (A):          I can send that over to you no problem, actually.  Garble.  I actually did
get that e-mail  . and .. all .. uh .. and I have a couple of messages for how
ever many months she was on my thing and I will send you like a copy of
that it shows the date and what e-mail she was using.

….

14

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER:  STEELE v. GOODMAN, 17-CV-00601-MHL

GOODMAN:    Something you would write to the Bar Association saying "hey, look, this judge determined that it is likely that Biss is making these inappropriate payments.  He is not supposed to be paying you, if you're his client, and particularly if that payment is coming at a time you are engaged in activities like making videos about his lawsuit, that spread allegations out across the Internet, that aren't true.  Things like that.  So, that is my position that he had someone paying you to do that stuff.  **He's been working with Robert David Steele, you were working for Robert David Steele, at the time, Sweigert [undersigned] was working with you, Tyroan Simpson was working with you and Sweigert and these are the elements of conspiracy.**

REF: (A):    Yeah, I mean you got the conspiracy down pretty well.  I mean. I will send you everything that shows she was on my Patreon and she was paying me on Patreon, for sure.  **But, was I working in concert with Dave Acton [undersigned] and those guys, yeah, f_ck it, why not.  I will say whatever.  (Laughter)**
[emphasis added]

## SUMMARY

23.    It appears that you have intentionally conflated the undersigned with ref: (a) (DEFANGO) in a fraudulent manner to support the *Black Cube rumor* narrative.  Overwhelming evidence indicates that this rumor is directly and solely traceable to ref: (a) (DEFANGO) and NOT the undersigned.  Nonetheless, you continually ask this Court to believe in this falsified narrative based on flimsy tainted and unauthenticated evidence, which you present in a glossed over manner.

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER:  STEELE v. GOODMAN, 17-CV-00601-MHL

24.    It appears that you have intentionally conflated the undersigned with ref: (a)
(DEFANGO) in a fraudulent manner to support the *Black Cube rumor* narrative.  Overwhelming
evidence indicates that this rumor is directly and solely traceable to ref: (a) (DEFANGO) and
NOT the undersigned.  Nonetheless, you continually ask this Court to believe in this falsified
narrative based on the most flimsy tainted and unauthenticated evidence, which you present in a
glossed over manner to the Court.

25.    It appears from the foregoing that your issues should be with your CSTT side-kick ref:
(a) (DEFANGO) and not me.  Your continued accusations regarding the undersigned's
involvement in a conspiracy with DEFANGO (ref: (a)) appear to be fraudulent on their face.

I hereby attest that the foregoing is true and accurate under the penalties of perjury on this ___/
day of July, 2019.

_____/

**D. G. SWEIGERT**

16

The copyright of this package is the property of the United States Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale.

# PRIORITY MAIL 2-DAY ®

0006

C014

EXPECTED DELIVERY DAY: 12/16/19

SHIP TO:
**500 PEARL ST**
**NEW YORK NY 10007-1316**

## USPS TRACKING ® NUMBER

9505 5067 0811 9346 1702 25

SSK
11488361
05491 06 2S
12/14/2019

■

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

FROM:

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

TO

PRO SE OFFICE, Room 200
U.S. District Court
500 Pearl Street
New York, New York 10007-1312

Room 200
Pro SE

# PRIORITY® MAIL ★

- DATE OF DELIVERY SPECIFIED *
- USPS TRACKING™ INCLUDED *
- INSURANCE INCLUDED *
- PICKUP AVAILABLE
  * Domestic only

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

RECEIVED
PRO SE OFFICE
DEC. 17 2019

S00001000014

UNITED STATES
POSTAL SERVICE ®

VISIT US AT USPS.COM ®
ORDER FREE SUPPLIES ONLINE

EP14F July 2013
OD: 12.5 x 9.5