UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___3/2/2020___
```

D. George Sweigert,

                              Plaintiff,

              -against-

Jason Goodman,

                              Defendant.

1:18-cv-08653 (VEC) (SDA)

<u>REPORT AND RECOMMENDATION
AND ORDER</u>

STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.

TO THE HONORABLE VALERIE E. CAPRONI, UNITED STATES DISTRICT JUDGE:

Pending before the Court are the following motions: (1) a motion by Defendant, Jason Goodman ("Defendant" or "Goodman"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Second Amended Complaint ("SAC") filed by Plaintiff, George Sweigert ("Plaintiff" or "Sweigert") (Def. 11/18/19 Not. of Mot., ECF No. 106); (2) Plaintiff's motion, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the "Counter Claim Verified Complaint" ("Counterclaims") filed by Defendant (Pl. 12/17/19 Not. of Mot., ECF No. 131); (3) Plaintiff's motion, pursuant to Rule 20(a)(2) of the Federal Rules of Civil Procedure, to add Marcus Conte as a defendant (Pl. 12/26/19 Not. of Mot., ECF No. 132); (4) Plaintiff's letter motion, pursuant to Rule 15 of the Federal Rules of Civil Procedure, for leave to amend the SAC (Pl. 1/3/20 Ltr. Mot., ECF No. 134); (5) Plaintiff's letter motion to add Kerry Wolf as a defendant (Pl. 1/6/20 Ltr. Mot., ECF No. 135); (6) non-party Conte's motion, pursuant to Rule 24 of the Federal Rules of Civil Procedure, to intervene as a plaintiff in this case (Conte Ltr. Mot.,

ECF No. 136); and (7) Plaintiff's letter motion to add counts of mail fraud and wire fraud against Conte. (Pl. 1/15/20 Ltr. Mot., ECF No. 137.)

For the following reasons, I respectfully recommend (1) that Defendant's motion to dismiss the SAC be GRANTED IN PART and DENIED IN PART; (2) that Plaintiff's motion to dismiss Defendant's Counterclaims be GRANTED IN PART and DENIED IN PART; and (3) that Plaintiff's motions to amend be DENIED. In addition, I hereby ORDER that the remaining motions are DENIED.

## BACKGROUND

In his SAC which is the subject of Goodman's motion to dismiss, Sweigert "accepts the version of facts and case history" set forth in the Order and Opinion of District of South Carolina Judge Gergel, dated September 17, 2018 ("9/17/18 Order"), and the Memorandum Order of Judge Caproni, dated August 20, 2019 ("8/20/19 Order"). (*See* SAC, ECF No. 88, at 2.) Judge Gergel set forth the following:

> [Sweigert] is a pro se litigant claiming in part that Defendant Goodman, along with his companies Multimedia System Design, Inc. and/or Crowd Source the Truth ("CSTT"), is violating the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, by coordinating to "stag[ e] fake news" relating to an alleged 2017 bomb threat hoax in Charleston, South Carolina. (Dkt. No. 5 at 8.) Plaintiff alleges that he is a California licensed Emergency Medical Technician who has been "targeted" by CSTT and its "community of racketeering operators" for publishing a "white paper about the defendant." (*Id*. at 1, 9.) Plaintiff contends that Defendant, a Manhattan resident, and others are "injecting themselves into the plaintiffs affairs . . . to destroy his life." (*Id*. at 9, 14.)

(9/17/18 Order, ECF No. 27, at 1-2.)

Judge Caproni set forth the following:

> Plaintiff, acting *pro se*, brought this action in the United States District Court for the District of South Carolina, which transferred it to this Court. Dkt. 1. Among numerous other filings, Plaintiff has submitted an amended complaint, sixteen

requests for judicial notice, two motions for preliminary injunction, a motion for a gag order, and two motions for leave to file a proposed second amended complaint. After Plaintiff filed the amended complaint, Defendant filed a motion to dismiss, an answer, and multiple counterclaims; Plaintiff then moved to strike the answer and the motion to dismiss and to dismiss the counterclaims. All told, the parties have filed over twenty frivolous motions in short order, most of which were submitted before the undersigned was even assigned to the case, prompting the Court to order the parties to file no more motions (Dkt. 65) pending resolution of the Court's order to show cause why the case should not be dismissed. That order preventing further motions was not obeyed. *See*, *e.g.*, Dkts. 71, 73-74, 77-81, 83-86.

