UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
  D. GEORGE SWEIGERT,                              :
                                                            CIVIL CASE #: 1:18-CV-08653-VEC
                                Plaintiff,          :
                                                            JUDGE VALERIE E. CAPRONI
                  v.                                :
                                                            MAGISTRATE STEWART D. AARON
  JASON GOODMAN,                                    :

                                Defendant           :
-------------------------------------------------------X   :

RECEIVED
SDNY PRO SE OFFICE
2020 MAR 10 AM 11: 50

**PLAINTIFF'S OPPOSITION TO THE MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION ISSUED MARCH 2, 2020 (ECF. DOC. 138)**



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3-10-20

1

## TABLE OF CONTENTS

Contents

**PRELIMINARY STATEMENT**................................................................................5

*THE DEFENDANT'S CIVIL CONSPIRACY CLAIM* ........................................6

*PLAINTIFF'S IIED CLAIM* ...............................................................................8

**UNDISPUTED FACTS**........................................................................................8

*BLACK CUBE COFFEE CUP* ...........................................................................9

*REDBUBBLE.COM DESIGNS AS PART OF IIED SMEAR CAMPAIGN* ...........12

*CONTINUOUS CONFLATING PLAINTIFF WITH CO-CONPIRATORS*............15

**LEGAL ARGUMENT**.........................................................................................27

*FAILURE TO PROVIDE PLAINTIFF WITH ADEQUATE NOTICE*....................28

*THE BULK OF DEFAMATION CLAIMS ARE TIME BARRED* ..........................30

*IIED CLAIMS BASED ON SMEAR CAMPAIGNS HAVE BEEN UPHELD IN THIS DISTRICT* .........31

**CONCLUSION**....................................................................................................33

# TABLE OF AUTHORITIES

## Cases

*Aaron Rich v. Ed Butowsky and Matthew Couch*, No. 18-81 (RJL), D.D.C. ..................................................9

*Ashcroft v. Iqbal, 556* U.S. 662, 678 (2009) ...........................................................................7

*Bauman v. Butowsky*, 377 F. Supp. 3d 1 (D.D.C. 2019) .................................................................18

*Bianchi v. Green*, 1:18-cv-619 (GLS/DJS) (N.D.N.Y. Mar. 29, 2019) .................................................5

*Butowsky v. Gottlieb*, 4:19-CV-0180 (E.D. Tex. June 18, 2019) ......................................................18

*Doe v. Doe,* No. 16 Civ. 0332 (NSR) (S.D.N.Y. July 14, 2017)........................................................28

Fed. Rule Civ. Proc. Rule 8(a) .....................................................................................................21

*Fta Mkt. Inc. v. Vevi, Inc.,* 11 CV 4789 (VB) (S.D.N.Y. Feb. 1, 2012) ...........................................31

*Howell v. N.Y. Post Co., Inc.,* 596 N.Y.S.2d 350, 353 (N.Y. 1993).................................................14

*Krehan v. Held's Janitorial Serv., Inc.*, 12-CV-160S (W.D.N.Y. Sep. 12, 2012).............................30

*Regal Custom Clothiers, Ltd. v. Mohan's Custom Tailors, Inc.*, No. 96 Civ. 6320, 1997 WL 370595, at *8

    (S.D.N.Y. July 1, 1997)...............................................................................................27

*Rich et al v. Fox News Network LLC et al,* 1:18-cv-02223-GBD-SN (S.D.N.Y.) .........................18

*Rich v. Butowsky,* 1:18-cv-00681-RJL (D.D.C. 2018)...................................................................18

*Rich v. Fox News Network, LLC*, 939 F.3d 112 (2d Cir. 2019) ......................................... passim

*Sebastiani v. Brooklyn Hosp. Ctr.*, 19-CV-253 (PKC) (ST) (E.D.N.Y. July 19, 2019)...................27, 28

*Steele v. Goodman*, No. 3:17-cv-601, 2019 WL 3367983, (E.D. Va. July 25, 2019) ...................8

*Turley v. ISG Lackawanna, Inc.,* 774 F.3d 140, 157-62 (2d Cir. 2014)..........................................33

## Statutes

N.Y. Civ. Rights Law § § 50 and 51 .............................................................................................13

Other Authorities

N.Y. C.P.L.R. § 215 ..................................................................................................................31

Rules

Fed. Rules Civ. Proc. Rule 8(a)...........................................................................................5, 7, 27

Fed. Rules Civ. Proc. Rule 8(a)(2) ............................................................................................28

Federal Rules of Civil Procedure Rule 8(a) ........................................................................5, 20

Treatises

**Fox News reporter and right-wing conspiracy theorists planned to wiretap family of slain DNC**

   **staffer Seth Rich: report, 2/17/2020**.............................................................................17

How a Conspiracy Theorist's Call About a Dirty Bomb Shut Down Part of a Port, June 15, 2017, New

   York Times.................................................................................................................22

How a conspiracy theory closed part of a major US seaport, June 16, 2017, CNN Business....................23

Report: The Port of Charleston Dirty Bomb Hoax and Social Media Liability Paperback – April 14, 2018

   ..........................................................................................................................24, 31

**Right-Wing Activists Discussed Wiretapping Seth Rich's Family, Three People in the Room Say,**

   **2/17/2020**.................................................................................................................18

## PRELIMINARY STATEMENT

1.      On March 2, 2020, the Magistrate Judge (Stewart D. Aaron) released his Report and

Recommendation (R&R), ECF Doc. No. 138.  The Magistrate Judge has appropriately noted the

more liberal pleading requirements of the Federal Rules of Civil Procedure Rule 8(a) applied to

defamation cases in contrast to New York State's heightened pleading requirements (which are

procedural in nature).  However, Rule 8(a) can act as a two-edged sword: (1) relaxed pleading

requirements for the Defendant (Def.) and (2) adequate notice requirements for the Plaintiff.  The

Plaintiff is entitled adequate notice of plausible and coherent allegations as provided for by Fed.

Rules Civ. Proc. Rule 8(a).  This situation is prejudicial to the Plaintiff as Rule 8(a)(2) requires

the Plaintiff receive adequate notice of Def's claims to prepare a defense.

2.      For the reasons stated herein, the Plaintiff OBJECTS to those aspects of the Magistrate

Judge's R&R that would leave the Def.'s counter-claim for defamation standing.  As stated in

the R&R, "[c]onstruing the allegations in the light most favorable to Defendant, he adequately

has alleged that Plaintiff made false statements about him that would tend to injure him in his

business…(page 12)".  The Plaintiff objects to the foregoing statement on the following grounds:

> "See *Ashcroft v. Iqbal, 556* U.S. 662, 678 (2009) (holding at motion to dismiss stage
> claim has facial plausibility where factual content allows court to draw reasonable
> inference that defendant is liable for misconduct)" *Bianchi v. Green,* 1:18-cv-619
> (GLS/DJS) (N.D.N.Y. Mar. 29, 2019)

3.      The Plaintiff OBJECTS to the recommendation in the R&R that the Plaintiff's intentional

infliction of emotional distress (I.I.E.D.) claims should be dismissed.    Specifically,

"[m]oreover, Defendant's conduct has not exposed Plaintiff to an unreasonable risk of bodily

injury or death, as required to state a claim for negligent infliction of emotional distress.".  The

Plaintiff objects to the foregoing statement on the following grounds:

> "Under New York law, although "[t]he standard of outrageous conduct is strict, rigorous
> and difficult to satisfy ..., that is not the case when there is a deliberate and malicious
> campaign of harassment or intimidation." Scollar v. City of New York , 160 A.D.3d 140,
> 74 N.Y.S.3d 173, 178 (1st Dep't 2018) (internal quotations omitted). To be sure, "it is
> manifestly neither practical nor desirable for the law to provide[ ] a remedy against any
> and all activity which an individual might find annoying." Nader v. Gen. Motors Corp .,
> 25 N.Y.2d 560, 307 N.Y.S.2d 647, 255 N.E.2d 765, 770 (1970). At the same time,
> "where severe mental pain or anguish is inflicted through a deliberate and malicious
> campaign of harassment or intimidation," IIED provides a remedy. Id. In other words,
> under New York law, the proper inquiry is not merely whether each individual act might
> be outrageous. Rather, the question is whether those actions—under the totality of the
> circumstances—amounted to a deliberate and malicious campaign." *Rich v. Fox News
> Network, LLC*, 939 F.3d 112 (2d Cir. 2019)

4.      The Plaintiff accepts and does not oppose all other the remaining findings (other those

with stated opposition above) in the R&R (ECF. 138).

### THE DEFENDANT'S CIVIL CONSPIRACY CLAIM

5.      The Magistrate Judge's R&R recommended the dismissal of Def.'s civil conspiracy

claims; but those claims are inextricably intertwined with the Def's surviving defamation claim.

See "COUNT 3 CIVIL CONSPIRACY" allegations [ECF 122]).  The surviving defamation

claims of the Def. can not stand without the foundationless underlying civil conspiracy claims.

Both the civil conspiracy claims, and defamation claims should have been recommended for

dismissal in the R&R (ECF. 138).

6.      (COUNT 1 DEFAMATION [ECF. 122]).  The Def's accompanying defamation claims,

which are intrinsically and extricable intertwined to the civil conspiracy claims, should be

completely ignored as they insufficient in providing this Court "factual content" that "allows"

this "court to draw reasonable inference that defendant is liable for misconduct" *Ashcroft v.*

*Iqbal, 556* U.S. 662, 678 (2009).

