*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC-SDA*



RECEIVED
AUG 2 4 2020
PRO SE OFFICE

**U.S. DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**
**(FOLEY SQUARE)**

| D. George Sweigert<br><br>**Plaintiff**<br><br>v.<br><br>Jason Goodman<br><br>**Defendant** | CIVIL CASE #: 1:18-CV-08653-VEC<br><br>JUDGE VALERIE E. CAPRONI<br><br>MAGISTRATE STEWART D. AARON |
|---|---|

## PLAINTIFF'S NOTICE OF MOTION
## PURUSUANT TO FRCP RULE 15(d)
## FOR LEAVE TO FILE FIRST SUPPLEMENTAL COMPLAINT

This Memorandum of Law is submitted pursuant to **7.1 (a)(2) and 7.1 (b)** to support a **MOTION FOR LEAVE PURSUANT TO FRCP RULE 15(d)** to file a **SUPPLEMENTAL COMPLAINT** which accompanies this motion.

I hereby certify that the attached pleadings are truthful and accurate (to the best of my knowledge) and are not submitted for the purposes of oppression of the Defendant. A certificate of service is included on the last page of this document.

Signed this  21  day of August, 2020.

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

1

# TABLE OF CONTENTS

Contents

TABLE OF CONTENTS ........................................................................................................... 2

LIST OF AUTHORITIES .......................................................................................................... 3

PROCEDURAL BACKGROUND ............................................................................................. 5

INTRODUCTION ...................................................................................................................... 6

LAW AND DISCUSSION ......................................................................................................... 6

SUMMARY .............................................................................................................................. 13

CERTIFICATE OF SERVICE ................................................................................................. 15

# LIST OF AUTHORITIES

**Cases**

Conley v. Gibson, 355 U.S. 41, 48 (1957) .......................................................................... 14

Dillon v. City of New York, 704 N.Y.S.2d 1, 7 (N.Y.App.Div. 1999). ............................. 12

Dolan v. Select Portfolio Servicing, Inc., No. 13-cv-1552, 2014 WL 4662247, at *7 (E.D.N.Y. Sept. 18, 2014) .................................................................................................................. 14

Foman v. Davis, 371 U.S. 178 (1962) ................................................................................. 8

FTC v. Devumi, LLC and German Calas, Jr.,No. 9:19-cv-81419 (S.D. Fla. Oct. 18, 2019) ....... 10

Griffin v. County School Board of Prince Edward County, 377 U.S. 218, 226-27 (1964) ............ 7

Growblox Scis., Inc. v. GCM Admin. Servs., LLC, No. 14-CV-2280 (ER), 2016 WL 1718388, at *4 (S.D.N.Y. Apr. 29, 2016) .............................................................................................. 8

Keith v. Volpe, 858 F.2d 467, 475 (9th Cir. 1988) at 475 .................................................. 7

LaSalvia v. United Dairymen of Arizona, 804 F.2d 1113, 1119 (9th Cir. 1986), cert. denied, 482 U.S. 928 (1987) ................................................................................................................... 7

Liberman v. Gelstein, 80 N.Y.2d at 436, 590 N.Y.S.2d 857, 605 N.E.2d 344 ................. 13

Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25 (1995) ................................................................................................................................ 14

Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995) ................................................. 7

Rowe v. U. S. Fid. & Guar. Co., 421 F.2d 937, 944 (4th Cir. 1970) ................................... 7

Van–Go Transp. Co., Inc. v. N.Y.C. Bd. of Educ., 971 F.Supp. 90, 98 (E.D.N.Y.1997) ............ 13

Witkowich v. Gonzales, 541 F. Supp. 2d 572, 590 (S.D.N.Y. 2008) .................................. 7

**Statutes**

New York Civil Rights Law §§ 50-51 .................................................................................. 6

New York General Business Law §§ 349-350 .................................................................... 6

New York State (NYS) General Business Law §§ 349-350 ................................................ 8

