

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**(FOLEY SQUARE)**

| | |
|---|---|
| SWEIGERT | CIVIL CASE #: |
| V. | 1:18-CV-08653-VEC |
| GOODMAN | JUDGE VALERIE E. CAPRONI |
| And | |
| MULTISYSTEM DESIGN, INC. (MSDI), A NEW YORK CHARTED CORPORATION [PROPOSED] | |

<u>**PLAINITIFF'S VERIFIEDSUPPLEMENTAL COMPLAINT**</u>

<u>**WITH REQUEST FOR INJUNCTIVE RELIEF**</u>

<u>**(PROPOSED AND CORRECTED)**</u>

**STATEMENT AND VERIFICATION**

This pleading is true to the knowledge of the undersigned, except as to matters alleged on

information and belief, and that as to matters that the undersigned believe are true.  **See N.Y.**

**C.P.L.R. 3020.**

Signed under penalty of perjury,

D. George Sweigert,
c/o General Delivery
Rough and Ready, CA 95975
Spoliation-notice@mailbox.org

8.22.20

1

## PROCEDURAL HISTORY

Pursuant to Fed. R. Civ. Proc. Rule 15(d), the Plaintiff files this supplemental complaint as a

continuation of his challenge to the unfair business practices, slander, defamation *per se*, libel

and invasion privacy perpetrated by the Defendant Jason Goodman and his CROWDSOURCE

THE TRUTH ™ social media empire through Multisystem Design, INC. (MSDI), which is a

New York chartered corporation.

The Plaintiff/undersigned hereby accepts the version of facts and case history as expressed in

ORDER AND OPINION, Dkt. 27, ORDER TO SHOW CAUSE, Dkt. 65, MEMORANDUM

AND ORDER, Dkt. 87, ORDER, Dkt. 140 (save for Fed. R. Civ. Proc. Rule 59(e) motion) as if

fully restated herein.

This supplemental complaint incorporates by reference the factual and legal allegations of the

Plaintiffs' Second Amended Complaint (Dkt. 88) filed 09/11/2019 (SAC) and raises new

allegations based on events, linked to the allegations of the SAC (Dkt. 88).

It is necessary to add the business entity operated by Defendant Jason Goodman as a proper party

to this instant lawsuit.  As the Court has observed, Jason Goodman is inextricably intertwined

with his "CROWDSOURCE THE TRUTH" ™ social media operations controlled by the New

York State (N.Y.S.) charted corporation Multisystem Design, Inc. (MSDI), which owns the U.S.

Patent and Trademark Office (USPTO) trademark for "CROWDSOURCE THE TRUTH"™.

The U.S.P.T.O. trademark document identifies Jason Goodman as "CEO" of MSDI with the

same address as listed by the Defendant in this instant litigation.

This complaint has been edited for judicial efficiency as a supplemental complaint.  This

pleading encompasses the tortuous acts, and subsequent affirmative defenses, of the Defendant

(Def.) Jason Goodman that have occurred since the filing of the SAC (Dkt. 88).

As stated by this Court in <u>McLean v. Scully</u>, No. 90-2590, 1991 WL 274327 *1 (S.D.N.Y.

December 9, 1991) it is entirely appropriate for new defendants to be added via a Rule 15(d)

supplemental pleading under circumstances such as these.  See also, <u>Rodriguez v. Conway</u>, No.

10-6243L, 2011 WL 4829725 *1 (W.D.N.Y. September 6, 2011) ("Supplemental relief may

include the addition of new defendants," permitting supplemental complaint under Rule 15(d)

adding new party).

## **BACKGROUND**

1.      Plaintiff relies on and incorporates the SAC (Dkt. 88) in this matter, which provides an

extensive discussion of the factual and legal background of the tortuous acts of the Defendant.

These supplemental claims are tightly bound to the allegations of the SAC (Dkt. 88).

2.      New York City resident Defendant (Def)Jason Goodmanstated in an e-mail message of

04/11/2020 that he is the "CEO" of Multisystem Design, INC. (MSDI), which is a New York

chartered corporation that holds the trademark "CROWDSOURCE THE TRUTH" ™.



Above:  Abbreviated e-mail message of Def. Goodman of 04/11/2020

3.      In an e-mail message to the presiding magistrate Def. Goodman has stated that: (1)

YouTube is his "online business", (2) the he is "live streaming daily broadcasts", (3) to an

audience of "85,000 viewers", and (4) "[o]nline broadcasting is my full time job and primary

source of income".

> **Jason Goodman** <truth@crowdsourcethetruth.org>                                    11/13/2019 7:53 PM   ☆  ⫶    **JG**
> **To** Aaron_NYSDChambers@nysd.uscourts.gov   **Copy** David George Acton Sweigert
>
> Reply   Reply all   Forward   Delete   ☰
>
> Thank you your honor, however Mr. Outtrim's inappropriate actions have revealed new evidence that is extremely
> significant and must be included in my answer.  Outtrim's latest action provides further proof of the alleged conspiracy
> between Plaintiff and others including Outtrim. This causes me to request that you reconsider today's order given the
> following circumstances:
>
> Irrespective of Mr. Outtrim's denial of intervention, his reason for attempting to intervene changes my answer and
> requires additional time to complete. Prior to emailing you inappropriately, Mr. Outtrim submitted a fraudulent complaint
> to YouTube that has crippled my online business by preventing me from live streaming my daily broadcasts to my
> audience of 85,000 viewers.  This has negatively impacted my income and is a clear example of the ongoing extrajudicial
> steps Plaintiff and his associates have taken in their persistent and escalating effort to disrupt my day to day life, my
> business and my ability to defend myself in this legal mater.
>
> Online broadcasting is my full time job and primary source of income.  The YouTube penalty will continue indefinitely IF
> Outtrim is able to demonstrate to Google that he has an active lawsuit against me for the same claim he has submitted to
> YouTube.  It is extremely important to my defense that I have the additional time requested so I may adequately explain
> and present the relevant facts and details related to shed light on this newest development and so the court may consider
> these facts in rendering its decision.
>
> I respectfully request that you reconsider the order and allow me the time extension.  I stand ready to submit another
> motion for extention of time if that would please the court.
>
> Jason Goodman, Defendant Pro Se
>
> *Please note jasongoodman72@protonmail.com  is not a valid email address for Defendant and has been inappropriately
> introduced into these proceedings by Plaintiff

