

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**(FOLEY SQUARE)**

| | |
|---|---|
| **SWEIGERT** <br><br> **V.** <br><br> **GOODMAN** <br><br> **And** <br><br> **MULTISYSTEM DESIGN, INC. (MSDI), A NEW YORK CHARTERED CORPORATION [PROPOSED]** | **CIVIL CASE #:** <br><br> **1:18-CV-08653-VEC** <br><br> **JUDGE VALERIE E. CAPRONI** |

<u>**PLAINITIFF'S [COUNTER-DEFENDANT]**</u>

<u>**VERIFIED ANSWER TO**</u>

<u>**DEFENDANT'S COUNTERCLAIM (DKT. 145)**</u>

This pleading is true to the knowledge of the undersigned, except as to matters alleged on

information and belief, and that as to matters that the undersigned believe are true. See N.Y.

C.P.L.R. 3020. So sworn under the penalties of perjury.

Signed under penalty of perjury,

**D. George Sweigert,**
**c/o General Delivery**
**Rough and Ready, CA 95975**
**Spoliation-notice@mailbox.org**

9.3.20

1

## INTRODUCTION

The Plaintiff/undersigned hereby accepts the version of facts and case history as expressed in ORDER AND OPINION, Dkt. 27, ORDER TO SHOW CAUSE, Dkt. 65, MEMORANDUM AND ORDER, Dkt. 87, ORDER, Dkt. 140, and ORDER, Dkt. 143 as if fully restated herein. Defendant's (Def's) latest COUNTERCLAIM VERIFIED AMENDED COMPLAINT (Dkt. 145) is a republishing of COUNTERCLAIM VERIFIED COMPLAINT (Dkt. 122) which was dismissed by ORDER 08/04/2020 (Dkt. 140), "Accordingly, the Court finds that Defendant's defamation counterclaim should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure." The new counterclaim (Dkt. 145) should be dismissed for the same reasons.

## ADMISSIONS AND DENIALS

1.      Plaintiff has insufficient knowledge to affirm or deny the professions of Defendant.

2.      Plaintiff is a resident of the State of California. Plaintiff admits that he served in the U.S Air Force between 1979-1983 as a Ground Radio Equipment Repairman which encompasses shortwave single side band long haul radios and VHF/UHF ground to air radios used in the aeronautical mobile service. Plaintiff does not understand the term "wireless communications" but admits he has worked in the arena of "information technology" critical infrastructure protection for two decades. Plaintiff admits he published a study manual on Amazon entitled "The Ethical hackers Field Operations Guide" which serves as workbook to assist candidates to obtain a passing score on the Certified Ethical Hacker's examination, a credential recognized by the U.S. Department of Defense. Plaintiff has no or insufficient knowledge if "penetration testing is a counter cyber warfare tactic". Plaintiff denies that he is a professional actor and has not accessed the website casting360.com in over a decade. Plaintiff admits that he publishes opinion and editorial news about court related topics, such as this instant lawsuit. Articles are

2

labeled as opinion and editorial. Plaintiff denies that he is a "social media personality" but admits he is engaged in counter-speech against Defendant to protect his career and reputation. Plaintiff admits that he posts songs, movie clips, TV comedy sketches and other such material on a YouTube channel that is on "hidden status" and can not be found by members of the public.

3.      Plaintiff admits that he has a brother named George Webb Sweigert that appears to presently reside at Cobb Island, Maryland. Plaintiff has no or insufficient knowledge to determine if "George Webb" is a journalist or social media personality. George Webb did have a video channel on YouTube that had approximately 110,000 subscribers, like the Defendant's channel. Plaintiff is aware that Defendant collaborated with George Webb on June 14, 2017 on a podcast show that led to the closure of the Port of Charleston, South Carolina based on information provided by Okey Marshall Richards (who later became a regular on Def's podcasts as a persona known as "Rock Hudson" and completed about 30 shows).

4.      Plaintiff has no or insufficient knowledge to admit or deny this allegation about Robert David Steele. Plaintiff has viewed section of a few Steele podcast videos that showcased George Webb for the purposes of this instant litigation. Plaintiff did attempt to intervene in a civil lawsuit in the federal courts serving Richmond, Virginia in which Steele was a plaintiff against the Defendant. Plaintiff has no or insufficient knowledge to admit or deny what level of collaboration Steele had with George Webb. Plaintiff has no or insufficient knowledge as to whether Steele is a former C.I.A. officer.

5.      Plaintiff has no or insufficient knowledge to admit or deny this allegation about Steven S. Biss, esq., except that Biss was the attorney of record in the Steele v. Goodman lawsuit.

6.      Plaintiff has no or insufficient knowledge to admit or deny this allegation about Patricia Negron, except that her attorneys were present in the Steele v. Goodman Virginia lawsuit.

3

Plaintiff has no or insufficient knowledge to admit or deny this allegation about the "social media personality" status of Ms. Negron. It is believed M. Negron is a former executive of a make-up company in Salt Lake City, Utah called "Nu-Skin". Plaintiff has no or insufficient knowledge to admit or deny this allegation about any "confidential agreement" or "charges dropped" concerning the Def. Any such agreements were made significantly after Plaintiff's request to intervene in the Steele v. Goodman lawsuit was denied (perhaps a year later). Plaintiff has no or insufficient knowledge to admit or deny this allegation about what the contents of such a "confidentiality agreement" might be.

7.      Plaintiff has no or insufficient knowledge to admit or deny this allegation about Susan Holmes, aka "Queen Tut", except that this person contacted me via Twitter on or about June 1, 2018 and informed Plaintiff that his life was in danger in Mount Shasta, California. She informed Plaintiff that the Def and his friend Quinn Michaels (Korey Atkin) were attempting to locate Plaintiff to commit an act of violence against him. Ms. Holmes informed Plaintiff that the "STOP THE SACRIFICE" meme created by Mr. Atkin on social media was directed at the Plaintiff with the accompanying narrative that he was planning to sacrifice a small child on June 14, 2018, the day this instant lawsuit was filed in Charleston, South Carolina. Plaintiff has no or insufficient knowledge to admit or deny this allegation about creating podcast shows with Def of George Webb. Plaintiff is aware Holmes was arrested for perjury in Fort Collins, Colorado and ran for City Council unsuccessfully in that town. Plaintiff ceased communications with Ms. Holmes by May 2018.

