*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

**U.S. DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**
**(FOLEY SQUARE)**



| | |
|---|---|
| D George Sweigert<br><br>**Plaintiff**<br><br>v.<br><br>Jason Goodman<br><br>**Defendant** | **CIVIL CASE #: 1:18-CV-08653-VEC**<br><br>**JUDGE VALERIE E. CAPRONI**<br><br>**MAGISTRATE STEWART D. AARON** |

### PLAINTIFF'S NOTICE OF MOTION IN OPPOSITION TO DEFENDANT'S COUNTER-CLAIM PAPERS (DOC. No. 145) PURSUANT TO RULE 12(b)(6) FAILURE TO STATE A CAUSE, OR, IN THE ALTERNATIVE, RULE 12(b)(1) LACK OF JURISDICTION

This Memorandum of Law is submitted pursuant to **Local Rule 7.1 (a)(2) and 7.1 (b)** and is in

response to the Defendant's pleading papers **(Dkt. No. 145)** which are styled as a

"COUNTER-CLAIM"

I hereby certify that the attached pleadings are truthful and accurate (to the best of my

knowledge) and are not submitted for the purposes of oppression of the Defendant. A certificate

of service is included on the last page of this document. So sworn under oath.

Signed this ___ day of September, 2020.

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*



1

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

## PLAINTIFF'S MEMORANDUM OF LAW
## TO SUPPORT MOTION IN OPPOSITION TO DEFENDANT'S COUNTER-CLAIM
## PAPERS (DOC. No. 122) PURSUANT TO RULE 12(b)(6) FAILURE TO STATE A
## CAUSE, OR, IN THE ALTERNATIVE, RULE 12(b)(1) LACK OF JURISDICTION

## TABLE OF CONTENTS

**Contents**

TABLE OF CONTENTS ........................................................................................................... 2

LIST OF AUTHORITIES.......................................................................................................... 3

PROCEDURAL BACKGROUND ............................................................................................ 5

INTRODUCTION....................................................................................................................... 6

LAW AND DISCUSSION......................................................................................................... 9

CONCLUSION ........................................................................................................................ 20

CERTIFICATE OF SERVICE ................................................................................................ 22

# LIST OF AUTHORITIES

**Cases**

*Biro v. Condé Nast*, 963 F. Supp. 2d 255 (S.D.N.Y. 2013)........................................................ 13

*Cholowsky v. Civiletti*, 887 N.Y.S.2d 592, 595 (2d Dep't 2009) .................................................. 16

*Etheredge-Brown v. Am. Media, Inc.*, 13 F. Supp. 3d 303 (S.D.N.Y. 2014)................................ 14

*Gladden v. City of N.Y.*, 12 Civ. 7822 (PKC) (S.D.N.Y. Aug. 29, 2013)........................................ 9

*Goonewardena v. New York*, 475 F. Supp. 2d 310 (S.D.N.Y. 2007) ............................................ 14

*Keller v. Miami Herald Pub. Co.*, 778 F.2d 711, 718 (11th Cir. 1985)......................................... 17

*Menaker v. C.D.*, 2:17-cv-5840 (DRH)(AYS) (E.D.N.Y. Nov. 1, 2018) ..................................... 12

*Murray v. City of N.Y.*, 16-cv-8072 (PKC) (S.D.N.Y. Aug. 16, 2017) ........................................ 19

*Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 343 (S.D.N.Y. 2000)............................................ 12

People v. H & R Block, Inc., 847 N.Y.S.2d 903 (N.Y. Sup. Ct. 2007)........................................ 11

*Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008) ............................................................ 9

See Karlin v. IVF Am., Inc., 93 N.Y.2d 282, 290 (N.Y. 1999).................................................... 11

*Sepenuk v. Marshall*, No. 98 Civ. 1569 (RCC) (S.D.N.Y. Dec. 8, 2000) .................................... 14

*Tehrani v. Town of Oyster Bay Hous. Auth.*, 18-cv-2450 (BMC) (LB) (E.D.N.Y. Apr. 9, 2019) 20

*Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 89 (2d Cir.2003) .................................................... 14

**Statutes**

Gen. Bus. Law §§ 349, 350............................................................................................................ 11

N.Y. Civ. Rights Law § 74 ............................................................................................................ 16

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

New York Executive Law section 63-A ...................................................................... 11

New York General Business Law sections 349 and 350 ............................................. 11

**Rules**

CPLR § 215(3) ................................................................................................................ 14

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 9

Fed. R. Civ. Proc. 12(b)(1) .............................................................................................. 8

Fed.R.Civ.Proc. 12(b)(6) ............................................................................................... 20

