

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**(FOLEY SQUARE)**

| | |
|---|---|
| **SWEIGERT** | **CIVIL CASE #:** |
| **V.** | **1:18-CV-08653-VEC** |
| **GOODMAN** | **JUDGE VALERIE E. CAPRONI** |
| **And** | **MAGISTRATE STEWART D. AARON** |
| **MULTISYSTEM DESIGN, INC. (MSDI), A NEW YORK CHARTERED CORPORATION [PROPOSED]** | |

## PLAINITIFF'S VERIFIED SUPPLEMENTAL COMPLAINT

## WITH REQUEST FOR INJUNCTIVE RELIEF

## (PROPOSED AND CORRECTED)REPLACES DKT. 144 #1)

### STATEMENT AND VERIFICATION

This pleading is true to the knowledge of the undersigned, except as to matters alleged on

information and belief, and that as to matters that the undersigned believe are true.  See N.Y.

C.P.L.R. 3020.  So sworn under the penalties of perjury.

Signed under penalty of perjury,

**D. George Sweigert,**
**c/o General Delivery**
**Rough and Ready, CA 95975**
**Spoliation-notice@mailbox.org**

9.3.20

1

# INTRODUCTION

On 09/01/2020 Dkt. 145, Defendant's COUNTERCLAIM (CC) VERIFIED AMENDED

COMPLAINT was docketed, this was the third COUNTERCLAIM (3CC) proffered by the

Defendant (Def.).

The Plaintiff/undersigned hereby accepts the version of facts and case history as expressed in

ORDER AND OPINION 09/17/2018 Dkt. 27, ORDER TO SHOW CAUSE 11/16/2018 Dkt. 65,

MEMORANDUM AND ORDER 08/20/2019 Dkt. 87, ORDER 08/03/2020 Dkt. 140 and

ORDER 08/19/2020 Dkt. 143.

This supplemental complaint incorporates by reference the factual and legal allegations of the

Plaintiffs' Second Amended Complaint (Dkt. 88) filed 09/11/2019 (SAC) and raises new

allegations based on events, linked to the allegations of the SAC (Dkt. 88).

Pursuant to Fed. R. Civ. Proc. Rule 15(d), the Plaintiff files this supplemental complaint as a

continuation of his challenge to the unfair business practices, slander, fraud, defamation *per se*,

libel and invasion privacy perpetrated by the Def. and his CROWDSOURCE THE TRUTH ™

social media empire relying on a federal trademark issued to Multisystem Design, INC. (MSDI),

a New York State (N.Y.S.) chartered corporation. It is necessary to add the business entity

operated by Def. as a proper party to this instant lawsuit. As the Court has observed, Def. is

inextricably intertwined with his "CROWDSOURCE THE TRUTH" ™ social media operations

controlled by Def. under the aegis of the NYS chartered MSDI, which owns the U.S. Patent and

Trademark Office (USPTO) trademark for "CROWDSOURCE THE TRUTH"™. The

U.S.P.T.O. trademark document identifies Jason Goodman as "CEO" of MSDI with the same

address as listed by the Defendant in this instant litigation (252 7th Ave, #6s, New York, NY

10001).

2

This complaint has been edited for judicial efficiency as a supplemental complaint. This pleading encompasses the tortuous acts of the Defendant that have occurred since the filing of the SAC (Dkt. 88).

As stated by this Court in McLean v. Scully, No. 90-2590, 1991 WL 274327 *1 (S.D.N.Y. December 9, 1991) it is entirely appropriate for new defendants to be added via a Rule 15(d) supplemental pleading under circumstances such as these. See also, Rodriguez v. Conway, No. 10-6243L, 2011 WL 4829725 *1 (W.D.N.Y. September 6, 2011) ("Supplemental relief may include the addition of new defendants," permitting supplemental complaint under Rule 15(d) adding new party).

## BACKGROUND

1.     Plaintiff relies on and incorporates the SAC (Dkt. 88) in this matter, which provides an extensive discussion of the factual and legal background of the tortuous acts of the Defendant. These supplemental claims are tightly bound to the allegations of the SAC (Dkt. 88).

2.     The Def. stated in an e-mail message of 04/11/2020 that he is the "CEO" of Multisystem Design, INC. (MSDI), which is a New York chartered corporation that holds the trademark "CROWDSOURCE THE TRUTH" ™.

**Re: Youtube / Google Copyright litigation**

○ Jason Goodman <jason@21stcentury3d.com>                                                    4/11/2020 8:00 AM
To David George "Acton" Sweigert  Copy jasogoodwalR@protonmail.com  and 4 others

Reply    Reply all    Forward    Delete    ☰

As part of Sweigert's ongoing harassment, he initiated a lawsuit against Goodman in 2018. The claims Sweigert brings forth now intron YouTube claim are in dispute in this ongoing lawsuit. Sweigert is seeking improper judicial relief via his demand of YouTube. YouTube should deny Sweigert's effort to remove the video content in question until AFTER a judgement is issued in New York City, S.D.N.Y, 1:18-cv-08653-VEC-SDA Sweigert v. Goodman

The entity Sweigert references "MDSI" is unknown to Goodman and appears to be something Sweigert has made up. Goodman is the CEO of Multimedia System Design, INC, the entity which owns the registered trademark that was improperly used by D. George Sweigert and Goodman submitted his complaint to YouTube as such.

Above:  Abbreviated e-mail message of Def. Goodman of 04/11/2020

3.      In an e-mail message to the presiding magistrate Hon. Stewart D. Aaaron Def. stated that:
(1) YouTube is his "online business", (2) the he is "live streaming daily broadcasts", (3) to an
audience of "85,000 viewers", and (4) "[o]nline broadcasting is my full time job and primary
source of income".

