*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*



**U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
(FOLEY SQUARE)**

| | |
|---|---|
| D George Sweigert <br><br> **Plaintiff [counter-defendant]** <br><br> **v.** <br><br> **Jason Goodman** <br><br> **Defendant [counter-plaintiff]** | **CIVIL CASE #: 1:18-CV-08653-VEC** <br><br> **JUDGE VALERIE E. CAPRONI** <br><br> **MAGISTRATE STEWART D. AARON** |

### PLAINTIFF'S NOTICE OF AMENDED MOTION IN OPPOSITION TO DEFENDANT'S COUNTERCLAIM PAPERS (Dkt. 145) PURSUANT TO RULE 12(b)(6) FAILURE TO STATE A CAUSE, OR, IN THE ALTERNATIVE, RULE 12(b)(1) LACK OF JURISDICTION

This Memorandum of Law is submitted pursuant to **Local Rule 7.1 (a)(2) and 7.1 (b)** and is in

response to the Defendant's pleading papers **(Dkt. No. 145)** which are styled as a

**"COUNTERCLAIM"**

I hereby certify that the attached pleadings are truthful and accurate (to the best of my

knowledge) and are not submitted for the purposes of oppression of the Defendant. A certificate

of service is included on the last page of this document. So sworn under oath.

Signed this **8** day of September, 2020.

*D. G. SWEIGERT, C/O*
*[Plaintiff – Counter-defendant]*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

9-8-20

1

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

**MEMORANDUM OF LAW**
**TO SUPPORT AMENDED MOTION**
**IN OPPOSITION TO DEFENDANT'S COUNTERCLAIM PAPERS (Dkt. 145)**

**TABLE OF CONTENTS**

**Contents**

TABLE OF CONTENTS ............................................................................................ 2

LIST OF AUTHORITIES ......................................................................................... 3

PROCEDURAL BACKGROUND ............................................................................ 5

INTRODUCTION ..................................................................................................... 6

LAW AND DISCUSSION ........................................................................................ 13

CONCLUSION ......................................................................................................... 25

CERTIFICATE OF SERVICE ................................................................................. 28

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

## LIST OF AUTHORITIES

**Cases**

*Abkco Music,* 2016 WL  2642224, at *3, 6.................................................................................. 23

*Am. Baptist Churches of Metro. New York v. Galloway,* 271 A.D.2d 92, 101 (1st Dep't 2000) . 20

*Binns v. Vitagraph Co. of Amer.,* 210 N.Y. 51 ........................................................................ 22

*Biro v. Conde Nast,* 883 F. Supp. 2d 441, 477 (S.D.N.Y. 2012)................................................. 23

*Biro v. Condé Nast,* 963 F. Supp. 2d 255 (S.D.N.Y. 2013)........................................................ 19

*Booth v Curtis Pub. Co.,* 15 A.D.2d 343, 351 ......................................................................... 22

*Briarcliff Lodge Hotel v. Citizen-Sentinel Publ.,* 260 N.Y. 106, 118  (1932)) ............................. 23

*Buckley v. Littell,* 539 F.2d 882, 889–894 (2d Cir. 1976)......................................................... 23

*Cholowsky v. Civiletti,* 887 N.Y.S.2d 592, 595 (2d Dep't 2009) ................................................. 23

*Denton v. Hernandez,* 504 U.S. 25 (1992)................................................................................ 27

*DLC Management Corp. v. Town of Hyde Park,* 163 F.3d 124, 136 (2d Cir. 1998),.................. 26

*Etheredge-Brown v. Am. Media, Inc.,* 13 F. Supp. 3d 303 (S.D.N.Y. 2014)............................... 19

*Factors Etc. v. Pro Arts* ( 579 F.2d 215, cert den 440 U.S. 908)................................................ 22

*Gautier v. Pro-Football,* 304 N.Y. 354, 359 ........................................................................... 22

*Gautier v. Pro-Football, Inc.,* 304 N.Y. 354, 107 N.E.2d 485 (1952) ......................................... 22

*Gladden v. City of N.Y.,* 12 Civ. 7822 (PKC) (S.D.N.Y. Aug. 29, 2013)................................... 14

*Goonewardena v. New York,* 475 F. Supp. 2d 310 (S.D.N.Y. 2007) ........................................... 21

*Gross v. New York Times Co.,* 82 N.Y.2d 146, 152–153, 603 N.Y.S.2d 813, 623 N.E.2d 1163

   (1993) ................................................................................................................................ 23

*Holy Spirit Ass'n v. N.Y. Times Co.,* 49 N.Y.2d 63, 67 (1979) .................................................... 23

*Keller v. Miami Herald Pub. Co.,* 778 F.2d 711, 718 (11th Cir. 1985)....................................... 24

*Menaker v. C.D.,* 2:17-cv-5840 (DRH)(AYS) (E.D.N.Y. Nov. 1, 2018) .................................... 18

*Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990) .......... 24

*Milltex Indus. Corp. v. Jacquard Lace Co.,* 55 F.3d 34, 41 (2d Cir. 1995)................................. 26

*Murray v. City of N.Y.,* 16-cv-8072 (PKC) (S.D.N.Y. Aug. 16, 2017) ....................................... 26

*Nevin v. Citibank, N.A.,* 107 F. Supp. 2d 333, 343 (S.D.N.Y. 2000)........................................... 17

*Oliveri v. Thompson,* 803 F.2d 1265, 1272 (2d Cir. 1986)....................................................... 26

*People v. H & R Block, Inc.,* 847 N.Y.S.2d 903 (N.Y. Sup. Ct. 2007) ........................................ 17

*Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008) .......................................... 14

*Sakon v. Andreo,* 119 F.3d 109, 114 (2d Cir. 1997) ...................................................... 26

*See Karlin v. IVF Am., Inc.,* 93 N.Y.2d 282, 290 (N.Y. 1999) ..................................... 17

*Sepenuk v. Marshall*, No. 98 Civ. 1569 (RCC) (S.D.N.Y. Dec. 8, 2000) .................................... 20

*Steele v. Goodman*, Civil Action No. 3:17cv601 (E.D. Va. Jul. 25, 2019) ............................ 12, 25

