

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SWEIGERT | CIVIL CASE #: |
| V. | 1:18-CV-08653-VEC |
| GOODMAN | JUDGE VALERIE E. CAPRONI |

<u>**PLAINITIFF'S AMENDED VERIFIED ANSWER**</u>

<u>**IN RESPONSE TO DEFENDANT'S COUNTERCLAIM (DKT. 145)**</u>

**(THIS DOCUMENT REPLACES DKT. 147 AS IT IS AN <u>AMENDED</u> ANSWER)**

This pleading is true to the knowledge of the undersigned, except as to matters alleged on information and belief, and that as to matters that the undersigned believe are true.  See N.Y. C.P.L.R. 3020.  The last page contains a Certificate of Service.  So sworn under the penalties of perjury.

Signed under penalty of perjury,



**D. George Sweigert,**
**c/o General Delivery**
**Rough and Ready, CA 95975**
**Spoliation-notice@mailbox.org**

9.11.20

## INTRODUCTION

The Plaintiff/undersigned hereby accepts the version of facts and case history as expressed in

ORDER AND OPINION, Dkt. 27, ORDER TO SHOW CAUSE, Dkt. 65, MEMORANDUM

AND ORDER, Dkt. 87, ORDER, Dkt. 140, and ORDER, Dkt. 143 as if fully restated herein.

Defendant's (Def's) latest COUNTERCLAIM VERIFIED AMENDED COMPLAINT (Dkt.

145) is a republishing of COUNTERCLAIM VERIFIED COMPLAINT (Dkt. 122) which was

dismissed by ORDER 08/04/2020 (Dkt. 140), "Accordingly, the Court finds that Defendant's

defamation counterclaim should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure." The new counterclaim (Dkt. 145) should be dismissed for the same reasons.

This instant AMENDED answer should replace and amend Dkt. 147.

## ADMISSIONS AND DENIALS

1.      Plaintiff has insufficient knowledge to affirm or deny the professions of Defendant.

2.      Plaintiff is a resident of the State of California.  Plaintiff admits that he served in the U.S

Air Force between 1979-1983 as a Ground Radio Equipment Repairman which encompasses

shortwave single side band long haul radios and VHF/UHF ground to air radios used in the

aeronautical mobile service.  Plaintiff does not understand the term "wireless communications"

but admits he has worked in the arena of "information technology" critical infrastructure

protection for two decades.  Plaintiff admits he published a study manual on Amazon entitled

"The Ethical hackers Field Operations Guide" which serves as workbook to assist candidates to

obtain a passing score on the Certified Ethical Hacker's examination, a credential recognized by

the U.S. Department of Defense.  Plaintiff has no or insufficient knowledge if "penetration

testing is a counter cyber warfare tactic".  Plaintiff denies that he is a professional actor and has

not accessed the website casting360.com in over a decade.  Plaintiff has not received any monies

2

for "acting" or "public appearances".  Plaintiff is not a member of any actors' union or

association.  Plaintiff was engaged in hobby "acting" while living in Hollywood, California.  The

nature of this "acting" was to anticipate participating in training film content related to public

safety such as firefighting, police work and emergency medical services.  Plaintiff is a licensed

Emergency Medical Technician in California.  In 2012 Plaintiff was interviewed ny his friend

Linda West for a disaster earthquake preparation podcast which aired on the social media

channel "INFOWARS".  The scope of the content was strictly limited to personal emergency

preparation for a disaster.  Plaintiff has been active in such disaster preparation hobbies since at

least 1973 when he was placed as an emergency ham radio operator at a destroyed hospital

following a severe tornado in Monticello, Indiana.  Plaintiff admits that he publishes opinion and

editorial news about court related topics, such as this instant lawsuit.  Articles are labeled as

opinion and editorial.  Plaintiff denies that he is a "social media personality" but admits he is

engaged in counter-speech against Defendant to protect his career and reputation via the blog.

Plaintiff admits that he posts songs, movie clips, TV comedy sketches and other such material on

a YouTube channel that is on "hidden status" and can not be found by members of the public.

3.      Plaintiff admits that he has a brother named George Webb Sweigert that appears to

presently reside at Cobb Island, Maryland.  Plaintiff has no or insufficient knowledge to

determine if "George Webb" is a journalist or social media personality.  George Webb did have a

video podcast channel on YouTube that had approximately 110,000 subscribers, like the

Defendant's channel.  A YouTube subscriber is someone that has the potential to view a podcast.

Plaintiff is aware that Defendant collaborated with George Webb on June 14, 2017 on a podcast

show that led to the closure of the Port of Charleston, South Carolina based on information

provided by Oakey Marshall Richards (who later became a regular on Def's podcasts as a

persona known as "Rock Hudson" and completed about 30 shows).

4.      Plaintiff has no or insufficient knowledge to admit or deny this allegation about Robert

David Steele.  Plaintiff has viewed sections of a few Steele podcast videos that showcased

George Webb for the purposes of this instant litigation.  Apparently, Steele made a video with

George Webb, the Defendant Goodman and Trish Negron the day before the Port of Charleston

"dirty bomb hoax" on June 13, 2017.  This video shoes all four persons (Steele, Webb, Goodman

and Negron) discussing political topics related to Robert S. Mueller, III and the 9/11 World

Trade Towers conspiracy.  Plaintiff had no connections with any of these persons at the time.

Plaintiff did attempt to intervene in a civil lawsuit in the federal courts serving Richmond,

Virginia in which Steele was(is) a plaintiff against the Defendant.  That case is *Steele v.*

*Goodman*, Civil Action No. 3:17cv601 (E.D. Va. Jul. 25, 2019).  Plaintiff has no or insufficient

knowledge to admit or deny what level of collaboration Steele had(has) with George Webb.

Plaintiff has no or insufficient knowledge as to whether Steele is a former C.I.A. officer.

5.      Plaintiff has no or insufficient knowledge to admit or deny this allegation about Steven S.

Biss, esq., except that Biss was the attorney of record in the *Steele v. Goodman* lawsuit.

Apparently, Mr. Biss had sent a variety of e-mails to a potential litigant named Manuel Chavez,

III.

6.      Plaintiff has no or insufficient knowledge to admit or deny this allegation about Patricia

Negron, except that her attorneys were present in the *Steele v. Goodman* Virginia lawsuit.

Plaintiff has no or insufficient knowledge to admit or deny this allegation about the "social

media personality" status of Ms. Negron.  It is believed Ms. Negron is a former executive of a

cosmetics company in Salt Lake City, Utah called "Nu-Skin".  Plaintiff has no or insufficient

4

knowledge to admit or deny this allegation about any "confidential agreement" or "charges dropped" concerning the Def. Any such agreements were made significantly after Plaintiff's request to intervene in the *Steele v. Goodman* lawsuit was denied (perhaps a year later). Plaintiff has no or insufficient knowledge to admit or deny this allegation about what the contents of such a "confidentiality agreement" might be.

7.      Plaintiff has no or insufficient knowledge to admit or deny this allegation about Susan Holmes, aka "Queen Tut", except that this person contacted the undersigned via Twitter on or about April/June 2018 and informed Plaintiff that the undersigned's life was in danger if he remained in the Mount Shasta, California area. Ms. Holmes informed Plaintiff that the Def and his friend Quinn Michaels (Korey Atkin) were attempting to locate Plaintiff to commit an act of violence against him. At the time Quinn Michaels was publishing videos from Mount Shasta attempting to locate the undersigned. Ms. Holmes informed Plaintiff that the "STOP THE SACRIFICE" meme created by Mr. Atkin on social media was directed at the Plaintiff with the accompanying narrative that he was planning to sacrifice a small child on June 14, 2018, the day this instant lawsuit was filed in Charleston, South Carolina. June 14, 2018 was the one-year anniversary of the Port of Charleston "dirty bomb hoax". Plaintiff has no or insufficient knowledge to admit or deny this allegation about creating podcast shows with Def of George Webb. Plaintiff is aware Holmes was arrested for perjury in Fort Collins, Colorado and ran for City Council unsuccessfully in that town. Plaintiff ceased communications with Ms. Holmes by the June 2018 timeframe.

