**U.S. DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

RECEIVED
OCT -8 2020
PRO SE OFFICE

| SWEIGERT | CIVIL CASE #: |
|---|---|
| V. | 1:18-CV-08653-VEC |
| GOODMAN | JUDGE VALERIE E. CAPRONI |

## PLAINTIFF'S AMENDED REPLY BRIEF
## TO DEFENDANT'S OPPOSITION TO
## MOTION FOR LEAVE OF COURT (Dkt. 149)
## TO FILE SUPPLEMENTAL COMPLAINT (Dkt. 150)

**MAY IT PLEASE THE COURT:**

This is an AMENDED pleading; it amends a pleading dated 10/01/2020 described above (amendment to: REPLY BRIEF TO DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE OF COURT (Dkt. 149) TO FILE SUPPLEMENTAL COMPLAINT (Dkt. 150)). Pursuant to **Local Rule 6.1(b)(3)** this REPLY is served within seven (7) days of the Defendant's answering papers (Dkt. 155), submitted in opposition to Plaintiff's Motion for Leave of Court (Dkt. 149) with an accompanying supplemental complaint (Dkt. 150). A Memorandum of Law is attached. A certificate of service is included on the last page of this document. So sworn under oath.

Signed this **5** day of October, 2020.

*D.G.S*

***D. G. SWEIGERT, C/O***
***GENERAL DELIVERY***
***ROUGH AND READY, CA 95975***
*Spoliation-notice@mailbox.org*

*10·5·20*

1

# MEMORANDUM OF LAW

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. 3

TABLE OF AUTHORITIES ........................................................................................... 4

PROCEDURAL HISTORY .............................................................................................. 5

STATEMENT OF FACTS ................................................................................................ 6

LAW AND ARGUMENT ................................................................................................. 7

CERTIFICATE OF SERVICE ........................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Beneficial Corp. v. FTC*, 542 F.2d 611, 617 (3d Cir. 1976) .......................................................... 8

*Dove v. Washington Metro. Area Transit Auth.*, 221 F.R.D. 246, 247 (D.D.C. 2004) ................. 10

*In re September 11 Litig.*, 621 F. Supp. 2d 131, 146 (S.D.N.Y. 2009) .......................................... 9

*Karlin v. IVF America, Inc.*, 93 NY2d 282, 290 .......................................................................... 8

*Marino v. Gotham Chalkboard Mfg. Corp* .................................................................................... 7

*Marino v. Gotham Chalkboard Mfg. Corp.*, 259 F. Supp. 953, 954 (S.D.N.Y. 1966) ................... 7

*McLean v. Scully*, No. 90-2590, 1991 WL 274327 *1 (S.D.N.Y. December 9, 1991) ................... 9

*Ravo v. Rogatnick,* 70 N.Y.2d 305, 520 N.Y.S.2d 533, 514 N.E.2d 1104, 1108 (1987) ............. 9

*Rodriguez v. Conway,* No. 10-6243L, 2011 WL 4829725 *1 (W.D.N.Y. September 6, 2011) ..... 9

*Rowe v. U.S. Fidelity & Guar. Co.,* 421 F.2d 937 ,943 (4th Cir. 1970) ......................................... 6

*The National Academy of Television Arts and Sciences, Inc., et al. v. Multimedia Systems Design, Inc.*, 20-CV-7269 .......................................................................................................................... 4

**Statutes**

New York's General Business Law (NYGBL) §§ 349 – 350 ......................................................... 7

NYGBL § 349 .................................................................................................................................. 8

NYGBL §§ 349 – 350 ................................................................................................................. 7, 8

**Rules**

Fed. R. Civ. Proc. Rule 15(a)(1)(A) ................................................................................................ 4

Rule 15(a) ........................................................................................................................................ 6

4

Rule 15(c) .................................................................................................................... 7

Rule 15(c)(1)(C) ................................................................................................. 4, 6, 7

Rule 15(d) .................................................................................................................... 9

Rule15(a)(3) ................................................................................................................ 4

Rules 8(a) .................................................................................................................... 7

**Treatises**

3 J. Moore, FEDERAL PRACTICE, 15.08[2] (2d ed. 1968). ........................................ 6

3 J. Moore, FEDERAL PRACTICE, 15.08[2], at 874-75 (2d ed. 1968); Note, supra note 6, at
   651 ............................................................................................................................ 6

WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1504, at 187 (2d ed. 1990)
   (citing cases) ............................................................................................................ 6

WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE: Civil 3d § 1505,
   pgs. 262-63 ............................................................................................................... 9

## **PROCEDURAL HISTORY**

The Court in its wisdom allowed the Defendant five (5) weeks to respond to the Plaintiff's Motion for Leave to file the proposed First Supplemental Complaint (FSC) (8/24/2020, Dkt. 144) by ORDER of the Magistrate on 09/02/2020 (Dkt. 146).

