IN THE UNITED STATES DISTRICT COURT

*RECEIVED SDNY PRO SE OFFICE 2020 OCT 30 AM 10: 07*

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| D. GEORGE SWEIGERT | Case No.: 1:18-cv-08653-VEC-SDA |
| Plaintiff, | |
| vs. | DEFENDANT'S OPPOSITION TO PLAINTIFF'S NOTICE OF AMENDED MOTION IN OPPOSITION TO DEFENDANT'S COUNTERCLAIM PAPERS (DKT. 145) PURSUANT TO RULE 12{B)(6) FAILURE TO STATE A CAUSE, OR, IN THE ALTERNATIVE, RULE 12(B)(L) LACK OF JURISDICTION |
| JASON GOODMAN, | |
| Defendant | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S NOTICE OF AMENDED MOTION IN OPPOSITION TO DEFENDANT'S COUNTERCLAIM PAPERS (DKT. 145) PURSUANT TO RULE 12{B)(6) FAILURE TO STATE A CAUSE, OR, IN THE ALTERNATIVE, RULE 12(B)(L) LACK OF JURISDICTION**

Defendant Jason Goodman Pro Se respectfully submits this opposition to Plaintiff's motion. This pleading is true and correct to the knowledge of the undersigned, except as to matters alleged on information and belief, and that as to matters that the undersigned believe are true. See N.Y.C.P.L.R. 3020. So sworn under the penalties of perjury.

Signed this 29th day of October 2020

Jason Goodman, Defendant, Pro Se
252 7th Avenue Apt 6s
New York, NY 10001
(323) 744-7594
truth@crowdsourcethetruth.org

## INTRODUCTION

Defendant is a pro se non-attorney who understands the purpose of the courts to be the administration of justice. Allowing this legal matter to carry on with even one more pleading or motion from this vexatious Plaintiff would fly in the face of that notion.

Defendant has never met or spoken of Plaintiff prior to Plaintiff making himself known to Defendant via the publication of a threatening video on or around June 15, 2017. Defendant has not attempted to make claims of Defamation related to that more than three-year-old video. The video is referenced in this matter to demonstrate the putative genesis of this dispute and the dynamic nature of Plaintiff's claims over time. Plaintiff is now on a fishing expedition to concoct anything he can muster despite having no true injury for which relief can be granted. Plaintiff's only purpose is his bad faith effort to exact revenge for some perceived wrongdoing. The newest supplemental claims are merely the latest round of fictions imagined by the Plaintiff in his campaign to, as he said in his own words, sue Defendant "for the rest of his life". Such a statement is a clear demonstration of wrongful purpose. Plaintiff has brought this legal action in bad faith and for the wrongful purpose of deliberately causing financial damage and other harm to the Defendant. Pursuant to the unclean hands doctrine, Plaintiff's remaining claims should be denied and this entire matter should be dismissed with prejudice. In the interest of justice, Sweigert must be declared a vexatious litigant and specifically denied the ability to bring future lawsuits as a pro se Plaintiff. This would not deny him his right to access the courts, but instead would put a justifiable governor on his wild abuses of the legal system, requiring him to first convince an embarred attorney that his feckless ramblings are suitable for litigation and then

DEFENDANT'S OPPOSITION TO PLAINTIFF'S NOTICE OF AMENDED MOTION IN OPPOSITION TO DEFENDANT'S COUNTERCLAIM PAPERS (DKT. 145) PURSUANT TO RULE 12{B}(6) FAILURE TO STATE A CAUSE, OR, IN THE ALTERNATIVE, RULE 12(B)(L) LACK OF JURISDICTION - 2

expend his own financial resources before wasting those of the court or the targets of his litigious harassment.

