U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY PRO SE OFFICE
2020 NOV -4  AM 10: 20

| SWEIGERT | CIVIL CASE #: |
| --- | --- |
| V. | 1:18-CV-08653-VEC |
| GOODMAN | JUDGE VALERIE E. CAPRONI |

## PLAINTIFF'S REPLY BRIEF
## TO DEFENDANT'S OPPOSITION (Dkt. 161)

**MAY IT PLEASE THE COURT:**

This is a **REPLY BRIEF** wwhich is responsive to Defendant's opposition **(Dkt. 161)**.

Pursuant to **Magistrate Aaron's ORDER** (Dkt. 158) this REPLY is served within fourteen (14) days of the Defendant's opposition papers (Dkt. 161).

A certificate of service is included on the last page of this document. So sworn under oath.

Signed this 31 day of October 2020.

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

D.G. Swgt

10.31.20

1

## MEMORANDUM OF LAW

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... 2

TABLE OF AUTHORITIES ............................................................................................. 3

PROCEDURAL HISTORY ............................................................................................... 4

STATEMENT OF FACTS ................................................................................................. 5

LAW AND ARGUMENT ................................................................................................ 10

CERTIFICATE OF SERVICE ........................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*Beverley v. WOMEN'S MED CTR.*, 78 NY 2d 745 – NY: Court of Appeals 1991 ...................... 15

Davis v. High Soc. Mag., 90 AD 2d 374 – NY: Appellate Div., 2nd Dept. 1982 ........................ 15

*Gladden v. City of N.Y.*, 12 Civ. 7822 (PKC) (S.D.N.Y. Aug. 29, 2013) ..................................... 13

*Goonewardena v. New York*, 475 F. Supp. 2d 310 (S.D.N.Y. 2007) ........................................... 13

*Metzger v. Dell Pub. Co.*, 207 Misc. 182 – NY: Supreme Court, New York 1955 ...................... 14

*Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008) .......................................................... 13

Sidis v. FR Pub. Corporation, 113 F. 2d 806 – Circuit Court of Appeals, 2nd Circuit 19 ........... 12

*The National Academy of Television Arts and Sciences, Inc., et al. v. Multimedia Systems Design, Inc.*, 20-CV-7269 ..................................................................................................................... 4

*Thompson v. Close-Up, Inc.*, 277 AD 848 – NY: Appellate Div., 1st Dept. 1950 ....................... 14

**Statutes**

Civil Rights Law §§ 50 or 51 ....................................................................................................... 14

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 13

Fed. R. Civ. Proc. Rule 12(b) ....................................................................................................... 10

## PROCEDURAL HISTORY

By ORDER of 08/02/2020 (Dkt. 140) the Defendant permitted to file a COUNTERCLAIM against the Plaintiff (his third). On 09/01/2020 Defendant filed his COUNTERCLAIM papers (Dkt. 145). Plaintiff filed an amended motion to dismiss the COUNTERCLAM on 09/10/2020 (Dkt. 151). This is the issue before the Court.

By ORDER dated 10/08/2020 (Dkt 158) the Defendant (Goodman) was instructed to file any opposition to the Plaintiff's motion to dismiss (Dkt. 151) on or before 10/29/2020. The Defendant has filed his papers (Dkt. 161) a day late on 10/30/2020 (see Clerk stamp and Priority Mail envelope on last page of the Defendant's papers). The Defendant has apparently failed to meet this deadline.

For background Defendant Goodman is the acting "C.E.O." of "Multimedia Systems Design, Inc.", which is named in related litigation (see *The National Academy of Television Arts and Sciences, Inc., et al. v. Multimedia Systems Design, Inc.*, 20-CV-7269, Hon. Valerie E. Caproni presiding).

## BACKGROUND STATEMENT

Defendant Jason Goodman operates a commercial enterprise using advertisement in disguise. While smearing his victims, the Defendant profits from the many lawsuits that he has brought upon himself. Like racketeering, this conduct is open-ended and non-stop.

The Defendant's newest social media podcast thrust is "COUNTER LAWFARE", an initiative to breathe life into his stale interviews of Internet lunatics that believe they can issue indictments against government officials. Now the Defendant has teamed with Alex Jones of the conspiracy brand INFOWARS to seek financial contributions for legal fees to defend against "lawfare".

