**U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

RECEIVED
SDNY PRO SE OFFICE
2020 NOV 19  PM 3: 09

| SWEIGERT | CIVIL CASE #: |
|---|---|
| V. | 1:18-CV-08653-VEC |
| GOODMAN | JUDGE VALERIE E. CAPRONI |

## NOTICE OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF PURSUANT TO \ NEW YORK CIVIL RIGHTS LAW SECTION 50 AND 51

**MAY IT PLEASE THE COURT:**

This is a MOTION to seek INJUNCTIVE RELIEF to restrain the Defendant from the continuous use of the Plaintiff's persona, name and imagery pursuant to NYCRL §§ 50,51.

A certificate of service is included on the last page of this document. So sworn under oath.

Signed this 17 day of November 2020.

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
Spoliation-notice@mailbox.org

D.G. Swt
11.17.20

1

# MEMORANDUM OF LAW

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ 2

TABLE OF AUTHORITIES .......................................................................................... 3

PRELIMINARY STATEMENT .................................................................................... 4

PROCEDURAL HISTORY ............................................................................................ 4

LAW AND ARGUMENT ............................................................................................. 11

CONCLUSION .............................................................................................................. 17

CERTIFICATE OF SERVICE .................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Ali v. Playgirl,* 447 F.Supp. 723, 726 (S.D.N.Y. 1978) .................................................................. 16

*Allen v. National Video,* 610 F. Supp. 612, 617-618 (S.D.N.Y. 1985) ........................................... 16

*Binns v. Vitagraph Co.,* 210 N.Y. 51, 57-58 (1913) ....................................................................... 16

*Connick v. Myers,* 461 U.S. 138, 146 (1983) .................................................................................. 11

*Connick,* 461 U.S at 147-48 ............................................................................................................ 12

*Connick,* 461 U.S. at 147–4 ............................................................................................................ 12

*Golodner v. Berliner,* 770 F.3d 196 (2014) .................................................................................... 12

*Kennedy Onassis v. Christian Dior N.Y.,* 122 Misc. 2d 603, 604, 472 N.Y.S.2d 254, 256 (Sup. NY 1984) ...................................................................................................................................... 16

*Lewis v. Cowen,* 165 F.3d 154, 162 (2d Cir. 1999) ........................................................................ 12

*Lewis,* 165 F.3d at 163–64 .............................................................................................................. 12

*Singer v. Ferro,* 711 F.3d 334, 340 (2d Cir.2013) .......................................................................... 12

*The National Academy of Television Arts and Sciences, Inc., et al. v. Multimedia Systems Design, Inc.,* 20-CV-7269 ............................................................................................................................ 6

**Statutes**

NYCRL § 51 ......................................................................................................................... 4, 11, 12

NYCRL § 79-h ............................................................................................................................ 9, 11

**Rules**

United States Department of Defense (DoD) Directive 8570 ........................................................ 13

## PRELIMINARY STATEMENT

Plaintiff D. George Sweigert commenced this action against the Defendant Jason Goodman and his social media podcast "business" CrowdSource The Truth for, in part, knowingly using Sweigert's image and name for commercial or advertising purposes, without Sweigert's consent, in violation of Section 51 of the Civil Rights Law of the State of New York (NYCRL § 51). Sweigert now comes (with this motion) to seek injunctive relief pursuant to NYCRL § 51, which provides that a person whose image is used without consent may maintain an equitable action "to prevent and restrain the use" of such imagery.

## PROCEDURAL HISTORY

Plaintiff alleged that the Defendant has used Sweigert's image and name without his consent in the Second Amended Complaint (**SAC, Dkt. 88**) and the First Supplemental Complaint (**FSC, Dkt. 150**). The Magistrate has ordered that the **SAC** is to be supplemented by "*paragraphs 1, 39 through 45 and 47 through 50*" of the **FSC**, see ORDER (**Dkt. 160**). The Defendant's various motions to dismiss the claims of the **SAC** and **FSC** have been heard and terminated.

