U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY PRO SE OFFICE
2020 DEC -1  AM 11: 11

| SWEIGERT | CIVIL CASE #: |
|---|---|
| V. | 1:18-CV-08653-VEC |
| GOODMAN | JUDGE VALERIE E. CAPRONI |

### PLAINTIFF'S REPLY BRIEF
### TO DEFENDANT'S OBJECTIONS (ECF. DKT. 167) TO
### MAGISTRATE'S REPORT & RECOMMENDATION (R&R)

**MAY IT PLEASE THE COURT:**

This is a **REPLY BRIEF** to counter the Defendant's "OPPOSITION" filed as **ECF no. (Dkt.) 167** pursuant to 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). This pleading is true to the knowledge of the undersigned, except as to matters alleged on information and belief, and that as to matters that the undersigned believe are true. **See N.Y. C.P.L.R. 3020.**

A certificate of service is included on the last page of this document. So sworn under oath. Signed this **25** day of November 2020.

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

D.G.S —
11.25.20

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... 3

PROCEDURAL HISTORY ................................................................................................. 4

PRELIMINARY STATEMENT .......................................................................................... 5

LAW AND ARGUMENT..................................................................................................... 9

CONCLUSION ................................................................................................................... 11

CERTIFICATE OF SERVICE ......................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Bacon v. Coca-Cola Bottling Co., United, Inc.*, 51 F. Supp. 3d 1176 (N.D. Ala. 2014) .............. 10

*Camardo v. General Motors Hourly Rate Employees Pension Plan*, 806 F. Supp. 380, 381–82 (W.D.N.Y. 1992) .................................................................................................................... 11

*Gilday v. Spencer*, 677 F. Supp. 2d 354, 357 (D. Mass. 2009) ...................................................... 10

*Kohser v. Protective Life Corp.*, 649 Fed. Appx. 774, 777 (11th Cir. 2016) 2 1 .......................... 10

*Leatherwood v. Anna's Linens Co.*, 384 F. App'x 853, 856–57 (11th Cir. 2010) .......................... 9

*McGrigs v. Killian*, No. 08 Civ. 6238(RMB)(DF), 2009 WL 3762201, at *2 (S.D.N.Y. Nov. 10, 2009) ........................................................................................................................................ 11

*McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) .......................................................... 9

*NATAS v. Multimedia System Design, Inc.* ..................................................................................... 8

*Pippins v. KPMG LLP*, 279 F.R.D. 245, 251 (S.D.N.Y. 2012) ...................................................... 11

*Sands v. Brennan*, 2018 WL 4356650, at *2 (E.D. Mich. Sept. 13, 2018) ..................................... 9

**Statutes**

28 U.S.C. § 636b(1) (2016) ............................................................................................................ 10

**Other Authorities**

Fed. R. Civ. P. Rule 72(b) ................................................................................................................ 9

Rule 72(b) ...................................................................................................................................... 10

**Treatises**

12 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3070.1 (2d ed. 1997) ............................................................................................................................ 10

## PROCEDURAL HISTORY

1.     This instant lawsuit was transferred to the Southern District of New York (S.D.N.Y.) from the District of South Carolina on 09/21/2018 (Dkt. 30). The original lawsuit contained a complaint and an amended complaint filed for the South Carolina jurisdiction (**Dkt. 1**, 06/14/2018 and **Dkt. 5**, 6/29/2018, respectively). One year ago, presiding judge Hon. Valeria Caproni issued an ORDER (8/20/2019, **Dkt. 87**) which, among other things stated that the "Plaintiff appears to regard himself as a roving knight in shining armor, intent on vindicating, through lawsuit, the rights of anyone harmed by the Defendant's nonsensical ranting. [pg. 8 of 14]" Further, the ORDER stated, "Goodman asserts that Sweigert is part of an organized campaign that has engaged in "wanton and willful tortuous interference, defamation, slander, harassment, invasion of privacy, infringement of first amendment rights, menacing and stalking." **Dkt. 44**. Apart from these conclusory statements, Goodman has not set forth any facts to support any of his claims." (pg. 12 of 14). This ORDER permitted the filing of a Second Amended Complaint (SAC) by the *pro se* Plaintiff (filed 9/10/2019, **Dkt. 88**). The ORDER also dismissed Def. Goodman's "counter-claims" (**Dkt. 44**). In response to the SAC (**Dkt. 88**) Def. Goodman sought to file his second counter-claim with an enlargement of time (via Dkt. 104, filed 11/18/2019). The Def's enlargement of time request was approved by the Magistrate via Dkt. 102 (11/14/2019). Def. filed his second COUNTERCLAIM VERIFIED COMPLAINT against the Plaintiff on 12/05/2019 (**Dkt. 122**). By ORDER of 08/03/2020 (**Dkt. 140**) the presiding judge once again dismissed the Goodman counter-claims (**Dkt. 122**); but, authorized another refilling of a third counter-claim by Goodman prior to August 31, 2020. Additionally, the ORDER (**Dkt. 140**) stated, "WHEREAS this action involves two *pro se* litigants whose occupations appear to consist chiefly of concocting outlandish conspiracy theories and accusing

