U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY PRO SE OFFICE

2020 DEC -8  AM 11: 43

| SWEIGERT | CIVIL CASE #: |
| --- | --- |
| V. | 1:18-CV-08653-VEC |
| GOODMAN | JUDGE VALERIE E. CAPRONI |

<u><strong>NOTICE OF PLAINTIFF'S AMENDED MOTION FOR<br>PRELIMINARY INJUNCTIVE RELIEF PURSUANT TO<br>NEW YORK CIVIL RIGHTS LAW SECTION 50 AND 51</strong></u><br><u><strong>REPLACES ECF DKT. 168</strong></u>

**MAY IT PLEASE THE COURT:**

This is an AMENDED MOTION that **supersedes ECF Dkt. 168** and is a MOTION to seek INJUNCTIVE RELIEF to restrain the Defendant from the continuous use of the Plaintiff's persona, name and imagery pursuant to **NYCRL §§ 50, 51**. **NOTE: the original of this pleading** was mailed via U.S. Priority Mail (U.S.P.M.) and has apparently become lost in the system. As of 12/04/2020 the U.S.P.M. tracker displayed the following:

> **December 3, 2020**
> In Transit, Arriving Late
> Your package will arrive later than expected, but is still on its way. It is currently in transit to the next facility.
> **November 29, 2020, 4:05 pm**
> Arrived at USPS Regional Origin Facility
> LOS ANGELES CA NETWORK DISTRIBUTION CENTER

A certificate of service is included on the last page of this document. So sworn under oath.

Signed this ___ day of December 2020.

*[signature]*

**D. G. SWEIGERT, C/O**
**GENERAL DELIVERY**
**ROUGH AND READY, CA 95975**
*Spoliation-notice@mailbox.org*

1   *12·4·20*

# MEMORANDUM OF LAW

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... 2

TABLE OF AUTHORITIES ..................................................................................................... 3

SUMMARY OF RELIEF SOUGHT ......................................................................................... 4

PRELIMINARY STATEMENT ................................................................................................ 5

PROCEDURAL HISTORY ........................................................................................................ 5

LAW AND ARGUMENT ......................................................................................................... 12

CONCLUSION .......................................................................................................................... 16

CERTIFICATE OF SERVICE ................................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**

*Allen v. National Video,* 610 F. Supp. 612, 617-618 (S.D.N.Y. 1985) .......................................... 16

*Kennedy Onassis v. Christian Dior N.Y.,* 122 Misc. 2d 603, 604, 472 N.Y.S.2d 254, 256 (Sup. NY 1984) ................................................................................................................................. 17

*Leon v Martinez*, 84 NY2d 83, 87-88 [1994] .............................................................................. 13

*Lohan v. Take-Two Interactive Software, Inc.,.* 97 N.E.3d 389 (N.Y. 2018) ................................ 12

*The National Academy of Television Arts and Sciences, Inc., et al. v. Multimedia Systems Design, Inc.,* 20-CV-7269 ...................................................................................................................... 7

**Statutes**

AMEND. I, U. S. Const. ................................................................................................................. 9

NYCRL § 51 ........................................................................................................................ 5, 12, 13

**Rules**

United States Department of Defense (DoD) Directive 8570 ....................................................... 14

**Treatises**

*Can Simulation Hacking IT Guru Sweigert Explain BAE's Bit Spread 9/11? With David Hawkins* ........................................................................................................................................................ 9

## SUMMARY OF RELIEF SOUGHT

**THE PLAINTIFF REQUESTS** injunctive relief against the Defendant. New York Civil Rights Law supports the Plaintiff's request that images, surnames, and other *persona* identification used in the promotion of commercial video podcasts should be restrained.

Technical instrumentalities in the form of video podcast "thumb nails", titles and descriptions herald and announce the availability of the commercial video content. The Plaintiff does not propose that video content itself should be curtailed or enjoined by this Court. Rather, the use of content "wrappers" (thumb nails, titles and video descriptions). The federal court in this district agrees with this position.

