**U.S. DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

RECEIVED
SDNY PRO SE OFFICE

2020 DEC 21   PM 2: 56

| SWEIGERT | CIVIL CASE #: |
|---|---|
| V. | 1:18-CV-08653-VEC |
| GOODMAN | JUDGE VALERIE E. CAPRONI |

## PLAINTIFF'S AMENDED REPLY TO DEFENDANT'S OPPOSITION (DKT. 176) TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

**MAY IT PLEASE THE COURT:**

This pleading is in **REPLY** to Defendant's opposing papers (**ECF Dkt. 176**).

This pleading supersedes the original and is an **AMENDED** pleading.

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

*12.15.20*

1

<u>**MEMORANDUM OF LAW**</u>

<u>**TABLE OF CONTENTS**</u>

TABLE OF CONTENTS ................................................................................................... 2

TABLE OF AUTHORITIES ............................................................................................. 3

SUMMARY OF RELIEF SOUGHT................................................................................. 4

PRELIMINARY STATEMENT ....................................................................................... 5

PROCEDURAL HISTORY............................................................................................... 6

LAW AND ARGUMENT..............................................................................................13

CONCLUSION ................................................................................................................ 15

CERTIFICATE OF SERVICE ....................................................................................... 18

12·15·20

## TABLE OF AUTHORITIES

**Cases**

*Ali v. Playgirl*, 447 F. Supp 723, 726 (SDNY 1978) ................................................................. 16

*Ali v. Playgirl*, 447 F. Supp. 723, 727 (S.D.N.Y. 1978) ............................................................ 16

*Ali v. Playgirl,* 447 F.Supp. 723, 726-727 (SDNY 1978) ........................................................ 16

*Binns v. Vitagraph* ..................................................................................................................... 17

*Binns v. Vitagraph Co.*, 210 N.Y. 51, 103 N.E. 1108 [1913], supra. ........................................ 15

*Binns v. Vitagraph Co.*, 210 N.Y. 51, 57-58 (1913) ................................................................. 15

*Binns v. Vitagraph Co.,* supra, 210 N.Y., at 56-59, 103 N.E. 1108 .......................................... 15

*Finger v. Omni Publs. Intl.*, 77 N.Y.2d 138, 141-142, 564 N.Y.S.2d 1014, 566 N.E.2d 141 ...... 17

*Howell v. New York Post Co.,* supra, 81 N.Y.2d, at 123, 596 N.Y.S.2d 350, 612 N.E.2d 699 .... 17

*Messenger v. Gruner + Jahr Printing & Publ'g*, 727 N.E.2d 549, 554-555 (N.Y. 2000). .......... 16

*Messenger v. Gruner*, 94 N.Y.2d 436, 446, 706 N.Y.S.2d 52, 58 (2000) .................................. 17

*Spahn* 18 N.Y.2d 324, 328 (1966) ............................................................................................. 15

*Spahn v. Julian Messner, Inc.,* 18 N.Y.2d 324, 274 N.Y.S.2d 877, 221 N.E.2d 543, vacated 387

    U.S. 239, 87 S.Ct. 1706, 18 L.Ed.2d 744 .......................................................................... 15

*Spahn v. Julian Messner, Inc.,* 21 N.Y.2d 124, 127, 286 N.Y.S.2d 832, 233 N.E.2d 840 [1967] 16

*Spahn v. Messner, Inc.* , 18 N.Y.2d 324, 274 N.Y.S.2d 877 (1966) ........................................... 17

*Time, Inc. v. Hill*, 385 U.S. 374 (1967) ..................................................................................... 17

*Wojtowicz v. Delacorta Press*, 58 A.D.2d 45, 46-47, 395 N.Y.S.2d 205, 206-207 (1st Dept. 1977)

    aff'd 43 N.Y.2d 858, 403 N.Y.S.2d 218 (1978) .................................................................. 8

**Statutes**

NYCRL § 50 ............................................................................................................................... 15

## SUMMARY OF RELIEF SOUGHT

This is a text book lawsuit concerning a publisher (Defendant) of deceptive fictionalized "news stories" who attaches innocent parties (Plaintiff) to the "news story" and misappropriates that party's persona for commercial gain, to the detriment of the injured party (Plaintiff).

