**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

D. George Sweigert,

       **Plaintiff,**

  -against-

Jason Goodman,

       **Defendant.**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/28/2020

1:18-cv-08653 (VEC) (SDA)

**REPORT AND RECOMMENDATION**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE VALERIE E. CAPRONI, UNITED STATES DISTRICT JUDGE:**

Pending before the Court is a motion by Plaintiff, George Sweigert ("Plaintiff"), for a preliminary injunction, pursuant to Sections 50 and 51 of the New York Civil Rights Law. (Pl.'s 12/8/20 Am. Mot., ECF No. 174.[1]) For the following reasons, I respectfully recommend[2] that Plaintiff's motion be DENIED.

**BACKGROUND**

On September 10, 2019, Plaintiff filed his Second Amended Complaint. (SAC, ECF No. 88.) Relevant to the motion currently before the Court, Plaintiff pled a statutory right to privacy claim under the New York Civil Rights Law, N.Y. Civ. Rights Law §§ 50-51. (See SAC ¶¶ 88-110.) Plaintiff alleged that Defendant Jason Goodman ("Defendant") was selling on the internet coffee mugs

---

[1] Plaintiff first filed his motion on November 19, 2020 (see 11/19/20 Mot., ECF No. 168) before filing the amended motion at ECF No. 174. On December 21, 2020, a second copy of Plaintiff's amended motion was filed on the docket (see ECF No. 178), which appears to have been mailed prior to the copy at ECF No. 174, but otherwise appears identical. The Court cites to the amended motion filed at ECF No. 174, which is the version to which Defendant responded.

[2] I make this recommendation pursuant to the referral of all dispositive motions to me for purposes of issuing Reports and Recommendations. (See Order of Reference, ECF No. 89.)

and tote bags with Plaintiff's picture on them. (*See id*. ¶ 95.) The SAC contained screenshot of a webpage that depicted the coffee mug, with Plaintiff's image on it, and a list price of $16.90. (*See id*.) Plaintiff also alleged that Defendant used Plaintiff's "name, photograph, picture, portrait and/or likeness" in his podcasts to "solicit[] fees" and to "advertise, solicit, and promote" Defendant's business. (*See id*. ¶¶ 101, 103.)

Defendant moved to dismiss Plaintiff's claims, including those under the New York Civil Rights Law. (*See* Def.'s 11/18/19 Mot., ECF No. 106.) On March 2, 2020, I recommended that Defendant's motion to dismiss be granted in part and denied in part. (*See* R&R, ECF No. 138.) In relevant part, I recommended that Defendant's motion to dismiss Plaintiff's statutory right of privacy claims under the New York Civil Rights Law be denied. (*See id*. at 9-10.) In making this recommendation, I stated as follows:

> The SAC contains images that reflect pictures of Plaintiff on merchandise being sold online (*i.e.*, on a coffee mug and a tote bag). (SAC ¶ 95.) The SAC also references podcasts in which pictures of Plaintiff and Plaintiff's name are displayed. (*See id*. ¶ 97.) The SAC alleges that these pictures of Plaintiff were used by Defendant for purposes of advertising or trade without Plaintiff's consent in the State of New York. (*Id*. ¶ 98.) Accepting the factual allegations of the SAC as true, the Court finds that Plaintiff has stated a claim under the New York Civil Rights Law and thus recommends that Defendant's motion to dismiss Plaintiff's Third Claim be denied.

(*Id*. at 10.) On August 3, 2020, the Court adopted the foregoing recommendation. (*See* 8/3/20 Order, ECF No. 140, at 2-3.)

On August 24, 2020, Plaintiff filed a motion for leave to file a "First Supplemental Complaint" and, on September 9, 2020, filed an amended motion for the same relief. (Pl.'s 8/24/20 Mot., ECF No. 144; Pl.'s 9/9/20 Am. Mot., ECF No. 149.) On October 8, 2020, I ordered that the SAC was deemed supplemented only by paragraphs 1, 39 through 45 and 47 through 50

2

of Plaintiff's Verified Supplemental Complaint that was filed at ECF No. 150.[3] (10/8/20 Order, ECF No. 160, at 5.)

On November 19, 2020, Plaintiff filed a motion for a preliminary injunction and, on December 8, 2020, filed the amended motion that is now before the Court. (*See* Pl.'s 11/19/20 Mot.; Pl.'s 12/8/20 Am. Mot.) In the amended motion, Plaintiff seeks an Order enjoining Defendant from using video podcast "wrappers"[4] that include Plaintiff's "persona, name or likeness," but does not seek to enjoin the podcasts themselves. (*See* Pl.'s 12/8/20 Am. Mot. at 16-17.) On December 14, 2020, Defendant filed his response in opposition, invoking his rights under the First Amendment. (*See* Def.'s Resp., ECF No. 176.) In addition, Defendant argues that Plaintiff is "a person with legal training who willfully abuses the civil justice system."[5] (*See id*. at 4.)

On December 16, 2020, Plaintiff filed his reply and on December 21, 2020, he filed an amended reply.[6] (Pl.'s Reply, ECF No. 177; Pl.'s Am. Reply, ECF No. 179.)

