**U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

RECEIVED
SDNY PRO SE OFFICE

2021 FEB -3  PM 1: 55

| SWEIGERT | CIVIL CASE #: |
|----------|---------------|
| V. | 1:18-CV-08653-VEC |
| GOODMAN | JUDGE VALERIE E. CAPRONI |

### PLAINTIFF'S NOTICE OF RULE 12(f) MOTION
### TO STRIKE DEFENDANT'S ANSWER (DKT. 189)

Plaintiff hereby MOTIONS this Court to STRIKE Defendant's ANSWER, DKT. 189.

The Plaintiff hereby incorporates the ORDER of the magistrate (Dkt. 180) as if fully restated herein.

Assertations made by the Plaintiff herein are certified under the penalties of perjury as truthful.

A Certificate of Service appears on the LAST page of this pleading.

Signed this ⟋ day of February 2021.

*D. G. SWEIGERT, C/O*
*Pro Se Non-attorney*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

2 . 1 . 21

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ 3

MEMORANDUM OF LAW ............................................................................................... 4

PRELIMINARY STATEMENT ......................................................................................... 4

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........................................ 5

ARGUMENT ...................................................................................................................... 5

CONCLUSION ................................................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ................................................................. 15

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ................................................. 15

*Diesel Props.v. Greystone Business Credit II LLC,* No. 07 CIV. 9580 (HB), 2008 WL 4833001,

at *4 (S.D.N.Y. Nov. 5, 2008) ...................................................................................... 16

*Estee Lauder, Inc.,* 189 F.R.D. at 269, 271 (S.D.N.Y. 1999) ...................................... 16

*GEOMC Co. v. Calmare Therapeutics Inc.,* 918 F. 3d 92 (2d Cir. 2019) .................................... 15

*GEOMC,* 918 F.3d at 98 .................................................................................................. 15

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Cooper*, No. 85 CIV. 8750 LLS, 1990 WL 55690,

at *7 (S.D.N.Y. Apr. 26, 1990) .................................................................................... 6

**Rules**

Fed. R. Civ. Proc. Rule 12(f) ......................................................................................... 5

## MEMORANDUM OF LAW

Plaintiff D. Geo. Sweigert, a *pro se* non-attorney who has completed one half semester of law

school in good standing, respectfully submits this memorandum of law to accompany Plaintiff's

motion, entitled "PLAINTIFF'S RULE 12(f) MOTION TO STRIKE DEFENDANT'S

ANSWER (DKT. 189).

## PRELIMINARY STATEMENT

Defendant apparently confuses a counterclaim with the purpose of an ANSWER (Dkt. 189) filed

pursuant to the Federal Rules of Civil Procedure (Fed. R. Civ. Proc.).  Defendant's latest

ANSWER is riddled with counter claims, counter allegations, and superfluous information that is

not within the scope of the Plaintiff's Second Amended Complaint ([**SAC**] Dkt. 88) and the First

Supplemental Complaint ([**FSC**] Dkt. 150).  Defendant should avail himself of other

instrumentalities under the Fe. R. Civ. Proc. to proffer new allegations, counterclaims and the

like.

Defendant's ANSWER proffers affirmative defenses to create a new *de facto* counterclaim

document by raising allegations against the Plaintiff which orbit current events of the last month

(January 2021).  Specifically, Defendant is offended that anyone would link him to the so-called

"QAnon" theory after Defendant immersed himself in the QAnon culture for years.

Plaintiff asserts that the Defendant's defenses are untimely and provide no form of factual and

legally sufficient defenses.  Plaintiff's allegations in the SAC and FSC (Dkt. 88, 150) are barely

addressed by the Defendant, except for using them as an excuse to offer more irrelevant and

nearly incoherent conspiracy theories about "CIA trolls", mysterious links to the Port of

4

Charleston "dirty bomb hoax", an unrelated F.B.I. report, etc. Plaintiff argues that the Defendant's "defenses" in the ANSWER are not available to him as a matter of law and also lack merit. Defendant's conclusory assertions, counterclaims, counter allegations and other trivialities contained in the ANSWER should also be rejected by this Court. The ANSWER is so riddled with prejudicial material it is in the interest of the judicial efficiency of the courts to strike the ANSWER in accordance with Rule 12(f) of the Fed. R. Civ. Proc.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed **SAC** (Dkt. 88), over one sixteen months ago on 9/10/2019 and the **FSC** (Dkt. 150) over five months ago on 9/9/2020. By ORDER of the magistrate Defendant was provided five (5) weeks to finally answer these pleadings (Dkt. 180).

