RECEIVED
SDNY PRO SE OFFICE

2021 FEB -4  PM 2: 19

**U.S. DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| SWEIGERT | CIVIL CASE #: |
|---|---|
| V. | 1:18-CV-08653-VEC |
| GOODMAN | JUDGE VALERIE E. CAPRONI |

<u>**PLAINTIFF'S NOTICE OF MOTION FOR**</u>

<u>**LEAVE OF COURT TO FILE RULE 7(a)7 REPLY**</u>

<u>**TO DEFENDANT'S "ANSWER" (Dkt. 189)**</u>

Plaintiff hereby MOTIONS this Court for LEAVE of COURT to seek permission to file a

REPLY to Defendant's ANSWER, DKT. 189.

The Plaintiff hereby incorporates the ORDER of the magistrate (Dkt. 180) as if fully restated

herein.

Assertions made by the Plaintiff herein are certified under the penalties of perjury as truthful.

A Certificate of Service appears on the LAST page of this pleading.

Signed this ___ day of February 2021.

*D. G. SWEIGERT, C/O*
*Pro Se Non-attorney*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... 3

MEMORANDUM OF LAW ................................................................................................... 5

PRELIMINARY STATEMENT ............................................................................................. 5

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........................................... 6

ARGUMENT ........................................................................................................................... 6

CONCLUSION ..................................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Asia TV USA*, 2018 U.S. Dist. LEXIS 54026 ............................................................................ 16

*Asia TV USA, Ltd. v. Total Cable USA LLC,* No. 16-cv-6873, 2018 U.S. Dist LEXIS 54026, at

    *11 (S.D.N.Y. Mar. 29, 2018) ................................................................................................ 16

*Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) ..................................... 6

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) .......................................................... 7

*Byrnie v. Town of Cromwell Bd. Of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001) ................................ 8

*Cuillo v. Shupnick,* 815 F. Supp. 133, 136 (S.D.N.Y. 1993) ....................................................... 13

*Godinger Silver Art Ltd.* 433 F. Supp. 3d at 426 ......................................................................... 7

*Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) ................................................................ 6

*Kidder Peabody & Co. v. Unigestion Int'l, Ltd.*, 903 F. Supp. 479, 492 (S.D.N.Y. 1995) ............ 6

*P.S.I. Metals, Inc. v. Firemen's Ins. Co. of Newark,* 839 F.2d 42, 44 (2d Cir. 1988) ................. 16

*Pentagen Technologies Int'l Ltd. v. United States*, 172 F. Supp. 2d 464, 473 (S.D.N.Y. 2001).. 13

*Pentagen Techs. Int'l Ltd.,* 172 F. Supp. 2d at 473 .................................................................... 14

*Perez v. MTA, 11 Civ. 8655 (RWS),* 2012 WL 1943943, at *3 (S.D.N.Y. May 29, 2012) (quoting

    lqbal, 556 U.S. at 678) ......................................................................................................... 7

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) ............ 7

*Residential Funding Corp. v. DeGeorge Financial Corp.,* 306 F.3d 99, 106-07 (2d Cir. 2002) . 10

*S.S. Hepwirth Co. v. W. States Mach. Co.,* 3 F.R.D. 493, 494 (S.D.N.Y. 1944) ........................... 6

*Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir. 2004) .................................................................. 6

**Other Authorities**

U.S. CONST, amend. I ............................................................................................ 12, 13

**Rules**

Fed. R. Civ. P. 12(c) .................................................................................................. 6

Fed. R. Civ. P. 12(h)(2)............................................................................................... 6

## MEMORANDUM OF LAW

Plaintiff D. Geo. Sweigert, a *pro se* non-attorney who has completed one half semester of law

school in good standing, respectfully submits this memorandum of law to accompany Plaintiff's

motion, entitled "PLAINTIFF'S NOTICE OF MOTION FOR LEAVE OF COURT TO FILE

RULE 7(a)7 REPLY TO DEFENDANT'S "ANSWER" (Dkt. 189)".

## PRELIMINARY STATEMENT

1.      Defendant filed his ANSWER (Dkt. 189) pursuant to the magistrate's ORDER

(12/28/2020, Dkt. 180).  Pursuant to the Federal Rules of Civil Procedure (Fed. R. Civ. Proc.)

