**U.S. DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| SWEIGERT | CIVIL CASE #: |
|---|---|
| V. | 1:18-CV-08653-VEC |
| GOODMAN | JUDGE VALERIE E. CAPRONI |

### PLAINTIFF'S AMENDED NOTICE OF MOTION (WITH MEMORANDUM OF LAW IN SUPPORT OF MOTION) FOR JUDICIAL NOTICE OF DOCUMENTS AND FACTS IN SUPPORT OF DISCOVERY AND PRELIMINARY INJUNCTIVE RELIEF

### THIS PLEADING AMENDS ECF. NO. 216.

Pursuant to Federal Rule of Evidence 201, and in connection with Plaintiffs' Motion for

Preliminary Injunctive Relief and discovery, Plaintiff respectfully requests that the Court take

judicial notice of the following federal lawsuit and artifact that involves the Defendant as a party:

- Civil Action No. 3:17-cv-00601, U.S.D.C. for E.D.Va., ROBERT DAVID STEELE & EARTH INTELLIGENCE NETWORK vs. JASON GOODMAN

    MEMORANDUM OPINION, 07/02/20, Judge Lauck, Richmond, Virginia (attached)

A Certificate of Service appears on the LAST page of this pleading.

Signed this seventeenth day of March 2021.

Respectfully,

D. Geo. Sweigert

*D. GEORGE SWEIGERT*
*GENERAL DELIVERY*
*NEVADA CITY, CA 95959-9998*
*SPOLIATION-NOTICE@MAILBOX.ORG*

## MEMORANDUM OF LAW

**I.      THE COURT MAY TAKE JUDICIAL NOTICE OF FACTS THAT ARE
NOT SUBJECT TO REASONABLE DISPUTE WHERE THEIR ACCURACY
CAN BE DETERMINED BY RELIABLE SOURCES**

Pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, courts may take judicial notice of

facts that are not subject to reasonable dispute and are capable of accurate and ready

determination by resort to sources whose accuracy cannot reasonably be questioned. Where a

Court is supplied with the necessary information, taking judicial notice is mandatory. See Fed. R.

Evid. 201(d).

**II.      COURT RECORDS ARE SUBJECT TO JUDICIAL NOTICE**

Pleadings and court filings are just the kind of documents that are not subject to reasonable

dispute and are capable of accurate and ready determination under Rule 201(b)(2) of the Federal

Rules of Evidence. Accordingly, it is proper for courts to take judicial notice of the existence of

such documents. See *Roe v. Johnson,* 334 F. Supp. 2d 415, 419-20 (S.D.N.Y. 2004) (recognizing

that a court, pursuant to Rule 201(b), may take notice of the public record, including complaints

and court opinions); see also *A.I. Trade Finance, Inc. v. Centro Internationale Handelsbank AG,*

926 F. Supp. 378, 387 (S.D.N.Y. 1996) (in taking judicial notice of a judgment in Vienna,

Austria, the court pointed out that "[t]he Second Circuit has noted that Rule 201 permits a court

to take judicial notice of a foreign judgment").

**III.      CONCLUSION**

For the reasons set forth above, the Plaintiff respectfully requests that the Court grant, in its

entirety, the Plaintiff's Motion for Judicial Notice of Documents and Facts.

A Certificate of Service appears on the LAST page of this pleading.

Signed this seventeenth day of March 2021.

Respectfully,

D. Geo. Sweigert

*D. GEORGE SWEIGERT*
*GENERAL DELIVERY*
*NEVADA CITY, CA 95959-9998*
*SPOLIATION-NOTICE@MAILBOX.ORG*

## CERTIFICATE OF SERVICE

**The undersigned hereby attests under penalties of perjury that copies of this communication have been sent via electronic mail message to the following parties on the seventeenth day of March, two thousand and twenty-one (2021).**

| Clerk of the Court, Room 200<br>U.S. District Court 500 Pearl Street<br>New York, New York 10007-1312<br>EMAIL:<br>temporary_pro_se_filing@nysd.uscourts.gov | Jason Goodman, CEO<br>Multimedia System Design, Inc.<br>252 7th Avenue, Apart. #6S<br>New York, NY 10001<br>truth@crowdsourcethetruth.org |
|---|---|

*D. GEORGE SWEIGERT*
*Pro Se Non-Attorney*
*GENERAL DELIVERY*
*NEVADA CITY, CA 95959*

3

**ATTACHMENT "A"**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**ROBERT DAVID STEELE,** *et al.*,

      **Plaintiffs,**

v.                                   **Civil Action No. 3:17cv601**

**JASON GOODMAN,** *et al.*,

      **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on four motions:

(1) *Pro Se* Defendant Jason Goodman's Motion to Disqualify Counsel for Plaintiff (the "Motion to Disqualify"), (ECF No. 165);

(2) Plaintiffs Robert David Steele and Earth Intelligence Network ("EIN") (collectively, "Plaintiffs") Motion *in Limine*, (ECF No. 171);

(3) Defendant Patricia A. Negron's Request for Guidance, or in the Alternative, a Motion for Extension of Time (the "Motion for Extension"), (ECF No. 181);[1] and,

(4) Goodman's Motion to Compel Plaintiff to Comply with Pretrial Order and *Sua Sponte* Order (the "Motion to Compel"), (ECF No. 185).

