U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| SWEIGERT | CIVIL CASE #: |
|---|---|
| V. | 1:18-CV-08653-VEC |
| GOODMAN | JUDGE VALERIE E. CAPRONI |

**PLAINTIFF'S NOTICE OF MOTION TO AMEND EITHER (1) FIRST SUPPLEMENTAL COMPLAINT (DKT. 150) OR (2) SECOND AMENDED COMPLAINT (DKT. 88) TO DEFINITIZE PUNITVE DAMAGES CLAIM**

PLAINTIFF HEREBY submits this NOTICE OF MOTION, with an accompanying MEMORANDUM OF LAW, which is responsive to Defendant's letter, **ECF doc. No. 269.**

This is a verified pleading to which the Plaintiff asserts under the penalties of perjury that the information contained herein is true and correct to the best of the knowledge and ability of the undersigned.  Signed this sixth day of May (**5/6**) two thousand and twenty-one (2021).

A certificate of service is included on the last page of this document.

*D. Sgt*

**D. GEORGE SWEIGERT**
*Pro Se Non-Attorney*
***GENERAL DELIVERY***
***NEVADA CITY, CA 95959***

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................................ 2

**LIST OF AUTHORITIES** .............................................................................................................. 3

**OPENING STATEMENT** ............................................................................................................. 5

**PROCEDURAL HISTORY** .......................................................................................................... 5

**BACKGROUND** ............................................................................................................................ 6

**FACTUAL ALLEGATIONS** ........................................................................................................ 7

**LAW AND ARGUMENT** ........................................................................................................... 13

    **I.**    **Legal Certainty Test** ................................................................................................. 13

    a.    In actions filed in federal court, a plaintiff generally satisfies the amount in-controversy requirement by pleading, in good faith, an amount above the jurisdictional threshold. ........... 13

    b.    Application of the "legal certainty" test. ............................................................... 13

    c.    The amount in controversy is tested at the time when the complaint is filed ..................... 14

    **II.**   **Good faith shown by likelihood of punitive damages** ........................................ 15

    **III.**  **Punitive damages awarded for actual malice** ..................................................... 16

**SUMMARY** ................................................................................................................................... 16

**CERTIFICATE OF SERVICE** .................................................................................................... 18

# LIST OF AUTHORITIES

**Cases**

*Buckley v. Littell,* 539 F.2d 882, 897 (2d Cir. 19761, cert. denied. 97 S. Ct. 785 (1977)............. 16

*Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 336-37 & n.7 (1974)................................................. 16

*Goldwater v. Ginzburg,* 414 F.2d 324. 340 (2d Cir. 1969)............................................................ 15

*Horton v. Liberty Mut. Ins. Co.,* 367 U.S. 348, 353 (1961).......................................................... 14

*Hotchner v. Castillo-Puche,* Civil No. 74-5516 (S.D.N.Y., July 30, 1976), rev'd, Civil No. 76-
    7479 (2d Cir., March 23, 1977)................................................................................................ 15

*Hotchner v. Castillo-Puche,* Civil No. 74-5516, at 5-6 (S.D.N.Y., July 30, 1976), rev'd, Civil No.
    76-7479 (2d Cir., March 23, 1977) .......................................................................................... 15

*Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 543 (7th Cir. 2006)....................................... 13

*New York Times Co. v. Sullivan,* 376 U.S. at 279-80 .................................................................. 16

*Rae v. Perry,* 392 Fed. App'x 753, 755 (11th Cir. 2010) ............................................................. 15

*Scherer v. The Equitable Life Assurance Society of the United States*, 347 F.3d 394, 397 (2d Cir.
    2003)......................................................................................................................................... 13

*St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 290–91 (1938) .............................. 14

*Tongkook Am., Inc. v. Shipton Sportswear Co.,* 14 F.3d 781, 784 (2d Cir. 1994) ....................... 14

*Tongkook Am., Inc. v. Shipton Sportswear Co.,* 14 F.3d 781, 785–86 (2d Cir. 1994) ................. 13

**Statutes**

28 U.S.C. § 1332(a) ........................................................................................................................ 6

**Treatises**

14AA Wright & Miller § 3702, pp. 822-28 ................................................................................. 14

14AA Wright & Miller § 3702.4, pp. 457 .................................................................................. 14

15 Moore's Federal Practice ¶ 102.106[1] ................................................................................. 14

## MEMORANDUM OF LAW

### OPENING STATEMENT

Any plaintiff that can meet the so-called *New York Times v. Sullivan* actual malice test against a defendant is eligible for punitive damages in this Circuit.  The Plaintiff's Second Amended Complaint seeks punitive damages (**SAC, Dkt. 88**).

