**U.S. DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| SWEIGERT | CIVIL CASE #: |
|---|---|
| V. | 1:18-CV-08653-VEC |
| GOODMAN | JUDGE VALERIE E. CAPRONI |

## PLAINTIFF'S NOTICE OF SPECIAL DAMAGES IN REPLY

## TO MAGISTRATE'S ORDER, ECF no. 270 (Dkt. 270)

Plaintiff hereby REPLIES to the ORDER of the Magistrate Judge, **ECF no. 270.**

Assertations made by the Plaintiff herein are certified under the penalties of perjury as truthful.

A Certificate of Service appears on the LAST page of this pleading.

Signed this seventeenth day of May (5/17) of two thousand and twenty-one (2021).

*D. GEORGE SWEIGERT*
*GENERAL DELIVERY*
*NEVADA CITY, CA 95959-9998*
*SPOLIATION-NOTICE@MAILBOX.ORG*

**TABLE OF CONTENTS**

**SUMMARY OF MONIES DUE TO THE PLAINTIFF FOR DEFENDANT'S DAMAGES** 3

**STATEMENT OF DAMAGES TO EMERGENCY MEDICAL TECHNICIAN (EMT) JOB OPPORTUNITIES** ......................................................................................................... 4

**STATEMENT OF DAMAGES TO REPUTATION IN ROUGH AND READY, CALIFORNIA** ....................................................................................................... 10

**STATEMENT OF DAMAGES TO CERTIFIED ETHICAL HACKER OPPORTUNITIES** ........................................................................................................................... 11

**STATEMENT OF DAMAGES TO CRITICAL INFRASTRUCTURE PROTECTION JOB OPPORTUNITIES** ....................................................................................... 20

**SUMMARY OF MONIES DUE TO THE PLAINTIFF FOR DEFENDANT'S DAMAGES**

| Cause | Low Estimate | Hi Estimate |
|---|:---:|:---:|
| Loss of Emergency Medical Technician employment opportunities in Mount Shasta, California | **$72K** | **$90K** |
| Loss of local business reputation, change of postal facilities | **$900** | **$1,300** |
| Loss of publishing revenues, Certified Ethical Hacker, technical manual publishing | **$7K** | **$11K** |
| Loss of critical infrastructure protection opportunities | **$33K** | **$55K** |
| **Total** | **$112.9K** | **$157.3K** |

As of Monday, **May 17, 2021** no discovery materials have been received by the Plaintiff.

## STATEMENT OF DAMAGES TO EMERGENCY MEDICAL TECHNICIAN (EMT) JOB OPPORTUNITIES

1. The Court will recall this allegation included in the original amended complaint (**ECF doc. 5**):

> All of these activities are designed to defraud, injure, harm and cause innocent parties to suffer. As one example, the plaintiff has had to endure Goodman telephoning every ambulance Emergency Medical Service system in Mt. Shasta, CA to report that Goodman has contacted the F.B.I. concerning the plaintiff.
>
> The plaintiff has a property right interest in his reputation, publicity concerning his work products,

**Page 41, ECF doc. 5**

2. In approximately the first week of April 2018, the Defendant posted two (2) podcast videos, which have now been removed from the Internet, about these telephone calls to Mt. Shasta, California. In said videos, the Defendant describes his telephone calls to the Chief of Police for the City of Mount Shasta, California and to the leading emergency medical service providing ambulance care in the area. These calls were made by Jason Goodman and presumably recorded, and such recordings are believed to be in the possession of the Defendant.

3. As reported by the Defendant in these removed video podcasts, he passed along defamatory statements to the Chief of Police and the managing director of the Mount Shasta ambulance service. The Defendant stated that the undersigned Plaintiff was presently the target of a Federal Bureau of Investigation (F.B.I.) "investigation" to these third parties.

4. These statements were made without proof and meet the threshold of "actual malice" as such statements were stated in definitive and certain terms. The dominant tendency of these statements was to bring ridicule, hatred, and animus upon the Plaintiff. Even if the Defendant were to claim this was an opinion, under New York law it is a legally actionable opinion that can be

disproved.  These are actionable utterances and were motivated solely for the purpose of causing harm to the undersigned.

