IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| D. GEORGE SWEIGERT<br><br>Plaintiff,<br><br>v.<br><br>JASON GOODMAN,<br><br>Defendant. | Case No.: 1:18-cv-08653-VEC-SDA<br><br>**DECLARATION OF<br>JASON GOODMAN** |

Defendant Jason Goodman submits this Declaration under penalty of perjury for the purpose of putting before the Court certain facts and documents relevant to Defendant's Motion for Summary Judgment dated May 31, 2021:

1. I am an independent investigative journalist who creates online news and entertainment content under the brand *Crowdsource the Truth*. I began creating online content in late 2016, starting from nothing and growing my YouTube channels to more than 140,000 subscribers. I generate revenue through sponsorship payments from individual viewers who find value in my work.

2. My guests have included U.S. Senator Marsha Blackburn, Former Acting U.S. Attorney General Matthew Whittaker, Retired NYPD Commissioner Bernard Kerik, Judge Jeanine Pirro, and Attorney Alan Dershowitz among other nationally, and internationally known newsmakers. My more popular videos receive hundreds of thousands of views.

3. Over the last four years, I have learned something every American should know. If you are an influential independent voice who makes a serious effort to investigate and report on

1

topics that are outside the mainstream consensus, the pushback is enormous and comes from unexpected directions.

4. In 2017, I started working with a YouTube personality named George Webb ("Webb"), also known as George Webb Sweigert, who is Plaintiff David Sweigert's brother.

5. Webb and I became friends and decided to collaborate, making numerous voluntary, unpaid appearances on one another's various social media channels including YouTube, Periscope, Facebook, Twitter etc.

6. Around May 2017, I invited Webb to stay as a guest in my home to alleviate hotel costs and facilitate ongoing collaboration.

7. During this "house guest" period, Webb introduced me telephonically to an individual identified as Richard Stone.

8. I later learned, from a video published by Plaintiff Sweigert, that Richard Stone's real identity is Oakey Marshall Richards ("Richards").

9. I also later learned that Richards had worked as an FBI informant in the 1990s and was involved in infiltrating a West Virginia militia.[1]

10. I have since interviewed Floyd Raymond Looker, the individual Richards had sent to prison for 18 years; Looker claims Richards set him up.

11. Over the course of several weeks, Webb and Richards corroborated each other's various statements in a concerted effort to establish Richards' credentials as a Vietnam veteran and former contractor to US intelligence agencies. Court documents revealed to me later that Richards was never in Vietnam, and his claims of being a veteran were fabricated.

---

[1] https://www.washingtonpost.com/archive/politics/1996/10/20/fbi-reports-informer-was-militia-officer/2eb7eaa8-de11-43cf-9c8f-e458963f13d4/

12. Around this time, Richards instructed me to obtain a non-smartphone and new unpublicized phone number for exclusive communication with him. Richards also instructed me to begin using a Proton mail encrypted email account.

13. Richards told me these precautions were required security measures due to the sensitive nature of communications he intended to share.

14. Around this time, I had regular telephone conversations with Richards and received seemingly credible information from Richards that contributed to my daily broadcasts.

### The Port of Charleston Dirty Bomb Hoax

15. On a live broadcast published on or about June 14, 2017, in which Webb participated via Skype, Webb informed me he had important information from a meeting with Richards in West Virginia.

16. Webb told me that there could be radiological material on board a vessel that was about to dock in the Port of Charleston in South Carolina.

17. Webb further stated that a dirty bomb could be inside containers owned by the Awan Brothers shipping company. Imran Awan, a central focus of Webb's investigative journalism, was the agent of record for the company.

18. Webb went on to warn that if there were a dirty bomb, it could be more deadly and destructive than 9/11.

19. Webb conveyed this information on-air, in real time, during my broadcast.

20. Two members of my audience (coincidentally both personally acquainted with Webb) called the Coast Guard and a shutdown of the Port and criminal investigation began.

21. Later that day, I received a communication from Robert David Steele, an individual associated with Webb who claims to be a former CIA officer, who said that I was "about to be arrested by NYPD at request of USCG for filing a false report."

22. In fact, I never filed any report and there was never a warrant for my arrest.

23. In retrospect, I believe that Webb and his associates were maliciously using my show to spread disinformation with the intent of discrediting my YouTube channel and harming me personally.

