IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| D. GEORGE SWEIGERT | : |
| | : |
| Plaintiff, | : |
| | : |
| | : Case No.: 1:18-cv-08653-VEC-SDA |
| v. | : |
| | : |
| JASON GOODMAN, | : |
| | : |
| Defendant. | : |
| | : |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

May 31, 2021

Jason Goodman
*Pro Se Defendant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................................................ 5

    A.   Plaintiff Sweigert's Scorched Earth Tactics ........................................................ 5

    B.   Operative Pleadings and Claims ......................................................................... 7

SUMMARY JUDGMENT STANDARD ........................................................................... 9

LEGAL ARGUMENT ....................................................................................................... 9

  I.   Plaintiff Has Failed to Prove "Special Damages" ............................................... 9

    A.   Damages Theory #1:  "Loss of Emergency Medical Technician
        employment opportunities in Mount Shasta, California" ................................ 11

    B.   Damages Theory #2:  "Loss of local business reputation, change of
        postal facilities." ............................................................................................... 11

    C.   Damages Theory #3:  "Loss of publishing revenues, Certified Ethical
        Hacker, technical manual publishing" ............................................................. 12

    D.   Damages Theory #4:  "Loss of critical infrastructure protection
        opportunities" ................................................................................................... 13

  II.   Plaintiff Cannot Identify Any Defamatory Statement of Fact ........................... 14

    A.   Absolute Protection For Opinion ...................................................................... 14

    B.   Plaintiff Sweigert Has Identified No Defamatory Statements ......................... 16

  III.  Plaintiff Cannot Prove Actual Malice ............................................................... 18

  IV.  Defendant's Use of Plaintiff's Image Is Protected Under Established New
      York Law ............................................................................................................ 19

    A.   The Offending Image ........................................................................................ 19

    B.   Defendant's Use of Sweigert's Image Is Protected Speech ............................. 20

  V.   The Court Should Enter Judgment For Goodman on His SLAPP
      Counterclaim ...................................................................................................... 22

  VI.  The Court Should Protect Goodman Against Future Harassment ...................... 23

CONCLUSION ................................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page**

*Ajamian v. Nimeh,*
    2014 WL 6078425 (N.D.N.Y. Nov. 13, 2014) ........................................................24, 25

*Altbach v. Kulon,*
    302 A.D.2d 655 (3d Dep't 2003) ....................................................................................21

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) .........................................................................................................9

*Celle v. Filipino Reporter Enterps. Inc.,*
    209 F.3d 163 (2d Cir. 2000) ..........................................................................................10

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) .........................................................................................................9

*D'Amico v. City of New York,*
    132 F.3d 145 (2d Cir. 1998) .......................................................................................9, 19

*Foster v. Svenson,*
    128 A.D.3d 150 (1st Dep't 2015) ..................................................................................21

*Ganske v. Mensch,*
    2020 WL 4890423 (S.D.N.Y. Aug. 20, 2020) ..............................................................15

*Goenaga v. March of Dimes Birth Defects Found.,*
    51 F.3d 14 (2d Cir. 1995) ...........................................................................................9, 19

*Gummo v. Vill. of Depew,*
    75 F.3d 98 (2d Cir. 1996) ................................................................................................9

*Hall v. Earthlink Network, Inc.,*
    2003 WL 22990064 (S.D.N.Y. Dec. 19, 2003) ...................................................... 10-11

*Jeffreys v. City of New York,*
    426 F.3d 549 (2d Cir. 2005) ............................................................................................9

*Qureshi v. St. Barnabas Hosp. Ctr.,*
    430 F. Supp. 2d 279 (S.D.N.Y. 2006) ..........................................................................15

*Mason v. Jews for Jesus,*
    2006 WL 3230279 (S.D.N.Y. Nov. 8, 2006) ................................................................21

*Messenger ex rel. Messenger v. Gruner Jahr Printing & Publ'g,*
    94 N.Y.2d 436 (2000) ..................................................................................21

*Scott v. WorldStarHipHop, Inc.*,
    2012 WL 1592229 (S.D.N.Y. May 3, 2012) ...............................................21

*Steinhilber v. Alphonse*,
    68 N.Y.2d 283 (1986) ..................................................................................15

*Torain v. Liu*,
    2007 WL 2331073 (S.D.N.Y. Aug. 16, 2007) ....................................... 15-16

*Treppel v. Biovail Corp.,*
    2004 WL 2339759 (S.D.N.Y. October 15, 2004) .......................................16

## **Statutes & Rules**

Fed. R. Civ. P. 56 .................................................................................... passim

N.Y. Civil Rights Law §§ 50, 51 .........................................................4, 8, 19, 21, 22

N.Y. Civil Rights Law §§ 70-a, 76-a .........................................................4, 9, 22, 24

Defendant Jason Goodman respectfully submits this Memorandum of Law in Support of his Motion for Summary Judgment under Fed. R. Civ. P. 56(a).[1] This Motion is made pursuant to the Court's order dated May 4, 2021 (Docket No. 270).

## PRELIMINARY STATEMENT

Defendant Jason Goodman is an independent investigative journalist who creates online news and entertainment content under the brand *Crowdsource the Truth*. Goodman began creating online content in late 2016, starting from nothing and growing his YouTube channels to more than 140,000 subscribers. Goodman earns income through sponsorships from individual viewers who find value in his work. *See* Rule 56.1 Statement of Undisputed Facts, ¶¶ 1-4.

