**U.S. DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| SWEIGERT | CIVIL CASE #: |
|---|---|
| V. | 1:18-CV-08653-VEC |
| GOODMAN | JUDGE VALERIE E. CAPRONI |

### PLAINTIFF'S NOTICE OF MOTION FOR CONTINUANCE TO STAY PROCEEDINGS SIXTY (60) DAYS PURSUANT TO F.R.C.P. RULE 56(d)

Plaintiff hereby submits **this NOTICE OF MOTION,** with accompanying Memorandum of Law, in response to the Defendant's **ECF docket entries 277, 278, 279 and 280.**  This motion seeks a stay of the briefing of the **Defendant's Rule 56 motion** until **September 1, 2021.** The Plaintiff cites his letter of April 14, 2021 (**Dkt. 245**) as if fully restated herein.

Assertations made by the Plaintiff herein are certified under the penalties of perjury as truthful.

A Certificate of Service appears on the LAST page of this pleading.

Signed this second day of June (6/2) of two thousand and twenty-one (2021).

*D. Sgt*

*D. GEORGE SWEIGERT*
*GENERAL DELIVERY*
*NEVADA CITY, CA 95959-9998*
*SPOLIATION-NOTICE@MAILBOX.ORG*

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO INTERVENE**

## TABLE OF CONTENTS

**LIST OF AUTHORITIES** ........................................................................................................... 3

**PROCEDURAL HISTORY** ....................................................................................................... 4

**BACKGROUND STATEMENT** ............................................................................................... 5

    **DEFENDANT'S INCOMPLETE DISCOVERY SUBMISSION** .......................................... 7

    **STATEMENTS PROVIDED CANNOT PROVE OR DISPROVE GOOD FAITH** ........ 10

    **NEED FOR ADDITIONAL DISCOVERY** ...................................................................... 14

**LAW AND ARGUMENT** ......................................................................................................... 18

**CONCLUSION** ......................................................................................................................... 20

<u>**LIST OF AUTHORITIES**</u>

**Cases**

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ...................................................... 19

*Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002) ............................................. 19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).......................... 19

*Meloff v. N.Y. Life Ins. Co*., 51 F.3d 372 (2d Cir. 1995)................................................ 20

*Meloff v. N.Y. Life Ins. Co.,* 51 F.3d 372, 374-75 (2d Cir. 1995) ................................. 19

*Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994) ....................... 18

*Phaneuf v. Fraikin,* 448 F.3d 591, 595 (2d Cir. 2006) ................................................ 19

*R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)........................................ 20

*Trebor Sportswear Co. v. The Limited Stores, Inc.,* 865 F.2d 506, 511 (2d Cir. 1989) .............. 18

**Statutes**

**18 U.S.C. section 1001**........................................................................................... 11

New York Civil Rights Law section 76-A.................................................................... 4

NYCRL 76-A................................................................................................... 4, 6

**Other Authorities**

F.R.C.P. 56(d)(1) ......................................................................................... 19

F.R.C.P. Rule 56 ...................................................................................... 11, 19

F.R.C.P. Rule 56(d).......................................................................................... 18

## **PROCEDURAL HISTORY**

1.      Plaintiff alleged that the Defendant has used Plaintiff's image and name without his consent and committed the tort of defamation *per se* in the Second Amended Complaint (**SAC (Dkt. 88)**) and the First Supplemental Complaint ((**FSC, Dkt. 150**)).  By his RESPONSE on **Jan. 29, 2021** (**Dkt. 189**) the Defendant answered the **SAC** and **FSC** (see **ORDER Dkt. 180**).

