USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/30/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

D. GEORGE SWEIGERT,

                Plaintiff,

-against-

JASON GOODMAN,

                Defendant.

18-CV-8653 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

On December 8, 2020, Plaintiff George Sweigert filed a motion for a preliminary injunction pursuant to Sections 50 and 51 of the New York Civil Rights Law. Am. Motion, Dkt. 174. A year before the motion was filed, the Court had referred this matter to Magistrate Judge Aaron for general pretrial management and for the preparation of reports and recommendations ("R&Rs") on any dispositive motions. Referral, Dkt. 89; see also 28 U.S.C. § 636(b). On December 28, 2020, Judge Aaron issued a report and recommendation, recommending that Sweigert's motion for a preliminary injunction be denied. R&R, Dkt. 181. On January 5, 2021, Sweigert filed objections to the R&R. Objections, Dkt. 185. For the following reasons, the Court adopts the R&R in full, and the preliminary injunction is DENIED.

## BACKGROUND

As the Court has explained in the past, this action "involves two *pro se* litigants whose occupations appear to consist chiefly of concocting outlandish conspiracy theories and accusing one another of criminal conduct and other misbehavior on the internet." Order, Dkt. 140 at 1; *see also* Order, Dkt. 87; Order, Dkt. 175. Pertinent to this motion, Sweigert alleges that Jason Goodman violated his statutory right of privacy as codified in Sections 50 and 51 of the New York Civil Rights Law. *See* Second Amended Compl. ("SAC"), Dkt. 88 ¶¶ 88–110 (alleging

violations of N.Y. Civ. Rights Law §§ 50–51); First Supp. Compl., Dkt. 150 ¶¶ 47–50 (same).[1] In order to establish a violation of the statute, a plaintiff must show that "defendant made use, within the state of New York, of plaintiff's name, portrait, or picture 'for advertising purposes or for the purposes of trade' without plaintiff's written consent." *Titan Sports, Inc. v. Comics World Corp.*, 870 F.2d 85, 87 (2d Cir. 1989) (quoting N.Y. Civ. Rights Law § 51). Sweigert alleges that Goodman violated his right to privacy by using Sweigert's name or picture on coffee mugs and tote bags as well as in video podcasts and in the thumbnails, titles, and video descriptions associated with the video podcasts. SAC ¶¶ 95–97, 108; First Supp. Compl. ¶¶ 48, 50.

On December 8, 2020, Sweigert filed a motion for a preliminary injunction, seeking to enjoin Goodman from using his image, name, or likeness on video podcast "wrappers," which he defined as the thumbnails, titles, and video descriptions associated with Goodman's video podcasts. Am. Motion, Dkt. 174 at 4.[2] Sweigert made clear that his motion was limited to the content of the "wrappers" and did not extend to any other allegedly tortious content. *Id.* at 4, 5, 9; Am. Reply, Dkt. 179 at 7; Objections at 20. Goodman opposed the motion. Resp., Dkt. 176.

---

[1] The operative complaint in this matter is the Second Amended Complaint (Dkt. 88), as supplemented by paragraphs 1, 39–45, and 47–50 of the First Supplemental Complaint (Dkt. 150). *See* Order, Dkt. 160 at 5.

[2] Sweigert initially filed a motion for preliminary injunction on November 19, 2020. *See* Motion, Dkt. 168. On December 8, 2020, Sweigert filed an amended motion, which is the motion currently before the Court. *See* Am. Motion, Dkt. 174. In the motion, Sweigert informed the Court that the filing was a duplicate and that the first copy of his amended motion had gotten lost in the mail. *Id.* at 1. The initially-mailed amended motion arrived at the Court about two weeks later. *See* Am. Motion, Dkt. 178.

In the R&R, Judge Aaron "admonishe[d] the Plaintiff to cease and desist from repeatedly filing amended documents, which serve to clog an ECF docket that already contains over 175 entries." R&R, Dkt. 181 at 3 n.6. In his objections, Sweigert contends that the "Magistrate does not understand the problem with postal mail delays." Objections, Dkt. 185 at 19; *see also id.* at 19–20. But Judge Aaron did not admonish Plaintiff for sending a duplicate copy of the amended preliminary injunction motion when it appeared that the initial amended motion had been lost in the mail. Instead, Judge Aaron admonished Plaintiff for repeatedly amending his filings. Plaintiff amended his preliminary injunction motion, *compare* Dkt. 174 *with* Dkt. 168, and he amended his reply in support of his motion, *compare* Dkt. 177 *with* Dkt. 179. The Court joins Judge Aaron's admonishment and notes that in the six months since Judge Aaron entered the R&R, the docket has ballooned to 291 filings. Both parties must refrain from filing excessively, from repeatedly amending their filings, and from filing responses to Court orders and the opposing party in a piecemeal fashion. Failure to adhere to this directive will result in sanctions.

