**U.S. DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| SWEIGERT | CIVIL CASE #: |
|---|---|
| V. | 1:18-CV-08653-VEC |
| GOODMAN | JUDGE VALERIE E. CAPRONI |

<u>**MEMORANDUM OF LAW**</u>

<u>**IN SUPPORT OF PLAINTIFF'S**</u>

<u>**OPPOSITION TO RULE 56 SUMMARY JUDGMENT (ECF 279, 280)**</u>

<u>**(EXHIBITS ACCOMPANIES PLEADING)**</u>

The undersigned hereby attests that this is a verified pleading and is submitted in OPPOSITION to Defendant's RULE 56 SUMMARY JUDGMENT motions this eleventh day of July (7/11), two thousand and twenty-one (2021).  This is a verified pleading.  A certificate of service appears on the last page.

*D. GEORGE SWEIGERT*
*Pro Se Non-Attorney*
*GENERAL DELIVERY*
*NEVADA CITY, CA 95959*

i

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S LOCAL RULE 56.1 SUMMARY JUDGMENT**


## TABLE OF CONTENTS

**DEFINITIONS** ................................................................................................................ vi

**BACKGROUND** ............................................................................................................. 1

**LITIGATION HISTORY** ............................................................................................... 5

**CONCLUSION** ............................................................................................................. 29

## <u>LIST OF AUTHORITIES</u>

**Cases**

*American Trucking Assn's v. Smith,* 496 U.S. 167, 179–86 (1990) ................................................ 5

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986) .................................................... 7, 11

*Applegate v. Top Assoc., Inc.,* 425 F.2d 92, 97 (2d Cir. 1970).................................................. 2, 3

*Bolden v. Morgan Stanley Co*., 765 F.Supp. 830, 834 (S.D.N.Y. 1991) ...................................... 5

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,* 447 U.S. 557, 566 (1980).................. 18

*Chevron Oil Co. v. Huson,* 404 U.S. 97, 106-07, 92 S. Ct. 349, 30 L. Ed. 2d 296 (1971)............. 4

*Clark v. Schuylerville Cent. Sch. Dist*., 807 N.Y.S.2d 175, 176-77 (3d Dep't 2005).................. 13

*Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir. 1993) ...................................................... 6

*Compare Gleason v. Jandrucko,* 860 F.2d 556, 560 (2d Cir. 1988)............................................. 13

*DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir.)........................................................... 7

*Egiazaryan v Zalmayev*, 880 F Supp 2d 494, 503 [SD NY 2012]................................................ 10

*Elias v. Rolling Stone LLC,* 872 F.3d 97, 109 (2d Cir. 2017)........................................... 12

*Enigma Software Grp. USA, LLC v Bleeping Computer LLC*, F Supp 3d , 2016 WL 3773394,

   *11 [SD NY 2016] ........................................................................................ 10

*Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001)......................................... 6

*Giuffre v. Maxwell*, 165 F. Supp. 3d 147, 154 (S.D.N.Y. 2016) .................................... 27

*Gross v New York Times Co.,* 82 NY2d 146, 155-156 [1993] ....................................... 24

*Hawkins v. Shapiro*, 9:06-CV-1518 (NAM) (GHL) (N.D.N.Y. Nov. 7, 2007)........................... 3

*Herbert v. Lando,* 441 U.S. 153, 164 n.12 (1979) ................................................. 5

*Herbert v. Lando,* 441 U.S. 162, 164 n. 12 (1979) .................................................. 10

*Herlihy v. Metro. Museum of Art*, 214 A.D.2d 250, 260 (1st Dep't. 1995)..................................... 4

*Hopkins v. DiBella,* 546 U.S. 939 (2005) ..................................................................................... 7

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd. ("ITM II"),* No. 15-cv-2457 (GHW), 2019 WL

    1244493, at *8 (S.D.N.Y. Mar. 18, 2019)................................................................................. 13

*Jeffreys v. City of New York,* 426 F.3d 549, 554-55 (2d Cir. 2005)................................................ 4

*La Dolce Vita Fine Dining Co. v. Zhang Lan*, 1:19-mc-00536 (ALC) (S.D.N.Y. Mar. 4, 2020) .. 5

*La Liberte v. Reid,* 966 F.3d 79 (2d Cir. 2020)............................................................................... 6

*Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) ........................ 7

*McDougal v Fox News Network, LLC, No.* 1:19-CV-11161 (MKV), 2020 WL 5731954

    [S.D.N.Y. Sept. 24, 2020] ..................................................................................................... 23

*Mr. Chow of New York v. STE Jour Azur S.A.,* 759 F.2d 219, 224 (2d Cir. 1985)....................... 11

*Oakley v. Dolan*, No. 20-642 (2d Cir. 2020) ................................................................................. 14

*Palin v. N.Y. Times Co.*, 482 F. Supp. 3d 208 (S.D.N.Y. 2020) ................................................... 23

*Palin v. New York Times Co.,* 940 F.3d 804, 807 (2d Cir. 2019) at 814 ...................................... 23

*Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d. Cir. 2004)................................................ 3

*Project Veritas v. N.Y. Times Co*., Index No. 63921/2020, 13 (N.Y. Sup. Ct. 2021)................... 23

*Project Veritas v. N.Y. Times Co.,* Index No. 63921/2020, 15 (N.Y. Sup. Ct. 2021).................... 5

*Sharon v. Time, Inc.,* 599 F.Supp. 538, 581 (S.D.N.Y. 1984) ........................................................ 9

*Spence v. Maryland Cas. Co.,* 803 F. Supp. 649, 664 (W.D.N.Y. 1992) ........................................ 3

*Sprewell v. NYP Holdings, Inc.,* 772 N.Y.S.2d 188, 192-93 (N.Y. Sup. Ct. 2003)............... 12, 21

*Steele v. Goodman*, 3:17-cv-00601-MHL, Eastern District of Virginia ................................. 14, 15

*Steinhilber v. Alphonse,* 501 N.E.2d 550, 552-53 (N.Y. 1986) ................................................... 16

*Steinhilber v. Alphonse*, 68 N.Y.2d 283....................................................................................... 18

*Tota v. Bentley,* 379 F. App'x 31, 32–22 (2d Cir. 2010) ................................................. 4

*Tross v. Ritz Carlton Hotel Co.,* 928 F.Supp.2d 498, 503-04 (D. Conn. 2013) ............................. 4

*Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) ........................................ 6

*Yasin v. Q-Boro Holdings, LLC*, No. 13259109, 2010 WL 1704889, at *2 (N.Y. Sup. Ct. Apr.

23, 2010) ................................................................................................ 18

## Statutes

Civil Rights Law §70-a and §76-a .......................................................................... 1

CVR §76-A ................................................................................................ 5

N.Y. Civil Rights Law (CVR) §70-a ........................................................................ 4

## Rules

Federal Rules of Civil Procedure Rule 56 .................................................................. 1

Local Rule 56.1(c) ........................................................................................ 1

Rule 56(c) ................................................................................................ 1

## Treatises

50 Am. Jur. 2d Libel and Slander § 455 (1970) ............................................................ 5

# **DEFINITIONS**

| | |
|---|---|
| Anti-SLAPP | Anti - Strategic Lawsuit Against Public Participation |
| Aff't | Plaintiff's Affidavit or Declaration filed with this document |
| Exhibit A - X | Indicates an exhibit appears in the volume for A exhibits that accompany the PLAINTIFF'S AFFIDAVIT |
| Exhibit C - X | Indicates an exhibit appears in the volume for C exhibits that accompany the COUNTER STATEMENTS |
| Exhibit M - X | Indicates an exhibit appears in the volume for M exhibits that accompany the MEMORANDOM OF LAW |
| F.R.C.P. | Federal Rules of Civil Procedure |

## BACKGROUND

1.      The Plaintiff (nonmoving party) respectfully **RESPONDS** to Defendant's summary

judgement motion (**ECF 239**), authorized by New York's Civil Rights Law §70-a and §76-a (aka

anti-SLAPP law a "Strategic Lawsuit Against Public Participation.") which was substantively

applied under Federal Rules of Civil Procedure (F.R.C.P.) Rule 56 (**ECF 277, 278, 279, 280**

[prepared by legal counsel for the *pro se* Defendant]), these papers are known in the aggregate as

the "anti-SLAPP motion" or "summary judgment motion".

