IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| D. GEORGE SWEIGERT, | : | |
| | : | |
| Plaintiff, | : | Case No.: 1:18-cv-08653-VEC-SDA |
| | : | |
| v. | : | **REPLY MEMORANDUM IN FURTHER** |
| | : | **SUPPORT OF MOTION FOR** |
| JASON GOODMAN, | : | **SUMMARY JUDGMENT** |
| | : | |
| Defendant. | : | |
| | : | |

Defendant Jason Goodman respectfully submits this Reply Memorandum in Further

Support of his Motion for Summary Judgment (*see* Docket 277-280). Plaintiff's opposition papers

include a Memorandum of Law (Docket No. 298) with a supporting Affidavit (Docket No. 300)

and Responses and Objections to Defendant's Rule 56.1 Statement (Docket No. 297).[1]

## I.   Defendant Should Be Granted Judgment on the *Per Quod* Defamation Claim Because Plaintiff Submitted No Evidence of Actual Damages

By letter dated April 24, 2021 (Docket No. 262, Exhibit 7), Plaintiff admitted that he was

unable to show any actual damages. Thereafter, on May 18, 2021, Plaintiff reversed course and

submitted his "Corrected Notice of Special Damages" (Docket No. 276, Exhibit 16) which

purports to allege four (4) damages theories described in our opening brief.

---

[1]   Plaintiff has also filed "Plaintiff's Counterstatements to Defendant's Local Rule 56.1 Statement of Disputed Facts, ECF 280" (Docket No. 299), which seems to reflect Plaintiff's misunderstanding of Local Rule 56.1, which allows the non-moving party to submit "additional paragraphs containing a separate, short and concise statement of additional material facts *as to which it is contended that there exists a genuine issue to be tried.*" Plaintiff's submission at Docket No. 299 does not identify any disputed issues to be tried, but rather contains a lengthy discourse on various topics having little or no bearing on the legal issues raised in this motion.

Defendant's opening brief (Docket No. 279, pp. 5-14) points out that Plaintiff has failed to offer proof of special damages. Plaintiff's opposition brief mentions "damages" only in passing (Docket No. 298, pp. 28-29), never identifying any damages that are causally connected to any of Goodman's allegedly defamatory statements. Nor does Plaintiff meaningfully rebut ¶¶ 52-63 of Defendant's Rule 56.1 Statement of Undisputed Facts (Docket No. 270), which directly addresses Plaintiff's lack of damages. *See* Docket No. 297, pp. 52-57.

Based on the record before the Court, Plaintiff has no damages; therefore the Court should enter judgment in favor of Defendant on the *per quod* defamation claim.

## II.    Defendant Should Be Granted Summary Judgment on the *Per Se* and *Per Quod* Defamation Claims Because None of the 12 Challenged Statements Are Defamatory

Defendant's opening brief (pp. 14-18) addresses each of the twelve (12) allegedly defamatory statements (the "12 Challenged Statements") identified in Plaintiff's April 30, 2020 submission *See* Docket No. 267 (Goodman Decl., Exhibit 8), including a chart at pp. 16-18 of our opening brief that explains why each of the 12 Challenged Statements is protected, non-defamatory opinion. *See also* Goodman Decl., Docket No. 278, ¶¶ 50-51.

Pages 6-16 of Plaintiff's opposition brief (Docket No. 298, pp. 6-15, ¶¶ 20-53) is addressed to the defamation claim. Notably, Plaintiff's opposition brief does not bother to defend most of the 12 Challenged Statements, effectively conceding that they are non-defamatory. Likewise, Plaintiff has not controverted any of ¶¶ 67-91 of Defendant's 56.1 Statement.

The only purportedly defamatory statements that Plaintiff meaningfully defends are (1) Defendant's statement that Defendant had provided the FBI with evidence of Plaintiff's unlawful harassment (Statement 1, 2, 10); and (2) Defendant's reference (in the context of a Twitter war) to Plaintiff abandoning his son (Statement 11, 12).

