**U.S. DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| SWEIGERT | CIVIL CASE #: |
|---|---|
| V. | 1:18-CV-08653-VEC |
| GOODMAN | JUDGE VALERIE E. CAPRONI |

### PLAINTIFF'S ANSWER IN OPPOSITION
### TO DEFENDANT'S
### NOTICE OF MOTION TO HOLD PLAINTIFF IN CONTEMPT

MAY IT PLEASE THE COURT, this document is an **ANSWER** from the scandalous material

that the Defendant has published with improper papers docketed as **ECF doc. 312 and 313.**  The

Plaintiff incorporates the letter (**ECF doc. 314**) to the Magistrate judge as if fully restated herein.

**The undersigned hereby attests under penalties of perjury that the above statements are true and correct to the best of the undersigned's knowledge and memory on this the nineteenth day of September (9/19), two thousand and twenty-one (2021).  A certificate of service is provided on the last page.**

*D. GEORGE SWEIGERT*
*Pro Se Non-Attorney*
*AMERICA'S RVers MAILBOX*
*514 Americas Way, PMB 13339*
*Box Elder, South Dakota 57719-7600*

Created with PDFBear.com

## MEMORANDUM OF LAW TO ACCOMPANY

## PLAINTIFF'S ANSWER IN OPPOSITION

Created with
PDFBear.com

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................................4

**BACKGROUND** .......................................................................................................................6

**STANDARD OF REVIEW** ...................................................................................................20

**CONCLUSION** .......................................................................................................................20

Created with
PDFBear.com

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alexander v. F.B.I.,* 186 F.R.D. 197, 198, 199 (D.D.C. 1999) .....................................................13

*Baldwin Hardware Corp. v. FrankSu Enter. Corp.,* 78 F.3d 550, 555, 561 (Fed. Cir. 1996) ......15

*Cooper v. Texaco, Inc.,* 961 F.2d 71 (5th Cir. 1992) ...................................................................19

*Dely v. Far E. Shipping Co.*, 238 F. Supp. 2d 1231, 1235, 1241 (W.D. Wash. 2003) ................13

*Hilao v. Estate of Marcos,* 103 F.3d 762 (9th Cir. 1996)............................................................19

In re Doe, 860 F.2d 40 (2d Cir. 1988)...........................................................................................19

In re Grand Jury Proceedings, Doe No. 700, 817 F.2d 1108 (4th Cir. 1987), cert. Denied, 484

    U.S. 890 (1987) .......................................................................................................................19

*Klayman v. Barmak,* No. 08-1005 (JDB), 2009 WL 4722803, at *1 (D.D.C. Dec. 4, 2009) .......13

*Klayman v. City Pages*, No. 5:13-cv-00143-ACC-PRL, 2015 WL 1546173, at *8 n.7 (M.D. Fla.

    Apr. 3, 2015) ...........................................................................................................................13

*Klayman v. Judicial Watch, Inc.,* 802 F. Supp. 2d 137, 139 (D.D.C. 2011) ...............................13

*Macdraw, Inc. v. CIT Grp. Equip. Fin., Inc*., 994 F. Supp. 447, 455 (S.D.N.Y. 1997), aff'd 138

    F.3d 33 (2d Cir. 1998) ...........................................................................................................15

*National Academy of Television Arts & Sciences vs. Multimedia System Design (aka Jason*

    *Goodman of Crowdsource the Truth)*....................................................................................8

*United States v. Bundy,* No. 2:16-cr-046-GMN-PAL (D. Nev. Mar. 31, 2016)...........................12

*United States v. O'Quinn,* 913 F.2d 221 (5th Cir. 1990)(per curiam) .........................................19

*Wire Rope Importers' Ass'n v. United States,* 18 C.I.T. 478, 485 (Ct. Int'l Trade 1994).............13

Created with
PDFBear.com

**Rules**

Local Rule 6.1(b)(1).................................................................................................................11

Created with
PDFBear.com

## **BACKGROUND**

Plaintiff hereby ANSWERS Defendant's papers **ECF Doc. no. 312 and 313.**  Within these documents Defendant repeatedly – and without justification – has yet again smeared the Plaintiff's good name as a criminal perpetrator of mail and wire fraud.  Defendant – yet again – attempts to re-litigate issues associated with the co-hosts of his CrowdSource The Truth conspiracy show; George Webb Sweigert and Oakey Marshall Richards and their co-creation of the Port of Charleston "dirty bomb hoax" in June 2017 with Mr. Goodman.

The Defendant misstates the record with regards to the Status and Discovery Conference held March 11, 2021, which he states was necessitated by "refusal of electronic service".  It was not.  To the contrary it was necessitated after two months of a long winding labyrinth of pleadings concerning mailboxes and postal addresses docketed by Mr. Goodman.  The Defendant also misstates the record several times in his papers and falsifies the postal rules regarding the Plaintiff's authorized use of GENERAL DELIVERY mail addresses.

The Defendant rails against the loss of his attorney in another lawsuit (John H. Snyder) and believes that this issue has some bearing in this lawsuit – it is does not.  No evidence has ever been provided of so-called "threats" against Mr. Snyder or his "three-year-old daughter" by the Plaintiff.  This is mere incendiary rhetoric that is conclusionary hearsay and hyperbolic nonsense lacking any foundation to create a prejudicial bias.  This is a vile assertion.

