USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __10/29/2021__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

D. George Sweigert,

                                    Plaintiff,

                -against-

Jason Goodman,

                                    Defendant.

1:18-cv-08653 (VEC) (SDA)

REPORT AND RECOMMENDATION

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE VALERIE E. CAPRONI, UNITED STATES DISTRICT JUDGE:**

Plaintiff, George Sweigert ("Plaintiff" or "Sweigert"), brings this action asserting claims for defamation and violations of the New York Civil Rights Law based on online comments and postings by Defendant Jason Goodman ("Defendant" or "Goodman"). (Second Amended Complaint ("SAC"), ECF No. 88; First Supp. Compl., ECF No. 150, ¶¶ 1, 39-45, 47-50.) Now before the Court is a motion by Defendant, pursuant to Federal Rule of Civil Procedure 56, for summary judgment.[1] (Def.'s Am. Notice of Motion, ECF No. 302.) For the reasons set forth below, I respectfully recommend that Defendant's motion be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Defendant Goodman creates online news and entertainment content under the brand Crowdsource the Truth. (Def.'s 56.1 Statement, ECF No. 280, ¶ 1; Pl.'s Reply to Def.'s 56.1, ECF No. 297, ¶ 1.) Goodman operates various online accounts including at least one YouTube channel. (Def.'s 56.1 Statement ¶ 3; Pl.'s Reply to Def.'s 56.1 ¶ 3.) In or around 2017, Goodman started

---

[1] This Report and Recommendation also addresses numerous other pending motions filed by the *pro se* parties, the recommended disposition of which is set forth in the Conclusion below.

working with George Webb Sweigert ("Webb"), Plaintiff's brother. (Def.'s 56.1 Statement ¶¶ 7-8; Pl.'s Reply to Def.'s 56.1 ¶¶ 7-8.) Goodman asserts that, in May 2017, Webb introduced him to an individual identified as Robert Stone, whose real name was Oakley Marshall Richards ("Richards"). (Def.'s 56.1 Statement ¶¶ 11-12; Pl.'s Reply to Def.'s 56.1 ¶¶ 11-12.) During a live broadcast on June 14, 2017, Webb informed Goodman that he had information from a meeting with Richards that there could be radiological material on board a vessel that was about to dock in the Port of Charleston, South Carolina. (Def.'s 56.1 Statement ¶¶ 20-21, 25; Pl.'s Reply to Def.'s 56.1 ¶¶ 20-21, 25; Pl.'s 56.1 Counterstatement, ECF No. 299, ¶ 106.) Two of Goodman's audience members called the Coast Guard, which caused a shutdown of the port. (Def.'s 56.1 Statement ¶ 26; Pl.'s Reply to Def.'s 56.1 ¶ 26.) Goodman asserts that Webb, Sweigert and others used his show to spread misinformation to discredit Goodman. (Def.'s 56.1 Statement ¶ 29, 33-36; Pl.'s Reply to Def.'s 56.1 ¶ 29, 33-36.) Plaintiff, however, asserts that Goodman orchestrated the so-called "dirty bomb hoax" to make money on his social media platforms. (SAC ¶ 10.) Since that time, each party believes that the other is engaged in a smear campaign against him. (SAC ¶ 17, 21; Def.'s 56.1 Statement ¶ 38.)

The full procedural history of this action has been recounted by the Court in prior decisions. *See*, *e.g.*, *Sweigert v. Goodman*, No. 18-CV-08653 (VEC) (SDA), 2020 WL 8261567, at *1 (S.D.N.Y. Mar. 2, 2020), *report and recommendation adopted in part, rejected in part* (Aug. 3, 2020). The only claims that remain in this case are Plaintiff's claims for defamation and violations of the New York Civil Rights Law. *See, e.g.*, *Sweigert v. Goodman*, No. 18-CV-08653 (VEC) (SDA), 2020 WL 8918876, at *2 (S.D.N.Y. Oct. 8, 2020).

## SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-23 (1986). If the moving party meets its initial burden, the burden then shifts to the non-moving party to establish a genuine dispute of material fact. *Id*. at 322. "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). A dispute concerning material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. (quoting *Anderson*, 477 U.S. at 248).

The Court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. *See Anderson*, 477 U.S. at 255. Moreover, "[w]here, as here, the party opposing summary judgment is proceeding *pro se*, the court should read his papers 'liberally,' and 'interpret them to raise the strongest arguments that they suggest.'" *Leckie v. Robinson*, No. 17-CV-08727 (PGG) (BCM), 2020 WL 5238602, at *7 (S.D.N.Y. Feb. 6, 2020) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)), *report and recommendation adopted*, 2020 WL 2114846 (S.D.N.Y. May 4, 2020); s*ee also Lerer v. Spring Valley Fire Dep't, Inc.*, No. 19-CV-10714 (CS), 2021 WL 1425238, at *3 (S.D.N.Y. Apr. 14, 2021) ("*Pro se* litigants must be afforded 'special solicitude,'" "particularly where motions for summary judgment are concerned") (quoting *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010); *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014)). "Nonetheless, proceeding pro se does

not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se

party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for

summary judgment." *Parker v. Fantasia*, 425 F. Supp. 3d 171, 183 (S.D.N.Y. 2019) (internal

citations omitted).

## DISCUSSION

I.   **Defendant's Motion Should Be Granted In Part And Denied In Part With Respect To Plaintiff's Defamation Claims**

"Defamation is injury to a person's reputation, either by written expression (libel) or oral

expression (slander)." *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 224 (S.D.N.Y. 2013). To state a

claim for defamation under New York law,[2] "a defamation plaintiff must establish five elements:

(1) a [ ] defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3)

fault [either negligence or actual malice]; (4) falsity of the defamatory statement, and (5) special

damages or per se actionability." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)

(setting forth elements in context of libel claim) (citing *Celle v. Filipino Reporter Enters. Inc.*, 209

F.3d 163, 176 (2d Cir. 2000)); *see also Albert v. Loksen*, 239 F.3d 256, 266 (2d Cir. 2001) (setting

forth similar elements for slander).[3]

Defendant points to twelve statements identified by Plaintiff as defamatory (*see* Pl.'s

Letter, ECF No. 267) and argues that each is either nonactionable opinion, true or otherwise non-

defamatory. (Def.'s Mem., ECF No. 279, at 14-18.) Defendant also argues that summary judgment

---

[2] As with earlier motions, the Court applies New York law as "[t]he parties' briefs assume that New York law controls, and such implied consent . . . is sufficient to establish choice of law." *Chau v. Lewis*, 771 F.3d 118, 126 (2d Cir. 2014) (citing *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000)).

[3] Defendant does not dispute that each of the statements he identifies was published to a third party.

should be granted in his favor because Plaintiff has failed to adduce evidence of special damages or actual malice. (*Id.* at 9-14, 18-19.) Plaintiff responds that the twelve statements identified by Defendant are only a portion of the defamatory statements at issue and points to a series of discovery responses[4] in which Plaintiff identified at least 43 statements by Goodman that he contends are defamatory. (*See* Pl.'s Reply to Def.'s 56.1 at 5.) Plaintiff further argues that there are genuine issues of material fact as to whether these twelve statements are defamatory and that he has adduced evidence of special damages and actual malice.[5] (*See* Pl.'s Opp. Mem. at 6-29.)

Because Defendant's motion addresses only a portion of the alleged defamatory statements identified by Plaintiff (*i.e.*, the twelve statements addressed herein), the Court considers Defendant's motion to be a partial motion for summary judgment as to Plaintiff's defamation claims. I first consider Defendant's arguments regarding whether the twelve statements are nonactionable opinions, true or otherwise non-defamatory, and then consider his arguments regarding special damages and actual malice. For the reasons set forth below, I recommend that Defendant's motion be granted as to Plaintiff's defamation claims based on Statements 1 through 3 and 6 and 12 and denied as to Statements 4 and 5.

