**U.S. DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **D. GEORGE SWEIGERT** <br><br> **Vs.** <br><br> **JASON GOODMAN** | **Case 1:18-cv-08653-VEC-SDA** <br><br><br> **VALERIE E. CAPRONI** |

## PLAINTIFF'S OBJECTIONS TO THE

## MAGISTRATE'S REPORT AND RECOMMENDATION (ECF. Doc. 321)

Respectfully,

**D. George Sweigert**
**Veteran U.S. Air Force**

**America's RV Mailbox**
**514 Americas Way, PMB 13339**
**Box Elder, SD 57719-7600**
**Email: SPOLIATION-NOTICE@MAILBOX.ORG**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... 4

LEGAL STANDARD ............................................................................................. 9

PRELIMINARY STATEMENT ............................................................................ 11

SUGARCOATED AND PREJUDICIAL BACKGROUND ................................... 16

ERRORS IN REVIEW OF DEFAMATORY PER SE STATEMENTS ............................ 19

*Statements 1 and 3* ............................................................................................. 19

*Defendant's false disclosed facts create innuendo of criminality* ........................... 19

*Unauthorized Practice of Law* ............................................................................ 24

*Damage to Certified Ethical Hacking profession* ................................................. 28

*Statement 2* ...................................................................................................... 29

*Lift the Veil Show with Jason Goodman* .............................................................. 29

*Statement 4* ...................................................................................................... 36

*The Trolls of Mount Shasta* ............................................................................... 36

*Statement 5* ...................................................................................................... 38

*Sweigert's Social Engineering Spin the Bit Spread Spy* ......................................... 38

*Fraud upon the court and other felonies* .............................................................. 39

*P.O. Box mix-up* ............................................................................................... 41

*Statement 7* ...................................................................................................... 42

*Shrouded in an organized campaign of harassment. Interstate harassment* ............... 42

*Statement 8* ...................................................................................................... 43

*Interfering with a judicial officer* ....................................................................... 43

*Statement 10* ........................................................................................................... 46

*Organized criminal harassment campaign* ............................................................ 46

*Statements 11 and 12* .............................................................................................. 50

*Deadbeat Dad is a term of art* ............................................................................... 50

**CONCLUSION** ........................................................................................................ 58

# **TABLE OF AUTHORITIES**

**Cases**

*10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co*., 634 F.3d 112, 119 (2d Cir. 2011) ............................................................................................................................... 9

85 F.3d 630. *United States of America, Ex Rel. David George Sweigert, plaintiff-appellant, v. Electronic Systems Associates, Inc.; Lemuel Kinney* (U.S.C.A. for the 6th Cir.). ..................... 29

*Allen v. CH Energy Grp., Inc.,* 58 A.D.3d 1102, 1103 (3d Dep't. 2009 ) ..................................... 41

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 295 (E.D.N.Y. 2015).................................................................................................................... 38, 56

*Beyah v. Walker*, No. 96-2990, 1997 WL 786375, at *1 (2d Cir. Dec. 23, 1997)......................... 9

*Camardo v. General Motors Hourly Rate Employees Pension Plan,* 806 F. Supp. 380, 381–82 (W.D.N.Y. 1992)................................................................................................................ 8

*Celle v. Filipino Reporter Enterprises Inc*., 209 F.3d 163, 177 (2d Cir. 2000)............................ 22

*Celle v. Filipino Reporter Enterprises Inc*., 209 F.3d 163, 177 at 183 (2d Cir. 2000)................. 37

*Demjanjuk v. Petrovsky,* 10 F.3d 338, 348 (6th Cir. 1993) .......................................................... 39

*Flamm v. American Ass'n of University Women,* 28 F. Supp. 2d 185 (S.D.N.Y. 1998).............. 54

*Ganske v. Mensch, No.* 19-CV-06943 (RA), 2020 WL 4890423 (S.D.N.Y. Aug. 20, 2020)....... 12

*Giuffre v. Maxwell,* 165 F. Supp. 3d 147, 154 (S.D.N.Y. 2016) .................................................. 35

*Grassia v. Scully,* 892 F. 2d 16, 19 (2d Cir. 1989) ........................................................................ 9

*Gross v. New York Times Co*., 82 N.Y.2d 146, 155 (N.Y. 1993) ................................................. 53

*Gross*, 82 N.Y.2d at 153 ................................................................................................ 48

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 240-41 (1944) ........................... 38

*Hynes v. Squillace,* 143 F.3d 653, 656 (2d Cir. 1998) .................................................... 9

James v. Gannett Co., 40 N.Y.2d 415, 419, 386 N.Y.S.2d 871, 874, 353 N.E.2d 834, 837-38

   (1976) ................................................................................................................ 25

*Jewell v. NYP Holdings, Inc.,* 23 F. Supp. 2d 348 (S.D.N.Y. 1998) ........................ 11, 13, 25, 27

*Jewell vs. NYP Holdings, Inc.* ............................................................................... 42, 44

*Jones v. Crisis Servs. of Erie Cty.,* No. 16 Civ. 234 (FPG), 2018 WL 3708494, at *10 (W.D.N.Y.

   Aug. 3, 2018) ...................................................................................................... 48

*Lawrence v. Bauer Publ'g & Printing Ltd. (Lawrence II),* 446 A.2d 469, 476, 478– 79 (N.J.

   1982) ................................................................................................................. 33

*LeBlanc v. Skinner,* 103 A.D.3d 202, 214 (2d Dep't. 2012) ......................................... 46

*Levin v. McPhee,* 119 F.3d 189, 195 (2d Cir. 1997) ................................................. 10, 54

*Menaker v. C.D.,* 2:17-cv-5840 (DRH)(AYS) (E.D.N.Y. Nov. 1, 2018) ........................ 54

*Morris v. Local 804, Int'l Bhd. of Teamsters,* 167 F. App'x 230, 232 (2d Cir. 2006) ................ 9

*NATAS v. Multimedia Systems Design Inc.,* 20-CV-7269 (Caproni, J.) ........................... 15

*New York Times Co. v. Sullivan*, 376 U.S. 254, 280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)) at 280

   ....................................................................................................................... 26

*Pereira v. United States,* 347 U.S. 1, 8 (1954) ....................................................... 40

*Rapaport v. Barstool Sports, Inc.*, No. 18-CV-08783 (NRB), 2021 WL 1178240, at *11

   (S.D.N.Y. Mar. 29, 2021) ..................................................................................... 56

*Schmuck v. United States,* 489 U.S. 705, 721 n. 10 (1989) ....................................... 40

*Silsdorf v Levine* (59 N.Y.2d 8, 16, cert denied 464 U.S. 831) .................................. 53

*Sprewell v. NYP Holdings, Inc.,* 772 N.Y.S.2d 188, 192-93 (N.Y. Sup. Ct. 2003)...................... 46

*Steinhi l ber v. Alphonse,* 68 N.Y.2d 283, 289, 508 N.Y.S.2d 901, 501 N.E.2d 550 (N.Y.1986) 38

*Steinhilber v. Alphonse,* 501 N.E.2d 550, 554 (N.Y. 1986)......................................................... 53

*Stern v. Cosby,* 645 F. Supp. 2d 258 ......................................................................................... 10

*The National Academy of Television Arts and Sciences, Inc. et al v. Multimedia System Design,*

    *Inc.*, 1:20-cv-07269-VEC-OTW, S.D.N.Y ............................................................................... 16

United States v. Lemuel Kinney and Electronic Systems & Associates, Inc., CR No.94-00057A

    .................................................................................................................................................. 30

*United States v. Tobin,* 480 F.3d 53 (1st Cir. 2007) .................................................................... 42

United States vs. Joseph Romello, CR No. 92-00418A ............................................................... 30

US v. Nichols, 928 F. Supp. 302 - Dist. Court, SD New York 1996............................................ 51

*Versaci v. Richie,* 30 A.D. 3d 645, 649 (3d Dep't 2006)............................................................. 21

*Zimmerman v. Buttigieg et al*, 8:20-cv-01077-CEH-CPT, U.S.D.C. Middle Dist ...................... 54

## Statutes

18 U.S.C. Section 1341............................................................................................................... 39

28 U.S.C. § 636(b)(1) ................................................................................................................... 7

47 U.S. Code § 223 ..................................................................................................................... 41

Soc. Serv. Law § 420 .................................................................................................................. 22

## Rules

Fed. R. Civ. P. 72(b) ................................................................................................................ 7, 8

Fed. R. Civ. P. 72(b)(3)................................................................................................................. 9

Fed. R. Civ. Proc. 60 .................................................................................................................. 37

Fed. R. Civ. Proc. 60(b)(3) ................................................................................................ 37

Federal Rules of Civil Procedure Rule 72(a) and 72(b)(2).......................................................... 7

**Treatises**

11 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND

PROCEDURE § 2870 (1973) ....................................................................................... 39

1994 The Sixth Circuit's Unprecedented Reopening of Demjanjuk v. Petrovsky, Cleveland State

Law Review, Volume 42 Issue 4 Article 25 ............................................................ 38

7 JAMES W. MOORE ET AL., MOORE's FEDERAL PRACTICE 1160.33, at 360 (2d ed.

1993)..................................................................................................................... 38

## QUESTIONS PRESENTED:

Can a Magistrate's incomplete Report and Recommendation be relied upon when the Defendant's spoliation of video evidence has blindfolded the Magistrate as to one third of the defamatory statements to be reviewed?

Did the Magistrate err by taking no action in April 2021 when alerted that the Defendant had spoliated evidence as part of Plaintiff's discovery, which a few months later became the same spoliation that blindfolded the Magistrate?

## SPECIAL NOTE:

As the Plaintiff needs to demonstrate actual malice, this pleading contains such evidence. Unfortunately, the inclusion of this actual malice evidence has added to the length of this document,

## OBJECTIONS PURSUANT TO RULE 72(a)

NOW COMES THE PRO SE PLAINTIFF, D. George Sweigert, pursuant to Federal Rules of

Civil Procedure Rule 72(a)and 72(b)(2) to **OBJECT** to the Magistrate's Report and

Recommendation (R&R), ECF Doc. 321 (hereafter "**R&R**").  Pursuant to 28 U.S.C. § 636(b)(1)

and Fed. R. Civ. P. 72(b) the Plaintiff seeks a *de novo* review of these objections.

Regrettably due to the spoliation of evidence by the Defendant the incomplete R&R is fatally

flawed as it also contains numerous factual and legal errors which must be rejected and thus

corrected.  The selective omissions of the Defendant's conduct and the twisting of various laws

and jurisprudence to sugar coat his behavior indicate that the Magistrate appears to have

prejudged the case.

Indeed, given the delay that already was present -- compounded with a totally unjustified

obstruction of discovery and spoliation of evidence by the Defendant -- which loss of time now

amounts to six (6) months with Magistrate Aaron's issuance of his Report [R&R].

## LEGAL STANDARD

### *Affirmative defense to bolster de novo review request*

These objections are not merely a rehash of previous arguments as described by *Camardo v.

General Motors Hourly Rate Employees Pension Plan,* 806 F. Supp. 380, 381–82 (W.D.N.Y.

1992).  There is language in these objections to provide context of defamatory *pro se* statements

taken from the same exhibits available to the Magistrate.  Additional wording demonstrates the

Plaintiff's ability to prove actual malice.

