**U.S. DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| D. GEORGE SWEIGERT<br><br>Vs.<br><br>JASON GOODMAN | Case 1:18-cv-08653-VEC-SDA<br><br>VALERIE E. CAPRONI |
| --- | --- |

### NOTICE OF AMENDED MOTION, RESPONDING TO ECF NO. 346,

### FOR LIMITED REOPENING OF DISCOVERY

### PURSUANT TO F.R.C.P. RULE 16(b) AND 56(d)

Respectfully,

**D. George Sweigert**
**America's RV Mailbox**
**514 Americas Way, PMB 13339**
**Box Elder, SD 57719-7600**
**Email: SPOLIATION-NOTICE@MAILBOX.ORG**

Signed this twenty ninth day of December 2021.  Date 12/29/2021.

Respectfully,

D. George Sweigert
Veteran U.S. Air Force

CERTIFICATE OF SERVICE

The Plaintiff asserts under penalties of perjury that copies of these pleadings have been sent to Jason Goodman on 12/29/2021 at truth@crowdsourcethetruth.org

1

## TABLE OF CONTENTS

**INTRODUCTION**................................................................................................ 6

**PROCEDURAL HISTORY** ............................................................................... 7

**OPERATIVE FEDERAL RULES** .................................................................... 9

**FACTUAL BACKGROUND** ........................................................................... 10

**LEGAL REQUIREMENTS IMPOSED ON THE PLAINTIFF** ........................... 14

*Anti-SLAPP "public interest"*......................................................................... 14

*Anti-SLAPP imposed burden of "actual malice"* ......................................... 15

*Personal animus an "actual malice" consideration* ..................................... 18

**CONCLUSION** ............................................................................................. 20

**DISCOVERY MATERIALS NEEDED BY THE PLAINTIFF** ............................ 24

# TABLE OF AUTHORITIES

**Cases**

*Batson v. Shiflett*, 325 Md. 684 (Md. 1992)................................................................... 17

*Bose Corp. v. Consumers Union of United States, Inc.,* 692 F.2d 189, 196 (1st Cir. 1982), aff'd,
  466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984) ............................................. 17

*Coleman v. Grand*, 18-cv-5663 (ENV) (RLM), (E.D.N.Y. Feb. 22, 2021) ................................ 16

*Connick v. Myers*, 461 U.S. 138, 147 ....................................................................... 12, 14

*Connick v. Myers*, supra, at 147 ............................................................................. 14

*Cottom v. Meredith Corp*., 65 A.D.2d 165, 170 ........................................................... 14

*Dun & Bradstreet,* 472 U.S. at 751, 763 .................................................................... 14

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 763 (1985) ........................ 14

*Dun Bradstreet v. Greenmoss Builders*, supra, at 759 .................................................... 14

*Dun Bradstreet v. Greenmoss Builders*, supra, at 761 ............................................... 12, 14

*Fitzpatrick v. MilkyWay Prods*., 537 F. Supp. 165, 170 ................................................ 14

*Gaeta v. New York News*, 62 N.Y.2d 340, 349 ............................................................. 13

*Gaeta v. New York News*, supra, at 349 .................................................................. 14

*Gertz v. Robert Welch, Inc*., 418 U.S. 323 (1974) ..................................................... 14

*Goodman vs. Sharp,* Case 1:21-cv-10627-UA, S.D.N.Y. ................................................. 10

*Harte-Hanks*, 491 U.S. at 668, 109 S.Ct. at 2686, 105 L.Ed.2d at 577 ................................ 17

*Hogan v. Herald Co*., 84 A.D.2d 470, 478-479, affd ................................................... 14

*Huggins v. Moore*, 94 N.Y.2d 296, 302 (N.Y. 1999) .................................................... 13

*Huggins v. Moore*, 94 N.Y.2d 296, 302-3 (N.Y. 1999) ................................................. 14

*Huggins v. Moore*, 94 N.Y.2d 296, 303, 704 N.Y.S.2d 904, 726 N.E.2d 456 (1999) ................ 16

*NATAS v. MSDI*, 20-CV-7269 (VEC), S.D.N.Y ......................................................... 10

*New York Times Co. v. Sullivan*, 376 U.S. 254, 270-71 (1964)................................... 14

*Palmisano v. Modernismo Publs*., 98 A.D.2d 953, 954...................................... 14

*Weiner v. Doubleday Co.,* 74 N.Y.2d 586, 595 ........................................... 14

**Statutes**

N.Y. Civ. Rights § 70-a ................................................................................. 13

New York's Anti-SLAPP law............................................................................. 17

**Other Authorities**

Fed. Prac. § 2740 ......................................................................................... 8

**Rules**

F.R.C.P. 16(b)(4) ......................................................................................... 5

F.R.C.P. Rule 26(b)(1)................................................................................... 9

F.R.C.P. Rule 56(c) and 56(d) ........................................................................ 5

Fed. R. Civ. Proc. Rule 45 ............................................................................. 18

Federal Rules of Civil Procedure (F.R.C.P.) Rule 16(b) ..................................... 5

Rule 56(c)...................................................................................................... 8

Rule 56(c)(1)(B)............................................................................................. 8

Rule 56(d) ..................................................................................................... 8

**Treatises**

St. Amant. R. Smolla, Law of Defamation, § 3.14[2], at 3-38 (1992) ......................... 17

## INTRODUCTION

This instant pleading is responsive to the Magistrate Judge's ORDER of 12/17/2021 (ECF no. 346), which extended until 12/31/2021 the undersigned's opportunity to seek additional discovery from the Defendant.

The Court will find that this pleading conforms to Federal Rules of Civil Procedure (F.R.C.P.) Rule 16(b) which provides that a scheduling order "may be modified only for good cause and with the judge's consent." See F.R.C.P. 16(b)(4).

