USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/19/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

D. GEORGE SWEIGERT,

                          Plaintiff,

            -against-

JASON GOODMAN,

                          Defendant.

18-CV-8653 (VEC)

OPINION AND ORDER TO SHOW
CAUSE

VALERIE CAPRONI, United States District Judge:

George Sweigert sued Jason Goodman for defamation and for violations of his statutory right of privacy as codified in Sections 50 and 51 of the New York Civil Rights Law.[1]  On June 1, 2021, Goodman filed a motion for partial summary judgment; the motion addressed twelve allegedly defamatory statements and one alleged violation of Sweigert's privacy rights.  Mem. of Law, Dkt. 279.  The Court previously referred this matter to Magistrate Judge Aaron for general pretrial management and for the preparation of reports and recommendations ("R&Rs") on any dispositive motions.  Referral, Dkt. 89; *see also* 28 U.S.C. § 636(b).  On October 29, 2021, Judge Aaron issued a report and recommendation recommending that Goodman's motion for summary judgment be granted in part and denied in part.  R&R, Dkt. 321.  Judge Aaron also recommended granting in part and denying in part Sweigert's motion for additional discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure and denying additional requests filed by both parties.  *Id.*  Sweigert objected to the R&R, *see* Objections, Dkt. 329; Goodman neither objected to the R&R nor responded to Sweigert's objections.  For the following reasons, the Court adopts the R&R in full, and the outstanding motions are GRANTED in part and DENIED in part.

---

[1]        The operative complaint in this matter is the Second Amended Complaint (Dkt. 88), as supplemented by paragraphs 1, 39–45, and 47–50 of the First Supplemental Complaint (Dkt. 150).  *See* Order, Dkt. 160 at 5.

## BACKGROUND

The Court assumes familiarity with Judge Aaron's R&R and will not recount the factual background here. *See* R&R at 1–2 (summarizing the factual background); *see also Sweigert v. Goodman*, No. 18-CV-8653, 2021 WL 2678621, at *1 (S.D.N.Y. June 30, 2021); R&R, Dkt. 138 at 2–5. As the Court has explained in the past, this action is between two *pro se* litigants who spend a great deal of time accusing "one another of criminal conduct and other misbehavior on the internet." Order, Dkt. 140 at 1; *see also* Order, Dkt. 87; Order, Dkt. 175; Order, Dkt. 292 at 1. At issue in this lawsuit is whether any of Goodman's statements or actions constitute defamation or violate Sweigert's statutory right to privacy under New York law.

On June 1, 2021, Goodman filed a motion for partial summary judgment, seeking dismissal of twelve of Sweigert's defamation claims and one of Sweigert's claims that Goodman violated his statutory right to privacy.[2] *See* Notice of Mot., Dkt. 277.[3] Goodman also sought summary judgment on his "counterclaim," brought under the New York anti-SLAPP statute, as well as other relief. *See* Mem. of Law, Dkt. 279 at 22–23, 23; Reply, Dkt. 303 at 8–9. Sweigert opposed the motion. Resp., Dkt. 298.[4] Additionally, Sweigert filed a number of other motions: a motion pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, seeking additional discovery, among other relief, *see* Mem. of Law, Dkt. 281; a motion for sanctions pursuant to Rule 56(h), *see* Mem. of Law, Dkt. 293; and a motion to strike allegedly scandalous material from Defendant's amended notice of motion for summary judgment pursuant to Rule 12(f), Mem. of Law, Dkt. 304. The R&R addresses each of those motions and requests for relief.

---

[2]    Sweigert alleges additional defamation claims and violations of his statutory right to privacy that were not addressed in Goodman's motion for summary judgment.

[3]    Goodman later amended his notice of motion. *See* Am. Notice of Mot, Dkt. 302.

[4]    Sweigert filed two complete responses in opposition to the motion for summary judgment, an initial response (Dkts. 294–297) and a corrected response (Dkts. 298–301).

R&R, Dkt. 321. Sweigert objected to the R&R, Dkt. 329;[5] Goodman neither objected nor responded to Sweigert's objections.

## LEGAL STANDARD

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *King v. Greiner*, No. 02-CV-5810, 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (citation omitted); *see also Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).

When specific objections are made to the R&R, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *United States v. Male Juv.*, 121 F.3d 34, 38 (2d Cir. 1997). But such objections "may not simply regurgitate the original briefs to the magistrate judge." *Hernandez v. City of New York*, No. 11-CV-6644, 2015 WL 321830, at *2 (S.D.N.Y. Jan. 23, 2015) (internal citation omitted). To the extent that the party "simply reiterates the original arguments, the Court will review the [R&R] strictly for clear error." *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008); *see also O'Callaghan v. N.Y. Stock Exch.*, No. 12-CV-7247, 2013 WL 3984887, at *1 (S.D.N.Y. Aug. 2, 2013) (collecting cases), *aff'd*, 563 F. App'x 11 (2d Cir. 2014).

---

[5]     Sweigert filed initial objections, which he corrected a day later. *See* Initial Objections, Dkt. 325; Objections, Dkt. 329. The Court addresses the parties' incessant filing of piecemeal and amended or corrected filings in the last section of this Opinion.

An error is clear when the reviewing court is left with a "definite and firm conviction that a mistake has been committed." *See Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) (quoting *McAllister v. United States*, 348 U.S. 19, 20 (1954)).

