UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **D. GEORGE SWEIGERT**<br>  **Plaintiff**<br><br>vs.<br><br>**JASON GOODMAN**<br>  **Defendant** | **CASE NO. 1:18-CV-08653-VEC-SDA**<br><br>**JUDGE VALERIE E. CAPRONI**<br><br>**MAGISTRATE STEWART D. AARON** |

<u>NOTICE OF MOTION:</u>

<u>PLAINTIFF'S FED. R. CIV. PROC. RULE 12(C)</u>

<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>

The undersigned certifies under the penalty of perjury, that this filing is not unnecessarily duplicative or piecemeal; that the submission is not frivolous or made in bad faith or for any improper purpose, and that the filing complies with this Court's orders, the Federal Rules of Civil Procedure, and this Court's Local Rules.

Respectfully submitted and
sworn on this twenty-eight
day of Feb. 2022
(2/28/2022).

**D.·G.·SWEIGERT,·C/O**
**AMERICA'S·RV·MAILBOX,·PMB·13339**
**514·Americas·Way,·Box·Elder,·SD·57719**
**Spoliation-notice@mailbox.org**

On Feb. 28, 2021, a copy of the above was sent to Defendant at truth@crowdsourcethetruth.org

## TABLE OF CONTENTS

**BACKGROUND** ................................................................................................................ 5

**PROCEDURAL HISTORY** .............................................................................................. 6

**SOURCES OF CLARIFICATION – REQUEST FOR JUDICIAL NOTICE** ....................... 6

**FACTUAL ALLEGATIONS** ........................................................................................... 9

**LAW AND ARGUMENT** ............................................................................................... 23

**CONCLUSION** ............................................................................................................... 28

**EXHIBIT ONE  -  DOCKET ENTRIES** .................................................................. 30

## TABLE OF AUTHORITIES

**Cases**

*Allen v. WestPoint-Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir. 1991)................................................ 6

*Arrington v. N.Y. Times Co.,* 55 N.Y.2d 433 (1982) ...................................................................... 7

*Aspilaire v. Wyeth Pharmaceuticals, Inc.,* 612 F. Supp. 2d 289 (S.D.N.Y. 2009)....................... 27

*Binns v. Vitagraph Co. of Am.,* 210 N.Y. 51, 53 (1913 ................................................................... 7

*Bond v. Sterling, Inc.,* 997 F. Supp. 306 (N.D.N.Y. 1998)............................................................ 22

*Davis v. High Soc. Mag., 90* AD 2d 374 – NY: Appellate Div., 2nd Dept. 1982 ........................ 24

*Factors Etc., Inc. v. Pro Arts, Inc.* 579 F.2d 215 (2d Cir. 1978). ................................................. 24

*Finger v. Omni Publ'ns Int'l, Ltd.,* 77 N.Y.2d 138 (1990)............................................................. 7

*Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir. 1999) ........................................................ 6

*Hirsch v. Complex Media, Inc*., No. 18-CV-5488, 2018 WL 6985227, at *6 (S.D.N.Y. Dec. 10,
    2018)........................................................................................................................................... 9

*Juster Associates v. City of Rutland*, Vermont, 901 F.2d 266, 269 (*2d Cir.* 1990) ...................... 22

*Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999).................................... 6

*Metzger v. Dell Pub. Co., 207 Misc.* 182 – NY: Supreme Court, New York 1955...................... 25

*Murray v. N.Y. Mag. Co.*, 27 N.Y.2d 406 (1971) .......................................................................... 7

*Murray v. New York Mag. Co., 27 NY 2d 406* – NY: Court of Appeals 1971.............................. 25

*Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir. 1997). ..................................................... 27

*Spahn v. Julian Messner, Inc.*, 18 N.Y.2d 324 .............................................................................. 7

*Syntex Corp. Sec. Litig.,* 95 F.3d 922, 926 (9th Cir. 1996)........................................................... 27

*Thompson v. Close-Up, Inc.,* 277 AD 848 – NY: Appellate Div., 1st Dept. 1950 ....................... 25

*Titan Sports, Inc. v. Comics World Corp.*, 870 F.2d 85, 87 (2d Cir. 1989)...................................... 7

Winegard v. Barnhart, No. 02-CV-6231 CJS, 2006 U.S. Dist. LEXIS. 31973, at *27-
   28, 2006 WL 1455479 .................................................................................................................. 26

**Statutes**

Civil Rights Law §§ 50 or 51......................................................................................................... 25

N.Y. Civ. Rights Law § 51 .............................................................................................................. 7

NYCRL Sec. 50 and 51 ............................................................................................................. 5, 22

**Rules**

Fed. R. Civ. Proc. Rule 12(c)........................................................................................................... 5

Fed.R.Civ.P. 12(c) ......................................................................................................................... 22

Rule 12(b)(6) .................................................................................................................................. 21

Rule 12(c) ....................................................................................................................................... 21

**Treatises**

5 Charles A. Wright Arthur R. Miller, Federal Practice and Procedure § 1368, at 690 (1969) ... 22

5C Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure—Civil § 1367, at
   205-06 (3d ed. 2004) .................................................................................................................. 22

## RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS
## MEMORANDUM OF LAW

The non-attorney Plaintiff in this case, D. George Sweigert, now moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and has submitted additional written materials attached as Exhibits that they Court may took judicial notice of.

