### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **D.G. Sweigert**<br>**Plaintiff,**<br><br>　　　　**-against-**<br><br>**Jason Goodman,**<br>**Defendant** | **PRO SE**<br><br>**18-cv-08653-VEC-SDA**<br><br>**District Judge Valerie E. Caproni** |

### NOTICE OF DEFENDANT'S SWORN STATEMENT TO SUPPLEMENT DKT. 387

The *pro se* Plaintiff (undersigned) files these papers to allow the Court to take notice of a sworn

statement**.**

April 15, 2023 (Tax Day) (04/15/2023)

**D. G. SWEIGERT PRO SE DEFENDANT, C/O**
**PMB 13339, 514 Americas Way,**
**Box Elder, SD 57719**

## <u>NOTICE OF DEFENDANT'S SWORN STATEMENT TO</u>
## <u>SUPPLEMENT DKT. 387</u>

1.     The undersigned, an adult over 18 years of age, makes this statement under the penalties of perjury to aid the Court in deciding issues related to the lack of jurisdiction of this Court on the undersigned.

2.     The undersigned herein asserts that the following information is true and correct and published under the penalties of perjury.

3.     Attached as an EXHIBIT is an ORDER of the U.S. District Court for the Eastern District of Virginia that supports the Plaintiff's claim in Dkt. 387 that Defendant Jason Goodman spoliated video evidence.

4.     Also attached as an EXHIBIT is Mr. Goodman's recent pleading papers announcing that Judge Caproni is under investigation by the U.S. Congress.

5.     The Court is invited to take notice of Mr. Goodman's most recent social media video concerning the undersigned.  One instance is published at URL

https://www.youtube.com/watch?v=rnQsf6JVByE , channel Crowdsource the Truth 8 @crowdsourcethetruth8954 , entitled "Is America Experiencing A Mental Health Crisis? With Special Guest Sara Banta".  Also published at URL

https://www.youtube.com/watch?v=EY6RiUZDxRE , channel Crowdsource the Truth 9 @crowdsourcethetruth9 , "Is America Experiencing A Mental Health Crisis? With Special Guest Sara Banta".

6.     Time-mark 23:21 Mr. Goodman states, "He's hiding.  He's like a deceptive miserable rat.  Who has to hide and do things in secret. … Sends fake e-mails to the EMMYs from employed thespians at well known URLs dot com.  There's no way that e-mail was sent by

anyone other than this idiot or an agent of this idiot.  There are so many things brought up in the lawsuits that this coward will not be able to counter act.  In fact, I so wish I could go back in time and witness George Henry punching him right in the face, I would like to see him cry.  I would like to hear what George Henry said to him.  And understand what makes this guy such a piece of miserable human sh_t.  "

7.      It appears Mr. Goodman is referring to the undersigned's father, to which Mr. Goodman has dedicated a Twitter account at URL https://twitter.com/GHenryDickface ,
@GHenryDickface , Schizophrenic Fascist Traitor Dickface Parody Account.

8.      It is instructive to note that the Plaintiff's deceased father is George H. Sweigert, a combat veteran of the Guadalcanal Campaign in the Solomon Islands in World War II.  Staff Sergeant Sweigert, of Ohio's National Guard (the 37th Division), suffered from what is known as "Guadalcanal Syndrome",
https://content.time.com/time/subscriber/article/0,33009,933048,00.html  the fore-runner to the modern-day diagnosis of Post Traumatic Stress Syndrome (P.T.S.D.).[1]

9.      At time-mark 9:40 in "Is America Experiencing A Mental Health Crisis? With Special Guest Sara Banta" Mr. Goodman states, "There is a Twitter account called George Henry Dickface.  It is an interesting Twitter account.  People might want to look at that."

---

[1] Medicine: Guadalcanal Neurosis Monday, May 24, 1943 "Each man must have a breaking point." On Guadalcanal many a man came close to that realization. Last week the mental suffering on Guadalcanal was described to the American Psychiatric Association in Detroit by Lieut. Commander Edwin R. Smith of the Naval Hospital at Mare Island, Calif. In the frankest statement on war's psychiatric casualties yet passed by the Army or Navy, he discussed "a group neurosis that has not been seen before and may never be seen again." The neurosis occurs in steady men who have been subjected to prolonged warfare without rest or hope—as on Guadalcanal. Said Commander Smith: "This was not the sudden and quickly terminated but terrific rape of Pearl Harbor, nor the similarly acute days of Dunkirk. This was the worst of both of them, prolonged literally for weeks. . . . Never before in history have such a group of healthy, toughened, welltrained men been subjected to such conditions."
https://www.defensemedianetwork.com/stories/world-war-ii-psychiatric-wounds-of-war/

3

10.     On Nov. 4, 2022 (11/04/2022) Mr. Goodman has tweeted on @GHenryDickface the image of the undersigned's ex-wife, which had nothing to do with the undersigned's brother (George Webb Sweigert), "The Sweigert brothers have publicly admitted to sharing David's morally depraved ex-wife Melody for their personal sexual gratification, a truly disgusting trio in every sense." This is a falsehood and untrue. The undersigned states the he has personally sent several retraction notices to Mr. Goodman to remove this tweet.