In the amended complaint and proposed second amended complaint, Plaintiff recounts a convoluted history of Defendant, an operator of a YouTube channel, accusing Plaintiff of committing wildly implausible acts. *See generally* Amended Compl. (Dkt. 5); Proposed Second Amended Compl. (Dkt. 56-1). On the basis of Defendant's facially ridiculous statements on YouTube, which include, among other things, an accusation that Plaintiff used a microwave weapon to explode someone's lung and that Defendant has influence over the Federal Bureau of Investigation (FBI), Plaintiff, as a private citizen, now seeks to impose civil and criminal liability on Defendant for allegedly participating in a racketeering organization and violating numerous federal and state criminal laws.

(8/20/19 Order, ECF No. 87, at 1-2.)

Judge Caproni dismissed all of Sweigert's claims based upon alleged violations of criminal laws for lack of standing and also dismissed his sole civil claim, which was brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), for failure to state a claim. (8/20/19 Order at 13.) However, because she found that Sweigert "may be able to assert at least some plausible claims in a properly constructed complaint," Judge Caproni gave Sweigert leave to further amend his pleading within 21 days. (*Id*. at 1.)

On September 10, 2019, Sweigert filed his 72-page SAC. In the SAC, Sweigert alleges that "Goodman, via CSTT properties, has purposefully and maliciously engaged in defamation per se, libel and slander against [Sweigert] using continuous non-stop weekly broadcasts on his CSTT branded social media outlet that feature perverse images of [Sweigert], allegations of criminal

conduct, etc." (SAC ¶ 3 (emphasis omitted).) Sweigert further alleges that Goodman has used Sweigert's likeness "to sell  coffee cups, tote bags, T-shirts, etc. on the merchandising site 'RedBubble.com.'" (*Id*. ¶ 91.) Sweigert asserts four claims against Goodman: (1) a claim under Sections 349 and 350 of the New York General Business Law (*id*. ¶¶ 29-67); (2) a claim for defamation and defamation per se (*id*. ¶¶ 68-87); (3) a claim under Sections 50 and 51 of the New York Civil Rights Law (*id*. ¶¶ 88-110); and (4) a claim for negligent and intentional infliction of emotional distress. (*Id*. ¶¶ 111-22.) On November 18, 2019, Goodman filed his motion to dismiss the SAC. (Def. 11/18/19 Not. of Mot.) On November 27, 2019, Sweigert filed papers in opposition to Goodman's motion on the docket at ECF Nos. 113 to 116.

On December 5, 2019, Goodman filed his Counterclaims (Counterclaims, ECF No. 122.) Goodman asserts the following theories of recovery: defamation, aggravated harassment and civil conspiracy. (*Id*. ¶¶ 75-80.) Mirroring Sweigert's defamation claims against Goodman, Goodman alleges in his Counterclaims against Sweigert that Sweigert made false and defamatory statements about Goodman. (*See id*. ¶ 1.) On December 17, 2019, Sweigert filed a motion to dismiss Goodman's Counterclaims. (Pl. 12/17/19 Not. of Mot.)

On December 26, 2019, Sweigert filed a motion to add Marcus Conte as a defendant alleging in substance that Conte, like Goodman, had made false and defamatory statements about Sweigert. (*See* Pl. 12/26/19 Mem., ECF No. 133, at 1-8.) On January 3, 2020, Sweigert filed a letter motion to amend the SAC in order to "clarify" his emotional distress claims and to "align" allegations against Goodman and Conte. (Pl. 1/3/20 Ltr. Mot. ¶¶ 3-4.) On January 6, 2020, Sweigert filed a letter motion to add Wolf as a defendant because she "aligned herself" with Conte. (Pl. 1/6/20 Ltr. Mot. ¶ 1.) On January 8, 2020, Conte filed a motion to intervene as a

plaintiff in this case because his claims against Sweigert "are nearly identical to those contained in the" SAC. (Conte Ltr. Mot.) On January 15, 2020, Plaintiff filed a letter motion to amend to add counts of mail fraud and wire fraud against Conte. (Pl. 1/15/20 Ltr. Mot. ¶ 9.)