7.      As the Court is aware, Defendant (Def.) has a long history of conflating the Plaintiff with

a group of "co-conspirators" (joint tortfeasors) related to Def. Goodman's Virginia lawsuit.  In

his pleading (ECF Doc. No. 122, 12/5/2019) Def. Goodman seeks to hold the Plaintiff

responsible for statements made by other parties that have nothing to do with the Plaintiff.  The

Plaintiff is nothing more than a convenient target, as Def. should already possess much of the

information needed to state a cognizable claim but doesn't.

8.      The Def.'s conspiracy defamation claims are applied to the Plaintiff in a slap dash

incoherent manner, which do not meet the test of Fed. Rules Civ. Proc. Rule 8(a) (allowing for

adequate notice to an **individual** Plaintiff – not a blob of joint tortfeasors).  Other examples in

Def.'s counter-claim papers (ECF. 122)

- Def. rehashes a pointless call in social media podcast show (para. 8 & 9) that represents a "conspiracy" between alleged joint tortfeasors Tyroan Simpson, Manuel Chavez, III (aka DEFANGO) and Nathan Stolpman (aka Lift The Veil).  No actionable claim is cited.

- Def. spends two paragraphs (para. 13 & 14, ECF 122) discussing Tyroan Simpson, aka "Frank Bacon", with whom the Plaintiff has no contact or association.  No actionable claim cited.

- Def. complains that the Plaintiff attempted to intervene in the Virginia lawsuit (para. 15) which is not a tortious act.

- Def. complains that the Plaintiff operates a counter-speech blog to defend himself from Def.'s attacks.  No actionable claim cited.

- Def. accuses Plaintiff of using his knowledge of military radio communications (essentially glorified ham radio operations) as being used as part of a clandestine network to communicate with co-conspirators (para. 24).  No actionable claim cited.

- Def. goes on and on about a non-party – Steve Outtrim – in paras. 28 to 33.  The only logical connection between Plaintiff and Outtrim is that the Plaintiff "reblogged" an

Outtrim post that was almost a year old. Def. has yet to provide specific tortious acts of a defamatory nature that can be attributed to the Plaintiff. No logical claim cited.

### *PLAINTIFF'S IIED CLAIM*

**9.**    The Magistrate Judge's R&R recommended the dismissal of allegations made by the Plaintiff in "IV.  NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS", [I.I.E.D.] pages 63 to 69 (ECF 88). The law in this Circuit suggests that when the totality of circumstances regarding the Def.'s conduct is examined, the Plaintiff's I.I.E.D. claim should be left undisturbed. Or, in the alternative, the Plaintiff should be provided leave of the Court to amend and clarify this claim to reflect the totality of circumstances – namely events and activities that can be compartmentalized into a working definition of "smear campaigns".

### UNDISPUTED FACTS

10.    On many prior occasions in this, and in other federal courts, Def. Goodman has alleged that Plaintiff is a member of a group of co-conspirators (alleged joint tortfeasors) that orbit around Robert David Steele, plaintiff in a Virginia defamation lawsuit; *Steele v. Goodman*, No. 3:17-cv-601, 2019 WL 3367983, (E.D. Va. July 25, 2019). Def. Goodman – not Plaintiff -- had direct communications with Steele via a social media podcast to raise funds for Steele's 501(c)(3) entity known as "UNRIG" a day before the infamous "Port of Charleston dirty bomb hoax" on June 14th, 2017.

11.    Def. states (para. 69, 122) "[a]lmost immediately following the incident in the Port of Charleston, Counter Defendant Sweigert began parroting the claims made by Steele, publicly demanding the FBI investigate Goodman for his alleged role in the alleged "dirty bomb hoax". Setting aside the fact that this statement is false, the Def. has had thirty (30) months since June 14th, 2017 (Port of Charleston) to locate any such statement on any social media platform. This

statement is the height of vagueness, not even a medium is suggested by the Def. (television, radio, blogs, FaceBook, etc.).  Finding no such defamatory statements made the Plaintiff the Def. must attribute statements by Steele and the other joint tortfeasors to the Plaintiff (the convenient target)..

12.     Sworn statements have been provided by numerous parties in other federal courts "debunking" the Def.'s claims that Plaintiff is linked with these joint tortfeasors; but nonetheless the Def. continues to ignore these sworn statements and distributes his smears against the Plaintiff.  This Court should be fully aware of Def. Goodman's policy and practice of attributing defamatory statements made by other third-parties to the Plaintiff.

*BLACK CUBE COFFEE CUP*

13.     Def. has used his conspiracy theories to support his justification for creating the deplorable commercial merchandise that Def. sold on the platform REDBUBBLE.COM (para.s . 26 to 28, 95, Second Amended Complaint [SAC], ECF. 88).

14.     This merchandise was an integral piece of Def.'s multi-year smear campaign.  It was the alleged slander of Chavez and Steele in November 2017 that led to the creation of the "Black Cube coffee cup" – again not connected to the Plaintiff (see para. 95, SAC, ECF. 88).

15.     Def. plainly stated (on numerous occasions in video podcasts) that the Plaintiff libeled Def. Goodman by stating Goodman was a paid operative of a private Mossad associated firm known as "Black Cube".  The origin of this statement was attributed to an associate of Chavez, Matt Couch (presently being sued for slander in *Aaron Rich v. Ed Butowsky and Matthew Couch*, No. 18-81 (RJL), D.D.C.).

16.     It was the release of the "Black Cube" slander by Manuel Chavez, III (repeating a story created by Mat Couch) on a social media podcast in November 2017 (**EXHIBIT ONE**) that

caused Def. Goodman to create the "Black Cube coffee cup" in question. The Def.'s claims for defamation are misplaced on the Plaintiff and should be placed on the group of joint tortfeasors (Chavez and company).

17.     It was the alleged slander of Chavez and Steele in November 2017 that led to the creation of the "Black Cube coffee cup" – again not connected to the Plaintiff (see para. 95, SAC, ECF. 88).

18.     The humiliating "Black Cube coffee cup" was and integral part of Def.'s "CrowdSource The Truth" podcast show and was only one piece of an overall smear campaign designed to inflict emotional distress on the undersigned.

19.     In the podcast screen shot depicted below, the Court should note how the "Black Cube" coffee cup is positioned. The handle is outward toward the audience to reveal the Plaintiff's likeness for the audience. The coffee cup is behind the Def.'s computer monitor, which is out of arm reach. Thus, it is not positioned as a coffee cup for the host, but as some unorthodox totem or trophy of the Plaintiff's humiliation.



Above:  Attorney Larry Klayman, esq. speaks with Jason Goodman with the
REDBUBBLE.COM coffee cup merchandise in question

video    may    be    accessed    by    clicking    the    following    hyperlink:

https://www.youtube.com/watch?v=GNxCk6nqFJg&feature=youtu.be.    The video opens

with the following insulting picture and words:[14]



Above:  Artwork for the REDBUBBLE.COM "Black Cube" coffee cup in question



Above:  Def. appears holding the REDBUBBLE.OM coffee cup with Plaintiff's likeness with
side-kick Quinn Michaels (aka Corey Atkin) watching.

20.     Over time, evidence in social media and the Virginia court (*Steele v. Goodman*) revealed that the "Black Cube" rumor was directly attributable to **Chavez** and his associate, **Couch** – not the Plaintiff.  Without belaboring the issue, suffice to say that considerable effort was expended to "debunk" the allegation by the Def. that the Plaintiff had something to do with this "Black Cube" smear (see **Exh. 1**).

21.     One of the Def.'s "key associates" (ECF. 122) was the merchandise vendor and its web-site "REDBUBBLE.COM", which sold the Def.'s artwork creations on coffee cups, tote bags, T-shirts, etc.

*REDBUBBLE.COM DESIGNS AS PART OF IIED SMEAR CAMPAIGN*

22.     At the time this merchandise was released (November 2017) the Def. broadcast in a widely distributed manner that the Plaintiff was a member of the "deep state" and formerly associated with purported C.I.A. guns-for-drugs smuggling in Latin American – while the Plaintiff served active duty in the U.S. Air Force.

23.     Def. proclaimed Plaintiff was involved in an aircraft crash in Nicaragua in 1983 and that the undersigned most likely had Post Traumatic Stress Disorder (P.T.S.D.).  This was a direct attack on a perceived emotional condition that would be impacted by the pubic display of crashed aircraft in Nicaragua in 1983.  The artwork is designed to mimic the news surrounding an aircraft crash in Nicaragua.

24.     This action by the Def. represents a pre-planned direct attack on the emotional stability of a sufferer of P.T.S.D.  Def.'s actions to publish these artifacts was directly squarely at the Plaintiff's perceived weakness in the hopes of trigger an unstable emotional episode.  This was planned and intentional.



I consider this a very serious matter as it deals directly with the first amendment right to freedom of speech, freedom of the press as well as important elements of the Digital Millennium Copyright Act and other laws including Fair Use and Parody. This complaint also seeks to circumvent matters currently under consideration by the U.S. District Court in the Southern District of New York in pending civil litigation.

25.     The above copy also includes an electronic message the Def. sent to REDBUBBLE.COM demanding that Plaintiff's requests that the material be taken off their website be denied and ignored.  The Def. states to REDBUBBLE.COM, "I consider this a very serious matter as it deals directly with the first amendment right to freedom of speech, freedom of the press as well as important elements of the Digital Millennium Copy Right Act…".  Thus the Def. believes it is his "right" to publish such creations (in open defiance of N.Y. Civ. Rights Law § § 50 and 51).  Def. has no such rights and the Plaintiff was within his rights to complain directly to REDBUBBLE.COM.