**Rules**

Fed. R. Civ. Proc. Rule 15(d) .................................................................................................. 6

Rule 15 ..................................................................................................................................... 7

Rule 15(d) ............................................................................................................................ 6, 7

**Treatises**

Press Article, dated 10/28/2019, entitled, "Social Media Bot Company Devumi LLC Reaches $2.5 Million Settlement with FTC for Sale of Misleading Social Media "Influence Indicators" .................................................................................................................................... 10

Press Release of 01/30/2019 entitled, "Attorney General James Announces Groundbreaking Settlement With Sellers Of Fake Followers And "Likes" On Social Media, Settlement is First in the Country to Find that Selling Fake Followers and "Likes" Is Illegal Deception and that Fake Activity Using Stolen Identities Is Illegal Impersonation" ............................................... 10

## PROCEDURAL BACKGROUND

1.      This instant lawsuit was transferred to the Southern District of New York (S.D.N.Y.) from the District of South Carolina on 09/21/2018 (Dkt. 30). The original lawsuit contained a complaint and an amended complaint filed for the South Carolina jurisdiction (Dkt. 1, 06/14/2018 and Dkt. 5, 6/29/2018, respectively). One year ago, presiding judge Hon. Valeria Caproni issued an ORDER (8/20/2019, Dkt. 87) which, among other things stated that the "Plaintiff appears to regard himself as a roving knight in shining armor, intent on vindicating, through lawsuit, the rights of anyone harmed by the Defendant's nonsensical ranting. [pg. 8 of 14]" Further, the ORDER stated, "Goodman asserts that Sweigert is part of an organized campaign that has engaged in "wanton and willful tortuous interference, defamation, slander, harassment, invasion of privacy, infringement of first amendment rights, menacing and stalking." Dkt. 44. Apart from these conclusory statements, Goodman has not set forth any facts to support any of his claims." (pg. 12 of 14). This ORDER permitted the filing of a Second Amended Complaint (SAC) by the *pro se*Plaintiff (filed 9/10/2019, Dkt. 88). The ORDER also dismissed Def. Goodman's "counter-claims" (Dkt. 44). In response to the SAC (Dkt. 88) Def. Goodman sought to file his second counter-claim with an enlargement of time (via Dkt. 104, filed 11/18/2019). The Def's enlargement of time request was approved by the Magistrate via Dkt. 102 (11/14/2019). Def. filed his second COUNTERCLAIM VERIFIED COMPLAINT against the Plaintiff on 12/05/2019 (Dkt. 122). By ORDER of 08/03/2020 (Dkt. 140) the presiding judge once again dismissed the Goodman counter-claims (Dkt. 122); but, authorized another refilling of a third counter-claim by Goodman prior to August 31, 2020. Additionally, the ORDER (Dkt. 140) stated, "WHEREAS this action involves two *pro se* litigants whose occupations appear to consist chiefly of concocting outlandish conspiracy theories and accusing one another of criminal

5

conduct and misbehavior on the internet, see Dkt. 87" and "while most of the parties' alleged conduct (and indeed their mutual recriminations throughout this litigation) is patently ridiculous, it is not legally outrageous"

## INTRODUCTION

2. The Plaintiff now seeks the Court's Leave to File the FirstSupplemental Complaint (FSC) that seeks injunctive relief from the continuous tortious acts of the Defendant (Def.), on-going since the filing of the SAC (Dkt. 88). This Leave to File should be granted pursuant to the Fed. R. Civ. Proc. Rule 15(d).

3. <u>**No**</u> supplemental information or allegations are provided in the accompanying [Proposed] FSCwith regards to the cause of action for <u>Intentional / Negligent Infliction of Emotional Distress (IIED/NIED)</u>; asserted in the SAC (Dkt. 88) but dismissed by ORDER (Dkt. 140).

4. All other information in the proposed FSC relates back to the surviving three (3) causes of action (New York General Business Law §§ 349-350, Defamation Per Se and New York Civil Rights Law §§ 50-51).