Above:  e-mail message of Def. Goodman of 11/13/2019

4.      Def. Goodman and/or MSDI operates over thirteen (13) social media outlets on such

platforms as YouTube, PATREON, Twitter, Facebook, Dlive, SubscribeStar, etc.) under the

brand known as **"CrowdSource The Truth"™** (CSTT).  CSTT is a consumer-oriented brand

that uses advertising in disguise to solicit monies from the public at large via PayPal,

PATREON, SubscribeStar (third party credit card processors) via CSTT's massive social media

outreach.

5.      Def. Goodman and/or MSDI employs automatic "bot" service, "sock pocket" accounts

and other artificial techniques to create fake phony social media consensus for his opinions on

these CSTT properties.  The Attorney General of New York State (NYS) has determined on

01/30/2019 that such practices are illegal pursuant to the NYS General Business Law (GBL) §§

349 – 350.

4

6.      Millions of CSTT viewers have heard the intentional slurs, slander, misrepresentations

and malice directed at the Plaintiff by the Defendant in an attempt to undermine the Plaintiff's

career in the area of critical infrastructure protection – a field the Plaintiff has been active in for

over two decades.  Def. Goodman, acting via MSDI, uses these fake consensus "bots" and "sock

puppet" accounts to persuade viewers that his opinions about the Plaintiff are endorsed by a

multitude of members of the general public.  This is illegal pursuant to the NYS GBL.

7.      Def. Goodman is alleged to be engaged in the smearing of the Plaintiff to create questions

as to the Plaintiff's moral turpitude with concoctedoutlandish false statements concerning the

Plaintiff, such as: alleged (1) "wife swapping" (sexual activity in which two or

more married couples exchange partners), (2) "deadbeat dad"(people who have parented a child

and intentionally fail to pay child support ordered by a family law court) and(3) "cyber stalker"

(the use of electronic communication to harass or threaten someone with physical harm), etc.

The Plaintiff has never engaged in such activities.

8.      In fact, the reverse is true.  The Plaintiff is a member of the National Eagle Scout

Association, an honorably discharged veteran of the U.S. Air Force (1979-1983), holds two

master's degrees (Project Management and Information Security) and a dozen peer-vetted

industry credentials (see example below).



Above:  Plaintiff's credential "Certified in Homeland Security – Level III"

9.      In the intervening time since filing of the SAC (Dkt. 88), the Plaintiff has self-published

another cyber-security book; Avoiding the Digital Maginot Line: Emergency Manager's Guide

to Modernizing Cyber Resilience: Peer-review copy, ISBN-13: 978-1701824829, 11/12/2019.

This book is presently No. 85 in the public utilities book section of Amazon.  This book

presently remains as no. 85 in the "Public Utilities" section of Amazon publishing.

## JURISDICTION AND VENUE

**10.**    The Plaintiff relies on the following statues for standing pursuant to NYS GBL §§ 349 –

350, NYS Civil Rights Law §§ 50-51, common law Invasion of Privacy, Defamation,

Defamation *Per Se* (trade libel) and slander.   As both parties are citizens of different states and

the amount in controversy exceeds $75,000.01 diversity exists.

## SOLICITATIONS TO THE PUBLIC AT LARGE CONFIRMS JURISDICTION

11.     The acts and practices of Def. Goodman in using the commercial trademark

"CROWDSOURCE THE TRUTH" ™ and his 13 social media platforms has a broad impact on

consumers at large.  Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank, N.A.,

85 N.Y.2d 20, 25 (1995).  Def. Goodman directs his conduct to the consuming public at large to

obtain "patrons" on his Patreon.Com credit card processing service.  Dolan v. Select Portfolio

Servicing, Inc., No. 13-cv-1552, 2014 WL 4662247, at *7 (E.D.N.Y. Sept. 18, 2014).  The

Plaintiff has standing to sue Def. Goodman under Sections 349 and 350 so long as "some harm

to the public at large is at issue."  Weight Watchers Intern., Inc. v. Stouffer Corp., 744 F. Supp.

1259, 1284 (S.D.N.Y. 1990).

12.     These Goodman/MSDI podcasts are nothing more than advertisements in disguise to

solicit funds from the general public.  Zoll v. Jordache Enters., Inc., No. 01 Civ. 1339 (CSH),

2003 WL 1964054, at *7 (S.D.N.Y. Apr. 24, 2003) (quoting Messenger, 94 N.Y.2d at 442-43).

## SPECFIC ALLEGATIONS

## I:      VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§349-350 (CONSUMER PROTECTION ACT)

### HARMFUL CONDUCT DIRECTED AT THE PUBLIC

**13.**     Plaintiff repeats, repleads and incorporates by reference each and every allegation of paragraphs 1 through 12 of this Supplemental Complaint as though set forth in full herein.

14.     Def.Goodman's podcasts, representations, advertisements in disguise, or practices, were (and continue to be) deceptive, harmful and likely to mislead consumers acting reasonably.  All of these actions undertaken by Def. Goodman took place in NYS.