8.      Plaintiff has no or insufficient knowledge to admit or deny this allegation about Manuel Chavez, III, except he is believed to live in Carson City, Nevada. Plaintiff cannot admit that Chavez is a "social media personality" as that term is unduly vague and ambiguous. Plaintiff is

aware that Chavez operates a YouTube channel known as "Citizen Zone" and "LARP Wars". Plaintiff has no or insufficient knowledge to admit or deny this allegation about whether Chavez is a "hacker" or "social engineer". Plaintiff has no or insufficient knowledge to admit or deny this allegation about whether Chavez "created online broadcasts" with the Plaintiff. The Plaintiff has called in to a Chavez show 3 or 4 times to be interviewed about litigation related topics. Plaintiff has no or insufficient knowledge to admit or deny this allegation about whether Chavez sponsored and collaborated with shows involving Steele, except for court pleadings submitted by the Def. in the Virginia federal lawsuit that make similar allegations. Otherwise, Plaintiff has no knowledge except for one or two podcast shows that were broadcast featuring Chavez interviewing Steel in the fall of 2017.

9.      Plaintiff has no or insufficient knowledge to admit or deny this allegation about Steve Outtrim, except that Plaintiff viewed a podcast show in which Outtrim interviewed Holmes about her time spent with Goodman and his podcast collaboration with her. Plaintiff has no or insufficient knowledge to admit or deny this allegation about the use of the unduly ambiguous and vague term "social media personality". Plaintiff is aware that Outtrim has written a letter to this Court and to the federal court in Richmond, Virginia. Plaintiff has no or insufficient knowledge to admit or deny this allegation about Outtrim's financial resources or whether he is retired. Plaintiff has no or insufficient knowledge to admit or deny this allegation about Holmes broadcasting messaging about Def. "secondhand hearsay" concerning Patricia Negron. Plaintiff has no or insufficient knowledge to admit or deny this allegation about whether Ms. Negron DENIED statements about such allegations except for the recently submitted e-mail message from Ms. Negron's attorney attached to Dkt. 145, otherwise Plaintiff has no knowledge of such allegations. Outtrim has attempted to intervene in this instant lawsuit.

10.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about a person named "Marion Rapp". Plaintiff admits that he had requested that court documents be sent to him "in care of" a post office box in Mesa, Arizona. Plaintiff has no or insufficient knowledge to admit or deny this allegation about whether "official communications" were returned that were sent to this post office box. Plaintiff has no or insufficient knowledge to admit or deny this allegation about whether postal officials "confirmed" that Plaintiff was not a box holder.

11.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about the whereabouts of Nathan Stolpman, except he is apparently a resident of Austin, Texas. Again, the term "social media personality" appears unduly vague and ambiguous. Mr. Stolpman broadcasts podcasts which the Defendant has been a guest. The Defendant explained in a Nathan Stolpman podcast in April 2018 that he had contacted the New York Police Department and New York field office of the Federal Bureau of Investigation to report that the Plaintiff was a member of a "monetized decentralized distributed defamation network".

12.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about Tyroan Simpson, except his mother apparently operates a U.F.O. research organization either in New Mexico or Colorado. Again, the term "social media personality" appears unduly vague and ambiguous.

13.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about Marcus Conte, except Conte sent letters and e-mail messages to the presiding judge and magistrate judge to inappropriately introduce evidence to the Court. Plaintiff has no or insufficient knowledge to admit or deny this allegation about Conte, except that he had center a letter motion to this Court stating his desire to intervene in these proceedings. Again, the term "social media personality" appears unduly vague and ambiguous.

6

14.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about Adam

Sharp, except for what the Def. has stated in Dkt. 145.  Plaintiff has never had any contact with

Mr. Sharp of any type.  This includes no e-mail messages, phone calls, conversations, text

messages, etc.  Nothing.  Save for a twitter tweet advising Mr. Sharp that his name now appeared

on the Court's docket as a "third party defendant".  Plaintiff has no or insufficient knowledge to

admit or deny this allegation as to where Mr. Sharp lives.

15.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about the Def's

creation of a YouTube channel in October 2016.  Plaintiff has no or insufficient knowledge to

admit or deny this allegation about when an "interactive network" named "CrowdSource The

Truth" was created.  Plaintiff has no or insufficient knowledge to admit or deny this allegation

about whether Def produces "news, commentary".  Plaintiff is aware that Def. apparently

maintains about 13 social media properties where he broadcasts his podcasts. )Plaintiff is aware

that some of the Def's video content is monetized, meaning commercials appear within

(embedded) in the content so that Def may receive a fee or "kick-back".  Plaintiff has no or

insufficient knowledge to admit or deny this allegation about whether this activity represents a

"full time job".

16.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about Def's

collaboration with George Webb.  Plaintiff became aware of Def when he interviewed George

Webb on June 13, 2017 and called the Plaintiff a "joker".  Prior to this Plaintiff was aware that

George Webb had announced he was a member of Israeli MOSSAD in the presence of the Def in

a video.  Prior to this Plaintiff was aware of an apparent illegal distribution of the so-called

"SETH RICH FILES" by Webb and Def.  Plaintiff became aware of George Webb's erroneous,

baseless and foundationless commentary of June 13, 2017 with Def that Plaintiff was part of a

C.I.A. drugs for guns operation in Nicaragua in the early 1980s. This was a lengthy interview in which the Def collaborated with George Webb about the baseless, erroneous and foundationless allegation that Plaintiff was a "C.I.A. contractor". This was the introduction of the Plaintiff to the Def, approximately one day before the Port of Charleston "dirty bomb hoax" on June 14, 2017. Def clearly knew by at least June 13, 2017 who the Plaintiff was, and had heard the slanderous, defaming and libelous content of George Webb. Plaintiff has no or insufficient knowledge to admit or deny this allegation about whether Webb stated Plaintiff "was touched in the head". Plaintiff has no or insufficient knowledge to admit or deny this allegation about a "family history of schizophrenia", expect for a video that mentions the father of George Webb and the Plaintiff was a World War II combat veteran that was deployed to Guadalcanal, Bougainville, the Luzons and other South Pacific operations as a non-commissioned officer in the 37th Division of the Ohio national Guard. Plaintiff did make reference that there were no medical records or other paper work that indicated that said father might be schizophrenic, but that battle fatigue and combat stress may have created symptoms that resembled schizophrenia.