Rule 12(b)(6) ..................................................................................................................... 9

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

### PLAINTIFF'S MEMORANDUM OF LAW
### TO SUPPORT MOTION IN OPPOSITION TO DEFENDANT'S COUNTER-CLAIM PAPERS (DOC. No. 122) PURSUANT TO RULE 12(b)(6) FAILURE TO STATE A CAUSE, OR, IN THE ALTERNATIVE, RULE 12(b)(1) LACK OF JURISDICTION

### PROCEDURAL BACKGROUND

1.      This instant lawsuit was transferred to the Southern District of New York (S.D.N.Y.) from the District of South Carolina on 09/21/2018 (Dkt. 30). The original lawsuit contained a complaint and an amended complaint filed for the South Carolina jurisdiction (Dkt. 1, 06/14/2018 and Dkt. 5, 6/29/2018, respectively). One year ago, presiding judge Hon. Valeria Caproni issued an ORDER (8/20/2019, Dkt. 87) which, among other things stated that the "Plaintiff appears to regard himself as a roving knight in shining armor, intent on vindicating, through lawsuit, the rights of anyone harmed by the Defendant's nonsensical ranting. [pg. 8 of 14]" Further, the ORDER stated, "Goodman asserts that Sweigert is part of an organized campaign that has engaged in "wanton and willful tortuous interference, defamation, slander, harassment, invasion of privacy, infringement of first amendment rights, menacing and stalking." Dkt. 44. Apart from these conclusory statements, Goodman has not set forth any facts to support any of his claims." (pg. 12 of 14). This ORDER permitted the filing of a Second Amended Complaint (SAC) by the *pro se* Plaintiff (filed 9/10/2019, Dkt. 88). The ORDER also dismissed Def Goodman's "counter-claims" (Dkt. 44). In response to the SAC (Dkt. 88) Def Goodman sought to file his second counterclaim **(2CC)** with an enlargement of time (via Dkt. 104, filed 11/18/2019). The Def's enlargement of time request was approved by the Magistrate via Dkt. 102 (11/14/2019). Def filed his second COUNTERCLAIM VERIFIED COMPLAINT **(2CC)** against the Plaintiff on 12/05/2019 (Dkt. 122). By ORDER of 08/03/2020 (Dkt. 140) the presiding judge once again dismissed the Goodman counterclaims (Dkt. 122); but authorized

another refilling of a third counter-claim by Goodman prior to August 31, 2020.  Def filed his

third COUNTERCLAIM (3CC) on 09/01/2020 (Dkt. 145).

## INTRODUCTION

2.      The Defendant/Counter-Plaintiff Jason Goodman (Def.) is a public figure that operates a

podcast social media conspiracy brand known as "CrowdSource The Truth" (CSTT).  Def

Goodman's CrowdSource The Truth is presented as a news, research and public affairs platform

which collects subscriber fees.  Goodman's daily podcasts are viewed by thousands of people,

many of whom contribute money.  The present social media footprint for CrowdSource The

Truth includes thirteen (13) individual social media platforms (Facebook, YouTube, PATREON,

Periscope, SubscribeStar, etc.).

3.      Although the Def was offered a third bite at the "counter-claim apple" he has simply

republished his fatally flawed 2CC (Dkt. 122) as his 3CC (Dkt. 145).  In fact, the Def includes

verbatim passages of causes of action that have already been dismissed via the Court's ORDER

(Dkt. 14).

4.      To illustrate, below are comparison of the two documents 2CC (12/05/19) and 3CC

(9/01/20), see below.  These illustrations demonstrate that the Def made no effort to revise his

baseless, foundationless, and meritless cause of action even after admonishment in the ORDER

of 8/03/20 (Dkt. 140).

> Countercl. ¶ 72.  Accordingly, the Court finds that Defendant's defamation counterclaim should
> be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendant is
> given leave to file an amended pleading consistent with this Order, no later than August 31,
> 2020.  Failure to timely amend will be construed as an abandonment of Defendant's defamation
> counterclaim.      **ORDER Dkt. 140**

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

Case 1:18-cv-08653-VEC-SDA   Document 122   Filed 12/05/19   Page 18 of 144

# 12/05/19

**COUNT 1 DEFAMATION**

75. Counter Plaintiff Goodman re-alleges paragraphs 1 - 74 as if the same were fully set forth herein. Sweigert made his false and defamatory statements deliberately and maliciously with the intent to intimidate, discredit and defame Goodman.

76. Sweigert and co-conspirators engaged in Defamation Per Se on several occasions by deliberately making false statements which were published to third-parties without privilege of authorization; with fault amounting to AT LEAST negligence; that caused special harm.