---

) **Jason Goodman** <truth@crowdsourcethetruth.org>                                          11/13/2019 7:53 PM   ☆ ▯
To  Aaron_NYSDchambers@nysd.uscourts.gov   Copy  David George Acton Sweigert

Reply   Reply all   Forward   Delete   ☰

---

Thank you your honor, however Mr. Outtrim's inappropriate actions have revealed new evidence that is extremely
significant and must be included in my answer.  Outtrim's latest action provides further proof of the alleged conspiracy
between Plaintiff and others including Outtrim. This causes me to request that you reconsider today's order given the
following circumstances:

Irrespective of Mr. Outtrim's denial of intervention, his reason for attempting to intervene changes my answer and
requires additional time to complete. Prior to emailing you inappropriately, Mr. Outtrim submitted a fraudulent complaint
to YouTube that has crippled my online business by preventing me from live streaming my daily broadcasts to my
audience of 85,000 viewers.  This has negatively impacted my income and is a clear example of the ongoing extrajudicial
steps Plaintiff and his associates have taken in their persistent and escalating effort to disrupt my day to day life, my
business and my ability to defend myself in this legal mater.

Online broadcasting is my full time job and primary source of income.  The YouTube penalty will continue indefinitely if
Outtrim is able to demonstrate to Google that he has an active lawsuit against me for the same claim he has submitted to
YouTube.  It is extremely important to my defense that I have the additional time requested so I may adequately explain
and present the relevant facts and details related to shed light on this newest development and so the court may consider
these facts in rendering its decision.

I respectfully request that you reconsider the order and allow me the time extension.  I stand ready to submit another
motion for extension of time if that would please the court.

Jason Goodman, Defendant Pro Se

*Please note, jacongroodman78@protonmail.com  is not a valid email address for Defendant and has been inappropriately
introduced into these proceedings by Plaintiff

Above:  e-mail message of Def. Goodman of 11/13/2019

4.      In fact, the claim in the above e-mail message of "85,000 viewers" is fraudulent. Def.
should have claimed "85,000 subscribers", or potential viewers.  The video podcasts of the Def.
rarely exceed 6,000 to 7,000 "views".  This fraudulent statement to magistrate Aaron indicates
the duplicitous nature of the Def., who is obsessed with portraying his enterprise as a large scale
"news organization".  It is not.

5.      Def. Goodman and/or MSDI operates over thirteen (13) social media outlets on such
platforms as YouTube, PATREON, Twitter, Facebook, Dlive, SubscribeStar, etc.) under the
brand known as **"CrowdSource The Truth"™** (CSTT).  CSTT is a consumer-oriented brand

that uses advertising in disguise to solicit monies from the public at large via PayPal,

PATREON, SubscribeStar (third party credit card processors) via CSTT's massive social media

outreach.

6.      The Def., through the MSDI entity, acts as a "social influencer" to develop social

consensus for a wide variety of political activities and narratives.  To create fake popularity for

CSTT positions, Def. employs fraudulent misrepresentation of the true nature of the views, likes

and number of subscribers attributed to his channel or a podcast video.  Def. also deletes

unfavorable comments, deletes unfavorable chat users, and deletes other indicators of dispute

with the CSTT podcast narrative *du jour*, pushed to at least 500,000 viewers a month.

7.      Def. employs Twitter automatic "bot" service and "sock pocket" accounts and other

artificial techniques to create fake phony social media consensus for his CSTT properties.

8.      The Attorney General of New York State (N.Y.A.G.) has determined on 01/30/2019 that

such practices of selling fake "likes", fake "subscribers", fake "views", use of "bots" and "sock

puppet accounts" are illegal pursuant to the NYS General Business Law (GBL) §§ 349 – 350.

9.      Def. Goodman has maliciously engaged in the smearing of the Plaintiff to create

questions as to the Plaintiff's moral turpitude to ruin his career with concocted outlandish false

statements concerning the Plaintiff, such as: alleged (1) **"wife swapping"** (sexual activity in

which two or more married couples exchange partners), (2) **"deadbeat dad"**(people who have

parented a child and intentionally fail to pay child support ordered by a family law court) and(3)

**"cyber stalker"** (the use of electronic communication to harass or threaten someone with

physical harm), etc.  The Plaintiff has never engaged in such activities.

10.     In fact, the reverse is true.  The Plaintiff is a member of the National Eagle Scout

Association, an honorably discharged veteran of the U.S. Air Force (1979-1983), holds two

master's degrees (Project Management and Information Security) and a dozen peer-vetted

industry credentials (see example below).



Above:  Plaintiff's credential "Certified in Homeland Security – Level III"

11.     In the intervening time since filing of the SAC (Dkt. 88), the Plaintiff has self-published

another cyber-security book; Avoiding the Digital Maginot Line: Emergency Manager's Guide

to Modernizing Cyber Resilience: Peer-review copy, ISBN-13: 978-1701824829, 11/12/2019.

This book is presently No. 85 in the public utilities book section of Amazon.

## JURISDICTION AND VENUE

12.     The Plaintiff relies on the following statues for standing pursuant to NYS GBL §§ 349 –

350, NYS Civil Rights Law §§ 50-51, common law Invasion of Privacy, Defamation,

Defamation *Per Se* (trade libel) and slander.   As both parties are citizens of different states and

the amount in controversy exceeds $75,000.01 diversity exists.


## SOLICITATIONS TO THE PUBLIC AT LARGE CONFIRMS JURISDICTION

13.     The acts and practices of Def. Goodman in using the commercial trademark

"CROWDSOURCE THE TRUTH" ™ and his 13 social media platforms has a broad impact on

consumers at large.  Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank, N.A.,

85 N.Y.2d 20, 25 (1995).  Def. Goodman directs his conduct to the consuming public at large to obtain "patrons" on his Patreon.Com credit card processing service.  Dolan v. Select Portfolio Servicing, Inc., No. 13-cv-1552, 2014 WL 4662247, at *7 (E.D.N.Y. Sept. 18, 2014).  The Plaintiff has standing to sue Def. Goodman under Sections 349 and 350 so long as "some harm to the public at large is at issue."  Weight Watchers Intern., Inc. v. Stouffer Corp., 744 F. Supp. 1259, 1284 (S.D.N.Y. 1990).