*Tehrani v. Town of Oyster Bay Hous. Auth.*, 18-cv-2450 (BMC) (LB) (E.D.N.Y. Apr. 9, 2019) 27

*Valentine v. Chrestensen*, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942) ............................... 22

*Van Buskirk v. N.Y. Times Co.,* 325 F.3d 87, 89 (2d Cir.2003) .................................................... 19

## Statutes

Gen. Bus. Law §§ 349, 350 .......................................................................................................... 17

N.Y. Civ. Rights Law § 74 ........................................................................................................... 22

New York Executive Law section 63-A ...................................................................................... 16

New York General Business Law sections 349 and 350 ............................................................. 17

## Rules

CPLR § 215(3) ............................................................................................................................... 19

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 14

Fed. R. Civ. Proc. 12(b)(1) ........................................................................................................... 14

Fed.R.Civ.Proc. 12(b)(6) .............................................................................................................. 27

Rule 12(b)(6) ........................................................................................................................... 13, 14

## Treatises

*Bruce W. Sanford, Libel and Privacy 199* (2d ed. Supp. 1993) .................................................... 24

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC-SDA*

## MEMORANDUM OF LAW
## TO SUPPORT AMENDED MOTION
## IN OPPOSITION TO DEFENDANT'S COUNTERCLAIM PAPERS (Dkt. 145)

### PROCEDURAL BACKGROUND

1.      This instant lawsuit was transferred to the Southern District of New York (S.D.N.Y.)

from the District of South Carolina on 09/21/2018 (Dkt. 30).  The original lawsuit contained a

complaint and an amended complaint filed for the South Carolina jurisdiction (Dkt. 1,

06/14/2018 and Dkt. 5, 6/29/2018, respectively).  One year ago, presiding judge Hon. Valerie E.

Caproni issued an ORDER (8/20/2019, Dkt. 87) which, among other things stated that the

"Plaintiff appears to regard himself as a roving knight in shining armor, intent on vindicating,

through lawsuit, the rights of anyone harmed by the Defendant's nonsensical ranting. [pg. 8 of

14]"  Further, the ORDER stated, "Goodman asserts that Sweigert is part of an organized

campaign that has engaged in "wanton and willful tortuous interference, defamation, slander,

harassment, invasion of privacy, infringement of first amendment rights, menacing and stalking."

Dkt. 44.  Apart from these conclusory statements, Goodman has not set forth any facts to support

any of his claims." (pg. 12 of 14).  This ORDER permitted the filing of a Second Amended

Complaint (SAC) by the *pro se* Plaintiff (filed 9/10/2019, Dkt. 88).  The ORDER also dismissed

Def Goodman's "counterclaims" (Dkt. 44).  In response to the SAC (Dkt. 88) Def Goodman

sought to file his second counterclaim **(2CC)** with an enlargement of time (via Dkt. 104, filed

11/18/2019).  The Def's enlargement of time request was approved by the Magistrate via Dkt.

102 (11/14/2019).  Def filed his second COUNTERCLAIM VERIFIED COMPLAINT **(2CC)**

against the Plaintiff on 12/05/2019 (Dkt. 122).  The presiding Magistrate issued a Report and

Recommendation (R&R) with ORDER on 03/02/2020 (Dkt. 138).  The R&R (Dkt 138) reviewed

Def's "civil conspiracy" claims and recommended dismissal. By ORDER of 08/03/2020 (Dkt. 140) the presiding judge once again dismissed the Goodman counterclaims (Dkt. 122); but authorized another refilling of a third counterclaim by Goodman prior to August 31, 2020. Def filed his third COUNTERCLAIM (3CC) on 09/01/2020 (Dkt. 145). On 09/03/2020 Plaintiff served his VERIFIED ANSWER TO THE DEFENDANT'S COUNTERCLAIM" (Dkt. 147).

2.      Caveat, concerning related litigation. On September 4, 2020 the National Academy for Television Arts and Sciences (NATAS) docketed with the S.D..N.Y. an action against Jason Goodman's company Multimedia Systems Design, Inc., d/b/a CrowdSource The Truth for trademark infringement and libel, Case 1:20-cv-07269 (herein EMMY lawsuit).

## **INTRODUCTION**

3.      At the onset, the document "VERIFIED ANSWER TO THE DEFENDANT'S COUNTERCLAIM" 09/03/2020, (Dkt. 147) is hereby referenced as if fully incorporated herein.

4.      The Defendant/Counter-Plaintiff Jason Goodman (Def) is a public figure that operates a podcast social media conspiracy brand known as "CrowdSource The Truth" (CSTT). CrowdSource The Truth is presented as a social media news, research and public affairs platform which collects subscriber fees from the general public (includes thirteen (13) individual social media platforms (Facebook, YouTube, PATREON, Periscope, SubscribeStar, etc.).

5.      Although the Def was offered a third bite at the "counterclaim apple" (via Dkt. 140) Def has simply republished his fatally flawed 2CC (Dkt. 122), which has been dismissed by Dkt. 140, as his 3CC (Dkt. 145). In fact, the Def includes verbatim passages of causes of action that have already been dismissed via the Court's ORDER (Dkt. 140).

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

Countercl. ¶ 72. Accordingly, the Court finds that Defendant's <u>defamation counterclaim</u> should

be <u>dismissed pursuant to Rule 12(b)(6)</u> of the Federal Rules of Civil Procedure. Defendant is

given leave to file an amended pleading consistent with this Order, no later than **August 31,**

**2020.** Failure to timely amend will be construed as an abandonment of Defendant's defamation

counterclaim.       **ORDER Dkt. 140**

Above:  Court's ORDER dismissing defamation counterclaim.


6.       To illustrate, below are comparisons of the two documents 2CC (12/05/19) and 3CC

(9/01/20).  These illustrations demonstrate that the Def made little no effort to revise his

previously dismissed 2CC, which remains baseless, foundationless, and meritless in its present

form as the 3CC.