8.      Plaintiff has no or insufficient knowledge to admit or deny this allegation about Manuel Chavez, III, except he is believed to live in Carson City, Nevada. Plaintiff cannot admit that Chavez is a "social media personality" as that term is unduly vague and ambiguous. Plaintiff is

aware that Chavez operates a YouTube channel known as "Citizen Zone" and "LARP Wars". Plaintiff has no or insufficient knowledge to admit or deny this allegation about whether Chavez is a "hacker" or "social engineer". Plaintiff has no or insufficient knowledge to admit or deny this allegation about whether Chavez "created online broadcasts" with the Plaintiff. The Plaintiff has called into a Chavez show 3 or 4 times to be interviewed about litigation related topics. One such occasion was a discussion with Chavez and Marcus Conte, who had written e-mail messages and letters to the presiding judge and magistrate of this present lawsuit. Plaintiff has no or insufficient knowledge to admit or deny this allegation about whether Chavez sponsored and collaborated with shows involving Steele, except for court pleadings submitted by the Def. in the *Steele v. Goodman* Virginia federal lawsuit that make similar allegations. Otherwise, Plaintiff has no knowledge except for one or two podcast shows that were broadcast featuring Chavez interviewing Steele in the fall of 2017. In one such podcast Chavez claimed that he had information from a Central Intelligence Agency source that Def Goodman worked for "Black Cube" (approximately Thanksgiving 2017). It was later vetted in the Virginia lawsuit that the source of the "Black CUBE" rumor was Matt Couch of Arkansas, an associate of Chavez and Thomas Schoenberger. The information about Matt Couch has also been presented as evidence in this Court. These persons, Chavez and Schoenberger worked for an individual known as Edward Butowsky who is a defendant in S.D.N.Y. litigation - 1:18-cv-02223-GBD-SN, Rich et al v. Fox News Network LLC et al.

9.      Plaintiff has no or insufficient knowledge to admit or deny this allegation about Steve Outtrim, except that Plaintiff viewed a podcast show in which Outtrim interviewed Ms. Holmes (aka Queen Tut) about her time spent with Goodman as a side-kick and his podcast collaboration with her. Plaintiff has no or insufficient knowledge to admit or deny this allegation about the use

6

of the unduly ambiguous and vague term "social media personality". Plaintiff is aware that Outtrim has written a letter to this Court and to the federal court in Richmond, Virginia. Plaintiff has no or insufficient knowledge to admit or deny this allegation about Outtrim's financial resources or whether he is retired. Plaintiff has no or insufficient knowledge to admit or deny this allegation about Holmes broadcasting messaging about Def. "secondhand hearsay" concerning Patricia Negron. Plaintiff has no or insufficient knowledge to admit or deny this allegation about whether Ms. Negron denied statements about such allegations except for the recently submitted e-mail message from Ms. Negron's attorney attached to Dkt. 145, otherwise Plaintiff has no knowledge of such allegations. Outtrim has attempted to intervene in this instant lawsuit via letters to the Court apparently.

10.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about a person named "Marion Rapp". Plaintiff knows of a person named "Mari Rapp". Plaintiff admits that he had requested that court documents be sent to him "in care of" a post office box in Mesa, Arizona. Plaintiff has no or insufficient knowledge to admit or deny this allegation about whether "official communications" were returned that were sent to this post office box. Plaintiff has no or insufficient knowledge to admit or deny this allegation about whether postal officials "confirmed" that Plaintiff was not a box holder. Plaintiff is aware that the Defendant posted a podcast about this situation and accused the Plaintiff of mail fraud.

11.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about the whereabouts of Nathan Stolpman, except he is apparently a resident of Austin, Texas. Again, the term "social media personality" appears unduly vague and ambiguous. Mr. Stolpman broadcasts podcasts which the Defendant has been a guest. The Defendant explained in a Nathan Stolpman podcast in April 2018 that he had contacted the New York Police Department and New York

field office of the Federal Bureau of Investigation to report that the Plaintiff was a member of a "monetized decentralized distributed defamation network".

12.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about Tyroan Simpson, except his mother apparently operates a U.F.O. research organization either in New Mexico or Colorado. Again, the term "social media personality" appears unduly vague and ambiguous. Plaintiff is aware that the Def posted a podcast in approximately Thanksgiving 2017 entitled something like "Deep State Dunces attack George Webb". In said podcast Def attributed the "Black CUBE" comment made by Chavez to the undersigned, which is erroneous, false, and misleading. In said podcast Def apparently discussed a phone call message he received from Tyroan Simpson, aka Frank Bacon. Undersigned has no or insufficient information about such a telephone call. Some rumors indicate that Tyroan Simpson is the brother of "Tanya Cornwell", the wife of Mr. Stephen S. Biss, esq., the attorney for Robert David Steele. These issues are covered extensively in a MEMORANDUM and ORDER of July 2, 2020 in *Steele v. Goodman*, Civil Action No. 3:17cv601 (E.D. Va. Jul. 2, 2020) (excerpts quoted below):

> In support of this scheme, Mr. Biss allegedly paid an individual, Manuel Chavez III, to "produce false evidence against [Goodman] and to supply this evidence to [Mr.] Biss for use in this instant legal matter." (Id.) Goodman claims that Chavez "approached [Goodman] volunteering to provide emails," several of which Goodman attaches to the Motion to Disqualify. (Id. 10.) One of these emails reveals a communication between Plaintiff Steele and Chavez, with Steele telling Chavez "email to [Mr. B]iss by tomorrow 0900 eastern detailing what you have collected that connects Goodman to Brock and Arnon Milchan. [F]eel free to tell him you want to support my case in return for a percentage." (Mot. Disqualify Ex. C "October 22, 2017 Email," ECF No. 165-3.)
>
> Goodman outlines a series of "unlikely coincidences" which "indicate . . . a deeper relationship between" Steele, Mr. Biss and various other individuals. (Id. 14.) Goodman claims that these individuals, including "[Steele], [Mr.] Biss, Negron, Webb, Sweigert, Chavez, S[c]hoenberger, Cornwell, Holmseth and others . . . . conspired 'ab initio' to bring multiple suits against Goodman with the specific intent to logistically and financially overwhelm him, extort huge sums of money from him, and chill his journalistic efforts." (Id.) (emphasis added).

13.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about Marcus

Conte, except Conte sent letters and e-mail messages to the presiding judge and magistrate judge

to inappropriately introduce evidence to the Court.  Plaintiff has no or insufficient knowledge to

admit or deny this allegation about Conte, except that he had center a letter motion to this Court

stating his desire to intervene in these proceedings, Dkt. 136.  Again, the term "social media

personality" appears unduly vague and ambiguous.  Plaintiff is aware that Mr. Conte is involved

in some fracas with the Brooklyn Hospital Center as part of some COVID-19 reporting.  The

undersigned has submitted pleadings to this Court that describe Mr. Conte.  Dkt. 118, 129, 132,

133.  Mr. Conte is mentioned in the magistrate's report and recommendation (R&R) 03/02/2020,

Dkt. 138.

14.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about Adam

Sharp, except for what the Def. has stated in Dkt. 145.  Plaintiff has never had any contact with

Mr. Sharp of any type.  This includes no e-mail messages, phone calls, conversations, text

messages, etc.  Nothing.  Save for a twitter tweet advising Mr. Sharp that his name now appeared

on the Court's docket as a "third party defendant".  Plaintiff has no or insufficient knowledge to

admit or deny this allegation as to where Mr. Sharp lives.  Plaintiff is aware of another lawsuit

filed in the S.D.N.Y. against the firm that Jason Goodman claims to be the "CEO" of –

Multimedia Systems Design, Inc.  See CIVIL CASE #: 1:20-cv-07269, The National Academy

of Television Arts and Sciences, Inc. vs. Multimedia Systems Design, Inc.  Hon. Valerie E.

Caproni presiding.

15.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about the Def's

creation of a YouTube channel in October 2016.  Plaintiff has no or insufficient knowledge to

admit or deny this allegation about when an "interactive network" named "CrowdSource The

Truth" was created. Plaintiff has no or insufficient knowledge to admit or deny this allegation

about whether Def produces "news, commentary". Plaintiff is aware that Def. apparently

maintains about 13 social media properties where he broadcasts his podcasts. Plaintiff is aware

that some of the Def's video content is monetized, meaning commercials appear within

(embedded) in the content so that Def may receive a fee or "kick-back". Plaintiff has no or

insufficient knowledge to admit or deny this allegation about whether this activity represents a

"full time job". Plaintiff admits he is aware of a YouTube channel called "Jason Goodman" and

"CrowdSource The Truth" as he has submitted privacy complaints with YouTube, LLC against

these channels.