On 09/09/2020 Plaintiff <u>amended</u> the original leave of court motion (Dkt. 144), which was accompanied by the proposed FSC, with an amended leave of court motion and new amended proposed FSC2 (Dkt. 149 & 150).

The five (5) week time window created by the Magistrate's order (Dkt. 146) apparently allowed for a potential amendment of the FSC "complaint" (amendment normally required within 21 days after filing date of original pursuant to Fed. R. Civ. Proc. Rule 15(a)(1)(A)) and the Defendant's responsive pleading to such an amended motion (within 14 days pursuant to Rule 15(c)(1)(C)). Therefore, the Court has allowed the Defendant three (3) weeks to reply to the amended motion (Dkt. 149 accompanied with FSC2 Dkt. 150)(one week more than allowed by Rule15(a)(3)); five weeks in total (21 days + 14 days).

By ORDER signed 09/16/2020 (Dkt. 154) the presiding judge attempted to clear up any confusion regarding related litigation and/or misnomers concerning the Defendant's "corporation". Defendant Goodman is the acting "C.E.O." of "Multimedia Systems Design, Inc.", which is named in related litigation (see *The National Academy of Television Arts and Sciences, Inc., et al. v. Multimedia Systems Design, Inc.*, 20-CV-7269, Hon. Valerie E. Caproni presiding).

On 09/30/2020 Defendant filed a one-page opposition (Dkt. 155) to Plaintiff's Dkt. 149 and 150.

6

## STATEMENT OF FACTS

1. On 09/10/2019 the Second Amended Complaint (SAC) was docketed (Dkt. 88), which claimed Defendant Jason Goodman (Def) was "C.E.O." of a New York State corporation "Multimedia System Design, Inc." (para. 7). This name appears to be the correct name not "Multimedia System**s** Design, Inc." (MSDI) (Dkt. 154).

2. Defendant Goodman states in an e-mail message of 4/11/2020 that he is "the CEO of Multimedia System Design, INC. the entity which owns the registered trademark" (para. 2 in Dkt. 88). There appears to be confusion of Systems (plural) (Dkt. 154) vs. System, even in the mind of the presiding judge as stated in Dkt. 154.

3. Since that filing (Dkt. 88) all pleadings mailed to the Defendant by Plaintiff have been accompanied by a certificate of service addressed to the Defendant as "C.E.O." of "Multi-media Design Systems, Inc." (another misnomer).

4. The Plaintiff seeks to add Multimedia Systems Design, Inc. as an additional defendant with his pleading papers Dkt. 149 and Dkt. 150.

7



## LAW AND ARGUMENT

### *The MSDI misnomer*

5.  Rule 15(c) encourages the use of amendments to clarify the original complaint (Dkt. 88) or to correct an error made in the original complaint without being barred by the statute of limitations. The section of Rule 15(a) applicable to 15(c) is: "otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The test of "justice" employed by the courts is whether the proposed amendment would unduly prejudice the opposing party. 3 J. Moore, FEDERAL PRACTICE, 15.08[2], at 874-75 (2d ed. 1968); Note, supra note 6, at 651. Consequently, courts look to the adverse effects of such an amendment on the party opposing it, and then only those caused by the moving party's failure to assert the new matter in the original pleading. 3 J. Moore, FEDERAL PRACTICE, 15.08[2] (2d ed. 1968).

6.  While courts typically require some relationship between the original complaint and the supplemental material, an application for leave to supplement is "addressed to the discretion of

the court and should be freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties" and will not prejudice the opposing party. WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1504, at 187 (2d ed. 1990) (citing cases). Indeed, district courts should look to whether "some relationship" exists "between the newly alleged matters and the subject of the original action." see *Rowe v. U.S. Fidelity & Guar. Co.*, 421 F.2d 937 ,943 (4th Cir. 1970) (setting forth the "some relationship" standard).

7.  Rule 15(c)(1)(C) provides for an amendment to relate back to initial pleadings in the event of changing the name of a party. This allows a Plaintiff to correct a misnomer without prejudice to the opposing party if the new party (in this case the proposed party MSDI) has received adequate notice of the claims. *Marino v. Gotham Chalkboard Mfg. Corp.*, 259 F. Supp. 953, 954 (S.D.N.Y. 1966). This is the case for the proposed addition of MSDI. Adding a new party (MSDI) is appropriate pursuant to Rule 15(c)(1)(C).