Sweigert has demonstrated fundamental bad faith by repeatedly and deliberately provoking the Defendant in his attempts to create exaggerated or even entirely made up claims. One of the primary methods Swiegert employs to masquerade his provocations is to present them as statements to law enforcement or claims in this and other civil lawsuits.  He also conveniently gerrymanders his evidentiary submissions to omit his provocations and include only parts of responses he then attempts to present as causes of action.  Plaintiff is aware he has immunity from defamation claims arising from allegations made in this manner and does so to circumvent libel claims against himself.  Plaintiff then publishes defamatory blog posts on his smear campaign website SDNY.INFO that reference his frivolous legal filings and reports on them as "news".  This pattern effectively allows him to defame a target while side stepping any legal exposure as he broadcasts false claims to a wide audience.  As with all his inflammatory posts, he then removes them after his goal has been achieved, complicating the process of bringing them into evidence.  As demonstrated in his own filings, he also uses Twitter and other social media platforms in an attempt to interfere with the normal business of the Defendant and to discourage the public from trusting or doing business with Defendant.  Sweigert takes advantage of laws intended to protect legitimate journalists engaged in good faith efforts to report news, but his abuse of these laws are, in and of themselves, a further demonstration of bad faith.  As the court is aware Sweigert has not even provided a valid mailing address of record in this matter as evidenced by the excessive number of change of address filings and the large number of returned mail items on the docket that were undeliverable by the U.S. Postal service.  All items Defendant

has mailed to Plaintiff in compliance with Federal Rules of Civil Procedure have been returned

by the USPS as previously demonstrated in these pleadings. In an investigation of this

circumstance, Defendant traveled to Arizona in 2019 as previously plead and discovered

evidence that causes him to believe Plaintiff conspired with an induvial named Mari Rapp aka

Sugar Shine ("Rapp") to deceive the Defendant and this court into thinking he had legitimate

possession of U.S. Postal service PO Box 152 in Mesa AZ which he did not. Plaintiff hides his

true address in further efforts to shield himself from defamation counterclaims or enforcement of

potential judgements while he simultaneously utilizes a wide range of electronic and other means

to continually defame, harass and provoke the Defendant. This behavior is yet another

demonstration of bad faith. Plaintiff uses social media platforms such as Twitter specifically so

the defamatory or provocative material can be removed resulting in the "absence of evidence" he

constantly refers to.

Another method Sweigert has utilized which has been openly discussed online and in

emails between Manuel Chavez and others previously mentioned in these pleadings is to

overwhelm Goodman with litigation. It is apparent even in this matter that Sweigert is flooding

the docket with frivolous filings, repeated amendments to those filings, supplements to those

amendments and so on. In a recent YouTube video, Sweigert has stated his intention to

intervene in NATAS v Multimedia System Design INC. Sweigert claims to have no direct

communication with the specific parties that are suing Goodman, defaming him online and

harassing him in person. He does however communicate and interact with many of these

individuals via social media including YouTube and Twitter, among other means. Additionally,

during the course of this legal action, Sweigert has communicated with his brother George Webb

Sweigert, ("Webb") and does not deny that.  Webb has openly communicated with many of the

parties in question including Manuel Chavez so an indirect line of communication is likely.

Based on information and belief Defendant alleges that Sweigert and others in question use

YouTube and other social media platforms to "communicate" with each other via non-traditional

means.  By using bizarre language and imagery that may well include hidden meanings, encoded

messages or clues to viewers who know what to look for, Sweigert employs a social media

version of the traditional espionage tactic of using "dead drops".  A dead drop enables a form of

one way communication where the sender and recipient do not even know each other's identities.

According to Wikipedia is "A dead drop or dead letter box is a method of espionage tradecraft

used to pass items or information between two individuals (e.g., a case officer and an agent, or

two agents) using a secret location. By avoiding direct meetings, they could maintain operational

security."  Similar to this traditional method of avoiding directly meeting, Defendant believes

Sweigert uses his social media accounts to communicate messages or instructions, while still

maintaining the ability to avoid perjury when pleading that he has never directly communicated

with a particular individual.  The sheer volume of pleadings Goodman has been forced to review

and respond to has been overwhelming and has drained significant resources.  Despite their lack

of merit, reviewing and responding to these pleadings has been a substantial burden in terms of

time, money and wasted resources.  Defendant reminds the court that this matter was initially

brought by Plaintiff in a jurisdiction in which neither party resides or has any business, in a state

Defendant does not recall ever entering in his life and for a purpose the court found to be

improper.  The initial filing was based entirely on an incident provoked by information and

statements made by Webb to Goodman, yet Webb has been conspicuously omitted from these

DEFENDANT'S OPPOSITION TO PLAINTIFF'S NOTICE OF AMENDED MOTION IN OPPOSITION TO
DEFENDANT'S COUNTERCLAIM PAPERS (DKT. 145) PURSUANT TO RULE 12{B)(6) FAILURE TO
STATE A CAUSE, OR, IN THE ALTERNATIVE, RULE 12(B)(L) LACK OF JURISDICTION - 5

actions.  Since that time, Plaintiff has seized upon a wide range of allegations, most having no

basis in fact whatsoever, to allege a cornucopia of claims, the overwhelming majority of which

have already been dismissed.