4

The Defendant cites this very lawsuit as an example of "LAWFARE", litigation pushed by operatives of the "deep-state" that are trying to silence his "journalistic endeavors".

The Defendant, as recently as October 24, 2020, has published "Judas goat" videos to intentional challenge litigants to supplement pleadings because of the Defendant's continuous tortious behavior. Some prudent social media companies, like Facebook, have kicked the Defendant and his company brand off their platforms. The Court should note their wisdom.

## STATEMENT OF FACTS

1. At the onset it is instructive for the Court to take note of the Defendant's latest video podcast content, disseminated in a widely distributed manner, in which the Defendant labels the undersigned *pro se* Plaintiff as a *"f_cking sh_thead."* The video is entitled, *"Why Are Social Engineers Connected to the Sweigert Brothers Obsessed with Me & Everything I Do?"*, dated 10/24/2020, seen by over 6,600 "viewers" on just one (1 of 13) outlet. Total exposures are estimated at 14,000 impressions.

2. These *"f_cking sh_thead"* comments were prompted by the Defendant's podcast phone call questioning a former "CROWDSOURCE THE TRUTH" (CSTT) guest – pianist player Ari Friedman -- as to why that guest called the Plaintiff's brother (George Webb) two weeks prior to a CSTT interview. This situation discussed in the podcast has nothing to do with the Plaintiff. Zero connection. Nonetheless the Defendant once again involves the Plaintiff in his conspiracy theory conflation.



Why Are Social Engineers Connected to the Swelgert Brothers Obsessed with Me & Everything I Do?
6,863 views • Streamed live on Oct 24, 2020



Glass Can 1st

Jason Goodman: please share this, very important update to the last video

Pam Ronning Thanks for another show Jason

Jason Goodman: this will be a short one, I'm extremely pissed off

Jason Goodman: more liars and tricksters, it never ends

Chestina Gloyna Oh wow

Teresa Laubinger What's happening now @Jason Goodman??

Pam Ronning He was a bit sketchy never completed a thought

Jason Goodman: this is Ari Friedman, the guy who presented himself as Harry Bacharach for the previous video

Jason Goodman: he's a social engineer working with George Webb and his crew of idiots

3. As seen above in the Defendant's podcast "chat" comments (that accompany the video), the Defendant asks his audience to *"please share this, very important update to the last video"* and *"he (Ari) is a social engineer working with George Webb and his crew of idiots."*. The implication in the video is that the Plaintiff is somehow associated with George Webb, a claim that has been denied over and over under penalties perjury in this and other federal courts.

6

4. Defendant goes on to state that he thought he would be able to obtain sensitive and embarrassing information on the Plaintiff via an individual with "*inside family knowledge*" (see below).



5. The Defendant alludes to this person ("*family knowledge*") several times in his answering papers (Dkt. 161). This person is **Miss Coreen Elizabeth Stoughton** of Hanover, Maryland, the former girl friend of George Webb in Maryland (during a 14-month romance). Miss Stoughton was active on social media as "**DEEP NSA**" and made dozens of social media postings with George Webb (Sweigert) in Maryland. Again, this has nothing to do with the Plaintiff. Miss Stoughton is expected to be called as a witness to verify that the Plaintiff has no association with George Webb – no matter how many times Defendant states this as fact.



7

6. As seen above, the Defendant has formed a new alliance with the conspiracy theorist Alex Jones, whose INFOWARS brand has been de-platformed (kicked-off) from YouTube, Facebook, Twitter, etc. Both celebrities are promoting their victimhood under the "lawfare" of the Plaintiff and other litigants that are suing Alex Jones.

7. The Defendant now markets a variety of financial donations from $100 to $1,000 to help the Defendant defend himself from "lawfare" litigation, such as this instant lawsuit and the related NATAS litigation (presiding judge Hon. Valerie E. Caproni). Both Mr. Jones and the Defendant have engaged in the commercial solicitation of funds to support their "*counter lawfare*" project on their respective forums.





8. The above screen shot from CROWDSOURCETHETRUTH.COM showcases the opportunity to donate funds to defend against "*lawfare*" with "*counter lawfare*". The Defendant appears to believe that making affirmative tortious attacks of his enemies is justifiable under his "*counter lawfare*" doctrine. An example is the 10/24/2020 "*f_cking sh_thead*" video.