The Defendant did not file ANSWER to the **SAC** (**Dkt. 88**) although ORDERED to by the magistrate on 10/24/2019 (**Dkt. 97**). This ORDER was amplified and re-affirmed on 11/14/2019 by another magistrate's ORDER (**Dkt. 102**). An "Answer" was due by 11/18/2019 (**Dkt. 102**). The Defendant failed to file an answer to the SAC (**Dkt. 88**). Instead, the Defendant filed a motion to dismiss with an accompanying memorandum (see **Dkt. 105 and 106**). The Court will recall that the Plaintiff questioned these papers (**Dkt. 105 and 106**) in a letter motion of 11/25/2019 (**Dkt. 112**). On 08/03/2020 the presiding judge terminated the Defendant's motion

4

to dismiss (**Dkt. 106**) via ORDER (**Dkt. 140**). The Defendant made no attempt to amend, vacate or otherwise modify the Court ORDER of 08/03/2020 (**Dkt. 106**).

The Defendant had filed an ANSWER to the operative complaint (**Dkt. 5**) on 10/10/2018 (**Dkt. 35**). In that 10/10/2018 pleading (ANSWER) the Defendant provided affirmative defenses to the allegations raised.

## BACKGROUND STATEMENT

1.  For the purposes of this motion the Defendant has not denied the allegations of the SAC (**Dkt. 88**), although ordered to provide an "Answer" by ORDERS of 10/24/19 and 11/18/2019. Instead, the Defendant filed a motion to dismiss (**Dkt. 106**) which was terminated by ORDER of 08/03/2020 (**Dkt. 140**). The Defendant has sufficiently forfeited any opposition to the SAC (**Dkt. 88**). Thus, the well-pleaded factual allegations of the SAC (**Dkt. 88**) should be assumed to be true by this Court as they have never been denied by the Defendant.

2.  It is undisputed that the Defendant has used the Plaintiff's name and image in an exploitative manner in promotional commercial podcasts to tens of thousands of people. Defendant's on-going use of Plaintiff's image/name is open-ended, continuous, and non-stop.

3.  To amplify the commercial nature of Defendant's "*business*" it is instructive to review the Defendant's e-mail message to the magistrate judge on 11/13/2019. The Defendant advised the magistrate that, "*[o]nline broadcasting is my full time job and primary source of income*" and "*has crippled my on-line business by preventing me from live streaming my daily broadcasts*" and "*[t]his has negative impacted my income*" and "*disrupt my day to day life, my business* ".

> **Jason Goodman** <truth@crowdsourcethetruth.org>
> To Aaron_NYSDChambers@nysd.uscourts.gov  **Copy** David George Acton Sweigert
>
> 11/13/2019 7:53 PM
>
> Reply   Reply all   Forward   Delete
>
> Thank you your honor, however Mr. Outtrim's inappropriate actions have revealed new evidence that is extremely significant and must be included in my answer. Outtim's latest action provides further proof of the alleged conspiracy between Plaintiff and others including Outtrim. This causes me to request that you reconsider today's order given the following circumstances:
>
> Irrespective of Mr. Outtrim's denial of intervention, his reason for attempting to intervene changes my answer and requires additional time to complete. Prior to emailing you inappropriately, Mr. Outtrim submitted a fraudulent complaint to YouTube that has crippled my online business by preventing me from live streaming my daily broadcasts to my audience of 85,000 viewers. This has negatively impacted my income and is a clear example of the ongoing extrajudicial steps Plaintiff and his associates have taken in their persistent and escalating effort to disrupt my day to day life, my business and my ability to defend myself in this legal mater.
>
> Online broadcasting is my full time job and primary source of income. The YouTube penalty will continue indefinitely IF Outtrim is able to demonstrate to Google that he has an active lawsuit against me for the same claim he has submitted to YouTube. It is extremely important to my defense that I have the additional time requested so I may adequately explain and present the relevant facts and details related to shed light on this newest development and so the court may consider these facts in rendering its decision.
>
> I respectfully request that you reconsider the order and allow me the time extension. I stand ready to submit another motion for extention of time if that would please the court.
>
> Jason Goodman, Defendant Pro Se
>
> *Please note [redacted]@protonmail.com is not a valid email address for Defendant and has been inappropriately introduced into these proceedings by Plaintiff