4

one another of criminal conduct and misbehavior on the internet, see Dkt. 87" and "while most of the parties' alleged conduct (and indeed their mutual recriminations throughout this litigation) is patently ridiculous, it is not legally outrageous". On 11/05/2020 the Magistrate Judge released his Report and Recommendation (R&) as **Dkt. 164.** The Defendant responded with his "OPPOSITION papers on 11/19/2020 with **Dkt. 167**. This instant pleading REPLIES to **Dkt. 167.**

## PRELIMINARY STATEMENT

1. The Defendant has turned prolonged litigation into a profit center under the banner of "COUNTER LAWFARE". The Defendant appears in his own podcasts and nationally syndicated conspiracy shows, such as INFOWARS, to solicit financial donations to fight off the people (presumably like the Plaintiff) that are trying to "chill his journalistic endeavors" via litigation ("lawfare").



Above: Defendant appears on INFOWARS to discuss "Nipple Clamps Cuomo" and his S.D.N.Y. lawsuit *National Academy of Television Arts & Sciences vs. Multimedia Design* (aka Jason Goodman of Crowdsource the Truth) lawsuit. (posted 11/24/2020).
URL: https://www.youtube.com/watch?v=ZlHLmbFi4Vs

5

2. The podcast video description includes the following:

> In case you missed my appearance earlier today on the David Knight Show, this is a rebroadcast. We discussed the ridiculous, arguably corrupt decision to award New York State Governor Andrew Cuomo an EMMY despite his miserable performance in handling the Coronavirus pandemic, with over 34,000 dead in New York State. That number is higher than the entire country of China, an award winning performance according to the TV Academy. Special thanks to David Knight and his crew at InfoWars.

3. During the podcast performance the Defendant displays the following "chat" request:



4. During the broadcast/podcast the Defendant appears near gleeful as he extolls the history of the *National Academy of Television Arts & Sciences vs. Multimedia Design* lawsuit. In fact, the Defendant intends to "crowdsource" the review of discovery materials in that lawsuit (see below).

> Case 1:20-cv-07269-VEC   Document 29   Filed 11/28/20   Page 8 of 9
>
> Mr. Goodman is not a wealthy person. He understands that discovery is the most expensive aspect of litigation. He cannot personally afford to fund the large-scale document review that this case will generate. Accordingly, Mr. Goodman plans to "Crowdsource" the document review process, enlisting thousands of volunteers to comb through produced documents and identify important items. This method is the only way that Mr. Goodman can hope to access justice.
>
> Specifically, Plaintiffs object to Defendant/Counterclaim Plaintiffs' proposal to "crowdsource" discovery by disseminating Plaintiffs' documents produced in this matter to a vast number of undisclosed persons over the Internet that are neither attorneys admitted to practice before this Court nor legal professionals supervised by admitted attorneys. On November 18, 2020, Attorney Snyder confirmed this is his clients' intention. Plaintiffs object to this highly irregular, ethically questionable, and potentially dangerous proposal.

5.  The excerpt of the pleading cited above indicates the Defendant's intention to "outsource" and/or "crowdsource" intrinsic functions of the judicial process to his financial patrons who provide monies, credit card payments and other pecuniary benefits to the Defendant.

6.  The Defendant is dependent on this lawsuit, and other languishing litigation, to support the "victim narrative" for the collection of "COUNTER LAWFARE FUND" donations, monies, credit card payments, etc.

7.  Rather than seek resolution to the issues raised in the magistrate's R&R (**Dkt. 164**) the Defendant has docketed opposing papers with the Court for an improper purpose (**Dkt. 167**). The chief purpose appears to malign, slur, attack and denigrate the Plaintiff with language that turns the decorum of a federal court on its ear.  The second objective, obviously, is to prolong the litigation process to prop up the Crowdsource The Truth (CSTT) COUNTER LAWFARE FUND.