Therefore, at a minimum ALL images depicting Plaintiff's likeness in podcast video "thumb nails", and ALL references to his name used in video podcast titles and descriptions, as clearly identified in the Second Amended Complaint (**ECF Dkt 88**), should be removed from the view of the general Internet browsing public and from ALL social media platforms controlled by the Defendant until such time as those commercial podcast video wrappers remove the imagery / name / persona of the Plaintiff, **UNLESS** the Defendant can demonstrate that the discontinued commercial use of such "wrapper" instrumentalities (imagery in "thumbnails", names in titles and descriptions) will cause some kind of detriment or injury to the Defendant that would tip the equitable injunctive relief balance in his favor.

These wrapper instruments are separate and apart from any content of the video podcast itself.

## PRELIMINARY STATEMENT

New York's privacy laws are codified in Article 5 of its Civil Rights Law. Section 50 of New York's Civil Rights Law states: "A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor."

Plaintiff D. George Sweigert commenced this action against the Defendant Jason Goodman and his social media podcast "business" CrowdSource The Truth (CSTT) for, in part, knowingly using Plaintiff's image and name for commercial or advertising purposes, without Plaintiff's consent, in violation of Section 51 of the Civil Rights Law of the State of New York (NYCRL § 51). As outlined in the Second Amended Complaint (**SAC, Dkt. 88**), the Defendant's use is intentional and does not represent a mere incidental misappropriation for commercial use.

Plaintiff now comes (with this motion) to seek injunctive relief pursuant to NYCRL § 51, which provides that a person whose image is used without consent may maintain an equitable action "to prevent and restrain the use" of such imagery.

This request for injunctive relief does not rely on, or challenge, the actual content of the Defendant's podcast videos that are described in the SAC (**Dkt. 88**). It is the wrapper "thumb nail" designs and use of names in titles and video descriptions that is challenged pursuant to NYCRL § 51.

## PROCEDURAL HISTORY

Plaintiff alleged that the Defendant has used Plaintiff's image and name without his consent in the **SAC (Dkt. 88)** and the First Supplemental Complaint (**FSC, Dkt. 150**). The magistrate has

ordered that the **SAC** is to be supplemented by "*paragraphs 1, 39 through 45 and 47 through 50*" of the **FSC**, see ORDER (**Dkt. 160**). The Defendant's various motions to dismiss the claims of the **SAC** and **FSC** have been heard and terminated.

The Defendant did not file ANSWER to the **SAC** (**Dkt. 88**) although ORDERED to by the magistrate on 10/24/2019 (**Dkt. 97**). This ORDER was amplified and re-affirmed on 11/14/2019 by another magistrate's ORDER (**Dkt. 102**). An "Answer" was due by 11/18/2019 (**Dkt. 102**). The Defendant failed to file an answer to the SAC (**Dkt. 88**). Instead, the Defendant filed a motion to dismiss with an accompanying memorandum (see **Dkt. 105 and 106**). The Court will recall that the Plaintiff questioned these papers (**Dkt. 105 and 106**) in a letter motion of 11/25/2019 (**Dkt. 112**). On 08/03/2020 the presiding judge terminated the Defendant's motion to dismiss (**Dkt. 106**) via ORDER (**Dkt. 140**). The Defendant made no attempt to amend, vacate or otherwise modify the Court ORDER of 08/03/2020 (**Dkt. 106**).

The Defendant had filed an ANSWER to the operative complaint (**Dkt. 5**) on 10/10/2018 (**Dkt. 35**). In that 10/10/2018 pleading (ANSWER) the Defendant provided affirmative defenses to the allegations raised.

## BACKGROUND STATEMENT

1. For the purposes of this motion the Defendant has not denied the allegations of the SAC (**Dkt. 88**), although ordered to provide an "Answer" by ORDERS of 10/24/19 and 11/18/2019. Instead, the Defendant filed a motion to dismiss (**Dkt. 106**) which was terminated by ORDER of 08/03/2020 (**Dkt. 140**). The Defendant has sufficiently forfeited any opposition to the SAC (**Dkt. 88**). Thus, the well-pleaded factual allegations of the SAC (**Dkt. 88**) should be assumed to be true by this Court as they have never been denied by the Defendant.