Consistent with this Court's determination that the Defendant's on-line content is comprised of "concocted outlandish conspiracy theories" that are "highly illogical and incomprehensible" the Court should now find that the Defendant's claims of exemption as to news, newsworthiness or public interest under New York Civil Rights Law (NYCRL) §§ 50, 51 is misplaced.

The law in this circuit is that content may be so infected with fiction, dramatization, or embellishment that it cannot be said to fulfill the purpose of the newsworthiness exception (see *Binns-Spahn* doctrine). The Defendant claims these works are "news", "newsworthy" and in the "public interest" which conceals their fictive nature. CrowdSource The Truth misleads the public into believing these grotesque creations are somehow rooted in news or newsworthiness.

Pursuant to the *Binns-Spahn* doctrine the Plaintiff seeks the removal of the content wrappers that include Plaintiff's image / persona / likeness / surname that are used to promote deceptive and fictionalized CrowdSource The Truth video podcasts that maximize the use of the Google Search Engine Optimalization (S.E.O.). This is needed to prevent further irreparable damage to the Plaintiff's career, technical reputation, long term employment prospects, etc.

## PRELIMINARY STATEMENT

In sum, Defendant is claiming the news, newsworthy or public interest exemption to NYCRL §§ 50, 51 to justify the misappropriation of the Plaintiff's likeness (Dkt. 176).

Plaintiff contends that Defendant's video podcasts, which have attached the Plaintiff's image / name / persona, are "so infected with fiction, dramatization, or embellishment that it cannot be said to fulfill the purpose of the newsworthiness exception".

Nonetheless, the Defendant has purposely chosen, time and time again, to include the real name and actual photograph / likeness / persona of the Plaintiff (without the express written permission of the Plaintiff.) in grotesque "concocted conspiracy theories" (**Dkt. 140, 175**) embedded in deceptive and fictionalized CrowdSource The Truth productions to implicate the Plaintiff in events where there is connection ("no relationship doctrine").

As the district judge has observed, the Defendant is engaged in the "rehash [of] "incomprehensible and illogical online conspiracy theories,"" **Dkt. 87** at 1. Further, the Defendant's online content is described as "concocting outlandish conspiracy theories" (**Dkt 87, 140**). The release and publication of these "outlandish" podcasts filled with fictionalized conspiracy theories by the Defendant, is heralded by these click-bait "wrappers" (image / persona / name).

The Defendant and his side-kick David Charles Hawkins (as described in the **SAC**) have injured – and continue to injure -- the Plaintiff by the unauthorized inclusion of his persona / image / name which is attached to a barrage of fictional, non-news, outlandish "Alice in Wonderland"

stories.  This fictionalized content is not eligible for the newsworthy exemption of NYCRL §§ 50, 51.

## **PROCEDURAL HISTORY**

Plaintiff alleged that the Defendant has used Plaintiff's image and name without his consent in the **SAC (Dkt. 88)** and the First Supplemental Complaint (**FSC, Dkt. 150**).  The magistrate has ordered that the **SAC** is to be supplemented by "*paragraphs 1, 39 through 45 and 47 through 50*" of the **FSC**, see ORDER (**Dkt. 160**).  The Defendant's various motions to dismiss the claims of the **SAC** and **FSC** have been heard and terminated.

As stated in the ORDER of 08/03/2020 (**Dkt. 140**) the Defendant was allowed leave of the court to file his third counterclaim, which he did on 09/01/2020 (**Dkt. 145**).  Plaintiff filed a motion to dismiss (**Dkt. 151**), which was opposed by the Defendant (**Dkt. 161**), to which the Plaintiff filed a reply (**Dkt. 162**).

The magistrate judge issued a Report and Recommendation (**R&R**) on 11/05/2020 (**Dkt. 164**) recommending dismissal of the Defendant's counterclaims.

As stated in the ORDER of 12/11/2020 (**Dkt. 175**), the Defendant opposed the magistrate's R&R (**Dkt. 167**), which was answered by Plaintiff's in his reply (**Dkt. 172**).  The district judge granted the operative relief requested in Plaintiff's **Dkt. 172** and dismissed the Defendant's third counterclaim.

Plaintiff sought injunctive relief by his motion for injunctive relief (**Dkt. 168**) on 11/19/2020, which was supplemented by **Dkt. 169** on 11/25/2020.  **Dkt. 168** was superseded by Plaintiff's amended injunctive relief pleading on 12/08/2020 (**Dkt. 174**).