## LEGAL STANDARDS

"New York does not recognize a common-law right of privacy." *Messenger ex rel. Messenger v. Gruner + Jahr Printing & Pub*., 94 N.Y.2d 436, 441 (2000). By enacting Sections 50 and 51 of the New York Civil Rights Law, however, the New York legislature sought to "provide a

---

[3] Paragraphs 47 through 50 include additional allegations regarding Plaintiff's claims under Sections 50 and 51 of the New York Civil Rights Law.

[4] Plaintiff defines "wrappers" as "thumb nails, titles and video descriptions." (Pl.'s 12/8/20 Mot. at 4.)

[5] In support of his assertion that Plaintiff has legal training, Defendant cites to (and includes as an exhibit) an excerpt from a transcript of a video that purportedly had been posted on YouTube. (*See* Def.'s Resp. at 4 & Ex. B.)

[6] The Court admonishes the Plaintiff to cease and desist from repeatedly filing amended documents, which serve to clog an ECF docket that already contains over 175 entries.

limited statutory right of privacy." *Id*. Section 50 of the Civil Rights Law makes it a misdemeanor for a person to "use[] for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person . . .." N.Y. Civ. Rights Law § 50 (McKinney 2012). Section 51 provides:

> Any person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided [in Section 50] may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait, picture or voice, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait, picture or voice in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages. . . .

N.Y. Civ. Rights Law § 51 (McKinney 2012).

The New York Court of Appeals has made clear that the prohibitions set forth in Sections 50 and 51 of the Civil Rights Law "are to be strictly limited to nonconsensual commercial appropriations of the name, portrait or picture of a living person," and "prohibit the use of pictures, names or portraits 'for advertising purposes or for the purposes of trade' only, and nothing more." *Finger v. Omni Publ'ns Int'l, Ltd.*, 77 N.Y.2d 138, 141 (1990) (quoting *Arrington v. New York Times Co.*, 55 N.Y.2d 433, 439 (1982)); *see also Rand v. Hearst Corp.*, 31 A.D.2d 406, 409 (1st Dep't 1969) ("words 'advertising purposes' and for the 'purposes of trade' . . . must be construed narrowly and not used to curtail the right of free speech, or free press, or to shut off the publication of matters newsworthy or of public interest, or to prevent comment on matters in which the public has an interest or the right to be informed"), *aff'd*, 26 N.Y.2d 806 (1970).

"The advertising purposes prong of [N.Y. Civ. Rights Law §§ 50-51] is not violated where the use of plaintiff's name is not designed primarily to solicit purchasers for defendant's

products." *Herink v. Harper & Row Publishers*, 607 F. Supp. 657, 659 (S.D.N.Y. 1985); *see also Lerman v. Flynt Dist. Co.*, 745 F.2d 123, 130 (2d Cir. 1984) ("[w]hen the advertisement is merely incidental to a privileged use there is no violation of § 51").

"It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2948 at 129-30 (2d ed. 1995)) (internal quotation marks and emphasis omitted); *see also Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir. 1986) (noting that a preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies"). As such, "a party seeking preliminary injunctive relief has a heavy burden to sustain." *Dorsett v. Cty. of Nassau*, 762 F. Supp. 2d 500, 534 (E.D.N.Y. 2011) (quotation omitted).

"In order to obtain a preliminary injunction under N.Y. Civ. Rights Law §§ 50-51, Plaintiff must demonstrate '(1) irreparable harm and (2) either (a) a probability of success on the merits or (b) sufficiently serious questions going to the merits to make them fair grounds for litigation and a balance of hardships tipping decidedly in the moving party's favor.'" *Mason v. Jews for Jesus*, No. 06-CV-06433 (RMB), 2006 WL 3230279, at *2 (S.D.N.Y. Nov. 8, 2006) (quoting *Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369, 397 (S.D.N.Y. 2000)). "An injunction 'raises special First Amendment concerns, for it may chill protected speech . . . by putting that party at an added risk of liability.'" *Id*. (quoting *Multimedia Holdings Corp. v. Circuit Court*, 544 U.S. 1301, 1304 (2005)).

The Second Circuit frequently has stated that "irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Grand River Enter. Six*

*Nations, Ltd. v. Pryor*, 481 F.3d 60, 66-67 (2d Cir. 2007) (per curiam) (quoting F*reedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)) (internal quotation marks omitted). To satisfy this requirement, the movant must show that he "will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'" *Id*. at 66 (quoting *Freedom Holdings, Inc*., 408 F.3d at 114). A delay in seeking injunctive relief undermines a party's claim of irreparable harm. *See Silber v. Barbara's Bakery, Inc*., 950 F. Supp. 2d 432, 439 (E.D.N.Y. 2013) (noting that "months-long delays in seeking preliminary injunctions have repeatedly been held by courts in the Second Circuit to undercut the sense of urgency accompanying a motion for preliminary relief" (citations omitted)).