An ORDER was issued 12/28/2020 (Dkt. 180) by the magistrate that stated in relevant part, "Goodman shall file an answer to paragraphs 1 through 28, 69 through 110, 123, and 125 through 133 of Plaintiff's Second Amended Complaint that was filed at ECF No. 88, as well as paragraphs 1, 39 through 45 and 47 through 50 of Plaintiff's Verified Supplemental Complaint that was filed at ECF No. 150."

The magistrate's ORDER is hereby incorporated by reference as if fully restated.

## ARGUMENT

## I.    LEGAL STANDARD

Fed. R. Civ. Proc. Rule 12(f) asserts that matters can be stricken from a pleading if they are "redundant, immaterial, impertinent, or scandalous"; see also *Nat'l Union Fire Ins. Co. of*

*Pittsburgh, PA. v. Cooper*, No. 85 CIV. 8750 LLS, 1990 WL 55690, at *7 (S.D.N.Y. Apr. 26, 1990) (Stanton, J.).

## A.  DEFENDANT'S IRRELEVANT CLAIMS

A small sampling of the Defendant's "redundant, immaterial, impertinent, or scandalous" material includes:

Para. (1).  The Defendant accuses Plaintiff of "persistent extrajudicial actions undertaken by the Plaintiff have resulted in the termination of several of Defendant's social media accounts."  This statement is completely untrue, devoid of fact and not actionable under law.  In fact, on page 8 of Dkt. 185 there is a copy of the Defendant's own social media posting on 4/07/2020 claiming that Facebook terminated the Defendant's account due to "harmful content" after posts concerning the Defendant's beliefs that COVID-19 is part of a "plandemic" (a Q-Anon related conspiracy theory).  This account termination (FACEBOOK) has nothing to do with the Plaintiff.  There is no remedy this Court can provide the Defendant to address his account termination concerns, "Goodman's appeals to restore the social media accounts have been denied. Goodman prays the court will find Plaintiff's ongoing extra judicial activities constitute deliberate outside interference in this instant legal matter."

Para. (1) continued.  The Defendant makes dozens of unfounded and baseless conclusory statements directed at the Plaintiff for which this Court can provide no remedy.  See "Plaintiff's actions have effectively destroyed elements of evidence that are in part the focus of interest in this legal action."  Again, untrue and baseless.  To follow this logic, the Court would need to assume that the Plaintiff complained to FACEBOOK to execute an account termination to "destroy evidence".  Such an assertion is untrue, baseless and lacks merit and cannot be proven.

6

Interestingly, the Defendant – not the Plaintiff -- is presently in default concerning this Court's discovery orders, see Dkt. 188, which indicates the Defendant's destruction of evidence.

Para. (1) continued. Although the Defendant was provided a lavish opportunity to submit a COUNTERCLAIM (Dkt. 145) against the Plaintiff (which has been terminated by the Court's ORDER of Dkt. 175), the Defendant continues to assert more counterclaims against the Plaintiff in his ANSWER. See, "Plaintiff has engaged in a similarly energetic effort to file a litany of complaints and engage in additional activities including publication of false and defamatory allegations as previously plead." When offered an opportunity by the Court (Dkt. 140) to specifically produce the infamous "slanderous letters written by the Plaintiff", the Defendant filed no such letters in his COUNTERCLAIM (Dkt. 145).

Para. (1) continued. The Defendant rambles on about a draft complaint that will be filed in another federal jurisdiction to which the Defendant is NOT a party. More allegations of "harassment" are made about the company PATREON, INC., a Delaware corporation. These are allegations that the Defendant raised as part of the COUNTERCLAIM (Dkt. 145) concerning the issue of California's pattern and practice of litigation privilege. New York courts have little – if any – influence in the matters of litigation privilege as practiced in the courts of the State of California. Suffice to say, the Defendant only maintains a subscriber agreement with PATREON.COM which can be broken by PATREON at any time, for any reason and does not represent a contractual relationship.

Para. (2). Here the Defendant resorts to more name-calling and smears, "Goodman is actually being sued because the Plaintiff is a malicious and vexatious litigant working to suppress Defendant's first amendment rights and to destroy his business, reputation and ability to earn money. Defendant lacks sufficient knowledge to admit or deny musculoskeletal damage,

but Plaintiff's own public statements reveal a family history of medically diagnosed severe
mental illness and indicate the Plaintiff could pose a threat to himself, those around him and
members of the general public including the Defendant." [emphasis added]  This is just more
mud-slinging to create a prejudicial environment against the Plaintiff.  As discussed later in this
pleading, Mr. Goodman has a rich history of complicating criminal sentencing and evidence
collection activities associated with Imran Awan and his family in Washington, D.C. (described
in Dkt. 40).