Rule 7(a)7 the Plaintiff now seeks the Court's permission to file a REPLY to the Defendant's

ANSWER.  A REPLY is needed in this case to mitigate the scandalous smears that the

Defendant has directed at the Plaintiff to create a prejudicial environment in this Court.

2.      Defendant's latest ANSWER is riddled with unfounded counter claims, counter

allegations which present no facts, and superfluous information lacking in plausibility that is not

within the scope of the Plaintiff's Second Amended Complaint ([**SAC**] Dkt. 88) and the First

Supplemental Complaint ([**FSC**] Dkt. 150).  Plaintiff objects to this ANSWER on the ground of

the Defendant's failure to state a legitimate and plausible legal defense to a claim.

3.      The defense of "failure to state a legal defense to a claim" may be raised in any pleading

under Rule 7(a).  Objections to the ANSWER need to be raised pursuant to Rule 7(a)(7) and

documented for the Court, mainly to counter the Defendant's latest attempt, via the ANSWER,

to smear the *pro se* non-attorney Plaintiff and create a prejudicial environment based on slurs and

smears lacking plausible legal defenses.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

4.      Plaintiff filed **SAC** (Dkt. 88), over one sixteen months ago on 9/10/2019 and the **FSC**

(Dkt. 150) over five months ago on 9/9/2020.  By ORDER of the magistrate Defendant was

provided five (5) weeks to finally answer these pleadings (Dkt. 180).  The ORDER, issued

12/28/2020 (Dkt. 180), stated in relevant part, "Goodman shall file an answer to paragraphs 1

through 28, 69 through 110, 123, and 125 through 133 of Plaintiff's Second Amended Complaint

that was filed at ECF No. 88, as well as paragraphs 1, 39 through 45 and 47 through 50 of

Plaintiff's Verified Supplemental Complaint that was filed at ECF No. 150." The magistrate's

ORDER (Dkt. 80) is hereby incorporated by reference as if fully restated.

5.      The primary purpose of this instant pleading is to help the Court partially see through

some of the cloud of misstatements, foundationless legal arguments, and claims about "ample

evidence" made by the Defendant (albeit a small sampling is contained herein).  The seriousness

of the Defendant's reckless claims as to the Plaintiff's "evidence destruction" mandates the

approval of a Rule 7(a)7 REPLY to allow the Plaintiff an ANSWER.  Unfortunately, the depth,

breadth and width of the Defendant's slurs, smears and "outlandish conspiracy theories" only

clogs the Court's docket with the necessary responses (as contained herein) to these despicable

allegations.  Therefore, the Court's indulgence is requested concerning the length of this

pleading which addresses only two (2) of the Defendant's unfounded smears.

## ARGUMENT

## I.      LEGAL STANDARD

6.     The Federal Rules distinguish between a "pleading" and a "motion.". Compare Rule 7(a)

(pleadings) with Rule 7(b) (motions); see also *ISC Holding AG v. Nobel Biocare Fin. AG*, 688

F.3d 98, 112 (2d Cir. 2012).

7.     Unsurprisingly, given his well-documented record of false representations, Defendant

alleges no actual facts to support his arguments in his ANSWER, nor could he. Indeed, the

Defendant's proffered "defenses" fail the most basic tests of legal sufficiency. They are wholly

irrelevant to the issue to be decided here — namely, the specific paragraphs of the **SAC** and **FSC**

as called out by the magistrate's ORDER (Dkt. 180). Accordingly, the "(affirmative) defenses"

in the Defendant's ANSWER fail to "state a legal defense". See *S.S. Hepwirth Co. v. W. States*

*Mach. Co.,* 3 F.R.D. 493, 494 (S.D.N.Y. 1944).

### A.  There Is No Question of Fact or Law That Would Allow These Defenses to Succeed.

8.     "Failure . . . to state a legal defense to a claim may be raised . . . by a motion under Rule

12(c)" for judgment on the pleadings. Fed. R. Civ. P. 12(h)(2); see also *Kidder Peabody & Co. v.*

*Unigestion Int'l, Ltd.*, 903 F. Supp. 479, 492 (S.D.N.Y. 1995); *Ziemba v. Wezner*, 366 F.3d 161,

163 (2d Cir. 2004); Fed. R. Civ. P. 12(c). Because they are akin to motions to dismiss, such

motions are evaluated against the standard applicable to Rule 12(b)(6) motions. *Bank of N.Y. v.*

*First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).