Plaintiffs and Negron responded to the Motion to Disqualify, (ECF Nos. 166,

169), and Goodman replied, (ECF No. 170). Goodman responded to the Motion *in*

*Limine*. (ECF No. 174.) Plaintiffs failed to reply to Goodman's response and the time to

do so has expired. Plaintiffs responded to the Motion to Compel. (ECF No. 187.)

Goodman failed to reply to Plaintiffs' response and the time to do so has expired.

---

[1] On June 9, 2020, the Court dismissed Negron as a defendant in this matter. (ECF No. 194.) Because Negron brought the Motion for Extension only on behalf of herself, the Court will deny as moot the Motion for Extension.

The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).[2] The Court

dispenses with oral argument because the materials before it adequately present the facts and

legal contentions, and argument would not aid the decisional process. These matters are ripe for

disposition. For the reasons stated below, the Court will deny the Motion to Disqualify, the

Motion *in Limine*, the Motion for Extension, and the Motion to Compel.

### I. Factual and Procedural Background[3]

#### A.    Factual Background

This action arises out of a series of allegedly defamatory statements that Goodman,

Negron, and Lutzke[4] made against Plaintiffs beginning on June 15, 2017. (Am. Compl. 20, ECF

No. 39.) According to Plaintiffs, Goodman operates "various social media properties" under the

name "Crowdsource The Truth" or "CSTT." (*Id.* 11.) In 2006, Steele founded EIN. (*Id.* 9.)

After Steele cancelled an appearance on one of Goodman's programs, Plaintiffs allege that

"Goodman, Negron[,] and Lutzke began an unprecedented smear campaign against [Plaintiffs]."

(*Id.* 20.) From that "smear campaign," the Amended Complaint now brings nine claims against

Goodman and Lutzke.

---

[2] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Steele is a Virginia citizen and EIN is a Virginia not-for-profit 501(c)(3) corporation. (Am. Compl. 6, 9, ECF No. 39.) Goodman is a New York citizen, and the sole remaining co-defendant, Susan D. Lutzke, is a Colorado citizen. (*Id.*)

[3] The Court assumes familiarity with its March 31, 2019 Memorandum Opinion and Order. (ECF Nos. 85, 86.) It offers only a summary here.

[4] Plaintiffs returned the Lutzke summons as executed. (ECF No. 62.) Plaintiffs requested entry of default as to Lutzke. (ECF No. 65.) The Clerk entered default as to Lutzke. (ECF No. 66.)

**Count I:**    Defamation *per se* (the "defamation claim");

**Count II:**    Insulting words, in violation of Virginia Code § 8.01-45 (the "insulting words claim");

**Count III:**    Business conspiracy, in violation of Virginia Code § 18.2-499 and Virginia Code § 18.2-500 (the "statutory conspiracy claim");

**Count IV:**    Common law conspiracy;

**Count V:**    Tortious interference;

**Count VI:**    Intentional Infliction of Emotional Distress;

**Count VII:**    Personal trespass by computer in violation of Virginia Code § 18.2-152.7 and computer harassment in violation of Virginia Code § 18.2-152.7:1 (the "computer claim");

**Count VIII:**    Unauthorized use of name and picture in violation of Virginia Code § 8.01-40 (the "unauthorized use claim"); and,

**Count IX:**    Permanent injunction.

(*See* Am. Compl.; Mar. 31, 2019 Mem. Op. 38, ECF No. 85.) All nine of Plaintiffs' claims against Goodman remain. (Mar. 31, 2019 Mem. Op. 39.)

## B.    <u>Procedural History</u>

Throughout this litigation, Plaintiffs and Goodman have repeatedly failed to meet their discovery obligations as imposed by the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the Eastern District of Virginia (the "Local Rules"), and this Court's Orders. Because it must, the Court summarizes its prior warnings about the Parties' failures below. (*See* July 25, 2019 Mem. Op. 4–9, ECF No. 154; Initial Pretrial Conference Tr. 21–25, 40, ECF No. 162.)

1. **The Court Warns the Parties in the July 25, 2019 Memorandum Opinion and Order**

On July 25, 2019, the Court issued a Memorandum Opinion and Order, (ECF Nos. 154, 155), addressing several motions submitted by Plaintiffs and Goodman regarding the discovery process. Because the Court found that many of the motions "border[ed] on unintelligibility" and consistently "fail[ed] to satisfy all Local Rules," (July 25, 2019 Mem. Op. 1), the Court denied Goodman's Discovery Motion, (ECF No. 109), Plaintiffs' Motion for Sanctions, (ECF No. 121), and Plaintiffs' Motion to Compel, (ECF No. 126).