Such punitive damages are required, as a matter of public policy, to dissuade self-proclaimed investigative journalists, with a history of closing International seaports, with conducting years long malice inspired smear and slur campaigns directed against innocent parties, while acting in obvious reckless disregard to the truth.

If it please the Court, the Plaintiff can create a definitized paragraph to clearly articulate the punitive damages required in this lawsuit by amending the operative complaint (**SAC, Dkt. 88**), for which the Plaintiff was given only two weeks to prepare and file.

### PROCEDURAL HISTORY

1.      On June 14, 2018, the original complaint was docketed in the District of South Carolina as a Racketeering Influenced and Corrupt Organizations (R.I.C.O.) lawsuit.

2.      By ORDER, **Dkt. 87** of 8/20/2019, the District Judge allowed the Plaintiff to file an Amended Complaint by 9/10/2019.  Such an Amended Complaint was mailed to the Court on 9/10/2019 which became the Second Amended Complaint (**SAC**, **Dkt. 88**).  The tight deadline resulted in only 14 days for the Plaintiff to file and docket **Dkt. 88** (to include mailing delays).

3.      On 9/09/2020 the Plaintiff filed the First Supplemental Complaint (**FSC, Dkt. 150**).

4.  On 2/17/2021 (**Dkt. 204**) the Defendant named "Corean Elizabeth Stoughton" as a witness to this controversy.

5.  On 5/03/2021 the Defendant filed a letter document (**Dkt. 269**) that attacked the limited diversity jurisdiction of this federal Court ($75,000.00) to hear this lawsuit if the Plaintiff were to remove or waive a claim for actual damages for defamation.

6.  A discovery conference was conducted on 5/04/2021 to address pending discovery issues (to include Defendant's failure to provide any discovery to date) and to establish the Defendant's deadlines regarding pleadings as authorized under Defendant's invocation of New York's Anti-SLAPP law by Defendant's pleading **Dkt. 239** (4/11/2021).

7.  By ORDER, **Dkt. 270** of 5/04/2021, the Magistrate Judge allowed the Defendant to file an Amended Answer (to include defenses under New York State's Anti-SLAPP law). **Dkt. 270** also required the Plaintiff to either stipulate to the removal of an actual damages claim or provide discovery of actual damages. See (3)(b) "file a stipulation stating that he only will be pursuing claims for defamation per se and will not seek to prove any damages, other than nominal damages, in this case or at trial". **Dkt. 270**.

## BACKGROUND

8.  The subject of punitive damages was not addressed in the Magistrate's ORDER (**Dkt. 270**). The Plaintiff has not waived any rights to pursue <u>punitive damages</u> in this litigation. As noted in the **SAC, Dkt. 88**, at para 134 (shown below).

> 134. The plaintiff seeks all equitable and <u>punitive damages</u> to be made whole and all other relief as this Court deems appropriate. Such relief as is necessary to end the smear and shame campaign directed towards the Plaintiff by the Defendant.

9. The Plaintiff asserted that the amount of the controversy *exceeds* $75,000.00, exclusive of interest and costs pursuant to 28 U.S.C. § 1332(a) as stated in para. (4) of **Dkt. 88** (shown below).

> **STANDING**
>
> 4. The Plaintiff relies on the following statues for standing: N.Y. General Business Law (GBL) states at §§ 349 – 350 and N.Y. Civil Rights Law §§ 50-51. Common law Invasion of Privacy, Defamation, Defamation Per Se (trade libel). As both parties are citizens of different states and the amount in controversy exceeds $75,000.01 diversity exists.
>
> **PARTIES**

10. The question before this Court is not merely limited to consideration of (1) nominal damages associated with defamation *per se*, and/or (2) actual damages as associated with defamation claims. Punitive damages are also available to the Plaintiff and punitive damages can be estimated to exceed the $75,000.00 diversity threshold for this federal court to maintain limited jurisdiction.

11. Therefore, the Plaintiff seeks this Court's relief to properly AMEND the **SAC**, **Dkt. 88**, to include a more definitized description of the punitive damages section if the Court seeks to seriously entertain questions about diversity jurisdiction.