5.      At the time these calls were made by the Defendant, the Plaintiff was a licensed Emergency Medical Technician with plans to maintain a semi-retired residence in Mount Shasta, California. Prior to these video podcasts the Plaintiff had discussed employment with the leading ambulance service in Mount Shasta and was in the process of completing an employment application.

6.      The Plaintiff underwent specific EMT training, with a developing interest in wilderness rescue, when the Defendant took it upon himself to contact these institutions in this small mountain town.

7.      The Court will recall (in a discarded Request for Judicial Notice) that the Defendant conducted himself in the same manner when he telephoned the employer of "Dean Fougere".  As noted in the discarded Request for Judicial Notice, the Defendant made two phone calls to an unpublished number to the corporate officers of the employer of Dean Fougere.  In the affidavit attached to the discarded Request for Judicial Notice, Mr. Fougere stated that the Defendant used the same "F.B.I. investigation is underway" "big lie" with his employer.  The Defendant repeated his conduct with the Plaintiff, telephoning employers to disparage perceived enemies.

8.      As the Defendant explained (in the removed videos presently set to "private" on the YouTube channels controlled by the Defendant) he advised these influential community leaders that the Plaintiff was involved in a criminal conspiracy and that the Defendant was in the process of turning over evidence of this criminal conspiracy to the F.B.I.

9.      These were defamatory and slanderous comments made to the potential employer of the Plaintiff.

10.     The Defendant knew that economic damage would result from an employment termination from a current, or potential, employer, of the undersigned in the role as an Emergency Medical Technician (EMT).  Knowing that the EMT community of Mount Shasta was small, the Defendant acted with the knowledge that the undersigned was an EMT active in seeking employment in the Mount Shasta area.

11.     This was the usual "F.B.I. investigation" "big lie" that the Defendant passed on to the employers of his perceived enemies, as in the case of Dean Fougere.  Defendant transmitted grossly defamatory information, with no foundation, to employers of "deep state" operatives.

In fact, based on the video podcast content (with the display of the "Deep State Dunces" coffee cup bearing the undersigned's photograph with a dunce cap) the Defendant displayed childlike glee as the Defendant recounted the telephone calls.

12.     This Court should note the Defendant's removal of his 2,333 podcast videos from the Internet (placing them in "private" status), should create a presumption of truth in the favor of the undersigned and an inference of liability towards the Defendant.

13.     As a direct and proximate result of the Defendant's telephone calls, and the "passing on" of the defamatory information ("the big lie"), the Plaintiff was not able to secure a position as a part-time EMT in the Mount Shasta area.

14.     The Defendant strongly insinuated, in the now removed videos, that he imaged that any institution that received derogatory information such as this "would think twice" about being associated with such an individual.

15.     **Aggregate damages from the loss of this employment equates to 24,000 to 30,000 dollars per year ($24K to $30K) commencing in April 2018.  The sum for aggregate amount for special damages would be $72,000. to $90,000 losses (04/2018 to the present) in income as**

**a direct and proximate result of the Defendant's telephone calls and the transmission of "the big lie" to these persons.**

16.     "The big lie" consists of the Defendant's false reports that he has somehow "turned over" evidence to the New York field office of the F.B.I.  This egregiously vicious defamatory conduct is just another part of "the big lie" that the Defendant uses to create economic hardship for his perceived enemies.

17.     The Plaintiff requests that this Court determine that an inference favoring the Plaintiff be drawn as the Defendant has removed his podcast videos from the Internet.



---------- Original Message ----------

From: Jason Goodman <truth@crowdsourcethetruth.org>

To: Spoliation Notice <spoliation-notice@mailbox.org>

Date: 12/01/2017 6:09 PM

Subject: Re: Evidence Preservation Notice

The anonymous individual sending these messages under the name "Spoliation Notice"

is believed to be David George Sweigart a mentally disturbed person who resides in Mt

Shasta CA and has been harassing me over the internet for the past six months.  Please disregard the message and / or assist me in prosecuting this individual for cyber harassment.