24. At about 2:00 a.m. on June 15, 2017, hours after the broadcast, Webb passed out drunk in his car and was arrested by local police in Zanesville, Ohio. After refusing the breathalyzer, Webb was kept in jail overnight.

25. The next day, Webb was interviewed by the FBI.

26. According to the FBI Form 302 memorializing the FBI's interview, "[Webb] was asked specifically about communications he had with any of his sources for an incident in South Carolina on June 14, 2017. [Webb] had received information from one of his sources. [Webb] did not know his real name."

27. Webb's statement to the FBI was false, in that Webb knew that the source of his information about the purported "dirty bomb" was Richards.

28. By June 16, 2017, the brief shutdown of the Port of Charleston became national news, with George Webb being portrayed as a conspiracy theorist who created a panic. **See Exhibits 20-23**.

29. Shortly thereafter, I ended my collaboration with Webb, and shortly after that ended communications with Richards and the rest of Webb's associates.

30. In the time since ending the relationship, these various associates of Webb have displayed incredibly persistent hostility, launching a multi-year campaign of lawsuits and smear campaigns.

31. Steele filed a lawsuit against me in 2017, which was dismissed. *See* **Exhibits 23-24.**

32. In June 2018, Sweigert commenced the instant lawsuit in the District of South Carolina, which was transferred to the Southern District of New York.

### Sweigert's Vexatious Conduct

33. Plaintiff Sweigert is a vexatious *pro se* litigant who has escalated an online dispute into a never-ending saga of lawsuits and public smear campaigns.

34. Sweigert and his cronies have spent years defaming me, my co-hosts and associates, my attorney in a different case, and even the Judge in this case.

35. Over nearly three years, Plaintiff has abused the leeway granted to *pro se* litigants by spamming the docket with false accusations he intends to inject into the permanent public record such as false implications that I am a clandestine Russian agent (Docket No. 262, ¶¶ 5, 8). *See* **Exhibit 7.**

36. In or about 2020, when public furor over QAnon was at its peak, Sweigert made repeated false publications suggesting that I was somehow responsible for or otherwise affiliated with the QAnon phenomenon. *See* **Exhibit 11(B) at pp. 45-47.** In fact, I never promoted QAnon for the simple reason that I did not consider QAnon to be a credible source of information. To the contrary, I have denounced QAnon repeatedly and warned viewers of the hard learned perils associated with trusting anonymous or unvented information sources.

37. Sweigert has threatened Patreon (my primary payment vendor) with frivolous lawsuits in the hope of provoking my "cancellation" from that service. On January 10, 2021, Sweigert emailed Patreon a draft complaint naming Patreon as a defendant, obviously intending to sow discord between my business and Patreon.[2] *See* **Exhibit 11(A) at pp. 24-44.**

38. In early May 2021, Sweigert sent a mass email to dozens of officials at the New York Attorney General's office, the Federal Trade Commission, and various attorney disciplinary officials. In the email, Sweigert makes false and reckless accusations against my lawyer in a different case, even though Sweigert is not a party to that action and has no basis for standing other than his animus toward me. *See* **Exhibit 17.** I believe that Sweigert did this as part of his broader effort to dissuade anyone from doing business with me and to directly threaten my professional relationship with counsel in NATAS v MSD. Such a disruption would have serious financial implications and would surely damage my position in that unrelated litigation. This is consistent with Sweigert's prior threats to sue Patreon, which were plainly motivated to induce Patreon to terminate our ongoing business relationship.

39. In or about late 2020, Plaintiff Sweigert published a bizarre rant against Judge Caproni, the presiding judge in this case. Among other things, Sweigert accused Judge Caproni of violating "the canon of judicial conduct," accused her of participating in "illegal wiretaps" while at the FBI, and threatening to "convene a citizen's grand jury . . . under the All-Writs Act against this Judge Val." The verbatim transcript is reproduced below:

---

[2] Defendant believes that Sweigert will continue to file meritless claims against him unless and until the courts forces Sweigert to stop. For that reason, Defendant is asking that the Court explicitly rule that the dismissal of Sweigert's claims be *res judicata* of all claims raised, or that could have been raised, in this action, which should encompass all claims accruing on or before the date of dismissal.