Goodman's guests have included U.S. Senator Marsha Blackburn, Former Acting U.S. Attorney General Matthew Whittaker, Retired NYPD Commissioner Bernard Kerik, Judge Jeanine Pirro, and Attorney Alan Dershowitz as well as many other prominent newsmakers. Goodman's more popular videos receive hundreds of thousands of views. *See* Undisputed Facts ¶ 5. Over the last four years, Goodman has learned something every American should know. If you are an influential independent voice who makes a serious effort to investigate and report on topics that are outside the mainstream consensus, the pushback is enormous and comes from unexpected directions.

In 2017, Goodman started working with a YouTube personality named George Webb ("Webb"), also known as George Webb Sweigert, who is Plaintiff David Sweigert's brother. Over several months in 2017, Webb gained Goodman's confidence. Webb introduced several other

---

[1]     This Memorandum references and incorporates Defendant's Rule 56.1 Statement of Undisputed Facts ("Undisputed Facts") and the Declaration of Jason Goodman ("Goodman Decl."). Exhibits cited herein are annexed to the Goodman Declaration.

personalities into Goodman's orbit including Plaintiff David Sweigert ("Sweigert"), Robert David Steele ("Steele") and Oakey Marshall Richards ("Richards"). Steele and Richards both purported to have extensive backgrounds in the Intelligence community. *See* Undisputed Facts ¶¶ 7-19.

On June 14, 2017, Richards and Webb presented Goodman with seemingly credible and corroborated information that a cargo ship carrying suspicious containers with potentially dangerous radiological cargo was about to dock in the Port of Charleston. According to Webb, the risk that a malicious actor could easily improvise a dirty bomb was so great, and the possible result so deadly, it could be more devastating than 9/11. Webb conveyed this information on-air, in real time. At least two of Goodman's viewers contacted the U.S. Coast Guard, which investigated and found no threat. In retrospect, Goodman believes that Webb and his associates maliciously used Goodman's platform to spread disinformation in the hope of discrediting Goodman and his YouTube channel. *See* Undisputed Facts ¶ 5.

In a bizarre twist, the night after the broadcast, police in Zanesville, Ohio found Webb passed out drunk in his truck. After refusing a breathalyzer, Webb was arrested and spent the night in jail. The next day, the FBI interviewed Webb. According to the Form 302, "[Webb] was asked specifically about communications he had with any of his sources for an incident in South Carolina on June 14, 2017. [Webb] had received information from one of his sources. [Webb] did not know his real name." *See* Undisputed Facts ¶¶ 20-29; *see also* Exhibit 11(C), pp. 58-59. In the days that followed, the national press vilified Webb. *See* Undisputed Facts ¶¶ 20-29; *see also* Exhibits 20-23.

Goodman ended his relationship with Webb soon after. *See* Undisputed Facts ¶ 37. In the years that have followed, Webb, Steele, Sweigert, and their associates have waged a multi-year campaign of lawsuits and online smears. *See* Undisputed Facts ¶ 38. against Goodman. Steele filed

a lawsuit against Goodman in 2017, in which Sweigert twice tried to intervene. *See* Undisputed Facts ¶ 40-41. In June 2018, Sweigert commenced the instant lawsuit in the District of South Carolina, which was transferred to the Southern District of New York.

\* \* \*

Defendant's argument on Summary Judgment is as follows:

First, based upon Plaintiff's statement of damages filed on May 18, 2021 (Docket 276, Exhibit 16), it is clear that Sweigert has sustained no special damages that are causally connected to any statement identified by Sweigert in his April 30, 2021 submission (Docket No. 267, Exhibit 8). Because Plaintiff has failed to prove non-speculative damages, the Court should grant judgment in favor of Defendant on the *per quod* defamation claim.

Second, Plaintiff's April 30, 2020 submission (Docket No. 267, Exhibit 8) identifies 12 specific statements that form the basis of Plaintiff's defamation claim (the "12 Challenged Statements"). Reviewing each of the 12 statements in context, it is clear that the statements were protected, non-defamatory statements of opinion. *See* Undisputed Facts, ¶¶ 67-91. Because Plaintiff has failed to allege (let alone prove) a *bona fide* defamatory statement of fact, the Court should grant summary judgment in favor of Defendant on Plaintiff's defamation claim in its entirety.

Third, the record is similarly devoid of evidence that Defendant acted with "actual malice." To the contrary, the record is undisputed that Goodman had a sound basis for his statements of opinion. *See* Undisputed Facts, ¶¶ 67-91. Under New York's anti-SLAPP law, Plaintiff bears the burden of proving actual malice by clear and convincing evidence. Plaintiff has failed to come forth with evidence of Goodman's malice (beyond conclusory assertions). This is yet another sufficient reason why Defendant is entitled to summary judgment on Plaintiff's defamation claim.

Fourth, Defendant's artistic and journalistic use of Sweigert's image on a coffee mug bearing the words "Deep State Dunces" is not actionable under Sections 50 and 51 of the New York Civil Rights Law. Defendant's use is protected by the "newsworthiness" and "parody" exceptions, which are well-established under New York law. Accordingly, the Court should enter judgment for Defendant with respect to Plaintiff's "publicity" claim under Sections 50 and 51 of the New York Civil Rights Law.

Fifth, with respect to Defendant's counterclaim under the New York Anti-SLAPP Law (N.Y. Civ. Rights Law §§ 70-a, 76-a), the Court should enter summary judgment for Defendant because Plaintiff's defamation action "was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law." The Court's final judgment should include an award of compensatory and punitive damages, fees, costs and disbursements. N.Y. Civ. R. Law §§ 70-a, 76-a.