2.      **On Nov. 10, 2020** the Governor of New York signed an updated version of New York Civil Rights Law Section **76 (a)(1)(a),** New York's Anti-SLAPP law.  (NYCRL 76-A)

3.      Discovery commenced for both parties on or about Feb. 23, 2021 by ORDER (**Dkt. 218**). A discovery conference was held with both parties and the magistrate judge on March 11, 2021. By ORDER of Mar. 11, 2021 (**Dkt. 224**) Defendant was compelled to produce discovery by April 12, 2021.  By ORDER of March 11, 2021 (**Dkt. 224**), following the discovery conference, Defendant was ordered to comply with the original "Plaintiff's Interrogatories".

4.      The **day prior** to the Defendant's discovery deadline, on April 11, 2021 the Defendant filed what can be describes as a New York anti-SLAPP Motion (**Dkt. 239**), pursuant to New York Civil Rights Law section 76-A.

5.      The Court then allowed the Defendant to proceed with a F.R.C.P. Rule 56 motion per Court's Order dated May 4, 2021 (**Dkt. 270**)

6.      The Defendant, with the help of a licensed attorney ghost writer, has docketed **Dkt. nos. 277, 278, 279, and 280** which comprise a Motion for Summary Judgement pursuant to Rule 56 of the Federal Rules of Civil Procedure (F.R.C.P.).

## BACKGROUND STATEMENT

7.    On December 7, 2020 (**Dkt. 173**) the Court ordered discovery (which Defendant was
required to deliver to the Plaintiff by May 18th, 2021 (**Dkt. 270**).  Quoted in relevant part:

> NOW, THEREFORE, it is hereby ORDERED, as follows:
>
> 1.  No later than January 15, 2021, Defendant shall respond under oath to the following
>     interrogatories:
>
> c)  For the period from June 14, 2015 to the present, identify each Uniform Resource
>     Locator (URL) Internet address used by Defendant to post Plaintiff's name and/or
>     picture.
>
> d)  For the period from June 14, 2015 to the present, identify each social media
>     account, including platform and username, used by Defendant to post Plaintiff's
>     name and/or picture.
>
> 2.  No later than January 15, 2021, Defendant shall produce to Plaintiff the following
>     documents for the period from June 14, 2015 to the present:
>
> a)  All documents and communications between Defendant and Patreon.com (or its
>     representatives) regarding Plaintiff.
>
> c)  All emails sent or received by Defendant regarding Plaintiff.
>
> d)  All documents regarding any social media posts by Defendant that refer to Plaintiff
>     and/or display his picture.

8.      As stated in his e-mail message of December 8, 2020 to Colin Sullivan, General Counsel

of PATREON, Inc, the Defendant became aware of the changes to the New York anti-SLAPP

Law (NYCRL 76-A) and intended to use such a law in this litigation.  See e-mail message from

jason@21stcentrury3d.com to colin@patreon.com, dated December 8, 2020 at 2:10 am, quoted

in relevant part:

> I am writing to advise you that on November 10, 2020 Andrew Cuomo signed into law a new,
> much more powerful anti-SLAPP statute that I will be using to respond to Mr. Sweigert.  This
> new statute has the power to stay discovery in the matter and hopefully will get it dismissed
> entirely.

9.      In the intervening time between December 8, 2020 and the filing of the Defendant's anti-

SLAPP motion on April 11, 2021 (**Dkt. 239**) (a day before a third missed discovery deadline)

this Court has been subjected to a wide array of discovery stall tactics that epitomize foot-

dragging and bad faith by the Defendant (while awaiting an opportune time to file his anti-

SLAPP motion).  To summarize the **100 days** of discovery non-compliance by Defendant:

- **12/28/2020 Dkt. 180**, original discovery ORDER with deadline of **1/29/2021** for

  compliance (anti-SLAPP motion **Dkt. 239** to be filed in **104** days)

- **2/12/2021 Dkt. 195,** follow-up discovery ORDER compelling a new deadline of

  **2/24/2021** (anti-SLAPP motion **Dkt. 239** to be filed in **58** days)

- **2/17/2021 Dkt. 202,** follow-up discovery ORDER compelling deadline of 2/24/2021

- **3/11/2024, Dkt. 224,** follow-up discovery ORDER compelling a new deadline of