**LEGAL STANDARD**

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *King v. Greiner*, No. 02-CV-5810, 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (citation omitted); *see also Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).

The Court need not consider arguments and factual assertions contained in the objections that were not raised initially before the magistrate judge. *Robinson v. Keane*, No. 92-CV-6090, 1999 WL 459811, at *4 (S.D.N.Y. June 29, 1999) ("These issues were not raised before the Magistrate Judge and therefore were not addressed by him; accordingly, they may not properly be deemed 'objections' to any finding or recommendation made in the Report and Recommendation."); *see also Abu–Nassar v. Elders Futures, Inc.*, No. 88-CV-7906, 1994 WL 445638, at *4 n.2 (S.D.N.Y. Aug. 17, 1994) ("If the Court were to consider [new arguments in an objection], it would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a report is issued to advance additional arguments."). Accordingly, when new arguments or factual assertions are raised for the first time in objections to an R&R, the Court may decline to consider them.

When specific objections are made to the R&R, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). But such objections "may not simply regurgitate the original briefs to the magistrate judge." *Hernandez v. City of New York*, No. 11-CV-6644, 2015 WL 321830, at *2 (S.D.N.Y. Jan. 23, 2015) (internal

citation omitted). To the extent that the party "simply reiterates the original arguments, the Court will review the [R&R] strictly for clear error." *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008); *see also O'Callaghan v. N.Y. Stock Exch.*, No. 12-CV-7247, 2013 WL 3984887, at *1 (S.D.N.Y. Aug. 2, 2013) (collecting cases), *aff'd*, 563 F. App'x 11 (2d Cir. 2014).

An error is clear when the reviewing court is left with a "definite and firm conviction that a mistake has been committed." *See Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) (quoting *McAllister v. United States*, 348 U.S. 19, 20 (1954)).

## DISCUSSION

### I.   Preliminary Injunction Standard

To obtain a preliminary injunction, the moving party must show: (1) either (a) a likelihood of success on the merits of his case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor, and (2) that he is likely to suffer irreparable harm in the absence of the injunction. *See Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 183–84 (2d Cir. 2019); *UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011) (citation and internal quotation marks omitted); *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000).

Judge Aaron correctly recited the preliminary injunction standard in the R&R. *See* R&R at 5. Judge Aaron was also correct that "irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." R&R at 5–6 (citing *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66–67 (2d Cir. 2007) (per curiam) (quoting

*Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005))). *See also Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233–234 (2d Cir. 1999).[3]

Sweigert objects to Judge Aaron's application of the preliminary injunction standard. He contends that the "magistrate should have applied the so-called '*serious questions standard*,' which is an alternative to the 'irreparable harm test,'" and that "proving irreparable damage is not the central question before this Court." Objections at 17 (cleaned up). To support this proposition, Sweigert cites *Sonesta International Hotels Corp. v. Wellington Associates*, a Second Circuit decision from 1973. *See* Objections at 16–17 (citing *Sonesta Int'l Hotels Corp. v. Wellington Assocs.*, 483 F.2d 247, 250 (2d Cir. 1973)). *Sonesta* articulates the preliminary injunction standard as follows:

> The settled rule is that a preliminary injunction should issue only upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Sonesta Int'l Hotels Corp.*, 483 F.2d at 250. Sweigert asserts that, pursuant to this test, Judge Aaron should have assessed only whether Sweigert had demonstrated "sufficiently serious questions" and that any consideration of irreparable harm was in error. Objections at 16–17.

But Sweigert misconstrues the pertinent legal standard. Within a few years of *Sonesta*, courts recognized that plaintiffs "must make a showing of irreparable injury under either branch of the *Sonesta* test." *Ali v. Playgirl, Inc.*, 447 F. Supp. 723, 729 (S.D.N.Y. 1978).[4] Moreover, as

---

[3] Judge Aaron also correctly noted that a preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." R&R at 5 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). *See also Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986) (recognizing that "preliminary injunctive relief is an extraordinary remedy and should not be routinely granted").