2.      There can be no question that disputed issues of material facts preclude granting

summary judgment based on these pleading papers.  Had the Defendant worked harder to find

actionable facts perhaps his papers would not appear to the layman to be a "big bun" presented to

the Court, that is left asking "where's the beef"?

### *DEFENDANT'S FATALLY FLAWED "RULE 56.1 UNDISPUTED FACTS"*

*3.*      As a preliminary matter, the Defendant (with assistance of legal counsel) has failed to

meet the requirements of Local Rule 56.1(c), all ninety-nine (99) statements (Undisputed Facts**,**

**ECF 280**) are herein disputed**.**

*4.*      When genuine issues of material fact exist within the meaning of Rule 56(c) summary

judgment is inappropriate.  Instead of providing a "short and concise statement" of material facts,

every asserted "fact" in the Local Rule 56.1 Statement (**ECF 280**) is a rehash quotation from the

Defendant's sham declaration (**ECF 278**).

*5.*      As the Court will see, the Defendant is a most unreliable declarant, and his credibility is

extremely dubious.  To illustrate a sample of the Defendant's misleading assertions provided in a

sworn statement (**ECF 278**), to include:

- the attempted cover-up of a nine (9) month relationship after the Port of Charleston "dirty bomb hoax" (June 14, 2017) with the source of the bomb warning,

- labeling the Plaintiff, a "dead beat dad" based on an e-mail message that lauded the Plaintiff for his generous contributions to his son's child support, etc.

6.      This leaves the Court solely with the Defendant's unreliable statements with little, to no supporting evidence to corroborate his stories.  The Defendant's "RULE 56.1 UNDISPUTED FACTS" (**ECF 280)** rest almost solely on the sham affidavit (DECLARATION, **ECF 278**) overflowing with conclusory statements that lack any supporting evidence or are too general (*Applegate v. Top Assoc., Inc.,* 425 F.2d 92, 97 (2d Cir. 1970) at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.")).

7.      The Court will see how the Defendant continually claims that he has evidence of the Plaintiff's criminal activities but cannot produce such evidence.  Not satisfied, the Defendant telephoned the Police Chief and director of the Emergency Medical System in Plaintiff's vacation community to inform these authorities that the Plaintiff was under a Federal Bureau of Investigation (F.B.I.) investigation.

8.      The Court will see that while the Defendant surrounded himself with lawyers and claimed to be an "*forensic examiner of the evidence*" the Defendant carried-on for years with claims to have turned evidence about the Plaintiff's criminal activities over to "his contacts" at the F.B.I, which was proven false by the Defendant's own words.

9.      As explained in "PLAINTIFF SWEIGERT'S REPLY AND OBJECTIONS TO DEFENDANT'S' LOCAL "RULE 56.1 STATEMENT OF UNDISPUTED FACTS", ECF 280"

all of the Defendant's "undisputed facts" are either (1) immaterial, (2) based on hearsay, (3) are conclusory in nature, and (4) fail to comply with Fed. R. Civ. P. 56(e) generally.

- <u>Immaterial:</u>  A fact is "material" only if it would have some effect on the outcome of the suit.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).
- <u>Hearsay:</u>  See *Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d. Cir. 2004) at 219 ("[Rule 56(e)'s] requirement … that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavits also means that the affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial.");  *Spence v. Maryland Cas. Co.,* 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting affidavit made on "secondhand information and hearsay"), aff'd, 995 F. 2d 1147 (2d Cir. 1993).
- <u>Conclusory in nature.</u>  *Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d. Cir. 2004) at 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted].  *Applegate v. Top Assoc., Inc.,* 425 F.2d 92, 97 (2d Cir. 1970) at 97 (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

10.    Even where an affidavit is nonconclusory, it may be insufficient to create a factual issue where it possesses the following two characteristics: "(1) <u>it constitutes almost the sole or exclusive basis for a disputed issue of fact</u> in the case (or, expressed differently, it is largely unsubstantiated by any other direct evidence); and (2) it is so lacking in credibility that, even after drawing all inferences in the light most favorable to the non-movant, no reasonable jury could find for the non-movant because the testimony is incomplete and/or replete with inconsistencies and improbabilities," [emphasis added] footnote 11 in *Hawkins v. Shapiro*, 9:06-CV-1518 (NAM) (GHL) (N.D.N.Y. Nov. 7, 2007) (provided below, quoted in relevant part)

3

- See, e.g., *Jeffreys v. City of New York,* 426 F.3d 549, 554-55 (2d Cir. 2005) ("[I]n 11 the rare circumstances where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether . . . there are any 'genuine' issues of material fact.."

*11.*     "In this Circuit, a movant's failure to comply with a district court's relevant local rules on a motion for summary judgment permits, but does not require, a court to dispose of that motion." *Tross v. Ritz Carlton Hotel Co.,* 928 F.Supp.2d 498, 503-04 (D. Conn. 2013) (citing *Tota v. Bentley,* 379 F. App'x 31, 32–22 (2d Cir. 2010)).

12.     The unsupported and vicious avalanche of aspersions Defendant casts upon Plaintiff in **ECF 280 (**which speaks to hostile ill will**)** should not distract the Court from the fact that the instant motion cannot come within sight of meeting the standard for an award of summary judgment.

## *RETROACTIVE APPLICATION OF "ACTUAL MALICE" THRESHOLD*
## *CREATES PLAINTIFF'S HANDICAPPED DISCOVERY*

13.     The Plaintiff is handicapped by limited discovery.  "In light of these allegations, Plaintiff was entitled to at least take discovery to further develop evidence of actual malice. See, *Herlihy v. Metro. Museum of Art*, 214 A.D.2d 250, 260 (1st Dep't. 1995)

14.     As outlined in ORDER (**ECF 270**) [**Exhibit M-2**] the Plaintiff was denied additional discovery (**ECF 261**) to establish evidence to the "actual malice" threshold, an inequity imposed by the retroactive application of N.Y. Civil Rights Law (CVR) §70-a or CVR §76-A. Regrettably, the fairness of this inequity will be pursued on appeal.  *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106-07, 92 S. Ct. 349, 30 L. Ed. 2d 296 (1971).  "There is a substantial basis in law to proceed to permit the plaintiff to conduct discovery and to then attempt to meet its higher

standard of proving liability through clear and convincing evidence of actual malice. " *Project Veritas v. N.Y. Times Co.,* Index No. 63921/2020, 15 (N.Y. Sup. Ct. 2021)

15.     Plaintiff's motions for additional discovery have been ignored (**ECF 281, 282**) creating discernible prejudice against the Plaintiff. *La Dolce Vita Fine Dining Co. v. Zhang Lan*, 1:19-mc-00536 (ALC) (S.D.N.Y. Mar. 4, 2020)  Thus producing substantial inequitable results. *American Trucking Assn's v. Smith,* 496 U.S. 167, 179–86 (1990)

16.     Worse yet, the Defendant has failed to fully comply with discovery with an incomplete cache of video podcast files (estimated at 35% compliance).