### A. The Evidence of Record Is Undisputed that Goodman Spoke With The FBI About Sweigert's Harassment

Without any factual basis, Plaintiff asserts that Defendant has "no evidence" that he contacted FBI Special Agent Brittany Custer and spoke with her for over two hours about Plaintiff and his associates' stalking and harassment of the Defendant. Before the Court is a Declaration from Defendant stating under penalty of perjury that he contacted the FBI about Plaintiff and his associates' harassment, which Goodman continues to believe rises to the level of criminality. *See* Docket No. 278, ¶ 51; *see also* Docket No. 280, ¶¶ 69-72, 86-87.

Plaintiff offers no documents or affidavits to challenge Defendant's Declaration. Nor does he controvert the relevant paragraphs of Defendant's 56.1 Statement which confirms that Defendant did, in fact, contact the FBI about Plaintiff. Instead, Plaintiff resorts to *ad hominem* attacks against Goodman's character, suggesting that the Court should disregard Goodman's sworn testimony because he is supposedly an "unreliable declarant." *See* Docket No. 298, ¶ 5.

On summary judgment, the Court does not weigh the evidence or evaluate witness credibility. Instead, the Court decides if a triable issue of fact exists based upon the evidence of record. Here, the record before the Court is undisputed that Goodman contacted the FBI about Sweigert (Docket No. 278, ¶ 51); thus, Statements 1, 2, and 10 are substantially true and therefore non-defamatory.

### B. The Evidence of Record is Undisputed that Goodman Had A Good Faith Basis For Stating that Sweigert Abandoned His Son in the Context of a "War of Words"

Plaintiff also focuses on Statements 11 and 12 wherein Goodman referred to Sweigert's abandonment of his son James Cameron Sweigert ("Jimmy"), calling him a "deadbeat dad." As discussed in Goodman's Declaration (*see* ¶ 51), these statements were based upon information

provided by an individual named Corean Stoughton, who contacted Goodman under the pretense that she was also being stalked by Sweigert. Later, Goodman learned that Ms. Stoughton's story was fabricated, and that she misrepresented herself to Goodman.

Plaintiff has submitted an undated text message from Ms. Stoughton to Goodman, in which she acknowledges telling Goodman that "Dave felt some guilt that he wasn't there to raise his son," but denied saying he was a "deadbeat dad." *See* Docket No. 295-1 at Page 31 of 133. Two points are worth noting.

First, Ms. Stoughton's text message refers to Mr. Sweigert not being there to raise his son. Goodman clearly had a basis for his statements at the time he made them – even though later, Goodman came to learn that Ms. Stoughton was a charlatan.

Second, Ms. Stoughton has not submitted a sworn affidavit. The text message from Ms. Stoughton on which Plaintiff relies is hearsay, and without an affidavit from Ms. Stoughton submitted under penalty of perjury, Plaintiff cannot rely upon that text message to prove the truth of the matter asserted (i.e., that she did not say that Plaintiff was a deadbeat dad).[2] Nor has Sweigert supplied any other evidence (such as an affidavit from his ex-wife) to support his assertion that he did not abandon his son financially, despite not being there to raise his son.

Ultimately, the evidence of record demonstrates that Goodman had a good faith basis for making Statements 11 and 12 – particularly in the context of a "war of words" in which Plaintiff has been an active combatant. As noted in our opening brief, this case is similar to *Torain v. Liu*, a defamation case involving a "war of words" which culminated in a radio disk jockey suing an

---

[2]     The Court may, on the other hand, consider Ms. Stoughton's text message as evidence establishing that Defendant had a basis in fact for making Statements 11 and 12. Goodman would be offering the text as proof that he received such information from Ms. Stoughton (not the truth of Ms. Stoughton's information).

elected official for calling him a "sick pedophile loser," a "lunatic," a "racist pedophile," and remarking that plaintiff should be "terminated from the face of the earth." *Id.*, 2007 WL 2331073, at *3–4 (S.D.N.Y. Aug. 16, 2007). The *Torain* court reviewed the back-and-forth invective, finding it to be "pure opinion." As the *Torain* court held, "a statement of pure opinion is not an accusation, and pure opinions are immune from all defamation claims, even claims of *per se* defamation."