The Defendant and "his associates" are all very public figures that appear on a wide swath of social media podcasts and news channels.  Mr. Goodman's so-called attorney Mr. Larry Elliot Klayman (the most likely ghost writer of the Defendant's papers) describes himself on

Created with
PDFBear.com

many public forums as a conservative radio talk-show host, former U.S. Senate candidate and author.

Defendant's "real" legal counsel, Mr. Snyder, appeared on a CrowdSource The Truth podcast with Mr. Klayman to discuss "lawfare", making Mr. Snyder a well-known public figure subject to open criticism, parody and satire.  Below is a screen shot of Mr. Snyder's appearance on the CrowdSource podcast.



Below is a side-by-side comparison of the Defendant's highly publicized photo of the Plaintiff in a straight-jacket (left) and the so-called "threat", "warning" or "death threat" picture made upon Mr. Snyder's family (right).  Mr. Goodman expects this Court to believe there is some relevancy to all of this and such a cartoon constitutes a "death threat".

Created with
PDFBear.com



Original publication did not include white box over daughter's face but included black box.

The Defendant is seeking relief from this Court for the publication of the parody satire photo of Mr. Snyder and considers such publication an instantiation of "contempt of court", but fails to explain what relevancy Mr. Snyder's public buffoonery has to do with this instant lawsuit.

**UNDISPUTED FACTS**

1.      In piece meal fashion, the Defendant (and most probably his ghost-writing legal counsel Larry Klayman of Freedom Watch, Inc.) have docketed **ECF doc. 312, and 313**.  There is substantial case law that discusses the impropriety of using pleadings such as **ECF 312/313** as a vehicle for launching vile attacks upon opposing parties.

Created with
PDFBear.com

2.      Seen below is Larry Klayman (left) mocking the Plaintiff with the Defendant (right) on a CrowdSource The Truth podcast.  The Court should note the unauthorized Plaintiff's image on the prominently displayed coffee cup.



3.      The Defendant's papers purport to seek enforcement of the Magistrate's order issued March 11, 2021 (**ECF doc. 224 [attached as Exhibit Two]**) by providing unsupported and unsupportable scandalous accusations of serious criminal misconduct by the Plaintiff (mail fraud and wire fraud).

4.      The Defendant (who presently awaits a CONTEMPT OF COURT show cause hearing in related litigation, *National Academy of Television Arts & Sciences vs. Multimedia System Design (aka Jason Goodman of Crowdsource the Truth),* (**described in ECF doc. 310 and 317**), understands firsthand the threshold criteria for civil contempt of the court that warrant court sanctions.  As the ORDER of District Judge Valerie E. Caproni (**ECF Doc. 317**) demonstrates, it is the Defendant, NOT the Plaintiff, that has a history of playing fast and loose with the rules of this Court.

Created with
PDFBear.com

5.      While Mr. Goodman awaits adjudication for contempt of court on October 12, 2021,

before Judge Caproni (**ECF 317**), Mr. Goodman has demonstrated intimate first-hand knowledge

of what is – and what is not -- civil contempt of court.  He is without excuse.

6.      Defendant's reliance on immaterial conclusionary statements to support a notion for

sanctions for civil contempt of court against the Plaintiff are scandalous at the core.  Most, if not

all, of the false and immaterial misrepresentations in these papers (**ECF 312, 313**) rely on

hearsay conjecture.  The 3/11/2021 DISCOVERY ORDER in question (**ECF 224**) placed no

obligation on the Plaintiff, rather said ORDER was completely focused on the Defendant's

conduct orbiting the postal mailing of discovery documents to the Plaintiff.

7.      The Defendant claims in his papers (**ECF 312/313**) that the 3/11/2021 discovery

conference was required due to the lack of electronic service of evidence.  This statement lacks

credibility and attempts to misstate the record.  The conference of 3/11/2021 was ordered by

ECF Doc. 218 on 2/23/2021, which is annotated in the docket as follows.

> The parties are directed to appear for a telephone conference on Thursday, March 11, 2021, at 12:00 p.m. EST to discuss the status of discovery, including the issues raised in Plaintiff's February 19, 2021 Letter (**ECF No. 211**) or Plaintiff's February 22, 2021 motion to compel (**ECF No. 215**). If Defendant wishes to file a written response to either of these filings, he shall do so no later than March 9, 2021. Otherwise, Defendant may respond orally during the telephone conference.

8.      As stated above, it was the Plaintiff's Motion to Compel discovery of 2/22/2021 (**ECF Doc. 215**) that served as the catalyst for the March 11, 2021, discovery conference.  See below:

> PLAINTIFF'S NOTICE OF RULE 37(2)(B) MOTION TO COMPEL FULL & ACCURATE ANSWERS FROM DEFENDANT TO SUPPORT ECF DOC. NO. 204, re: to Compel Jason Goodman to supplement ECF numbered document 204. Document filed by D George Sweigert.(sc) (Entered: 02/23/2021)

Created with
PDFBear.com

9.      The Court will recall several months of unnecessary pleadings and arguments related to the use of a GENERAL DELIVERY address in Rough and Ready, California provided by the U.S. Postal Service.  It was the postal controversary created by the Defendant that immediately proceeded the discovery conference of 3/11/2021, which had nothing to do with electronic service (which the Plaintiff has a right to refuse).