### A.    General Standards Governing Defamation Claims

"A statement is 'defamatory' if it exposes an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . .

---

[4] *See* Pl.'s First Response, ECF No. 225, Pl.'s Second Response, ECF No. 230; Pl.'s Third Response, ECF No. 231; Pl.'s Fourth Response, ECF No. 232; Pl.'s Fifth Response, ECF No. 241.

[5] In addition, Plaintiff argues, in accordance with Rule 56(d), that he needs additional discovery regarding the issue of actual malice given the change in the applicable law. (*See* Pl.'s Opp. Mem. at 4-5; Pl.'s Rule 56(d) Mot., ECF No. 281.) The Court addresses this issue in Discussion Section I(D) below.

induce[s] an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of
. . . confidence and friendly intercourse in society.'" *Conti v. Doe*, No. 17-CV-09268 (VEC), 2021
WL 1578047, at *4 (S.D.N.Y. Apr. 22, 2021) (quoting *Celle*, 209 F.3d at 177). As a threshold matter,
a court must determine "whether the statements complained of are reasonably susceptible of a
defamatory construction." *Levin v. McPhee*, 917 F. Supp. 230, 236 (S.D.N.Y. 1996), *aff'd*, 119 F.3d
189 (2d Cir. 1997) (quoting *James v. Gannett Co.*, 40 N.Y.2d 415, 419 (1976)). "If any defamatory
construction is possible, it is a question of fact for the jury whether the statements were
understood as defamatory." *Conti,* 2021 WL 1578047, at *4 (quoting *Purgess v. Sharrock*, 33 F.3d
134, 140 (2d Cir. 1994)); *see also Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986) ("On a
motion to dismiss or for summary judgment, the issue is not whether the court regards the
language as libelous, but whether it is reasonably susceptible of such a construction."). "This
determination is 'guided not only by the meaning of the words as they would be commonly
understood . . . but by the words considered in the context of their publication.'" *Kesner v. Dow
Jones & Co., Inc.*, 515 F. Supp. 3d 149, 170 (S.D.N.Y. 2021) (quoting *Levin*, 119 F.3d at 195).

"Under New York law, statements of opinion are not actionable as defamation, however
unreasonable the opinion or vituperous the expression of it may be." *Kesner*, 515 F. Supp. 3d at
170 (internal quotation marks omitted). "A statement can only be defamatory if it is a statement
of fact; 'pure opinion' cannot be defamatory." *Conti*, 2021 WL 1578047, at *4; *see also Cummings
v. City of New York*, No. 19-CV-07723 (CM) (OTW), 2020 WL 882335, at *15 (S.D.N.Y. Feb. 24,
2020) ("Falsity is a necessary element of a defamation cause of action and because only facts are

capable of being proven false, it follows that only statements alleging facts can properly be the subject of a defamation action.") (internal quotation marks omitted).

Whether a representation is an actionable statement of fact is a question of law for courts to decide. *See Chau*, 771 F.3d at 128. A statement that is capable of being proven false may still be a nonactionable opinion "based on the context in which it was delivered." *Rapaport v. Barstool Sports, Inc.*, No. 18-CV-08783 (NRB), 2021 WL 1178240, at *11 (S.D.N.Y. Mar. 29, 2021); *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 294-95 (1986). "New York courts apply a three-factor test to determine whether a reasonable person would consider a statement to be a 'fact' or a nonactionable 'opinion': (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . [to] readers or listeners that what is being read or heard is likely to be opinion, not fact." *Conti*, 2021 WL 1578047, at *4 (citing *Davis v. Boeheim*, 24 N.Y.3d 262, 270 (2014)).

"This inquiry 'should not consist of a mechanical enumeration of each factor[.]'" *Rapaport*, 2021 WL 1178240, at *11 (quoting *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 153 (2d Cir. 2000)); *see also Steinhilber*, 68 N.Y.2d at 291-92 ("A court must have the flexibility to consider the relevant factors and to accord each the degree of importance which the specific circumstances warrant."). "A court should not 'sift[ ] through a communication for the purpose of isolating and identifying assertions of fact;' rather, it 'should look to the overall context in which the assertions were made and determine on that basis whether the reasonable reader would have believed that the challenged statements were conveying facts about the plaintiff.'"

*Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.*, 178 F. Supp. 3d 118, 159 (S.D.N.Y. 2016) (citing *Davis*, 24 N.Y.3d at 269-70); *see also Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 254 (1991)). "Ultimately, a court must decide whether the challenged statements would 'have been understood by a reasonable [audience] as assertions of fact that were proffered for their accuracy.'" *Rapaport*, 2021 WL 1178240, at *11 (quoting *Brian v. Richardson*, 87 N.Y.2d 46, 53 (1995)).

New York courts also distinguish between statements of "pure opinion" and statements of "mixed opinion." *Conti*, 2021 WL 1578047, at *4 (citing *Davis*, 24 N.Y.3d at 269). A statement of "mixed opinion" is one that "implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it." *Id*. Statements of mixed opinion are not protected opinion under New York's constitution. *See Conti*, 2021 WL 1578047, at *4. Thus, even when the relevant factors suggest that reasonable audiences would understand that what is being said is an opinion, a statement nevertheless may be actionable if it implies that the speaker's conclusion is based on his knowledge of undisclosed facts. *See id*.

**B.     Whether The Statements Are Actionable As Defamation**

For the reasons set forth below, the Court finds that Statements 1, 2, 3, 10, 11 and 12 are not actionable as defamation because they are substantially true, not reasonably susceptible of defamatory construction and/or nonactionable opinions. Statements 4 through 9 are from Defendant's videos that Defendant did not provide to the Court in conjunction with his motion and which are not otherwise accessible to the Court. Thus, since the Court is unable to consider the full context of the videos in which the statements appear, the Court cannot assess on the present record the defamatory nature of those statements.

1.      **Statements 1 And 3 (From "The Sinister Psychological Operation of George Webb Sweigert" Video) Are Not Actionable**

Statement 1 ("You better stop that Dave, because all that stuff is going to the FBI") and Statement 3 ("I am working on a way to figure out how to bring criminal prosecution against these people") were part of a more than thirty-minute video titled "The Sinister Psychological Operation of George Webb Sweigert" ("PsyOp Video") that Goodman posted on the "Crowd Source the Truth2" YouTube channel and on Bitchute on April 7, 2018.[6] (*See* Pl.'s First Response at 3, 6-7; PsyOp Video, *available at* https://www.bitchute.com/video/ufF7P728sViQ/ (last visited Oct. 28, 2021).) Goodman argues that Statements 1 and 3 are not defamatory because they are true. (Def.'s Mem. at 16; Def.'s 56.1 Statement ¶¶ 69, 70, 73, 74) (citing Goodman Decl. ¶ 51).)

"It is axiomatic that truth is an absolute, unqualified defense to a civil defamation action . . . and that substantial truth is all that is required." *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 281 (S.D.N.Y. 2016); *see also Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 242 (2d Cir. 2017) ("'Substantial truth' is the standard by which New York law, and the law of most other jurisdictions, determines an allegedly defamatory statement to be true or false."). Moreover, because falsity is an element of a defamation claim, Plaintiff bears the burden at trial of demonstrating that Defendant's statements are not substantially true. *Cf. Tannerite Sports*, 864 F.3d at 247.

In his declaration, Goodman states, under penalty of perjury, that at the time he made these statements he was in communication with the FBI regarding Sweigert. (Goodman Decl. ¶ 51.) Plaintiff disputes these statements and argues that Defendant has offered no proof of these

---

[6] With respect to Statement 1, Plaintiff cites to the "Crowd Source the Truth2" YouTube channel, which he states has been deleted. (Pl.'s First Response at 3.) However, the video remains available on Bitchute.

communications. (Pl.'s Reply to Def.'s 56.1 Statement at 60-61; *see also* Pl.'s Opp. Mem. at 8.) However, as Defendant points out (*see* Def.'s Reply Mem., ECF No. 303, at 3), Plaintiff has offered no evidence to show that these facts are genuinely disputed, thereby entitling Defendant to summary judgment as to Statements 1 and 3. *See BellSouth Telecommunications, Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (explaining that party opposing motion for summary judgment "may not rest upon mere conclusory allegations or denials" (quotation omitted)).