The Plaintiff notes that in the past the S.D.N.Y. may have relied upon *Camardo* for the proposition that a district court need not perform a *de novo* review of arguments that a party makes in its objections to a magistrate judge's report and recommendations if that argument was already considered by the magistrate judge.  When *Camardo* is used to deny such review, it deprives litigants of statutory and, possibly, constitutional rights.  Further, the Second Circuit has never adopted the *Camardo* dicta and therefore district courts are not required to follow it.

Indeed, the Second Circuit recently noted without comment that a district court entertained a rehashing of arguments *de novo*, strongly suggesting that it saw that standard of review as appropriate.  *10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co*., 634 F.3d 112, 119 (2d Cir. 2011).  See, e.g., *Morris v. Local 804, Int'l Bhd. of Teamsters, 167 F. App'x* 230, 232 (2d Cir. 2006) (summary order) ("If the parties timely exercise their right to object to those findings, the district court must conduct a de novo review of those portions of the report and recommendation to which the party objects." (citing *Grassia v. Scully,* 892 F. 2d 16, 19 (2d Cir. 1989), and Fed. R. Civ. P. 72(b))); *Hynes v. Squillace,* 143 F.3d 653, 656 (2d Cir. 1998) ("Under 28 U.S.C. § 636(b)(1), the Magistrate Judge's Report-Recommendation was subject to de novo review as to those issues upon which the parties raised objections."); *Beyah v. Walker*, No. 96-2990, 1997 WL 786375, at *1 (2d Cir. Dec. 23, 1997) (unpublished table decision) ("Once objections are filed, the district court conducts a de novo review with respect to the disputed issues.").

The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge

with instructions.  Fed. R. Civ. P. 72(b)(3).  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b).

***Evaluating the defamatory remarks of the Defendant***

The Court's burden at this stage is to determine whether the statements complained about are **reasonably susceptible** of a defamatory meaning, which is a question of law for the court, and if the statement is susceptible of both a defamatory and nondefamatory meaning that is a question of fact left for the jury.  The Magistrate has erred in this regard.

"On a motion for summary judgment, the court's role is to determine whether a statement is "reasonably susceptible to the defamatory meaning imputed to it." *Levin v. McPhee,* 119 F.3d 189, 195 (2d Cir. 1997). If so, the court does not determine as a matter of law that the statement is defamatory, as that is the exclusive province of the jury. See Jewell, 23 F.Supp.2d at 360.", *Stern v. Cosby*, 645 F. Supp. 2d 258.

## PRELIMINARY STATEMENT

1.      If, as the Magistrate suggests, that the Defendant was just an informal "freewheeling" Internet blogger throwing around schoolyard squabble comments on message boards about the uranium on the M/V Memphis Maersk headed for Charleston few viewers on the Internet would have cared, much less telephoned the U.S. Coast Guard.  If Twitter was indeed a sewer of personal opinions, as suggested by the Magistrate in the R&R, why would a tweet "MEMPHIS MAERSK – DIRTY BOMB – PLEASE INVESTIGAE" cause anyone to care.

2.      Yet, for some reason a near panic was created on June 14, 2017, when the U.S. Coast Guard closed the Wando Terminal and conducted a full radiological sweep of the premises based

11

on the Defendant's "dirty bomb show" (Clear and Present Danger podcast).  Obviously, it was the formality of the "investigative journalist" news program format employed by the Defendant that led the public to be less skeptical that the threat was real, as in the 1939 CBS News Radio show *War of the Worlds* fashion.

3.      The Magistrate omits in his R&R that the Defendant is a self-described **investigative journalist**, "who makes a **serious effort to investigate and report on topics**" and purportedly broadcasts public interest news podcasts that would have content of general newsworthy interest. The Defendant claims that his video news service is operated in the public interest and "crowdsources truth".  The Defendant has stated that this video service is his primary source of income making him a "professional", aka full-time "investigative journalist" with a news anchor monotone delivery.

4.      The defamatory statements of the Defendant under examinations were made in a well-choreographed almost militant format complete with sophisticated video editing techniques, use of multiple cameras with video switching, display of lettering in the bottom of the video frame, etc.  CrowdSource The Truth is a sophisticated profit driven news organization.  This creates a new standard for consideration of defamation *per se* claims, as the public may be less skeptical of statements from a professional news service issued by an investigative reporter.

> These undoubtedly are circumstances encouraging the reasonable reader to be less skeptical and more willing to conclude that the report is stating or implying facts garnered by a professional news gatherer and reporter." *Jewell v. NYP Holdings, Inc.,* 23 F. Supp. 2d 348 (S.D.N.Y. 1998).

5.      By glossing over, sugar coating and/or omitting the true nature of the Defendant's commercial enterprise in the R&R, the Magistrate inappropriately lowers the standard used by the average viewer watching these CrowdSource podcasts.  This speaks to obvious favoritism

given the Defendant.  The Magistrate seems to believe that the Defendant was involved in one-off comments made on the fly in some Twitter war.  Untrue.

6.      Within an eight (8) week period the Defendant posted several podcasts that restate and amplify the central theme that the Plaintiff is engaged in criminality and unethical behavior in a criminal conspiracy.  Defendant admits he consulted with a retired special agent of the Federal Bureau of Investigation (FBI) (Robyn Gritz) and an individual with "tremendous law enforcement contacts" (Michael D. Moore, aka The True Pundit) to develop a strategy to spew this rhetoric and "turn evidence over to the FBI" (which Defendant admits never took place).  The series of videos includes:

- Statement 7 published March 17, 2018

- Statements 1 and 3 published April 4 and 7, 2018

- Statement 2 published April 6, 2018

- Statement 4 published May 4, 2018

7.      Defendant's defamatory statements were not made <u>on some interactive blog message board, two-way discussion group or interactive chat</u> room as the Magistrate alludes to or erroneously suggests [R&R] [ECF 321].  These statements represent the prepared thoughts of an "investigative journalist" as he addresses the public from a commercial for-profit news organization.

8.      In fact, there is no two-way feedback function between the speaker and the audience.  Most of these productions are not live, but pre-recorded and posted on a video platform like YouTube, Rumble, BitChute, etc.  This is not the informal "freewheeling" or "gunslinger" schoolyard squabble environment erroneously relied upon by the Magistrate in *Ganske v. Mensch, No.* 19-CV-06943 (RA), 2020 WL 4890423 (S.D.N.Y. Aug. 20, 2020) [pg.11,R&R]

9.      YouTube hosts videos for CBS News, 60 Minutes, FOX News, Cable News Network, etc.  This medium is not a blogger's wasteland but a commercial video service.  If the Court relies solely on *Ganske v. Mensch,* then defamatory CNN or ABC broadcasts could be excused as a mere informal video that appeared on the freewheeling YouTube channel ("freewheeling" *Ganske v. Mensch*).

10.     The Court should recall **Exhibit A-26** [ECF 295-1], quoted in relevant part:

> "Jason Goodman, YouTube, Crowdsource the Truth: I didn't look at CNN and say, I want to do that. I didn't go to FOX News and say, here's my resume, I want to put on a suit and after Tucker Carlson I want to sit there and read my news. I didn't say that. I didn't go to the "New York Times" and say, I want to write stories for you. I looked at all those things and I said you guys are all fucked up."
>
> https://trackingmeroz.files.wordpress.com/2021/07/sweigert-v-goodman-doc-295-1-712-2021.pdf

11.     The Court will undoubtedly see the context of the depth and breadth of defamatory statements made by the Defendant over several years, which can only be described as a smear campaign, ignored by the Magistrate in the R&R by his isolated examination of individual statements.

12.     Taken in context, the innuendo of criminal and unethical activities placed at the Plaintiff's feet is unmistakable.  Defendant wanted to create costly reputational harm for the Plaintiff and destroy his **Certified Ethical Hacker** reputation.  Attacks are specific and targeted at the Plaintiff's professional and family responsibilities (see deadbeat dad).  Unfortunately, the Magistrate missed the point that context is the key, as noted in *Jewell v. NYP Holdings, Inc.,* 23 F. Supp. 2d 348 (S.D.N.Y. 1998).

## ISSUES CONCERNING NON-AVAILABILITY OF EVIDENCE

13.     Under the Magistrate's watchful eye, the Defendant has hindered discovery and his actions justify further discovery by the Plaintiff.  During the discovery period, as documented via **ECF doc. 267, 4/30/2021**, the Defendant placed the JASON GOODMAN YOUTUBE channel (with 119,000 subscribers and 2,333 videos) in an off-line private status thereby hindering and obstructing discovery.  This condition was amplified in paragraphs (1) through (5) of ECF doc. 245, 4/14/2021.

14.     Additionally, the **Magistrate knew beforehand** that the private status (off-line) of the JASON GOODMAN channel would curtail his ability to accurately review the alleged defamatory statements in the context of their publication; itemized below (R&R, ECF 321):

> "[page 12]  The link for the video included in Plaintiff's First Response indicates that the video is not available. (See Pl.'s First Response at 14 (citing https://youtu.be/qyg9YejHyok).) Therefore, on the current record, the Court cannot assess whether the statements contained in Statement 4 are nonactionable opinions as Defendant asserts.

> [page 14]  The link to the video cited by Plaintiff indicates that the video is private. (See Pl.'s Second Response at 2 (citing https://youtube.com/watch?v=yx_6sj33FDs).) Thus, the video could not be reviewed by the Court.

> [page 16]  As with Statements 4, 5 and 6, however, the Court cannot find that these statements are nonactionable opinions without access to the relevant video, which is marked private. (See Pl.'s Second Response at 8 (citing https://www.youtube.com/watch?v=1koAEHYbZTA&t=407s).)

> [page 18]  Again, Defendant did not include this video as part of the summary judgment record and it is marked private. (See Pl.'s Second Response at 14 (citing https://www.youtube.com/watch?v=ekr5cw2WAbU&t=7612s).) Thus, the Court cannot determine who "us" refers to, let alone determine whether the statement is substantially true, as Defendant argues. For these reasons, the Court is unable to determine whether Statement 9 is actionable."

15.     In sum, the Magistrate's review of these videos was foreseeably obstructed by the Magistrate's lack of action with regards to the JASON GOODMAN channel spoliation via privatization in April 2021.  In comments made to the public via social media on 4/12/2021 the

Defendant insinuated that the Plaintiff was responsible for the "termination" of this channel.  The

Defendant also stated the same misleading and false narrative to Judge Valerie E. Caproni on

4/30/2021 during a discovery conference in *NATAS v. Multimedia Systems Design Inc.,* 20-CV-

7269 (Caproni, J.).  The Plaintiff was not responsible for the off-line or hoax termination of this

YouTube channel.

16.     It is a clear error on the part of the Magistrate to attempt to address the issues of

defamatory statements in video content he has no access to and to form conclusions as to

defamation *per se* content without reviewing context.  In fact, the Magistrate was alerted to this

problem in the Plaintiff's letters (attached) in April 2021 and took no action in this matter,

creating the situation of video content non-availability.  The Magistrate should not have allowed

spoliation of these videos during discovery, creating a "heads I win, tails you lose scenario" in

favor of the Defendant.  The R&R is so "cooked" in this regard as to be of no use by the Court

and should simply be vacated.

## SUGARCOATED AND PREJUDICIAL BACKGROUND

17.     In providing the background in the R&R the Magistrate states "Defendant Goodman

creates online news and entertainment content under the brand CrowdSource The Truth."  This

statement sugar coats the hundreds of references the Defendant has made about himself on social

media and in the evidence presented to the Magistrate as an "investigative journalist", "forensic

examiner of evidence", "film documentarian", etc.  Indeed, the Defendant's Declaration begins,

"1.  **I am an independent investigative journalist** who creates online news and entertainment

content under the brand Crowdsource the Truth.",[**pg.1 ECF 268**].