The Plaintiff has demonstrated in the accompanying DECLARATION OF D. GEORGE SWEIGERT that it is possible, although painstakingly tedious, to demonstrate the "actual malice" of the Defendant's defamation *per se* remarks to the legal threshold required by the Defendant's reliance on New York's Anti-SLAPP law, which spawned the Defendant's motion for summary judgment (ECF no. 277, 278, 279 & 280).

The F.R.C.P. Rule 56(c) and 56(d) DECLARATION OF D. GEORGE SWEIGERT points out that the Plaintiff/undersigned has not received discovery materials from the Defendant since May 2021, this includes the Defendant's purported recent additional discovery disclosure -- ECF doc. 340 – which the Plaintiff did not receive.

The Court may recall that at the discovery conference, held 12/15/2021, Defendant claimed he "may have mailed discovery to the wrong address".  Nevertheless, the Plaintiff has not received these materials (ECF 340).

Defendant's failure to properly transmit the discovery disclosures has placed an undue burden on the Plaintiff who was forced to engage in "Easter egg hunting" for piece meal remnants of the Defendant's video podcast handiwork on the Internet.

Nevertheless, in spite of the Defendant's purposeful mailing misdirection and obstruction of discovery, the Plaintiff's discovery hunting exercise has demonstrated the need for further discovery disclosures of podcast videos that will provide clear and convincing evidence to meet the standard imposed upon the Plaintiff.  As the Court will not below, even the discovery of circumstantial evidence to demonstrate personal malice is warranted.

A summary of these video podcast titles needed by the Plaintiff – at a minimum -- is provided in **EXHIBIT ONE** (attached to this pleading).

Additionally, it is abundantly clear that third-party F.R.C.P. Rule 45 subpoenas will be required for non-public and privatized channels at GOOGLE, LLC (parent of YOUTUBE. LLC), PATREON and SubScribeStar ("paywall channels") to obtain a simple index listing of video content stored on these channels.  Such an index will provide video podcast titles, thumbnails, and upload dates to the channel storage area.  This is a very simple information technology procedure and will provide the Plaintiff with a list of the Defendant's "hidden" video titles.

## PROCEDURAL HISTORY

3/11/2021.  "Following a telephone conference with the parties, and for the reasons stated on the record, it is hereby Ordered that Plaintiff's motion to compel (ECF No. 215) is GRANTED IN PART and DENIED IN PART" Dkt. 224.

3/18/2021.  Defendant files "MOTION SEEKING LEAVE TO AMEND ANSWER TO INCLUDE A SPECIAL MOTION TO DISMISS PURS. TO NEWLY ENHANCED NYCVR 76-A & THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION," Dkt. 239.

4/15/2021.  "The discovery deadlines in this action remain in effect. The Court will decide the motion at ECF No. 239 in due course," Dkt. 246.

4/22/2021.  "Accordingly, the Court grants the Defendant's motion to amend his answer to add a defense under the New York anti-SLAPP statute. See Fed. R. Civ. P. 15 … The Court also grants Defendants motion for leave to file an appropriate dispositive motion under the New York anti-SLAPP statute. Since an answer already has been filed by Defendant, Defendants motion may be made as a motion for judgment on the pleadings, … as a motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. … Discovery is ongoing and the Court declines to apply any limitations on discovery that may be imposed under the New York Civil Practice Law and Rules," Dkt. 259.

5/4/2021.  "[I]t is hereby Ordered as follows: 1. Defendant Goodman shall file his amended Answer no later than May 11, 2021. (See ECF No. 259.) 2. Defendant's motion to stay discovery (ECF No. 263) is denied. No later than May 18, 2021, Defendant Goodman shall respond to Plaintiff's discovery requests, as set forth in the Court's March 11, 2021 Order (ECF No. 224). Failure to do so will result in a recommendation to the District Judge that a default judgment be entered against him," Dkt. 270.

10/29/2021.  "Accordingly, it is hereby Ordered as follows: No later than November 12, 2021, Plaintiff shall file a letter setting forth each video file he seeks that Defendant has not produced. Defendant shall produce copies of such video files no later than December 3, 2021. Failure to do so may result in the imposition of sanctions. See Fed. R. Civ. P. 37. If Plaintiff seeks to depose Defendant on the issue of actual malice, Plaintiff shall file a letter, no later than December 10, 2021, setting forth at least four proposed dates prior to February 28, 2022 for the deposition to occur," Dkt. 322.

## OPERATIVE FEDERAL RULES

Three rules of the Federal Rules of Civil Procedure (F.R.C.P.) govern here: 56(d), 56(c), and 26(b).

Rule 56(d).  Rule 56(d) limits nonmovant discovery for factual development to "facts essential to justify opposition" to Defendant's summary-judgment motion (see Defendant's summary judgement motion papers ECF no.s 277, 278, 279, and 280):

(d) When Facts Are Unavailable to the Nonmovant.  If a nonmovant shows by affidavit or declaration (note: such a document accompanies this pleading) that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

Rule 56(c).  To understand Rule 56(d), one must read it "in conjunction with [Rule 56(c)]."  Fed. Prac. § 2740.  Rule 56(d)'s references to "affidavit or declaration" (the first reference) and "justify its opposition" refer to Rule 56(c)'s requirement of "affidavits and declarations," Rule 56(c)(4), to show "the ... presence of a genuine [factual] dispute," Rule 56(c)(1)(B), in order to oppose summary judgment on a factual-dispute basis.  So Rule 56(d) authorizes possible discovery about material-fact disputes and provides a mechanism for affidavits and declarations to show such a triable-fact dispute as required by Rule 56(c) to avoid summary judgment under Rule 56(a).

Rule 26(b). While the limited discovery available under Rule 56(d) differs from discovery under Rule 26, Rule 26(b) limits discovery in general to "matter ... relevant to ... claim[s] or defense[s]," which "[r]elevant information need not be admissible at the trial if the

discovery appears reasonably calculated to lead to the discovery of admissible evidence." F.R.C.P. Rule 26(b)(1).