The Court need not consider arguments and factual assertions contained in the objections that were not raised initially before the magistrate judge. *Robinson v. Keane*, No. 92-CV-6090, 1999 WL 459811, at *4 (S.D.N.Y. June 29, 1999) ("These issues were not raised before the Magistrate Judge and therefore were not addressed by him; accordingly, they may not properly be deemed 'objections' to any finding or recommendation made in the Report and Recommendation."); *see also Abu–Nassar v. Elders Futures, Inc.*, No. 88-CV-7906, 1994 WL 445638, at *4 n.2 (S.D.N.Y. Aug. 17, 1994) ("If the Court were to consider [new arguments in an objection], it would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a report is issued to advance additional arguments."). Accordingly, when new arguments or factual assertions are raised for the first time in objections to an R&R, the Court may decline to consider them.[6]

## DISCUSSION

### I.  Goodman's Motion for Summary Judgment

Judge Aaron applied the correct summary judgment standard in his R&R. *See* R&R at 3–4 (noting that summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law) (reviewing caselaw).

---

[6]  Many of Sweigert's arguments in his objections to Judge Aaron's R&R are new; they are not found in his memorandum of law in opposition to Goodman's motion for summary judgment. *Compare* Objections, Dkt. 329 *with* Resp., Dkt. 298.  To the extent that Sweigert's arguments are raised for the first time in his objections, that alone is reason to disregard those objections.  For the sake of clarity and ease, however, the Court does not indicate which of Sweigert's dozens of arguments in his 155 paragraph objections are new and not appropriate for consideration.

### A.  Defamation Claims

Goodman contends that he is entitled to summary judgment as to twelve of Sweigert's defamation claims.[7]  Mem. of Law, Dkt. 279 at 9–18.  As Judge Aaron correctly noted, "a defamation plaintiff must establish five elements: (1) a [ ] defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault [either negligence or actual malice]; (4) falsity of the defamatory statement, and (5) special damages or per se actionability."  R&R at 4 (citing *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)); *id.* (collecting cases).  Only four types of statements are per se actionable under New York law: statements that impute unchastity to a woman; that assert the plaintiff has a loathsome disease; that tend to injure the plaintiff in his profession; or that charge the plaintiff with a serious crime.  *See Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992).  Judge Aaron recommends granting Goodman's motion as to ten of the twelve allegedly defamatory statements and denying the motion as to two of the allegedly defamatory statements.  *See* R&R at 4–25.  Sweigert objects to Judge Aaron's recommendations as to ten of the twelve defamation claims.  *See* Objections ¶¶ 29–154.

### 1.  Statements One and Three

Statements one and three are from the same video and involve the following statements by Goodman: "You better stop that Dave, because all that stuff is going to the FBI" (statement one) and "I am working on a way to figure out how to bring criminal prosecution against these people" (statement three).  R&R at 9.  Goodman does not dispute that both statements concern Sweigert.[8]  Goodman instead argues that both statements are true because when he made the

---

[7]        Each of the twelve defamation claims arises from a different statement Goodman made about Sweigert. Although as to some of the statements the Court does not have access to the actual video or audio in which the statement was made (although Goodman has now produced copies of all of the videos or audio to Sweigert, he had not at the time Judge Aaron issued the R&R), Goodman does not dispute that he made the statements at issue.

[8]        The Court presumes that the "Dave" in statement one is referring to Sweigert whose first name is David and that the "these people" in statement three includes Sweigert.

statements, he was in communication with the FBI about Sweigert.  *See* Goodman Decl., Dkt. 278 ¶ 51 (". . . I called the FBI and provided them information about the activities of Sweigert…"); *id.* ("At the time I made this statement, I was in communication with the FBI about Sweigert . . . .").  Judge Aaron is correct that "truth is an absolute, unqualified defense to a civil defamation action" and "that substantial truth is all that is required."  *See* R&R at 9 (quoting *Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 281 (S.D.N.Y. 2016)); *see also id.* (collecting cases).  But "truth as a defense" focuses on the defamatory aspect of the statement.  *See Stern v. Cosby*, 645 F. Supp. 2d 258, 276 (S.D.N.Y. 2009) (citing *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991)); *Sharon v. Time, Inc.*, No. 83-CV-4660, 1985 WL 186675, at *2 (S.D.N.Y. Jan. 31, 1985) (citing *Fleckenstein v. Friedman*, 266 N.Y. 19, 23 (1934)); *see also Blair v. Inside Edition Prods.*, 7 F. Supp. 3d 348, 360 (S.D.N.Y. 2014).

In this case, the defamatory nature of the statements about which Plaintiff complains is not that Goodman was in contact with the FBI.[9]  The defamatory sting comes from the unstated innuendo that Sweigert committed some crime or crimes about which Goodman was communicating to the FBI.  Because the parties went off track and argued about Goodman's communications with the FBI rather than the underlying implication of the statement that Sweigert was involved in criminality, the record does not reflect Goodman's basis for his implied accusation against Sweigert.  Nevertheless, the Court agrees with Judge Aaron's alternative conclusion that the statements are not defamatory per se, *see* R&R at 10, 22–23,[10] and because

---

[9]    It is for that reason that the Court need not deal with Sweigert's objection that Goodman has not adequately proven that he was in contact with the FBI.  Objections ¶¶ 49–53.  That said, if the salient question were whether Goodman had adequately demonstrated that he was in contact with the FBI at the time he made those statements, the Court would concur with Judge Aaron that he has done so.

[10]    In his objections, Sweigert argues that the statements are defamatory per se because, in context, they involve (a) Goodman accusing Sweigert of having falsely accused Goodman of committing "crimes against minors" and (b) an accusation by Goodman that Sweigert was engaged in the unauthorized practice of law.  *See id.*  ¶¶ 31–57.  The Court disagrees.  In discussing Sweigert's alleged false accusation against Goodman, Goodman makes clear

Plaintiff has not adduced evidence of special damages, *see id.* at 10, 23–25, Goodman is entitled to summary judgment as to those two statements.