## BACKGROUND

To conserve judicial resources the Plaintiff now seeks judgment on the pleadings which will indicate that the Defendant has incurred liability under New York's Civil Rights Law (NYCRL) Section 50 and 51. Fed. R. Civ. Proc. Rule 12(c) is appropriate as the Defendant has admitted to this liability and has provided no explanation or affirmative defense as to any newsworthiness exception to NYCRL Sec. 50 and 51.

Therefore, with this motion the Plaintiff surrenders all his claims with regards to defamation and defamation *per se* in favor of adjudication addressed by NYCRL Sec. 50 and 51, commonly referred to as the IRAN-CONTA coffee mug and tote bag issues.

Rule 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The pleadings close after the following documents are filed: a complaint, an answer to the complaint, any counterclaims and answers, third-party complaints and answers, and any reply to an answer, if ordered by the court.

## PROCEDURAL HISTORY

The following are the operative pleadings to be considered for this Rule 12(c) motion.  See EXHIBIT ONE for docket listing.

PLAINTIFF'S VERIFIED SECOND AMENDED COMPLAINT (**SAC**) Document **88** Filed 09/10/19.  MAGISTRATE'S MEMO ENDORSEMENT, Document **102** Filed 11/14/19 Page 3 of 4 stated "The deadline to respond to the Second Amended Complaint is extended to Monday, November 18, 2019."  DEFENDANT'S COUNTERCLAIM VERIFIED COMPLAINT, Document **122** Filed 12/05/19 Page 1 of 144.  MAGISTRATE'S ORDER, Document **180** Filed 12/28/20, stated: "Defendant Goodman shall file an answer to paragraphs 1 through 28, 69 through 110, 123, and 125 through 133 of Plaintiff's Second Amended Complaint that was filed at ECF No. **88**, as well as paragraphs 1, 39 through 45 and 47 through 50 of Plaintiff's Verified Supplemental Complaint that was filed at ECF No. **150**."  [emphasis added] DEFENDANT'S ANSWER TO SUPPLIMENTED [sic] SECOND AMENDED COMPLAINT Document **189** Filed 01/28/21.

## SOURCES OF CLARIFICATION – REQUEST FOR JUDICIAL NOTICE

The Court must "confine its consideration `to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (*2d Cir*. 1999) [emphasis added] (quoting *Allen v. WestPoint-Pepperell, Inc.,* 945 F.2d 40, 44 (*2d Cir*. 1991)); *Hayden v. County of Nassau,* 180 F.3d 42, 54 (*2d Cir*. 1999).

The Court may take judicial notice of the following documents.

PRESIDING JUDGE'S OPINION AND ORDER, Document 292 Filed 06/30/21 Page 14 of 16, states in relevant part:

> "Pursuant to New York law, false and damaging use of a plaintiff's likeness (here, the wrappers) to illustrate newsworthy content (here, allegedly the video podcasts) does not fall under the newsworthy exception when there is no relationship between the likeness and the associated content. See Messenger, 94 N.Y.2d at 446 (citing *Finger v. Omni Publ'ns Int'l, Ltd.,* 77 N.Y.2d 138 (1990); *Arrington v. N.Y. Times Co.,* 55 N.Y.2d 433 (1982); *Murray v. N.Y. Mag. Co.*, 27 N.Y.2d 406 (1971)). Pursuant to a separate line of cases, "substantially fictional works" that are "nothing more than attempts to trade on the persona" and are "infected with fiction, dramatization or embellishment" also do not fall under the newsworthy privilege. See Messenger, 94 N.Y.2d at 446 (citing *Spahn v. Julian Messner, Inc.*, 18 N.Y.2d 324, vacated, 387 U.S. 239, adhered to on remand, 21 N.Y.2d 124 (1967); *Binns v. Vitagraph Co. of Am.,* 210 N.Y. 51, 53 (1913))" [emphasis added]

MAGISTRATE'S REPORT AND RECOMMENDATION, Document 321 Filed 10/29/21, Page 29 of 36, quoted in relevant part:

> "Defendant's Motion Should Be Denied With Respect To Plaintiff's New York Civil Rights Law Claims "To prevail on a claim pursuant to N.Y. Civil Rights Law §§ 50-51, a plaintiff must demonstrate that 'defendant made use, within the state of New York, of plaintiff's name, portrait, or picture for advertising purposes or for the purposes of trade' without plaintiff's written consent.'" Sweigert v. Goodman, No. 18-CV-08653 (VEC), 2021 WL 2678621, at *5 (S.D.N.Y. June 30, 2021) (quoting *Titan Sports, Inc. v. Comics World Corp.*, 870 F.2d 85, 87 (2d Cir. 1989)); see also N.Y. Civ. Rights Law § 51. Here, the only contested issue is whether Defendant used Plaintiff's name and picture for advertising or trade purposes. See Sweigert, 2021 WL 2678621, at *5.