11.     On Sept. 11, 2022 (09/11/2022) Mr. Goodman tweeted from @GHenryDickface "Disgustingly promiscuous ex-daughter in-law had sex with two of GHS' sons after marrying one of them. Truly perverted. What was sexually depraved deviant ex-Navy sick-o Melody doing on 9/11/2001? One would have to be mentally ill to marry David. Go to your chamber David.". This statement is untrue and a falsehood. This person had nothing to do with George Webb Sweigert. The undersigned states the he has personally sent several retraction notices to Mr. Goodman to remove this tweet.

12.     At time-mark 33:44 in "Is America Experiencing A Mental Health Crisis? With Special Guest Sara Banta" Mr. Goodman states, "Everything he puts in the pleadings is made up non-sense. … This is a maniac assh_le who spends all day every day trying to invite causes of action."

13.     At time-mark 19:44 in "Is America Experiencing A Mental Health Crisis? With Special Guest Sara Banta" Mr. Goodman states, "Spending all her days and nights writing *pro se* pleadings like I have for the past six and a half years. I think she would probably have to hire a lawyer for the miscreant moron fart sniffing Stupid Mario Luigi."

14.     At time-mark 21.26 in "Is America Experiencing A Mental Health Crisis? With Special Guest Sara Banta" Mr. Goodman states, "I never have even met this guy. This disgusting

4

chicken wing eating fart sniffing smelly foot mentally ill, despised by his own father, punched

him in the face every day.  Deservedly so I would add.  It is too bad George Henry didn't have a

better right hook.  So he could break this guy's skull.  So that his brain could ooze out.  "

Certified under penalties of perjury.

April 15, 2023 (Tax Day) (04/15/2023)

**D. G. SWEIGERT PRO SE DEFENDANT, C/O**
**PMB 13339, 514 Americas Way,**
**Box Elder, SD 57719**


**<u>CERTIFICATE OF SERVICE</u>**

**It is hereby certified under the penalties of perjury that a true copy PDF file has been sent**

**via e-mail message to the following:**

Jason Goodman, sole stockholder of MULTIMEDIA SYSTEM DESIGN, INC.

truth@crowdsourcethetruth.org

Certified under penalties of perjury.

April 15, 2023 (Tax Day) (04/15/2023)

**D. G. SWEIGERT PRO SE DEFENDANT, C/O**
**PMB 13339, 514 Americas Way,**
**Box Elder, SD 57719**

# EXHIBIT ONE





# EXHIBIT TWO



https://www.youtube.com/watch?v=rnQsf6JVByE



https://www.youtube.com/watch?v=EY6RiUZDxRE





https://www.youtube.com/watch?v=EY6RiUZDxRE

# EXHIBIT THREE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KATHY STEELE, ADMINISTRATOR of the
ESTATE OF ROBERT DAVID STEELE, *et al.*,
        Plaintiffs,

v.                                Civil Action No. 3:21cv573

JASON GOODMAN,
        Defendant.

## **ORDER**

This matter comes before the Court on the motion to compel filed by the plaintiffs, Kathy Steele and Earth Intelligence Network, (ECF No. 63). The plaintiffs ask the Court to compel the defendant, Jason Goodman, to respond to their requests for "production of documents" and "to provide true and complete copies of the documents and electronically stored information." (*Id.* at 1.) Specifically, they ask the Court to compel Goodman's production of: (1) "true and complete digital copies" of nineteen videos; (2) documents that prove Goodman's truth defense; (3) "[c]omplaints by Goodman to law enforcement or the absence of any such complaints"; (4) "Goodman's communication with third parties about Robert David Steele ('RDS') or this lawsuit"; (5) any "evidence" that supports Goodman's defenses that he details in his answer; and (6) "Goodman's net worth." (*Id.* at 2–8.)

In response, Goodman provides links to eighteen of the requested videos, and he explains that, for the video with the link "https://streamable.com/zf4vl," he "[n]ever had a streamable account" and "never uploaded any videos to streamable." (ECF No. 68-1, at 2.) Goodman does not address the plaintiffs' requests for: documents related to his truth defense; evidence of his communication with law enforcement; evidence of his communication with others about RDS or this lawsuit; evidence that supports his defenses; or his net worth.