## MAGISTRATE JUDGE AUTHORITY

Motions to dismiss are dispositive motions as to which a Magistrate Judge is required to make a report and recommendation to the District Judge. *See* Fed. R. Civ. P. 72(b)(1). Although generally, motions for leave to amend are considered to be nondispositive and subject to review under the "clearly erroneous or contrary to law" standard of Rule 72(a) of the Federal Rules of Civil Procedure, *see Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007) ("[a]s a matter of case management, a district judge may refer nondispositive motions, such as a motion to amend the complaint, to a magistrate judge for decision without the parties' consent"), where a Magistrate Judge's decision on a motion to amend effectively dismisses or precludes a claim, the motion to amend is rendered dispositive. *See*, *e.g.*, *Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 25 (2d Cir. Feb. 8, 2012). Because they are nondispositive motions, a Magistrate Judge can rule on a motion to intervene, *see Grewal v. Cueno*, No. 13-CV-06836 (RA) (HBP), 2014 WL 2095166, at *1 (S.D.N.Y. May 20, 2014), or a motion to join an additional party under Rule 20(a), *see Hatemi v. M&T Bank Corp.*, No. 13-CV-1103 (HBS), 2015 WL 13549199, at *1 (W.D.N.Y. Mar. 5, 2015), and is not limited to recommending a disposition.

## RECOMMENDATIONS ON MOTIONS TO DISMISS

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

Where, as here, a plaintiff proceeds *pro se*, the court must "construe[ ] [his] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

I.   **Motion To Dismiss SAC**

A.   **Sections 349 & 350 of N.Y. General Business Law (Plaintiff's First Claim)**

Section 349 of the New York General Business Law prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]" N.Y. Gen. Bus. Law § 349(a).[1] To maintain an action under N.Y.G.B.L. § 349, a plaintiff

---

[1] Section 350 of the New York General Business Law prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." "The standard for recovery under General Business Law Section 350, while specific to false advertising, is otherwise identical to Section 349." *Oscar v. BMW of North America, LLC*, 274 F.R.D. 498, 512 (S.D.N.Y. 2011) (citation omitted).

must allege that the "defendant's acts or practices . . . [had] a broad impact on consumers at large." *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 309 (1995); *see also Blake Marine Grp., LLC v. Frenkel & Co.*, No. 18-CV-10759 (AT), 2020 WL 704103, at *5 (S.D.N.Y. Feb. 11, 2020). Where a plaintiff's injury is private, it falls outside the ambit of N.Y.G.B.L. § 349. *See Blake Marine Grp., LLC*, 2020 WL 704103, at *6.

Plaintiff alleges that Defendant has "misled the public" about CSTT and that Defendant has engaged in "deceptive business practices as part of a ruthless quest" to harm Plaintiff and "to disrupt every aspect of Plaintiff's life." (SAC ¶¶ 50, 52, 53.) The Court finds that this alleged conduct by Defendant falls outside the ambit of Sections 349 and 350 of the New York General Business Law. Even assuming Defendant's conduct were the type of conduct that these sections of the General Business Law was designed to protect, the injury that Plaintiff alleges here is private. *See Blake Marine Grp., LLC*, 2020 WL 704103, at *6 (dismissing N.Y.G.B.L. § 349 claim because harm alleged was to plaintiff, not consumers at large). Thus, the Court recommends that Defendant's motion to dismiss Plaintiff's First Claim be granted that that Plaintiff's First Claim be dismissed with prejudice.

### B.   Defamation And Defamation Per Se (Plaintiff's Second Claim)

"Defamation in word or print is cognizable in an action for libel." *Rosenberg v. MetLife, Inc.*, 453 F.3d 122, 123 n.1 (2d Cir. 2006). "To state a claim for defamation under New York Law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Gargiulo v. Forster & Garbus, Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y.2009) (citation omitted).

"Special damages consist of 'the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation[.]'" *Celle v. Filipino Reporter Enters. Inc*., 209 F.3d 163, 179 (2d Cir. 2000) (quoting *Matherson v. Marchello*, 100 A.D.2d 233 (2d Dep't 1984)). Special damages "must be fully and accurately stated, with sufficient particularity to identify actual losses." *Id*. (quotation marks and citations omitted). Under New York law, statements that are defamatory *per se* are actionable without "'pleading and proof of special damages.'" *Id*. (quoting *Davis v. Ross*, 754 F.2d 80, 82 (2d Cir. 1985)). A plaintiff alleges defamation *per se*, and thus need not also allege special harm, if the false statement of fact (i) "charg[es] plaintiff with a serious crime," (ii) "tend[s] to injure [plaintiff] in his or her trade, business or profession," (iii) imputes to plaintiff a "loathsome disease," or (iv) imputes " 'unchastity to a woman.'" *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 165 (E.D.N.Y. 2014) (quoting *Zherka v. Amicone*, 634 F.3d 642, 645 n.6 (2d Cir. 2011) ).