26.     The Def. believes he has some right to conflate the Plaintiff into any number of defamatory conspiracy theories at his whim.  Def. created widely distributed artwork (para. 26 to 28, SAC, 88) placing the Plaintiff into the Iran-Contra scandal by displaying the undersigned's likeness with a Latin American police placard that reads "POLICIA DE SANDINISTAS".  The Def. knew that the undersigned was held in "enemy" captivity for 48 hours by the para-military forces of the Sandinista government in Nicaragua (along with the crew of U.S. Army helicopter

crew of tail number 20212).  This incident occurred while the crew ferried a helicopter from the Republic of Panama to Honduras.

27.     The aircraft crew acted on "loan" or temporary duty assigned to the Organization of American States (OAS) to carry out an OAS peace keeper missions.  For the Def. to trigger memories of the crash sustained by the Plaintiff, the Def. even changed the date of the aircraft crash, listed as October 6, **1983** on the REDBUBBLE.COM merchandise albeit the crash reported in the New York Times occurred October 6, **1986.**  This was a direct assault on the presumed P.T.S.D. of the Plaintiff in an attempt to trigger memories of the aircraft crash.  This three-year manipulation of the crash date to coincide with Plaintiff's military service seems an overtly outrageous act for a "news organization" to commit.

28.     Such manipulation of historical facts and news events that target at an honorably discharged veteran to manipulate a P.T.S.D. injury is extreme and outrageous conduct that was intended to cause, or disregard of a substantial probability of causing, severe emotional distress, with a casual link between the conduct and injury causing severe emotional distress.  *Rich v. Fox News Network, LLC,* 939 F.3d 112 (2d Cir. 2019)(quoting *Howell v. N.Y. Post Co., Inc.,* 596 N.Y.S.2d 350, 353 (N.Y. 1993)).

29.     The Def's "Black Cube coffee cup" and REDBUBBLE.COM merchandising marketing campaign (with Iran-Contra crash site images) were initiated in retaliation for a discrete event -- the "Black Cube" slander, with has been thoroughly reviewed and attributed to Chavez and Couch – not the Plaintiff [**Exh. 1**].

30.     It is incoherent and implausible that a "news organization" (as the Def. claims to be) would intentionally manipulate facts to perpetrate a known slanderous falsehood for the purpose of selling a small quantity of actual merchandise.

*CONTINUOUS CONFLATING PLAINTIFF WITH CO-CONPIRATORS*

31. It is well documented that a rogue group of social media "agents of chaos" targeted Def. Goodman, according to the former insider whistle-blower that was attached to the joint tortfeasors – that is Manuel Chavez, III. Beginning in May 2019 the Def. has conducted extensive public phone calls with alleged "co-conspirator" Chavez to discuss the "conspiracy". Chavez provided electronic mail messages to the Def. that exonerated the Plaintiff from any membership with these joint tortfeasors.

32. Below is depicted only one of dozens of electronic mail messages sent from Chavez to Def. on June 18, 2019 describing all the players associated with the joint tortfeasors – exonerating the Plaintiff – ignored by the Def. in his counter-claim document (ECF 122).

33. Nearly every possible actionable defamatory statement attributed to the Plaintiff by the Def. (ECF. 122) was made by this group of joint tortfeasors – not the Plaintiff. Def. Goodman has attributed so-called defamatory statements to the Plaintiff that have been made by a group of joint tortfeasors not associated with the Plaintiff; but associated with the Virginia lawsuit

15

plaintiff, Robert David Steele, Steele's attorney (Steven S. Biss, esq.), Biss's wife (Tanya

Cornwell), Biss's friend Chavez (aka "DEFANGO") and a former business partner of Chavez

known as Thomas Schoenberger.

34.    See Defendant's statement at para. 8 [quoted in relevant part]:

>  8.  In December 2017, Sweigert entered into a verbal agreement with Simpson and other
>  third parties during a multiparty telephone call with Simpson, **Manuel Chavez, III aka
>  "Defango"** (hereinafter "Chavez")…[emphasis added]

35.    See Defendant's statement at para. 15 [quoted in relevant part]:

>  15.  Through his interactions and communications with surrogates, co-conspirators and /
>  or intermediaries including his own brother Webb, Chavez and Simpson, Sweigert has
>  aligned his efforts with those of the Plaintiff in Steele v Goodman a federal lawsuit
>  currently active in the Eastern District of Virginia (3:17-cv-00601-MHL).  Webb, Chavez
>  and Simpson have each communicated directly with Steele on multiple occasions.
>  Chavez claims Simpson is the brother in law of Steele's attorney, Biss.  Sweigert
>  attempted to intervene in Steele v. Goodman but was denied by the honorable M. Hannah
>  Lauck.  (**EXHIBIT B**).

36.    It is instructive to note the "PARTIES" Defendant Goodman has claimed are involved in

this case [page 11, ECF 122].

>  41.  Plaintiff in Steele v. Goodman Robert David Steele 11005 Langton Arms Court
>  Oakton VA 22124.
>
>  42.   Council for Plaintiff in Steele v. Goodman Steven S. Biss 300 W Main St Ste 102
>  Charlottesville, VA, 22903-5575
>
>  43.   co-Defendant I Steele v. Goodman Patricia Negron (hereinafter "Negron") 925
>  Webster St Unit 3 Needham, MA 02492
>
>  46.  Counsel for Plaintiff Biss' wife and alleged sister of Tyroan Simpson Tanya
>  Cornwell (hereinafter "Cornwell"). 8035 Scottsville Rd. Scottsville, VA 24590.
>
>  47. Manuel Chavez, III (hereinafter "Chavez"), believed to be a resident of Nevada.

37.    **Manuel Chavez, III** of Carson City, Nevada, (aka DEFANGO") has at least a three (3)

history in social media circles of providing social media "reputation projection" for paid clients.

In social media podcasts Chavez has admitted to working with the Virginia licensed attorney

**Steven S. Biss, esq;** presently representing (*pro hac vice*) Dallas-based businessman **Edward**

**Butowsky** -- another Chavez "client". The wife of this attorney (**Tanya Cornwell**) has paid

incentives and monies to Chavez, at least $1,500 on one occasion (via the Internet wire of the

PayPal service). Tanya Cornwell has also admitted to drafting a pleading for the signature of

Chavez to act as a plaintiff in a lawsuit against an Def. Goodman. The "Cornwell" pleading was

intended to be filed in the courts of Arizona where Chavez resided at the time. A client of Mr.

Biss, Robert David Steele, paid Def. Chavez $500.00 for unknown services. None of this has

anything to do with the Plaintiff or alleged defamatory statements made by the Plaintiff.

38.    Recent mainstream news media accounts have clearly shown that **Manuel Chavez, III**

**and Thomas Schoenberger** were part of a litigation team known as "SHADOWBOX

STRATEGIES" that had absolutely nothing to do with the Plaintiff. See:

> **Fox News reporter and right-wing conspiracy theorists planned to wiretap family of**
> **slain DNC staffer Seth Rich: report, 2/17/2020**
>
> One of their topics was responding to online critics of wealthy Texas businessman Ed
> Butowsky, who had recently been outed as a driving force behind a retracted Fox News
> story about murdered Democratic National Committee staffer Seth Rich," The Beast
> reported. "The group that gathered at Butowsky's home included a conspiracy theorist, a
> Fox reporter fighting for her career, a former private intelligence contractor married to
> star journalist Lara Logan, and a Democratic PR operative who lost his business in the
> face of sexual assault allegations."
>
> "The group also included **Thomas Schoenberger and Manuel "Defango"** Chavez, two
> notorious internet provocateurs who had recently launched a self-proclaimed 'elite'
> company that promised to use bots and sow 'targeted chaos' to defend its clients online,"
> the publication noted. [emphasis added]
>
> https://www.rawstory.com/2020/02/fox-news-reporter-and-right-wing-conspiracy-
> theorists-planned-to-wiretap-family-of-slain-dnc-staffer-seth-rich-report/

**Right-Wing Activists Discussed Wiretapping Seth Rich's Family, Three People in the Room Say, 2/17/2020**

In an interview with The Daily Beast, Butowsky confirmed the list of guests at his house, although he disputed the characterization of it as a "meeting."

The varied group, according to Butowsky, included **Schoenberger, Chavez,** outspoken Rich conspiracy theorist **Matt Couch** and an associate, Logan's husband Joe Burkett, as well as Fox News reporter Malia Zimmerman, who was the author of the retracted Fox story.

But while Butowsky insists he only hired **Chavez and Schoenberger** to help his online image, a recorded video conference obtained by The Daily Beast suggests that their relationship had more sinister goals, at least in some instances.  [emphasis added]

In the gathering, Butowsky appeared to urge Schoenberger and Chavez to turn their internet harassment skills on Stuart Blaugrund, a Dallas attorney and one-time Butowsky acquaintance who had become critical of Butowsky's role in the Rich conspiracy theory.

Fuming over an email from Blaugrund in the video conference, Butowsky appeared to urge Chavez and Schoenberger to publicize Blaugrund's personal information online.


https://www.thedailybeast.com/right-wing-activists-discussed-wiretapping-seth-richs-family-three-people-in-the-room-say?via=twitter_page


39.     Active lawsuits that address issues related to Mr. Edward Butowsky and alleged false

news stories created by Butowsky include, *Bauman v. Butowsky*, 377 F. Supp. 3d 1 (D.D.C.