5. As explained below, the [Proposed] FSC is proper under Rule 15(d) and the facts presently before the Court,for this reason the Motion for Leave to File the FSC should be granted.

## LAW AND DISCUSSION

6. The Plaintiff's Motion should be granted for at least two reasons. First, granting this motion would advance the purpose of Rule 15(d), because it will promote a complete adjudication of the dispute between the parties. Second, Def. Goodman will not be prejudiced by the supplemental pleading. To this end, courts "liberally construe Rule 15(d) absent a showing of

prejudice to the defendant." Keith v. Volpe, 858 F.2d 467, 475 (9th Cir. 1988) at 475. Rowe v. U. S. Fid. & Guar. Co., 421 F.2d 937, 944 (4th Cir. 1970) (reversing district court's denial of leave to file supplemental complaint because no prejudice to defendant was shown).

7. The Supreme Court has held that Rule 15(d) "plainly permits" supplementing a complaint to cover events happening after the original suit was filed. See Griffin v. County School Board of Prince Edward County, 377 U.S. 218, 226-27 (1964) (allowing supplemental complaint filed 10-years after original action filed, and after judgment entered).

8. As a general matter, Rule 15(d)"reflects a liberal policy favoring a merit-based resolution of the entire controversy between the parties." Witkowich v. Gonzales, 541 F. Supp. 2d 572, 590 (S.D.N.Y. 2008) (internal quotation marks and citations omitted); Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted).

9. Rule 15(d)provides, in pertinent part, "Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as is possible. LaSalvia v. United Dairymen of Arizona, 804 F.2d 1113, 1119 (9th Cir. 1986), cert. denied, 482 U.S. 928 (1987). The decision to grant a Rule 15 motion rests within the sound discretion of the district court, and leave to file a supplemental pleading should be freely granted when the supplemental facts connect it to the original pleading. Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995).

10. Absent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, the motion should be freely granted. Foman v. Davis, 371 U.S. 178 (1962).The "burden is on the non-moving party to demonstrate the existence of such

grounds." GrowbloxScis., Inc. v. GCM Admin. Servs., LLC, No. 14-CV-2280 (ER), 2016 WL 1718388, at *4 (S.D.N.Y. Apr. 29, 2016). This Court should exercise its discretion and grant this Motion.

## *INJURY AND HARM TO THE PUBLIC*

11. Plaintiffs' [Proposed] FSC alleges in detail how Def. Goodman has continued to broadcast, via his 13 social media properties, harmful content to the general public in contravention of the New York State (NYS) General Business Law §§ 349-350.

12. Def. Goodman has potentially harmed innocent members of the public by broadcasting the discredited theories of Judy A. Mikovits, PhD, who is not a medical doctor. Lacking disclaimers, misrepresenting academic credentials (PhD vs. M.D.), etc. can indeed harm gullible members of the public that follow Goodman's "quack" medical advice. Goodman's COVID-19 pandemic broadcasts have pushed suggestions to his audience in open defiance of the general emergency orders established by the Governor of New York (e.g. social distancing and face mask coverings are a scam and hoax). For this type of harmful content, Def. Goodman has temporarily been censored by YouTube via the de-monetization of his podcast channels (non-ability to allow third-party advertisements during his podcast shows). The Plaintiff has standing to sue Def. Goodman under Sections 349 and 350 so long as "some harm to the public at large is at issue." Weight Watchers Intern., Inc. v. Stouffer Corp., 744 F. Supp. 1259, 1284 (S.D.N.Y. 1990).



Above: Defv. Goodman's podcast of 05/06/2020 entitled, "Silence of the Medical Scams". Dr. Judy Mikovits (left) and Dr. Anthony Fauci, National Institute of Health (right). Judy A. Mikovits is a PhD and not a M.D.

## *OPINION OF THE NEW YORK ATTORNEY GENERAL*

13. The FSC alleges that Def. Goodman is in the regular practice of inflating the credibility of his CROWDSOURCE social media properties via the use of "bots" and "sock puppet" accounts and other artificial means (to create the false appearance of grass roots support and organic public consensus).