15.     In contravention to NYS GBL §§ 349 – 350, Def. Goodman broadcasts harmful information to the public at large.  To illustrate the harmful commercial nature of these podcasts, Def. Goodman's channel "CrowdSourceThe Truth™ 2" experienced an account"termination" for the distribution of "harmful content" about Goodman's COVID-19 "Plandemic" conspiracy theories.



Above:  Jason Goodman's Facebook post of 04/06/2020 (details below)

**Is YouTube Preparing to Terminate Jason Goodman?
Crowdsource the Truth Deemed "Harmful" by YouTube**

7

Crowdsource The Truth **was live.**

about 4 months ago

In the most recent salvo against the truth, YouTube has demonetized Crowdsource the Truth 2 for what they have determined to be "harmful content". Is the total removal of Crowdsource the Truth coming next?

It is now more important than ever before, if you like and watch Crowdsource the Truth, please become a sponsor before it is too late. Sponsor Crowdsource the Truth & enjoy exclusive content on SubscribeStar&Patreon
http://www.patreon.com/crowdsourcethetr...
http://www.subscribestar.com/crowdsourc...
http://paypal.me/crowdsourcethetruth
Visit http://www.crowdsourcethetruth.com

16.     YouTube's account monetization termination on 04/06/2020 was related to Def.

Goodman's constant podcast cheerleading that the COVID-19 virus is(was) a fake pandemic

engineered by leading virus experts in the federal government to depopulate the United States.

Def. Goodman openly flaunted health guidelines for facial covering and social distancing

promulgated by the officials of NYS.  Def. Goodman encouraged the general public not to obey

pandemic emergency orders, not to wear face mask coverings, not to practice social distancing,

etc.

17.     To give the Court a sampling of the proportionality and harmful nature of Def.

Goodman's podcasts, CSTT widely distributed to millions the discredited contentpresented in the

book "Plandemic", used to legitimize theories that the COVID-19 pandemic is a manufactured

depopulation operation run by the U.S. Government.  In an interview with Def. Goodman side-

kick, discredited lawyer Larry Klayman, esq. (presently under a 90-day suspension of his law

license by the District of Columbia Bar) and "Dr." Judy Mikovits (author of "Plandemic")

several threats were made against COVID-19 response task force incident commander Dr.

Anthony Fauci of the U.S. National Institute of Health.  A planned television show on the

Sinclair Broadcasting Network (with access to over 80commercial television stations) featuring

Klayman and Mikovits was cancelled after a national outcry over the content of "Plandemic".

(See "Sinclair pulls show where Fauci conspiracy theory is aired", Associated Press, 07/25/2020,

URL https://apnews.com/d49a45e68eebaf5f021b685142530819).  In fact, as seen below, Def.

Goodman was in the process of creating yet another social media platform as part of his

"business" properties to push this theory – "brandnewtube.com".



Above:  Def. Goodman 08/02/2020
podcast entitled "The Silencing of Dr. Judy Mikovits"



Above:  Jason Goodman podcast on 07/30/2020 entitled, "Dr. Fauci, How Many Licks Does It
Take to Get to the Tootsie Roll Center of a Manufactured Pandemic?"



Above:  Jason Goodman podcast on 08/12/2020 entitled, "COVID-19, Mandatory Vaccination & Depopulation Agenda with Special Guest Charlie Robinson"



Above:  Def. Goodman's podcast of 05/06/2020 entitled, "Silence of the Medical Scams".  Dr. Judy Mikovits (left) and Dr. Anthony Fauci, National Institute of Health (right).
Judy A. Mikovits is a PhD and not an M.D.

---

### Controversial CFS Researcher Arrested and Jailed

**By Jon Cohen  Nov. 19, 2011 , 6:46 PM**

Judy Mikovits, who has been in the spotlight for the past 2 years after *Science* published a controversial report by her group that tied a novel mouse retrovirus to chronic fatigue syndrome (CFS), is now behind bars.

Sheriffs in Ventura County, California, arrested Mikovits yesterday on **felony charges** that she is a fugitive from justice. She is being held at the **Todd Road Jail in Santa Paula** without bail. But *Science*Insider could obtain only sketchy details about the specific charges against her.

The Ventura County sheriff's office told *Science*Insider that it had no available details about the charges and was acting upon a warrant issued by Washoe County in Nevada. A spokesperson for the Washoe County Sheriff's Office told *Science*Insider that it did not issue the warrant, nor did the Reno or Sparks police department. He said it could be from one of several federal agencies in Washoe County.

https://www.sciencemag.org/news/2011/11/controversial-cfs-researcher-arrested-and-jailed

---

**Who is Judy Mikovits in 'Plandemic,' the coronavirus conspiracy video just banned from social media?**

By **Katie Shepherd**, May 8, 2020 at 8:50 a.m. PDT

When Judy Mikovits co-wrote a 2009 research paper that linked the mysterious condition known as chronic fatigue syndrome to a retrovirus that came from mice, thousands of sick patients hoping for relief rallied behind her. The scientific riddle was solved, they thought.
Less than two years later, those hopes were dashed when follow-up studies failed to replicate the findings and the respected journal "Science" retracted the paper. Researchers posited that the study's inaccurate conclusions were the result of contamination of the lab samples, and the theory that a virus might be the source of the still-mysterious condition died.

https://www.washingtonpost.com/nation/2020/05/08/plandemic-judy-mikovits-coronavirus/

---

**YouTube removes 'Plandemic' video with coronavirus claims by Dr. Judy Mikovits**

**Updated May 07, 2020; Posted May 07, 2020**
**By Geoff Herbert | gherbert@syracuse.com**

YouTube has removed another video that's circulating conspiracy theories amid the coronavirus pandemic.