17. Plaintiff has no or insufficient knowledge to admit or deny this allegation about the podcast of June 14, 2017 that closed the Port of Charleston with a "dirty bomb hoax", except that Okey Marshall Richards was the source of the information used by George Webb as later admitted by Webb. Mr. Richards apparently became a regular contributor to Def's podcasts (thirty or so) after the Port of Charleston incident. Ms. Holmes discussed this information on her podcast with Steve Outtrim. Ms. Holmes informed the Plaintiff via twitter in May 2018 that Okey Marshall Richards was the source of the "dirty bomb information" and that he had become the personality "Rock Hudson" on the Def's podcast shows from about August 2017 to April 2018. Plaintiff has no or insufficient knowledge to admit or deny this allegation about the

8

disposition of the "dirty bomb investigation" and whether charges were "brought" against the Def.

18.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about the arrest of George Webb, except to contact the field office of the F.B.I. in Cincinnati, Ohio on or about August 15, 2017 and offer any assistance to the Port of Charleston investigation.

19.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about "threats" made against Def in a video published June 15, 2017. The term "threats" appears to be unduly ambiguous and vague. Plaintiff has no or insufficient knowledge to admit or deny this allegation about "vows revenge". Plaintiff has no or insufficient knowledge to admit or deny this allegation about stating Def would be "dead meat" or wind up in a "body bag". Plaintiff recalls comparing Def to persons in the military who wound up as "dead meat" or in a "body bag". Plaintiff recalls insinuating that Def should be in jail for his activities related to the- distributions of Democratic National Committee financial donor files containing the Personal identifiable Information of thousands of individuals weeks earlier in an incident known as the "Seth Rich files". Later Plaintiff confirmed that trafficking in P.I.I. files as Def sand George Webb and Ms. Negron did (mass distribution of said files via the Internet) is a violation of New Jersey state law (described in Dkt. 5). Plaintiff has no or insufficient knowledge to admit or deny this allegation about coordinating with Manuel Chavez, III. Plaintiff does recall stating that Def should secure appropriate legal counsel to help him with his legal troubles. Plaintiff has no or insufficient knowledge to admit or deny this allegation about whether this lawsuit is a "game". The term game is unduly ambiguous and vague.

20.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about "public threats" made to Def and whether or not he traveled to Ohio. Plaintiff learned a few days after

this alleged Ohio trip that George Webb was back in New York City with the Def, apparently release from jail. Plaintiff has no or insufficient knowledge to admit or deny this allegation about issues related to bail or Def's travel on June 15, 2017. Plaintiff has no or insufficient knowledge to admit or deny this allegation about "a three-year long vendetta". "Vendetta" appears to be an unduly vague and ambiguous term.

21.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about "virtually unaccountable number" of videos. "Unaccountable" appears to be an unduly vague and ambiguous term. Plaintiff has no or insufficient knowledge to admit or deny this allegation about "taunts, threats, false allegations and defamatory claims". Plaintiff has no or insufficient knowledge to admit or deny this allegation about the "spoliation of evidence". Plaintiff admits that he posts counter-speech to -protect his career and reputation on a blog known as SDNY.INFO that is editorial and opinion about court cases, such as this instant lawsuit. Plaintiff has no or insufficient knowledge to admit or deny this allegation about "inappropriate and conclusory statements", which appears to be unduly vague and ambiguous. Plaintiff has no or insufficient knowledge to admit or deny this allegation about "deleting postings". This allegation is DENIED for the most part.

22.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about Robert David Steele. Plaintiff has no or insufficient knowledge to admit or deny this allegation about George Webb's involvement with Robert David Steele. Plaintiff admits he made one attempt to intervene in the Steele v. Goodman lawsuit in Richmond, Virginia. The term "excessive number of briefs" is unduly vague and ambiguous. Plaintiff admits that intervention was DENIED.

23.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about "sending a clear signal". Plaintiff never contacted anyone associated with the "EMMYS", DENIED.

Plaintiff never contacted Adam Sharp or anyone associated with the National Academy of Television Arts and Sciences (NATAS), DENIED. Only within the last day or two has the Plaintiff forward a copy of the proposed supplemental complaint to personnel working for NATAS. Plaintiff has no or insufficient knowledge to admit or deny this allegation about a "copyright strike" or actions undertaken by Adam Sharp. Plaintiff has no or insufficient knowledge to admit or deny this allegation about whether Def is "severely damaged". Plaintiff has no or insufficient knowledge to admit or deny this allegation about "presumption of innocence". Plaintiff has no or insufficient knowledge to admit or deny this allegation about Def being "crippled". Plaintiff has no or insufficient knowledge to admit or deny this allegation about Def's challenge to this "copyright strike". Plaintiff has no or insufficient knowledge to admit or deny this allegation about "CDC report" or CRONY awards or whether it was "ironic, information and educational". Plaintiff has no or insufficient knowledge to admit or deny this allegation about "YouTube arbitration". Plaintiff has no or insufficient knowledge to admit or deny this allegation about "Goodman's business is severely hampered...". Plaintiff has no or insufficient knowledge to admit or deny this allegation about "decreased subscriber growth". DENIED that Plaintiff brought anything to the attention of Adam Sharp, NATAS or the "EMMYS". Plaintiff has no or insufficient knowledge to admit or deny this allegation about telephone calls with attorneys. Plaintiff has no or insufficient knowledge to admit or deny this allegation about "114,000 regular viewers"; however, a subscriber is not necessarily a "viewer". Plaintiff has no or insufficient knowledge to admit or deny this allegation about "co-host John Cullen". Plaintiff has no or insufficient knowledge to admit or deny this allegation about Internet search terms for said video. Plaintiff has no or insufficient knowledge to admit or deny this allegation about "manually identified" copyright violations. Plaintiff has no or insufficient