77. Because Sweigert's false allegations of international terrorism or foreknowledge of terrorist events are such heinous false statements likely to cause public hate toward Goodman implying involvement in criminal activity, damages to worldwide reputation are inherent.

Above:  The use of para. 74 in a cause of action 2CC 12/05/19, Dkt. 122

**COUNT 1 DEFAMTION**

54. Counter Plaintiff Goodman re-alleges paragraphs 1 - 74 as if the same were fully set forth herein. Sweigert made his false and defamatory statements deliberately and maliciously with the intent to intimidate, discredit and defame Goodman.

COUNTER CLAIM VERIFIED AMENDED COMPLAINT - 20

# 9/01/20

Case 1:18-cv-08653-VEC-SDA   Document 145   Filed 09/01/20   Page 21 of 55

55. Sweigert and co-conspirators engaged in Defamation Per Se on several occasions by deliberately making false statements which were published to third parties without privilege of authorization; with fault amounting to AT LEAST negligence; that caused special harm.

56. Because Sweigert's false allegations of international terrorism or foreknowledge of terrorist events are such heinous false statements likely to cause public hate toward Goodman implying involvement in criminal activity, damages to worldwide reputation are inherent.

Above:  Reference to para. 74 mistakenly left behind in 3CC, 9/01/20, Dkt. 145

7

5.     The above illustrations are representative of the wholesale bulk data republishing of 2CC content into 3CC, which smacks of dilatory and frivolous tactics that speaks to bad faith. This situation becomes more acute when considering that the Court extended to the Def a gracious offer to have a third bite at the counter-claim apple. For all the Def's puffery of having letters to business associations written by the Plaintiff, examples of slander and defamation by the Plaintiff, etc. he cannot produce any such evidence to support his defamation cause of action (3CC, Dkt. 145). To add insult to injury, the Court has already dismissed the exact same wording of this cause of action expressed in 2CC (Dkt. 122). Indeed, the Court was warned of this likely outcome by the Plaintiff's motion for reconsideration (see Fed. R. Civ. Proc. Rule 59(e)) on 8/18/20 (Dkt. 141 and 142).

6.     Unfortunately, the 3CC papers (# 145) are only a verbatim re-hash of the tortured attempt to re-litigate the Def's federal lawsuit in Richmond, Virginia, as expressed in 2CC (Dkt. 122); where the Defendant faces nearly identical causes of action for defamation, libel, and slander (*Steele v. Goodman*, Civil Action No. 3:17cv601 (E.D. Va. Jul. 25, 2019)). For clarity purposes the Court should image a troupe of players associated with this Virginia lawsuit. This troupe of players has now been listed as the new 11 third party defendants on this Court's own docket (see below).

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*



Above: Court docket as of 9/04/20

7.      The Court will learn that the meager factual allegations included in the 3CC papers (# 145) do not create any inference supporting the allegation that the Plaintiff/Counter-Defendant is a ring-leader of some vast conspiracy of "operators" (Virginia lawsuit troupe – third party defendants), and as such these allegations are not enough to state a facially plausible claim.

8.      The Court will learn that all the claims in the 3CC (# 145) are not factually based and will not survive a motion to dismiss (Rule 12(b)(6).

## LAW AND DISCUSSION

9.      The Court may observe issues presented herein that indicate the Court has no jurisdiction over certain matters.  In the event of such adjudication, the Counter-Defendant herein invokes Fed. R. Civ. Proc. 12(b)(1) for lack of jurisdiction.

10.      Although the Court must accept all factual allegations set forth in the 3CC and view them in the light most favorable to the pro se Defendant/Counter-Plaintiff, it should also note that conclusory allegations, unwarranted factual deductions, and legal conclusions will not prevent dismissal under Rule 12(b)(6).

### *CONCLUSORY AND VAGUE STATEMENTS*

11.      Generally, when considering a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), non-conclusory allegations in the complaint are deemed true. See Ruotolo v. City of N.Y., 514 F.3d 184, 188 (2d Cir. 2008). [emphasis added]

12.      The 3CC Counter-Claim papers (# 145) proffer only a few non-conclusory allegations, which could possibly be accepted as true by this Court. "In considering a Rule 12(b)(6) motion, all non-conclusory factual allegations are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (per curiam)". *Gladden v. City of N.Y.*, 12 Civ. 7822 (PKC) (S.D.N.Y. Aug. 29, 2013) [emphasis added]

### *COUNTER-PLAINTIFF'S COUNT 1 DEFAMATION*

13.      At this stage, the Court need only to rely on its inherent powers for the abuse of judicial process by the Def.  His bad faith pleadings warrant another dismissal of the Def's cause action for defamation in the 3CC.  As these claims have been presented twice to this Court (verbatim language in the 2CC and 3CC) the Court should strongly consider dismissal with prejudice with no opportunity to refile another such pleading.  See cases addressing court's inherent powers DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124, 136 (2d Cir. 1998), Sakon v.