14.    These Goodman/MSDI podcasts are nothing more than commercial advertisements in disguise to solicit funds from the general public to support Def. Goodman's lifestyle.  Zoll v. Jordache Enters., Inc., No. 01 Civ. 1339 (CSH), 2003 WL 1964054, at *7 (S.D.N.Y. Apr. 24, 2003) (quoting Messenger, 94 N.Y.2d at 442-43).

## SPECFIC ALLEGATIONS

## I:    VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§349-350 (CONSUMER PROTECTION ACT)

## HARMFUL CONDUCT DIRECTED AT THE PUBLIC

**15.**    Plaintiff repeats, repleads and incorporates by reference every allegation of paragraphs 1 through 14 of this Supplemental Complaint as though set forth in full herein.

16.    Def. Goodman's podcasts, commercial speech, representations, advertisements in disguise, or practices, were (and continue to be) deceptive, harmful, and likely to mislead consumers acting reasonably.  All these actions undertaken by Def. Goodman took place in NYS.  In contravention to NYS GBL §§ 349 – 350, Def. Goodman broadcasts harmful information to the public at large.

17.   To illustrate the harmful commercial nature of these podcasts, Def. Goodman's channel

"CrowdSourceThe Truth™ 2" experienced an account "termination" for the distribution of

"harmful content" about Goodman's COVID-19 "Plandemic" conspiracy theories.



Above:  Jason Goodman's Facebook post of 04/06/2020 (details below)

**Is YouTube Preparing to Terminate Jason Goodman?**
**Crowdsource the Truth Deemed "Harmful" by YouTube**



Crowdsource The Truth **was live.**

about 4 months ago

In the most recent salvo against the truth, YouTube has demonetized
Crowdsource the Truth 2 for what they have determined to be "harmful content".
Is the total removal of Crowdsource the Truth coming next?

It is now more important than ever before, if you like and watch Crowdsource the
Truth, please become a sponsor before it is too late. Sponsor Crowdsource the
Truth & enjoy exclusive content on SubscribeStar&Patreon
http://www.patreon.com/crowdsourcethetr...
http://www.subscribestar.com/crowdsourc...
http://paypal.me/crowdsourcethetruth
Visit http://www.crowdsourcethetruth.com

18.   YouTube's account monetization termination on 04/06/2020 was related to Def.

Goodman's constant podcast cheerleading that the COVID-19 virus is(was) a fake pandemic

8

engineered by leading virus experts in the federal government to benefit a cadre of bio-pharma corporations. Def. Goodman openly flaunts(ed) health guidelines for facial covering and social distancing promulgated by the health officials of NYS. Def. Goodman encouraged the general public not to obey pandemic emergency orders, not to wear face mask coverings, not to practice social distancing, etc.

19.     To give the Court a sampling of the proportionality and harmful nature of Def. Goodman's podcasts, CSTT widely distributed to millions the discredited content presented in the book "Plandemic", used to legitimize theories that the COVID-19 pandemic is a manufactured depopulation operation run by the U.S. Government. In an interview with Def. Goodman side-kick, discredited lawyer Larry Klayman, esq. (presently under a 90-day suspension of his law license by the District of Columbia Bar) and "Dr." Judy Mikovits (author of "Plandemic") several threats were made against COVID-19 response task force incident commander Dr. Anthony Fauci of the U.S. National Institute of Health. A planned television show on the Sinclair Broadcasting Network (with access to over 80 commercial television stations) featuring Klayman and Mikovits was cancelled after a national outcry over the content of "Plandemic". (See "Sinclair pulls show where Fauci conspiracy theory is aired", Associated Press, 07/25/2020, URL https://apnews.com/d49a45e68eebaf5f021b685142530819). In fact, as seen below, Def. Goodman was in the process of creating yet another social media platform as part of his "business" properties to push this theory – "brandnewtube.com".



Above:  Def. Goodman 08/02/2020
podcast entitled "The Silencing of Dr. Judy Mikovits"



Above:  Def. Goodman's podcast of 05/06/2020 entitled, "Silence of the Medical Scams".  Dr.
Judy Mikovits (left) and Dr. Anthony Fauci, National Institute of Health (right).
Judy A. Mikovits is a PhD and not an M.D.

---

## Controversial CFS Researcher Arrested and Jailed

**By Jon Cohen**   Nov. 19, 2011 , 6:46 PM

Judy Mikovits, who has been in the spotlight for the past 2 years after *Science* published a controversial report by
her group that tied a novel mouse retrovirus to chronic fatigue syndrome (CFS), is now behind bars.

Sheriffs in Ventura County, California, arrested Mikovits yesterday on **felony charges** that she is a fugitive from
justice. She is being held at the **Todd Road Jail in Santa Paula** without bail. But *Science*Insider could obtain only
sketchy details about the specific charges against her.

https://www.sciencemag.org/news/2011/11/controversial-cfs-researcher-arrested-and-jailed

---

**Who is Judy Mikovits in 'Plandemic,' the coronavirus conspiracy video just banned from social media?**

By **Katie Shepherd,** May 8, 2020 at 8:50 a.m. PDT

When Judy Mikovits co-wrote a 2009 research paper that linked the mysterious condition known as chronic fatigue syndrome to a retrovirus that came from mice, thousands of sick patients hoping for relief rallied behind her. The scientific riddle was solved, they thought.
Less than two years later, those hopes were dashed when follow-up studies failed to replicate the findings and the respected journal "Science" retracted the paper. Researchers posited that the study's inaccurate conclusions were the result of contamination of the lab samples, and the theory that a virus might be the source of the still-mysterious condition died.

https://www.washingtonpost.com/nation/2020/05/08/plandemic-judy-mikovits-coronavirus/

---

**YouTube removes 'Plandemic' video with coronavirus claims by Dr. Judy Mikovits**

**Updated May 07, 2020; Posted May 07, 2020**
By **Geoff Herbert | gherbert@syracuse.com**

YouTube has removed another video that's circulating conspiracy theories amid the coronavirus pandemic.