Above left:  The use of para. 74 in a cause of action in 2CC 12/05/19, Dkt. 122

Above right:  Reference to para. 74 mistakenly left behind in 3CC, 9/01/20, Dkt. 145

7.      The above illustrations are representative of the wholesale bulk data republishing of 2CC content into 3CC as an act of bad faith which smacks of dilatory and frivolous tactics that speaks. This bad faith is outrageous when considering that the Court extended to the Def a gracious offer to have a third bite at the counterclaim apple.  The Def was given ample opportunity to present meritorious claims for the Court's attention.  Def has not.

8.      For all the Def's previous puffery in 2CC of having "letters in his possession", allegedly written by the Plaintiff to Def's business associates, none have been produced in the 3CC.  These mysterious letters supposedly contained examples of slander, libel and defamation by the Plaintiff, etc.  As the Hon. Valerie Caproni opined, "Defendant also alleges that Plaintiff sent letters containing "false allegations" to Defendant's business associates but does not allege the content of such letters, when they were sent, or whether he is complaining about statements made to persons other than the Chief Executive Officer of Patreon. See Countercl. ¶ 72. Accordingly, the Court finds that Defendant's defamation counterclaim should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure." ORDER (Dkt 140).  Def has demonstrated that he cannot produce any such evidence (the red herring letters) to support this facet of his defamation cause of action (3CC, Dkt. 145).

9.      Para.s 18 -20 and 22 re-hash the Def's view of the Port of Charleston "dirty bomb hoax" of June 14, 2017.  Considerable attention is given to what Def calls a "threatening video" that was aired June 15, 2017, 1,174 days prior to the Def's docketing of the 3CC (Dkt. 145).  If this video (06/15/2017) contains some allegations related to the defamation counterclaim (COUNT I) it is about 809 days too late under New York's one-year statute of limitations for defamation claims.

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

10.     In para. 22, the origin of the rumor that Def would be arrested by the New York Police

Department on June 15, 2017, which was published by Robert David Steele, was Thomas

Shoenberger of Provo, Utah.  Thomas Schoenberger has been discussed by the Def in previous

court pleadings in the S.D.N.Y. lawsuit and Virginia lawsuit.  This issue of the rumor has

nothing to do with the Plaintiff.  Thomas Schoenberger was a past associate of Manuel Chavez,

III as they created a Delaware limited liability corporation known as "SHADOWBOX

STRATEGIES".

11.     As with the mysterious "red hearing" letters written to business associates, Def complains

in para. 21 about an "uncountable number" of videos, in which he is defamed, that have been

"spoliated".  This disingenuous claim refers to videos presently under the Def's control at the so-

called "evidence repository site" operated on the BITCHUTE platform by the Def.  These videos

contain no defamatory, slanderous, or libelous assertions.  The bad faith tale of "uncountable

videos" is much like the "mysterious letters".  It is a falsehood that cannot be demonstrated. that

Below is a small sampling of the "spoliated" videos with the Def's accompanying commentary

(which slanders the Plaintiff).



Above:  The BITCHUTE sited hosted by Jason Goodman with "uncountable videos"

URL:  https://www.bitchute.com/channel/crazy_dave/

9

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

| Video title | Description |
|---|---|
| **FUSION CENTER ALERT GEORGE WEBB TERROR CELL PPD-8 NIPP**<br><br>**First published at 07:36 UTC on October 9th, 2018.**<br><br>https://www.bitchute.com/video/i6SC74tbY6Dk/ | This is a message that David Sweigert aka Dave Acton posted approximately October 17, 2017 to a network of cyber operatives. In this video, Sweigert directs these operatives to monitor all activity of journalist Jason Goodman of Crowdsource the Truth as part of a distributed targeting and harassment campaign |
| **HAS DAVID GEORGE SWEIGERT "GONE POSTAL"?**<br><br>**First published at 23:29 UTC on March 24th, 2019.**<br><br>https://www.bitchute.com/video/SJnBzYc18a8P/ | Originally titled "LARP HQ Follow the women George Webb and Jason CrowdSource" why did David George Sweigert delete this video only minutes after uploading it? Did he realize he'd revealed too much? Is he trying to figure out if Jason Goodman of Crowdsource the Truth really has engaged the U.S. Postal Inspector in the alleged case of mail fraud? |
| **THE AMAZING MAGICAL POST OFFICE**<br><br>First published at 17:54 UTC on March 6th, 2019<br><br>https://www.bitchute.com/video/npL8hu7RT6fE/ | David Sweigert at the Mesa AZ post office on December 1, 2108 where he was added to PO Box 152 officially with the assistance and full knowledge of the PO Box owner. This was done to cover up his false statements in court documents related to federal civil action he has brought against Jason Goodman. These false statements were submitted to USDC SDNY claiming PO Box 152 Mesa AZ was his true and accurate legal mailing address During October and November of 2018. This video and his mailing of a US Postal money order in the amount of $1 is an attempt to cover up his violation of 18 U.S. Code § 1001, a statue General Michael Flynn currently faces potential jail time for allegedly violating. Violation of this statue is a felony and carries a maximum penalty of 5 years in prison. Sweigert has removed this video recording from his YouTube channel in an ongoing effort to spoliate evidence of crimes he has committed in an attempt to further false claims and |

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

| | defamatory accusations against Jason Goodman and Crowdsource the Truth. |
|---|---|
| **Set the record straight with Jason Goodman and George Webb**<br><br>First published at 16:48 UTC on August 20th, 2018.<br><br>https://www.bitchute.com/video/2q8CT9Auo0TW/ | Dave continues to lay out aspects of his plan yet to come including threats of future litigation. He does all this while re-refernecing a video in which his brother George Webb Sweigert directs people to watch a video in which Dave accuses Jason Goodman of working for Mossad off shoot Black Cube. Despite his self proclaimed contract work for DHS and other agencies, Dave denies affiliation with the so called "deep state" while feigning ignorance of Manuel Chavez, the very person Dave speaks with in the video referenced by George. |
| **Christmas comes early for George Webb -- Intel Valor advised**<br><br>First published at 14:12 UTC on August 21st, 2018.<br><br>https://www.bitchute.com/video/0mrb3oCLqZ6q/ | Dave calls out to Intel Valor, yet another agitprop agent in his Cyber Militia. Dave discusses direct communication with George Webb as well as the shared family history of mental illness and lying. Accuses George Webb's children of being involved in organ harvesting, while denying his own involvement in money laundering. |

12.     The above listed videos are a small sampling of nearly 50 videos that Jason Goodman

maintains custody and control of that have supposedly been "spoliated". The assertion that the

videos have "been taken down" and "spoliated" is absurd. But, as Def advised the Magistrate via

e-mail in 11/13/2019 that he had "85,000 viewers" rather than "85,000 subscribers" (10

subscribers may equal one viewer), the Def seems to exaggerate the truth.