16.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about Def's

collaboration with George Webb. Plaintiff became aware of Def when he interviewed George

Webb on June 13, 2017 and called the Plaintiff a "joker". Prior to this Plaintiff was aware that

George Webb had announced he was a member of Israeli MOSSAD in the presence of the Def in

a video. Prior to this Plaintiff was aware of an apparent illegal distribution of the so-called

"SETH RICH FILES" by Webb and Def. Plaintiff became aware of George Webb's erroneous,

baseless, and foundationless commentary of June 13, 2017 with Def that Plaintiff was part of a

C.I.A. drugs for guns operation in Nicaragua in the early 1980s. This was a lengthy interview in

which the Def collaborated with George Webb about the baseless, erroneous and foundationless

allegation that Plaintiff was a "C.I.A. contractor". This was the introduction of the Plaintiff to

the Def, approximately one day before the Port of Charleston "dirty bomb hoax" on June 14,

2017. Def clearly knew by at least June 13, 2017 who the Plaintiff was, and had heard the

slanderous, defaming, and libelous content of George Webb. Plaintiff has no or insufficient

knowledge to admit or deny this allegation about whether Webb stated Plaintiff "was touched in

the head". Plaintiff has no or insufficient knowledge to admit or deny this allegation about a

"family history of schizophrenia", expect for a video that mentions the father of George Webb

and the Plaintiff was a World War II combat veteran that was deployed to Guadalcanal,

Bougainville, the Luzons and other South Pacific operations as a non-commissioned officer in

the 37th Division of the Ohio national Guard. Plaintiff did indicate that there were no medical

records or other paperwork that indicated that said father might be schizophrenic, but that battle

fatigue and combat stress may have created symptoms that resembled schizophrenia or that there

could have been appearances of what might be the symptoms of the layman's view of

"schizophrenia". Plaintiff is aware that he underwent a psychological evaluation for a security

clearance while in the U.S. Air Force which did not discover any indications of "schizophrenia"

symptoms. Plaintiff was aware that George Webb had attempted to have the Internet community

download electronic files called the "SETH RICH FILES" about 2-3 weeks prior to the Port of

Charleston "dirty bomb hoax" of June 14, 2017. Plaintiff was aware that Goodman and Negron

were sidekicks with George Webb and the "Seth Rich Files" but was only mildly aware of them

as the undersigned's focus was on his brother (2-3 weeks prior to 06/14/2017). Plaintiff

understands that such activity could violate New Jersey law (Dkt. 5).

17.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about the

podcast of June 14, 2017 that closed the Port of Charleston with a "dirty bomb hoax", except that

Oakey Marshall Richards was apparently the source of the information used by George Webb as

later admitted to by Webb and explained to the undersigned by Ms. Holmes ("Queen Tut") in

approximately April/May 2018. Mr. Richards apparently became a regular contributor to Def's

podcasts (thirty or so) after the Port of Charleston incident (August 2017 – April 2018). Ms.

Holmes discussed this information about Oakey Marshall Richards on her podcast appearance

with Steve Outtrim.  Ms. Holmes informed the Plaintiff via twitter in in the April/May 2018

timeframe that Oakey Marshall Richards was the source of the "dirty bomb information" and that

he had become the personality "Rock Hudson" on the Def's podcast shows from about August

2017 to April 2018.  Plaintiff has no or insufficient knowledge to admit or deny this allegation

about the disposition of the "dirty bomb investigation" and whether charges were "brought"

against the Def.  Plaintiff is aware that the public safety response to the "dirty bomb hoax" was

discussed in the following articles (a small sample):



https://www.nytimes.com/2017/06/15/us/port-dirty-bomb-south-carolina.html



https://abcnews4.com/news/local/wando-welch-port-terminal-evacuated-for-threat

12



Hudson Revealed
Jason Goodman

19,989 view

With over 40 years of military, intelligence and clandestine experience, confidential Crowdsource operative codename: HUDSON steps forward after months in the shadows. While operating in the background, Mr. Hudson has provided guidance and information assisting George and Jason daily for the past several months. Pressure mounts as the real possibility of a coup d'etat in America grows each day. Hudson has chosen to accelerate the transfer of information to the Crowdsource community and encourage others in the IC, law enforcement and military to step up and do the right thing.

https://www.youtube.com/watch?v=TWUI8gDPFx0

 **Jason Goodman** The real question is, how did George Webb Sweigert's brother David locate the video clip this article references? Dave was the first to post this as far as I knew. How could low quality audio only recordings on The Hudson Report lead Dave to finding this 3 year old news clip from West Virginia? Did Dave know Hudson's identity all along? I certainly did not. Hudson told me he was a Vietnam Vet, however court transcripts of his own testimony (Download the searchable court transcript –
https://drive.google.com/...H1DaMPVk-OBHRRD-C6a...view) show that was not true. That is a pretty substantial lie to tell someone. Did George and Dave know about this? Were they complicit in a devious plan to gain my trust and manipulate me?



DRIVE.GOOGLE.COM
**looker-criminal-rogers-vol-4-820-1997_OCR.pdf**



https://www.youtube.com/watch?v=oMMNqljXcXw



About 1 year ago, George Webb Sweigert introduced me to an individual allegedly named "Richard Stone". According to the two, Stone was a Vietnam veteran with experience as a "contractor to U.S. intelligence services". Stone would call George or me daily with information, insights and updates. George would consistently reiterate that Stone was one of his best sources of intelligence, and would refer to him in his own YouTube broadcasts as "Deep Uranium" In time, I convinced Stone to come on Crowdsource the Truth as I was not comfortable receiving his information and paraphrasing or sharing it as my own. I prefer to have guests provide their accounts firsthand and let the Crowdsource community decide for themselves. To protect his identity, "Stone" became "Rock" and Mr. Hudson was born. Many viewers enjoyed Mr. Hudson's baritone delivery of conservative political views and his irreverent comments on the Clintons, Obama and others who would defy the constitution for their own political gain. Months ago, inexplicable behavior, coupled with an abrupt departure terminated regular Hudson Report broadcasts. George's brother Dave "Acton" Sweigert recently (and mysteriously) revealed Mr. Deep Uranium Hudson to be not Richard Stone, but in fact, Okey Marshall Richards. This lead us to Ray Looker, a Messianic Rabbi and former West Virginia Militia supporter. According to Looker, Richards worked for the FBI in the 1990's as a provocateur. Looker says Richards framed him for crimes he did not commit, in part for money and the self aggrandizing satisfaction of living out fantasies as a "Secret Government Agent" and in part to help the FBI secure an additional $1,000,000,000 per year in funding to fight radical domestic terrorism.

https://www.youtube.com/watch?v=jWcGuBX8ncc

18.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about the arrest

of George Webb, except to contact the field office of the F.B.I. in Cincinnati, Ohio on or about

June 15, 2017 and offer any assistance to the Port of Charleston investigation.  There were

newspaper accounts of the "arrest" that created the impression the arrest was related to the "dirty

bomb hoax".



# No problem on ship at after threat claim at Charleston port

**By Associated Press**
Posted Jun 15, 2017 at 7:09 AM

MOUNT PLEASANT, S.C. — Coast Guard officials say a terminal at
the Port of Charleston in South Carolina has resumed normal
operations after nothing dangerous was found on a ship after a threat
was reported.

The Coast Guard said in a news release that officials determined early
Thursday there was no danger in four containers on the Maersk
Memphis ship.

Thursday there was no danger in four containers on the Maersk
Memphis ship.

Coast Guard Sector Charleston commander Capt. Greg Stump told
WCIV-TV that port employees were evacuated Wednesday night and
part of the Cooper River was closed.

Stump says a YouTube conspiracy theorist reported a suspected threat
on a container ship in the port. The Maersk Memphis docked in
Charleston about 8:30 p.m.

The Coast Guard says the person who reported the threat is in
custody. There were no further details immediately available on the suspect.

https://www.blufftontoday.com/news/2017-06-15/no-problem-ship-after-threat-claim-
charleston-port

19.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about "threats"

made against Def in a video published June 15, 2017.  The term "threats" appears to be unduly

ambiguous and vague.  Plaintiff has no or insufficient knowledge to admit or deny this allegation

about "vows revenge". Plaintiff has no or insufficient knowledge to admit or deny this allegation about stating Def would be "dead meat" or wind up in a "body bag". Plaintiff recalls comparing Def to persons in the military who wound up as "dead meat" or in a "body bag" referring to p[personnel who engaged in reckless acts that had residual consequences within the safety and security realm. Plaintiff recalls insinuating that Def should be in jail for his activities related to the distributions of Democratic National Committee financial donor files containing the Personal identifiable Information of thousands of individuals weeks earlier in an incident known as the "Seth Rich files". Later Plaintiff confirmed that trafficking in P.I.I. files as Def sand George Webb and Ms. Negron did (mass distribution of said files via the Internet) is a violation of New Jersey state law (described in Dkt. 5). Plaintiff has no or insufficient knowledge to admit or deny this allegation about coordinating with Manuel Chavez, III. Plaintiff does recall stating that Def should secure appropriate legal counsel to help him with his legal troubles. Plaintiff has no or insufficient knowledge to admit or deny this allegation about whether this lawsuit is a "game". The term "game" is unduly ambiguous and vague.