8.  The *Marino v. Gotham Chalkboard Mfg. Corp.*, court reasoned that adequate notice was the driving concern when assessing whether an adverse party would be prejudiced with a Rule 15(c) amendment, (discussing the practical effects of the 1966 amendments to Rule 15(c)) "[t]he new amendment focuses not on semantics, but on the simple question of whether the party to be brought in had fair notice of the action." MSDI has had fair notice of this action through its "C.E.O.", the Defendant, and the service of Dkt. 88 and all sequential pleadings thereafter served upon the Defendant as "C.E.O." of MSDI, albeit with a corporate misnomer in the certificate of service. This requires correction and the proper MSDI entity should be added as a party.

***Amended First Supplemental Complaint (FSC2) is not futile (Dkt. 150)***

9.  The proposed First Supplemental Complaint (FSC2) (Dkt. 150) is well-pled under Rule 8(a). Counts I, II and III of the proposed FSC meet the pleading standards of Rules 8(a) with sufficient specificity to survive a motion to dismiss. Further, the proposed FSC2 does not introduce separate, distinct, and new claims and causes of action.

10. The Defendant fails to overcome the overwhelming evidence establishing Goodman's violations of New York's General Business Law (NYGBL) §§ 349 – 350 through the use of Multimedia Systems Design, Inc.'s trademark "CROWDSOURCE THE TRUTH". The overwhelming evidence amassed by the Plaintiff in FSC2 (Dkt. 150) established uncontroverted facts necessary to find violations of NYGBL §§ 349 – 350.

11. As alleged in the proposed FSC2 (Dkt. 150), the use of fake social media subscribers, fake podcast "likes", fake podcast approvals, fake comments, fake Twitter comments, use sock puppet accounts and "bots" are considered by the New York Attorney General to be violative of NYGBL §§ 349 – 350. These devices, calculations, fake displays, fake viewership numbers, etc. are the <u>means and instrumentalities</u> of the deceptive business practice.

12. The U.S. Federal Trade Commission sued the same corporation as the N.Y.A.G. – Devumi. The F.T.C. web-site on the matter proclaimed, "The FTC alleges the defendants sold fake Twitter followers to actors, athletes, musicians, writers, and others who wanted to increase their appeal as online influencers. The FTC alleges that Devumi also sold fake Twitter followers to motivational speakers, law firm partners, investment professionals, and others who wanted to boost their credibility to potential clients. …. By selling and distributing fake indicators of social media influence to users of various social media platforms, the FTC alleges the defendants provided their customers with the <u>means and instrumentalities</u> to commit deceptive acts or practices, which is itself a deceptive act or practice in violation of the FTC Act." [emphasis

added]. Cite: https://www.ftc.gov/news-events/press-releases/2019/10/devumi-owner-ceo-settle-ftc-charges-they-sold-fake-indicators

13. As stated in the amended proposed FSC2, the Defendant's inflated position was created by fake "likes", fake "comments", fake "views", fake "subscribers", sock puppet accounts and Twitter bots ("means and instrumentalities").

14. Defendant Goodman has NOT denied this practice of using fake indicators of social media influence in his pleading papers (Dkt. 155). Taken as true, as in the event of a motion to dismiss, this Court must assume that the Defendant is using a deceptive and inflated social media influencer position (injury to public-at-large) to attack the Plaintiff with smear campaigns (injury to Plaintiff).

***Defendant's misconduct is deception per NYGBL***

15. The term "deceptive" has a well-understood meaning in consumer law.  In *Beneficial Corp. v. FTC*, 542 F.2d 611, 617 (3d Cir. 1976), the court noted "the likelihood or propensity of deception is the criterion by which advertising is measured."

16. As reasoned in *Karlin v. IVF America, Inc.*, 93 NY2d 282, 290 (NYGBL § 349... " on (its) face appl(ies) to virtually all economic activity and (its) application has been correspondingly broad ...taking into account not only the impact on the 'average consumer' but also on 'the vast multitude which the statutes were enacted to safeguard-including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions'").

17. In fact, on Friday, 10/02/2020, Defendant announced on his social media podcasts that FACEBOOK, LLC has now terminated (1) Mr. Goodman's personal Facebook account, and (2) the Facebook account of "CROWDSOURCE THE TRUTH". This termination was for multiple

11

violations of community standards. The violation appears to be related to the dissemination of the COVID-19 "Plandemic" conspiracy videos on the Facebook channels. It is believed that this action was taken for the same reason YouTube, LLC has suspended Defendant Goodman's advanced podcast features known as "LIVESTREAMING" for ninety (90) days. Further, YouTube, LLC apparently suspended advanced features on the "CROWDSOURCE THE TRUTH TWO" channel for "harmful content" as well.



Above: Jason Goodman displays Facebook termination notice during 10/02/2020 podcast.