In direct response to the supplements allowed by Magistrate Aaron's most recent order

(ECF No 160): in paragraph 39 Plaintiff alleges defamatory and libelous statements have

damaged Plaintiff in his business, trade and profession.  However, in a video published on or

around October 21, 2020 titled *#SDNYORG Defango perks up over DoJ Google lawsuit

connections oooopppss* which Plaintiff has removed, in reference to his endless filing of lawsuits

Plaintiff stated "I sit around my RV all day, there's nothing to do, I'm not working, I've got the

drip, drip, drip of the retirement coming in, I've got all day to work on these things".  In direct

contrast to his pleading, Plaintiff clearly states he is retired and no longer engaged in whatever

profession he claims expertise in.  Defendant fails to see how alleged defamation could affect the

status of a military pension or whatever ongoing retirement payments Plaintiff receives.

Additionally, the juvenile, irresponsible and seemingly insane behavior Plaintiff voluntarily

engages in on a daily basis on YouTube, Twitter and his blog would be likely to cause any

professional in virutally any field to find the Plaintiff unfit for employment.  In presiding over

Giuffre v Dershowitz, the honorable Loretta Preska discussed the concept of an individuals'

reputation being so tarnished in the public, any further act of alleged libel or slander is moot.

Giuffre v. Dershowitz, 410 F. Supp. 3d 564, 574 n.3 (S.D.N.Y. 2019) ("You

argue at page 5 of your reply that if Ms. Maxwell's simple denials destroyed the plaintiff's

reputation, then Professor Dershowitz's worldwide rebuke, you say, destroyed her reputation

even more and now she's essentially libel proof. So is the rule to be taken from that that if you

blast them pretty well the first time you can keep blasting them?  Mr. Cooper: Well, you Honor, the answer to that question is yes. (Tr. 18:13-").  Far different in this case, Defendant did NOT engage in any defamatory statements or any public discussion at all pertaining to the Plaintiff until AFTER Plaintiff made numerous public statements about his own family history of mental illness and other depravity, effectively destroying his own public reputation and rendering himself "libel proof".  In a video Plaintiff has removed, but Defendant has preserved on Bitchute, https://www.bitchute.com/video/LLqDBTwyIIsD/ Plaintiff admits that his father was treated by the Veteran's Administration for schizophrenia and goes on to state his belief that his own brother George Webb Sweigert ("Webb") has experienced a "schizophrenic break" and has gone "over the edge".  In a truly bizarre statement, Plaintiff further states his belief that physical abuse from his now deceased father cured him "I seem to do better.  Maybe all the beatings I took, maybe that cured me." This and other public statements, including Webb's admission of sexual intercourse with Sweigert's wife, his own sister in law, demonstrate deep rooted and highly disturbing deviancy, and are surely far worse than any alleged statement by Defendant.  Later in paragraph 39 of the Supplemental Complaint, Plaintiff goes on to misrepresent facts, again in bad faith with the inclusion of a deliberately truncated email chain, which omits Plaintiff's instigating provocative statements.  The email was sent to more than twenty five recipients including various government agencies, the FBI and several attorneys general under the heading "*Re: Identity of person calling Dr. Fauci's home unlisted number may have been identified*" Sweigert includes only a portion of the email chain he initiated in an attempt to make Defendant appear to have done something he simply never did.  Defendant has never attempted to call White House Coronavirus Task Force member Anthony Fauci and is not affiliated with the

DEFENDANT'S OPPOSITION TO PLAINTIFF'S NOTICE OF AMENDED MOTION IN OPPOSITION TO
DEFENDANT'S COUNTERCLAIM PAPERS (DKT. 145) PURSUANT TO RULE 12(B)(6) FAILURE TO
STATE A CAUSE, OR, IN THE ALTERNATIVE, RULE 12(B)(L) LACK OF JURISDICTION - 7

individuals named in the email. In fact, in one of his own YouTube videos presented previously

in these pleadings in which he calls on individuals to take part in a "cyber militia" Sweigert

names the individual referred to in this email as Montegraph.