9. While walking to the U.S. Courthouse to docket pleadings on September 30, 2020, the Defendant took the time to record another "counter lawfare" video that features the Plaintiff. The video is entitled, "*Open Lawfare with the SDNY Court Jester*" (see below).



10. In the above cited video, the Defendant can be heard several times speaking to the issue of *"lawfare"* and the need for viewers to contribute to the new lawfare fund. "I need the support of the viewers and the audience…," the Defendant pleads. In sum, the Defendant rehashes allegations about "scum bags" that are attacking him and the need for legal defense funds.

## LAW AND ARGUMENT

### *Defendant squanders his opportunity for meaningful opposition*

11. As a threshold manner Defendant's "arguments" must be rejected, for policy reasons, as Defendant's pleading papers only continue the smear campaign against the Plaintiff, offering no supporting legal rationale.

12. By ORDER dated 10/08/2020 (Dkt 158) the Defendant was instructed to file any opposition to the Plaintiff's motion to dismiss (Dkt. 151) on or before 10/29/2020. The Defendant was afforded an opportunity to defend his claims proffered in his COUNTERCLAIM papers (Dkt. 145) against the Plaintiff's motion to dismiss (Dkt. 151). He has failed to do that.

13. Rather than arguing that the Plaintiff has failed to meet the standards of applicable rules (Fed. R. Civ. Proc. Rule 12(b) ) Defendant has launched into another round of unfounded and baseless recriminations against the Plaintiff's character.

14. In this regard the bulk of Defendant papers (Dkt. 161) seem to be attacking the Plaintiff's supplemental complaint which has already been approved of by this Court (Dkt. 160). The Magistrate ordered that the operative complaint (Dkt. 88) was to be supplemented by *"paragraphs 1, 39 through 45 and 47 through 50"*. Defendant acknowledges this order on page 6 (Dkt. 161). This issue is settled.

15. For some reason, the Defendant discusses the adulterous one-night stand of the Plaintiff's brother with Plaintiff's wife. *"This and other public statements, including Webb's admission of*

10

*sexual intercourse with Sweigert's wife, his own sister in law, demonstrate deep rooted and highly disturbing deviancy...*" (pg. 7). See para. 41 for "*wife swapping*", "*psychopathic behavior*", "*child abandonment*", etc. (again quoting George Webb's ex-girl friend **Ms. Corean Elizabeth Stoughton** of Hanover, Maryland aka "**DEEP NSA**").

16.     In para. 47, Defendant once again alleges the Plaintiff is somehow connected with "*alerting the National Academy of Television Arts and Sciences*" (NATAS), see related lawsuit (Hon. Valerie E. Caproni presiding). In para. 48 Plaintiff is called a "*social engineer*", etc.

17.     Defendant advises this Court that he believes there is some kind of "*dead drop*" of information exchange between the Plaintiff and unknown parties and quotes Wikipedia espionage tradecraft (pg. 5). Defendant expounds on the initial filing of this action in South Carolina (pg. 5). Defendant states Plaintiff should attend to his "..*abandoned allegedly handicapped son*" (pg. 8). Defendant again pushes the smear "*deadbeat dad*" (pg. 9). Defendant pushes allegations of "*schizophrenia*" (pg. 7), and "*endless filing of lawsuits*" (pg. 6), even though this instant lawsuit is the only action filed by the undersigned for nearly a decade.

18.     Defendant is fond of using the phrase "*overwhelm Goodman with litigation*" (pg. 4), which is a reference to e-mail messages exchanged by Manuel Chavez, III of Carson City, Nevada which have nothing to do with the Plaintiff. "*It is apparent even in this matter that Sweigert is flooding the docket with frivolous filings...*". Ironically, long stretches of time have occurred between the filing of Court documents. Time between Dkt. 139 and 140 is 146 days.

19.     Defendant posits that the "*sheer volume of pleadings .. despite their lack of merit ... has been a substantial burden in terms of time, money and wasted resources*" (pg. 5); but, no explanation is given as to what money has been wasted, the cost, supposed hours reviewing - pleadings or other quantifiable terms. This appears to be another vague and ambiguous

11

conclusory statement. It is difficult to imagine the Defendant has invested any time in his pleadings apart from autobiographical complaints and grievances.