Above:  E-mail message from Def to the Magistrate 11/13/2020

4.      Indeed, the New York state licensed corporate entity for which the Defendant purports to be the "C.E.O." is entangled in related litigation (see *The National Academy of Television Arts and Sciences, Inc., et al. v. Multimedia Systems Design, Inc.*, 20-CV-7269, Hon. Valerie E. Caproni presiding [herein NATAS lawsuit]). *Multimedia* is the corporate entity to which the U.S. Patent and Trademark Office (U.S.P.T.O.) has assigned the trademark "CrowdSource The Truth" (CSTT).

## CROWDSOURCE THE TRUTH - Trademark Information

By Multimedia System Design, Inc 

The CROWDSOURCE THE TRUTH trademark was assigned a Serial Number #87752970 – by the United States Patent and Trademark Office (USPTO). Trademark Serial Number is a unique ID to identify the CROWDSOURCE THE TRUTH mark in USPTO. The CROWDSOURCE THE TRUTH mark is filed in the category of Education and Entertainment Services . The legal correspondent for CROWDSOURCE THE TRUTH trademark is MULTIMEDIA SYSTEM DESIGN, INC, 252 7TH AVENUE, 6S NEW YORK, NY 10001 . **The current status of the CROWDSOURCE THE TRUTH filing is REGISTERED.**

Based on Multimedia System Design, Inc, the CROWDSOURCE THE TRUTH trademark is used in the following business: Providing on-line videos featuring news in the nature of current event reporting, not downloadable .

Cite: https://www.trademarkelite.com/trademark/trademark-detail/87752970/CROWDSOURCE-THE-TRUTH

5. All of the publicly available podcasts distributed across more than 13 CSTT social media properties contain a solicitation for members of the public to become paying "patrons" on credit card processing "pay walls" known as PATREON and Subscribe Star.



Sunday with Charles -- Honey, I Shrunk the Landslide

12,272 views • Streamed live 7 hours ago    👍 1.2K   👎 28   ↗ SHARE   ≡₊ SAVE   •••

 Jason Goodman                                                        SUBSCRIBED   ⌃

Cite: https://www.youtube.com/watch?v=WAzXIRL-5UQ

6.   The video description box of all the Defendant's videos contains this message (see below).

> Please sponsor the of Crowdsource the Truth Counterlawfare Fund at
> http://www.crowdsourcethetruth.com. Become a sponsor & enjoy exclusive content on
> SubscribeStar & Patreon http://www.patreon.com/crowdsourcethe...
> http://www.subscribestar.com/crowdsou... http://paypal.me/crowdsourcethetruth Visit
> http://www.crowdsourcethetruth.com

7.   Depicted below is an excerpt from the PATREON credit card processor terms of use.

> Welcome to Patreon!
> To summarize: By using Patreon you agree to these terms.
> These are Patreon's terms of use, and they apply to all users of the Patreon platform. "We," "our" or "us" refers to Patreon Inc. and our subsidiaries. "Patreon" refers to this platform and the services offered by us.
>
> Payments
> As a creator you make your membership available on Patreon, and we provide membership to your patrons on a subscription basis. We also handle payments issues such as fraud, chargebacks and resolution of payments disputes.
> We try to provide timely access to your funds, but you may occasionally experience delays in accessing your funds. We may also block or hold payments for violations of our policies or for compliance reasons, including collecting tax reporting information. When payments are delayed or blocked we try to communicate the reason to you promptly. If you have questions about a payments block, please reach out to us. In order to protect creators, we may block patrons' payments if we believe them to be fraudulent.
> Sometimes activities like refunds can put your account balance into the negative. If your balance becomes negative then we reserve the right to recover those funds from future payments.