7

8. In his opposing papers (**Dkt. 167**) amongst other things the Defendant demands that this lawsuit be dismissed with prejudice and that the Plaintiff be labeled as a "*vexatious litigant*" by this Court (**Dkt. 167**, pp. 2). A fair amount of content is devoted to the discussion of difficulties in filing the opposing papers with the *pro se* intake office (pp. 2). The Defendant then tosses in some conclusory allegations about the Plaintiff "*making frivolous and false statements to law enforcement*" (pp. 3). A large portion of the opposing papers addresses the third party "Ari Friedman" a supposed friend of the Plaintiff's brother, of whom the Plaintiff knows nothing about (pp. 3 – 4). Then there is discussion about "*horrifying racist statements*" (pp. 4). The Defendant then claims he is in "*extreme, immediate risk of substantial harm or even death*" (pp. 4). The Defendant demands that the lawsuit be dismissed under "*the unclean hands doctrine*" (pp. 5). As the Court is accustomed to, the Defendant rails against the Plaintiff as "*mentally unstable and an immediate, dangerous threat to Defendant's safety*" (pp. 5). The Defendant asserts that the Plaintiff should just go away and tend to "*his own son who he claims is handicapped* (caveat: the handicapped son information was supplied to the Defendant by **Ms. Corean Elizabeth Stoughton** of Hanover, Maryland) (pp. 5). Then there is more re-litigation of the Defendant's federal court cases in the Eastern District of Virginia and the *NATAS v. Multimedia System Design, Inc.* lawsuit (pp. 6-7). A discussion of the Court's COVID-19 "PPE" processes is then offered (pp. 8). Then there is a discussion of Plaintiff's brother and supposed underage dating via the TINDER social media site (pp. 8). A long discussion of the Cable News Network (C.N.N.) article concerning the Plaintiff's brother is offered (caveat: **Ms. Stoughton** acted as the confidential informant of the C.N.N. article) (pp. 10-11). The Defendant concludes with an improper request for a "Show Cause hearing". (pp. 11). In sum, the opposing papers offer more of the Defendant's vague "sky is falling" arguments that are then re-hashed on his

8

social media podcasts to smear and slur the Plaintiff in an effort to raise money for the "COUNTER LAWFARE FUND".

## **LAW AND ARGUMENT**

9. The Defendant's opposition papers (**Dkt. 167**) do not form cognizable arguments in opposition to the content of the magistrate's R&R (**Dkt. 164**). What constitutes a "proper objection"? As one district court in Michigan recently observed, "it is not the job of the Court to make arguments on [a party's] behalf" – parties cannot simply make an "argument in the most skeletal way, leaving the court to … put flesh on its bones." *Sands v. Brennan*, 2018 WL 4356650, at *2 (E.D. Mich. Sept. 13, 2018) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ). Objections "must specifically identify" – indeed, "pinpoint" – those "specific findings that the party disagrees with." *Leatherwood v. Anna's Linens Co.*, 384 F. App'x 853, 856–57 (11th Cir. 2010). If an objection is not specific enough, the district court may apply a clear error instead of *de novo* standard of review or, as noted in *Sands*, the objection may be waived altogether.

10. The Defendant's opposing papers (**Dkt. 167**) have completely ignored the main issues of the magistrate's R&R (**Dkt. 164**); such as the rejection of the DEFAMATION (COUNT 1) claims (pp. 4-6), CIVIL CONSPIRACY (COUNT 2) claims (pp. 6-7) and the N.Y. CIVIL RIGHTS LAW (COUNT 3) claims (pp. 7-8). In fact, the opposing papers (**Dkt. 167**) appear to be devoid of even descriptions of the causes of action (Counts 1, 2 and 3), in essence mocking the Court's orders, procedures, and decorum.

11. A party objecting to the report and recommendations of a magistrate judge must make specific objections to warrant *de novo* review. Fed. R. Civ. P. Rule 72(b). "[I]t is improper for an objecting party to . . . submit[ ] papers to a district court which are nothing more than a rehashing

9

of the same arguments and positions taken in the original papers submitted to the Magistrate Judge." *Gilday v. Spencer*, 677 F. Supp. 2d 354, 357 (D. Mass. 2009) (citations omitted). As shown above, that is precisely what the Defendant has done.