2.     It is undisputed that the Defendant has used the Plaintiff's name and image in an exploitative and non-incidental manner in promotional commercial podcasts to tens of thousands of people. Defendant's on-going use of Plaintiff's image/name is open-ended, continuous, and non-stop.

3.     To amplify the commercial nature of Defendant's *"business"* it is instructive to review the Defendant's e-mail message to the magistrate judge on 11/13/2019. The Defendant advised the magistrate that, *"[o]nline broadcasting is my full time job and primary source of income"* and *"has crippled my on-line business by preventing me from live streaming my daily broadcasts"* and *"[t]his has negative impacted my income"* and *"disrupt my day to day life, my business "*.

> Jason Goodman <truth@crowdsourcethetruth.org>  11/13/2019 7:53 PM   JG
> To Aaron_NYSDChambers@nysd.uscourts.gov  Copy David George Acton Sweigert
>
> Reply   Reply all   Forward   Delete
>
> Thank you your honor, however Mr. Outtrim's inappropriate actions have revealed new evidence that is extremely significant and must be included in my answer. Outtim's latest action provides further proof of the alleged conspiracy between Plaintiff and others including Outtrim. This causes me to request that you reconsider today's order given the following circumstances:
>
> Irrespective of Mr. Outtrim's denial of intervention, his reason for attempting to intervene changes my answer and requires additional time to complete. Prior to emailing you inappropriately, Mr. Outtrim submitted a fraudulent complaint to YouTube that has crippled my online business by preventing me from live streaming my daily broadcasts to my audience of 85,000 viewers. This has negatively impacted my income and is a clear example of the ongoing extrajudicial steps Plaintiff and his associates have taken in their persistent and escalating effort to disrupt my day to day life, my business and my ability to defend myself in this legal mater.
>
> Online broadcasting is my full time job and primary source of income. The YouTube penalty will continue indefinitely IF Outtrim is able to demonstrate to Google that he has an active lawsuit against me for the same claim he has submitted to YouTube. It is extremely important to my defense that I have the additional time requested so I may adequately explain and present the relevant facts and details related to shed light on this newest development and so the court may consider these facts in rendering its decision.
>
> I respectfully request that you reconsider the order and allow me the time extension. I stand ready to submit another motion for extention of time if that would please the court.
>
> Jason Goodman, Defendant Pro Se
>
> *Please note ~~jamesgoodman73~~@protonmail.com is not a valid email address for Defendant and has been inappropriately introduced into these proceedings by Plaintiff

Above: E-mail message from Def to the Magistrate 11/13/2020

4.     Indeed, the New York state licensed corporate entity for which the Defendant purports to be the "C.E.O." is entangled in related litigation (see *The National Academy of Television Arts and Sciences, Inc., et al. v. Multimedia Systems Design, Inc.*, 20-CV-7269, Hon. Valerie E.

7

Caproni presiding [herein NATAS lawsuit]). *Multimedia* is the corporate entity to which the U.S. Patent and Trademark Office (U.S.P.T.O.) has assigned the trademark "CrowdSource The Truth" (CSTT).

## CROWDSOURCE THE TRUTH - Trademark Information

By Multimedia System Design, Inc 

The CROWDSOURCE THE TRUTH trademark was assigned a Serial Number #87752970 -- by the United States Patent and Trademark Office (USPTO). Trademark Serial Number is a unique ID to identify the CROWDSOURCE THE TRUTH mark in USPTO. The CROWDSOURCE THE TRUTH mark is filed in the category of Education and Entertainment Services . The legal correspondent for CROWDSOURCE THE TRUTH trademark is MULTIMEDIA SYSTEM DESIGN, INC, 252 7TH AVENUE, 6S NEW YORK, NY 10001 . **The current status of the CROWDSOURCE THE TRUTH filing is REGISTERED.**

Based on Multimedia System Design, Inc, the CROWDSOURCE THE TRUTH trademark is used in the following business: Providing on-line videos featuring news in the nature of current event reporting, not downloadable .