Defendant filed his opposition to injunctive relief (**Dkt. 174**) with his opposing papers (**Dkt. 176**) on 12/14/2020 and chose to specifically address the amended pleading (**Dkt. 174**). Therefore, **Dkt. 168** is not the operative motion in play, as it is an amended legal nullity.

## BACKGROUND STATEMENT

1.      At the outset, ""click-bait wrapper" is a shorthand to describe social media technical instrumentalities (thumbnails, video titles, video descriptions).  "Click-bait" is the practice of publishing "wrapper" items (image – thumbnails  / persona – title / name – video description) to attract members of the public to "click" on the video thumbnail and engage their video player or viewer to watch the podcast.

2.      The Plaintiff's amended pleading (**Dkt. 174**) narrowly scoped the issue of technical instrumentalities (or "wrapper" artifacts) that promote and herald the Defendant's fictionalized stories about the Plaintiff described in the SAC (**Dkt. 88**).  The Plaintiff purposely attempted to advance judicial economy by "de-scoping" the injunctive relief requested to the issue of click-bait wrapper technical instrumentalities – without disturbing the actual podcast content itself (**Dkt 168, 174**).

3.      The Defendant has answered with opposing papers **Dkt. 174** and has conceded that the issue in controversy is whether or not these technical wrapper instrumentalities can be construed as commercial speech (see excerpt below of Defendant's **Dkt. 176**).

> picture or voice is used within [New York] for advertising purposes or for the purposes of trade
>
> 4
> 5  without" written consent. To state a claim under NYCRL § 50 and 51, the Plaintiff must satisfy
> 6  three elements (1) use of name, portrait, or likeness; (2) for "advertising purposes or for the
> 7  purposes of trade;" (3) without written permission.
> 8        Defendant does not dispute that Plaintiff has satisfied (1) and (3). However, Plaintiff has
> 9
> 10  failed to satisfy (2) by falsely claiming his likeness was used for "advertising purposes or for the
> 11  purposes of trade" as defined by NYCRL § 50 and 51. The statute includes broad exceptions for

7

4.      Defendant does not dispute that he uses the Plaintiff's "name, portrait, picture or voice"(as discussed in *Wojtowicz v. Delacorta Press*, 58 A.D.2d 45, 46-47, 395 N.Y.S.2d 205, 206-207 (1st Dept. 1977) aff'd 43 N.Y.2d 858, 403 N.Y.S.2d 218 (1978) ).

5.      The Defendant's use of click-bait wrappers (thumbnails, video titles and video descriptions) is designed to leverage the Google Search Engine Optimization (**S.E.O.**) program to increase "clicks" of the podcast video.  When a member of the public views Google search results these click-bait wrappers are displayed.  Then a viewer can select an entry by clicking (mouse selection) on the thumbnail of the video (displaying Plaintiff's name, image, etc.) to launch the video podcast in the individual's player or viewer.  Such click-bait wrappers are not embedded into the video content itself (which is not in dispute in this motion).

6.      As shown on page 39 of the SAC, the Plaintiff's image and name is attached to a podcast that addresses the erasure of supposed digital evidence of the Clinton first family "death pool betting" scheme (see below).  In sum, the Defendant pushes the idea that the Clinton first family places bets on a worldwide super high-speed computer network on how many people will die during the next staged tragedy, like the W.T.C. on 09/11/01.  The Defendant then associates the Plaintiff with this "news" article to strain at creating a "relationship" between the Plaintiff and the "story".



7.  Another example appears on page 40 of the **SAC**, displaying the image of the Plaintiff in a deceptive fictionalized "news story" related to the possible erasure of electronic evidence – presumably by the Plaintiff – to hide evidence of various murder plots. Again, there is no connection between these fictionalized "news" stories ("concocted conspiracy theories") and the Plaintiff.



[video description]
Started streaming 10 minutes ago
Are devious Social Engineers using principles outlined in Split Tunneling patents to send bits of data in packets known only to authorized parties on a network? Could such an approach be used to break the chain of custody of key evidence and frustrate investigators while scrubbing truth from a crime scene? David Hawkins joins me to explore the roles of self styled "ethical hackers" and their affinity for Weathermen and the systematic assassination fo the truth.