## DISCUSSION

As discussed below, the Court finds that Plaintiff has not made a clear showing in support of the preliminary injunctive relief he seeks. As an initial matter, Plaintiff has not established irreparable harm. In his injunction papers, the example that Plaintiff uses of a "thumbnail" that he seeks to enjoin Defendant from using links to a publicly available YouTube video from March 1, 2019 (*see* Pl.'s 12/8/20 Am. Mot. at 9-10) that is referenced in Plaintiff's SAC that was filed in September 2019. (*See* SAC ¶ 97.) However, Plaintiff did not file his motion for injunctive relief until November 19, 2020. Plaintiff's delay of more than a year in seeking injunctive relief undermines his claim of irreparable harm.

In addition, Plaintiff has not shown that he is suffering irreparable harm as a result of Defendant's use of Plaintiff's persona, name and/or likeness in the wrappers, as opposed to Defendant's video podcasts themselves, which Plaintiff does not seek to enjoin. (*See* 12/8/20 Am.

6

Mot. at 5 ("This request for injunctive relief does not rely on, or challenge, the actual content of the Defendant's podcast videos that are described in the SAC.").) Plaintiff appears to argue that Defendant's use of the wrappers harms his reputation and career because they make it more likely that researchers will come across Defendant's videos alongside professional articles written by Plaintiff. (*See* Pl.'s 12/8/20 Am. Mot. at 15.) However, Plaintiff has made no evidentiary showing that the wrappers are causing him harm independent of any harm based on the fact that there are unflattering videos about him that are publicly available on the internet.[7]

In any event, even assuming, *arguendo*, that Plaintiff had established irreparable harm, he has not met his burden to show a probability of success on the merits. In his SAC, Plaintiff alleged that Defendant used Plaintiff's "name, photograph, picture, portrait and/or likeness" in Defendant's podcasts to "solicit[] fees" and to "advertise, solicit, and promote" Defendant's business. (*See* SAC ¶¶ 101, 103.) Now, however, Plaintiff has not provided satisfactory proof to support those allegations.

While, at the motion to dismiss stage, the Court accepted as true Plaintiff's allegations in the SAC that Plaintiff's picture and name were used by Defendant for purposes of advertising or trade in the State of New York (*see* R&R at 10), in order to obtain a preliminary injunction, Plaintiff may not merely rely upon his pleading allegations. He must come forth with proof that his picture and name were being used for purposes of advertising or trade, which he has not done. *See*

---

[7] The Court takes judicial notice that the March 1, 2019 video referenced above that Plaintiff uses as an example in his motion (*see* Pl.'s 12/8/20 Am. Mot. at 9) is publicly available without charge via YouTube.

*Kadant, Inc. v. Seeley Mach., Inc.*, 244 F. Supp. 2d 19, 40 (N.D.N.Y. 2003) ("[b]are allegations, without more, are insufficient for the issuance of a preliminary injunction").[8]

As Plaintiff himself acknowledges, Defendant's podcasts are publicly available on various platforms. (*See* Pl. Am. Mot. at 8.) Defendant's videos on YouTube are publicly available without charge. The fact that Defendant solicits visitors to his platforms to make payments in order to become "patrons" (*see id*.) does not establish that Defendant's use of Plaintiff's name and likeness in his podcasts and/or in the wrappers was for advertising purposes or for the purposes of trade.[9] The "[r]epresentative example of thumb nails with Plaintiff's likeness" that is depicted in Plaintiff's Amended Motion (*see* Pl.'s Am. Mot. at 10) does not make any solicitation for the public to become one of Defendant's "patrons." For this additional reason, Plaintiff's motion should be denied.

Moreover, even if there is a fair ground for litigation over the issue of whether Defendant used Plaintiff's name and picture in Defendant's podcasts for advertising purposes or for the purposes of trade, given the First Amendment considerations inherent in the determination of newsworthiness and in the other limitations of the New York Civil Rights Law, the Court finds that

---

[8] The Court is mindful of Plaintiff's argument that the factual allegations of the SAC should be assumed to be true because Defendant has failed to answer the SAC. (*See* Pl.'s 12/8/20 Am. Mot. at 6.) However, there is a "preference for resolving disputes on the merits," *see Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001) (citation omitted), and the Court has "an obligation to make reasonable allowances to protect *pro se* litigants [like the Defendant in this case] from inadvertent forfeiture of important rights because of their lack of legal training." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (citation omitted). Thus, the Court does not assume the facts of the SAC to be true, but holds Plaintiff to his proof. In addition, by separate Order, the Court has directed Defendant to answer the SAC, as supplemented. (*See* 12/28/20 Order, ECF No. 180.)

[9] Notably, Plaintiff is not seeking injunctive relief with respect to Defendant's alleged sale of products, *i.e.*, coffee mugs and tote bags that contain Plaintiff's image. (*See* SAC ¶ 95.)

the balance of equities at present favors Defendant, such that preliminary injunctive relief should be denied.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Plaintiff's motion for preliminary injunctive relief be DENIED.

The Clerk of Court is respectfully requested to mail a copy of this Report and Recommendation to the *pro se* parties.

DATED:     New York, New York
           December 28, 2020

*[signature]*
STEWART D. AARON
United States Magistrate Judge

\*          \*          \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation and Order to file written objections, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Caproni.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).