Para. (3).  The Defendant again attempts to re-litigate his problems with a former guest
on CrowdSource The Truth known as "Robert David Steele".  This is a long worn-out allegation
that the Defendant recycles as a "golden oldie".  See "Defendant restates his allegation that
Plaintiff has collaborated directly or indirectly with third parties to facilitate additional lawsuits
against Defendant, including *Steele v Goodman* which was dismissed in September 2020."
Again, this allegation – like the rest -- is untrue, meritless and baseless.

Para. (3) – continued.  In fact, a recently published documentary produced by VICE
NEWS reporters (Bayan Joonam and Marley Clements) interviewed these "golden oldie players"
to include Robert David Steele and Manuel Chavez, III (both listed as third-party defendants to
this litigation).  See VICE NEWS announcement, "The series delves into the murky online world
where Q emerged and speaks with key QAnon figures, including Manuel Chavez III, who claims
to have come up with the idea for Q as part of a LARP (live-action role-playing game); and
former CIA officer Robert David Steele, who's become a revered figure in QAnon circles."  (
https://www.vice.com/en/article/dy8ww7/where-did-qanon-come-from )

Para. (7).  The Defendant seems obsessed with Manuel Chavez, III, as he – once again –
attempts to link the Plaintiff with his former associate (Chavez), which dates back to the

8

CrowdSource The Truth production "THE SETH RICH FILES". The Defendant featured Mr. Chavez (Carson City, Nevada) on numerous podcasts in May – June 2017. See Defendant's comments, "This trademark was sought after agents and / or associates of the Plaintiff attempted to create hoax web pages using the Tradename Crowdsource the Truth. Specifically, Manuel Chavez III posted a Linkedin.com profile page (since removed) using Crowdsource the Truth graphics and claiming he had been hired by Crowdsource the Truth. After this hoax was perpetrated, Goodman sought a trademark for the brand name." [emphasis added] Again, these statements about the Plaintiff are untrue, meritless and lack any foundation. To the contrary, the Defendant has exchanged over four dozen e-mail messages with Mr. Chavez and many phone calls.

Para. (8). The Defendant delves into a discussion of his ancestors, Nazism, white supremacy and other irrelevant issues. The Defendant stresses that he is not a member of any "alt-right" movement, while at the same time Defendant commercially promotes extreme alt-right content of individuals tracked by the Southern Poverty Law Center (S.P.L.C.) HATE WATCH, to include Larry Klayman, esq. who has had his law license revoked for three months for unprofessional conduct by the District of Columbia Bar. On at least two dozen podcast videos with the Defendant, Mr. Klayman has espoused the QAnon-related doctrines for "insurrection" and other anti-Government conspiracy theories to the CrowdSource The Truth audience.

Para. (8) – continued. The Defendant attempts to defend himself from any association related to the so-called "Q-Anon" movement, which is not an allegation contained in the SAC or FSC. Nonetheless, Defendant states, "There is not and has never been a link between Q anon and the Defendant, but with almost clairvoyant prescience, the Plaintiff has attempted to create

connections between Defendant and this toxic hoax that now costs people their reputations and even their freedom. The coincidental nature of Plaintiff's actions should not be ignored."  Again, the VICE NEWS documentary about Q-Anon addresses the infamous "Port of Charleston dirty bomb hoax" as the seminal event to inaugurate Q-Anon (see the Defendant's use of the phrase "CALM BEFORE THE STORM" in the Defendant's Port of Charleston, aka MEMPHIS MAERSK, video podcast of June 14, 2017).                        ( https://www.vicetv.com/en_us/video/who-is-q/6000c15fbf6a2852a3354834 )



( https://www.vicetv.com/en_us/video/who-is-q/6000c15fbf6a2852a3354834 )



( https://www.vicetv.com/en_us/video/who-is-q/6000c15fbf6a2852a3354834 )

Para. (11).  The term "PATREON" and "donations" are linked in several leading industry magazines.  For instance, "As a proverbial middleman for supporters to donate to creators, Patreon has become popular primarily through YouTubers and podcasts.  According to the site, Patreon is "inviting [fans] to be part of something exciting that gives them unique benefits they want, like additional access, exclusivity, and engaging experiences," and allows donors to become members and provide financial donations to their favorite artists monthly." ( https://www.thestreet.com/lifestyle/what-is-patreon-14865916 ) [emphasis added]

Para. (11) – continued.  The Defendant continues to smear and name call the Plaintiff for no discernable reason.  "Defendant again calls the court's attention to Plaintiff's reliance on his own hoax activities (Port of Charleston) to disparage Defendant. Whether Plaintiff planned this hoax, or opportunistically seized on it is irrelevant in this context. Plaintiff perpetuates and uses the hoax to write a book and in the furtherance of his efforts to destroy Defendant's reputation." Again, these issues have been raised and dismissed via the Defendant's COUNTERCLAIM. These claims, as related to the Plaintiff, are untrue, baseless and have no foundation.  This is nothing more than "golden oldie" re-litigation with no actionable legal remedies.