9.     Accordingly, while "all material allegations composing the factual predicate of the claims

[or defenses] dismissal of which is sought are taken as true," *Kidder Peabody,* 903 F. Supp. at

492, "[t]o survive a Rule 12(c) motion," the challenged pleading must "contain sufficient factual

matter, accepted as true, to state a claim for relief that is plausible on its fact." *Hayden v.*

*Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (internal quotation marks and citations omitted); see

also *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A party must "allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007).  Courts are not "bound to accept as true a legal conclusion couched as a factual allegation.'" *Perez v. MTA, 11 Civ. 8655 (RWS)*, 2012 WL 1943943, at *3 (S.D.N.Y. May 29, 2012) (quoting Iqbal, 556 U.S. at 678).  See also *Godinger Silver Art Ltd.* 433 F. Supp. 3d at 426 ("Plaintiffs make no plausible allegation that Hirschkorn acted for any reason other than his earnest, subjectively held belief that plaintiffs were, in fact, infringing his patents.").

## A. DEFENDANT'S IRRELEVANT CLAIMS

### 1.     SPOLIATION OF EVIDENCE ALLEGATIONS

10.     A more comprehensive pleading – such as a REPLY – is needed to fully address the meritless, baseless and frivolous allegations and "defenses" made by the Defendant in his ANSWER about third party spoliation and the alleged culpability of the Plaintiff to same.  The Defendant uses the phrase "destroyed evidence" to assert allegations against the Plaintiff at least three (3) times in the ANSWER's first paragraph (para. (1)).

11.     One of the worst of these allegations concerns the supposed "destruction of evidence".  In para. (1) of the ANSWER, Defendant states, "Plaintiff's actions have effectively destroyed elements of evidence that are in part the focus of interest in this legal action" regarding the termination of his FACEBOOK account.  This is a highly prejudicial allegation made with no legal or factual basis.

8

12.     Courts nationwide consider destruction of evidence, commonly referred to as spoliation, as a very serious matter and are swift to penalize those who destroy or withhold relevant evidence, and to impose the harshest of sanctions of those who intentionally destroy evidence. This underscores the seriousness of such prejudicial baseless allegations.  As noted on the legal blog "Fox Rothchild, LLP", "Parties and their attorneys, however, should be mindful that just the *accusation* that they have wrongfully withheld or destroyed evidence could ultimately be held against them at trial". [emphasis NOT added]  This illustrates the prejudicial nature of such "spoilation" and "evidence destruction" claims.

13.     Spoliation of evidence is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Byrnie v. Town of Cromwell Bd. Of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001).

14.     Here, any third-party spoliation of evidence on the dubious personal FACEBOOK account of Mr. Goodman is totally outside the control of the Plaintiff, who was not in the position to be a custodian of data records at FACEBOOK.  Further, Defendant does not even "scratch the surface" of what materials would be considered evidentiary on his personal FACEBOOK account.  However, the Defendant has no problem in withholding evidence from the Plaintiff, acting in total disregard to the Court discovery ORDER (see Dkt. 173 and 188). Thus, the Court can assume that the Defendant has destroyed and spoliated evidence – not the Plaintiff – by the Defendant's own logic.  Yet that allegation is entirely unsupported with any facts and is implausible.  There is no legal remedy available to Mr. Goodman in this regard.

15.     The Court is reminded that FACEBOOK apparently terminated the personal "Jason Goodman" account because of the distribution and broadcast of podcasts that featured film

9

producer Mikki Willis and the COVID-19 conspiracy film *Plandemic* featuring discredited "Doctor" Judy Mikovits, PhD ( see https://www.vice.com/en/article/n7vkdq/leading-new-age-conspiracy-influencers-plan-their-retreat-to-utopian-lagoon ). As stated in the VICE article, "Most recently, on January 6, Willis was seen in the crowd of violent rioters who breached the U.S. Capitol. (There is no evidence that he himself committed any acts of violence.)". This is also true for Mr. Goodman who was also on the scene at the U.S. Capitol on January 6, 2021. This is telling of the company that Mr. Goodman keeps.