In addressing Plaintiffs' Motion for Sanctions, the Court stated that:

> It is with chagrin that Court must begin . . . by observing that, despite assistance by counsel, Plaintiffs engage in *ad hominem* attacks against Goodman which the Court cannot tolerate . . . . [t]he Court reminds Counsel for Plaintiffs that, as an officer of the Court, he may be sanctioned for engaging in conduct unbefitting of this Court. Local Rule 83.l(J), which pertains to 'Courtroom Decorum,' has equal force on the papers: 'Counsel shall at all times conduct and demean themselves with dignity and propriety.'

(July 25, 2019 Mem. Op. 4–5.)[5] The Court denied Plaintiffs' Motion for Sanctions, as well as their Motion to Compel Discovery, finding that, despite Goodman's violation of this Court's Orders, "[g]iven the vitriol evinced in Plaintiffs' filings, it is difficult to conclude that the fault for the communication breakdown lies at the feet of just one party." (*Id.* 8.) The Court rebuked the "tactic" used by Plaintiffs' counsel of submitting a Discovery Chart as this Court requires, but doing so without engaging in an effort to resolve the dispute – something made clear when he used the chart to describe Goodman's accusations as "hateful, hostile, vulgar[,] and unprofessional." (*Id.*)

---

[5] The Court observes that another Judge of this Court subsequently admonished Counsel for Plaintiffs for conduct unbefitting an officer of the Court. *See Nunes v. WP Co., LLC*, No. 3:20cv146, 2020 WL 2616707, at *2 (E.D. Va. May 22, 2020).

The Court noted that Counsel for Plaintiffs simply refused to communicate with Goodman, having stated in their briefs that "Plaintiffs and their counsel refuse to engage Goodman," (*id.* 4 n.4. (internal citations omitted)), and were "no longer willing to speak with Goodman via telephone," (*id.* 8 (internal citations omitted)). The Court admonished Counsel for Plaintiffs for his failure to communicate, stating that "given Goodman's *pro se* status . . . a blanket refusal to engage litigants in any kind of telephonic communication risks violating the rules of this Court." (*Id.*) Finally, the Court reminded Counsel for Plaintiffs that the Court "will not tolerate an unreasonable refusal to engage in discovery by any party. Failure to comply with discovery rules and procedures could result in the Court imposing sanctions on Plaintiffs or Goodman." (*Id.*)

### 2. The Court Warns the Parties at the July 31, 2019 Initial Pretrial Conference

The next week, at the July 31, 2019 Initial Pretrial Conference, the Court again warned all Parties – specifically Mr. Biss and Mr. Goodman – that "there are sanctions for failing to follow the rules." (Initial Pretrial Conference Tr. 21, ECF No. 162.) Speaking to the Parties in a courtroom and on the record, the Court enumerated in detail their responsibilities under the Federal Rules as well as the potential sanctions the Parties could face if they failed to meet those responsibilities:

- [U]nder Rule 11, if you do not follow the rules or the directive of the Court, and this doesn't actually pertain to discovery, and you sign a document, you can pay money to the Court, and you can pay money for fees to the other side. So that's one place where you can get sanctioned.

- Rule 26(g) [] requires that . . . you have to sign the discovery, and when you do, though, when you produce discovery and you sign it, you are saying that you have made a reasonable inquiry into what you are turning over or saying. It's a reasonable inquiry. [I]t can't be the case that you don't really look for things. It can't be the case that you *think* this is the answer. Now you're in front of a Court, and when you sign a document, it has legal consequences. You have to say, This

is really, really all I think I can find. And if later somebody points out otherwise, there can be sanctions. There has to be a substantial justification for having missed stuff. And that's under 26(g)(3). [I]'m telling you the rules. They are all on the Internet. Most courts have them available on their websites.

- [R]egarding interrogatories, you have to sign under Rule 33(b)(3), Federal Rule of Civil Procedure 33(b)(3), and you have to provide documents under Rule 34(2)(B) and (C). So they go in order. Depositions, interrogatories, and production of documents. Now, if you don't do it right, and by that that means legally correctly, which you are obligated to learn enough to understand, under Rule 37, either if you fail to disclose what you're required to, under 26(a), which I think you all have had discussions about or 26(e), or if you fail to supplement, and so that means as soon as you know something – you've found something else or you know something else, you have to tell the other side. Basically, as quickly as you can.

- And if you don't do that, if you don't supplement or you don't answer, there are pretty serious sanctions for that that don't just go to money. [I]t could be the case that you're not allowed to use the information you come up with at trial or at a hearing. Even if it's true, it doesn't go in, because it's not fair. You don't let the other side know. And I make the determination of what the sanctions are.