## FACTUAL ALLEGATIONS

12. Defendant named "Corean Elizabeth Stoughton" as a witness to this controversy (see below).

> Case 1:18-cv-08653-VEC-SDA   Document 204   Filed 02/17/21   Page 3 of 8
>
> Plaintiff and is aware of this ongoing legal action. Sullivan's specific knowledge of these allegations is unknown to Defendant. Defendant is aware of <u>Corean Elizabeth Stoughton</u> but has never met her and cannot confirm her identity, location or scope of her knowledge of this action. Stoughton is aware of this legal action and <u>has first-hand</u> knowledge of her own actions related to allegations pertaining to her. George Webb

13. Although the Plaintiff has never met Ms. Stoughton, he has communicated with her via e-mail messages concerning her 14-month "partner" relationship with George Webb Sweigert, aka "George Webb" (herein "Webb"). Webb is a former video podcast sidekick of the Defendant who most notably participated with the Defendant in the video podcast entitled "*Clear and Present Danger – The Calm Before the Storm*" on June 14th, 2017. This video, with 90,000 views, is presently removed from the JASON GOODMAN YouTube channel and remains in "private status", a configuration change made by the Defendant on 4/13/2021.

14. On May 4th, 2021 the Plaintiff observed the following e-mail message to the Plaintiff's email account spoilation-notice@mailbox.org, as shown below:

> ---------- Original Message ----------
>
> From: Corean Elizabeth icorXXX@icloud.com  [redacted for privacy]
>
> To: spoliation-notice@mailbox.org
>
> Date: 05/03/2021 3:38 PM
>
> Subject:
>
> Making sure you get this as part of Discovery.
>
> Even though I am under no obligation, I freely offer this to correct the record.

15. An artifact was attached to that e-mail message, shown below:



16. The Plaintiff also observed a follow-up e-mail message from the Defendant's witness, shown below:

---------- Original Message ----------

From: Corean Elizabeth icorXXX@icloud.com   [redacted for privacy]

To: Spoliation Notice <spoliation-notice@mailbox.org>

Date: 05/05/2021 12:40 PM

Subject: Re:

> For clarification purposes:
>
> You asked if I "forwarded" e-mails to Jason, which I took to literally mean, e-mails from someone else. That's what I responded to.
>
> It occurred to me you might have meant "did I send Jason e-mails that I wrote". Yes, I did. IIRC, they are generally reactionary to court proceedings or to something that he said, as a follow up. The initial communication was a phone call, of which I instructed him not to record the conversation, so no recording should exist.
>
> It's not me he doesn't want to provide Discovery on. It's someone else. I don't know who, this is merely a logical guess. His extreme reaction to me over my refusal to submit an affidavit, clearly demonstrates he doesn't care how any of this effects me, only himself. His belief was that my affidavit would "take out the case".
>
> Consider that if you provide these e-mail communications in the court record, it will solidify his non-sensical false belief that we are "working together", which is absurd on it's face, and will only likely prolong and complicate things further.
>
> I only seek resolution to this matter where it concerns me. As you well know, I am not central to this case, and therefore I should not be the focus of it. Ninety-plus percent of the entire case history doesn't involve or even touch on me. I don't believe my testimony is beneficial to either party, and in fact could be unintentionally harmful given all that has transpired. If in the event a subpoena is issued, I will move to quash it.
>
> I hope it is not lost on you that -all- of this stems from George. Every bit of it. Meanwhile, George merrily, and literally, rows his enablers boat down the Potomac River stream,

> completely unaffected, while continuing to do what he has always done, while the rest of us drown in his wake.
>
> I pray this is over soon.

17. The Court will recall the evidence presented in the First Supplemental Complaint (**FSC, Dkt. 150**) concerning the Twitter broadcasts by the Defendant that the Plaintiff was a "**deadbeat dad**".



Above: Redacted tweet of Jason Goodman, "Cyberstalker / deadbeat dad David Sweigert abandons his own son XXXXX to troll me with fake news …"