Jason Goodman

323-744-7594


18.    Defendant released video podcasts simultaneous with the telephone calls.





https://www.reddit.com/r/4chen/comments/8h36t4/the_trolls_of_mount_shasta_soon_live/

| Other statements charging the plaintiff with a serious crime | |
|---|---|
| **Defamatory statement** | **Source** |
| You better stop Dave, **because all this stuff is going to the FBI.** | Statement no. 2 ECF no. 225 |
| That man should be in jail.  **That's criminal prosecution.  I intend to get them prosecuted criminally.** | Statement no. 3 ECF no. 225 |
| You better stop Dave, **because all that stuff has gone to the FBI.**  I am working out a way to bring criminal prosecution against these people. | Statement no. 4 ECF no. 225 |
| You see, **I think David is engaged in a crime.**  I have got the evidence for it.  Could indicate involvement in a criminal operation of IRAN-CONTRA.  Dave needs to be prosecuted.  18 USC 1001.  I am going to make it my business to find a prosecutor to charge David Sweigert and his **accomplices with that crime.**  Because I will see to it that that man is put in jail. | Statement no. 7 ECF no. 225 |
| **David Sweigert – that I see evidence that he has committed felonies.** And therefore, conspiring with him could expose you to serious legal issues if law enforcement chooses to act on the evidence that I am actively providing of these felonies. And conspiring with others around the Internet to break the law | Statement no. 8 ECF no. 230 |
| He has now taken to **basically threatening the federal judge** in the Southern District of New York, that's Valerie Caproni. | Statement no. 9 ECF no. 230 |
| Shrouded in an organized campaign of harassment.  Interstate harassment over the Internet, over the telephone.  **These are crimes people.**  So if you are engaged in doing that right now, Dean Fougere, Manuel Chavez, Robert David Steele, **David Sweigert,** Queen Tut Lutzke Holmes, whatever. | Statement no. 13 ECF no. 230 |
| He interfered with an officer of the court. | Statement no. 16 ECF no. 230 |
| George's brother who is **making public threats against us.** | Statement no. 18 ECF no. 230 |
| You are engaged in an organized criminal harassment campaign.  I have submitted my evidence against you to the **NY FBI field office.** | Statement no. 21 ECF no. 230 |
| David Sweigert is a **dead-beat dad.** | Statement no. 22 ECF no. 231 |
| Cyberstalker / **deadbeat dad David Sweigert** abandons his own son | Statement no. 26 ECF no. 231 |

## STATEMENT OF DAMAGES TO REPUTATION IN ROUGH AND READY, CALIFORNIA

19.     As the Court is aware, the Defendant telephoned the "postmaster" of the small mountain town of Rough and Ready, California.  As his custom, the Defendant told the "postmaster" that the Plaintiff was most likely engaged in mail fraud and fraud upon the court stated in definitive and certain terms.  These statements were motivated solely for the purpose of causing harm to the undersigned.

20.     The Defendant created an atmosphere with the "postmaster" that the Plaintiff was involved in some type of illegal behavior.  Unfortunately, any video record of these events has been removed from the Internet by the Defendant.

21.     As a direct and proximate result of the Defendant, the Plaintiff had his trade references and business reputation essentially destroyed in Rough and Ready, as the "postmaster" is the local gossip and hub for community information.

22.     The Defendant's "big lie" was designed to create financial hardship for the Plaintiff who was forced to spend several days to transfer operations for mail from Rough and Ready to Nevada City.  This required escalation to the regional postmaster who determined that the "postmaster" was outside of postal service policy and that there was no rule generally against the way Plaintiff received mail.  Nonetheless, the Plaintiff was forced to move his postal operations as a matter of utter humiliation.

23.     **The amount of activity required for the proper transfer of postal operations has resulted in losses of between $500 and $700 (five hundred and seven hundred) to the Plaintiff. The Defendant's blatant lies created a nearly unbearable situation for the Plaintiff in Rough and Ready.  The Plaintiff has been forced to change his shopping habits and make most purchases in Nevada City, approximately ten miles away.  The extra gasoline expenses and**

mileage averages to about $400 to $600 (four hundred to six hundred) dollars.  These expenses are a direct and proximate result of the Defendant's typical lying behavior.