Everybody it's Dave. Oh, this is the judge in New York Southern District. So what happened your honor? You let everything sit for six months. You didn't do anything for six months. I mean, it's your motion you filed your motion on your own volition your own initiative so you would know what the outcome of that motion should be. Does it take you six months to figure it out?

You know, this can be considered misconduct. Violation of the canon of judicial conduct. Really kind of a sad blemish but I guess the judge here – let's just call her Val. Val, the deal with Val here is she was at the FBI for eight years as Chief Counsel and one of her little sticky points one of her controversies was illegal wiretaps. Exigent search warrants so I don't know John Conyers who was running the investigation in the House of Representatives said that Robert Mueller who appointed her should fire her. Wow, wow. And then she became general counsel or something for Raytheon or Lockheed – I think Raytheon some gigantic defense contractor.

You know she must be part of the Deep State, Jason, if she was appointed by Robert Mueller and eight years at the FBI's general counsel. And I think she worked at Raytheon or some Fortune 10 corporation like that. Hey, he's probably going to call this this Clary Layman special prosecutor. We're going to convene a citizen's grand jury and we're going to issue a writ, writ under the All Writs Act against this Judge Val because we're citizens grand jury.[3]

40. Not satisfied with prosecuting only one lawsuit, Sweigert has repeatedly insinuated himself into unrelated lawsuits involving me or my company. For example, Sweigert twice moved to intervene in *Steele v. Goodman*, a case that was filed against me by Robert David Steele.

41. In July 2019, the Court denied Sweigert's motion to intervene and struck some twenty (20) ECF filings that Sweigert had uploaded to the docket, stating that the Court "will not consider future filings by Sweigert." ***See* Exhibit 12.**

---

[3] A true and correct copy of Plaintiff's original video has been preserved by Defendant after Plaintiff first removed it from his own YouTube channel, then separately forced its removal from Defendant's evidence preservation Bitchute channel via a false copyright complaint to Bitchute. Defendant has created yet another Bitchute channel to preserve this exhibit (https://www.bitchute.com/video/ACb6PeHrb0SC/)

42. Undeterred, Sweigert yet again requested to intervene on October 19, 2020, which was summarily denied on November 5, 2020. *See* **Exhibit 13.**

43. Earlier in May 2021, Sweigert sent a letter to Judge Caproni requesting to intervene in the matter of the *National Academy for Television Arts and Science v. Multimedia System Design Inc.*, No. 20-7269, a case involving my company which I allege on information and belief was itself deliberately provoked by Sweigert or an individual acting on his behalf. Both sides have told the Court that they see no basis for Sweigert to intervene. *See* **Exhibit 14.**

## Operative Pleadings and Claims

44. The Court's Order dated December 28, 2020 (Docket No. 180) directed the Defendant to answer specific paragraphs within Mr. Swigert's "Second Amended Complaint" (Docket No. 88) as well as specific paragraphs within Sweigert's "Verified Supplemental Complaint" (Docket No. 150). *See* **Exhibit 1, 2.**

45. The Court's orders at Docket No. 165 and 173 refer to "Plaintiff's remaining claims for defamation and under the New York Civil Rights Law."

46. <u>Alleged Defamatory Statements:</u>  The specific alleged statements that form the basis of Sweigert's defamation claim are set forth in Docket No. 267, a letter dated April 30, 2021 in which Sweigert sets forth all of the allegedly defamatory statements of which he is aware. *See* **Exhibit 8.**

47. <u>Damages:</u>  By letter dated April 24, 2021 (Docket No. 262), Plaintiff Sweigert admitted that he was unable to show any actual damages. Thereafter, on May 18, 2021, Plaintiff reversed course and submitted his "Corrected Notice of Special Damages" (Docket No. 276) which purports to plead actual damages. All of Sweigert's purported damages are speculative and

theoretical. No evidence of prior employment, lost wages, lost contracts or actual lost opportunities or relationships is provided. *See* **Exhibit 7, 16.**

48. New York Civil Rights Law §§ 50-51: Plaintiff's claim under the New York Civil Rights Law is set forth at ¶¶ 88-110 within Docket No. 88. This claim boils down to the sale of 7 coffee mugs ($23 in revenue) bearing a caricature of Sweigert with the caption "Deep State Dunces." *See* **Exhibit 1.**