Sixth, the Court should declare Sweigert a vexatious litigant. *See* Undisputed Facts, ¶¶ 38-51. Sweigert has a long history of bringing repetitive and meritless litigation against Goodman. *See* Undisputed Facts, ¶ 38. He has orchestrated online smear campaigns against Goodman and his co-hosts, lawyers, and business partners. *See* Undisputed Facts, ¶¶ 43-45. He has interfered with Goodman's business, including threatening to sue Patreon. *See* Undisputed Facts, ¶¶ 46-47. Goodman's primary payment processor. He has invoked Federal court jurisdiction in bad faith. *See* Exhibit 9.  He has repeatedly attempted to intervene in unrelated lawsuits against Goodman, despite having no standing. *See* Undisputed Facts, ¶¶ 40-41. He has slandered Goodman's collaborators, lawyers and judges. *See* Undisputed Facts, ¶¶ 48-51. Sweigert has vowed to file additional lawsuits against Goodman in California. *See* Undisputed Facts, ¶¶ 46-47; Exhibit 11(A) at pp. 24-44.

Enough is enough. Defendant respectfully requests that the Court's final judgment in this matter include (1) a specific finding that the dismissal of Sweigert's pending claims is the full and final adjudication on the merits of all claims that Sweigert asserted ***or could have asserted*** against Goodman as of the date of judgment; (2) a declaration that Sweigert is a vexatious litigant; (3) an order that Sweigert make a showing of good cause before commencing another *pro se* action in this Court; and (4) a declaration that Sweigert's bad faith, frequent address changes, frivolous assertion of diversity jurisdiction, and abuse of process constitute a fraud on this court.

## BACKGROUND

### A.      Plaintiff Sweigert's Scorched Earth Tactics

Plaintiff Sweigert is a vexatious *pro se* litigant who has escalated an online dispute into a never-ending saga of lawsuits and public smear campaigns. Sweigert and his cronies have spent years defaming Goodman, his co-hosts and associates, his attorney in unrelated litigation, and even Judge Caproni. Over nearly three years, Plaintiff has abused the leeway granted to *pro se* litigants by spamming the docket with abusive accusations, such as implying Goodman is a clandestine Russian agent. *See* Undisputed Facts, ¶¶ 38-51; see also Exhibit 7, ¶¶ 5, 8.

Not satisfied with prosecuting only one lawsuit, Sweigert has repeatedly insinuated himself into unrelated lawsuits involving Defendant Goodman or his company. For example, Sweigert twice moved to intervene in *Steele v. Goodman*. In July 2019, the Court denied Sweigert's motion to intervene and struck some twenty (20) ECF filings that Sweigert had uploaded to the docket, stating that the Court "will not consider future filings by Sweigert." *See* Undisputed Facts, ¶ 40. Undeterred, Sweigert yet again requested to intervene on October 19, 2020 which was summarily denied on November 5, 2020. *See* Undisputed Facts, ¶ 41. In May 2021, Sweigert sent a letter to Judge Caproni requesting to intervene in the matter of the *National Academy for Television Arts*

and Science v. Multimedia System Design Inc., No. 20-7269, a case involving Goodman's company. *See* Undisputed Facts, ¶ 50. Both sides have told the Court that they see no basis for Sweigert to intervene.

More recently, Sweigert has taken to sending mass emails indiscriminately to dozens of officials at the New York Attorney General's Office, the Federal Trade Commission, judicial and attorney oversight bodies – sometimes several times a day. *See* Undisputed Facts, ¶ 48-49. These communications are full of defamatory accusations against Goodman, his business and his attorneys.

Sweigert has threatened Patreon (Goodman's payment vendor) with frivolous lawsuits in the hope of orchestrating Goodman's "cancellation." On January 10, 2021, Sweigert emailed Patreon a draft complaint naming Patreon as a defendant in an attempt to sow discord between Goodman and Patreon. *See* Undisputed Facts, ¶ 46-47.[2]

Undoubtedly frustrated that his legal assault is not working, Sweigert seems to be broadening his attacks, now going after Goodman's social media accounts, business relationships including his lawyer and – remarkably – the judge in this case.

In or about late 2020, Plaintiff Sweigert published a bizarre rant accusing Judge Caproni of violating "the canon of judicial conduct"; accusing her of participating in illegal wiretaps while at the FBI; and even threatening to "convene a citizen's grand jury . . . under the All Writs Act against this Judge Val." *See* Undisputed Facts, ¶ 51. The verbatim transcript is reproduced below:

---

[2]     Defendant believes that Sweigert will continue to file meritless claims against him unless and until the courts forces Sweigert to stop.  For that reason, Goodman is asking that the Court explicitly rule that the dismissal of Sweigert's claims be *res judicata* of all claims raised, or that could have been raised, in this action, which should encompass all claims accruing on or before the date of dismissal.

Everybody it's Dave. Oh, this is the judge in New York Southern District. So what happened your honor? You let everything sit for six months. You didn't do anything for six months. I mean, it's your motion you filed your motion on your own volition your own initiative so you would know what the outcome of that motion should be. Does it take you six months to figure it out?

You know, this can be considered misconduct. Violation of the canon of judicial conduct. Really kind of a sad blemish but I guess the judge here – let's just call her Val. Val, the deal with Val here is she was at the FBI for eight years as Chief Counsel and one of her little sticky points one of her controversies was illegal wiretaps. Exigent search warrants so I don't know John Conyers who was running the investigation in the House of Representatives said that Robert Mueller who appointed her should fire her.  Wow, wow. And then she became general counsel or something for Raytheon or Lockheed – I think Raytheon some gigantic defense contractor.