  **4/12/2021** (anti-SLAPP motion **Dkt. 239** to be filed in **31** days)

10.     By EXPRESS MAIL, delivered May 17th, 2021, the Defendant submitted incomplete and

disorganized documents to the Plaintiff that were not in compliance of the Court's ORDER of

May 4, 2021 (**Dkt. 270**), which amplified the Court's ORDER of 3/11/2021 (**Dkt. 224**) (see also 12/7/2020 ORDER, (**Dkt. 173**), "(1) c) All emails sent or received by Defendant regarding Plaintiff. d) All documents regarding any social media posts by Defendant that refer to Plaintiff and/or display his picture, (2) a) All documents and communications between Defendant and Patreon.com (or its representatives) regarding Plaintiff, c) All emails sent or received by Defendant regarding Plaintiff and d) All documents regarding any social media posts by Defendant that refer to Plaintiff and/or display his picture."

## DEFENDANT'S INCOMPLETE DISCOVERY SUBMISSION

11.     In compliance with the Plaintiff's sworn oath (appearing on page one of this document) the Plaintiff affirms a USB "jump drive" that contained 137 video files in the .MP4 format was received via postal authorities within the May 18th, 2021 discovery deadline.  These are raw video files that do not contain any Uniform Resource Locator (URL) information about which social media platforms such raw .MP4 files were "uploaded" to.  Some of these files contained video content well over one hour in length.  The only URLs provided by the Defendant are to the so-called "splash page" of each social media property, which is not the specific URL to the actual video content.

12.     The USB jump drive with the 137 raw .MP4 files is not in compliance with the Court's ORDERs regarding **2(d).**  There is no indication of where such files may have been posted in the so-called "blob" of the Defendant's expansive social media properties which can be counted somewhere between 13 and 21 depending on the status of terminated accounts.  The USB jump drive does not include posts to Twitter, Facebook, blogs, commentary on videos, video descriptions, date posted, etc.  This submission is in open defiance to the Court's ORDERs.

13.   The same is true for so-called e-mail messages related to 1(c).  For instance, the
Defendant has included (in paper form) only three (3) e-mail messages from Corean Elizabeth
Stoughton, Hanover, Maryland (5/2/2021, 10:09 pm, 5/2/201 at 10:24 pm, 5/3/2021 at 9:17 am).

14.   The May 2, 2021 at 10:09 pm e-mail from Ms. Stoughton (icorean@icloud.com) to the
Defendant (truth@crowdsourcethetruth.org) has a subject line of **LAST.**  The body of the
message contains the phrase "As promised, I will no longer contact you.  As you are well aware,
I had previously stopped all communications bc (because) I didn't want Dave to have the
satisfaction under Discovery of my private communications (with anyone)."  This is one example
of an e-mail message which clearly indicates it is a termination of a dialogue which presumably
included a great deal more of such messages.  There appears to be many more e-mail messages
from Ms. Stoughton that the Defendant has not included in his May 17th, 2021 EXPRESS MAIL.

15.   On page 12 of the Defendant's DECLARATION OF JASON GOODMAN (**Dkt. 278**) he
states that he began discussions with Ms. Stoughton in early 2021 about the "dead beat dad"
allegations.  However, the "dead beat dad" allegations first surfaced in Twitter tweets from the
Defendant in May 2020.  Quoting **Dkt. 278** in relevant part:

| Statement #11: | David Sweigert is a dead beat dad. |
|---|---|
| **Context:** | This comment was made in a reply to a Twitter post. Sweigert was in a regular practice of commenting on my public tweets with his own tweets that directed readers to his blog containing posts with false information about me. I responded with accurate information about Sweigert in the hope of making Sweigert stop his harassment. |
| **Good Faith Basis:** | In early 2021, I spoke at great length with an individual named Corean Stoughton, who was able to prove that she knows Sweigert. Stoughton told me that Sweigert had revealed his greatest regret in life was abandoning his son Jimmy. |



Above:  Def. Goodman's tweet of **05/12/2020** labeling the Plaintiff as a "deadbeat dad brother
Dave who really should call his abandoned special needs son XXXXX…" (redacted)

See page 23, First Supplemental Complaint (Dkt. 150).