[4] Sweigert is aware of this precedent; he cites to this case numerous times in his filings. *See* Am. Reply, Dkt. 179 ¶¶ 23–24; Objections at 18.

5

several courts have concluded, the *Sonesta* test "predated the Second Circuit's modern articulation of the preliminary injunction standard." *Solus Alt. Asset Mgmt. LP v. GSO Cap. Partners L.P.*, No. 18-CV-232, 2018 WL 620490, at *5 n.1 (S.D.N.Y. Jan. 29, 2018); *see also Gold Fields Ltd. v. Harmony Gold Mining Co.*, No. 04-CV-8767, 2004 WL 2710030, at *4 (S.D.N.Y. Nov. 23, 2004) (collecting cases finding that the *Sonesta* test is outdated and of limited value).

Sweigert further asserts that a 2010 Second Circuit case, *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, supports his position that the "serious questions test" is an alternative test that does not require a showing of irreparable harm. Objections at 17–18 (citing *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34–38 (2d Cir. 2010)). Although this case discusses the "serious questions" prong of the preliminary injunction standard, it uses the modern formulation of the test, which expressly requires a showing of irreparable harm. *See Citigroup Glob. Markets, Inc.*, 598 F.3d 30 at 35 ("For the last five decades, this circuit has required a party seeking a preliminary injunction to show (a) irreparable harm *and* (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.") (cleaned up) (emphasis added). Nothing in this case, or in any other case cited by Sweigert,[5] casts doubt on the preeminence of the requirement that a party seeking a preliminary injunction must show

---

[5]   Sweigert further argues that "irreparable harm need not be demonstrated" with respect to claims brought pursuant to N.Y. Civ. Rights Law §§ 50–51. Objections at 19. To support this argument, Sweigert cites an inapposite case discussing the requirements of a permanent injunction, to be issued were a plaintiff to prevail pursuant to N.Y. Civ. Rights Law §§ 50–51. *See* Objections at 19 (citing *Onassis v. Christian Dior-New York, Inc.*, 122 Misc. 2d 603, 607 (N.Y. Sup. Ct. 1984), *aff'd*, 110 A.D.2d 1095 (1st Dep't 1985)). Although a party that prevails pursuant to N.Y. Civ. Rights Law §§ 50–51 has "an absolute right to [an] injunction, regardless of the relative damage to the parties," *see id.*, that legal point is irrelevant to the matter at hand. Sweigert is seeking a preliminary and not a permanent injunction, and no party has yet prevailed in this action.

irreparable harm.[6]

In short, none of Sweigert's objections to the preliminary injunction standard carries any weight. Before a preliminary injunction may be issued, the moving party must demonstrate irreparable harm.

## II.     Sweigert Failed to Demonstrate Irreparable Harm

The Court agrees with Judge Aaron that Sweigert has failed to demonstrate irreparable harm. Judge Aaron is correct that "[a] delay in seeking injunctive relief undermines a party's claim of irreparable harm." R&R at 6 (citing *Silber v. Barbara's Bakery, Inc.*, 950 F. Supp. 2d 432, 439 (E.D.N.Y. 2013)); *see also Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) ("Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights, [and a] [d]elay in seeking enforcement of those rights . . . tends to indicate at least a reduced need for such drastic, speedy action."). Judge Aaron is right that there was a substantial gap of time between the allegedly offending conduct and Sweigert's motion for a preliminary injunction. In his motion, Sweigert provides an example of an offending wrapper, which he claims was produced by Goodman on March 1, 2019. Am. Motion, Dkt. 174 ¶¶ 9–10. Moreover, in the SAC, Sweigert includes additional examples of offending wrappers, which were utilized in connection with videos uploaded five or six months before the SAC was filed in September 2019. SAC ¶¶ 95–97, 108. With more than a year and a half between the offending conduct and the November 8, 2020, motion for a preliminary injunction, Judge Aaron correctly concluded that Sweigert's "delay . . . in seeking injunctive relief undermines his claim of irreparable harm." R&R at 6.

---

[6]     *See also Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66–67 (2d Cir. 2007) ("Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, and, accordingly, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.") (cleaned up).