17.     Therefore, Plaintiff must resort in large part to indirect and circumstantial evidence to prove his claims. The Plaintiff shall do this by using:

> "all the relevant circumstances surrounding the transaction…provided they are not too remote, including threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties, facts tending to show a reckless disregard of the plaintiff's rights, and, in an action against a newspaper, custom and usage with respect to the treatment of news items of the nature of the one under consideration."
> See *Herbert v. Lando,* 441 U.S. 153, 164 n.12 (1979) (quoting 50 Am. Jur. 2d Libel and Slander § 455 (1970))

18.     Such evidence needs to be considered in the aggregate; *Bolden v. Morgan Stanley Co*., 765 F.Supp. 830, 834 (S.D.N.Y. 1991) (denying defendant's motion for summary judgment based on "aggregate of plaintiff's evidence" of actual malice).

## **LITIGATION HISTORY**

19.     This lawsuit was filed 06/14/2018, in South Carolina. The act of commencing an out-of-state lawsuit is not in the purview of New York anti-SLAPP CVR §70-A.  See "was commenced" CVR §70-a.  The case was transferred to the S.D.N.Y ninety-nine (**99**) days later

(9/21/2018 (**ECF 30**)), on **11/16/2018** proceedings were stayed by ORDER **(ECF 65)** (fifty-six (**56**) days after transfer).  **277 days later**, by ORDER of **8/20/2019 (ECF 87)** the Court dismissed the original claims which did not sound in defamation, slander, or libel, rather in "civil RICO, 18 U.S.C. § 1964, or under 42 U.S.C. § 1985" (**ECF 65**).  Anti-SLAPP CVR §70-a, CVR §76-a actions do not apply to non-defamation federal claims.  *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020).  For CVR §70-a, §76-a purposes litigation commenced (09/10/2019) with the Court authorized Second Amended Complaint (**SAC, ECF no. 88**) (followed by a Court authorized First Supplemental Complaint (**FSC, ECF no. 150**) on 09/09/2020).  The magistrate subsequently ordered that the **SAC** to be supplemented by "*paragraphs 1, 39 through 45 and 47 through 50*" of the **FSC** (**ECF 160**).  Both documents (**SAC & FSC**) were fully briefed and survived multiple motions to dismiss and should be considered verified pleadings and are part of the Plaintiff's opposition.  *Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), cert. denied, 536 U.S. 922 (2002); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted]

## **LAW AND ARGUMENT**

**Defendant Published False "Facts" to Bolster Defamatory Opinions with "Actual Malice"**

*20.*     The moving party bears the burden of proving that no genuine factual disputes exist. See *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010)  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual

inferences that could be drawn in favor of the party against whom summary judgment is sought." Id. (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) ).

21.     Proof of false facts is integral to the *actual malice* standard, it has also been held that falsity, like actual malice, must be proven by clear and convincing evidence. *DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir.), cert. denied sub nom, *Hopkins v. DiBella,* 546 U.S. 939 (2005). This Circuit requires that the totality of circumstances be examined when <u>conducting a contextual fact vs. opinion analysis</u>.  This analysis can be applied to the **pre-litigation** activities of the Defendant.

### Pre-Litigation Tortious Activities Involving Mount Shasta, California

22.     In **April/May 2018** (lawsuit filed **06/14/2018**) while the Defendant published sixteen (16) defamatory videos about the Plaintiff, *CrowdSource The Truth* co-host Quinn Michaels (who suffered a lung collapse in Vaughn, New Mexico [January 2018] and was convinced by the Defendant that the Plaintiff was responsible) arrived at the Plaintiff's small vacation community in Mount Shasta, California to "hunt" for, or stalk, the Plaintiff.  Mr. Michaels published video podcasts of him having discussions with other volunteer Wildland Fire Fighters who were acquainted with the Plaintiff.  Mr. Michaels, closely aligned with the Defendant, published videos claiming the Plaintiff was prowling the area looking for hitch hikers in possible satanic sacrifices.  Meanwhile, Mr. Goodman began telephoning the Chief of Police and Emergency Medical Services in Mount Shasta to inform them the "Plaintiff was under an F.B.I. investigation" etc.

23.     On **04/06/2018** Defendant stated to thousands on the "Lift The Veil" podcast show (**pg. 6, ECF 225**)(**ECF 51-1** *Steele v. Goodman*)[**Exhibit M-7**]:

- *"You better stop that Dave because all of the stuff has gone to the F.B.I.*"
  (<u>Defendant's Statement 1</u>, **pg. 20, ECF 279**) and

- *"That man should be in jail. That's criminal prosecution. I intend to get them
  prosecuted criminally*. (<u>Defendant's Statement 2</u>, **pg. 20, ECF 279**)

- *"You better stop Dave because all this stuff has gone to the F.B.I. I am working
  out a way to bring criminal prosecution against these people*." (<u>Defendant's
  Statement 3</u>, **pg. 20, ECF 279**).

*24.*    On **05/04/2018** the Defendant published to 10,000 viewers that <u>*David is engaged in a*</u>
<u>*crime*</u> *and* <u>*I have got the evidence of it*</u> *and* <u>*We are going to start to assemble the evidence that*</u>
<u>*we have*</u> (see the *Trolls of Mount Shasta* video podcast [**Exhibit M-3**] discussed below). But,
according to the Defendant (on the Lift the Veil show) the evidence was already turned over to
the F.B.I. in early April 2018. See <u>Defendant's Statement 10</u>, "*You are engaged in an organized
criminal harassment campaign. I have submitted my evidence against you to the* <u>*NY FBI field*</u>
<u>*office*</u>." (**pg. 22, ECF 279**) [emphasis added]

**25.**    As stated on **pg. 2, ECF 274 (**DEFENDANT'S RESPONSE TO INTERROGATORIES)
Defendant claims he contacted F.B.I. Special Agent Brittany Custer ("*This is the agent the
Defendant spoke to for over two hours about Plaintiff and Plaintiff's associates stalking and
harassing the Defendant"*). Concerning evidence given to law enforcement in April 2018 (on
the Lift The Veil show), Defendant responds *"(b) To the best of Defendant's recollection, no
documents exist that are responsive to this request all contact between Defendant and law
enforcement has been via telephone or in person,"* in others words no evidence was turned over
to the F.B.I. or Brittany Custer **(pg. 11, ECF 274 (RESPONSE)).**

26.    In an e-mail message of 08/26/2018 [**Exhibit C-13**] Defendant stated, "*The irony here is
that your repeated and aggressive attempts to suppress this information are IN FACT spoliation*

*of evidence with regard to <u>your ongoing criminal harassment of me.</u>  That is the assessment of*

*<u>Special Agent Brittany Custer of the FBI</u>, to whom I have given an extensive report of your*

*actions*. "

27.     Statements made in the *Trolls of Mount Shasta* podcast video [**Exhibit M-3**] speak to

Defendant's state of mind AFTER his initial statements about evidence being sent to the F.B.I. in

early April 2018.  See *Sharon v. Time, Inc.,* 599 F.Supp. 538, 581 (S.D.N.Y. 1984) (considering

post-publication evidence and holding that such evidence "could be weighed by the jury as part

of a possible factual basis for finding that [defendant] had recklessly disregarded the truth")

28.     In the "*The Trolls of Mount Shasta*" podcast, **05/04/2018,** viewed by over 10,000 people

[**Exhibit M - 3**] [**pg. 68, ECF 88**].  Defendant stated [**pg. 12, ECF 225, Exhibit M-7**]:

- You see I think **David is engaged in a crime.**
- **<u>I have got the evidence of it.</u>**
- .. his interactions with the CIA and the Sandinistas could indicate involvement in a **criminal operation of Iran-Contra.**
- **Dave needs to be prosecuted.**  I think he is a menace.  Dave is a public menace.
- **<u>We are going to start to assemble the evidence that we have.</u>**
- Evidence that is going to link Dave and **George** and **Robert David Steele** and **Manuel Chavez** and is it Eric O'Conner?
- What Dave is doing right now is hoaxing.  **That law 18 U.S.C. 1001 that is making a false statement.**
- ..if he wasn't **the worm that he is – the waist of oxygen, the disgusting human being**. -- whose own father knew that the proper place for him [undersigned] was to sleep on **newspaper with dog shit** [emphasis added]  [**Exhibit M-3**][**emphasis added**]

29.     The "**waste of oxygen – dog sh_t**" remark speaks to emotional malice and motive.  See e

*Herbert v. Lando,* 441 U.S. 162, 164 n. 12 (1979), "being motivated by ill will and bias," *Project*

*Veritas v. N.Y. Times Co.*, Index No. 63921/2020, 13 (N.Y. Sup. Ct. 2021).