Based on the above, Plaintiff has failed to identify any legally actionable defamatory statement. Accordingly, the Court should enter judgment in favor of Defendant on Plaintiff's defamation claim in its entirety.

## III.   Plaintiff Has No Evidence of Actual Malice

Our opening brief pointed out (pp. 18-19) that Plaintiff has no evidence that Goodman made any of the 12 Challenged Statements with actual malice. In response, Plaintiff argues that he needs more discovery, claiming that he was sandbagged by the "retroactive application" of the actual malice standard. *See* Docket No. 298, pp. 4-5, ¶¶ 13-18.

Plaintiff is mistaken. As a public figure who has published extensively in the area of computer hacking and social engineering (Undisputed Facts, Docket No. 280, ¶¶ 64-66, 92-93), Sweigert is a limited-purpose public figure.[3] For public figures, the actual malice standard has been settled law since the 1960s. *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

New York's anti-SLAPP law codifies this standard and requires *private figures* to demonstrate the same level of fault before recovering damages in libel lawsuits involving matters

---

[3]    *See Winklevoss v. Steinberg*, 170 A.D.3d 618 (1st Dept 2019) ("Plaintiffs are limited purpose public figures. Through their voluntary participation in numerous interviews, in widely-covered conferences and meetings with entrepreneurs, and in their own radio broadcasts, they have attracted public attention to themselves as investors in start-ups, have voluntarily injected themselves into the world of investing, and have sought to establish their reputation as authorities in the field.").

of public interest. Sweigert was thus not unfairly surprised, and the Court should not entertain Plaintiff's contrived effort to seek more discovery.

Furthermore, Plaintiff has not established that any of the 12 Challenged Statements were false. Thus, Plaintiff's case does not even make it to the motive inquiry. As noted above, Plaintiff has *de facto* abandoned most of the 12 Challenged Statements. For the remainder, as described above, the evidence of record is undisputed that (1) Goodman in fact provided the FBI with extensive information about Plaintiff and his campaign of harassment (*see* Statements 1-2, 10); and (2) Goodman learned of Plaintiff's abandonment of his son from information provided by Ms. Stoughton (*see* Statements 11-12).

Because Plaintiff has offered no proof of Defendant's actual malice, judgment should be entered in favor of Defendant on his defamation claim. *See Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.").

## IV.    The Court Should Enter Judgment For Defendant on the Section 50-51 Claim on the Grounds That They Were Protected Parody

Our opening brief pointed out that Defendant's use of Sweigert's image was both parody and newsworthy and is therefore protected expression. *See* Docket No. 279, pp. 19-22. "There is a well-recognized exception [to N.Y. Civ. Rights Law §§ 50-51] for works of art and advertising that is undertaken in connection with a use protected by the First Amendment." *Mason v. Jews for Jesus*, 2006 WL 3230279, at *4 (S.D.N.Y. Nov. 8, 2006).

In response, Plaintiff identifies another version of the same image, this time with a neck placard reading "Crazy Dave." *See* Docket No. 296, p.18. The image also includes an image of Oliver North and various news headlines. The image is below:

6



Nothing about this picture changes the analysis set forth in our opening brief. As we pointed out, this case is similar to *Altbach v. Kulon,* where the Third Department vacated a preliminary injunction that enjoined a caricature of a local judge portrayed "as a devil with horns and a tail" because it was "an artistic expression outside the scope of Civil Rights Law §§ 50 and 51"). *Id.*, 302 A.D.2d 655, 657–58 (3d Dep't 2003). In ruling that the caricature was protected parody, the *Altbach* court noted that "defendant's flyers ... cannot reasonably be read to assert that plaintiff endorsed or recommended either the painting or defendant's gallery."