10.     Mr. Goodman has NEVER reported his concerns about mail fraud to the proper U.S. postal authorities, saving such juicy gossip for the ears of this Court.  Indeed, there is nothing to report.  As shown below, the Plaintiff received postal mail from the U.S. Circuit Court of Appeals for the Second Circuit at the so-called "illegal address" that the Plaintiff has no access to:





Created with
PDFBear.com

11.     The Court should note that the Defendant DOES NOT file <u>certificates of service</u> with his

pleadings, which turns Fed. R. Civ. Proc. Rule 5(b)(2)(C) on its ear.

abode with someone of suitable age and discretion who resides there;

(C) mailing it to the person's last known address—in which event service is complete upon mailing;

(D) leaving it with the court clerk if the person has no known address;

12.     Mr. Goodman's continual refusal to provide proof of service and serve pleading papers

on the Plaintiff also violates Local Rule 6.1(b)(1).

> (b)     On all civil motions, petitions, and applications, other than those described in Rule 6.1(a),
>
> and other than petitions for writs of habeas corpus, (1) the notice of motion, supporting affidavits, and
>
> memoranda of law shall be served by the moving party on all other parties that have appeared in the
>
> action, (2) any opposing affidavits and answering memoranda shall be served within fourteen days after

13.     These cited rules above place a burden on the Defendant and not the Plaintiff.  In fact,

there is no rule that mandates that any federal plaintiff provide a "correct address" to the court, as

it is to the plaintiff's detriment not to the keep the court informed of a current mailing address.

To the contrary with Mr. Goodman, as he does not provide service of documents (mail or

otherwise) the plaintiff is forced to expend hundreds of dollars to constantly check the PACER

ECF database for docket changes to this lawsuit.

14.     Mr. Goodman unconvincingly (without proof) complains of materials being returned to

him by the post office – something that occurred in 2019.  This is an inconsequential matter

considering Local Rule 6.1(b)(1) that perfects service at the time of mailing.  As Mr. Goodman

refuses to docket the mandatory certificate (proof) of service, materials cannot be returned by the

postal service that have never been mailed.  In any event, there is no rule requiring the Plaintiff

to provide what Mr. Goodman calls a "correct address".

Created with
PDFBear.com

15.     As **EXHIBIT ONE (**Affidavit of the Plaintiff) describes, postal packages sent by the Defendant were received from the postmaster by the Plaintiff at the designated address and on two (2) occasions when postal signature receipt cards were filled out and completed by postal authorities in compliance with the ORDER of 3/11/2021 (**ECF 224**).

16.     These delivery confirmation signature cards confirmed the physical receipt of the Defendant's discovery materials at the designated address.  Mr. Goodman knows this -- he requested the tracking and delivery confirmation signature cards (which required a "wet signature" from the Plaintiff).

17.     The Plaintiff's rigorous review of over thirty (30) federal court cases involving "Special Prosecutor" Larry E. Klayman indicates that these types of tactics are part and parcel of the way nationally known vexatious attorney Klayman prosecutes frivolous litigation.  Mr. Goodman's "associate and attorney" Mr. Klayman has received at least three (3) bar association suspensions (Pennsylvania, District of Columbia, and Florida) and a suspension from the U.S. District Court for the Northern District of Texas.  See

https://www.cadc.uscourts.gov/internet/opinions.nsf/8B3A1624667231A3852586A400509860/$file/20-7110-1891862.pdf and https://lawandcrime.com/high-profile/federal-appeals-court-suspends-larry-klayman-from-practicing-law-in-d-c/ and

https://www.pacourts.us/assets/opinions/DisciplinaryBoard/out/Klayman%20Order.pdf?cb=1 and https://floridajustice.com/wp-content/uploads/2020/02/246220_7915.pdf

18.     The following federal courts have limited and/or prohibited Mr. Klayman's practice of law: *United States v. Bundy,* No. 2:16-cr-046-GMN-PAL (D. Nev. Mar. 31, 2016), ECF No. 215 (denying Mr. Klayman admission pro hac vice due to his "failure to fully disclose disciplinary actions and related documents"); *Klayman v. City Pages*, No. 5:13-cv-00143-ACC-PRL, 2015

Created with
PDFBear.com

WL 1546173, at *8 n.7 (M.D. Fla. Apr. 3, 2015) (noting that Mr. Klayman "has routinely shown

a disregard for [the court's] Local Rules" and that "the Court has become quite frustrated with

Plaintiff's various tactics to avoid Court rules throughout the course of this litigation"); *Klayman*

*v. Judicial Watch, Inc.,* 802 F. Supp. 2d 137, 139 (D.D.C. 2011) (describing "[Mr.] Klayman's

consistent pattern of engaging in dilatory tactics, [] disobedience of Court-ordered deadlines, and

[] disregard for the Federal Rules of Civil Procedure and the Local Rules of this Court," and

noting that "the Court's use of lesser sanctions in the past [had no] discernible effect on

Klayman's conduct in this litigation"); *Klayman v. Barmak,* No. 08-1005 (JDB), 2009 WL

4722803, at *1 (D.D.C. Dec. 4, 2009) (noting that Mr. Klayman was previously sanctioned in the

case for "failing to comply with even the most basic of discovery requirements," and describing

how Mr. Klayman had requested six different extensions to respond to a single motion to

dismiss); *Dely v. Far E. Shipping Co.*, 238 F. Supp. 2d 1231, 1235, 1241 (W.D. Wash. 2003)

(describing Mr. Klayman's "baseless and offensive," "bizarre," and "beyond far-fetched"

accusations of misconduct by the presiding judge); *Alexander v. F.B.I.,* 186 F.R.D. 197, 198, 199

(D.D.C. 1999) (describing Mr. Klayman's repeated "disregard of the local rules of this court,"

noting that the court had to remind Mr. Klayman of the court's local rule "at least three times

before"); *Wire Rope Importers' Ass'n v. United States,* 18 C.I.T. 478, 485 (Ct. Int'l Trade 1994)

(sanctioning Mr. Klayman because his "frivolous filings have wasted time and resources of

defendant as well as of the court").