In any event, even if Statements 1 and 3 are actionable, as set forth in Discussion Section I(C), *infra*, I find that they are not defamatory *per se* and Plaintiff has not adduced evidence of special damages. For these reasons, I recommend that Defendant's motion be granted as to Plaintiff's defamation claim based upon Statements 1 and 3.

### 2.    Statement 2 (From "Lift the Veil" Podcast) Is Not Actionable

In Statement 2, Goodman groups together two statements—"that man should be in jail" and "that's criminal prosecution, I intend to get them prosecuted criminally"—that were part of an approximately one hour and forty-five-minute episode of a podcast entitled "Lift the Veil" on April 6, 2018. (Def.'s Mem. at 16; Pl.'s First Response at 4; 4/6/2018 Lift the Veil Podcast, *available at* https://soundcloud.com/altnews/462018-jason-goodman-calls-lift-the-veil (last visited Oct. 28, 2021), at 1:01:12, 1:12:23.) Goodman argues that these statements are nonactionable opinions. (Def.'s Mem. at 16.) The Court agrees.

First, the statement, "that man should be in jail," Goodman's use of the word "should" suggests to the audience that he is expressing his opinion and renders the statement incapable of being proven true or false. *See Carto v. Buckley*, 649 F. Supp. 502, 511 (S.D.N.Y. 1986) ("A statement phrased in a manner that its truthfulness can never be determined, as here [referring

to speaker's use of word 'presumably'], is opinion.") Moreover, the immediate context of the statement reveals that Goodman set forth certain facts on which he based his opinion. *See Elias v. Rolling Stone LLC*, 872 F.3d 97, 111 (2d Cir. 2017) ("[I]f a statement of opinion either discloses the facts on which it is based or does not imply the existence of undisclosed facts, the opinion is not actionable[.]"). The broader context of the statement, made during a podcast interview and part of a long-running feud between Plaintiff and Defendant, further signals to listeners that what was being heard was the speaker's opinion. *See Ganske v. Mensch*, No. 19-CV-06943 (RA), 2020 WL 4890423 (S.D.N.Y. Aug. 20, 2020) (statements made in "informal" and "freewheeling" internet fora were nonactionable opinions) (citing cases); *see also Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 295 (E.D.N.Y. 2015) ("New York courts have consistently protected statements made in online for[a] as statements of opinion rather than fact.") (citations omitted).

As for the second statement, the Court also finds that it is not actionable. Prior to the statement at issue, Goodman is discussing a lawsuit filed against him by Robert Steele and the suggestion that Goodman is a member of Mossad, the national intelligence agency of Israel. (4/6/2018 Lift the Veil Podcast at 1:10:39.) The podcast host, Nathan Stolpman, remarks that Goodman would be better off ignoring that type of comment, rather than filing a civil lawsuit and when Goodman responds that he did not file a lawsuit, Stolpman interjects, saying "but you've contacted the FBI," to which Goodman replies "that's criminal prosecution, I intend to get them prosecuted[.]" (*Id.* at 1:12:23 to 1:12:28.) Goodman made this statement while discussing a lawsuit filed by Steele and, thus, it does not appear to be "of and concerning" Plaintiff. *See Diaz v. NBC Universal, Inc.*, 536 F. Supp. 2d 337, 342 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 94 (2d Cir.

2009) (noting that "the 'of and concerning' requirement generally presents a factual question for the jury," but dismissing claim where statements were "incapable of supporting a jury's finding that the allegedly libelous statements refer to plaintiff."). In any event, as with the first portion of Statement 2, the context of this statement indicates that it is a nonactionable opinion. *See Rapaport*, 2021 WL 1178240, at *11.

Finally, even if Statement 2 is actionable, as set forth in Discussion Section I(C), *infra*, I find that it is not defamatory *per se* and Plaintiff has not adduced evidence of special damages. For these reasons, I recommend that Defendant's motion be granted as to Plaintiff's defamation claim based upon Statement 2.

### 3. The Defamatory Nature Of Statement 4 (From "The Trolls of Mount Shasta" Video) Cannot Be Assessed On The Present Record

Defendant refers to the following statements as Statement 4:

> You see, I think David is engaged in a crime. I have got the evidence for it. Could indicate involvement in a criminal operation of IRAN-CONTRA. Dave needs to be prosecuted. 18 USC [§] 1001. I am going to make it my business to find a prosecutor to charge David Sweigert and his accomplices with that crime. Because I will see to it that that man is put in jail.

(Def.'s Mem. at 16.)

Plaintiff's First Response indicates that what Defendant calls Statement 4 is a compilation of multiple statements made by Goodman during a YouTube video titled "The Trolls of Mount Shasta" that was posted on the Crowdsource the Truth2 YouTube channel. (*See* Pl.'s First Response at 12-13.) The link for the video included in Plaintiff's First Response indicates that the video is not available. (*See* Pl.'s First Response at 14 (citing https://youtu.be/qyg9YejHyok).) Therefore, on the current record, the Court cannot assess whether the statements contained in Statement 4 are nonactionable opinions as Defendant asserts. (Def.'s Mem. at 16.) Although the

context and tenor of Goodman's statements may signal to listeners that he is expressing his opinion, *see, e.g., Rapaport*, 2021 WL 1178240, at \*12 ("[A] publication's tone and apparent purpose may indicate to the audience that what they are hearing is likely to be a statement of opinion delivered from a highly partisan point of view rather than an accurate factual assessment offered by a disinterested observer[.]" (internal citations, quotation marks and alterations omitted)), the statement that Goodman had evidence that Sweigert engaged in a crime is actionable if "an average reader rationally could have construed [it] to imply that the opinion[] being expressed [was] based on detrimental facts that were known to the speaker . . . but which facts were not disclosed to the audience." *People ex rel. Spitzer v. Grasso*, 21 A.D.3d 851, 852 (1st Dep't 2005) (internal citations and quotation marks omitted*); see also Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 720-22 (S.D.N.Y. 2014) (distinguishing, based on tone and context, accusations of criminal conduct that are "loose, figurative, hyperbolic or vague" from those grounded in assertions of fact and citing cases). Accordingly, the Court cannot determine whether the statements contained in Statement 4 are actionable. Moreover, as set forth in Discussion Section I(C), *infra*, I find that Statement 4, on its face, could constitute defamation *per se*. Thus, I recommend that Defendant's motion be denied as to Plaintiff's defamation claim based upon Statement 4.

### 4.   The Defamatory Nature Of Statement 5 (from "Social Engineering" YouTube Video) Cannot Be Assessed On The Present Record

Defendant refers to Statement 5 as follows:

David Sweigert – that I see evidence that he has committed felonies. And therefore, conspiring with him could expose you to serious legal issues if law enforcement chooses to act on the evidence that I am actively providing of these felonies. And conspiring with others around the Internet to break the law.

(Def.'s Mem. at 17.)

Statement 5 is a compilation of statements that were part of a YouTube video that Goodman posted on the Crowdsource the Truth YouTube channel on February 27, 2019 titled "Does Sweigert's Social Engineering Spin the Bit Spread Spy in the Padlocked Bag with David Hawkins." (Def.'s Mem. at 17; Pl.'s Second Response at 2.) The link to the video cited by Plaintiff indicates that the video is private. (*See* Pl.'s Second Response at 2 (citing https://youtube.com/watch?v=yx_6sj33FDs).) Thus, the video could not be reviewed by the Court.