18.     See Defendant's comments, ""I find it intriguing that even investigating it, questioning it,

becoming a **forensic examiner of evidence**, you get ridiculed. You're a conspiracy theorist."

Exhibit **A-26, pg. 98, ECF 295-1**, https://trackingmeroz.files.wordpress.com/2021/07/sweigert-v-goodman-doc-295-1-712-2021.pdf

19.     The Court should take note of the description of CrowdSource The Truth on

PATREON.com (https://www.patreon.com/crowdsourcethetruth):

> Crowdsource The Truth is an Open Source Fact Checking **"Truth Engine"** and
> political social media movement.

20.     Let not the Court forget that the Defendant maintains a New York chartered corporation,

Multimedia Systems Design, Inc. (MSDI), which is the legal entity that operates many of the

video production "back office" functions.  This is another indication of the professional

journalistic status of CrowdSource The Truth, which is a fully protected trademark issued by the

U.S. Patent and Trademark Office (USPTO).  See related litigation, *The National Academy of*

*Television Arts and Sciences, Inc. et al v. Multimedia System Design, Inc*., 1:20-cv-07269-VEC-

OTW, S.D.N.Y.

21.     As to his status as a news source the monotone Defendant admits, "My guests have

included U.S. Senator Marsha Blackburn, Former Acting U.S. Attorney General Matthew

Whittaker, Retired NYPD Commissioner Bernard Kerik, Judge Jeanine Pirro, and Attorney Alan

Dershowitz among other nationally, and internationally known newsmakers."  [**Def's Decl.,**

**pg.1, ECF 278**].  https://trackingmeroz.files.wordpress.com/2021/06/sweigert-v-goodman-doc-278-601-2021.pdf

22.     Not the stuff of an informal "freewheeling" schoolyard squabble, in fact the opposite.

The news monotone delivery of the investigative journalist Defendant (who offers no disclaimers

or opinion banners is his podcasts) is beguiling to the unsuspecting YouTube viewer.  Guests

such as these permanently cement the Defendant as a commercial for-profit news organization on par with FOX NEWS and 60 Minutes.

23.     The Defendant also has the additional credibility of serving as the "court reporter" for the Citizens Grand Juries that provide Special Prosecutor Larry E. Klayman, esq. a forum to indict public officials.

24.     In providing this R&R background, the Magistrate has omitted the fact that Defendant placed a telephone call to the Duty Officer at the Charleston Sector of the U.S. Coast Guard after providing that number to 2,000 livestream viewers of the *Clear and Present Danger* YouTube podcast on June 14, 2017 seen on the JASON GOODMAN YouTube channel.  Please note the recording relied upon for **Statement 2**, at time-mark 22:29,

https://soundcloud.com/altnews/462018-jason-goodman-calls-lift-the-veil

25.     The Court will recall the Defendant introduced himself as "My name is Jason Goodman and I am a reporter for an independent news agency," when he spoke with the Coast Guard petty officer in Charleston.

26.     Although "dirty bomb" rumor originator Oakey Marshall Richards is mentioned by the Magistrate as the source of the "dirty bomb" information, the fact that the Defendant made an additional 25 podcasts shows, well into March 2018, with Mr. O. M. Richards has been omitted in the R&R.  This is interesting as this relationship demonstrates the Defendant's unreliable testimony that conflicts with the record.  See Defendant's statements that "Shortly thereafter, I ended my collaboration with Webb, and shortly after that ended communications with Richards and the rest of Webb's associates," [**para.29, pg.4, ECF 278**].  Untrue.

https://trackingmeroz.files.wordpress.com/2021/06/sweigert-v-goodman-doc-278-601-2021.pdf

See also EXHIBIT C-3 is located on **pg.8, ECF 294-1**.

https://trackingmeroz.files.wordpress.com/2021/07/sweigert-v-goodman-doc-294-1-711-2021.pdf

27.     This "ended my collaboration" with Oakey Marshall Richards statement was proven to be false and speaks to the Defendant's actual malice of recklessly ignoring the truth.  The Defendant had nine (9) months of access to Mr. Richards (Marshall) as both of them co-created thirty 25 podcasts after the Port of Charleston "dirty bomb show".  This was addressed in Counterstatement **123, pg.5,ECF 299** (Defendant maintained communications with "DEEP URANIUM" until March 2018 and during that time co-created approximately 25 video podcast shows featuring "DEEP URANIUM" in a new role as "THE HUDSON REPORT". [Exhibit C-3]"  https://trackingmeroz.files.wordpress.com/2021/07/sweigert-v-goodman-doc-299-714-2021.pdf

28.     In this regard, the Magistrate's Report is so factually and legally flawed and, to put it most diplomatically, frankly contrived (since stronger language could be employed), as not to be worthy of any consideration by the presiding judge.

## **ERRORS IN REVIEW OF DEFAMATORY PER SE STATEMENTS**

### *Statements 1 and 3*
### *Defendant's false disclosed facts create innuendo of criminality*

29.     According to the R&R **Statements 1 And 3** (From "*The Sinister Psychological Operation of George Webb Sweigert*" Video) Are Not Actionable [pg. 9, R&R, ECF 321].  See Defendant's Statement 1 ("You better stop that Dave, because all that stuff is going to the FBI")

and Statement 3 ("I am working on a way to figure out how to bring criminal prosecution against these people")

30.     In the R&R (ECF 321) the Magistrate arbitrarily writes, "in any event, even if Statements 1 and 3 are actionable, as set forth in Discussion Section I(C), infra, I find that they are not defamatory *per se* and Plaintiff has not adduced evidence of special damages."

31.     This finding is clearly incorrect and erroneous.  The statements are actionable as they purport a level of criminality on the part of the Plaintiff to incur defamation *per se* liability.  The entire video podcast context of the actionable statement is important to understand that the 3/30/2018 e-mail message discussed in **<u>Statement 10</u>** is the very same e-mail message addressed in this video podcast.

32.     In a clever and duplicitous manner Defendant displayed by video this e-mail of 3/30/2018 in a truncated view to his audience of several thousand.  The Defendant's podcast shows the beginning of the 3/30/2018 e-mail message and then the Defendant explains what was in the text of the remaining e-mail contains after truncating the e-mail off the screen.



https://www.bitchute.com/video/ufF7P728sViQ/

20

Time-mark 15:51 (Goodman) "What we are seeing in blue is my message to them alerting them that contacting PATREON.com and PAYPAL and the various methods I monetize CrowdSource The Truth in the way that David Sweigert has, **telling them lies that I am involved in crimes against minors** and the various things that he tells them. That's tortious interference, that's a civil tort.  That's malicious and that's not good.



*Video screen shot depicting e-mail message traffic between Defendant and Plaintiff*

https://www.bitchute.com/video/ufF7P728sViQ/

33.    Below is the text of the entire e-mail message that was only partially displayed on the podcast video.  Plaintiff's original e-mail message seen in dark blue.

---

---------- Original Message ----------
From: George Webb <georg.webb@gmail.com>
To: Spoliation Notice <spoliation-notice@mailbox.org>
Cc: jason@21stcentury3d.com, truth@crowdsourcethetruth.org,
corina.davis@redbubble.com, colin@patreon.com, lawenforcement@paypal.com
Date: 03/30/2018 4:41 PM
Subject: Re: Warning and Caution Notice


I have notified Jason numerous times both privately and publicly I misspoke when i said i believe you worked for a CIA contractor. Because you put a CIA contract officer in jail for contract fraud, i believed that Lim Kinney's firm was a CIA contractor. I

---

have asked Jason Goodman to correct this misstatement many times by taking down the video, and i have issued numerous public retractions.

Sent from my iPhone

> On Mar 30, 2018, at 9:24 AM, Spoliation Notice <spoliation-notice@mailbox.org> wrote:
>
> THIRD NOTICE AND WARNING
>
> Dear Sir,
>
> Attached are screen shots of yet another YouTube video on the channel "Crowd Source The Truth" that attacks an individual with slander.
>
> As you are well aware, the content you have published regarding our client (Mr. Sweigert) is in error, false, and misleading.  This is the third such video in as many weeks.
>
> This is your third warning to cease and desist from the publication of false, deceptive and grossly inaccurate information.
>
> As you are well aware, a wire fraud racketeering lawsuit will name your electronic payment partners as co-defendants, thus they have been copied in this communication.
>
> Your co-defendant, George Webb, is also copied.
>
> Evidence Collection Team

34.     Contrary to the Magistrate's finding, the Defendant's sophisticated video truncating techniques is the opposite of an informal "freewheeling" schoolyard squabble Internet blog that serves as an exchange of ideas or promotes debate.  *Versaci v. Richie,* 30 A.D. 3d 645, 649 (3d Dep't 2006).

35.     On this point it is instructive to note the wisdom in *Jewell vs. NYP Holdings, Inc.*; quoted in relevant part:

"[T]he simple fact of the matter is that these statements were published in a newspaper…A newspaper column is the product of some deliberation, not the heat of a moment. Prior to publication, it passes through the hands of professional editors and it

thus carries with it the cloak of credibility and authority of the particular newspaper and the profession…These undoubtedly are circumstances encouraging the reasonable reader to be less skeptical and more willing to conclude that the report is stating or implying facts garnered by a professional news gatherer and reporter."

36.     As the Defendant admits, "If you are an influential independent voice who makes a **serious effort to investigate and report on topics** that are outside the mainstream consensus." [Def's Declr, pg.2, ECF 278].   https://trackingmeroz.files.wordpress.com/2021/06/sweigert-v-goodman-doc-278-601-2021.pdf

37.     As the Court will note from the actual text in the 3/30/2018 e-mail message the undersigned DID NOT accuse the Defendant of any "crimes involving minors".  The Defendant's opinion that Plaintiff's allegedly was lying about "crimes against minors" **is false** and represents an opinion based on undisclosed facts (hidden in the truncated e-mail message).

38.     "A pure opinion may take one of two forms. It may be a statement of opinion which is accompanied by a recitation of the facts upon which it is based, or it may be [a]n opinion not accompanied by such a factual recitation **so long as it does not imply that it is based upon undisclosed facts**." *Davis v. Boeheim*, 24 NY3d 262, 269 (2014) [emphasis added]

39.     The Defendant has presented many such actionable statements that can be determined to be true or false, for example "*in the way that David Sweigert has, telling them lies that I am involved in crimes against minors and the various things that he tells them*." **This is untrue.**

40.     This "crimes against minors" statement directly attacks the veracity and ethics of the Plaintiff and creates the impression to the average viewer that the Plaintiff's "false statements" about "crimes against minors" has been reported to the FBI.   As noted in *Celle v. Filipino Reporter Enterprises Inc*., 209 F.3d 163, 177 (2d Cir. 2000), quoted in relevant part:

> Challenged statements are not to be read in isolation, but must be perused as the
> average reader would against the whole apparent scope and intent of the writing…
> [T]he words are to be construed not with the close precision expected from
> lawyers and judges but as they would be read and understood by the public to
> which they are addressed.

41.     Caveat: in New York State it is a crime to fail to report "crimes against minors".  "Failure
to Report Citation: Soc. Serv. Law § 420 Any mandatory reporter who willfully fails to report as
required shall be guilty of a class A misdemeanor. Any mandatory reporter who knowingly and
willfully fails to report as required shall be civilly liable for the damages proximately caused by
such failure."