The permitted scope of discovery under Rules 26(b) and 56(d) is not identical because discovery under the latter is limited to trying to prove a genuine material-fact dispute.

In the present context, these rules establish that (1) a 56(d) motion must be based on the Plaintiff's present inability to show a specific, identified, non-speculative, genuine material-fact dispute needed to oppose plaintiffs' summary-judgment motion; (2) any permitted discovery would have to seek evidence relevant to plaintiffs' claims, (3) the "reasonably calculated" provision still must apply only to "relevant information," which must be relevant to plaintiff's claims.

The Plaintiff has met this burden and will demonstrate herein a reasonable burden-benefit calculation.

## **FACTUAL BACKGROUND**

The Court described the parties (in this lawsuit) as being engaged in "outlandish conspiracy theories and accusing one another of criminal conduct and other misbehavior on the internet," Dkt. 142. "The term "outlandish conspiracy theories" also remains, in the Court's view, the most succinct way of contextualizing the parties' fracas," Dkt. 143.

Unjustified conspiracy theories (see "outlandish conspiracy theories", Dkt. 142, 143) published by Mr. Goodman are the type to have been held to endanger public health (e.g., SARS-CoV-2 being a hoax, vaccines being dangerous,

etc.).   https://www.frontiersin.org/articles/10.3389/fpsyg.2021.682931/full

As the Court is aware, Mr. Goodman "traffics in wild conspiracy theories."

> Multimedia System Design, Inc. d/b/a "Crowdsource the Truth" ("MSDI") produces video content that, inter alia, traffics in wild conspiracy theories. In June 2020, MSDI used an image of the Emmy Award Statuette holding a model of the COVID-19 virus as part of a video honoring countries that downplayed the seriousness of the COVID-19 pandemic.
> Judge Valerie E. Caproni, *NATAS v. MSDI*, 20-CV-7269 (VEC), S.D.N.Y.
> https://casetext.com/case/national-academy-of-television-arts-and-sciences-inc-v-multimedia-system-design-inc

In new litigation, Defendant Jason Goodman has proclaimed that the YouTube "JASON GOODMAN" channel operates as an extension of his status as a natural person.   See para. "59. *Despite taking initial action against the "Jason Goodman" YouTube channel, owned by the natural person who is Plaintiff in this matter*", Complaint, ECF doc. 1, *Goodman vs. Sharp,* Case 1:21-cv-10627-UA, S.D.N.Y.

> Case 1:21-cv-10627-UA   Document 1   Filed 12/13/21   Page 15 of 22
>
> 59. Despite taking initial action against the "Jason Goodman" YouTube channel, owned by the natural person who is Plaintiff in this matter, Defendant chose to sue Plaintiff's corporation.  Plaintiff alleges this was done to force him to hire an attorney and

To this end, Jason Goodman wants it to be crystal clear that the YouTube channel "JASON GOODMAN" is not a property controlled by his company called Multimedia System Design, Inc. (MSDI), but is controlled by himself.  Restated: Jason Goodman as the natural person distributing podcasts on the "JASON GOODMAN" YouTube channel acts as a <u>nonmedia distributor</u> of information, a lone individual pushing conspiracy theory podcasts for profit.

On April 11, 2021 Defendant filed his "MOTION SEEKING LEAVE TO AMEND ANSWER TO INCLUDE A SPECIAL MOTION TO DISMISS PURS. TO NEWLY ENHANCED NYCVR 76-A & THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION," Dkt. 239.  This began a chain of Anti-SLAPP litigation events.

When the Defendant filed his Anti-SLAPP motion (ECF no. 239) he contemporaneously placed the "JASON GOODMAN" YouTube channel on private, non-public status.  Within 48 hours Defendant of docketing ECF no. 239, Goodman sent a Twitter tweet, described below (April 13, 2021):



**Taken from EXHIBIT TWO (attached)**

It is estimated that when the "JASON GOODMAN" YouTube channel was placed in non-public private status by the Defendant, on or about **April 12, 2021**, the channel had approximately 2,666 videos hidden from open access public view.   This "privatization" action eliminated the Plaintiff's analysis of his YouTube podcasts that preceded and followed the video podcasts that are presently the subject of the Court's review concerning "the twelve defamatory statements".

12

Unfortunately, neither the Plaintiff nor the Court have visibility into the content of the "JASON GOODMAN" YouTube channel.  Courts must examine their "`content, form, and context'" (*Dun Bradstreet v. Greenmoss Builders*, supra, at 761 [quoting *Connick v. Myers*, 461 U.S. 138, 147]).

For example:



Another example:





## LEGAL REQUIREMENTS IMPOSED ON THE PLAINTIFF

### Anti-SLAPP "public interest"

In November 2020, New York significantly expanded its anti-SLAPP law, which the state had first adopted in 1992.  The law protects defendants in legal actions "involving public petition and participation." N.Y. Civ. Rights § 70-a (McKinney).

Public interest is relevant to analysis of defamation, slander, and libel claims, as the defamatory statement must concern a matter of public interest to receive Anti-SLAPP immunity. Public interest alone does not define a public controversy: the matter must achieve open debate in the public forum.   Public interest is defined as "[t]he general welfare of a populace considered as warranting recognition and protection." Public Interest, BLACK'S LAW DICTIONARY (10th ed. 2017).

As stated in *Huggins v. Moore*, 94 N.Y.2d 296, 302 (N.Y. 1999), "[t]o make the determination of whether content is arguably within the sphere of legitimate public concern, allegedly defamatory statements "can only be viewed in the context of the writing as a whole, and not as disembodied words, phrases or sentences" (*Gaeta v. New York News*, 62 N.Y.2d 340, 349). Courts must examine their "`content, form, and context'" (*Dun Bradstreet v. Greenmoss*

*Builders*, supra, at 761 [quoting *Connick v. Myers*, 461 U.S. 138, 147]).  In other words, the complete context of a YouTube podcast, to include thumbnail, video description, podcast title, etc. is required for the Court's review.