### 2. Statement Two

Statement two involves two statements Goodman made on a podcast: "that man should be in jail" and "that's criminal prosecution, I intend to get them prosecuted criminally."  R&R at 10.  With respect to the first statement, Judge Aaron rightly concluded that given the use of the word "should," the statement is not defamatory because it is a non-actionable opinion incapable of being proven false.  *Id.* at 10–11 (analogizing to relevant caselaw).  Sweigert does not object to that portion of Judge Aaron's R&R.  *See* Objections ¶¶ 60–83 (providing additional context and focusing on Judge Aaron's conclusions regarding per se actionability).  There is no clear error in Judge Aaron's finding that the statement that Sweigert "should be in jail" is an opinion, and accordingly, Goodman's motion for summary judgment as to that part of statement two is granted.

With respect to the second part of the statement, that Goodman "intend[s] to get them prosecuted criminally," the Court agrees with Judge Aaron that the statement is not defamatory, *inter alia*, because it fails the fifth element of a defamation claim, which requires proving "special damages or per se actionability."  R&R at 10, 22 (per se actionability); *id.* at 23–25 (special damages).[11]  Sweigert does not object to Judge Aaron's conclusion that Sweigert has not

---

that he is accusing Sweigert of committing a tort, not committing a crime.  *See id.* ¶ 32 ("That's tortious interference, that's a civil tort.  That's malicious and that's not good.").  Nor can the statement be read to accuse Sweigert as engaging in the unauthorized practice of law.  The statement Sweigert quotes at paragraph 42 of his objections, which allegedly provides the context for the defamation claim, is largely incomprehensible.  At best it suggests that *if* Sweigert's use of an email address titled spoliation-notice@mailbox.org was intended to intimidate the recipient of emails from that address into thinking a lawyer was involved, then Sweigert would have failed in his quest because any lawyer sending an email of such a nature would have included contact information.

[11]     Additionally, the context of Goodman's statement that he intends to get Sweigert and others prosecuted criminally also indicates that it is a nonactionable opinion.  R&R, Dkt. 321 at 12.  Judge Aaron correctly states the relevant standard:

presented evidence that he sustained special damages from Goodman's defamatory statements. Because Sweigert has not identified any particular job or other business opportunities that he applied for or otherwise would have secured but for the publication of any of these allegedly defamatory statements, the Court finds no clear error in and adopts Judge Aaron's conclusion that Sweigert has not established that he suffered special damages with respect to any of the allegedly defamatory statements, including statement two.

With respect to defamation per se, the statement at issue does not charge Sweigert with a serious crime.  *See Liberman*, 80 N.Y.2d at 435.  The statement itself is general and does not invoke a particular crime that Sweigert allegedly committed.  Statements are not defamation per

---

Whether a representation is an actionable statement of fact is a question of law for courts to decide.  *See Chau v. Lewis*, 771 F.3d 118, 128 (2d Cir. 2014).  A statement that is capable of being proven false may still be a nonactionable opinion "based on the context in which it was delivered." *Rapaport v. Barstool Sports, Inc.*, No. 18-CV-08783 (NRB), 2021 WL 1178240, at *11 (S.D.N.Y. Mar. 29, 2021); *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 294–95 (1986).  "New York courts apply a three-factor test to determine whether a reasonable person would consider a statement to be a 'fact' or a nonactionable 'opinion': (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . [to] readers or listeners that what is being read or heard is likely to be opinion, not fact."  *Conti v. Doe*, No. 17-CV-09268, 2021 WL 1578047, at *4 (S.D.N.Y. Apr. 22, 2021) (citing *Davis v. Boeheim*, 24 N.Y.3d 262, 270 (2014)).

*Id.* at 7 (citations altered).

Earlier in the podcast, Goodman stated: "I want the people that we are talking about to meet justice, whether that's going to jail or strict financial penalties or losing the ability to do the malicious acts that they're doing, I want these things to happen."  *See* Lift the Veil Podcast, *available at* https://soundcloud.com/altnews/462018-jason-goodman-calls-lift-the-veil (last visited Jan. 5, 2022), at 1:01:58–1:02:10.  Looking at the statements in context, upon *de novo* review, it is clear that Goodman is talking about his intentions, his opinions, and what he wants to happen in the future.  Such statements are not "capable of being proven true or false" and, given the context, readers are likely to understand that when Goodman says what he wants and what he intends to do, he is expressing his opinion, not fact.  Sweigert does not object to Judge Aaron's conclusion that this statement is opinion; his objections focus on Judge Aaron's alternative conclusion that the statement does not constitute defamation per se.  Objections ¶¶ 60–83 (focusing on Goodman's accusations of links between Sweigert and the involvement of the United States in Nicaragua that came to be known as Iran Contra and alleged damage to Sweigert's career as a certified ethical hacker).  Given the lack of clear error in Judge Aaron's conclusion, and even upon a *de novo* review, the fact that the statement is a non-actionable opinion is another reason to grant Goodman's motion for summary judgment as to that statement.

se "unless they specify a crime or a crime is readily apparent from properly pleaded innuendo." *See Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 399 (S.D.N.Y. 1998) (quoting *Privitera v. Town of Phelps*, 79 A.D.2d 1, 4 (4th Dep't 1981), *abrogated on other grounds by Cavallaro v. Pozzi*, 28 A.D.3d 1075, 1078(4th Dep't 2006)).  Here, no crime can be deduced from the defamatory statement.[12]  Accordingly, even upon *de novo* review, Goodman's motion for summary judgment as to statement two is granted.