However, <u>Defendant does not explain what that context was or assert sufficient facts for the Court to determine, as a matter of law, that the image was related to an actual event or concerned political happenings,</u> social trends or any subject of public interest.11 Sweigert, 2021 WL 2678621, at *7. Defendant does not explain, for example, whether the image first was published in conjunction with an article or internet post or how the image relates at all to Plaintiff's claim "that he's part of a secret FBI counterintelligence program." [emphasis added]

And at Page 12

"Defendant refers to the following statements as Statement 4: You see, I think David is engaged in a crime. I have got the evidence for it. Could indicate involvement in a criminal operation of IRAN-CONTRA. Dave needs to be prosecuted. 18 USC [§] 1001. I am going to make it my business to find a prosecutor to charge David Sweigert and his accomplices with that crime. Because I will see to it that that man is put in jail."

PRESIDING JUDGE'S OPINION AND ORDER TO SHOW CAUSE, Document 358 Filed 01/19/22, Page 17 of 23, quoted in relevant part:

"B. Statutory Right to Privacy Claim.  Goodman also argues that he is entitled to summary judgment as to Sweigert's claim that Goodman violated Sections 50 and 51 of the New York Civil Rights Law through his sale of a coffee mug with Sweigert's image on it. Mem. of Law, Dkt. 279 at 19–22.22 Judge Aaron recommended that Goodman's motion be denied as to that claim because there are issues of fact as to whether Goodman's use of Sweigert's image is protected expression under the relevant caselaw. R&R at 29–32. Neither party objected to that recommendation. Finding no clear error in Judge Aaron's careful analysis, the Court adopts that recommendation and denies Goodman's motion for summary judgment as to Sweigert's privacy claim with respect to the coffee mug."

And

"Footnote 13.  Statement four is from a YouTube video during which Goodman said: "You see, I think David is engaged in a crime. I have got the evidence for it. Could

8

indicate involvement in a criminal operation of IRAN-CONTRA. Dave needs to be prosecuted. 18 USC [§] 1001. I am going to make it my business to find a prosecutor to charge David Sweigert and his accomplices with that crime. Because I will see to it that that man is put in jail." R&R at 12."

THE NATIONAL ACADEMY OF TELEVISION ARTS AND SCIENCES, INC. and ACADEMY OF TELEVISION ARTS & SCIENCES, vs. MULTIMEDIA SYSTEM DESIGN, INC. d/b/a "CROWDSOURCE THE TRUTH", 20-CV-7269 (VEC), OPINION AND ORDER, Document 98 Filed 07/30/21, quoted in relevant part:

"Commercial Use.  In evaluating the purpose and character of the use, the Court must also consider "whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). The more transformative the new work, however, "the less will be the significance of other factors, like commercialism." Campbell, 510 U.S. at 579; Cariou, 714 F.3d at 708. Defendant argues that its use of the Emmy Statuette is not commercial because Mr. Goodman derives no income from his YouTube broadcasts. Def. Mem. of Law, Dkt. 25 at 11. While Defendant may not derive direct income from its YouTube content, Defendant's Video included links to Patreon and SubscribeStar, through which consumers pay for Defendant's content.8 Accordingly, Plaintiffs have adequately alleged that the Crony Graphic was used commercially. See *Hirsch v. Complex Media, Inc*., No. 18-CV-5488, 2018 WL 6985227, at *6 (S.D.N.Y. Dec. 10, 2018) (finding that defendant's copying "for commercial purposes . . . adjacent to advertisements" gave rise to "inferences of commercial use and bad faith")."

## FACTUAL ALLEGATIONS

In Document **189** Filed 01/28/21 Page 20 of 86 Defendant responds to the allegations of the

**SAC**, Document 88 Filed 09/10/19 Page 53 of 74:

91.   Def Goodman has used the likeness of the undersigned to sell coffee cups, tote bags, T-shirts, etc. on the merchandising site "RedBubble.Com". There is no news-worthiness, editorial rationale or any other journalistic endeavor that would justify this type of use.

"91. Defendant admits to having incorporated political cartoons into items that were offered for sale on Redbubble.com. The newsworthiness is determined by the content of the broadcasts and the photorealistic digitally created political cartoons are elements of the news broadcasts. The political cartoons are a fair use of Plaintiff's likeness pursuant to the newsworthiness exception. The transformative nature of the use of portions of Plaintiff's likeness is allowed and the newly resultant image is the intellectual property of the Defendant who is free to commercialize it as he sees fit. It is worth mentioning, on or about November 28, 2018 possibly due to his dissatisfaction with this court's ability to resolve this dispute in his favor, Sweigert took the extrajudicial step of misrepresenting facts in a complaint made with Redbubble.com. The artwork in question was removed by Redbubble.com perhaps due to their desire to avoid entanglement in legal action as threatened by Sweigert. Despite the unresolved legal dispute, Goodman sent a counterclaim to Redbubble.com (EXHIBIT E) which was denied. Sweigert has demonstrated a pattern and practice of seeking extrajudicial relief for the precise matters at controversy in this legal action. In doing this, Plaintiff brazenly defies this honorable court's authority to resolve this dispute in the interest of justice."