Federal Rule of Civil Procedure 26 permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). And Federal Rule of Civil Procedure 34 requires a party who receives requests for production of documents to "serve a written response" that states, "with respect to each item or category, that inspection and related activities will be permitted as requested unless the request is objected to, in which event the reasons for the objection shall be stated." Fed. R. Civ. P. 34(b). In the Eastern District of Virginia, a party must object to a discovery request within fifteen days after service of the request. E.D. Va. Loc. Civ. R. 26(C). "[C]ourts addressing this issue long have ruled that a failure to raise an objection in an answer to a Rule 34 document production request may constitute waiver." *Hall v. Sullivan*, 231 F.R.D. 468, 473 (D. Md. Oct. 11, 2005).

Upon due consideration, the Court GRANTS the motion. (ECF No. 63.) Because Goodman neither objected to Steele's request for production, Goodman SHALL produce the following: (1) documents that prove Goodman's truth defense; (2) "[c]omplaints by Goodman to law enforcement"; (3) "Goodman's communication with third parties about Robert David Steele ('RDS') or this lawsuit"; (4) any "evidence" that supports Goodman's defenses that he details in his answer; and (5) "Goodman's net worth." (*See* ECF No. 63, at 2–8.); *see also* Local Civ. R. 26(C). The Court DEEMS any objections Goodman has to these requests waived. *See Hall*, 231 F.R.D. at 473; E.D. Va. Loc. Civ. R. 26(C). Additionally, the Court ORDERS the plaintiffs to reply to Goodman's response, indicating whether they can access the requested videos from the eighteen links Goodman provided.

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record.

2

Date: 12 April 2023
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge

3

# EXHIBIT FOUR

1
2
3

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

4   JASON GOODMAN                                    Case No.: 1:21-cv-10878-AT-JLC

5                        Plaintiff,

6   vs.                                              **RESPONSE IN OPPOSITION TO**
                                                     **MOTION FOR SANCTIONS**
7
8   CHRISTOPHER ELLIS BOUZY, BOT
    SENTINEL, INC, GEORGE WEBB
9   SWEIGERT, DAVID GEORGE SWEIGERT,
    BENJAMIN WITTES, NINA JANKOWICZ,
10  ADAM SHARP, MARGARET ESQUENET,
    THE ACADEMY OF TELEVISION ARTS
11  AND SCIENCES, SETH BERLIN,
    MAXWELL MISHKIN
12
13                       Defendants

14
15          Pro Se plaintiff Jason Goodman ("Goodman") respectfully submits this response in

16  opposition to defendants Benjamin Wittes ("Wittes") and Nina Jankowicz ("Jankowicz") motion

17  for sanctions pursuant to Fed. R. Civ. P. Rule 11.

18                          **INTRODUCTORY STATEMENT**

19          Goodman has never brought a lawsuit for an improper purpose.  Beginning in 2017,

20  David George Sweigert ("Sweigert") and others began a "lawfare" assault against Goodman,

21  weaponizing legal process and bombarding him with multiple simultaneous civil suits, false

22  statements to law enforcement and various government agencies.  These burdensome actions

23  were exacerbated by a persistent and wide-ranging campaign of cyber stalking and cyber

24  harassment primarily executed by Sweigert, in support of and cooperation with each of the

25  named defendants.  Both defendants Wittes and Jankowicz are high profile public figures.  They

26  are each involved in work with the U.S. Government.  They both speak publicly with regularity

27
28
    RESPONSE IN OPPOSITION TO MOTION FOR SANCTIONS - 1

and have both been featured on numerous podcasts and major media outlets.  The claims in their motion for sanctions reveal that they are unable to discern unfavorable but true investigative reporting from what they disingenuously and inaccurately describe as "harassment".  Goodman has not been charged, convicted, or even legitimately accused of harassing anyone.  Goodman has not engaged in activities that meet the elements of harassment in either his home jurisdiction or that of the defendants.  Ironically, defendants through their cooperation with Sweigert and others have harassed Goodman incessantly concurrent with making numerous false statements to courts, law enforcement and the public with the intent of harming Goodman.

## FACTUAL BACKGROUND

For approximately three months during 2017, Goodman collaborated with Sweigert's brother, George Webb Sweigert ("Webb"), in publishing a series of videos on YouTube.  While collaborating with Goodman, Webb and non-party Patricia Negron ("Negron") arranged an interview with Charles Ortel ("Ortel").  At Goodman's first meeting with Ortel, Webb and Negron were present.  At the outset of the meeting, Ortel received an unexpected phone call from an associate of defendant Wittes'.  Wall Street Journal writer Shane Harris ("Harris") was about to publish a series of articles concerning the recent death of Ortel's close associate Peter Smith ("Smith").  The death was ruled a suicide, but Ortel and others who knew Smith found that and other reported details dubious.  Goodman was intrigued and began his own investigation with the advantage of having access to Ortel's private communications with Smith.  Harris published numerous articles and appeared on Wittes Lawfare podcast, repeating information that was contradicted by emails sent from Smith to Ortel.  (https://www.wsj.com/articles/gop-operative-sought-clinton-emails-from-hackers-implied-a-connection-to-flynn-1498770851)