In the present case, Plaintiff's Second Claim refers to a hodgepodge of screenshots, links to internet pages, texts of emails and purported transcripts of video content that Plaintiff alleges are defamatory.[2] (*See* SAC ¶¶ 68-110.) The SAC contains statements made by Defendant to third parties which state that Plaintiff is mentally ill and that Plaintiff has engaged in criminal activity. (*See id*. ¶¶ 71-74.) Plaintiff does not allege any special damages, but asserts that Defendant's statements constitute defamation *per se*. (*See id*. ¶ 69.) Construing the allegations in the light most favorable to Plaintiff, he has adequately alleged that Defendant made false statements

---

[2] Certain of the purportedly defamatory statements were not made by Defendant, but were made by others. (*See*, *e.g*., SAC ¶ 72 (statements attributed to Hawkins).) Obviously, Defendant cannot be liable for statements made by others.

about him that would tend to injure him in his business. Thus, I recommend that the Court deny

Defendant's motion to dismiss Plaintiff's Second Claim.

###    C.   New York Civil Rights Law (Plaintiff's Third Claim)

"New York does not recognize a common-law right of privacy." *Messenger ex rel.*

*Messenger v. Gruner + Jahr Printing & Pub.*, 94 N.Y.2d 436, 441 (2000). By enacting Sections 50

and 51 of the New York Civil Rights Law, however, the New York legislature sought to "provide a

limited statutory right of privacy." *Id*. Section 50 of the Civil Rights Law makes it a misdemeanor

for a person to "use[] for advertising purposes, or for the purposes of trade, the name, portrait

or picture of any living person without having first obtained the written consent of such person

. . . .." N.Y. Civ. Rights Law § 50 (McKinney 2012). Section 51 provides:

> Any person whose name, portrait, picture or voice is used within this state for
> advertising purposes or for the purposes of trade without the written consent first
> obtained as above provided [in Section 50] may maintain an equitable action in
> the supreme court of this state against the person, firm or corporation so using
> his name, portrait, picture or voice, to prevent and restrain the use thereof; and
> may also sue and recover damages for any injuries sustained by reason of such
> use and if the defendant shall have knowingly used such person's name, portrait,
> picture or voice in such manner as is forbidden or declared to be unlawful by
> section fifty of this article, the jury, in its discretion, may award exemplary
> damages. . . .

N.Y. Civ. Rights Law § 51 (McKinney 2012). The New York Court of Appeals has made clear that

the prohibitions set forth in Sections 50 and 51 of the Civil Rights Law "are to be strictly limited

to nonconsensual commercial appropriations of the name, portrait or picture of a living person,"

and "prohibit the use of pictures, names or portraits 'for advertising purposes or for the purposes

of trade' only, and nothing more." *Finger v. Omni Publ'ns Int'l, Ltd.*, 77 N.Y.2d 138, 141 (1990)

(quoting *Arrington v. New York Times Co.*, 55 N.Y.2d 433, 439 (1982)).

To prevail on a statutory right to privacy claim pursuant to the New York Civil Rights Law, a plaintiff must prove: "(1) use of plaintiff's name, portrait, picture or voice (2) 'for advertising purposes or for the purposes of trade' (3) without consent and (4) within the state of New York." *Hoepker v. Kruger,* 200 F. Supp. 2d 340, 348 (S.D.N.Y. 2002) (quoting *Titan Sports, Inc. v. Comics World Corp.*, 870 F.2d 85, 87 (2d Cir. 1989)).

The SAC contains images that reflect pictures of Plaintiff on merchandise being sold online (*i.e.*, on a coffee mug and a tote bag). (SAC ¶ 95.) The SAC also references podcasts in which pictures of Plaintiff and Plaintiff's name are displayed. (*See id.* ¶ 97.) The SAC alleges that these pictures of Plaintiff were used by Defendant for purposes of advertising or trade without Plaintiff's consent in the State of New York. (*Id.* ¶ 98.) Accepting the factual allegations of the SAC as true, the Court finds that Plaintiff has stated a claim under the New York Civil Rights Law and thus recommends that Defendant's motion to dismiss Plaintiff's Third Claim be denied.