2019); *Butowsky v. Gottlieb*, 4:19-CV-0180 (E.D. Tex. June 18, 2019); *Rich et al v. Fox News

Network LLC et al*, 1:18-cv-02223-GBD-SN (S.D.N.Y.); *Rich v. Butowsky*, 1:18-cv-00681-RJL

(D.D.C. 2018), note: *Rich v. Fox News Network, LLC*, 939 F.3d 112 (2d Cir. 2019)

40.     Published social media reports indicate that Mr. Edward Butowsky paid **$20,000** to

Chavez and other pseudo political operatives like Thomas Schoenberger, Napa County,

California, as part of the SHADOWBOX STRATEGIES initiative.  Mr. Butowsky was a FOX

NEWS contributor who inserted himself into the Internet conspiracy known as the "Seth Rich

affair". Suffice to say that the Seth Rich conspiracy attracted intense attacks by conspiracy theorists that leverage social media as a public relations weapon (as in "weaponize").

41.     The source of the social media defamation attacks on Def. Goodman was Chavez and Schoenberger, who have both openly admitted working with Biss, Cornwell, Steele and Simpson – NOT the Plaintiff.

42.     Schoenberger and Chavez both traveled to the Greater Dallas area to create "SHADOWBOX STRATEGIES" and were living together at the time. The approximate time the company "SHADOWBOX STRATEGIES" was created in the State of Texas is the fall of 2017. Apparently Schoenberger and Chavez met Butowsky in September 2017 and "moved into the hotel" near Butowsky's home between January and March 2018. These events occurred precisely during the same time period that Def. Goodman complains of the Plaintiff joining a confederation with Chavez, Simpson, Biss, Steele, etc. Plaintiff had nothing to do – whatsoever – with these individuals, their plans, their initiatives or these events and Def. Goodman has not attributed a single defamatory statement made by the Plaintiff during this time period.

43.     Published social media reports demonstrate that Schoenberger is/was more or less the behind the scenes "arranger" that entrapped individuals in cyber quick sand. Schoenberger has a reputation of manipulating individuals into troubling situations that create chaos and harm. As stated in the draft charter created for SHADOWBOX STRATEGIES. See below:

> **THIS IS WAR**
> **Shadowbox is your army.** We solve your problems and expose truth. We unleash a multifaceted, **strategic battle plan** through integrated research earned media, legal and digital chaos.
> Where your enemies have lied to paint you as the bad guy, we sow the seeds of doubt and present the counter-narrative that they are, in fact, the villains, and you have been unjustly accused. We do this through **sophisticated use of internet technology, meme creation, PR, and cyber-guerrilla tactics** that stop the bleeding and begin to sway public opinion and the media in your favor.

Internet URL:  https://trackingmeroz.wordpress.com/2019/06/26/in-the-company-of-shadowboxers/

44.    Evidence is available that Schoenberger was actively developing social media messaging to target Def. Goodman and was communicating these strategies to the likes of Chavez, Simpson, Biss, Steele and Cornwell.  None of these activities have anything to do with the Plaintiff.

45.    The Def.'s confusing attribution of defamatory statements amongst a crowd of "co-conspirators" is unfair and prejudicial to the Plaintiff.  The Defendant's counter-claim allegations are required to at least adequately notify the Plaintiff of the defamation allegations made against the undersigned, as required by Federal Rules of Civil Procedure Rule 8(a).  There is confusion with Def.'s approach at conflating defamation joint tortfeasors with the Plaintiff creating a jumble, making the identifications of sources of the alleged defamation (as to who exactly who said what) problematic, vague and ambiguous.

46.    For instance, Def. Goodman considers positive book reviews of the Plaintiff's book to be somehow actionable.  What positive book reviews would that be?  In fact, many book reviews on the Plaintiff's Amazon book page were negative, left by 'anonymous' posters.  This conclusory allegation by Def. Goodman is inherently unsupportable with any facts or evidence, merely slap dash envisaged generalities.

> 74.  Sweigert's co-conspirators have engaged in overt acts in furtherance of their conspiracy, providing positive reviews of the book intended to bolster sales.
>
> And
>
> 76.  Sweigert and his co-conspirators engaged in defamation per se on several occasions by deliberately making false statements which were published to third-parties without

privilege of authorization; with fault amounting to AT LEAST negligence; that caused special harm.

47.     In fact, Def. Goodman suggests that this very lawsuit "is only one component of Counter Defendant's defamation and harassment against Goodman [para. 11, ECF. 122]".  Again, no specifics are provided, merely a conclusionary opinion.

48.     Def. Goodman opines, "Sweigert has made numerous statements and false accusations against Counter Plaintiff in furtherance of the conspiracy, including contacting law enforcement around the country and providing false statements intended to put the Counter Plaintiff in jeopardy of criminal charges [para. 18, ECF. 122]."  Such an allegation sounds in the common tort of malicious prosecution and not defamation.  The Plaintiff has not received adequate notice as to what statements are being described?  To which law enforcement agencies?  The Court, and the Plaintiff, are left hanging and Fed. Rules Civ. Proc. Rule 8(a) is stood on its head.

49.     The Plaintiff demands to know, pursuant to the notice requirements of Fed. Rule Civ. Proc. Rule 8(a) what exactly as these defamatory statements, precisely?

*CONTINOUS CONFLATING OF THE PLAINTIFF WITH THE PORT OF CHARLESTON*

50.     In a social media podcast entitled, "*Robert David Steele*", published June 13, 2017, Def. Goodman appears with George Webb (Sweigert), Robert David Steele [Virginia plaintiff], and Virginia lawsuit co-defendant Trish "the dish" Negron.  These events have nothing to do with the Plaintiff.  Def. Goodman has accused all these individuals of acting as co-conspirators against him [ECF. 122] – to include the Plaintiff, a non-involved party.



Internet URL:  https://www.youtube.com/watch?v=hMJoAO5OZY8

51.     The following day the so-called Port of Charleston "dirty bomb hoax" occurred, as

reported in the national media.  For example:



How a Conspiracy Theorist's Call About a Dirty Bomb Shut Down Part of a Port, June 15, 2017,
New York Times [https://www.nytimes.com/2017/06/15/us/port-dirty-bomb-south-
carolina.html]



How a conspiracy theory closed part of a major US seaport, June 16, 2017, CNN Business
Internet URL: [https://money.cnn.com/2017/06/16/media/port-of-charleston-dirty-bomb-conspiracy-theory-shutdown/index.html]

### How a conspiracy theory closed part of a major US seaport

by Donie O'Sullivan   @CNNMoney June 16, 2017: 5:46 PM ET

"… Webb's allegations were broadcast on "Crowdsource the Truth," a conspiracy theory YouTube channel with a relatively modest 11,000 subscribers. Two other people appeared on-screen with Webb, all remote of one another -- Webb said he was in Ohio. Throughout, the trio read and responded to live comments from their audience -- which reached 2,000 viewers at some points, according to one of the hosts.

Webb posts daily on his own, separate YouTube channel, hosting a series he calls "Hillary's Leakers, Hackers and Henchmen." His videos rarely get more than 10,000 YouTube views.

After Webb mentioned the "Memphis Maersk," the audience quickly sprung into collective action through a "Crowdsource the Truth" Facebook group and the live comments section that accompanied the YouTube broadcast.

Using a free online tracking tool, viewers found that the ship was in or approaching the Port of Charleston in South Carolina.

About an hour later, Webb's onscreen counterpart, **Jason Goodman, who runs "Crowdsource the Truth,"** called a number he said was the Coast Guard while still live streaming. [emphasis added]

Goodman identified himself to the person on the other end of the line as a "reporter with an independent news agency," and began telling them about the alleged threat before he was interrupted."   [quoted in relevant part]

52.    Nearly a year after the 6/14/2017 incident the Plaintiff released a book based on "open

source intelligence" (OSI) about these events.  The book was published on April 14, 2018, which

included a disclaimer on the back cover (see below); see Report: The Port of Charleston Dirty

Bomb Hoax and Social Media Liability Paperback – April 14, 2018 ,

[https://www.amazon.com/Report-Charleston-Dirty-Social-Liability/dp/1717056792].



Above:  Front and back cover of the Plaintiff's book

Port of Charleston

Dirty Bomb Hoax

Immediate Need for Deterrence

Against Weaponized Deception

DIRTY BOMB ... PLEASE INVESTIGATE ...
MAERSK MEMPHIS



WARNING: This document provides a threat assessment of a cyber-attack vector Individuals listed in this report should not be considered guilty of any crime or offense. The focus of this document is to present evidence of the telecommunications aspects of the "dirty bomb" alert and warning received by the U.S. Coast Guard on June 14th 2017 in the context of federal law. Any individual discussed should be presumed innocent of any crimes until adjudicated otherwise in an appropriate court of law.

WARNING: This document provides a threat assessment of a cyber-attack vector Individuals listed in this report should not be considered guilty of any crime or offense. The focus of this document is to present evidence of the telecommunications aspects of the "dirty bomb" alert and warning received by the U.S. Coast Guard on June 14th 2017 in the context of federal law. Any individual discussed should be presumed innocent of any crimes until adjudicated otherwise in an appropriate court of law.

Above:  Depictions from EXHIBIT H, ECF. 122

53.    It is hard to fathom how an Amazon book with such vivid disclaimers could be considered an artifact that accuses the Def. of a crime.

54.     Plaintiff's background to write such a book includes having obtained the certification of
the Professional Development Services and Advanced Professional Series awarded by the
Federal Emergency Management Agency (FEMA) by completing well over seventy-five (75)
on-line courses in emergency management.  The undersigned is also recognized by the California
Office of Emergency Services as a Certified Emergency Specialist after completing a rigorous
course of study.  The Plaintiff has also been recognized for his knowledge and designated as an
expert in Infrastructure Protection by the Texas A&M University System (TEEX), College
Station, Texas.  The undersigned has completed well over thirty (30) instructor-led TEEX
courses in average duration of 16-24 hours (2-3 days) class room attendance.