14. To illustrate the nature of "sock puppets", "They are writing a computer program that will create bots—automated agents that will each browse the Internet and interact with websites as a human user might. Each bot will create a number of distinct user profiles, each of which is called a "sock puppet." See <u>Sandvig v. Sessions</u>, (Mar. 30, 2018) 315 F. Supp. 3d 1 (D.D.C. 2018).

15. Again, to illustrate, "In Nunes, an author created multiple pseudonymous online accounts (called "sock puppet" accounts) and then used those accounts on Amazon to post positive reviews about her books and negative reviews about another author's books. Nunes, 299 F. Supp.

3d at 1222-23". Vitamins Online, Inc. v. HeartWise, Inc., Case No. 2:13-cv-00982-DAK (D. Utah Sep. 24, 2019).

16. In a Press Release of 01/30/2019 entitled, "Attorney General James Announces Groundbreaking Settlement With Sellers Of Fake Followers And "Likes" On Social Media, Settlement is First in the Country to Find that Selling Fake Followers and "Likes" Is Illegal Deception and that Fake Activity Using Stolen Identities Is Illegal Impersonation" the New York Attorney General (NY AG) stated:

> NEW YORK – Attorney General Letitia James today announced a precedent-setting settlement over the sale of fake followers, "likes," and views on social media platforms, including Twitter and YouTube, using fake activity from false accounts.
> …
> "Bots and other fake accounts have been running rampant on social media platforms, often stealing real people's identities to carry out fraud," said **Attorney General Letitia James**.
> …
> The fake followers, "likes," and other activity that Devumi sold came from computer-operated accounts ("bot accounts") or by one person pretending to be many other people ("sock-puppet accounts"). Such accounts, found on social media platforms including Twitter, YouTube, LinkedIn, SoundCloud, and Pinterest, pretended to express genuine opinions of real people, when they actually reflected false, paid-for activity aimed at deceiving online audiences and the public.
> …
> These bot and sock-puppet accounts falsely pretended to express the genuine positive opinions of real people. In some instances, Devumi supplied fake accounts that copied real people's social media profiles without consent, including their name and picture.
>
> https://ag.ny.gov/press-release/2019/attorney-general-james-announces-groundbreaking-settlement-sellers-fake-followers

17. To amplify the position of the N.Y. A.G. the U.S. Federal Trade Commission (F.T.C.) has brought an action in this arena since the filing of the SAC (Dkt. 88). See generally FTC v. Devumi, LLC and German Calas, Jr., No. 9:19-cv-81419 (S.D. Fla. Oct. 18, 2019). See Press Article, dated 10/28/2019, entitled, "Social Media Bot Company Devumi LLC

Reaches $2.5 Million Settlement with FTC for Sale of Misleading Social Media "Influence Indicators".

> On October 21, 2019, the Federal Trade Commission ("FTC") settled its first-ever complaint against a company for selling fake indicators of social media influence such as phony likes, follows, views, and subscribers to users on Twitter, LinkedIn, YouTube, Pinterest, Vine, and SoundCloud.
> …
> The enforcement action is notable because it signals the FTC's broad repudiation of an increasingly widespread practice on social media platforms by "influencers" and other social media users endeavoring to expand their popularity and brand by promoting artificial audience engagement. In pursuing this conduct, the FTC resorted to a standard tool in its toolbox: the prohibition of "unfair or deceptive acts or practices in or affecting commerce" under Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). According to the FTC, indicators of social media influence are important metrics that businesses and individuals use in hiring, investing, and purchasing decisions, and enabling people to portray themselves falsely as influencers would allow them to deceive potential clients, investors, and employees.
> …
> Implications
>
> In recent years, the burgeoning market of false social media influence appeared to be a "legal gray zone." The FTC's enforcement action against Devumi suggests that this gray area may be hardening into an active part of the government's enforcement agenda. This has a number of implications, including for companies that hire services that promise to boost their social media following or companies that market using influencers; these companies may come under increased pressure to take steps to ensure that their efforts do not rely on false support. Likewise, because automated users may account for a significant portion of social media engagement, potential regulatory enforcement should remain a serious consideration for companies operating within the social media environment. Indeed, just this past week, technology reporters have noted that there are "still plenty of places" to purchase fake influence indicators online.
>
> https://www.paulweiss.com/practices/litigation/data-innovation-privacy-cybersecurity/publications/social-media-bot-company-devumi-llc-reaches-25-million-settlement-with-ftc-for-sale-of-misleading-social-media-influence-indicators?id=30140