"The Plandemic," a 25-minute clip from an upcoming documentary, was taken off of YouTube this week for violating the Google-owned video site's community guidelines. The video centered on Dr. Judy Mikovits, a former chronic fatigue researcher who claims the federal government is behind a "plague of corruption" to inflate profits from a potential vaccine even as COVID-19 threatens lives.
YouTube said last week that it was expanding its fact check information panels to the U.S. as coronavirus "reaffirmed how important it is for viewers to get accurate information during fast-moving events."
"Misinformation that comes up quickly as part of a fast-moving news cycle, where unfounded claims and uncertainty about facts are common. (For example, a false report that COVID-19 is a bio-weapon.) Our fact check information panels provide fresh context in these situations by highlighting relevant, third-party fact-checked articles above search results for relevant queries, so that our viewers can make their own informed decision about claims made in the news," YouTube said.

https://www.syracuse.com/coronavirus/2020/05/youtube-removes-plandemic-video-with-coronavirus-claims-by-dr-judy-mikovits.html

18.     According to the social media auditing service "Social Blade" just ONE of Def.

Goodman's channels has had over one half of a million views in a month (30 days / 532,358).

Another channel "Crowdsource The Truth™ 2" has 34,423 "subscribers/viewers".  These are

only two of the 13 social media properties operated as distribution points for the Def.'s

"business".  This represents a mass communication to the general public.

11



Above:  Social blade statistics for "Jason Goodman" channel



Above:  Social Blade statistics for "CrowdSourceThe Truth ™ 2"

19.     The commercial speech content of Def. Goodman's podcasts is confirmed by the fact that

20-25% of podcast content includes a plea for viewers to become paid financial supporters and

"patrons" via the Patron.Com credit card processor.  These "open" podcasts – displaying the

CROWDSOURCE trademark -- are a tease for members of the general public to continue

watching the second part of the subject matter podcast on PATREON.COM or

SubscribeStar.COM (credit card processing services).

## DECEPTION TARGETED TO THE GENERAL PUBLIC

20.     As the Court will note from the Amended Complaint (Dkt. 5) it has been alleged that Def.
Goodman has used social media tactics to create false impressions of social consensus against
purported CROWDSOURCE enemies.  Referring to Def. Goodman side-kick Quinn Michaels
(aka Korey Atkin), "Michaels acts as the chief architect of an automated "bot" network that can
attack rivals of the CSTT "community" and mimic organic support of thousands of people.  The
bot-network is used for the purposes of implementing reputation destruction campaigns on social
media…" (pg. 8 of 44, Dkt.5).

21.     The reverse is also true.  Def. Goodman uses fake Twitter followers, fake YouTube
subscribers, fake podcast views, and fake podcast/video "likes" to create fake indicators of social
media influence.  This on-going deception scheme is designed to deceive members of the general
public.  Moreover, the type of members of the public that are(were) deceived depend(ed) on Def.
Goodman's social media platforms to make informed decisions.  Goodman wanted to increase
his appeal that CROWDSOURCE was(is) a social media influencer in order to boost his
credibility.  The objective is(was) to deceive viewers to become "patrons" via the
PATREON.COM and/or SubScribeStar.COM credit card processors.  These fake metrics caused
members of the public to make "less preferred choices".  These business practices deceived
members of the public by affecting their perception of opinions and ideas and thus affecting their
decision-making concerning which opinions and ideas had garnered public support (e.g.
violating New York pandemic emergency orders, not complying with such orders in social
distancing or face mask coverings [to name a few], etc.).  See FTC v. Devumi, LLC, No.
9:19cv81419 (S.D. Fla.) and press release of N.Y. Attorney General "Attorney General James
Announces Groundbreaking Settlement With Sellers Of Fake Followers And "Likes" On Social

Media," 01/30/2019, URL:  https://ag.ny.gov/press-release/2019/attorney-general-james-

announces-groundbreaking-settlement-sellers-fake-followers

NEW YORK – Attorney General Letitia James today announced a precedent-setting
settlement over the sale of fake followers, "likes," and views on social media platforms,
including Twitter and YouTube, using fake activity from false accounts. The settlement
prohibits Devumi LLC and related companies ("Devumi") from engaging in any of the same
misconduct going forward.
…
"Bots and other fake accounts have been running rampant on social media platforms, often
stealing real people's identities to carry out fraud," said **Attorney General Letitia James**.

22.    Def. Goodman has engaged in (1) consumer-oriented conduct that is (2) materially

misleading and that (3) plaintiff suffered irreparable injury as a result of the allegedly deceptive

act or practice. Koch v. Acker, Merrall& Condit Co., 967 N.E.2d 452, 452 (N.Y. 2012).  Def.

Goodman used his fake social media metrics to create the appearance of public consensus during

the targeting of the Plaintiff with despicable, vile and reprehensible assertions, insinuations,

statements and other podcast content (see section of this complaint for catalogue of defamation

*per se* claims) that was ratified, approved of, and endorsed by fake "sock puppet" accounts,

video "likes", etc.

23.    To illustrate the nature of "sock puppets", "They are writing a computer program that

will create bots—automated agents that will each browse the Internet and interact with websites

as a human user might. Each bot will create a number of distinct user profiles, each of which is

called a "sock puppet." See Sandvig v. Sessions, (Mar. 30, 2018) 315 F. Supp. 3d 1 (D.D.C.

2018).