knowledge to admit or deny this allegation about Howard Stern copyright violations. Plaintiff has no or insufficient knowledge to admit or deny this allegation about "unrelenting efforts". DENIED that Plaintiff made any contact whatsoever to Adam Sharp, NATAS or the "EMMYS" prior to 09/01/2020 to inform them of the proposed supplemental complaint. DENIED that Plaintiff reviews all of Def's videos. Plaintiff has no or insufficient knowledge to admit or deny this allegation about "carefully reviews", except for occasional spot checks brought to the attention of the Plaintiff by other Internet observers. Plaintiff has no or insufficient knowledge to admit or deny this allegation about "think of no matter how far removed", seems unduly vague and ambiguous. Plaintiff has no or insufficient knowledge to admit or deny this allegation about "Hollywood friends", except that Plaintiff has not initiated any contact with such "Hollywood friends". Plaintiff has no or insufficient knowledge to admit or deny this allegation about a "plan along these lines".

24.      Admitted that the non-profit educational blog SDNY.INFO did post a photo of the Def (see AFFIRMATIVE DEFENSES section). Plaintiff has never received any request for retraction of any materials every posted by the Def. Plaintiff has never received any kind of take down notice for materials on SDNY.INFO from the Def. Plaintiff has no or insufficient knowledge to admit or deny this allegation about "not parody" and not "news reporting", except that the editorial opinions discuss developments in this instant litigation and other court related issues. Plaintiff has no or insufficient knowledge to admit or deny this allegation about "false and unverified claims", except that most information published are updates of the court document describing pleading filed by the Def or ORDERS issued by the federal judge in Richmond, Virginia. Plaintiff has no or insufficient knowledge to admit or deny this allegation about whether SDNY.INFO is protected by "fair use", except that the Plaintiff believes it is fair

use. Plaintiff has no or insufficient knowledge to admit or deny this allegation about

"deliberately reporting false information", except in general this claim is DENIED. Plaintiff has

no or insufficient knowledge to admit or deny this allegation about "completely unsubstantiated

by evidence", except that is general this claim is DENIED. Plaintiff has no or insufficient

knowledge to admit or deny this allegation about "actual malice", except that in general this

claim is DENIED. Plaintiff has no or insufficient knowledge to admit or deny this allegation

about "threats is to punish and smear Goodman", except that in general this claim is DENIED.

Plaintiff has no or insufficient knowledge to admit or deny this allegation about "damage

Goodman's business and reputation", except that in general this claim is DENIED. Plaintiff has

no or insufficient knowledge to admit or deny this allegation about a blog post that alleges

"Jason Goodman's fake CROWDSOURCE may be illegal under New York law", except that the

headline actually reads "Jason Goodman's fake CROWDSOURCE may be illegal under New

York law, court documents allege" (see AFFIRMATIVE DEFENSES with regards to New York

General Business Law and Civil Rights Law). Plaintiff has no or insufficient knowledge to

admit or deny this allegation about whether or not "Goodman's CrowdSource The Truth is not

fake". Plaintiff has no or insufficient knowledge to admit or deny this allegation about

"authentic relies on only true information". Plaintiff has no or insufficient knowledge to admit

or deny this allegation about "contents of an article to mislead the reader", in general this claim

is DENIED. Plaintiff has no or insufficient knowledge to admit or deny this allegation about

"presents no true facts or evidence". Plaintiff has no or insufficient knowledge to admit or deny

this allegation about "this claim is false".

25.      Plaintiff has no or insufficient knowledge to admit or deny this allegation about sending

an e-mail to the New York Attorney General, except for the e-mail message sent to various staff

members, the general mailbox, and public affairs mailbox of the N.Y.A.G.  See AFFIRMATIVE

DEFENSES regarding **N.Y.A.G. Executive Law section 63-A**.  Plaintiff has no or insufficient

knowledge to admit or deny this allegation about sending "above mentioned allegations", except

for the sending of the proposed supplemental complaint.

26.      Plaintiff has no or insufficient knowledge to admit or deny this allegation about

"extraordinary efforts".  Plaintiff has no or insufficient knowledge to admit or deny this

allegation about "Sweigert played a key role", in general this claim is DENIED.  Plaintiff has no

or insufficient knowledge to admit or deny this allegation about "orchestrating and executing a

conspiracy", except in general this claim is DENIED.  Plaintiff has no or insufficient knowledge

to admit or deny this allegation about "defame Goodman, extort money", in general this claim is

DENIED.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about

"multiple concurrent lawsuits."  Plaintiff has no or insufficient knowledge to admit or deny this

allegation about "strategic extrajudicial actions", except in general this claim is DENIED.

Plaintiff has no or insufficient knowledge to admit or deny this allegation about "damage

Goodman in every way possible."

27.      Plaintiff has no or insufficient knowledge to admit or deny this allegation about a "verbal

agreement", except in general this claim is DENIED.  Plaintiff has no or insufficient knowledge

to admit or deny this allegation about "statements against the declarant's interests".  Plaintiff has

no or insufficient knowledge to admit or deny this allegation about "corroborating

circumstance".  Plaintiff has no or insufficient knowledge to admit or deny this allegation about

"public defamation and harassment campaign."  Plaintiff has no or insufficient knowledge to

admit or deny this allegation about "harassing letter writing campaign".  Plaintiff has no or

insufficient knowledge to admit or deny this allegation about "Sweigert agrees, responding to

Simpson's offer.", except in general this claim is DENIED.  Plaintiff has no or insufficient

knowledge to admit or deny this allegation about "40 N.Y. Con. Laws Ann. [section] 240.30",

except in general this claim is DENIED.  Plaintiff has no or insufficient knowledge to admit or

deny this allegation about "overt actions", this term seems unduly vague and ambiguous.