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

Andreo, 119 F.3d 109, 114 (2d Cir. 1997), Milltex Indus. Corp. v. Jacquard Lace Co., 55 F.3d

34, 41 (2d Cir. 1995), and Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986).

### National Academy of Television Arts and Sciences (NATAS)

14.      At para. 23 in the 3CC Def makes the utterly false, baseless and meritless claim that "On

information and belief, Goodman alleges that immediately following this [issuance of ORDER,

Dkt. 143] Sweigert sought out and contacted a member of the National Academy of Television

Arts and Sciences (NATAS) falsely accusing Goodman of violating a NATAS copyright..".  This

statement is 100% conspiracy theorist speculation which is whole heartedly denied in the

strongest terms by the undersigned.  Def uses this coincidence of a "YouTube copyright strike"

by NATAS to pander to his conspiracy loving audience about the "deep state" attacks that CSTT

is enduring for "truth telling".  Such conjecture and fantasy thinking represents the height of

frivolity and again speaks to the Def's bad faith in submitting such non-sense to this Court.  Even

if true, NATAS has an independent right to seek out copyright claims against the Def for his

gross abuses of not only the NATAS copyrights, but countless other movie copyrights, etc.  Def

can produce no evidence to substantiate this irrelevant claim.

### New York Attorney General

15.      One of the few new allegations that the Def makes in the 3CC orbits the submission of

the proposed First Supplemental Complaint (Dkt. 144-1) to the office of the New York Attorney

General (N.Y.A.G.) for review and possible investigation (see para. 25, 3CC, Dkt. 145).

16.      Based upon the Def's mass communication t0po millions of unsuspecting viewers,

commercial solicitation of funds via credit card processors, the allegation of developing fake

social media consensus with fake podcast "likes", fake "subscribers", fake "views", use of "sock

puppet" accounts, and the use of "bots", there is a matter of public concern associated with the Def and his CSTT podcasts.

17.     The public concern element is further amplified by the censure of the Def by YouTube for the broadcast of "harmful content" related to Def's COVID-19 "plandemic" conspiracies. Relying of fake "experts" and non-credentialed guests, Def has openly called for the defiance of public health pandemic emergency orders issued by the State of New York.  This encouragement of audience members not to wear facial coverings and not to practice social distancing is only one example of the potential harm that the Def spreads on his broadcasts.

18.     New York Executive Law section 63-A empowers the New York Attorney General (N.Y.A.G.) to bring an independent action pursuant to New York General Business Law sections 349 and 350 against any entity (like the Def) for violations of said law.  The N.Y.A.G. does not have to demonstrate damages.  The N.Y.A.G. is empowered to receive complaints from the public.

19.     The New York Attorney General also has the power to enjoin deceptive consumer practices or to initiate enforcement actions against any person or business that engages in deceptive acts or practices or false advertising pursuant to General Business Law ("GBL") Sections 349 and 350.[25]( Gen. Bus. Law §§ 349, 350)  These statutes, which are "broadly applicable and liberally construed," have been invoked against a variety of economic activities.[26] (*See* Karlin v. IVF Am., Inc., 93 N.Y.2d 282, 290 (N.Y. 1999)) Moreover, as with the Martin Act, there is no scienter requirement—that is, the New York Attorney General need not prove that the deceptive practice or false advertising was intentional or even reckless.[27].( People v. H & R Block, Inc., 847 N.Y.S.2d 903 (N.Y. Sup. Ct. 2007))  URL: https://www.jonesday.com/en/insights/2016/02/the-investigative-authority-of-the-new-york-

attorney-general-is-not-without-its-

limits#:~:text=The%20Martin%20Act%2C%20Executive%20Law,to%20allegedly%20fraudulen

t%20or%20deceptive

20.     "[U]nder New York law, "[p]ublic policy demands that certain communications, although

defamatory, cannot serve as the basis for the imposition of liability in a defamation action."

*Nevin v. Citibank, N.A.,* 107 F. Supp. 2d 333, 343 (S.D.N.Y. 2000) (citing Toker v. Pollak, 44

N.Y.2d 211, 218 (1978)).

21.     Certain communications made in the discharge of public functions are entitled to an

"absolute" privilege, which means that the communications are privileged regardless of the

speaker's motive. Nevin, 107 F. Supp. 2d at 343-44." *Menaker v. C.D.,* 2:17-cv-5840

(DRH)(AYS) (E.D.N.Y. Nov. 1, 2018).