"The Plandemic," a 25-minute clip from an upcoming documentary, was taken off of YouTube this week for violating the Google-owned video site's community guidelines. The video centered on Dr. Judy Mikovits, a former chronic fatigue researcher who claims the federal government is behind a "plague of corruption" to inflate profits from a potential vaccine even as COVID-19 threatens lives.
YouTube said last week that it was expanding its fact check information panels to the U.S. as coronavirus "reaffirmed how important it is for viewers to get accurate information during fast-moving events."
"Misinformation that comes up quickly as part of a fast-moving news cycle, where unfounded claims and uncertainty about facts are common. (For example, a false report that COVID-19 is a bio-weapon.) Our fact check information panels provide fresh context in these situations by highlighting relevant, third-party fact-checked articles above search results for relevant queries, so that our viewers can make their own informed decision about claims made in the news," YouTube said.

https://www.syracuse.com/coronavirus/2020/05/youtube-removes-plandemic-video-with-coronavirus-claims-by-dr-judy-mikovits.html

## DIRECT HARM TO THE PUBLIC

20.     The Def. has pushed these phony "plandemic" conspiracy theories with dozens of phony

experts that lack any credentialing in the sphere of public health or medicine.  The endgame is

always to encourage members of the general public to question pandemic public health orders

and to act in open defiance of such orders.

11



Above:  Jason Goodman podcast on 07/30/2020 entitled, "Dr. Fauci, How Many Licks Does It Take to Get to the Tootsie Roll Center of a Manufactured Pandemic?"



Above:  Jason Goodman podcast on 08/12/2020 entitled, "COVID-19, Mandatory Vaccination & Depopulation Agenda with Special Guest Charlie Robinson"

21.    According to the social media auditing service "Social Blade" just ONE of Def. Goodman's channels has had over <u>one half of a million</u> views in a month (30 days / 532,358). Another channel "Crowdsource The Truth™ 2" has 34,423 "subscribers/viewers".  These are only two of the 13 social media properties operated as distribution points for the Def.'s "business".  <u>This represents a mass communication to the general public.</u>



Above:  Social blade statistics for "Jason Goodman" channel



Above:  Social Blade statistics for "CrowdSourceThe Truth ™ 2"

22.     The commercial speech content of Def. Goodman's podcasts is confirmed by the fact that

20-25% of podcast content includes a plea for viewers to become paid financial supporters and

"patrons" via the Patron.Com credit card processor.  These "open" podcasts – displaying the

CROWDSOURCE trademark -- are a tease for members of the general public to continue

watching the second part of the subject matter podcast on PATREON.COM or

SubscribeStar.COM (credit card processing services).

## DECEPTION TARGETED TO THE GENERAL PUBLIC

23.     As the Court will note from the Amended Complaint (Dkt. 5) it has been alleged that Def.

Goodman has used social media tactics to create false impressions of social consensus against

purported CROWDSOURCE enemies.  Referring to Def. Goodman side-kick Quinn Michaels

(aka Korey Atkin), "Michaels acts as the chief architect of an automated "bot" network that can

attack rivals of the CSTT "community" and mimic organic support of thousands of people.  The

bot-network is used for the purposes of implementing reputation destruction campaigns on social

media..." (pg. 8 of 44, Dkt.5).

24.     The reverse is also true.  Def. Goodman uses fake Twitter followers, fake YouTube

subscribers, fake podcast views, and fake podcast/video "likes" to create fake indicators of social

media influence.  This on-going deception scheme is designed to deceive members of the general

public.  Moreover, the type of members of the public that are(were) deceived depend(ed) on Def.

Goodman's social media platforms to make informed decisions.  Goodman wanted to increase

his appeal that CROWDSOURCE was(is) a social media influencer in order to boost his

credibility.  The objective is(was) to deceive viewers to become "patrons" via the

PATREON.COM and/or SubScribeStar.COM credit card processors.  These fake metrics caused

members of the public to make "less preferred choices".  These business practices deceived

members of the public by affecting their perception of opinions and ideas and thus affecting their

decision-making concerning which opinions and ideas had garnered public support (e.g.

violating New York pandemic emergency orders, not complying with such orders in social

distancing or face mask coverings [to name a few], etc.).  See FTC v. Devumi, LLC, No.

9:19cv81419 (S.D. Fla.) and press release of N.Y. Attorney General "Attorney General James

Announces Groundbreaking Settlement With Sellers Of Fake Followers And "Likes" On Social

**14**

Media," 01/30/2019, URL:  https://ag.ny.gov/press-release/2019/attorney-general-james-

announces-groundbreaking-settlement-sellers-fake-followers

> NEW YORK – Attorney General Letitia James today announced a precedent-setting
> settlement over the sale of fake followers, "likes," and views on social media platforms,
> including Twitter and YouTube, using fake activity from false accounts. The settlement
> prohibits Devumi LLC and related companies ("Devumi") from engaging in any of the same
> misconduct going forward.
> …
> "Bots and other fake accounts have been running rampant on social media platforms, often
> stealing real people's identities to carry out fraud," said **Attorney General Letitia James**.

**25.**     Def. Goodman has engaged in (1) consumer-oriented conduct that is (2) materially

misleading and that (3) plaintiff suffered irreparable injury as a result of the allegedly deceptive

act or practice. Koch v. Acker, Merrall& Condit Co., 967 N.E.2d 452, 452 (N.Y. 2012).  Def.

Goodman used his fake social media metrics to create the appearance of public consensus during

the targeting of the Plaintiff with despicable, vile and reprehensible assertions, insinuations,

statements and other podcast content (see section of this complaint for catalogue of defamation

*per se* claims) that was ratified, approved of, and endorsed by fake "sock puppet" accounts,

video "likes", etc.

26.     To illustrate the nature of "sock puppets", "Each bot will create a number of distinct user

profiles, each of which is called a "sock puppet." See Sandvig v. Sessions, (Mar. 30, 2018) 315

F. Supp. 3d 1 (D.D.C. 2018).  Again, to illustrate, "In Nunes, an author created multiple

pseudonymous online accounts (called "sock puppet" accounts) and then used those accounts on

Amazon to post positive reviews about her books and negative reviews about another author's

books. Nunes, 299 F. Supp. 3d at 1222-23".  Vitamins Online, Inc. v. HeartWise, Inc., Case No.