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

---

) Jason Goodman <truth@crowdsourcethetruth.org>                                          11/13/2019 7:53 PM   ☆  🔖           JG
    To  Aaron_NYSDChambers@nysd.uscourts.gov   Copy  David George Acton Sweigert

Reply   Reply all   Forward   Delete   ≡

---

Thank you your honor, however Mr. Outtrim's inappropriate actions have revealed new evidence that is extremely
significant and must be included in my answer.  Outtrim's latest action provides further proof of the alleged conspiracy
between Plaintiff and others including Outtrim. This causes me to request that you reconsider today's order given the
following circumstances:

Irrespective of Mr. Outtrim's denial of intervention, his reason for attempting to intervene changes my answer and
requires additional time to complete. Prior to emailing you yesterday, Mr. Outtrim submitted a fraudulent complaint
to YouTube that has crippled my online business by preventing me from live streaming my daily broadcasts to my
audience of 85,000 viewers.  This has negatively impacted my income and is a clear example of the ongoing extrajudicial
steps Plaintiff and his associates have taken in their persistent and escalating effort to disrupt my day to day life, my
business and my ability to defend myself in this legal matter.

Online broadcasting is my full time job and primary source of income.  The YouTube penalty will continue indefinitely IF
Outtrim is able to demonstrate to Google that he has an active lawsuit against me for the same claim he has submitted to
YouTube.  It is extremely important to my defense that I have the additional time requested so I may adequately explain
and present the relevant facts and details related to shed light on this newest development and so the court may consider
these facts in rendering its decision.

I respectfully request that you reconsider the order and allow me the time extension.  I stand ready to submit another
motion for extension of time if that would please the court.

Jason Goodman, Defendant Pro Se

*Please note: jasongoodman720@protonmail.com  is not a valid email address for Defendant and has been inappropriately
introduced into these proceedings by Plaintiff

---

Above:  E-mail message from Def to the Magistrate 11/13/2020

13.     Unfortunately, the bulk of the 3CC papers (Dkt. 145) are designed to (1) insult the

Plaintiff as "touched in the head", with a "family history of schizophrenia" and (2) to re-litigate

the Def's federal lawsuit in Richmond, Virginia, an action for defamation, libel, and slander

(*Steele v. Goodman*, Civil Action No. 3:17cv601 (E.D. Va. Jul. 25, 2019)).

14.     For clarity purposes the Court should imagine or envision a troupe of players associated

with this Virginia lawsuit (that encompasses the Def's "civil conspiracy" claims -- COUNT II).

This troupe of players has now been listed as the 11 new third party defendants on this Court's

own docket (see below).

12

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*



Above:  Court docket as of 9/04/20

15.    The meager allegations included in COUNT II of the 3CC papers (Dkt. 145) do not create

any inference supporting the allegation that the Plaintiff is a ring-leader of some vast conspiracy

of "operators" (Virginia lawsuit troupe – third party defendants  - Def's civil conspiracy), and as

such, these allegations are not enough to state a facially plausible claim.

16.    Similarly, NYCRL §§ 50, 51 will not support Def's misplaced allegations in COUNT III

concerning the use of his image on a court reporting blog, operating as a non-commercial entity

which offers only opinion and editorial comment in the public interest.

17.    All the claims supporting the three causes of action in the 3CC (Dkt. 145) are not

factually based and will not survive a motion to dismiss ( Rule 12(b)(6) ).

## **LAW AND DISCUSSION**

18.    The Court may observe issues presented herein that indicate the Court has no jurisdiction

over certain matters.  In the event of such adjudication, the Plaintiff herein invokes Fed. R. Civ.

Proc. 12(b)(1) for lack of jurisdiction.

19.     Although the Court must accept all factual allegations set forth in the 3CC and view them

in the light most favorable to the pro se Def, it should also note that conclusory allegations,

unwarranted factual deductions, and legal conclusions will not prevent dismissal under Rule

12(b)(6).

### CONCLUSORY AND VAGUE STATEMENTS

20.     Generally, when considering a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6),

non-conclusory allegations in the complaint are deemed true. See *Ruotolo v. City of N.Y.,* 514

F.3d 184, 188 (2d Cir. 2008). [emphasis added]

21.     The 3CC counterclaim papers (Dkt. 145) proffer only a few non-conclusory allegations,

which could possibly be accepted as true by this Court. "In considering a Rule 12(b)(6) motion,

all non-conclusory factual allegations are accepted as true and all reasonable inferences are

drawn in favor of the plaintiff. See In re *Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir. 2007)

(per curiam)". *Gladden v. City of N.Y.*, 12 Civ. 7822 (PKC) (S.D.N.Y. Aug. 29, 2013) [emphasis

added]

### COUNTERCLAIM COUNT 1 DEFAMATION

### National Academy of Television Arts and Sciences (NATAS)

22.     Caveat concerning related litigation.  On September 4, 2020 the National Academy for

Television Arts and Sciences (NATAS) docketed with the S.D..N.Y. an action against Jason

Goodman's company Multimedia Systems Design, Inc., d/b/a CrowdSource The Truth for

trademark infringement and libel, Case 1:20-cv-07269 (herein EMMY lawsuit).

23.     At para. 23 in the 3CC Def makes the utterly false, baseless and meritless claim that "On

information and belief, Goodman alleges that immediately following this [issuance of ORDER,

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

Dkt. 143] Sweigert sought out and contacted a member of the National Academy of Television

Arts and Sciences (NATAS) falsely accusing Goodman of violating a NATAS copyright." (Dkt.

145).  This statement is 100% conspiracy theorist speculation which is whole heartedly denied in

the strongest terms by the undersigned.  Def uses this coincidence of a "YouTube copyright

strike" by NATAS to pander to his conspiracy loving audience about the "deep state" attacks that

CSTT is enduring for "truth telling".  Such conjecture and fantasy thinking represents the height

of frivolity and again speaks to the Def's bad faith in submitting such non-sense to this Court.