20.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about "public threats" made to Def and whether he traveled to Ohio. Plaintiff learned a few days after this alleged Ohio trip that George Webb was back in New York City with the Def, apparently release from jail. Plaintiff has no or insufficient knowledge to admit or deny this allegation about issues related to bail or Def's travel on June 15, 2017. Plaintiff has no or insufficient knowledge to admit or deny this allegation about "a three-year long vendetta". "Vendetta" appears to be an unduly vague and ambiguous term.

21.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about "virtually unaccountable number" of videos. "Unaccountable" appears to be an unduly vague and

ambiguous term.  Plaintiff has no or insufficient knowledge to admit or deny this allegation

about "taunts, threats, false allegations and defamatory claims".  Plaintiff has no or insufficient

knowledge to admit or deny this allegation about the "spoliation of evidence".  Plaintiff admits

that he posts counter-speech to -protect his career and reputation on a blog known as

SDNY.INFO that is editorial and opinion about court cases, such as this instant lawsuit.  Plaintiff

has no or insufficient knowledge to admit or deny this allegation about "inappropriate and

conclusory statements", which appears to be unduly vague and ambiguous.  Plaintiff has no or

insufficient knowledge to admit or deny this allegation about "deleting postings".  This

allegation is DENIED for the most part.  However, Plaintiff is aware that Def apparently

operates a channel on the BITCHUTE platform that contains the so-called "spoliated" videos.



URL:  https://www.bitchute.com/channel/crazy_dave/

| Video title | Description |
|---|---|
| **FUSION CENTER ALERT GEORGE WEBB TERROR CELL PPD-8 NIPP**<br><br>First published at 07:36 UTC on October 9th, 2018.<br><br>https://www.bitchute.com/video/i6SC74tbY6Dk/ | This is a message that David Sweigert aka Dave Acton posted approximately October 17, 2017 to a network of cyber operatives. In this video, Sweigert directs these operatives to monitor all activity of journalist Jason Goodman of Crowdsource the Truth as part of a distributed targeting and harassment campaign |
| **HAS DAVID GEORGE SWEIGERT "GONE POSTAL"?**<br><br>First published at 23:29 UTC on March 24th, 2019.<br><br>https://www.bitchute.com/video/SJnBzYc18a8P/ | Originally titled "LARP HQ Follow the women George Webb and Jason CrowdSource" why did David George Sweigert delete this video only minutes after uploading it? Did he realize he'd revealed too much? Is he trying to figure out if Jason Goodman of Crowdsource the Truth really has engaged the U.S. Postal Inspector in the alleged case of mail fraud? |
| **THE AMAZING MAGICAL POST OFFICE**<br><br>First published at 17:54 UTC on March 6th, 2019<br><br>https://www.bitchute.com/video/npL8hu7RT6fE/ | David Sweigert at the Mesa AZ post office on December 1, 2108 where he was added to PO Box 152 officially with the assistance and full knowledge of the PO Box owner. This was done to cover up his false statements in court documents related to federal civil action he has brought against Jason Goodman. These false statements were submitted to USDC SDNY claiming PO Box 152 Mesa AZ was his true and accurate legal mailing address During October and November of 2018. This video and his mailing of a US Postal money order in the amount of $1 is an attempt to cover up his violation of 18 U.S. Code § 1001, a statue General Michael Flynn currently faces potential jail time for allegedly violating. Violation of this statue is a felony and carries a maximum penalty of 5 years in prison. Sweigert has removed this video recording from his YouTube channel in an ongoing effort to spoliate evidence of crimes he has committed in an attempt to further false claims and defamatory accusations against Jason Goodman and Crowdsource the Truth. |
| **SET THE RECORD STRAIGHT WITH JASON GOODMAN AND GEORGE WEBB** | Dave continues to lay out aspects of his plan yet to come including threats of future |

| | litigation. He does all this while re-referencing a video in which his brother George Webb Sweigert directs people to watch a video in which Dave accuses Jason Goodman of working for Mossad off shoot Black Cube. Despite his self proclaimed contract work for DHS and other agencies, Dave denies affiliation with the so called "deep state" while feigning ignorance of Manuel Chavez, the very person Dave speaks with in the video referenced by George. |
|---|---|
| First published at 16:48 UTC on August 20th, 2018.<br><br>https://www.bitchute.com/video/2q8CT9Auo0TW/ | |
| **CHRISTMAS COMES EARLY FOR GEORGE WEBB -- INTEL VALOR ADVISED**<br><br>First published at 14:12 UTC on August 21st, 2018.<br><br>https://www.bitchute.com/video/0mrb3oCLqZ6q/ | Dave calls out to Intel Valor, yet another agitprop agent in his Cyber Militia. Dave discusses direct communication with George Webb as well as the shared family history of mental illness and lying. Accuses George Webb's children of being involved in organ harvesting, while denying his own involvement in money laundering. |

22.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about Robert David Steele.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about George Webb's involvement with Robert David Steele.  Plaintiff admits he made one attempt to intervene in the *Steele v. Goodman* lawsuit in Richmond, Virginia.  The term "excessive number of briefs" is unduly vague and ambiguous.  Plaintiff admits that intervention was DENIED.

23.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about "sending a clear signal".  Plaintiff never contacted anyone associated with the "EMMYS", DENIED.  Plaintiff never contacted Adam Sharp or anyone associated with the National Academy of Television Arts and Sciences (NATAS), DENIED.  Only within the last day or two has the Plaintiff forward a copy of the proposed supplemental complaint to personnel working for NATAS.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about a "copyright strike" or actions undertaken by Adam Sharp.  Plaintiff has no or insufficient

knowledge to admit or deny this allegation about whether Def is "severely damaged". Plaintiff
has no or insufficient knowledge to admit or deny this allegation about "presumption of
innocence". Plaintiff has no or insufficient knowledge to admit or deny this allegation about Def
being "crippled". Plaintiff has no or insufficient knowledge to admit or deny this allegation
about Def's challenge to this "copyright strike". Plaintiff has no or insufficient knowledge to
admit or deny this allegation about "CDC report" or CRONY awards or whether it was "ironic,
information and educational". Plaintiff has no or insufficient knowledge to admit or deny this
allegation about "YouTube arbitration". Plaintiff has no or insufficient knowledge to admit or
deny this allegation about "Goodman's business is severely hampered...". Plaintiff has no or
insufficient knowledge to admit or deny this allegation about "decreased subscriber growth".
DENIED that Plaintiff brought anything to the attention of Adam Sharp, NATAS or the
"EMMYS".    Plaintiff has no or insufficient knowledge to admit or deny this allegation about
telephone calls with attorneys. Plaintiff has no or insufficient knowledge to admit or deny this
allegation about "114,000 regular viewers"; however, a subscriber is not necessarily a "viewer".
Plaintiff has no or insufficient knowledge to admit or deny this allegation about "co-host John
Cullen". Plaintiff has no or insufficient knowledge to admit or deny this allegation about
Internet search terms for said video. Plaintiff has no or insufficient knowledge to admit or deny
this allegation about "manually identified" copyright violations. Plaintiff has no or insufficient
knowledge to admit or deny this allegation about Howard Stern copyright violations. Plaintiff
has no or insufficient knowledge to admit or deny this allegation about "unrelenting efforts".
DENIED that Plaintiff made any contact whatsoever to Adam Sharp, NATAS or the "EMMYS"
prior to 09/01/2020 to inform them of the proposed supplemental complaint. DENIED that
Plaintiff reviews all of Def's videos. Plaintiff has no or insufficient knowledge to admit or deny

this allegation about "carefully reviews", except for occasional spot checks brought to the

attention of the Plaintiff by other Internet observers.  Plaintiff has no or insufficient knowledge to

admit or deny this allegation about "think of no matter how far removed", seems unduly vague

and ambiguous.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about

"Hollywood friends", except that Plaintiff has not initiated any contact with such "Hollywood

friends".  Plaintiff has no or insufficient knowledge to admit or deny this allegation about a "plan

along these lines".  Plaintiff is aware of another lawsuit filed in the S.D.N.Y. against the firm that

Jason Goodman claims to be the "CEO" of – Multimedia Systems Design, Inc.  See CIVIL

CASE #: 1:20-cv-07269, The National Academy of Television Arts and Sciences, Inc. vs.