18. The FSC2 (Dkt. 150) described a months long pattern of deception perpetrated upon the general public with regards to the "harmful content" of the Defendant's "COVID-19 plandemic" conspiracy theory content embedded in his commercial speech podcasts, designed with the

ultimate objective of creating angst in the public causing consumers to become subscribers (patrons) to his credit card video services (advertisements in disguise).

19. The Court may infer by the foregoing circumstances that Facebook terminated these accounts for the publication of deceptive and harmful content directed at New York citizens at large. These circumstances amplify the other concerns about the deceptive nature of the Defendant's business model (as expressed by the N.Y.A.G. and F.T.C.).

### *Defendant and proposed defendant MSDI are jointly liable*

20. Under New York law Plaintiff is entitled to sue Goodman and MSDI by reason of their conduct, acting jointly or in common, or either jointly or severally. Legal standards indicate that individual defendants (like Goodman) and corporate defendants (like MSDI) can be held jointly and severally liable as a common enterprise. Thus, the Court should consider that Goodman and MSDI acted as a common enterprise. *In re September 11 Litig.*, 621 F. Supp. 2d 131, 146 (S.D.N.Y. 2009) which relied upon *Ravo v. Rogatnick,* 70 N.Y.2d 305, 520 N.Y.S.2d 533, 514 N.E.2d 1104, 1108 (1987).

21. Rule 15(d) expressly allows for supplemental complaints to "cure" defects in the initial complaint. Adding MSDI as a party cures the defect of the SAC (Dkt. 88). Rule 15(d) permits a supplemental pleading to correct a defective complaint and circumvents "the needless formality and expense of instituting a new action when events occurring after the original filing indicated a right to relief." WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE: Civil 3d § 1505, pgs. 262-63.

22. As stated by this Court in *McLean v. Scully*, No. 90-2590, 1991 WL 274327 *1 (S.D.N.Y. December 9, 1991) it is entirely appropriate for new defendants to be added via a Rule 15(d) supplemental pleading under circumstances such as these. See also, *Rodriguez v. Conway,*

No. 10-6243L, 2011 WL 4829725 *1 (W.D.N.Y. September 6, 2011) ("Supplemental relief may include the addition of new defendants," permitting supplemental complaint under Rule 15(d) adding new party).

## CONCLUSION

To the general public, it would appear that there is some social consensus to hold the Plaintiff up to scorn and ridicule as supported by fake indicators of the social media standing that the Defendant does not legitimately have. The Plaintiff remains the victim of this smear machine operated by Goodman under the MSDI trademark. This activity is considered a violation of the NYGBL by New York's Attorney General.

Defendants (Goodman and/or MSDI) are not prejudiced by any short delay that supplementing the complaint might cause. Discovery has not yet begun, and this lawsuit remains in the pleading stages. Granting Plaintiff's leave to file a supplemental complaint will not substantially delay this case.

Under Rule 15, the burden is generally on the non-moving party to persuade the court "to deny" the motion. The Defendant's papers (Dkt. 155) have not done this. See *Dove v. Washington Metro. Area Transit Auth.*, 221 F.R.D. 246, 247 (D.D.C. 2004).

The Plaintiff herein PRAYS that this Court reject Defendant's answering papers (Dkt. 155) as unpersuasive and permit the First Supplemental Complaint (Dkt. 150) to be recognized as an operative supplement to the Second Amended Complaint (Dkt. 88).

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*

10.5.20

14

## CERTIFICATE OF SERVICE

I HEREBY ATTEST that a true copy of the attached pleadings has been sent to the following addressees on the _5_ day of October via prepaid First Class U.S. Mail. So sworn under oath.

> Jason Goodman, CEO
> Multimedia Systems Design, Inc.
> 252 7th Avenue, Apart. #6S
> New York, NY 10001
>
> PRO SE OFFICE, #200
> U.S. District Court
> 500 Pearl Street
> New York, New York 10007-1312

*D.G.Sgt*

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

10·5·20

15






**PRIORITY MAIL**

- DATE OF DELIVERY SPECIFIED*
- USPS TRACKING™ INCLUDED*
- $ INSURANCE INCLUDED*
- PICKUP AVAILABLE
  * Domestic only

WHEN USED INTERNATIONALLY, A CUSTOMS DECLARATION LABEL MAY BE REQUIRED.

EXPECTED DELIVERY DAY: 10/08/20

USPS TRACKING® NUMBER

9505 5162 1162 0279 4339 39

D. G. SWEIGERT, C/O
GENERAL DELIVERY
ROUGH AND READY, CA 95975
Spoliation-notice@mailbox.org

PRO SE: #200

PRO SE OFFICE, Room 200
U.S. District Court
500 Pearl Street
New York, New York 10007-1312

10007-1312

RECEIVED
OCT - 8 2020
PRO SE OFFICE

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

UNITED STATES POSTAL SERVICE®