Furthermore, Sweigert omits his initial email which he CC'd to Defendant **(EXHIBT A)** for the

sole and specific purpose of agitating Defendant. This is a standard example of Plaintiff's modus

operandi. Typically, Plaintiff sends an inflammatory email including false allegations to scores

of law enforcement and other recipients and carbon copies the Defendant. In an effort to

counteract any of the intended negative effect, Defendant responds and then Plaintiff attempts to

fashion a cause of action in this legal matter based on the response. With regard to statements in

paragraph 39 pertaining to a handicapped, vulnerable individual, Goodman has no knowledge of

this. An unknown viewer of Goodman's show contacted Goodman unsolicited claiming to be a

former friend of Sweigert's. To the best of Goodman's recollection, the only information

conveyed was the first name Jimmy and the belief stated by the unknown individual that

Sweigert had abandoned his own son. This was alleged to be Sweigert's own statement to the

unknown individual. Statements pertaining to disability come from Sweigert himself and

Defendant has no knowledge of this. It is worth noting that Sweigert does not deny abandoning

this individual, despite having copious time to sit around his recreational vehicle suing Goodman

and engaging in extrajudicial harassment for more than three years rather than making any effort

to enrich the life of his abandoned, allegedly handicapped son. This furthers Defendant's belief

that Plaintiff is such a vile, despicable induvial who has admitted to his own subhuman behavior

in so many public statements it is impossible to further damage his reputation via alleged slander

or libel. Each of the highlighted quotations of the statement "deadbeat dad" come from Twitter

DEFENDANT'S OPPOSITION TO PLAINTIFF'S NOTICE OF AMENDED MOTION IN OPPOSITION TO
DEFENDANT'S COUNTERCLAIM PAPERS (DKT. 145) PURSUANT TO RULE 12{B}(6) FAILURE TO
STATE A CAUSE, OR, IN THE ALTERNATIVE, RULE 12(B)(L) LACK OF JURISDICTION - 8

threads in which Plaintiff has eliminated the portion of the post that would show how he inserted

himself into Defendant's Twitter postings to provide false information from his SDNY.INFO

blog to Goodman's large Autofuss over 35,000 Twitter followers. Searching for those posts now

yields no result causing Defendant to believe Plaintiff has now deleted them as well. Defendant

is repeatedly provoked in this manner in response to overt actions from Plaintiff and Plaintiff is

repeatedly, deliberately omitting these pertinent facts and evidence from his filings in this legal

matter. This is a deliberate attempt at deception by omission and in Defendant's view constitutes

fraud on the court. The very action of inserting these provocative tweets is, in and of itself

cyberstalking or at very least additional bad faith effort. Plaintiff's communications and

attention are not wanted. He hass been asked repeatedly to stop, yet he continues to provoke.

Despite Plaintiff's claims of "dozens" of twitter messages per day, Defendant cannot recall ever

initiating even one tweet that was not a direct response to a disparaging public tweet initiated by

Plaintiff. This is a child's game Plaintiff is attempting to play with the court and the Defendant.

40. To the best of Defendant's knowledge, none of the statements referenced were untrue. All

statements were either repetition of claims made by the Plaintiff himself, Plaintiff's own family

members or admitted former friends or statements of opinion formed from observing Plaintiff's

psychotic behavior.

41. Claims of wife swapping have been conveyed firsthand to Defendant by Plaintiff's brother

Webb. Although Defendant is unaware of a legal definition of "wife swapping" in this context it

refers to Webb copulating with Sweigert's wife as it was explained to Defendant. At the time of

the statement, Plaintiff did not deny the allegation and in fact made additional confirming

statements that caused the Defendant to believe the allegation to be true. The Cyber Stalking

claim is self-evident simply by observing the Plaintiff's maniacal obsession with producing videos, tweets and blog posts including false and defamatory statements about Defendant.  The statement "dead beat dad" is based on the allegation of child abandonment from Plaintiff's former friend, and Plaintiff has not denied abandoning his son, in fact, the former friend further stated that in a moment of intimacy, Plaintiff claimed that abandoning his own son was his greatest shame.  Despite this, Plaintiff prefers to spend his time, money and energy engaging in frivolous lawsuits intended to destroy Defendant financially, rather than using the remaining years of his life to attempt to rectify the shameful way in which he has treated his own son.  Further evidence of apparent psychopathic behavior is revealed in the Bitchute video referenced above in which Sweigert details his plan to destroy the medical career of his nephew, Joshua Sweigert although it is not made clear if this is retaliation for Joshua's father Webb having sexual intercourse with Sweigert's wife.