20.   For the record, Defendant's statement that he had not heard of the Plaintiff before June 15th, 2017 (pg. 2) is a falsehood, or a "lie" (in layman's parlance); see para. 48.  Defendant discussed the undersigned in widely disseminated video podcasts with George Webb on June 13th and 14th (2017) for approximately 20 minutes on each occasion.

21.   It is also instructive to note that Defendant has reported Plaintiff to the Federal Bureau of Investigation and New York Police Department (twice) who have taken no actions – whatsoever (which in or itself would support a malicious prosecution claim).  See Exhibit B.

22.   Defendant also complains about blog entries of his involvement in confronting members of a Black Lives Matter (BLM) protest on a Manhattan Street.  In the subject podcast video, the Defendant crossed the street to inject himself into the street fracas and challenged the supposed "security detail" of the BLM parade (pg. 14).

23.   As if to impress the Court, the Defendant lists his podcast guests as *"congressional candidates, sitting senators, captains of industry, legal experts"*, etc. (pg. 12).  The Defendant neglects to include felons with firearms convictions (Michael Barden), homeless car dwellers threatening their children (Quinn Michaels aka Korey Atkin), convicted felons who (while armed) attempted to breach security at the U.S. Special Operations Command, MacDill AFB, Tampa, Florida (Scott Allan Bennett), Wall Street psychics (Marcus Conte) who conduct Satanic ritual podcasts, women awaiting perjury trials (Queen Tut aka Susan Holmes), attorneys under bar suspension (Larry Klayman), former avowed hit-men (Larry Nichols) etc.

24.   Defendant concludes that the Plaintiff's *"insidious behavior is deliberate and methodical, and it is the Defendant's belief he has displayed overt psychopathic tendencies..."* (pg. 15).

Note: Personal ill-will is not an element of any of these supposed offences, any more than in an ordinary case of trespass to person or to property (*Sidis v. FR Pub. Corporation*, 113 F. 2d 806 – Circuit Court of Appeals, 2nd Circuit 19).

25. These foregoing conclusory statements and baseless opinions do not appear to provide any legal rationale or argument for this Court to consider.

## *Defendant's Reply Papers Assert No Valid Basis to Deny Motion to Dismiss Counterclaim*

26. The Defendants pleading papers – like the COUNTERCLAIM – only offer naked assertions and conclusory statements. This Court cannot make a determination to deny the Plaintiff's motion to dismiss with so little relevant material to work with.

27. Generally, when considering a motion to dismiss, pursuant to Fed. R. Civ. P. Rule 12(b)(6), <u>non-conclusory allegations</u> in the complaint are deemed true. See *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). [emphasis added]

28. The COUNTERCLAIM (Dkt. 145) and answering papers (Dkt. 161) proffer only a few <u>non-conclusory allegations</u>, which could possibly be accepted as true by this Court. "In considering a Rule 12(b)(6) motion, <u>all non-conclusory factual allegations</u> are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. See In re *Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam)". *Gladden v. City of N.Y.*, 12 Civ. 7822 (PKC) (S.D.N.Y. Aug. 29, 2013) [emphasis added]

29. ""[C]onclusory allegations are insufficient to withstand a motion to dismiss." See *Giaccio v. City of New York*, 2005 WL 95733, *5, (S.D.N.Y. Jan. 19, 2005) (citing *Straker v.

13

*Metro. Transit Auth.,* 333 F.Supp.2d 91, 102 (E.D.N.Y. 2004)," *Goonewardena v. New York,* 475 F. Supp. 2d 310 (S.D.N.Y. 2007).

### *Defendant Does Not Deny Commercial Exploitation of Plaintiff's Likeness*

30. To amplify the affirmative defenses that are contained in the motion to dismiss (Dkt. 151), the Defendant admits to the commercial exploitation of the Plaintiff's likeness and image. For example, " *Sweigert's ongoing and deliberate disruption of Defendant's* **business** …" (pg. 13).

31. In the same manner the Defendant has abused imagery of NATAS, leading to a related lawsuit, the Defendant claims he can use the Plaintiff's image in "*political cartoons*" for parody. "*Defendant's art form is digital photography,*" (pg. 12). Defendant claims privilege under "*section 107 of the copyright act as parody*".