Cite: https://www.patreon.com/policy/legal

8.  In the video podcast entitled, **Clear and Present Danger (Calm Before the Storm?) "#maerskmemphis"**, 90,501 views, •Streamed live on June 14, 2017, https://www.youtube.com/watch?v=ekr5cw2WAbU&t=1681s, the Defendant dials telephone no. 843-740-7050 and introduces himself to the U.S. Coast Guard petty officer answering the emergency line, at time mark 2:01:14 the Defendant states, "Yes, this is Jason Goodman calling. I am a reporter with an **independent news agency** called CrowdSource The Truth and we have received information..". [emphasis added]

9.  New York law provides very explicit definitions as to what constitutes a "news agency". CrowdSource The Truth is not a news agency and does not meet the criteria as a news agency under New York law (see below).

> (a)(3) "News agency" shall mean a commercial organization that collects and supplies news to subscribing newspapers, magazines, periodicals and news broadcasters.
>
> Cite: NYCRL § 79-h

10. Further, New York law is clear about the definition of "news" (see below).

> (a)(8) "News" shall mean written, oral, pictorial, photographic, or electronically recorded information or communications concerning local, national or worldwide events or other matters of public concern or public interest or affecting the public welfare.
>
> Cite: NYCRL § 79-h

9

11. Presently, the Defendant's is displaying his talent in having the public subsidize his legal expenses for his three lawsuits where he appears as a defendant (to include the Eastern District of Virginia defamation and libel lawsuit *Robert David Steele v. Jason Goodman*).

12. The Defendant now markets a variety of "COUNTER LAWFARE" financial donations from $100 to $1,000 to pay legal fees and defend himself from "*lawfare*" litigation, such as this instant lawsuit and the related *NATAS v. Goodman* case. The Defendant has and is engaged in the commercial solicitation of funds from the public to support his "*counter lawfare*" project.



Cite: http://www.crowdsourcethetruth.com



Cite: http://www.crowdsourcethetruth.com

## **LAW AND ARGUMENT**

**Injunctive Relief**

13. As noted above, NYCRL § 51 provides that a person whose image or name is used without his consent may maintain an equitable action "to prevent and restrain the use" of the image / name.

14. The facts alleged in the **SAC & FSC** establish all elements necessary to obtain injunctive relief from this Court. Defendant has not denied the allegations presented in the SAC (Dkt. 88) or the FSC (Dkt. 150). The allegations are within the scope of NYCRL § 51 have not been contested. For the purposes of this motion any statements in the complaint that have not denied should be taken as true.

15. Defendant continuous to drag the Plaintiff's persona into the "COUNTER LAWFARE" initiative as the persona to provide justification for donations, contributions, and other financial pecuniary benefits to the Defendant. In sum, Defendant needs to be restrained from any further inclusion of the Plaintiff in exploitive commercial "advertising in disguise" podcasts to raise funds for the dubious "COUNTER LAWFARE FUND".

**First Amendment does not protect personal venting thus no harm to the Defendant**

16. In New York state, pursuant to NYCRL § 79-h, news is considered content that addresses "*matters of public concern or public interest*". The Defendant's personal attacks ("*dead beat dad*"), airing of personal grievances, expounding on the personal history ("*wife swapper*"), etc. directed at the Plaintiff is not "news".

17. "Speech is a matter of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Connick v. Myers,* 461 U.S. 138, 146 (1983). Courts determine whether speech is on a matter of public concern by examining the

11

"content, form, and context of a given statement, as revealed by the whole record". *Id. Connick,* 461 U.S at 147-48.

18. Speech that "primarily concerns an issue that is personal in nature and generally related to the speaker's own situation, such as his or her assignments, promotion, or salary, does not address matters of public concern." *Id.* (internal quotation marks and alteration omitted). *Connick,* 461 U.S. at 147–4.

19. Relevant considerations include "whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." *Lewis v. Cowen,* 165 F.3d 154, 162 (2d Cir. 1999).