12.     The Defendant asserts vague and generalized objections to the magistrate's R&R which fail to meet the specificity requirement mandated by Rule 72(b) and 28 U.S.C. § 636b(1) (2016) .

13.     The magistrate's R&R (**Dkt. 164**) offered a thorough and careful evaluation of the evidence and arguments offered by both parties. Defendant's objections simply repeat, in conclusory fashion, his failed arguments.

14.     The District Court must conduct a *de novo* review of the portions of an R&R that have been "properly objected to." Rule 72(b); 28 U.S.C. Â§ 636b(1); see *Bacon v. Coca-Cola Bottling Co., United, Inc.*, 51 F. Supp. 3d 1176 (N.D. Ala. 2014) (parties "must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court"); *Kohser v. Protective Life Corp.*, 649 Fed. Appx. 774, 777 (11th Cir. 2016) 2 1 ("where a litigant fails to offer specific objections to a magistrate judge's factual findings, there is no requirement of *de novo* review. A specific objection must identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection"). When no specific objection is raised, the R&R is reviewed for plain error.

15.     To amplify, see 12 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3070.1 (2d ed. 1997) ("The rule adds that the objections must be 'specific' so as to conform to the statute's requirement that the judge review those portions of the proposed findings or recommendations to which objection is made."); see also supra notes 5–6 and accompanying text (explaining that the parts of a report and recommendations objected to are reviewed *de novo* while parts not objected to are reviewed for clear error or not at all).

16.     A 1992 Western District of New York case, *Camardo v. General Motors Hourly Rate Employees Pension Plan*, 806 F. Supp. 380, 381–82 (W.D.N.Y. 1992) states that it is "improper for an objecting party to. . . rehash[]. . . the same arguments and positions taken in the original papers submitted to the Magistrate Judge." *Camardo* at 382.

17.     The Defendant's objections do not challenge a specific finding (as required to initiate *de novo* review) and the R&R should only be reviewed for plain error.

## CONCLUSION

*McGrigs v. Killian,* No. 08 Civ. 6238(RMB)(DF), 2009 WL 3762201, at *2 (S.D.N.Y. Nov. 10, 2009) ("The Court may adopt any portions of a magistrate judge's report to which no objections have been made and which are not clearly erroneous or contrary to law.").

The Defendant engages in continuous tortious behavior to prolong this lawsuit with the predicted reaction of more pleadings to supplement the record in response to the Defendant's misappropriation of the Plaintiff's name, likeness, and persona. The opposing papers are just more of the same from the Defendant who has created a podcast social media profit center around litigation.

The Plaintiff does not oppose the magistrate's R&R (**Dkt. 164**). *Pippins v. KPMG LLP,* 279 F.R.D. 245, 251 (S.D.N.Y. 2012) (referring to "our excellent magistrate judges" in the Southern District of New York).

*D. G. S~~~* /
**D. G. SWEIGERT, C/O, GENERAL DELIVERY, ROUGH AND READY, CA 95975**

**11 · 25 · 20**

## CERTIFICATE OF SERVICE

I HEREBY ATTEST that a true copy of the attached pleadings has been sent to the following addressees on the 25 day of November via prepaid First Class U.S. Mail. So sworn under oath.

> Jason Goodman, CEO
> Multimedia Systems Design, Inc.
> 252 7th Avenue, Apart. #6S
> New York, NY 10001
>
> PRO SE OFFICE, #200
> U.S. District Court
> 500 Pearl Street
> New York, New York 10007-1312

*D.G.S*

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

11.25.20

USPS TRACKING® NUMBER



**UNITED STATES POSTAL SERVICE® | PRIORITY® MAIL**

FROM:

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

- Expected delivery date specified for domestic use.
- Most domestic shipments include up to $50 of insurance (restrictions apply).*
- USPS Tracking® included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

TO:
PRO SE #200

**FLAT RATE ENVELOPE**
ONE RATE ■ ANY WEIGHT

PRO SE OFFICE, Room 200
U.S. District Court
500 Pearl Street
New York, New York 10007-1312

**TRACKED ■ INSURED**

To schedule free Package Pickup, scan the QR code.


PS00001000014
EP14F May 2020
OD: 12 1/2 x 9 1/2


USPS.COM/PICKUP

2020 DEC - AM 10:33
SDNY PRO SE OFFICE
RECEIVED

10007