Cite: https://www.trademarkelite.com/trademark/trademark-detail/87752970/CROWDSOURCE-THE-TRUTH

5. All of the publicly available podcasts distributed across more than 13 CSTT social media properties contain a solicitation for members of the public to become paying "patrons" on credit card processing "pay walls" known as PATREON and Subscribe Star. These members of the public are enticed to watch these commercial video podcast via the use of 100% pure commercial "wrappers".

8

> **SubscribeStar.com/crowdsourcethetruth**
> **patreon.com/crowdsourcethetruth**
>
> Sunday with Charles – Honey, I Shrunk the Landslide
>
> 12,272 views • Streamed live 7 hours ago    👍 1.2K   👎 28   SHARE   SAVE   ...
>
> Jason Goodman                                         SUBSCRIBED

Cite: https://www.youtube.com/watch?v=WAzXIRL-5UQ

6.  Plaintiff is not seeking a First Amendment analysis of the video podcast content itself; but, rather those technical instrumentalities that attract members of the general Internet browsing public to click on the particular promoted video (e.g. thumb nails, titles, video descriptions, etc.). These instruments are not embedded in the supposed "protected" content of the video podcast and are not subject to a First Amendment analysis.

7.  In the future, the Court may indeed attempt to determine the exact nature of the Defendant's podcast content, as to whether it can be fairly construed as protected by AMEND. I, U. S. Const.. That should not be the question before the Court with this pleading.

8.  The Court is asked to narrowly construe the use of the Plaintiff's imagery and surname (likeness, name, persona) in the use of "thumbnails", "titles" and "video descriptions" that herald the publication of the video.

9.  Below is an example of a "thumbnail" to herald a video and entice members of the general Internet browsing public to watch. As described in the SAC (**Dkt. 88**) the video is entitled "*Can Simulation Hacking IT Guru Sweigert Explain BAE's Bit Spread 9/11? With David*

9

*Hawkins.*" ", release 3/1/2019, at tie-mark 12:47. Internet URL:

https://www.youtube.com/watch?v=7J2IhyrT4PQ&t=12s



Above: Representative example of thumb nails with the Plaintiff's likeness (**Dkt. 88**).

10. As described in the SAC (**Dkt. 88, para. 38**) the use of the Plaintiff's name and image in the above example is accompanied by the following video description.

> **Streamed live on Mar 1, 2019**
> **David continues to explore the capabilities of a S.H.I.T. guru and the possibility that ethical hacking could compromise BAE Bit spreading technology.**

11. Presented below are the upload editing screens for the social media service YouTube, LLC (youtube.com). During the uploading process the content creator has the choice of creating a video title, a video description and to upload a pictorial electronic file (such as a .JPEG file) to act as a thumb nail. These features are referred to as the "wrapper" of the video.

10



Above: YouTube upload control panel



Above: YouTube upload control panel

11

## LAW AND ARGUMENT

### Injunctive Relief

**12.** As noted above, NYCRL § 51 provides that a person whose image or name is used without his consent may maintain an equitable action "to prevent and restrain the use" of the image / name.

**13.** The facts alleged in the **SAC & FSC** establish all elements necessary to obtain injunctive relief from this Court. Defendant has not denied the allegations presented in the SAC (**Dkt. 88**) or the FSC (**Dkt. 150**). The allegations are within the scope of NYCRL §§ 50, 51 have not been contested. For the purposes of this motion any statements in the complaint that have not denied should be taken as true by this Court.

### Technical "avatar" like materials can be restrained from publication

**14.** The courts have determined that imagery / name / *persona* commercial misappropriation can be restrained by NYCRL § 51. Even if the image has been modified, as in the case of the grotesque images the Defendant creates.

**15.** "We conclude a computer generated image may constitute a portrait within the meaning of that law," *Lohan v. Take-Two Interactive Software, Inc.*,. 97 N.E.3d 389 (N.Y. 2018). The *Lohan* court reasoned:

> "Federal courts share the view that "any recognizable likeness, not just an actual photograph, may qualify as a 'portrait or picture' " (Burck v. Mars, Inc., 571 F.Supp.2d 446, 451 [S.D. N.Y.2008], quoting Allen v. National Video, Inc., 610 F.Supp. 612, 622 [S.D. N.Y.1985] ), having ruled that a composite photograph and drawing (Ali v. Playgirl, Inc., 447 F.Supp. 723, 726 [S.D. N.Y.1978] ) and a cartoon (Allen, 610 F.Supp. at 622) may trigger the protections of Civil Rights Law article 5. In view of the proliferation of information technology and digital communication, we conclude that a graphical representation in a video game or like media may constitute a "portrait" within the meaning of the Civil Rights Law."