8.      As seen on page 42 of the SAC, the Plaintiff's image is present in the thumbnail of the

podcast and his name is used in podcast title and podcast description.  Again, the Plaintiff has no

connection with this fictionalized podcast which rehashes the murder of a British intelligence

agent whose body was found in a padlocked gym bag.



Does Sweigert's Social Engineering Spin the Bit
Spread Spy in the Padlocked Bag with David
Hawkins

Jason Goodman
Subscribed  93K

3,048 views

[video description]
Streamed live on Feb 27, 2019
Is Sweigert's current social engineering intended to distract from previous hacks?

9.      The Plaintiff is not involved, whatsoever, in the grotesque "news" podcasts concocted by

the Defendant and his side-kick David Charles Hawkins (White Rock, British Columbia,

Canada) as described in the SAC (**Dkt. 88**).

10.     For at least fourteen (14) years, Mr. Hawkins has polluted the Internet with his deceptive

fictionalized accounts of the Jon Benet Ramsey murder, the cause of death by gunshot wound to

the head of a U.S. Navy Captain at the Pentagon on 9/11/2001, the use of a University of Illinois

"bat cave" simulation center to enable the Clinton first family to place "death pool bets" on the

number of victims at a mass causality incident such as the W.T.C. 09/11/01 disaster.  The

Plaintiff has no connection with any of these events and yet his persona is associated with these

tragedies in the Defendant's "news" podcasts.

11.     As seen on page 43 of the **SAC**, the Plaintiff's name is associated with the conspiracy

theory that orbits around so-called "missing encryption keys" at the University of Illinois "EVL

BAT CAV", a supposed high-speed network simulation center.  This theory is then connected in

a disjointed manner with a Pentagon bomb theory ("BAE Bit-Spread").  The Plaintiff has

nothing to do with this (see excerpt below).  This does not stop the Defendant from presenting

this podcast under the "CrowdSource The **TRUTH**" banner and confuses the public as to the

truthfulness of the podcast.



12.     The same is true for the images on page 47 of the SAC (see below).



13.     In the video above, the podcast content describes the death of a U.S. Navy Captain at the

Pentagon and stipulates he was murdered by a "wet hit team" that used the pre-planned crash of

the jetliner on 09/11/2001 at the Pentagon as a "cover" for this assassination.  Again, the Plaintiff

has no connection with this so-called "news" or "concocted conspiracy theory" that is presented

to the public as "news", "newsworthy" or in the "public interest".

14.     Page 49 of the SAC includes more of the same (see below).



**A simple Google search "Sweigert ethical hacker" reveals CSTT videos**

15.     The Court should recall that the CrowdSource The Truth trademark was issued for

"Educational and <u>Entertainment</u> Purposes", not for "news" or "news gathering".

## CROWDSOURCE THE TRUTH - Trademark Information

**By Multimedia System Design, Inc**

The CROWDSOURCE THE TRUTH trademark was assigned a Serial Number #87752970 – by the United States Patent and Trademark Office (USPTO). Trademark Serial Number is a unique ID to identify the CROWDSOURCE THE TRUTH mark in USPTO. The CROWDSOURCE THE TRUTH mark is filed in the category of **Education and Entertainment Services** . The legal correspondent for CROWDSOURCE THE TRUTH trademark is **MULTIMEDIA SYSTEM DESIGN, INC, 252 7TH AVENUE, 6S NEW YORK, NY 10001 . The current status of the CROWDSOURCE THE TRUTH filing is REGISTERED.**

Based on Multimedia System Design, Inc, the CROWDSOURCE THE TRUTH trademark is used in the following business: Providing on-line videos featuring news in the nature of current event reporting, not downloadable .

Cite:  <u>https://www.trademarkelite.com/trademark/trademark-detail/87752970/CROWDSOURCE-THE-TRUTH</u>

## LAW AND ARGUMENT

16.     The law in this circuit is that content may be so infected with fiction, dramatization, or

embellishment that it cannot be said to fulfill the purpose of the newsworthiness exception

according to the *Binns-Spahn* doctrine. *Spahn v. Julian Messner, Inc.,* 18 N.Y.2d 324, 274

N.Y.S.2d 877, 221 N.E.2d 543, vacated 387 U.S. 239, 87 S.Ct. 1706, 18 L.Ed.2d 744, adhered to

on remand and rearg. 21 N.Y.2d 124, 286 N.Y.S.2d 832, 233 N.E.2d 840 [1967], and *Binns v.*

*Vitagraph Co.,* 210 N.Y. 51, 103 N.E. 1108 [1913], supra.