Para. (12).  The Defendant attempts to "sweep under the rug" his public figure status as a co-creator of the so-called "Port of Charleston dirty bomb hoax" which was widely reported in the mainstream press in the days following June 14, 2017.  This includes the New York Times ( https://www.nytimes.com/2017/06/15/us/port-dirty-bomb-south-carolina.html ), Cable News Network ( https://money.cnn.com/2017/06/16/media/port-of-charleston-dirty-bomb-conspiracy-theory-shutdown/index.html ), TIME Magazine ( https://time.com/4820968/port-of-charleston-bomb-threat-conspiracy-theorist/ ), REUTERS ( https://www.reuters.com/article/us-south-carolina-terminal-threat/fbi-opens-probe-of-false-dirty-bomb-threat-at-south-carolina-port-

idUSKBN1960DN ), television stations ( https://abcnews4.com/news/local/wando-welch-port-terminal-evacuated-for-threat ), New York Post ( https://nypost.com/2017/06/15/coast-guard-investigating-dirty-bomb-threat-claim-at-charleston-port/ ), to name a few.  Defendant's "public figure" status is not conferred simply because he is a "YouTube broadcaster", but more importantly, for the Defendant's role in the "Port of Charleston dirty bomb hoax".  (Caveat: the deadline for the Defendant to supply his evidence that the Plaintiff was involved in the "Port of Charleston dirty bomb hoax", as part of Court ordered discovery, passed over two weeks ago (see Dkt. 188) without the Defendant's compliance.

Para. (12) – continued.  The Plaintiff is NOT a professional actor.  The Plaintiff was interviewed as a guest and subject matter expert on earthquake emergency preparedness in his role as an Emergency Medical Technician (E.M.T.) in 2012.  This was a one-time event on the "INFOWARS" channel in 2012.  The Defendant has appeared on the Alex Jones "INFOWARS" shows numerous times in recent years, and Alex Jones has appeared on the CrowdSource The Truth podcasts.  The Plaintiff appeared once in 2012 in his capacity as an E.M.T.  Should the Defendant rely on this appearance to confer "public figure status" then the Defendant would need to limit his critique of the Plaintiff to the material presented on earthquake emergency preparedness and not general wholesale character assassination, smears, calling places of employment, post office stalking, etc.  This is also true for any books written by the Plaintiff about testing requirements to become a Certified Ethical Hacker.  This book is a test preparation book and not an "ethical hacking" book as the Defendant claims.  Defendant's wholesale smear of the Plaintiff's technical skills is not justified for an author of a test taking resource, any more than in an analogous situation, a book to help student pass the L.S.A.T. law exam confers justification to attack the writer for his crack pot legal theories.  A book and one-time news

appearance does not give the Defendant *carte blanche* to attack the Plaintiff at whim.  This is also true with the so-called book on the Port of Charleston incident, which was written from the perspective of blended cyber attacks on critical infrastructure.  Again, the Defendant would have to limit his critiques of the Plaintiff as to the materials presented in the book, not wholesale smear attacks, revelation of private facts and other Q-Anon based behaviors.

Para. (13).  The Defendant claims he is without knowledge of the E.M.T. status attributed to the Plaintiff, while simultaneously claiming that the Plaintiff's one-time appearance in 2012 as a subject matter expert E.M.T. confers "public figure status".  Which is it?  The Defendant can only be in willful ignorance and reckless denial of the facts to make such assertions that he is unaware of the Plaintiff's status as an E.M.T. while the entire "INFOWARS" episode in 2012 was fully dedicated to E.M.T. related subject matter, and the Plaintiff was introduced as a E.M.T. Meanwhile, the Defendant admits that he placed telephone calls to all the ambulance services in the Mount Shasta, California area to advise these companies that the Plaintiff was under "F.B.I. investigation" for matters the Defendant reported on the video podcast with Nathan Stolpman (also featured in the VICE NEWS report), aka "Lift The Veil", in April 2018.  In said broadcast with Mr. Stolpman the Defendant continued his smears, insinuations, claims of criminal conduct, etc. against the Plaintiff.  In sum, if Defendant did not think Plaintiff was an E.M.T. how can the telephone calls to Mount Shasta ambulance services be accounted for?