16.     It is well documented that the Defendant, via his open defiance to the Court's discovery ORDER (Dkt. 173), demonstrates his attempt to deny evidentiary materials (ordered by this Court) to the Plaintiff. Then, to muddy the waters, the Defendant alleges the Plaintiff "destroyed evidence" of the Defendant's irrelevant personal FACEBOOK account. Which is an allegation wholly denied by the Plaintiff as untrue, baseless, and meritless lacking any foundation.

17.     The Defendant states, "Goodman hopes the court will find Plaintiff in contempt, in part for his actions to deliberately cause third parties to destroy relevant evidence that could be used against him." The Defendant leaves the Court with no clue as to what evidence could be contained on a personal FACEBOOK account that would relate to the enumerated paragraphs of the **SAC and FSC** that were articulated in the Court's discovery ORDER (Dkt. 173). This is a baseless, meritless claim lacking foundation that **cannot** be proved by the Defendant which is denied by the Plaintiff.

18.     The Plaintiff welcomes any "contempt of court" motions to be filed by the Defendant to demonstrate his "outlandish conspiracy theories" (Dkt. 140, 175) of the Plaintiff's "spoliation". Such a motion would require Court issued subpoenas directed at FACEBOOK for the transmission of the Defendant's FACEBOOK content (for which no relevance has been

demonstrated) to the parties.  It is inappropriate for a party, like the Defendant, to seek contempt sanctions for third-party spoliation.  However, the Plaintiff has obliged the Defendant with such a motion of his own (Dkt. 188) to curtail the Defendant's willful disobedience of the Court's discovery orders (Dkt. 173).

19.     A potential "contempt" motion by the Defendant would need to demonstrate , "(1) that the party  having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed `with a culpable state of mind'; and (3) that the destroyed evidence was `relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."  *Residential Funding Corp. v. DeGeorge Financial Corp.,* 306 F.3d 99, 106-07 (2d Cir. 2002) at 107 (quoting Byrnie, 243 F.3d at 107-12).

20.     Defendant offers no credible explanation as to the impact of how such third-party "spoliation" has damaged or interfered with the Defendant, except for the loss of his personal FACEBOOK account that was spewing out dangerous anti-Government conspiracy theories like the Mikki Willis film *Plandemic* (a QAnon based theory).  Further, any allegations of third-party spoliation should be directed at FACEBOOK, not the Plaintiff.  As usual, Defendant provides no discussion as to relevancy, duty to preserve, bad faith or prejudice in his ANSWER.  Just another conclusory, baseless claim lacking merit.

21.     The Defendant may want to make use of the so-called "WayBack Machine" that contains archival records of FACEBOOK.  For instance, see the Defendant's podcast "Team Tyler Is On The Trail Of American Satan (

https://archive.org/details/TeamTylerIsOnTheTrailOfAmericanSatan ).  This video podcast features the tag line in the description by the Defendant "It is critical that you PLEASE

#ShareLikeABot all of Quinn Michaels content. #TimePhoneHack the future to #StopTheSacrifice ". The Court will recall that this video content, co-created by Mr. Goodman and Quinn Michaels (aka Korey Atkin) was alleged to have been directed at the Plaintiff to mobilize CrowdSource The Truth "digital soldiers" in the Mount Shasta, California region to physically locate the Plaintiff. Such video podcast content is very favorable to the Plaintiff in this lawsuit regarding Mr. Goodman's "staklking-ish" behavior and beguiles claims that the Plaintiff would want such evidence destroyed via a FACEBOOK account termination (which the Plaintiff had absolutely nothing to do with). In said "American Satan" video, the Defendant accused the Plaintiff of being a part of a murder plot to kill Quinn Michaels in Vaughn, New Mexico and advertised on several podcasts that he had "absolute evidence" to demonstrate the Plaintiff was in Vaughn, New Mexico when Mr. Michaels suffered a "bleb" on his long (fully articulated in pages 45 to 47 in Dkt. 39-1). The podcast also insinuates the Plaintiff is involved in child trafficking, another QAnon-based conspiracy. All of this is untrue and baseless.