- Most of these have some kind of exception like unless it's substantially justified. Someone would have to say why you couldn't possibly have known earlier or why you forgot to turn it over. You could also have to pay, and this is all under Rule 37, pay fees and expenses.

- It can be the case if it's a jury trial that the jury could be told that you failed to disclose it, and they can infer whatever they want to from that, or I can impose any other sanction, and that includes, and this is under 37(b)(2)(A)(i) through (vi), the sanctions can include that I direct that whatever is improperly turned over or improperly disclosed, that the prevailing party, the other side, those facts, the facts that they want in evidence or that matter, it's just is a fact of the case. That's one sanction. It can be determined that you've given up your right to challenge it because you didn't do it fairly, essentially.

- Under 37(b)(2)(ii), I can prohibit the disobeying party from supporting or opposing any claim or defense, or from seeking to introduce something into evidence.

- Under Section (iii), I can strike a whole pleading. I can strike part of a pleading. And (iv), I can just stay the case until anything is obeyed.

- *Under (v), I can dismiss the action in whole or in part. On the other side, I can render default judgment, a judgment against the disobeying party.* So it's not just the case that it can cost money. *It means that you can win or lose the case if things go too far awry.*

- And [] I'm telling you [Mr. Goodman] this, I'm telling Mr. Biss this, that I have rarely seen so contentious a record before I even have an initial pretrial conference. And I don't care whose fault it is. What I am saying to both of you is it must stop. It must stop.

- And, Mr. Goodman, I appreciate that you're saying you're not an attorney and that you're doing the best you can, but even if you're not an attorney and you disobey the rules, with warning, which I'm giving you right now, you suffer sanctions. Do you understand that?

(*Id.* 21–25 (emphases added).)

The Court concluded the Initial Pretrial Conference by admonishing all Parties, requiring them to make "good faith" efforts to resolve the dispute going forward, and warning them again that the Court would "be swift to issue sanctions . . . because I think it's over the top what has been in front of the Court already, and we're just going to move forward. We're going to try this case." (*Id.* 40.)

On August 1, 2019, the Court issued its Initial Pretrial Order, outlining the Parties' responsibilities involving discovery and other matters in preparation for trial. (*See generally* Initial Pretrial Order, ECF No. 157.) The Parties then filed the instant motions, which the Court addresses below.

## II.  Motion to Disqualify

In the Motion to Disqualify, Goodman seeks to disqualify Counsel for Plaintiffs, Stephen Scott Biss, from acting as trial counsel for Steele and EIN. Because Goodman has not met his burden of showing that Mr. Biss is a necessary witness, the Court will deny the Motion to Disqualify.

### A.    Relevant Background

Mr. Biss has served as counsel for Plaintiffs since this lawsuit was filed on September 1, 2017. (*See* Original Compl. 37, ECF No. 1.) In the Motion to Disqualify, Goodman claims that

7

"new information has come to light that makes it necessary for [Goodman] to call . . . [Mr.] Biss and his wife and paralegal Tanya Cornwell as witnesses." (Mot. Disqualify 1, ECF No. 165.) Goodman states that Mr. Biss "engaged in unethical conduct by participating in the formulation and execution of a plan to bring multiple civil lawsuits against [Goodman] in jurisdictions around the United States." (*Id.* 8.)

In support of this scheme, Mr. Biss allegedly paid an individual, Manuel Chavez III, to "produce false evidence against [Goodman] and to supply this evidence to [Mr.] Biss for use in this instant legal matter." (*Id.*) Goodman claims that Chavez "approached [Goodman] volunteering to provide emails," several of which Goodman attaches to the Motion to Disqualify. (*Id.* 10.) One of these emails reveals a communication between Plaintiff Steele and Chavez, with Steele telling Chavez "email to [Mr. B]iss by tomorrow 0900 eastern detailing what you have collected that connects Goodman to Brock and Arnon Milchan. [F]eel free to tell him you want to support my case in return for a percentage."[6] (Mot. Disqualify Ex. C "October 22, 2017 Email," ECF No. 165-3.)

Goodman outlines a series of "unlikely coincidences" which "indicate . . . a deeper relationship between" Steele, Mr. Biss and various other individuals. (*Id.* 14.) Goodman claims that these individuals, including "[Steele], [Mr.] Biss, Negron, Webb, Sweigert, Chavez, S[c]hoenberger, Cornwell, Holmseth and others . . . . conspired '*ab initio*' to bring multiple suits against Goodman with the specific intent to logistically and financially overwhelm him, extort huge sums of money from him, and chill his journalistic efforts." (*Id.*) (emphasis added).