18. Other such statements made by the Defendant which demonstrate actual malice:

11

| Statements charging a plaintiff with a serious crime ||
|---|---|
| **Defamatory statement** | **Source** |
| You better stop Dave, because all this stuff is going to the FBI. | Statement no. 2 ECF no. 225 |
| That man should be in jail.  That's criminal prosecution.  I intend to get them prosecuted criminally. | Statement no. 3 ECF no. 225 |
| You better stop Dave, because all that stuff has gone to the FBI.  I am working out a way to bring criminal prosecution against these people. | Statement no. 4 ECF no. 225 |
| You see, I think David is engaged in a crime.  I have got the evidence for it.  Could indicate involvement in a criminal operation of IRAN-CONTRA.  Dave needs to be prosecuted.  18 USC 1001.  I am going to make it my business to find a prosecutor to charge David Sweigert and his accomplices with that crime.  Because I will see to it that that man is put in jail. | Statement no. 7 ECF no. 225 |
| David Sweigert – that I see evidence that he has committed felonies.  And therefore, conspiring with him could expose you to serious legal issues if law enforcement chooses to act on the evidence that I am actively providing of these felonies.<br>And conspiring with others around the Internet to break the law | Statement no. 8 ECF no. 230 |
| He has now taken to basically threatening the federal judge in the Southern District of New York, that's Valerie Caproni. | Statement no. 9 ECF no. 230 |
| Shrouded in an organized campaign of harassment.  Interstate harassment over the Internet, over the telephone.  These are crimes people.  So if you are engaged in doing that right now, Dean Fougere, Manuel Chavez, Robert David Steele, David Sweigert, Queen Tut Lutzke Holmes, whatever. | Statement no. 13 ECF no. 230 |
| He interfered with an officer of the court. | Statement no. 16 ECF no. 230 |
| George's brother who is making public threats against us. | Statement no. 18 ECF no. 230 |
| You are engaged in an organized criminal harassment campaign.  I have submitted my evidence against you to the NY FBI field office. | Statement no. 21 ECF no. 230 |
| David Sweigert is a dead beat dad. | Statement no. 22 ECF no. 230 |
| Cyberstalker / deadbeat dad David Sweigert abandons his own son | Statement no. 26 ECF no. 230 |

## LAW AND ARGUMENT

I.  Legal Certainty Test

    a.  <u>In actions filed in federal court, a plaintiff generally satisfies the amount in-controversy requirement by pleading, in good faith, an amount above the jurisdictional threshold.</u>

19. For this Court to wash its hands of diversity jurisdiction, as requested by the Defendant in his letter to the Court of May 4, 2021 (**Dkt. 269**), it must conclude that there is no hope, whatsoever, for the recovery of <u>any</u> damages that could possibly rise to the level of $75,000.00 (USD).

20. As explained in the Second Circuit the Defendant must demonstrate that "the legal impossibility of recovery must be so certain as virtually to negate the plaintiff's good faith in asserting the claim.", *Scherer v. The Equitable Life Assurance Society of the United States*, 347 F.3d 394, 397 (2d Cir. 2003) (jurisdiction upheld). (citation and internal quotation omitted) (jurisdiction found); see also *Tongkook Am., Inc. v. Shipton Sportswear Co.,* 14 F.3d 781, 785–86 (2d Cir. 1994).

21. "[U]nless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith.") (jurisdiction upheld); *Scherer,* 347 F.3d at 397.

    b.  <u>Application of the "legal certainty" test.</u>

22. The Seventh Circuit has summarized how this legal certainty test works in practice in *Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 543 (7th Cir. 2006) (citations omitted): "[O]nly three situations clearly meet the legal certainty standard for purposes of defeating the court's subject matter jurisdiction on that basis: (1) when the terms of a contract limit the plaintiff's possible recovery to less than the jurisdictional amount; (2) when a specific rule of

substantive law or measure of damages limits the amount of money recoverable by the plaintiff to less than the necessary number of dollars to satisfy the requirement; and (3) <u>when independent facts</u> show that the amount of damages claimed has been inflated by the plaintiff merely to secure federal court jurisdiction." 14AA Wright & Miller § 3702, pp. 822-28 [emphasis added]

23. *Horton v. Liberty Mut. Ins. Co.,* 367 U.S. 348, 353 (1961) (citation and internal quotation omitted) ("The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed in good faith.").

24. It is instructive to note, 15 Moore's Federal Practice ¶ 102.106[1] "Under this rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. A rebuttable presumption exists that the face of the complaint is a good faith representation of the actual amount in controversy."

    c. <u>The amount in controversy is tested at the time when the complaint is filed</u>

25. "<u>Events occurring subsequent</u> to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 290–91 (1938) (jurisdiction found) [emphasis added] Further, "[t]he inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction." Id. at 289.

26. *Tongkook Am., Inc. v. Shipton Sportswear Co.,* 14 F.3d 781, 784 (2d Cir. 1994) (citation omitted) "The amount in controversy is determined at the time the action is commenced."