## STATEMENT OF DAMAGES TO CERTIFIED ETHICAL HACKER OPPORTUNITIES

24.    At the outset, the term of art "CERTIFIED ETHICAL HACKER" (C.E.H.) is not some self-referential and whimsical title to which the Plaintiff has applied to himself.  To the contrary, to obtain the technical knowledge to complete the examination for the C.E.H. the Plaintiff completed an Associate in Science degree (with honors) from Las Positas College (2018).



25.    The C.E.H. is a credential awarded after the candidate successfully passes a comprehensive technical test, peer review and background review.  This is expressed in Department of Defense (DoD) direction 8570.



| CSSP Analyst[1] | CSSP Infrastructure Support[1] | CSSP Incident Responder[1] |
|---|---|---|
| CEH | CEH | CEH |



26.     The Defendant, as part of his "the big lie" approach, has repeatedly stated that the Plaintiff

is a "self-appointed" ethical hacker that associates with other "black hat" hackers, such as Manuel

Chavez, III (black-hat hacker) of Carson City, Nevada, stated in definitive and certain terms.

27.     The Defendant has accused the Plaintiff of materially significant professional breaches that

speak specifically to this "ethical hacking" designation and has implied that the Plaintiff is a threat

to the institutions he may be supporting with these skills.

28.     The Defendant has continuously stated that the Plaintiff is a "social engineer" as the Plaintiff

has cited the term "social engineering" on the back cover of a technical journal (see below).



This is a technical work that addresses issues related to penetration testing (or pen-testing). Pen-testing describes a methodology used by ethical hackers to exploit vulnerabilities in cooperative computer enterprises that have been identified for vulnerability testing. Also known as "white hat hacking", the processes described herein are used by security professionals.



Does Sweigert's Social Engineering Spin the Bit Spread Spy in the Padlocked Bag with David Hawkins



Does Sweigert's Social Engineering Spin the Bit Spread Spy in the Padlocked Bag with David Hawkins

29.     The term "social engineer" in the Information Technology industry is the equivalent to malicious hacker.  This is a very derogatory term that equates to an imputation of malpractice upon the Plaintiff.  This is a matter of significance to the core professional skills of the Plaintiff.  These statements were motivated solely for the purpose of causing harm to the undersigned.

- 98% of cyber attacks rely on social engineering.
- 43% of the IT professionals said they had been targeted by social engineering schemes in the last year.
- New employees are the most susceptible to socially engineered attacks, with 60% of IT professionals citing recent hires as being at high risk.
- 21% of current or former employees use social engineering to gain a financial advantage, for revenge, out of curiosity or for fun.
- Social engineering attempts spiked more than 500% from the first to second quarter of 2018.
- The number of breach incidents by type:

  - 31% of financial institutions reported an increase in home equity loan fraud.
   - 79% of financial institutions said cybercriminals have become more sophisticated, leveraging highly targeted social engineering attacks.
  - 32% of financial institutions reported experiencing counter incident response.

  https://purplesec.us/resources/cyber-security-statistics/#SocialEngineering

30.    The Defendant has stated in video podcasts that thousands of viewers continuously, (two years) in an open-ended fashion, that the Plaintiff is working with social engineers to protect supposed "deep state" personalities, that are likely child kidnappers, stated in definitive and certain terms.

31.    Moreover, the simple fact of the matter is that these statements were published in a CROWDSOURCE THE TRUTH video podcast, relying on a "truth engine".  People hearing statements published in a CROWDSOURCE THE TRUTH podcast tend to view such statements as statements of fact, not of opinion, particularly when the statements do not appear as an editorial or opinion and have no disclaimers.  Even if the Defendant were to claim this was an opinion, under New York law it is a legally actionable opinion that can be disproved.  These are actionable utterances.

32.     With the help of David Charles Hawkins, the Defendant used at least sixteen (16) hour long podcast videos to insinuate that the Plaintiff was using his technical abilities to destroy electronic evidence, to protect child traffickers, and other QAnon-based slurs and smears.

33.     Mr. Hawkins, in co-created podcasts with the Defendant, has stated that the Plaintiff may be grossly incompetent in his technical duties, which bears scrutiny by the public "in case the Sweigert is breaking the law".  These statements insinuat3ed that the Plaintiff would be a threat to any organizations that would employ him.