49. Counterclaim Under New York Anti-SLAPP Law: On May 11, 2021, with leave of the Court, Defendant filed his Amended Answer and Counterclaim (Docket No. 273) which includes a counterclaim under the New York Anti-SLAPP law, codified at New York Civil Rights Law §§ 70-a and 76-a. *See* **Exhibit 11.**

### Context For The 12 Challenged Statements

50. On April 30, 2021, Plaintiff filed Docket No. 267 in response to the Court's order that Sweigert identify "every statement made by Defendant that Plaintiff claims was defamatory toward Plaintiff and, for each such statement, provide a citation to a specific source." Within his submission, Plaintiff identifies the 12 Challenged Statements, which are enumerated below. *See* **Exhibit 8.**

51. For convenience of reference, I have set forth below each of the 12 Challenged Statements, together with an explanation of the context for the statement, as well as my basis for making the statement. As the Court will note, most of the 12 Challenged Statements are pure opinion. Where factual statements are made, the Court will note that I had a sound basis for making the statement:

| | |
|---|---|
| **Statement #1:** | You better stop Dave, because all this stuff is going to the FBI. |
| **Context:** | After Sweigert and his associates had engaged in repeated threats and accusations, culminating with Manuel Chavez III visiting and publicizing the address of my New York City home uninvited, I called the FBI and provided them information about the activities of Sweigert, Webb and known associates. |
| **Good Faith Basis:** | Statement #1 is true. |

| | |
|---|---|
| **Statement #2:** | That man should be in jail. That's criminal prosecution. I intend to get them prosecuted criminally. |
| **Context:** | It remains my belief that Sweigert and his brother have organized to harass me and disrupt my business and personal life. This has included doxing my home address and spreading false information about me, including falsely attributing to me racist statements that exposed me to serious physical danger on the streets of New York and elsewhere around the country. |
| **Good Faith Basis:** | Statement #2 is an accurate statement of my opinion based upon my understanding that harassment is against the law. |

| | |
|---|---|
| **Statement #3:** | You better stop Dave, because all that stuff has gone to the FBI. I am working out a way to bring criminal prosecution against these people. |
| **Context:** | At the time I made this statement, I was in communication with the FBI about Sweigert, Webb et al. |
| **Good Faith Basis:** | Statement #3 is true. |

| | |
|---|---|
| **Statement #4:** | You see, I think David is engaged in a crime. I have got the evidence for it. Could indicate involvement in a criminal operation of IRAN-CONTRA. Dave needs to be prosecuted. 18 USC 1001. I am going to make it my business to find a prosecutor to charge David Sweigert and his accomplices with that crime. Because I will see to it that that man is put in jail. |
| **Context:** | At the time this statement was made, Sweigert was in a regular practice of making taunting videos, contacting local law enforcement, contacting my business associates, and otherwise harassing me. |

| | |
|---|---|
| **Good Faith Basis:** | Statement #4 is an accurate statement of my opinion. I continue to believe that Sweigert should be in jail. |

| | |
|---|---|
| **Statement #5:** | David Sweigert – that I see evidence that he has committed felonies. And therefore, conspiring with him could expose you to serious legal issues if law enforcement chooses to act on the evidence that I am actively providing of these felonies. And conspiring with others around the Internet to break the law. |
| **Context:** | This statement relates to Sweigert's abuse of the postal service in Mesa, Arizona. Specifically, Sweigert used an address owned by an individual named Mari Rapp. The U.S. Postal Service confirmed that they would not deliver to Sweigert at that address. |
| **Good Faith Basis:** | In my opinion, Sweigert has committed fraud on the court with this bad faith lawsuit. Sweigert's improper use of the U.S. Post Office box in furtherance of the fraud would be mail fraud, a Federal offense. |

| | |
|---|---|
| **Statement #6:** | He has now taken to basically threatening the federal judge in the Southern District of New York, that's Valerie Caproni. |
| **Context:** | Statement #6 refers to statements made by Sweigert about Judge Caproni on his YouTube channel. Among other things, Sweigert accused Judge Caproni of violating "the canon of judicial conduct," accused her of participating in "illegal wiretaps" while at the FBI, and threatened to "convene a citizen's grand jury . . . under the All Writs Act against this Judge Val." |
| **Good Faith Basis:** | Statement #6 is a fair interpretation of Sweigert's words. |