You know she must be part of the Deep State, Jason, if she was appointed by Robert Mueller and eight years at the FBI's general counsel. And I think she worked at Raytheon or some Fortune 10 corporation like that. Hey, he's probably going to call this this Clary Layman special prosecutor. We're going to convene a citizen's grand jury and we're going to issue a writ, writ under the All Writs Act against this Judge Val because we're citizens grand jury.[3]

Sweigert may choose to waste his life harassing an obscure YouTube personality and slandering Federal judges. However, the Court should not allow our justice system to be wielded as a weapon by a *pro se* plaintiff with an axe to grind.

### B.      Operative Pleadings and Claims

Plaintiff Sweigert has greatly confused the record in this case with repetitive and excessive filings including two parallel "operative" pleadings. In framing this motion, Defendant is relying

---

[3]      A true and correct copy of Plaintiff's original video has been preserved by Defendant after Plaintiff first removed it from his own YouTube channel, then separately forced its removal from Defendant's evidence preservation Bitchute channel via a false copyright complaint to Bitchute.  Defendant has created yet another Bitchute channel to preserve this exhibit (https://www.bitchute.com/video/ACb6PeHrb0SC/)

upon the Court's Order dated December 28, 2020 (Docket No. 180, Exhibit 3), which directed the Defendant to answer specific paragraphs within Mr. Swigert's "Second Amended Complaint" (Docket No. 88, Exhibit 1) as well as specific paragraphs within Sweigert's "Verified Supplemental Complaint" (Docket No. 150, Exhibit 2). Defendant is also relying upon the Court's orders at Docket No. 165 and 173, both of which refer to "Plaintiff's remaining claims for defamation and under the New York Civil Rights Law."

Alleged Defamatory Statements:  The specific alleged statements that form the basis of Sweigert's defamation claim are set forth in Docket No. 267 (Exhibit 8), a letter dated April 30, 2021 in which Sweigert sets forth the defamatory statements of which he is aware.

Damages:  By letter dated April 24, 2021 (Docket No. 262, Exhibit 7), Plaintiff Sweigert admitted that he was unable to show any actual damages. Thereafter, on May 18, 2021, Plaintiff reversed course and submitted his "Corrected Notice of Special Damages" (Docket No. 276, Exhibit 16) which purports to plead actual damages. In fact, all of Sweigert's purported damages are speculative and theoretical.  No evidence of prior employment, lost wages, lost contracts or actual lost opportunities or relationships is provided.

New York Civil Rights Law §§ 50-51:  Plaintiff's claim under the New York Civil Rights Law is set forth at ¶¶ 88-110 within Docket No. 88 (Exhibit 1). This claim boils down to the sale of 7 coffee mugs ($23 in revenue) bearing a caricature of Sweigert with the caption "Deep State Dunces." *See* Undisputed Facts, ¶ 95; Exhibit 11(F).

Counterclaim Under New York Anti-SLAPP Law:  On May 11, 2021, with leave of the Court, Defendant filed his Amended Answer and Counterclaim (Docket No. 273, Exhibit 11) which includes a counterclaim under the New York Anti-SLAPP law, codified at New York Civil Rights Law §§ 70-a and 76-a.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-23 (1986). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.' " *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). A dispute concerning material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). Although the party opposing summary judgment may not "rely on mere conclusory allegations nor speculation," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), if "there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper," *Gummo v. Vill. of Depew*, 75 F.3d 98, 107 (2d Cir. 1996).

## LEGAL ARGUMENT

### I.      Plaintiff Has Failed to Prove "Special Damages"

Under New York law, a plaintiff must establish five elements to recover for defamation: "(1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; and (5) special damages or per se actionability (defamatory on its

face).” *See Celle v. Filipino Reporter Enterps. Inc.*, 209 F.3d 163, 173 (2d Cir. 2000). Based upon the record before the Court, Plaintiff has failed to produce proof of any element other than publication, which is not contested.

Plaintiff has failed to supply proof of special damages, which requires the Court to enter summary judgment in favor of Defendant Goodman with respect to his defamation *per quod* claim. Based on Sweigert’s statement of damages filed on May 18, 2021 (Docket 276, Exhibit 16), it is clear that Sweigert sustained no actual damages arising from Defendants’ allegedly defamatory statements. *See* Undisputed Facts, ¶¶ 52-63.

Under New York law, a defamation plaintiff must prove “special damages” with evidence of an actual loss causally linked to the defamatory statement. Speculative damages in the form of alleged lost opportunities do not constitute special damages. For example, in *Hall v. Earthlink Network, Inc.*, 2003 WL 22990064 (S.D.N.Y. Dec. 19, 2003), the Court dismissed a *per quod* defamation claim on summary judgment for failure to prove non-speculative damages. The *Hall* court held:

> Actual losses, if properly alleged and causally linked to the defamatory statement, constitute “special damages”. **Speculative damages in the form of alleged lost profits on a debut to-be-shown independent film do not constitute special damages,** and Hall himself, in his deposition, acknowledged that any damages suffered on account of having his e-mail address listed on the Net Abuse Report “would be speculation.” Summary judgment is granted dismissing the libel claim.

*Id.* at *2. With this statement of New York law in mind, we turn to the four (4) categories of damages described in Plaintiff’s May 18, 2021 damages statement – all of which fall squarely into the “speculative” category.

### A.   Damages Theory #1:  "Loss of Emergency Medical Technician employment opportunities in Mount Shasta, California"

Plaintiff Sweigert's first theory of damages is set forth in ¶¶ 1-18 of his Statement of Damages, filed as Docket No. 276 (Exhibit 16)..  Therein, Sweigert claims that Defendant's statements resulted in Sweigert not obtaining a part-time EMT position in Mt. Shasta, California. However, according to Sweigert's damages statement, he was merely "in the process of completing an employment application" (*see id.*, ¶ 5) with Mt. Shasta at the time Goodman allegedly made some unspecified defamatory statement. Sweigert offers no proof for these purported damages:

- No proof that Mt. Shasta had a job opening for which Sweigert was qualified.