16.     Sometime in **May 2020, not 2021**, the Defendant came into possession of information

regarding the so-called "abandoned son" and formed the smear "dead beat dad".  Ms. Stoughton

is the presumed source of this information, but the Defendant has not included any other e-mail

communications exchanged with Ms. Stoughton prior to May 2, 2021.  Again, this is an example

of non-compliance with the Court's ORDERs.

17.     The above Twitter Tweet sent by Mr. Goodman as "CrowdSource The Truth" and similar

tweets were not included in any discovery materials provided in the May 17th 2021 EXPRESS

MAIL package.  In fact, the public record indicates that Mr. Goodman has "tweeted" about the

Plaintiff nearly 200 times.  The above "dead beat dad" tweet is only one example.

**18.**     As the Court will recall, the Defendant placed his JASON GOODMAN YouTube

channel on an offline hidden status creating the non-availability of **2,333 videos April 12, 2021.**

Much of these videos contained slanderous, defamatory, and libelous statements about the

Plaintiff.  The private offline status gambit took place the following day after the filing of the

Defendant's so-called anti-SLAPP motion (**Dkt. 239**), **April 11, 2021.**

19.     This matter was reported to the Court by the Plaintiff on April 14, 2021 (**Dkt. 245**).  The

Defendant placed the JASON GOODMAN YouTube channel on hidden offline status on April

12, 2021 (in coordination with the **Dkt. 239** anti-SLAPP motion) effectively ended discovery for

the Plaintiff.  The non-availability of the JASON GOODMAN YouTube channel terminated the

discoverability of any further actionable statements by the Plaintiff during the discovery period.

20.     The foregoing described actions by the Defendant have frustrated developing a full

evidentiary record for this Court.  The Defendant has calculated his actions (the simultaneous

docketing of the anti-SLAPP motion (**Dkt. 239**) with the non-availability of the offline JASON

GOODMAN YouTube channel) to severely handicap and hamper the Plaintiff's discovery.

### STATEMENTS PROVIDED CANNOT PROVE OR DISPROVE GOOD FAITH

21.     Due to the Defendant's behavior several material facts will remain in dispute.  For

example, in Statement #1 (**Dkt. 278**) the issue of "Sweigert and his associates", to include the

founder of the QAnon conspiracy theory Manuel Chavez, III, will remain in dispute as

Defendant has not allowed access to the dozens of videos on the offline JASON GOODMAN

YouTube channel that discuss Mr. Chavez (see Statement no. 1, **Dkt. 278**).  This speaks to the

Plaintiff's discovery handicap which frustrates any attempts to demonstrate the actual malice or

good faith of the Defendant.

22.     This is true for Statement #3 (**Dkt. 278**) as well.  No information has been presented by

the Defendant as to what "stuff" was handed over to the Federal Bureau of Investigation (F.B.I.).

Statement #3 alleges the inclusion of "George Webb" in the information given to the F.B.I.

However, in April 2018 while appearing on the Nathan Stolpman "*Lift The Veil*" Show the name

George Webb was never mentioned by the Defendant concerning information he had allegedly

provided to the F.B.I.  This is a new and startling revelation, that the Defendant included George

Webb in reports to the F.B.I..  This speaks to the need for further clarification as to what exactly

the Defendant communicated to the F.B.I. to support his theories for criminal prosecution.

Without further discovery and amplification of this issue no actual malice or good faith can be proved or disproved.