Sweigert objects to this finding. He argues that the Court should consider his November 2018 motions for a preliminary injunction, *see* Dkts. 68, 69, 71, which were denied by the Court in August 2019, *see* Order, Dkt. 87. *See* Objections at 6–7. But those previously filed motions are irrelevant. Sweigert still waited over a year after the denial of his 2018 motions to file the motion for a preliminary injunction currently before the Court. Moreover, many of the examples of the allegedly offending wrappers provided by Sweigert occurred after he filed his November 2018 motions but well before he filed this motion. *See, e.g.*, Am. Motion, Dkt. 174 at 9–10 (referencing a wrapper released on March 1, 2019). If Sweigert truly believed those wrappers were causing him irreparable harm, he should have filed his motion for a preliminary injunction sooner.[7]

But even if the Court were to find Sweigert's motion timely, upon a *de novo* review, the Court would still conclude that he has not demonstrated the requisite irreparable harm. In the motion, Sweigert characterizes his harm as "irreparable career damage." Am. Motion, Dkt. 174 at 13. Sweigert claims that Goodman is targeting his career as an accredited certified ethical hacker. *Id.* ¶ 21. Sweigert, who has allegedly published articles regarding cyber security-related topics, *see id.* ¶¶ 24, 27, alleges that "[p]eer-reviewed [sic] security experts researching in the cyber security field as [sic] just as apt to stumble across the Defendant's grotesque creations as they could discover serious technical articles requiring peer review written by the Plaintiff." *Id.* ¶ 26. Sweigert claims that this "is directly and indirectly damaging to the Plaintiff's career,

---

[7]   The Court does not credit Sweigert's contention that he was unaware that the November 2018 motions for preliminary injunction had been denied. *See* Objections at 6–7; Letter, Dkt. 182. The Court's August 20, 2019, Order could not have been clearer. *See* Order, Dkt. 87 at 13 ("All other pending motions by either party . . . [are] denied as moot."). Moreover, Sweigert eventually did file a new motion for preliminary injunction, clearly evidencing his understanding that his prior motions were not awaiting adjudication and that, to obtain injunctive relief, he was required to file a new motion.

business abilities, technical standing in the community, etc. [and] has a direct impact on Plaintiff's professional reputation and long-term career prospects." *Id.* ¶ 27.

But such career-related harms can be addressed with money damages and do not warrant the extraordinary remedy of injunctive relief. *See Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) ("The injury must be one requiring a remedy of more than mere money damages [and] [a] monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation."); *Doe v. U.S. Merch. Marine Acad.*, 307 F. Supp. 3d 121, 142–43 (E.D.N.Y. 2018) ("A preliminary injunction is generally not appropriate where monetary damages will serve as adequate compensation."). Were Sweigert to prevail on the merits, the Court would calculate financial damages based on discrete career opportunities that Sweigert can prove he lost due to Goodman's actions. In instances like this one, where financial harm is readily calculable, plaintiffs may be made whole by money damages and do not require preliminary injunctive relief. *See Piercy v. Fed. Rsrv. Bank of N.Y.*, No. 02-CV-5005, 2003 WL 115230, at *6 (S.D.N.Y. Jan. 13, 2003) (holding that, in the case before it, "loss of continued employment and . . . continuing damage to reputation . . . are not irreparable injuries" and "can be redressed by monetary damages"). Because a monetary award can adequately compensate Sweigert, a preliminary injunction is not appropriate.[8]

---

[8] The Court declines to adopt Judge Aaron's finding that "Plaintiff has made no evidentiary showing that the wrappers are causing him harm independent of any harm based on the fact that there are unflattering videos about him that are publicly available on the internet." R&R at 7. Judge Aaron is correct that if a preliminary injunction would not remedy the alleged irreparable harm, then injunctive relief would be inappropriate. *See Sierra Club v. U.S. Dep't of Energy*, 825 F. Supp. 2d 142, 153 (D.D.C. 2011) ("It would make little sense for a court to conclude that a plaintiff has shown irreparable harm when the relief sought would not actually remedy that harm."). Although Sweigert is only seeking a preliminary injunction with respect to the video podcast wrappers, *see* Am. Motion, Dkt. 174 at 4, 5, 7, 9, he argues that the wrappers are essential to how individuals find the allegedly offending videos in the first place. *See* Am. Reply, Dkt. 179 ¶ 5 ("The Defendant's use of click-bait wrappers (thumbnails, video titles and video descriptions) is designed to leverage the Google Search Engine Optimization (S.E.O.) program . . . ."). If prospective employers were unable to find the alleging offending content when they conducted a Google search of Sweigert's name, the alleged damage to Sweigert's career caused by the underlying videos would be avoided.