30.     Common law malice is established by examining all of the relevant circumstances

surrounding the dispute, including any rivalries and earlier disputes between the parties so long

as they are not too remote. See, e.g., *Herbert v. Lando,* 441 U.S. 162, 164 n. 12 (1979) ("any

competent evidence, either direct or circumstantial, can be resorted to [to establish common law

malice], and all the relevant circumstances surrounding the transaction may be shown, provided

they are not too remote, including threats, prior or subsequent defamations, subsequent

statements of the defendant, circumstances indicating the existence of rivalry, [and] ill will, or

hostility between the parties").

**31.**     From the above excerpt there are at least two (2) fact statements that are provably false: *I*

*have got the evidence of it)"* and *"We are going to start to assemble the evidence that we have".*

No such evidence ever existed according to the Defendants statements in discovery ("*This is the*

*agent Defendant spoke with for over 2 hours . . . no documents exist that are responsive to this*

*request*" **pg. 11, ECF 274)**  "When a statement of opinion implies that it is based on unstated

facts that justify the opinion, the opinion becomes an actionable 'mixed opinion'" *Egiazaryan v*

*Zalmayev*, 880 F Supp 2d 494, 503 [SD NY 2012] and "if the predicate facts are disclosed but

are false, such that the disparity between the stated facts and the truth would cause a reader to

question the opinion's validity," the statement may be actionable as a "defamatory opinion"

*Enigma Software Grp. USA, LLC v Bleeping Computer LLC*, F Supp 3d , 2016 WL 3773394,

*11 [SD NY 2016].

32.     If the statement reasonably would be understood as implying <u>undisclosed facts,</u> then it is

not protected opinion under New York's constitution. Id.; see also *Mr. Chow of New York v. STE*

*Jour Azur S.A.,* 759 F.2d 219, 224 (2d Cir. 1985) ("[T]he inquiry into whether a statement should

be viewed as one of fact or one of opinion must be made from the perspective of an `ordinary

reader' of the statement." (emphasis added)).

33.     Thus, the veracity of the statements *"I have got the evidence of it" and "We are going to*

*start to assemble the evidence that we have*" (evidence of a "criminal harassment campaign") are

disputed facts making this a matter for the trier of fact which cannot be resolved at the F.R.C.P.

Rule 56 stage.  See *Soto v. Gaudett,* 862 F.3d 148, 157 (2d Cir. 2017) (noting that at the

summary judgment stage "[c]redibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge" (quoting

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986) )).

34.     The Court should consider the Defendant's comments in the documentary *After Truth:*

*Disinformation and the Cost of Fake News*, https://www.youtube.com/watch?v=dIFlbRirqlg ,

described at **para. 96 Aff't.** , "Defendant states in the documentary, "I didn't look at C.N.N. and

say 'I wanna do that'.  I didn't go to FOX news and say 'Here is my resume, I wanna put on a

suit and after Tucker Carslon I wanna sit there an read my news'.  I didn't say that.  I didn't go to

the New York Times and say I wanna write stories for you.  I looked at all those things and said

you guys are all f_cked up.  Whatever it is that you think is journalism I think is f_cked up."

[**Exhibit A-31**]

35.     Mr. Goodman continues, "I find it intriguing that even investigating it, and questioning it,

and becoming a <u>forensic examiner of the evidence</u> you get ridiculed.  You are a conspiracy

theorist." [**Exhibit A-32**], **para. 97, Aff't**.  Thus, the Defendant clearly places himself in judgement over traditional journalism and sees himself as a "forensic examiner of the evidence".

36.      In this context as a "forensic examiner of the evidence", aka an expert in evidence or someone that has reviewed the evidence, the court must consider the totality of the "we have evidence" statements made by a Defendant and the full context in which they were made in adjudicating a defamation claim. *Elias v. Rolling Stone LLC,* 872 F.3d 97, 109 (2d Cir. 2017).

37.      See e-mail message of 5/15/2018, " I have very strong evidence indicating that you, your brother George Webb Sweigert, Robert David Steele and others have conspired for many months to steal money from me, publicly defame me with false accusations of crimes and systematically cyber harassment"  [**Exhibit M-26**][emphasis added]

38.      To further illustrate, in an e-mail message (Date: **06/30/2018** 1:15 AM) to Patreon, (copies to Federal Maritime Commission, Maryland State Police and U.S. Coast Guard) Mr. Goodman stated [**Exhibit C-15**]:

> I would welcome contact from any of the government, military or law enforcement officials copied on this email **so I can share my evidence** and hopefully gain your assistance in bringing the **Sweigert bothers to justice.  The Sweigert brothers are a danger to the public and possibly themselves and are engaged in what appears to be a range of criminal activities. [emphasis added]**

39.       *Sprewell v. NYP Holdings, Inc.,* 772 N.Y.S.2d 188, 192-93 (N.Y. Sup. Ct. 2003) (an article which said that the plaintiff threw a punch at someone and "missed" was defamatory per se because "defamatory language need not consist of the technical words of a criminal indictment provided that it is reasonably susceptible to a connotation of criminality")

**Defendant Claims "More Evidence of Felonies" That Cannot Be Produced**

40.     The same is true with <u>Defendant's Statement 5</u>.  Defendant has tried to spin

inconsequential mistakes of mailing addresses into talismanic significance and evidence of some

form of "fraud on the court" and "mail fraud".  These two issues are interconnected, cannot have

one without the other (mail fraud + fraud on the court).

41.     "*David Sweigert – that <u>I see evidence </u>that he has committed felonies.  And therefore,*

*conspiring with him could expose you to serious legal issues if law enforcement choose to act on*

<u>*the evidence that I am actively providing of these felonies*</u>*.  And conspiring with others around*

*the Internet to break the law*" at **pg. 21, ECF 279.**  Thus, it is the fault of law enforcement – not

Mr. Goodman – if the Plaintiff is not arrested for felonies.  Under New York law, a statement is

considered non-actionable opinion only where it is "accompanied by a full recitation of the facts

on which it is based." *Clark v. Schuylerville Cent. Sch. Dist*., 807 N.Y.S.2d 175, 176-77 (3d

Dep't 2005) .

42.     This is a textbook example of an opinion stated (<u>*I see evidence *</u>*that he has committed*

*felonies*) that is supposedly based on some undisclosed fact (<u>*the evidence that I am actively*</u>

<u>*providing of these felonies*</u>).  Even if true, unlike Mr. Goodman's repeated fraud on this Court,

the so-called *address changes* "did not impede the ability of the court to adjudicate the issues

presented in the case." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd. ("ITM II"),* No. 15-cv-2457

(GHW), 2019 WL 1244493, at *8 (S.D.N.Y. Mar. 18, 2019)  *Compare Gleason v. Jandrucko,*

860 F.2d 556, 560 (2d Cir. 1988) (concluding that conduct must actually "interfere[] with the

judicial machinery" to constitute "fraud on the court").