Likewise, there is no risk that anyone believed that Sweigert endorsed the image above. Based upon the evidence of record – including the image itself – there is no question that Defendant was engaged in parody, putting Sweigert in a dunce cap and referring to him as "Crazy Dave." This caricature was made in the context of reporting on Plaintiff's "social engineering" attacks on Defendant, including his abusive lawsuits, and is a matter of public concern. This protected artistic and journalistic speech is exempt from N.Y. Civil Rights Law §§ 50-51.

The Court should enter judgment in favor of Defendant on Plaintiff's claims under §§ 50 and 51 of the New York Civil Rights Law.

**V.      Defendant Is Entitled to Judgment on His Anti-SLAPP Counterclaim**

Our opening brief, pp. 22-23, walks through each of the elements of Defendant's anti-SLAPP counterclaim. If the Court awards summary judgment to Defendant on the defamation claim, the Court should also award summary judgment (as to liability) with respect to Defendant's counterclaim under the New York Anti-SLAPP Law (N.Y. Civ. Rights Law §§ 70-a, 76-a). Our opening brief, pp. 22-23, walks through the elements of Defendant's anti-SLAPP claim, demonstrating Defendant's entitlement to judgment.

Plaintiff's opposition brief does not address this issue. Accordingly, for the reasons stated in our opening brief, the Court should enter judgment in favor of Defendant on his anti-SLAPP counterclaim.

**VI.     Plaintiff Sweigert Should Be Sanctioned as a Vexatious Litigant**

As described at pp. 5-7, 23-24 of our opening brief, Sweigert is a highly vexatious *pro se* litigant who has vowed to continue suing Goodman. Given the conduct of Sweigert in this litigation, in addition to the remedies requested in our original Notice of Motion, we are filing an Amended Notice of Motion that additionally requests that Sweigert be ordered to undergo a psychological evaluation and retain counsel in order to continue this lawsuit.

The Court should take note that Sweigert has expended herculean efforts (however misguided) on this litigation, as evidenced by the docket, which is over 300 filings. However, he has no damages, and makes very little effort to establish damages. Thus, one is left with the question: *what could possibly motivate someone to devote his life to suing a YouTuber?*

Defendant believes that Plaintiff is mentally ill, and this manifests in his irrational and extreme response to provocations that he has invited. It also manifests in his "stream of consciousness" legal papers, which suggest a disorganized and chaotic mind. Before this case

proceeds further, Plaintiff and the Court should be satisfied that Sweigert is of sound mind. Finally, if the court should allow the case to continue, Defendant should be required to retain counsel.

## **CONCLUSION**

Based on the foregoing, Defendant Jason Goodman respectfully requests that the Court enter an Order under Fed. R. Civ. P. 56:

(1) entering Summary Judgment in favor of Defendant as to Plaintiff's claim for defamation *per se* and *per quod*;

(2) entering Summary Judgment in favor of Defendant as to Plaintiff's claim under §§ 50-51 of the New York Civil Right Law;

(3) entering Summary Judgment in favor of Defendant as to Defendant's counterclaim under the New York anti-SLAPP Law (N.Y. Civil Rights Law §§ 70-a and 76-a), together with an order scheduling further proceedings to quantify Defendant's damages;

(4) declaring that the dismissal of Plaintiff's claims is deemed to be a full and final adjudication on the merits of all claims that Plaintiff has asserted against Defendant or could have asserted as of the date of the entry of judgment;

(5) declaring that Plaintiff Sweigert is a vexatious litigant and ordering that Sweigert make a showing of good cause before commencing another *pro se* action in this Court. *See Ajamian v. Nimeh*, 2014 WL 6078425 at *3;

(6) declaring that Plaintiff Sweigert's bad faith, defamatory comments about lawyers and judges, frequent address changes, frivolous assertion of diversity jurisdiction, and abuse of process amount to a fraud on this Court;

(7) ordering Plaintiff Sweigert to undergo a psychological evaluation and submit the results *in camera* to the Court;

(8) ordering Plaintiff Sweigert to retain counsel in order to continue this litigation; and

(9) granting such other and further relief as the Court may deem just and proper.

Dated:    New York, New York            Respectfully Submitted,
           July 19, 2021

_____

Jason Goodman
*Pro Se* Defendant