19.    Mr. Klayman has sued his former business partner (Tim Fitton) at least eleven (11) times

and political operative Roger Stone at least eleven (11) times.  Mr. Goodman is merely "Special

Prosecutor". Klayman's ghost writing mouthpiece for the filing of endless vexatious and

frivolous pleading papers.  It was Mr. Klayman that authored the bulk of the Defendant's

voluminous and frivolous pleadings during the previous three (3) years of this litigation.

20.     Seen below is "Special Prosecutor Larry Klayman" (left) issuing a criminal indictment

against Robert S. Mueller, III with the help of the Defendant (right).



Above:  Larry Klayman and Jason Goodman about to indict Robert S. Mueller, III for
various crimes as part of the Citizens Grand Juries.  A copy of the indictment is below.

21.     The Defendant, (1) while in possession of these delivery confirmation signature cards,

and awaiting a <u>civil contempt of court hearing</u> (*NATAS v. Crowdsource*), (2) filed these

<u>immaterial and scandalous</u> papers (**ECF 312/313**, with the highly probably assistance of so-

called alt-right conservative lawyer and radio talk show host Mr. Klayman) and (3) has

fabricated another <u>redundant</u> request that orbits mail boxes, so-called mail fraud and postal

addresses (brought to this Court's attention at least seven (7) times on numerous occasions by the

Defendant).

22.     The Defendant is an expert at using his podcast empire to support Mr. Klayman's *stunt

litigation* lawsuits (cited by the Ninth and Fifth Circuit Courts for improper conduct in the course

of civil litigation [See *United States of America v. Cliven D. Bundy*, U.S.C.A. for the Ninth

Circuit, D.C. No. 2:16-cr-00046-GMN-PAL-1,

https://cdn.ca9.uscourts.gov/datastore/opinions/2020/08/06/18-10287.pdf and Demetrick Pennie

v. Dallas Morning News, U.S.C.A. for the Fifth Circuit, No. 20-10349

, http://www.ca5.uscourts.gov/opinions/unpub/20/20-10349.0.pdf ]).

23.     The Ninth Circuit Court of Appeals, in an October 2016 decision, upheld a decision by

the District Court for the District of Nevada to deny Mr. Klayman's *pro hac vice* application. In

a detailed opinion reviewing Mr. Klayman's professional history, the Ninth Circuit found that

Mr. Klayman had, for more than twenty years, demonstrated a pattern of inappropriate and

unprofessional behavior that justified denying his *pro hac vice* admission. In fact, on no fewer

than fourteen occasions, courts have sanctioned Mr. Klayman, denied or revoked his pro hac vice

status, and/or admonished him for his behavior. Two district courts have taken the remarkable

step of banning Mr. Klayman from their courtrooms for life.

24.     In fact, A judge sitting on the S.D.N.Y. sanctioned Mr. Klayman and permanently

revoked his *pro hac vice* admission after Mr. Klayman questioned the judge's impartiality due to

the judge's race and the political affiliation of the president who appointed him. *Macdraw, Inc. v.*

*CIT Grp. Equip. Fin., Inc*., 994 F. Supp. 447, 455 (S.D.N.Y. 1997), aff'd 138 F.3d 33 (2d Cir.

1998) (describing Mr. Klayman's conduct towards the judge as "insulting and smack[ing] of

intimidation"). And after sanctioning Mr. Klayman for "fail[ing] to comply with local rules and

for unreasonably and vexatiously multiplying the proceedings," a judge in the Central District of

California "permanently and prospectively barr[ed] Mr. Klayman from appearing before him" in

the future. *Baldwin Hardware Corp. v. FrankSu Enter. Corp.,* 78 F.3d 550, 555, 561 (Fed. Cir.

1996) (internal quotation marks omitted) (affirming district court's actions)."

Created with
PDFBear.com

25.     Mr. Klayman, a general-purpose public figure, has appeared on the Defendant's podcast network at least seventy-five (75) times since January 2018.   For more than two decades, Mr. Klayman has repeatedly drawn the ire of courts across the country, resulting in sanctions, denials or revocations of *pro hac vice* admissions, and vehement criticism of his behavior by multiple judges.  It was the publishing of such information on the "blog post" that resulted in the claims of "death threats".



Mr. Klayman dresses up as Thomas Jefferson for his Citizen Grand Jury

**26.**     The Defendant seeks contempt of court sanctions against the Plaintiff for apparently making fun of "his attorneys" with a "blog post".  Mr. Klayman is NOT Mr. Goodman's attorney as confirmed in the related litigation.  See **EXHIBIT THREE** below.