Defendant asserts that the statements comprising Statement 5 express his opinion that Sweigert committed mail fraud by using an address "owned" by someone else and committed fraud on the Court by filing this lawsuit. (Def.'s 56.1 Statement ¶¶ 77, 78; *see also* Def.'s Mem. at 17.) However, standing alone, these statements suggest that Goodman possessed evidence that Plaintiff committed felonies that he did not disclose to his audience. As with Statement 4, Defendant has not provided the Court with the video of the statements at issue for the Court to be able to assess "the full context of the communication in which the statement appears." *Conti*, 2021 WL 1578047, at *4; *cf. Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 250 (1991) ("It has long been our standard in defamation actions to read published articles in context to test their effect on the average reader, not to isolate particular phrases but to consider the publication as a whole."). Thus, as with Statement 4, the Court cannot determine on the present record whether the statements in Statement 5 are nonactionable opinions as a matter of law. Moreover, as set forth in Discussion Section I(C), *infra*, I find that Statement 5, on its face, could constitute

defamation *per se*. Thus, I recommend that Defendant's motion be denied as to Plaintiff's defamation claim based upon Statement 5.

      **5.**      **The Defamatory Nature Of Statement 6 (From Steele v. Goodman YouTube Video) Cannot Be Assessed On The Present Record**

Statement 6, "he has now taken to basically threatening the federal judge in the Southern District of New York, that's Valerie Caproni," was spoken by Goodman during a YouTube video titled "Steele v. Goodman" posted on the Crowdsource the Truth YouTube channel. (Def.'s Mem. at 17; Pl.'s Second Response at 4.) Goodman asserts that this statement is "a fair interpretation of Sweigert's words," *i.e.*, substantially true, based on statements made by Sweigert about Judge Caproni on Sweigert's YouTube channel, including "accus[ing] Judge Caproni of violating 'the canon of judicial conduct,' . . . participating in 'illegal Wiretaps' while at the FBI . . . and threaten[ing] to 'convene a citizen's grand jury . . . under the All Writs Act against [her]." (Def.'s 56.1 Statement ¶ 79.)

As other courts have noted, whether a statement is substantially true is "heavily fact dependent," and "the cases addressing the extent to which a given statement is substantially true fall along a broad spectrum." *Lawrence v. Altice USA*, No. 18-CV-01927 (SRU), 2020 WL 108980, at *7 (D. Conn. Jan. 9, 2020), *aff'd*, 841 F. App'x 273 (2d Cir. 2021) (quoting *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 367 (S.D.N.Y. 1998)). "In the middle of that spectrum are cases in which the stretch between the statement and the admitted truth is tenuous, but still the overall gist or sting cannot be said to be substantially different." *Id*. (internal quotation marks omitted); *see also Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 94 (1st Dep't 2015) ("it is well settled in New York that an alleged libel is not actionable if the published statement could have produced no worse an effect on the mind of a reader than the truth pertinent to the allegation")

(internal quotation marks omitted). From the limited context available, Goodman's statement could be viewed as suggesting that Plaintiff threatened Judge Caproni personally, which is substantially different from the accusations that Defendant cites. However, the Court has not been provided with the video in which Goodman made Statement 6. Accordingly, on the current record, the Court cannot determine that the statement is substantially true as a matter of law. In any event, even if Statement 6 is actionable, as set forth in Discussion Section I(C), *infra*, I find that it is not defamatory *per se* and Plaintiff has not adduced evidence of special damages, and thus I recommend that Defendant's motion be granted as to Plaintiff's defamation claim based upon Statement 6.

### 6. The Defamatory Nature Of Statement 7 (From Libel, Lies and Lawsuits Video) Cannot Be Assessed On The Present Record

Defendant's Statement 7 includes the following statements: "[s]hrouded in an organized campaign of harassment. Interstate harassment over the Internet, over the telephone. These are crimes people. So if you are engaged in doing that right now, Dean Fougere, Manuel Chavez, Robert David Steele, David Sweigert, Queen Tut, Lutzke Holmes, whatever." (Pl.'s Second Response at 8.) These statements were made by Goodman in a YouTube video titled "Libel, Lies and Lawsuits – Queen Tut Evidence Exposed" posted on the Crowdsource the Truth YouTube channel on March 17, 2018. (Pl.'s Second Response at 8.) Goodman also posted a tweet promoting this video on Twitter. (*See* SAC at 27.) Goodman argues that these statements express Goodman's opinion that Plaintiff "is engaged in illegal harassment." (Def.'s Mem. at 17.)

As with Statements 4, 5 and 6, however, the Court cannot find that these statements are nonactionable opinions without access to the relevant video, which is marked private. (*See* Pl.'s Second Response at 8 (citing https://www.youtube.com/watch?v=1koAEHYbZTA&t=407s).) For

example, the first part of the statement is not a complete sentence and the Court does not know

what precedes it, including whether Goodman implied undisclosed facts supporting his opinion.

*See Steinhilber*, 68 N.Y.2d at 283 ("The essential task is to decide whether the words complained

of, considered in the context of the entire communication and of the circumstances in which they

were spoken or written, may be reasonably understood as implying the assertion of undisclosed

facts justifying the opinion."). Thus, on the current record, the Court cannot determine if

Statement 7 is actionable. In any event, even if Statement 7 is actionable, as set forth in

Discussion Section I(C), *infra*, I find that it is not defamatory *per se* and Plaintiff has not adduced

evidence of special damages, and thus I recommend that Defendant's motion be granted as to

Plaintiff's defamation claim based upon Statement 7.

### 7.   The Defamatory Nature Of Statement 8 (From Michael Barden Video) Cannot Be Assessed On The Present Record

Statement 8, "He interfered with an officer of the court," was made by Goodman during

a YouTube video titled "Michael Barden Targeted individual" posted on the Crowdsource the

Truth YouTube channel. (Pl.'s Second Response at 12.) Defendant argues that there is nothing

defamatory about this statement. (Def.'s Mem. at 17.) The statement was part of a conversation

between Goodman and Barden in which they were discussing a legal action involving Barden.

(*See* Pl.'s Second Response at 12.) In his declaration, Goodman states that the comment was in

response to Plaintiff contacting the attorney representing Barden in a criminal matter "in an

effort to create discord between lawyer and client," which Goodman "considered inappropriate."

(Goodman Decl. ¶ 51.) Although it appears that this statement may not be reasonably susceptible

of defamatory construction, because the link provided in Plaintiff's Second Response indicates

that   this   video   is   unavailable   (*see*   Pl.'s   Second   Response   at   12   (citing

https://www.youtube.com/watch?v=obqQTtljJYM)), the Court cannot reach that determination as a matter of law. In any event, even if Statement 8 is actionable, as set forth in Discussion Section I(C), *infra*, I find that it is not defamatory *per se* and Plaintiff has not adduced evidence of special damages, and thus I recommend that Defendant's motion be granted as to Plaintiff's defamation claim based upon Statement 8.

        **8.**    **The Defamatory Nature Of Statement 9 (From Clear and Present Danger Video) Cannot Be Assessed On The Present Record**

Statement 9, "George's brother [Plaintiff] who is making public threats against us," was part of a YouTube video titled "Clear and Present Danger" streamed on the Crowdsource the Truth YouTube channel on June 14, 2017.[7] (Pl.'s Second Response at 14; *see also* Pl.'s Counterstatement ¶ 128.) Defendant argues that this statement is not defamatory because it is true and "Sweigert issues threats almost daily, including threatening Judge Caproni." (Def.'s Mem. at 17.) Again, Defendant did not include this video as part of the summary judgment record and it is marked private. (*See* Pl.'s Second Response at 14 (citing https://www.youtube.com/watch?v=ekr5cw2WAbU&t=7612s).) Thus, the Court cannot determine who "us" refers to, let alone determine whether the statement is substantially true, as Defendant argues. For these reasons, the Court is unable to determine whether Statement 9 is actionable. In any event, even if Statement 9 is actionable, as set forth in Discussion Section I(C), *infra*, I find that it is not defamatory *per se* and Plaintiff has not adduced evidence of special

---

[7] Although any claim based on this statement appears to be untimely, *see McKenzie v. Dow Jones & Co.*, 355 F. App'x 533, 535 (2d Cir. 2009) ("Under New York law, the statute of limitations for a defamation claim is one year.") ((citing N.Y. C.P.L.R. § 215(3)); *Marom v. Pierot*, No. 18-CV-12094 (VB) (JCM), 2020 WL 6572509, at *12 (S.D.N.Y. Aug. 30, 2020), *report and recommendation adopted*, 2020 WL 6565199 (S.D.N.Y. Nov. 9, 2020) ("The limitations period begins to run from the date of the first publication of the defamatory statement."), Defendant did not raise the statute of limitations as a defense.

damages, and thus I recommend that Defendant's motion be granted as to Plaintiff's defamation claim based upon Statement 9.