### *Unauthorized Practice of Law*

42.     The Defendant attempts to create the impression that the Plaintiff has misrepresented
himself as an attorney based on the text in the 3.30/2018 e-mail message.

> Time-mark 16:16  (Goodman)  And the other thing David Sweigert no lawyer sends a
> letter to anyone anonymously from the "Evidence Collection Department" from
> spoliation-notice@mailbox.org. That's non-sense Dave.  Any lawyer whoever contacts
> anyone includes their address, their name, their phone number, they're trying to initiate
> communications.  Not intimidate with lies and deception in the way that you do.  You
> better stop that Dave, because all that stuff has gone to the FBI.

43.     The Defendant's leap in logic to label the Plaintiff as a lawyer and begin addressing
issues of attorney misconduct indicates his attempt to paint the Plaintiff with an Unauthorized
Practice of Law (UPL) paintbrush.  The language is unmistakable, the Defendant has imputed
upon the Plaintiff language that somehow the Plaintiff is impersonating an attorney and was
reported to the FBI.

44.     As the Court will note, there is nothing in the text of the 3/30/2018 e-mail message to indicate the Plaintiff is impersonating a lawyer or purports to be a law office.  The Defendant is creating more innuendo that the Plaintiff has broken the law as UPL is illegal in New York.  See Rule 5.5 Unauthorized Practice Of Law - New York State Bar ( https://www.nysba.org ), "It shall be unlawful for any natural person to practice or appear as an attorney-at-law or as an attorney and counselor-at-law for a person other than himself."

45.     To the average viewer, it would be easy to assume that this is yet another reason why the Defendant (reporter for an independent news agency) is sending all these materials to the FBI, in addition to everything else that the Plaintiff has done while impersonating a lawyer breaking the UPL statutes in New York.  The FBI should be notified.

46.     Other dubious items supposedly turned over to the FBI by the Defendant.

> Time-mark 21:04    (Goodman)  Even if that lawsuit (Robert David Steele lawsuit) went the distance, went to court, went in front of a jury, which I doubt it will, but I guess it would be entertaining.  We would learn a lot about the persistently lying Robert David Steele.  Through discovery and all these things that haven't happened yet.  Even though he has said he learned through discovery that I am paid $3,000 by Mossad.  That's a total lie and I have already downloaded the video, Robert.  Uh…well.  Don't worry, that's gonna be…. That is in the evidence package that I presented to the FBI.

47.     Thus, the Defendant allegedly not only sent "stuff" to the FBI about the Plaintiff's UPL and "lies and deception" of "crimes against minors", but the Defendant somehow also transmitted a video download of Robert David Steele discussing Mossad payments of $3,000 in an "evidence package" to the FBI.  All of this is untrue based in the Defendant's sworn testimony (addressed below in **DEFENDANT'S RESPONSE TO INTERROGATORIS, ECF doc.204, 2/17/2021**).

48.     These statements meet the reasonably susceptible threshold.  "It is the duty of the courts, in the first instance, to determine whether "the statement alleged to have caused plaintiff an injury is *reasonably susceptible* to the defamatory meaning imputed to it." *Levin,* 119 F.3d at 195 (emphasis added) (citing *James v. Gannett Co.,* 40 N.Y.2d 415, 419, 386 N.Y.S.2d 871, 874, 353 N.E.2d 834, 837-38 (1976)). It remains the exclusive duty of the jury to determine whether a plaintiff has in fact been defamed."  *Jewell v. NYP Holdings, Inc.,* 23 F. Supp. 2d 348 (S.D.N.Y. 1998)

49.     In the **DEFENDANT'S RESPONSE TO INTERROGATORIS, ECF doc.204, 2/17/2021**, at page 2, Defendant states, "FBI special agent Britney Custer is also known to Defendant. This is the agent Defendant spoke with for over 2 hours about Plaintiff and Plaintiff's associates stalking and harassing of Defendant. Special Agent Custer's address and the nature of her knowledge of the allegations and this legal action are unknown to Defendant."

50.     At the 16:53 podcast time-mark, Defendant uses the phrase "conversations with the FBI", conversations as in plural, falsely implying follow-up phone calls and requests for clarification, etc.  This does not accurately describe one "two-hour phone call" with Special Agent Brittany Custer.  Again, an atmosphere of criminality is created by the Defendant as he attempts to exaggerate the level of interest of the FBI with references to multiple conversations (plural).

51.     In document **DEFENDANT'S RESPONSE (ECF 204),** Defendant responds to the request to provide "b. All documents and communications between Defendant and any law enforcement agency regarding Plaintiff", Defendant replied "b. To the best of Defendant's recollection, no documents exist that are responsive to this request <u>all contact between Defendant and law enforcement has been via telephone or in person</u>". [emphasis added]

52.     Unfortunately, the Defendant has provided conflicting statements under oath to this Court

on this issue of what documents were given to the FBI.  Apparently, no materials were provided

to the FBI at any time by the Defendant.

53.     The Magistrate who, for whatever undisclosed reason, has his own unsupportable view,

not backed up with facts or law, incorrectly states, "Plaintiff has offered no evidence to show that

these facts are genuinely disputed, thereby entitling Defendant to summary judgment as to

**Statements 1 and 3**."  Unfortunately, due to the Defendant's conflicting statements about the

"evidence package", these facts ARE in dispute.

54.     Further, Defendant (reporter for an independent news agency) stating that he had sent

materials to the FBI when he had not done so (falsehood) gives rise to actual malice.  To plead

actual malice, the Plaintiff must allege facts sufficient to give rise to a reasonable inference that

the false statement was made "with knowledge that it was false or with reckless disregard of

whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280, 84 S.Ct. 710, 11

L.Ed.2d 686 (1964)) at 280.

55.     The Defendant's overall opinion expressed to his audience, based on false facts, suggests

criminality; see below:

> Time-mark 18:18  (Goodman)  If it was just one person doing it, it might be easier to
> prosecute one individual.
> Time-mark 18:34  (Goodman)  I am working on a way to figure out how to bring
> criminal prosecution against these people.

56.     In their totality, the Defendant's statements impute a level of criminality upon the

Plaintiff.  Use of actual words connecting a specific law that was broken to the Plaintiff are not

required under New York law.

57.    "Many of the statements at issue are "reasonably susceptible to a connotation of criminality"", *Jewell v. NYP Holdings, Inc.,* 23 F. Supp. 2d 348 (S.D.N.Y. 1998).  As the *Jewell* court opinioned:

> "The governing standard, however, requires that the statements be "reasonably susceptible to a connotation of criminality[,]" *Caffee,* 104 A.D.2d at 353, 478 N.Y.S.2d at 685, or that the crime be "readily apparent from properly pleaded innuendo." *Privitera,* 79 A.D.2d at 5, 435 N.Y.S.2d at 405.
>
> and
>
> As to the argument that the statements do not "specifically charge Jewell with that crime[,]" the law does not require such an explicit statement for it to be considered actionable without proof of special damages: "While slanderous language need not consist of the technical words of a criminal indictment, *it is necessary that the language be reasonably susceptible to a connotation of criminality." Caffee,* 104 A.D.2d at 353, 478 N.Y.S.2d at 685 (citation omitted) (emphasis added)"

### Damage to Certified Ethical Hacking profession

58.    The Defendant's statements that the Plaintiff was engaged in lying and deception in his e-mail messages to PATREON.COM and PayPal are also detrimental to the Plaintiff's profession as a Certified Ethical Hacker, which requires adherence to a code of ethics which requires only truthfulness in such matters.  Certified Ethical Hackers operate at a higher standard than the general public and must provide truthful reports to the receivers of such reports.  Thus, sending e-mail messages to PATREON.com and PayPal with "deception and lies" are matters "incompatible with the proper conduct of [Jewell's] business, trade [or] profession." *Jewell v. NYP Holdings, Inc.*

59.    As stated in the Certified Ethical Hackers Code of Ethics, "*Conduct oneself in the most ethical and competent manner when soliciting professional service or seeking employment, thus*

*meriting confidence in your knowledge and integrity.*"   The Defendant's false statements about "lies and deception" and UPL in said e-mail messages turns this code of ethics on its ear.

### *Statement 2*
### *Lift the Veil Show with Jason Goodman*

60.      Regarding **Statement 2**, the Magistrate opined, "In Statement 2, Goodman groups together two statements—"that man should be in jail" and "that's criminal prosecution, I intend to get them prosecuted criminally"—that were part of an approximately one hour and forty-five-minute episode of a podcast entitled "Lift the Veil" on April 6, 2018. (Def.'s Mem. at 16; Pl.'s First Response at 4; 4/6/2018 Lift the Veil Podcast, available at https://soundcloud.com/altnews/462018-jason-goodman-calls-lift-the-veil (last visited Oct. 28, 2021), at 1:01:12, 1:12:23.) Goodman argues that these statements are nonactionable opinions. (Def.'s Mem. at 16.) The Court agrees." [R&R]

61.      At the outset the Court should consider statements made by the Defendant at the beginning of the **Lift the Veil** show to establish context.  For instance:

> Time-mark 22:38 (Goodman)  Dave Sweigert tells you a little bit of the story that's factual and he makes up a lot of the other stuff. There was no officially sanctioned U.S. military action in Nicaragua that I am aware of in the 1970s, 1980s, 1990s.  The only U.S. involvement was by CIA contractors, and this is IRAN-CONTRA, where guns were flown to IRAN with the assistance of Mossad, C.I.A. and Mossad were involved with that.  George H. W. Bush was the kingpin for that.  Oliver North was on trial for that.  Okay?  They then took the money from the sales of guns to IRAN, which were under sanctions.  You were not allowed to sell a pineapple to IRAN.  They were selling TOW missiles and other things.  That money was then flown from IRAN to Nicaragua where cocaine was purchased from the Contras.  And the people that Dave Acton (Sweigert) said he captured were the Sandinistas, the individuals that were fighting the Contras.  So I

don't know what Dave Acton (Sweigert) was doing in Nicaragua, but he gets real upset **when I say he was a CIA contractor flying cocaine**."

62.    That Court will recall the e-mail message of 3/30/2018 that was the subject of the video podcast for **Statements 1 and 3**, "*The Sinister Psychological Operations of George Webb Sweigert*.".  In said e-mail message (sent to the Defendant) George Webb Sweigert states:

---------- Original Message ----------
From: George Webb <georg.webb@gmail.com>
To: Spoliation Notice <spoliation-notice@mailbox.org>
Cc: jason@21stcentury3d.com, truth@crowdsourcethetruth.org,
corina.davis@redbubble.com, colin@patreon.com,
lawenforcement@paypal.com
Date: 03/30/2018 4:41 PM
Subject: Re: Warning and Caution Notice


I have notified Jason numerous times both privately and publicly I
misspoke when i said i believe you worked for a CIA contractor. Because
you put a CIA contract officer in jail for contract fraud, i believed that
Lim Kinney's firm was a CIA contractor. I have asked Jason Goodman to
correct this misstatement many times by taking down the video, and i
have issued numerous public retractions.

Sent from my iPhone

63.    George Webb Sweigert is referring to the lawsuit *Sweigert vs. Electronic Systems Associates, Inc.* and a qui tam False Claims Act (31 U.S.C. Sec. 3730) lawsuit brought against a military contractor in 1992; 85 F.3d 630. *United States of America, Ex Rel. David George Sweigert, plaintiff-appellant, v. Electronic Systems Associates, Inc.; Lemuel Kinney* (U.S.C.A. for the 6th Cir.).