"A publication's subject is not a matter of public concern when it falls "into the realm of mere gossip and prurient interest" (*Weiner v. Doubleday Co.,* 74 N.Y.2d 586, 595; see, *Palmisano v. Modernismo Publs.*, 98 A.D.2d 953, 954; *Fitzpatrick v. MilkyWay Prods.*, 537 F. Supp. 165, 170). Nor are "matters of purely private concern" directed only to a limited, private audience (*Dun Bradstreet v. Greenmoss Builders*, supra, at 759; see also, *Cottom v. Meredith Corp.*, 65 A.D.2d 165, 170; *Connick v. Myers*, supra, at 147). Moreover, the fact that the article has been published in a newspaper is not conclusive that its subject matter warrants public exposition (*Gaeta v. New York News*, supra, at 349; see also, *Hogan v. Herald Co.*, 84 A.D.2d 470, 478-479, affd for reasons stated below58 N.Y.2d 630).  *Huggins v. Moore*, 94 N.Y.2d 296, 302-3 (N.Y. 1999)

***Anti-SLAPP imposed burden of "actual malice"***

*New York Times Co. v. Sullivan*, 376 U.S. 254, 270-71 (1964) essentially established the original "actual malice" requirement in 1964 (statements published with knowledge of the falsity or with reckless disregard for the truth) as described in New York's Anti-SLAPP law.  The 1964 "actual malice" standard was then amplified in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974).

A more recent chapter in the development of the Supreme Court's defamation jurisprudence significantly altered First Amendment protections.  The Court's decision in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 763 (1985) effectively did away with the "actual malice" requirement where statements "do not involve matters of public concern."  *Dun & Bradstreet,* 472 U.S. at 751, 763.

The U.S. Supreme Court examined the <u>type of speech involved</u> to determine whether *Gertz* applied (105 S. Ct. at 2943-48).  Justice Powell, writing for a plurality of three, distinguished *Gertz* by noting that the constitutional limitation on the recovery of presumed and punitive damages established in that case applied only to defamatory speech involving a matter of <u>public concern</u> (*Id*. at 2944-46).

The U.S. Supreme Court in *Dun & Bradstreet* delineated two broad categories of expression: speech on matters of public concern and speech on purely private matters (See *Id*. at 2943-46). Speech in the latter category receives no constitutional protection from the imposition of presumed and punitive damages (*Id*. at 2946, 2949).

The *Dun & Bradstreet* court, by holding that *Gertz* applies only when speech involves a matter of public concern, requires lower courts to decide on when speech involves matters of public importance.

The Court will note in the accompanying DECLARATION OF D. GEORGE SWEIGERT that Mr. Goodman's podcasts concerning the Plaintiff are wholly private grievances nursed by the Defendant.

## **LAW AND ARGUMENT**

Mr. Goodman, as an individual, profits from his conspiracy theory podcasts published on the private subscriber service platforms PATREON and SubscribeStar ("paywall channels"), selling content provided to "patron" subscribers.

The 2,666 videos now hidden on the "JASON GOODMAN" are private videos no longer available to the public, the Plaintiff or the Court.

"That said, "publications directed only to a limited, <u>private audience</u>" are deemed by those New York courts as "matters of purely private concern." Id. at 270 (quoting *Huggins v.*

*Moore*, 94 N.Y.2d 296, 303, 704 N.Y.S.2d 904, 726 N.E.2d 456 (1999))"   *Coleman v. Grand*, 18-cv-5663 (ENV) (RLM), (E.D.N.Y. Feb. 22, 2021)

The Court should consider that there is no "actual malice" requirement for defamatory statements made in areas that are not matters of <u>public concern</u>.  This important aspect of defamatory jurisprudence will be explained below and may equip the Court to significantly reduce the "actual malice" burden upon the Plaintiff – thereby reducing discovery requirements.

The Court will recall its struggled to locate video podcasts as described in the Magistrate Judge's Report and Recommendation (ECF no. 321), see page 12 as an example "*The link for the video included in Plaintiff's First Response indicates that the video is not available. (See Pl.'s First Response at 14 (citing https://youtu.be/qyg9YejHyok).)*".  This video was placed on private non-public status.

In light of *Dun Bradstreet v. Greenmoss Builders* the Defendant cannot establish "public interest" communications with his private PATREON and SubScribeStar ("paywall") video content.  Further, the same is true for Defendant's non-public "JASON GOODMAN" YouTube channel, meaning his application of the New York Anti-SLAPP law to the "JASON GOODMAN" channel is misguided and should not be endorsed by this Court.

In other words, Mr. Goodman can not claim to be distributing content regarding "matters of public concern" when his "JASON GOODMAN" YouTube channel and his PATREON and SubscribeStar (paywall) channels are unavailable to the public.  Mere conclusionary wholesale statements that the Defendant is operating for the "public interest" are insufficient without more definitive proof.

If the Defendant hides his "JASON GOODMAN" YouTube channel (and his PATREON and SubScribeStar channels) in the bowels of the Internet, then his use of New York's Anti-

SLAPP law should be questioned, especially as the channel was hidden within 48 hours of the docketing of ECF doc. 239 (see **EXHIBIT TWO**).

Defendant has no justification or probable cause to file his Anti-SLAPP motion (ECF no. 239) and Defendant's use of Anti-SLAPP is malicious in nature and merely an instantiation of his personal hatred, ill will and animus directed at the Plaintiff (which are contributing factors that can be considered in an "actual malice" determination).