### 3.  Statements Four and Five

Judge Aaron recommended that the Court deny Goodman's motion for summary judgment as to statements four[13] and five.[14]  *See* R&R at 12–15, 22.  Sweigert objects to Judge Aaron's reasoning, but he does not object to Judge Aaron's ultimate recommendation that those claims not be dismissed.  *See* Objections ¶¶ 84–104.  The Court finds no clear error in Judge Aaron's recommendation that Goodman's motion for summary judgment be denied as to statements four and five.  Accordingly, the Court adopts those recommendations and denies Goodman's motion for summary judgment as to statements four and five.

---

[12]     Sweigert argues that, when the entire podcast is considered in context, Goodman is accusing him of involvement in the Iran-Contra affair and of engaging in other criminal or inappropriate activity.  *See* Objections ¶¶ 61–70, 74.  But here too, it is unclear exactly what "serious crime" Sweigert believes Goodman is accusing him of committing.  Goodman appears to be spouting incomprehensible nonsense (*see*, *e.g.*, *id.*  ¶ 77, quoting Goodman as saying, "I called [Dean Fougere] at that company to alert him that I was in the process of gathering information to bring to the FBI.  To tell the FBI that I believe a new type of crime is taking place.  A decentralized defamation attack.") that does not constitute defamation per se.  *See also Kesner v. Dow Jones & Co.* 515 F. Supp. 3d 149, 171 (S.D.N.Y. 2021), *appeal dismissed* (Apr. 16, 2021) ("Whether a challenged statement constitutes defamation per se is a question of law." (internal citation omitted)).

[13]     Statement four is from a YouTube video during which Goodman said: "You see, I think David is engaged in a crime.  I have got the evidence for it.  Could indicate involvement in a criminal operation of IRAN-CONTRA.  Dave needs to be prosecuted.  18 USC [§] 1001.  I am going to make it my business to find a prosecutor to charge David Sweigert and his accomplices with that crime.  Because I will see to it that that man is put in jail."  R&R at 12.

[14]     Statement five is from a YouTube video during which Goodman said: "David Sweigert — that I see evidence that he has committed felonies.  And therefore, conspiring with him could expose you to serious legal issues if law enforcement chooses to act on the evidence that I am actively providing of these felonies.  And conspiring with others around the Internet to break the law."  *Id.* at 13.

### 4. Statements Six and Nine

Sweigert does not object to Judge Aaron's recommendation with respect to statements

six[15] and nine.[16]  *See* Objections at 42, 46.  Judge Aaron recommended that Goodman's motion

for summary judgment be granted as to those two defamation claims.  *See* R&R at 15–16, 18–19.

The Court finds no clear error in Judge Aaron's recommendations as to those two claims.

Accordingly, the Court adopts those two recommendations, and Goodman's motion for summary

judgment as to statements six and nine is granted.

### 5. Statements Seven and Ten

Statements seven and ten involve statements by Goodman that Sweigert is involved in a

campaign of harassment.  *See* R&R at 16 ("Shrouded in an organized campaign of harassment.

Interstate harassment over the Internet, over the telephone.  These are crimes people.  So if you

are engaged in doing that right now, Dean Fougere, Manuel Chavez, Robert David Steele, David

Sweigert, Queen Tut, Lutzke Holmes, whatever.") (statement seven); *id.* at 19 ("You are engaged

in an organized criminal harassment campaign . . . . I have submitted my evidence against you to

the NY FBI field office.") (statement ten).[17]  Those two statements are not defamatory because

Sweigert has not shown evidence of special damages and the statements are not defamatory per

se.  Sweigert does not object to Judge Aaron's finding regarding special damages, and the Court

finds no clear error in that conclusion.

---

[15]     Statement six is Goodman's statement on a YouTube video that Sweigert "has now taken to basically threatening the federal judge in the Southern District of New York, that's Valerie Caproni."  *Id.* at 15.

[16]     Statement nine is Goodman's statement on a YouTube video that "George's brother [Sweigert] who is making public threats against us . . . ."  *Id.* at 18.

[17]     With respect to statement ten, Sweigert reiterates his arguments about Goodman's purported communication with the FBI.  *See* Objections ¶¶ 117–18.  For the same reasons as discussed *supra*, that part of the statement is not relevant to the defamatory "sting" of statement ten.

With respect to whether the statements are defamatory per se, Judge Aaron found that the statements underlying claims seven and ten "do not constitute defamation *per se* because '[h]arassment is a relatively minor offense in the New York Penal Law — not even a misdemeanor — and thus the harm to the reputation of a person falsely accused of committing harassment would be correspondingly insubstantial.'"  R&R at 22 (citing *Liberman*, 80 N.Y.2d at 436; *see also id.* (citing *Hogan v. Lewis Cnty.*, No. 16-CV-01325, 2020 WL 2850162, at *15 (N.D.N.Y. June 1, 2020) (finding that accusation of harassment is not defamatory per se because harassment is not a serious crime)).  Sweigert argues that that the "connotation of criminal activity should be considered, not just specific named crimes."  *See* Objections ¶ 126 (citing *Jewell*, 23 F. Supp. 2d at 399; *see also id.* ¶ 106 (same).  But Judge Aaron's conclusion is not that harassment is not a crime but rather that it is not the sort of serious crime a false allegation of which can constitute defamation per se.  *See* R&R at 21 (finding that a statement is per se actionable under New York law when it "charge[s] plaintiff with a serious crime") (citing *Liberman*, 80 N.Y.2d at 435); *id.* (quoting *Liberman*, 80 N.Y.2d at 435 ("[T]he law distinguishes between serious and relatively minor offenses . . . .")).  With no objection as to Judge Aaron's conclusion that harassment is not a serious crime,[18] the Court reviews it for clear error and finds none.  With no other arguments or objections as to the per se actionability of statement seven, Goodman's motion for summary judgment as to statement seven is granted.