93.   *New York Civil Rights Law § 51. Action for Injunction and for Damages* provides for a private right of action against such abuses of portraits, photographs and images on non-related parties to news events. Section 51 provides a claim for an injunction and damages in favor of " [a]ny person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without . . . written consent . . . .". The undersigned has never given written consent to Jason Goodman and/or his companies and businesses (21st Century 3D, MDSI, Inc., etc.).

10

"93. Defendant admits that Sweigert has not given written permission to use his likeness, but this is irrelevant pursuant to the broad newsworthiness exception in NYCRL § 51."

95.   Pursuant to Section 51 the undersigned claims and alleges that Def Goodman, himself or via his companies and businesses, (1) used Plaintiff's name, portrait, picture and voice (2) for advertising and trade purposes, (3) without written consent.  Examples are shown below.



**Plaintiff depicted on CSTT RedBubble coffee cup**

(https://www.redbubble.com/people/csthetruth/works/29102359-deep-state-dunces?p=mug)



**CSTT tote bag with Plaintiff's likeness (far left) advertised on RedBubble.com**

55

"95. Defendant admits that the newsworthiness of Plaintiff's actions allows the use of his name and likeness in broadcasts about those actions without his written consent. Artwork or other content created for news broadcasts including images and commentary pertaining to the broadcasts are the intellectual property of the Defendant to do with as he chooses."

For clarity the photo in question is seen below.





The Court may take judicial notice of the New York Times article embedded in the coffee mug, tote bag and T-shirt image (see below):



**The New York Times**

THE PARDONS

## THE PARDONS; BUSH PARDONS 6 IN IRAN AFFAIR, ABORTING A WEINBERGER TRIAL; PROSECUTOR ASSAILS 'COVER-UP'

By David Johnston
Dec. 25, 1992

"Six years after the arms-for-hostages scandal began to cast a shadow that would darken two Administrations, President Bush today granted full pardons to six former officials in Ronald Reagan's Administration, including former Defense Secretary Caspar W. Weinberger.

Mr. Weinberger was scheduled to stand trial on Jan. 5 on charges that he lied to Congress about his knowledge of the arms sales to Iran and efforts by other countries to help underwrite the Nicaraguan rebels, a case that was expected to focus on Mr. Weinberger's private notes that contain references to Mr. Bush's endorsement of the secret shipments to Iran.

In one remaining facet of the inquiry, the independent prosecutor, Lawrence E. Walsh, plans to review a 1986 campaign diary kept by Mr. Bush. Mr. Walsh has characterized the President's failure to turn over the diary until now as misconduct. Decapitated Walsh Efforts

But in a single stroke, Mr. Bush swept away one conviction, three guilty pleas and two pending cases, virtually decapitating what was left of Mr. Walsh's effort, which began in

1986. Mr. Bush's decision was announced by the White House in a printed statement after the President left for Camp David, where he will spend the Christmas holiday."

https://www.nytimes.com/1992/12/25/us/pardons-bush-pardons-6-iran-affair-aborting-weinberger-trial-prosecutor-assails.html

Also presented:



The above photograph is a cropped version of Gary Webb, a Mercury News (San Jose, California) reporter from 1997 (see below).

# Gary Webb Resigns from the San Jose Mercury News

STORY   DECEMBER 16, 1997   ◄» Listen to Full Show





**Related**

WEB EXCLUSIVE OCT 06, 2014

Inside the Dark Alliance: Gary Webb on the CL_
the Contras, and the Crack Cocaine Explosion

https://www.democracynow.org/1997/12/16/gary_webb_resigns_from_the_san

Overlaying the Gary Webb photo from the 1997 article (above) with the Defendant's "Oliver North, Sandinista Plane Crash" rendition can be seen below.



The Court may take judicial notice of the Mercury News article written by Gary Webb in 1996.

# America's 'crack' plague has roots in Nicaragua war

*Colombia-San Francisco Bay Area drug pipeline helped finance CIA-backed Contras*

**Published: Aug. 18, 1996**

**BY GARY WEBB**
Mercury News Staff Writer

**FOR THE BETTER PART** of a decade, a San Francisco Bay Area drug ring sold tons of cocaine to the Crips and Bloods street gangs of Los Angeles and funneled millions in drug profits to a Latin American guerrilla army run by the U.S. Central Intelligence Agency, a Mercury News investigation has found.

**America's 'crack' plague has roots in Nicaragua war Colombia-San Francisco Bay Area drug pipeline helped finance CIA-backed Contras**

**Published: Aug. 18, 1996 BY GARY WEBB Mercury News Staff Writer**

FOR THE BETTER PART of a decade, a San Francisco Bay Area drug ring sold tons of cocaine to the Crips and Bloods street gangs of Los Angeles and funneled millions in drug profits to a Latin American guerrilla army run by the U.S. Central Intelligence Agency, a Mercury News investigation has found.

This drug network opened the first pipeline between Colombia's cocaine cartels and the black neighborhoods of Los Angeles, a city now known as the "crack" capital of the world. The cocaine that flooded in helped spark a crack explosion in urban America � and provided the cash and connections needed for L.A.'s gangs to buy automatic weapons.