RESPONSE IN OPPOSITION TO MOTION FOR SANCTIONS - 2

These Smith emails had not been seen by the public or Harris, but Ortel had discussed their contents with Goodman.  Goodman presumed journalists focused on the Smith story would want to know that his messages with Ortel told a different story than their reporting.  Goodman set out in good faith to contact both Harris and Wittes, to share information with them, and allow them to draw their own conclusions.  After many, many attempts to contact both men, Goodman was rebuffed in ways that caused him to believe they were actively avoiding the information.  This caused Goodman to use sharper criticism in an effort to focus on the facts. **(EXHIBIT A)**

Coincident with Goodman's discussion of these matters with Wittes, defendant Christopher Bouzy ("Bouzy") inserted himself into the debate and began harassing Goodman in ways that have been previously described to the court.  Wittes has still not answered the well-founded questions that have led Goodman to the conclusion that Wittes would prefer to destroy Goodman by burdening him with harassment and lawfare than be compelled to answer.

## GOODMAN HAS NOT HARASSED WITTES

Wittes is the co-founder of lawfareblog.com.  In his own description of the website, written September 1, 2010, Wittes admits that lawfare as a practice is "the use of law as a weapon".  (*See* https://www.lawfareblog.com/welcome-lawfare)

This is precisely what defendants are attempting with their motion for sanctions and their other unjust and dishonest actions.  They cannot rely on facts, and they cannot refute Goodman's well-founded claims, so they resort to weaponizing and abusing the legal process.  Defendants are so desperate to keep the facts and evidence revealed by Goodman hidden, that they rely on intimidation to dissuade him from continuing this action or allowing it to proceed to discovery.  The Court is aware that immediately upon learning plaintiff would leave his home in New York for an extended time, Jankowicz, with the assistance of Sweigert, her attorney Liz Lockwood

RESPONSE IN OPPOSITION TO MOTION FOR SANCTIONS - 3

1
2

("Lockwood") and at the direction of Wittes, filed a police report with the Arlington PD

containing false claims calculated to harm Goodman.  (*See* ECF No. 163 Page 10 of 23)

3
4

    It is inaccurate to state that Goodman "threatened" to appear at an event Wittes was

5

scheduled to speak at.  Wittes is a public speaker and Goodman is the host of an interactive

6

online talk show.  Goodman communicates with his audience regularly.  Although defendants do

7

not cite any specific statement by Goodman, to the best of his recollection, when he learned that

8

Wittes would be speaking at an event, open to the public, Goodman discussed with his audience,

9

the prospect of going there to participate and attempt to ask the questions in person.  This is what

10

any attendee at a public speaking event might do and it was Goodman's only intention with

11

regard to that event.  Contemplating going to listen to or interact with a public figure at a public

12

event does not constitute a threat.  Goodman does not recall the details of the event or it's

13

cancelation, but it is equally likely that Wittes canceled the event out of concern he might be

14
15

confronted with questions he desperately does not want asked.  Contrary to the false and

16

conclusory statements asserted by defendants, every claim Goodman has made is well founded

17

and backed by evidence.  Goodman is eager to convene a hearing at which defendants would be

18
19

compelled to answer to the cited evidence under oath.

20

**WELL FOUNDED CLAIMS INTENDED TO SERVE JUSTICE**

21

    Goodman is not a "serial litigant" as defendants allege.  Goodman has only brought two

22

lawsuits in his life, this instant action, and Goodman v Sharp (Case 1:21-cv-10627-VEC).  By

23

contrast, Goodman has been stalked and harassed by defendants through more than half a dozen

24
25

suits.  Sweigert spends nearly every day devising new ways to harass, cyber stalk and otherwise

26

disrupt Goodman.  Each defendant in this action is alleged to have unlawfully cooperated with

27

him at various times in furtherance of a pattern of related racketeering activity calculated to harm

28

RESPONSE IN OPPOSITION TO MOTION FOR SANCTIONS - 4

Goodman.  Even if Goodman's pro se pleadings have so far been inadequate to survive motions to dismiss, they are not without merit and they were not brought without good cause.

Goodman's criticism of Wittes, Jankowicz and the other defendants amount to verbal sparring in an arena where they could have chosen to block contact from Goodman if they objected.  Wittes also could have contradicted any alleged false statement with countermanding facts, but he did neither.  Wittes or Jankowicz could have sued or demanded a cease and desist if Goodman's statements about them were defamatory or untrue.  None of these things occurred because Goodman did nothing wrong.  Instead of taking the proper legal path to cure a legitimate injury, defendants have relied on deception and underhanded lawfare tactics intended to stymie Goodman and prevent the proper service of justice.