### D. Intentional Or Negligent Infliction Of Emotional Distress (Plaintiff's Fourth Claim)

"Under New York law, a claim for intentional infliction of emotional distress must satisfy an 'exceedingly high legal standard.'" *DiRuzza v. Lanza*, 685 F. App'x 34, 36 (2d Cir. 2017) (quoting *Chanko v. Am. Broad. Cos. Inc.*, 27 N.Y.3d 46, 57 (2016)); *see also Howell v. New York Post Co.*, 81 N.Y.2d 115, 122 (1993) ("[O]f the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous."). First, the tort "may be invoked only as a last resort, to provide relief in those circumstances where traditional theories of recovery do not." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (citation and quotation marks omitted). Second, a party alleging intentional infliction must plead and prove conduct "so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, [so as] to be regarded as atrocious, and utterly intolerable in a civilized community." *Chanko*, 27 N.Y.3d at 56. The elements of an action for negligent infliction of emotional distress are a "breach of a duty owed to [the] plaintiff which exposes him or her to an unreasonable risk of bodily injury or death." *Castanza v. Town of Brookhaven*, 700 F.Supp.2d 277, 293 (E.D.N.Y.2010). Extreme and outrageous conduct is also an element of negligent infliction of emotional distress. *Franco v. Diaz*, 51 F. Supp. 3d 235 (E.D.N.Y. 2014).

The portion of the SAC devoted to Plaintiff's Fourth Claim references videos produced and distributed by Defendant that "tangentially linked [Plaintiff's] father and his invention of the cordless phone to the murder of Jon-Benet Ramsey," since her father "supposedly used a cordless telephone to call the police." (*See* SAC ¶¶ 117-18.) The SAC also references a video in which Defendant purportedly makes derogatory statements about Plaintiff. (*See id*. ¶ 122.) Regardless of how ridiculous and/or insulting Defendant's statements about Plaintiff (and his father) may have been, the Court finds that they do not form the basis for a claim for intentional or negligent infliction of emotional distress.

Assuming the truth of Plaintiff's allegations, and assuming they can be properly pled, there are traditional legal theories available to Plaintiff (*e.g.*, based on defamation) for the statements made about Plaintiff. Plaintiff has not met the exceedingly high legal standard to plead a claim for intentional infliction of emotional distress. Moreover, Defendant's conduct has not exposed Plaintiff to an unreasonable risk of bodily injury or death, as required to state a claim for negligent infliction of emotional distress. Thus, the Court recommends that Defendant's motion to dismiss Plaintiff's Fourth Claim be dismissed with prejudice.

II.     **Motion To Dismiss Defendant's Counterclaims**

    A.   **Defamation (Count 1)**

In Count 1 of Defendant's Counterclaims, he alleges that Plaintiff made false and defamatory statements about him. (*See* Counterclaims ¶¶ 75-77.) Defendant makes allegations regarding letters and emails that Plaintiff sent to Defendant's "key business associates" and others that accuse Defendant of having committed crimes. (*Id*. ¶¶ 70-73.) Plaintiff asserts in his motion to dismiss Defendant's Counterclaims that Defendant has failed to provide specificity regarding the defamatory statements that Plaintiff made. (*See* Pl. 12/17/19 Not. of Mot. at 16 ("No dates, times, names, organizations or relevancy is provided . . ..."). However, unlike the New York state procedural rules, Federal Rule of Civil Procedure 8 does not require specificity for defamation claims.

> The Federal Rules of Civil Procedure require less particularity in pleading defamation than New York law requires. In fact, "the mode of pleading defamation is governed by Rule 8 [of the] Fed.R.Civ.P., which requires only that plaintiffs charges be set forth in a short and concise statement, detailed only to the extent necessary to enable defendant to respond and to raise the defense of res judicata if appropriate." . . .. Contrary to defendants' arguments, the pleading need not allege the specific defamatory words, . . ., or the time, place, and speaker of each defamatory statement. . . .

*Regal Custom Clothiers, Ltd. v. Mohan's Custom Tailors, Inc*., No. 96-CV-06320 (SS), 1997 WL 370595, at *8 (S.D.N.Y. July 1, 1997) (Sotomayor, J.) (citations omitted). *See also Pasqualini v. MortgageIT, Inc*., 498 F. Supp. 2d 659, 672 (S.D.N.Y. 2007) (citing *Regal Custom Clothiers*).