55.     More than anything, it was the Plaintiff's experience and training that led him to inform
the Captain of the Port of New York and New Jersey about the Def's activities; "information
conveyed to the Coast Guard in a letter to Captain Tama." [EXHIBIT H, ECF. 122]. According
to the Def. everything in the letter is false and that this letter addressed and delivered to five (5)
people has hurt his "business".  Def. Goodman is certainly in the best position to explain to the
Court what information in the 2/22/2019 letter to Capt. Jason Tama, U.S.C.G. letter is false.  He
chooses not to, as he is unable to.

56.     The Court should note that this letter was mailed to only five (5) parties that may have
had a public governance interest in the Port of Charleston "dirty bomb hoax" style of what is
commonly referred to as a "cognitive attack."  No matter.  According to Def. Goodman "the
information … in the letter … is false".  Case closed.  This smacks of an unduly vague,
ambiguous and conclusionary allegations that cannot be proved.  Net result incoherent and
illogical defamation allegations.

57.    While lengthy, the foregoing information demonstrates that the Court may find it prudent to consider defining the scope upon which Def. can raise defamation allegations to the mandatory one year statute of limitations.  Open-ended slap dash allegations by the Def. that run the gambit of conspiracy theories should be accompanied by some coherent theory or evidence. Otherwise, this is extremely prejudicial to the Plaintiff.

## LEGAL ARGUMENT

58.    The Magistrate Judge relied on *Regal Custom Clothiers, Ltd. v. Mohan's Custom Tailors, Inc.*, No. 96 Civ. 6320, 1997 WL 370595, at *8 (S.D.N.Y. July 1, 1997) to support the proposition that the Defendant has adequately pled a defamation *per se* counter-claim against the Plaintiff in the context of Fed. Rules Civ. Proc. Rule 8(a).

59.    Other courts have also relied on *Regal Custom Clothiers* as well; but, have amplified the issue of conflating defamation claims amongst several individuals. See *Sebastiani v. Brooklyn Hosp. Ctr.*, 19-CV-253 (PKC) (ST) (E.D.N.Y. July 19, 2019).

> "..[T]his case is distinguishable from *Regal Custom Clothiers, Ltd. v. Mohan's Custom Tailors*, Inc., No. 96-CV-6320 (SS), 1997 WL 370595, at *8 (S.D.N.Y. July 1, 1997). See id. ("[I]t is not clear who is alleged to have made the defamatory statements. The Complaint alleges that 'Defendants' made the defamatory statements, but the [plaintiffs' brief] refers only to the alleged defamatory statements by [one defendant] . . . ."). *Sebastiani v. Brooklyn Hosp. Ctr.*, 19-CV-253 (PKC) (ST) (E.D.N.Y. July 19, 2019)
>
> And
>
> "..The "central concern" at the pleadings stage of a defamation case "is that the complaint 'afford [the] defendant sufficient notice of the communications complained of to enable him to defend himself.'" Linell v. N.Y.C. Dep't of Educ., No. 15-CV-5085 (CBA) (MDG), 2017 WL 880853, at *2 (E.D.N.Y. Mar. 3, 2017) (quoting Kelly, 806 F.2d at 46)." *Sebastiani v. Brooklyn Hosp. Ctr.*, 19-CV-253 (PKC) (ST) (E.D.N.Y. July 19, 2019)

60.    The Plaintiff has not received adequate notice as to what defamatory statements were made and by who and when.  Some distinction is needed to help the Plaintiff understand what defamatory statements were made whom, a process relied upon by the court in *Sebastiani v. Brooklyn Hosp. Ctr.,* 19-CV-253 (PKC) (ST) (E.D.N.Y. July 19, 2019).

*FAILURE TO PROVIDE PLAINTIFF WITH ADEQUATE NOTICE*

61.    Def. Goodman's statements are patently insufficient to state a claim for defamation within the context of Fed. Rules Civ. Proc. Rule 8(a)(2).  The Plaintiff has little or no idea what specific defamatory statements Def. Goodman is referring to, especially as these allegations are co-mingled with "conspiracy" claims and jargon involving third-parties.  "The mere allegation that defamatory statements were made to another unidentified residency program is too indeterminate to provide sufficient notice of Plaintiff's claim so that Defendant can prepare their defense," *Sebastiani v. Brooklyn Hosp. Ctr.*, 19-CV-253 (PKC) (ST) (E.D.N.Y. July 19, 2019).

> "[T]he mode of pleading defamation is governed by [Federal Rule of Civil Procedure ("Rule") 8]." Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986). Under the liberal notice pleading standard set forth in Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002) (quoting Rule 8(a)(2)). A "short and plain statement" is one that "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957))." *Sebastiani v. Brooklyn Hosp. Ctr.,* 19-CV-253 (PKC) (ST) (E.D.N.Y. July 19, 2019)

> "While it is true that the pleading standard for defamation claims in federal court is more relaxed than the standard required in New York state court, the Supreme Court has stated that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). *Doe v. Doe,* No. 16 Civ. 0332 (NSR) (S.D.N.Y. July 14, 2017)

62.     To illustrate, the Def. states, (para. 73, 122) "Sweigert has persistently and continuously repeated the lie that Goodman planned, oversaw and / or participated in a scheme to perpetrate a dirty bomb hoax."  The Plaintiff cannot be reasonable expected to interpret "persistently and continuously".  Setting aside that facts that this statement is completely untrue, the Plaintiff is now expected to prepare a response to this type of vague and ambiguous statement.

63.     Again, Def. states, (para. 73, 122)  "He [Sweigert] echoes this, nearly identically, claiming Goodman had foreknowledge and / or some involvement in explosions at a Texas LNG facility.  These statements are categorically false and totally unsupported facts or evidence."  Setting aside the fact that no such statements exist, the Def. doesn't even provide a clue as to what medium (social media, YouTube, FaceBook, Twitter, television, radio, blog, etc.) these statements can be found.  It places an undue burden upon the Plaintiff to "mind read" what the Def. is talking about.

64.     Again, Def. states, (para. 73, 122) "[s]ubsequent to these events, Sweigert wrote and self-published a book rife with false allegations accusing Goodman of plotting, planning, overseeing, coordinating otherwise playing some key role in the alleged bomb hoax."  Setting aside the expiration of the statute of limitations for defamation for the content in this book (April 14, 2018 to April 14, 2019), Def.'s statements are simply untrue – and, Def. provides no evidence to the contrary.

65.     This Court must decide if the Def. can supply any evidence that could be used to support his outlandish claims.  The Court should consider whether it is even possible to obtain evidence during the discovery process sufficient to sustain the Def's baseless allegations.

   "..[T]he court considers the elements of a *prima facie* case in determining whether there is sufficient factual matter in the Complaint which, if true, give Defendant "fair notice" of

Plaintiff's employment discrimination claims and the grounds on which such claims rest. Erickson, 551 U.S. at 93, 127 S.Ct. 2197." *Doverspike v. Int'l Ordinance Techs.,* 817 F. Supp. 2d 141 (W.D.N.Y. 2010) [emphasis added]

And

"[S]ee also Doverspike v. Int'l Ordinance Techs., 817 F. Supp. 2d 141, 148 (W.D.N.Y. 2010) (dismissing employment discrimination claims where "although [the plaintiff] alleges she is a Native American holding Native American spiritual beliefs, . . . [she] fails to allege any facts that could plausibly be construed as establishing [that her] discharge was based on her membership in any of the protected classes"), aff'd, 445 F. App'x 399 (2d Cir. 2011)." *Soto v. Marist Coll.,* No. 17-CV-7976 (KMK) (S.D.N.Y. June 5, 2019) [emphasis added]

And

"While a Plaintiff need not plead sufficient facts to establish a prima facie case of employment discrimination to survive a motion to dismiss, courts consider the elements of a prima facie case in determining whether there is sufficient factual matter in the complaint, accepted as true, to raise a reasonable expectation that discovery may reveal evidence of employment discrimination. Doverspike v. Int'l Ordinance Techs., 817 F. Supp. 2d 141, 147 (W.D.N.Y. 2010)." *Krehan v. Held's Janitorial Serv., Inc.,* 12-CV-160S (W.D.N.Y. Sep. 12, 2012) [emphasis added]

And

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 1949 (quoting and citing Twombly, 550 U.S. at 556-57 (internal citations omitted)" *Krehan v. Held's Janitorial Serv., Inc.,* 12-CV-160S (W.D.N.Y. Sep. 12, 2012) [emphasis added]

### *THE BULK OF DEFAMATION CLAIMS ARE TIME BARRED*

66.     Concerning any defamation allegations related to the Plaintiff's book, those are presumed to be time barred as the book was published April 14, 2019.  See: Report: The Port of Charleston

Dirty Bomb Hoax and Social Media Liability Paperback – April 14, 2018 ,

[https://www.amazon.com/Report-Charleston-Dirty-Social-Liability/dp/1717056792].

> "The statute of limitations in New York for defamation is one year from the date of the publication of the statement. N.Y. C.P.L.R. § 215(3). "[U]nder the 'single publication rule', a reading of libelous material by additional individuals after the original publication date does not change the accrual date for a defamation cause of action but, rather, the accrual date remains the time of the original publication." Gelbard v. Bodary, 706 N.Y.S.2d 801, 802 (App. Div. 2000). An exception to the single publication rule applies when a defamatory statement is "reissued" or "republished," which gives rise to a new limitations period. Gold v. Berkin, 2001 U.S. Dist. LEXIS 1206, *11 (S.D.N.Y. Feb. 9, 2001). This exception does not apply to statements published online continuously available to the public. Van Buskirk v. N.Y. Times Co., 325 F.3d 87, 89-90 (2d Cir. 2003); Firth v. State, 98 N.Y.2d 365, 370 (2002); Young v. Suffolk County, 705 F. Supp. 2d 183, 212 (E.D.N.Y. 2010) ("[U]nder the single publication rule, the fact that a story remains available online does not restart the statute of limitations."). *Fta Mkt. Inc. v. Vevi, Inc.,* 11 CV 4789 (VB) (S.D.N.Y. Feb. 1, 2012)

> Plaintiff's claim for defamation is barred by the applicable statute of limitations and is hereby dismissed." *Fta Mkt. Inc. v. Vevi, Inc.,* 11 CV 4789 (VB) (S.D.N.Y. Feb. 1, 2012)

67.    It is also instructive to note that New York State does not allow extensions of the statute of limitations for a given tort; see N.Y. C.P.L.R. § 215.