## *INVASION OF PRIVACY CLAIMS*

18.     As detailed in the [Proposed] FSC since the filing of the SAC (Dkt. 88) Def. Goodman has invaded the privacy of the Plaintiff by the reprehensible distribution of information about the Plaintiff's handicapped son that has no connection with this controversy whatsoever.

## *CONTINUED SLANDER, LIBEL AND DEFAMATION PER SE*

19. The [Proposed] FSC also documents the continued slander, libel and defamation *per se* remarks, statements, and published content pushed by Def. Goodman onto the general public as part of his podcasts which are an enticement and solicitation to join Goodman's credit card processer PATREON and/or SubscribeStar(to effect transfer funds to Goodman's commercial enterprise by members of the public).

## *IRREPARABLE HARM TO THE PLAINTIFF*

20. Under New York common law, Def. Goodman's statements about the Plaintiff represent defamation per se. Goodman has specifically targeted to the Plaintiff's moral character to injure and harm the Plaintiff's career, public reputation and standing in his professional community. Each and every time Def. Goodman's distributes his slander and libel, via the means of Google Search Engine Optimization (S.E.O.) there is a cumulative effect that severely impacts the Plaintiff's ability to adequately market his professionals services and background via the Internet. Def. Goodman knows this, and is extremely precise in the targeting of the Plaintiff's name, reputational credentials and insinuations and slander as to lack of moral turpitude, mental illness, wife swapping, being a deadbeat dad, etc. These comments and false statements are designed to ruin the Plaintiff's life and career via public humiliation and professional injury. These statements are not presented as editorial or opinion but stated as fact.

21. Plaintiff has demonstrated the following elements in the proposed FSC: (1) a false statement, (2) published without privilege or authorization to a third party, (3) constituting fault as judged by, at a minimum, a negligence standard, and (4) that such publishing either caused special harm or constituted defamation *per se.* Dillon v. City of New York, 704 N.Y.S.2d 1, 7 (N.Y.App.Div. 1999).

22. Defendant's constant barrage of defamatory statements have and will continue to cause irreparable harm. The remedies available at law will be inadequate to compensate Plaintiff. If injunctive relief is granted, the balance of hardships clearly favors Plaintiff in that the only hardship Defendant will suffer is that he will no longer be permitted to publish his defamatory remarks. Further, the public interest will not be disserved by issuing a permanent injunction.

23. The "trade, business or profession" exception is only available when the defamation is "of a kind incompatible with the proper conduct of the business, trade, profession, or the office itself." Liberman v. Gelstein, 80 N.Y.2d at 436, 590 N.Y.S.2d 857, 605 N.E.2d 344;see also Van–Go Transp. Co., Inc. v. N.Y.C. Bd. of Educ., 971 F.Supp. 90, 98 (E.D.N.Y.1997) ("Reputational injury to a person's business or to a company consists of a statement that either imputes some form of fraud or misconduct or a general unfitness, incapacity, or inability to perform one's duties.").

## SUMMARY

24. There is a need for this Court to have an accurate appraisal of Def. Goodman's podcasts that are harmful to the public. A complete understanding of the "CROWDSOURCE" harmful content contained in the proposed FSC will help dispel any false impressions held by the Court that the Def. is merely a "conspiracy theorist" with "outlandish" podcast content. To the contrary, the content proffered by Def. Goodman with his commercial enterprise can indeed harm members of the public.