24.    Again, to illustrate, "In Nunes, an author created multiple pseudonymous online accounts

(called "sock puppet" accounts) and then used those accounts on Amazon to post positive

reviews about her books and negative reviews about another author's books. Nunes, 299 F. Supp.

3d at 1222-23". <u>Vitamins Online, Inc. v. HeartWise, Inc.</u>, Case No. 2:13-cv-00982-DAK (D. Utah Sep. 24, 2019).

25.    Several statistical anomalies in the social media growth of the CROWDSOURCE properties indicates the purchase of fake YouTube subscribers that consequentially produce fake video "likes" to create the false impression of general social consensus.



Above:  Jump in 24,800 subscribers in 30 day period.  Source VidIQ



Above:  Jump in 1,000 subscribers in one day period.  Source: VidIQ

26.     Def. Goodman used these fake "sock puppet" accounts to leave comments of approval to endorse Def. Goodman's vile and reprehensible attacks on the Plaintiff, using Plaintiff's likeness, name and personage in these commercial speech solicitations for funds.  Def. Goodman has irreparably injured the Plaintiff's business, career, reputation and personage with the use of his "business" resources (with the use of the CrowdSource trademark) to tweet, broadcast, podcast and publish false reports, slander, defamation *per se* and libel as part of these false advertising campaigns.  Simply stated, Def. Goodman has used deceptive and unfair practices in his "business" (commercial speech, advertising in disguise) to execute the commercial exploitation of Plaintiff's personage with fake "sock puppet" accounts, fake "likes", etc. to inflict permanent career damage upon the Plaintiff.

## INVASION OF PRIVACY CLAIM

27.     Def. Goodman has used his social media business resources to make a public disclosure of confidential and sensitive private information regarding the disabled son of the Plaintiff – a vulnerable individual.  The public exposure of this sensitive private information (invasion of privacy) was a source of great emotional distress, embarrassment and humiliation for the Plaintiff.  The Plaintiff's handicap son has absolutely no connection with the issues related to this present controversy.  Def. Goodman obtained this confidential information from Corean Elizabeth Stoughton of Hanover, Maryland, the former girlfriend of the Plaintiff's brother (George Webb Sweigert (Goodman's former roommate)).

28.     Ms. Stoughton (daughter of a career U.S. National Security Agency contractor) had a hybrid live-in relationship with George Webb (Sweigert) for approximately 14 months in Maryland.  She used the moniker "Deep NSA" in her tweets and YouTube videos created in tandem with George Webb.

29.     Def. Goodman announced in a broadcast that he had a confidential informant with access to private information and described the levels of access only Ms. Stoughton had (access to George Webb's e-mail messages and phone texts).  The exposed information was "confidential, individually identifiable information";Mount v. PulsePoint, Inc., 684 F. App'x 32, 35 (2d Cir. 2017).It was Mr. Goodman's intention to commit this tort against the Plaintiff as he retweeted this information under the CROWDSOUCE trademark almost a dozen times to his International audience of millions.Defendant made these public disclosures of private facts willfully, wantonly, and with reckless disregard for the impact on the Plaintiff.

30.      " [A] privacy invasion claim-and an accompanying request for attorney's fees-may be stated under (G.B.L. 349) based on nonpecuniary injury "; Meyerson v. Prime Realty Services, LLC, 7 Misc. 2d 911 (N.Y. Sup. 2005).



Above:  Redacted tweet of Jason Goodman, "Cyberstalker / deadbeat dad David Sweigert abandons his own son XXXXX to troll me with fake news …"



Above:  The above tweet was sent to these addresses

31.     Plaintiff has already stated a claim for invasion of privacy in the SAC (Dkt. 88); see

below.

### STANDING

4.     The Plaintiff relies on the following statues for <u>standing</u>: N.Y. General Business Law

(GBL) states at §§ 349 – 350 and N.Y. Civil Rights Law §§ 50-51.  Common law Invasion of

Privacy, Defamation, Defamation Per Se (trade libel).   As both parties are citizens of different

states and the amount in controversy exceeds $75,000.01 diversity exists.

### PARTIES

32.     Among other relief requested, Plaintiff seeks a declaration from this Court that the

foregoing indicates violations of the New York General Business Law (G.B.L. § 349 and 350).

Further, injunctive relief should be granted to ensure Def. Goodman and/or MSDI removes this

material from the CSTT social media sites (to include material articulated in the SAC (Dkt. 88)).

## II:   DEFAMATION AND DEFAMATION PER SE

**33.**     Plaintiff repeats, repleads and incorporates by reference each and every allegation of

paragraphs 1 through 32 of this Complaint as though set forth in full herein. All of the Defendant

Goodman's actions described below have taken place in the NYS.

**34.**     Goodman's slanderous, libelous and defamatory *per se* allegations (inherently harmful)

were directed specifically at the undersigned's business, trade, profession and was not framed as

hyperbole, opinion and/or editorial content.  Def. Goodman's personal animus and malice

directed toward the Plaintiff has remained unabated since the filing of the SAC (Dkt. 88), which

constitutes a continuous tort against the Plaintiff.



Above:  Def. Goodman's 03/30/2020 e-mail message to 22 people, declaring that the Plaintiff is "mentally unstable and is a serial stalker … he is attempting to disrupt public health services and sow panic amid this crisis.."



Above:  Jason Goodman's 3/30/2020 e-mail message to the Plaintiff, "F__k you you psychopath. If the courts ever reopen I will not rest until you are in jail."