28.    Plaintiff has no or insufficient knowledge to admit or deny this allegation about

"numerous direct references to a conspiracy".  Plaintiff has no or insufficient knowledge to admit

or deny this allegation about "co-conspirators", except in general this claim is DENIED.

29.    Plaintiff has no or insufficient knowledge to admit or deny this allegation about "civil

justice system as a weapon".  Plaintiff has no or insufficient knowledge to admit or deny this

allegation about "furtherance of a conspiracy", except in general this claim is DENIED.

30.    Plaintiff has no or insufficient knowledge to admit or deny this allegation about a

Simpson voice mail.  Plaintiff has no or insufficient knowledge to admit or deny this allegation

about Simpson, his voicemail, and/or conduct related to 40 N.Y. Con. Laws Ann. [section]

240.30.  Plaintiff is not involved with Simpson or his phone calls.

31.    Plaintiff references para. 30 above as if fully restated herein.

32.    Plaintiff has no or insufficient knowledge to admit or deny this allegation about

"Sweigert has aligned his efforts", except in general this claim is DENIED., further this term is

unduly vague and ambiguous.  Plaintiff has no or insufficient knowledge to admit or deny this

allegation about communications between Webb, Simpson, Chavez and Steele.  Admit Plaintiff

attempted to intervene in Richmond, Virginia lawsuit, Steele v. Goodman in May 2019.

33.    Plaintiff admits a copy of an ORDER was e-mailed to legal counsel of Patreon.Com (see

AFFIRMATIVE DEFENSES for litigation privilege).  Plaintiff has no or insufficient knowledge

to admit or deny this allegation about "malicious intent", except that in general this claim is

DENIED.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "baseless legal threats".  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "harassing e-mails".  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "malicious intent in an effort to frustrate", except that in general this claim is DENIED.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "Patreon CEO Jack Conte".  Plaintiff has no or insufficient knowledge to admit or deny this allegation about any interviews planned by Def. of Jack Conte.

34.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about "call and response communications", except that in general this claim is DENIED.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "once this message is received", except that in general this claim is DENIED.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "evidence spoliated".

35.     Para. Two (2) is hereby incorporated as if fully restated herein.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "military, intelligence and other sophisticated deceptive tactics", except that in general this claim is DENIED.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "active and dynamic network of co-conspirators", except that in general this claim is DENIED.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "overt acts in furtherance of a conspiracy", except that in general this claim is DENIED.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "creating an illusion that these co-conspirators are independent operators", except that in general this claim is DENIED.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "clandestine communications", except that in general this claim is DENIED.  Plaintiff has no or insufficient knowledge to admit or deny this

allegation about "compartmentalization of actions", except that in general this claim is DENIED. Plaintiff has no or insufficient knowledge to admit or deny this allegation about "unaware of the scope of the operation", except that in general this claim is DENIED.

36.   Para. Nine (9) is incorporated herein as if fully restated.  Plaintiff admits he attempted to intervene in Steele v. Goodman in May 2019.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about Outtrim's California citizenship.

37.   Para. Nine (9) is incorporated herein as if fully restated.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about Outtrim's post office box or home New Zealand.

38.   Para. Nine (9) is incorporated herein as if fully restated.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about Outtrim's e-mail, except that it was commonly displayed by Marcus Conte.  The Court will recall that Marcus Conte, Brooklyn, N.Y., sent several e-mail messages and letters to the presiding judge and magistrate.  Conte apparently made podcast videos of these efforts, which included the e-mail addresses for the presiding judge and magistrate.

39.   Para. Nine (9) is incorporated herein as if fully restated.  Plaintiff has no or insufficient knowledge to admit or deny these allegations about what Outtrim publishes on his blog, except for occasional browsing periodically.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about Outtrim blog post about the Ukraine.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "defamation and harassment of Goodman".  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "overt acts".

40.   Para. Nine (9) is incorporated herein as if fully restated.  Plaintiff admits he "re-blogged" an article originally posted by Outtrim.  See AFFIRMATIVE DEFENSES for re-blogging.

41.     Para. Nine (9) is incorporated herein as if fully restated.  Plaintiff has no or insufficient knowledge to admit or deny these allegations about what Outtrim publishes on his blog, except for occasional browsing periodically.  Plaintiff has no or insufficient knowledge to admit or deny these allegations about "Both Sweigert and Outtrim use this claim..".  Plaintiff has no or insufficient knowledge to admit or deny these allegations about "accusing Goodman of heinous crimes.".   Plaintiff has no or insufficient knowledge to admit or deny these allegations about what Def involved in "a recent explosion".  Again, the Court is directed to the video podcasts of Marcus Conte, who stated that Goodman was the likely suspicious character falsely accused in the Port Neches factory explosion in Texas which was not an LNG facility.

42.     Para. Six (6) and Nine (9) is incorporated herein as if fully restated.  Plaintiff has no or insufficient knowledge to admit or deny these allegations about what Outtrim may have broadcast with Susan Holmes, aka Queen Tut of Fort Collins, Colorado, except for occasional browsing his blog periodically.  Plaintiff has no or insufficient knowledge to admit or deny these allegations about "young girls" or "London".  Plaintiff has no or insufficient knowledge to admit or deny these allegations about obtaining access to Def's TINDER account, this is flatly DENIED as well.  Plaintiff has no or insufficient knowledge to admit or deny these allegations about "this false claim is issued by Sweigert", except that in general this claim is DENIED. Plaintiff has no knowledge about the issues related to Def's TINDER messages except for screen shots published by George Webb that depict messages from the Def discussing 18-year-old girls messaging Def on TINDER.  Plaintiff has never sought access to Def's TINDER mailbox.  Para. Plaintiff has no or insufficient knowledge to admit or deny these allegations about "embarrass Goodman or people associated with Goodman".