22.     The Plaintiff/Counter-Defendant statements of public concern to N.Y.A.G. have

substantial immunity as they were providing intelligence to a law enforcement agency in good

faith.

> "Other communications enjoy a "qualified" privilege, when it is "fairly made by a
> person in the discharge of some public or private duty, legal or moral, or in the
> conduct of his own affairs in a matter where his interest is concerned." Id. (citing
> Toker v. Pollak, 44 N.Y.2d 211, 219 (1978))".

> *Menaker v. C.D.,* 2:17-cv-5840 (DRH)(AYS) (E.D.N.Y. Nov. 1, 2018)

### *Reblogging Steve Outtrim's article is not a defamatory act (Para. 37)*

23.     Beginning at para. 37 in the 3CC (para. 31 in the 2CC) Def complains about an Internet

blog article posted by Steve Outtrim about Def's experiences as Chief Executive Officer (CEO)

of a heavy lift drone company.  Def accuses the Plaintiff/Counter-Defendant (undersigned) of

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

defaming Def with this article. The issue here is the act of "reblogging" – which is not republishing under the **single publication rule**. Reblogging is a delayed circulation of the original edition. The "reblogging" feature on a WordPress.COM blog allows the headline of an original article at the origin blog site (parent site) to be "highlighted" on another – secondary -- blog site (child site). The entirety of the article on the parent site is NOT republished, only a headline teaser and pointer is published on the child site. Once a user clicks on the reblogged headline pointer teaser (child site), the user is redirected by Internet Protocols to the origin site (parent) to see a full display of the article. The reblogged headline on the child site stated:

> **Insane in the Ukraine: J.Go Like You've Never Seen Him Before [UPDATES] —**
> **Burners.Me: Me, Burners and The Man**
>
> The text that accompanied the headline:
> *Recognize this guy? Jason Goodman, CEO of Aerocine, the first company to fly a*
> *full-size RED EPIC camera on a "heavy payload" micro-hexacopter drone. It's*
> *almost like we're watching an actor playing a different character. 3,200*
> *more words*

24.    The totality of the information published on the child site appears above; it is the entirety of the reblogged headline. Clicking on the headline activates an Internet Protocol Uniform Resource Locator (URL) redirection to the parent site operated by Steve Outtrim (BURNERS.ME).

> "Republication, retriggering the period of limitations, occurs upon a separate
> aggregate publication from the original, on a different occasion, which is not merely
> "a delayed circulation of the original edition."
> See *Biro v. Condé Nast*, 963 F. Supp. 2d 255 (S.D.N.Y. 2013)

25.    The original article on Steve Outtrim's "BURNERS.ME" WordPress.COM blog entitled "*Insane in the Ukraine: J.Go Like You've Never Seen Him Before [UPDATES]*" was

published on December 3, 2018 over a year after the Defendant docketed his papers 2CC papers

on 12/05/19 (# 122) and well over 18 months when the 3CC was docketed on 9/01/20 (Dkt. 145).

26.     "New York imposes a one-year statute of limitations on defamation claims. CPLR §

215(3). Under the "single publication" rule, the statute of limitations ordinarily begins to run at

the time of the "first publication"—that is, "the earliest date on which the work was placed on

sale or became generally available to the public." *Van Buskirk v. N.Y. Times Co.,* 325 F.3d 87, 89

(2d Cir.2003)." See *Etheredge-Brown v. Am. Media, Inc.*, 13 F. Supp. 3d 303 (S.D.N.Y. 2014).

27.     It is a stretch of logic to hold the Plaintiff/Counter-Defendant liable for pointer to an

article that was first published on a different blog site over a year ago.

## COUNTER-PLAINTIFF'S
## COUNT 2 CIVIL CONSPIRACY

28.     The Defendant is left without a primary tort – defamation and/or defamation per se.  By

his own admission, *Sepenuk v. Marshall*, No. 98 Civ. 1569 (RCC) (S.D.N.Y. Dec. 8, 2000)

forecloses the Defendant's "civil conspiracy" claim.

> "It is textbook law that New York does not recognize an independent tort of
> conspiracy. See Sado v. Ellis, 882 F. Supp. 1401, 1408 (S.D.N Y 1995). **If an
> underlying, actionable tort is established**, however, plaintiff may plead the
> existence of a conspiracy in order to demonstrate that each defendant's conduct was
> part of a common scheme. See AM Cosmetics Inc. v. Solomon, 67 F. Supp.2d 312,
> 322 (S.D.N.Y. 1999); Litras v. Litras, 254 A.D.2d 395, 681 N.Y.S.2d 545, 546 (2d
> Dep't 1998)." [emphasis added]

29.     ""[C]onclusory allegations are insufficient to withstand a motion to dismiss." See

*Giaccio v. City of New York*, 2005 WL 95733, *5, (S.D.N.Y. Jan. 19, 2005) (citing *Straker v.