2:13-cv-00982-DAK (D. Utah Sep. 24, 2019).

27.    Several statistical anomalies in the social media growth of the CROWDSOURCE properties indicates the purchase of fake YouTube subscribers that consequentially produce fake video "likes" to create the false impression of general social consensus.



Above:  Jump in 24,800 subscribers in 30 day period.  Source VidIQ



Above:  Jump in 1,000 subscribers in one day period.  Source: VidIQ

28.    The "gravamen" of a GBL § 349 claim is "consumer injury or harm to the public interest." Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995) (internal quotation marks omitted), cert. denied, 516 U.S. 1114, 116 S.Ct. 916, 133 L.Ed.2d 846 (1996).

## DIRECT HARM TO THE PLAINTIFF

**29.**     Def. Goodman used these fake "sock puppet" accounts, fake "likes", fake "subscribers",

fake "views" to inflate the sense of community approval as to endorse Def. Goodman's vile and

reprehensible attacks on the Plaintiff, using Plaintiff's likeness, name and personage in these

commercial speech solicitations for funds.

**30.**     Def. Goodman has maliciously and irreparably injured the Plaintiff's business, career,

reputation and personage with the use of his "business" resources (with the use of the

CrowdSource trademark) to tweet, broadcast, podcast and publish false reports, slander,

defamation *per se* and libel as part of these false advertising campaigns.

**31.**     Simply stated, Def. Goodman has used deceptive and unfair practices in his "business"

(commercial speech, advertising in disguise) to execute the commercial exploitation of Plaintiff's

personage with fake "sock puppet" accounts, fake "likes", etc. to inflict permanent career

damage upon the Plaintiff.

## INVASION OF PRIVACY CLAIM

**32.**     Def. Goodman has used his social media business resources to make a public disclosure

of confidential and sensitive private information regarding the disabled son of the Plaintiff – a

vulnerable individual.  The public exposure of this sensitive private information (invasion of

privacy) was a source of great emotional distress, embarrassment and humiliation for the

Plaintiff.  The Plaintiff's handicap son has absolutely no connection with the issues related to this

present controversy.  Def. Goodman obtained this confidential information from Corean

Elizabeth Stoughton of Hanover, Maryland, the former girlfriend of the Plaintiff's brother

(George Webb Sweigert (Goodman's former roommate)).

**33.**     Ms. Stoughton (daughter of a career U.S. National Security Agency contractor) had a

hybrid live-in relationship with George Webb (Sweigert) for approximately 14 months in

Maryland.  She used the moniker "Deep NSA" in her tweets and YouTube videos created in

tandem with George Webb.

**34.**     Def. Goodman announced in a broadcast that he had a confidential informant with access

to private information and described the levels of access only Ms. Stoughton had (access to

George Webb's e-mail messages and phone texts).  The exposed information was "confidential,

individually identifiable information"; Mount v. PulsePoint, Inc., 684 F. App'x 32, 35 (2d Cir.

2017).  It was Mr. Goodman's malicious intention to commit this tort against the Plaintiff as he

retweeted this information under the CROWDSOUCE trademark almost a dozen times to his

International audience of millions.  Defendant made these public disclosures of private facts

willfully, wantonly, and with reckless disregard for the impact on the Plaintiff.

**35.**     " [A] privacy invasion claim-and an accompanying request for attorney's fees-may be

stated under (G.B.L. 349) based on nonpecuniary injury "; Meyerson v. Prime Realty Services,

LLC. 7 Misc. 2d 911 (N.Y. Sup. 2005).



Above:  Redacted tweet of Jason Goodman, "Cyberstalker / deadbeat dad David Sweigert abandons his own son XXXXX to troll me with fake news …"



Above:  The above tweet was sent to these addresses

36.    Plaintiff has already stated a claim for invasion of privacy in the SAC (Dkt. 88); see below.

**STANDING**

4.     The Plaintiff relies on the following statues for <u>standing</u>: N.Y. General Business Law

(GBL) states at §§ 349 – 350 and N.Y. Civil Rights Law §§ 50-51.  <u>Common law Invasion of</u>

<u>Privacy, Defamation, Defamation Per Se</u> (trade libel).   As both parties are citizens of different

states and the amount in controversy exceeds $75,000.01 diversity exists.

**PARTIES**

37.     Among other relief requested, Plaintiff seeks a declaration from this Court that the

foregoing indicates violations of the New York General Business Law (G.B.L. § 349 and 350).

Further, injunctive relief should be granted to ensure Def. Goodman and/or MSDI removes this

material from the CSTT social media sites (to include material articulated in the SAC (Dkt. 88)).


**II:     DEFAMATION AND DEFAMATION PER SE**

**38.**     Plaintiff repeats, repleads and incorporates by reference each allegation of paragraphs 1

through 37 of this Complaint as though set forth in full herein.  All the Defendant's actions

described below have taken place in the NYS.

**39.**     Goodman's slanderous, libelous and defamatory *per se* allegations (inherently harmful)

were directed specifically at the undersigned's business, trade, profession and was not framed as

hyperbole, opinion and/or editorial content.  Def. Goodman's personal animus and malice

directed toward the Plaintiff has remained unabated since the filing of the SAC (Dkt. 88), which

constitutes a continuous tort against the Plaintiff.

**Re: Identity of person calling Dr. Fauci's home unlisted number may have been identified**

○  Jason Goodman <truth@crowdsourcethetruth.org>                     3/30/2020 5:23 PM  ☆ 🏴        JG
   To  Spoliation Notice  Copy  clone@niaid.nih.gov  and 22 others

   Reply   Reply all   Forward   Delete   ≡

The individual who sent the email below may be mentally unstable and is a serial stalker  Who has pursued me for three years. He is currently attempting to sue me for false allegations.  He has been laughed out of two federal jurisdictions and his claims in this email are false. Please disregard his email, he is attempting to disrupt public health services and sow panic amid this crisis.