Even if true, NATAS has an independent right to seek out copyright claims against the Def for

his gross abuses of not only the NATAS copyrights, but countless other movie copyrights, etc.

Def can produce no evidence to substantiate this irrelevant claim.

24.     Does this NATAS allegation relate to COUNT I, II or III?  Is this allegation supposedly a

demonstration of a conspiracy?  Whatever it is, it is utterly false and devoid of truth.

*New York Attorney General*

25.     One of the few new allegations that the Def makes in the 3CC orbits the submission of

the proposed First Supplemental Complaint (Dkt. 144-1) to the office of the New York Attorney

General (N.Y.A.G.) for review and possible investigation (see para. 25, 3CC, Dkt. 145).

26.     Based upon the Def's harmful mass communication to millions of unsuspecting viewers,

commercial solicitation of funds via credit card processors, the allegation of developing fake

social media consensus with fake podcast "likes", fake "subscribers", fake "views", use of "sock

puppet" accounts, and the use of "bots", there is a matter of public concern associated with the

Def and his CSTT podcasts.  Especially considering the 50 to 75 CSTT broadcasts proclaiming

COVID-19 is a fake "plandemic" with encouragement for the public to disregard emergency

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

pandemic orders, such as those issued by the City of New York, Office of Chief Medical

Examiner, and others (below):

> As Part of New York's Ongoing Response to the COVID-19 Pandemic, Governor Cuomo
> Announces Special Health Insurance Enrollment Extension Through NY State of Health
> Marketplace
>
> Executive Order No. 205: Quarantine Restrictions on Travelers Arriving in New
> York (06/24/2020)
>
> Governor Cuomo Announces Individuals Traveling to New York from Four Additional States
> Will Be Required to Quarantine for 14 Days (07/14/2020)
>
> Governor Cuomo Announces Individuals Traveling to New York from Three Additional
> States Will Be Required to Quarantine for 14 Days (07/07/2020)
>
> Governor Cuomo Announces Individuals Traveling to New York From Eight Additional
> States Will Be Required to Quarantine for 14 Days (06/30/2020)
>
> Interim Guidance for Quarantine Restrictions on Travelers Arriving in New York State
> Following Out of State Travel

27.     The public concern element is further amplified by the censure of the Def by YouTube

for the broadcast of "harmful content" related to Def's COVID-19 "plandemic" conspiracies.

Relying of fake "experts" and non-credentialed guests, Def has openly called for the defiance of

public health pandemic emergency orders issued by the State of New York.  This encouragement

of audience members not to wear facial coverings and not to practice social distancing is only

one example of the potential harm that the Def spreads on his broadcasts.

28.     New York Executive Law section 63-A empowers the New York Attorney General

(N.Y.A.G.) to bring an independent action pursuant to New York General Business Law sections

349 and 350 (NYGBL §§ 349, 350) against any entity (like the Def) for violations of said law.

The N.Y.A.G. does not have to demonstrate damages.  The N.Y.A.G. is empowered to receive

complaints from the public.

29.     The New York Attorney General also has the power to enjoin deceptive consumer
practices or to initiate enforcement actions against any person or business that engages in
deceptive acts or practices or false advertising pursuant to General Business Law ("GBL")
Sections 349 and 350.[25]( Gen. Bus. Law §§ 349, 350)  These statutes, which are "broadly
applicable and liberally construed," have been invoked against a variety of economic
activities.[26] (*See* Karlin v. IVF Am., Inc., 93 N.Y.2d 282, 290 (N.Y. 1999)) Moreover, as with
the Martin Act, there is no scienter requirement—that is, the New York Attorney General need
not prove that the deceptive practice or false advertising was intentional or even reckless.[27].(
People v. H & R Block, Inc., 847 N.Y.S.2d 903 (N.Y. Sup. Ct. 2007))  URL:
https://www.jonesday.com/en/insights/2016/02/the-investigative-authority-of-the-new-york-
attorney-general-is-not-without-its-
limits#:~:text=The%20Martin%20Act%2C%20Executive%20Law,to%20allegedly%20fraudulen
t%20or%20deceptive

30.     "[U]nder New York law, "[p]ublic policy demands that certain communications, although
defamatory, cannot serve as the basis for the imposition of liability in a defamation action."
*Nevin v. Citibank, N.A.,* 107 F. Supp. 2d 333, 343 (S.D.N.Y. 2000) (citing Toker v. Pollak, 44
N.Y.2d 211, 218 (1978)).

31.     Certain communications made in the discharge of public functions are entitled to an
"absolute" privilege, which means that the communications are privileged regardless of the
speaker's motive. Nevin, 107 F. Supp. 2d at 343-44." *Menaker v. C.D.*, 2:17-cv-5840
(DRH)(AYS) (E.D.N.Y. Nov. 1, 2018).

32.     The Plaintiff's statements of public concern to N.Y.A.G. have substantial immunity as
they were providing intelligence to a law enforcement agency in good faith.

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

"Other communications enjoy a "qualified" privilege, when it is "fairly made by a person in the discharge of some public or private duty, legal or moral, or in the conduct of his own affairs in a matter where his interest is concerned." Id. (citing Toker v. Pollak, 44 N.Y.2d 211, 219 (1978))".