Multimedia Systems Design, Inc.  Hon. Valerie E. Caproni presiding.

| TO: | **Mail Stop 8**<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT OR**<br>**TRADEMARK** |
|---|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court    for the Southern District of New York    on the following

☑ Trademarks or    ☐ Patents.  ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO.<br>20-CV-7269 | DATE FILED<br>9/4/2020 | U.S. DISTRICT COURT<br>for the Southern District of New York | |
|---|---|---|---|
| PLAINTIFF<br>The National Academy of Television Arts and Sciences, Inc. and Academy of Television Arts & Sciences | | DEFENDANT<br>Multimedia System Design, Inc. d/b/a "Crowdsource the Truth" | |
| **PATENT OR**<br>**TRADEMARK NO.** | **DATE OF PATENT**<br>**OR TRADEMARK** | **HOLDER OF PATENT OR TRADEMARK** | |
| 1  5934952 | 12/17/2019 | The National Academy of Television Arts and Sciences, Inc. ("N/ | |
| 2  5791619 | 7/2/2019 | The National Academy of Television Arts and Sciences, Inc. ("N/ | |
| 3  1649437 | 7/2/1991 | The National Academy of Television Arts and Sciences, Inc. ("N/ | |
| 4  2755461 | 8/26/2003 | The National Academy of Television Arts and Sciences, Inc. ("N/ | |

24.     Admitted that the non-profit educational blog SDNY.INFO did post a photo of the Def

(see AFFIRMATIVE DEFENSES section).  Plaintiff has never received any request for

retraction of any materials every posted by the Def. Plaintiff has never received any kind of take

down notice for materials on SDNY.INFO from the Def. Plaintiff has no or insufficient

knowledge to admit or deny this allegation about "not parody" and not "news reporting", except

that the editorial opinions discuss developments in this instant litigation and other court related

issues. Plaintiff has no or insufficient knowledge to admit or deny this allegation about "false

and unverified claims", except that most information published are updates of the court

document describing pleading filed by the Def or ORDERS issued by the federal judge in

Richmond, Virginia. Plaintiff has no or insufficient knowledge to admit or deny this allegation

about whether SDNY.INFO is protected by "fair use", except that the Plaintiff believes it is fair

use. Plaintiff has no or insufficient knowledge to admit or deny this allegation about

"deliberately reporting false information", except in general this claim is DENIED. Plaintiff has

no or insufficient knowledge to admit or deny this allegation about "completely unsubstantiated

by evidence", except that is general this claim is DENIED. Plaintiff has no or insufficient

knowledge to admit or deny this allegation about "actual malice", except that in general this

claim is DENIED. Plaintiff has no or insufficient knowledge to admit or deny this allegation

about "threats is to punish and smear Goodman", except that in general this claim is DENIED.

Plaintiff has no or insufficient knowledge to admit or deny this allegation about "damage

Goodman's business and reputation", except that in general this claim is DENIED. Plaintiff has

no or insufficient knowledge to admit or deny this allegation about a blog post that alleges

"Jason Goodman's fake CROWDSOURCE may be illegal under New York law", except that the

headline actually reads "Jason Goodman's fake CROWDSOURCE may be illegal under New

York law, court documents allege" (see AFFIRMATIVE DEFENSES with regards to New York

General Business Law and Civil Rights Law). Plaintiff has no or insufficient knowledge to

admit or deny this allegation about whether or not "Goodman's CrowdSource The Truth is not

fake". Plaintiff has no or insufficient knowledge to admit or deny this allegation about

"authentic relies on only true information". Plaintiff has no or insufficient knowledge to admit

or deny this allegation about "contents of an article to mislead the reader", in general this claim

is DENIED. Plaintiff has no or insufficient knowledge to admit or deny this allegation about

"presents no true facts or evidence". Plaintiff has no or insufficient knowledge to admit or deny

this allegation about "this claim is false".

25.    Plaintiff has no or insufficient knowledge to admit or deny this allegation about sending

an e-mail to the New York Attorney General, except for the e-mail message sent to various staff

members, the general mailbox, and public affairs mailbox of the N.Y.A.G. See AFFIRMATIVE

DEFENSES regarding N.Y.A.G. Executive Law section 63-A. Plaintiff has no or insufficient

knowledge to admit or deny this allegation about sending "above mentioned allegations", except

for the sending of the proposed supplemental complaint.

26.    Plaintiff has no or insufficient knowledge to admit or deny this allegation about

"extraordinary efforts". Plaintiff has no or insufficient knowledge to admit or deny this

allegation about "Sweigert played a key role", in general this claim is DENIED. Plaintiff has no

or insufficient knowledge to admit or deny this allegation about "orchestrating and executing a

conspiracy", except in general this claim is DENIED. Plaintiff has no or insufficient knowledge

to admit or deny this allegation about "defame Goodman, extort money", in general this claim is

DENIED. Plaintiff has no or insufficient knowledge to admit or deny this allegation about

"multiple concurrent lawsuits." Plaintiff has no or insufficient knowledge to admit or deny this

allegation about "strategic extrajudicial actions", except in general this claim is DENIED.

Plaintiff has no or insufficient knowledge to admit or deny this allegation about "damage Goodman in every way possible."

27.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about a "verbal agreement", except in general this claim is DENIED.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "statements against the declarant's interests".  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "corroborating circumstance".  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "public defamation and harassment campaign."  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "harassing letter writing campaign".  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "Sweigert agrees, responding to Simpson's offer.", except in general this claim is DENIED.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "40 N.Y. Con. Laws Ann. [section] 240.30", except in general this claim is DENIED.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "overt actions", this term seems unduly vague and ambiguous.

28.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about "numerous direct references to a conspiracy".  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "co-conspirators", except in general this claim is DENIED.

29.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about "civil justice system as a weapon".  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "furtherance of a conspiracy", except in general this claim is DENIED.

30.     Plaintiff has no or insufficient knowledge to admit or deny this allegation about a Simpson voice mail.  Plaintiff has no or insufficient knowledge to admit or deny this allegation

about Simpson, his voicemail, and/or conduct related to 40 N.Y. Con. Laws Ann. [section]

240.30.  Plaintiff is not involved with Simpson or his phone calls.

31.      Plaintiff references para. 30 above as if fully restated herein.

32.      Plaintiff has no or insufficient knowledge to admit or deny this allegation about

"Sweigert has aligned his efforts", except in general this claim is DENIED., further this term is

unduly vague and ambiguous.  Plaintiff has no or insufficient knowledge to admit or deny this

allegation about communications between Webb, Simpson, Chavez and Steele.  Admit Plaintiff

attempted to intervene in Richmond, Virginia lawsuit, Steele v. Goodman in May 2019.

Apparently, Chavez was one of the individuals working with Steele to file lawsuits against Def

Goodman.  This apparently had something to do with Robert David Steele that discusses lawsuits

in the video listed below (again this has nothing to do with the Plaintiff):



**Robert David Steele Exposed: Wants thousands of law suits to take down social
media. With the right attorney...Steven Biss?**

This video was published July 9, 2018. Based on Robert David Steele's statements in this video,
it's chilling to see what has come to pass. Steele's attorney, Steven Biss started with a frivolous
lawsuit (2017) to silence internet journalists who were exposing his #UNRIG Iranian influence
campaign and his charity fraud. And by April of 2019 Biss has filed multi-million dollar suits
against TWITTER  and others on social media. Was RDS privy to a long term plan by his

attorney to sue for millions of dollars and take down social media platforms. It sure sounds like
it, and it started with his lawsuit in Fall of 2017. Is there a conspiracy to 'silence' researchers and
social media participants with federal lawsuits. Here are some of the statements made by Steele:
21:19 -21:
Lawsuit against these guys and I won't talk about lawsuits other than to say that guys like you
should be suing the crap out of YouTube
And I'm talking millions of dollars
22:42
YouTube and win from a jury triple damages
22: 58 I have learned to respect the federal judicial system when you have the right lawyer you
can in fact get justice within the federal justice system
25:40
You have great case, in my humble opinion you will win millions of dollars from YouTube
26:00
that's very intelligent observation because the legal system is
rigged…
28:50

**https://vimeo.com/user97982633**

33.      Plaintiff admits a copy of an ORDER from the Virginia court was e-mailed to legal

counsel of Patreon.Com (see AFFIRMATIVE DEFENSES for litigation privilege).  Plaintiff has

no or insufficient knowledge to admit or deny this allegation about "malicious intent", except

that in general this claim is DENIED.  Plaintiff has no or insufficient knowledge to admit or deny

this allegation about "baseless legal threats".  Plaintiff has no or insufficient knowledge to admit

or deny this allegation about "harassing e-mails".  Plaintiff has no or insufficient knowledge to

admit or deny this allegation about "malicious intent in an effort to frustrate", except that in

general this claim is DENIED.  Plaintiff has no or insufficient knowledge to admit or deny this

allegation about "Patreon CEO Jack Conte".  Plaintiff has no or insufficient knowledge to admit

or deny this allegation about any interviews planned by Def or Jack Conte.