42. Defendant does not believe any of his statements to be false.  Furthermore, they were not made with the specific intent to harm Plaintiff despite the provoking tweets clear indent to harm Defendant.  They were merely meant to serve as a deterrent in an effort to get the Plaintiff to cease his unending harassment of Defendant.  Despite numerous requests and reports, the FBI and NYPD have failed to do anything.  Mount Shasta PD have failed to do anything.  This court has yet to issue any order that might stop Plaintiff form abusing the legal system so Defendant must rely on whatever civil means are at his disposal to defend himself and his public reputation on twitter.  Self-defense was the purpose of the responses, not the alleged malice.

43. Defendant has merely repeated public statements made by the Plaintiff himself, the Plaintiffs own family and the Plaintiff's former friend.  No evidence has been presented to indicate these statements are false and Defendant remains of the belief that the statements are true.

44. Defendant has no reason to believe the statements are false.  Defendant was reiterating statements that exist in the public domain and was doing so to discourage further false, defamatory and disruptive statements coming from the Plaintiff.  This was an act of self-defense online and pursuant to the unclean hands doctrine Plaintiff has no legitimate claim.  Goodman has no knowledge of Search Engine Optimization or how to do it and to the best of his knowledge has never engaged in this activity even in the promotion of his own business let alone for any purpose aimed at Plaintiff.  Plaintiff's claim that Goodman's effort in this regard has impacted his ability to market his professional services is contradicted by Plaintiff's own statement that he is sitting around all day in his RV collecting retirement payments and doing nothing but preparing lawsuits.

45. To the best of Defendant's knowledge the statements are true and are merely republications of prior public statements made either by Plaintiff, Plaintiff's family members or close associates of the Plaintiff.

47. Defendant has only used portions of images the Plaintiff has voluntarily published in the public domain.  Furthermore, as a limited purpose public figure who makes blog posts, public tweets and YouTube videos which he claims are "counter speech" challenging Defendant's first amendment protected statements, Plaintiff has thrust himself into the public discourse and as such, has opened himself to criticism and commentary in precisely the same manner he alleges Defendant has.  The images in question have been substantially altered in a transformative way

and used in parody "political cartoons". Defendant's artform is digital photography. Despite the photo realistic nature of Defendant's political cartoons, they are specifically protected by section 107 of the copyright act as parody. This is another aspect of Defendant's work the Plaintiff has repeatedly attacked and another factor that causes Defendant to believe Plaintiff played some role in alerting the National Academy of Television Arts and Sciences of the alleged copyright infringement of the EMMY image. Parody images of Plaintiff are used for the purpose of criticism and commentary on the Plaintiff's statements and actions in the public domain. For these reasons, Defendant does not require Plaintiff's permission to use them and the new images derived from them are Defendant's intellectual property to do with as he chooses, including commercialization and sale of the images.

48. To reiterate, Defendant was totally unaware of Plaintiff before Plaintiff began his now years long vendetta against Defendant. His persistence and obsessive dedication to continuing, even while ignoring his own son, is in and of itself newsworthy. It remains an open question why Plaintiff would be so pathologically dedicated to wrongfully disrupting Defendant. Defendant regularly features well known public figures on his broadcasts including congressional candidates, sitting senators, captains of industry, legal experts, well known journalists, authors and more. There is absolutely no need, and no commercial value in specifically including Plaintiff in any broadcast. Rather, his behavior represents a class of individual, a social engineer, who attempts to use social media to shape public opinion. To the extent Plaintiff engages in that activity in the course of his efforts to antagonize the Defendant, his activities are newsworthy, and this is the reason he is included in any broadcast by Defendant.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S NOTICE OF AMENDED MOTION IN OPPOSITION TO
DEFENDANT'S COUNTERCLAIM PAPERS (DKT. 145) PURSUANT TO RULE 12(B)(6) FAILURE TO
STATE A CAUSE, OR, IN THE ALTERNATIVE, RULE 12(B)(L) LACK OF JURISDICTION - 12

49. Sweigert's ongoing and deliberate disruption of Defendant's business and general activates is so overt, his persistence so abnormal, the activity is in and of itself newsworthy.  Sweigert is as much a limited purpose public figure as Defendant Goodman in that they both engage in similar activity, publishing news, opinion and editorial via social media.  To the extent the Plaintiff has a right to publish posts about Defendant, Defendant has the same right to respond in kind.