32. The issues here are not related to copyrights, but the unauthorized use of an individual's likeness, name, image, characteristics, etc. in a commercial setting (advertisement in disguise),

33. The Court will recall that the Plaintiff's likeness is used in conjunction with reprehensible characterizations, such as: "*wife swapper*", "*dead beat dad*", "*stalker*", "*schizophrenic*", "*social engineer*", "*abandoned special needs child*", etc. In *Thompson v. Close-Up, Inc.,* 277 AD 848 – NY: Appellate Div., 1st Dept. 1950, a publication of a photograph did not fall within exceptions to Civil Rights Law §§ 50 or 51 where plaintiffs had no connection to dope peddling, which was the subject of defendant's article.

34. Similarly, in *Metzger v. Dell Pub. Co.,* 207 Misc. 182 – NY: Supreme Court, New York 1955, plaintiffs succeeded on an allegation of unauthorized use of their portrait for the purposes of trade, where they were photographed by defendant's while standing on the street in Brooklyn. The picture was one of several taken and which were used as "local color" in connection with a

14

story, entitled "Gang-Boy," published in defendant's magazine. The photograph did not identify plaintiffs by name. However, The court ruled it an invasion of privacy, saying: "the fact that it is legitimate to discuss the existence of gangs and gangsters does not make it legitimate to drag these plaintiffs into the discussion."

35.     The Court will recall that the CSTT podcasts are nothing more than commercial solicitations to encourage viewers to become paid subscribers on the PATREON and SubcsribeStar pay-wall credit card processing services. Use for "advertising purposes" is defined as solicitation for patronage, intended to promote the sale of some collateral commodity or service (*Davis v. High Soc. Mag.*, 90 AD 2d 374 – NY: Appellate Div., 2nd Dept. 1982).

36.     An advertisement in disguise constitutes commercial use. The newsworthy and public concern exemption does not apply where the unauthorized images appear in the media under the guise of news items, when its sole purpose is to promote sales. See for example, *Beverley v. WOMEN'S MED CTR.*, 78 NY 2d 745 – NY: Court of Appeals 1991 (the producer and distributor of a calendar with a picture of the plaintiff used to promote defendant's medical center were not entitled to First Amendment protection on the basis of newsworthiness or public concern around theme of women's progress, where the calendar was clearly designed to advertise the medical center).

## CONCLUSION

The Defendant profits from the open-ended smearing of the Plaintiff as a new character in the CSTT "*counter lawfare*" soap opera. The Defendant continues to be compensated richly by soliciting contributions to his legal defense fund. The Defendant continues to engage in continuous tortious behavior to prolong this lawsuit with the predicted reaction of more

pleadings to supplement the record. The Defendant is not financially harmed by any of this activity, to the contrary, he enjoys and profits from it.

The Defendant's tardy pleading papers do not defeat the Plaintiff's motion to dismiss. Rather they reveal the true motives of the Defendant to drag these proceedings on with continuous open-ended social media smears. This Court, in the exercise of judicial economy, should ignore these pleading papers filled with conclusory, ambiguous, and vague complaints and insinuations. Apart from the name calling and insulting slurs about "wife swapping", the Defendant offers no legal arguments to justify his positions, except for "section 107 of the copyright law".

*D.G. Sgt /*
**D. G. SWEIGERT, C/O**
**GENERAL DELIVERY**
**ROUGH AND READY, CA 95975**

10.31.20

**CERTIFICATE OF SERVICE**

I HEREBY ATTEST that a true copy of the attached pleadings has been sent to the following addressees on the **31** day of October via prepaid First Class U.S. Mail. So sworn under oath.

Jason Goodman, CEO
Multimedia Systems Design, Inc.
252 7th Avenue, Apart. #6S
New York, NY 10001

PRO SE OFFICE, #200
U.S. District Court
500 Pearl Street
New York, New York 10007-1312

*D.G.S⤴*

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

**FROM:**
D. G. SWEIGERT, C/O
GENERAL DELIVERY
ROUGH AND READY, CA 95975
Spoliation-notice@mailbox.org

**TO:**
PRO SE OFFICE, #200
U.S. District Court
500 Pearl Street
New York, New York 10007-1312

Pro SE #200

10007

SDNY PRO SE OFFICE
2020 NOV -4 AM 9:55

PRIORITY MAIL 2-DAY®
0 Lb 4.30 Oz
1022
C014
EXPECTED DELIVERY DAY: 11/03/20
SHIP TO: 500 PEARL ST
New York NY 10007-1316
USPS TRACKING® NUMBER
9505 5145 2396 0305 3439 92