20. The bulk of the Defendant's podcast speeches over the last two years concerning the Plaintiff (at last count over 100 podcasts) are the Defendant's personal grievances with the Plaintiff and have no broader public interest. These podcast speeches, slurs and insults are little more than score-settling devices and have small practical significance to the public. *Lewis,* 165 F.3d at 163–64.

21. "Speech that, at its heart, is limited to such grievances does not implicate the First Amendment. Put simply, the "First Amendment does not protect all private ventings of disgruntled public employees." *Singer v. Ferro,* 711 F.3d 334, 340 (2d Cir.2013) ," quoted in *Golodner* v. *Berliner,* 770 F.3d 196 (2014) .

22. Defendant's personal "COUNTER LAWFARE" score-settling podcast speech is not an interest protected by the First Amendment. Further, the Plaintiff is not asking this Court to chill the Defendant's free speech concerning other *"matters of public concern or public interest",* only the personal grievance podcasts that feature the Plaintiff's misappropriated persona, image and name (as allowed by New York law - NYCRL § 51).

12

**Irreparable Career Damage**

23.     Because Plaintiff is seeking a preliminary injunction pursuant to NYCRL § 51, the irreparable harm analysis in this case differs from a traditional preliminary injunction analysis. NYCRL §§ 50,51 on their face entitle private plaintiffs to seek injunctive relief so long as they have suffered an injury as a result of a defendant's misappropriation of the plaintiff's persona, name and likeness.

24.     In his social media podcasts, the Defendant has improperly used the persona, name and imagery of the Plaintiff for "advertising and trade" to promote the credit card payment third-party payment sites PATREON and SubscribeStar "pay-walls" (a techno industry term that is a spin-off of "firewall").

25.     The **SAC & FSC** describe instances when the Defendant specifically targeted the Plaintiff's career in the form of his accreditation as a Certified Ethical Hacker (**CEH**). In "COUNTER LAWFARE" podcasts only a few days ago the Defendant again disparages the Plaintiff as "George Webb's brother, the ethical hacker and social engineer."

**26.**     United States Department of Defense (DoD) Directive 8570 sets out the requirements for the "Information Assurance" workforce covering policies and responsibilities regarding the training, certification, and workforce management. The Cyber Security Service Provider (CSSP) DoD 8570 designation requires the CEH.

**27.**     As the Court will recall, the **SAC** is bulging with the evidence of the Defendant's podcasts that include the variation of "David Sweigert" and "ethical hacker" in the title, description, or meta-data, making the content discoverable via simple GOOGLE.COM word or phrase search (sample below).





Above: Small sample of CSTT podcasts featuring the Plaintiff

**28.** The Plaintiff's name is inserted into innumerable podcasts that has content with no relationship to the Plaintiff. As seen in the small sample of podcasts above, the Plaintiff has no relationship whatsoever to the subject matter of the "advertising in disguise"; e.g. the Plaintiff is not a "weatherman", "cornfield cruiser", part of the "BAT CAVE" at the University of Illinois, connected "EVL teachers", etc. The Defendant is merely using the Plaintiff's persona, name, image and reputation to give his conspiracy theorist podcasts an aire of legitimacy.

**29.** For over a decade the Plaintiff has published technical reports and books that advance the state of the art of cyber security incident response. The Plaintiff is active in the research and publishing of new techniques to reduce the severity of critical infrastructure outages, etc. This journey towards technical excellence represents the "persona" and "personage" of the Plaintiff. Not only does the Defendant want to exploit the imagery and name of the Plaintiff but the

Defendant wants to exploit the persona / personage of the Plaintiff as well – this violates NYCRL §§ 50,51.

30. Contributing to the state of the art via published peer reviewed articles and treatises is a professional requirement of a CEH holder. These grotesque podcasts and their headlines have a cumulative negative impact on the Plaintiff. Security experts researching in the cyber security field as just as apt to stumble across the Defendant's grotesque creations as they could discover serious technical articles requiring peer review written by the Plaintiff.