16. The social thumb nail feature, video description and title feature are wrapper instrumentalities identical to the *Lohan* "avatar". As noted in the *Lohan* court, it is the non-consensual misappropriate of a likeness / name /persona for commercial reasons that triggers protections under NYCRL § 51. Quoted in relevant part:

> "In point of fact, Civil Rights Law §§ 50 and 51 "were drafted narrowly to encompass only the commercial use of an individual's name or likeness and no more" (Arrington, 55 NY2d at 439). Based on that slender legislative intent, courts determining questions of the application of Civil Rights Law § 51 have limited the remedial use of that statute."

17. Relying on *Leon v Martinez*, 84 NY2d 83, 87-88 [1994] the Lohan court reasoned:

> "Manifestly, there can be no appropriation of [a] plaintiff's [likeness] for commercial purposes if he or she is not recognizable from the [image in question]" (Cohen, 63 NY2d at 384). It follows that "a privacy action [cannot] be sustained . . . because of the nonconsensual use of a [representation] without identifying features" (id.).

18. Unlike Lohan, the Plaintiff is easily recognizable in the grotesque portraits, accompanied by video descriptions that herald the Plaintiff's name, as catalogued in the **SAC (Dkt. 88)**.

**Irreparable Career Damage**

19. Because Plaintiff is seeking a preliminary injunction pursuant to NYCRL § 51, the irreparable harm analysis in this case differs from a traditional preliminary injunction analysis. NYCRL §§ 50, 51 on their face entitle private plaintiffs to seek injunctive relief so long as they have suffered an injury as a result of a defendant's misappropriation of the plaintiff's persona, name and likeness.

20. In his social media podcasts, while using technical wrapper instrumentalities, the Defendant has improperly used the persona, name and imagery of the Plaintiff for "advertising and trade" to promote video podcast content that solicits credit card payment third-party payment sites PATREON and SubscribeStar "pay-walls" (a techno industry term that is a spin-off of "firewall").

13

21.   The **SAC & FSC** describe instances when the Defendant specifically targeted the Plaintiff's career in the form of his accreditation as a Certified Ethical Hacker (**CEH**).

**22.**   United States Department of Defense (DoD) Directive 8570 sets out the requirements for the "Information Assurance" workforce covering policies and responsibilities regarding the training, certification, and workforce management. The Cyber Security Service Provider (CSSP) DoD 8570 designation requires the CEH.

**23.**   As the Court will recall, the **SAC (Dkt. 88)** is bulging with the evidence of the misappropriate of the Plaintiff's *persona* / likeness / name in technical wrapper instrumentalities. Defendant's podcasts that include imagery of the Plaintiff, variations of the name "David Sweigert" and commercial career terminology such as "ethical hacker" in the title, description, or meta-data, injure the Plaintiff's career, business and technical reputation. Examples shown below:



Above:   Small sample of CSTT podcasts featuring the Plaintiff

14

**24.** For over a decade the Plaintiff has published technical reports and books that advance the state of the art of cyber security incident response. The Plaintiff is active in the research and publishing of new techniques to reduce the severity of critical infrastructure outages, etc. This journey towards technical excellence represents the "persona" and "personage" of the Plaintiff. Not only does the Defendant want to exploit the imagery and name of the Plaintiff but the Defendant wants to exploit the persona / personage of the Plaintiff as well – this violates NYCRL §§ 50,51.

**25.** Contributing to the state of the art via published peer reviewed articles and treatises is a professional requirement of a CEH holder. These grotesque podcast technical wrappers have a cumulative negative impact on the Plaintiff's career, technical standing, consultative opportunities, etc.