17.     Simply stated, pictures / personas / images of an individual not related to an actual "news

story", but were merely used to entertain the audience, violate NYCRL § 50, as discussed in

*Binns v. Vitagraph Co.,* 210 N.Y. 51, 57-58 (1913).

18.     In *Spahn* the N.Y. Court of Appeals upheld a jury verdict granting plaintiff an injunction

and damages pursuant to NYCRL §  51, stating that although an unauthorized, truthful biography

of plaintiff would be newsworthy, the protection of the newsworthiness doctrine did not extend

to this "substantially fictitious biography" (18 N.Y.2d, at 328-329, 274 N.Y.S.2d 877, 221

N.E.2d 543). ("The factual reporting of newsworthy persons and events is in the public interest

and is protected. The fictitious is not.") *Spahn* 18 N.Y.2d 324, 328 (1966)

19.     Similarly, in *Binns*, defendant produced a film about plaintiff's role in rescuing the

passengers of a shipwrecked boat.    Although based on a true occurrence, the details were

manufactured, and the story was "mainly a product of the imagination."    The N.Y. Court of

Appeals held that defendant's conduct was actionable under NYCRL § 51, stating that although a

truthful "recounting or portraying [of] an actual current event" would be protected, the film was

designed to amuse the audience rather than to "instruct or educate" (see, *Binns v. Vitagraph Co.,*

supra, 210 N.Y., at 56-59, 103 N.E. 1108).

20. "[B]efore recovery by a public figure may be had for an unauthorized presentation of his life, it must be shown, in addition to the other requirements of the statute, that the presentation is infected with material and substantial falsification and that the work was published with knowledge of such falsification or with a reckless disregard for the truth" (*Spahn v. Julian Messner, Inc.,* 21 N.Y.2d 124, 127, 286 N.Y.S.2d 832, 233 N.E.2d 840 [1967] [emphasis added] ).

21. *Spahn* did not plead defamation (the book was laudatory), and claimed only that the book took "pecuniary advantage" of his identity "to create for profit a fictionalized and dramatic story" "designed primarily and exclusively for entertainment value." 43 Misc. 2d 219, 227 (Sup. Ct. 1964).

22. The rationale underlying both *Binns* and *Spahn* was recently reaffirmed in *Messenger v. Gruner + Jahr Printing & Publ'g,* 727 N.E.2d 549, 554-555 (N.Y. 2000). See infra, note 17.

23. In *Ali v. Playgirl,* 447 F. Supp 723, 726 (SDNY 1978) the statutory definition of "portrait" is satisfied by the cartoon titled "Mystery Man" depicting a nude black man seated in the corner of a boxing ring with the cartoon making further reference using the phrase "the Greatest" in the carton notes. *Ali v. Playgirl,* 447 F.Supp. 723, 726-727 (SDNY 1978).

24. The S.D.N.Y. citing well established case law held in order for the statute to be displaced, the unauthorized use of the image must be in connection with an item of <u>news</u> or otherwise be <u>newsworthy</u> as a matter of public interest. *Ali v. Playgirl,* 447 F. Supp. 723, 727 (S.D.N.Y. 1978).

25. As described in the **SAC**, these podcast deceptive "news" stories have claimed that the Plaintiff may have turned off the encryption modules of the Fire Department of New York (F.D.N.Y.) public safety radios, which led to the death of 343 fire-fighters on 09/11/2001. The

14

Defendant's podcasts laid blame for these deaths at the feet of the Plaintiff. The Defendant's

CrowdSource The Truth specializes in fictionalization of a real news events that ignores the

"debunking" of the conspiracy theories that link to the Plaintiff to these events. The Plaintiff has

no relationship to these events. In fact, those F.D.N.Y. Motorola radios had no encryption

module to tun off. See *Finger v. Omni Publs. Intl.*, 77 N.Y.2d 138, 141-142, 564 N.Y.S.2d 1014,

566 N.E.2d 141

26.     There is no real relationship between the Plaintiff and these grotesque CrowdSource The

Truth creations, which are advertisements in disguise (see, *Howell v. New York Post Co.,* supra,

81 N.Y.2d, at 123, 596 N.Y.S.2d 350, 612 N.E.2d 699 )

27.     Defendant's podcasts are "substantially fictional works at issue are nothing more than

attempts to trade on the persona", which does not fulfill the purposes of the newsworthy

exemption. *Messenger v. Gruner*, 94 N.Y.2d 436, 446, 706 N.Y.S.2d 52, 58 (2000) citing *Binns

v. Vitagraph* and *Spahn v. Messner, Inc.* , 18 N.Y.2d 324, 274 N.Y.S.2d 877 (1966).