Para. (14).  In a "kitchen sink" approach, the Defendant uses his ANSWER to seek "contempt of court" sanctions against the Plaintiff, who is patiently waiting for the Defendant to provide Court ordered discovery (Dkt. 188).  "Defendant asks that Plaintiff be held in contempt of court for the deliberate and willful misrepresentation of facts. Defendant could not possibly have behaved in the way Plaintiff describes because he was not aware of Plaintiff at all until

Plaintiff began making public video threats against Defendant," cites the Defendant.  This is an old issue that has been addressed in other pleadings.  Video podcasts were published by the Defendant ("joker in the deck" videos) two and three days prior to the time Defendant claims he "first heard of the Plaintiff" (June 12, 13 & 14, 2017).  In fact, the Defendant speaks about the Plaintiff for about twenty (20) minutes in the infamous "CALM BEFORE THE STORM" podcast cited by VICE NEWS (published on June 14, 2017 to create the "dirty bomb hoax").  The Defendant is simply misrepresenting facts and attempting to forge a false narrative.  The Defendant maintains close relationships with professionals in the area of "narrative bending" such as "Dr." Jerome Corsi, PhD (who has a history of promoting the QAnon narrative).

Para. (14) – continued.  It would be a relatively simple matter to clear up this controversy iof the Defendant had complied with the Court's discovery order and supplied the materials to the Plaintiff described in that order (see Dkt. 188).  However, as the Defendant remains in breach of that discovery order, the Court must be subjected to more "narrative bending" by the Defendant (who is close friends with another "narrative bender" known as Mr. Corsi).

Para. (19):  As the Defendant state, "Although there is <u>ample evidence of Plaintiff destroying evidence</u>, the editorialized approximate statements referenced in paragraph 19 were made by a third party and in a speculative manner, acknowledging that activities of any hacker COULD result in unanticipated consequences."  There is NO evidence that the Plaintiff is "destroying evidence" except in the mind of Mr. Goodman who conflates the April 2020 termination of his FACEBOOK account (reported by him to have taken place in October 2020) with the Plaintiff's "extrajudicial activities".  This issue can be remedied with a Court issued subpoena to FACEBOOK to recover all the "destroyed evidence" from FACEBOOK.  Again,

this is a baseless, meritless claim with no foundation. The Defendant should submit a motion for a Court issued subpoena to obtain this irrelevant evidence and not subject the Court to more "sour grapes" in the Defendant's ANSWER.

Para. (19) – continued. The Defendant has been described as an "anti-vaxxer" by his prolific guest Alan Dershowitz, professor of law. The Defendant published innumerable video podcasts and published countless tweets attacking the COVID-19 response as a "plandemic", a fake and hoax. It was the podcasting of discredited anti-vaxxer "Dr." Judy Mikovits, PhD in videos with Larry Klayman that led to the FACEBOOK ban. In fact, a joint interview of Judy Mikovits and Larry Klayman was cancelled from the 33 television station network known as the Sinclair Broadcasting Network, see article entitled "Sinclair Pulls Controversial Show About Coronavirus", Wall Street Journal, 7/27/2020 ( https://www.wsj.com/articles/sinclair-pulls-controversial-show-about-coronavirus-11595895808 ).

Para (19) – continued. Larry Klayman, esq. is a close associate of the Defendant and has co-created about 100 podcast broadcasts with the Defendant. Mr. Klayman has become the attorney for Ms. Mikovits in a lawsuit against the Cable news Network for slander and defamation.

Para (19) – continued. Mr. Klayman, the Defendant and "Dr." Jerome Corsi, PhD (an avowed promoter of QAnon) created several "take the law into your own hands" podcasts known as "The Citizens Grand Jury". The three men proceeded to "indict" special counsel Robert S. Mueller, III relying on junk legal theories designed to deceive the CrowdSource The Truth audience. This "take the law into your own hands" approach is another attribute of QAnon followers. As with Klayman, the Defendant completed about 100 co-created podcasts with Mr. Corsi (who was also actively texting the Defendant during the "CALM BEFORE THE STORM"

video podcast that led to the closure of the Port of Charleston on June 14, 2017). Mr. Corsi was

a close associate of presidential advisor Roger Stone, another QAnon figure (see VICE NEWS

documentary). Mr. Corsi has also written books that espouse QAnon related themes, see *Killing*

*the Deep State The Fight to Save President Trump*, Corsi, Jerome R.