22.    It is instructive to note that allegations of "destruction of evidence" via the use of "hacking skills" is presented against the Plaintiff in para. 19 of the ANSWER. See the phrase (para. (19)) "[a]lthough there is ample evidence of Plaintiff destroying evidence ". Just as there is "ample evidence" to demonstrate the Plaintiff was in Vaughn, New Mexico attempting the murder of Quinn Michaels? No such evidence exists and none can be presented by the Defendant. The S.D.N.Y. like the CrowdSource The Truth podcast audience, has now become the audience for the Defendant's baseless, meritless and pointless conspiracy theories. Mr. Goodman does not hide the fact that he is enjoying this – and other – litigation as a way to showcase his "journalistic endeavors" to his audience for the purposes of raising funds in his "COUNTER LAWFARE" project.

2.     FIRST AMENDMENT ACCESS TO THE COURTS

23.    The Defendant behaves as if any citizen seeking redress from the courts is not a

Constitutionally protected issue under the First Amendment (U.S. CONST, amend. I).  In para.

(23) of the ANSWER Mr. Goodman again drags up the Eastern District of Virginia lawsuit

against him (*Steele v. Goodman*).  See "Goodman alleges these [lawsuits] were both brought

about in a coordinated effort to destroy him financially".  Sworn statements have been repeatedly

introduced in the E.D.VA lawsuit stating (under oath) that the plaintiff (Robert David Steele) and

his attorney (Stephen Scott Biss) have had nothing to do – whatsoever – with the Plaintiff.  This

claim has been brought up by the Defendant almost a dozen times in this (S.D.N.Y.) instant

litigation and in the E.D.VA.  It is baseless, meritless and lacking foundation.

24.    As a matter of first impression, one wonders what "financial" destruction would befall a

*pro se* litigant who is not obligated to pay attorney's fees.  In almost three years of the present

litigation, Mr. Goodman's social media footprint continues to expand.  In fact, the "Jason

Goodman" YouTube channel boasts "119K" subscribers (albeit many of those are probably from

fake accounts purchased by Mr. Goodman).  Mr. Goodman has stated in almost a dozen video

podcasts that his expenses have been predominately related to the E.D.VA lawsuit, which have

namely been transportation costs.  On his public podcasts the Defendant bemoans the cost of

paper and LaserJet printer toner cartridges as part of his "financial" losses.  There is no rationale

explanation to assume a lawsuit would destroy a *pro se* party "financially", unless there are

attorney's fees associated with the action.  Further, Mr. Goodman has stated on innumerable

podcasts that CrowdSource The Truth is an experimental "news network" that competes with

juggernauts like the Cable News network (C.N.N.) and is based upon the most flimsy of business

models, namely YouTube monetization fees and PATREON or SubscribeStar "pay-wall"

membership / subscriber fees.  This is certainly a business model doomed to fail in the new era

of public scorn for those involved in QAnon related movements, like <u>CrowdSource The Truth</u>.

25.      The Defendant is very prolific at using the First Amendment to justify his despicable

Internet social media behavior.  Mr. Goodman appears to be extremely knowledgeable about this

Constitutional Amendment.  The First Amendment to the Constitution provides: "Congress shall

make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or

abridging the freedom of speech, or of the press; or the right of the people peaceably to

assemble, <u>and to petition the Government for a redress of grievances.</u>" U.S. CONST, amend. I

[emphasis added]

26.      Therefore, even if true, the allegation of "coordinated lawsuits" is not actionable as it is

Constitutionally protected activity.  It is the Plaintiff's protected Constitutional right to attempt

an intervention in any case in which he would deem appropriate.  *Pentagen Technologies Int'l*

*Ltd. v. United States*, 172 F. Supp. 2d 464, 473 (S.D.N.Y. 2001) aff'd, 63 F. App'x 548 (2d Cir.

2003) (holding that there can be no abuse of process if purpose of process is prevailing in

litigation itself); *Cuillo v. Shupnick,* 815 F. Supp. 133, 136 (S.D.N.Y. 1993) .

27.      Again (para. (23)), the Defendant attempts to hold the Plaintiff liable for the actions of

his brother "George Webb" (the Defendant's former "house guest" and podcast sidekick).  See

"It is also noteworthy that Sweigert's brother Webb introduced Goodman to Robert David

Steele, Plaintiff in Steele v Goodman."  Indeed, this Webb-Goodman-Steele introduction is

memorialized in the video podcast that was published one-day before the Port of Charleston dirty

bomb hoax" of June 14, 2027.  See video entitled, "Robert David Steele", June 13, 2017 (

<u>https://www.youtube.com/watch?v=hMJoAO5OZY8</u> ).