---

[6] Steele denies this allegation as follows: "I did not ever received [sic] any false or fabricated evidence from Chavez or offer him a percentage of any recovery in this case if he provided such evidence." (Resp. Mot. Disqualify Counsel Ex. 1 "Declaration of Robert David Steele" ¶ 3(i), ECF No. 166-1.)

Goodman also asserts that Mr. Biss violated Virginia Rule of Professional Conduct 4.2 by contacting Negron, then a party to the case, without specifying when this communication occurred. In support, Goodman provides an email between Chavez, Mr. Biss, and a Thomas Schoenberger. (Mot. Disqualify Ex. F "December 11–14, 2017 Email," ECF No. 165-6.) In the email, Biss appears to provide Schoenberger with a number associated with Negron. (*See id.*) The subject of the message is "Negron's New #." (*Id.*)[7]

### B.    Virginia Rule of Professional Conduct 3.7

Virginia Rule of Professional Conduct 3.7(a), often referred to as the witness-advocate rule, states: "A lawyer shall not act as an advocate in an adversarial proceeding in which the lawyer is likely to be a necessary witness." Va. R. Prof. Conduct 3.7(a).[8] Aside from three enumerated exceptions,[9] the Rule "is mandatory and may not be waived." *Premium Prods., Inc. v. Pro Performance Sports, LLC*, 997 F. Supp. 2d 433, 436 (E.D. Va. 2014). The witness-advocate rule "is a 'prophylactic rule designed to protect the interests of the client, the adverse

---

[7] The Court will deny the Motion to Disqualify on this ground. Virginia Rule of Professional Conduct 4.2 states that

> [i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Mr. Goodman has submitted no evidence that Mr. Biss actually contacted Negron. Furthermore, in response to the Motion to Disqualify, Negron "categorically denie[d] that she has had any contact with Plaintiff's counsel or his agents or employees regarding this case." (Negron Reply Mot. Disqualify 1, ECF No. 169.)

[8] Local Rule 83.1(I) adopts the Virginia Rules of Professional Conduct as the professional ethics guidelines for practicing in the Eastern District of Virginia.

[9] These include situations in which: "(1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client." Va. R. Prof. Conduct 3.7(a).

party, and the institutional integrity of the legal system as a whole." *Id.* (quoting *Estate of Andrews by Andrews v. United States*, 804 F. Supp. 820, 823 (E.D. Va. 1992)). "Ultimately, a testifying advocate threatens the interests of the judicial system as a whole because of the 'public perception that a testifying advocate has distorted the truth on the stand in order to advance his or her client's cause and prevail in the litigation." *Id.* (quoting *Andrews*, 804 F. Supp. at 824).

Pursuant to Rule 3.7, the Court "must first determine whether the attorney is a 'necessary' witness." *Metro. P'ship, Ltd. v. Harris*, No. 3:06cv522, 2007 WL 2733707, at *2 (W.D.N.C. Sept. 17, 2007). The moving party—here, Goodman—bears the burden to "demonstrate that the lawyer's testimony is 'strictly necessary,' and not merely relevant and useful." *Tattoo Art, Inc. v. TAT Int'l, LLC*, No. 2:10cv323, 2010 WL 11469802, at *2 (E.D. Va. Oct. 18, 2010) (quoting *Sutherland v. Jagdmann*, No. 3:05cv042, 2005 WL 5654314, at *2 (E.D. Va. Oct. 31, 2005)). The court may either disqualify the attorney from acting as an advocate, or proscribe the attorney from acting as a witness. *See, e.g., id.*

"[A] court is 'not to weigh the circumstances with hair-splitting nicety but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing the appearance of impropriety, it is to resolve all doubts in favor of disqualification.'" *Premium Prods., Inc.*, 997 F. Supp. 2d at 438 (quoting *United States v. Clarkson*, 567 F.2d 270, 273 n.3 (4th Cir. 1977)). If an attorney is disqualified, he or she may assist in the preparation of the case or assist at trial in a non-advocacy role. *See Ford Motor Co. v. Nat'l Indem. Co.*, No. 3:12cv839, 2013 WL 4498698, at * 7 (E.D. Va. Aug. 21, 2013).

### C. The Court Will Deny the Motion to Disqualify Because Mr. Goodman Has Not Demonstrated That Mr. Biss Is a Necessary Witness

The Court will deny the Motion to Disqualify. First, Goodman has not demonstrated how Mr. Biss's testimony would relate to the claims before the Court. Second, even if Mr. Biss's

testimony were relevant, Mr. Goodman has not met his burden of showing that Mr. Biss's testimony at trial would be strictly necessary.