27. It is instructive to note, 14AA Wright & Miller § 3702.4, pp. 457 "[T]he existence or nonexistence of the amount in controversy required for subject matter jurisdiction is determined

14

on the basis of the facts and circumstances as of the time that an action is <u>commenced in a federal court</u> . . . .". [emphasis added]

### II. Good faith shown by likelihood of punitive damages

28. This Court needs to view this question from the Plaintiff's standpoint – not the Defendant's. *Kheel v. Port of N.Y. Auth.,* 457 F.2d 46, 49 (2d Cir. 1972) (jurisdiction lacking) (citation and internal quotation omitted) "Generally, for this reason, the amount in controversy is calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested.".

29. Punitive damages are rightly left to a jury to decide and can be included in estimates regarding federal court diversity jurisdiction. *Rae v. Perry,* 392 Fed. App'x 753, 755 (11th Cir. 2010) "<u>Punitive damages</u> must be considered when determining the jurisdictional amount in controversy in diversity cases." [emphasis added]

30. Courts in this Circuit have conditioned an award of punitive damages after a finding of nominal damages. *Goldwater v. Ginzburg,* 414 F.2d 324. 340 (2d Cir. 1969). cert. denied, 396 U.S 1049 (1970) (one dollar compensatory damages awarded).

31. Punitive damages may be awarded consistently with the first amendment if the compensatory damages are not large enough to act as a deterrent. *Hotchner v. Castillo-Puche,* Civil No. 74-5516 (S.D.N.Y., July 30, 1976), rev'd, Civil No. 76-7479 (2d Cir., March 23, 1977).

32. Lawsuits that have resulted in two dollars ($2) of compensatory damages have included one hundred twenty-five thousand ($125,000) in punitive damages for libel and invasion of privacy. *Hotchner v. Castillo-Puche,* Civil No. 74-5516, at 5-6 (S.D.N.Y., July 30, 1976), rev'd, Civil No. 76-7479 (2d Cir., March 23, 1977).

### III.     Punitive damages awarded for actual malice

33.     The U.S. Supreme Court has adopted what has become known as the so-called New York Times "actual malice" rule: public figures and public officials cannot recover damages for libel without proving the statement was made with either knowledge it was false or reckless disregard of whether it was false or not.  *New York Times Co. v. Sullivan,* 376 U.S. at 279-80 (public official). This test was later extended to public figure cases. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 336-37 & n.7 (1974).

34.     New York courts have upheld awards of punitive damages for libel to public figures when the New York Times test had been satisfied.  *Goldwater v. Ginzburg*, 414 F.2d 324, 340-41 (2d Cir. 1969). cert. denied, 396 U S. 1049 (1970). ("No doubt the jury believed... the malice-inspired smears on Senator Goldwater's reputation should be removed and its perpetrators punished.").

35.     More often courts uphold a punitive damage award without any discussion of the substantive law of punitive damages. E.g., *Buckley v. Littell,* 539 F.2d 882, 897 (2d Cir. 19761, cert. denied. 97 S. Ct. 785 (1977).

### SUMMARY

36.     The foregoing evidence demonstrates that the Defendant well knowing of facts, which he recklessly ignored, and maliciously intending to injure the Plaintiff and his good name and to bring him into public scandal, infamy, and disgrace with and amongst his neighbors, friends, and associates, and other good and worthy citizens, and to cause it to be suspected and believed by them that the Plaintiff had been and was guilty of a criminal act, that of failure to pay court ordered child support, aka "deadbeat dad".

37. Clearly this demonstrates only one example of the Defendant's "actual malice" in the worldwide dissemination to thousands of viewers of his "investigative research" into the Plaintiff, based on loose gossip from the former "partner" of George Webb (Defendant's former podcast video sidekick), that the Plaintiff is a "deadbeat dad".

38. Therefore, based on the foregoing, this Court should allow the Plaintiff to amend either **(1) ECF doc. no. 88 or (2) ECF doc. no. 150.**

Signed this sixth day of May (**5/6**) two thousand and twenty-one (2021).

*D. Sgt* (signature)

**D. GEORGE SWEIGERT**
*Pro Se Non-Attorney*
**GENERAL DELIVERY**
**NEVADA CITY, CA 95959**

## CERTIFICATE OF SERVICE

The undersigned hereby attests under penalties of perjury that copies of this communication have been sent via electronic mail message to the following parties on the sixth day of May (5/6), two thousand and twenty-one (2021).

| **Clerk of the Court, Room 200** | **Jason Goodman, CEO** |
| temporary_pro_se_filing@nysd.uscourts.gov | truth@crowdsourcethetruth.org |

*D. GEORGE SWEIGERT*
*Pro Se Non-Attorney*
*GENERAL DELIVERY*
*NEVADA CITY, CA 95959*