34.     Such alleged misconduct (if true) by the Plaintiff would immediately cause the expulsion from the security industry by the certification organizations that have awarded specialized technical credentials to the Plaintiff.  This includes the designation as Certified in Homeland Security – Level III (American Board for Certification in Homeland Security).

35.     Further, for over three (3) years the Defendant has consistently stated to thousands of viewers that the Plaintiff was a "deep state" operative, that worked with other clandestine intelligence officers, such as Robert David Steele, supposedly of the Central Intelligence Agency.

36.     Insinuations on the CROWDSOURCE THE TRUTH news program stated as a certainty that the Plaintiff used his technical "hacking" skills to misconfigure security equipment and commit gross negligence in order to "accidently" destroy evidence, obstruct investigations to protect pedophiles, human traffickers and others.  It is most significant that the Defendant published these statements in a CROWDSOURCE THE TRUTH news format.

37.     As a direct and proximate result of the Defendant's "big lie" the Plaintiff has had to remove this technical manual from public sale as the Defendant has taken the term "social engineering" completely out of the context of "ethical hacking" and seized upon such language to defame the

Plaintiff.  This has caused economic loss to the Plaintiff (as explained later below).  As a matter of law these are actionable facts.

**What is social engineering?**

Used in the context of hacking, social engineering is a way of gaining access to someone's personal details or a company's computer system through deception. In the majority of cases, people are tricked into performing harmful actions, such as installing malware or entering credentials into fake webpages.

https://www.theselfemployed.com/article/how-is-social-engineering-used-in-ethical-hacking/

38.     As the Court is aware, the Defendant has used several proxies to defame the Plaintiff by direct action.  This included Joe Napoli of Orange County, California, Quinn Michaels, aka Korey Atkins (who moved to Mount Shasta, California) and others.  Both Napoli and Michaels were active in the attacks on the Plaintiff's C.E.H. credential.

39.     The natural implications of the statements in the "social engineering" narrative (pushed by the Defendant) portrays the Plaintiff as a malicious social engineer in the context of attempting to change social media narratives with disinformation in a political environment.  The Plaintiff has had nothing to do with attempted to change public perceptions in a political environment, such as a social media social engineering, stated in definitive and certain terms.

40.     In response to "the big lie" the Plaintiff was forced to place the technical manual on non-public status (private) and to discontinue taking any further orders for the manual.  This action was taken to deny access to the Defendant and his proxies to exaggerate the "social engineering" text listed on the back cover of the manual.

41.     **This action to deny access to the public of the manual has conservatively resulted in income losses of approximately $7,000 to 11,000 (seven to eleven thousand dollars) based on**

**three (3) years of forecasted sales, extrapolated from historical data.  This loss is a direct result of the Defendant's actions, misleading his audience, pushing "the big lie", etc.**

42.     It is also instructive to note that the C.E.H. prohibits the association with "black hat hackers" such as Manuel Chavez, III of Carson City, Nevada.  The Defendant's constant haranguing that the Plaintiff was "working with" or in some association with Chavez created professional and reputational damage to the Plaintiff.

> 13. Not to neither associate with malicious hackers nor engage in any malicious activities.

43.     Understanding this requirement for the Plaintiff to avoid "malicious hackers" (like Manuel Chavez, III, a QAnon an associate of the Defendant), the Defendant continued a podcast drum beat of an association between the Plaintiff and Chavez, again part of "the big lie".  This was a direct attack on the Plaintiff in an effort to associate him with the "notorious Internet troll" Manuel Chavez, III and for that matter Thomas Schoenberg (to which the Defendant had no proof to support such an assertion).



> One of their topics was responding to online critics of wealthy Texas businessman Ed Butowsky, who had recently been outed as a driving force behind a retracted Fox News story about murdered Democratic National Committee staffer Seth Rich.
>
> The group that gathered at Butowsky's home included a conspiracy theorist, a Fox reporter fighting for her career, a former private intelligence contractor married to star journalist Lara Logan, and a Democratic PR operative who lost his business in the face of sexual-assault allegations. The group also included Thomas Schoenberger and Manuel "Defango" Chavez, two notorious internet provocateurs who had recently launched a self-proclaimed "elite" company that promised to use bots and sow "targeted chaos" to defend its clients online.
>
> According to some attendees, the solutions discussed at the September get-together went to extremes. Three people who attended the gathering said the group even discussed the possibility of wiretapping and surveilling Rich's grieving parents.