| | |
|---|---|
| **Statement #7:** | Shrouded in an organized campaign of harassment. Interstate harassment over the Internet, over the telephone. These are crimes people. So if you are engaged in doing that right now, Dean Fougere, Manuel Chavez, Robert David Steele, David Sweigert, Queen Tut, Lutzke Holmes, whatever. |
| **Context:** | These comments – which contains no assertion of fact – came in the context of prolonged and intense harassment by Sweigert and people operating on his behalf. |
| **Good Faith Basis:** | Statement #7 is an accurate statement of my opinion that Sweigert is engaged in illegal harassment toward me. |

| **Statement #8:** | He interfered with an officer of the court. |
|---|---|
| **Context:** | This comment was in response to Sweigert contacting the attorney representing an individual named Michael Barden in a criminal matter in Phoenix, AZ. Sweigert has no relationship to this person. Barden had appeared on my show to explain his case. Sweigert contacted the attorney in an effort to create discord between lawyer and client, which I considered inappropriate. |
| **Good Faith Basis:** | There is nothing defamatory about Statement #8. |

| **Statement #9:** | George's brother who is making public threats against us. |
|---|---|
| **Context:** | This comment was made during the time that Plaintiff was posting videos publicly that included threats of legal and other action. |
| **Good Faith Basis:** | Statement #9 is true. Sweigert issues threats on an almost daily basis, including threatening Judge Caproni. |

| **Statement #10:** | You are engaged in an organized criminal harassment campaign. I have submitted my evidence against you to the NY FBI field office. |
|---|---|
| **Context:** | Statement #10 is virtually identical to Statement #1 and 3 and arose in the same context. |
| **Good Faith Basis:** | Statement #10 is true. I was in communication with the FBI about Sweigert and his various associates. |

| **Statement #11:** | David Sweigert is a dead beat dad. |
|---|---|
| **Context:** | This comment was made in a reply to a Twitter post. Sweigert was in a regular practice of commenting on my public tweets with his own tweets that directed readers to his blog containing posts with false information about me. I responded with accurate information about Sweigert in the hope of making Sweigert stop his harassment. |
| **Good Faith Basis:** | In early 2021, I spoke at great length with an individual named Corean Stoughton, who was able to prove that she knows Sweigert. Stoughton told me that Sweigert had revealed his greatest regret in life was abandoning his son Jimmy. |

| | |
|---|---|
| **Statement #12:** | Cyberstalker / deadbeat dad David Sweigert abandons his own son. |
| **Context:** | Sweigert persisted in his public disruptions, and I responded in kind. |
| **Good Faith Basis:** | Sweigert's extreme reaction to "deadbeat dad" caused me to believe it was true, which is corroborated by my investigation which revealed James Cameron Sweigert, aged 34, lives in Oviedo, FL, the same address as where one Melody Sweigert resides. I understand that Melody Sweigert is Plaintiff Sweigert's ex-wife. |

**Plaintiff's Claim Under §§ 50-51 of the Civil Rights Law**

52. Sweigert is a published author and public figure in the field of cybersecurity and ethical hacking. *See* **Exhibit 19.** Sweigert holds himself out to be a credentialed authority, as illustrated by his damages statement. *See* **Exhibit 16.**

53. Sweigert uploads content to YouTube and other platforms. As the Court knows, Sweigert is a prolific *pro se* plaintiff, involving himself in cases that don't concern him and defaming his opponents in smear campaigns.

54. In a war of words, mockery is a powerful weapon. Sweigert deserves to be mocked, and that is exactly what I did when he created a coffee mug featuring the image reproduced below and bearing the words "Deep State Dunces," a joke about Sweigert's hilarious sense of self-importance, complete with his delusional claims that he's part of a secret FBI counterintelligence program.