- No proof that Sweigert actually applied for any job.

- No proof that Mt. Shasta denied Sweigert's job application.

- No proof as to why Mt. Shasta denied such job application, if indeed that happened.

- No proof that Goodman's alleged statements played any role in any hiring decision relating to Sweigert.

- No proof of any other efforts by Sweigert to obtain employment.

*See* Undisputed Facts, ¶¶ 53-58. Sweigert's first theory of damages fails for lack of evidence connecting a specific statement to an actual loss.

### B.   Damages Theory #2:  "Loss of local business reputation, change of postal facilities."

Plaintiff Sweigert's second theory of damages is set forth in ¶¶ 19-23 of his Statement of Damages (Exhibit 16). Plaintiff claims that Defendant's statements resulted in Sweigert sustaining $900 to $1,300 in losses because Defendant's statements somehow forced Sweigert to change to a different post office, which somehow led to humiliation. Sweigert's damages statement is quoted verbatim:

22. The Defendant's "big lie" was designed to create financial hardship for the Plaintiff who was forced to spend several days to transfer operations for mail from Rough and Ready to Nevada City. This required escalation to the regional postmaster who determined that the "postmaster" was outside of postal service policy and that there was no rule generally against the way Plaintiff received mail. Nonetheless, the Plaintiff was forced to move his postal operations as a matter of utter humiliation.

23. The amount of activity required for the proper transfer of postal operations has resulted in losses of between $500 and $700 (five hundred and seven hundred) to the Plaintiff. The Defendant's blatant lies created a nearly unbearable situation for the Plaintiff in Rough and Ready. The Plaintiff has been forced to change his shopping habits and make most purchases in Nevada City, approximately ten miles away. The extra gasoline expenses and mileage averages to about $400 to $600 (four hundred to six hundred) dollars. These expenses are a direct and proximate result of the Defendant's typical lying behavior.

Sweigert's second theory of damages fails for the same reason as the first; no evidence connecting a specific statement to a specific loss.

### C.    Damages Theory #3:  "Loss of publishing revenues, Certified Ethical Hacker, technical manual publishing"

Plaintiff Sweigert's third theory of damages is set forth in ¶¶ 24-46 of his Statement of Damages (Exhibit 16). Sweigert claims that Defendant's statements forced Sweigert to stop selling a particular manual online, which Sweigert claims resulted in $7,000 to $11,000 in damages.

Again quoting Sweigert:

40. In response to "the big lie" the Plaintiff was forced to place the technical manual on nonpublic status (private) and to discontinue taking any further orders for the manual. This action was taken to deny access to the Defendant and his proxies to exaggerate the "social engineering" text listed on the back cover of the manual.

41. This action to deny access to the public of the manual has conservatively resulted in income losses of approximately $7,000 to 11,000 (seven to eleven thousand dollars) based on Plaintiff. This has caused economic loss to the Plaintiff (as explained later below). As a matter of law these are actionable facts.

As before, Sweigert cannot connect a specific statement to a specific loss. Sweigert offers absolutely no evidence that Goodman "forced" him to stop selling a particular manual online. *See* Undisputed Facts ¶¶ 59. Based upon Sweigert's own statements, he elected to stop selling his manual because he wanted to hide its contents. As Sweigert admits, "this action was taken to deny access to the Defendant and his proxies to exaggerate the 'social engineering' text listed on the back cover of the manual." *See* Undisputed Facts ¶¶ 65-66; Exhibit 19. Sweigert offers no evidence that Goodman had any means of forcing Sweigert to sell, or not sell, his manual to the public.[4]

## D.     Damages Theory #4:  "Loss of critical infrastructure protection opportunities"

Plaintiff Sweigert's fourth and final theory of damages is set forth in ¶¶ 47-59 of his Statement of Damages (Exhibit 16), Sweigert identifies a number of professional certificates that he allegedly obtained.  *See id.* at ¶¶ 49-52. Sweigert then alleges, in conclusory fashion, that these professional credentials were instantly rendered worthless due to Goodman's statements. As Sweigert states:

> 57. The effectiveness of the aforementioned credentials has been neutralized by the Defendant's "big lie". Thus, the thousands of hours of training, education and professional development has been made moot by the Defendant's lie which directly attacks a matter of significance related to the performance of these responsibilities – namely co-participation in the Port of Charleston incident. This is one of the biggest and worst lies pushed by the Defendant (for which he has received handsome profits via PATREON.COM and SubscribeStar.COM). There is no constitutional value in false statements of fact.

---

[4]     It should also be noted that Sweigert had produced absolutely no proof that his purported manual was ever sold to the public, let alone evidence of past sales that would support Sweigert's claimed $7,000 to $11,000 in "lost sales" damages. Therefore, even if Sweigert could establish a causal link between statement and lost opportunity (and he cannot), his third damages theory still fails because Sweigert has offered no evidence from which damages could be quantified.

58. The impact of these slanderous statements resulted in reduced marketability of these certifications. These critical infrastructure certifications are in essence neutralized by the Defendant's lie (which can be proven to the "actual malice" standard).

59. Conservatively, the costs, fees, lost training days, lost training hours, background packages, postage, e-mail messages, etc. results in losses between $33,000 and $55,000 (thirty-three thousand to fifty-five thousand dollars).

As before, Sweigert fails to connect a specific statement with a specific lost opportunity. Indeed, Sweigert has offered no proof that he ever applied for a position in the "critical infrastructure protection" field; no proof that Sweigert was denied a position in said field; and no proof that Goodman's statements played a role in any employment decision. *See* Undisputed Facts ¶¶ 60-63.