23.    This is true of Statement #4 (**Dkt. 278**) concerning allegations that the Plaintiff had a role in the IRAN-CONTRA drug smuggling operation or that Plaintiff had violated 18 U.S.C. section 1001.  The Plaintiff requires additional discovery to prove actual malice or good faith of such conclusory statements concerning what research methods were used by the Defendant to arrive at such libelous and defamatory conclusions.  Otherwise, the Court must simply take the word from a litigant who cunningly waited 100 days to file an anti-SLAPP motion (**Dkt. 239**) to disrupt the on-going discovery process.  Actual malice or good faith can be neither proved or disproved.

24.    The same is true for Statement #5 (**Dkt.** 278).  Without further discovery into the supporting rationale as to how the use of a "care of" mailing address could constitute a felony, the Court will inherit an allegation that lacks any supporting evidence for the purposes of an F.R.C.P. Rule 56 summary judgement.  The Defendant does not address how he formed an opinion that the use of the "care of" mailing address could constitute a felony.  Nor has the Defendant explained what type of investigation he undertook to research whether such conduct could be considered a felony.  Neither has the Defendant explained why, or if, he did not contact the U.S. Postal Inspection Service to report this so-called "felony".  Again, without further discovery and probing of this claim there can be no opportunity to prove or disprove actual malice or good faith.

25.    The same is true for Statement #6 (**Dkt. 278**) regarding the phrase "threatening" a federal judge.  Setting aside the obvious false attribution of convening a "Citizens' Grand Jury" to the Plaintiff, the Defendant has not explained how a "Citizens' Grand Jury" could be construed as a threat to a federal judge.  In this context, discovery has not been allowed to probe the

relationship between Washington, D.C. attorney Larry Klayman (referred to as Clary Layman in
Statement #6) who has sponsored about a dozen video podcasts with the Defendant entitled
"Citizens Grand Jury".  To this point, no discovery has been undertaken to ascertain why the
Defendant would participate in a dozen "Citizens' Grand Jury" podcasts (now removed from the
Internet via the offline status of the JASON GOODMAN YouTube channel) which have resulted
in "indictments" of Robert S. Mueller, III, former director of the F.B.I., etc.  Discovery is
required to demonstrate that Defendant never believed that such a "Citizens' Grand Jury" could
constitute an actual threat to a federal judge.  Again, this statement remains unprovable as to
actual malice or good faith without further discovery of the Defendant's supporting rational as to
make such a statement.

26.     Statement #9 (**Dkt 278**).  For an unknown reason the Defendant again restates his
conclusory remarks that the presiding judge was "threatened".  This remark has no relevancy to
the issue regarding the statement "making public threats against us".  Further discovery is
required to understand what "threats" the Defendant is referring to.  The conflagration of "threats
against a federal judge" and "threats against us" merely appears to cause confusion and the
insertion of material with no probative value.  These are just co-mingled statements.  Therefore,
further discovery is required to understand what "threats" the Defendant is referring to.
Otherwise, as with the Defendant's other statements, there can be no firm determination as to
actual malice or good faith, except of the Defendant's reassurances.

27.     Statement #10 (**Dkt. 278**).  Again, there is no explanation offered by the Defendant to
justify the statement "organized criminal harassment".  Whether or not the Defendant reported
this situation to the F.B.I. does not explain the Defendant's use of the term "organized criminal
harassment" which would constitute some type of criminal conspiracy.  The Defendant does not

elaborate as to how he developed his information regarding this "organized criminal harassment".  As the JASON GOODMAN YouTube channel remains offline further discovery would be required to demonstrate the supporting rationale, or lack thereof, that the Defendant possessed at the time such a statement was made.  Otherwise, it remains an unprovable statement as to actual malice or good faith.