In short, even upon a *de novo* review, Sweigert has failed to demonstrate irreparable harm, the single most important prerequisite for injunctive relief.

### III.     Sweigert Failed to Demonstrate a Likelihood of Success on the Merits

Even if Sweigert had demonstrated irreparable harm, the Court adopts Judge Aaron's finding that Sweigert failed to show a likelihood of success on the merits.  To prevail on a claim pursuant to N.Y. Civil Rights Law §§ 50–51, a plaintiff must demonstrate that "defendant made use, within the state of New York, of plaintiff's name, portrait, or picture 'for advertising purposes or for the purposes of trade' without plaintiff's written consent." *Titan Sports, Inc.*, 870 F.2d at 87 (quoting N.Y. Civ. Rights Law § 51).  Goodman concedes that the only element at issue is whether he used Sweigert's name and picture for advertising or trade purposes.  Resp. at 2.

Courts construe the advertising or trade purposes requirement narrowly.  *See Foster v. Svenson*, 128 A.D.3d 150, 155–56 (1st Dep't 2015) ("Courts . . . have refused to adopt a literal construction of these terms because the advertising and trade limitations of the privacy statute were drafted with the First Amendment in mind."); *Ann-Margret v. High Soc'y Mag., Inc.*, 498 F. Supp. 401, 404 (S.D.N.Y. 1980) (construing trade and advertising purposes narrowly "so as to avoid any conflict with the free dissemination of thoughts, ideas, newsworthy events, and matters of public interest guaranteed by the First Amendment") (internal quotation marks omitted).

The Court finds no error in Judge Aaron's analysis that, at the preliminary injunction stage, "Plaintiff may not merely rely upon his pleading allegations," and that Sweigert "must come forth with proof that his picture and name were being used for purposes of advertising or trade . . . ." R&R at 7–8 (citing *Kadant, Inc. v. Seeley Mach., Inc.*, 244 F. Supp. 2d 19, 40 (N.D.N.Y. 2003)); *see also Stern's Miracle-Gro Prods., Inc. v. Shark Prods., Inc.*, 823 F. Supp.

10

1077, 1082 (S.D.N.Y. 1993).  For the reasons discussed below, Sweigert has not met his burden of proof.

### A. Advertising or Trade Purposes

"Advertising purposes has been defined as use in, or as part of, an advertisement or solicitation for patronage of a particular product or service, and trade purposes involves use which would draw trade to the firm."  *Mason v. Jews for Jesus*, No. 06-CV-6433, 2006 WL 3230279, at *3 (S.D.N.Y. Nov. 8, 2006) (cleaned up).  In his motion, Sweigert alleges that the video podcast wrappers are used for "solicitation for members of the public to become paying 'patrons'" by making payments to services like PATREON and SubscribeStar.  Am. Motion, Dkt. 174 ¶ 5; *see also id.* ¶ 20 (alleging that the wrappers are used "to promote video podcast content that solicits credit card payment third-party payment sites PATREON and SubscribeStar 'paywalls' (a techno industry term that is a spin-off of 'firewall')").

The Court finds no clear error in Judge Aaron's finding that because the representative sample of wrappers in Sweigert's motion do not make any solicitation to the public to become Goodman's patrons, Sweigert had not demonstrated that the wrappers were used for advertising or trade purposes.  R&R at 8.  *See also Mason*, 2006 WL 3230279, at *4 ("The advertising purposes prong of N.Y. Civ. Rights Law §§ 50-51 is not violated where the use of plaintiff's name is not designed *primarily* to solicit purchasers for defendant's products.") (cleaned up) (emphasis added).