43.     "As New York's Court of Appeals has explained, "Defamation by implication is

premised not on direct statements but on false suggestions, impressions and implications arising

13

from otherwise truthful statements." Armstrong v. Simon & Schuster, Inc., 85 N.Y.2d 373, 380-81 (1995)." *Oakley v. Dolan,* No. 20-642 (2d Cir. 2020)

44.    Mr. Goodman was obviously aware that he could report these matters to the Postal Inspector as he cites that office in a description for his "evidence repository" videos posted on his CRAZY_DAVE channel (**pg. 5, ECF 274, 05/17/2021**, DEFENDANT'S RESPONSE TO INTERROGATORIES, "*Defendant has a channel on Bitchute called **Crazy_Dave**"*).

> Originally titled "LARP HQ Follow the women George Webb and Jason CrowdSource" why did David George Sweigert delete this video only minutes after uploading it? Did he realize he'd revealed too much? Is he trying to figure out if Jason Goodman of Crowdsource the Truth really has engaged the U.S. Postal Inspector in the alleged case of mail fraud?

> *"Is he [Plaintiff] trying to figure out if Jason Goodman of CrowdSource The Truth really has engaged the U.S. Postal Inspector in the alleged case of mail fraud?"* [**Exhibit C-17, C-18**]

45.     To demonstrate Mr. Goodman's ability to mislead and obfuscate, the Defendant denied any connection with the **CRAZY_DAVE BitChute** channel until recent Court-ordered discovery.  In an e-mail message, 8/05/2018, Mr. Goodman stated, "and the CRAZY_DAVE bitchute account you refer to shows no clear connection to me or my business endeavors. It is not monetized in any way that I observe and does not reference my business in a promotional manner or advertise my endeavors in any way."  [**Exhibit M-29**]

**Pre-Litigation Activities involving *Steele V. Goodman*, Eastern District of Virginia**

46.    Prior to April-May 2018 *Steele v. Goodman*, 3:17-cv-00601-MHL, Eastern District of Virginia (filed in **September 2017**) which the Plaintiff had nothing to do with.  *Steele v. Goodman* is outside the reach of CVR §70-a, CVR §76-a.

47.    As stated in an e-mail message (Date: **12/02/2017** 5:22 PM) to the Defendant from attorney Scott S. Biss, (stevenbiss@earthlink.net), plaintiff's attorney in Steele v. Goodman,

"My clients are not involved in any way in any dispute between Mr. Goodman and David George Sweigart." [**Exhibit C-11**]

48.     In a passive and defensive manner, the Plaintiff, acting as a non-party, filed seven (7) declarations in *Steele v. Goodman*, 3:17-cv-00601-MHL, Eastern District of Virginia to deny the Defendant's published slander and libel in the hopes that the Defendant would stop the barrage of defamatory videos [5/25/2018, 5/29/2018, 5/30/2018, 6/01/2018, 6/07/2018 and 6/13/2018] (see below):

| | | |
|---|---|---|
| 05/25/2018 | 54 | STRIKEN PER 123 ORDER ON 7/25/2019 - Second Declaration of D. George Sweigert. (jsmi, ) Modified on 7/25/2019 (jsmi, ). (Entered: 05/25/2018) |
| 05/29/2018 | 55 | STRIKEN PER 123 ORDER ON 7/25/2019 - Third Declaration of D. George Sweigert. (jsmi, ) Modified on 7/25/2019 (jsmi, ). (Entered: 05/30/2018) |
| 05/30/2018 | 56 | STRIKEN PER 123 ORDER ON 7/25/2019 - Fourth Declaration of D. George Sweigert. (jsmi, ) Modified on 7/25/2019 (jsmi, ). (Entered: 05/30/2018) |
| 05/31/2018 | 57 | Reply to Motion re 47 MOTION to Dismiss for Failure to State a Claim filed by Patricia A. Negron. (Conrod, Richard) (Entered: 05/31/2018) |
| 06/01/2018 | 58 | STRIKEN PER 123 ORDER ON 7/25/2019 - Fifth Declaration of D. George Sweigert. (jsmi, ) Modified on 7/25/2019 (jsmi, ). (Entered: 06/04/2018) |
| 06/07/2018 | 59 | STRIKEN PER 123 ORDER ON 7/25/2019 - Sixth Declaration of D. George Sweigert. (jsmi, ) Modified on 7/25/2019 (jsmi, ). (Entered: 06/07/2018) |
| 06/13/2018 | 60 | STRIKEN PER 123 ORDER ON 7/25/2019 - Seventh Declaration of D. George Sweigert. (jsmi, ) Modified on 7/25/2019 (jsmi, ). (Entered: 06/14/2018) |

49.     On **05/22/2018** prior to the docketing of the complaint (**06/14/2018**) Plaintiff swore under perjury in a statement docketed as **ECF no. 51** in *Steele v. Goodman* that: [**Exhibit M-4**]

- Denied all allegations of "trolls" video of May 4, 2018.
- Denied ever acting as a contractor for the Central Intelligence Agency (C.I.A.).
- Denied participating in any type of drug operations.
- Denied having contact with Robert David Steele in any manner whatsoever.
- Broke off all communications with George Webb Sweigert four years earlier.
- Warned the public that "George Webb" was mentally unstable four days (June 10, 2017) prior to the Port of Charleston "dirty bomb hoax" (June 14, 2017).
- Had no communications with his brother, "George Webb" about any matter.
- Denied all allegations in a video podcast aired 04/07/2018 (see below).
- Denied any communications or involvement with "George Webb" or Robert David Steele.

50.     For the next three (3) years, the Defendant would ignore the above sworn testimony and continue the slander and libel social media campaign against the Plaintiff.  The Defendant's

reckless and willful ignorance of the declarations in *Steele v. Goodman* to promote continued slanders demonstrates actual malice.

51.    In response to further video podcasts by the Defendant the Plaintiff filed another sworn statement in the *Steele v. Goodman* 05/29/2018, **ECF doc. 55** [**Exhibit M-5**] which stated:

- Statements were made by Defendant, "Right and Dave implores me to present the evidence that we have that indicates he knew your location in Vaughn, New Mexico.  But, Dave, I don't need to do that because you know that you knew where Quinn was in Vaughn, New Mexico right before his lung collapse spontaneously".  [**Exhibit M-6** photo of Quinn in hospital room with Defendant] (Video not provided by Defendant in discovery)

52.    This exposes how the Defendant operates, make claims of non-existent evidence that cannot be later produced ("where's the beef?).  The tens of thousands of viewers who heard this defamation would assume that an "investigative journalist" of Mr. Goodman's stature ("forensic examiner of the evidence") would have in his possession those underlying documents or evidence to support his opinions.  These tens of thousands of viewers would believe that Mr. Goodman is stating his opinions, based on evidence and underlying facts, which do not exist.

53.    The "essential task is to decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were . . . written, may be reasonably understood as implying the assertion of underlying facts justifying the opinion." *Steinhilber v. Alphonse,* 501 N.E.2d 550, 552-53 (N.Y. 1986) [emphasis added].