Mr. Klayman has not been retained by and does not represent me or Multimedia System Design, Inc ("MSD").  Mr. Klayman is a friend, colleague, and regular co-host on my talk show.  Like me and Mr. Snyder, Mr. Klayman has been persistently harassed by David George Sweigert (not to be confused with his brother and alleged co-conspirator George Webb Sweigert).

Created with
PDFBear.com

27.     In fact, as explained in **EXHIBIT FOUR** Mr. Goodman referred to Mr. Snyder as "my

incompetent former attorney", see below.

> that got sent back in response to that.  I'd like to speak to you about this.  I'm not
> represented by counsel as you well know because of agitation from Mr. Swiegert and
> threats made to my incompetent former attorney, Mr. Snyder, but I would like to speak
> with you, or one of the other lawyers on this case.  Please give me a call on 323-744-
> 7594.  Thank you.

28.     In **EXHIBIT FIVE** Mr. Goodman states that he doubts the outlandish "death threat"

story of Mr. Snyder, see below.

> In furtherance of their bad faith allegations, Plaintiff asserts that I claimed Sweigert
> threatened my prior counsel's family.  This is yet another spurious misrepresentation in support
> of their false claims.  I merely reiterated that this claim was made by Mr. Snyder and directly
> cited as his motivation to withdraw.  I share Plaintiff's opinion that the story is not credible, nor
> consistent with an individual who I hired intending to subpoena the CIA and challenge a
> powerful, moneyed entity like NATAS.  In fact, it is hard to imagine an individual who initially
> represented himself to me this way retreating from the cowardly threats of an obsessed
> individual's psychotic blog posts.

29.     Interestingly, Mr. Goodman changed his version of the facts within a few days

concerning "death threats", as shown in **EXHIBIT THREE** (see below).

> The Court is aware Sweigert's death threat against Mr. Snyder's three-year-old infant daughter was the
> direct cause cited by Snyder for his withdrawal.  Sweigert's brazen harassment of me, my lawyer, and
> my associates in addition to his other disturbances of this legal matter has substantially complicated my
> task of retaining new counsel.

30.     In fact, while this document was in the preparation stages, the New York Police

Department called upon Mr. Goodman at his residence for a stalking complaint of a woman in

the Port of Charleston, South Carolina area.



8:42 PM · Sep 17, 2021 · Twitter Web App

https://twitter.com/jasongoodman3d/status/1439072249395523587

31.      In the above cited Internet video, posted by Mr. Goodman on 9/18/2021, he is heard

telling police officers that someone "came into my building" and "broadcast my address" with

instructions to the public to "kill that f_cking Jew", insinuating that the Plaintiff is the person

who made these outlandish "death threats".  Another hallmark of Larry Klayman.

32.      In fact, the woman at the Port of Charleston, S.C. blocked Mr. Goodman on Twitter, then

apparently, Mr. Goodman located her unpublished number and called her telephone to assail her

with name-calling, including the names "b_itch" and "c_nt".  Hallmark of Larry Klayman.

33.      The filing of these papers (**ECF 312/313**) cannot purport to support Plaintiff's

compliance with the 3/11/2021 ORDER (**ECF 224**).  These papers are just more artifacts of *stunt*

*litigation* practiced by Mr. Goodman's ghost-writing associates (Larry E. Klayman and John

Hoover Snyder).

Created with
PDFBear.com

34.     In sum, Defendant's vicious charges are transparently intended not only to complicate and delay these proceedings (a hallmark of Larry Klayman), but to embarrass, harass, and intimidate the Plaintiff to create a prejudicial environment in this Court.

### STANDARD OF REVIEW

35.     In order to hold a party accountable for violating a court order, the order is required to have been clear and unambiguous.  See *Cooper v. Texaco, Inc.,* 961 F.2d 71 (5th Cir. 1992); *United States v. O'Quinn,* 913 F.2d 221 (5th Cir. 1990)(per curiam).

36.     Civil contempt must be proved by clear and convincing evidence.  *Hilao v. Estate of Marcos*, 103 F.3d 762 (9th Cir. 1996); In re Doe, 860 F.2d 40 (2d Cir. 1988); In re Grand Jury Proceedings, Doe No. 700, 817 F.2d 1108 (4th Cir. 1987), cert. Denied, 484 U.S. 890 (1987).

### CONCLUSION

37.     For the foregoing reasons, the Plaintiff respectfully asks this Court for an Order striking the entire pleading papers listed as **ECF doc. 312 and 313**.

**The undersigned hereby attests under penalties of perjury that the above statements are true and correct to the best of the undersigned's knowledge and memory on this nineteenth day of September (9/19), two thousand and twenty-one (2021).  A certificate of service is provided on the last page.**

*D. GEORGE SWEIGERT*
*Pro Se Non-Attorney*
*Americas RVers MAILBOX*
*514 Americas Way, PMB 13339*
*Box Elder, South Dakota 57719-7600*

Created with
PDFBear.com

<u>**CERTIFICATE OF SERVICE**</u>

**The undersigned hereby attests under penalties of perjury that copies of this communication have been transmitted via electronic mail message to the following parties on this nineteenth day of September (9/19), two thousand and twenty-one (2021).**

| Clerk of the Court, Room 200 temporary_pro_se_filing@nysd.uscourts.gov | Jason Goodman, CEO truth@crowdsourcethetruth.org |
|---|---|

*D. GEORGE SWEIGERT*
*Pro Se Non-Attorney*
*AMERICAS RVers MAIL BOX*
*514 Americas Way, PMB 13339*
*Box Elder, South Dakota 57719-7600*