**9.     Statement 10 (From March 30, 2018 Email) Is Not Actionable**

Statement 10, "You are engaged in an organized criminal harassment campaign. . . I have submitted my evidence against you to the NY FBI field office," consists of excerpts from a March 30, 2018 email from Goodman to Sweigert and others. (Pl.'s Second Response at 19; *see also* SAC at 36.) I find that the first portion of Statement 10, "[y]ou are engaged in an organized criminal harassment campaign," is a nonactionable opinion. The immediate context of the statements reads as follows: "You are hurting yourself by generating a growing collection of evidence that indicates very strongly that you are engaged in an organized criminal harassment campaign against me personally as well as other serious potentially criminal offenses." (SAC at 36.) The specific language, as well as the tone and context of the email, suggest to the recipients that Goodman is expressing his opinion. *See Restis*, 53 F. Supp. 3d at 720-22 (distinguishing, based on tone and context, accusations of criminal conduct that are "loose, figurative, hyperbolic or vague" from those grounded in assertions of fact and citing cases).

With respect to Goodman's statement that he submitted evidence "to the NY FBI field office," for the same reasons as with Statements 1 and 3, Plaintiff has offered no evidence to show that these facts are genuinely disputed. In any event, even if Statement 10 is actionable, as set forth in Discussion Section I(C), *infra*, I find that it is not defamatory *per se* and Plaintiff has not adduced evidence of special damages, and thus I recommend that Defendant's motion be granted as to Plaintiff's defamation claim based upon Statement 10.

    **10.**    <u>**Statements 11 and 12 (from Cyberstalker/Dead Beat Dad Tweets) Are**</u>
                     <u>**Not Actionable**</u>

Statements 11, "David Sweigert is a dead beat dad[,]" and Statement 12,

"[c]yberstalker/deadbeat dad David Sweigert abandons his own son," were tweets posted on the

Crowdsource the Truth Twitter account. (Pl.'s Third Response at 2, 7; First Supp. Compl. at 19.)

Defendant asserts that these comments were made "in the context of a Twitter war" and were

made "on the basis of credible information" regarding a comment made by Sweigert to a third

party. (Def.'s Mem. at 18; Def.'s 56.1 Statement ¶¶ 88-91; *see also* Def's Reply Mem. at 3-5.)

The Court finds that these statements are hyperbole and therefore are not actionable

opinions. *See, e.g.*, *Chau*, 771 F.3d at 129 (statements including "sucker," "fool," "frontman,"

"industrial waste," "pilot[ ]" of the "ship of doom," and "crooks or morons" were hyperbole and

therefore not actionable); *see also Rapaport*, 2021 WL 1178240, at *13 n.14 (labels, including

"lying deadbeat fraud hack" were "nothing more than [the defendants'] subjective evaluations

of [plaintiff] that [were] incapable of being objectively proven true or false"). Moreover, the Court

adheres to "the basic premise that courts interpreting New York law have generally found that

comments made on Twitter are more likely to be understood by audiences as statements of

opinion than statements of fact." *Rapaport*, 2021 WL 1178240, at *19 (citing *Ganske*, 480 F. Supp.

3d at 552-53 (observing that a statement's publication "on Twitter conveys a strong signal to a

reasonable reader that this was Defendant's opinion," and finding that the tweets in question

were not actionable)); *Jacobus v. Trump*, 55 Misc. 3d 470, 479 (N.Y. Sup. Ct., N.Y. Co. 2017), *aff'd*,

64 N.Y.S.3d 889 (1st Dep't 2017) (noting that "social media, such as . . . Twitter, is increasingly

deemed to attract less credence to allegedly defamatory remarks than other contexts," and

holding that the tweets at issue were not actionable) (citation and internal quotation marks

omitted)). Accordingly, a reasonable listener would not have understood Goodman to be "conveying provable facts" about Plaintiff. *Marom*, 2020 WL 6572509, at *5. For these reasons, the Court finds that Statements 11 and 12 are not actionable.

In any event, even if Statements 11 and 12 are actionable, as set forth in Discussion Section I(C), *infra*, I find that they are not defamatory *per se* and Plaintiff has not adduced evidence of special damages, and thus I recommend that Defendant's motion be granted as to Plaintiff's defamation claim based upon Statements 11 and 12.

**C.    Defamation *Per Se* And Special Damages**

To establish defamation, Plaintiff must show either *per se* actionability or special damages. *See Palin*, 940 F.3d at 809; *see also Celle*, 209 F.3d at 179 ("Under New York law, statements that are defamatory per se are actionable without "'pleading and proof of special damages.'") (quoting *Davis v. Ross*, 754 F.2d 80, 82 (2d Cir. 1985)). "[O]nly four types of statements are per se actionable under New York law: those that 'imput[e] unchastity to a woman,' assert that a plaintiff has a 'loathsome disease,' tend to injure him in his profession, or charge a plaintiff with a serious crime." *Oakley v. Dolan*, 833 F. App'x 896, 900 (2d Cir. 2020) (quoting *Liberman v. Gelstein*, 80 N.Y.2d 429 (1992)); *see also Liberman*, 80 N.Y.2d at 435 ("the law distinguishes between serious and relatively minor offenses, and only statements regarding the former are actionable without proof of damage"). "Whether a challenged statement constitutes defamation *per se* is a question of law." *Kesner*, 515 F. Supp. 3d at 171 (citing *Geraci v. Probst*, 15 N.Y.3d 336, 344 (2010)).

1.    **Defamation *Per Se***

Of the twelve identified statements the Court finds that Statements 4 and 5 may be *per se* actionable because, on their face, they accuse Plaintiff of serious crimes, *i.e.*, making false statements to the government (Statement 4) and mail fraud (Statement 5), both of which are felonies. *See* 18 U.S.C. § 1001; 18 U.S.C. § 1341.[8] The remaining statements do not fall into any of the four enumerated categories. While Statements 7 and 10 do charge Plaintiff with harassment, I find that these statements do not constitute defamation *per se* because "[h]arassment is a relatively minor offense in the New York Penal Law—not even a misdemeanor—and thus the harm to the reputation of a person falsely accused of committing harassment would be correspondingly insubstantial." *Liberman*, 80 N.Y.2d at 436 (accusation of harassment not slanderous *per se*); *see also Hogan v. Lewis Cnty.*, No. 16-CV-01325 (LEK) (ATB), 2020 WL 2850162, at *15 (N.D.N.Y. June 1, 2020) (statement that the plaintiff harassed defendant not defamatory *per se* because "case law is clear that harassment in the second degree—a mere violation—does not qualify as [a serious crime]") (citations and quotations omitted).