64.    The Plaintiff was employed by the military contractor and not the CIA.  The Plaintiff has never been contracted to the CIA at any time and certainly was not involved in drug smuggling in Nicaragua.  As discussed at length, the Plaintiff was an active-duty U.S. Air Force passenger

on a U.S. Army helicopter, working under peace-keeping authority of the Organization of American States, that made an emergency landing at the Managua, Nicaragua airport in 1981. Completely unrelated to IRAN-CONTRA.

65.     As Exhibit **A-38, page 39, ECF 295-2**, there was a wealth of open source publicly available information on U.S. Department of Defense military operations in Latin America in the 1980s and 1990s.  The Plaintiff left Howard Air Force Base, Republic of Panama in January 1982 when he was transferred to Texas.

https://trackingmeroz.files.wordpress.com/2021/07/sweigert-v-goodman-doc-295-2-712-2021.pdf

66.     In *Sweigert vs. Electronic Systems Associates* a CIA officer was indicted and tried for assisting in a fraud with the Plaintiff's former employer, see *United States vs. Joseph Romello,* CR No. 92-00418A and *United States v. Lemuel Kinney and Electronic Systems & Associates, Inc.,* CR No.94-00057A.

67.     A detailed explanation of this lawsuit is available here:

https://trackingmeroz.wordpress.com/2020/08/19/david-sweigert-white-knight-of-the-order-of-qui-tam-in-the-name-of-the-king/

68.     Therefore, the Defendant proceeded in reckless disregard to the warning of George Webb Sweigert, expressed in the 3/30/2018, that the Plaintiff was NOT a CIA contractor.  The **Lift the Veil** show with Jason Goodman was broadcast on 4/6/2018.  The Defendant ignored the admonitions of George Webb Sweigert (3/30/2018 e-mail message) that the Plaintiff was not a CIA contractor

69.     The Plaintiff filed several sworn declarations to this effect in the May-June 2018 time period as documented on page 21 of the Plaintiff's **Memorandum of Law, ECF doc. 298,**

7/13/2021.  See: https://trackingmeroz.files.wordpress.com/2021/07/sweigert-v-goodman-doc-298-713-2021.pdf

**70.**     These instances indicate a developing pattern by the Defendant to consistently broadcast defamatory statements about the Plaintiff in an on-going, open-ended campaign that tends to create a connotation of criminal activity.  Defendant's statements set the tone that he is investigating David Sweigert and discovering criminality.

71.     The Court should recall the Defendant's artwork with regards to the Plaintiff's supposed drug smuggling in Nicaragua that was sold on tote bags and coffee cups.



Exhibit **A-40, pg. 60, ECF 295-2**

https://trackingmeroz.files.wordpress.com/2021/07/sweigert-v-goodman-doc-295-2-712-2021.pdf

72.     The Court will recall the dozens of statements made by the Defendant that he was investigating the crimes of "charity fraud" by Robert David Steele.  The Defendant considered himself as someone that was discovering and exposing criminal activity.  This far exceeds and

informal post to any "freewheeling" schoolyard squabble on-line blog, message board or discussion forum, etc.

**73.**     As the Defendant stated, "I believe he (Plaintiff) is motived to do this because **of my journalist endeavors to reveal criminal activity** that I believe he and his associates are involved in," e-mail dated 06/30/2018 1:15 AM, see **pg. 51, ECF 294-1.**

https://trackingmeroz.files.wordpress.com/2021/07/sweigert-v-goodman-doc-294-1-711-2021.pdf

**74.**     To understand the Defendant's personal bias and animus towards the Plaintiff it is instructive to note, **"**In addition to suffering from what appears to be obvious mental illness, he is a sexual deviant, publicly admitting to wife swapping with his own brother George Webb Sweigert, also copied on this message." And "The Sweigert brothers are a danger to the public and possibly themselves and are engaged in **what appears to be a range of criminal activities"** see **pg. 51, ECF 294-1.**

75.     For example, the Defendant discusses his investigation of "felony charity fraud" on the Lift the Veil program (**Statement 2**):   https://soundcloud.com/altnews/462018-jason-goodman-calls-lift-the-veil

> Time-mark 1:02:57 (Goodman)  Incidentally the charity fraud piece I found on my own. I don't believe (Robert David Steele) intended for me to discover that.  And that is huge, he has real legal jeopardy over that.  And that has him very scared.  I know you are going to hear this Robert David Steele, why have you not addressed your on-going charity fraud Robert David Steele.  You are committing charity fraud according to evidence that I have found and shown, again and again.
>
> Time-mark 1:04:29 (Goodman)  And Robert David Steele submitted a strike into removing that video from the channel.  Which someone has done to the video I put up on the CrowdSource The Truth TWO channel on YouTube, just yesterday.  The video

revealing the sinister psychological operations of George Webb Sweigert (see **Statements 1 and 3**) and his affiliates.  Someone submitted a strike on that video.  Time-mark 1:12:21 (Stolpman)  But, you have contacted the FBI right?  (Goodman)  **That's not a lawsuit that's criminal prosecution.  (Stolpman)  Sorry.  (Goodman)  I want them prosecuted criminally**.

76.    Notably, this is an accusation of criminal conduct.  *Lawrence v. Bauer Publ'g & Printing Ltd. (Lawrence II),* 446 A.2d 469, 476, 478– 79 (N.J. 1982), "The statement that plaintiffs "may be" charged with criminal conduct diminishes their standing in the community and is little different from an assertion that plaintiffs have actually been charged with certain crimes.  Hence the court correctly ruled that the articles were libelous *per se*, i.e., not susceptible of a nondefamatory interpretation."  Id. at 473

77.    The **"them"** referred to by the Defendant is a conflagration of Robert David Steele, George Webb Sweigert and the Plaintiff and others.  As noted by the Defendant:

> Time-mark 13:05 (Goodman) I was calling Dean Fougere (aka Titus Frost) to alert him to the fact that I intended to call the FBI.  I believe what's happening Nathan, is a decentralized distributed defamation attack.  We know how these guys all think.  We know how Manuel Chavez thinks.  He's a code breaker, he's a hacker.  He says he is not a hacker.
>
> Time-mark 26:16 (Goodman)  I called Dean Fougere at the office of his company that sells jet fuel sensors to Halliburton, Kellogg, Brown and Root (aka KBR) and Chevron, deep-state all the way.  I called him at that company to alert him that I was in the process of gathering information to bring to the FBI.  To tell the FBI that I believe a new type of crime is taking place.  A distributed decentralization defamation attack.  (Stolpman)  You called the FBI?  (Goodman) Absolutely, I spent hours… (Stolpman) You called the FBI? unintelligible… (Goodman)  I called the FBI and I submitted a complaint that took about 45 minutes.  And in less than 24 hours I got a return phone call and I spent over three hours **and I shared extensive evidence with the FBI.**

Time-mark 27:08 (Goodman)  I think everyone knows that I have good contacts with the FBI.  I have had retired FBI agent Robyn Gritz on my show many times.  I have had Thomas Payne of True Pundit (Michael D. Moore of West Chester, Pennsylvania, convicted felon) whose real identity I know very well and will not share with anyone.  But, I have verified that this person is a person who has a great deal of credibility and a tremendous amount of .. uh ..well vetted law enforcement .. active law enforcement sources.  And these people have assisted me and guided me on what to do with this information.

78.     The conversations and "guidance" with Robyn Gritz and Thomas Payne, aka Michael D. Moore, further strengthen and fortify the notion of deliberative development of this theme of "contacting the FBI" to turn over evidence of crimes.  The Defendant's announcement about who he has referred to the FBI (e.g. the Plaintiff, Dean Fougere, etc.) has obviously been the topic of deliberative discussions with the Defendant's "FBI contacts" (Gritz/Moore-Payne).  This is not some informal "heat of the moment" "freewheeling" schoolyard squabble commentary on an Internet message blog or discussion group.

79.     Caveat:  For more on Robyn Griyz see Exhibit **A-19, pg.62, ECF 295-1**

https://trackingmeroz.files.wordpress.com/2021/07/sweigert-v-goodman-doc-295-1-712-2021.pdf

80.     To the contrary.  The "FBI contacts" seem to strengthen the veracity of this so-called FBI reporting, which would be interpreted by the average viewer with less skepticism.  In the context of talking with FBI "experts" about transmitting "evidence" to the FBI, "these undoubtedly are circumstances encouraging the reasonable reader to be less skeptical and more willing to conclude that the report is stating or implying facts garnered by a professional news gatherer and reporter," *Jewell vs. NYP Holdings, Inc.*

81.     The Defendant's public announcements about providing evidence to the FBI and alerting

potential suspects that he is about to call the FBI about their activities would only frustrate any

federal investigation contemplated by the FBI by tipping off the targets.  Tipping off suspects

would only logically lead to the destruction of evidence to frustrate an FBI investigation.  The

Defendant's interest in contacting the FBI and public announcements about such contact with

suspect notifications appears disingenuous and a reckless disregard for the truth which smacks of

a smear campaign in the style of Richard Jewel is a person of "person of interest" of the Atlanta

1996 Olympic Centennial Park bombing.  https://www.nytimes.com/2019/12/13/movies/richard-

jewell-bombing-atlanta.html

82.     The April 6, 2018, **Lift the Veil** show aired on the Defendant's channel as well, six days

after the _Sinister Psychological Operations of George Webb Sweigert._  These comments are not

one-off remarks spewed in isolation and are extremely damaging to the Plaintiff's career as a

**Certified Ethical Hacker** (see Code of Ethics) and his standing in the community.

83.     This underscores why the Magistrate erred by not examining the statements in their full

context rather than in isolation.  The court's decision in _Giuffre v. Maxwell_ is instructive. In

denying the defendants' motion to dismiss the defamation claim, the court explained:

> "publication of a false narrative of sex trafficking would tend to disparage that individual
> in the way of her profession. Defendant's argument that Plaintiff may not take advantage
> of this second ground on the basis that "victim" is not a profession ignores the valid
> profession of non-profit advocacy, and the very real importance of perceived competence
> and integrity in the conduct of that profession."
> _Giuffre v. Maxwell,_ 165 F. Supp. 3d 147, 154 (S.D.N.Y. 2016) (emphasis added).

**_Statement 4_**
**_The Trolls of Mount Shasta_**

84.     As the R&R states:  Defendant refers to the following statements as Statement 4:

You see, **I think David is engaged in a crime. I have got the evidence for it.** Could indicate involvement in a **criminal operation of IRAN-CONTRA. Dave needs to be prosecuted. <u>18 USC [§] 1001</u>**. I am going to make it my business to find a prosecutor to charge **David Sweigert and his accomplices <u>with that crime.</u>** Because I will see to it that that man is put in jail.

85.     The R&R states, **"**I find that Statement 4, on its face, could constitute defamation *per se*. Thus, I recommend that Defendant's motion be denied as to Plaintiff's defamation claim based upon **<u>Statement 4</u>."**

86.     The Court's attention is directed to Exhibit **M-3, pg. 11, ECF 296-1** which provides a transcript of the offending video.  It was not necessary for the Magistrate to review the video content when a transcript was readily available in **Exhibit M-3.**

87.     The "Trolls of Mount Shasta" podcast also documents the Defendant's false belief in a "criminal conspiracy".  See **page 13 of ECF 296-1, "<u>We are going to assemble the evidence that we have.</u>** Evidence that is going to link Dave and George and Robert David Steele and Manuel Chavez and is it Eric O'Conner."  The Court will see this recurring theme in the Defendant's remarks about a civil conspiracy over the ensuing years, "to charge Dave Sweigert and his accomplices." [**pg.13, ECF 296-1**].  "On top of Dave and crush him and **<u>all his co-conspirators</u>.**" [**pg.14, ECF 296-1**].