***Personal animus an "actual malice" consideration***

"The use of circumstantial evidence to prove actual malice is explicitly permitted and encouraged by St. Amant. R. Smolla, Law of Defamation, § 3.14[2], at 3-38 (1992). "[A]ctual malice [may be inferred] from objective facts. . . . These facts should provide evidence of negligence, motive, and intent such that an accumulation of the evidence and appropriate inferences supports the existence of actual malice. " *Bose Corp. v. Consumers Union of United States, Inc.,* 692 F.2d 189, 196 (1st Cir. 1982), aff'd, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

In *Harte-Hanks*, the Supreme Court specifically adopted this view, stating that "a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence, and it cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry." *Harte-Hanks*, 491 U.S. at 668, 109 S.Ct. at 2686, 105 L.Ed.2d at 577 (citations omitted). <u>The Court examined the publisher's motivation and held that the cumulative impact of the subsidiary facts established the existence of serious doubt which the publisher attached to its story."</u> *Batson v. Shiflett*, 325 Md. 684 (Md. 1992)

To this end, the Plaintiff has sought to obtain the private vs. public status of the "JASON GOODMAN" channel via e-mail messages exchanged with the legal department of Google, LLC, the parent corporation of YouTube, LLC.

While the Plaintiff was engaged in e-mail messaging with the Defendant and Google, LLC to clarify Google's Fed. R. Civ. Proc. Rule 45 subpoena procedures, the Defendant launched into his typical venomous tirade of smears (shown below) dripping with personal animus.

---

**On 09.12.2021 18:48, Jason Goodman wrote:**
**> Your behavior and public statements against interest cause me to**
**> believe you are a mentally ill psychopath who intends to do me harm.**
**> Any communication with any third party pertaining to me without**
**> explicit permission from the court is harassment. Stop it and seek**
**> mental help.**
>
>> On Dec 9, 2021, at 12:07 PM, spoliation@posteo.net wrote:
>>
>> Mr. Goodman,
>>
>> To clarify:
>>
>> No personal information concerning you as a person is being sought.
>>
>> The only information that is presently being sought is the private
>> status (non-public) of the "JASON GOODMAN" YouTube account.
>>
>> However, the scope of the subpoena make be enlarged to include
>> copies of account termination determinations by Google to
>> demonstrate your history of Community Policy violations with regards
>> to Crowdsource The Truth 2, Crowdsource The Truth 3, and Crowdsource
>> The Truth 4.
>>
>> Additionally, information may be sought concerning the accounts you
>> created called "DOPEY DAVE" and "THE CHAVEZ CONSPIRACY" on the
>> YouTube platform.
>>
>> As you know, Google controls these accounts and not you. The status
>> of these accounts, as determined by Google, does not individually
>> pertain to you and therefore you would have limited input into the

---

```
>> matter as an individual.
>>
>> If you oppose the release of this information by Google it is
>> recommended that you provide your supporting rationale in a response
>> e-mail message.
>>
>> Best,
>>
>> D. Geo. Sweigert
>>
                                                          [emphasis added]
```

## CONCLUSION

A demonstration of actual malice to recover presumed and punitive damages is only required when speech involves a matter of public concern. Here Jason Goodman distributes his paywall private podcasts on PATREON and SubscribeStar only to a private network of patrons in country club fashion. His flagship channel, "JASON GOODMAN", isn't even available to the public. The Court should just face the unpleasant truth that Mr. Goodman is not in the business of "public interest" communications; but, rather, settling old scores and personal grievances with his social media podcasts.

At a minimum, the foregoing demonstrates that there should be no cause for resistance in law or argument for the issuance of F.R.C.P. Rule 45 subpoenas to GOOGLE, LLC (YouTube channel "JASON GOODMAN"), PATREON and SubScribeStar to obtain an indexed tabular listing of videos presently stored on their platforms in social media accounts controlled by the Defendant. A list of podcast videos needed by the Plaintiff and in the Defendant's custody appears as **EXHIBIT ONE** attached.

Signed this twenty ninth day of December 2021. Date 12/29/2021.

Respectfully,

D. George Sweigert
Veteran U.S. Air Force

CERTIFICATE OF SERVICE

The Plaintiff asserts under penalties of perjury
that copies of these pleadings have been sent to
Jason Goodman on 12/29/2021 at
truth@crowdsourcethetruth.org

The Plaintiff hereby attests, under penalties of perjury, that the attached exhibits are true and accurate copies of the original source documented.

Respectfully,

D. George Sweigert

Veteran U.S. Air Force

# **EXHIBIT ONE**

## DISCOVERY MATERIALS NEEDED BY THE PLAINTIFF

The Plaintiff asserts in good faith that the following video productions are referenced in the DECLARATION OF D. GEORGE SWEIGERT.  These video podcasts are needed by the Plaintiff to demonstrate "actual malice".

**#MAGA Bomber Goes Postal with Special Guest Lee Stranahan** .......................................... **20**

**April 7, 2018:  Hack to the Future – Exploring the Sweigert, Hearst, Buffett Time Phones12**

**August 17, 2018: The breakdown of the crew** ......................................................................... **13**

**Date unknown 2019:  Red Line Death in Zulu Time Did Ramsey Use George Sweigert**

    **Patent to Call Police with David Hawkins** ....................................................................... **14**

**Date unknown.  Michael Barden Targeted Individual** ............................................................. **28**

**February 27, 2019 featuring David Hawkins** ........................................................................... **15**

**February 27, 2019: Does Sweigert's Social Engineering Spin the Bit Spread Spy in the**

    **Padlocked Bag with David Hawkins** ................................................................................... **18**

**January 29, 2019 Question for Legal Experts: Has D. George Sweigert Committed Mail**

    **Fraud?** ...................................................................................................................................... **21**

**January 29, 2019:  Michael Barden Targeted Individual – Results of Michael's Sentencing**

    **Hearing On the Courthouse Steps.** ..................................................................................... **27**

**January 9, 2019:  Michael Barden Targeted Individual – How to Survive an Economic**

    **Attack Designed to Disrupt Your Income** .......................................................................... **29**