With respect to statement ten, Sweigert further argues that the statement is per se actionable because it has injured him in his profession as a certified ethical hacker.  Objections

---

[18]     In his objections related to statement seven, Sweigert notes that "interstate harassment" is a federal crime. Objections ¶ 107 (citing 47 U.S.C. § 223; *United States v. Tobin*, 480 F.3d 53 (1st Cir. 2007)).  But Sweigert offers no argument, authority, or analysis as to why the existence of a federal harassment crime makes that crime sufficiently serious such that a false accusation of harassment constitutes defamation per se.

¶¶ 126–127.  Sweigert is correct that injury to one's profession is a recognized type of statement that is per se actionable under New York law.  *See* R&R at 21 (citing *Liberman*, 80 N.Y.2d at 435).  Sweigert argues that the alleged defamatory statements impair Sweigert's "professional reputation" as a certified ethical hacker "who must operate under a stringent Code of Ethics." Objections ¶ 126.  In support of that contention, Sweigert relies on two cases, the facts of which are readily distinguishable from those at issue here.

In the first case, *Giuffre v. Maxwell*, 165 F. Supp. 3d 147 (S.D.N.Y. 2016), the plaintiff, a victim of child sex trafficking and the president of a non-profit corporation that helps victims of sex trafficking, *Giuffre*, 165 F. Supp. 3d at 154, accused the defendant of being "closely involved in [her] trafficking for the purpose of this abuse."  *Id.* at 150.  The defendant denied the accusation, characterizing the plaintiff's statement, among other ways, as "obvious lies."  *Id.* The plaintiff then sued for defamation alleging that the defendant's statement ("obvious lies") was defamation per se.  On a motion to dismiss, the Court found that for plaintiff, "an individual acting in the capacity of president of a non-profit corporation designed to help victims of sex trafficking," being accused of falsely claiming to have been sex trafficked "would tend to disparage that individual in the way of her profession," especially given "the very real importance of perceived competence and integrity in the conduct of that profession."  *Id.* at 154. Sweigert's claims do not present nearly as close a link between the defamatory statement and his profession.  In fact, Sweigert provides no link at all between the purportedly false accusation of harassment and his role as a certified ethical hacker.[19]  Accordingly, the *Giuffre* case provides no support for Sweigert's contention that statements seven and ten are defamatory per se.

---

[19]     Moreover, Sweigert does not provide many details about the code of ethics associated with certified ethical hackers; the only provision he cites requires "conduct[ing] oneself in the most ethical and competent manner when soliciting professional service or seeking employment, thus meriting confidence in your knowledge and integrity." *Id.* ¶ 59 (lacking any citation to the code of ethics itself).  Sweigert provides no link between the accusations of

Sweigert also cites *Jones v. Crisis Servs. of Erie Cnty.*, No. 16-CV-234, 2018 WL 3708494 (W.D.N.Y. Aug. 3, 2018).  Objections ¶ 127.  In that case, the Court found that there are three principles at work when determining whether statements "tend to injury an attorney in her profession."  *Jones*, 2018 WL 3708494, at *9.  Those principles are:

> First, a plaintiff must allege that the statements referenced her character or conduct in that profession.  Second, statements may be defamatory if they are spoken in reference or relation to plaintiff's profession *and* were disparaging of her mental capacity and competence as a lawyer.  Finally, a false accusation of insanity, mental imbalance, or mental disease, is [defamation] per se under New York law.

*Id.* at *9 (cleaned up).  In *Jones*, the Court concluded that although the alleged defamatory statements did not reference the plaintiff's character or conduct as an attorney or relate to her conduct as an attorney, because the statements "are allegedly false accusations of insanity, mental imbalance, or mental disease," they qualified as defamatory per se.  *Id.*  Here, statements seven and ten do not mention Sweigert's alleged profession as a certified ethical hacker.  And while Goodman has made other statements suggesting Sweigert is mentally unstable, those statements are not at issue here.  Accordingly, the *Jones* case does not support Plaintiff's argument that statements seven and ten constitute defamation per se.

In short, Sweigert has not shown that statements seven and ten are defamatory per se.  Accordingly, Goodman's motion for summary judgment is granted as to those two statements.

### 6.  Statement Eight

Statement eight comes from a YouTube video.  In it, Goodman said that Sweigert "interfered with an officer of the court."  R&R at 17.  Judge Aaron concluded that the statement

---

harassment and Sweigert's soliciting professional services or seeking employment.  *See also* R&R at 25 (noting that the only connection between particular job opportunities as a certified ethical hacker and an allegedly defamatory statement concerned defamation claim five).  Without additional details about the certified ethical hackers code of ethics, the Court has no way of knowing whether false claims of harassment would implicate any particular provision within the purported code.

was not actionable because it is not defamatory per se and there is no evidence of special damages. *Id.* at 18. Here too Sweigert does not object to Judge Aaron's finding regarding special damages, and the Court finds no clear error in that conclusion. Sweigert argues instead that the statement is defamatory per se because the statement concerns Sweigert's purported interference in an Arizona criminal case and "[i]t is a crime to 'interfere with judicial proceedings' in Arizona." Objections ¶ 110 (citing Ariz. Rev. Stat. § 13-2810). Accordingly, Sweigert argues, Goodman's statement connotes criminality, *id.* ¶ 113, which is enough to constitute defamation per se.