It is one of the most bizarre alliances in modern history: the union of a U.S.-backed army attempting to overthrow a revolutionary socialist government and the Uzi-toting "gangstas" of Compton and South-Central Los Angeles.

Testimony links U.S. to drugs-guns trade Dealers got their 'own little arsenal' The army's financiers -- who met with CIA agents both before and during the time they were selling the drugs in L.A. -- delivered cut-rate cocaine to the gangs through a young South-Central crack dealer named Ricky Donnell Ross.

Unaware of his suppliers' military and political connections, "Freeway Rick" -- a dope dealer of mythic proportions in the L.A. drug world -- turned the cocaine powder into crack and wholesaled it to gangs across the country.

https://ia801005.us.archive.org/22/items/dark_alliance_original_series-gary_webb_cia_cocaine/Gary-Webb_Dark-Alliance/www.narconews.com/darkalliance/drugs/day1main.html.pdf

Shown below is the fictionalized, dramatized, and embellished police placard which infects this so-called "Oliver North, Sandinista Plane Crash" rendition.  The "POLICIA DE SANDANISTAS" police placard is hung around the Plaintiff's neck, as if in a mug shot.  The date of the fictionalized police placard is October 6, 1983.

The use of the fictionalized police placard is the Defendant's misleading and fraudulent attempt to place the Plaintiff in the country of Nicaragua on the day of a fixed-wing plane crash.  None of these circumstances involve the Plaintiff.





The Court may take judicial notice of the following New York Times article:

A plane crash in Managua , in which the pilot, Agustin M. Roman, was killed, has shed
light on **covert military operations** in Central America. He was a former general
manager of the Nicaraguan national airline and then chief of operations for the
Nicaraguan Air Force who turned against the Sandinistas. (A1:4-6.) [emphasis added]
https://www.nytimes.com/1983/10/06/nyregion/news-summary-thursday-october-6-
1983.html

It is instructive to note, and the Court should take judicial notice, of a "letter to the editor"
written by "David Sweigert, WB9VKO, Beeville, Texas" in September 1983, to "73" amateur
radio magazine.

```
Role this equipment potentially has in an emergency.


Wayne, I believe your editorials will show less frustration if you forget ab
out the oid cronies standing in the way of progress. I do not drink It is wi
se to repeatedly exhort this older group to ,L get with it." My experience h
as shown me that it is fruitless to attempt to budge this seg- ment of amate
urs.

I think it is more critical to prevent en- thusiastic new hams from becoming
lack- luster, disinterested, out-of-date ama- teurs. I have seen emergency c
ommunica- tions provide that stimulus to many hams.

Whether it Is a training drill on a weekend or providing communications for
a walk-a- thon or air show, these activities reaHy en- courage direct ham in
volvement in which the amateur can really see his or her con- tribution to t
he com m unity. At the same time, the ham receives the thanks of local resid
ents.

I trust I have not overlooked any of your efforts in this area, Wayne; if I
have, please forgive my oversight. I thank you for publishing a great amateu
r magazine.


David Sweigert WB9VKO Beeville TX
```

https://archive.org/stream/73-magazine-1983-09/09_September_1983_djvu.txt



https://archive.org/details/73-magazine-1983-09/mode/2up?view=theater

Also depicted is a booking placard for "OLIVER L NORTH" (see below).



The Court may take judicial notice of the following Wikipedia article:

> **In late 1985,** Lieutenant Colonel **Oliver North** of the National Security
> Council diverted a portion of the proceeds from the Iranian weapon sales to fund
> the Contras, a group of **anti-Sandinista** rebels, in their insurgency against
> the socialist government of **Nicaragua.**
>
> https://en.wikipedia.org/wiki/Iran%E2%80%93Contra_affair

It is instructive to note the factual allegations in the **SAC,** Document **88** Filed 09/10/19, Page 14 of 74, on this point (see below):

27.    To add insult to injury on more than two dozen occasions Goodman has used the portrait, picture, likeness and photograph of the Plaintiff for commercial purposes in advertising and trade without the undersigned's permission.  There is no newsworthiness to the use of these images.



**Example of image accusing undersigned of involvement in the IRAN-CONTRA affair.**

28.    In the image above, Goodman attempts to mentally trigger Plaintiff with imagery of an aircraft crash.  The undersigned had survived a forced landing in a U.S. Army helicopter in the capitol of Nicaragua as part of peacekeeper duties with the Organization of American States

14

(OAS) in 1981.  Plaintiff is an honorable discharged veteran of the U.S. Air Force and was assigned to the 1978 Communications Group, U.S.A.F., Howard AFB, Republic of Panama from 1980 to 1982 (departing January 1982).  Plaintiff was held by Sandinista security forces along with fellow crew-members until released after U.S. State Department intervention by Secretary of State Edmund Muskie.  At the time Muskie publicly stated that leftist guerrillas in El Salvador were receiving Cuban arms through Nicaragua.  The OAS mission had nothing to do with such activities; but, was focused on a border dispute between El Salvador and Honduras.  Plaintiff was a passenger on the helicopter that was being ferried to Honduras to support that mission as a ground radio equipment repairman to maintain air-to-ground radios.