### BOUZY IS AN INTERNET HIT MAN IN SERVICE OF WITTES

Bouzy has been effusive in his public praise of Wittes.  Bouzy published an article on Wittes' Lawfare blog in defense of disgraced adulteress cum FBI agent Lisa Page ("Page") who is alleged to be a Bot Sentinel client. (https://www.lawfareblog.com/there-targeted-troll-campaign-against-lisa-page-bot-sentinel-investigation).  In the article, Bouzy admits that Wittes is in a regular practice of alerting Bouzy to issues of concern on Twitter, stating in part, "Over the weekend, Lawfare's Benjamin Wittes brought to my attention a suspicious pattern of replies to Page's tweet."  Goodman alleges a similar alert was issued by Wittes during the online chat session in which Bouzy first attacked Goodman.

It is important to view these events in the context of Goodman's reporting.  Goodman has revealed irrefutable evidence in support of his allegations that former President Barack Obama, in conjunction with defendant Sharp and Judge Valerie Caproni devised and executed a scheme in violation of the first, fourth and fourteenth amendments of the constitution and several state

RESPONSE IN OPPOSITION TO MOTION FOR SANCTIONS - 5

and federal laws, to merge the U.S. Government and more specifically the FBI with Twitter. (https://crowdsourcethetruth.substack.com/p/the-twitter-coup).

As with Goodman's other allegations, each of the accused dismiss the detailed facts as "conspiracy theory" and do not contradict the claims or provide any evidence to refute any of Goodman's well-founded allegations.  The House Select Subcommittee on the Weaponization of the Federal Government is currently investigating Goodman's evidence and has not yet come to a conclusion.  A hearing will be held on Monday April 17, 2023, at the Javits Federal Building. The Court should compel defendants to appear at its own separate hearing where they would respond to these claims under oath with something more substantial than "conspiracy theory".

Wittes is very involved in the FBI's entanglement with Twitter and has publicly referred to former FBI director Comey as a close friend.  Comey has publicly stated that he reads the Lawfare blog every day.  He also shares judge Caproni's constitution violating concerns about the FBI "going dark" (https://www.brookings.edu/blog/brookings-now/2014/10/16/watch-fbi-director-james-comey-on-technology-law-enforcement-and-going-dark/).

Former FBI General Counsel James Baker ("Baker") would famously become Twitter's Deputy General Counsel after a short stint at Wittes' Lawfare following his disgraceful exit from the FBI. (https://www.nytimes.com/2018/05/04/us/politics/james-baker-lisa-page-fbi.html).  The New York Times reported that Baker left the FBI at the same time Page did.  Baker went to Lawfare, Bouzy began writing blog posts on Lawfare in defense of Page.

**GOODMAN HAS NOT HARASSED JANKOWICZ**

Goodman never harassed Jankowicz.  Goodman called her once in May of 2022 to invite her to participate in an interview.  The conversation was brief and Jankowicz politely declined stating she had already been the subject of harassment.  This was Goodman's first contact with

RESPONSE IN OPPOSITION TO MOTION FOR SANCTIONS - 6

Jankowicz so it is hard to understand how Goodman could have been harassing her if she declined the interview due to existing harassment.  A day or two after the call, Goodman published his report on May 16, 2022.  Jankowicz resigned from the DHS Disinformation Governance Board two days later.  Goodman called again that day or shortly after, asking again for an interview considering the new condition might have lifted prior restrictions.  Jankowicz became angry, instructed Goodman not to call her again and hung up the phone.

Goodman complied with this demand until January of 2023.  It has been widely reported that Twitter was purchased in October 2022.  Policy changes from Twitter's new management resulted in the restoration of Goodman's "@csthetruth" Twitter account on or about January 4.  Goodman used the account to Tweet about his news report on Jankowicz, and the account was disabled less than twenty-four hours later.  Goodman called Jankowicz to alert her of possible legal action against her as a result of the false claim to Twitter and the lost access to the same Twitter account Bouzy had previously destroyed.  This is the Twitter account that contains evidence of Goodman's interactions with Wittes and Bouzy.  When Jankowicz failed to respond, Goodman emailed a litigation warning demanding a retraction of the false claim.  When Jankowicz failed to respond to the email, Goodman brought this legal action.  It is false to state this legal action is without merit or that it was brought for an improper purpose.  Goodman gave Jankowicz fair and legitimate warning which she chose to ignore.  Had she withdrawn her false Twitter complaint, or provided any legitimate response at all, she would not have been sued.