Construing the allegations in the light most favorable to Defendant, he adequately has alleged that Plaintiff made false statements about him that would tend to injure him in his business. Thus, I recommend that the Court deny Plaintiff's motion to dismiss Count 1 of Defendant's Counterclaims.

B.  **Aggravated Harassment (Count 2)**

Count 2 of Defendant's Counterclaims purports to state a claim for aggravated harassment pursuant to Section 240.30 of the New York Penal Law. (*See* Counterclaim ¶¶ 78-79.) However, as Judge Caproni previously held in this case, "[a] private citizen may not prosecute a criminal action in federal court." (8/20/19 Order at 6 (citation omitted).) Thus, I recommend that Count 2 of Defendant's Counterclaims be dismissed.

C.  **Civil Conspiracy (Count 3)**

In Count 3 of his Counterclaims, Defendant correctly sets forth the New York law regarding civil conspiracy. (*See* Counterclaims ¶ 80.) As Defendant states, there is no independent tort of conspiracy. (*See id.*) And, as Defendant notes, to establish a claim for civil conspiracy, Defendant "must demonstrate [a] primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." (*See id.* (citing *World Wrestling Fed'n Entm't, Inc. v. Bozell*, 142 F. Supp. 2d 514, 532 (S.D.N.Y. 2001).)

Here, as set forth above, the Court finds that Defendant has pled a primary tort, *i.e.*, the tort of defamation. However, the Court also finds that Defendant has not pled conspiracy allegations (*e.g.*, agreement, overt act, intentional participation and resulting damage). Rather, Defendant merely recites the required elements for conspiracy without any facts to support such elements. (*See* Counterclaims ¶ 80.) In any event, Defendant's civil conspiracy counterclaim arises out of the same conduct as his defamation claim and thus is redundant. *See Am. Baptist Churches of Metro. New York v. Galloway*, 271 A.D.2d 92, 101 (1st Dep't 2000) (civil conspiracy

cause of action dismissed as redundant). Thus, the Court recommends that Count 3 of Defendant's Counterclaims be dismissed.

## RECOMMENDATIONS ON MOTIONS TO AMEND

Plaintiff seeks to amend his SAC as follows: (1) to "clarify" his emotional distress claims and to "align" allegations against Defendant and Conte (Pl. 1/3/20 Ltr. Mot. ¶¶ 3-4.); and (2) to add counts of mail fraud and wire fraud against Conte in order to plead a RICO claim. (*See* Pl. 1/15/20 Ltr. Mot. ¶ 9.) The Court recommends that both of these letter motions be denied.

Plaintiff wished to "clarify" his emotional distress claims because they were "awkwardly stated and blended into" a single paragraph of the SAC. (Pl. 1/3/20 Ltr. Mot. ¶ 3.) However, any amendment clarifying the emotional distress claims would be futile. As set forth above, the Court has separately analyzed Plaintiff's claims for intentional infliction of emotional distress and negligent infliction of emotional distress and found that Plaintiff has not stated a claim for either. Thus, there is no need to "clarify" such claims. Moreover, there is no need to "align" allegations against Defendant and Conte since, as set forth below, the Court is denying Plaintiff's motion to add Conte as a defendant, as well as Conte's motion to intervene. *See infra*.

Plaintiff's motion to add counts of mail fraud and wire fraud against Conte should be denied. Again, the court is denying Plaintiff's motion to add Conte as a defendant, as well as Conte's motion to intervene. Thus, the motion to amend to add claims against Conte is moot.[3]

---

[3] In any event, Judge Caproni previously dismissed Plaintiff's RICO claims against Defendant on numerous grounds, including a lack of injury from the purported racketeering activity. (*See* 8/20/19 Order at 7-12.) Plaintiff has not articulated any reason why his RICO claims against Conte, if he were given leave to assert them, would fare any better than his RICO claims against Defendant.

## ORDERS ON MOTIONS TO ADD PARTIES AND TO INTERVENE

**I.     Plaintiff's Motions To Add Parties**

Plaintiff seeks to add Marcus Conte as a defendant in this case alleging, in substance, that Conte, like Goodman, had made false and defamatory statements about Sweigert (*see* Pl. 12/26/19 Mem. at 1-8), and seeks to add Wolf as a defendant because she "aligned herself" with Conte. (Pl. 1/6/20 Ltr. Mot. ¶ 1.) Rule 20 of the Federal Rules of Civil Procedure provides that a person may be added as a defendant if any right to relief against them arises out of the same transaction or occurrence and any question of law or fact common to all defendants will arise in the action. See Fed. R. Civ. P. 20(a).