*IIED CLAIMS BASED ON SMEAR CAMPAIGNS HAVE BEEN UPHELD IN THIS DISTRICT*

68.    The Second Circuit has stated that a smear campaign can support a claim for IIED.  In a defamation and IIED case (which coincidentally involves Edward Butowsky – the employer of Manuel Chavez, III) the Second Circuit opined:

> "Under New York law, although "[t]he standard of outrageous conduct is strict, rigorous and difficult to satisfy ..., that is not the case when there is a deliberate and malicious campaign of harassment or intimidation." Scollar v. City of New York , 160 A.D.3d 140, 74 N.Y.S.3d 173, 178 (1st Dep't 2018) (internal quotations omitted). To be sure, "it is manifestly neither practical nor desirable for the law to provide[ ] a remedy against any and all activity which an individual might find annoying." Nader v. Gen. Motors Corp .,

25 N.Y.2d 560, 307 N.Y.S.2d 647, 255 N.E.2d 765, 770 (1970). At the same time, "where severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation," IIED provides a remedy. Id. In other words, under New York law, the proper inquiry is not merely whether each individual act might be outrageous. Rather, the question is whether those actions—under the totality of the circumstances—amounted to a deliberate and malicious campaign." *Rich v. Fox News Network, LLC*, 939 F.3d 112 (2d Cir. 2019)

69.      The total of circumstances weighing against the Def. is staggering.  Def. openly admits that he was aware of the Plaintiff during his video productions that led to the Port of Charleston on June 14th, 2017.  In fact, an hour before the infamous tweets "DIRTY BOMB …. MEMPHIS MAERSK …. PLEASE INVESTIGATE" the Def. spent three (3) minutes discussing the undersigned's purported involvement in C.I.A. drug running in Latin America as part of the Iran-Contra scandal.  Def.'s slander, libel and defamation against the Plaintiff began approximately June 14th, 2017 and has not stopped.  This represents a multi-year smear campaign directed specifically at the emotional health of the Plaintiff.

70.      The Court should also consider how the Def. tried to exploit a "known" emotional weakness of the Plaintiff; that of his participation in a forced landing of a U.S. Army helicopter (tail number 20212) in Managua, Nicaragua in 1982.  The Def's artwork depicting the likeness of the undersigned with Iran-Contra conspirator Lt. Col. Oliver North, U.S.M.C. (ret.), the wreckage of a crashed aircraft, accompanied with "Iran-Contra" newspaper headlines is a clear example of exploitation of an emotional weakness.

"Here, Fox News and Zimmerman do not sufficiently contend that its conduct—although knowingly outrageous—is nonetheless entitled to the "privileged-conduct exception" under New York law. Therefore, we do not need to consider whether the two Appellees abused that hypothetical privilege. Recklessness, as New York courts have held time and again, is sufficient to make a claim for IIED. And knowledge of a peculiar susceptibility to emotional distress, as outlined in comment f of the Restatement (Second), aptly describes a particular form of recklessness. The two Appellees' attempt to require specific

intent to cause emotional distress fails." *Rich v. Fox News Network, LLC*, 939 F.3d 112 (2d Cir. 2019)

71.     The Def.'s multi-year smear campaign against the Plaintiff has been and remains relentless.  The suthor of the SAC (ECF. 88) limited allegations just to the most recent reprehensible conduct that transpired between January and June of 2019 as a courtesy to the Court to promote judicial efficiency.  However, dozens of other acts of humiliation and emotional abuse perpetrated by the Def. can be cited.  *Turley v. ISG Lackawanna, Inc.,* 774 F.3d 140, 157-62 (2d Cir. 2014).

## CONCLUSION

72.     The administration of justice does not seemed served by providing Def. Goodman a defamation "blank check" to allege any slap dash conspiracy de jure against the Plaintiff without relevant evidence or a coherent theory to back those accusations up.

73.     The Court should strongly consider the practical effects of sustain the Def.'s allegations of defamation without some degree of specificity.  Otherwise, the Plaintiff is placed in the position of continuing to play "whack-a-mole" each time Def. decides to launch another allegation related to a perceived co-conspirator or joint tortfeasor.

74.     The Magistrate Judge may have erred by allowing the Def.'s incoherent and implausible conspiracy defamation theories to stand.  Def. has not produced linkages between perceived defamatory statements and conduct attributed to directly the Plaintiff.  These defamatory statements are attributed to other third parties that have nothing to do with the Plaintiff.

75.     The Def.'s incoherent and implausible conspiracy defamation claims should not be allowed stand in the counter-claim papers (ECF. 122).  Def. has not produced linkages between perceived defamatory statements and conduct directly attributed to the Plaintiff.

76.     Def. spends two paragraphs (13 & b14, ECF 122) discussing Tyroan Simpson, aka

"Frank bacon", with whom the Plaintiff has no contact or association.  Def. complains that the

Plaintiff attempted to intervene in the Virginia lawsuit (para. 15).  Def. complains that the

Plaintiff operates a counter-speech blog to defend himself from Def.'s attacks.  Def. accuses

Plaintiff of using his knowledge of military radio communications (essentially glorified ham

radio operations) as being used as part of a clandestine network to communicate with co-

conspirators (para. 24).  Def. goes on and on about a non-party – Steve Outtrim – in paras. 28 to

33.  Again, the only logical connection is that the Plaintiff "reblogged" an Outtrim post almost a

year old.  In para.s 58 to 67 the Def. describes his relationship with George Webb and activities

leading up to the June 14th, 2017 (Port of Charleston) that have nothing to do with the Plaintiff.

Then the Def. devotes para. 69 to action of Steele that have nothing to do with the Plaintiff.

Simply stated, the Def. is pre-occupied with third parties and has no real defamations claims

against the Plaintiff.

77.     This Court should rightly ask the Def. "where's the defamation beef"?  Meanwhile, the

Defendant's counter-claim for defamation should be dismissed in its entirety with prejudice

without leave to amend.

78.     Meanwhile, it seems that the apparent law in this Circuit guides this Court to the

conclusion that social media smear campaigns, when designed to trigger emotional dark

memories, rise to the level of supporting a legitimate I.I.E.D. claim.

79.     When the totality of circumstances regarding the Def.'s conduct is examined, the

Plaintiff's I.I.E.D. claim should be left undisturbed.  See "IV.  NEGLIGENT AND

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS", pages 63 to 69 (ECF 88). Or, in

the alternative, the Plaintiff should be provided leave of the Court to amend and clarify this claim

to reflect the totality of circumstances – namely compartmentalized into a working definition of "smear campaigns".

Dated: March 6, 2020

D. George Sweigert

Spoliation-notice@mailbox.org

3/6/20

**CERTIFICATE OF SERVICE**

**I HEREBY ATTEST that a true copy of the attached pleadings has been sent to the**

**following addressees on the March 6th, 2020.**

        **Jason Goodman, CEO**
        **Multi-media Design Systems, Inc.**
        **252 7th Avenue, Apart. #6S**
        **New York, NY 10001**

        **Clerk of the Court, Room 200**
        **U.S. District Court**
        **500 Pearl Street**
        **New York, New York 10007-1312**

        **D. GEORGE SWEIGERT**

        3/6/20

**EXHIBITS TO ACCOMPANY**
**PLAINTIFF'S OPPOSITION TO THE MAGISTRATE JUDGE'S REPORT**
**AND RECOMMENDATION ISSUED MARCH 2, 2020 (ECF. DOC. 138)**

I hereby certify that the attached exhibits are a true and accurate copy of the source document.

Dated: March 6, 2020

D. George Sweigert

Spoliation-notice@mailbox.org

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | |
|---|---|
| ROBERT DAVID STEELE, | |
| Plaintiff, | **17-CV-00601-MHL** |
| -against- | |
| JASON GOODMAN, | |
| Defendant. | |

RECEIVED
UL 1 5 2019
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

## CERTIFICATE OF SERVICE

It is hereby certified that the accompanying materials have been placed in the U.S. Postal Service

with First Class mail postage affixed and addressed to the following parties:

| Clerk of the Court | Jason Goodman | Susan A. Holmes |
|---|---|---|
| U.S. District Court | 252 7th Avenue | ( Lutzke ) |
| 701 E. Broad St. | Suite 6-S | 2608 Leisure Drive |
| Richmond, VA 23219 | New York, NY 10001 | Apt. B |
| | | Ft. Collins, CO 80525 |

I hereby attest that the foregoing is true and accurate under the penalties of perjury on this __/

day of July, 2019.