25. In the intervening time since the filing of the SAC (Dkt. 88) there have been significant developments in the area of "bots" and "sock puppet" accounts that are used to build the credibility of social media influencers like Def. Goodman's CROWDSOURCE social media properties.

26.  The acts and practices of Def. Goodman in using the commercial trademark "CROWDSOURCE THE TRUTH" ™ and his 13 social media platforms has a broad impact on consumers at large. Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25 (1995). Def. Goodman directs his conduct to the consuming public at large to obtain "patrons" on his Patreon.Com / SubscribeStar.Com credit card processing service. Dolan v. Select Portfolio Servicing, Inc., No. 13-cv-1552, 2014 WL 4662247, at *7 (E.D.N.Y. Sept. 18, 2014).

27.  Allowing the proposed supplemental claims to proceed as part of this case would therefore serve the interests of the general public, public policy and judicial economy. Finally, the purpose of pleading "is to facilitate a proper decision on the merits" and avoid the dismissal of potentially meritorious claims due to procedural missteps. Conley v. Gibson, 355 U.S. 41, 48 (1957).

This pleading is believed to be truth and accurate and not submitted for the purposes of delay, unnecessary hinderance or for a dilatory tactic. So said under oath.

/s/ D.G. Sweigert
**D. G. SWEIGERT, C/O
GENERAL DELIVERY
ROUGH AND READY, CA 95975
*Spoliation-notice@mailbox.org***

2) AUG 20

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

## CERTIFICATE OF SERVICE

I HEREBY ATTEST that a true copy of the attached pleadings have been sent to the following addressees on the 21 day of August 2020 via prepaid First Class U.S. Mail.

Jason Goodman, CEO
Multi-media Design Systems, Inc.
252 7th Avenue, Apart. #6S
New York, NY 10001

PRO SE OFFICE, Room 200
U.S. District Court
500 Pearl Street
New York, New York 10007-1312

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

15

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
(FOLEY SQUARE)



RECEIVED
AUG 24 2020
PRO SE OFFICE

| D. George Sweigert<br><br>**Plaintiff**<br><br>v.<br><br>Jason Goodman<br><br>**Defendant** | **CIVIL CASE #: 1:18-CV-08653-VEC**<br><br>**JUDGE VALERIE E. CAPRONI**<br><br>**MAGISTRATE STEWART D. AARON** |
|---|---|

## PLAINTIFF'S MEMORANDUM OF LAW TO SUPPORT MOTION PURUSUANT TO FRCP RULE 15(d) FOR LEAVE TO FILE FIRST SUPPLEMENTAL COMPLAINT

This Memorandum of Law is submitted pursuant to **7.1 (a)(2) and 7.1 (b)** to support a **MOTION FOR LEAVE PURSUANT TO FRCP RULE 15(d)** to file a **SUPPLEMENTAL COMPLAINT** which accompanies this motion.

I hereby certify that the attached pleadings are truthful and accurate (to the best of my knowledge) and are not submitted for the purposes of oppression of the Defendant. A certificate of service is included on the last page of this document.

Signed this 21 day of August, 2020.

D. G. S——

D. G. SWEIGERT, C/O
GENERAL DELIVERY
ROUGH AND READY, CA 95975
*Spoliation-notice@mailbox.org*

1





**USPS PRIORITY MAIL**

Tracking #: 9114 9023 0722 4599 6489 68

EP14F Oct 2018
OD: 12 1/2 x 9 1/2

RECEIVED AUG 24 2020 PRO SE OFFICE

PRO SE OFFICE # 200

**FROM:**
D. George Sweigert,
c/o General Delivery
Rough and Ready, CA 95975
Spoliation-notice@mailbox.org

**TO:**
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
PRO SE OFFICE, Room 200
U.S. District Court
500 Pearl Street
New York, New York 10007-1312

NEOPOST
$007.75
08/21/2020 ZIP 95603
US POSTAGE