**Re: Pending litigation against Twitter and Jason Goodman**

○   **Jason Goodman** <truth@crowdsourcethetruth.org>                                                    5/31/2020 2:55 AM   ☆   🗌
     **To** David George Acton Sweigert   Copy   George Webb Sweigert   and 11 others                                            JG

     Reply    Reply all    Forward    Delete    ☰

David George Sweigert is a cyber stalker who has persistently published false and defamatory stories about me in social
media. This individual has made public comments about a family history of schizophrenia as well as wife swapping with
his own brother, which cause me to believe he may be mentally ill.  This individual has engaged in a three year long daily
harassment campaign against me.  Please disregard his messages.

> Above:  Jason Goodman's 5/31/2020 e-mail message to 11 people that Plaintiff is a "cyber
> stalker … as well as wife swapping with his own brother …".

**Re: Jason Goodman and Corean Elizabeth Stoughton**

○   **Jason Goodman** <truth@crowdsourcethetruth.org>                                                    7/22/2020 1:38 AM   ☆   🗌
     **To** Spoliation Notice   Copy   corean1111@gmail.com   and 12 others                                                     JG

     Reply    Reply all    Forward    Delete    ☰

We can discuss this and all your other frivolous claims when you appear before the judge in NY. Stop harassing me
Sweigert. You are a public menace and likely a danger to yourself.

On Jul 21, 2020, at 7:32 PM, Spoliation Notice <spoliation-notice@mailbox.org> wrote:

To: Jason Goodman and Corean Elizabeth Stoughton

As you are well aware, Mr. Goodman has published the first name of a handicapped vulnerable individual.  Apparently,
this information was obtained from Ms. Stoughton.

This e-mail demands that the twitter tweets containing the name of this individual be deleted from the social media
account of CrowdSource The Truth.

To that end, below is a draft letter motion to the magistrate judge in the matter of Mr. Goodman's slander, defamation
and libel lawsuit.

From:
D. George Sweigert
c/o General Delivery
Mount Shasta, CA 96067
Spoliation-notice@mailbox.org

> Above:  Def. Goodman's 7/22/2020 e-mail message responding to a request to remove tweet's
> with the name of the Plaintiff's son states, "[y]ou are a public menace and likely a danger to
> yourself."

**Re: Pending litigation against Twitter and Jason Goodman**

○   **Jason Goodman** <truth@crowdsourcethetruth.org>
    To  David George Acton Sweigert   **Copy**  George Webb Sweigert  and 13 others

    Reply    Reply all    Forward    Delete    ☰

                                                    6/19/2020 5:24 PM   ☆   ▢      JG

David George Sweigert is a serial cyberstalker.  Based on his past behavior, public statements of a family history of mental illness, his false statements and his persistence in harassing me, he is believed to be mentally ill.  His communications should be ignored.

     ...     On Jun 19, 2020, at 11:14 AM, David George Acton Sweigert <spoliation-notice@mailbox.org> wrote: Dear Sir
                   At 1:04:45 you mention my legal name.  You have been reported to YouTube. I have never worked for NORTEL.
                   You are aware of this and you are publishing a falsehood. I believe you are doing this due to your alleged prior
                   homosexual relationship with my brother George Webb. Cease and desist. Warm regards, Evidence Collection
                   Team <EYf6xDvUEAESZQS.jpeg>

Above:  Def.  Goodman's 6/19/2020 e-mail message to 13 people stating the Plaintiff is "a serial cyberstalker … he is believed to be mentally ill…".



Above:  Def. Goodman's tweets of 04/26 and 04/27/2020 labeling the Plaintiff as a "cyberstalker" (this is a mere sampling) and "show him how counterproductive his lame attempts are.."  FALSE



Above:  Def. Goodman's tweet of 05/12/2020 labeling the Plaintiff as a "deadbeat dad brother Dave who really should call his abandoned special needs son XXXXX…" (redacted)



Above:  Def. Goodman's tweet of 05/06/2020 stating, that Plaintiff is a "dead beat dad and serial cyberstalker"(this is a mere sampling) and "show him how futile his efforts are..".  FALSE



Above:  Def. Goodman tweet of 05/02/2020 stating, that the Plaintiff "is a serial cyber stalker &self admitted wife swapper…" FALSE



Above: Def. Goodman tweet of 04/27/2020 stating "David George Sweigert is a cyber stalker" and "counteract his feckless efforts by supporting Crowdsource The Truth…" FALSE



Above: Def. Goodman tweet of 05/21/2020 stating, "David Sweigert, deadbeat dad/social engineer.." FALSE



Above: Def. Goodman's tweet of 04/27/2020 stating Plaintiff is "a malicious cyber stalker" and "& wife swapping" FALSE



Above:  Example of the multiple (usually a dozen) tweets per day disparaging the Plaintiff

35.     Defendant made his untrue and/or misleading statements (see above) and representations

willfully, wantonly, and with reckless disregard for the truth.  Def. Goodman's intent was to

irreparably injure, tarnish, damage and disrupt the employment, career, business operations and

reputation of the Plaintiff by imputing defects in Plaintiff's moral character, injuring his

reputation.  Plaintiff claims that the "trade, business or profession" exception is available to him

as the defamation is "of a kind incompatible with the proper conduct of the business, trade,

profession, or the office itself." <u>Liberman v. Gelstein</u>, 80 N.Y.2d at 436, 590 N.Y.S.2d 857, 605

N.E.2d 344.

36.     The Court should issue a declaratory statement and label the slander, defamation and libel

described above for what it is; see "while most of the parties' alleged conduct (and indeed their

mutual recriminations throughout this litigation) is patently ridiculous, it is not legally

outrageous" (Dkt. 140).  Statements that the Plaintiff is a "wife swapper", "cyber stalker" and

"deadbeat dad" describe improper and illegal conduct which is actionable defamation and are not

merely "patently ridiculous".  Injunctive relief is sought to remove this conduct from the

Goodman / MSDI social media properties.