18

43.    Para. Seven (7) is herein incorporated by reference as if fully restated. Plaintiff has no or insufficient knowledge to admit or deny these allegations about Susan Holmes, aka Queen Tut, Fort Collins, Colorado working with Plaintiff to intervene in the Steele v. Goodman lawsuit in May 2019. The Def's recording depicts Holmes citing that Plaintiff attempted to help Holmes with a Freedom of Information Act request to obtain audio recordings of police body camera worn by law enforcement officers that shot and killed her son. Any insinuation that Holmes collaborated with Plaintiff to intervene in Steele v. Goodman (May 2019) is flatly DENIED. Plaintiff ceased communications with Holmes by June 2018.

44.    Para. Seven (7) is herein incorporated by reference as if fully restated. Admit that the warnings of Ms. Holmes regarding the potential death of the Plaintiff in Mount Shasta were headed. Admit that Quinn Michaels (aka Korey Atkin) was publishing Internet memes about #StopTheSacrifice in May 2018. Admit that Ms. Holmes informed the Plaintiff that his life was in jeopardy in Mount Shasta, California. Admit that Ms. Holmes advised the Plaintiff to vary his movements to avoid potentially being tracked down by people working with Quinn Michaels and the Def. Deny that any attempt of mail fraud was planned (see AFFIRMATIVE DEFENSES for mail fraud). Deny that the use of "in care of" constitutes an actionable offence under the federal mail fraud statutes. Plaintiff has no or insufficient knowledge to admit or deny these allegations about what the U.S. Postal Service told Def, except for the fact that Def has never produced a complaint number to memorialize the reporting of "mail fraud" to any postal inspector. Admit that the Def accused the Plaintiff of committing "mail fraud" in several video podcasts. Deny that any such mailing would constitute "fraud on the court". Admit Def was in the presence of George Webb in a video podcast when Webb announced that he was a member of Israeli MOSSAD and Goodman was an "accomplice".

45.     Para. Twenty Five (25) is hereby incorporated as if fully restated herein.  Plaintiff has no or insufficient knowledge to admit or deny these allegations about "New York copyright laws".

46.     Admit

47.     Admit

48.     Admit

49.     Admit

50.     Para. Four (4) is hereby incorporated as if fully restated.  Plaintiff has no or insufficient knowledge to admit or deny these allegations about "to torment Goodman and destroy his reputation."  Plaintiff has no or insufficient knowledge to admit or deny these allegations about a "conspiracy to defame".  Plaintiff has no or insufficient knowledge to admit or deny these allegations about a "conspiracy to sue Goodman for improper purposes".  Plaintiff has no association with Robert David Steele, Manuel Chavez, III, Tyroan Simpson, Steve Outtrim, Steven S. Biss, esq., etc.  Plaintiff has no or insufficient knowledge to admit or deny these allegations about "multiple jurisdictions concurrently", except that in general these claims are DENIED.

51.     Plaintiff has no or insufficient knowledge to admit or deny these allegations about "Sweigert has published false known statements", except that in general this claim is DENIED.  Plaintiff has no or insufficient knowledge to admit or deny these allegations about "actual malice with express intent", except that in general this claim is DENIED.  Plaintiff has no or insufficient knowledge to admit or deny these allegations about "civil and criminal litigation", except as to the issues related to Steele v. Goodman and this instant lawsuit.

52.     Plaintiff has no or insufficient knowledge to admit or deny these allegations about violating the privacy of the Def.  The reverse is true, Def worked with George Webb's ex-girl

20

friend Corean Elizabeth Stoughton of Hanover, Maryland to violate the privacy of the Plaintiff. Plaintiff has no or insufficient knowledge to admit or deny these allegations about a "conspiracy". Plaintiff has no or insufficient knowledge to admit or deny these allegations about "false claims and statements". Plaintiff has no or insufficient knowledge to admit or deny these allegations about violations of trademark. Plaintiff has never received a take down notice from the Def for any blog postings or other social media content since June 13, 2017.

53.      Plaintiff has no or insufficient knowledge to admit or deny these allegations about "a conspiracy" or about using the mails to further such a conspiracy.

54.      Plaintiff has no or insufficient knowledge to admit or deny these allegations about "false and defamatory statements", except that in general this claim is DENIED. Plaintiff has no or insufficient knowledge to admit or deny these allegations about "maliciously with the intent to intimidate", except that in general this claim is DENIED. Plaintiff has no or insufficient knowledge to admit or deny these allegations about "intent to defame and discredit Goodman", except in general this claim is DENIED.

55.      Plaintiff has no or insufficient knowledge to admit or deny these allegations about "co-conspirators". Plaintiff has no or insufficient knowledge to admit or deny these allegations about "deliberating making false statements". Plaintiff has no or insufficient knowledge to admit or deny these allegations about "published to third parties", except that in general this claim and the foregoing claim are DENIED. Plaintiff has no or insufficient knowledge to admit or deny these allegations about "fault".

56.      Plaintiff has no or insufficient knowledge to admit or deny these allegations about "Sweigert's false allegation of international terrorism". Plaintiff has no or insufficient knowledge to admit or deny these allegations about "statements likely to cause public hate".

Plaintiff has no or insufficient knowledge to admit or deny these allegations about "implying involvement in criminal activity". Plaintiff has no or insufficient knowledge to admit or deny these allegations about "damages to worldwide reputation". Plaintiff has no or insufficient knowledge to admit or deny these allegations about "foreknowledge of terrorist events". In general, all of the foregoing allegations are DENIED.