Metro. Transit Auth.,* 333 F.Supp.2d 91, 102 (E.D.N.Y. 2004)," *Goonewardena v. New York*, 475

F. Supp. 2d 310 (S.D.N.Y. 2007).

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

## COUNTER-PLAINTIFF'S COUNT 3
## NEW YORK CIVIL RIGHTS LAW

### Non-commercial blog

30.     One of the new pieces of information the Def provides, not in the 2CC, is the allegation

that a blog posting by the Plaintiff somehow violated New York Civil Rights Law section 50 and

51.  The Def has misplaced his trust in Sections 50 and 51 which apply to commercial speech,

commercial exploitation, advertising, etc.  The Def is required to allege unauthorized

commercial exploitation of his photograph or likeness.  Booth v Curtis Pub. Co., 15 A.D.2d 343,

351; see Gautier v. Pro-Football, 304 N.Y. 354, 359; Binns v. Vitagraph Co. of Amer., 210 N.Y.

31.     Persons like the Def have "thrust themselves into the public arena".  In this circuit, it is

the commercial exploitation of those who "thrust themselves into the public arena" that is in

question.  In Factors Etc. v. Pro Arts ( 579 F.2d 215, cert den 440 U.S. 908), the court noted (p

220) that "[t]he distinguishing feature of * * * [the right of publicity] is  that it involves the use

of plaintiff's protected right for defendant's direct commercial advantage."  Here there simply no

commercial advantage attributed to the counter-defendant (Plaintiff).  Absolutely no funds are

collected, nothing is sold, there is no advertising, etc. on the blog in question.  The undersigned

does not make one penny by operating the counter speech blog SDNY.INFO.  It is not a

commercial operation.

32.     "While one who is a public figure or is presently newsworthy may be the proper subject

of news or informative presentation, the privilege does not extend to commercialization of his

personality through a form of treatment distinct from the dissemination of news or information"

(emphasis added).  Gautier v. Pro-Football, Inc., 304 N.Y. 354, 107 N.E.2d 485 (1952).

33.    The wrong consists of only two elements: the <u>commercial use</u> of a person's name or

photograph and the failure to procure the person's written consent for such use.

*Focus of blog is judicial reporting*

34.    The Def has correctly pointed out that the bulk of the postings on the "SDNY.INFO"

blog relate to judicial proceedings and this court case.  In this circuit N.Y. Civ. Rights Law § 74

provides for an exemption from defamation suits for such postings, see "Privileges in action for

libel".  In sum, the privilege outlined in § 74 of the New York Civil Rights Law bars this action

35.    "The purpose of Civil Rights Law § 74 'is the protection of reports of judicial proceedings

which are made in the public interest.'" <u>Cholowsky v. Civiletti</u>, 887 N.Y.S.2d 592, 595 (2d Dep't

2009) (quoting <u>Williams v. Williams</u>, 23 N.Y.2d 592, 599 (1969)). Section 74's "fair and true

report" privilege is an "absolute privilege" that is "not defeated by the presence of malice or bad

faith." <u>Biro v. Conde Nast</u>, 883 F. Supp. 2d 441, 477 (S.D.N.Y. 2012) (internal quotation marks

and citations omitted).

36.    The New York Court of Appeals has observed that "[a] fair and true report admits of

some liberality; the exact words of every proceeding need not be given if the substance be

substantially stated." <u>Holy Spirit Ass'n v. N.Y. Times Co.</u>, 49 N.Y.2d 63, 67 (1979) (quoting

<u>Briarcliff Lodge Hotel v. Citizen-Sentinel Publ.</u>, 260 N.Y. 106, 118  (1932)).  Def. has not

overcome this exemption with his republished ramblings from Dkt. 122.

37.    The "SDNY.INFO" postings qualify as "the publication of a fair and true report of a[]

judicial proceeding" that is entitled to protection under § 74's privilege and, consequently,

Plaintiff's "civil action [for defamation] cannot be maintained against" Defendant. N.Y. Civ.

Rights Law § 74; see, e.g., <u>Abkco Music, 2016 WL  2642224, at *3, 6</u> (dismissing defamation

claim because § 74 privilege precluded action).