Above:  Def. Goodman's 03/30/2020 e-mail message to 22 people, declaring that the Plaintiff is "mentally unstable and is a serial stalker … he is attempting to disrupt public health services and sow panic amid this crisis..''

**Re: Identity of person calling Dr. Fauci's home unlisted number may have been identified**

○  Jason Goodman <truth@crowdsourcethetruth.org>                     3/30/2020 5:24 PM  ☆ 🏴        JG
   To  Spoliation Notice

   Reply   Reply all   Forward   Delete   ≡

Fúrk you you psychopath  If the courts ever reopen I will not rest until you are in jail.

       On Mar 30, 2020, at 10:54 AM, Spoliation Notice <spoliation-notice@mailbox.org>  wrote: To:  Jason Goodman
       I have observed your recent comment to a YouTube video (attached). This message makes certain parties ...
       ...kss-patients-at-nyoc-presbyterian-hospital-while-accused-by-montana-physician-of-obtaining-private-
       telephone-number-to-interfere-with-patient-care/ D. George Sweigert Evidence Collection Team
       <U6666titled.jpg>

Above:  Jason Goodman's 3/30/2020 e-mail message to the Plaintiff, "F__k you you psychopath. If the courts ever reopen I will not rest until you are in jail."

**Re: Pending litigation against Twitter and Jason Goodman**

○  Jason Goodman <truth@crowdsourcethetruth.org>                     5/31/2020 2:55 AM  ☆ 🏴        JG
   To  David George Acton Sweigert  Copy  George Webb Sweigert  and 11 others

   Reply   Reply all   Forward   Delete   ≡

David George Sweigert is a cyber stalker who has persistently published false and defamatory stories about me in social media. This individual has made public comments about a family history of schizophrenia as well as wife swapping with his own brother, which cause me to believe he may be mentally ill.  This individual has engaged in a three year long daily harassment campaign against me.  Please disregard his messages.

Above:  Jason Goodman's 5/31/2020 e-mail message to 11 people that Plaintiff is a "cyber stalker … as well as wife swapping with his own brother …".

21

**Re: Jason Goodman and Corean Elizabeth Stoughton**

○  Jason Goodman <truth@crowdsourcethetruth.org>                                         7/22/2020 1:38 AM   ☆  🔖
   To: Spoliation Notice  Copy <corean1111@gmail.com  and 12 others

   Reply   Reply all   Forward   Delete   ≡

We can discuss this and all your other frivolous claims when you appear before the judge in NY. Stop harassing me
Sweigert. You are a public menace and likely a danger to yourself.

On Jul 21, 2020, at 7:32 PM, Spoliation Notice <spoliation-notice@mailbox.org> wrote:

To:  Jason Goodman and Corean Elizabeth Stoughton

As you are well aware, Mr. Goodman has published the first name of a handicapped vulnerable individual.  Apparently,
this information was obtained from Ms. Stoughton.

This e-mail demands that the twitter tweets containing the name of this individual be deleted from the social media
account of CrowdSource The Truth.

To that end, below is a draft letter motion to the magistrate judge in the matter of Mr. Goodman's slander, defamation
and libel lawsuit.

From:
D. George Sweigert
c/o General Delivery
Mount Shasta, CA 96067
Spoliation-notice@mailbox.org

Above:  Def. Goodman's 7/22/2020 e-mail message responding to a request to remove tweet's
with the name of the Plaintiff's son states, "[y]ou are a public menace and likely a danger to
yourself."

**Re: Pending litigation against Twitter and Jason Goodman**

○  Jason Goodman <truth@crowdsourcethetruth.org>                                         6/19/2020 5:24 PM   🔖
   To: David George Acton Sweigert  Copy  George Webb Sweigert  and 13 others

   Reply   Reply all   Forward   Delete   ≡

David George Sweigert is a serial cyberstalker.   Based on his past behavior, public statements of a family history of mental
illness, his false statements and his persistence in harassing me, he is believed to be mentally ill.   His communications
should be ignored.

⋯  On Jun 19, 2020, at 11:14 AM, David George Acton Sweigert <spoliation-notice@mailbox.org>  wrote: Dear Sir:
    At 1:04:45 you mention my legal name.   You have been reported to YouTube. I have never worked for NORTEL.
    You are aware of this and you are publishing a falsehood. I believe you are doing this due to your alleged prior
    homosexual relationship with my brother George Webb. Cease and desist. Warm regards, Evidence Collection
    Team <EYf6xDvUEAESZOS.jpeg>

Above:  Def.  Goodman's 6/19/2020 e-mail message to 13 people stating the Plaintiff is "a serial
cyberstalker … he is believed to be mentally ill…".



Above:  Def. Goodman's tweets of 04/26 and 04/27/2020 labeling the Plaintiff as a "cyberstalker" (this is a mere sampling) and "show him how counterproductive his lame attempts are.."  FALSE



Above:  Def. Goodman's tweet of 05/12/2020 labeling the Plaintiff as a "deadbeat dad brother Dave who really should call his abandoned special needs son XXXXX…" (redacted)



Above:  Def. Goodman's tweet of 05/06/2020 stating, that Plaintiff is a "dead beat dad and serial cyberstalker"(this is a mere sampling) and "show him how futile his efforts are..".  FALSE



Above:  Def. Goodman tweet of 05/02/2020 stating, that the Plaintiff "is a serial cyber stalker &self admitted wife swapper…"  FALSE



Above: Def. Goodman tweet of 04/27/2020 stating "David George Sweigert is a cyber stalker" and "counteract his feckless efforts by supporting Crowdsource The Truth…"  FALSE



Above:  Def. Goodman tweet of 05/21/2020 stating, "David Sweigert, deadbeat dad/social engineer.."  FALSE



Above:  Def. Goodman's tweet of 04/27/2020 stating Plaintiff is "a malicious cyber stalker" and "& wife swapping"  FALSE



Above:  Example of the multiple (usually a dozen) tweets per day disparaging the Plaintiff

40.      Defendant made his untrue and/or misleading statements (see above) and representations

willfully, maliciously, wantonly, and with reckless disregard for the truth.  Def. Goodman's

intent was to irreparably injure, tarnish, damage and disrupt the employment, career, business

operations and reputation of the Plaintiff by imputing defects in Plaintiff's moral character,

injuring his reputation.  Plaintiff claims that the "trade, business or profession" exception is

available to him as the defamation is "of a kind incompatible with the proper conduct of the

business, trade, profession, or the office itself." Liberman v. Gelstein, 80 N.Y.2d at 436, 590

N.Y.S.2d 857, 605 N.E.2d 344.