*Menaker v. C.D.*, 2:17-cv-5840 (DRH)(AYS) (E.D.N.Y. Nov. 1, 2018)

*Reblogging Steve Outtrim's article*
*is not a defamatory act (Para. 37)*

33.     Beginning at para. 37 in the 3CC (para. 31 in the 2CC) Def complains about an Internet blog article posted by Steve Outtrim about Def's experiences as Chief Executive Officer (CEO) of a heavy lift drone company.  Def accuses the Plaintiff (undersigned) of defaming Def with this article.  The issue here is the act of "reblogging" – which is not republishing under the **single publication rule**.  Reblogging is a <u>delayed circulation of the original edition</u>.  The "reblogging" feature on a WordPress.COM blog allows the headline of an original article at the origin blog site (parent site) to be "highlighted" on another – secondary -- blog site (child site).  The entirety of the article on the parent site is NOT republished, only a headline teaser and pointer is published on the child site.  Once a user clicks on the reblogged headline pointer teaser (child site), the user is redirected by Internet Protocols to the origin site (parent) to see a full display of the article.  The reblogged headline on the child site stated:

**Insane in the Ukraine: J.Go Like You've Never Seen Him Before [UPDATES] —**
**Burners.Me: Me, Burners and The Man**

The text that accompanied the headline:
*Recognize this guy? Jason Goodman, CEO of Aerocine, the first company to fly a*
*full-size RED EPIC camera on a "heavy payload" micro-hexacopter drone. It's*
*almost like we're watching an actor playing a different character. 3,200*
*more words*

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

34.     The totality of the information published on the child site appears above; it is the entirety

of the reblogged headline.  Clicking on the headline activates an Internet Protocol Uniform

Resource Locator (URL) redirection to the parent site operated by Steve Outtrim

(BURNERS.ME).

> "Republication, retriggering the period of limitations, occurs upon a separate
> aggregate publication from the original, on a different occasion, which is not merely
> "a delayed circulation of the original edition."
> See *Biro v. Condé Nast*, 963 F. Supp. 2d 255 (S.D.N.Y. 2013)

35.     The original article on Steve Outtrim's "BURNERS.ME" WordPress.COM blog

entitled "*Insane in the Ukraine: J.Go Like You've Never Seen Him Before [UPDATES]*" was

published on December 3, 2018, over a year prior to the docketing of the  2CC papers on

12/05/19 (# 122) and well over 18 months prior to when the 3CC was docketed on 9/01/20 (Dkt.

145).

36.     "New York imposes a one-year statute of limitations on defamation claims. CPLR §

215(3). Under the "single publication" rule, the statute of limitations ordinarily begins to run at

the time of the "first publication"—that is, "the earliest date on which the work was placed on

sale or became generally available to the public." *Van Buskirk v. N.Y. Times Co.,* 325 F.3d 87, 89

(2d Cir.2003)."  See *Etheredge-Brown v. Am. Media, Inc.*, 13 F. Supp. 3d 303 (S.D.N.Y. 2014).

37.     It is a stretch of logic to hold the Plaintiff/Counter-Defendant liable for pointer to an

article that was first published on a different blog site over a year ago.

### COUNTERCLAIM COUNT 2
### CIVIL CONSPIRACY

38.     If the Defendant is left without a primary tort – defamation and/or defamation *per se* -- by

Def's own pleading (3CC) referring to *Sepenuk v. Marshall* and Magistrate's opinion (see below)

the Defendant's "civil conspiracy" claim is foreclosed. *Sepenuk v. Marshall*, No. 98 Civ. 1569 (RCC) (S.D.N.Y. Dec. 8, 2000).

39.     As the Magistrate observed 03/02/2020 (Dkt. 138), "However, the Court also finds that Defendant has not pled conspiracy allegations (e.g., agreement, overt act, intentional participation and resulting damage). Rather, Defendant merely recites the required elements for conspiracy without any facts to support such elements. (See Counterclaims ¶ 80.) In any event, Defendant's civil conspiracy counterclaim arises out of the same conduct as his defamation claim and thus is redundant. See *Am. Baptist Churches of Metro. New York v. Galloway*, 271 A.D.2d 92, 101 (1st Dep't 2000) (civil conspiracy cause of action dismissed as redundant). Thus, the Court recommends that Count 3 of Defendant's Counterclaims [2CC] be dismissed.", (Dkt. 138). Nothing has changed.

40.     Para. 26 of the 3CC (Dkt. 145) offers more conclusory allegations about attempts to extort monies from the Def with multiple lawsuits. To the knowledge of the Plaintiff there are only two lawsuits in play, this instant lawsuit and *Steele v. Goodman*. The Plaintiff has made no demands upon the Def for monies or other consideration. "Damage Goodman in every way possible" is a vague and ambiguous assertion.

41.     Paras. 27 – 32 again rehash the Christmas phone call of December 2017. In this podcast call in show, Tyroan Simpson offers free Steemit memberships as a form of Christmas gift. The discussions on this call-in show primarily relate to George Webb Sweigert and the specific subject is not the Def.

42.     At Para. 27 of the 3CC Def accuses Plaintiff of volunteering to operate a "public defamation and harassment campaign," which is flatly denied by Plaintiff. Def provides no instantiation of such a campaign, and as it is(was) a "public campaign" the Def should have

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

some evidence of public artifacts that would tend to indicate that they were the product of such a scheme or campaign. Def provides nothing to substantiate yet another conclusory allegation about the "public defamation and harassment campaign", which is totally baseless.

43.     As with the mysterious missing letters (Dkt. 140) the Def speaks about "his [Plaintiff] harassing letter campaign". Again, no specifics are proffered. This allegation is a cousin of the mysterious letters to business associates claim. It is a baseless conclusory allegation with no substance.

44.     ""[C]onclusory allegations are insufficient to withstand a motion to dismiss." See *Giaccio v. City of New York*, 2005 WL 95733, *5, (S.D.N.Y. Jan. 19, 2005) (citing *Straker v. Metro. Transit Auth.,* 333 F.Supp.2d 91, 102 (E.D.N.Y. 2004)," *Goonewardena v. New York*, 475 F. Supp. 2d 310 (S.D.N.Y. 2007).

## COUNTERCLAIM COUNT 3
### NEW YORK CIVIL RIGHTS LAW

#### Non-commercial blog

45.     A new 3CC allegation not in the 2CC concerns a blog posting by the Plaintiff that somehow violated New York Civil Rights Law section 50 and 51 (NYCRL §§ 50, 51). The Def has misplaced his trust in NYCRL §§ 50, 51 which applies only to commercial speech, commercial exploitation, advertising, etc. The Def is required by NYCRL §§ 50, 51 to allege unauthorized commercial exploitation of his photograph or likeness. *Booth v Curtis Pub. Co.,* 15 A.D.2d 343, 351; see *Gautier v. Pro-Football*, 304 N.Y. 354, 359 ; *Binns v. Vitagraph Co. of Amer.*, 210 N.Y. 51. He has not done that.