34.      Plaintiff has no or insufficient knowledge to admit or deny this allegation about "call and

response communications", except that in general this claim is DENIED.  Plaintiff has no or

insufficient knowledge to admit or deny this allegation about "once this message is received",

except that in general this claim is DENIED. Plaintiff has no or insufficient knowledge to admit or deny this allegation about "evidence spoliated".

35.     Para. Two (2) is hereby incorporated as if fully restated herein. Plaintiff has no or insufficient knowledge to admit or deny this allegation about "military, intelligence and other sophisticated deceptive tactics", except that in general this claim is DENIED. Plaintiff has no or insufficient knowledge to admit or deny this allegation about "active and dynamic network of co-conspirators", except that in general this claim is DENIED.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "overt acts in furtherance of a conspiracy", except that in general this claim is DENIED.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "creating an illusion that these co-conspirators are independent operators", except that in general this claim is DENIED.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "clandestine communications", except that in general this claim is DENIED. Plaintiff has no or insufficient knowledge to admit or deny this allegation about "compartmentalization of actions", except that in general this claim is DENIED. Plaintiff has no or insufficient knowledge to admit or deny this allegation about "unaware of the scope of the operation", except that in general this claim is DENIED.

36.     Para. Nine (9) is incorporated herein as if fully restated. Plaintiff admits he attempted to intervene in *Steele v. Goodman* in May 2019. Plaintiff has no or insufficient knowledge to admit or deny this allegation about Outtrim's California citizenship.

37.     Para. Nine (9) is incorporated herein as if fully restated. Plaintiff has no or insufficient knowledge to admit or deny this allegation about Outtrim's post office box or home New Zealand.

38.     Para. Nine (9) is incorporated herein as if fully restated.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about Outtrim's e-mail, except that it was commonly displayed by Marcus Conte.  The Court will recall that Marcus Conte, Brooklyn, N.Y., sent several e-mail messages and letters to the presiding judge and magistrate.  Conte apparently made podcast videos of these efforts, which included the e-mail addresses for the presiding judge and magistrate.

39.     Para. Nine (9) is incorporated herein as if fully restated.  Plaintiff has no or insufficient knowledge to admit or deny these allegations about what Outtrim publishes on his blog, except for occasional browsing periodically.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about Outtrim blog post about the Ukraine.  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "defamation and harassment of Goodman".  Plaintiff has no or insufficient knowledge to admit or deny this allegation about "overt acts".

40.     Para. Nine (9) is incorporated herein as if fully restated.  Plaintiff admits he "re-blogged" an article originally posted by Outtrim.  See AFFIRMATIVE DEFENSES for re-blogging.

41.     Para. Nine (9) is incorporated herein as if fully restated.  Plaintiff has no or insufficient knowledge to admit or deny these allegations about what Outtrim publishes on his blog, except for occasional browsing periodically.  Plaintiff has no or insufficient knowledge to admit or deny these allegations about "Both Sweigert and Outtrim use this claim.".  Plaintiff has no or insufficient knowledge to admit or deny these allegations about "accusing Goodman of heinous crimes.".  Plaintiff has no or insufficient knowledge to admit or deny these allegations about what Def involved in "a recent explosion".  Again, the Court is directed to the video podcasts of Marcus Conte, who stated that Goodman was the likely the suspicious character falsely accused in the Port Neches factory explosion in Texas which was not an LNG facility.  Mr. Conte made a

28

video podcast of calling the New York field office of the Federal Bureau of Investigation to "turn

in" the Plaintiff. The name of Mr. Goodman was not made and no references to the "bombing"

of Port Neches were made.

42.      Para. Six (6) and Nine (9) is incorporated herein as if fully restated. Plaintiff has no or

insufficient knowledge to admit or deny these allegations about what Outtrim may have

broadcast with Susan Holmes, aka Queen Tut of Fort Collins, Colorado, except for occasional

browsing his blog periodically. Plaintiff has no or insufficient knowledge to admit or deny these

allegations about "young girls" or "London". Plaintiff has no or insufficient knowledge to admit

or deny these allegations about obtaining access to Def's TINDER account, this is flatly

DENIED as well. Plaintiff has no or insufficient knowledge to admit or deny these allegations

about "this false claim is issued by Sweigert", except that in general this claim is DENIED.

Plaintiff has no knowledge about the issues related to Def's TINDER messages except for screen

shots published by George Webb that depict messages from the Def discussing 18-year-old girls

messaging Def on TINDER. Plaintiff has never sought access to Def's TINDER mailbox. Para.

Plaintiff has no or insufficient knowledge to admit or deny these allegations about "embarrass

Goodman or people associated with Goodman".



43.     Para. Seven (7) is herein incorporated by reference as if fully restated.  Plaintiff has no or

insufficient knowledge to admit or deny these allegations about Susan Holmes, aka Queen Tut,

Fort Collins, Colorado working with Plaintiff to intervene in the *Steele v. Goodman* lawsuit in

May 2019.  The Def's recording depicts Holmes citing that Plaintiff attempted to help Holmes

with a Freedom of Information Act request to obtain audio recordings of police body camera

worn by law enforcement officers that shot and killed her son.  Any insinuation that Holmes

collaborated with Plaintiff to intervene in *Steele v. Goodman* (May 2019) is flatly DENIED.

Plaintiff ceased communications with Holmes by June 2018.  Def Goodman published a podcast

that claims Ms. Holmes alleged the undersigned conspired with Robert David Steele and claimed

– at the same time – that Ms. Holmes was a liar that could not be believed.



**Susan "Queen Tut" Lutzke/Holmes Reveals David Sweigert – Robert David Steele Lawsuit Conspiracy**
8,069 views
Streamed live on Apr 30, 2019

> Susan Lutzke aka Susan Holmes aka Queen Tut is a horrible but frequent liar. She recently called me, revealing a long suspected conspiracy between her, D. George "Acton" Sweigert and Robert David Steele. While nothing she says can be believed at this point, how else would David Sweigert know the true identity of Oakey Marshall Richards were this particular admission not true?

⬤ Grēful Gerl  Wow! Wow! Wow! Wow!

⬤ SRS4859  Good Morning All !  ⬤

⬤ ▇▇▇▇▇▇▇  please like and share this. video

⬤ ▇▇▇▇▇▇▇  short drop out in the recording where Susan had stated "I dumped Dave Acton a long time ago"

⬤ ▇▇▇▇▇▇▇  David George Sweigert is attempting to intervene as plaintiff in the Robert David Steele defamation lawsuit against me, Susan Lutzke is a co-Defendant in the suit

⬤ SRS4859  Good morning @Thomas Tyson I agree, should be interesting.