## OVERT AND DANGEROUS LIBEL BY PLAINTIFF

As stated repeatedly throughout these pleadings, Plaintiff has gone to extraordinary lengths both in his litigation against Defendant and his extreme extrajudicial efforts to inflict damage on the Defendant in any way he can.  Perhaps the most egregious recent effort was a blatant false publication on Plaintiff's SDNY.INFO blog, clearly intended to paint Defendant as a racist and encourage public hatred and violence against him.  On or around September 17, 2020 Goodman conducted a live broadcast during which he attempted to interview individuals participating in what appeared to be an unlawful assembly.  Unlike legitimate protests or rallies, no NYPD personnel were present.  When Goodman attempted to ask some of the participants if the event was a permitted protest and if so, why the NYPD were not present, Goodman was physically assaulted by a group of four to five mostly white males.  Goodman was intimidated, pushed, struck and some of his property was destroyed.  After the encounter, Goodman commented to his audience "that's why the cops shoot, ok."  Goodman's statement was devoid of any racial undertones and was intended to convey the sense of fear and danger that a crowd of individuals intent on doing violence could rapidly foment, and how such encounters with police officers might be met with deadly force.  The entire unedited video remains online on Goodman's YouTube channel where the court could review the exact words spoken by Goodman.  This link

DEFENDANT'S OPPOSITION TO PLAINTIFF'S NOTICE OF AMENDED MOTION IN OPPOSITION TO DEFENDANT'S COUNTERCLAIM PAPERS (DKT. 145) PURSUANT TO RULE 12{B)(6) FAILURE TO STATE A CAUSE, OR, IN THE ALTERNATIVE, RULE 12(B)(L) LACK OF JURISDICTION - 13

begins the video at precisely 51 minutes 41 seconds where the statement in question is made

https://youtu.be/HOQyXNjJI6g?t=3101 Seizing on this almost immediately, Sweigert created a

blog post on his character assassination smear campaign web site SDNY.INFO which featured

the headline *Lawfare Guru Jason Goodman Involved in Street Fracas with BLM "This is why*

*police shoot... (them)"*.  By putting this statement in quotation marks in the headline, Plaintiff

attributed it to Goodman.  By making BLM the subject of the headline, Sweigert intentionally

causes his readers to believe that Goodman wanted NYPD to shoot BLM.  Plaintiff went even

further in his effort to incite hatred and violence against the Defendant by superimposing an

image of Goodman over an extremely tall, heavyset black male who was among the four or five

assailants in the video, but didn't actually engage with Goodman during the incident.  After three

years of broadcasting, Goodman is indeed a limited purpose public figure who is periodically

recognized on the streets of Manhattan and elsewhere.  By publishing this false statement,

Goodman believes Sweigert intended to cause a member of the public to take violent retaliatory

action against Goodman. In today's racially charged climate, with law enforcement under

unprecedented pressure, this deliberate effort by Sweigert represents perhaps the most overt and

dangerous act so far in Plaintiff's constantly expanding harassment, defamation and slander

campaign.  In further evidence of intent, Sweigert first altered the headline, then removed the

post entirely demonstrating intent to destroy the evidence of his wrongful act.  To the extent that

the court can take action against Sweigert to prevent him from carrying on with such actions,

Defendant prays the court will.  Sweigert has deleted the blog post to the best of Goodman's

knowledge, but not before Goodman printed it out **(EXHIBIT B)**.  Plaintiff's regular practice of

removing, altering or destroying evidence is further evidence of bad faith and another reason

why any additional motion should be denied, and this matter should be dismissed with prejudice.

Goodman presented this printed evidence to NYPD's 10th precinct and officers there declined to

take action.  Goodman prays the court will take action now, BEFORE Sweigert's outrageous

behavior results in damage Goodman may not recover from.  More than any preceding action,

this malicious libel demonstrates that Sweigert is a menace to the public and anyone he doesn't

like, a potential danger to himself and those around him and a perpetual drain on the U.S. District

Court system.  His insidious behavior is deliberate and methodical, and it is Defendant's belief

he has displayed overt psychopathic tendencies.  Defendant prays the court will take immediate

action to curtail Sweigert's ability to engage in these actions by denying any further motions,

dismissing this matter with prejudice and declaring Sweigert a vexatious litigant.