31. The term "social engineer" is a term of art within the ethical hacking community. "Social engineer" refers to manipulative con-artists that are able to acquire sensitive information from uninformed employees or workers. This technique relies on impersonation and deception to manipulate the release of some protected information, such as a password, access code, or other sensitive data. The term "social engineer" is a derogatory slur that has specific connotations in the ethical hacking community and is the source of derogatory impressions created about the Plaintiff.

32. In essence, the Defendant has poisoned the Internet's peer reviewed cyber security well and muddied the critical infrastructure protection waters to cast a shadow of humiliation and doubt on the Plaintiff. This is directly and indirectly damaging to the Plaintiff's career. This type of reputational harm has a direct impact on Plaintiff's professional reputation and long-term career prospects.



Cross-Domain Interoperability in a Cyber Warfare Response: Minimizing Threat Rigidity in Emergency Management and Cyber Security
by Mr David Sweigert M.Sci. | Mar 28, 2018
Paperback
$6.95
✓prime Get it as soon as **Mon, Nov 23**
FREE Shipping on orders over $25 shipped by Amazon



Avoiding the Digital Maginot Line: Emergency Manager's Guide to Modernizing Cyber Resilience: Peer-review copy
by Dave G. Sweigert | Nov 12, 2019
★★★★★ ~ 3
Paperback
$6.99
✓prime Get it as soon as **Mon, Nov 23**
FREE Shipping on orders over $25 shipped by Amazon

33. It does not matter if the Defendant claims some kind of copyright parody defense. "A picture within the meaning of the statute is not necessarily a photograph of a living person, but includes any representation of such person," *Binns v. Vitagraph Co.*, 210 N.Y. 51, 57-58 (1913). Similarly, in *Ali v. Playgirl*, 447 F.Supp. 723, 726 (S.D.N.Y. 1978) the statutory definition of "portrait" is satisfied by a cartoon of an individual.

34. As noted in *Allen v. National Video*, 610 F. Supp. 612, 617-618 (S.D.N.Y. 1985) and *Kennedy Onassis v. Christian Dior N.Y.*, 122 Misc. 2d 603, 604, 472 N.Y.S.2d 254, 256 (Sup. NY 1984) even the use of "look-alikes" for advertising and trade purposes that create an "overall impression" of the plaintiff was held as a sufficient violation of the law as it amounts to an appropriation of another's likeness for commercial advantage without consent.

## CONCLUSION

The Defendant profits from the open-ended smearing of the Plaintiff as a new character in the CSTT "*counter lawfare*" soap opera. The Defendant continues to be compensated richly by soliciting contributions to his legal defense fund. The Defendant continues to engage in continuous tortious behavior to prolong this lawsuit with the predicted reaction of more pleadings to supplement the record in response to CSTT podcast slurs. The Defendant will not be financially harmed by any order of this Court directing the Defendant to cease and desist the commercial exploitative broadcasts of the Plaintiff's persona, name or likeness.

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*

11 · 17 · 20

## CERTIFICATE OF SERVICE

I HEREBY ATTEST that a true copy of the attached pleadings has been sent to the following addressees on the 17 day of November via prepaid First Class U.S. Mail. So sworn under oath.

        Jason Goodman, CEO
        Multimedia Systems Design, Inc.
        252 7th Avenue, Apart. #6S
        New York, NY 10001

        PRO SE OFFICE, #200
        U.S. District Court
        500 Pearl Street
        New York, New York 10007-1312

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

11.17.20



**PRIORITY MAIL**

FROM:

- Expected delivery date specified for domestic use.
- Most domestic shipments include up to $50 of insurance (restrictions apply).*
- USPS Tracking® included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

RECEIVED
SDNY PRO SE OFFICE
2020 NOV 19 PM 2: 55

**FLAT RATE ENVELOPE**
ONE RATE ■ ANY WEIGHT

TO:

Pro Se #200

**TRACKED ■ INSURED**

To schedule free Package Pickup, scan the QR code.



USPS.COM/PICKUP

PS00001000014
EP14F May 2020
OD: 12 1/2 x 9 1/2

PRO SE OFFICE, Room 200
U.S. District Court
500 Pearl Street
New York, New York 10007-1312

10007