**26.** Peer-viewed security experts researching in the cyber security field as just as apt to stumble across the Defendant's grotesque creations as they could discover serious technical articles requiring peer review written by the Plaintiff.

**27.** In essence, the Defendant has used these technical wrapper instrumentalities to poison the Internet's peer reviewed cyber security well and muddy the critical infrastructure protection waters to cast a shadow of humiliation and doubt on the Plaintiff. This is directly and indirectly damaging to the Plaintiff's career, business abilities, technical standing in the community, etc.. This type of reputational harm has a direct impact on Plaintiff's professional reputation and long-term career prospects.



Cross-Domain Interoperability in a Cyber Warfare Response: Minimizing Threat Rigidity in Emergency Management and Cyber Security
by Mr David Sweigert M.Sci. | Mar 28, 2018

Paperback
$6.95

✓prime Get it as soon as Mon, Nov 23
FREE Shipping on orders over $25 shipped by Amazon



Avoiding the Digital Maginot Line: Emergency Manager's Guide to Modernizing Cyber Resilience: Peer-review copy
by Dave G. Sweigert | Nov 12, 2019
★★★★★ ˅ 3

Paperback
$6.99

✓prime Get it as soon as Mon, Nov 23
FREE Shipping on orders over $25 shipped by Amazon

28.     As noted in *Allen v. National Video,* 610 F. Supp. 612, 617-618 (S.D.N.Y. 1985) and *Kennedy Onassis v. Christian Dior N.Y.,* 122 Misc. 2d 603, 604, 472 N.Y.S.2d 254, 256 (Sup. NY 1984) even the use of "look-alikes" for advertising and trade purposes that create an "overall impression" of the plaintiff was held as a sufficient violation of the law as it amounts to an appropriation of another's likeness for commercial advantage without consent.

## CONCLUSION

This pleading performs a carve out of the *wrapper thumbnail / name issue* apart from any legitimate First Amendment issues concerning video podcast content.

The Defendant has misappropriated the Plaintiff's name and likeness into wrapper instrumentalities to promote to the Defendant's commercial content to the general Internet browsing public.

16

These instruments (thumbnails, titles and descriptions) are not intrinsically newsworthy and are not embedded within the video podcast content. Rather these instruments act as an advertising announcement for members of the general Internet browsing public to watch commercial video content. These wrappers are 100% commercial content.

The Defendant will not be harmed if he is restrained for this continued commercial exploitation of the Plaintiff. The Defendant will not be financially harmed by any order of this Court directing the Defendant to cease and desist the commercial exploitative use video podcast wrappers that include the Plaintiff's persona, name or likeness.

*D.S—t* /
**D. G. SWEIGERT, C/O**
**GENERAL DELIVERY**
**ROUGH AND READY, CA 95975**

*12·8·20*

## CERTIFICATE OF SERVICE

I HEREBY ATTEST that a true copy of the attached pleadings has been sent to the following addressees on the 4 day of December via prepaid First Class U.S. Mail. So sworn under oath.

Jason Goodman, CEO
Multimedia Systems Design, Inc.
252 7th Avenue, Apart. #6S
New York, NY 10001

PRO SE OFFICE, #200
U.S. District Court
500 Pearl Street
New York, New York 10007-1312

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
Spoliation-notice@mailbox.org

12-4-20

**USPS TRACKING® NUMBER**

9505 5067 1486 0339 3512 37

U.S. POSTAGE
$7.75
PM 2-Day
95603 0006
Date of sale
12/04/20
06 2SSK
11488544



# UNITED STATES POSTAL SERVICE® | PRIORITY® MAIL

- Expected delivery date specified for domestic use.
- Most domestic shipments include up to $50 of insurance (restrictions apply).*
- USPS Tracking® included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

**FROM:**

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

**TO:**

**PRO SE OFFICE, Room 200**
**U.S. District Court**
**500 Pearl Street**
**New York, New York 10007-1312**

## FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

## TRACKED ■ INSURED


PS00001000014
EP14F May 2020
OD: 12 1/2 x 9 1/2

To schedule free Package Pickup, scan the QR code.



USPS.COM/PICKUP