28.     As stated in *Time, Inc. v. Hill*, 385 U.S. 374 (1967):

> "But although the New York statute affords "little protection" to the "privacy" of
> a newsworthy person, "whether he be such by choice or involuntarily" the statute
> gives him a right of action when his name, picture, or portrait is the subject of a
> "fictitious" report or article. FN9".
> See Footnote 9 below (quoted in relevant part).
>
> *Binns* v. *Vitagraph Co.*, 210 N.Y. 51, 103 N.E. 1108 (1913)

## CONCLUSION

As the Plaintiff has no real relationship to these "stories" the Defendant's use of these click-bait

wrappers is solely for the purpose of advertising the deceptive fictionalized video ("concocted

conspiracy theories") content is in violation of NYCRL §§ 50, 51 and are not eligible for the newsworthy and public interest exception.

As the district judge has observed, the Defendant is engaged in the "rehash [of] "incomprehensible and illogical online conspiracy theories," **Dkt. 87** at 1. Further, the Defendant's online content is described as "concocting outlandish conspiracy theories" (**Dkt 87, 140**). To accommodate the Defendant's "newsworthy" exemption the Court would have to amend its "outlandish conspiracy theories" opinion with a revised characterization of "news" and/or "newsworthiness" to describe podcasts of the Defendant as catalogued in the SAC (**Dkt. 88**).

The release and publication of these "outlandish" podcasts filled with fictionalized conspiracy theories by the Defendant, is heralded by these "wrappers" (image / persona / name) are used to promote via click-bait practices the Defendant's deceptive and fictionalized commercial content to the general Internet browsing public.

These wrapper instruments act as an advertising announcement for members of the general Internet browsing public to watch commercial video content. These wrappers are 100% commercial content that herald a fictionalized version of events (e.g., see 09/11/2001 W.T.C. grotesque ABEL DANGER conspiracy theories). The Plaintiff has no relationship to these "news stories" and thus the newsworthy exemption of NYCRL § 50 is not applicable.

The Defendant will not be harmed if he is restrained for this continued commercial exploitation of the Plaintiff and will not be financially harmed by any order of this Court directing the Defendant to cease and desist the commercial exploitative use video podcast wrappers that

include the Plaintiff's persona, name or likeness to promote fictionalized events that the Plaintiff has no relationship to.

This Court should ORDER the Defendant to remove all reference to the Plaintiff by image / name / persona that are attached to any video podcast described in the **SAC (Dkt. 88).**

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*

*12 . 15 . 20*

## CERTIFICATE OF SERVICE

I HEREBY ATTEST that a true copy of the attached pleadings has been sent to the

following addressees on the **15** day of December via prepaid First Class U.S. Mail.  So

sworn under oath.


**Jason Goodman, CEO**
**Multimedia Systems Design, Inc.**
**252 7th Avenue, Apart. #6S**
**New York, NY 10001**

**PRO SE OFFICE, #200**
**U.S. District Court**
**500 Pearl Street**
**New York, New York 10007-1312**


*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

**12·15·20**

18

## USPS TRACKING® NUMBER



9505 5067 1486 0350 3690 75



PRESS FIRMLY TO SEAL

**UNITED STATES POSTAL SERVICE**®

# PRIORITY MAIL

- Date of delivery specified*
- USPS TRACKING™ included to many major international destinations.
- Limited international insurance.
- Pick up available.*
- Order supplies online.*
- When used internationally, a customs declaration label may be required.

\* Domestic only



**FROM:**

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*



PRO SE #200 OFFICE

**TO:**

PRO SE OFFICE, Room 200
U.S. District Court
500 Pearl Street
New York, New York 10007-1312

10007

To schedule free Package Pickup, scan the QR code.



USPS.COM/PICKUP



PS00001000014

EP14F Oct 2018
OD: 12 1/2 x 9 1/2

\* Domestic only.    ✗ For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.