Para. (22). The Defendant claims that there is "public interest" in the Plaintiff's former

working relationships with Entrust, Ltd and the Federal Public Key Infrastructure Bridge

(Federal PKI Bridge). Mr. Goodman fails to elaborate that the Federal PKI Bridge was

identified by Mr. Goodman and Mr. David Hawkins in their numerous podcasts as the key

instrumentality that aided child trafficking within the U.S. Government. According to this Q-

Anon related conspiracy theory, Hillary Rodham Clinton maintained a secret account on the

Federal PKI Bridge for the purposes (according to Mr. Goodman and Mr. Hawkins) of arranging

child kidnappings and murders for the purposes of blackmailing "Deep State" actors, such as the

Plaintiff. If so, then there is an equal amount of public interest into why PATREON, INC,

continues to allow Q-Anon related content (made by the Defendant and others) to remain on

PATREON servers in a pay-for-view membership/subscriber environment. Section 230 of the

Communications Decency Act does not shield the Defendant from his slander, libel, trade libel

and commercial disparagement of the Plaintiff's career, technical background and ethics.

Defendant does not dispute the facts of the video content, the Defendant claims he is shielded by

Section 230 of the Communications Decency Act which is a *prima facie* baseless defense.

Para. (72). Defendant states, "Hawkins is not named as a party in this suit. Goodman

denies responsibility for statements made by third party participants on Crowdsource the Truth

and is specifically protected from civil actions based on such statements pursuant to 47 USC §

230.".  Section 230 of the Communications Decency Act does not provide immunity for the Defendant's one-hour long podcasts with Mr. Hawkins and Mr. Goodman jointly producing content.  These are jointly co-created podcasts by Mr. Goodman and Mr. Hawkins far outside the "automation" requirement of Section 230.  Again, this legal issue is moot and has already been addressed in previous pleadings.  This is another attempt at creating prejudice against the Plaintiff with meritless, baseless and falsified claims.

Para. (83).  Section 230 of the Communications Decency Act does not provide immunity for the Defendant's one-hour long podcasts with Mr. Hawkins and Mr. Goodman jointly producing content.

Para. (85).  Section 230 of the Communications Decency Act does not provide immunity for the Defendant's one-hour long podcasts with Mr. Hawkins and Mr. Goodman jointly producing content.

Para. (91).  Defendant complains about legal self help measures that the Plaintiff undertook with "REDBUBBLE.COM" to have the Plaintiff's likeness, name, photograph and persona removed from CrowdSource The Truth merchandise, such as tote bags, coffee cups, and T-shirts in accordance with the laws of the State of New York (see **EXHIBIT ONE** attached). Defendant states, "Sweigert has demonstrated a pattern and practice of seeking extrajudicial relief for the precise matters at controversy in this legal action".  The Court will recall that the motion for preliminary injunctive relief in this matter was not acted upon for ten (10) months (Dkt. 68 & 71).  **EXHIBIT ONE** includes likeness of Plaintiff, Manuel Chavez, III and Robert David Steele.

Para. (104).  The Defendant offers more worn-out "golden oldie" allegations that have been previously raised and terminated.  "Plaintiff is not used for advertising, his image and

likeness were used in stories where his activities are deemed newsworthy such as <u>abuse of the</u> <u>civil justice system and public dissemination of lies about the Defendant, including incitements</u> <u>to violence against Defendant as previously plead."</u>  [emphasis added].  These allegations are untrue, baseless, meritless and lack foundation.  The Plaintiff can find no allegation in the Court record by the Defendant that relate to so-called "incitements to violence".  Defendant cannot produce legally sufficient evidence to demonstrate the proof of such allegations.  The Defendant has been given lavish opportunities to plead his concerns about "public dissemination of lies" and has not produced any actionable evidence or legally sufficient allegations (in over sixteen months for the SAC and five months for the FSC).  The same is true with the allegation "abuse of the civil justice system".  These are more baseless, meritless allegations with no foundation designed to prejudice the Plaintiff and pander to the <u>CrowdSource The Truth</u> "digital soldiers" audience.

For the sake of brevity, the Plaintiff dispenses with any further analysis of the Defendant's "answer" to the **FSC**.  It is more of the same vitriol outlined in the foregoing sections of this instant pleading.

### B.   PLAUSABILITY STANDARD

The "plausibility standard" is a concept that arose from *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007); commonly known as the "plausibility" standard under *Iqbal* and *Twombly*.  In *GEOMC Co. v. Calmare Therapeutics Inc.,* 918 F. 3d 92 (2d Cir. 2019) the Second Circuit took the logical and largely unremarkable step of extending the "plausibility" pleading standard to affirmative defenses.  *GEOMC,* 918 F.3d at 98. The *GEOMC* court recognized that facts needed to plead certain affirmative defenses "may not be readily known to the defendant" without comprehensive discovery, creating a so-called

relaxed pleading standard for affirmative defenses that assume a Defendant will reply to a Complaint within 21 days as promulgated by the Fed. R. Civ. Proc.  The Second Circuit noted that the "pleader of a complaint has the entire time of the relevant statute of limitations to gather facts necessary to satisfy the plausibility standard."  [emphasis added]  However, in this instant case, the Defendant has had more than 16 months to answer the **SAC** (Dkt. 88) and over five months to answer the **FSC** (Dkt. 150).