28.     In the Steele-Webb-Goodman video podcast, the Defendant agrees with Mr. Steele that special counsel Robert S. Mueller, III is a "traitor" and "cover-up artist" and that Vice President Mike Pence is a pedophile (coincidentally these are QAnon related conspiracy theories).  Mr. Goodman also proclaimed, "I agree" when Mr. Steele had affirmed that that Mr. Mueller had spent a lifetime covering up for the real culprit of the 9/11 World Trade Center attacks – "Dick Cheney" (a QAnon related conspiracy).  George Webb also appears in the video podcast (which the Plaintiff knows nothing about how such introductions were made).  The Defendant's previous public support of Mr. Steele and Mr. Webb ("Sweigert") these "outlandish conspiracy theories" (Dkt. 87, 140, 175) are forcing the Defendant to rebrand himself as someone who did not support such QAnon rubbish.  Much like the child trafficking conspiracies pushed in joint podcasts with his favorite colleague Michael Moore, aka "True Pundit"(West Chester, PA). Mr. Moore (convicted felon) was the source of dozens of QAnon-based conspiracies with Mr. Goodman about pedophiles and child trafficking (see Request for Judicial Notice Number Four, **Dkt. 13-1** for full description of the George Webb, Jason Goodman, and Michael Moore child trafficking related murder stories of Jenny "Task Force" Moore).

29.     Again, there is no actionable cause related to the foregoing issues of federal litigation or "YouTube introductions".  Mr. Steele, Mr. Webb and/or the Plaintiff are free to file litigation against the Defendant in any manner they would choose under the protection of the First Amendment.  See para. (3) of the ANSWER, "Defendant restates his allegation that Plaintiff has collaborated directly or indirectly with third parties to facilitate additional lawsuits against Defendant, including Steele v Goodman which was dismissed in September 2020".  The Plaintiff denies this allegation as baseless and meritless and asks the Court.  Defendant has failed to plead a purpose collateral to the litigation.  *Pentagen Techs. Int'l Ltd.,* 172 F. Supp. 2d at 473.

30.    It should not be forgotten by this Court that the Defendant developed a very close

relationship with Manuel Chavez, III (Carson City, Nevada) as Mr. Chavez was an apparent

dupe to a scheme to file a civil action against the Defendant in the State of Arizona.  Mr. Chavez

is featured as "the founder of QAnon" in the VICE NEWS documentary about QAnon (

https://www.vice.com/en/article/dy8ww7/where-did-qanon-come-from ).  Apparently, the

attorney for Mr. Steele drafted the Arizona complaint sent to Chavez (but not docketed), while

simultaneously, his wife sent Mr. Chavez $1,500.00 as an artistic contribution via the

PATREON.COM pay-wall (designed to hide such transactions).  This has nothing to do with the

Plaintiff and the Defendant knows this.

31.    There are dozens of court documents in the E.D.VA, submitted by the Defendant, that

declares he (Mr. Goodman) has in his possession dozens and dozens of e-mail messages given to

him by Mr. Chavez.  These e-mail messages implicated Mr. Steele and his attorney in the

Arizona lawsuit initiative.  But these same e-mail messages have zero content related to the

Plaintiff.  There are no evidentiary "breadcrumbs" in the "Chavez e-mails" that implicate the

Plaintiff in any way – whatsoever – with this so-called "coordinated lawsuit" scheme.  Defendant

knows this but assumes that he can insult the intelligence and decorum of the S.D.N.Y. by

openly flaunting his version of the "facts" (albeit they are mere falsifications of the truth).  In this

regard the Defendant seems to believe the S.D.N.Y. is a gullible dupe like the E.D.VA.