First, Mr. Goodman has not demonstrated that evidence of the alleged conspiracy against him would be relevant at trial. When a party seeks to invoke the witness-advocate rule for disqualification purposes, that party must "demonstrate that the lawyer's testimony is 'strictly necessary,' and not merely relevant and useful." *Tattoo Art*, 2010 WL 11469802, at *2. Here, however, Goodman has not made a basic showing of relevance. Although Goodman contends that Mr. Biss, Steele, and others orchestrated a conspiracy against him, he does not specify how that conspiracy bears any material relevance to the claims pending before the Court. While a concerted effort to draw Mr. Goodman suggests conduct unbecoming to the bar, such an effort would not provide Goodman any defense to the claims in the Amended Complaint. (*See* Am. Compl.) Because Mr. Biss cannot be a "necessary witness" if his testimony would not touch a matter of relevance, the Court must deny the Motion to Disqualify. *Harris*, 2007 WL 2733707, at *2 ("A necessary witness is one whose evidence is material to issues in litigation.")

Second, even if the conspiracy alleged by Mr. Goodman were relevant to any factual or legal matter in dispute in the case at bar, Goodman has not shown that Mr. Biss's testimony would be "strictly necessary." *Tattoo Art*, 2010 WL 11469802, at *2. In his Motion to Disqualify, Goodman states that the supposed conspiracy involved "[Steele], [Mr.] Biss, Negron, Webb, Sweigert, Chavez, S[c]hoenberger, Cornwell, Holmseth and others." (Mot. Disqualify 14.) Given the number of other individuals with knowledge of the conspiracy who Goodman could call to testify, Mr. Biss's testimony likely would be "cumulative and add little to the other evidence" and is therefore "substantially less than necessary." *United States v. Perry*, 30 F. Supp. 3d 514, 539 (E.D. Va. 2014) (internal quotation marks and citations omitted).

11

The Court does not discount the serious ethical violation Mr. Goodman's submission raises.[10] But at this stage of the litigation, Goodman has not met his heavy burden of demonstrating that Mr. Biss would prove a necessary witness at trial. The Court will therefore deny the Motion to Disqualify.

### III. Motion *in Limine*

Because Plaintiffs improperly seek to exclude evidence at trial, the Court will deny the Motion *in Limine*.

### A.  Relevant Background

In the Motion *in Limine*, Plaintiffs challenge two aspects of Mr. Goodman's conduct during discovery.  First, Plaintiffs state that although Goodman filed an initial disclosure statement identifying individuals and documents with relevant information, Goodman "failed to produce copies of any of the documents identified in his Rule 26(a)(1)(A)(ii) disclosures." (Mem. Supp. Mot. *Lim.* ¶ 5, ECF No. 172.)  Second, Plaintiffs state that on May 19, 2019, they "served Goodman with a request for production of documents pursuant to Rule 34." (*Id.* ¶ 6.) However, Goodman "objected to virtually every Discovery Request[;]" "failed to produce an inventory list (i.e., privilege log) for the documents he withheld from production under a claim of privilege[;]" and, "failed to comply with the procedures set forth in §§ 23–24 of the Court's Initial Pretrial Order for resolution of discovery disputes." (*Id.* ¶¶ 8–9 n.1.)  Plaintiffs ask the

---

[10] In particular, the email from Steele to Chavez, in which Steele instructs Chavez "to tell [Mr. Biss] you want to support my case in return for a percentage" clearly implicates a violation of Virginia ethics rules.  (ECF No. 165–3.)  Virginia Rule of Professional Conduct 3.4(c) states that "[a] lawyer shall not . . . . [f]alsify evidence, counsel or assist a witness to testify falsely, or *offer an inducement to a witness* that is prohibited by law."  Va. R. Prof. Conduct 3.4(c) (emphasis added).

While Mr. Goodman does not submit evidence that Mr. Biss knew of the communication, it remains deeply disturbing that, according to the email and despite his denial, Steele believed Mr. Biss, his attorney, would be amenable to such a forbidden transaction.

Court to "preclude Goodman from calling any undisclosed witness and using documents that he failed and/or refused to produce." (*Id.* 3.)

In Response, Mr. Goodman states that he attempted to "formalize parameters and efficiencies related to privilege logs due to the excessively overbroad discovery requests made by Plaintiff. This request was ignored." (Resp. Mot. *Lim.* 4, ECF No. 174.) Approximately three weeks after the Initial Pretrial Conference, on August 23, 2019, Goodman sent an email to Counsel for Plaintiffs stating that Goodman would appreciate the "opportunity this week to discuss the matter I raised in our Monday Aug[ust] 19 phone call." (Resp. Mot. *Lim.* Ex. A "August 23, 2019 Email," ECF No. 174-1.) In the email, Mr. Goodman reiterated his "request for a telephone conference to discuss parameters and efficiencies with regard to privilege logs. The goal is to satisfy the requirements for discovery without subjecting any party to the undue burden of excessive reporting." (*Id.*) Mr. Goodman relates that further attempts to communicate with Counsel for Plaintiffs went unanswered. (Resp. Mot. *Lim.* 4–5.)