44. Unfortunately, the Defendant has removed the lion's share of his video content from the Internet under the "JASON GOODMAN" YouTube channel – which the Defendant has blamed on the Plaintiff (again "the big lie").

45. The Court should note the dozen or so podcast videos in which the Defendant proclaims that the Plaintiff is working with an underground network of hackers and social engineers, and that Defendant had reported the Plaintiff to the F.B.I., to which he included evidence submissions to these authorities (another absolute lie disproven by previous court filings).  Again, this rises to the level of "actual malice" as no such evidence turn-over took place.

46. In fact, Defendant has continuously – for at least 24 four (twenty four) months – referred to the Plaintiff as a "social engineer" to tens of thousands of people, which implies criminal activity in the Certified Ethical Hacker and critical infrastructure protection circles.  These blatant lies are designed to injure the Plaintiff's status, career, and economic opportunities in the job market of defense and aerospace contractors and were stated in definitive and certain terms.  These are actionable facts as a matter of law.

| Other statements about the Plaintiff's career and certifications ||
| :--- | :--- |
| **Defamatory Statement** | **Source** |
| If Dave might have known anything about these "bearer bonds". Dave needs to be prosecuted. He is a public menace. | Statement no. 7 ECF document 225 |
| Schoenberger is sending information to Sweigert. | Statement no. 10 ECF document 230 |
| David Sweigert is a deadbeat dad, a maladjusted misanthropic obsessed loser & part of a **social engineering crew protecting the most despicable people around.** | Statement no. 22 ECF document 231 |
| **Steven Biss and David Sweigert.** Two very unscrupulous individuals that use the law as a weapon. | Statement no. 25 ECF document 231 |
| Does David Sweigert know anything about these simulations. **He does list this on his resume. We did not know that David Sweigert was an expert at simulations.** With his **extensive credentials and experience Sweigert** is uniquely suited to overseeing sophisticated simulations that could be viewed in the EVL CAVE. | Statement no. 37 ECF document 232 |
| He worked with Booz * Allen & Hamilton .. um .. on classified networks. **He describes himself as an ethical hacker and social engineer.** Are **devious Social Engineers** using principles outlined in Split Tunneling patents to send bits of data in packets known only to authorized parties on a network? | Statement no. 37 ECF document 232 |
| **He (Plaintiff) knows that** the fire fighters' radios were either consciously or accidently sabotaged. | Statement no. 37 ECF document 232 |
| **David Sweigert and Manuel Chavez, III** affiliates. **David Sweigert** had firsthand knowledge of your location in **Vaughn, New Mexico** [site of a collapsed lung.] | Statement no. 40 ECF document 241 |
| Mr. Sweigert is an ethical hacker. He wrote a book about **ethical hacking. .. but, he certainly hacked it. I believe that they staged at the Port of Charleston.** | Statement no. 41 ECF document 241 |

**STATEMENT OF DAMAGES TO CRITICAL INFRASTRUCTURE PROTECTION JOB OPPORTUNITIES**

47.    The Defendant's statements in dozens of podcasts to tens of thousands of people concerning Plaintiff's alleged participation in the Port of Charleston "dirty bomb hoax" has significantly injured the Plaintiff.

48.    The Defendant's public statements about the Plaintiff began approximately 48 hours prior to the Port of Charleston affair on June 14th, 2017.  As the Court is aware (via dozens of articles in mainstream media outlets such as CNN, New York Times, Sputnik, etc.) the Wando marine terminal was closed for eight (8) hours on June 14th, 2017 due to a "dirty bomb hoax" as a direct and proximate result of the Defendant's video podcast "Clear and Present Danger – Calm Before The Storm", released 6/14/2017 with about 90,000 views on the JASON GOODMAN channel (presently on private, non-public status).