*"Deep State Dunces"*



55. Defendant sold a total of 7 of these mugs, generating revenue of about $23. ***See* Exhibit 11(F).**

56. In the realm of parody and caricature, publishing an image of an adversary wearing a dunce cap is among the oldest jokes in the book. A quick Google search shows that our last three elected presidents were portrayed by their opponents as wearing dunce caps. This is clearly protected political speech and outside the scope of §§ 50-51.



| Trump | Obama | Bush |

57.     "Deep State Dunces" stung because it was true. Sweigert and Webb, and their cronies, are holster-sniffers who play make-believe that they are secret government affiliated contractors or agents.  Yet, when the Sweigert brothers put their brains together and tried to frame me for a bomb hoax, Webb ended up in a Zanesville jail and the subject of worldwide mockery. *See* **Exhibit 11(C) at pp. 48-72; Exhibit 20-22.**

### Relevant Exhibits

58.     The balance of this Declaration shall put before the Court certain relevant documents relied upon in this summary judgment motion:

59.     Annexed as **Exhibit 1** is Plaintiff's Verified Second Amended Complaint dated September 9, 2019, filed as Docket No. 88.

60.     Annexed as **Exhibit 2** is Plaintiff's Verified Supplemental Complaint dated September 10, 2019, filed as Docket No. 150.

61.     Annexed as **Exhibit 3** is the Court's order dated December 28, 2021, filed as Docket No. 180, directing the Defendant to Answer specific paragraphs from Plaintiff Sweigert's two parallel complaints filed in this matter.

62. Annexed as **Exhibit 4** is Defendant's Answer to Supplemented Second Amended Complaint, filed on January 28, 2021 as Docket No. 189.

63. Annexed as **Exhibit 5** is the Court's order dated February 18, 2021, filed as Docket No. 208, directing (inter alia):

*1. No later than March 31, 2021, Plaintiff shall respond under oath to the following interrogatories:*

> *a. Identify every statement made by Defendant that Plaintiff claims was defamatory toward Plaintiff and, for each such statement, provide a citation to a specific source.*
>
> *b. Identify any and all contracts, opportunities, customers, or other business relationships that Plaintiff claims to have lost as a result of the alleged defamation.*

*2. No later than March 31, 2021, Plaintiff shall produce all documents Plaintiff intends to rely upon to prove damages.*

64. Annexed as **Exhibit 6** is the Court's order dated April 22, 2021, filed as Docket No. 259, granting Defendant leave to amend his answer to include a counterclaim under the New York anti-SLAPP law codified as N.Y. Civil Rights Law §§ 70-a and 76-a.

65. Annexed as **Exhibit 7** is Plaintiff's letter to the Court dated April 24, 2021, filed as Docket No. 262, wherein Plaintiff purports to withdraw all claims for special damages.

66. Annexed as **Exhibit 8** is Plaintiff's letter to the Court dated April 30, 2021, filed as Docket No. 267 pursuant to the Court's February 18, 2021 order, identifying "every statement made by Defendant that Plaintiff claims was defamatory toward Plaintiff and, for each such statement, provide a citation to a specific source."  Plaintiff's filing identifies 12 specific statements (the "12 Challenged Statements") that constitute Plaintiff's defamation claim.  Annexed to Exhibit 8 are Plaintiff's three previous submissions (i.e., Docket No. 225, 230, 231), dated March 12, 18, and 22 respectively, which are cited and referenced in Docket No. 267.

67. Annexed as **Exhibit 9** is Defendant's letter to the Court dated May 3, 2021, filed as Docket No. 269, wherein Defendant identifies questions regarding the Court's personal jurisdiction in the event it is determined that Plaintiff commenced this action without a good faith basis for claiming the jurisdictional threshold of $75,000.

68. Annexed as **Exhibit 10** is the Court's order dated May 4, 2021, filed as Docket No. 270, directing the parties to respond to discovery and setting a briefing schedule for this Summary Judgment motion.

69. Annexed as **Exhibit 11** is Defendant's Amended Answer to Second Amended Complaint and Counterclaim, filed on May 11, 2021 at Docket No. 273, which includes exhibits setting forth the background and context for certain of Plaintiff's 12 Challenge Statements. Each exhibit attached to the Answer is incorporated by reference:

- **Exhibit 11(A)**, Docket No. 273, Pages 24-44 is an email from Mr. Sweigert to various recipients including Patreon, which attached a draft complaint threatening to sue Patreon.