Accordingly, Sweigert's fourth theory of damages suffers from the same failure of proof as the first three, with no evidence that links a specific statement to a specific loss. Based on the foregoing, the Court should enter judgment in favor of Defendant on Sweigert's *per quod* defamation claim on the grounds that Sweigert has no evidence of "special damages" required under New York defamation law.

## II.     Plaintiff Cannot Identify Any Defamatory Statement of Fact

In addition to having no damages, Plaintiff Sweigert's defamation claim fails because Sweigert has identified no defamatory statements of fact (as distinct from opinion) to support his claim. Accordingly, the Court should enter judgment in favor of Defendant on Plaintiff's defamation claim.

### A.     Absolute Protection For Opinion

Under New York law, statements of opinion are not defamatory and receive absolute protection under the New York Constitution. *Ganske v. Mensch*, 2020 WL 4890423 (S.D.N.Y. Aug. 20, 2020). To determine if a statement is fact or opinion, a court must consider "what the

average person hearing or reading the communication would take it to mean" and "the context of the entire communication and of the circumstances in which they were spoken or written." *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 290 (1986).

To assist with distinguishing between a statement of fact and opinion, New York courts look to three factors: (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact. *Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F. Supp. 2d 279, 288 (S.D.N.Y. 2006).

This case is similar to *Torain v. Liu*, a defamation case involving a "war of words" which culminated in a radio disk jockey suing an elected official for calling him a "sick pedophile loser," a "lunatic," a "racist pedophile," and remarked that plaintiff should be "terminated from the face of the earth." *Id.*, 2007 WL 2331073, at *3–4 (S.D.N.Y. Aug. 16, 2007).

The *Torain* court reviewed the back-and-forth invective in their proper context and held them to be "pure opinion." As the *Torain* court held, "a statement of pure opinion is not an accusation, and pure opinions are immune from all defamation claims, even claims of *per se* defamation." *See, e.g., Treppel v. Biovail Corp.,* 2004 WL 2339759, *15 (S.D.N.Y. October 15, 2004) (finding that because defendant's statements were pure opinion, they could not support claims for defamation or defamation *per se*). Accordingly, the *Torain* court dismissed the disk jockey's defamation claim, concluding, "[c]learly then, context is still relevant when considering whether a statement is a factual accusation rather than a pure opinion. And as already discussed,

15

no reasonable listener, considering the entire context of defendant's comments, would conclude that defendant was accusing plaintiff of committing an act of pedophilia." *Id.*

### B.   Plaintiff Sweigert Has Identified No Defamatory Statements

Pursuant to the Court's order, Plaintiff filed Docket No. 267 (Exhibit 8),, which lists the purportedly defamatory statements on which Plaintiff is suing. In the table below, in the left-hand column, the allegedly defamatory statement is quoted. In the right-hand column, we explain briefly why the statement is opinion or otherwise non-actionable. *See* Undisputed Facts, ¶¶ 67-91.

| ALLEGEDLY DEFAMATORY STATEMENT (Docket No. 267) | COMMENT |
|---|---|
| **Statement #1:**  You better stop Dave, because all this stuff is going to the FBI. | Statement #1 was true. At the time Goodman made this statement, he was in contact with the FBI about Sweigert. |
| **Statement #2:**  That man should be in jail. That's criminal prosecution. I intend to get them prosecuted criminally. | Statement #2 is an accurate statement of Goodman's opinion based upon his understanding that harassment is against the law. |
| **Statement #3:**  You better stop Dave, because all that stuff has gone to the FBI. I am working out a way to bring criminal prosecution against these people. | Statement #3 was true. |
| **Statement #4:**  You see, I think David is engaged in a crime. I have got the evidence for it. Could indicate involvement in a criminal operation of IRAN- CONTRA. Dave needs to be prosecuted. 18 USC 1001. I am going to make it my business to find a prosecutor to charge David Sweigert and his accomplices with that crime. Because I will see to it that that man is put in jail. | Statement #4 is an accurate statement of Goodman's opinion based upon Sweigert's harassment of Goodman described herein. |

| | |
|---|---|
| **Statement #5:** David Sweigert – that I see evidence that he has committed felonies. And therefore, conspiring with him could expose you to serious legal issues if law enforcement chooses to act on the evidence that I am actively providing of these felonies. And conspiring with others around the Internet to break the law. | Statement #5 refers to Sweigert's abuse of the postal service in Mesa, Arizona. Specifically, Sweigert used an address owned by an individual named Mari Rapp. The U.S. Postal Service confirmed that they would not deliver to Sweigert at that address. In Goodman's opinion, Sweigert has committed fraud on the court with this bad faith lawsuit. Sweigert's improper use of the U.S. Post Office box in furtherance of the fraud would be mail fraud, a Federal offense. |
| **Statement #6:** He has now taken to basically threatening the federal judge in the Southern District of New York, that's Valerie Caproni. | Statement #6 refers to statements made by Sweigert about Judge Caproni on his YouTube channel. Among other things, Sweigert accused Judge Caproni of violating "the canon of judicial conduct," accused her of participating in "illegal wiretaps" while at the FBI, and threatened to "convene a citizen's grand jury . . . under the All Writs Act against this Judge Val." |
| **Statement #7:** Shrouded in an organized campaign of harassment. Interstate harassment over the Internet, over the telephone. These are crimes people. So if you are engaged in doing that right now, Dean Fougere, Manuel Chavez, Robert David Steele, David Sweigert, Queen Tut, Lutzke Holmes, whatever. | Statement #7 contains no assertion of fact and is an accurate statement of Goodman's opinion that Sweigert is engaged in illegal harassment. |
| **Statement #8:** He interfered with an officer of the court. | There is nothing defamatory about Statement #8. |
| **Statement #9:** George's brother who is making public threats against us. | Statement #9 is true. Sweigert issues threats almost daily, including threatening Judge Caproni. |
| **Statement #10:** You are engaged in an organized criminal harassment campaign. I have submitted my evidence against you to the NY FBI field office. | Statement #10 is virtually identical to Statement #1 and #3 and arose in the same context. As mentioned above, this is true because Goodman was in contact with the FBI about Sweigert. |