28.     Statement #11 (**Dkt. 278**).  There is no way to ascertain what the supporting rationale would be to support the statement "dead beat dad" which implies criminal non-payment of child support.  The Defendant only offers up that he received communications from Ms. Corean Elizabeth Stoughton, Hanover, Maryland, the former girl friend of George Webb Sweigert.  Defendant does not explain what research he undertook to check criminal records, court records, or other sources to determine if there was indeed non-payment of child support.  Rather the Defendant states that he made such statements based on hearsay evidence collected from George Webb's ex-girlfriend (Stoughton).  The issue of the Defendant only providing a small portion of the presumed e-mail messages exchanged between himself and Ms. Stoughton has been addressed earlier.  Further discovery is required of all the e-mail messages exchanged between the Defendant and Ms. Stoughton to explain how the Defendant obtained this "dead beat dad" information in May of 2020, certainly not e-mail messages of May 2021.  There is no way to prove or disprove the actual malice or good faith of such a statement without further discovery.

29.     Statement #12 (**Dkt. 278**).  This response by the Defendant certainly illuminates the vile nature of his "investigative reporting" but does not answer the issue about "cyberstalking" or "dead beat dad".  Simply reporting the names of the supposed "abandoned child" does not provide any credible support with regards to non-payment of child support.  Further investigation is required to understand what other investigation the Defendant undertook to justify his

"cyberstalking" and "dead beat dad" comments. Learning the name of a potential child would not satisfy any "journalistic investigation" into criminal non-payment of child support. These statements provided by the Defendant (**Dkt. 278**) cannot prove actual malice or good faith without further discovery, which appears improbably with regards to the offline JASON GOODMAN YouTube channel.

30.     It is believed that the JASON GOODMAN YouTube channel may have been taken offline to avoid full account termination on April 12, 2021, as the Defendant reported in a podcast that he had "received a second" Community Standards strike (violation) on that channel. The YouTube policy is to terminate such a channel after three such "strikes". YouTube has a policy to suspend such channels for 90 days as a "cooling off": period before full account termination. Therefore, it can be assumed that the Defendant will place his JASON GOODMAN YouTube channel back online July 11, 2021, after the most substantial issues of the summary judgment are closed and awaiting adjudication. The offline status denies the Plaintiff an opportunity to obtain discovery to properly oppose the Rule 56 summary judgement motion.

31.     A sixty (60) day extension in discovery will push the deadline for opposing the Defendant's Rule 56 summary judgment motion (prepared by a professional attorney) past the anticipated online date of July 11, 2021 for the JASON GOODMAN YouTube channel. A sixty (60) day extension in discovery would deny the cunning trick that the Defendant most likely planned for, knowing that after a 90 day "cooling off period" that YouTube would remove one of the two Community Guidelines strikes to the channel. With only one such strike, the threat of full channel termination would be mitigated.

## NEED FOR ADDITIONAL DISCOVERY

### Materials Held by YouTube, LLC

32.    The Plaintiff needs additional time to subpoena the corporate YouTube records of the JASON GOODMAN channel.  These records are needed to demonstrate that the Defendant voluntarily placed this YouTuber channel in an offline condition, which had nothing to do with the purported "strikes" wrongfully attributed to the Plaintiff.  These records will clearly demonstrate that the offline status of the channel was a dilatory attempt by the Defendant to spoliate the evidence of his video podcasts to handicap the Plaintiff during the discovery process.

33.    Plaintiff needs additional time to explore the ability to have the video content of the JASON GOODMAN channel made available to the Plaintiff by the corporate offices of YouTube.  Early indications appear that YouTube, LLC can be made to comply with providing a "private viewing" of the JASON GOODMAN YouTube channel by a litigation adversary.  This will require the issuance of a subpoena and proper service which will take additional time and expense.  This places a burden upon the Plaintiff as a direct result of the Defendant's selection of offline status for his JASON GOODMAN YouTube channel.  This will provide the Plaintiff with additional viewing of defamatory, slanderous, and libelous video content, presently offline.

### Manuel Chavez, III

34.    The Plaintiff needs additional time to subpoena Manuel Chavez, III, Carson City, Nevada, to a deposition to clear up the constant conflagration by the Defendant that somehow the Plaintiff was working with Mr. Chavez and "his associates".  The Plaintiff needs to apply discovery by the authority of the court (by subpoena) to obtain facts from the unwilling third party Mr. Chavez, who has been made aware of the need for such a deposition.