In his objections, Sweigert claims that Judge Aaron "does not appear to understand the nuances of podcast monetization on YouTube, LLC."  Objections at 7.  Sweigert has now abandoned his prior claims that the wrappers are used to recruit patrons to make credit card payments on third-party platforms like PATREON and SubscribeStar.  He now argues instead

11

that YouTube's monetization policies mean that "each click by a public viewer produces an advertiser monetized micro-payment to the podcast creator (Defendant)." Objections at 9; *see also id.* ("Thus 'click-bait' imagery and titles lure viewers to 'click' on the thumbnail or title 'wrapper' so the Defendant can get paid.").[9]

The Court declines to consider Sweigert's arguments about YouTube's monetization policies.[10] "An objecting party may not raise new arguments that were not made before the Magistrate Judge." *Robinson*, 1999 WL 459811, at *4 (collecting cases); *United States v. Walker*, 1994 WL 759866, at *2 (W.D.N.Y.1994) ("In conducting a *de novo* review, a district court will ordinarily not consider legal arguments and/or evidentiary material which could have been, but were not, presented to the magistrate judge.") (citation omitted). Sweigert could have explained the relationship between the wrappers, click-bait, and YouTube's monetization policies in his motion, but he chose not to. Although Sweigert is welcome to make such arguments in any dispositive motions or at trial, the Court will not consider them here.

In short, even if Sweigert had shown irreparable harm, because he has not demonstrated a likelihood of success on his claims that the wrappers were used for advertising or trade purposes, a preliminary injunction remains an inappropriate remedy.

---

[9] When arguing for the motion before Judge Aaron, Sweigert failed to explain or even reference YouTube's monetization policies in his motion or reply brief. Although his briefs explained the concepts of click-bait and search engine optimization, *see* Am. Reply, Dkt. 179 at 7, 8, 16, Sweigert failed to explain how "clicks" generate income for Goodman. Sweigert's arguments instead relied on Goodman's alleged solicitation of patrons to pay him via third-party platforms. *See* Am. Motion, Dkt. 174 ¶¶ 5, 20.

[10] For the same reasons, the Court declines to consider Sweigert's otherwise compelling analogy that the wrappers are like book covers. *See* Objections at 7, 9–10 (citing *Yasin v. Q-Boro Holdings, LLC*, 27 Misc. 3d 1214(A) (Kings Cnty. Sup. Ct. 2010)).

### B. The Newsworthy Exception

Sweigert has further failed to show a likelihood of success on his claim that the wrappers do not fall within the statute's newsworthy privilege. "New York Courts have consistently refused to construe the terms 'advertising' or 'purposes of trade' as encompassing publications concerning newsworthy events or matters of public interest." *Mason*, 2006 WL 3230279, at *3 (cleaned up). And as Judge Aaron correctly noted, there are "First Amendment considerations inherent in the determination of newsworthiness." R&R at 8.

Sweigert objects to the application of the newsworthy privilege and alleges that Judge Aaron offers a "flawed" and "simplistic view" of the privilege. Objections at 11. Upon a *de novo* review, the Court finds that the newsworthy privilege is construed broadly, *see Messenger ex rel. Messenger v. Gruner + Jahr Printing & Publ'g*, 94 N.Y.2d 436, 441 (2000), and includes materials created for "entertainment and amusement," *Rogers v. Grimaldi*, 695 F. Supp. 112, 117 (S.D.N.Y. 1988). *See also Foster*, 128 A.D.3d at 156 ("[T]he exemption has been applied in cases addressing written and nonwritten materials published or televised for the purpose of entertainment.") (collecting cases); *Univ. of Notre Dame Du Lac v. Twentieth Century-Fox Film Corp.*, 22 A.D.2d 452, 458 (1st Dep't 1965). Sweigert conceded that Goodman uses the wrappers for entertainment purposes. *See* Objections at 12 (noting that Goodman "pushes 'humilitainment'"[11] and that Goodman has admitted that the wrappers are "comedy"). Accordingly, the newsworthy privilege may provide Goodman with a legal defense to Sweigert's claims.

Sweigert further argues that the newsworthy privilege does not apply, because the Sweigert-related content in Goodman's wrappers is patently false. Am. Reply ¶¶ 16–28;

---

[11]  The Court assumes that "humilitainment" is a combination of "humiliation" and "entertainment."