**Defendant's Smears About IRAN-CONTRA Violate §§ 50-51 of the Civil Rights Law**

54.    During this period (April – May 2018) "photographs" placed on RedBubble.com merchandise (tote bags, coffee cups, T-shirts) were circulated by the Defendant concerning a **New York Times article of October 6, 1983,** about a drug smuggling plane crash in Nicaragua

(Defendant's comments ".. *his <u>interactions with the CIA</u> and the Sandinistas could indicate involvement in a **criminal operation of Iran-Contra**." (pg. 68, ECF 88, [Exhibit M-3]),* see *Trolls of Mount Shasta* video podcast, 05/04/2018 [emphasis added]

55.     In the photo, a police placard over Plaintiff's neck, emblazed with *Policia de Sandinistas, October 6, 1983.*  [**Exhibit M – 16**]

56.     The collage date (**10/06/1983**) coincides with an article about the crash of a plane carrying drug contraband in Nicaragua [**Exhibit M- 16**].  This photograph conflates (1) the Plaintiff's own experiences as a passenger on a U.S. Army helicopter (tail number 20212) that made a forced landing in Managua, Nicaragua as part of an Organization of American States peace-keeping mission in January 1981 with a (2) propeller-driven cargo plane with drug contraband (**paras. 29-36, Aff't**).

57.     The date of the police arrest placard, **October 6, 1983**, <u>coincides **NOT** with the actual aircraft crash, but the New York Times article</u>.  [**Exhibit M - 17**].  This creates the impression that the Plaintiff was mentioned in the article, or implicated.  Here the "dunce cap" and placard could easily represent humiliation tactics of the forces that captured the Plaintiff (as in Viet Nam prisoners of war show trials and prisoner displays in Ukraine [shown below **Exhibit A-39**]).



**Exhibit M-16**



**Exhibit A-39**

58.     The Defendant attempts to justify this collage as "parody" for the use of the "dunce cap".

However, much more than a mere dunce cap is on display, to include a strait jacket, police

placard, news headline, image of Lt. Co. Oliver North, USMC (ret.), and a headline with

Nicaragua.  This defamation by insinuation is clear.  Defendant wants to associate Plaintiff with

facts associated with the New York Times article.  See "Defendant Statement no. 97: In the

realm of parody and caricature, publishing an image of an adversary wearing a dunce cap is

among the oldest jokes in the book."  [**ECF 280**]

59.     "The actionable element of a 'mixed opinion' is not the false opinion itself—it is the

implication that the speaker knows certain facts, unknown to his audience, which support his

opinion and are detrimental to the person about whom he is speaking."  *Steinhilber v. Alphonse*,

68 N.Y.2d 283

60.     As there is no relationship between the Plaintiff and the plane crash story (photo collage)

there is no legal (news privilege) protection afforded the Defendant.  *Yasin v. Q-Boro Holdings,*

*LLC*, No. 13259109, 2010 WL 1704889, at *2 (N.Y. Sup. Ct. Apr. 23, 2010) ("[T]he use of

Yasin's image on the front cover of defendant's book is purely for marketing and trade purposes; solely as a means to attract customers and generate sales.").

61.     False commercial speech has long been categorically excluded from the protective reach of the First Amendment.  *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,* 447 U.S. 557, 566 (1980) (holding that for commercial speech to be protected by the First Amendment, it "must . . . not be misleading").

62.     Plaintiff alleged that the Defendant has used Plaintiff's image and name without his consent in the **SAC (Dkt. 88**) and the First Supplemental Complaint (**FSC, Dkt. 150**).  **See pg. 14, para. 27 [ECF 88]**, "To add insult to injury on more than two dozen occasions Goodman has used the portrait, picture, likeness and photograph of the Plaintiff for commercial purposes in advertising and trade without the undersigned's permission.  There is no newsworthiness to the use of these images."  The same photograph of the Plaintiff with Lt. Col. North is displayed in **ECF 88.**

63.     The Defendant used the photo / likeness of the Plaintiff in a collage to sell tote bags, coffee cups and T-shirts in a commercial manner.  To amplify the commercial nature of Defendant's "*business*" it is instructive to review the Defendant's e-mail message to the magistrate judge on 11/13/2019.  The Defendant advised the magistrate that, "*[o]nline broadcasting is my full time job and primary source of income*" and "*has crippled my on-line business by preventing me from live streaming my daily broadcasts"* and "*[t]his has negative impacted my income*" and "*disrupt my day to day life, my business* ". [**Exhibit M-22**]

**Defendant's Personal Animus Towards the Plaintiff**

64.    The Court's consideration of the Defendant's ill will should include statements made in

e-mail messages.

- It's awesome that I now know how to push your buttons. Mental illness is a
  terrible thing. You really should be confined for your own safety and that of
  others.  [**Exhibit M-23**]

- I can see now why your own (also possibly insane) brother would betray you and
  have sex with your wife.  Do you think about his penis entering her?  Did he give
  her his seed?  Did she orgasm with George?  Perhaps he was able to satisfy her
  sexually in ways you were unable.  What a wonderful time the two of them must
  have had. [**Exhibit M-24**]

-  If you'd like to challenge me in civil court, I invite you to file your complaint.  It
  will merely save me the filing fees when I counter sue you for the well
  documented slander and defamation campaign you have been waging which
  includes per se libel among other civil torts and potential criminal actions on your
  part.  [**Exhibit M-25**]

- In addition to suffering from what appears to be obvious mental illness, he is a
  sexual deviant, publicly admitting to wife swapping with his own brother George
  Webb Sweigert, also copied on this message.  [**Exhibit M-27**]

**The Stalking Hunt for Plaintiff By Co-Host Quinn (Collapse Lung) Michaels**

65.    As explained in another *Steele v. Goodman* declaration, the Defendant's sidekick, Quinn

Michaels, arrived physically in the Mount Shasta, California area and began podcasting videos

with the Defendant.  The tone of the videos was to physically locate the Plaintiff.  The Plaintiff

states on 5/30/2018, **ECF 56** [**Exhibit M-8**]:

- He was engaged in Wilderness Emergency Medical Technician training in the
  Mount Shasta area.

- Defendant had made approximately fifty (50) videos with Quinn Michaels. [**Exhibit M-9 (ECF 56) and M-10** has screen shots of Quinn Michaels videos]
- Plaintiff left the Mount Shasta area shortly after the arrival of Mr. Michaels who stated he was going to try and locate the Plaintiff.

### Charity Fraud and Crypto Currency Ponzi Schemes

66.     The Defendant has accused Robert David Steel of charity fraud, again the Plaintiff has nothing to do with this.  [**Exhibit M-20, M-21**]  Somehow the Defendant believes he is justified to accuse the Plaintiff of participating in a criminal network to protect felony charity fraud, for which he has evidence.

67.     In an **07/11/2018** e-mail message to Colin Sullivan, Chief Counsel of Patreon, Inc. Defendant stated,

> "*I suspect he [Plaintiff] works for some sort of independent firm that is working hard to protect various criminals whose criminal activity (including <u>charity fraud</u> and crypto <u>currency ponzi schemes</u>) my journalistic endeavors continue to expose.  <u>I have extensive evidence to support these statements that I would be happy to share with you</u>" and "I am interested in speaking to you about how we might work together to put an end to Mr. Sweigert's harassment.  <u>I believe it's criminal</u>, and now that he has threatened Patreon with a civil suit I wonder if you'd be interested in having a conversation about how we might strategize and cooperate to illuminate [sic] this mutual nuisance*."  [emphasis added][**Exhibit C-23**]

68.     In a confusing e-mail message of the same date (7/11/2018), the Defendant states that he may seek criminal charges against the Plaintiff, which apparently occurred three months prior with the April 2018 F.B.I. telephone call to S.A. Brittany Custer, " If you persist in these actions I will have no choice but to <u>seek criminal charges against you</u>." [**Exhibit M-28**]

69.     Based on the above "*protect various criminals whose criminal activity (including <u>charity</u>*

*<u>fraud</u> and crypto <u>currency ponzi schemes</u>) my journalistic endeavors continue to expose*"; the

Defendant is referring to Robert David Steele, "*charity fraud*", and Manuel Chavez, III, *crypto*

*currency ponzi scheme*.