Created with
PDFBear.com

# EXHIBIT ONE

### AFFIDAVIT OF THE PLAINTIFF

THE UNDERSIGNED SWEARS that he has received discovery materials from a United States postal official at the designated address described in the ORDER of March 11, 2021, known as **ECF doc. no. 224.**  The undersigned completed "wet signature" tracking delivery confirmation cards when these materials were received.  These signature cards were part of the EXPRESS MAIL postal service and provided the sender with delivery confirmation and tracking.  The undersigned observed that the return address of these two (2) packages was that of Mr. Jason Goodman at the address listed as his address on the Court docket (New York, New York).  The undersigned inquired of the postal official if Mr. Goodman would receive a copy of the signature card and heard an answer in the affirmative for both postal packages.

**The undersigned hereby attests under penalties of perjury that the above statements are true and correct to the best of the undersigned's knowledge and memory on this the nineteenth day of September (9/19), two thousand and twenty-one (2021).  A certificate of service is provided on the last page.**

*D. GEORGE SWEIGERT*
*Pro Se Non-Attorney*
*AMERICAS RVers MAILBOX*
*514 Americas Way, PMB 13339*
*Box Elder, South Dakota 57719-7600*

# EXHIBIT TWO

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

D George Sweigert,

                      **Plaintiff,**

              -against-

Jason Goodman,

                    **Defendant.**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___3/11/2021___
```

**1:18-cv-08653 (VEC) (SDA)**

<u>**ORDER**</u>

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE:**

      Following a telephone conference with the parties, and for the reasons stated on the record, it is hereby Ordered that Plaintiff's motion to compel (ECF No. 215) is GRANTED IN PART and DENIED IN PART as follows:

1. No later than April 12, 2021, Defendant shall respond to Plaintiff's Interrogatory Nos. 1(c) and 1(d) for the time period of January 1, 2017 to the present.

2. No later than April 12, 2021, Defendant shall produce any documents responsive to Plaintiff's Document Request Nos. 2(a), 2(c) and 2(d), for the time period of January 1, 2017 to the present, by mailing such documents to Plaintiff at the following address (as listed on the docket): General Delivery, Nevada City, CA 95959. If Defendant withholds any document on the basis of privilege, Defendant must provide Plaintiff with a privilege log, in accordance with federal Rule of Civil Procedure 26(b)(5), by the same date.

The Clerk of Court is respectfully requested to mail a copy of this Order to the *pro se*

Defendant.

**SO ORDERED.**

DATED:      New York, New York
              March 11, 2021

                                  STEWART D. AARON
                                  United States Magistrate Judge

# EXHIBIT THREE

20-cv-7269

Hon. Judge Valerie E. Caproni
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

August 25, 2021

Your Honor,

Mr. Klayman has not been retained by and does not represent me or Multimedia System Design, Inc ("MSD"). Mr. Klayman is a friend, colleague, and regular co-host on my talk show. Like me and Mr. Snyder, Mr. Klayman has been persistently harassed by David George Sweigert (not to be confused with his brother and alleged co-conspirator George Webb Sweigert).

The correspondence between myself and Mr. Klayman did not pertain to NATAS v MSD but rather my ongoing efforts with Mr. Klayman to stop Sweigert's vexatious and damaging criminal harassment. Mr. Klayman and I have met and conferred with law enforcement several times including NYPD, Philadelphia PD and the FBI Joint Terrorism Task force. We have submitted numerous reports to the FBI pertaining to the death threat and other things perpetrated by Sweigert.

The Court is aware Swiegert's death threat against Mr. Snyder's three-year-old infant daughter was the direct cause cited by Snyder for his withdrawal. Sweigert's brazen harassment of me, my lawyer, and my associates in addition to his other disturbances of this legal matter has substantially complicated my task of retaining new counsel.

I should also further clarify that no business entity Multimedia Systems Design, Inc ("MSDI") exists to my knowledge. These are misnomers deliberately introduced by Sweigert, repeated and galvanized by Plaintiff and now referenced by the Court. My corporation is Multimedia System Design, Inc. There is no pluralization in the correct name. The company has only been referenced by the Defendant in this action as ("MSD") or ("Multimedia") and I articulated this to Plaintiff in my deposition. I respectfully request that the Court compel the Plaintiff to discontinue use of the MSDI misnomer. I allege Plaintiff is using this misnomer intentionally to assist Mr. Sweigert in defiance of my repeated requests.

As a professional hacker and social engineer, Sweigert regularly relies on false online identities, false mailing addresses, falsely named social media accounts and even clandestine third-party operatives in furtherance of his vexatious behavior. Sweigert tags hidden posts and identifies targets with coded names like "#SDNYORG" to catalog material, facilitate searches of hidden information and enable cooperation between clandestine operatives who may not even know the full scope of Sweigert's efforts, or the identities of others involved.

I allege Sweigert is doing this now as part of his hacker social engineering effort to penetrate and affect the outcome of this instant legal action. Plaintiff's use of the false moniker "MSDI" is assisting Sweigert. Despite repeated strenuous efforts by me to cause the Plaintiff to cease utilizing this coded false reference, Plaintiff has persisted in relying on Sweigert's nomenclature and has even relied on false evidence provided by Sweigert. I continue to allege this is motivated by Plaintiff's intention to cooperate with Sweigert as I have from the outset of this matter.

I was not aware and do not recall that ███████████████ was subject to a protective order. If Mr. Snyder shared that with me, I do not recall him telling me it was to be kept secret. Prior to the