Plaintiff suggests that certain other statements are defamatory *per se* because they injured him in his profession. (*See*, *e.g.*, Pl.'s Opp. Mem. at 28; *see also* SAC ¶¶ 69-70.) "To find that a statement qualifies as one that tends to injure another in his or her trade, business or profession, the statement 'must be made with reference to a matter of significance and

---

[8] As set forth above, the Court cannot determine, on the current record, whether Statements 4 and 5 are actionable as a matter of law, since it does not have before it the videos in which the statements were made. For purposes of this section, I am considering whether these statements, standing alone, could constitute defamation *per se*. Because I find that they could, I recommend that Defendant's motion be denied as to Statements 4 and 5.

importance for [the operation of the business], rather than a more general reflection upon the plaintiff's character or qualities.'" *Thompson v. Bosswick*, 855 F. Supp. 2d 67, 77 (S.D.N.Y. 2012) (quoting *Pure Power Boot Camp v. Warrior Fitness Boot Camp,* LLC, 813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011)). "The statement must be targeted at the specific standards of performance relevant to the plaintiff's business and must impute conduct that is 'of a kind incompatible with the proper conduct of the business, trade, profession or office itself.'" *Id*. (quoting *Pure Power Boot Camp,* 813 F. Supp. 2d at 550). Although Plaintiff may be able to make such a showing with respect to Statement 5, which refers to "social engineering" that he contends is damaging to someone in his profession (*see, e.g.*, Pl.'s Corrected Notice of Special Damages, ECF No. 276, ¶ 29 (discussing concept of social engineering in context of special damages)), none of the other statements impute conduct that relates to Plaintiff's profession as an "ethical hacker." Accordingly, the Court finds that of the twelve identified statements only Statements 4 and 5 may be defamatory *per se*. Therefore, I next consider whether Plaintiff has adduced evidence of special damages with respect to the remaining statements.

### 2.   <u>Special Damages</u>

"Special damages consist of 'the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation[.]'" *Celle*, 209 F.3d at 179 (quoting *Matherson v. Marchello*, 100 A.D.2d 233 (2d Dep't 1984)). "Special damages must be fully and accurately stated, with sufficient particularity to identify actual losses." *Bernstein v. O'Reilly*, No. 17-CV-09483 (DAB), 2019 WL 10995111, at *4 (S.D.N.Y. Mar. 5, 2019) (quotation marks and citations omitted). Plaintiff has identified four categories of special damages: (1) loss of emergency medical technician ("EMT") job opportunities; (2) damages to

reputation and losses from transfer of "postal operations" from Rough and Ready, CA to Nevada City; (3) loss of "certified ethical hacker" opportunities and publishing revenues; and (4) loss of critical infrastructure protection job opportunities. (*See* Pl.'s Corrected Notice of Special Damages.) Defendant argues that Plaintiff fails to connect any of the identified statements to a specific loss and, in any event, has not adduced evidence of any actual loss. (Def.'s Mem. at 9-14.)

With respect to the first category of damages, Plaintiff contends that he lost EMT job opportunities based on telephone calls allegedly made by Goodman to the Chief of Police and "the leading emergency medical service providing ambulance care in [Mount Shasta, CA]," which also were the subject of two podcast videos posted by Goodman in April 2018. (Pl.'s Corrected Notice of Special Damages ¶¶ 2, 13, 15.) These statements are not among the twelve statements that are the basis of Defendant's motion. To the extent that Plaintiff attempts to tie these damages to other statements made by Goodman (*see id*. at 9), he has not presented any evidence that he failed to obtain an EMT job because of any of the identified statements. In his response to Defendant's 56.1 Statement, Plaintiff argues that Defendant's statements conflict with his discovery responses (*see* Pl.'s Reply to Def.'s 56.1 ¶¶ 52-63 (citing Pl.'s First Response through Pl.'s Fifth Response)), but those documents do not address relevant facts. Plaintiff also includes a screen shot of a job posting for an EMT (Pl.'s Corrected Notice of Special Damages ¶ 17), but does not indicate the date of that posting or even that he applied for the job. Plaintiff's conclusory allegations that he was denied an EMT job are insufficient evidence of special damages. *Cf. Gibson v. SCE Grp., Inc.*, 391 F. Supp. 3d 228, 254 (S.D.N.Y. 2019) (conclusory allegations that plaintiff was denied compensation insufficient to allege special damages).

Plaintiff's second category of special damages also relates to damages to his reputation in Rough and Ready, California. (Pl.'s Corrected Notice of Special Damages ¶¶ 19-23.) Plaintiff asserts that Defendant called the postmaster in Rough and Ready, California and allegedly told him that Plaintiff was most likely engaged in mail fraud and fraud upon the court. (*Id*. ¶ 19.) As a result, Plaintiff alleges that his business reputation was ruined and he incurred various costs in transferring his postal operations. (*Id*. ¶¶ 21-23.) As with Plaintiff's first category, these damages ostensibly were causes by statements that are not the subject of the instant motion and, thus, cannot support a defamation claim based on the twelve identified statements.

Plaintiff's third category pertains to lost opportunities and/or publishing revenue related to his role as a "certified ethical hacker." (Pl.'s Corrected Notice of Special Damages ¶¶ 24-46.) Plaintiff asserts that he had to stop taking orders for a technical manual he published due to Defendant's statement accusing him of social engineering. (*Id*. ¶ 40.) Of the twelve identified statements at issue here, the only statement within this category is Statement 5, which the Court already has found may be actionable as defamation *per se*, for which Plaintiff need not establish special damages.

Plaintiff's fourth category also alleges lost job opportunities and reduced marketability, but as with the EMT jobs, he does not identify any critical infrastructure job for which he applied. (Pl.'s Corrected Notice of Special Damages ¶¶ 47-59.) Thus, Plaintiff has not established that he suffered actual damages attributable to Statements 1 through 3 and 6 through 12.

### D.   Plaintiff Is Entitled To Additional Discovery Regarding Whether Defendant Acted With Actual Malice

Defendant also seeks dismissal of Plaintiff's defamation claims because "Plaintiff cannot prove that Goodman acted with actual malice." (Def.'s Mem. at 18.) In his Rule 56(d) motion,

Plaintiff argues that the law changed during the pendency of this case and that he cannot prove actual malice without additional discovery. (*See* Pl.'s Rule 56(d) Mot. at 4, 14.)

"Libel defendants who write about public figures and officials, or matters of public interest, receive the protection of a heightened fault standard." *Coleman v. Grand*, 523 F. Supp. 3d 244, 255 (E.D.N.Y. 2021). New York recently amended its anti-strategic litigation against public participation ("anti-SLAPP") statute to expand protections for libel defendants speaking on public affairs. *See Palin v. New York Times Co.*, 510 F. Supp. 3d 21, 25 (S.D.N.Y. 2020). While New York's anti-SLAPP law has always imposed a heightened fault standard of actual malice in any "action involving public petition and participation," N.Y. Civ. Rights Law § 76-a(2), the 2020 amendments expanded the definition of such actions to include claims based upon:

> (1) any communication in a place open to the public or a public forum in connection with an issue of public interest; or (2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition.

N.Y. Civil Rights Law § 76-a(1)(a). The law also states that the term "public interest" is to "be construed broadly, and shall mean any subject other than a purely private matter." *Id*. § 76-a(1)(d). "It is a hornbook rule that 'federal courts sitting in diversity apply state substantive and federal procedural law.'" *Coleman*, 523 F. Supp. 3d at 258 (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). "The anti-SLAPP provision . . . applies in federal court because it is 'manifestly substantive,' governing the merits of libel claims and increasing defendants' speech protections." *Id.* (quoting *Gasperini*, 518 U.S. at 427).

Applying this standard,[9] in order to prevail Plaintiff must "establish[] by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false." N.Y. Civil Rights Law § 76-a(2); *accord Coleman*, 523 F. Supp. 3d at 260. "Despite its name, the actual malice standard does not measure malice in the sense of ill will or animosity, but instead the speaker's subjective doubts about the truth of the publication." *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001); *see also Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 510 (1991) (actual malice "should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will").