88.     See also Defendant's statement "if he wasn't the worm that he is – the waste of oxygen, the disgusting human being." ." [**pg.14, ECF 296-1**].  ""Evidence of ill will combined with other circumstantial evidence indicating that the defendant acted with reckless disregard of the truth or

falsity of a defamatory statement may also support a finding of actual malice" *Celle v. Filipino Reporter Enterprises Inc*., 209 F.3d 163, 177 at 183 (2d Cir. 2000)

### *Statement 5*
### *Sweigert's Social Engineering Spin the Bit Spread Spy*

89.     As stated in the R&R, **"Statement 5** is a compilation of statements that were part of a YouTube video that Goodman posted on the Crowdsource the Truth YouTube channel on February 27, 2019 titled "*Does Sweigert's Social Engineering Spin the Bit Spread Spy in the Padlocked Bag with David Hawkins*." (Def.'s Mem. at 17; Pl.'s Second Response at 2.) The link to the video cited by Plaintiff indicates that the video is private. (See Pl.'s Second Response at 2 (citing https://youtube.com/watch?v=yx_6sj33FDs).) Thus, the video could not be reviewed by the Court.

90.     **The statement:**

> **David Sweigert – that I see evidence that he has committed felonies**. And therefore, conspiring with him could expose you to serious legal issues if law enforcement chooses **to act on the evidence that I am actively providing of these felonies**. And conspiring with others around the Internet to break the law.

91.     The Defendant's statement "**I see evidence of felonies**" (plural) once again is based on undisclosed facts.  In other words, the Defendant did not disclose that this "evidence of felonies" was the (1) the very act of filing this instant lawsuit and (2) the use a **care of "c/o"** abbreviation on a postal mailbox address in this instant litigation.  These facts were not disclosed.  The  facts that the Defendant believed that filing this very lawsuit was a felony and use the care of c/o designation for court mail was also a felony.

92.    "**If the comments were based on undisclosed facts, such comments could certainly be**

**defamatory**. See *Steinhi l ber v. Alphonse,* 68 N.Y.2d 283, 289, 508 N.Y.S.2d 901, 501 N.E.2d

550 (N.Y.1986) ("When, however, the statement of opinion implies that it is based upon facts

which justify the opinion but are unknown to those reading or hearing it, it is a 'mixed opinion'

and is actionable.")" [emphasis added]  *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*,

151 F. Supp. 3d 287, 295 (E.D.N.Y. 2015)

### *Fraud upon the court and other felonies*

93.    To justify these defamatory statements about felonies the Defendant later stated that he

thought Plaintiff's actions represented "fraud on the court", "**In my opinion, Sweigert has**

**committed fraud on the court with this bad faith lawsuit**." [**pg.11, ECF 278**]

94.    The Defendant's "fraud on the court" statement runs contrary to the overwhelming

jurisprudence in the matter of fraud upon the court and Fed. R. Civ. Proc. 60(b)(3), "(3) fraud

(whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an

opposing party."

95.    Indeed, contrary to Defendant's other statement, "to act on the evidence that I am actively

providing of these felonies" the Defendant has NEVER sought relief from this Court for any

fraudulent act in the course of these proceedings.  No evidence has ever been properly presented

to this Court during the entire litigation that speaks to "fraud upon the court".  The Court was

never properly notified of these "fraud on the court" concerns and certainly never received

evidence that the Defendant was "**actively providing** of these felonies".

96.    In *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 240-41 (1944) the

Supreme Court opined that the principles of fraud on the court are 1) a deliberate scheme, 2)

perpetrated by an officer of the court, 3) directed at the judicial machinery, and 4) involving

more than an injury to a single litigant.

97.     The United States Court of Appeals for the Sixth Circuit has set forth five elements of

fraud upon the court which consist of conduct: "1. On the part of an officer of the court; 2. That

is directed to the 'judicial machinery' itself; 3. That is intentionally false, willfully blind to the

truth, or is in reckless disregard for the truth; 4. That is a positive averment or is concealment

when one is under a duty to disclose; 5. That deceives the court." *Demjanjuk v. Petrovsky,* 10

F.3d 338, 348 (6th Cir. 1993).

98.     Professor James E. Moore's often cited definition is that fraud upon the court should:

> [E]mbrace only that species of fraud which does or attempts to, subvert the integrity of
> the court itself, or is a fraud perpetrated by officers of the court so that the judicial
> machinery cannot perform in the usual manner its impartial task of adjudging cases that
> are presented for adjudication."  7 JAMES W. MOORE ET AL., MOORE's FEDERAL
> PRACTICE 1160.33, at 360 (2d ed. 1993); see also Sheldon R. Shapiro, Annotation,
> Construction and Application of Provision of Rule 60(b) of Federal Rules of Civil
> Procedure that Rule does not limit power of Federal District Court to set aside judgment
> for "Fraud Upon the Court", 19 A.L.R. FED. 761 (1974).

99.     "Professor Moore's definition puts emphasis on the subversion of the court itself,

resulting in the court being unable to carry out its basic function of adjudicating cases. To

constitute a fraud on the court there must be an attack on the judicial process itself. It is limited

to the most egregious conduct that cannot be exposed by the normal adversarial process during

the proceeding."  1994 The Sixth Circuit's Unprecedented Reopening of Demjanjuk v.

Petrovsky, Cleveland State Law Review, Volume 42 Issue 4 Article 25

https://engagedscholarship.csuohio.edu/cgi/viewcontent.cgi?referer=https://www.google.com/&h

ttpsredir=1&article=1691&context=clevstlrev

100.    "Fraud on the court goes beyond fraud between the parties and involves a "direct assault

on the integrity of the judicial process," 11 CHARLES A. WRIGHT & ARTHUR R. MILLER,

FEDERAL PRACTICE AND PROCEDURE § 2870 (1973).

### *P.O. Box mix-up*

101.    The Defendant's statement that the Plaintiff committed felonies is based on his belief that

a mail address mix-up during this litigation constitutes "mail fraud", "Sweigert's improper use of

the U.S. Post Office box in furtherance of the fraud (fraud upon the court) would be mail fraud, a

Federal offense." [**pg.11, ECF 278**].

102.    The Defendant **<u>was not actively providing any evidence</u>** to any law enforcement agency

or this Court about these felonies.  This is a fact that can be proved or disproved.  The Defendant

did not contact the U.S. Postal Service inspection service about this "felony" and turned over no

evidence to the postal authorities, per **DEFENDANT'S RESPONSE (ECF 204),** when

Defendant responds to the request to provide "b. All documents and communications between

Defendant and any law enforcement agency regarding Plaintiff", Defendant replied "b. To the

best of Defendant's recollection, no documents exist that are responsive to this request <u>all</u>

<u>contact between Defendant and law enforcement has been via telephone or in person</u>". [emphasis

added]

103.    The mail fraud statutes require a 'scheme to defraud', 18 U.S.C. Section 1341.  ""There

are two elements in mail fraud: (1) having devised or intending to devise a scheme to defraud (or

to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or

attempting to execute, the scheme (or specified fraudulent acts)." *Schmuck v. United States,* 489

U.S. 705, 721 n. 10 (1989); see also *Pereira v. United States,* 347 U.S. 1, 8 (1954) ("The

elements of the offense of mail fraud under . . . § 1341 are (1) a scheme to defraud, and (2) the

mailing of a letter, etc., for the purpose of executing the scheme."); Laura A. Eilers & Harvey B.

Silikovitz, Mail and Wire Fraud, 31 Am. Crim. L. Rev. 703, 704 (1994) (cases cited)."

https://www.justice.gov/archives/jm/criminal-resource-manual-940-18-usc-section-1341-
elements-mail-fraud

104.    Here, by falsely claiming that the Plaintiff was involved in felonies, Defendants clearly

disparaged Plaintiff's ability to perform in his capacity as a **Certified Ethical Hacker**.

Accusing an individual who provides such services of sensitive ethical hacking strikes to the

heart of that individual's fitness to continue to work with the legitimate cyber security industry.

See *Allen v. CH Energy Grp., Inc.,* 58 A.D.3d 1102, 1103 (3d Dep't. 2009 ) "imputes

incompetence, incapacity or unfitness in the performance of one's profession or trade."


### *Statement 6*
### *Unaddressed*


### *Statement 7*
### *Shrouded in an organized campaign of harassment. Interstate harassment*


105.    The R&R states, Defendant's **Statement 7** includes the following statements:

"[s]hrouded in an organized campaign of harassment. Interstate harassment over the Internet,

over the telephone. These are crimes people. So if you are engaged in doing that right now, Dean

Fougere, Manuel Chavez, Robert David Steele, David Sweigert, Queen Tut, Lutzke Holmes,

whatever." (Pl.'s Second Response at 8.) These statements were made by Goodman in a

YouTube video titled "*Libel, Lies and Lawsuits – Queen Tut Evidence Exposed*" posted on the

Crowdsource the Truth YouTube channel on March 17, 2018."

106.   Like the other statements that create a "connotation of criminality" the Defendant incurs

defamatory *per se* liability, see *Jewell vs. NYP Holdings, Inc.*

107.   Statements include: "These are crimes people" and "Interstate harassment over the

Internet, over the telephone."  These are actual crimes.  47 U.S. Code § 223 - Obscene or

harassing telephone calls in the District of Columbia or in **interstate** or foreign communications.

See also *United States v. Tobin,* 480 F.3d 53 (1st Cir. 2007).


### *Statement 8*
### *Interfering with a judicial officer*


108.   The Magistrate opines, "**Statement 8**, "He interfered with an officer of the court," was

made by Goodman during a YouTube video titled "Michael Barden Targeted individual" posted

on the Crowdsource the Truth YouTube channel. (Pl.'s Second Response at 12.) Defendant

argues that there is nothing defamatory about this statement."

109.   At the outset the Court should consider that Michael Barden's felony firearm case and

subsequent conviction was conducted in Tucson, Arizona, CR2018-100874-001, sentencing

6/28/2019.

http://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp?caseNumber=
CR2018-100874

110.   It is a crime to "interfere with judicial proceedings" in Arizona, see § 13-2810.

https://www.womenslaw.org/laws/az/statutes/ss-13-2810-interfering-judicial-proceedings-
classification

111.   The Defendant's comments imply and insinuate that the Plaintiff "interfered" with "an

officer of the court", when the Plaintiff contacted Mr. Barden's criminal defense attorney to

advise him that both Mr. Barden and the Defendant had made almost a dozen video podcasts that

slandered and defamed legal counsel as an "incompetent" attorney that should be "disbarred".

Text of the e-mail appears below.