**June 13. 2017:  Live From the Capitol Building** ...................................................................... **37**

**June 14, 2017:  Clear and Present Danger** ............................................................................... **37**

June 3, 2017:  Who is Spoofing the #SethRichFiles ................................................ 25

June 30, 2019:  Robert David Steele's #FakeLawsuit Gets Its Day in Court ...................... 24

May ?, 2018: The Trolls of Mt. Shasta ............................................................. 10

May 17, 2018:  Larry Klayman on Mueller's Conflicts of Interest with Special Guest Robyn
      Gritz ...................................................................................... 34

May 17, 2018:  Libel, Lies and Lawsuits – Queen Tut Exposed ...................................... 23

May 9, 2018:  The Webb of Lies and the Lying Liars Who Weave Them ............................. 24

November 10, 2018:  Patriot's Roundtable at Operation Classified Scott Bennett, Robyn
      Gritz, Sidney Powell & Kevin Shipp ........................................................ 33

October 28, 2018 featuring Lee Stranahan .......................................................... 15

September 15, 2017:  U.S. Capitol Police Crime Scene Search Lab Take 2 .......................... 25

Unknown 2019:  Discovery CSI – David Hawkins Examines Sweigert's Negligence in
      Ethical hacking .......................................................................... 18

# **EXHIBIT TWO**

Case 1:18-cv-08653-VEC-SDA Document 348 Filed 12/28/21 Page 27 of 34

# Tracking The Leopard Meroz

### A CHRISTIAN COMMENTARY ON THE CURSE OF JUDGES 5:23, BECAUSE THEY CAME NOT TO THE HELP OF THE LORD, AGAINST THE MIGHTY

## Jason Goodman drops off his Trojan Horse Defense at the gates of the NATAS Legal Team during a Court Discovery Conference

Posted on **May 5, 2021**



On April 23, 2021, United States Judge Valerie Caproni of the Southern District of New York ordered that a pretrial conference be held on April 30, 2021, in the *National Academy of Television Arts and Sciences vs. Multimedia System Design* lawsuit.

For those unfamiliar with this lawsuit, the defendant is Jason Goodman of *Crowdsource the Truth,* as owner of Multimedia System Design, Inc., and the primary legal issues involve trademark rights and defamation.

Members of the public were allowed to attend this Zoom court conference, provided no recording or retransmission of the hearing was done.  So, out of an interest in this case, I decided to listen in on the 2

hour discussion of unresolved discovery issues.

Both Jason Goodman and his attorney, John H. Snyder, were in attendance, and  Judge Caproni made it clear to the defendant, that since his corporation was represented by counsel, he would not be allowed to speak.  In spite of this rule,  a couple of exceptions were allowed, so that Goodman could clarify some details.

One of those opportunities for clarification was used by Jason Goodman to allege that Dave Sweigert, *the plaintiff in another federal civil lawsuit against him*, was directly responsible for shutting down his JASON GOODMAN YouTube channel, thereby frustrating discovery efforts in the NATAS lawsuit. This transfer of culpability to an outside party was astonishing, representing as it did the SODDI (Some Other Dude Did It!) legal defense.  A *Trojan Horse* had just been dropped off outside the gates of the NATAS legal team.

*That "Some Other Dude" says Jason Goodman privatized his videos; thereby preventing  public access to his own JASON GOODMAN YouTube channel*

The next day, May 1, 2021,  Dave Sweigert filed Document 268 in the *D. George Sweigert vs. Jason Goodman* lawsuit, which is also presided over by Judge Valerie Caproni.

Sweigert stated, "During a discovery conference in related litigation before District Judge Valerie E. Caproni, on 4/30/2021 the Defendant advised Judge Caproni that his JASON GOODMAN YouTube channel is not available on-line for the acquisition of discoverable defamatory statements.  The Defendant, speaking directly to Judge Caproni, advised that the 'account' disabling was a direct result of 'David Sweigert' for supposed privacy and/or copyright strikes."

"The undersigned completed a rigorous review of the situation and was able to locate one privacy complaint (or 'strike') filed by the undersigned against the JASON GOODMAN YouTube channel on August 9, 2020.  This 'privacy strike' was denied, which made the complaint moot, resulting in absolutely no detrimental impact to the JASON GOODMAN channel."

"The JASON GOODMAN YouTube channel remains in 'private' status, a visibility control directly in the hands of the Defendant and no one else.  As Judge Caproni has already mistakenly reported that BOTH the Defendant and the undersigned 'have missed deadlines', the Plaintiff has zero tolerance for any more flippant assertions made to Judge Caproni or this Court."

*What are the implications of falsehoods advanced during the Discovery process?*

David R. Hague, Assistant Professor of Law, South Texas College of Law, wrote in an April 12, 2016, scholarly article titled, **Fraud on the Court and Abusive Discovery**, that his analysis would demonstrate that "**advancing falsehoods during the discovery process is a form of fraud on the court** and that courts have equitable power to entertain a party's action that seeks to set aside a judgment based upon fraud during the discovery process".  [bolding added.]

During the NATAS conference on discovery, the attorney for Jason Goodman did not counter the false statement made by his client, Jason Goodman, when he accused Dave Sweigert of taking down his

12/28/21, 4:07 PM    Jason Goodman Drops off his Trojan Horse Defense at the gates of the NATAS Legal Team during a Court Discovery Conferenc…

Case 1:18-cv-08653-VEC-SDA   Document 348   Filed 12/28/21   Page 29 of 34

JASON GOODMAN YouTube channel.  One must expect that as legal counsel for Goodman's corporation, John H. Snyder has been conducting due diligence on  ALL of his client's claims, to see if they stand up to close scrutiny.