Upon *de novo* review, the Court finds that the statement at issue does not "charge [Sweigert] with a serious crime," *see Liberman*, 80 N.Y.2d at 435, and the statement is not "reasonably susceptible to a connotation of criminality," *see Jewell*, 23 F. Supp. 2d at 399.[20] In *Jewell*, a case on which Sweigert relies heavily throughout his objections, Jewel, who had been a security guard at the 1996 Atlanta Olympics, sued the New York Post for allegedly defamatory statements that suggested he was responsible for a bombing that killed one person and injured over 100. *Jewell*, 23 F. Supp. 2d at 355, 399. Some of the alleged defamatory statements included: "(1) 'We're pretty confident it's him, but we're most concerned with making sure our case is airtight' . . . (2) 'No charges have been filed, but probers say it may just be a matter of time. "Obviously, his profile is right on," the source said.' . . . and (3) 'Another law-enforcement source said Jewell's arrest was imminent. "It's at least a matter of days," the source said. There's a lot of stuff to go through.' . . .'" *Id.* at 399. Although the Court recognized that none of the statements constituted "a direct statement that Jewell was guilty of the bombing," the

---

[20]     *See also Kesner* 515 F. Supp. 3d at 171 (determining whether a statement is defamation per se is a question of law for the court to resolve).

statements were "reasonably susceptible to a connotation of criminality" because "they suggest that Jewell was responsible for a 'major act of terrorism' in which at least one person was killed and hundreds of others were injured . . . ." *Id.*

Goodman's statement that Sweigert "interfered with an officer of the court" is quite different from accusing someone of engaging in domestic terrorism. It is not reasonable to assume that Goodman's audience would have understood him to be accusing Sweigert of violating Arizona's "interference with judicial proceedings" law. Goodman's statement is reasonably understood to accuse Sweigert of being a bothersome meddler who engaged in inappropriate behavior, not someone who engaged in serious criminal activity.[21] But even if a reasonable person would interpret the statement as accusing Sweigert of violating Arizona law, interference with judicial proceedings is a misdemeanor, not a serious crime. Accordingly, upon *de novo* review, Goodman's statement that Sweigert "interfered with an officer of the court" is not defamatory per se; Goodman's motion for summary judgment as to statement eight is granted.

### 7.   Statements Eleven and Twelve

Statements eleven and twelve were made in tweets posted on a Twitter account controlled by Goodman. R&R at 20. Those statements are: "David Sweigert is a dead beat dad" (statement eleven) and "Cyberstalker/deadbeat dad David Sweigert abandons his own son" (statement twelve). *Id.* Here too Judge Aaron found that the statements are not actionable because they are not defamatory per se and Sweigert has no evidence of special damages. *Id.* at 21. As with the

---

[21]   That conclusion is reinforced by Goodman's declaration, in which he states under oath that he made the allegedly defamatory statement after "Sweigert contacted the attorney in an effort to create discord between lawyer and client," which Goodman "considered inappropriate." Goodman Decl., Dkt. 278 ¶ 51.

other claims, Sweigert does not object to Judge Aaron's conclusion that he has no evidence of special damages.  The Court finds no clear error in that conclusion.

With respect to whether the statements are defamatory per se, Sweigert argues that "deadbeat dad" is "a term of art used by the U.S. Congress to describe felonious conduct." Objections ¶ 133; *see also id.* ¶¶ 134–143 (reviewing the federal crime associated with evading child support payments as well as instances of civil and criminal enforcement of the relevant statutes).  But here too, without minimizing the rightful opprobrium foisted on men who fail to support financially their minor children, the Court finds, upon *de novo* review, that the term "deadbeat dad" is not reasonably susceptible to a connotation of serious criminality.  As Sweigert himself points out, Merriam-Webster defines deadbeat dad as "disapproving, a father who owes money to his former wife to help raise their children but does not pay it."  *Id.* ¶ 139. The Court does not doubt that Goodman's tweets may have subjected Sweigert to "public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induce an evil opinion of one in the minds of right-thinking persons . . . ."  *Conti v. Doe*, 535 F. Supp. 3d 257, 267 (S.D.N.Y. 2021) (internal citations omitted).  But what they did not do is connote serious criminal behavior.  Accordingly, because Goodman's tweets are defamatory but not defamatory per se, and because Sweigert has no evidence of special damages, Goodman's motion for summary judgment as to statements eleven and twelve is granted.

In short, the Court denies Goodman's motion for summary judgment as to the defamation claims based on statements four and five, and grants the motion as to the claims based on the remaining ten statements.

### B. Statutory Right to Privacy Claim

Goodman also argues that he is entitled to summary judgment as to Sweigert's claim that

Goodman violated Sections 50 and 51 of the New York Civil Rights Law through his sale of a

coffee mug with Sweigert's image on it.  Mem. of Law, Dkt. 279 at 19–22.[22]  Judge Aaron

recommended that Goodman's motion be denied as to that claim because there are issues of fact

as to whether Goodman's use of Sweigert's image is protected expression under the relevant

caselaw.  R&R at 29–32.  Neither party objected to that recommendation.  Finding no clear error

in Judge Aaron's careful analysis, the Court adopts that recommendation and denies Goodman's

motion for summary judgment as to Sweigert's privacy claim with respect to the coffee mug.

### C. Goodman's Counterclaim and Additional Requests for Relief

Goodman also sought summary judgment as to his "counterclaim" against Sweigert.

Mem. of Law, Dkt. 279 at 23.  In April 2021, Judge Aaron granted Goodman leave to amend his

answer to assert a defense under New York's anti-SLAPP statute.[23]  *Sweigert v. Goodman*, No.