The Court should recall page 12 of Dkt. 321 and footnote 13 of Dkt. 358, which state:

> "Defendant refers to the following statements as Statement 4: You see, I think David is engaged in a crime. I have got the evidence for it. Could indicate involvement in a criminal operation of IRAN-CONTRA. Dave needs to be prosecuted. 18 USC [§] 1001. I am going to make it my business to find a prosecutor to charge David Sweigert and his accomplices with that crime. Because I will see to it that that man is put in jail."
> [emphasis added]

## LAW AND ARGUMENT

### *Background on Rule 12(c)*

Motions for judgment on the pleadings are governed by the same standard as a motion to dismiss for failure to state a claim under Fed.R.Civ.P. Rule 12(b)(6). The court's review of such motions is strictly limited to the contents of the parties' pleadings and any documents attached thereto. Effectively, Rule 12(c) provides the benefits of the entry of judgment while strictly examining the sufficiency of the pleadings.

"A party is entitled to judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) if she has established "`that no material issue of fact remains to be resolved and that [she] is entitled to judgment as a matter of law.'" *Juster Associates v. City of Rutland*, Vermont, 901 F.2d 266, 269 (*2d Cir*. 1990) (quoting 5 Charles A. Wright Arthur R. Miller, Federal Practice and Procedure § 1368, at 690 (1969)). *Bond v. Sterling, Inc.,* 997 F. Supp. 306 (N.D.N.Y. 1998).

"Rule 12(c) is codification of common law demurrer where the substantive merits of a claim or defense is resolved on the pleadings, see 5C Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure—Civil § 1367, at 205-06 (3d ed. 2004). This rule is used when the material facts are not in dispute and judgment can be entered on the merits by focusing on the pleadings, exhibits thereto, matters incorporated by reference, and facts taken by the Court on judicial notice, see id. at 206-07. A Rule 12(c) motion "has utility when all material allegations of fact are *admitted* or not controverted in the pleadings and only questions of law remain to be decided by the district court," id. at 208." *DiJoseph v. Erie County*, 18-CV-919S (W.D.N.Y. Jul. 21, 2020).

### *News story and privacy considerations*

Under the aegis of NYCRL Sec. 50 and 51 no disputed issues as to facts remain with regards to the so-called "Oliver North, Sandinista Plane Crash" graphic featured on coffee mugs, tote bags and T-shirts.  There is zero connection between the Plaintiff and the events portrayed in the "Oliver North, Sandinista Plane Crash" tote bag photo.

The "newsworthiness" that the Defendant relies upon are newspaper articles from **1992** and **1996** that address drug smuggling operations by the Central Intelligence Agency associated with the IRAN-CONTRA scandal.  The entire tone of the "Oliver North, Sandinista Plane Crash" tote bag photo attempts to implicate the Plaintiff as a possible prisoner of the Sandinista government (see placard around Plaintiff's neck) as a result of an isolated plane crash on October 6, 1983, which occurred over 18 months after the Plaintiff, as stated in the **SAC, Dkt. 88,** left the Republic of Panama (January 1982) as part of a military re-assignment.

"Pursuant to New York law, false and damaging use of a plaintiff's likeness (here, the wrappers) to illustrate newsworthy content (here, allegedly the video podcasts) does not fall under the newsworthy exception when there is no relationship between the likeness and the associated content", see PRESIDING JUDGE'S OPINION AND ORDER, Document 292 Filed 06/30/21, Page 14 of 16 [emphasis added].

The "Oliver North, Sandinista Plane Crash" tote bag photo links five isolated IRAN-CONTRA affair events to the Plaintiff – which the Plaintiff had nothing to do with.

Five isolated events are associated, unjustly, with the Defendant's tote bag photo of the Plaintiff, (1) a Sandinista police booking placard with the date **October 6, 1983** around the Plaintiff's neck, (2) the photograph of a crashed plane wreckage to spotlight an article of **October 6, 1983** concerning "covert military operations" (not necessarily related to so-called "drug smuggling")

exposed by a crashed plan in Nicaragua, (3) the **1992** newspaper headline about IRAN-CONTRA personages (Casper Weinberger) escaping criminal prosecution, (4) the **1996** newspaper headline concerning an investigation by reporter Gary Webb into C.I.A. involvement in drug smuggling and (5) a photograph of the principle personage associated with IRAN-CONTRA, Lt. Col. Oliver North, U.S.M.C., ret.

There is not one shred of connection to justify the Plaintiff's likeness with this "Oliver North, Sandinista Plane Crash" rendition, sold for commercial purposes on coffee mugs, tote bags and T-shirts,.

"The State of New York provides a statutory right for the protection of a living person from commercial exploitation of his name and picture by others without his written consent. This statutory right, also called a "right of privacy," is predicated upon the classic right of privacy's theoretical basis which is to prevent injury to feelings. *Price v. Hal Roach Studios, Inc.,* 400 F.Supp. 836, 843 (S.D.N.Y. 1975); *Lombardo v. Doyle, Dane Bernbach,* 58 A.D.2d 620, 396 N.Y.S.2d 661 (1977). In *Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc.,* 202 F.2d 866 (2d Cir.), cert. denied, 346 U.S. 816, 74 S.Ct. 26, 98 L.Ed. 343 (1953)," *Factors Etc., Inc. v. Pro Arts, Inc.* 579 F.2d 215 (2d Cir. 1978).