Jankowicz claimed at the Arlington hearing that she did not make the complaint to Twitter.  While this seems implausible on its face, if the complaint was not made by Jankowicz, it is likely to have been made by Sweigert.  No other individual monitors Goodman's activity more closely than Sweigert.  His psychotic obsession with Goodman is deeply disturbing and

RESPONSE IN OPPOSITION TO MOTION FOR SANCTIONS - 7

causes Goodman to feel he is constantly in danger anywhere he travels.  Complaints against

Goodman's social media accounts happen within minutes of content being posted.  Concurrent

with the attack on Goodman's valuable branded social media properties, and after learning

Goodman would be out of New York for days or weeks, Jankowicz or an agent of Jankowicz

made false claims calculated to harm Goodman on a petition filed with the Arlington General

District Court.  **(EXHIBIT B)**

On the petition, Jankowicz named Goodman as the respondent and falsely stated he had

subjected her to "an act of violence, force or threat".  No such thing ever occurred.  In the

Arlington hearing, Jankowicz admitted Goodman did not threaten her, but rather an unnamed

individual who Jankowicz presumed had watched Goodman's broadcast did.  The person has not

been identified.  Goodman cannot be held accountable for the actions of unknown individuals

and no evidence of the alleged harassment has been presented beyond claims made by

Jankowicz.  Despite these facts, astoundingly and in violation of Goodman's first and fourteenth

amendment rights, Jankowicz did obtain an order against Goodman.  The order has been

appealed and a hearing is pending.

### GOODMAN SHOULD NOT BE ENJOINED

Goodman's success rate as a litigant is admittedly low.  This is because Goodman is not

an attorney, has no legal training and prior to the lawfare onslaught initiated by Sweigert and his

coconspirators, Goodman has never been involved in any litigation of this nature prior to 2017.

Goodman's action as a plaintiff has not been vexatious or without good cause as falsely

described by defendants.  Goodman was forced to file Goodman v Sharp after Sharp and his

attorney Margaret Esquenet ("Esquenet") conspired with Sweigert to calculate a plant to sue a

fictitious corporate entity that sufficiently resembled the name of Goodman's corporation,

RESPONSE IN OPPOSITION TO MOTION FOR SANCTIONS - 8

compelling a response.  Judge Valerie Caproni presided over Sweigert v Goodman *See* Case

1:18-cv-08653-VEC, the case was originally brought in the U.S. District Court for the district of

South Carolina in June of 2018, and transferred to SDNY due to improper venue where it was

assigned to Judge Caproni on or about September 2018.  This was two years prior to defendants

Sharp and Esquenet became involved in the National Academy of Television Arts and Sciences v

Multimedia System Design, Inc. dba Crowdsource the Truth ("NATAS v MSD").  A critical

factor in NATAS v MSD is that Sharp, Esquenet and the entire Television Academy had no way

of knowing the made up name "Multimedia System Design, Inc. dba Crowdsource the Truth"

unless they heard it from Sweigert or an agent of Sweigert.  They will fail to provide evidence

that they learned this in any other way and should be compelled to.

Defendants should address this question at a hearing, under oath and answer how they

learned of this fabricated corporate entity and explain what caused them to decide to sue this

made-up fictional entity rather than Goodman himself.  The sanctions motion cites previous

sanctions against Goodman that were unjustly issued by Judge Valerie Caproni, an individual

who has been admonished by both the house and senate for a disgraceful career-long history of

violating and abusing American citizens' constitutional rights.  This is precisely what the judge

did in the show cause hearing about the email Goodman alleges Sweigert sent and that initiated

NATAS v MSD.  That case should not have been allowed to proceed considering 42 U.S. Code §

230 should prohibiting a corporate entity that is not Goodman from being sued for information

posted on the internet by Goodman.

Goodman continues to allege that Sweigert conspired with Sharp and Esquenet to set a

legal trap intended to compel Goodman to hire counsel to defend his corporation and deny him

his right to a pro se defense.  Judge Caproni sat idly by, taking no action whatsoever in Sweigert

RESPONSE IN OPPOSITION TO MOTION FOR SANCTIONS - 9

v Goodman, Goodman v Sharp or NATAS v MSD to curb Sweigert's relentless harassment despite being fully aware of it. Judge Caproni's ruling in NATAS v MSD is also on appeal and Goodman's allegations against the judge are also currently being evaluated by Congress.

The only logical conclusion a reasonable observer could draw is that Judge Caproni supported Sweigert's efforts and ruled unfairly against Goodman because she too would be implicated in crimes against the people of the United States and gross violations of each of our constitutional rights should Goodman's claims be proven right. Even if this Court determines nothing can be done to serve justice in that matter, due to res judicata or other factors, it is undeniable that Sweigert has engaged in a pattern of acute and ongoing harassment and the defendants have relied on underhanded lawfare tactics rather than legitimate practice of law.