> Fulfillment of the specific requirements of Rule 20, however, is not enough to warrant granting [a Rule 20] motion. . . . Permissive joinder rests with the "sound discretion of the Court, which must determine if joinder 'will comport with the principles of fundamental fairness.'" . . . A district court may deny a motion for joinder where the addition of the defendants would cause prejudice, expense, and delay by opening up a "Pandora's box" of discovery.

*Travelers Indem. Co. of Connecticut v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 565 (S.D.N.Y. 2001) (citations omitted).

In the present case, I recommend that the Court, in its discretion, deny Plaintiff's motion to add additional parties. This case was filed in June 2018, involves two *pro se* parties and has over 130 docket entries. Conte, who himself seeks to intervene in this case (*see infra*), also is *pro se*. Adding additional defendants to this case, at least one of whom will be *pro se*, would cause undue delay and would be antithetical to the efficient administration of justice.

**II.     Conte's Motion To Intervene**

Conte seeks to intervene in this case because Plaintiff allegedly made frivolous and defamatory statements about Conte on YouTube. (Conte Ltr. Mot.) Based upon Conte's letter

motion, it is clear that Conte is not seeking to intervene as of right, pursuant to Rule 24(a) of the Federal Rules of Civil Procedure,[4] but rather is seeking permissive intervention, pursuant to Rule 24(b). Rule 24(b) provides in relevant part that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "The district court's discretion on a permissive intervention motion is 'very broad.'" *Rudolph v. Hudsons Bay Co*., No. 18-CV-08472 (PKC), 2019 WL 1416986, at *2 (S.D.N.Y. Mar. 29, 2019) (citing *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc*., 797 F.2d 85, 89 (2d Cir. 1986)).

Conte has not established that he shares a common question of law or fact with the main action. Rather, he merely alleges that Plaintiff made defamatory statements about Conte. This is not sufficient for Conte to intervene in this case. Even if there were common questions of law or fact between Conte's claims against Plaintiff and Plaintiff's claims against Defendant, the Court recommends that Conte's motion be denied in the Court's discretion. Again, this is a 2018 case being hotly contested by two *pro se* litigants. The addition of a third *pro se* litigant will serve to unnecessarily multiply these proceedings.

*          *          *

One final note: It seems to the Court that the parties are not heeding Judge Caproni's admonition in her August 13, 2019 Memorandum Order that "they are proceeding in a federal court, not YouTube, and are therefore warned not to waste judicial resources with the filing of

---

[4] A court must permit intervention under Rule 24(a) only when the proposed intervenor "(1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Neither circumstance is present here.

frivolous claims or motions." (8/20/19 Order at 13.) The parties once again are warned not to waste judicial resources by filing frivolous claims or motions. Failure to heed these warnings in the future may result in the imposition of sanctions.

## CONCLUSION

For the foregoing reasons, I respectfully recommend, as follows:

(1) that Defendant's motion to dismiss the SAC (ECF No. 106) be GRANTED IN PART and DENIED IN PART, and that the First and Fourth Claims of the SAC be dismissed;

(2) that Plaintiff's motion to dismiss the Defendant's Counterclaims (ECF No. 131) be GRANTED IN PART and DENIED IN PART, and that Count 2 and Count 3 of the Counterclaims be dismissed; and

(3) that Plaintiff's motions to amend (ECF Nos. 134 & 137) be DENIED.

In addition, I hereby ORDER that the remaining motions (ECF Nos. 132, 135 & 136) are DENIED.

The Clerk of Court is respectfully requested to mail a copy of this Report and Recommendation and Order to the *pro se* parties. My Chambers shall mail a copy of this Report and Recommendation and Order to non-party Conte at his address set forth in ECF No. 136.

DATED:      New York, New York
            March 2, 2020

_____
STEWART D. AARON
United States Magistrate Judge

\*           \*           \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation and Order to file written objections to those portions addressing the motions to dismiss and amend (ECF Nos. 106, 131, 134 & 137), pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Caproni.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).