**D. GEORGE SWEIGERT, C/O**
**P.O. BOX 152**
**MESA, AZ 85211**

7·11·19

1

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER: STEELE v. GOODMAN, 17-CV-00601-MHL

*D.G. Sweigert, c/o*
*P.O. Box 152*
*Mesa, AZ 85211*
*Spoliation-notice@mailbox.org*

July 11, 2019

Jason Goodman, CEO
Multimedia Systems Design, Inc.
252 7th Avenue
Suite 6-S
New York, NY 10001

Clerk of the Court, Room 3000
U.S. District Court
701 E. Broad St.
Richmond, VA 23219

MATTER:        **STEELE v. GOODMAN, 17-CV-00601-MHL**

               **District Judge M. Hannah Lauck**

SUBJECT:       **PART ONE: ATTEMPTED FRAUD ON THE COURT BY**
               **DEFENDANT GOODMAN VIA ECF DOC. NO. 139**

REF: (a)       MANUEL CHAVEZ, III (DOB 03/21/1986), AZ DL DO1566834          *D.S.*
                                                                              *7/11/19*

Good Morning:

1.     This letter addresses the false misrepresentations that you continue to present to this
honorable Court based on insufficient tainted evidence that has been created with the cooperation
of your CrowdSource The Truth (CSTT) side kick, see ref: (a), known as "DEFANGO".

RECEIVED
JUL 1 5 2019
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

1

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER:  STEELE v. GOODMAN, 17-CV-00601-MHL

2.    Your attention is kindly directed to <u>ECF Doc. No. 139, para. 20</u>, shown below.

24    key themes propagated by various ................. .. ...    .   .

25    20. As previously submitted in these proceedings, (ECF No. 78 EXHIBIT I) Intervenor

26    Application D. George Sweigert, telephone Manuel Chavez III, making substantially the

27    same claim, falsely stating that Defendant Goodman was paid by Black Cube

28    DEFENDANT'S AMENDED RESPONSE TO PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS - 11

Case 3:17-cv-00601-MHL    Document 139    Filed 07/08/19    Page 12 of 119 PageID# 2376

1    (http://www.blackcube.com) a private intelligence firm in the UK comprised of former

2    Mossad agents and operatives, according to their own public website.

3    21. On or around June 2019, Manuel Chavez III voluntarily shared some of his personal

3.    Please take note of the following litigation in which ref: (a) (DEFANGO) is a witness:

U.S. District Court
for the District of Columbia
RICH v. BUTOWSKY et al
CASE #: 1:18-cv-00681-RJL
Judge Richard J. Leon

2

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER: STEELE v. GOODMAN, 17-CV-00601-MHL

4.    In recent YouTube video productions distributed by ref: (a) (DEFANGO) it has been
clearly stated by ref: (a) that he was a member of a group of "reputation protection" operatives
allegedly directed by Matt Couch (defendant in the above cited action). Ref: (a) has distributed
in a widely pervasive manner, electronic messages from Matt Couch to support his testimony in
the above cited litigation. Ref: (a) has also been vocal about evidence that he has furnished to
you as well. See below:



**subpoena compliance - Aaron Rich Lawsuit - defango tv 6/22/2019**
Defango TV
Streamed 1 week ago • 1,632 views
Well it's time do Comply with this Aaron Rich Lawsuit Subpoena. I think a few people are going to really dislike this stream but it's ...

Streamed live on Jun 22, 2019
Well it's time do Comply with this Aaron Rich Lawsuit Subpoena. I think a few people are going to really dislike this stream but it's for Court Records and whatnot. So we are getting everything on the table and building the files to FTP to the Lawyer. Any striking or anything is going to be interfering with a federal case.

Internet URL:  https://www.youtube.com/watch?v=pB7NjF1ApZg&t=7427s

3

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER:  STEELE v. GOODMAN, 17-CV-00601-MHL



# Matt Couch ◈ sent you a Direct Message.

You didn't get this from me, from a
Source   Jason Goodman is on the
payroll of a man named Arnan
Michan  Arnan has Jason doing work
partly out of blackmail  Jason was at
parties with a producer named Brian
Singer and there were underaged
boys and girls  Jason was being paid
$2,788 a week and its now up to
$3500 a week  Laura Loomer is
making $7000 a week from Michan
Black Cube feed them info  Jason
found out that Michan is paying

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER:  STEELE v. GOODMAN, 17-CV-00601-MHL

> do not tell anyone how you got this
> info. Goodman's job is to deflect
> attention from Rahm Emanuel ,
> Chuck Schumer and DWS  Rahm
> secretly paid Pakistani prosecutors 3
> million in hush money in March 2009
> to make a ton of fraud charges go
> away  The money came from Israel
> The Awan's have been spying for
> Israel since 2007-2008 with Schumer
> as the king pin. Now Milchan works
> with a guy named Avi Hersh  I know
> you and T and others know some of
> this stuff, but now you know the full
> story  Also, Alan Dershowitz has over
> 7 hours of Orgy Island vid hidden and
> his vid file is called Insurance, the
> same name as Schumer's boy
> Anthony Wiener  Please keep my
> name out of this  I focus on Vegas
> and **Seth**  But this is blow away stuff
> Goodman will freak when you expose
> this  It comes directly from a CIA guy
> on our team

5.      The enlarged video screen-shot from the above video content demonstrates that the

source of the "Black Cube rumor" was apparently Matt Couch – and NOT the undersigned as

you continuously report.  As discussed in the previous letter on this subject, dated June 30th,

2019, you have implicated the undersigned as the source of the "Black Cube" rumor.  To refresh

your memory the rumor states that you and Laura Loomer were being paid by a Black Cube

operative, stated by ref: (a) (DEFANGO) and NOT by the undersigned.

**UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**
**MATTER:  STEELE v. GOODMAN, 17-CV-00601-MHL**

6.     As you can see by the above screen-shot evidence, Matt Couch was the source of this "Black Cube" rumor.  This rumor was distributed by ref: (a) (DEFANGO) on his own volition. The undersigned has nothing to do with the promulgation of this "Black Cube" rumor.  The reverse is true, the entire matter was the sole responsibility of ref: (a), who is your CSTT side-kick.  Your insinuations in ECF Doc. No. 139, para. 20 that the undersigned promulgated this rumor are false and an example of your unrelenting fraud.

7.     Recall that the offending "Black Cube" rumor remarks were made by ref: (a), reported by you in EXHIBIT I (no. 9 in ECF) of ECF Doc. No. 78, which is cited by you in para. 30 of ECF Doc. No. 139 (see video entitled *11.25.17.Solving.rar* ).  These remarks were NOT made by the undersigned.



**UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**
**MATTER:  STEELE v. GOODMAN, 17-CV-00601-MHL**



**11.25.17.Solving.rar**

Defango TV
Streamed 1 year ago • 3,880 views
Long day of puzzling and work Read More @steemit ...

Streamed live on Nov 25, 2017
Long day of puzzling and work

Internet URL:  https://www.youtube.com/watch?v=jK73oCxCGOE&t=4363s

8.      Ref: (a) (DEFANGO) promulgates the *Black Cube rumor* as seen in the video that appears ~~below.~~ ABOVE      *D.S.*
*7-11-19*

        REF: (A).      01.12.22.  It's really crazy to me too .. I was picking up on something .. uh .. **Black Cube**.  And, like I had gotten some information about . like .. some information from quote unquote "CIA source" that was talking about how Loomer and — what's his name — **Goodman were getting paid by some Black Cube, some Black Cube operative**.  And then it started clicking in my head.
        [emphasis added]

9.      It is instructive to note that you specifically featured the Black Cube corporate web-site in your video production distributed in a widely pervasive manner two (2) days after these *Black Cube rumor* remarks were made public by ref: (a) on 11/25/2017 (see below).

7

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER:  STEELE v. GOODMAN, 17-CV-00601-MHL





### Deep State Dunces Attack George Webb & CSTT - Bitcoin Challenge Response

Jason Goodman
Streamed 1 year ago • 15,315 views
The dumbest affiliates of the Deep State simply will not give up their ludicrous attacks on the truth, while simultaneously offering ...

Streamed live on Nov 27, 2017
The dumbest affiliates of the Deep State simply will not give up their ludicrous attacks on the truth, while simultaneously offering no evidence to support their claims.

Internet URL:  https://www.youtube.com/watch?v=GNxCk6nqFJg

10.    Below is a transcript of your comments as recorded in the above cited video.

GOODMAN.  07:57.  They'll put out a video that where they'll say 'oh yeah, Jason Goodman is working for **Black Cube.**  Now I will tell you something.  I had no idea what Black Cube was, before these guys made a video about it.

[emphasis added]

8

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER:  STEELE v. GOODMAN, 17-CV-00601-MHL

11.    Your CSTT side-kick DEFANGO (ref: (a)) is the sole purveyor of this *Black Cube rumor* – NOT the undersigned.  This point is amplified in the STEEMIT post created during the time period in question by ref: (a) (DEFANGO) (see below).

# Black CUBE Jason Goodman

 **defango** (64) ▾  in **news** • 2 years ago

Jason Goodman, you want to play old west gunslinger with peoples reputations? Been building a case on you since you asked me to look you up. , and your connections to child pedophiles, and Mossad.