37.     "Under New York law, "[t]o state a claim for defamation, a complaint must allege '(1) a

false statement that is (2) published to a third party (3) without privilege or authorization, and

that (4) causes harm, unless the statement is one of the types of publications actionable

regardless of harm.'" <u>Elias v. Rolling Stone LLC</u>, 872 F.3d 97, 104 (2d Cir. 2017) (quoting

<u>Stepanov v. Dow Jones & Co.</u>, 120 A.D.3d 28, 34 (1st Dep't 2014)). Accusations of serious

criminal activity or statements that tend to injure another in her profession can certainly be

actionable as defamation, and can constitute defamation *per se*. See <u>Liberman v. Gelstein</u>, 605

N.E.2d 344, 347 (N.Y.1992)." See<u>Hayashi v. Ozawa</u>, 17-cv-2558 (AJN) (S.D.N.Y. Mar. 28,

2019).

38.     Def. Goodmanhas (1) made false and stigmatizing statements about Plaintiff—statements

that call into question his good name, reputation, honor or integrity; and (2) which are false and

stigmatizing statements that were made public.

39.     Under New York common law, Def. Goodman's statements about the Plaintiff represent

defamation *per se*.  Goodman has specifically targeted to the Plaintiff's moral character to injure

and harm the Plaintiff's career, public reputation and standing in his professional community. Each and every time Def. Goodman's distributes his slander and libel, via the means of Google Search Engine Optimization (S.E.O.) there is a cumulative effect that severely impacts the Plaintiff's ability to adequately market his professionals services and background via the Internet.  Def. Goodman knows this, and is extremely precise in the targeting of the Plaintiff's name, reputational credentials and insinuations and slander as to lack of moral turpitude, mental illness, wife swapping, being a deadbeat dad, etc.  These comments and false statements are designed to ruin the Plaintiff's life and career via public humiliation and professional injury. These statements are not presented as editorial or opinion but stated as fact.

40.     Def. Goodman has published "false statement[s], published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard,  .. which constitutes defamation per se".   <u>Dillon v. City of New York</u>, 704 N.Y.S.2d 1, 5 (N.Y.A.D. 1 Dept., 1999).

### III:     VIOLATIONS OF CIVIL RIGHTS LAW § 50 and 51

41.     Plaintiff repeats, replead and incorporate by reference each and every allegation of paragraphs 1 through 32 of this Complaint as though set forth in full herein. All of the Defendant Goodman's actions described above has taken place in the State of New York.

42.     Def Goodman has abridged the undersigned's right of privacy by the unauthorized use of Plaintiff's name, portrait or picture for commercial purposes pursuant to New York Civil Rights Law § 50, **Right of Privacy.**

43.     Def Goodman has used the name, image, likeness and/or photograph of the undersigned to attract viewers to his commercial speech podcasts.  There is no news-worthiness, editorial rationale or any other journalistic endeavor that would justify this type of use.  Def. Goodman

simply wants to inflict maximum embarrassment and social humiliation on the Plaintiff and to

irreparably injure his career in critical infrastructure protection.



Above:  Jason Goodman 10/18/2019 podcast entitled, "Court jester D. George Sweigert's Social
Engineering lawfare Campaign May Be Coming to and End"



Above:  The proportionality of Def. Goodman's 10/18/2019 distribution of Plaintiff's
photograph includes: YouTube, PATREON, PSPC.TV (Periscope), bitchute& Facebook, etc. (at
a minimum)



Court Jester D. George Sweigert's Social Engineering Lawfare Campaign May Be Coming to an End
5,553 views · Streamed live on Oct 18, 2019

Above:  Def. Goodman solicits funds in his 10/18/2019 video podcast via SubscribeStar and PATREON accusing Plaintiff of working with other "social engineers" to shape public opinion in some way

**44.**     Although NYS Civil Rights Sections 50 and 51 have different enforcement schemes they both protect against "nonconsensual commercial appropriations of the name, portrait or picture of a living person." Finger v. Omni Publ'ns. Int'l, Ltd., 77 N.Y.2d 138, 141 (1990).

45.     Pursuant to NYS Civil Rights Section 51 the undersigned claims and alleges that Def. Goodman, himself or via his companies and businesses, (1) used Plaintiff's name, portrait, picture and voice (2) for his personal commercial profit, meaning such likeness, voice, image or photograph were commercially exploited by Def. Goodman without the Plaintiff's written permission.



Above: Def. Goodman uses the image of the Plaintiff to support his theory of "social engineers"



Above: Photo attached to Defendant's tweet of 04/12/2020

## IV.  NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

46.     This section has been abandoned pursuant to the ORDER (Dkt. 140)

## DAMAGES

47.     The Plaintiff has personally suffered damages in his person and his business as a direct and proximate result of Def. Goodman for which an appropriate private civil remedy is unavailable.

48.    Further, Goodman willfully and knowingly committed deceptive acts and unlawful practices in violation of General Business Law 349, entitling the Plaintiff to treble damages.

49.    Damages include undersigned's claim for loss of reputation, humiliation, mental anguish and damage to trade, profession and business, ridicule in the community.

50.    Def. Goodman commits acts of defamation *per se*, trade libel and slander of innocent third parties -- like the Plaintiff -- aimed at maintaining the continuity of collecting fund-raising proceeds for Def. Goodman via PATREON and other credit card processors.  This is a continuing, open-ended and repetitive pattern showing no signs of ceasing.

51.    Hundreds of thousands of social media views have been attributed to video productions that broadcast claims by Def. Goodman about the Plaintiff.