57.    Admit as this appears to be a passage from a law book.

58.    Plaintiff has no or insufficient knowledge to admit or deny these allegations about "unverified false allegations". Plaintiff has no or insufficient knowledge to admit or deny these allegations about "no basis in fact or unsupported by evidence". Plaintiff has no or insufficient knowledge to admit or deny these allegations about "furtherance of false claims". Plaintiff has no or insufficient knowledge to admit or deny these allegations about "Goodman's right to publicity". Admit using photographs of Goodman taken from YouTube podcasts. Plaintiff has no or insufficient knowledge to admit or deny these allegations about "exclusive intellectual property of Goodman". It appears all podcast related content becomes the property of the social media platform from where it is distributed. See AFFIRMATIVE DEFENSES, YouTube Terms of Agreement (Section 6.B) provide for the right to any YouTube user "to use, reproduce, distribute, display and perform such Content as permitted through the functionality of the Service." The license is perpetual and irrevocable. Plaintiff has no or insufficient knowledge to admit or deny these allegations about "severe degree of falsity". Plaintiff has no or insufficient knowledge to admit or deny these allegations about "falsehoods with actual malice". Def's photographs have been displayed on a non-commercial, private, educational blog which does not represent a commercial enterprise and such images were not used for commercial gain of any

kind.  See AFFIRMATIVE DEFEDNSE to New York Civil Rights Law, Sections 50 and 51.  In

general all the foregoing allegations are DENIED.

59.     Admit that it is a prayer.

## AFFIRMATIVE DEFENSES

**FIRST DEFENSE**

60.     The first defense orbits around the New York Civils Rights Law, Section 50 and 51 that

have been invoked by the Def.  The Def. has misplaced his trust in Sections 50 and 51 which

apply to commercial speech, commercial exploitation, advertising, etc.  The Def is required to

allege unauthorized commercial exploitation of his photograph or likeness.  Booth v Curtis Pub.

Co., 15 A.D.2d 343, 351; see Gautier v. Pro-Football, 304 N.Y. 354, 359; Binns v. Vitagraph Co.

of Amer., 210 N.Y. 51.

61.     Persons like the Def. have "thrust themselves into the public arena".  In this circuit, it is

the commercial exploitation of those who "thrust themselves into the public arena" that is in

question.  In Factors Etc. v. Pro Arts ( 579 F.2d 215, cert den 440 U.S. 908), the court noted (p

220) that "[t]he distinguishing feature of * * * [the right of publicity] is  that it involves the use

of plaintiff's protected right for defendant's direct commercial advantage."  Here there simply no

commercial advantage attributed to the counter-defendant (Plaintiff).  Absolutely no funds are

collected, nothing is sold, there is no advertising, etc.

62.     "While one who is a public figure or is presently newsworthy may be the proper subject

of news or informative presentation, the privilege does not extend to commercialization of his

personality through a form of treatment distinct from the dissemination of news or information"

(emphasis added).  Gautier v. Pro-Football, Inc., 304 N.Y. 354, 107 N.E.2d 485 (1952).

63.     The wrong consists of only two elements: the <u>commercial use</u> of a person's name or photograph and the failure to procure the person's written consent for such use.

**SECOND DEFENSE**

64.     In violation of the Court ORDER (Dkt. 140) to definitize his defamation claims, Def. has merely republished the same worn out claims from his first COUNTERCLAIM (Dkt. 122). This indicates that the Def. will most likely never produce sufficient evidence of his claims to introduce at trail.  However, the Def. has correctly pointed out that the bulk of the postings on the "SDNY.INFO" blog relate to judicial proceedings and this court case.  In this circuit N.Y. Civ. Rights Law § 74 provides for an exemption from defamation suits for such postings, see "Privileges in action for libel".  In sum, the privilege outlined in § 74 of the New York Civil Rights Law bars this action

65.     "The purpose of Civil Rights Law § 74 'is the protection of reports of judicial proceedings which are made in the public interest.'" <u>Cholowsky v. Civiletti</u>, 887 N.Y.S.2d 592, 595 (2d Dep't 2009) (quoting <u>Williams v. Williams</u>, 23 N.Y.2d 592, 599 (1969)). Section 74's "fair and true report" privilege is an "absolute privilege" that is "not defeated by the presence of malice or bad faith." <u>Biro v. Conde Nast</u>, 883 F. Supp. 2d 441, 477 (S.D.N.Y. 2012) (internal quotation marks and citations omitted).

66.     The New York Court of Appeals has observed that "[a] fair and true report admits of some liberality; the exact words of every proceeding need not be given if the substance be substantially stated." <u>Holy Spirit Ass'n v. N.Y. Times Co.</u>, 49 N.Y.2d 63, 67 (1979) (quoting <u>Briarcliff Lodge Hotel v. Citizen-Sentinel Publ.</u>, 260 N.Y. 106, 118  (1932)).  Def. has not overcome this exemption with his republished ramblings from Dkt. 122.

24

67.     The "SDNY.INFO" postings qualifiy as "the publication of a fair and true report of a[]

judicial proceeding" that is entitled to protection under § 74's privilege and, consequently,

Plaintiff's "civil action [for defamation] cannot be maintained against" Defendant. N.Y. Civ.

Rights Law § 74; see, e.g., <u>Abkco Music, 2016 WL  2642224, at *3, 6</u> (dismissing defamation

claim because § 74 privilege precluded action).

**THIRD DEFENSE**

68.     Falsity is a necessary element of a defamation action. <u>Buckley v. Littell</u>, 539 F.2d 882,

889–894 (2d Cir. 1976) ; <u>Gross v. New York Times Co.</u>, 82 N.Y.2d 146, 152–153, 603 N.Y.S.2d

813, 623 N.E.2d 1163 (1993). Therefore, "a statement of <u>opinion</u> relating to matters of public

concern which does not contain a provably false factual connotation will receive full

constitutional protection."(emphasis added) <u>Milkovich v. Lorain Journal Co.</u>, 497 U.S. 1, 20, 110

S.Ct. 2695, 111 L.Ed.2d 1 (1990).  The Court will note that every posting of "SDNY.INFO" is

clearly labeled "OPINION AND EDITORIAL".  See EXHIBIT B of Def's. Dkt. 145.

69.     "Although the editorial format is clearly not determinative, in ambiguous cases the

presentation of a statement on an editorial or op-ed page should increase the likelihood that the

statement will be perceived as an expression of opinion." <u>Bruce W. Sanford, Libel and Privacy</u>

<u>199</u> (2d ed. Supp. 1993).