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

*Blog postings are opinion and editorial*

38.    Falsity is a necessary element of a defamation action. Buckley v. Littell, 539 F.2d 882,

889–894 (2d Cir. 1976) ; Gross v. New York Times Co., 82 N.Y.2d 146, 152–153, 603 N.Y.S.2d

813, 623 N.E.2d 1163 (1993). Therefore, "a statement of opinion relating to matters of public

concern which does not contain a provably false factual connotation will receive full

constitutional protection."(emphasis added) Milkovich v. Lorain Journal Co., 497 U.S. 1, 20, 110

S.Ct. 2695, 111 L.Ed.2d 1 (1990).  The Court will note that every posting of "SDNY.INFO" is

clearly labeled "OPINION AND EDITORIAL".  See EXHIBIT B of Def's. Dkt. 145.

39.    "Although the editorial format is clearly not determinative, in ambiguous cases the

presentation of a statement on an editorial or op-ed page should increase the likelihood that the

statement will be perceived as an expression of opinion." Bruce W. Sanford, Libel and Privacy

199 (2d ed. Supp. 1993).

40.    Opinions and editorials "are nothing more than expressions of opinion which are not

objectively verifiable. Such statements of opinion cannot be the subject of a slander claim.". See

Keller v. Miami Herald Pub. Co., 778 F.2d 711, 718 (11th Cir. 1985) (cartoon implying that

nursing home manager was reaping profits at residents' expense was protected opinion).

*COUNTER-PLAINTIFF'S EXTRANEOUS*
*ALLEGATIONS AND COMMENTARY*

41.    In several introductory paragraphs (see para. 4 to 8, 2CC, Dkt. 122 and para. 17 to 20,

3CC, Dkt. 145) Goodman accuses the Plaintiff/Counter-Defendant of "entering into a verbal

agreement" with a multitude of parties generally related to the Virginia lawsuit troupe of

characters.  This troupe includes: Manuel Chavez, III of Carson City, Nevada, Tyrone Simpson

(believed to be the brother-in-law of legal counsel of the plaintiff's attorney in the Virginia

18

lawsuit and Nathan Stolpman. The Defendant/Counter-Plaintiff continues beat this "dead horse" of the Virginia lawsuit troupe conspiracy theory that has been refuted time and time again.

42.    In his 3CC papers Goodman continues to complain of some conspiracy to interfere with his business, and personal life, etc. Once again, this "dead horse conspiracy" – which has nothing to do with the Plaintiff/Counter-Defendant (undersigned) -- was determined to be the paid centered on a political operative who is well known to Goodman -- Manuel Chavez, III of Carson City, Nevada (aka "DEFANGO").

43.    This conspiracy of "filing simultaneous lawsuits" against Goodman was openly admitted to by Mr. Chavez and orbits around the involvement of Mr. Chavez with the Virginia lawsuit troupe of players – which includes: Virginia federal lawsuit plaintiff (Robert David Steele), plaintiff's attorney (Steven Scott Biss) and several others. As publicly stated by Chavez the Virginia attorney had authored a draft complaint on behalf of Chavez for filing in the courts of the State of Arizona in October 2017 – to coincide with the federal lawsuit in Virginia lawsuit. Chavez has transmitted e-mail messages to the Defendant/Counter-Plaintiff to demonstrate this confederation. None of these e-mail messages indicate the undersigned's involvement.

44.    These electronic mail messages have demonstrated that the Plaintiff/Counter-Defendant (undersigned) had no relationship with Mr. Chavez in this regard, nor with the plaintiff (Steele) or the plaintiff's lawyer (Steven Scott Biss, 300 West Main St, Ste 102, Charlottesville, VA 22903, 804-501-8272, Fax: 202-318-4098, Email: stevenbiss@earthlink.net), or the spouse of Mr. Biss (Tanya Biss aka Tanya Cornwell) or the purported brother-in-law of Mr. Biss (Tyrone Simpson aka "Frank Bacon"). Sworn statements have been produced in the Virginia lawsuit by the plaintiff and his attorney attesting to this fact. Def knows this; but, nonetheless has proffered these worn out "dead horse" theories and beliefs upon this Court in an act of **bad faith**.

45.     Defendant/Counter-Plaintiff Goodman has engaged in extensive e-mail and telephone

communication with Manual Chavez, III as reported by Chavez on social media (Chavez aka

"DEFANGO" who is presently associated with something known as the "MAGA Coalition").