41.     The Court should issue a declaratory statement and label the slander, defamation and libel

described above for what it is; see "while most of the parties' alleged conduct (and indeed their

mutual recriminations throughout this litigation) is patently ridiculous, it is not legally

outrageous" (Dkt. 140).  Statements that the Plaintiff is a "**wife swapper**", "**cyber stalker**" and

"**deadbeat dad**" describe improper and illegal conduct which is actionable defamation and are

not merely "patently ridiculous".  Injunctive relief is sought to remove this conduct from the

Goodman / MSDI social media properties.

42.     "Under New York law, "[t]o state a claim for defamation, a complaint must allege '(1) a

false statement that is (2) published to a third party (3) without privilege or authorization, and

that (4) causes harm, unless the statement is one of the types of publications actionable

regardless of harm.'" Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017) (quoting

Stepanov v. Dow Jones & Co., 120 A.D.3d 28, 34 (1st Dep't 2014)). Accusations of serious

criminal activity or statements that tend to injure another in her profession can certainly be

actionable as defamation, and can constitute defamation *per se*. See Liberman v. Gelstein, 605

N.E.2d 344, 347 (N.Y.1992)." See Hayashi v. Ozawa, 17-cv-2558 (AJN) (S.D.N.Y. Mar. 28,

2019).

43.     Def. Goodman has (1) made false and stigmatizing statements about Plaintiff—

statements that call into question his good name, reputation, honor or integrity; and (2) which are

false and stigmatizing statements that were made public.

44.     Under New York common law, Def. Goodman's statements about the Plaintiff represent

defamation *per se*.  Goodman has specifically targeted to the Plaintiff's moral character to injure

and harm the Plaintiff's career, public reputation and standing in his professional community.

Each and every time Def. Goodman's distributes his slander and libel in a malicious manner, via

the means of Google Search Engine Optimization (S.E.O.), there is a cumulative effect that

severely impacts the Plaintiff's ability to adequately market his professionals services and

background via the Internet. Def. Goodman knows this, and is extremely precise in the targeting

of the Plaintiff's name, reputational credentials and insinuations and slander as to lack of moral

turpitude, **mental illness, wife swapping, being a deadbeat dad,** etc. These comments and

false statements are designed to ruin the Plaintiff's life and career via public humiliation and

professional injury. These statements are not presented as editorial or opinion but stated as fact.

45.     Def. Goodman has published "false statement[s], published without privilege or

authorization to a third party, constituting fault as judged by, at a minimum, a negligence

standard, .. which constitutes defamation per se".    Dillon v. City of New York, 704 N.Y.S.2d 1,

5 (N.Y.A.D. 1 Dept., 1999).


###    III:    VIOLATIONS OF CIVIL RIGHTS LAW § 50 and 51

46.     Plaintiff repeats, replead and incorporate by reference each allegation of paragraphs 1

through 40 of this Complaint as though set forth in full herein. All the Defendant's actions

described above has taken place in the State of New York.

47.     Def Goodman has abridged the undersigned's right of privacy by the unauthorized use of

Plaintiff's name, portrait or picture for commercial purposes pursuant to New York Civil Rights

Law § 50, **Right of Privacy.**

48.     Def Goodman has used the name, image, likeness and/or photograph of the undersigned

to attract viewers to his commercial speech podcasts. There is no newsworthiness, editorial

rationale or any other journalistic endeavor that would justify this type of use.  Def. Goodman simply wants to inflict maximum embarrassment and social humiliation on the Plaintiff and to irreparably injure his career in critical infrastructure protection.



Above:  Jason Goodman 10/18/2019 podcast entitled, "Court jester D. George Sweigert's Social Engineering lawfare Campaign May Be Coming to and End"



Above:  The proportionality of Def. Goodman's 10/18/2019 distribution of Plaintiff's photograph includes: YouTube, PATREON, PSPC.TV (Periscope), bitchute & Facebook, etc. (at a minimum)



Above:  Def. Goodman solicits funds in his 10/18/2019 video podcast via SubscribeStar and PATREON accusing Plaintiff of working with other "social engineers" to shape public opinion in some way

49.    Although NYS Civil Rights Sections 50 and 51 have different enforcement schemes they both protect against "nonconsensual commercial appropriations of the name, portrait or picture of a living person."  Finger v. Omni Publ'ns. Int'l, Ltd., 77 N.Y.2d 138, 141 (1990).

50.    Pursuant to NYS Civil Rights Section 51 the undersigned claims and alleges that Def. Goodman, himself or via his companies and businesses, (1) used Plaintiff's name, portrait, picture and voice (2) for his personal commercial profit, meaning such likeness, voice, image or photograph were commercially exploited by Def. Goodman without the Plaintiff's written permission.



Above:  Def. Goodman uses the image of the Plaintiff to support his theory of "social engineers"



Above:  Photo attached to Defendant's tweet of 04/12/2020

## IV.  NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

51.   This section has been abandoned pursuant to the ORDER (Dkt. 140)


## DAMAGES

52.   The Plaintiff has personally suffered damages in his person and his business as a direct

and proximate result of Def. Goodman for which an appropriate private civil remedy is

unavailable.

53.     Further, Goodman willfully and knowingly committed deceptive acts and unlawful practices in violation of General Business Law 349, entitling the Plaintiff to treble damages.

54.     Damages include undersigned's claim for loss of reputation, humiliation, mental anguish and damage to trade, profession and business, ridicule in the community.

55.     Def. Goodman maliciously commits acts of defamation *per se*, trade libel and slander of innocent third parties – like the Plaintiff -- aimed at maintaining the continuity of collecting fund-raising proceeds for Def. Goodman via PATREON and other credit card processors.  This is a continuing, open-ended and repetitive pattern showing no signs of ceasing.