46.     In this circuit, it is the commercial exploitation of those who "thrust themselves into the public arena" that is in question. In *Factors Etc. v. Pro Arts* ( 579 F.2d 215, cert den 440 U.S.

908) , the court noted (p 220) that "[t]he distinguishing feature of * * * [the right of publicity] is that it involves the use of plaintiff's protected right for defendant's direct commercial advantage."

47.      In the case of the Plaintiff's blog there is simply no commercial advantage attributed to the Plaintiff.  On the blog in question there are absolutely no funds collected, nothing is sold, there is no advertising, etc.  No hats, coffee cups or tote bags with the Def's photograph.  The undersigned does not make one penny by operating the counter speech blog SDNY.INFO.  It is not a commercial operation and does not reflect commercial speech. *Valentine v. Chrestensen*, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942) .

48.      "While one who is a public figure or is presently newsworthy may be the proper subject of news or informative presentation, the privilege does not extend to commercialization of his personality through a form of treatment distinct from the dissemination of news or information" (emphasis added). *Gautier v. Pro-Football, Inc.*, 304 N.Y. 354, 107 N.E.2d 485 (1952).

49.      The wrong consists of only two elements: the commercial use of a person's name or photograph and the failure to procure the person's written consent for such use. Def has failed to meet NYCRL §§ 50, 51 criteria in his cause of action.

### Focus of blog is judicial reporting

50.      The Def has correctly pointed out that the bulk of the postings on the "SDNY.INFO" blog relate to judicial proceedings and this court case.  In this circuit N.Y. Civ. Rights Law § 74 (NYCRL § 74) provides for an exemption from defamation suits for such postings, see "Privileges in action for libel", NYCRL § 74.  In sum, the privilege outlined in NYCRL § 74 bars this cause of action.

51.      "The purpose of Civil Rights Law § 74 'is the protection of reports of judicial proceedings which are made in the public interest.'" *Cholowsky v. Civiletti*, 887 N.Y.S.2d 592, 595 (2d Dep't

2009) (quoting Williams v. Williams, 23 N.Y.2d 592, 599 (1969)). Section 74's "fair and true report" privilege is an "absolute privilege" that is "not defeated by the presence of malice or bad faith." *Biro v. Conde Nast,* 883 F. Supp. 2d 441, 477 (S.D.N.Y. 2012) (internal quotation marks and citations omitted).

52.     The New York Court of Appeals has observed that "[a] fair and true report admits of some liberality; the exact words of every proceeding need not be given if the substance be substantially stated." *Holy Spirit Ass'n v. N.Y. Times Co.,* 49 N.Y.2d 63, 67 (1979) (quoting *Briarcliff Lodge Hotel v. Citizen-Sentinel Publ.,* 260 N.Y. 106, 118  (1932)).  Def. has not overcome this exemption with his republished ramblings from Dkt. 122.

53.     The "SDNY.INFO" postings qualify as "the publication of a fair and true report of a[] judicial proceeding" that is entitled to protection under NYCRL § 74's privilege and, consequently, Plaintiff's "civil action [for defamation] cannot be maintained against" Defendant; NYCRL § 74; see, e.g., *Abkco Music,* 2016 WL  2642224, at *3, 6 (dismissing defamation claim because § 74 privilege precluded action).

### *Blog postings are opinion and editorial*

54.     Falsity is a necessary element of a defamation action. *Buckley v. Littell,* 539 F.2d 882, 889–894 (2d Cir. 1976) ; *Gross v. New York Times Co.,* 82 N.Y.2d 146, 152–153, 603 N.Y.S.2d 813, 623 N.E.2d 1163 (1993) . Therefore, "a statement of <u>opinion</u> relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection."(emphasis added) *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990).  The Court will note that every posting of "SDNY.INFO" is clearly labeled "OPINION AND EDITORIAL".  See EXHIBIT B of Def's. Dkt. 145.

55.    "Although the editorial format is clearly not determinative, in ambiguous cases the presentation of a statement on an editorial or op-ed page should increase the likelihood that the statement will be perceived as an expression of opinion." *Bruce W. Sanford, Libel and Privacy 199* (2d ed. Supp. 1993).

56.    Opinions and editorials "are nothing more than expressions of opinion which are not objectively verifiable. Such statements of opinion cannot be the subject of a slander claim.". See *Keller v. Miami Herald Pub. Co.,* 778 F.2d 711, 718 (11th Cir. 1985) (cartoon implying that nursing home manager was reaping profits at residents' expense was protected opinion).

## COUNTERCLAIM EXTRANEOUS
## ALLEGATIONS AND COMMENTARY

57.    In several introductory paragraphs (see para. 4 to 8, 2CC, Dkt. 122 and para. 17 to 20, 3CC, Dkt. 145) Def accuses the Plaintiff of "entering into a verbal agreement" with a multitude of parties generally related to the Virginia lawsuit troupe of characters (third party defendants in the civil conspiracy). The Def continues beat this "dead horse" of the Virginia lawsuit troupe conspiracy theory that has been refuted time and time again.

58.    In his 3CC papers Def continues to complain of some conspiracy to interfere with his business, and personal life, etc. Once again, this "dead horse conspiracy" – which has nothing to do with the Plaintiff (undersigned) -- was determined to be centered on a political operative who is well known to Def -- Manuel Chavez, III of Carson City, Nevada (aka "DEFANGO").

59.    This conspiracy of "filing simultaneous lawsuits" against Def was openly admitted to by Mr. Chavez concerning only his involvement with Robert David Stelle, see *Steele v. Goodman,* Civil Action No. 3:17cv601 (E.D. Va. Jul. 25, 2019). This has nothing to do with the Plaintiff. The filing of this instant lawsuit was an independent action undertaken by the Plaintiff and has

nothing to do with Chavez or Steele. Several declarations under the penalties of perjury have made this claim in (*Steele v. Goodman*, Civil Action No. 3:17cv601 (E.D. Va. Jul. 25, 2019)). Again, it is only the bad faith of the Def to drag this dead horse into the S.D.N.Y. for further beatings. Frankly, the Plaintiff is tired of watching this Court allow the Def to act in such a cavalier manner.