⬤ ▇▇▇▇▇▇▇  This call was recorded on April 3, 2019

⬤ ▇▇▇▇▇▇▇  just about 3 weeks ago

⬤ Thomas Tyson  hey SRS4859

⬤ ▇▇▇▇▇▇▇  Susan Lutzke submitted a fraudulent letter to the court under the name Suzanne Ingraham



Sam Hallaway 1 year ago (edited)
You create a click-bait video title from the words of someone you say nothing can be believed.. umm, ok Jason... David Sweigert knew the identity of Okey Marshall Richards because there was a team of people (Dave was not part of) that figured out his real identity and someone from that team told Dave, and then Dave decided to make Okey's name public
Show less

👍 5  👎  REPLY

▲ Hide reply

US News 1 year ago
Correct... This conversation was edited.  https://vimeo.com/333447612

👍 2  👎  REPLY

https://www.youtube.com/watch?v=WwyRPFhW-HE&t=92s

44.     Para. Seven (7) is herein incorporated by reference as if fully restated.  Admit that the

warnings of Ms. Holmes regarding the potential death of the Plaintiff in Mount Shasta were

headed.  Admit that Quinn Michaels (aka Korey Atkin) was publishing Internet memes about

#StopTheSacrifice in May 2018.  Admit that Ms. Holmes informed the Plaintiff that his life was

in jeopardy in Mount Shasta, California.  Admit that Ms. Holmes advised the Plaintiff to vary his

movements to avoid potentially being tracked down by people working with Quinn Michaels and

the Def.  Deny that any attempt of mail fraud was planned (see AFFIRMATIVE DEFENSES for

mail fraud).  Deny that the use of "in care of" constitutes an actionable offence under the federal

mail fraud statutes.  Plaintiff has no or insufficient knowledge to admit or deny these allegations

about what the U.S. Postal Service told Def, except for the fact that Def has never produced a

complaint number to memorialize the reporting of "mail fraud" to any postal inspector.  Admit

that the Def accused the Plaintiff of committing "mail fraud" in several video podcasts.  Deny

that any such mailing would constitute "fraud on the court".  Admit Def was in the presence of

George Webb in a video podcast when Webb announced that he was a member of Israeli

MOSSAD and Goodman was an "accomplice".  Apparently, Mr. Goodman referred to George

Webb as his business partner in an on-line video:  https://vimeo.com/333447612

45.     Para. Twenty Five (25) is hereby incorporated as if fully restated herein.  Plaintiff has no

or insufficient knowledge to admit or deny these allegations about "New York copyright laws".

46.     Admit

47.     Admit

48.     Admit

49.     Admit

50.     Para. Four (4) is hereby incorporated as if fully restated.  Plaintiff has no or insufficient

knowledge to admit or deny these allegations about "to torment Goodman and destroy his

reputation."  Plaintiff has no or insufficient knowledge to admit or deny these allegations about a

"conspiracy to defame".  Plaintiff has no or insufficient knowledge to admit or deny these

allegations about a "conspiracy to sue Goodman for improper purposes".  Plaintiff has no

association with Robert David Steele, Manuel Chavez, III, Tyroan Simpson, Steve Outtrim,

Steven S. Biss, esq., etc.  Plaintiff has no or insufficient knowledge to admit or deny these

allegations about "multiple jurisdictions concurrently", except that in general these claims are

DENIED.

51.     Plaintiff has no or insufficient knowledge to admit or deny these allegations about

"Sweigert has published false known statements", except that in general this claim is DENIED.

Plaintiff has no or insufficient knowledge to admit or deny these allegations about "actual malice

with express intent", except that in general this claim is DENIED.  Plaintiff has no or insufficient

knowledge to admit or deny these allegations about "civil and criminal litigation", except as to

the issues related to *Steele v. Goodman* and this instant lawsuit.

52.     Plaintiff has no or insufficient knowledge to admit or deny these allegations about violating the privacy of the Def.  The reverse is true, Def worked with George Webb's ex-girlfriend Corean Elizabeth Stoughton of Hanover, Maryland to violate the privacy of the Plaintiff.  Plaintiff has no or insufficient knowledge to admit or deny these allegations about a "conspiracy".  Plaintiff has no or insufficient knowledge to admit or deny these allegations about "false claims and statements".  Plaintiff has no or insufficient knowledge to admit or deny these allegations about violations of trademark.  Plaintiff has never received a take down notice from the Def for any blog postings or other social media content since June 13, 2017.

53.     Plaintiff has no or insufficient knowledge to admit or deny these allegations about "a conspiracy" or about using the mails to further such a conspiracy.

54.     Plaintiff has no or insufficient knowledge to admit or deny these allegations about "false and defamatory statements", except that in general this claim is DENIED.  Plaintiff has no or insufficient knowledge to admit or deny these allegations about "maliciously with the intent to intimidate", except that in general this claim is DENIED.  Plaintiff has no or insufficient knowledge to admit or deny these allegations about "intent to defame and discredit Goodman", except in general this claim is DENIED.

55.      Plaintiff has no or insufficient knowledge to admit or deny these allegations about "co-conspirators".  Plaintiff has no or insufficient knowledge to admit or deny these allegations about "deliberating making false statements".  Plaintiff has no or insufficient knowledge to admit or deny these allegations about "published to third parties", except that in general this claim and the foregoing claim are DENIED.  Plaintiff has no or insufficient knowledge to admit or deny these allegations about "fault".

56.     Plaintiff has no or insufficient knowledge to admit or deny these allegations about "Sweigert's false allegation of international terrorism". Plaintiff has no or insufficient knowledge to admit or deny these allegations about "statements likely to cause public hate". Plaintiff has no or insufficient knowledge to admit or deny these allegations about "implying involvement in criminal activity". Plaintiff has no or insufficient knowledge to admit or deny these allegations about "damages to worldwide reputation". Plaintiff has no or insufficient knowledge to admit or deny these allegations about "foreknowledge of terrorist events". In general, all the foregoing allegations are DENIED.

57.     Admit as this appears to be a passage from a law book.

58.     Plaintiff has no or insufficient knowledge to admit or deny these allegations about "unverified false allegations". Plaintiff has no or insufficient knowledge to admit or deny these allegations about "no basis in fact or unsupported by evidence". Plaintiff has no or insufficient knowledge to admit or deny these allegations about "furtherance of false claims". Plaintiff has no or insufficient knowledge to admit or deny these allegations about "Goodman's right to publicity". Admit using photographs of Goodman taken from YouTube podcasts. Plaintiff has no or insufficient knowledge to admit or deny these allegations about "exclusive intellectual property of Goodman". It appears all podcast related content becomes the property of the social media platform from where it is distributed. See AFFIRMATIVE DEFENSES, YouTube Terms of Agreement (Section 6.B) provide for the right to any YouTube user "to use, reproduce, distribute, display and perform such Content as permitted through the functionality of the Service." The license is perpetual and irrevocable. Plaintiff has no or insufficient knowledge to admit or deny these allegations about "severe degree of falsity". Plaintiff has no or insufficient knowledge to admit or deny these allegations about "falsehoods with actual malice". Def's

photographs have been displayed on a non-commercial, private, educational blog which does not

represent a commercial enterprise and such images were not used for commercial gain of any

kind.  See AFFIRMATIVE DEFEDNSE to New York Civil Rights Law, Sections 50 and 51.  In

general all the foregoing allegations are DENIED.

59.     Admit that it is a prayer.

**AFFIRMATIVE DEFENSES**

**FIRST DEFENSE**

60.     The first defense orbits around the New York Civils Rights Law, Section 50 and 51 that

have been invoked by the Def.  The Def. has misplaced his trust in Sections 50 and 51 which

apply to commercial speech, commercial exploitation, advertising, etc.  The Def is required to

allege unauthorized commercial exploitation of his photograph or likeness.  Booth v Curtis Pub.

Co., 15 A.D.2d 343, 351; see Gautier v. Pro-Football, 304 N.Y. 354, 359; Binns v. Vitagraph Co.

of Amer., 210 N.Y. 51.

61.     Persons like the Def. have "thrust themselves into the public arena".  In this circuit, it is

the commercial exploitation of those who "thrust themselves into the public arena" that is in

question.  In Factors Etc. v. Pro Arts ( 579 F.2d 215, cert den 440 U.S. 908), the court noted (p

220) that "[t]he distinguishing feature of * * * [the right of publicity] is  that it involves the use

of plaintiff's protected right for defendant's direct commercial advantage."  Here there simply no

commercial advantage attributed to the counter-defendant (Plaintiff).  Absolutely no funds are

collected, nothing is sold, there is no advertising, etc.

62.     "While one who is a public figure or is presently newsworthy may be the proper subject

of news or informative presentation, the privilege does not extend to commercialization of his

personality through a form of treatment distinct from the dissemination of news or information"

(emphasis added).  Gautier v. Pro-Football, Inc., 304 N.Y. 354, 107 N.E.2d 485 (1952).

63.      The wrong consists of only two elements: the commercial use of a person's name or

photograph and the failure to procure the person's written consent for such use.

**SECOND DEFENSE**

64.      In violation of the Court ORDER (Dkt. 140) to definitize his defamation claims, Def. has

merely republished the same worn out claims from his first COUNTERCLAIM (Dkt. 122).  This

indicates that the Def. will most likely never produce sufficient evidence of his claims to

introduce at trail.  However, the Def. has correctly pointed out that the bulk of the postings on

the "SDNY.INFO" blog relate to judicial proceedings and this court case.  In this circuit N.Y.