Signed this 29th day of October 2020

Jason Goodman, Defendant, Pro Se
252 7th Avenue Apt 6s
New York, NY 10001
(323) 744-7594
truth@crowdsourcethetruth.org

DEFENDANT'S OPPOSITION TO PLAINTIFF'S NOTICE OF AMENDED MOTION IN OPPOSITION TO
DEFENDANT'S COUNTERCLAIM PAPERS (DKT. 145) PURSUANT TO RULE 12(B)(6) FAILURE TO
STATE A CAUSE, OR, IN THE ALTERNATIVE, RULE 12(B)(L) LACK OF JURISDICTION - 15

**(EXHIBIT A)**

From: **Spoliation Notice** spoliation-notice@mailbox.org 
Subject: Re: Identity of person calling Dr. Fauci's home unlisted number may have been identified
Date: March 30, 2020 at 10:54 AM
To: clane@niaid.nih.gov, hauguelt@niaid.nih.gov, deaweb@niaid.nih.gov, rpurcell@niaid.nih.gov, niaidtraining@nih.gov,
LL153p@nih.gov, NIAIDSBIR@mail.nih.gov, Annie.grimes@nih.gov, anthony.fauci@nih.gov, Spoliation Notice
spoliation-notice@mailbox.org
Cc: Brittany.Custer@ic.fbi.gov, nyspmail@troopers.ny.gov, legal@patreon.com, colin@patreon.com, txjcic@dps.texas.gov,
tip@dps.texas.gov, tcic@dps.texas.gov, crimestatsinfo@ic.fbi.gov, NICS@ic.fbi.gov, nicc nicc@hq.dhs.gov, iso@ic.fbi.gov,
nysag@ag.ny.gov, truth@crowdsourcethetruth.org, jason@21stcentury3d.com, jasongoodman72@protonmail.com

To: Jason Goodman

I have observed your recent comment to a YouTube video (attached).

This message makes certain parties aware that you are an alleged associate of the subject of the article "MONTEGRAPH" (see web page 1 below).

Apparently you have made telephone calls to Dr. Tammy Parry via the use of an alleged unlisted number. Social media rumors indicate you obtained this phone number from "MONTEGRAPH" (see web page 2 below).

https://sdny.news/2020/03/29/new-york-city-braces-for-covid-19-black-death-mass-die-off-with-45-refrigerator-truck-trailers-to-store-3600-corpses/

https://sdny.news/2020/03/18/jason-goodman-films-patients-at-nycs-presbyterian-hospital-while-accused-by-montana-physician-of-obtaining-private-telephone-number-to-interfere-with-patient-care/

D. George Sweigert
Evidence Collection Team

**Jason Goodman** 51 minutes ago

I thought you were an EMT, if this is a national emergency shouldn't you be occupied driving around saving people rather than making insane videos about how you miss sleeping in dog excrement where your father who obviously knew your true value yo made you sleep

     REPLY

**(EXHIBIT B)**

9/19/2020

Lawfare guru Jason Goodman involved in street fracas with BLM - "This is why police shoot ...(them)"



SDNY.ORG
Jason Goodman George Webb Cyber
Stalking Alt-Right DEFANGO Robert
David Steele Larry Klayman

All Posts

#SDNYORG 🐦   a day ago   2 min read

## Lawfare guru Jason Goodman involved in street fracas with BLM - "This is why police shoot ...(them)"

Updated: an hour ago





**Above:  Jason "LawFare" Goodman has now taken on the John F. Kennedy assassination as part of his "lawfare" victimization fund.**

Lawfare guru Jason Goodman involved in street fracas with BLM - "This is why police shoot ...(them)"



**Above:  Previous apparent "altercation" between conspiracy theorist Jason Goodman and BLM supporters (faces whited out to protect privacy).**

https://twitter.com/HoaxWars/status/1269811266698096641

https://twitter.com/HoaxWars/status/1275183864843927552

**Click below for copy of latest lawsuit summons**

show_temp--summons.pdf
Download PDF · 94KB

you must serve on the plaintiff an answer to the attached complaint or a motion und
Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's
dress are:

Samuel V. Eichner (SDNY Bar No. SE1967)
Margaret Esquenet (pro hac vice to be filed)
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Avenue NW Washington, DC 20001

# FINNEGAN

Blogs ᵛ

OUR INSIGHTS
## INCONTESTABLE® Blog

Finnegan's INCONTESTABLE® Blog provides news and information about essential decisions
key developments and evolving trends in trademark, copyright, and advertising law.