The Second Circuit requires defendants to plead affirmative defenses to a level approaching the *Iqbal* and *Twombly* standard.  The Defendant's jumble of irrelevancies does not even come close to meeting any concept of a plausibility standard.  The Defendant has had years and months to develop rational defenses.  Mr. Goodman is without excuse.

### C. PREJUDICIAL HARM

The Defendant's answer is highly prejudicial to the Plaintiff (who unlike the Defendant is not in a state of default for ignoring this Court's discovery orders [Dkt. 188]).  The Defendant's continuous lack of decorum, mud-slinging, name-calling and falsification are designed to create muddied waters.  The Defendant excelled at this type of behavior when the Defendant and his sidekick George Webb "Sweigert" created havoc and confusion with the criminal indictment and plea bargain of Imran Awan, Washington, D.C.

In fact, at the Awan sentencing hearing, the U.S. Attorney specifically called out the "conspiracies theories" pushed on the Internet that contaminated the evidence of the proceedings. The bulk of these theories were pushed by the Defendant and his "house guest" George Webb. The Defendant personally wrote letters to the U.S. Attorney assigned to the Awan prosecution with allegations of misconduct.  The Defendant also involved himself in disrupting the chain of custody of a laptop with purported evidence of hacking by Imran Awan that was in the

possession of Laurel Everly. See video podcast of Jason Goodman's surrender of this dubious laptop to the U.S. Capitol Police in the summer of 2017, described in Dkt. 39 & 40.

Defendant's ANSWER, with its affirmative defenses, do not allege sufficient facts to plausibly suggest Defendant's ability to succeed with such defenses. In this District, "courts generally apply the same test used to determine a Rule 12(b)(6) motion" as they do to motions to strike; in other words, courts will "draw all reasonable inferences in the" defendant's favor, and "resolve all doubts in favor of denying the motion to strike." *Diesel Props.v. Greystone Business Credit II LLC,* No. 07 CIV. 9580 (HB), 2008 WL 4833001, at *4 (S.D.N.Y. Nov. 5, 2008). See *Estee Lauder, Inc.,* 189 F.R.D. at 269, 271 (S.D.N.Y. 1999) (on a motion to strike, it is "the defendant's pleadings [that] must be construed liberally," not the plaintiff's).

In summary, the Defendant's *de facto* affirmative defenses and answers in his pleading papers (Dkt. 189) do not (1) state a question of fact that might allow a defense to succeed; (2) present a substantial question of law that might allow the defense to succeed; and (3) the Plaintiff is prejudiced by the inclusion of these so-called defenses. See the *GEOMC* Court.

### D. DEFENDANT'S DEFENSES ARE LEGALLY IMPROPER

The Defendant continues his misplaced reliance on Section 230 of the Communications Decency Act which he believes provides the Defendant immunity. It does not. Section 230 only applies to message service bulletin boards, blogs and other such content posting instrumentalities of which a defendant has no practical control. Section 230 may apply to YOUTUBE, LLC, but it does not apply to CrowdSource The Truth, a subscriber of YOUTUBE, LLC.

The issue before this Court are the joint creations of video content created by both Mr. Hawkins and the Defendant in an "Ed Sullivan" type of interview news show. The Defendant simply asks

pre-arranged questions of the so-called guest (Mr. Hawkins) to elicit pre-planned defamatory and libelous remarks that are then discussed by the two for an hour while promoting PATREON.

## **CONCLUSION**

For the foregoing reasons, the Plaintiffs' Motion to Strike pursuant to Fed. R. Civ. P. 12(f) should be granted or, in the alternative, Plaintiff should be granted leave to file a reply to the Defendant's ANSWER.

Signed this ___/___ day of February 2021.

*D. G. SWEIGERT, C/O*
*Pro Se Non-attorney*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

2 . 1 . 21

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

## U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK
### (FOLEY SQUARE)

D George Sweigert

<u>Plaintiff</u>

v.