32.    Assuming *arguendo* that the Court interprets Mr. Goodman's ramblings as an abuse of

process claim, the Court is reminded that to prevail on a claim for abuse of process in New York,

a claimant "must allege three essential elements: (1) regularly issued process, either civil or

criminal; (2) an intent to do harm without excuse or justification; and (3) use of process in a

perverted manner to obtain a collateral objective." N.Y. Stock Exch., 196 F. Supp. 2d at 415

(citing *Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (N.Y. 1984)). Merely instituting "a civil action by summons and complaint is not legally considered process capable of being abused." Id. (citing *P.S.I. Metals, Inc. v. Firemen's Ins. Co. of Newark*, 839 F.2d 42, 44 (2d Cir. 1988) ).  Other courts have phrased the elements differently, requiring that a plaintiff show that the defendant "(1) prosecute[d] a civil action against the plaintiff, (2) by or at the instance of the defendant, (3) without probable cause, (4) with malice, (5) which terminated in favor of the plaintiff, and (6) caus[ed] special injury." *Asia TV USA, Ltd. v. Total Cable USA LLC,* No. 16-cv-6873, 2018 U.S. Dist LEXIS 54026, at *11 (S.D.N.Y. Mar. 29, 2018) (internal citations omitted). Regardless of whether a malicious prosecution claim is broken into four or six elements, however, Defendant's claim still fails.  Even if an action is initiated in bad faith, that cannot alone support an abuse of process claim. *Asia TV USA*, 2018 U.S. Dist. LEXIS 54026, at *12.

### B.  RULE 7(a)7 ISSUES

33.     The Plaintiff asserts that there are many more issues of fraud, deceit and trickery used by the Defendant in his ANSWER (Dkt. 189) to deceive this Court.  Unfortunately, as this instant pleading is limited for the purposes of securing a Rule 7(a)(7) REPLY, in the interests of the efficient administration of judicial resources this document alone cannot address the totality of the Defendant's fraud perpetrated upon this Court.  Such an argument can be made in a REPLY pleading that will fully speak to the merits of this lawsuit.

### CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for Leave of the Court to file a REPLY pursuant to Fed. R. Civ. P. 7(a)(7) should be granted or, in the alternative, Plaintiff's Motion to Strike pursuant to Fed. R. Civ. P. 12(f) should be granted in its entirety.

Signed this _____ day of February 2021.

**D. G. SWEIGERT, C/O**
**Pro Se Non-attorney**
**GENERAL DELIVERY**
**ROUGH AND READY, CA 95975**
_Spoliation-notice@mailbox.org_

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

### U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK
### (FOLEY SQUARE)

D George Sweigert

**Plaintiff**                                          CIVIL CASE #: 1:18-CV-08653-VEC

v.                                                    JUDGE VALERIE E. CAPRONI

Jason Goodman                                         MAGISTRATE STEWART D. AARON

**Defendant**


### CERTIFICATE OF SERVICE


I HEREBY ATTEST that a true copy of the attached pleadings have been sent to the

following addressees on the _____ day of February, 2021.


Jason Goodman, CEO
Multi-media Design Systems, Inc.
252 7th Avenue, Apart. #6S
New York, NY 10001

Clerk of the Court, Room 200
U.S. District Court
500 Pearl Street
New York, New York 10007-1312

D. GEORGE SWEIGERT

19

RMLY TO SEAL

SS FIRMLY TO SEAL

AGE
$7.95

PRIORITY
FLAT RATE EN
POSTAGE F

PM 2-Day
95603 0006
Date of sale
02/02/21
06 2SS
11488544

FOLD HERE

9505 5067 1486 1033 4125 14



# UNITED STA
## POSTAL SERVICE ® | **MAIL**

■ Expected delivery date specified for domestic use.

■ Most domestic shipments include up to $50 of insurance (restrictions apply).*

■ USPS Tracking® included for domestic and many international destinations.

■ Limited international insurance.**

■ When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at *http://pe.usps.com.*

** See International Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

# FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT



# TRACKED ■ INSURED

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

PS00001000014

EP14F May 2020
OD: 12 1/2 x 9 1/2

FROM:

*D. G. SWEIGERT, C/O*
*GENERAL DELIVERY*
*ROUGH AND READY, CA 95975*
*Spoliation-notice@mailbox.org*

TO:

*PRO SE #200*

**Clerk of the Court, Room 200**
**U.S. District Court**
**500 Pearl Street**
**New York, New York 10007-1312**

*10007-1312*

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service May 2020; All rights reserved.