Finally, despite an email demonstrating that Counsel for Plaintiffs promised to send Steele's Rule 26(a) Disclosures via regular mail, (Resp. Mot. *Lim.* Ex. C "January 13, 2020 Email," ECF No. 174-3), Goodman avers that he has not received Steele's initial disclosures, (Resp. Mot. *Lim.* 5). Plaintiffs did not respond to this contention.

### B. The Court Will Deny the Motion *in Limine* Because Counsel for Plaintiffs Has Again Failed to Engage in a Meaningful Discovery Process with Goodman

Because Counsel for Plaintiffs has again failed to engage in a meaningful or collaborative discovery process and the record suggests he has not met his own discovery obligations, the Court will deny the Motion *in Limine*.

13

The record indicates that Goodman reached out to Counsel for Plaintiffs in an attempt to discuss Plaintiffs' discovery requests, but Goodman received no response. (Aug. 23, 2019 Email.) Keeping in mind Goodman's *pro se* status, it would be unfair to allow Counsel for Plaintiffs to ignore Goodman's good faith efforts to confer regarding these discovery requests, and then prevent Goodman from introducing evidence or calling witnesses at trial.[11]

Furthermore, as is apparent from Goodman's submission, Counsel for Plaintiffs has not yet provided Goodman with Steele's Rule 26(a) Initial Disclosures in violation of Federal Rule of Civil Procedure 26[12] and this Court's Initial Pretrial Order, which states that "[a]ll discovery, including the required time period for response to any discovery demand(s) must be concluded not later than seventy (70) days prior to the trial, except by order of the Court." (Initial Pretrial Order ¶ 21.) Trial in this matter is scheduled to commence in fewer than sixty days. Counsel for Plaintiffs appears *not only* to have not concluded discovery in preparation for trial, but to have

---

[11] Counsel for Plaintiffs, as he did in July of 2019, again failed to follow the Court's instructions for raising discovery disputes. At the July 31 Initial Pretrial Conference, the Court instructed the Parties on the record that, in the event of a disagreement about the scope of discovery, the Parties must "file a motion with a basis, per the rule, per the law, make it clear, and then contact the Court about how I'm going to handle it." (Initial Pretrial Conference Tr. 39.) As such, per the Initial Pretrial Conference and the Federal and Local Rules, Counsel for Plaintiffs could have filed a Motion, certifying that he had conferred in good faith with Goodman, and "detail[ing] and itemize[ing] the specific discovery disputes at issue." (Initial Pretrial Order ¶ 23(c), ECF No. 157.) Counsel for Plaintiffs also could have filed a Motion containing a discovery chart (as he earlier did, albeit in improper form) pursuant to this Court's Initial Pretrial Order.

    Counsel for Plaintiffs exercised neither of those options. By waiting until *after* the close of discovery to file the Motion *in Limine*, Counsel for Plaintiffs improperly raised a discovery dispute as a trial motion in contravention of this Court's explicit instructions.

[12] Under Federal Rule of Civil Procedure 26(a)(1)(A), "a party must, without awaiting a discovery request" provide to the other parties its "[i]nitial [d]isclosure." Fed. R. Civ. P. 26(a)(1)(A). "A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order." Fed. R. Civ. P. 26(a)(1)(C). At this late stage of the litigation, both Plaintiffs and Goodman should have fully provided each other with their initial disclosures.

failed to abide by his most basic discovery obligations under the Federal Rules.[13]  This Court
will not limit Mr. Goodman's ability to bring evidence at trial when the record suggests that
Counsel for Steele has ignored discovery rules once again, including that he may have not had
his client provide Goodman with his Initial Disclosures as mandated by the Federal Rules.  The
Court will deny the Motion *in Limine*.

## IV. Motion to Compel

Because the Court generally does not specify what type of document parties should use in
submitting their pretrial submissions, the Court will deny the Motion to Compel.

In the Motion to Compel, Goodman asks the Court to compel Counsel for Plaintiffs to
"provide [Goodman] with an editable MS word version of his draft [Final Pretrial Order]."
(Mem. Supp. Mot. Compel 3, ECF No. 186.)  According to Goodman, Counsel for Plaintiffs
submitted his version of the Final Pretrial Order in a document sharing platform called "High
Tail." (*Id.*)  Goodman contends that "High Tail is a messaging service that [Counsel for
Plaintiffs] had previously agreed not to use for electronic file delivery." (*Id.*)  In their Response,
Plaintiffs argue that Counsel for Negron was able to access the document from High Tail, (Resp.
Mot. Compel ¶ 12, ECF No. 187), and asks for "attorney's fees incurred in responding to this
motion in the sum of $1,900.00," (*id.* 8).