49.    The Plaintiff was preparing for work assignments in the area of critical infrastructure protection with a specific emphasis in cyber security and resiliency.  The Plaintiff obtained the credential Certified Homeland Protection Associate, Level III issued by the National Sheriff's Association.



50.     The Plaintiff also obtained an educational professional certificate from Texas A & M University in INFRASTURCTURE PROTECTION.



51.     The Plaintiff achieved the Advanced Professional Series designation from the Federal Emergency Management Administration, which is directly related to critical infrastructure protection.



52.     The Plaintiff also achieved the status as an Emergency Management Specialist as designated by the State of California.



53.     The value of this certificates and designations was essentially destroyed by the public statements in podcasts that the Plaintiff helped plan the Port of Charleston "dirty bomb hoax". Again, this speaks directly to matters of significance within the Plaintiff's chosen career path in infrastructure protection.

54.     Rumors and allegations of participating in an event which is diametrically opposed to the objectives of such certifications essentially destroy the value of the certification and its marketability.  Again, this speaks to the level of "actual; malice" displayed by the Defendant who posses absolutely no evidence to support such vile representations.  The Defendant is little more than a camera operator who has presumed to attack the Plaintiff and his years hard work in training, educations, and certifications.

55.     These allegations as to "planning the Port of Charleston incident" lacy any truthfulness, a virtue that appears foreign to the Defendant.  Nevertheless, the Defendant stated as fact that the Plaintiff was involved in this incident.  Actual malice can be demonstrated by the nine (9) month relationship (post Port of Charleston incident) the defendant enjoyed with Oakey Marshall Richards (Chapel Hill, North Carolina) the source of the "dirty bomb hoax" information.  Mr. Richards and the Defendant made approximately thirty (30) co-created podcasts, which have now been removed from the Internet per the JASON GOODMAN YouTube channel "private status".

56.     Even if the Defendant were to claim this was an opinion, under New York law it is a legally actionable opinion that can be disproved.   These are actionable utterances that were motivated solely for the purpose of causing harm to the undersigned.

57.     The effectiveness of the aforementioned credentials has been neutralized by the Defendant's "big lie".   Thus, the thousands of hours of training, education and professional development has been made moot by the Defendant's lie which directly attack a matter of significance related to the performance of these responsibilities – namely co-participation in the Port of Charleston incident.   This is one of the biggest and worst lies pushed by the Defendant (for which he has received handsome profits via PATREON.COM and SubscribeStar.COM). There is no constitutional value in false statements of fact.

58.     the impact of these slanderous statements resulted in reduced marketability of these certifications.   These critical infrastructure certifications are in essence neutralized by the Defendant's lie (which can be proven to the "actual malice" standard).

**59.     Conservatively, the costs, fees, loss training days, lost training hours, background packages, postage, e-mail messages, etc. results in losses between $33,000 and $55,000 (thirty-three thousand to fifty-five thousand dollars).**

## **STATEMENT**

D. George Sweigert states under penalty of perjury that the foregoing responses were prepared with the assistance and information of others upon whom he has relied; that the responses, subject to inadvertent or undiscovered errors, are based on and are therefore necessarily limited by the record and information still in existence, presently recollected, and thus far discovered in the course of the preparation of the responses; that consequently he reserves the right to make any changes in the responses if it appears at any time that omissions or errors have been made in those responses or that more accurate information is available; and that subject to those limitations, are true to the best of his knowledge, information, and belief.

Signed this seventeenth day of May (5/17) two thousand and twenty-one (2021).

*D. G. SWEIGERT, C/O*
*PRO SE PLAINTIFF*
*GENERAL DELIVERY*
*NEVADA CITY, CALIFORNIA*
*95959*

# CERTIFICATE OF SERVICE

**The undersigned hereby attests under penalties of perjury that copies of this communication have been transmitted via electronic mail message to the following parties on the seventeenth day of May (5/17), two thousand and twenty-one (2021).**

| Clerk of the Court, Room 200 temporary_pro_se_filing@nysd.uscourts.gov | Jason Goodman, CEO truth@crowdsourcethetruth.org |
|---|---|

*D. GEORGE SWEIGERT*
*Pro Se Non-Attorney*
*GENERAL DELIVERY*
*NEVADA CITY, CA 95959*