- **Exhibit 11(B)**, Docket No. 273, Pages 45-47 is a print-out of a fraudulent headline created by Sweigert purporting to expose a link between myself and Q-anon even though no such link exists.

- **Exhibit 11(C)**, Docket No. 273, Pages 48-72 is a publicly released, redacted version of an FBI official report into the events of June 14, 2017 at the Port of Charleston. The report goes into extensive detail about Plaintiff's brother George Webb Sweigert and his arrest in Zanesville Ohio after the incident.

- **Exhibit 11(D)**, Docket No. 273, Pages 73-76 is an order issued by the U.S. District Court for the Eastern District of Virginia, denying Mr. Sweigert's motion to intervene in the matter of *Steele v. Goodman.*

- **Exhibit 11(E)**, Docket No. 273, Pages 77-84, is a Counter Notification that Defendant filed with Redbubble.com on or about November 28, 2018 in response to a meritless takedown notice interposed by Sweigert.

- **Exhibit 11(F)**, Docket No. 273, Pages 85-87, are business records that confirm that Plaintiff and/or his company generated approximately $23 on sales of the "Deep State Dunces" coffee mug, of which Plaintiff complains.

70. Annexed as **Exhibit 12** is an Order dated July 25, 2019 denying a motion by Sweigert to intervene in *Steele v. Goodman*.

71. Annexed as **Exhibit 13** is an Order dated November 5, 2020 denying another motion by Sweigert to intervene in *Steele v. Goodman*.

72. Annexed as **Exhibit 14** is a Letter from Sweigert to Judge Caproni, dated May 19, 2021, in which Sweigert seeks to intervene or otherwise participate in *The National Academy for Television Arts and Sciences v. Multimedia System Design*, No. 20-7269, a case that involves a dispute between my company and the Emmy Awards.

73. Annexed as **Exhibit 15** is Defendant's responses to document requests and interrogatories, dated May 17, 2021, filed as Docket No. 274.

74. Annexed as **Exhibit 16** is Plaintiff's Corrected Notice of Special Damages, dated May 18, 2021 and filed as Docket No. 276, identifying Plaintiff's four categories of purported damages.

75. Annexed as **Exhibit 17** is a copy of an email chain dated May 11, 2021 (appending earlier messages) in which Plaintiff Sweigert copies dozens of recipients, including from the Federal Trade Commission, the New York Attorney General's Office, as well as the New York Court System. In this email, Sweigert disseminates false and defamatory statements about my legal counsel in another matter.

76. Annexed as **Exhibit 18** is a publication entitled "Port of Charleston Dirty Bomb Hoax and Social Media Liability," authored by Plaintiff, which was previously filed as Docket No. 121 starting at page 114.

77. Annexed as **Exhibit 19** is the front and back cover of Sweigert's book entitled *Ethical Hacker's Field Operations Guide*, which includes the following text on the back cover:

> Volume One of the Ethical Hacker's Field Operations Guide (FOG) addresses network sniffing, protocol basics, social engineering, and other preliminary pre-enumeration phase topics.  Many colleges use this text as a summer boot camp to prepare students for a full semester ethical hacking course.



78. Annexed as **Exhibit 20** is a news article published by CNN, dated June 16, 2017, entitled "How a conspiracy theory closed part of a major US seaport."

79. Annexed as **Exhibit 21** is a news article published by the Charleston *Post Courier* dated June 16, 2017, entitled "Conspiracy theorist who posted videos about a 'dirty bomb' threat: 'I never said shut the port of Charleston down'."

80. Annexed as **Exhibit 22** is a news article dated August 11, 2017, published by the Zanesville *Times Recorder*, entitled "Misdemeanor case dismissed against George Sweigert."

81. Annexed as **Exhibit 23** is an order of the Court in the matter of *Steele v. Goodman* dated July 25, 2019.

82. Annexed as **Exhibit 24** is an order of the Court in the matter of *Steele v. Goodman* dated September 25, 2020.

83. Annexed as **Exhibit 25** is the Docket Report taken from ECF in this case.

\*   \*   \*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on May 31, 2021.

                                                                                              _____
                                                                                              Jason Goodman
                                                                                              Pro Se Defendant