| **Statement #11:**  David Sweigert is a dead beat dad. | Statement #11 was made in the context of a Twitter war. For background, in early 2021, Goodman spoke at length with an individual named Corean Stoughton who claimed that Sweigert was harassing her as well. Stoughton told Goodman that Sweigert had revealed his greatest regret in life was abandoning his son Jimmy. |
|---|---|
| **Statement #12:**  Cyberstalker / deadbeat dad David Sweigert abandons his own son. | Statement #12 was made on the basis of credible information provided by Ms. Stoughton. |

Based on the foregoing, Plaintiff Sweigert has failed to allege or prove any defamatory statement by Goodman. Accordingly, the Court should enter summary judgment in favor of Defendant with respect to Plaintiff's defamation claim.

## III.    Plaintiff Cannot Prove Actual Malice

For similar reasons, the Court should grant summary judgment on the defamation claim because Plaintiff cannot prove that Goodman acted with actual malice. Under the recently-amended New York anti-SLAPP Law, codified at NY Civil Rights Law § 70-a and 76-a, Plaintiff Sweigert bears the burden of proving by clear and convincing evidence that Goodman's statements were made with actual malice, *i.e.*, "with knowledge of its falsity or with reckless disregard of whether it was false." The accompanying Declaration of Jason Goodman discusses each of the 12 challenged statements and provides the context for each statement. *See* Goodman Decl. ¶¶ 67-91. Goodman's un-refuted testimony leaves no factual dispute – Defendant had a good faith basis for all of his statements. Thus, Plaintiff cannot prove that Goodman acted "with knowledge of its falsity or with reckless disregard of whether it was false."

At the summary judgment stage, Sweigert cannot rely upon conclusory allegations or speculation. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) (the party opposing summary judgment may not "rely on mere conclusory allegations nor speculation"). This is especially true regarding the "motive" element, which Sweigert bears the burden of proving to a clear and convincing standard. *See Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."). Sweigert has failed to adduce any evidence of actual malice. For that reason, judgment should be entered in favor of Defendant on Plaintiff's defamation claim.

## IV.    Defendant's Use of Plaintiff's Image Is Protected Under Established New York Law

Defendant's artistic, transformative and journalistic caricature of Sweigert's image on a coffee mug bearing the words "Deep State Dunces" is not actionable under Sections 50-51 of the New York Civil Rights Law. Defendant's use of Sweigert's image was protected by the "newsworthiness" exception as well as the "caricature and parody" exception, both of which are well established under New York law.

### A.    The Offending Image

Sweigert is a published author and public figure in the field of cybersecurity, ethical hacking and social engineering. Sweigert holds himself out to be a credentialed authority, as illustrated by his damages statement. *See* Undisputed Facts, ¶¶ 92-93. Sweigert uploads content to YouTube and other platforms. As the Court knows, Sweigert is a prolific *pro se* plaintiff, involving himself in cases that don't concern him and defaming his opponents in smear campaigns.

In a war of words, mockery is a powerful weapon. Sweigert deserves to be mocked, and that is exactly what Goodman did when he created a coffee mug featuring the image reproduced below and bearing the words "Deep State Dunces," a joke about Sweigert's hilarious sense of self-importance, complete with his delusional claims that as an "apathetic CIA troll" he has been or presently is part of a secret Government counterintelligence program. Defendant sold a total of 7 of these mugs, generating revenue of about $23. *See* Undisputed Facts, ¶¶ 95-96.

*"Deep State Dunces"*



### B.      Defendant's Use of Sweigert's Image Is Protected Speech

Plaintiff's use of Sweigert's image occurred in the context of discussions about Sweigert's lawsuits, public statements, and public actions – all of which are newsworthy. Under New York law, "it is settled that use of a name or picture in the media in connection with a newsworthy event or matter of public interest is, as a matter of law, not a use for the purposes of trade. . . . This is true irrespective of the fact that such publications are carried on largely, and even primarily, to

make a profit." *Scott v. WorldStarHipHop, Inc.*, 2012 WL 1592229, at *3 (S.D.N.Y. May 3, 2012), citing *Messenger ex rel. Messenger v. Gruner Jahr Printing & Publ'g,* 94 N.Y.2d 436, 441–42 (2000).

In addition, Defendant's use of Sweigert's image was obviously parody and is therefore protected expression. "There is a well-recognized exception [to N.Y. Civ. Rights Law §§ 50-51] for works of art and advertising that is undertaken in connection with a use protected by the First Amendment." *Mason v. Jews for Jesus*, 2006 WL 3230279, at *4 (S.D.N.Y. Nov. 8, 2006).