35.     It is believed that Mr. Chavez will explain the 100 or so e-mail messages that he exchanged with the Defendant.  Further, a sworn statement from Mr. Chavez will demonstrate that Mr. Chavez has repeatedly told the Defendant that he has had nothing to do with the Plaintiff.  An appropriate subpoena can be served upon the e-mail messaging provider of Mr. Chavez to acquire e-mail messages that demonstrate the party Manuel Chavez had no working, collaborative or other such relationship with the Plaintiff – a point which is the basis of much of the Defendant's supporting rationale for his defamatory and slanderous statements.

36.     The Plaintiff has made a diligent effort to obtain the cooperation of Mr. Chavez to provide such a statement, the Defendant has been provided copies of e-mail messages to this effect.

### *Corean Elizabeth Stoughton*

37.     The Plaintiff needs additional time to arrange for the subpoena and deposition of Ms. Corean Elizabeth Stoughton, Hanover, Maryland.  Ms. Stoughton appears to have had extensive contact with the Defendant and a 14-month love affair with George Webb Sweigert.  The Plaintiff needs to apply discovery by the authority of the court (by subpoena) to obtain facts from the unwilling third party Ms. Stoughton, who has been made aware of the need for such a deposition.

38.     Ms. Stoughton can corroborate the actions of George Webb immediately prior to the so-called Port of Charleston "dirty bomb hoax" of June 14th, 2017.  Ms. Stoughton also had access to all e-mail message accounts, YouTube accounts, PayPal accounts, PATREON accounts and Twitter accounts maintained by George Webb Sweigert.  Evidence to be collected from Ms. Stoughton will demonstrate that George Webb has not been cooperating or working with the Plaintiff, despite the rerepeated conflagrations pushed by the Defendant.

39.    An appropriate subpoena can be served upon the e-mail messaging provider of Ms. Stoughton to acquire e-mail messages that demonstrate the party George Webb has no working, collaborative, or other such relationship with the Plaintiff – a point which is the basis of much of the Defendant's supporting rationale for his defamatory and slanderous statements.

40.    The Plaintiff has made a diligent effort to obtain the cooperation of Ms. Stoughton to provide such a statement, the Defendant has been provided copies of e-mail messages to this effect.

### George Webb Sweigert

41.    The Plaintiff needs additional time to arrange for the subpoena and deposition of Mr. George Webb Sweigert, Detroit, Michigan.  The Plaintiff needs to apply discovery by the authority of the court (by subpoena) to obtain facts from the unwilling third party Mr. Webb-Sweigert, who has been made aware of the need for such a deposition.

42.    The Plaintiff has made a diligent effort to obtain the cooperation of Mr. Webb-Sweigert to provide such a statement, the Defendant has been provided copies of e-mail messages to this effect.

### Search for Supporting Social Media Content

43.    The additional discovery time is needed to challenge the Defendant's weak reassurances to the Court about his defamatory, slanderous, and libelous statements.  As the Court supervised and commenced discovery, the Court should fashion specific questions around issues as have been articulated in the forgoing paragraphs.

44.    The Defendant has not adequately explained the supporting rationale for the conclusions that have been drawn by the Defendant with regards to his statements.  The Court should not rely on the Defendant's goodwill to provide superficial answers to the statements in question.  The

Plaintiff will require a further amplification of these statements to properly examine the Defendant's supporting rationale.  Otherwise, the Court will be forced to accept the current assurances of the Defendant, which do not speak to good faith.

## LAW AND ARGUMENT

45.     The purpose of Rule 56(d) is to protect non-movants from being 'railroaded' by premature summary judgment motions.  This motion arises from the actions of an uncooperative and recalcitrant adversary who has gridlocked discovery.  The Defendant has been unreasonable and has failed to adequately comply with discovery obligations.