Objections at 14–16. Judge Aaron did not expressly address this argument in the R&R and so the Court conducts a *de novo* review of this contention. Pursuant to New York law, false and damaging use of a plaintiff's likeness (here, the wrappers) to illustrate newsworthy content (here, allegedly the video podcasts) does not fall under the newsworthy exception when there is no relationship between the likeness and the associated content. *See Messenger*, 94 N.Y.2d at 446 (citing *Finger v. Omni Publ'ns Int'l, Ltd.*, 77 N.Y.2d 138 (1990); *Arrington v. N.Y. Times Co.*, 55 N.Y.2d 433 (1982); *Murray v. N.Y. Mag. Co.*, 27 N.Y.2d 406 (1971)). Pursuant to a separate line of cases, "substantially fictional works" that are "nothing more than attempts to trade on the persona" and are "infected with fiction, dramatization or embellishment" also do not fall under the newsworthy privilege. *See Messenger*, 94 N.Y.2d at 446 (citing *Spahn v. Julian Messner, Inc.*, 18 N.Y.2d 324, *vacated*, 387 U.S. 239, *adhered to on remand*, 21 N.Y.2d 124 (1967); *Binns v. Vitagraph Co. of Am.*, 210 N.Y. 51, 53 (1913)).

Upon a *de novo* review, the Court finds that Sweigert has not demonstrated that he is likely to succeed on the merits of either exception to the newsworthy privilege. The Court agrees with Sweigert that the wrappers include false information about Sweigert. *See* Order, Dkt. 175 at 4 (noting that this matter concerns "outlandish conspiracy theories"). But Sweigert has not demonstrated that there is no relationship between the wrappers and the video podcasts themselves. *See Howell v. N. Y. Post Co.*, 81 N.Y.2d 115, 123 (1993) (requiring "a real relationship" to the underlying article for the newsworthy exception to apply). In fact, in his motion, Sweigert does not engage in any serious discussion of the contents of the video podcasts. *See* Am. Motion, Dkt. 174 at 5 ("This request for injunctive relief does not rely on, or challenge, the actual content of the Defendant's podcast videos that are described in the SAC (Dkt. 88)."). With respect to the second line of cases, Sweigert has not demonstrated that Goodman's

wrappers are "nothing more than attempts to trade on [Sweigert's] persona," *see Messenger*, 94 N.Y.2d at 446, as opposed to attempts at entertainment and comedy.  Although Sweigert may be able to prevail on such arguments at the merits stage of the litigation, Sweigert has not done so here.

In short, although the Court takes no position on whether Sweigert will prevail on the merits, at this stage of the litigation, he has not demonstrated a likelihood of success on his claims.

### IV.  Sweigert Failed to Demonstrate Sufficiently Serious Questions Going to the Merits and a Balance of Hardships Tipping Decidedly in His Favor

Following a showing of irreparable harm, the moving party must demonstrate "either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Mkts., Inc.*, 598 F.3d at 35.  But the serious questions prong "is limited to situations where [courts] cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Id.* (citing *F. & M. Schaefer Corp. v. C. Schmidt & Sons, Inc.*, 597 F.2d 814, 815–19 (2d Cir. 1979)).

After finding that Sweigert had not demonstrated a likelihood of success on the merits, Judge Aaron found that, given the First Amendment considerations at play, "the balance of equities at present favors Defendant, such that preliminary injunctive relief should be denied." R&R at 9.  Sweigert does not expressly object to Judge Aaron's finding that the balance of hardships does not "decidedly" tip towards Sweigert.  Accordingly, the Court reviews this finding for clear error. *See King*, 2009 WL 2001439, at *4.  The Court finds no clear error in Judge Aaron's conclusion that, even if Sweigert had shown irreparable injury, he would not be

entitled to a preliminary injunction because the First Amendment considerations would tip the balance of hardships towards Goodman.  Accordingly, here too Sweigert has failed to demonstrate that he has made the requisite showing to support a preliminary injunction.

## CONCLUSION

Because Sweigert has not demonstrated irreparable harm, a likelihood of success on the merits, or that the balance of hardships tip decidedly in his favor, the Court adopts Judge Aaron's R&R, and Sweigert's motion for a preliminary injunction is DENIED.

The Clerk of Court is respectfully directed to close the open motions at docket entries 168, 174, and 178.  The Clerk is further directed to mail a copy of this Order to the *pro se* Defendant and to note the mailing on the docket.

**SO ORDERED.**

Date:  June 30, 2021
      New York, New York

**VALERIE CAPRONI**
**United States District Judge**