70.     An e-mail message (Date: **08/26/2018** 12:01 AM) sent to the Plaintiff by Defendant

(jason@21stcentury3d.com) stated: "I run a subscription based video service.  **You are the one**

**protecting charity fraud and RICO**. Each email you send increases your legal liability."  There

is no basis to this claim of "protecting charity fraud". [emphasis added] [Located in both **Exhibit**

**C-13 and Exhibit M-30**]   Courts have routinely found that statements could be defamatory per

se when they neither explicitly name the crime or the elements of a crime, so long as they

describe conduct that could be criminal. See, e.g., *Sprewell v. NYP Holdings, Inc.,* 772 N.Y.S.2d

188, 192-93 (N.Y. Sup. Ct. 2003).

71.     The Defendant published a video entitled, "*Has Quinn Michaels Discovered Evidence of*

*A Manuel Chavez Steemit Money Laundering Scam?*" (see below).  In said video the description

states, "*Now Quinn has caught Manuel Chavez III (Defango) red handed in what appears to be a*

*money laundering scheme*."  The video features *CrowdSource The Truth* co-host Maureen Shay

Mensing (see **¶¶ 65-67, pg.33, ECF 88**) [**Exhibit M-19**] a school teacher in Madison, Wisconsin

and her alleged boyfriend Quinn Michaels [**Exhibit C-8, C-9, C-22**]


Has Quinn Michaels Discovered Evidence of A Manuel Chavez Steemit Money Laundering Scam?
Crowdsource the Truth
21 views • 3 years ago


Is Manuel Chavez III Offering Instructions for a Money Laundering Scheme on Steemit.com? – PART 2
Crowdsource the Truth
24 views • 3 years ago

72.     In other words, Mr. Goodman's *"journalistic endeavors continue to expose criminal*" activity are merely YouTube podcasts with a special-education school teacher (Ms. Shay) and a homeless new-ager (Quinn Michaels) that lives in his car in Mount Shasta, Calif.  It is Quinn Michaels that believed the Defendant's story that the Plaintiff was in Vaughn, New Mexico with a "*direct energy weapon*" that collapsed his lung in January 2018.  However, both Ms. Shay and Mr. Michaels were given story outlines to create pre-determined video podcasts.

73.     As explained on **pg. 32, ECF 88,** in a video "*Published on May 30, 2019, My response to Jason Goodman of Crowdsource the Truth using me as leverage against Quinn Michaels in a live chat*," Ms. Messing stated:

> 04:44   What's wrong with Jason Goodman is that he became fixated on fighting with other YouTubers and using Quinn Michaels research and material to back it up to the point of stretching the logic.  And, steering conversations continuously and **most notably to talk about Dave Acton. [Plaintiff]**
> [**Exhibit C-22**]

74.     The above indicates a predetermined hostile narrative by the Defendant to create video podcast content based on Mr. Goodman's personal agendas and bias.  The Second Circuit has recognized predetermined bias as an indicator of *actual malice.  Palin v. N.Y. Times Co.*, 482 F. Supp. 3d 208 (S.D.N.Y. 2020), "he had reason to be personally hostile toward Palin." *Palin v. New York Times Co., 940 F.3d 804, 807 (2d Cir. 2019) at 814.  (appealable issue)

75.     A New York state court, relying on an S.D.N.Y. case, also agreed, "additional facts to suggest the speaker acted pursuant to that bias (*McDougal v Fox News Network, LLC, No*. 1:19-CV-11161 (MKV), 2020 WL 5731954 [S.D.N.Y. Sept. 24, 2020]" *Project Veritas v. N.Y. Times Co*., Index No. 63921/2020, 13 (N.Y. Sup. Ct. 2021) (appealable issue).

76.     It is clearly stated as fact to the General Counsel of Patreon in e-mail message of **7/11/2018** that the Defendant has evidence of the Plaintiff's crimes.  Two months earlier Defendant told his "*Trolls of Mount Shasta*" audience (10,000 viewers) on **05/06/2018** that Defendant had evidence of the Plaintiff's criminal activity.  Where is it?  Like the location detection evidence for the Vaughn, New Mexico incident the Defendant has never produced it. There is no evidence in either case.

77.     As noted in the declaration of **Manuel Chavez, III, [Exhibit A-7]** absolving the Plaintiff of connections to him, and the undersigned's declarations in *Sweigert v. Goodman*, the Plaintiff had nothing to do with these operations, associations, or other conspiracy theories.

78.     Defendant Goodman was very familiar with the content of these declarations filed in *Steele v. Goodman*.  Mr. Goodman distributed a video podcast discussion of the Plaintiff's sworn declaration.  On 06/01/2018 Plaintiff filed "FIFTH DECLARATION OF D. GEORGE SWEIGERT" in *Steele v. Goodman*, **docket 58**, which contains an exhibit of Mr. Goodman reviewing the Plaintiff's earlier declaration of 05/22/2018, **docket 51**, with Quinn Michaels in a video entitled, "*Elvis Presley – The Devil in Disguise.  The King, The Covenant and the #TimePhoneHack*".  (Video not provided by Defendant in discovery)

79.     This indicates that Mr. Goodman had indeed received the declaration, **docket 51**, and was discussing it on his podcast with almost 10,000 viewers.  [**Exhibit M-11**].  Therefore, ignoring the contents of such Declarations would constitute reckless disregard for the truth.

80.     In a follow-up declaration in *Steele v. Goodman*, the Plaintiff again denied allegations that he somehow worked with **Robert David Steele or Manuel Chavez, III.**  These allegations were presented by Mr. Goodman in a video podcast entitled, "*The Webb of Lies and the Lying*

*Liars Who Weave It…*", May 9, 2018.  See SIXTH DECLARATION OF D. GEORGE

SWEIGERT, **docket 59**, 06/07/2018 (see below). [**Exhibit M-12**]

81.　　A clearer image of the video podcast "*The Webb of Lies and the Lying Liars Who Weave*

*It…*", May 9, 2018 is included in [**Exhibit M - 13**].  (Video not provided by Defendant in

discovery)

82.　　It is the Defendant who claims to be an *investigative reporter* for a *news agency*.

Therefore, the Court can assume that Mr. Goodman's publications were conducted with an air of

"newsworthiness".  **Certain <u>contexts</u>** may indicate whether a statement constitutes fact or

opinion.  An investigative article in the news section of the New York Times was held to be a

context reflecting the factual nature of statements reported therein (*Gross v New York Times Co.,*

82 NY2d 146, 155-156 [1993])

83.　　Mr. Goodman in **ECF 134** SWORN STATEMENT OF DEFENDANT **06/27/2019** filed

*in Steele v. Goodman*, the makes a statement (under oath) that: [**Exhibit M – 14**].

- 　"On or about June 2019, Manuel Chavez, III voluntarily shared some of his
  personal e-mails with Defendant (Goodman).  Among these were messages
  Chavez claims are communications from Thomas Schoenberger, an individual
  unknown to the Defendant who may in fact be highly placed in the organization
  of monetized conspiracy to harass and defame Defendant Goodman.
- Additionally, Chavez provided communications between Plaintiff (Robert David
  Steele), Chavez, Steven Biss (attorney in Steele v. Goodman).
- Chavez provided an email between Plaintiff (Robert David Steele) and Chavez in
  which Plaintiff (Steele) admits he is in direct contact with alleged co-conspirator
  Tyroan Simpson.