commencement of this legal action, I informed Plaintiff that I believed the owner of that email account to be Mr. Sweigert or someone acting on his behalf. I further stated my belief that this matter was brought for the improper purpose of financially harassing me and placing me in legal jeopardy, NOT to cure the alleged injury. Rather than accepting my offer of August 2020 to remove the image quickly and quietly prior to the start of this action, Plaintiff insisted on damaging my business by disabling my YouTube account and pursuing costly, time-consuming legal action, demonstrating their shared goal with Sweigert.

In fact, the last question I asked Mr. Snyder before he informed me of his intention to withdraw was in regard to this email address. I had insisted for months that Snyder seek a subpoena of Google to learn the identity of the owner of this jealously guarded email address and he inexplicably refused to do it. He then refused to answer why he would not and simply proceeded to withdraw.

I remain curious as to why counsel for Plaintiff initially made a false statement about the identity of the email owner and now remains adamant in its effort to suppress the origin of the email which gave rise to this entire dispute.

I am actively seeking counsel to carry on with this matter and intend to have new representation prior to the deadline provided by the Court.


Respectfully Submitted,



Jason Goodman
252 7th Avenue #6s
New York, NY 10001
truth@crowdsourcethetruth.org
323-744-7594

# EXHIBIT FOUR

# EXHIBIT B

# **T**elephone **T**ranscription 

*Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P.*

To:        Margaret Esquenet

From:     Jason Goodman

Subject:  Voicemail (323-744-7594) Monday, August 23, 2021 4:43 PM

---

    Ms. Esquenet, this is Jason Goodman calling.  I am trying to reach you, or one of the other attorneys for the plaintiff in NATAS v. MSD to discuss, I guess what we would call an inadvertent disclosure that took place a little earlier today.  I'm not sure if you've had a chance to see your emails but it pertains to a message sent by Mr. Swiegert, cc'd to a bunch of people, and an inadvertent message -- actually two inadvertent messages that got sent back in response to that.  I'd like to speak to you about this.  I'm not represented by counsel as you well know because of agitation from Mr. Swiegert and threats made to my incompetent former attorney, Mr. Snyder, but I would like to speak with you, or one of the other lawyers on this case.  Please give me a call on 323-744-7594.  Thank you.

# EXHIBIT FIVE

Hon. Judge Valerie E. Caproni
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

September 13, 2021

Re:　　NATAS v. Multimedia System Design Inc., 20-CV-7269 (Caproni, J.)
　　　　Defendant's Letter Reply to Plaintiff's Response re: Order to Show Cause

Dear Judge Caproni:

I submit this letter pursuant to Your Honor's Order to show cause dated August 25, 2021 (*see* ECF No. 112, the "Order to Show Cause" or "Order") and in reply to Plaintiff's "Letter Response." *See* ECF No. 117. I remain unrepresented in the above referenced matter, and I was not represented at the time I sent the email this reply pertains to.

First, Plaintiff incorrectly asserts that I obtained the confidential email address from a document (ACAD_00001084) that was marked "CONFIDENTIAL" under the Protective Order. To my knowledge, my former attorney obtained this document, I have no recollection of seeing it. Additionally, I was not present at and have not reviewed the contents of the deposition of Plaintiffs' Fed. R. Civ. P. 30(b)(6) witness as presumed.

At the time these documents were produced, I was represented by Mr. Snyder. As far as I know there were numerous documents transmitted to him that I have not seen. Because I am defending myself pro se in many other cases involving David G. Sweigert, and because I was represented by Mr. Snyder in this matter, he handled details of this case on my behalf. Mr. Snyder received these documents and told me what he chose to about them. To the best of my recollection the email address was conveyed to me on a telephone call with Mr. Snyder. I cannot recall if he initially said it was under protective order, but I do recall him telling me later that it no longer was. From this I deduced he may have previously said otherwise.

Plaintiff's second allegation is also false. I recall Mr. Snyder telling me in another telephone conversation after either one of the hearings or depositions that Mr. Eichner or perhaps Mr. O'Reilly, I cannot recall which, had mentioned the email address or had otherwise included it in a document that was not properly presented and that this action put it into the public domain. This was not told to me during a hearing, but in an off the record telephone conversation between me and Mr. Snyder that I am conveying to the best of my recollection.

The details I recall most clearly about this email address pertain to my efforts to get Mr. Snyder to subpoena Google and learn the owner's identity. To my tremendous frustration, he refused to do this. I repeatedly told Mr. Snyder as I have Ms. Esquenet that the identity of that email address owner was extremely important to this case. I allege that email address is controlled by Mr. Sweigert or an individual or computer program acting on his behalf. As I recall, when Mr. Snyder told me the address was no longer confidential, I asked him again to subpoena Google, but he told me discovery had closed. I asked what would be involved in reopening it and he would not respond to that. Despite my own low confidence of success, I suggested simply emailing the person to ask who they were. Mr. Snyder was adamant that it would not be appropriate and urged me not to do it. I was extremely frustrated that Mr. Snyder failed to subpoena Google and in fact we argued about it directly before he withdrew.

Plaintiff's response letter underscores the importance of my prior counsel's failure to provide written notice objecting to the confidentiality designation. Learning this detail for the first time now only furthers my frustration with Mr. Snyder. I made it very clear to him at the outset of this matter that I wanted the identity of that person brought into this case and I still do. I do not believe justice can be properly served until that identity is known and the source and motivation of that email are fully understood.