"In assessing the defendant's subjective doubts as to the publication's truth, a 'court typically will infer actual malice from objective facts.'" *Coleman*, 523 F. Supp. 3d at 260 (quoting *Celle*, 209 F.3d at 183); *see also Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 927 (2d Cir. 1987) ("Malice may be proved inferentially because it is a matter of the defendant's subjective mental state, revolves around facts usually within the defendant's knowledge and control, and rarely is admitted."). "These facts may include the defendant's own actions or statements, the dubious nature of his sources, [and] the inherent improbability of the story." *Coleman*, 523 F. Supp. 3d at 260 (internal quotation marks omitted); *see also Stern v. Cosby,* 645 F. Supp. 2d 258, 278 (S.D.N.Y. 2009) ("Factors for a court to consider in determining

---

[9] The Court agrees with other courts that have determined that § 76-a should be given retroactive effect. *See Palin*, 510 F. Supp. 3d at 26-29 (discussing legal standards and concluding that § 76-a is a remedial statute that should be given retroactive effect); *see also Coleman*, 523 F. Supp. 3d at 258 (agreeing with Judge Rakoff's analysis in *Palin*); *Sackler v. Am. Broad. Cos., Inc.*, 71 Misc. 3d 693, 698 (Sup. Ct., N.Y. Cnty., 2021) ("This court finds that the anti-SLAPP amendments are intended to apply retroactively in order to effectuate the remedial and beneficial purpose of the statute.") (citing *Palin* and *Coleman*).

whether a defendant acted with actual malice include (1) whether a story is fabricated or based on an unverified, anonymous source; (2) whether the allegations at issue are so inherently improbable that only a reckless person would have put them in circulation; and (3) whether there are any obvious reasons to doubt the truthfulness of the defendant's source or the accuracy of the source's report."). "In determining whether a plaintiff has adduced sufficient evidence to reach a jury, the Court may consider plaintiff's evidence of actual malice in the aggregate." *Stern*, 645 F. Supp. 2d at 278.

Defendant argues that he has demonstrated a good faith basis for all his statements and his "un-refuted testimony leaves no factual dispute" as to whether he acted with actual malice. (Def.'s Mem. at 18.) In opposition, Plaintiff argues that, due to retroactive application of the actual malice standard, he requires additional discovery to establish actual malice. (*See* Pl.'s Opp. Mem. at 4-5; *see also* Pl.'s Rule 56(d) Mot.) Plaintiff also argues that the relevant circumstances, including the ill will and hostility between the parties, provide evidence of actual malice. (Pl.'s Opp. Mem. at 5.)

On the current record, the Court agrees that Plaintiff has not offered facts that would establish by clear and convincing evidence, that Goodman "knowingly or recklessly made false statements." *Coleman*, 523 F. supp. 3d at 261 (citing *Anderson*, 477 U.S. at 254 ("[T]here is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence."). Despite the clear ill will and animosity between the parties, the Court finds that such evidence alone is not sufficient for Plaintiff to meet his burden. *See Coleman*, 523 F. Supp. 3d at 261 (evidence of ill will, standing alone, not sufficient to establish actual malice); *see also McDougal*

*v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185 (S.D.N.Y. 2020) (allegations of personal biases do not establish actual malice without additional facts to suggest the speaker acted pursuant to that bias). However, given the change in the law applicable to Plaintiff's claims that occurred during the pendency of this lawsuit, the Court finds that Plaintiff is entitled to additional discovery regarding actual malice. Therefore, as to Plaintiff's defamation claims based upon Statements 4 and 5, pursuant to Rule 56(d), I recommend that Defendant's motion be denied.[10]

Because, as set forth above, I find that Plaintiff has failed to adduce evidence of other elements of his defamation claims as to Statements 1 through 3 and 6 through 12, evidence of actual malice would not save those claims and, thus, I recommend that Defendant's motion be granted as to Plaintiff's defamation claims based upon those statements.

## II.   Defendant's Motion Should Be Denied With Respect To Plaintiff's New York Civil Rights Law Claims

"To prevail on a claim pursuant to N.Y. Civil Rights Law §§ 50-51, a plaintiff must demonstrate that 'defendant made use, within the state of New York, of plaintiff's name, portrait, or picture for advertising purposes or for the purposes of trade' without plaintiff's written consent.'" *Sweigert v. Goodman*, No. 18-CV-08653 (VEC), 2021 WL 2678621, at \*5 (S.D.N.Y. June 30, 2021) (quoting *Titan Sports, Inc. v. Comics World Corp.*, 870 F.2d 85, 87 (2d Cir. 1989)); *see also* N.Y. Civ. Rights Law § 51. Here, the only contested issue is whether Defendant used Plaintiff's name and picture for advertising or trade purposes. *See Sweigert*, 2021 WL 2678621, at \*5.

---

[10] Under Rule 56(d)(1), if the party opposing summary judgment shows by affidavit or declaration that, for specified reasons, he cannot present facts essential to justify his opposition, the court may deny the summary judgment motion and permit discovery. *See* Fed. R. Civ. P. 56(d)(1).

The words "advertising purposes or purposes of trade" have been narrowly construed. *See Sweigert v. Goodman*, No. 18-CV-08653 (VEC) (SDA), 2020 WL 8261572, at *2 (S.D.N.Y. Dec. 28, 2020) (citing *Rand v. Hearst Corp.*, 31 A.D.2d 406, 409 (1st Dep't 1969) ("words 'advertising purposes' and for the 'purposes of trade' . . . must be construed narrowly and not used to curtail the right of free speech, or free press, or to shut off the publication of matters newsworthy or of public interest, or to prevent comment on matters in which the public has an interest or the right to be informed"), *aff'd*, 26 N.Y.2d 806 (1970)). "These sections are limited in their reach because of the First Amendment . . . and do not apply to reports of newsworthy events or matters of public interest." *Hollander v. Pressreader, Inc.*, No. 19-CV-02130 (AJN), 2020 WL 2836189, at *5 (S.D.N.Y. May 30, 2020) (quoting *Messenger v. Gruner + Jahr Printing & Publ'g*, 94 N.Y.2d 436, 441 (2000)) (internal quotation marks and additional citations omitted).

"Newsworthiness includes not only descriptions of actual events, but also articles concerning political happenings, social trends or any subject of public interest." *Messenger*, 94 N.Y.2d at 441-42 (internal citations omitted). However, "false and damaging use of a plaintiff's likeness . . . to illustrate newsworthy content does not fall under the newsworthy exception when there is no relationship between the likeness and the associated content." *Sweigert*, 2021 WL 2678621, at *7. Works of artistic expression, including satire and parody, also are protected. *See Foster v. Svenson*, 128 A.D.3d 150, 158 (1st Dep't 2015) ("[W]orks of art fall outside the prohibitions of the privacy statute under the newsworthy and public concerns exemption[.]"); *see also Yasin v. Q-Boro Holdings, LLC*, No. 13259-09, 2010 WL 1704889, at *1 (N.Y. Sup. Ct. Kings Cnty., Apr. 23, 2010) (citing cases). However, "[t]o give absolute protection to all expressive works would be to eliminate the statutory right of privacy . . . [a]ccordingly, under New York law,

the newsworthy and public concern exception does not apply where the newsworthy or public interest aspect of the images at issue is merely incidental to its commercial purpose." *Foster*, 128 A.D.3d at 159.

Defendant argues that Plaintiff's Civil Rights Law claim should be dismissed because his use of Plaintiff's image on a coffee mug, along with the words "Deep State Dunces[,]" was protected as newsworthy and/or caricature/parody. (Def.'s Mem. at 19-22.) However, the Court finds that there are issues of fact as to whether Defendant's use of Plaintiff's image is protected expression. Defendant states that he created a coffee mug with the image as "a joke about Sweigert's hilarious sense of self-importance, complete with his delusional claims that he's part of a secret FBI counterintelligence program," and that he sold a total of seven of these mugs. (Def.'s 56.1 Statement ¶ 94 (citing Goodman Decl. ¶ 55); *see also* Goodman Decl. ¶ 54). Defendant also argues that his "use of Sweigert's image occurred in the context of discussions about Sweigert's lawsuits, public statements, and public actions – all of which are newsworthy." (Def.'s Mem. at 20.) However, Defendant does not explain what that context was or assert sufficient facts for the Court to determine, as a matter of law, that the image was related to an actual event or concerned political happenings, social trends or any subject of public interest.[11] *Sweigert*, 2021 WL 2678621, at *7. Defendant does not explain, for example, whether the image first was published in conjunction with an article or internet post or how the image relates at all to Plaintiff's claim "that he's part of a secret FBI counterintelligence program."