---------- Original Message ----------
From: Spoliation Notice <spoliation-notice@mailbox.org>
To: Marc@AttorneysForFreedom.com, Howard@AttorneysForFreedom.com
Cc: Spoliation Notice <spoliation-notice@mailbox.org>
Date: 10/14/2018 12:33 AM
Subject: Spoliation and evidence preservation notice -- Michael J. Barden,
Avondale, AZ, DOB: March 2, 1975


REF:  (a)   https://www.youtube.com/watch?v=Zf-oA4v03z8
     (b)   Patreon account:  https://www.patreon.com/MichaelJBarden
     (C)   https://www.didntdoitbailbonds.com/maricopa-county-inmate-
search/michael-barden-t425290/

Marc@AttorneysForFreedom.com
480-725-3929

Dear Sir,

We understand that you represent Michael J. Barden as legal counsel.  Please
advise your client that he shall be called as a witness in the litigation pending
against Jason Goodman (see attached) per N.Y. CPLR 3113.

Mr. Goodman has distributed to his worldwide audience a dozen videos of your
client with day by day updates on his criminal case.  Estimated views are
between 30,000 and 35,000 YouTube, Facebook, Twitter and other social
media impressions.

As you are well aware, Mr. Goodman has earnestly advised your client NOT to
accept the plea bargain offered by the State of Arizona in Mr. Barden's criminal
case (see attached).  Further, Mr. Barden has told this worldwide audience that
he does not trust you as an attorney.

> Mr. Barden will be called as a witness and should be advised to safely protect, safeguard and archive all electronic media evidence in his possession.  To include e-mail messages exchanged with Goodman, Twitter tweets, Facebook updates, phone records, etc.  In short, all evidence of Internet activity for the previous two (2) years, October 1, 2016 to the present.  This include any eBay transactions, all systems and computer activity, AOL.COM messages, etc.
>
> Warm regards,
>
> Evidence Collection Team

112.    The above e-mail message contains the URL link to the offending video, which has now been placed on "private" status.  See https://www.youtube.com/watch?v=Zf-oA4v03z8



https://www.youtube.com/watch?v=Zf-oA4v03z8

113.    As it is a crime to "interfere with judicial proceedings" in Arizona it is highly probable that the average viewer would interpret "interfering with an officer of the court" to be a criminal act as articulated in Arizona § 13-2810.  The Defendant's statements create a connotation of criminality, see *Jewell vs. NYP Holdings, Inc.*

114.    The Magistrate states that "In his declaration, Goodman states that the comment was in response to Plaintiff contacting the attorney representing Barden in a criminal matter "in an effort to create discord between lawyer and client," which Goodman "considered inappropriate."

115.    Once again, the Defendant never contacted the authorities or reported this supposed misconduct.  It is just more criminality innuendo pushed for profit and views.


### *Statement 9*
### *Unaddressed*


### *Statement 10*
### *Organized criminal harassment campaign*


116.    It is interesting to view Defendant e-mail message discussed in **Statement 10** in the context of the video described in **Statements 1 and 3** and **Statement 2** (both created within days of each other), As stated in the 3/30/2018 e-mail message reply by the Defendant "You are engaged in an organized criminal harassment campaign. . . I have submitted my evidence against you to the NY FBI field office."

117.    To remind the Court, in said **DEFENDANT'S RESPONSE (ECF 204),** Defendant to the request to provide "b. All documents and communications between Defendant and any law enforcement agency regarding Plaintiff", Defendant replied "b. To the best of Defendant's recollection, no documents exist that are responsive to this request all contact between Defendant and law enforcement has been via telephone or in person".

118.    There is no doubt that the Defendant sent nothing to the "FBI field office".  Such assertions about evidence packages going to the FBI are actionable false disclosed facts stated jointly with an opinion asserting criminality (to prosecute). The foregoing explanation supports a

finding of actual malice on the part of the Defendant (reckless disregard of the truth with regards to so-called evidence packages).

119.   The Magistrate opined, "The specific language, as well as the tone and context of the email, suggest to the recipients that Goodman is expressing his opinion. See *Restis,* 53 F. Supp. 3d at 720-22 (distinguishing, based on tone and context, accusations of criminal conduct that are "loose, figurative, hyperbolic or vague" from those grounded in assertions of fact and citing cases)."

120.   To the contrary, courts have routinely found that statements could be defamatory *per se* when they neither explicitly name the crime or the elements of a crime, so long as they describe conduct that could be criminal. See, e.g., *Sprewell v. NYP Holdings, Inc.,* 772 N.Y.S.2d 188, 192-93 (N.Y. Sup. Ct. 2003) (an article which said that the plaintiff threw a punch at someone and "missed" was defamatory *per se* because "defamatory language need not consist of the technical words of a criminal indictment provided that it is reasonably susceptible to a connotation of criminality"), *LeBlanc v. Skinner,* 103 A.D.3d 202, 214 (2d Dep't. 2012) (finding that description of "conduct that would constitute serious crimes" is defamatory per se even where the specific crimes are not set named).

121.   Below is the text of the e-mail message:

---------- Original Message ----------
From: Jason Goodman <truth@crowdsourcethetruth.org>
To: Spoliation Notice <spoliation-notice@mailbox.org>
Cc: "corina.davis@redbubble.com" <corina.davis@redbubble.com>,
"colin@patreon.com" <colin@patreon.com>, "lawenforcement@paypal.com"
<lawenforcement@paypal.com>, George Webb <georg.webb@gmail.com>
Date: March 30, 2018 at 4:36 PM
Subject: Re: Warning and Caution Notice
Mr. David George Sweigert,

Mental illness is a serious matter, you need to seek help.  You are hurting yourself by generating a growing collection of evidence that indicates very

strongly that you are engaged in an organized criminal harassment campaign against me personally as well as other serious potentially criminal offenses.  Every person you have CC'd on this message fully realizes that no actual lawyer would send anonymous messages from the "Evidence Collection" department and the messages themselves represent harassment as I have instructed you to terminate communications with me.

I have submitted my evidence against you to the NY FBI field office and anticipate they will contact you soon.  If you'd like to challenge me in civil court, I invite you to file your complaint.  It will merely save me the filing fees when I counter sue you for the well documented slander and defamation campaign you have been waging which includes per se libel among other civil torts and potential criminal actions on your part.

You are making matters far worse for yourself every day.  My friendly advice is that you cease and desist and discontinue your harassment and / or any mention of me or my company moving forward.

Jason Goodman

122.    Tellingly, the Magistrate here refused to consider the entire context. However, the defamatory nature of this false statement of fact is apparent when considering the context in which it was made.  The Defendant is VERY specific, "**You are** engaged in an organized criminal harassment campaign." [emphasis added]  This assertion raises the specter of organized crime or organized criminal activity in the area of "criminal harassment".  This language implies a conspiracy of some sort.

123.    This statement creates a connotation of criminality.  *Jewell vs. NYP Holdings, Inc*.  The question of law regarding such a statement is extensively addressed in the **Statement 11** "Deadbeat Dad" section of this document.  For convenience and to avoid redundant references the Court is beseeched to read the legal rationale as applied to "deadbeat dad" as also applying to "organized criminal harassment" statements.

124.     As the Court is aware, these statements about an "organized harassment campaign" have

been proven false.  Over the years the Defendant has filed pleading after pleading accusing the

Plaintiff of acting as an operative with Manuel Chavez, III (Reno. Nevada), Thomas

Schoenberger (Provo, Utah), Steven S. Biss, esq. (Charlottesville, Virginia), etc.  This accusation

has been proven false via declarations of Thomas Schonberger and Manuel Chavez, III, "a

precise meaning which is readily understood" or is "capable of being proven true or false."

*Gross*, 82 N.Y.2d at 153.

125.     The Magistrate opined, "While Statements 7 and 10 do charge Plaintiff with harassment,

I find that these statements do not constitute defamation per se because "[h]arassment is a

relatively minor offense in the New York Penal Law—not even a misdemeanor—and thus the

harm to the reputation of a person falsely accused of committing harassment would be

correspondingly insubstantial." Liberman, 80 N.Y.2d at 436 (accusation of harassment not

slanderous per se); see also Hogan v. Lewis Cnty., No. 16-CV-01325 (LEK) (ATB), 2020 WL

2850162, at *15 (N.D.N.Y. June 1, 2020) (statement that the plaintiff harassed defendant not

defamatory *per se* because "case law is clear that harassment in the second degree—a mere

violation—does not qualify as [a serious crime]") (citations and quotations omitted)."

126.     As noted in *Jewell v. NYP Holdings, Inc.,* the connotation of criminal activity should be

considered, not just specific named crimes.  This raises the same issues with the professional

reputation of the Plaintiff as a <u>Certified Ethical Hacker</u> who must operate under a stringent Code

of Ethics.

127.     Other courts have similarly found statements to be defamatory *per se* even where they do

not explicitly speak of the plaintiff's business or profession. See, e.g., *Jones v. Crisis Servs. of

Erie Cty.,* No. 16 Civ. 234 (FPG), 2018 WL 3708494, at *10 (W.D.N.Y. Aug. 3, 2018) (general

statements about a plaintiff's alleged conduct that reflected a "lack of character" injured her in the legal field).

### *Statements 11 and 12*
### *Deadbeat Dad is a term of art*

128.    The Magistrate predictably dismisses all of the alleged defamatory statement in the "deadbeat dad" category as hyperbole, but the published statements show otherwise.

129.    As reported in the R&R, "Statements 11, "David Sweigert is a dead beat dad[,]" and Statement 12, "[c]yberstalker/deadbeat dad David Sweigert abandons his own son," were tweets posted on the Crowdsource the Truth Twitter account. (Pl.'s Third Response at 2, 7; First Supp. Compl. at 19.)." … The Court finds that these statements are hyperbole and therefore are not actionable opinions. See, e.g., Chau, 771 F.3d at 129 (statements including "sucker," "fool," "frontman," "industrial waste," "pilot[ ]" of the "ship of doom," and "crooks or morons" were hyperbole and therefore not actionable)."  This is finding is incorrect, **there is no non-defamatory** meaning to "deadbeat dad".

130.    The Magistrate, again twisting case law to suit his bias, relied upon the inconsistent statements of the Defendant regarding his discussions with **Corean Elizabeth Stoughton of Hanover, Maryland** the former sexual girl friend of George Webb Sweigert.  In fact, evidence was introduced by the Plaintiff in the form of an e-mail text message from Ms. Stoughton to the Defendant that advised she never said anything of the kind.  See below, **Exhibit A-10, (ECF 295-1):** https://trackingmeroz.files.wordpress.com/2021/07/sweigert-v-goodman-doc-295-1-712-2021.pdf



131.    See also **Exhibit A-29 (ECF 295-1).**

https://trackingmeroz.files.wordpress.com/2021/07/sweigert-v-goodman-doc-295-1-712-2021.pdf

132.    Given the fact that the Plaintiff was not, and has never been, a deadbeat dad, Defendants' comments to that effect were made, at a minimum, with a reckless disregard for the truth.  To hold otherwise would be to allow a defendant to accuse a plaintiff of committing the most salacious of crimes without any repercussions.  The law does not allow such defamation to go unpunished.

133.    Lacking "credible information" about the Plaintiff's impeccable history of child support payments the Defendant cast the Plaintiff as a "deadbeat dad".  As the Merriam-Webster

dictionary states, "Definition of deadbeat dad, disapproving, a father who owes money to his

former wife to help raise their children but does not pay it," https://www.merriam-

webster.com/dictionary/deadbeat%20dad  Also see, "noun Informal., a father who neglects his

responsibilities as a parent, especially one who does not pay child support: , The deadbeat dad

was forced to pay a lump sum of over $10,000 to settle the case."

https://www.dictionary.com/browse/deadbeat-dad  But, "deadbeat dad" is also a term of art used

by the U.S. Congress to describe felonious conduct.