The *Fraud on the Court and Abusive Discovery* article also provides this insight into the responsibilities of attorneys, considered officers of the Court. David Hague quotes *Murray vs. Ledbetter,* saying, that because "an attorney is an officer of the court and owes the court fiduciary duties and loyalty", "when an attorney misrepresents or omits material facts to the court, or acts on a client's perjury or distortion of evidence, his conduct may constitute a fraud on the court."  Hague adds, "Furthermore, when an officer of the court fails to correct a misrepresentation or retract false evidence submitted to the court, it may also constitute fraud on the court."

The silence exhibited by the attorney for the defendant in the NATAS lawsuit, when he allowed his client to provide his SODDI defense to Judge Caproni, left the impression that  Jason Goodman's statement had evidence to back it up.  As the *fraud on the court* article notes, "Lawyers are professionally and ethically responsible for accuracy in their representations to the court".

A *Trojan Horse defense* effectively serves to cover over a malicious offense with a benign looking gift offering.  Thus in blaming a third party for his discovery problems, Jason Goodman was expressing a feigned sympathy for the frustrations of his legal opponents in obtaining discovery.  But Goodman was killing two birds with one stone, for simultaneously in the *D. George Sweigert vs. Jason Goodman* lawsuit, the defendant also had a discovery deadline to meet on April 12, 2021.

D. George Sweigert explained in his April 18, 2021, Document 250 filing to Magistrate Judge Stewart D. Aaron, "As you are well aware, the Defendant has filed ECF document no. 239 (**Dkt. 239**) to halt the discovery process in this present lawsuit (see docketing April 12th, 2021).  The following day (4/13/2021) after docketing no. 239, Defendant announced in a video podcast to thousands on the **CROWDSOURCE THE TRUTH 3** channel that the **JASON GOODMAN** YouTube channel was removed (via account termination) by YouTube.COM for 'community violations'.  Blame of this account termination was laid at the Plaintiff's feet.  This action removed **2,333** videos, produced by the Defendant, from the Internet."

Sweigert adds, "Best evidence indicates that this supposed 'account termination' is a false self-inflicted wound perpetuated by the Defendant to interfere with the discovery process, as many of the **2,333** videos contained defamatory and slanderous commentary about the Plaintiff, who still had three (3) weeks of eligible discovery as of 4/13/2021…".

Dave Sweigert provided the court with several examples of videos that were unavailable because they were placed in *private* mode.  Paragraph 3 of Document 250 observes, "It now appears the Defendant filed **Dkt. 239** and orchestrated the fake, false, fraudulent, or misleading public "account termination" by placing the JASON GOODMAN account in 'hidden status' and placing the videos on 'private' status.  An account termination does not result in the display of 'private' video status for public users."

Also, around this same timeframe, on April 20, 2021, the blog writer known as *Jimmy's LLama* noted on her Twitter account that a link she had to a CSTT video had been **privatized**, and she wondered at the cause.

12/28/21, 4:07 PM  Jason Goodman Drops off his Trojan Horse Defense at the Gates of the NATAS Legal Team During a Court Discovery Conferenc…

Case 1:18-cv-08653-VEC-SDA   Document 348   Filed 12/28/21   Page 30 of 34

> **Llama** @jimmysllama · Apr 20
>
> After having it publicly available for over three years now and linked to
> in #TheRabbitFiles 🐇, anyone know why Crowdsource the Truth
> recently privatized the video with Trish and Jason talking about the
> White Rabbit thumb drive incident? youtube.com/watch?v=TobCgr…

*The victim status of Goodman, who continually is bullied by Big Boys*

Oddly, two days prior to the discovery deadline in *Sweigert vs. Goodman*, Jason Goodman was involved
in YET ANOTHER altercation, which he filmed for his *pay-for-views* supporters.

> **CrowdsacetheTruth** @csthetruth · Apr 10
>
> Patrick Byrne just assaulted me at the Mike Lindell event in Las Vegas

Shortly thereafter, Patrick Byrne commented on his t.me account:



> **Patrick Byrne**
>
> There is some fool out there claiming that I "assaulted" him at a
> recent event (when he did the thing of asking nonsensical ambush
> questions, then holding a microphone in my face). At one point, I
> grabbed the microphone so he could not pull it away before I
> finished speaking. I never touched the guy himself. So I guess he
> can say that I assaulted his microphone.          9.8K 👁 21:40

12/28/21, 4:07 PM          Jason Goodman drops off his Trojan Horse Defense at the gates of the Natas Legal Team during a Court Discovery Conferenc…

Case 1:18-cv-08653-VEC-SDA    Document 248    Filed 12/28/21    Page 31 of 34



On April 13, 2021, Jason Goodman discussed a strike against his channel, but does not display evidence to support his statement:

Also, this Twitter message was posted:

12/28/21, 4:07 PM     Jason Goodman drops off his Trojan Horse Defense at the gates of the NATAS Legal Team about a Discovery Conference…

Case 1:18-cv-08653-VEC-SDA   Document 348   Filed 12/28/21   Page 32 of 34





**CrowdsourcetheTruth**
@csthetruth       ...

with great frustration & regret I'm sad to announce the Jason Goodman @YouTube channel has been removed. I'll fight this but for now, the best option is subscribe to Crowdsource the Truth 3, youtube.com/channel/UC8UYR... @bitchute_ or SubscribeStar & Patreon

Crowdsource the Truth 3
This is a secondary backup channel for Jason Goodman
https://www.youtube.com/c/JasonGoodmancrowdsourcethe...
🔗 youtube.com

3:09 PM · Apr 13, 2021 · Twitter Web App

On April 11, 2021, one day prior to the Sweigert lawsuit discovery deadline, Documents 239, 239-1 & 2 were filed by the defendant in *D. George Sweigert vs. Jason Goodman*. In this court document, an Anti-SLAPP motion is discussed, and Jason Goodman expresses his desire to stay further discovery. [These legal issues were discussed on May 4th in a telephonic conference with Magistrate Judge Aaron, who issued an Order, with schedule deadlines that must be met by both parties, and warnings of the consequences for failure to do so.]