18-CV-8653, 2021 WL 1578097, at *3 (S.D.N.Y. Apr. 22, 2021).  Instead of doing what the order

permitted him to do, Goodman filed a counterclaim purportedly under the anti-SLAPP statute,

seeking "costs, compensatory damages, and punitive damages."  Am. Answer, Dkt. 273 ¶ 63; *see*

*also id.* ¶¶ 51–63.  In the R&R, Judge Aaron recommended denying the motion for summary

judgment on the counterclaim; as he had discussed in his April 2021 order, the special summary

judgment procedures outlined in New York's anti-SLAPP statute do not apply in federal court

---

[22]     As with the defamation claims, Goodman's motion for summary judgment did not address all of Sweigert's right to privacy claims.  *See, e.g.*, *Sweigert v. Goodman*, No. 18-CV-8653, 2021 WL 2678621 (S.D.N.Y. June 30, 2021) (addressing Sweigert's claims that Goodman's use of certain wrappers on his videos violated his statutory right to privacy).

[23]     SLAPP is an acronym for Strategic Lawsuit Against Public Participation and refers to lawsuits "brought primarily to chill the valid exercise of a defendant's right to free speech . . . ."  *Ernst v. Carrigan*, 814 F.3d 116, 117 (2d Cir. 2016).

because they conflict with Rule 56 of the Federal Rules of Civil Procedure. *See* R&R at 32. Additionally, Judge Aaron recommended that, to the extent Goodman's counterclaim does not invoke the statute's particular summary judgment procedures but is simply seeking costs and attorney's fees pursuant to the statute, the Court find that he has not demonstrated that he is entitled to that relief. *See id.* at 33 (reviewing the requirements of N.Y. Civ. Rights Law § 70-a(1)(a)-(c)). Neither party objected to Judge Aaron's recommendation that Goodman's motion for summary judgment on his counterclaim be denied. Finding no clear error in that recommendation, the Court adopts it and denies Goodman's motion for summary judgment on his counterclaim.

In his motion for summary judgment, Goodman also sought additional relief, including "a declaration that Plaintiff is a vexatious litigant and an injunction requiring Plaintiff to show good cause before bringing another *pro se* action in this Court." R&R at 33–34 (citing Mem. of Law, Dkt. 279 at 23; Reply, Dkt. 303 at 8–9). Judge Aaron recommends denying that request because Goodman "has not set forth a legal or factual basis" for it. *Id.* at 34. Neither party objected to that recommendation. Finding no clear error, the Court adopts the recommendation and denies Goodman's request for additional relief.

## II.      Sweigert's Rule 56(d) Motion

Sweigert filed a motion pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, seeking additional discovery on "actual malice," one of the elements of a defamation claim under New York law. Mem. of Law, Dkt. 281. Recent amendments to the anti-SLAPP statute, which have been found to apply retroactively, changed the standard that applies in assessing whether the defendant exhibited "actual malice." *See* R&R at 25–29, 27 n.9. "[G]iven the change in law applicable to Plaintiff's claims that occurred during the pendency of this lawsuit," Judge Aaron

recommended granting Sweigert additional discovery as to statements four and five.  *Id.* at 29.

Judge Aaron also recommended denying Sweigert's motion as to the remaining statements as to

which Goodman moved for summary judgment because Sweigert had "failed to adduce evidence

of other elements of [those] defamation claims."  *Id.*  Neither party objected to that

recommendation.  Finding no clear error, the Court grants Sweigert's motion for additional

discovery as to statements four and five and denies Sweigert's motion as to the remaining

statements as to which Goodman moved for summary judgment.

### III.        Sweigert's Remaining Motions

Sweigert also moved for sanctions pursuant to Rule 56(h) of the Federal Rules of Civil

Procedure.  *See* Mem. of Law, Dkt. 293.  Judge Aaron recommended denying that motion

because Sweigert's conclusory allegations that Goodman's declaration and 56.1 statement

contain obvious misrepresentations and are false and misleading do not meet the strict Rule 56(h)

standard.  *See* R&R at 34–35.  Neither party objected to that recommendation.  Finding no clear

error, the Court adopts the recommendation and denies Sweigert's motion for sanctions.

Sweigert also moved, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, to

strike allegedly scandalous material from Goodman's amended notice of motion for summary

judgment.  *See* Mem. of Law, Dkt. 304.  Rule 12(f) only permits courts to strike pleadings, and a

notice of motion is not a covered pleading.  *See* R&R at 35 (reviewing relevant authority).

Accordingly, Judge Aaron recommended denying Sweigert's motion.  Neither party objected to

that recommendation.  Finding no clear error, the Court adopts the recommendation and denies

Sweigert's motion to strike scandalous material in Goodman's amended notice of motion.

## ORDER TO SHOW CAUSE

Over a year ago, on December 28, 2020, Judge Aaron "admonishe[d] the Plaintiff to cease and desist from repeatedly filing amended documents, which serve to clog an ECF docket that already contains over 175 entries." R&R, Dkt. 181 at 3 n.6.[24]  In the Court's June 30, 2021 Opinion adopting Judge Aaron's December 2020 R&R, the Court instructed the parties to "refrain from filing excessively, from repeatedly amending their filings, and from filing responses to Court orders and the opposing party in a piecemeal fashion." *Sweigert v. Goodman*, No. 18-CV-8653, 2021 WL 2678621, at *1 n.2 (S.D.N.Y. June 30, 2021).  The Court forewarned the parties that "[f]ailure to adhere to this directive will result in sanctions." *Id.*