### *Commercial exploitation of collateral items*

Use for "advertising purposes" is defined as solicitation for patronage, intended to promote the sale of some collateral commodity or service (*Davis v. High Soc. Mag.*, 90 AD 2d 374 – NY: Appellate Div., 2nd Dept. 1982).

### *No real relationship*

In order to be able to claim a newsworthiness or public interest exception, the person's name, picture, portrait or voice must bear a real relationship to the subject matter of the article, book, television segment, movie or scene. This is because, by definition, if a person's image has no real relationship to the work then its only purpose must be for the sale of the work.

For example, in *Thompson v. Close-Up, Inc*., 277 AD 848 – NY: Appellate Div., 1st Dept. 1950, a publication of a photograph did not fall within exceptions to Civil Rights Law §§ 50 or 51 where plaintiffs had no connection to dope peddling, which was the subject of defendant's article.

Compare *Murray v. New York Mag. Co.,* 27 NY 2d 406 – NY: Court of Appeals 1971, where a photograph of plaintiff dressed in Irish garb while watching St. Patrick's Day parade spotlighted a newsworthy event and bore a real relationship to the article about contemporary attitudes of Irish-Americans in New York City.

There must be a legitimate connection between the name, portrait, picture or voice and the publication.

For example, a person may not be singled out and unduly featured in a movie merely because she happens to be on the scene when there's filming going on. Thus, in *Blumenthal v. Picture Classics, Inc.*, 235 App. Div. 570 – 1932, court granted an injunction where defendant produced and distributed a short film about historical points, views and life in various parts of New York City, showing a six second shot of a close-up full-sized picture of the plaintiff selling bread and rolls to passersby on a street corner, without plaintiff's consent. Although the film itself was not

inherently a work of fiction, it was a violation to use plaintiff's picture in the movie without consent, even though her trade brings her into public view.

Similarly, in *Metzger v. Dell Pub. Co.*, 207 Misc. 182 – NY: Supreme Court, New York 1955, plaintiffs succeeded on an allegation of unauthorized use of their portrait for the purposes of trade, where they were photographed by defendant's while standing on the street in Brooklyn. The picture was one of several taken and which were used as "local color" in connection with a story, entitled "Gang-Boy," published in defendant's magazine. The photograph did not identify plaintiffs by name. However, the court ruled it an invasion of privacy, saying: "the fact that it is legitimate to discuss the existence of gangs and gangsters does not make it legitimate to drag these plaintiffs into the discussion."

It is also instructive to note the Defendant's frame of mind and motivation for publishing this tote bag and coffee mug rendition.  Note footnote 13 of **Dkt. 358** and page 12 of **Dkt. 321:**

> "Defendant refers to the following statements as Statement 4: You see, I think David is engaged in a crime. I have got the evidence for it. Could indicate involvement in a criminal operation of IRAN-CONTRA. Dave needs to be prosecuted. 18 USC [§] 1001. I am going to make it my business to find a prosecutor to charge David Sweigert and his accomplices with that crime. Because I will see to it that that man is put in jail."

So, it is a factual certainty that the Defendant planned to indicate that the Plaintiff had "involvement in a criminal operation of IRAN-CONTRA."  This is plain.

### ***Defendant's conclusory inferences about the "newsworthiness exemption:***

The Court will note the numerous conclusory statements the Defendant made in response to the **SAC**, **Dkt. 88**, which are insufficient to defeat a motion for judgment on the pleadings.   See

*Winegard v. Barnhart*, No. 02-CV-6231 CJS, 2006 U.S. Dist. LEXIS. 31973, at \*27-28, 2006 WL 1455479, " the complaint is conclusory and insufficient to defeat a motion for judgment on the pleadings."

As stated in *Aspilaire v. Wyeth Pharmaceuticals, Inc.,* 612 F. Supp. 2d 289 (S.D.N.Y. 2009), "a plaintiff must prove more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir. 1997)."

Conclusory allegations and unwarranted inferences are insufficient to defeat a motion for judgment on the pleadings, In re *Syntex Corp. Sec. Litig.,* 95 F.3d 922, 926 (9th Cir. 1996)).

## CONCLUSION

The Defendant admits he used, in an unauthorized manner, the likeness of the Plaintiff in a fictionalized portrayal with supposed interconnections of isolated events of the IRAN-CONTRA scandal, which" indicate involvement in a criminal operation of IRAN-CONTRA".   Five unrelated events are associated in the tote bag and coffee mug rendition of the Plaintiff, (1) a Sandinista booking placard with the date October 6, 1983 around the Plaintiff's neck, (2) the photograph of a crashed plane wreckage to spotlight an article of October 6, 1983 concerning "covert military operations" (not necessarily related to so-called "drug smuggling") exposed by a crashed plane in Nicaragua, (3) the **1992** newspaper headline about IRAN-CONTRA personages (Casper Weinberger) escaping criminal prosecution, (4) the **1996** newspaper headline concerning an investigation by reporter Gary Webb into C.I.A. involvement in drug smuggling and (5) a photograph of the principle personage associated with IRAN-CONTRA, Lt. Col. Oliver North, U.S.M.C., ret.