## CONCLUSION

Goodman respectfully moves the Court deny the motion for sanctions and instead compel defendants to appear at an evidentiary hearing to answer for these matters under oath.


Signed this 14th day of April 2023

Respectfully submitted,

_____

Jason Goodman, Plaintiff, Pro Se
252 7th Avenue Apt 6s
New York, NY 10001
(323) 744-7594
truth@crowdsourcethetruth.org

RESPONSE IN OPPOSITION TO MOTION FOR SANCTIONS - 10

**(EXHIBIT A)**

the funds was extended, the White House avoided effectively rescinding appropriated funding without Congressional approval—which would have been a blatant impoundment violation under the relevant laws, including the ICA, the 2019 National Defense Authorization Act and the 2019 Appropriations Act. But it appears that OMB did not comply with relevant law when it delayed the release of the Defense Department's $250 million in aid on grounds unrelated even to the permissible reasons for proposing such a delay under the ICA—budgetary contingencies, savings through greater efficiency or the need to meet the parameters of specific funding laws.

💬 25         ♻ 3         ♡ 53         📊         ⬆



**CrowdsourcetheTruth**
@csthetruth

Lawfare blog is a social engineering cesspool and @benjaminwittes is a frequent liar who played an active role in a disinformation campaign intended to obscure the cause of death in the Peter Smith "suicide". Wittes should sue me if that's incorrect, but he won't because it isn't

12:58 PM · Nov 2, 2019

**4** Retweets    **3** Quotes    **42** Likes

**(EXHIBIT B)**

**PRELIMINARY PROTECTIVE ORDER**
Commonwealth of Virginia    VA. CODE § 19.2-152.9

ARLINGTON GENERAL DISTRICT COURT - CIVIL

Case No. ................ GV23000106-00
Hearing Date and Time: .... 1/9/2023    2:00 pm

[X] General District Court   [ ] Circuit Court   [ ] Extension of Preliminary Protective Order
[ ] Juvenile and Domestic Relations District Court

| PETITIONER | PETITIONER'S DATE OF BIRTH  2-14-23-2B |
|---|---|

~~Robb~~ ~~Nina~~ JANKOWICZ, NINA

LAST        FIRST        MIDDLE
And on behalf of minor family or household members:
(list each name and date of birth)

Other protected family or household members:
(list each name and date of birth)

**v.**

| RESPONDENT | RESPONDENT IDENTIFIERS (IF KNOWN) |
|---|---|

GOODMAN, JASON

LAST    FIRST    MIDDLE

252 7TH AVE #65
RESPONDENT'S ADDRESS
NEW YORK, NY 10001

| RACE | SEX | BORN MO. DAY YR. | HT. FT. IN. | WGT. | EYES | HAIR |
|---|---|---|---|---|---|---|
| | W | M | | | | |

SSN
DRIVER'S LICENSE NO.    STATE    EXP.

[ ] **CAUTION: Weapon Involved**    Distinguishing features: ..........

**SUMMONS FOR HEARING**
TO ANY AUTHORIZED OFFICER: Summon the Respondent as provided below:
TO THE RESPONDENT: You are commanded to appear before this Court on ...... 1/23/23  2:00PM
                                                                        DATE AND TIME
at  ARLINGTON GENERAL DISTRICT COURT - CIVIL  1425 NORTH COURTHOUSE RD, ARLINGTON, VA 22201   for a hearing on this Petition.
                                              NAME AND ADDRESS OF COURT

1/9/23
DATE ISSUED                                    [ ] CLERK  [X] DEPUTY CLERK

THE COURT FINDS that it has jurisdiction over the parties and subject matter, and that
1. [X] The Petitioner is, or has been, within a reasonable period of time, subjected to an act of violence, force or threat, **OR**
   [ ] A warrant or petition has been issued charging the Respondent with a criminal offense resulting from the commission of an act of violence, force, or threat as defined in Va. Code § 19.2-152.7:1; and
2. In order to protect the health and safety of the Petitioner or any family or household member of the Petitioner, a preliminary protective order is warranted.
[X] *Ex Parte* Proceeding Only: The petition has been supported by an affidavit or sworn testimony before the judge or intake officer, and either the Petitioner is in immediate and present danger of any act of violence, force, or threat or there is sufficient evidence to establish probable cause that an act of violence, force, or threat has recently occurred so as to justify an *ex parte* proceeding.
   [ ] As this order was entered without a separate affidavit or an attested petition, or without a form pursuant to Va. Code § 16.1-253.4(D) being presented, the basis upon which this order is entered, including a summary of the allegations made and the court's findings, is as follows:

THE COURT ORDERS that:
[X] The Respondent shall not commit acts of violence, force, or threat or criminal offenses that may result in injury to person or property.
[X] The Respondent shall have no contact of any kind with the Petitioner *directly, indirectly thru 3rd parties or by any*
   [ ] except as follows: *electronic means through social media, text message or email.*
[X] The Respondent shall have no contact of any kind with the family or household members of the Petitioner named above
   [ ] except as follows: ..........
[ ] The Petitioner is granted possession of the companion animal described as ..........
                                                                        NAME/TYPE
[X] It is further ordered that *Respondent stay at least 100ft. away from Petitioner at all times.*

FORM DC-384 (MASTER, PAGE ONE OF ___) 07/19

Case No. ............... GV23000106-00

It is further ORDERED that a full hearing on the petition for a protective order be held at this Court
on ....1/23/23.......... at ...2:00 pm.......* and that service of this Order will constitute notice to the
parties for that hearing.

> \* If the court is closed on the above date because the conditions constitute a threat to the
> health or safety of the general public or for another reason set forth in Va. Code § 16.1-69.35
> or § 17.1-207, the full hearing will be held on the next day that the court is open, and this
> Preliminary Protective Order will remain in full force and effect until this order is dissolved
> by the court, another preliminary protective order is entered or a protective order is entered.

[X] It is ORDERED that the Preliminary Protective Order is extended *see below* (P)
   [X] as the Respondent failed to appear at the protective order hearing set for ...January 23, 2023........... because the
      Respondent was not personally served.
   [ ] upon motion of the Respondent and for good cause shown.

[ ] Supplemental Sheet to Protective Order, Form DC-653, attached and incorporated by reference. No. of supplemental sheets .................

...1/9/23.........
DATE

_____
JUDGE

## WARNINGS TO RESPONDENT:

**Pursuant to Code of Virginia § 18.2-308.1:4, Respondent shall not purchase or transport any firearm while this order is in effect.
If Respondent has a concealed handgun permit, Respondent must immediately surrender that permit to the court issuing this
order.** If Respondent violates the conditions of this order, Respondent may be sentenced to jail and/or ordered to pay a fine.

This order will be entered into the Virginia Criminal Information Network. Either party may at any time file a motion with the court
requesting a hearing to dissolve or modify this order; however, this order remains in full force and effect unless and until dissolved or
modified by the court. **Only the court can change this order.**

   \* P.P.O is extended to February 14, 2023 at 2:00 pm, *Jhfh* 1/23/2023

Case No. .............................. GV23000106-00

**RETURNS:**  Each person was served according to law, as indicated below, unless not found.

| RESPONDENT: | PETITIONER: (See form DC-621, NON-DISCLOSURE ADDENDUM) |
|---|---|
| NAME ................................ | NAME _Vankowicz Nina_ |
| ADDRESS ........................... | .............................................................. |
| [ ] PERSONAL SERVICE      TELEPHONE NUMBER | [X] PERSONAL SERVICE |
| [ ] NOT FOUND | [ ] NOT FOUND |
| SERVING OFFICER | _CPL D. Waters_ |
| for _____ | SERVING OFFICER |
|  | for _(Sheriff) Jose Quiroz_ |
| DATE AND TIME | _1/23/23   1642_ |
|  | DATE AND TIME |
| RESPONDENT'S DESCRIPTION (for VCIN entry): | [ ] Copy delivered to |
| RACE ................  SEX ...... | .............................................................. |
| DOB: ............................ | .............................................................. |
| HGT ............  WGT ........ | .............................................................. |
| EYES ............  HAIR ........ | by _____ |
| SSN ............................. | TITLE |
| Relationship to Petitioner/Plaintiff ...... | .............................................................. |
| Distinguishing features ............ | SIGNATURE |

**DEFINITIONS:**

"Act of violence, force, or threat" means any act involving violence, force, or threat that results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury. Such act includes, but is not limited to, any forceful detention, stalking, criminal sexual assault in violation of Article 7 (§ 18.2-61 et. seq.) of Chapter 4 of Title 18.2, or any criminal offense that results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury.

"Family or household member" means (i) the person's spouse, whether or not he or she resides in the same home with the person, (ii) the person's former spouse, whether or not he or she resides in the same home with the person, (iii) the person's parents, stepparents, children, stepchildren, brothers, sisters, half-brothers, half-sisters, grandparents and grandchildren regardless of whether such persons reside in the same home with the person, (iv) the person's mother-in-law, father-in-law, sons-in-law, daughters-in-law, brothers-in-law and sisters-in-law who reside in the same home with the person, or (v) any individual who has a child in common with the defendant, whether or not the person and that individual have been married or have resided together at any time, or (vi) any individual who cohabits or who, within the previous twelve (12) months, cohabitated with the person, and any children of either of them residing in the same home with the person.