CIA SOURCE: Deep Throat confirmed by @frankbacon

Jason Goodman is on the payroll of a man named Arnan Milchan. Arnan has Jason doing work partly out of blackmail. Jason was at parties with a producer named Brian Singer and there were underaged boys and girls. Jason was being paid $2.788 a week and its now up to $3500 a week. Laura Loomer is making $7000 a week from Milchan. Black Cube feed them info. Jason found out that Milchan is paying Loomer twice as much as him and thats why they had this fight. Please do not tell anyone how you got this info. Goodman's job is to deflect attention from Rahm Emanuel , Chuck Schumer and DWS. Rahm secretly paid Pakistani prosecutors 3 million in hush money in March 2009 to make a ton of fraud charges go away. The money came from Israel. The Awan's have been spying for Israel since 2007-2008 with Schumer as the king pin. Now Milchan works with a guy named Avi Hersh. I know you and T and others know some of this stuff, but now you know the full story. Also Alan Dershowitz has over 7 hours of Orgy Island

Internet URL:  https://steemit.com/news/@defango/black-cube-jason-goodman

9

**UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**
**MATTER: STEELE v. GOODMAN, 17-CV-00601-MHL**

12.     Your attention is directed to para. 32 of ECF Doc. No. 139 (shown below).

32. Chavez is an associate of Intervenor Applicant and has been paid by Intervenor Applicant and has received direct instructions from Intervenor Applicant. Intervenor Applicant operates a YouTube channel under the account name "Prepper Kitty Intel PKI". Many exhibits in this instant legal matter have referenced this YouTube account. YouTube username Prepper Kitty Intel has paid Chavez via YouTube Superchat (**EXHIBIT I**)

13.     Show below is EXHIBIT I, that is attached to ECF Doc. No. 139.

Case 3:17-cv-00601-MHL   Document 139   Filed 07/08/19   Page 112 of 119 PageID# 2476

**EXHIBIT I**



UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER:  STEELE v. GOODMAN, 17-CV-00601-MHL

14.    **EXHIBIT I** (ECF Doc. No. 139) is a screen shot of an apparent DEFANGO TV
YouTube podcast (see above).  The "super-chat" portion of the video screen shot appears below.



15.    According to your pleading, you want this Court to believe that the alleged illustrated
$20.00 "super chat" donation to DEFANGO TV (displayed in the unauthenticated exhibit – see
above), with the text "Check Mate King Two this is White Rook OVER", provides evidence that
"Chavez is an associate.."[ of undersigned]  and "Prepper Kitty Intel has paid Chavez…".
[$20.00].

16.    At the outset, there is no Internet URL Internet address provided in **EXHIBIT I**, ECF
Doc. No. 139.  By NOT providing the correct evidentiary basis for this "exhibit" (which has
been explained to you via letters in this litigation and other litigation) this exhibit is moot.

17.    There are other issues associated with your ECF Doc. No. 139, para. 20 (see above).
There are legal insufficiencies associated with your "evidence", for example: (i) whether or not
the purported *evidence* you propound rises to the level of sufficiency in the light of the Federal
Rules of Evidence (F.R.E.), and (ii) your use of hearsay and guilt by association in an attempt to
attribute *Black Cube rumor* comments to the undersigned and NOT to ref: (a) (DEFANGO) (as
broadcast in the video you have described as **EXHIBIT I**, to ECF Doc. No. 78).  This is a
falsehood and an attempt to mislead the Court.

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER: STEELE v. GOODMAN, 17-CV-00601-MHL

18.    In sum, you expect the Court to believe that an alleged public "super-chat" donation of a
$20.00 donation to ref: (a) (DEFANGO) 30-45 days ago is the equivalent of the alleged private
(non-public) $1,500.00 PATREON donation made by "AMABISS" to ref: (a) (DEFANGO)
purportedly made 18 months ago.  You have misrepresented these facts to the Court to Y
promote the fallacy that the undersigned is working with members of the DEFANGO conspiracy.

19.    Caveat: for your information **"Check Mate King Two this is White Rook OVER"**
(which appears in the above illustrate "super-chat" text) is a comical reference to the radio call
signs used in the 1960's World War II drama television series "COMBAT" staring Rick Jason
and Vic Morrow.  Below is an example of the television show.



COMBAT! s.1 ep.3: "Lost Sheep, Lost
Shepherd" (1962)

Internet URL:  https://www.youtube.com/watch?v=r35lw9CWk-g&t=24s

20.    Your attention is directed to the following YouTube channel named "MERLIN
DEFANGO", which is maintained by ref: (a) (see below).

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER: STEELE v. GOODMAN, 17-CV-00601-MHL



21.    As you are well aware, you placed a telephone call to ref: (a) (DEFANGO) while he was conducting a livestream YouTube broadcast (similar to your use of livestream technology during the closure of the Port of Charleston on June 14, 2017).  Your conversation you're your CSTT side-kick is available within the YouTube video content (see below) posted by ref: (a) (DEFANGO).



Streamed live on Jun 26, 2019
VAPORTUBE. WERE ya Been defango????

**Internet URL:  https://www.youtube.com/watch?v=11dhF6m1-9g&t=7523s**

13

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER: STEELE v. GOODMAN, 17-CV-00601-MHL


The Joyride Vampire and
PsyOpera Bats - BreakfastClub ...
588 views • 1 week ago


Late Night with Merlin Defango -
Isotopium: Chernobyl Reboit
184 views • 1 week ago


Homeward Bound and Trouble in
Larptown- Merlin defango 6-30-...
932 views • 1 week ago


Viva las Trump Drivetime to
vegas - Merlin defango 6-30-20'...
548 views • 1 week ago


Viva las Trump Drivetime to
vegas - Merlin defango 6-30
70 views • 1 week ago


New surface go Day 2 D R I V E
W A V E merlin defango
568 views • 1 week ago


Day 1 - D R I V E W A V E VIVA
MERLIN Defango 6-26-2019
931 views • 1 week ago


Daywave Florida defango
533 views • 3 weeks ago


Daywave defango nightwave
Florida meetup
632 views • 3 weeks ago


#doxgate Reloaded- Reveng
the Unirock #BlueAvians #S
1,077 views • 4 weeks ago

22.    Your conversation commences at time-mark 42:35 and is as follows (excerpts):

### TRANSCRIPT OF DISCUSSION

REF: (A):        Oh, Jason Goodman is calling me.  Hello Jason Goodman.

GOODMAN:        Manual Chavez, how are you.

REF: (A):        I am doing alright, just heading to Arizona right now.

GOODMAN:        OH, ok.  So I guess you are in a bit of a drive.  I don't know if you had a
                chance to see my messages, but one thing I would really like to get – if
                your able to send it – is either a screen capture from Patreon of . uh .. the
                dash board, or the initial e-mail Patreon that sends you that says
                AMABISS has become a Patreon and shows an e-mail of that account.

...

REF: (A):        I can send that over to you no problem, actually.  Garble.  I actually did
                get that e-mail  . and .. all .. uh .. and I have a couple of messages for how
                ever many months she was on my thing and I will send you like a copy of
                that it shows the date and what e-mail she was using.

....

14

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER: STEELE v. GOODMAN, 17-CV-00601-MHL

GOODMAN:        Something you would write to the Bar Association saying "hey, look, this
                judge determined that it is likely that Biss is making these inappropriate
                payments.  He is not supposed to be paying you, if you're his client, and
                particularly if that payment is coming at a time you are engaged in
                activities like making videos about his lawsuit, that spread allegations out
                across the Internet, that aren't true.  Things like that.  So, that is my
                position that he had someone paying you to do that stuff.  **He's been
                working with Robert David Steele, you were working for Robert
                David Steele, at the time, Sweigert [undersigned] was working with
                you, Tyroan Simpson was working with you and Sweigert and these
                are the elements of conspiracy.**


REF: (A):       Yeah, I mean you got the conspiracy down pretty well.  I mean. I will send
                you everything that shows she was on my Patreon and she was paying me
                on Patreon, for sure.  **But, was I working in concert with Dave Acton
                [undersigned] and those guys, yeah, f_ck it, why not.  I will say
                whatever.  (Laughter)**
                [emphasis added]


### SUMMARY

23.     It appears that you have intentionally conflated the undersigned with ref: (a)
(DEFANGO) in a fraudulent manner to support the *Black Cube rumor* narrative.  Overwhelming
evidence indicates that this rumor is directly and solely traceable to ref: (a) (DEFANGO) and
NOT the undersigned.  Nonetheless, you continually ask this Court to believe in this falsified
narrative based on flimsy tainted and unauthenticated evidence, which you present in a glossed
over manner.

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
MATTER: STEELE v. GOODMAN, 17-CV-00601-MHL

24.     It appears that you have intentionally conflated the undersigned with ref: (a)
(DEFANGO) in a fraudulent manner to support the *Black Cube rumor* narrative.  Overwhelming
evidence indicates that this rumor is directly and solely traceable to ref: (a) (DEFANGO) and
NOT the undersigned.  Nonetheless, you continually ask this Court to believe in this falsified
narrative based on the most flimsy tainted and unauthenticated evidence, which you present in a
glossed over manner to the Court.

25.     It appears from the foregoing that your issues should be with your CSTT side-kick ref:
(a) (DEFANGO) and not me.  Your continued accusations regarding the undersigned's
involvement in a conspiracy with DEFANGO (ref: (a)) appear to be fraudulent on their face.

I hereby attest that the foregoing is true and accurate under the penalties of perjury on this ___ /

day of July, 2019.

D. G. SWEIGERT

7·11·19

16

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

ROBERT DAVID STEELE,

                                    Plaintiff,          17-CV-00601-MHL

            -against-

JASON GOODMAN,

                                    Defendant.

### CERTIFICATE OF SERVICE

It is hereby certified that the accompanying materials have been placed in the U.S. Postal Service

with First Class mail postage affixed and addressed to the following parties:

| | | |
|---|---|---|
| Clerk of the Court | Jason Goodman | Susan A. Holmes |
| U.S. District Court | 252 7th Avenue | ( Lutzke ) |
| 701 E. Broad St. | Suite 6-S | 2608 Leisure Drive |
| Richmond, VA 23219 | New York, NY 10001 | Apt. B |
| | | Ft. Collins, CO 80525 |

I hereby attest that the foregoing is true and accurate under the penalties of perjury on this __/

day of July, 2019.

                                    D. GEORGE SWEIGERT, C/O
                                    P.O. BOX 152
                                    MESA, AZ 85211

7·11·19

1