52.    The Plaintiff has a property right interest in his reputation, publicity concerning his work products, maintaining his ability to publish technical reports, his career, employment opportunities, etc.  The Plaintiff's compensable irreparable injury necessarily is the harm caused by the Defendant.

## RELIEF REQUESTED

53.    The plaintiff seeks all equitable and punitive damages to be made whole and all other relief as this Court deems appropriate.  Such relief as is necessary to end the smear and shame campaign directed towards the Plaintiff by the Defendant.

54.    Prohibition against using social media.  This Court should consider limiting, curtailing, reducing and ceasing the use of the interstate wires of the Internet by the Defendant.  This would include the de-establishment of all YouTube video accounts and other social media accounts operated by the Defendant.

## INJUNCTIVE RELIEF REQUESTED

55.    "A court may 'issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction.'" Dunkin' Donuts Inc. v. Peter Romanofsky, Inc., No. CV-05-3200, 2006 WL 2433127, at *6 (E.D.N.Y. Aug. 8, 2006) (quoting King v. Nelco Indus., Inc., No. 96-CV-4177, 1996 WL 629564, *1 (E.D.N.Y. Oct. 23, 1996)); BMG Music v. Pena, No. 05-CV-2310, 2007 WL 2089367, at *2 and 5 (E.D.N.Y. July 19, 2007).  As noted above, § 51 provides that a person whose image is used without consent may maintain an equitable action "to prevent and restrain the use" of the image. N.Y. Civ. Rights Law § 51. Plaintiff adequately alleges in the Complaint that Defendants used his image and name without consent.  These allegations are deemed true as against those Defendant. See Joe Hand Promotions, Inc. v. El Norteno Rest. Corp., No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007). Because the allegations are deemed true, Plaintiff has met his burden to establish success on the merits of his claim as is required for injunctive relief. Furthermore, Plaintiff will be irreparably harmed if Def. Goodman continues to distribute his name and image. See ASA Music Prods. v. ThomsunElecs., No. 96-cv-1872, 1999 U.S. Dist LEXIS 13221, at *5 (S.D.N.Y. Jan. 20, 1999) ("The default of the [defendants] and the well pleaded allegations of the complaint warrant the entry of an order permanently enjoining the [defendants] from selling any audio tape, CD, video tape or other phonorecord containing the name, voice, picture or portrait of [plaintiff] without his consent."), adopted by 1999 U.S. Dist. LEXIS 13157 (S.D.N.Y. March 31, 1999); Diller v. Steurken, 185 Misc. 2d 274, 277 (N.Y. Sup. Ct. 2000) (granting injunction under § 51 where defendants defaulted).

56.    An injunction is warranted where a party has succeeded on the merits and can establish: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary

damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Kaupp v. Church, No. 10 Civ. 7559 (JFK), 2011 WL 4357492, at *4 (S.D.N.Y. Sept. 19, 2011) (citing Salinger v. Colting, 607 F.3d 68, 77 (2d Cir. 2010)).

## JURY TRIAL DEMANDED

57.    The undersigned demands a jury trial.

## ATTESTATION

58.    The undersigned hereby attests that all exhibits are accurate and true reproductions of their source appearance (from Internet web-sites, e-mail messages, etc.). The undersigned hereby attests that the foregoing statements have been made under penalties of perjury.

## STATEMENT AND VERIFICATION

This pleading is true to the knowledge of the undersigned, except as to matters alleged on information and belief, and that as to matters that the undersigned believe are true. **See NY C.P.L.R. 3020.**

**D. George Sweigert,**
**c/o General Delivery**
**Rough and Ready, CA 95975**
**Spoliation-notice@mailbox.org**

8·22·20

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK
SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - JUDGE VALERIE E. CAPRONI

**U.S. DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

**D George Sweigert**

**v.**

**Jason Goodman**

**CIVIL CASE #: 1:18-CV-08653-VEC**

**JUDGE VALERIE E. CAPRONI**

**MAGISTRATE STEWART D. AARON**

**TO THE CLERK OF THE COURT:  Attached is a corrected copy of the PROPOSED First Supplemental Complaint (FSC).  Only typos and spelling mistakes have been corrected.  No substantive language has been edited, added or deleted.**

### CERTIFICATE OF SERVICE

**I HEREBY ATTEST that a true copy of the attached pleading has been sent to the following addressees on the 22nd day of August 2020.**

Jason Goodman, CEO
Multi-media Design Systems, Inc.
252 7th Avenue, Apart. #6S
New York, NY 10001

Clerk of the Court, Room 200
U.S. District Court
500 Pearl Street
New York, New York 10007-1312

RECEIVED
AUG 2 4 2020
PRO SE OFFICE

**D. GEORGE SWEIGERT**

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

8.22.20

PRESS FIRMLY TO SEAL

**UNITED STATES POSTAL SERVICE**

# PRIORITY MAIL ®

**USPS TRACKING #**

9114 9023 0722 4599 6489 82

Label 400  Jan. 2013
7680-16-000-7948

- Date
- USP
- Lim
- Pic
- Or
- W
declaration

* Domestic only

P S 0 0 0 0 1 0 0 0 0 1 4

EP14F Oct 2018
OD: 12 1/2 x 9 1/2

To schedule free
Package Pickup,
scan the QR code.

USPS.COM/PICKUP



RECEIVED

AUG 24 2020

PRO SE OFFICE

PRO SE # 200

10007

**FROM:**

D. G. SWEIGERT, C/O
GENERAL DELIVERY
ROUGH AND READY, CA 95975
Spoliation-notice@mailbox.org

**TO:**

U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

Clerk of the Court, Room 200
U.S. District Court
500 Pearl Street
New York, New York 10007-1312