70.     Opinions and editorials "are nothing more than expressions of opinion which are not

objectively verifiable. Such statements of opinion cannot be the subject of a slander claim.". See

<u>Keller v. Miami Herald Pub. Co.</u>, 778 F.2d 711, 718 (11th Cir. 1985) (cartoon implying that

nursing home manager was reaping profits at residents' expense was protected opinion).

**FOURTH DEFENSE**

71.    **Executive Law section 63-A** empowers the New York Attorney General (N.Y.A.G.) to bring an independent action pursuant to New York general Business law sections 349 and 350 against any entity (like the Def.) for violations of said law.  The N.Y.A.G. does not have to demonstrate damages.  The N.Y.A.G. is empowered to receive complaints from the public.

72.    The New York Attorney General also has the power to enjoin deceptive consumer practices or to initiate enforcement actions against any person or business that engages in deceptive acts or practices or false advertising pursuant to General Business Law ("GBL") Sections 349 and 350.[25]( Gen. Bus. Law §§ 349, 350)  These statutes, which are "broadly applicable and liberally construed," have been invoked against a variety of economic activities.[26] (*See Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 290 (N.Y. 1999)) Moreover, as with the Martin Act, there is no scienter requirement—that is, the New York Attorney General need not prove that the deceptive practice or false advertising was intentional or even reckless.[27].( *People v. H & R Block, Inc.*, 847 N.Y.S.2d 903 (N.Y. Sup. Ct. 2007))  URL: https://www.jonesday.com/en/insights/2016/02/the-investigative-authority-of-the-new-york-attorney-general-is-not-without-its-limits#:~:text=The%20Martin%20Act%2C%20Executive%20Law,to%20allegedly%20fraudulent%20or%20deceptive

## LITIGATION PRIVILEGE

73.    Litigation privilege is a doctrine that affords parties involved in judicial or quasi-judicial proceedings to attempt to resolve matters outside of the courtroom.  It provides immunity to letters and communications sent during litigation (such as the alleged e-mail messages sent to the general counsel of Patreon.Com).  The Court will recall that the Def. has NO contract with Patreon.Com but only a subscriber agreement that can be severed by the provider (Patreon.Com)

at any time for any reason. The Def has not alleged tortious interference and cannot allege tortious interference with a "consumer" type of subscriber agreement with a severability clause at the whim of the provider (Patreon.Com).

74. The issue of litigation privilege becomes sticky when a California Plaintiff communicates with a California third-party (Patreon). The rules of the court for the New York State (NYS) may not apply to the practices of litigation privilege in California.

75. Under New York law, statements made by parties and their attorneys in the context of litigation "are absolutely privileged if, by any view or under any circumstances, they are pertinent to the litigation." O'Brien v. Alexander, 898 F. Supp. 162, 171 (S.D.N.Y. 1995), aff'd in part, 101 F.3d 1479 (2d Cir. 1996). The test for absolute privilege is broad and "embraces anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability." Id. (citation omitted).

76. "While the communications at issue in Front were among lawyers and potential parties, the New York Court of Appeals did not explicitly require the recipient of the challenged statements to be a lawyer or potential party." Feist v. Paxfire, Inc., No. 11 CIV. 5436 (LGS), 2017 WL 177652, at *5 (S.D.N.Y. Jan. 17, 2017).

## PRAYER

WHEREFORE, for the foregoing reasons, and to support judicial economy, and to support the Court's inherent power to discipline the Defendant for his open defiance of the Courts ORDER (Dkt. 140), this Court should DISMISS this Counter Claim with prejudice with no opportunity to amend and find in favor the counter-defendant (Plaintiff).

## STATEMENT AND VERIFICATION

This pleading is true to the knowledge of the undersigned, except as to matters alleged on

information and belief, and that as to matters that the undersigned believe are true.  **See NY**

**C.P.L.R. 3020.**  So sworn under penalties of perjury.

_____ /

**D. George Sweigert,**
**c/o General Delivery**
**Rough and Ready, CA 95975**
**Spoliation-notice@mailbox.org**

9.3.20

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

## U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK
### (FOLEY SQUARE)

D George Sweigert

**Plaintiff**                                     CIVIL CASE #: 1:18-CV-08653-VEC

v.                                                JUDGE VALERIE E. CAPRONI

Jason Goodman                                     MAGISTRATE STEWART D. AARON

**Defendant**

## CERTIFICATE OF SERVICE

I HEREBY ATTEST that a true copy of the attached pleadings have been sent to the

following addressees on the 3rd day of September, 2020. So sworn under oath.

Jason Goodman, CEO
Multi-media Design Systems, Inc.
252 7th Avenue, Apart. #6S
New York, NY 10001

Clerk of the Court, Room 200
U.S. District Court
500 Pearl Street
New York, New York 10007-1312

D. GEORGE SWEIGERT

This envelope is made from post-consumer waste. Please recycle - again.

PRESS FIRMLY TO SEAL

# PRIORITY
★ MAIL ★



PS000010000014

EP14F July 2013
OD: 12.5 x 9.5

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE


UNITED STATES
POSTAL SERVICE ®

DATE OF DELIVERY SPECIFIED *

USPS TRACKING™ INCLUDED *

$ INSURANCE INCLUDED *

PICKUP AVAILABLE

\* Domestic only

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION,
LABEL MAY BE REQUIRED.

9505 5067 1486 0246 2997 38

USPS TRACKING® NUMBER

FROM:

D. G. SWEIGERT, C/O
GENERAL DELIVERY
ROUGH AND READY, CA 95975
Spoliation-notice@mailbox.org


# Pro


RECEIVED
SEP - 8 2020
PRO SE OFFICE

TO:

U.S. DISTRICT COURT

Clerk of the Court, Room 200
U.S. District Court
500 Pearl Street
New York, New York 10007-1312

10007-1312


Pro
Se



PRIORITY
POSTAGE

9494009021728