46.     In fact, via public announcements by Chavez, he has  forwarded to Def AND the

Plaintiff/Counter-Defendant ALL electronic mail messages in his possession that demonstrated

communications between Chavez and other Virginia lawsuit troupe players; such as: Simpson

(aka "Frank Bacon"), the plaintiff's attorney (Biss, esq.), Mr. Biss's wife (Tanya Cornwell) and

the plaintiff (Steele).  Strangely the name of Thomas Schoenberger (an associate of Manuel

Chaves, III) has been dropped from the Defendant/Counter-Plaintiff's list of co-conspirators.

This set of Chavez e-mail communications contains no references to the undersigned, nor

includes an e-mail address for the undersigned nor presents any other plausible connection.

> "To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain
> sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on
> its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S.
> 544, 570 (2007)). Legal conclusions are not entitled to the presumption of truth, and a
> court assessing the sufficiency of a complaint disregards them. Id. Instead, the Court
> must examine only the well-pleaded factual allegations, if any, "and then determine
> whether they plausibly give rise to an entitlement to relief." Id. at 679. The Complaint
> must include non-conclusory factual allegations that "nudge[ ]" its claims "across the
> line from conceivable to plausible." Id. at 680 (quoting Twombly, 550 U.S. at 570)."
> *Murray v. City of N.Y.*, 16-cv-8072 (PKC) (S.D.N.Y. Aug. 16, 2017)


## CONCLUSION

47.     The Defendant/Counter-Plaintiff has presented non-meritorious claims that should be

dismissed.  The Defendant's wholsesale bulk republishing of 2CC content into the 3CC (Dkt.

145) speaks to bad faith, as the Def has already had adequate notice of how to comply with the

presiding judge's ORDER (# 140) with regards to fashioning actionable defamation claims.

48.   This Court need not credit Defendant/Counter-Plaintiff "conclusory "allegations [and] unsubstantiated speculation" that something more nefarious has occurred than a private party (undersigned) has engaged in counter-speech to protect his business, trade and technical reputation.

49.   The Defendant's unclear and disjointed descriptions of the implausible vast conspiracy of the Virginia lawsuit troupe of players does not lead this Court to any actionable issues.

50.   Despite multiple attempts in this Court, and the Virginia court, to properly plead his "vast conspiracy theory", nothing in the 3CC can support any conclusion other than the conclusory allegations in the 3CC are baseless.  Although the Defendant very likely believes that he is a victim of a vast conspiracy involving the Plaintiff/Counter-Defendant (undersigned) that claim is utterly implausible, which is no doubt why there are no – or very little – facts pleaded which could support it.

51.   ""A finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible whether or not there are judicially noticeable facts available to contradict them." Denton v. Hernandez, 504 U.S. 25 (1992)." *Tehrani v. Town of Oyster Bay Hous. Auth.*, 18-cv-2450 (BMC) (LB) (E.D.N.Y. Apr. 9, 2019).

52.   Taken as a whole, the conspiracy allegations in the Defendant's/Counter-Plaintiff's 3CC are too vague, disjointed, and implausible to state a plausible claim for relief as required by Fed.R.Civ.Proc. 12(b)(6).

7 . 4 . 20

**D. G. SWEIGERT, C/O**
**GENERAL DELIVERY**
**ROUGH AND READY, CA 95975**
*Spoliation-notice@mailbox.org*

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

## CERTIFICATE OF SERVICE

I HEREBY ATTEST that a true copy of the attached pleadings have been sent to the

following addressees on the ___ day of September via prepaid First Class U.S. Mail.  So

sworn under oath.


**Jason Goodman, CEO**
**Multi-media Design Systems, Inc.**
**252 7th Avenue, Apart. #6S**
**New York, NY 10001**

**PRO SE OFFICE, Room 200**
**U.S. District Court**
**500 Pearl Street**
**New York, New York 10007-1312**


*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

PRESS FIRMLY TO SEAL

This envelope is made from post-consumer waste. Please recycle again.

# PRIORITY ★MAIL★



P S 0 0 0 0 1 0 0 0 0 0 1 4

📅 DATE OF DELIVERY SPECIFIED*

📶 USPS TRACKING™ INCLUDED*

$ INSURANCE INCLUDED*

📦 PICKUP AVAILABLE

* Domestic only

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

EP14F July 2013
OD: 12.5 x 9.5

## VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE


UNITED STATES
POSTAL SERVICE®

9505 5067 1498 0248 3006 92


PRIORITY
POSTAGE R

FROM:

D. George Sweigert,
c/o General Delivery
Rough and Ready, CA 95975
Spoliation-notice@mailbox.org

PRO SE OFFICE, Room 200
U.S. District Court
500 Pearl Street
New York, New York 10007-1312

PRO SE OFFICE

10007-1312

RECEIVED
SEP - 9 2020
PRO SE OFFICE

9494009413
9560
09/04
06
114685