56.     Hundreds of thousands of social media views have been attributed to video productions that broadcast claims by Def. Goodman about the Plaintiff.

57.     The Plaintiff has a property right interest in his reputation, publicity concerning his work products, maintaining his ability to publish technical reports, his career, employment opportunities, etc.  The Plaintiff's compensable irreparable injury necessarily is the harm caused by the Defendant.

## RELIEF REQUESTED

58.     The plaintiff seeks all equitable and punitive damages to be made whole and all other relief as this Court deems appropriate.  Such relief as is necessary to end the smear and shame campaign directed towards the Plaintiff by the Defendant.

59.     Prohibition against using social media.  This Court should consider limiting, curtailing, reducing and ceasing the use of the interstate wires of the Internet by the Defendant.  This would include the de-establishment of all YouTube video accounts and other social media accounts operated by the Defendant.

## INJUNCTIVE RELIEF REQUESTED

60.     Millions of CSTT viewers have heard the intentional slurs, slander, misrepresentations

and malice directed at the Plaintiff by the Defendant in an attempt to undermine the Plaintiff's

career in the area of critical infrastructure protection – a field the Plaintiff has been active in for

over two decades.  Def. Goodman, acting via MSDI and as a natural person, uses these fake

consensus "bots", "sock puppet" accounts, fake "subscribers", fake "likes" and fake "views" to

persuade viewers that his opinions about the Plaintiff are endorsed by a multitude of members of

the general public.  This is illegal pursuant to the NYS GBL and creates irreparably damage to

the career of the Plaintiff.

61.     "A court may 'issue an injunction on a motion for default judgment provided that the

moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2)

it meets the prerequisites for the issuance of an injunction.'" Dunkin' Donuts Inc. v. Peter

Romanofsky, Inc., No. CV-05-3200, 2006 WL 2433127, at *6 (E.D.N.Y. Aug. 8, 2006) (quoting

King v. Nelco Indus., Inc., No. 96-CV-4177, 1996 WL 629564, *1 (E.D.N.Y. Oct. 23, 1996));

BMG Music v. Pena, No. 05-CV-2310, 2007 WL 2089367, at *2 and 5 (E.D.N.Y. July 19,

2007).  This Court should issue such an injunction.

62.     As noted above, § 51 provides that a person whose image is used without consent may

maintain an equitable action "to prevent and restrain the use" of the image. N.Y. Civ. Rights Law

§ 51. Plaintiff adequately alleges in the Complaint that Defendants used his image and name

without consent.  These allegations are deemed true as against those Defendant. See Joe Hand

Promotions, Inc. v. El Norteno Rest. Corp., No. 06-CV-1878, 2007 WL 2891016, at *2

(E.D.N.Y. Sept. 28, 2007).  For this reason alone the Court should grant such an injunction.

63.- Because the allegations are deemed true, Plaintiff has met his burden to establish success

on the merits of his claim as is required for injunctive relief. Furthermore, Plaintiff will be

irreparably harmed if Def. Goodman continues to distribute his name and image. See ASA

Music Prods. v. ThomsunElecs., No. 96-cv-1872, 1999 U.S. Dist LEXIS 13221, at *5 (S.D.N.Y.

Jan. 20, 1999) ("The default of the [defendants] and the well pleaded allegations of the complaint

warrant the entry of an order permanently enjoining the [defendants] from selling any audio tape,

CD, video tape or other phono record containing the name, voice, picture or portrait of [plaintiff]

without his consent."), adopted by 1999 U.S. Dist. LEXIS 13157 (S.D.N.Y. March 31, 1999);

Diller v. Steurken, 185 Misc. 2d 274, 277 (N.Y. Sup. Ct. 2000) (granting injunction under § 51

where defendants defaulted).

64. Def. Goodman warrants an injunction. An injunction is warranted where a party has

succeeded on the merits and can establish: "(1) that it has suffered an irreparable injury; (2) that

remedies available at law, such as monetary damages, are inadequate to compensate for that

injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a

remedy in equity is warranted; and (4) that the public interest would not be disserved by a

permanent injunction." Kaupp v. Church, No. 10 Civ. 7559 (JFK), 2011 WL 4357492, at *4

(S.D.N.Y. Sept. 19, 2011) (citing Salinger v. Colting, 607 F.3d 68, 77 (2d Cir. 2010)).

## JURY TRIAL DEMANDED

65. The undersigned demands a jury trial.

## ATTESTATION

66. The undersigned hereby attests that all exhibits are accurate and true reproductions of

their source appearance (from Internet web-sites, e-mail messages, etc.). The undersigned

hereby attests that the foregoing statements have been made under penalties of perjury.

## STATEMENT AND VERIFICATION

This pleading is true to the knowledge of the undersigned, except as to matters alleged on

information and belief, and that as to matters that the undersigned believe are true. **See NY**

**C.P.L.R. 3020.** So sworn under penalties of perjury.

**D. George Sweigert,**
**c/o General Delivery**
**Rough and Ready, CA 95975**
**Spoliation-notice@mailbox.org**

PRESS FIRMLY TO SEAL

# PRIORITY
## ★ MAIL ★

📅 DATE OF DELIVERY SPECIFIED *

📶 USPS TRACKING™ INCLUDED *

$ INSURANCE INCLUDED *

📦 PICKUP AVAILABLE

\* Domestic only

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

P S 0000 1000 0014

EP14F July 2013
OD: 12.5 x 9.5

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

UNITED STATES
POSTAL SERVICE®

9505 5067 1486 0247 3000 51

FROM:

D. G. SWEIGERT, C/O
GENERAL DELIVERY
ROUGH AND READY, CA 95975
Spoliation-notice@mailbox.org

TO:
PRO SE # 260

PRO SE OFFICE, Room 200
U.S. District Court
500 Pearl Street
New York, New York 10007-1312

10007-1312

RECEIVED
SEP - 9 2020
PRO SE OFFICE

PRIORITY
POSTAGE R