60.     Def has engaged in extensive e-mail and telephone communication with Manual Chavez, III. Def knows that any allegations of involvement of the Plaintiff in Chavez's lawsuit is mere wild speculation. As reported via public announcements by Chavez, he has forwarded to Def AND the Plaintiff ALL electronic mail messages in his possession that demonstrated communications between Chavez and other Virginia lawsuit troupe players (third party defendants in the civil conspiracy). This set of Chavez e-mail communications contains no references to the undersigned, nor includes an e-mail address for the undersigned nor presents any other plausible connection between the Plaintiff and Chavez and his third-party defendant "co-conspirators".

> "To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Legal conclusions are not entitled to the presumption of truth, and a court assessing the sufficiency of a complaint disregards them. Id. Instead, the Court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. The Complaint must include non-conclusory factual allegations that "nudge[ ]" its claims "across the line from conceivable to plausible." Id. at 680 (quoting Twombly, 550 U.S. at 570)." *Murray v. City of N.Y.*, 16-cv-8072 (PKC) (S.D.N.Y. Aug. 16, 2017)

## CONCLUSION

61.     At this stage, the Court need only to rely on its <u>inherent powers for the abuse of judicial process </u>by the Def. His bad faith 3CC pleadings warrant another dismissal of the Def's cause

action for defamation. As these claims have been presented twice to this Court (verbatim language in the 2CC and 3CC) the Court should strongly consider dismissal with prejudice with no opportunity to refile another such pleading. See cases addressing court's inherent powers *DLC Management Corp. v. Town of Hyde Park,* 163 F.3d 124, 136 (2d Cir. 1998), *Sakon v. Andreo,* 119 F.3d 109, 114 (2d Cir. 1997), *Milltex Indus. Corp. v. Jacquard Lace Co.,* 55 F.3d 34, 41 (2d Cir. 1995) , and *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986) .

62.     The Def's wholesale bulk republishing of 2CC content into the 3CC (Dkt. 145) speaks to bad faith, and as the Def has already had adequate notice of the deficiency of his claims via the Magistrate's R&R (Dkt. 138) and how to comply with presenting appropriate claims via the presiding judge's ORDER (Dkt. 140) Def is wholly without excuse.

63.     To add insult to injury, the Court must again review wide swaths of the exact same text in the 3CC (Dkt. 145) as expressed, verbatim in 2CC (Dkt. 122). Indeed, the Court was warned of this likely outcome by the Plaintiff's motion for reconsideration (see Fed. R. Civ. Proc. Rule 59(e)) on 8/18/20 (Dkt. 141 and 142).

64.     This Court need not credit Def's conclusory allegations and unsubstantiated speculation that something more nefarious has occurred than a private party (undersigned) who has engaged in counter-speech to protect his business, trade and technical reputation on a non-commercial blog, clearly labeled as "opinion and editorial", which presents news about this instant court proceeding. There is no actionable defamation.

65.     Nor should the Court entertain rumors of "spoliated" videos that are easily accessible via the public Internet on a website (BITCHUTE) operated by the Def. In fact, the Def has produced self-serving descriptions of the video content to include allegations of mail fraud, felonies, etc. against the Plaintiff. This is nothing more than a deception perpetrated on the Court in bad faith.

66.     The Def's unclear and disjointed descriptions of the implausible vast conspiracy of the Virginia lawsuit troupe of players (third party defendants) does not lead this Court to any actionable issues.  The Def has presented non-meritorious claims that should be dismissed.

67.     Despite multiple attempts in this Court, and the Virginia court, to properly plead his "vast conspiracy theory", nothing in the 3CC can support any conclusion other than the conclusory allegations in the 3CC are baseless.  Although the Def very likely believes that he is a victim of a vast conspiracy (involving the undersigned) that claim is utterly implausible, which is no doubt why there are no – or very little – facts pleaded in the 3CC which could support it.

68.     ""A finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25 (1992) ." *Tehrani v. Town of Oyster Bay Hous. Auth.*, 18-cv-2450 (BMC) (LB) (E.D.N.Y. Apr. 9, 2019).

69.     Taken as a whole the Def's 3CC assertions are too vague, disjointed, and implausible to state a plausible claim for relief as required by Fed.R.Civ.Proc. 12(b)(6).

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

9-8-20

*SWEIGERT V. GOODMAN, CIVIL CASE #: 1:18-CV-08653-VEC - SDA*

## CERTIFICATE OF SERVICE

**I HEREBY ATTEST** that a true copy of the attached pleadings has been sent to the following addressees on the **8** day of September via prepaid First Class U.S. Mail.  So sworn under oath.

> **Jason Goodman, CEO**
> **Multi-media Systems Design, Inc.**
> **252 7th Avenue, Apart. #6S**
> **New York, NY 10001**
>
> **PRO SE OFFICE, Room 200**
> **U.S. District Court**
> **500 Pearl Street**
> **New York, New York 10007-1312**

**D. G. SWEIGERT, C/O**
**GENERAL DELIVERY**
**ROUGH AND READY, CA 95975**
*Spoliation-notice@mailbox.org*

9.8.20



This envelope is made from post-consumer waste. Please recycle - again.

PRESS FIRMLY TO SEAL

# PRIORITY
## ★ MAIL ★

DATE OF DELIVERY SPECIFIED*

USPS TRACKING™ INCLUDED*

$ INSURANCE INCLUDED*

🚚 PICKUP AVAILABLE

\* Domestic only

PRIORITY®

9505 5067 1486 0252 3023 23

RECEIVED
SEP 10 2020
PRO SE OFFICE

USPS
SDNY

P S 0 0 0 0 1 0 0 0 0 1 4

EP14F July 2013
OD: 12.5 x 9.5

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

FROM:

D. G. SWEIGERT, C/O
GENERAL DELIVERY
ROUGH AND READY, CA 95975
Spoliation-notice@mailbox.org

PRO SE #200

TO:

PRO SE OFFICE, Room 200
U.S. District Court
500 Pearl Street
New York, New York 10007-1312

10007-1312

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE


**UNITED STATES
POSTAL SERVICE®**











PRIORITY
POSTAGE REQ

949940090818652 08