Civ. Rights Law § 74 provides for an exemption from defamation suits for such postings, see

"Privileges in action for libel".  In sum, the privilege outlined in § 74 of the New York Civil

Rights Law bars this action

65.      "The purpose of Civil Rights Law § 74 'is the protection of reports of judicial proceedings

which are made in the public interest.'" Cholowsky v. Civiletti, 887 N.Y.S.2d 592, 595 (2d Dep't

2009) (quoting Williams v. Williams, 23 N.Y.2d 592, 599 (1969)). Section 74's "fair and true

report" privilege is an "absolute privilege" that is "not defeated by the presence of malice or bad

faith." Biro v. Conde Nast, 883 F. Supp. 2d 441, 477 (S.D.N.Y. 2012) (internal quotation marks

and citations omitted).

66.      The New York Court of Appeals has observed that "[a] fair and true report admits of

some liberality; the exact words of every proceeding need not be given if the substance be

substantially stated." Holy Spirit Ass'n v. N.Y. Times Co., 49 N.Y.2d 63, 67 (1979) (quoting

Briarcliff Lodge Hotel v. Citizen-Sentinel Publ., 260 N.Y. 106, 118 (1932)).  Def. has not

overcome this exemption with his republished ramblings from Dkt. 122.

67.      The "SDNY.INFO" postings qualify as "the publication of a fair and true report of a[]

judicial proceeding" that is entitled to protection under § 74's privilege and, consequently,

Plaintiff's "civil action [for defamation] cannot be maintained against" Defendant. N.Y. Civ.

Rights Law § 74; see, e.g., Abkco Music, 2016 WL 2642224, at *3, 6 (dismissing defamation

claim because § 74 privilege precluded action).

**THIRD DEFENSE**

68.      Falsity is a necessary element of a defamation action. Buckley v. Littell, 539 F.2d 882,

889–894 (2d Cir. 1976) ; Gross v. New York Times Co., 82 N.Y.2d 146, 152–153, 603 N.Y.S.2d

813, 623 N.E.2d 1163 (1993). Therefore, "a statement of opinion relating to matters of public

concern which does not contain a provably false factual connotation will receive full

constitutional protection."(emphasis added) Milkovich v. Lorain Journal Co., 497 U.S. 1, 20, 110

S.Ct. 2695, 111 L.Ed.2d 1 (1990).  The Court will note that every posting of "SDNY.INFO" is

clearly labeled "OPINION AND EDITORIAL".  See EXHIBIT B of Def's. Dkt. 145.

69.      "Although the editorial format is clearly not determinative, in ambiguous cases the

presentation of a statement on an editorial or op-ed page should increase the likelihood that the

statement will be perceived as an expression of opinion." Bruce W. Sanford, Libel and Privacy

199 (2d ed. Supp. 1993).

70.      Opinions and editorials "are nothing more than expressions of opinion which are not

objectively verifiable. Such statements of opinion cannot be the subject of a slander claim.". See

Keller v. Miami Herald Pub. Co., 778 F.2d 711, 718 (11th Cir. 1985) (cartoon implying that

nursing home manager was reaping profits at residents' expense was protected opinion).

**FOURTH DEFENSE**

71.    **Executive Law section 63-A** empowers the New York Attorney General (N.Y.A.G.) to bring an independent action pursuant to New York general Business law sections 349 and 350 against any entity (like the Def.) for violations of said law.  The N.Y.A.G. does not have to demonstrate damages.  The N.Y.A.G. is empowered to receive complaints from the public.

72.    The New York Attorney General also has the power to enjoin deceptive consumer practices or to initiate enforcement actions against any person or business that engages in deceptive acts or practices or false advertising pursuant to General Business Law ("GBL") Sections 349 and 350.[25]( Gen. Bus. Law §§ 349, 350)  These statutes, which are "broadly applicable and liberally construed," have been invoked against a variety of economic activities.[26] (*See Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 290 (N.Y. 1999)) Moreover, as with the Martin Act, there is no scienter requirement—that is, the New York Attorney General need not prove that the deceptive practice or false advertising was intentional or even reckless.[27].( *People v. H & R Block, Inc.*, 847 N.Y.S.2d 903 (N.Y. Sup. Ct. 2007))  URL: https://www.jonesday.com/en/insights/2016/02/the-investigative-authority-of-the-new-york-attorney-general-is-not-without-its-limits#:~:text=The%20Martin%20Act%2C%20Executive%20Law,to%20allegedly%20fraudulent%20or%20deceptive

**FIFTH DEFENSE**

73.    Litigation privilege is a doctrine that affords parties involved in judicial or quasi-judicial proceedings to attempt to resolve matters outside of the courtroom.  It provides immunity to letters and communications sent during litigation (such as the alleged e-mail messages sent to the general counsel of Patreon.Com).  The Court will recall that the Def. has NO contract with

Patreon.Com but only a subscriber agreement that can be severed by the provider (Patreon.Com) at any time for any reason.  The Def has not alleged tortious interference and cannot allege tortious interference with a "consumer" type of subscriber agreement with a severability clause at the whim of the provider (Patreon.Com).

74.     The issue of litigation privilege becomes sticky when a California Plaintiff communicates with a California third-party (Patreon).  The rules of the court for the New York State (NYS) may not apply to the practices of litigation privilege in California.

75.     Under New York law, statements made by parties and their attorneys in the context of litigation "are absolutely privileged if, by any view or under any circumstances, they are pertinent to the litigation." O'Brien v. Alexander, 898 F. Supp. 162, 171 (S.D.N.Y. 1995), aff'd in part, 101 F.3d 1479 (2d Cir. 1996). The test for absolute privilege is broad and "embraces anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability." Id. (citation omitted).

76.     "While the communications at issue in Front were among lawyers and potential parties, the New York Court of Appeals did not explicitly require the recipient of the challenged statements to be a lawyer or potential party." Feist v. Paxfire, Inc., No. 11 CIV. 5436 (LGS), 2017 WL 177652, at *5 (S.D.N.Y. Jan. 17, 2017).

## PRAYER

WHEREFORE, for the foregoing reasons, and to support judicial economy, and to support the Court's inherent power to discipline the Defendant for his open defiance of the Courts ORDER (Dkt. 140), this Court should DISMISS this Counter Claim with prejudice with no opportunity to amend and find in favor the counter-defendant (Plaintiff).

## STATEMENT AND VERIFICATION

This pleading is true to the knowledge of the undersigned, except as to matters alleged on

information and belief, and that as to matters that the undersigned believe are true.  **See NY**

**C.P.L.R. 3020.**  So sworn under penalties of perjury.

**D. George Sweigert,**
**c/o General Delivery**
**Rough and Ready, CA 95975**
Spoliation-notice@mailbox.org

9 . 11 . 20

## CERTIFICATE OF SERVICE

I HEREBY ATTEST that a true copy of the attached pleadings and the <u>PLAINITIFF'S</u>

<u>AMENDED VERIFIED ANSWER IN RESPONSE TO DEFENDANT'S COUNTERCLAIM</u>

<u>(DKT. 145)</u>" has been sent to the following addressees on the _____ day of September via prepaid

First Class U.S. Mail.  So sworn under oath.

**Jason Goodman, CEO**
**Multimedia Systems Design, Inc.**
**252 7th Avenue, Apart. #6S**
**New York, NY 10001**

**PRO SE INTAKE, #200**
**U.S. District Court**
**500 Pearl Street**
**New York, New York 10007-1312**

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

This envelope is made from post-consumer waste. Please recycle - again.

PRESS FIRMLY TO SEAL

UNITED STATES POSTAL SERVICE®

# PRIORITY
# MAIL

PRIORITY
FLAT
POSTAGE

* Date of delivery specified*
* USPS TRACKING™ included to many major international destinations.
* Limited international insurance.
* Pick up available.*
* Order supplies online.*
* When used internationally, a customs declaration label may be required.

* Domestic only

PS00001000014



EP14F Oct 2018
OD: 12 1/2 x 9 1/2

USPS.COM/PICKUP

To schedule free
Package Pickup,
scan the QR code.



9505 5087 1486 0255 3033 34

FROM:

D. G. SWEIGERT, C/O
GENERAL DELIVERY
ROUGH AND READY, CA 95975
Spollution-notice@mailbox.org

RECEIVED
IN
SEP 15 2020
PRO SE OFFICE

Pro se
Pro Se #200

TO:

Clerk of the Court
U.S. District Court
500 Pearl Street
New York, New York 10007-1312