Margaret A. Esquenet
Partner
Washington, DC

## JASON GOODMAN AND TISH JAMES



**Above:  In a recent podcast Jason Goodman and side-kick Alex Jones allegedly "targeted" Tish James**

Recent Posts    **Above:  Jason Goodman (l) with Roger Stone (c) and unidentified Trump well wisher (r)**    See All

**E-BEGGING UPDATE: Charles Ortel drags in Judge Jeanine to boost ...**

👁 97   Write a comment   3 ♡

**ROGER STONE FALLOUT: Jason Goodman side-kicks distance...**

👁 349   Write a comment   a ♡

**Jason Goodman takes to e-begging to raise EMMY lawsuit...**

👁 91   Write a comment   3 ♡

Copyright Disclaimer under section 107 of the Copyright Act 1976, allowance is made...

Log in to leave a comment.

f   🐦   in   🔗

58 views    3 ♡





**Defendant**
**Jason Goodman**

represented by **Jason Goodman**
                  252 7th Ave. #6s
                  New York, NY 10001
                  323-744-7594
                  PRO SE

"CrowdSource The Truth" is the pro-Trump conspiracy theory social media empire built up by Goodman (who allegedly shut down the Port of Charleston on June 14, 2017 with some kind of "dirty bomb hoax" incident).  See libel cases presided over by Judge Valerie E. Caproni, S.D.N.Y. (libel case no. 1 = Port of Charleston, libel case no. 2 = EMMY Awards).

Click below for latest ORDER of Hon. Valerie E. Caproni which links the two libel lawsuits in the S.D.N.Y.

 sweigert-v.-goodman-doc-154-916-2020.pdf          ⬇
                    Download PDF • 196KB

"CrowdSource the Truth" is currently being sued by the EMMY Awards for libel concerning Goodman's assertions that the CEO of the awards program may be part of a "C.I.A. mockingbird" operation (libel case no. 2).

Lawfare guru Jason Goodman involved in street fracas with BLM – "This is why police shoot ...(them)"

*10 pct*

*212*
*741*
*8245*



Above:  Jason Goodman appears to be in a scuffle with a "black" man on the streets of Lower Manhattan as he apparently intruded into a Black Lives Matter march.

## OPINION AND EDITORIAL

Lawfare guru Jason Goodman, personal defendant in two libel lawsuits, of "CrowdSource The Truth", organizational defendant in another libel lawsuit, apparently got into a shoving and pushing altercation with the alleged "President" of Black Lives Matter New York.

Goodman stumbled into the supposed altercation while on a social media podcast livestream discussing the three lawsuits he is involved in.  He used the opportunity to threaten assault charges against the people he met on the sidewalk.



This is allegedly the latest dust-up between Goodman and people of color on the sidewalks of New York City (Lower Manhattan).

Goodman, who lives in a swanky upscale apartment that has been listed in his official court documents, often ventures out apparently to insert himself into Black Lives Matter (BLM) protests.

PRESS FIRMLY TO SEAL

**PRIORITY MAIL EXPRESS**
**POSTAGE REQUIRED**

# PRIORITY
## ★ MAIL ★
# EXPRESS™

**OUR FASTEST SERVICE IN THE U.S.**

Jason Goodman
252 7th Ave #6S
10001
NYC

## FOR DOMESTIC AND INTERNATIONAL USE
### PLACE MAILING LABEL HERE

Pro Se intake
500 Pearl St
NY NY 10007

📅 **GUARANTEED DELIVERY DATE** *

🕐 **GUARANTEED DELIVERY TIME** ‡

📶 **USPS TRACKING™ INCLUDED**

$ **INSURANCE INCLUDED**

🚚 **PICKUP AVAILABLE**

✒ **SIGNATURE INCLUDED UPON REQUEST**

**WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.**





**≡ EMS**

**EP13F July 2013   OD: 12.5 x 9.5**

* **Money Back Guarantee to U.S., select APO/FPO/DPO, and select International
destinations. See DMM and IMM at pe.usps.com for complete details.**
‡ **Money Back Guarantee for U.S. destinations only.**

P S 1 0 0 0 1 0 0 0 0 0 6

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE

  
**UNITED STATES
POSTAL SERVICE.**

This envelope is made from post-consumer waste. Please recycle – again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; July 2013. All rights reserved.