Jason Goodman

<u>Defendant</u>

CIVIL CASE #: 1:18-CV-08653-VEC

JUDGE VALERIE E. CAPRONI

MAGISTRATE STEWART D. AARON

## CERTIFICATE OF SERVICE

I HEREBY ATTEST that a true copy of the attached pleadings have been sent to the

following addressees on the ~~30th day of December 2019.~~  2 . 1 . 21

Jason Goodman, CEO
Multi-media Design Systems, Inc.
252 7th Avenue, Apart. #6S
New York, NY 10001

Clerk of the Court, Room 200
U.S. District Court
500 Pearl Street
New York, New York 10007-1312

D. GEORGE SWEIGERT

2 . 1 . 21

22

**EXHIBIT ONE**

**Artwork of the Plaintiff, Manuel Chavez, III and Robert David Steele**

I hereby attest that the foregoing is accurate and true under the penalties of perjury.  Further, I hereby attest that the attached exhibits are accurate and true copies of source documents located on the Internet.

Signed this _____ day of February 2021.

_____

Plaintiff, D. George Sweigert

Pro se plaintiff                    2 . 1 . 21

---------- Original Message ----------

From: Spoliation Notice <spoliation-notice@mailbox.org>

To: dmca@redbubble.com, georg.webb@gmail.com, email@redbubble.com, truth@crowdsourcethetruth.org, Spoliation Notice <spoliation-notice@mailbox.org>

Date: November 28, 2017 at 11:34 AM

Subject: ATTN: Litigation hold and spoliation notice

ATTN: Legal Counsel

A lawsuit shall be commenced upon your corporation in the courts form the State of California for the publication of the attached artwork, sponsored by "csthetruth".

This is your spoliation and litigation hold notice. As this artwork violates various privacy laws in the State of California a complaint shall be lodged with the State Attorney General. Additionally, civil sanctions will be pursued.

ALL records associated with "csthetruth" MUST be safely archived and preserved. This includes all materials related to "csthetruth"; such as, financial records, user applications, previously submitted artwork, invoices, e-mail exchanges, etc.

This "cdthetruth" artwork displays a copyright protected photo of our client, David George Sweigert. He is depicted wearing a dunce cap in a straight jacket. This appears to be the work of George Webb Sweigert and Jason Goodman, both copied on this message.

We believe this is a gross violation of your corporate community standards policy as it holds our client (a private citizen) up to public ridicule and mockery. Additionally, "csthetruth" does not have permission to use this photograph.

Respectfully,

Evidence Collection Team

## [Attached work show below]







**Designed by csthetruth**
**New York, United States**

# EXHIBIT TEN



**Deep State Dunces**

Style:

Standard

$16.90

Add to Cart

**Figure 1.a.  Undersigned depicted on CSTT RedBubble coffee cup**

**(https://www.redbubble.com/people/csthetruth/works/29102359-deep-state-dunces?p=mug)**



**Figure 1.b.  Undersigned depicted on CSTT RedBubble Tote Bag**

**(https: https://www.redbubble.com/shop/crowdsource+the+truth)**



Figure I.c.  Undersigned depicted on CSTT RedBubble Tote Bag

(https: https://www.redbubble.com/shop/crowdsource+the+truth)

Internet URL:  https://www.youtube.com/watch?v=GNxCk6nqFJg



**Deep State Dunces Attack George Webb & CSTT - Bitcoin Challenge Response**



Jason Goodman

▶ Subscribe 70?

15,220 views

**Figure 1.a.  Unauthorized portrait on YouTube thumb-nail**

**Streamed live on Nov 27, 2017**
The dumbest affiliates of the Deep State simply will not give up their ludicrous attacks on the truth, while simultaneously offering no evidence to support their claims.

Become a sponsor of Crowdsource the Truth and support the effort

http://paypal.me/crowdsourcethetruth

https://www.patreon.com/crowdsourceth...

**Buy Crowdsource the Truth merchandise in the on-line store**
**https://www.redbubble.com/people/csth...**

> **Buy Crowdsource the Truth merchandise in the on-line store**
> **https://www.redbubble.com/people/csth...**

PRESS FIRMLY TO SEAL

FIRMLY TO SEAL



**PRIORIT·**
**FLAT RATE E**
**POSTAGE RE·**

$7.95

PM 2-Day
95603 0006
01/30/21
06
1114885444

# UNITED STAT·
## POSTAL SERVICE ®

**MAIL**

**FROM:**

D George Sweigert
c/o General Delivery
Rough and Ready, CA 95975

- Expected delivery date specified for domestic use.
- Most domestic shipments include up to $50 of insurance (restrictions apply).*
- USPS Tracking® included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the
Domestic Mail Manual at *http://pe.usps.com*.
** See International Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

**TO:**

PRO SE #200

**PRO SE OFFICE, Room 200**
**U.S. District Court**
**500 Pearl Street**
**New York, New York 10007-1312**

10007-1312

# FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

# TRACKED ■ INSURED



PS00001000014

EP14F May 2020
OD: 12 1/2 x 9 1/2

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

9505 5067 1486 1030 4102 92

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; May 2020; All rights reserved.