This Court has never been asked to address what type of document the Parties should
utilize when coordinating joint submissions to the Court.  It goes without saying information

---

[13] Even if Counsel for Plaintiffs had provided Goodman with his initial disclosures after
the date of Goodman's response to the Motion *in Limine*, his disclosures would still have been
untimely under the Court's Initial Pretrial Order.  On January 21, 2020, Goodman filed his
Response to the Motion *in Limine*.  At that time, trial was scheduled for March 18–20, 2020, or
fifty-seven (57) days from Goodman's Response.  Under that timeline, Counsel for Plaintiffs had
not provided Goodman with the initial disclosures seventy (70) days before the trial date as
required by the Initial Pretrial Order.

should be provided in a format all Parties can access. Having invoked the power of a federal

court to launch suit, an embarred attorney such as Mr. Biss is expected to meet all court

deadlines as directed, especially when interacting with a *pro se* defendant. This quibbling over

electronic format is obstreperous and a waste of judicial resources. A self-declared Nobel Peace

Prize nominee such as Steele, (Compl. ¶ 1), should be able to resolve these discovery

differences, especially with counsel governing the process.

In the event that the Parties cannot reach agreement, both Parties will face sanctions as

specified below. Given the breakdown in communication between the Parties on such a

fundamental matter, the Court will deny the Motion to Compel and declines to award attorney's

fees to Plaintiffs for their costs incurred in responding to the Motion to Compel.

### V. Sanctions

Judges within the Eastern District of Virginia have observed that the judiciary maintains

broad inherent power to impose sanctions for bad faith behavior during litigation.

> Courts . . . have inherent power to impose sanctions on a party for bad faith conduct
> that offends the legal process. *Chambers v. NASCO*, 501 U.S. 32, 46 (1991)
> (explaining that inherent power is not displaced by statutory sanctions, because
> where "each of the other mechanisms reaches only certain individuals or conduct,
> the inherent power extends to a full range of litigation abuses"). If the conduct in
> question could be adequately sanctioned under the Rules, a court should ordinarily
> use the rule, but "if in the informed discretion of the court, neither the statute nor
> the Rules are up to the task, the court may safely rely on its inherent power." *Id.* at
> 50. Such sanctions may include assessing fees and costs, excluding evidence or
> defenses, or even the dismissal of a party's claims.

*White v. Golden Corral of Hampton, LLC*, No. 4:13cv27, 2014 WL 12591153, at *1 (E.D. Va.

Jan. 15, 2014) (additional citations omitted).

Despite the repeated warnings on the record, the Court finds itself in a position

nearly identical to that it faced eleven months ago. Counsel for Plaintiffs has filed a Motion

*in Limine* which demonstrates, at best, a breakdown in communication in the discovery

process, and at worst, a conscious attempt by Counsel for Plaintiffs to evade this Court's Orders by refusing to confer with Mr. Goodman in good faith.[14] In addition, it now appears that Counsel for Plaintiffs may have failed to meet basic discovery obligations under both Rule 26 and this Court's Initial Pretrial Order.

The Court reiterates: "[f]ailure to comply with discovery rules and procedures could result in the Court imposing sanctions." (July 25, 2019 Mem. Op. 8.)

Considering the Parties continued failure to follow the Federal Rules, the Local Rules, and this Court's Orders, the Court will require the Parties to appear before the Court for a hearing on July 15, 2020, at 2:00 p.m. to Show Cause why sanctions should not issue. Mr. Biss, Mr. Steele, and Mr. Goodman shall appear in person.

At that time, the Parties will proffer to the Court: (1) two paper copies of all evidence that has been disclosed (with verification as to how and when it was disclosed) since the Initial Pretrial Conference on July 31, 2019; (2) two paper copies of all requests for evidence (with verification as to how and when it was requested), including but not limited to emails, interrogatories, or Rule 26 disclosures. Any verification shall be presented under penalty of perjury.

## VI. Conclusion

For the foregoing reasons, the Court will deny the Motion to Disqualify, (ECF No. 165), the Motion *in Limine*, (ECF No. 171), and the Motion to Compel, (ECF No. 185). The Court will deny as moot the Motion for Extension. (ECF No. 181.)

---

[14] The Court reminds Counsel for Plaintiffs that as an officer of the court, he shall "conduct and demean [himself] with dignity and propriety." Va. Loc. Civ. R. 83.1(J). Counsel for Plaintiffs has already been put on notice that failing to properly engage with a *pro se* defendant in the discovery process constitutes conduct unbefitting that office.

The Court will require Mr. Biss, Mr. Steele, and Mr. Goodman to SHOW CAUSE why sanctions should not issue during a hearing on July 15, 2020 at 2:00 p.m. in Courtroom 6100 of the Spottswood W. Robinson III and Robert R. Merhige, Jr. United States Courthouse. The Parties are hereby notified that any failure to comply with Federal or Local Rules, or from proper courtroom decorum, will result in sanctions, monetary or otherwise.

An appropriate order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: July 2, 2020
Richmond, Virginia

18