Defendant's use of Sweigert's likeness – adding a dunce cap and depicting him in a pig pen with human–animal hybrid depictions of his associate Manuel Chavez III and Chevez' associate Robert David Steele as a horse's rear end – is classic parody regarding matters of public concern. *See* Undisputed Facts, ¶¶ 97-98. This case is similar to *Altbach v. Kulon,* where the Third Department vacated a preliminary injunction that enjoined a caricature of a local judge portrayed "as a devil with horns and a tail" because it was "an artistic expression outside the scope of Civil Rights Law §§ 50 and 51"). *Id.*, 302 A.D.2d 655, 657–58 (3d Dep't 2003). In ruling that the caricature was protected parody, the *Altbach* court noted that "defendant's flyers ... cannot reasonably be read to assert that plaintiff endorsed or recommended either the painting or defendant's gallery." *Id. See also Foster v. Svenson*, 128 A.D.3d 150, 158 (1st Dep't 2015) ("we are constrained to concur with the views expressed in *Altbach, Hoepker,* and *Nussenzweig's* concurrence: works of art fall outside the prohibitions of the privacy statute under the newsworthy and public concerns exemption.").

Defendant's use of Sweigert's image in a caricature is protected artistic expression because it was newsworthy and, additionally, because it is parody regarding matters of public concern. For

those reasons, the Court should enter judgment in favor of Defendant on Plaintiff's claims under §§ 50 and 51 of the New York Civil Rights Law.

## V.     The Court Should Enter Judgment For Goodman on His SLAPP Counterclaim

If the Court awards summary judgment to the Defendant on Plaintiff's defamation claim, the Court should also award summary judgment (as to liability) with respect to Defendant's counterclaim under the New York Anti-SLAPP Law (N.Y. Civ. Rights Law §§ 70-a, 76-a). Plaintiff violated New York's Anti-SLAPP law by commencing or continuing the litigation of this matter. New York's anti-SLAPP law was substantially amended effective November 10, 2020. The newly amended anti-SLAPP law extends far more broadly than the previous version, extending to lawsuits based upon "any communication in a public place open to the public or a public forum in connection with an issue of public interest" or based upon "any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest."

Because the statute also states that "public interest" should be "construed broadly and shall mean any subject other than a purely private matter," the new anti-SLAPP law should be construed to sweep up political and social discussions, as well as entertainment productions. Sweigert commenced and continued the above-captioned lawsuit, including his defamation claim, against Defendant specifically for his commentary about Sweigert – a self-described expert in the fields of "ethical" hacking and social engineering (*see* Undisputed Facts, ¶ 65-66) – as well as other matters of public interest.

Plaintiff Sweigert is the author of *Ethical Hacker's Field Operations Guide: Learning the Art of Penetration Testing*. Sweigert has thrust himself into the public debate regarding hacking and social engineering and has opened himself to criticism. Sweigert commenced and continued

his legal action against Goodman as retribution for Defendant raising questions about Sweigert and his public activities, specifically concerning ethical hacking and social engineering.

Plaintiff's defamation lawsuit is therefore based upon "communication in a public place open to the public or a public forum in connection with an issue of public interest" and is further based upon " other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest." Sweigert's lawsuit was commenced and continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law. Sweigert's lawsuit was commenced and continued for the purpose of harassing, intimidating, punishing and otherwise maliciously inhibiting the free exercise of speech, petition and association of Defendant's rights. For these reasons, the Court should grant summary judgment in favor of Defendant on Plaintiff's anti-SLAPP claim. This judgment should include an award of compensatory and punitive damages, as well as an award of fees, costs and disbursements.

## VI.    The Court Should Protect Goodman Against Future Harassment

Finally, in light of Sweigert's history of bringing repetitive and meritless litigation against Goodman, and in view of Sweigert's stated intention to commence still further litigation against Goodman, it is respectfully requested that the Court's order include a specific finding that (1) the dismissal of Sweigert's defamation claim is deemed to be a full and final adjudication on the merits of all claims that Sweigert asserted against Defendant or could have asserted as of the date of the entry of judgment; (2) a declaration that Sweigert is a vexatious litigant, together with an order that Sweigert make a showing of good cause before commencing another *pro se* action in this Court. *See Ajamian v. Nimeh*, 2014 WL 6078425, at *3 (N.D.N.Y. Nov. 13, 2014); and (3) a declaration that Sweigert's bad faith, frequent address changes, frivolous assertion of diversity

jurisdiction, and abuse of process constitute a fraud on this court; and (4) such other and further

relief as the Court may deem just and proper.

## **CONCLUSION**

Based on the foregoing, Defendant Jason Goodman respectfully requests that the Court

enter an Order under Fed. R. Civ. P. 56:

(1) entering Summary Judgment in favor of Defendant as to Plaintiff's claim for

defamation *per se* and *per quod*;

(2) entering Summary Judgment in favor of Defendant as to Plaintiff's claim under §§

50-51 of the New York Civil Right Law;

(3) entering Summary Judgment in favor of Defendant as to Defendant's counterclaim

under the New York anti-SLAPP Law (N.Y. Civil Rights Law §§ 70-a and 76-a),

together with an order scheduling further proceedings to quantify Defendant's

damages;

(4) declaring that the dismissal of Plaintiff's claims is deemed to be a full and final

adjudication on the merits of all claims that Plaintiff has asserted against Defendant

or could have asserted as of the date of the entry of judgment;

(5) declaring that Plaintiff Sweigert is a vexatious litigant and ordering that Sweigert

make a showing of good cause before commencing another *pro se* action in this

Court. *See Ajamian v. Nimeh*, 2014 WL 6078425 at *3;

(6) declaring that Plaintiff Sweigert's bad faith, defamatory comments about lawyers and

judges, frequent address changes, frivolous assertion of diversity jurisdiction, and

abuse of process amount to a fraud on this Court; and

(7) granting such other and further relief as the Court may deem just and proper.

Dated:    New York, New York
            May 31, 2021

Respectfully Submitted,

_____

Jason Goodman
Pro Se Defendant