46.     Without further discovery, to present facts necessary to oppose the motion for summary judgment, the Plaintiff remains completely handicapped.  Had it not been for the 100 days of cunning postponements, timed to take the JASON GOODMAN YouTube channel offline, the Plaintiff would not be in this present position.

47.     "The non-moving party must have 'had the opportunity to discover information essential to his opposition' to the motion for summary judgment," *Trebor Sportswear Co. v. The Limited Stores, Inc.,* 865 F.2d 506, 511 (2d Cir. 1989).

48.     The Plaintiff has attempted to obtain material facts from three key witnesses: Manuel Chavez, III, Corean Elizabeth Stoughton and George Webb Sweigert.  All have been uncooperative.  *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)

49.     Pursuant to F.R.C.P. Rule 56(d), if a party served with a motion for summary judgment shows, by affidavit or declaration, that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) defer considering the motion or deny it, (2) allow the non-moving party time to obtain affidavits or declarations or to take discovery, or (3) issue any other appropriate order.

50.     Summary judgment is warranted "only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. Rule 56.

51.     Rule 56(d) authorizes district courts to defer ruling on a motion for summary judgment— or to deny the motion altogether—"[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." F.R.C.P. 56(d)(1); see *Meloff v. N.Y. Life Ins. Co.,* 51 F.3d 372, 374-75 (2d Cir. 1995) (finding the district court was "over-hasty in granting [summary] judgment" and vacating the district court's order where the nonmovant filed an affidavit pointing out the need for further discovery in opposing the motion).

52.     Summary judgement is not warranted in this lawsuit without additional discovery. Summary judgment is only appropriate when there is no genuine issue with regard to any material fact, and the moving party is entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Stated otherwise, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). This is not the case here.

53.     The party seeking summary judgment bears the burden of showing "that the undisputed facts establish [its] right to judgment as a matter of law." *Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002).  This showing cannot be made without these additional discovery materials.

54.     The duty of the court is to determine whether there are issues to be tried; in making that determination, the court must draw all inferences in favor of the party opposing summary judgment, viewing the factual disputes in the light most favorable to that party. *Phaneuf v. Fraikin,* 448 F.3d 591, 595 (2d Cir. 2006). Thus, if "reasonable minds could differ" as to the

weight of the evidence, or the evidence in the record suggests reasonable inferences in favor of the non-moving party, "the moving party simply cannot obtain a summary judgment." *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997) (internal quotation, citation, and alteration omitted).

## CONCLUSION

In deciding this matter, the Court should consider the 100-day cunning foot-dragging employed by the Defendant to frustrate discovery. The Defendant also placed his YouTube channel with 2,333 videos in a voluntary offline status to further handicap discovery. *Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372 (2d Cir. 1995) (vacating grant of summary judgment where plaintiff's 56(f) affidavit demonstrated defendant's obstructive, dilatory responsiveness to discovery requests).

Therefore, the Court should issue a sixty (60) day continue to continue discovery.

Signed this second day of June (6/2) of two thousand and twenty-one (2021) under penalties of perjury.

*D. Sgt*

*D. GEORGE SWEIGERT*
*GENERAL DELIVERY*
*NEVADA CITY, CA 95959-9998*
*SPOLIATION-NOTICE@MAILBOX.ORG*

## CERTIFICATE OF SERVICE

The undersigned hereby attests under penalties of perjury that copies of this communication have been sent via electronic mail message to the following parties on the second day of June (6/2), two thousand and twenty-one (2021).

| Clerk of the Court, Room 200 | Jason Goodman, CEO |
| temporary_pro_se_filing@nysd.uscourts.gov | truth@crowdsourcethetruth.org |

*D. GEORGE SWEIGERT*
*Pro Se Non-Attorney*
*GENERAL DELIVERY*
*NEVADA CITY, CA 95959*