84.　　There is NO, zero, mention of the Plaintiff's name in the dozens and dozens of e-mail

messages exchanged between Manuel Chavez, III, Thomas Schoenberger, Robert David Steele,

Tyroan Simpson, etc.  This fact is not acknowledged by the Defendant, who recklessly disregards this truth.

85.     **ECF 134**, SWORN STATEMENT OF DEFENDANT, 06/27/2019 *Steele v. Goodman* also contains EXHIBIT H, which is a direct message from Robert David Steele advising George Webb of Steele's intentions to sue Mr. Goodman with support from **Manuel Chavez, III.**  The Plaintiff has nothing to do with this.

86.     By **June 27, 2019** Defendant Goodman knew of the possibility that Thomas Schoenberger was the purported ringleader of the "defamation gang" that Mr. Goodman had been railing against for the previous two (2) years.  "Thomas Schoenberger, an individual unknown to the Defendant who may in fact be highly placed in the organization of monetized conspiracy to harass and defame Defendant Goodman," **ECF 134**, 06/27/2019, *Steele v. Goodman* [**Exhibit M-14**].

87.     ShadowBox Strategies, Inc. was a reputational destruction public relations firm whose principals included **Thomas Shoenberger, Manuel Chavez, III,** FOX news consultant and Seth Rich murder investigator Edward Butowsky and others [**Exhibit C-6**].  Fall-out from the **Seth Rich murder** investigation and the "Seth Rich files" placed Webb-Sweigert and Goodman at the center of events that orbited retired Washington, D.C. homicide investigator and FOX NEWS contributor **Rod Wheeler**, hired to investigate the Seth Rich "murder".  Both Webb-Sweigert and Goodman interviewed Rod Wheeler on their podcast shows while Wheeler was the center of national attention in July 2017 [**Exhibit C-6**][**Exhibit C-10**]

88.     The net result of the Webb-Sweigert and Goodman **Rod Wheeler** interviews [**Exhibit C-10**] was to discredit Edward Bukowsky, who then engaged ShadowBox Strategies to "silence" Mr. Goodman in October 2017.

89.     Mr. Goodman was openly hostile and bitter towards Edward Butowsky in the September 2017 video production entitled "Jason Goodman - Crowdsource the Truth" [**Exhibit C-6**] (https://www.youtube.com/watch?v=Qic9nO23qV4 [time-mark 55:15 – 59:59]).  Hindsight indicates that Mr. Butowsky engaged a "reputation defense" company to attack and silence Mr. Goodman for his Seth Rich murder investigation statements – none of which has anything to do with the Plaintiff.

*90.*     These incidents have been extensively reported upon in the press.  *See Right-Wing Activists Discussed Wiretapping Seth's Family, Three People in the Room Say.* 02/18/2020, Daily Beast ( https://www.thedailybeast.com/right-wing-activists-discussed-wiretapping-seth-richs-family-three-people-in-the-room-say which stated:

- The group also included Thomas Schoenberger and Manuel "Defango" Chavez, two notorious internet provocateurs who had recently launched a self-proclaimed "elite" company that promised to use bots and sow "targeted chaos" to defend its clients online.

- But the fact that marginal internet characters like Schoenberger and Chavez could be called to a gathering with political players like Butowsky—who enjoys connections to the White House, Fox News, and at least one leading House Republican—offers a glimpse into how conspiracy theories are bleeding into political life. It also raises questions about how far Trump allies will go to vindicate their wild theories about Rich. [emphasis added] [**Exhibit M-14**]

91.     ShawdowBox Strategies is the personification of a "monetized distributed defamation campaign" which Mr. Goodman has complained about for years, incorrectly and maliciously linking the Plaintiff to such a group.  ShawdowBox Strategies (Schoenberger and Chavez) is the group that attacked Mr. Goodman, not the Plaintiff.

**Damages to Plaintiff's Volunteer Non-Profit Career**

92.     Defamation per se can also be established by the Defendant's numerous remarks that impugn unethical character, planning the Port of Charleston "dirty bomb hoax", working with criminals, protecting criminals, etc.  As the Court is aware (**para. 12-15, 29-33, Aff't**) Plaintiff has a life long history of non-profit public service in the areas of emergency radio communications and emergency management which has now been forever smeared with the Defendant's cancerous statements.

93.     "Furthermore, for an individual acting in the capacity of president of a non-profit corporation designed to help victims of sex trafficking, publication of a false narrative of sex trafficking would tend to disparage that individual in the way of her profession. Defendant's argument that Plaintiff may not take advantage of this second ground on the basis that "victim" is not a profession ignores the valid profession of non-profit advocacy, and the very real importance of perceived competence and integrity in the conduct of that profession". *Giuffre v. Maxwell*, 165 F. Supp. 3d 147, 154 (S.D.N.Y. 2016).

94.     Every aspect of the Plaintiff's life has been published in videos to tens of thousands of viewers in a manner of "actual malice" by the Defendant; wife swapping, dead-beat dad, incompetence as a Certified Ethical Hacker, incompetence as an Emergency Medical Technician, a criminal, criminally insane, protecting criminals, working with other litigants of this court in a clandestine manner, planning cyber-attacks, destroying evidence, etc.

### Reckless Dead Beat Dad Defamation Ignores Actual Truth

95.     At para. **88, ECF 280** Defendant states, "Statement #11 and 12 were both made on the basis of information provided by Corean Stoughton. Goodman Decl. ¶ 51.".  However, as noted in [**Exhibit A-10**], Ms. Stoughton's text message (**05/03/2021**) to Mr. Goodman, she never said those words or attempted to convey that impression   "I DID NOT SAY THOSE WORDS".

96.     In fact, Ms. Stoughton lauded the Plaintiff for his overly generous financial contributions

to his ex-wife and son.  But, due to the well-documented ill will of the Defendant he stated the

opposite (dead beat dad) as fact, "In most people's opinion that would be the opposite of a "dead

beat Dad".  But, blinded by reckless ill will Mr. Goodman announced (several times) Plaintiff

was a "dead beat dad".

## CONCLUSION

97.     The Defendant invited this litigation, encouraged it, and profits from it.  The Plaintiff has

been only acting in self-defense and counter-speech while Mr. Goodman has inherited this

forceful judicial advocacy by his expressed request.

*98.*     Understandably, lacking any real concrete reasons for summary judgment the Defendant

has desperately resorted to creating a blizzard of irrelevancies in his anti-SLAPP motion for

summary judgment.   Had the Defendant worked harder perhaps his papers would not appear to

the layman to be a "big bun" presented to the Court, that is left asking "where's the beef".

*99.*     Over the years the Plaintiff has come to understand the Defendant as a figure deserving

of pity for his attempts to mislead this Court and the public to prop up his profit-driven and

collapsing COUNTER LAWFARE FUND.

**The undersigned hereby attests that this is a verified pleading and is submitted in
OPPOSITION to Defendant's RULE 56 SUMMARY JUDGMENT motion this eleventh
day of July (7/11), two thousand and twenty-one (2021).  This is a verified pleading.  A
certificate of service appears on the last page.**

*D. GEORGE SWEIGERT*
*Pro Se Non-Attorney*
*GENERAL DELIVERY*
*NEVADA CITY, CA 95959*

## CERTIFICATE OF SERVICE

The undersigned hereby attests under penalties of perjury that copies of this communication have been transmitted via electronic mail message to the following parties on the eleventh day of July (7/11), two thousand and twenty-one (2021).

| Clerk of the Court, Room 200 | Jason Goodman, CEO |
|---|---|
| temporary_pro_se_filing@nysd.uscourts.gov | truth@crowdsourcethetruth.org |

*D. GEORGE SWEIGERT*
*Pro Se Non-Attorney*
*GENERAL DELIVERY*
*NEVADA CITY, CA 95959*

30