Plaintiff's third audacious allegation is predicated on the ludicrous claim that they know what I did or did not understand and the time of my email to Mr. Klayman. As the court and Plaintiff are aware, for the past three years David G. Sweigert has pursued me and my friends and colleagues in a virtually psychotic endeavor to involve himself in and foment as many legal actions against me as he can. I have previously alleged he is doing this to harass me and destroy me financially. Simultaneously, he engages in extrajudicial activities including cyber stalking, harassment, and interference with my business and personal relationships, including inappropriate efforts to thwart Mr. Snyder's representation of me in this instant action.

Separate and apart from this legal matter, Sweigert has been waging an online harassment, defamation and letter writing campaign against my personal friend and associate Larry Klayman. The emails at issue between me and Mr. Klayman pertain to our ongoing cooperation with various law enforcement agencies to seek redress from Sweigert's cyber harassment. Mr. Klayman does not represent me in any legal action, but we are cooperating in an effort to stop Sweigert via legal means.

Thus, my reference to the email address was made in consideration of Snyder's recent withdrawal and my defiance of his advice to not contact the person. At the time I did it, I did not know it might violate an order of protection. I did not willfully defy any court order as far as I was aware. I presumed I was merely violating instructions from my former attorney and that he might have given them to me to protect his own interests in conflict with mine.

My reference to NATAS attorneys in the email pertains to my persistent and ongoing allegations that NATAS is cooperating with Sweigert in furtherance of his harassment. This current inadvertent email snafu, fomented by Mr. Sweigert's unnecessary and vexatious communication, is additional evidence supportive of that claim.

Previously in this litigation, Plaintiff has requested emails sent to and from an address provided to them by Mr. Sweigert which is not owned or controlled by me. They are literally using information from Sweigert in furtherance of this litigation and to unnecessarily increase these proceedings. This is the very definition of cooperation and demonstrates that Plaintiffs and Sweigert are aligned in their purpose. I have been trying everything I can to explore the true depth of this obvious cooperation. I have stated my belief that NATAS is jealously protecting this confidential email address not because of concerns for the owner's privacy, but rather because they may know it will reveal inconvenient facts damaging to their case. Because Mr. Klayman does not represent me, he has offered no advice as to what I should do about that.

Plaintiff further alleges my truthful statements "defy credulity". However, what actually defies credulity is the notion that a former self-proclaimed Democrat political operative cum social media expert turned CEO of a tax-exempt corporation would so brazenly ignore his legal and fiduciary obligations to his own Board of Directors and taxpayers by insisting to proceed with this unnecessary and expensive litigation. Plaintiffs' failure to explore my good faith, no cost offer to immediately remove the content over one year ago demonstrates that this lawsuit was brought for the same improper purpose for which Sweigert perpetuates actions against me.

In the Response to Plaintiff's claims that this harmless error is anything other, I first offer the evidence that public search engines and even sophisticated reverse email lookup sites reveal no name, address, phone number, website, social media profile or any information at all related to the email address. In addition to revealing no personal private information, this supports my claim that the email address was likely created recently and was used exclusively by Sweigert or some entity acting on his behalf to alert NATAS and agitate this lawsuit.

I allege there is a low probability that CNN or other major media outlets pose any threat to this email address or its anonymous owner. I can foresee no entity taking any action that could be harmful beyond sending spam messages to the email address. As any email user should be aware, recipients can block individual incoming addresses that send unwanted communications. I would ask the Court to take notice that Plaintiffs have chosen NOT to block incoming email from Mr. Sweigert. Instead, Plaintiffs have repeatedly used information from Sweigert's inappropriate communications to generate false claims and increase these proceedings.

Lastly, after many weeks, there has been no response, no complaint, no warning, and no observable repercussions regarding the email address. As time passes it becomes increasingly unlikely that any might come about. No evidence of any direct harm has been presented. The identity, location, and actual private personal information of the owner of the address remain private and unknown. This was a harmless, unintentional error and should not result in punitive sanctions.

In furtherance of their bad faith allegations, Plaintiff asserts that I claimed Sweigert threatened my prior counsel's family. This is yet another spurious misrepresentation in support of their false claims. I merely reiterated that this claim was made by Mr. Snyder and directly cited as his motivation to withdraw. I share Plaintiff's opinion that the story is not credible, nor consistent with an individual who I hired intending to subpoena the CIA and challenge a powerful, moneyed entity like NATAS. In fact, it is hard to imagine an individual who initially represented himself to me this way retreating from the cowardly threats of an obsessed individual's psychotic blog posts.

Plaintiff's allegation that I willfully violated the Court's order is incorrect and supported by false claims, inaccurate assumptions, and unsubstantiated conclusions. For the reasons stated above, this email dispute should be disposed of and no sanctions should result. I further pray the Court will acknowledge the importance of this email address and move sua sponte to reveal the identity of its owner via subpoena to Google's Gmail service.

Respectfully submitted,

Jason Goodman
252 7th Avenue #6s
New York, NY 10001
(323) 744-7594
truth@crowdsourcethetruth.org