---

[11] In his reply memorandum, Defendant asserts that another, similar, image was made "in the context of reporting on Plaintiff's 'social engineering' attacks on Defendant, including his abusive lawsuits, and is a matter of public concern." (Def.'s Reply Mem. at 7.) That argument, however, does not relate to the image on the coffee mugs at issue here and, in any event, also fails to set forth sufficient facts to establish that the newsworthy exception applies.

In any event, Defendant's motion does not address other grounds for Plaintiff's Civil Rights Law claim, including the use of wrappers that were the subject of an earlier motion for a preliminary injunction filed by Plaintiff. *See Sweigert*, 2021 WL 2678621, at *1 (discussing Plaintiff's allegations that Defendant violated his right to privacy by using Sweigert's name or picture on coffee mugs and tote bags as well as in video podcasts and in the thumbnails, titles, and video descriptions associated with the video podcasts) (citing SAC ¶¶ 95-97, 108; First Supp. Compl. ¶¶ 48, 50). Accordingly, I recommend that Defendant's motion be denied with respect to Plaintiff's Civil Rights Law Claim.

**III.** **Defendant's Motion For Summary Judgment On His Counterclaim Should Be Denied**

Defendant also seeks summary judgment on his purported counterclaim against Plaintiff under the New York anti-SLAPP statue, arguing that Plaintiff commenced and continued this lawsuit without a substantial basis in fact and law. (Def.'s Mem. at 23.)

In April 2021, this Court granted Defendant leave to amend his answer to assert a defense under the anti-SLAPP statute, and found that the substantive standard set forth in § 76(a) applied to this action. *Sweigert v. Goodman*, No. 18-CV-08653 (VEC) (SDA), 2021 WL 1578097, at *3 (S.D.N.Y. Apr. 22, 2021). The Court also granted Defendant leave to file "an appropriate dispositive motion under the New York anti-SLAPP statute." *Id*. Defendant filed an amended answer on May 1, 2021, which, rather than asserting a defense, added a counterclaim seeking costs and damages. (Am. Answer, ECF No. 273, ¶¶ 51-63.)

To the extent that Defendant seeks to invoke the special summary judgment procedures for cases involving public petition and participation, those procedures do not apply in federal court, as they conflict with Federal Rule of Civil Procedure 56 by reversing the burden and

requiring a plaintiff to prove "a substantial basis in fact and law" for his claims. *See Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, No. 20-CV-07269 (VEC), 2021 WL 3271829, at *13 n.18 (S.D.N.Y. July 30, 2021) (citing N.Y. C.P.L.R. § 3212(h)).

It may be that Defendant can seek to obtain costs pursuant to § 70-a without invoking the special summary judgment procedures and, therefore, avoid a conflict with Rule 56. *See, e.g.*, *Goldman v. Reddington*, No. 18-CV-03662 (RPK) (ARL), 2021 WL 4099462, at *5 (E.D.N.Y. Sept. 9, 2021) (recognizing that § 70-a "makes clear that an anti-SLAPP litigant may obtain costs and attorney's fees without using [the procedures set forth in CPLR § 3312]"). The Court need not decide that issue, however, because, even assuming Defendant can do so, he has not "demonstrate[ed]" that this action "was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law" or that it was commenced for the purpose, or sole purpose (as required for punitive damages), "of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights." N.Y. Civ. Rights Law § 70-a(1)(a)-(c). *Accord JLM Couture, Inc. v. Gutman*, No. 20-CV-10575 (LTS) (SLC), 2021 WL 4084573, at *8 n.9 (S.D.N.Y. Sept. 8, 2021) (declining to engage in analysis of whether New York Anti-SLAPP statute applied and denying cross-motion for fees and costs when "none of the [applicable] bases for recovery of fees, costs, or damages applie[d].")." Thus, I recommend that Defendant's motion for summary judgment on his counterclaim be denied.

## IV.    The Parties' Requests For Additional Relief Should Be Denied

In his motion papers, Defendant also seeks various additional relief, including a declaration that Plaintiff is a vexatious litigant and an injunction requiring Plaintiff to show good

cause before bringing another *pro se* action in this Court. (Def.'s Mem. at 23; *see also* Def.'s Reply

Mem. at 8-9.) However, Defendant has not set forth a legal or factual basis for such relief. *See,*

*e.g.*, *Schafler v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 15-CV-07863 (NSR), 2016 WL

10950129, at *5 (S.D.N.Y. Nov. 30, 2016), *aff'd*, 707 F. App'x 751 (2d Cir. 2018) (discussing

methods for addressing vexatious litigants and relevant legal standards); *Iwachiw v. New York*

*City Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005) (setting forth five factors district courts

must consider in determining whether to grant filing injunction). Accordingly, I recommend that

Defendant's requests for declaratory and injunctive relief be denied.

Plaintiff, for his part, has filed a motion for sanctions pursuant to Rule 56(h) and a motion

to strike allegedly scandalous material from Defendant's Amended Notice of Motion for

Summary Judgment. (Pl.'s Rule 56(h) Mot., ECF No. 293; Pl.'s Mot. to Strike, ECF No. 304.) "Rule

56(h) authorizes a district court to impose 'appropriate sanctions,' including attorney's fees,

against a party or counsel who submits 'an affidavit or declaration under [Rule 56] in bad faith or

solely for delay.'" *Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, No. 04-CV-03531 (LTS)

(HBP), 2019 WL 4193941, at *2 (S.D.N.Y. Sept. 4, 2019) (quoting Fed. R. Civ. P. 56(h)). Courts that

have granted motions for sanctions under Rule 56(h) have required "clear proof that the

declaration or affidavit is false, usually through admissions of untruthfulness or irreconcilably

inconsistent statements from the declarant or affiant." *Advanced Analytics, Inc.*, 2019 WL

4193941, at *4 (discussing cases). Plaintiff's conclusory allegations that Defendant's declaration

and 56.1 Statement contain "obvious misrepresentations" and are false or misleading do not meet this standard. (Pl.'s Rule 56(h) Mot. at 4-6.)

With respect to Plaintiff's Rule 12(f) motion, as the Court previously has explained, Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 7(a) contains a complete list of all pleadings recognized under the Federal Rules of Civil Procedure, and a notice of motion is not among them. *See* Fed. R. Civ. P. 7(a); *see also Silva v. Swift*, 333 F.R.D. 245, 248 (N.D. Fla. 2019) ("courts have held that Rule 12(f) does not authorize courts to strike motions, affidavits, or memoranda in support of motions" (citing cases)). Accordingly, I recommend that the parties' motions for additional relief be denied.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendant's motion for summary judgment (ECF No. 302) be GRANTED IN PART and DENIED IN PART. I recommend that only Plaintiff's defamation claims based upon Statements 1 to 3 and 6 to 12 be dismissed. In addition, I recommend that Plaintiff's Rule 56(d) motion (ECF No. 281) be GRANTED so that Plaintiff may seek discovery regarding Defendant's actual malice. Finally, I recommend that the other pending motions (ECF Nos. 293 and 304) be DENIED.

The Clerk of Court is respectfully requested to mail a copy of this Report and Recommendation to the *pro se* parties.

DATED:     New York, New York
           October 29, 2021

_____
STEWART D. AARON
United States Magistrate Judge

*          *          *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation and Order to file written objections, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Caproni.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).