134.     The Magistrate's finding is incorrect and is belied by the federal **Deadbeat Parents**

**Accountable Act (DPAA) of 1998, Public Law 105-187,** which makes it a felony to evade child

support payments.  "Deadbeat Parents Punishment Act of 1998 - Amends Federal criminal law to

prescribe criminal penalties (including mandatory restitution) for willful failure to pay child

support obligations.", https://www.congress.gov/bill/105th-congress/house-bill/3811

135.     "The problem with enforcement under the CSRA (Child Support Recovery Act of 1992

added) was remedied with the passage of the Deadbeat Parents Punishment Act (DPPA) in 1998.

This Act created new categories of federal felonies for the most egregious child support

violators. … Federal law makes it illegal for an individual to willfully fail to pay child support as

ordered by a court in certain circumstances," https://www.justice.gov/criminal-ceos/child-

support-enforcement

136.     This term is also used by the federal judiciary to describe criminal conduct related to non-

payment of child support.  "When "deadbeat" parents shamelessly manipulate a foundation of

our system of government — State sovereignty — in order to 315*315 avoid paying child

support, they undermine an even more fundamental foundation of society — the family."  US v.

Nichols, 928 F. Supp. 302 - Dist. Court, SD New York 1996.  [emphasis added]

137.    It is instructive to note the widespread national publicity given to this specific term of art, "deadbeat dad", as People magazine reported on this national issue (see above *US v. Nichols*). People Weekly (**AMERICA'S WORST DEADBEAT DAY**, Jeffrey Nichols & Marilyn Kane, September 4, 1995).



Monday, August 14, 1995

**DEADBEAT DAD OWES $500,000 IN CHILD SUPPORT**

**Federal authorities intervene in this and 76 other rare cases**

**BETH J. HARPAZ** Associated Press

NEW YORK Jeffrey Nichols is king of the deadbeat dads, owing more than a half-million dollars in support for his three children.

He's tried to hide himself and his money in Florida, Vermont and Canada, and set up a bank account in the Bahamas.

He even denied fathering the daughter and two sons born during the 16 years he lived with his ex-wife.

While there are 7 million cases of parents failing to pay court-ordered child support, Nichols is one of an elite 77 deadbeats whose offenses are so egregious that the federal government has intervened.

He was arrested on a federal warrant last week at his home in Charlotte, Vt. But he was allowed to go free and he's supposed to bring himself back to Manhattan for a federal court hearing Monday.

138.    See also, "DEADBEAT DAD OWES $500,000 IN - Justice4NY", August 14, 1995, Times Union (see above).  https://justice4ny.com/wp-content/uploads/2017/05/05-Nichols-TU-article-81495.pdf

139.    Other news articles include the Washington Post, "**DEADBEAT DAD IS FREED, WILL PAY $500,000**   A judge freed America's worst deadbeat dad, investment adviser Jeffrey Nichols, from jail today after he agreed to pay $500,000 owed in child support."  12/5/1995, https://www.washingtonpost.com/archive/politics/1995/12/08/deadbeat-dad-is-freed-will-pay-500000/8158b523-6377-48d6-880b-32ce4738dfd2/

140.   The Chicago Tribune, "`**KING OF DEADBEAT DADS' SAYS HE'S BROKE, GOES BACK TO JAIL**   The self-proclaimed "king of deadbeat dads" was sent back to jail after he told a judge he still did not have a job that would put a serious dent in his $642,000 child-support debt."  6/21/1996  https://www.chicagotribune.com/news/ct-xpm-1996-06-21-9606220228-story.html

141.   United Press International, "**Deadbeat dad' agrees to pay**  NEW YORK, Dec. 7 -- The Vermont financier known as the nation's top deadbeat dead was released from a New York jail Thursday after he agreed to pay $500,000 in back child support to his three children from his first marriage. A Manhattan judge threw Jeffrey Nichols in prison in August when the investment consultant refused to start paying off his debt, claiming he was destitute" 12/7/1995 https://www.upi.com/Archives/1995/12/07/Deadbeat-dad-agrees-to-pay/8189818312400/

142.   Interesting that a man is described as a "deadbeat dad" is arrested on a federal warrant, receives national news media recognition as a "deadbeat dad" and is described by a jurist of the S.D.N.Y. as a "deadbeat parent".

143.   "Deadbeat dad" conveys a very precise meaning – someone that has refused to be court-ordered child support (which can be considered a federal offense).  "In *Silsdorf v Levine* (59 N.Y.2d 8, 16, cert denied 464 U.S. 831), we merely held that an accusation of criminality that, read in context, is set forth as a fact is not transformed into a nonactionable expression of opinion merely because it is couched "in the form of [an] opinion," quoted in *Gross v. New York Times Co.*, 82 N.Y.2d 146, 155 (N.Y. 1993)

144.   "David Sweigert is a dead beat dad[,]" was a statement of fact made by the Defendant. *Steinhilber v. Alphonse,* 501 N.E.2d 550, 554 (N.Y. 1986) (distinguishing fact from opinion requires consideration of "whether the specific language in issue has a precise meaning which is

readily understood or whether it is indefinite and ambiguous").  There is no non-defamatory

meaning to this phrase "deadbeat dad".

145.    "[T]he court must decide whether the statement alleged to have injured plaintiff is

reasonably susceptible of the defamatory meaning imputed to it. *Levin v. McPhee,* 119 F.3d 189,

195 (2d Cir. 1997).  Quoted in *Flamm v. American Ass'n of University Women,* 28 F. Supp. 2d

185 (S.D.N.Y. 1998)

146.    "Deadbeat dad" has a precise meaning, is capable of being proven false, and is likely to

be taken as a fact in the context in which it was shared. This is not an opinion.  *Menaker v. C.D.,*

2:17-cv-5840 (DRH)(AYS) (E.D.N.Y. Nov. 1, 2018)

### *Twitter as a forum*

147.    Regarding the supposed lesser credibility of Twitter on the informal "freewheeling"

Internet, as suggested by the Magistrate, it is instructive to note that the Defendant's side-kick

Larry E. Klayman, nationally known conservative alt-right talk show host and anti-Muslim

advocate, is suing two public officials for comments on Twitter concerning George

Zimmerman, the self-appointed "holster sniffer" who shot and killed Trayvon Martin in

Sanford, Florida in 2013.  See *Zimmerman v. Buttigieg et al*, 8:20-cv-01077-CEH-CPT,

U.S.D.C. Middle Dist.  Defendants include Pete Buttigieg, U.S. Sec'y of Transportation and

U.S. Senator Elizabeth Warren for tweets about gun violence.

148.    See CBS News "**George Zimmerman sues Pete Buttigieg and Elizabeth Warren for**

**defamation over their tweets about Trayvon Martin** -- George Zimmerman is suing

Democratic presidential candidates Pete Buttigieg and Elizabeth Warren for defamation over

tweets they posted about the shooting death of unarmed black teenager Trayvon Martin.

Zimmerman's lawsuit accuses them of "maliciously publishing false and misleading" tweets

about the case in order to "garner votes in the black community.", 2/19/2020.

https://www.cbsnews.com/news/george-zimmerman-sues-pete-buttigieg-elizabeth-warren-defamation-racism-trayvon-martin/

### *Fake Twitter War*

149.    Contrary to the Defendant's assertions there was no "Twitter war".  This is a fact in dispute.  This is another falsehood pushed by the Defendant, who posted his defamatory comments about the Plaintiff ("deadbeat dad") in response to the Plaintiff's tweet containing only a Uniform Resource Locator (URL) link to an on-line news article.  The Plaintiff's tweets were only URL links with zero words directed to the Defendant.  There was no back and forth name calling or insults.  There was no "Twitter war" or "prolonged hyperbolic crossfire".  One URL tweet published without commentary and responded to by Defendant with defamatory statements.

https://storage.courtlistener.com/recap/gov.uscourts.nysd.519884/gov.uscourts.nysd.519884.29.0.pdf

### *Regarding on-line Internet forums*

150.    Further, the tweet from CrowdSource The Truth represents an on-line news organization with a "truth engine" that is managed by a news anchor monotone "investigative journalist".  This conveys the image to the average reader of a semi-authoritative news source, not a partisan individual expressing an opinion.  The Court should keep in mind the Defendant's objectionable tweets at issue were a response to only a URL link to an on-line article.

151.    "For example, a publication's "tone and apparent purpose" may indicate to the audience that what they are hearing is likely to be a statement of opinion delivered from a "highly

partisan point of view," Immuno AG., 77 N.Y.2d at 254-55, rather than an accurate factual assessment offered by a "disinterested observer," Brian, 87 N.Y.2d at 53." Quoted in *Rapaport v. Barstool Sports, Inc.*, No. 18-CV-08783 (NRB), 2021 WL 1178240, at *11 (S.D.N.Y. Mar. 29, 2021).

152.   The objectionable tweets did not originate from private individual Jason Goodman, but from the "truth engine" of CrowdSource The Truth, an on-line news service supervised by an investigative journalist.

153.   In *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 295 (E.D.N.Y. 2015) a number of lawsuits were cited to support the informal "freewheeling" "gunslinger" aspect of Internet blog and message boards.  However, the *Bellavia* court determined that (quoted in relevant part)"

> "Like the circumstances in Sandals, Brahms, Biro, and Versaci, here, Kelly made statements in an internet comment section in response to an article that invited readers to post their comments if they had an opinion about the story, (see Ex. A, at 6), further supporting the notion that Kelly's statements were ones of opinion.
> Obviously, these aforementioned cases do not stand for the proposition that no comments posted on an online forum can ever be found to be defamatory. **If the comments were based on undisclosed facts, such comments could certainly be defamatory**. See Steinhi l ber v. Alphonse, 68 N.Y.2d 283, 289, 508 N.Y.S.2d 901, 501 N.E.2d 550 (N.Y.1986) ("When, however, the statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, it is a 'mixed opinion' and is actionable.")" [emphasis added]
> *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 295 (E.D.N.Y. 2015)

154.   The Court should recognize that the Defendant provided no indicators in the "David Sweigert is a deadbeat dad" tweet to indicate that there was a dispute with the Plaintiff or other special interest indicator that could warn the reader.  The "investigative journalist" merely

stated a false fact, purportedly based on undisclosed facts obtained by **Corean Elizabeth**

**Stoughton of Hanover, Maryland** (George Webb Sweigert;s former sexual girlfriend of 14

months), that "David Sweigert was a deadbeat dad."  No average reader would understand that

there was an underlying dispute in this tweet.

## **CONCLUSION**

155.    As shown above, Magistrate's Report [R&R] is filled with both legal and factual errors

that must not be adopted but instead put aside by this Honorable Court. These errors strongly

indicate that Magistrate gave Plaintiffs' submissions little to no consideration.  Accordingly, the

Report, given its bias and rank factual and legal errors, should be given no weight, and the

presiding judge should now rule that this case must go to expanded discovery and then trial.


Signed this tenth day of November (one day before Veteran's Day) 2021.  Date 11/10/2021.


    Respectfully,                                                            CERTIFICATE OF SERVICE

    *D. Swgt*                                                          The Plaintiff asserts under penalties of perjury
                                                                                   that copies of these pleadings have been sent to
                                                                                   Jason Goodman on Veteran's Day,11/10/2021 at
    D. George Sweigert                                              truth@crowdsourcethetruth.org on this date.
    Veteran U.S. Air Force