*Tracking the Leopard Meroz* has been providing commentary since 2017 on the participants in the Port of Charleston dirty bomb hoax incident on June 14, 2017. **When I checked a sampling of links to the Jason Goodman videos which had been discussed in my articles,** *all were unavailable for viewing, as they had been privatized.*

Those links are an integral part of my commentary, as they allow the reader to view the original source of the material on which I form an opinion. Those links either substantiate my opinion, or vindicate the originator of the videos, and I routinely provide such evidence to facilitate the reader's understanding of the issues under discussion. *The privatization of a couple of thousand videos by a channel owner to thwart the ease of legal discovery and to give the false impression that he has been damaged by one of his critics is disingenuous.*

*ANTI-SLAPP: Is the FOLLY of promoting and dramatizing an unvetted report on a YouTube video, which resulted in the public participation in the shutting down a major US port, considered to be "protected speech"?*

Document 239-2, *Memorandum in Support of Defendant's Special Motion to Dismiss pursuant to NYCVR § 76-A and the First Amendment,* provides a section subtitled, "Factual Background" (pages 2-5) which is interesting as part of the ongoing narrative on the Port of Charleston incident.

[Compare Goodman's recollections with the *Tracking the Leopard Meroz* 3-part series on the Port of Charleston, which is linked for easy access in my March 20, 2021, article titled, *"Crowdsource the Truth's 'Elephant in the Room': The Connection to the Russian Propaganda Site-Sputnik News".]*

Pro se defendant Jason Goodman began his Document 239-2 *factual background* explanation saying, "**This lawsuit was brought by Plaintiff for the improper purpose of suppressing First Amendment protected speech about matters of public interest. For this reason alone, the matter should be dismissed under New York State's anti-SLAPP statute.**" [bolding added.]

The reader might recall that *D. George Sweigert vs. Jason Goodman* was originally structured as a federal civil RICO lawsuit and filed on June 14, 2018, in Charleston, South Carolina, BEFORE it was transferred to the Southern District of New York, where the defendant resides. **So whether or not the Plaintiff's purpose was improper or not, would be determined by the intent of that original complaint.**

Because Sweigert lacked standing to bring about his RICO complaint, the lawsuit was then narrowed by Judge Caproni to the remaining elements of defamation and *use of Sweigert's image.* What gets forgotten over an almost 3 year time span, with 270 documents filed in this lawsuit, is the amount of evidence which Sweigert submitted to the Court in the form of exhibits. **No matter how this lawsuit is eventually resolved, a snapshot of Jason Goodman's activities on YouTube have been archived in this lawsuit,** *which no amount of privatization of over two thousand videos can delete.*

In the NATAS lawsuit, Goodman's attorney introduced a motion to include a recently amended New York Anti-SLAPP statute as part of his client's defense. Weeks later, attorney John Snyder employed this litigation move as his ace-in-the hole in his attempt to negotiate a trade-off with the NATAS legal team.

Subsequently, Jason Goodman, as *pro se* defendant in the Sweigert lawsuit, also introduced the amended New York Anti-SLAPP statute, which apparently can be applied retroactively to a case which has been ongoing for almost three years.

A SLAPP lawsuit, or **Strategic Lawsuit Against Public Participation,** depending on the state which has codified Anti-SLAPP laws, originally involved the protection of ordinary persons, who for example, speak out in local councils, say on building codes, who are then frivolously sued in order to silence their public participation. In recent years, Anti-SLAPP laws have been broadened, which has resulted in an increase of Anti-SLAPP lawsuits.

As Jason Goodman desires to apply an Anti-SLAPP statute **retroactively** to the *Sweigert vs. Goodman* lawsuit, it would behoove the defendant to explain how the Port of Charleston hoax incident represents protected speech when it involved the promotion of a false report from an unvetted source which Goodman, Webb and Negron **dramatized to the point that a major port was shut down**. And why is it that anyone who criticized the June 14, 2017, folly displayed on Jason Goodman's *Crowdsource the Truth* video, is characterized by Goodman as an effort to silence public participation? *That public participation*

Case 1:18-cv-08653-VEC-SDA   Document 348   Filed 12/28/21   Page 34 of 34

*involved the public viewers of CSTT sending 8,000 Twitter messages to the Coast Guard, which some have characterized as a DDoS attack.*

Anti-SLAPP and a SODDI legal defense…*What saith these officers of the court about the Trojan Horse sitting outside their gate?*

This entry was posted in **Conspiracy Media**, **Cyberstalking**, **D. George Sweigert (RICO) vs Jason Goodman**, **National Academy of Television v Crowdsource the Truth** and tagged **anti-SLAPP lawsuits**, **D. George Sweigert vs Jason Goodman lawsuit**, **Jason Goodman aka Multimedia System**, **Jason Goodman Crowdsource the Truth**, **National Academy of Television vs Multimedia System**, **trojan horse SODDI legal defense** by **Jacquelyn Weaver**. Bookmark the **permalink** **[https://trackingmeroz.wordpress.com/2021/05/05/jason-goodman-drops-off-his-trojan-horse-defense-at-the-gates-of-the-natas-legal-team-during-a-court-discovery-conference/]** .

2 THOUGHTS ON "JASON GOODMAN DROPS OFF HIS TROJAN HORSE DEFENSE AT THE GATES OF THE NATAS LEGAL TEAM DURING A COURT DISCOVERY CONFERENCE"



Tom Hanks
on **May 9, 2021 at 2:41 pm** said:

Hi, Jason continuously states that he has everything that he has filmed and put on any channel is backed up to his local drives, in high quality. He has said many times he can recreate the YouTube channels and implied that he was planning to do this on his own server system in the near future.



**Plaintiff**
on **May 9, 2021 at 5:01 pm** said:

When did he says this? Cite?

This site uses Akismet to reduce spam. Learn how your comment data is processed.