The parties have ignored both Judge Aaron's and the Undersigned's warnings.  The parties continue to file frivolous motions and requests.[25]  With respect to the motions at issue in this Opinion, Sweigert filed objections to Goodman's declaration in support of his motion for summary judgment (Dkt. 284) and then filed corrected objections a day later (Dkt. 286).[26] Sweigert then filed two different 56.1 statements, one with his counter 56.1 statement and another with his responses to Goodman's 56.1 statement (see Dkts. 294, 297), even though those two documents should have been filed consecutively, in one document.  Moreover, Sweigert then filed a corrected version of one of those documents three days later (Dkt. 299).  In fact, Sweigert filed a completely new set of "corrected" documents in response to the motion for summary judgment. *Compare* Dkts. 298–301 *with* Dkts. 294–297.  Additionally, Sweigert filed objections

---

[24]     In the year since that R&R was filed, the docket has ballooned to more than double the number of entries, to a whopping 352.

[25]     The Court considers Goodman's request for declaratory relief in his motion for summary judgment as well as Sweigert's Rule 56(h) and Rule 12(f) motions to be examples of frivolous motions.

[26]     The Court considers the entire filing, whether in its initial or corrected form, to be frivolous because any objections to a declaration filed in support of a motion for summary judgment should be integrated into the party's opposition to the motion for summary judgment.

to Judge Aaron's R&R (Dkt. 325), only to file a corrected version the following day (Dkt. 329). Goodman, although not as prolific as Sweigert in this regard, also clogs the docket with amended filings.  *Compare* Dkt. 302 (amended notice of motion) *with* Dkt. 277 (original notice of motion). Such behavior has to stop.

"[A] court's power to restrict the litigation of abusive and vexatious litigants is an ancient one," codified at 28 U.S.C. § 1651(a).  *Komatsu v. City of New York*, No. 20-CV-7502, 2020 WL 7251384, at *1 (S.D.N.Y. Nov. 17, 2020) (citing *Polur v. Raffe*, 912 F.2d 52, 57 (2d Cir. 1990); *see also In re Hartford Textile Corp.*, 681 F.2d 895, 897 (2d Cir. 1982)); *Truong v. Hung Thi Nguyen*, 503 F. App'x 34, 35 (2d Cir. 2012).  A district court may impose filing restrictions if confronted with extraordinary circumstances including a demonstrated history by the party of vexatious or frivolous filings.  *See In re Neroni*, 639 F. App'x 9, 10–13 (2d Cir. 2015); *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 39 (2d Cir. 1995).  District courts may impose "restrictions on future access to the judicial system," *Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005), including prohibitions on obtaining *in forma pauperis* status, limitations on the filing of designated categories of cases, and the institution of a "leave of court" requirement with respect to future filings.  *See In re Martin-Trigona*, 9 F.3d 226, 229 (2d Cir. 1993) (collecting cases that discuss each type of sanction).  And while "*pro se* litigants, in many cases, are entitled to special solicitude, [courts have] not altogether 'excuse[d] frivolous or vexatious filings by *pro se* litigants.'"  *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 715 (2d Cir. 2019) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)).

But a district court may not enjoin parties from submitting frivolous or vexatious filings without providing express notice and an opportunity to be heard.  *See Iwachiw*, 396 F.3d at 529; *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999); *Bd. of Managers of*

*2900 Ocean Ave. Condo. v. Bronkovic*, 83 F.3d 44, 45 (2d Cir. 1996).  Moreover, "[b]ecause of the potency of a court's inherent power, courts must take pains to exercise restraint and discretion when wielding it," *Truong*, 503 F. App'x at 35, and must impose sanctions that are "no broader than necessary," *In re Neroni*, 639 F. App'x at 13.

With those principles in mind and given both parties' incessant filings of frivolous and excessive materials in this case, Sweigert and Goodman must each show cause in writing to Judge Aaron, by no later than **Friday, February 4, 2022** and in a filing not to exceed 10 double-spaced pages, why the Court should not enter an order requiring the parties to seek leave of Judge Aaron before making <u>any</u> filings in this case that have not previously been ordered by the Undersigned or Judge Aaron, and requiring such requests for leave to include: (a) a one-page motion titled "Motion for Leave to File" that explains why the party should be permitted to file the letter or motion; and (b) a one-page statement, made under the penalty of perjury, stating (i) that the filing is not unnecessarily duplicative or piecemeal; (ii) that the submission is not frivolous or made in bad faith or for any improper purpose, and (iii) that the filing complies with this Court's orders, the Federal Rules of Civil Procedure, and this Court's Local Rules.  Were the Court to impose such sanctions, any filing by a party that does not comply with the above filing restrictions would not be considered by the Court, and Judge Aaron would direct the Clerk of Court to strike the infringing filing from the docket.

## CONCLUSION

For the reasons discussed above, the Court adopts Judge Aaron's R&R in full. Goodman's motion for partial summary judgment (Dkts. 277, 304) is GRANTED in part and DENIED in part.  Sweigert's motion for additional discovery pursuant to Rule 56(d) (Dkt. 281) is GRANTED as to statements four and five and DENIED as to the remaining statements as to

which Goodman moved for summary judgment.  Sweigert's motions pursuant to Rule 56(h) and 12(f) (Dkts. 293, 304) are DENIED.

     The Clerk of Court is respectfully directed to close the open motions at docket entries 277, 281, 293, 302, and 304.  The Clerk is further directed to mail a copy of this Order to the *pro se* Defendant and to note the mailing on the docket.

**SO ORDERED.**

**Date:  January 19, 2022**
**        New York, New York**

                                        **VALERIE CAPRONI**
                                **United States District Judge**