The Defendant's motivation is clear, to associate Plaintiff with IRAN-CONTRA, "You see, I think David is engaged in a crime. I have got the evidence for it. Could indicate involvement in a criminal operation of IRAN-CONTRA."  There is no connection between the Plaintiff and IRAN-CONTRA no matter how hard the Defendant wishes there were one.

It is plain to see that the Defendant could have shared his "IRAN-CONTRA evidence" in his ANSWER, **Dkt. 189**, and did not.  There is no such evidence, except for a forced military helicopter landing in Managua, Nicaragua four to five years prior to the IRAN-CONTRA scandal.  This helicopter was comprised of an active-duty military crew flying under the flag of the Organization of American States on a peacekeeping mission in 1981.

The Plaintiff has suffered long enough.

The undersigned certifies under the penalty of perjury, that this filing is not unnecessarily duplicative or piecemeal; that the submission is not frivolous or made in bad faith or for any improper purpose, and that the filing complies with this Court's orders, the Federal Rules of Civil Procedure, and this Court's Local Rules.

Respectfully submitted and
sworn on this twenty-eight
day of Feb. 2022
(2/28/2022).

D.·G.·SWEIGERT,·C/O
AMERICA'S·RV·MAILBOX,·PMB·13339
514·Americas·Way,·Box·Elder,·SD·57719
Spoliation-notice@mailbox.org

On Feb. 28, 2021, a copy of the above was sent to Defendant at truth@crowdsourcethetruth.org

## EXHIBIT ONE  -  DOCKET ENTRIES

| 09/10/2019 | 88 | PLAINTIFF'S VERIFIED SECOND AMENDED COMPLAINT; re: amending 5 Amended Complaint against Jason Goodman with JURY DEMAND.Document filed by D George Sweigert. Related document: 5 Amended Complaint.(sc) (Entered: 09/11/2019) |

| 11/14/2019 | 102 | MEMO ENDORSEMENT on MOTION FOR LEAVE TO EXTEND TIME TO RESPOND TO SECOND AMENDED COMPLAINT WITH COUNTERCLAIM AND THIRD-PARTY COMPLAINT. ENDORSEMENT: Defendant's request is GRANTED IN PART and DENIED IN PART. The deadline to respond to the Second Amended Complaint is extended to Monday, November 18, 2019. Defendant must seek leave to file a third-party complaint, pursuant to Federal Rule of Civil Procedure 14. If Defendant has a good-faith basis to seek such leave, he shall file a motion for leave on or before November 29, 2019. SO ORDERED. Jason Goodman answer due 11/18/2019. (Motions due by 11/29/2019.) (Signed by Magistrate Judge Stewart D. Aaron on 11/14/2019) (rjm) (Entered: 11/14/2019) |

| 12/05/2019 | 122 | COUNTERCLAIM VERIFIED COMPLAINT against D George Sweigert.Document filed by Jason Goodman.(sc) (Entered: 12/09/2019) |

| 09/09/2020 | 150 | PLAINTIFF'S VERIFIED SUPPLEMENTAL COMPLAINT WITH REQUEST FOR INJUNCTIVE RELIEF (PROPOSED & CORRECTED )[REPLACES DKT. 144 #1], in response to 145 Amended Counterclaim, against Steven S. Biss, Manuel Chavez III, Marcus Conte, Jason Goodman, Susan Holmes, Multisystem Design, Inc.(MSDI), Patricia Negron, Steve Outtrim, Marion Rapp, Adam Sharp, Tyroan Simpson, Robert David Steele, Nathan Stolpman.Document filed by D George Sweigert. Related document: 145 Amended Counterclaim.(sc) Modified on 9/11/2020 (sc). (Entered: 09/09/2020) |

| 12/28/2020 | 180 | ORDER: NOW, THEREFORE, it is hereby ORDERED that, no later than January 29, 2021, Defendant Goodman shall file an answer to paragraphs 1 through 28, 69 through 110, 123, and 125 through 133 of Plaintiff's Second Amended Complaint that was filed at ECF No. 88, as well as paragraphs 1, 39 through 45 and 47 through 50 of Plaintiff's Verified Supplemental Complaint that was filed at ECF No. 150. The Clerk of Court is respectfully requested to mail a copy of this Order to the pro se parties. SO ORDERED. (Signed by Magistrate Judge Stewart D. Aaron on 12/28/2020) (kl) Transmission to Docket Assistant Clerk for processing. (Entered: 12/28/2020) |
|---|---|---|
| 01/28/2021 | 189 | DEFEDANT'S ANSWER TO SUPPLEMENTED SECOND AMENDED COMPLAINT, re: to 150 Amended Complaint. Document filed by Jason Goodman.(sc) (Entered: 01/29/2021) |